Hearing Date/Time: October 24, 2023 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: October 16, 2023 (prevailing Eastern Time)

Immanuel J. Herrmann
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF IMMANUEL HERRMANN**
**PURSUANT TO 11 U.S.C. §§ 503 FOR ALLOWANCE AND PAYMENT**
**OF EXPENSES INCURRED IN MAKING A**
**SUBSTANTIAL CONTRIBUTION**

Immanuel Herrmann, *pro se* creditor, hereby files this Application Pursuant to 11 U.S.C. §§ 503 for Allowance and Payment of Expenses of $1,143.90 incurred in making a substantial contribution and, in support, states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

# INTRODUCTION

I have been an active creditor in these cases since the summer of 2022 and have invested thousands of hours. Since the beginning, I have had a goal of ensuring that Earn customers, and all customers, are able to make their voices heard. I spent significant time speaking with with fellow creditors in public and private spaces about their concerns regularly and informed the Court regarding both concerns that applied to me personally and concerns that were brought to my attention by other creditors. I also engaged in ongoing creditor-to-creditor conversations with other constituencies, including Custody, Withhold, and Borrowers, throughout these cases.

Along the way, I participated in the case in key ways—from calling out Celsius' efforts to scrub blog posts and web pages from the internet while Celsius was under the management of Alex Mashinsky, to pushing for Mr. Mashinsky's resignation as CEO early in these cases, to participating in interviews and conversations with regulators and other government entities, to filings and in-court advocacy that resulted in the ability of *pro se* creditors to be heard on issues related to the examiner, ultimately resulting in Phase II of the Examiners' report (see Dkt. No. 788, *Order Extending Deadline to File Responses to Propose Order Granting the Examiner Motion* and Dkt. No. 820, which granted customers the opportunity to be heard on examiner-related issues, and the *Order Directing the Appointment of an Examiner*, paragraph 19, which directed the Examiner to "review the pro se filings related to the Motion, to consider whether any revisions to the Scope are appropriate"—later resulting in Phase II of the Examiners' report), to facilitating the ability of creditors to make their voices heard in the bankruptcy process via sign-on letters and other filings, to joining in group appeals filed by multiple creditors (including the Earn appeal, filed by a number of creditors; the Customer

Contract Claims Appeal, filed by myself and Mr. Daniel Frishberg; and the Customer Class Claims Cross-Appeal, filed by myself and Mr. Daniel Frishberg).

**MY CONTRIBUTIONS PROVIDED ACTUAL, DEMONSTRABLE BENEFITS TO THE CELSIUS ESTATES AND NOT SOLELY TO MYSELF**

The Earn appeal made a substantial contribution to these cases because it resulted in an order from District Judge J. Paul Oetken that the Earn order was interlocutory (See Dkt. No. 2320). That interlocutory status (that the order is not final until it's truly final) kept ambiguity alive with respect to Earn *vs* Borrower claims, and was pivotal to reaching a mediated settlement, because it gave Earn creditors more legal leverage going into mediation. That additional leverage helped broker a negotiated settlement with more equitable treatment between Earn Account Holders and Borrowers, which was pivotal to reaching an agreement that both sides could live with.

The Customer Class Claims Cross-Appeal was resolved when the Series B Preferred Holders withdrew the Customer Class Claims Appeal. It provided leverage in securing a settlement with the Series B Preferred Holders, which provided value to the Debtors' estates and allowed the case to move forward to confirmation. The Customer Contract Claims appeal (which Mr. Daniel Frishberg and I filed along with the Unsecured Creditors Committee) helped drive a settlement with the Series B Preferred Holders. The remaining issues from the Contract Claims appeal, related to substantive consolidation of certain Celsius debtor entities, were resolved at the New York City mediation (pending plan confirmation) as part of the global settlement, allowing the appeal to be put into abeyance pending confirmation of a plan that resolves those issues.

Finally, there is the matter of my Adversary Proceeding, Case No. 23-01025 (MG). While the Adversary proceeding was filed to represent my personal interests and raised certain issues that applied to not every creditor, it did expose the murkiness of the contractual and non-contractual relationships that customers had with Celsius, and demonstrate that plenty of Earn customers, in reality, had contract claims under the lending agreements that they signed. The mediation I participated in in New York City with Judge Wiles was both in my personal capacity and as the Chair of the Ad Hoc Group's steering committee and it resolved **all** outstanding actions for participating parties. Notably, the issues raised in my Adversary Proceeding stand to be mooted by the Term Sheet and Plan Support Agreement I signed–pending confirmation of a plan consistent with the Term Sheet–but the resolution I agreed to did not result in a higher recovery for me, or for creditors in my specific situation. On the contrary, I had colorable claims that I had a different contractual relationship with Celsius than general Earn customers and, in fact, without a negotiated resolution, was fully prepared to argued for a separate classification for certain Earn claims such as mine for both contract and non-contract reasons. Arguments that would have resulted in a higher recovery for me and creditors in my situation were put aside at mediation and subsumed into the 105% global fraud settlement and an agreed-upon treatment for Earn and Borrow claims, in the interests of a larger global resolution that would expeditiously get creditors out of Chapter 11, saving the estate significant funds.

The negotiated resolution of outstanding litigation provided actual, demonstrable benefit to the Celsius estates, because it saved significant litigation dollars and expedited plan confirmation. In recognition of the contribution of *pro se* participation, including mine, the term

sheet I signed in mediation expressly provided that the Plan would be amended to provide for the payment of reasonable and documented expenses for "participating *pro se* claimants in their individual capacities," "as consideration, in part for.... participation in the Mediation, their role as Class representative, and other contributions to the case as appliable." (See Dkt. No. 3064)

As the Earn Ad Hoc Group has noted, and as the Debtors noted in Court today, the Term Sheet also established the mechanism for resolving the then pending Committee Class Claim which covered over 30,000 individual non-contract claims held by Earn and Borrower account holders against the Debtors, including my individual non-contract claim, which had been selected as a Bellwether claim before the Customer Class Claims process was initiated. More 30,000 claims were filed—but, in the end, only around 1,700 creditors decided to reject the settlement we reached in New York. The Term Sheet committed the Debtor and the Committee to enter into a Settlement Agreement which would allow each such account holder to "opt-out" of the class claim settlement at the time of balloting. The proposed class claim settlement was approved by the Court on August 14, 2023 (See Dkt. No. 3288), saving the estate significant future litigation costs and mooting the Bellwether claims process, while giving all account holders the option to receive **105%** of the scheduled amount of their claims as part of a "class claim settlement" (the "**Class Claim Settlement**"). The Class Claim Settlement was overwhelmingly endorsed by eligible account holders in Plan balloting, including myself, with only 1.06% of those eligible to opt-out, voting to "opt-out" of the settlement. *See* Dkt. No. 3574.

## CONCLUSION

I respectfully request that the Court enter an order: (i) approving my Application; (ii) authorizing Debtors to reimburse me for the direct expenses I incurred in making a substantial contribution; (iii) authorizing Debtors to reimburse me for any additional reasonable fees and expenses incurred in an amount not to exceed $1,000 through the Effective Date under any confirmed Plan in the Celsius Case; and (iv) granting such other relief as may be just.

Respectfully submitted,

Immanuel Herrmann, *Pro Se*
October 2, 2023
/s/*Immanuel Herrmann*

## EXHIBIT A - ITEMIZED EXPENSES

1/18/2023 - Filing fee for appeal of *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* - $298

3/21/2023 - Filing fee for *Herrmann vs. Celsius Network LLC, et al.* Adversary Proceeding - $350

5/16/2023 - Filing fee for Cross-Motion for Leave to Appeal (Customer Class Claims Appeal) - $5

6/28/2023 - Filing fee for Customer Contract Claims Appeal - $298

PACER Fees for accessing appeals-related filings (not available on Stretto) - $192.90

Total expenses: $1,143.90

**CERTIFICATE OF SERVICE**

      I hereby certify that on Monday, October 2, 2023, I filed and served a true and correct copy of the *Application of Immanuel Herrmann Pursuant to 11 U.S.C. §§ 503 For Allowance and Payment of Expenses Incurred in Making a Substantial Contribution* upon the Core/2002 service list by electronic mail in accordance with the SDNY Bankruptcy Court's *Amended Final Order (I) Establishing Certain Notice, Case Management, And Administrative Procedures, And (II) Granting Related Relief* (ECF Docket No. 1181).

Respectfully submitted,

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann
*Pro Se*
Dated: October 2, 2023