**Hearing Date: October, 24, 2023 at 10:00am (prevailing Eastern Time)**
**Objection Deadline: October 16, 2023 at 4:00pm  (prevailing Eastern Time)**

Daniel A. Frishberg
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# NOTICE OF HEARING ON DANIEL A. FRISHBERG' MOTION FOR EXPENSES AND FEES TO BE PAID FOR A SUBSTANTIAL CONTRIBUTION TO THE ESTATE

**PLEASE TAKE NOTICE** that a hearing on *Daniel A. Frishberg' Motion For Expenses And Fees To Be Paid For A Substantial Contribution To The Estate* will be held on October, 24, 2023 at 10:00 am (prevailing Eastern Time) (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Hearing in person may appear before the Honorable Martin Glenn, Chief United States

Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York,

in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.

Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance

before the Court, need to make an electronic appearance (an "eCourtAppearance") through the

Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. When making an

eCourtAppearance, parties must specify whether they are making a "live" or "listen only"

appearance. Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m.,

prevailing Eastern Time, the business day before the hearing (i.e., on October 23, 2023). For

more information on how to make an eCourtAppearance, please see Judge Glenn's chambers

page on the Court's website for at:

https://www.nysb.uscourts.gov/content/chief-judge-martin-glenn.


**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected

participants in the Hearing and the Court's security requirements for participating in a Zoom for

Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m.

(prevailing Eastern Time) on October, 24, 2023, must connect to the Hearing beginning at 9:00

a.m. (prevailing Eastern Time) on October 24, 2023. When parties sign in to Zoom for

Government and add their names, they must type in the first and last name that will be used to

identify them at the Hearing. Parties that type in only their first name, a nickname or initials will

not be admitted into the Hearing. When seeking to connect for either audio or video participation

in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which

you seek to connect. Court personnel will admit each person to the Hearing from the Waiting

Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (iii) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by October 16, 2023, at 4:00 p.m. (prevailing Eastern Time), by (a) via electronic mail at [email redacted, contact the Debtors who will handle the service if needed] (b) to the entities on the Master Service List available on the case website of the above-captioned debtors at https://cases.stretto.com/celsius, and (c) to any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by Daniel A. Frishberg.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Respectfully submitted,

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
October, 2, 2023

Hearing Date: October, 24, 2023 at 10:00am (prevailing Eastern Time)
Objection Deadline: October 16, 2023 at 4:00pm  (prevailing Eastern Time)

Daniel A. Frishberg
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
In re:                                  )                Chapter 11
                                        )
CELSIUS NETWORK LLC, *et al.*,[2]       )                Case No. 22-10964 (MG)
                                        )
                Debtors.                )                (Jointly Administered)
_____)


# DANIEL A. FRISHBERG' MOTION FOR EXPENSES AND FEES TO BE PAID FOR A SUBSTANTIAL CONTRIBUTION TO THE ESTATE


## PRELIMINARY STATEMENT

Daniel A. Frishberg ("Mr. Frishberg") hereby files this application (the "Application")

pursuant to sections 503(b)(3)(D) of Title 11 of the United States Code (the "Bankruptcy Code")

for entry of an order allowing as administrative expenses the incurred reasonable expenses that

he has incurred throughout the Bankruptcy.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Mr. Frishberg  has already and is likely to continue to make substantial contributions to this Chapter 11 bankruptcy case.

Throughout the duration of these cases, the majority of the actions that Mr. Frishberg took were to help the general creditor body, and to increase (or slow down the decrease of) the value of the estate. Mr. Frishberg's total claim is approximately $2700, so any argument that he was acting out of self interest is laughable, as Mr. Frishberg could have earned far more by working a minimum wage job instead of dedicating thousands of hours to these Chapter 11 cases. Mr. Frishberg is simply requesting (some of) the expenses he has incurred while making contributions to the estate.

Mr. Frishberg was one of the Earn Claimants who attended Mediation between the Earn Ad Hoc Group, Borrower Ad Hoc Group, the UCC, and the Debtors in New York from July 17-19. Mr. Frishberg was one of the signatories on the Term Sheet (ECF Dkt. No. 3064). The Term Sheet in relevant part stated: "The Plan shall be amended to provide for the payment of expense reimbursement for reasonable and documented expenses and legal fees incurred by the….. participating *pro se* claimants in their individual capacities….under Section 503(b)(3)(D) of the Bankruptcy Code as consideration, in part, for the settlement of the relevant adversary proceedings and the appeal as provided herein, participation in the mediation, their role as class representative, and other contributions to the case as applicable". (Content removed).

Mr. Frishberg's expenses are attached as **Exhibit A**. The amount requested ($626.98) is an extremely small amount compared to the amounts being spent in these cases. Even a single

day of expenses that Kirkland billed in some of their fee statements is greater than the ***entirety*** of Mr. Frishberg's expenses. Mr. Frishberg also requests that the Court preemptively approve the Debtors to pay *up[3] to* $1000.00 (USD) in expenses for any reasonable expenses incurred after the filing of this motion without further court approval.

This Court should **APPROVE** this Application for the reasons stated below. If this Court is so inclined, and there are no objections, this Court should approve this Application without hearing oral arguments on it (due to the cost to the estate of the arguments exceeding the expenses).

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue is now[4] proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are Sections 503(b)(3)(D) of the Bankruptcy Code (as well as likely other sections, but I do not know them).

## REQUEST FOR *PRO SE* RELIEF

---

[3] Mr. Frishberg does not expect to incur expenses anywhere near $1000.00 USD, but this is simply a precaution. This is for expenses incurred in traveling to New York IF NEEDED for this Motion, or other matters involving this case.

[4] As previously stated, the venue was not correct and proper, but it now has become correct and proper due to the stage of the bankruptcy that we are at.

As I am a *pro se* filer, and have not gone to law school, I do not understand the law as well as a lawyer would. I ask that the Court interpret my filings liberally, and to allow me to correct any mistakes in my pleadings, and to give me a clear opportunity to have my declarations and exhibits (if needed) entered into the record. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."). As the Supreme Court of the United States said in *Haines v. Kerner*, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 404 U.S. 519, 520-521 (1972), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This Court has the ability to "liberally" construe my requests. I ask that if anything is in the wrong format, or cites the wrong federal code or the wrong subsection of Section 503 (or other sections/codes)  or I make citation mistakes, etc, that you allow me to correct any deficiencies. As the Supreme Court of the United States said in *Haines v. Kerner*, "the district judge should have explain[ed] the correct form to the pro se plaintiff so that [he] could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the pro se plaintiff so that [he] could have amended his pleadings accordingly." 404 U.S. 519, 521 (1972), citing *Henry Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991).

## **RELIEF REQUESTED**

The Bankruptcy Code provides for the payment of "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by….a creditor….in making a substantial contribution in a case under chapter 9 or 11 of this title."

Accordingly, sections 503(b)(3) permit a debtor to reimburse a party's reasonable expenses that were incurred in making a substantial contribution to the bankruptcy case. *See, e.g., In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).

Whether a substantial contribution occurs is a question of fact. *See Trade Creditor Grp. v. L.J. Hooker Corp., Inc.*, 188 B.R. 117, 120 (S.D.N.Y. 1995), aff'd, 109 F.3d 349 (2d. Cir. 1996). Courts have found that a substantial contribution was made when efforts have led to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders. *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) (quoting *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989)). In general, "services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered ***solely*** on behalf of a creditor's own interest should be compensated." *U.S. Lines, Inc.*, 103 B.R. at 430 (emphasis added).

Compensable services "foster and enhance - rather than retard and interrupt - the progress

of reorganization. Conversely, insubstantial services include those that do not actually increase

the size of the estate, or deplete the assets of the estate without providing any corresponding

greater benefit." *Granite Partners*, 213 B.R. at 446 (citations omitted).


"A direct benefit also cannot be established merely by a movant's extensive participation

in the case or be based on services that duplicated those of professionals already compensated by

the estate, such as counsel for the debtor or an official committee." *In re Bayou Grp., LLC*, 431

B.R. 549, 561 (S.D.N.Y. 2010) (holding that an applicant cannot recover for services that are

duplicative of other professionals in the Chapter 11 case). This is why all of the expenses Mr.

Frishberg is requesting to be reimbursed for, were **not** incurred while working on items/work that

are duplicative of work being done by professionals being compensated by the estate.


Courts view "in hindsight" whether an applicant has made a substantial contribution in

the case. *Granite Partners*, 213 B.R. at 447. An "applicant must show a 'causal connection'

between the service and the contribution." The burden of proof is on the applicant to demonstrate

by a preponderance of the evidence that it has made a substantial contribution in the case. Mr.

Frishberg believes that he has met his burden, by a big margin. *See Short Pump Ent't, L.L.C. v.

Randall's Island Family Golf Ctrs.* (*In re Randalls Island Golf Ctrs., Inc.*), 300 B.R. 590, 598

(Bankr. S.D.N.Y. 2003); *Granite Partners*, 213 B.R. at 445; *In re Best Products Co., Inc.*, 173

B.R. 862, 865 (Bankr. S.D.N.Y. 1994).

Courts in the Second Circuit consider various factors when analyzing a request for substantial contribution, including: (i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual, significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case. *See, e.g., Hooker Invs., Inc.*, 188 B.R. at 120; *Best Prods.*, 173 B.R. at 865.

Mr. Frishberg requests that the expenses listed in **Exhibit A** (totaling $626.98) are given Admin Priority claim status, and paid in full.

## ARGUMENT

Mr. Frishberg's contributions to the estate, and the Bankruptcy Case as a whole easily meet, and exceed the standard necessary for compensation under section 503(b). Numerous important contributions to the estate would not have occurred without Mr. Frishberg.

1. **Mr. Frishberg's Contributions.**

Mr. Frishberg contributed to the estate in numerous ways, some of his contributions are listed below, but all of them are too numerous to name.

- Reminding the Debtors that Kirkland & Ellis did not file a claim against their other client, Voyager for a ~$8.8 million preference.
- Agreed to withdraw with prejudice[5] his Adversary Proceeding (*Frishberg v Celsius et. al.*, Case Number 22-01179).
- Participated as one of the Bellwether Claimants.

---

[5] They are currently stayed pending the occurrence of the Effective Date.

- Settled substantive consolidation and class claims by agreeing to dismiss various appeals.

- Obtained a ruling from this Court that the Debtors did not have $750 million worth of insurance (unlike they claimed). The FTC mentioned what seems to be Mr. Frishberg's declaration on the purported insurance.

- Took a leading role in the Earn Order Appeal, and obtained a ruling stating that the Earn Order[6] is an interlocutory order, and as such is subject to reconsideration.

- Held interviews[7] with regulators, and various government entities.

- Appealed[8] the Customer Contract Claims Order alongside Mr. Herrmann.

- Cross-Appealed[9] the Preferred Series B appeal of the Customer Class Claims Order alongside Mr. Herrmann.

## 1. **SUBSTANTIAL CONTRIBUTIONS**

### A. **The Voyager Matter**

Mr. Sontchi, the court appointed Fee Examiner in this case, gave a brief background of the Voyager Claim Issue (the "Voyager Claim Issue") at the omnibus hearing held on July 18th,

---

[6] ECF Dkt. No. 1822. https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901042380000000067.pdf

[7] I was informed that the interviews themselves, as well as their content are strictly confidential. I do not believe that disclosing the fact that the interview occurred (with unspecified regulators/government entities) would be violating that confidentiality. I will not elaborate further unless needed.

[8] This was not duplicative of the UCC's appeal, since the UCC did not, and were not able to argue that there were fatal due process issues with the Customer Contract Claims Order, as they participated in the litigation, and unlike approximately 600,000 customers, were served with the scheduling order during which people were required to file briefs, or miss the window to file briefs.

[9] Mr. Frishberg and Mr. Herrmann's work was not duplicative of the UCC's appeal, as we brought up judicial estoppel, which the UCC did not.

2023: "So the Voyager issue is that Kirkland & Ellis is lead counsel to Voyager, which is a

separate crypto case. <u>They are also the counsel to Celsius.</u> Voyager had a bar date for the filing of

proofs of claim and Celsius did not file proof of claim prior to the bar date. Additionally, because

of that relationship and other relationships, the Debtor hired conflicts counsel which was Akin

Gump. After -- **actually, I believe it was Mr. F[r]ishberg who brought it to everyone's

attention after it was brought to the attention of the estate that the bar date had been

missed.** Kirkland and Akin both got very busy to file a motion in the Voyager case seeking to

allow the filing of a late proof of claim. Ultimately, that was denied by Judge Wiles who noted

that among other things that <u>it could not constitute excusable neglect when the same law firm</u>

<u>represented Celsius and Voyager and that law firm did not file timely proof of claim.</u>" (emphasis

added)(spelling corrected with bracket).

At the hearing held in the Voyager case, on January 24th, 2023, Judge Wiles brought up

Mr. Frishberg (and several other *pro se*'s) objection to the retention of Kirkland & Ellis by the

Debtor in the Celsius case due to the existing conflict: "In the Celsius case when Kirkland and

Ellis moved -- or excuse me, when Celsius moved for permission to retain Kirkland and Ellis,

there was an objection by a customer that was filed on July 28th [,2022,] that alleged that there

was a conflict because Kirkland and Ellis also represented Voyager, and that Voyager had had

dealings with Celsius and was a customer of Celsius." (date added). Mr. Hurley also stated at that

hearing: "what I understand did happen is that in early November, a Celsius creditor flagged an

issue related to Voyager for Kirkland, and I believe that's what caused Kirkland to ask A&M to

look at the schedules and find out hey, are there Voyager transfers we should be concerned

about?". Mr. Hurley further elaborated: "The creditor is a gentleman named Mr. (Frishb[e]rg), I

believe is his name. But that happened, as I said, in early November and I -- my understanding is

that is what spurred the communication from Kirkland to A&M." (spelling corrected).

Mr. Frishberg's actions will likely lead to recoveries from Kirkland & Ellis to compensate

for their failure to file a timely proof of claim. Absent Mr. Frishberg's participation, there is no

evidence that this issue would have been discovered.

### B. <u>Adversary Proceedings</u>

Mr. Frishberg was invited to the mediation between the Earn Ad Hoc and the Borrower

Ad Hoc Groups due (in part at least) to his Adversary Proceeding. Mr. Frishberg was also

selected as one of the Bellwether Claimants due to his Adversary Proceeding.

Mr. Frishberg filed a small claims court lawsuit against the (soon to be) Debtors on July

11th, 2023. Mr. Frishberg then filed a Lift Stay Motion (ECF Dkt No. 342). Mr. Frishberg's Lift

Stay Motion was denied. Mr. Frishberg requested his Lift Stay filing fee to be refunded, and the

Court granted his request (ECF Dkt No. 750). In the order granting the request, the Court stated:

"The issues raised by the Motion to Lift Stay were raised by numerous unrepresented creditors of

Celsius in many letters to the Court that have been posted on ECF. It was important for the Court

to address the issues raised by the Motion to Lift Stay and explain why the automatic stay

prevents Frishberg and other similarly situated parties in interest from pursuing non-bankruptcy

court remedies against the Debtors". The Lift Stay is another example of a way Mr. Frishberg

helped advance these Chapter 11 cases. The Debtors cited the denial of Mr. Frishberg's Lift Stay

numerous times in regards to various motions from creditors seeking to recover their coins, and

Lift Stay Motions.

Mr. Frishberg agreed as a part of the negotiations at mediation to withdraw (with

prejudice) his Adversary Proceeding on the effective date of the plan. The Adversary Proceeding

is currently stayed until the effective date (as long as the deal that was reached at mediation is

intact). Mr. Frishberg's withdrawal of the Adversary Proceeding will save the estate significant

legal fees. Mr. Frishberg believed, and still believes that his case has substantial merit, and that

he will win, but decided to settle it for the greater good. Absent Mr. Frishberg's agreement to

withdraw his Adversary Proceedings, the estate would have substantial legal fees, and there is no

guarantee that the estate would win in the end.

### C.  **The Earn Appeal**

Mr. Frishberg took a leading role in the appeal of the Earn Order (the "Earn Appeal",

ECF Dkt. No. 1894[10]). As a result of the actions of the *pro se* appellants, the District Court

ruled[11] that the Earn Order was an interlocutory order, and it also ruled that "The Earn Decision

does not "finally dispose" of the issue of ownership of the assets in the Earn Accounts". The

ruling that Mr. Frishberg helped obtain materially benefitted the general Earn Creditor body as a

whole. The fact that the Earn Order is subject to reconsideration at any time, helped in

negotiations with the Borrowers, Debtors and UCC.

### D.  **Regulatory Interviews**

---

[10] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901192380000000125.pdf

[11] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903282380000000045.pdf

Mr. Frishberg participated in an interview with various regulatory and government
agencies. The identity of the agencies, what occurred during the interview, and more, are all
confidential. Mr. Frishberg also communicated with various regulatory agencies, including state
regulators for various reasons, with the goal of advancing the Celsius case.


E. **Customer Contract Claims Order Appeal**

Mr. Frishberg, alongside Mr. Herrmann (the "Customer Appellants") appealed the
Customer Contract Claims Order shortly after the UCC filed their appeal of it. The work that the
Customer-Appellants did was not duplicative of the UCC's. The Customer-Appellants argued
many of the same points that the UCC did, but they also had several unique ones. One of the
main issues that the Customer-Appellants raised, were not brought up by the UCC, and as a
matter of fact, ***could not be*** brought up by the UCC. The Customer-Appellants raised the fact
that they, along with approximately 600,000 other customers, were not served with *The Order (I)
Setting A Briefing Schedule and (II) Granting Related Relief* (the "Briefing Schedule", ECF Dkt.
No. 1747). The Customer Appellants filed a motion to vacate the Customer Contract Claims
order in this court, which was denied. That led to the Rule 60b Appeal. The active participation
of creditors (in this instance, Mr. Herrmann and Mr. Frishberg) has helped the estate in
invaluable, and in far too many ways to count. Mr. Frishberg and Mr. Herrmann have agreed to
stay their appeals, which will be dismissed with prejudice on the occurrence of the effective date.
Mr. Herrmann and Mr. Frishberg are saving the estate substantial resources by not litigating this
issue, and in Mr. Frishberg's opinion, having the Customer Contract Claims Order overturned on
its merits.

**F.  Series B Cross Appeal**

Mr. Frishberg, alongside Mr. Herrmann cross-appealed the Preferred Series B's appeal of the *Order Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert Non-Contract Claims on Behalf of Account Holders* (Dkt. No. 2496). The Cross-Appeal[12] (the "Cross-Appeal") was filed at Dkt. No. 2664. The Customer Appellants' work was not duplicative of the UCC's, as the Customer-Appellants raised judicial estoppel, and argued that the Series B cannot claim that the UCC cannot represent customers, since they had no issue with the UCC representing customers when it benefited them (during the Customer Contract Claims Litigation, during which there were no customers, or exclusive customer representatives participating). Shortly after the Customer Appellants raised the Cross-Appeal, and the contents of it with the Series B, the Series B agreed to dismiss the appeal without prejudice (and certain reservation of rights). The notice of dismissal[13] is filed at Dkt. No. 2817. Without Mr. Frishberg (and Mr. Herrmann's) participation, the issue of judicial estoppel, which in the Customer-Appellants' view led to the dismissal of the Series B's frivolous, appeal of a clearly interlocutory order (which they did not seek leave to appeal for), would not have been raised. Absent Mr. Frishberg (and Mr. Herrmann's) participation, the Series B's appeal *may* not have been dismissed as quickly.

**G.  Insurance (Or Lack Thereof)**

In December, 2022, Mr. Frishberg objected to the sale of GK8, since he believed the Debtors claims (which they had not, at that point, stated were false). Mr. Frishberg's objection

---

12 https://cases.stretto.com/public/x191/11749/PLEADINGS/1174905172380000000187.pdf

13 https://cases.stretto.com/public/x191/11749/PLEADINGS/1174906162380000000057.pdf

was never docketed, and the day after his objection was filed, the sale of GK8 was approved. Mr. believed that GK8 held at least $750 million worth of insurance, as that is what Mr. Mashinsky, and Celsius claimed. Mr. Frishberg also filed a declaration stating that he relied on Celsius's claims of insurance to pick them to earn interest on his crypto with, and to not withdraw his assets from Celsius in the days leading upto the Pause. The FTC seemed to think that Mr. Frishberg's declaration had merit since they cited[14] it in their complaint[15] against Celsius, and various insiders. The SEC's complaint also mentioned Celsius's claims of insurance. Mr. Frishberg's actions here helped to materially advance these cases. Absent Mr. Frishberg's participation, it is likely that these issues would never have been raised in this Court, or potentially have even come to light at all.

## 2. SUPPORTING ARGUMENTS

Subsection 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging "meaningful creditor participation in the reorganization process," *Richton,* 15 B.R. at 855-56 (citation omitted), and "keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Otte v. U.S.,* 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974) (citation omitted). Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued *in protecting his or her own interests*. Mr. Frishberg did not participate in the Celsius bankruptcy out of (purely) self-interested reasons. Mr. Frishberg's

---

14 They said: "one consumer stated in a sworn declaration that he considered the claim of $750 million in insurance when deciding to keep his assets on the Celsius platform in 2022." The complaint presumably cites Mr. Frishberg, since to the best of his knowledge and belief, Mr. Frishberg was the only customer to have filed a sworn declaration in regards to the claims of insurance.

15 https://www.ftc.gov/system/files/ftc_gov/pdf/2223137celsiusnetworkcomplaint.pdf

claim is approximately $3,000 USD (valued as of the petition date), even if Mr. Frishberg got a 100% in kind (non-dollarized) recovery, he would still only get approximately $4,000 worth of crypto, which does not justify dedicating thousands of hours. Mr. Frishberg did not invest thousands of hours into this case for monetary reasons. Mr. Frishberg did it based on principle, and to benefit the estate, and all creditors. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection. *In re Solar Mfg. Corp., In re Lister,* 846 F.2d 55, 57 (10th Cir. 1988); *Consol. Bancshares, Inc..* Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest **cannot in and of itself** preclude reimbursement. Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities **that will benefit the estate as a whole**.

## CONCLUSION

For the aforementioned reasons, the Court should **GRANT** this Motion, and **OVERRULE** any objections (if there are objections, as of the filing of this Motion, no parties have stated any intent to object).

**EXHIBIT A:**

| Mediation Expenses: | | | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 07/16/2023 $3.99 Breakfast for the morning, purchased in SFO airport. | | | |
| 07/16/2023 $9.25 Metro Card. | | | |
| 07/16/2023 $5.00 MTA LIRR Ticket. | | | |
| 07/16/2023 $28.51 Uber from the Subway (metro) to hotel. | | | |
| 07/16/2023 $11.20 Subway (Food, not transportation). | | | |
| 07/16/2023 $7.57 Starbucks | | | |
| 07/17/2023 $3.58 Duane Reade #14131 (pharmacy deodorant). | | | |
| 07/18/2023 $16.33 Starbucks during mediation for other Earn mediation participants. | | | |
| 07/19/2023 $19.92 Starbucks during Mediation with other Earn Mediation participants. | | | |
| 07/19/2023 $1.40 Duane Reade #14131 (pharmacy breath mints for Earn mediation participants). | | | |
| 07/20/2023 $35.00 JetBlue Bag Fee. | | | |
| 07/20/2023 $68.93 Uber to JFK. | | | |
| 07/20/2023 $52.96 Uber from airport to home. | | | |
| Total: 263.64 | | | |
| | | | |
| | | | |
| Lawsuit Expenses: | | | |
| 07/11/2022 | $324.47 | | Court filing fee Hillsborough County |
| 07/11/2022 | $18.92 | | Uber to Court |
| 07/11/2022 | $19.95 | | Uber from Court |

| | | | |
|---|---|---|---|
| Total: 363.34 | | | |
| | | | |
| Overall Total: 626.98 | | | |