Dear Honorable Judge Martin Glenn,

I am following up with you regarding the 1127(a) matter I originally raised and withdrew after a response from Kirkland that did not address these issues related to my specific situation, but other general claims. In further analysis, I do believe a 1127(a) violation did occur and I would motion to request a hearing the matter. I also believe that due to the language, the plan does not meet my best interests as a rejecting creditor such as myself in comparison to a Chapter 7 liquidation, which would dollarize my claim in accordance to the petition day prices, from debtor's exhibit in [Docket 1420].

I have a particularly unique situation in Celsius, as everyone tuning into the proceedings has seen. I had CEL in Pure Custody that I was not able to transfer well ahead of the Freeze date. I hope this will provide further clarity on my situation to the court and fellow creditors and my arguments and line of questioning.

Here are the facts that lead to this 1127(a) allegation:

I had around 750,000 CEL Tokens that were in Custody, and was never able to be moved. These would be classified as Pure Custody as they never interacted with the Earn Program.

I was not eligible to withdraw my CEL in accordance to the Withdrawal Notice. This is noted in Celsius's FAQ.

- **25. Can I pay off my loan so I can become eligible?**
  Accounts that had an active loan as of December 20, 2022 are ineligible for withdrawal. Loan repayment will not open eligibility at this time.

The debtor's Counsel also confirmed that due to having an active loan, I was unable to withdraw my Pure Custody CEL Tokens. Please see their email in the next page.

CONTINUED ON NEXT PAGE



Hello,

Pursuant to paragraph 9 of the Court's *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket 1767] and attached here for reference, customers who also have a loan with Celsius are ineligible to withdraw assets, even if they had "pure" Custody assets or otherwise qualified for withdrawal under the recently posted Withdrawal Notice.

From the Schedule of Assets and Liabilities, it looks like you also had a loan (you can see your name listed on page 764 of the attached Schedule titled "D"). As a result, you are not able to withdraw at this time.

Thank you,

---

**KIRKLAND & ELLIS LLP**

601 Lexington Avenue, New York, NY 10022

F +1 212 446 4900

---

CONTINUED ON NEXT PAGE

I accepted the Custody Settlement.

The Custody Settlement [Doc 2291-1] calls for the following:

- For the avoidance of any doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding obligation owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Deposit Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.

As I was an impaired Pure Custody holder having a loan, I was eligible to vote as the 6A Class instead of automatically being a 6B.

On the 6A Class ballot, I voted no, which was successfully reflected in the balloting.

The Settlement indicates that I would receive my Custody assets in accordance with the allowed claims.

Two days after the balloting, on 9/27/23, the plan was amended per [Docket 3577], and changed the line 83 into the now line 84:

> 84. 83. "*Deactivation Date Cryptocurrency Conversion Table*" means the conversion table the Distribution Agent shall use to calculate the ~~amount of Cash or Cryptocurrency to distribute to a~~Claims of Holders of ~~an~~ Allowed Custody Claims ~~or Withhold Claim~~ that did not retrieve ~~its~~their Plan distribution from the Celsius platform by the Deactivation Date in Cash and Liquid Cryptocurrency, which table shall contain applicable Cryptocurrency prices as of a date agreed by the Debtors and the Committee, which date is expected to be approximately fifteen (15) days prior to the Deactivation Date. Notwithstanding anything to the contrary herein excepting Custody Claims from the CEL Token Settlement, the Deactivation Date Cryptocurrency Conversion Table shall provide that CEL Token is priced at $0.25 if the Bankruptcy Court approves the CEL Token Settlement, or such other amount as ordered by the Bankruptcy Court. For the avoidance of doubt, following the Deactivation Date, such Claims shall be subject to further conversion pursuant to any applicable Distribution Cryptocurrency Conversion Table in connection with subsequent distributions.
>
> 85. 84. "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.C of the Plan.

8

22-10964-mg    Doc 3577    Filed 09/27/23    Entered 09/27/23 11:25:05    Main Document
Pg 110 of 193

CONTINUED ON NEXT PAGE

As a rejecting member as confirmed by the balloting, this change adversely affects me, as it forces a $0.25 CEL valuation on deactivation day value.

Previously, it indicated that the debtor and UCC would confer on a price 15 days ahead of deactivation. In this valuation, neither the debtor or the UCC can guarantee I would receive more value than a Chapter 7 case on such date, where am I entitled to 100% liquidation value on my Pure Custody CEL Tokens. This fails the best interest test by not assigning a guaranteed predetermined value.

As the UCC's expert witness Max Galka testified yesterday, the Crypto market is more volatile than a traditional market.

Max Galka indicated the price of CEL exceeded several dollars per CEL Token after Bankruptcy.

Max Galka also indicated his analysis did not include the price after Bankruptcy.

Max Galka also indicated he had no knowledge of technical issues with Celsius wallets.

Max Galka indicated he did not know when the Celsius Custody product was introduced, however, his report indicated it was introduced in April of 2022.

Max Galka also indicated that I had never financially participated in any alleged "Short Squeeze" monetarily according to his findings.

Max Galka indicated that his company, Elementus, had seed funding from Alameda Research.

Alameda Research was FTX's sister company.

FTX was a direct competitor of Celsius.

FTX also provided an "Earn" program for their customers.

Celsius' Chief Restructuring Officer, Chris Ferraro, had indicated under oath that he was not aware of the CEL Token Settlement being rejected by the CEL Token Holders in the Custody class.

Per the Blonstein Declaration [Docket 1192], Celsius lacked the necessary assets to fulfill their liabilities in the Custody and Withhold classes on the CEL token ahead of the Freeze Date.

The Custody CEL Token holders in a majority voted to reject the CEL Settlement, as found on the debtor's balloting. Please see the next page for this.

CONTINUED ON NEXT PAGE

| Class 6A (General Custody Claims) | Count | % | Dollars | % |
|---|---|---|---|---|
| Accept: | 2,896 | 99.50% | $87,378,989.97 | 98.78% |
| Custody Opt-In (Deemed to Accept): | 2,973 | | $52,451,991.14 | |
| Reject: | 29 | 0.50% | $1,722,936.80 | 1.22% |
| Tabulated Ballot Totals: | 5,898 | | $141,553,917.91 | |
| Abstain: | 56 | | $159,856.15 | |
| Unacceptable or Amended | 596 | | | |
| All Ballot Totals: | 6,550 | | | |
| CEL Token Accept: | 350 | 97.49% | $104,933.60 | 35.83% |
| CEL Token Reject: | 9 | 2.51% | $187,912.09 | 64.17% |
| Class Claim Settlement Opt Out | 34 | | $558,010.29 | |
| Third Party Release Opt-Out: | 31 | | | |
| Contributed Claim Election: | 2,352 | | | |

The CEL Token Settlement under the plan explicitly excludes the Custody class from a $0.25 valuation.

• Except as provided in Article III.B.17, all CEL Token Deposit Claims, other than **Custody Claims that are CEL Token Deposit Claims**, shall be valued at $0.25/CEL Token (i.e., 1 CEL Token equals a $0.25 CEL Token Deposit Claim), and shall otherwise receive the treatment associated with the program in which they were deployed.

Your honor has not ruled on the matter of valuation, nor regarding the matter of CEL being a security.

As per the Custody Settlement agreement, it indicates the court has final jurisdiction on all matters regarding the order.


11. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


I have reached out to Kirkland and the UCC in good faith to attempt to resolve this concern and obtain absolute clarification. Thus far, answers have been vague or have not applied to my exact situation. Or, at times, no answers at all.

The UCC has been aware of my Custody CEL Token matter since February of 2023, but in my opinion, has failed to act in a fiduciary duty by compromising my proposed return of value. They even brought in an expert witness to attempt to devalue my Custody CEL valuation.


I have attached this email sent to the UCC and their response in the page below.


CONTINUED ON NEXT PAGE

## CEL Token Inquiry › Inbox ×

**Dimitry Kirsanov** — Feb 21, 2023, 2:14 PM
to CelsiusCommitteeInquiries

Hi!

I'm the largest Custody holder of CEL token listed in the Bankruptcy proceedings from what I can see. Ahead of withdrawals being suspended, I attempted to move my CEL tokens, but due to an error on Celsius' side, I was not able to, it was showing a zero balance available even though that was not true. This was thoroughly documented with customer service in writing and I went through several CS/ama executives to attempt to resolve this, but I was not able to prior to withdrawals halting and bankruptcy filing. This was an incredible amount of lost opportunity as CEL rallied to nearly $4 in August of 22.

Few questions --

Are there any rights I have as I attempted move the funds ahead of bankruptcy filing/withdrawal freeze? Am I able to somehow recover them?

At the date of BK filing, my CEL tokens in Custody were worth $606,852. Does Custody have different rights than Earn?

Thanks for your help,

Take care,

Dimitry

---

**Celsius Committee Inquiries** celsiuscommitteeinquiries@ra.kroll.com via gmail.com — Feb 21, 2023, 9:33 PM

Dimitry,

Thank you for your inquiry.

For information regarding the proposed treatment of Custody and Earn account holders' interests under the proposed plan, you may wish to review the Debtors' Statement with Respect to the Status of the Debtors' Chapter 11 Plan Process, filed in these proceedings as Docket Number 2066. The case docket can be found here: https://cases.stretto.com/Celsius/court-docket/#search

Please note that the Committee's goal is to maximize the recoveries of account holders and unsecured creditors. Under the Bankruptcy Code, the Committee can, among other things, (i) investigate the debtor, (ii) participate in formulating a chapter 11 plan, and (iii) provide access to information to and receive comments from its constituents. The Committee represents the interests of account holders and unsecured creditors as a whole; as a result, White & Case LLP is not in a position to represent individual account holders in their personal capacity or advise individual account holders on their specific situation. However, White & Case LLP, as proposed legal counsel to the Committee, is working with the Committee to address a number of issues in connection with the interests of unsecured creditors and account holders on the whole, including maximizing value for account holders and unsecured creditors in the Debtors' chapter 11 cases. White & Case LLP can also answer general questions that you might have about the process and provide information about the cases.

PLEASE NOTE: Kroll is the information agent for the Official Committee of Unsecured Creditors of Celsius Network LLC. As such, we are not permitted to provide legal or financial advice. Further, Kroll is not accepting or processing claims in Celsius's chapter 11 cases and any such information provided to Kroll will not constitute a claim in these proceedings. Please refer to https://cases.ra.kroll.com/CelsiusCommittee for further information.

Regards,

---

**Kroll Inquiries**
www.kroll.com

Your honor, as this has been 8 days since this sudden change two days after the balloting, I am actively seeking to retain a counsel on this matter to advise and represent me. This has been extremely difficult for most Attorneys that have not been involved in such a proceeding to interpret and represent and to take in in such a short amount of time.

I am making my motions and objections to the best of my abilities as a Pro Se, I ask the court's continued patience and grace when it involves this matter, as this precise situation was not addressed on the balloting instructions as it involves to Settled Pure Custody rights or directly in dialogue with Kirkland and the UCC. I apologize in advance for any mistakes I have made or may make in the future regarding this matter

Your honor, I was impaired even before the Freeze. the court has exclusive interpretation on this matter as it related to the Custody Settlement and my impaired rights. I hope you are able to make a determination that at least the CEL Custody Holder is entitled to a full petition day recovery.

REMEDIES REQUESTED:

Debtors to address these concerns listed, and provide what rectifications they will make if any to the concerns listed above.

UCC to address their failure to serve in a Fiduciary to a Creditor such as myself.

1127(a) calls for a re-ballot as this adverse change was done after a balloting. Instead, I ask for the court to intervene and make a Judgement that rules CEL in Custody is entitled to petition day values. We all deserve to be out of this Bankruptcy, and the cost of keeping the estate in any further proceedings is only detrimental.

I do not want to delay proceedings and I want us all out of Bankruptcy as soon as possible. The creditors have deserved nothing less.

Thank you,

Dimitry Kirsanov, Pro Se

/s/Dimitry Kirsanov                                                                                   AMENDMENTS LISTED ON NEXT PAGE

AMENDMENTS EXPLAINATION

On page 4, the following changes were made.

- "Max Galka indicated that his company, Elementus, raised seed funding for Alameda Research."

With respect to Mr. Galka, this has been amended to reflect the record to the following, from raising funding for Alameda to being the recipient of Seed Funding from Alameda Research.

- "Max Galka indicated that his company, Elementus, had seed funding from Alameda Research."

The following line was added on the last page to indicate changes in this section:

- AMENDMENTS LISTED ON NEXT PAGE