# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

T.J. McCarrick
To Call Writer Directly:
+1 202 389 3136
tj.mccarrick@kirkland.com

+1 202 389 5000

Facsimile:
+1 202 389 5200

www.kirkland.com

October 13, 2023

**Via ECF**

The Honorable Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green, Courtroom 523
New York, NY 10004-1408

    Re:  *In re Celsius Network LLC*, No. 22-10964 (MG) – Motion *in Limine* to
       Exclude Confirmation Testimony of Oren Blonstein

Dear Chief Judge Glenn:

  The Debtors submit the following motions *in limine* to exclude certain evidence and testimony offered in opposition to confirmation—namely, the trial testimony of Oren Blonstein. Creditors already have had the opportunity (and did) cross examine a company representative about the terms of use governing certain financial instruments issued by the company, and any testimony from Mr. Blonstein about the meaning of those terms of use would be improper legal opinion that should be excluded from evidence. The Debtors therefore ask for an order excluding the testimony of Mr. Blonstein, which has been requested by a single *pro se* creditor (Johan Bronge). *See* Dkt. No. 3770 at 1. Alternatively, the Debtors request an order limiting any questioning of Mr. Blonstein to topics not already covered by Mr. Ferraro.

  ***Legal Standard.*** The purpose of a motion *in limine* is to "aid the trial process" by allowing a court to address on the front end certain evidentiary issues that otherwise would involve "argument at, or interruption of, the trial." *See In re Lyondell Chem. Co.*, 558 B.R. 661, 666 (Bankr. S.D.N.Y. 2016) (Glenn, C.J.); *In re Corporate Resource Servs., Inc.*, 603 B.R. 888, 893 (Bankr. S.D.N.Y. 2019) (Glenn, C.J.). This includes exclusion of cumulative testimony or testimony that would constitute a legal opinion from fact or expert witnesses, as "statements embodying legal conclusions exceed[] the permissible scope of opinion testimony under the Federal Rules of Evidence. *See, United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988), *on reh'g*, 856 F.2d 5 (2d Cir. 1988); *see also Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 181 (S.D.N.Y. 2008) ("Duval also cannot testify as to ultimate legal conclusions.").

# KIRKLAND & ELLIS LLP

The Honorable Martin Glenn
October 13, 2023
Page 2

*Argument*.  Any testimony from Mr. Blonstein should be precluded.  As an initial matter, the only creditor to identify Mr. Blonstein as a potential witness—Mr. Bronge—already had the opportunity to cross examine a Celsius representative (CEO Chris Ferraro) about the terms of use governing his loan.  *See* Ex. A, 10/3/23 Hr'g Tr. 77:25-92:8.  Any testimony from Mr. Blonstein on the same subject therefore would be "needlessly cumulative" and should be excluded pursuant to Fed. R. Evid. 403.  *See Highland Capital*, 551 F. Supp. 2d at 184 ("The proffered testimony of Dondero, Okada, Underwood, Rich, Wood, Ambrecht, and Parent is needlessly cumulative.  Any admissible opinion testimony that they would offer could be addressed by either Duval or Guild."); *see also F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) ("In light of the testimony of at least four other witnesses as to administrative fees they charged or of which they had knowledge, Brookhart's testimony would have been cumulative.").

More fundamentally—and as the Court recognized during the first phase of the confirmation hearing—it is improper to elicit legal opinions from fact witnesses as to the meaning of contractual language.  It is well established that a witness may not opine on the legal obligations of parties under a contract.  *See, e.g.*, *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508 (2d Cir. 1977) ("We hold that the District Court erred in permitting Friedman, an expert witness called by plaintiffs, to give his opinion as to the legal obligations of the parties under the contract."); *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 48 (S.D.N.Y. 2022) ("The interpretation of an insurance agreement is a question of law.") (quotation marks omitted); *Pearlman v. Cablevision Systems Corp.*, 2015 WL 8481879, at *8 (E.D.N.Y. Dec. 8, 2015) (excluding testimony that "essentially interprets the Terms of Service"); *Am. Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 448 (S.D.N.Y. 2006) ("In discussing these clauses, Jervis's report clearly impinges upon the province of the Court, in so far as he essentially proffers his own version of contractual interpretation."); *Kekis v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, 815 F. Supp. 571, 583 (N.D.N.Y. 1993) ("[I]t is emphatically within the province of the court—not a doctor—to interpret contractual terms that are litigated in court.").

It appears, however, that legal opinion is all that Mr. Bronge seeks from Mr. Blonstein's testimony.  Mr. Bronge's list of exhibits features the terms of use and legal pleadings related to the terms of use, *see* Dkt. No. 3770, and that was almost the exclusive focus of his examination of the Debtors' CEO during the first week of the confirmation hearing.  *See* Ex. A, 10/3/23 Hr'g Tr. 77:25-92:8.  But "[t]he interpretation of an unambiguous contract provision is the province of the Court," *see In re Covington Lodging Inc.*, 2021 WL 2492849, at *2 (Bankr. N.D. Ga. June 17, 2021), and the Court here has correctly found that Mr. Bronge's questions predominantly (if not exclusively) "ask for legal opinions," *see* Ex. A, 10/3/23 Hr'g Tr. 89:23-25.  *See also* Ex. A, 10/3/23 Hr'g Tr. 90:9-10 ("THE COURT:  I'm not going to have a legal argument about this."); *id.* at 91:1-5 ("The document itself is in evidence.  And you can – when we get to the conclusion of the case, if you wish to file a memorandum of law, I'll permit you to do that.  But this is not a proper subject for a question of this non-lawyer.").  The Debtors therefore respectfully request an

## KIRKLAND & ELLIS LLP

The Honorable Martin Glenn
October 13, 2023
Page 3

order excluding the testimony of Mr. Blonstein or, alternatively, that any questioning of Mr. Blonstein be limited to topics not already covered by Mr. Ferraro.[1]

Sincerely,

*/s/ T.J. McCarrick*

T.J. McCarrick

---

[1]    To the extent this motion is denied, the Debtors ask permission pursuant to Fed. R. Civ. P. 43(a) for Mr. Blonstein—who resides in California—to appear remotely for any testimony.

# EXHIBIT A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-MG

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC

8

9          Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY  10004

15

16                    October 3, 2023

17                    09:00 AM

18

19

20

21   B E F O R E :

22   HON Martin Glenn

23   U.S. BANKRUPTCY JUDGE

24   ECRO:  Karen

25

1   know, prevent us. There's been tons of investigations that

2   have gone into this, from the examiner to the special

3   Committee, to the UCC. And all of these parties have come

4   out clean on this.

5           MR. PHILLIPS:  I'm not saying that they did

6   anything wrong, but I'm saying that they should stand up for

7   their work on their own two feet, not be shielded by

8   exculpation. I don't understand that.

9           THE COURT:  That may be your position, but ask

10  questions.

11          MR. PHILLIPS:  So why do you think that the

12  professionals who advise both the Debtor and the Committee

13  are in need of exculpation for the distributions to actually

14  be -- to have effect, to actually take place and have

15  effect?

16          MR. FERRARO:  I mean, I think we've gone through

17  some of these details. Both parties have reviewed the

18  contracts. Both parties, UCC advisors as well as the

19  Debtors' legal advisors, helped negotiate the contract, set

20  up the processes for the distribution with the Debtors'

21  internal team. So significant contributions have been made.

22          MR. PHILLIPS:  That's all I have.

23          THE COURT:  Thank you very much, Mr. Phillips.

24  Anybody else wish to cross-examine?

25          MR. BRONGE:  Your Honor, yes. This is Johan

1    Bronge, Pro Se Creditor.

2              THE COURT:  Okay, Mr. Bronge, go ahead.

3              MR. BRONGE:  Yes.  Good morning, Mr. Ferraro.

4              MR. FERRARO:  Good morning.

5              MR. BRONGE:  I'm a [indiscernible] and a CEL

6    accountholder on the CEL platform. I want to ask you a

7    little bit about ownership at the, of the collateral. And to

8    do that, I would like to refer to the Terms of Service

9    Version 7 that is Docket 393, and it starts on Page 858.

10             THE COURT:  Mr. Bronge, Mr. Bronge?

11             MR. BRONGE:  Yes.

12             THE COURT:  I ordered that anybody wishing to use

13   a document in cross-examination had to post it on the docket

14   by 5:00 p.m. yesterday.  I can't magically -- I'm sorry, I

15   can't magically make it appear for purposes of cross-

16   examination. If you wish to ask --

17             MR. BRONGE:  But I think this is --

18             THE COURT:  Don't, don't interrupt me. If you wish

19   to ask questions without the use of documents, if the

20   witness knows about it, he can. But, you know, I'm

21   permitting people to cross-examine by using Zoom, but it was

22   essential that everyone know what documents anybody wishing

23   to cross-examine is using, they be made available on the

24   docket last night. So I'll permit you to continue with your

25   questioning, but not referring to documents that have not

Page 79

1       been provided for cross-examination.

2               MR. BRONGE:  This is under exhibit list of the

3       Debtor. So it's in the, the docket as well.

4               THE COURT:   Mr. Bronge, if you wish to cross-

5       examine on a document, you have to post it by 5:00

6       yesterday. If you wish to --

7               MR. BRONGE:  Okay.

8               THE COURT:  -- ask questions without regard to

9       documents, go ahead and do that.

10              MR. BRONGE:  All right.  Mr. Ferraro, could you

11      explain what rationale the Debtor has to consider the

12      collateral property of the estate?

13              MR. FERRARO:  I mean, somewhat of a legal

14      question. But in reviewing the Terms of Use, I mean, there's

15      language that says you can pledge, repledge, lend out, et

16      cetera. It's pretty consistent with the Terms of Use there.

17              MR. BRONGE:  So in reference to your answer, there

18      is a -- we could agree that there is a distinction between

19      ownership title and pledging or using an asset.

20              MR. BROWN:  Objection, Your Honor.

21              THE COURT:  Sustained.

22              MR. BRONGE:  So, is it possible to use an asset

23      without owning an asset?

24              MR. BROWN:  Objection.

25              THE COURT:  Sustained.

Page 80

1          MR. BRONGE:  Can you explain how you define

2    ownership from the Debtor in relation to assets?

3          MR. BROWN:  Objection, Your Honor.

4          THE COURT:  I'm going to permit the witness to

5    answer. It's not, he's not a lawyer and he's not giving a

6    legal opinion. If you're able to answer that, go ahead.

7    Otherwise, please say.

8          MR. FERRARO:  Can you please restate the question?

9          MR. BRONGE:  Yes. I want to understand how the

10   Debtor determines the ownership status of an asset. What

11   they base those on.

12         MR. FERRARO:  I'm not a lawyer. I think that's

13   clear in the Terms of Use.

14         MR. BRONGE:  Okay. So may I ask a procedure

15   question to the Judge?

16         THE COURT:  Go ahead.

17         MR. BRONGE:  Yes. If I want to examine the

18   conditions in the TOS that is listed on that Debtors'

19   exhibit list, how should I do that?

20         THE COURT:  If it's listed on the Debtors' exhibit

21   list, I have all of those documents in front of me. I'll

22   permit you to use the exhibits that the Debtor marked.

23   They're all before the Court. They're all before any

24   parties. So yes, you can go ahead and do that. Just identify

25   the exhibit and give everyone a chance to pull it out, okay?

Page 81

1             MR. BRONGE:  Yes. Okay. I think what I tried to do

2    originally is the exhibitor list, I think it was 44 on the

3    Debtor, on the Debtor list presented, and it's reference to

4    the Terms of Service.

5             THE COURT:  Well, Exhibit 44 is the Declaration of

6    Mr. Ferraro. It was marked and admitted in evidence this

7    morning.

8             MR. BRONGE:  Exactly.

9             THE COURT:  But it does not have Terms of Service

10   or --

11            MR. BRONGE:  Yes it --

12            THE COURT:  Terms of Use attached.

13            MR. BRONGE:  It does, it does have it as a

14   reference.

15            THE COURT:  Well, it does not have the exhibit.

16   Hold on, I think the, the Debtors' counsel is going to help

17   you out on this one.

18            MR. BROWN:  Going to try to, Your Honor.

19            THE COURT:  Yeah.

20            MR. BROWN:  The Terms of Service were admitted

21   into evidence as Exhibit 38. They're not in the binder,

22   they're -- that's the paragraph that was referenced in

23   Exhibit 44 that we went through. I have a binder with

24   Exhibit 38. I can bring it to Your Honor and Mr. Ferraro so

25   everybody has a copy.

Page 82

```
 1              THE COURT:  Please. Thank you.

 2              MR. FERRARO:  Could he also bring me another

 3    water? It's a lot of talking, sorry.

 4              THE COURT:  There probably is water in that

 5    pitcher.

 6              MR. FERRARO:  Oh, oh, even better. Thank you.

 7              THE COURT:  There should. If not, my apologies.

 8              MR. FERRARO:  Yeah, yeah, I think you're right. I

 9    assumed that was just there for aesthetics.

10              THE COURT:  No, no. Aesthetics and for your use.

11              MR. FERRARO:  Okay, thank you, thank you. Okay.

12              THE COURT:  Exhibit 38 has been placed in front of

13    the witness. It's Terms of Use --

14              MR. BROWN:  And Your Honor --

15              MR. BRONGE:  Thank you. So may I --

16              THE COURT:  Hold on just a second.

17              MR. BROWN:  I just want to clarify before

18    Mr. Bronge gets going here. Exhibit 38, as I stated

19    previously, is a compilation of all Terms of Service that

20    were filed on the docket previously. I can get that docket

21    entry. I don't know what page, which version of the Terms of

22    Service, what he's interested in. So Exhibit 38 is

23    approximately 11, 1,200 pages.

24              THE COURT:  Okay, so Mr. Bronge, you're not here,

25    so you don't see it. But the --
```

Page 83

1            MR. BRONGE:  I have it here, so --

2            THE COURT:  Just a second.

3            MR. BRONGE:  -- I will be fine.

4            THE COURT:  -- 38 is 1,026 pages long. It has a

5    compilation of all of the versions of the Terms of Use,

6    starting with Terms of Use 1. So you need to be more

7    specific as to which version of the Terms of Use --

8            MR. BRONGE:  I will --

9            THE COURT:  -- you're referring to.

10           MR. BRONGE:  -- I will be extremely specific, Your

11   Honor. I would like to go to Page 858.

12           THE COURT:  All right, just a second. All right, I

13   have it open in front of me. Mr. Ferraro, when you have Page

14   858 of 1,026 open, just please tell me that.

15           MR. FERRARO:  I'm there.

16           THE COURT:  Go ahead, Mr. Bronge.

17           MR. BRONGE:  Thank you. So this page is Celsius

18   Loan Terms and Condition, and this is in reference to

19   Version 7. Version 7 is the conditions under which I took my

20   first loan. So that's why I refer to this one. Because also

21   in this document it states that the loan is controlled by

22   the version of the TOS that was in force when the loan was

23   taken. So if we move on to definitions, Number 3, I would

24   like to understand -- I would like to know your

25   understanding of that sentence's definitions Number 3. If

1     you could read it, please.

2              MR. FERRARO:  Number 3. Collateral means the

3     amount in eligible digital assets as provided by the

4     Borrower to the Lender as security for the loan.

5              MR. BRONGE:  Okay. Is there anything in that

6     statement that indicates that I have transferred ownership

7     in your opinion?

8              MR. BROWN:  Objection. Calls for legal conclusion.

9              THE COURT:  Overruled. It says what it says,

10    Mr. Bronge.

11             MR. BRONGE:  Yes, and I'm trying to understand how

12    the Debtor can consider the collateral his property, and

13    that's why I want to understand, what in this sentence

14    indicates that this is the Debtor's property.

15             MR. FERRARO:  I don't think that that's the

16    sentence that refers to the property. That's talking about

17    the collateral that's provided by the borrower as security

18    for the loan.

19             MR. BRONGE:  Okay, so, that's fine, so we

20    understand, from this sentence, the collateral has no --

21             THE COURT:  Just ask your question, Mr. Bronge.

22             MR. BRONGE:  Okay, next -- all right. Next, I

23    would like to go to Page 859 under ineligibility and

24    Application [indiscernible] D. So can you see what that

25    says?

1          MR. FERRARO:  Celsius receives the collateral from

2     you and.

3          MR. BRONGE:  Yeah, so, just want to state that

4     this collateral comes from the borrowers there, is that

5     correct?

6          MR. FERRARO:  You broke up a little bit. That

7     collateral comes from what?

8          MR. BRONGE:  It's the collateral -- my

9     understanding, and I want to understand if the Debtor has

10    the same, is that the collateral comes from the borrower.

11         MR. FERRARO:  For security on the loan, yes.

12         MR. BRONGE:  Thank you. Then we move to Page 860,

13    Item 1. So I can read the relevant part here. It's in --

14    from the sentence after what is called deferred event. It

15    says Celsius may immediately liquidate the corresponding

16    amount from your collateral. Would you consider that meaning

17    the borrower's collateral, or is this somehow the Debtor's

18    collateral?

19         MR. FERRARO:  I think it's referring to the

20    collateral that was posted to secure the loan.

21         MR. BRONGE:  So, but 'your' in this sentence,

22    doesn't that refer to the borrowers, the owner of the

23    collateral?

24         MR. FERRARO:  No, I think it's referring to the

25    one that provided the collateral for the loan. At least,

Page 86

1    that's my reading. Not a lawyer, again.

2              MR. BRONGE:  So 'your collateral' in your mind is

3    not the borrower's, it is somebody else's. Even though it

4    states to the borrower.

5              MR. FERRARO:  Provided by the borrower as security

6    for the loan, security interest for the loan.

7              MR. BRONGE:  I'm just reading -- I cannot put in

8    any words there, I'm just reading the sentence as it is. So

9    'your collateral' do you consider that be 'your' referring

10   to the Debtor in this case or the borrower?

11             MR. FERRARO:  I think it's referring to the

12   borrower who provided collateral as security for the loan.

13             MR. BRONGE:  All right. So there is a number of

14   sentences where it always refers to 'your collateral.' And

15   since 'your' in this, in this context would be the borrower

16   who provided the collateral, is that your understanding?

17             MR. FERRARO:  I think, I think we went over this a

18   couple times. My understanding is it's referring to that the

19   borrower provided collateral as security interest for the

20   loan.

21             MR. BRONGE:  Okay, so we continue here. If we go

22   to Page 862, under Collateral Item C. So here, I can read

23   the sentence. It says 'Collateral shall be subject to a

24   pledge for Celsius' benefit in accordance with the terms

25   herein.' Can you explain how that sentence transfers

Page 87

1    ownership and title of the collateral?

2            MR. BROWN:  Objection, Your Owner. Calls for a

3    legal conclusion.

4            THE COURT:  Overruled. If you know.

5            MR. FERRARO:  So, I'll do my best.

6            THE COURT:  You're not testifying as a lawyer.

7            MR. FERRARO:  I'm not testifying as a lawyer, I

8    will do my best. I think what it says here is subject to a

9    pledge for Celsius' benefit. And if I may, on Page 869 of

10   1,126, Section B --

11           MR. BRONGE:  Excuse me, I --

12           THE COURT:  Yes.

13           MR. BRONGE:  You broke up, so --

14           THE COURT:  Okay, [indiscernible] go ahead. Just

15   read it loudly.

16           MR. FERRARO:  Sorry. Page -- I have this huge

17   binder on my lap and it's hard to get too close, so --

18           THE COURT:  Me, too.

19           MR. FERRARO:  -- on Page 869 of 1,126, Conditions

20   to the Lender Obligation, D, this kind of refers to how the,

21   how the borrower agrees that the lender may, for its own

22   account, pledge and repledge.

23           MR. BRONGE:  Okay. I understand. Now, in your

24   review, is pledging an asset the same as transferring title

25   of an asset?

1          MR. BROWN:  Objection, Your Honor.

2          THE COURT:  Sustained.

3          MR. BRONGE:  Okay. What -- if, if you contrast the

4    statements in this section with the statements of the UK

5    Lending where there is a sale and repurchase agreement,

6    which is -- you can find much later in this. I can refer to

7    the exact pages. That -- the statements are very different

8    where they explicitly state you transfer title. I would like

9    to understand where in this Terms of Service Version 7 there

10   is a statement that I transfer ownership title. Do you have

11   that? Do you know about any such statement in this version?

12         THE COURT:  I'm going to sustain an objection to

13   the questions. I will permit a question as to whether, you

14   know, there is anything in this version of the Terms that

15   you believe transfers ownership.

16         MR. FERRARO:  From my reading of this, it implies

17   transfer of ownership, right to pledge. Not a lawyer, again.

18   Lender may do so without retaining, retaining its possession

19   to control for delivery. Borrower agrees that it can do it

20   for its own account. So it's obviously transferring a lot of

21   rights to Celsius.

22         THE COURT:  Ask your next question, Mr. Bronge.

23         MR. BRONGE:  Yes. So you consider transferring

24   rights as the same as transferring, as the same as

25   transferring title?

1               MR. BROWN:  Objection, Your Honor.

2               THE COURT:  Sustained.

3               MR. BRONGE:  Okay, so can I maybe ask him a

4      different way, if --

5               THE COURT:  Let me --

6               MR. BRONGE:  Yes.

7               THE COURT:  Go ahead, Mr. Bronge.

8               MR. BRONGE:  Yeah, I'm trying to get the Debtor to

9      explain the way they interpret this section. I don't know if

10     I should ask --

11              THE COURT:  Mr. Bronge, I'm not asking questions

12     of the witness, but this is a long document. If you look on

13     Page 870 under Consent to Celsius' use of your Digital

14     Assets --

15              MR. BRONGE:  Yes, that is --

16              THE COURT:  -- transferring with all, transferring

17     with all attendant rights of ownership. So I think --

18              MR. BRONGE:  Yes, let me --

19              THE COURT:  -- you're asking a non-lawyer

20     questions about a lengthy document.

21              MR. BRONGE:  How in proceedings shall I ask these

22     questions? Should it be at a later date?

23              THE COURT:  I'll let you continue with questions,

24     but you can't ask for legal opinions. This is a lengthy

25     document.

1                   MR. BRONGE:  So how can I ask --

2                   THE COURT:  -- paragraph on Page 870, under

3        Consent to Celsius' use of your digital assets, where it

4        says --

5                   MR. BRONGE:  May I address that question?

6                   THE COURT:  -- it says with all right, attendant

7        rights of ownership.

8                   MR. BRONGE:  It says, first of all, that --

9                   THE COURT:  I'm not going to have a legal argument

10       about this.

11                  MR. BRONGE:  No.

12                  THE COURT:  If you want to ask a question, ask,

13       questions --

14                  MR. BRONGE:  I understand.

15                  THE COURT:  -- of the witness, I'm going to permit

16       you to do that.

17                  MR. BRONGE:  Yes. I understand. But I will not

18       continue these questions because obviously I cannot answer,

19       ask them to the right person. So is there any time in the

20       hearing I can ask these legal questions regarding this Terms

21       of Service?

22                  THE COURT:  You can't ask the lawyers about it.

23       You'll, you know, when we get to closing argument and you

24       wish to argue that a document in evidence means what you say

25       it means, you can argue that. But that's pure argument, not

Page 91

 1    evidence. The document itself is in evidence. And you can --

 2    when we get to the conclusion of the case, if you wish to

 3    file a memorandum of law, I'll permit you to do that. But

 4    this is not a proper subject for a question of this non-

 5    lawyer.

 6            MR. BRONGE:  Okay. So in that case, I --

 7            THE COURT:  Do you have any other questions,

 8    Mr. Bronge?

 9            MR. BRONGE:  Just one quick question on the

10    valuation of the CEL Token, if I May.

11            THE COURT:  Go ahead.

12            MR. BRONGE:  I would like to understand the reason

13    why the Debtor are distinguishing the CEL Token as different

14    from all the other tokens except Bitcoin, that it has been

15    on the Celsius platform, and why this is singled out for

16    some kind of reasoning for that rather than all the other

17    coins taken the value at the bankruptcy.

18            MR. FERRARO:  I mean, I think CEL Token, there's a

19    few things. One, the manipulation of the token. And two, the

20    fact that 95 percent of it was locked on the platform and

21    there was limited trading volume. It was kind of a

22    dislocated market at that point. Those are just two things

23    that are top of mind.

24            MR. BRONGE:  So do you know that that does not

25    apply to any of the other tokens? Because they are all the

Page 92

1   same except Bitcoin. They have a central entity and they

2   have treasuries and they have companies in charge of them.

3           THE COURT:  Mr. Bronge, the CEL Token is a native

4   token of the Celsius platform.

5           MR. BRONGE:  Let me make [indiscernible]

6           THE COURT:  Do you have a question for the

7   witness?

8           MR. BRONGE:  No, I have no more questions.

9           THE COURT:  All right. Anybody else wish to cross-

10  examine?

11          MR. ABREU:  Your Honor, Artur Abreu

12  [indiscernible] I want to be very brief and I just want to

13  ask question to the witness.

14          THE COURT:  Go ahead, Mr. Abreu.

15          MR. ABREU:  Thank you. I am Pro Se Creditor and I

16  actually bought CEL outside, outside, outside

17  [indiscernible] just so, just a disclosure. So, Chris

18  Ferrera, you mentioned that in this hearing that mining has

19  had significant hurdles, but it has been successful

20  considering the circumstances. You also refer that you had

21  implemented or were successful in hedging strategies. As I

22  am aware, you have significant experience in banking. Is it

23  fair to also argue that hedging in banking is a essential

24  strategy to mitigate risk?

25          MR. BROWN:  Objection, Your Honor, relevance.