**CELSIUS EX. 75**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### OBJECTION TO PLAN CONFIRMATION

Comes David Schneider, a creditor in the above styled bankruptcy case, pro se, and for his objection to confirmation of the Debtor's Chapter 11 Plan, states:

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 157 and 28 U.S.C. Section 1334. This matter is a core proceeding pursuant to 28 U.S.C. Section 157 (b) (2) (A), (B), (L), and (O), and the court can enter a final judgment.

2. David Schneider is an interested party in this proceeding as a member of Class 2, Class 5 and Class 6A.

3. Based upon the Cryptocurrency Conversion Table provided by the Debtor as Exhibit L in the Fourth Revised Disclosure Statement [Docket No. 3332], David Schneider has an approximately $683,000 USD valued claim as of the Petition Date.

4. Debtor's Plan proposes a restructuring/reorganization plan with a Plan Sponsor Fahrenheit LLC that includes a backup plan referred to as an Orderly Wind Down. David Schneider submits that the restructuring/reorganization proposal violates his fundamental

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

rights of liberty and individual sovereignty and does not comply with the applicable provisions of Title 11 of the United States Bankruptcy Code and, more specifically, does not comply with the specific provisions of 11 U.S.C. Sections 1101 et seq.. Potentially, the Orderly Wind Down may also not comply with the provisions of 11 U.S.C. Sections 1101 et seq..; however, it is not as clear as the attempted reorganization and creation of a new company.

5. David Schneider submits that the Plan proposed by Debtor would violate his constitutionally protected rights set forth in the First, Fifth, Thirteenth and Fourteenth Amendments and furthermore the Plan fails to meet the requirements of U.S.C. Section 1129 (a)(3), (a)(7) and (a)(11).

### The Plan Would Violate Schneider's Constitutionally Protected Rights

6. The Plan attempts to pay out to Schneider a portion of his claim by granting him an equity interest in a new company. Schneider does not want an equity interest in NewCo but the Plan provides Schneider no election to opt out of becoming a venture capitalist and/or investor in a new start up venture.

7. Schneider stands upon his unalienable sovereign rights and liberties, most particularly his freedom of choice, and does not accept the Plan because he is unwilling and does not consent to becoming an investor in a very high risk start up venture. Yet Schneider will be wrongfully forced to become an investor in NewCo if the Plan is confirmed by this court.

8. ***There is no just cause to force Schneider to become an investor in this proposed startup venture***. Forced investing without just cause is unjust and violates Schneider's

right to freedom of choice with said force being fundamentally wrong, unconscionable, egregious, repugnant, harmful, tyrannical in nature and antithetical to our constitutional republican government, its founding documents and to our justice system.

    a. "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That ***to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed***," — Declaration of Independence [*emphasis added*]

    b. "***We the People of the United States, in Order to*** form a more perfect Union, ***establish Justice***, insure domestic Tranquility, provide for the common defense, promote the general Welfare, ***and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution*** for the United States of America." — Preamble to The Constitution of the United States [***emphasis added***]

9. The Debtor's Plan gives creditors equity in exchange for crypto assets that they intend to withhold and use for capitalization of the new startup company. Schneider does not consent to receiving equity in exchange for the due crypto owed to him. Cryptocurrency is the property that Schneider deposited with Celsius and receiving back that property is what he expected, agreed to and is what Celsius is contractually obligated to return to him upon demand. Schneider demands that his crypto property be returned to him.

10. The Plan forcing conversion of a cryptocurrency liability owed to Schneider into an equity interest is effectively an unlawful and unconstitutional taking of property from Schneider for he does not consent to this conversion.

11. For this court to force Schneider to invest a portion of his due crypto recovery into a very high risk start up company, and most particularly forcing Schneider to invest against his own risk tolerance and beyond his own expertise, violates his fundamental right to liberty and infringes upon his fundamental rights to property, freedom of association, freedom of choice, due process and equal protection under the law. Said force even violating his constitutionally protected rights provided in the First, Fifth, Thirteenth and Fourteenth Amendments and will thereby cause irreparable harm to Schneider.

12. To remedy this injustice the Plan needs to give creditors the election to opt out of this forced investment scheme which causes them to become venture capitalists and investors through forcing a conversion of their due crypto for equity. This election would thereby allow nonconsensual creditors to opt out and receive their full pro rata recovery% in crypto.

**Debtor fails to meet the requirements of 1129 (a)(3)**

13. Debtor's proposed Plan which forces Schneider to become a venture capitalist and investor violates Schneider's constitutionally protected rights as stated above.

14. Debtor's proposed Plan which forces the conversion of a cryptocurrency liability owed to Schneider, into an equity interest is effectively an unlawful and unconstitutional taking of property from Schneider. Schneider does not consent to this conversion.

15. Debtor's proposed Plan which forces Schneider to invest a portion of his recovery% for the benefit and enrichment of others is an unlawful taking of property and violates Schneider's constitutionally protected rights. Schneider does not consent to participate in this investment scheme.

16. The Debtor's Plan has not been proposed in good faith., Specifically,

    a. Schneider refers to the letter by Dr. Nicholas Weaver, PhD. [Docket No. 611] who is a self acclaimed expert in cryptocurrencies and who points out the fraudulent claims by Celsius as well as its inability to operate a successful mining operation;

    b. Schneider refers to the UCC Complaint against Celsius and many of its officers for breaching their fiduciary duties [Docket No. 2054];

    c. There is substantial evidence from twitter postings and other media that Celsius and Alex Mashinsky knowingly lied to customers and/or investors and of Celsius mismanaging the company;

    d. After resigning as CEO Alex Mashinsky was later indicted by U.S. prosecutors for fraud and market manipulation along with Roni Cohen-Pavon, Celsius' former chief revenue officer;

    e. Since the indictment Roni Cohen-Pavon has pleaded guilty to the charges brought against him of conspiracy, fraud, and market manipulation involving the price of the Celsius' CEL token.

        https://fingfx.thomsonreuters.com/gfx/legaldocs/byprrmoqzpe/2023.09.11%20Cohen-Pavon%20Plea%20Agreement%20(signed).pdf

f. Alex Mashinsky still retains directorship of the parent company Celsius Network LTD and has controlling interest in Celsius;

g. All current managers of Celsius and current professionals participating in this bankruptcy reorganization were all retained by Alex Mashinsky before he stepped down as CEO;

h. Upon Alex Mashinsky's resignation as CEO he made the following statements indicating he will still remain active in the reorganization, a) "I will continue to maintain my focus on working to help the community unite behind a plan that will provide the best outcome for all creditors – which is what I have been doing since the Company filed for bankruptcy, ... I remain willing and available to continue to work with the Company and their advisors to achieve a successful reorganization." b) " I have worked tirelessly to help the Company and its advisors put forward a viable plan for the Company to return coins to creditors in the fairest and most efficient way.  I am committed to helping the Company continue to flesh out and promote *that plan*, in order to help account holders become whole." Alex Mashinsky – September 27, 2022 [*emphasis added*]

https://www.businesswire.com/news/home/20220927005812/en/Celsius-Network-CEO-Submits-Letter-of-Resignation

i. *That Plan* that Alex Mashinsky has worked tirelessly on since inception attempts to force certain creditors to become venture capitalist and investors in their new startup company for the benefit and enrichment of others by not providing an election to opt out of their NewCo capitalization scheme;

    j. ***That Plan*** which is designed with a likely cramdown feature is structured to heavily coerce votes in favor of the Plan which speaks loudly to the Debtors' bad faith and their lack of care for creditors' interests. If the Plan actually is in the best interest of creditors no coercion would be necessary to effect Plan acceptance, for creditors would certainly vote to accept the Plan even without its coercive terms;

    k. Debtor is forcing unwilling creditors to become investors for the benefit and enrichment of others; and,

    l. This Plan is a continuation of Celsius attempting to use creditor money for self gain and self dealing and does not have the best interest of creditors in mind. Celsius is proposing this Plan in bad faith because they are forcing unwilling creditors to become investors for the benefit and enrichment of others and rather than securing DIP financing, a rights offering or any other alternative financing, Celsius is forming the new company off of the backs of victimized creditors with Celsius and Plan Sponsor having no real skin in the game. If it works fine, if it doesn't, it's no big loss to them - just further loss to the already victimized creditors.

### Debtor fails to meet the requirements of 1129 (a)(7)

17. The Debtor does not meet the best interest of creditors' test. Specifically,

18. Creditor, David Schneider does not accept the Plan. As of the effective date of the Plan, the value of property to be distributed under the plan on account of Schneider's claim(s) is less than the allowed amount of Schneider's claims.

a. Schneider does not receive or retain under the plan, as of the effective date of the plan, an amount not less than the amount he would receive or retain if the Debtor were liquidated under chapter 7 of this title on such date;

b. Using the liquidation analysis included with the Debtor's Disclosure Statement and other information provided by the Debtor, the Debtor attempts to pay part of said value by granting an equity interest in the new company;

c. The valuation of NewCo equity upon the Plan's effective date will be wholly speculative and unproven having never been tested by any trading markets. Given that NewCo equity's valuation will be unproven its value will truly be unknown as of the Plan's effective date. Given its value uncertainty the market demand for NewCo equity upon distribution is likely to be low providing little to no liquidity to support its valuation. With such market conditions creditors' actual recovery value is likely to be dramatically reduced from its appraised value effectively providing in reality substantially less value than creditors would have received under a chapter 7 Liquidation. And given the high risk of failure for startup companies NewCo equity could likely go to zero.

d. Schneider rejects the proposal to force him into an equity interest in a new venture and instead stands on his right to receive his pro-rata share of the USD equivalent he would receive in a chapter 7 liquidation.

e. Forcing Schneider into an equity position unfairly pushes the risk upon him and forces him to likely receive a return substantially less than he would otherwise receive in a chapter 7 liquidation.

  f. As an example, based upon the Debtor's calculation in their Disclosure Statement [Docket No. 3332; pg. 11][1], a Class 5 creditor would receive approximately 47.4% of his/her claim in a liquidation context. Although touted by the Debtor to be substantially less than the New Company (67%) or the Wind Down (61.2%), the 47.4% is a much preferred option and does not force the creditor into an unwanted equity position.

### Debtor fails to meet the requirements of 1129 (a)(11)

19. The Debtor's Plan is likely to fail and require a future liquidation given the high risk of failure for new startup ventures.

20. The Debtor is proposing an entirely different business model with no track record and therefore it is very speculative. There is no history of earnings or profit loss or success in this new business model. It is asking the creditors to become venture capitalists and investors in a new start up venture and is not appropriate.

21. There is nothing in the Debtor's Disclosure Statement or Plan which shows a likelihood of success. Instead of receiving what the creditor would be entitled to in a chapter 7 liquidation, creditors are asked to be investors in a new start up which could likely end up in a new liquidation and the creditors would have to participate in yet another bankruptcy case.

---

[1] For a clearer understanding of the effect a subpar equity value would have on a creditor's recovery between NewCo Plan, the Orderly Wind Down and Liquidation compare this example with chart on page 13 of same document which breaks down the percentage mix of crypto, equity and illiquid assets.

**Conclusion and Legal Analysis**

22. The Debtor's Plan fails to meet the confirmation requirements of 1129 (a) (3), (7) and (11).

23. David Schneider does not accept his treatment under the plan. Mr. Schneider's treatment is not fair or equitable and forces him to become an equity holder with a new company.

24. Besides the impropriety of forcing a creditor to become an equity holder in the company, it amongst other things forces the creditor to be a minority owner which potentially places liability on the creditor for any wrongdoing by the management and does not adequately distribute the cash equivalent to the creditor.

25. Further, because the Debtor is proposing a new startup company with an entirely different business model, there are no MOR(s) (monthly operating reports) or other financial data for a creditor to be able to determine if the New Company can even operate feasibly. Again, it seems that the Debtor's Plan is designed to use the financial resources and goodwill of its customers to provide financial gain to the management with little care to the Celsius creditors which are asked to supply $450 million of funding. New management receives fixed management fees and generous compensation while the NewCo Creditors bear almost all of the risk.

26. The Debtor should secure DIP financing or other financing alternative. The Plan as proposed is unacceptable and either (1) the Plan should be rejected and creditors receive their pro-rata share of the liquidated assets, or (2) if appropriate, the Court should oversee the Wind Down of the Company. In the alternative if Schneider doesn't prevail on his objection and the Plan is confirmed by this court which forces Schneider to be bound by

the Plan, Schneider requests of the court to allow him to participate in the "Weighted Distribution Election."

27. Schneider believes that while a chapter 11 debtor can propose a plan of reorganization that includes the issuance of new equity interests in the debtor to creditors in satisfaction of their claims, the debtor cannot force a creditor to accept an equity interest in lieu of cash payment without the creditor's consent. Schneider does not consent to receiving an equity position in lieu of cash payment.

28. The Southern District of New York provides a textbook example of the recharacterization of a debt to an equity position in a chapter 11 case in In re Live Primary, LLC, 2021 WL 772248 (Bankr. S.D.N.Y. Mar. 1, 2021). In In re Live Primary, and other cases which have had similar findings most often the discussion and analysis centers around loans or capital provided to the entity (Debtor) by one of its shareholders or members. In the Celsius bankruptcy, the Plan Proponent seeks to force average customers to become equity holders which goes well beyond the purpose or authority of this Court even given the broad reach of section 105(a) of the Bankruptcy Code.

29. In the In re Live Primary case, it is important to point out that the Court quoting the Sixth Circuit in *In re AutoStyle Plastics, Inc*., 269 F.3d 726, 747-48 (6th Cir. 2001) noted that recharacterization is appropriate where the circumstances show that a debt transactions was actually an equity contribution *ab initio* AutoStyle, 269 F.3d at 747-48. The Court further provided that the "paradigmatic" recharacterization case involves a situation where the same entities (or their affiliates) control both the transferor and the transferee,

and inferences can be drawn that funds were put into an enterprise with little or no expectation that they would be paid back along with other creditor claims.

30. The 11- factor test of In re Autostyle, does not apply to the facts of Schneider's claim. Further, Schneider was not the "same entities" and Schneider certainly had the expectation that he would be paid back along with other creditor claims. So, in almost any analysis, forcing Schneider's claims into an equity position is inappropriate at every level.

31. After scanning through maybe one hundred 2nd Circuit, New York Bankruptcy Court, and New York federal district cases, it seems obvious that any power to convert debt to equity is limited to cases where the debt is at least a partially secured debt or it is obvious the "debt" was an infusion of capital to keep the company afloat.

32. In re Westpoint Stevens, Inc., 333 B.R. 30 (Bankr. S.D.N.Y. 2005) : Section 105 does not authorize bankruptcy courts to ignore Code requirements simply because they might constitute barriers to otherwise desirable outcomes. The Supreme Court made clear the limits of the courts' general equitable powers in bankruptcy in this regard in Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct 963, 99 L.Ed2d 169 (1988), a decision in which it rejected an attempt to avoid the structures of Bankruptcy Section 1129(b)'s "absolute priority" rule in connection with a confirmation of a plan that the circuit believed would have produced a better outcome for the objecting creditors than liquidation. See also United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) (While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the

provisions of the Bankruptcy Code. The statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, . . . or constitute a roving commission to do equity (footnotes omitted)).

                                                Respectfully, Submitted,

                                                /s/ David Schneider
                                                David Schneider, creditor
                                                *Pro Se*
                                                September 22nd, 2023