**CELSIUS EX. 77**

WHITE & CASE

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90071-2433
T +1 213 620 7700

whitecase.com

October 2, 2023

VIA ECF

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1415
mg.chambers@nysb.uscourts.gov

**Re: *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) – Request to Submit Declaration to Supplement Expert Witness's Direct Testimony**

Dear Chief Judge Glenn:

      White & Case LLP is counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-referenced chapter 11 cases. The Committee writes pursuant to paragraph 3 of the *Order Establishing Case Management Procedures for the Confirmation Hearing* [Dkt. No. 3478] (the "Confirmation Case Management Order") to request that Maxwell Galka, the expert witness for the Committee in support of confirmation of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Dkt. No. 3319] (the "Plan"), be permitted to submit an additional declaration to supplement his direct testimony.

      The Committee understands that pursuant to the Confirmation Case Management Order, the deadline for parties to file written direct testimony was September 27, 2023 at 12:00 p.m. ET. The Committee filed Mr. Galka's written direct testimony by that deadline, in the form of a declaration adopting his expert report as his direct testimony. *See Declaration of Maxwell Galka on Behalf of the Official Committee of Unsecured Creditors in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network, LLC and its Debtor Affiliates* [Dkt. No. 3580].

      At a hearing on September 28, 2023, the Court inquired as to whether Mr. Galka would testify to the value of CEL Token on the Petition Date. To respond to the Court's inquiry and provide all parties with the opportunity to review Mr. Galka's written direct testimony prior to his live cross-examination, the Committee requests the Court's permission to file the attached declaration by Mr. Galka to supplement his direct testimony regarding his opinion on the value of CEL Token.

The Hon. Martin Glenn, p. 2
October 2, 2023



    Sincerely,

    */s/ Aaron Colodny*

# Exhibit A

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
          sam.hershey@whitecase.com
          jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Carolyn P. Gurland
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
          gregory.pesce@whitecase.com
          carolyn.gurland@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**SUPPLEMENTAL DECLARATION OF MAXWELL GALKA ON BEHALF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CELSIUS NETWORK, LLC AND ITS DEBTOR AFFILIATES**

I, MAXWELL GALKA, hereby declare under penalty of perjury, as follows:

1. I am the founder and chief executive officer of Elementus, Inc. ("**Elementus**"), a blockchain intelligence and forensics company based in New York, New York, and an advisor to the Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**").

2. I submit this supplemental declaration (the "**Supplemental Declaration**") in support of the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network, LLC and Its Debtor Affiliates* [Dkt. No. 3577] (the "**Plan**"). I am over 18 years old and authorized to submit this Supplemental Declaration on behalf of the Committee.

3. Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based on my personal knowledge, my discussions with my colleagues at Elementus, advisors at M3 Partners, other advisors of the Committee, or members of the Debtors' management and the Debtor's advisors, my review of relevant documents, or my opinion based on my experience, knowledge, and information.

4. I previously submitted a trial declaration to this Court on September 27, 2023 (the "**Galka Trial Declaration**"). *See* [Dkt. No. 3580]. In the Galka Trial Declaration, I adopted the contents of my Expert Report opining on certain issues relating to the value of the CEL Token (the "**Galka Expert Report**"), as well as the contents of an earlier declaration I submitted in support of the *Committee's Omnibus Objection to Motions for Entry of an Order to Dollarize Non-Insider CEL Token Claims at the Petition Date Price of $0.81565* (the "**Galka June Declaration**"), as my direct testimony if called to testify at the Plan confirmation hearing. *See* [Dkt. Nos. 2840, 2845].

2

5.  The exhibits identified as Exhibits 1-90, 92-114, 128, 130-132, and 184 in the Committee's Exhibit List, filed on September 27, 2023, were documents upon which I relied in preparing the Galka Expert Report.

6.  I submit this Supplemental Declaration to supplement my direct testimony for the confirmation hearing, and to provide my opinion on the appropriate value of CEL Token on the Petition Date in response to certain inquiries made by the Court, as detailed below.

7.  On the evening of June 12, 2022, Celsius Network LLC and its affiliates (collectively, "**Celsius**") paused all withdrawals of digital assets from the Celsius platform (the "**Pause**"). As I described in the Galka Expert Report, the Pause had the effect of making approximately 94% of the total CEL Tokens unable to be traded. That amount includes customer account balances of 294 million CEL Tokens, that otherwise could have been available to be withdrawn and sold on the market.

8.  Prior to the Pause, the price of CEL Token was rapidly declining. My team looked at the source code for Celsius's Medium blog post that announced the Pause and determined it was posted at 10:00 p.m. E.T on June 12, 2022. The Celsius official Twitter account posted a tweet announcing the Pause and linking to the Medium post at 10:10 p.m. E.T on June 12, 2022. My team used Coinpaprika, the cryptocurrency market research platform used by the Debtors for other token pricing, to analyze the price of the CEL Token at the time of those announcements and found that the CEL Token price at 10:00 p.m. E.T. on June 12, 2022 was $0.355. At 10:15 p.m. E.T., after Celsius had released its tweet announcing the Pause, the market price was $0.259.

9.  I opine in the Galka Expert Report that the Debtors' calculation of the $0.81 market price of CEL Token on July 13, 2022 (the "**Petition Date**") is not an accurate reflection of the

3

value of the CEL Token at that time. I did not, however, affirmatively proffer a precise value for the CEL Token.

11. I understand that a hearing on September 28, 2023, the Court asked whether I would opine on the value of CEL Token on the Petition Date.

11. It is difficult to determine an exact value for the CEL Token as of the Petition Date because the market price is an unreliable starting point. This is primarily because, in my opinion, the market for CEL Token as of the Petition Date had long been dislocated and was not an efficient market. The market price would only be an accurate indication of the value of the CEL Token if the market was an efficient market trading under normal conditions. As such, the market price of the CEL Token as of the Petition is of limited utility in evaluating the value of the CEL Token.

12. Alternative valuation models are also unavailable. If cash flows or other economics supported the CEL Token, I could use a discounted cash flow or other pricing model to calculate the CEL token's intrinsic value. But the CEL Token did not have any underlying cash flow. As a result, it is not possible to apply a traditional valuation method to value the token.

13. CEL Token is a utility token tied to the functioning of Celsius, and Celsius as any reasonable investor knew it has ceased to exist—by the Petition Date all customer facing activities had been discontinued for a month. To the extent CEL Token had any marginal continuing value on the Petition Date it would be as a "memecoin" or the prospect of Celsius restarting its business and utilizing the CEL Token in that restarted business. Any value based on those hypothetical uses, however, would be pure conjecture that is unable to be quantified in any forensically sound way, particularly considering the lack of public information and conflicting reports regarding Celsius's financial condition at the time of the Petition Date.

4

14. After the Pause, with approximately 94% of CEL Tokens in Celsius's possession and not able to be withdrawn, CEL Token's supply and demand was materially disrupted. As described in my Expert Report, it is my opinion that after the date of the Pause the market for CEL Token was severely dislocated and any movement in the token's market price was not indicative of its value.

15. It is my opinion that that $0.355—the price of the CEL Token just before the market received news of the Pause—is the last remotely reliable market indicator of the value of the CEL Token and was the *upper* bound of CEL Token's possible intrinsic value at the time of the Pause. The real value of the CEL Token was likely lower at the time of the Pause, and almost certainly significantly lower at the time of the Petition Date. There are at least two reasons for this.

16. *First*, approximately one month passed between the Pause and the Petition Date. During this intervening time, the news about Celsius was overwhelmingly negative, with the public questioning Celsius's solvency, representations by the Company, and the future of the platform. I cannot conceive of an economically rational reason the value of CEL Token would have increased from the Pause to the Petition Date in response to this information in a properly functioning market.

17. *Second*, even before the Pause, the market for CEL Token was already showing the traditional indicia of a dislocated market. There was significant information asymmetry regarding Celsius's financial condition and its prepetition CEL Token transactions, major shocks to the cryptocurrency market with the collapse of several other coins, and high volatility in CEL Token's price.

18. In my experience, when a market for an asset or a security becomes dislocated, the market price of an asset is typically above the intrinsic value of the asset. One example of this

phenomenon was the GameStop short squeeze of January 2021, where the GameStop stock traded far above its intrinsic value in a dislocated market.

19. Consequently, while I cannot ascribe a specific value to CEL Token on the Petition Date, based on my experience trading financial instruments and especially trading dislocated markets, if asked to quote price on the CEL Token on the Petition Date, I would have declined because I think the CEL Token was most likely worthless at that time and have seen no quantifiable support for it being worth more than $0.00 at that time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 2, 2023

Maxwell Galka
Founder and Chief Executive Officer
Elementus, Inc.