**CELSIUS EX. 79**

Richard Phillips
*In pro per*

Re: In re Celsius Network LLC. Et al., Case 22-10964(MG)
**Amended Potential Exhibits for Cross-examination of Maj. Mark Robinson**

Dear Chief Judge Glenn,
Attached please find a set of amended exhibits that I may potentially use in the cross-examination of witnesses scheduled to testify on October 4, 2023.

Dated: Los Angeles, California
October 3, 2023

/s/
RICHARD PHILLIPS
Creditor

Potential Exhibits for Cross-examination by Richard Phillips

From Exhibit D of Disclosure Statement

Based on financial projections developed by the Debtors[1] and subject to the disclaimers and the descriptions of Centerview's methodology set forth herein, and solely for purposes of the Plan, Centerview estimates the total enterprise value of Mining to be within the range of approximately $410 million to $720 million as of May 31, 2023 with an estimated midpoint of $565 million.[2]

In preparing the estimated total enterprise value for Mining, Centerview: (1) reviewed certain historical financial information of Mining for recent years and interim periods provided by the Debtors; (2) met with certain members of the Debtors' and Fahrenheit's senior management to discuss Mining operations and future prospects; (3) reviewed publicly available financial data and considered the market values of public companies deemed by Centerview to be generally comparable to Mining; (4) considered certain economic and industry information relevant to Mining; (5) prepared discounted Cash flow analyses based on the financial projections, utilizing various discount rates and assumptions in the calculation of terminal values; and (6) conducted such other analyses as Centerview deemed appropriate.

From Exhibit E of Disclosure Statement

**Celsius Mining LLC**
*in Millions of U.S. Dollars*

| Fiscal Year Ended | Sep-24 | Sep-25 | Sep-26 | Sep-27 | Sep-28 | Total |
|---|---|---|---|---|---|---|
| **Revenue** | **$278.7** | **$437.5** | **$507.1** | **$341.0** | **$282.2** | **$1,846.5** |
| Direct Costs | (190.9) | (200.0) | (206.1) | (187.3) | (183.8) | (968.2) |
| **Gross Profit** | **87.8** | **237.4** | **300.9** | **153.7** | **98.4** | **878.3** |
| Operating Expenses | (26.0) | (27.7) | (28.8) | (29.3) | (29.7) | (141.4) |
| **EBITDA** | **61.8** | **209.7** | **272.2** | **124.4** | **68.8** | **736.9** |
| Net Capex | (56.5) | (12.3) | (8.2) | (39.3) | (86.6) | (202.9) |
| **EBITDA less Net Capex** [1] | **$5.4** | **$197.5** | **$263.9** | **$85.1** | **($17.8)** | **$534.1** |
| BTC Price, EOP ($) | $47,647 | $90,587 | $92,420 | $76,622 | $105,195 | NA |
| Hashprice ($/GH/Day), EOP | 77.9 | 126.2 | 95.1 | 63.9 | 61.3 | NA |
| Network Hashrate, EOP | 307 EH/s | 374 EH/s | 524 EH/s | 668 EH/s | 600 EH/s | NA |
| Celsius Hashrate, EOP | 12.3 EH/s | 12.5 EH/s | 12.6 EH/s | 13.4 EH/s | 15.1 EH/s | NA |
| Network Share % | 3.50% | 3.79% | 2.82% | 2.24% | 2.36% | NA |
| BTC Produced, Celsius | 7,712 | 6,475 | 5,046 | 3,946 | 3,281 | 26,460 |

[1] EBITDA less Net Capex does not reflect cash taxes.

65068104 v2-WorkSiteUS-000002/3313

Disclosure Statement Weighted Distribution Election Example

A side-by-side comparison of the three different treatment outcomes for a Holder of a General Earn

---

[59] Please review Item 6 on your Ballot to make the Liquid Cryptocurrency Weighted Distribution Election.

[60] For purposes of this example, you do not hold any other Claims.

[61] This 50% reduction is for illustrative purposes only and is not based on any specific assumption with respect to all Unsecured Claim Distribution Mix Elections.

[62] This amount is calculated as follows: (a) $2,954*50% = $1,477; and (b) $1,477*70% = $1,034.

54

Claim[63] in the amount of $10,000 based on a 67.0% recovery is shown below:

|  | No Election (Default) | NewCo Common Stock Weighted Distribution Election[64] | Liquid Cryptocurrency Weighted Distribution Election[65] |
|---|---|---|---|
| Liquid Cryptocurrency | $3,748 | $1,874 | $4,782 |
| NewCo Common Stock | $2,954 | $5,390 | $1,477 |
| Litigation Proceeds | The right to receive a share of the Litigation Proceeds | | |
| **Total Recovery:** | $6,702 | $7,264 | $6,259 |
| **% of Recovery Change:** | N/A | Increase of ~8% | Decrease of ~7% |

### Unsecured Claim Distribution Mix Elections

The Debtors' ability to accommodate Holders' specified preferences will ultimately depend on what elections all Holders make on their Ballots. The Debtors will use reasonable efforts to redistribute the consideration provided to Holders to satisfy the aggregate Unsecured Claim Distribution Mix but cannot guarantee that Holders will receive what they requested.

Weighted Distribution Election Ballot Results from Tabulation of Votes

   C.  **Weighted Distribution Election**[8]

15. Stretto examined each valid Account Holder Ballot submitted by Holders of Account Holder Claims eligible to make either the NewCo Common Stock Weighted Distribution Election or the Liquid Cryptocurrency Weighted Distribution Election, which consisted of Holders of a Class 2 (Retail Borrower Deposit Claims), Class 5 (General Earn Claims), and Class 7 (Withhold Claims) Claims.  Based on this review, 4.88% (418) in number, which is equivalent to 4.48% ($15,683,669.91) in dollar amount, of Holders of Class 2 (Retail Borrower Deposit Claims) Claims made the NewCo Common Stock Weighted Distribution Election.  4.20% (3,601) in number, which is equivalent to 4.29% ($163,851,968.75) in dollar amount, of Holders of Class 5 (General Earn Claims) Claims made the NewCo Common Stock Weighted Distribution Election.  4.10% (59) in number, which is equivalent to 1.37% ($153,960.34) in dollar amount, of Holders of Class 7 (Withhold Claims) Claims made the NewCo Common Stock Weighted Distribution Election.

16. On the other hand, 26.46% (2,267) in number, which is equivalent to 42.59% ($148,938,980.87) in dollar amount, of Holders of Class 2 (Retail Borrower Deposit Claims) Claims made the Liquid Cryptocurrency Weighted Distribution Election.  18.67% (16,011) in number, which is equivalent to 25.11% ($960,018,704.02) in dollar amount, of Holders of Class 5 (General Earn Claims) Claims made the Liquid Cryptocurrency Weighted Distribution Election. 19.39% (279) in number, which is equivalent to 28.21% ($3,173,615.89) in dollar amount, of Holders of Class 7 (Withhold Claims) Claims made the Liquid Cryptocurrency Weighted Distribution Election.

Totals: More Crypto - $1,112,131,300.78 (Summation of numbers above)
   More Equity  -   $179,689,599.00

Email 1

## Resume for NewCo Board

| | |
|---|---|
| From | celbk7 <celbk7@proton.me> |
| To | Colodny, Aaron<aaron.colodny@whitecase.com> |
| Date | Saturday, March 18th, 2023 at 11:47 PM |

Aaron,
Here's my resume for consideration for the NewCo Board. Of course, I'll fully dox if the UCC believes my candidacy to be worthy of interviewing in a final round.
Thanks,
 CY

Sent with Proton Mail secure email.

**32.65 KB**   1 file attached

CryptoYolo Resume for NewCo Board.pdf  32.65 KB

Email 2

## Board Resume

---

From celbk7 <celbk7@proton.me>

To Colodny, Aaron<aaron.colodny@whitecase.com>

Date Tuesday, July 4th, 2023 at 4:21 PM

---

Aaron,
Here's my resume for the NewCo Board including actual names.
Happy 4th,
 Rick / CY

Sent from Proton Mail for iOS

---

**38.64 KB**   1 file attached

NewCo Board Resume.pdf 38.64 KB

Email 3

### RE: Board Diversity Requirements - UCC only needs ONE

From   celbk7 <celbk7@proton.me>

To     Pesce, Gregory<gregory.pesce@whitecase.com>, Colodny, Aaron<aaron.colodny@whitecase.com>, Wofford, Keith<kwofford@whitecase.com>, Duffy, Scott (External)<ICBSolutions@proton.me>, DiFiore, Thomas (External)<tomdif@gmail.com>

Date   Thursday, September 14th, 2023 at 2:07 PM

Greg,
I believe the choice of observer is now the Earn Ad Hoc's based on my interpretation of the unclear ending of yesterday's conference call.
I'm still waiting for anyone on the UCC side , advisor or member, to explain the observer's duties and responsibilities. The agreement I saw provided for no or unspecified compensation and the right for NewCo to sue the observer for any number of reasons.
In otherwise no upside, and high downside.
Please articulate for me the observer's duties and responsibilities.
I do understand your position on the Board. Your advice, not mine. If he hasn't already, I do suggest you read the email I sent last night to Aaron.
I know you think it's all about me trying to leverage my way into the seat. But it's not. I'm truly offended by the Board composition and the lack of qualified creditor representation. Again your advice, not mine. We all agree that Scott and Tom have 100% earned their seats and that was the intent since the initial NW structure.
Respectfully,
 CY / Rick

Sent from Proton Mail for iOS


On Thu, Sep 14, 2023 at 1:50 PM, Pesce, Gregory <gregory.pesce@whitecase.com> wrote:

> Thanks for sharing this with us, Rick.  As discussed - we don't plan to change the directors we selected.  We're open to the observer concept.
>
> **Gregory F. Pesce**  |  Partner
> **T**  +1 312 881 5360      **E** gregory.pesce@whitecase.com
> White & Case LLP  |  111 South Wacker Drive, Suite 5100  |  Chicago, IL 60606-4302
> **WHITE & CASE**
>
> ---
>
> **From:** celbk7 <celbk7@proton.me>
> **Date:** Thursday, Sep 14, 2023 at 3:48 PM
> **To:** Colodny, Aaron <aaron.colodny@whitecase.com>, Pesce, Gregory <gregory.pesce@whitecase.com>, Wofford, Keith <kwofford@whitecase.com>, Duffy, Scott (External) <ICBSolutions@proton.me>, DiFiore,

Thomas (External) <tomdif@gmail.com>
**Subject:** Board Diversity Requirements - UCC only needs ONE

I've confirmed that in my lay opinion that Asher Genoot meets the definition of mixed race per NASDAQ listing rules

From Asher:
My father is Jewish and was born in Libya, North Africa but moved to Israel at a young age when the country was formed.

My mother is from Shanghai, China and converted to Judaism.

Both moved to the USA in their early adult years and met in Los Angeles.

I am a first generation American, born and raised in USA, and first generation college graduate as well.

Sent with Proton Mail secure email.

==========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available here.

==========================================================================

**3.58 KB**  1 embedded image

14CC9315-084B-401F-B809-603A91197B35.jpg  3.58 KB

### **New Board Directors**

Pursuant to the Plan, the Board of Directors of NewCo (the "**New Board**") was to be composed of seven directors: (i) two selected by Fahrenheit Holdings, LLC (the "**Plan Sponsor**") in its sole discretion, (ii) three selected by the Official Committee of Unsecured Creditors of Celsius Network LLC and its Debtor affiliates (the "**Committee**") in its sole discretion, and (iii) two selected by the Committee and consented to by the Plan Sponsor. Following the filing of the Plan on August 15, 2023, the Plan Sponsor and the Committee engaged in discussions with respect to expanding the membership of the New Board from seven to nine members, with one of the additional members to be selected by the Plan Sponsor and the second additional member to be selected by the Committee.

After extensive deliberation, the Committee and the Plan Sponsor determined that it is in the best interests of NewCo to set the size of the New Board at nine members, which would give (i) the Committee the right to appoint six of the nine initial members of the New Board, with two such appointments to be subject to the approval of the Plan Sponsor, and (ii) the Plan Sponsor the right to appoint three of the nine initial members of the New Board. The Committee further determined that its six-candidate slate should be composed of four independent directors and two prepetition creditors of the Debtors.

To facilitate the Committee's final selection, the Committee's legal and financial advisors assembled resumes, collected board questionnaires, conducted interviews with prospective board members along with the Committee members, and hired an independent investigator to conduct comprehensive background checks on candidates who all agreed to the investigations.

Upon extensively deliberating and diligently reviewing the qualifications, experience and independence of each of the candidates, the seven-member Committee voted to select Elizabeth A. LaPuma, Max Holmes, Emmanuel Aidoo, and Frederick Arnold as the independent directors to the New Board. The three Committee members who sought appointment to the New Board were not eligible for the independent director seats. The other prepetition creditors were considered for those seats. At the direction of the Committee's legal advisors, the Committee members seeking appointment to the New Board recused themselves from the deliberations regarding the remaining New Board seats. After lengthy discussions with the Committee's legal and financial advisors, the remaining members of the Committee who did not seek appointment to the New Board voted to select Scott Duffy and Thomas DiFiore as the prepetition creditors to the New Board.

Detailed profiles of the New Board directors are included on the following page. The Committee is also in discussions with a prepetition creditor regarding a potential board observer position.