**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) | (Jointly Administered) |

# MOTION REQUESTING DATA SUPPORTING THE DILUTIVE NATURE TO CREDITORS' RECOVERY WITH THE CEL TOKEN PRICE AS OF THE PETITION DATE

_____

# Introduction

1. Mr. Colodny, counsel for the UCC, at the June 28 2023 hearing, when arguing with the Court stated that creditors would be diluted by having more than $0.25 per CEL token as seen in the court transcript page 20, line 3 to 5. [see Exhibit 2][1]

2. Regrettably, there hasn't been any dilution data released by the Debtors to the Court, nor was it provided on the ballot. This would have been an important metric to highlight how significant the CEL token price would impact creditors' average recoveries.

3. This motion seeks the production of an average calculation of the dilutive nature of CEL token by the Debtors at the Petition date price, within the same datasets and formulas as seen on the ballot [Exhibit 1], so that all creditors and parties of interest can compare the previous average recovery as seen on the ballot to one with CEL token at the Petition date.

4. Additionally, if the withdrawal preference exposure settlements from creditors over $100,000 and/or other clawbacks are included in this average, I would humbly ask your Honor that this data point is also clearly delineated, as shown on page 4, Figure 1 in the third row of the table. This would allow all parties to understand if these settlements and clawbacks have any material impact on the dilution.

---

[1] *All exhibits in this motion are sourced either from the debtors or have been filed by third parties, with whom the filer of this motion has no connection. No material manipulation exists in the exhibits, and the direct sources from the court or debtors are provided for each exhibit.*

Page | 1

# Statement of Facts

5. According to some internal communications between the company's officers [see Exhibit 3], Celsius Network misrepresented the risks and their financial health, leading many creditors to take no action concerning their holdings within Celsius. As the company went silent between the pause and the petition, it removed the ability for CEL creditors to withdraw and disinvest from their CEL holdings.

6. During the course of this bankruptcy, the company changed the entirety of its business model by removing all customer-facing products that utilized the CEL token. This change also eliminated the ability for creditors to take proactive measures before these impactful decisions were publicly disclosed.

7. Without understanding this dilutive effect to the average creditor's recovery and if this is a significant or insignificant component, it is impossible to reach an informed, fair and in good-faith resolution for the affected creditors.

8. As the Debtors and the Unsecured Creditors Committee are advocating for a different price from that of the Petition date and argue that it is dilutive, it's reasonable to conclude that they possess the relevant calculations and data in order to make such statements. Therefore, they should have no issue promptly providing this information to the Court.

# Request for Information

9. The dilution of the CEL token, if valued at the Petition date market price, is to be calculated as a percentage. This percentage should serve as the best current estimate of the average recovery for unsecured creditors, to contrast to the default 67% indicated on the ballot.

10. The calculation should follow the current proposed plan, excluding the subordinated parties and should utilize the same data points as seen on the ballot, so that it arrives at the previous result of 67% [see Exhibit 1 just before the table]. This approach will enable a comparison where the CEL price is the sole variable impacting the average recovery.

    a. If this motion is approved and the clawbacks & withdrawal preference settlements are included in the average recovery for creditors, it must be discriminated as seen on page 4, Figure 1 in the third row of the table.

    b. If the Debtors are unable to locate the data or formulas used in the ballot example, they should provide an updated example to the Court. This new example should distinguish between the CEL price at the Petition date and the CEL price in the current recovery plan. It should also specify any clawbacks and settlements related to withdrawal exposures as mention above in "a)".

11. This motion requests the production of an average recovery, as illustrated in Figure 1 page 4. Additionally, if the Debtors opt to update or recalculate the expected average recovery previously presented to thousands of voters, an additional table should be provided for the benefit of all the creditors. This table should be formatted in a manner similar to that of the ballot exemplified in Figure 2.

12. The average recoveries calculated should be understood as a snapshot in time, representing the best educated guess that the Debtors can provide at that moment. This request should not be misconstrued as something other than this.

## Figure 1 - Example of what this motion seeks to be provided

| | |
|---|---|
| Average recovery with Cel at petition | 65.02% |
| Total CEL token average recovery impact | 1.98% |
| Clawbacks & withdrawal preference settlements impact on the average recovery w/ CEL price at the petition date* | 0.5% |

*The best guess at the time of such calculations

## Figure 2 - Example of the additional table in case debtors choose or have to recalculate the previous average recovery of 67% *(this table is the same as the one in the ballot)*

| 10,000$ Claim Example w/ Cel @ 0.81$ and 0.25$ | Default | NewCo weighted | Crypto Weighted |
|---|---|---|---|
| Liquid CryptoCurrency | x | x | x |
| NewCo Common Stock | x | x | x |
| Litigation Proceeds | Yes | | |
| Total Recovery | x | x | x |
| % of Recovery Change | N/A | x | x |

## Supporting Argument

13. It is in the best interest of the Court to receive information on the dilutive impact of the CEL token as of the Petition date making this matter more transparent to all creditors and parties involved.

14. This data would serve as an anchor point for assessing the financial consequences for unsecured creditors, particularly in relation to the CEL price. Such anchor points would also inform decisions about the continued allocation of estate resources in these matters and whether such expenditures yield any net benefit for the average creditor recovery.

15. I don't believe this request contravenes any legal standards for disclosures. Moreover, approving this motion should not incur significant costs, as these calculations were, and I contend remain, essential in the continuation of chapter 11 and the plan confirmation.

## Conclusion

16. I respectfully request the Court's approval of this motion for additional information, as detailed on page 3 and illustrated on page 4 of this document.

17. I firmly believe that this motion is in the best interest of all creditors and imposes no significant financial burden. Moreover, it facilitates the acquisition of pertinent information critical for a more accurate assessment of the significance and ramifications of the discussions pertaining to CEL token prices.

*Monday, 16 October 2023*

Respectfully Signed,
/s/ Artur Abreu

_____
Artur Abreu, Pro Se

Email: ArturmCH11@proton.me

[EXHIBITS]

[Exhibit 1]
**Source:**
https://youtu.be/-FcNddbQrys?si=vQwv_-YUFnJNmVSm&t=638



**Exhibit: 1 -** *Youtube video provided by the U.C.C where Mr. Colodny shows the ballot with an example of an average recovery for creditors at 67%*

[Rest of page intentionally left blank]

## [Exhibit 2]

**Source:**

Vertitext transcript provided by kirkland

```
24              MR. COLODNY:  You have 98 percent voting in favor
25    of a plan that treats CEL token as 25 cents.
```

Veritext Legal Solutions
212-267-6868         www.veritext.com         516-608-2400

```
                                                       Page 20
 1              THE COURT:  Okay.  But the 98 percent can't bind
 2    objectors -- you know, dissenting members of a class.
 3              MR. COLODNY:  Understood, Your Honor.  You also
 4    have 96 percent of all other creditors who are diluted by
 5    that saying we accept this as well --
 6              THE COURT:  And they still can't find -- you still
 7    -- if I'm wrong, tell me.  Because none of the -- I haven't
 8    seen any briefs that raise this issue.  But in my mind, it
 9    then became an issue of dissenting creditors have to receive
10    at least as much as they would in a Chapter 7 liquidation,
11    the best interest test.  Okay.  So -- and if -- I take it
12    you're acknowledging that it's the Debtor's burden, the
13    committee pushing this burden to establish that the best
14    interest test is satisfied.
15              MR. COLODNY:  Correct.
```

***Exhibit: 2 -*** *Transcript from September 28 hearing, where Mr. Colodny refers to the dilutive nature of CEL page 20, line 3 to 5, transcript provided by Kirkland.*

**[Exhibit 3]**

**Source:**
Stretto Docket No. 1956, page 16 to 17



*Exhibit: 3 - Examiners Report showing communications between Celsius Network Officers, referring to the misrepresentation of the risk in loans and a graph highlighting the size of unsecured loans, Docket No. 1956 page 16 to 17.*