# CELSIUS EX. 124

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING (A) THE SETTLEMENT BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE CUSTODY AD HOC GROUP AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Committee, and the Custody Ad Hoc Group (collectively, the "Parties") for entry of an order (this "Order") (i) approving (a) the *Settlement Agreement* by and among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and the Ad Hoc Group of Custodial Account Holders (the "Custody Ad Hoc Group") dated March 20, 2023 (the "Settlement Agreement"), attached hereto as **Exhibit 1**; (b) the *Notice of Election to Opt In to the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group* and the Election Form, attached hereto as **Exhibit 2**, and (c) the letter from the Custody Ad Hoc Group to Custody Account Holders regarding the Settlement Agreement, which will be included with the Election Form (the "Custody Ad Hoc Group Letter"), attached hereto as **Exhibit 3**, and (ii)

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2148] (the "Motion").

granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the Southern District of New York, entered

February 1, 2012; and this Court having the power to enter a final order consistent with Article III

of the United States Constitution; and this Court having found that venue of these cases in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing thereon were appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court on March 21, 2023

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein as described in the

Court's bench ruling at the Hearing; and any objections to the relief requested herein having been

withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement Agreement attached hereto as **Exhibit 1** is approved.

Notwithstanding anything to the contrary in the Settlement Agreement, no current or former

employee or insider of the Debtors is eligible to participate in the Settlement Agreement.  The term

"insider" in this Order, the Motion, the Settlement Agreement, and the Election Form attached

hereto as **Exhibit 2** shall have the meaning ascribed to it in section 101(31) of the Bankruptcy

Code.

3.      Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform the Settlement as embodied in the Settlement Agreement, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Agreement.

4.      The Election Form attached hereto as **Exhibit 2** is approved.

5.      The Custody Ad Hoc Group Letter attached hereto as **Exhibit 3** is approved.  The Debtors shall include the Custody Ad Hoc Group Letter with the Election Form sent to Custody Account Holders.

6.      Notwithstanding anything to the contrary in the Withdrawal Order and the Withdrawal Notice, the Debtors are authorized to permit Eligible Users to withdraw the additional six percent of the balance of their Withdrawable Custody Assets.  As soon as reasonably practicable after entry of this Order, the Debtors shall file a revised Withdrawal Notice accordingly.

7.      The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.      This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, or other estate representative.

11.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  March 21, 2023
        New York, New York

                                            **/s/ Martin Glenn**
                                              MARTIN GLENN
                        Chief United States Bankruptcy Judge

## Exhibit 1

**Settlement Agreement**

EXECUTION VERSION

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Settlement Agreement") is made as of March 20, 2023, among Celsius Network LLC and its debtor affiliates (collectively, the "Debtors" and, together with their non-debtor affiliates, "Celsius"),[1] the Official Committee of Unsecured Creditors (the "Committee"), the members of the Ad Hoc Group of Custodial Account Holders, (the "Custody Ad Hoc Group"), and any Non-Withdrawal Custody Account Holders that voluntarily agree to the terms of this Settlement Agreement (the "Settling Custody Account Holders" and, together with the Debtors, the Committee, and the Custody Ad Hoc Group, the "Parties") signatory hereto. The Parties hereby agree as follows.[2]

A.    **WHEREAS**, on July 13, 2022 (the "Petition Date"), certain of the Debtors[3] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.    **WHEREAS**, prior to the Petition Date, members of the Custody Ad Hoc Group— as well as all other individuals and entities with accounts related to the Debtors' Custody program (the "Custody Program," such accounts, "Custody Accounts," and such individuals and entities, "Custody Account Holders")—transferred certain cryptocurrency to the Debtors to be held in the Debtors' Custody Program (the "Custody Assets").

C.    **WHEREAS**, on August 31, 2022, the Custody Ad Hoc Group filed the Custody Complaint seeking a declaratory judgment from the Bankruptcy Court that Custody Assets are property of Custody Account Holders (not property of the Debtors' estates), and that the Debtors should return all Custody Assets to Custody Account Holders as promptly as possible.[4]

D.    **WHEREAS**, on September 1, 2022, the Debtors filed the Withdrawal Motion, seeking the Court's authorization to return to Custody Account Holders the Custody Assets that the Debtors believed were not property of the Debtors' estates and not subject to the Debtors' potential preference avoidance or setoff actions, among other relief. Specifically, the Debtors sought to return digital assets that were (a) only ever in the Custody Program (the "Pure Custody Assets") or (b) transferred in the 90 days before the Petition Date from the Earn Program or the

---

[1]    The Debtors include the following: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd.; GK8 UK Limited; and GK8 USA LLC.

[2]    Capitalized terms used in the recitals but not otherwise defined shall have the meanings ascribed to them in the "Definitions" section. Capitalized terms used but not otherwise defined in this Settlement Agreement shall have the meanings ascribed to them in the Withdrawal Order, Settlement Motion, or Settlement Term Sheet, as applicable.

[3]    Debtors GK8 Ltd., GK8 USA LLC, and GK8 UK Limited filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 7, 2022.

[4]    *Complaint for Declaratory Judgment* [Adv. Pro. Docket No. 1] ¶¶ 60–62.

Borrow Program to the Custody Program and, at the time of such transfer(s), the aggregate value of such transfer(s) was less than $7,575 (valued as of the time of each such transfer) (the "Transferred Custody Assets" and, together with the Pure Custody Assets and to the extent not subject to the Debtors' potential setoff actions, the "Withdrawable Custody Assets," and the holders of such assets, the "Eligible Users").[5]

      E.      **WHEREAS**, the Parties agreed to negotiate a scheduling order to resolve certain issues related to Custody Assets on a consolidated basis.

      F.      **WHEREAS**, on October 13, 2022, the Court approved the Scheduling Order whereby in Phase I (as defined in the Scheduling Order), the Parties would brief (a) whether Custody Assets are property of the Debtors' estates, including whether Celsius' Terms of Use are unambiguous on the issue of ownership of Custody Assets; and (b) if Custody Assets are not property of the Debtors' estates, whether the Debtors should nonetheless be allowed to continue to hold Custody Assets, and maintain the status quo, with respect to individuals and/or accounts where the Debtors have potentially viable claims, including, without limitation, preference claims (collectively, the "Custody Issues").

      G.      **WHEREAS**, on November 5, 2022, the Parties filed their respective opening briefs [Docket Nos. 1290, 1291, and 1292]. On December 2, 2022, the Parties filed their respective response briefs [Docket Nos. 1567, 1571, and 1572]. As further set forth in the briefs, the Parties agreed that Custody Assets are not property of the Debtors' estates, but disagreed as to whether the Debtors should be allowed to maintain possession of the Custody Assets. The Parties also disagreed as to whether the withdrawal process in the Withdrawal Motion should be affected by the six percent shortfall in Custody Assets in the Debtors' segregated Custody Wallets compared to aggregate liabilities of the Custody Program (the "Shortfall Issue").

      H.      **WHEREAS**, on December 7, 2022, the Court held a hearing (the "December 7 Hearing") on the Custody Issues, finding that (a) the Parties agreed that title to Custody Assets remained with Custody Account Holders, and (b) Non-Withdrawable Custody Assets would not be turned over to the Custody Account Holders at that time, and directing the Parties to (x) move forward with Phase II (as defined in the Scheduling Order), and (y) meet and confer to resolve the Shortfall Issue and propose an order authorizing the Debtors to immediately return the Withdrawable Custody Assets.

      I.      **WHEREAS**, on December 20, 2022, the Court entered the Withdrawal Order, (a) finding that digital assets in the Custody Wallets (as defined in the Blonstein Declaration) are not property of the Debtors' estates under section 541 of the Bankruptcy Code and (b) granting the Withdrawal Motion in part to authorize the Debtors to open withdrawals for all Withdrawable Custody Assets *pro rata* on a coin-by-coin basis based on the proportion of each type of digital

---

[5]    Withdrawal Motion ¶¶ 4, 5, 10. In the Withdrawal Motion, the Debtors requested to maintain possession of all Custody Assets (a) that had been transferred into the Custody Program from the Earn Program or the Borrow Program, with respect to which the aggregate value of such transfer(s) was equal to or greater than $7,575, or (b) that belonged to Custody Account Holders with outstanding obligations owed to the Debtors through the Debtors' Borrow Program (the "Non-Withdrawable Custody Assets"). Withdrawal Motion ¶¶ 4, 6.

asset in the Custody Wallets.[6] Custody Account Holders with outstanding obligations owed to the Debtors through the Debtors' Borrow Program were not eligible to withdraw any of their Pure Custody Assets or Transferred Custody Assets.

J.     **WHEREAS**, on January 19, 2023, the Court entered an order directing the Parties to "confer on whether they [could] agree on a procedure to make distributions using the assets that all Parties agree are Custody Assets, setting aside for later determination, on a coin-by-coin basis, any shortfall as to which a further determination by the Court is necessary before such shortfall can be allocated." *Order Directing Certain Parties to Confer Regarding Custody Assets Shortfall Issue* [Docket No. 1880].

K.     **WHEREAS**, during the hearing on January 24, 2023, the Debtors informed the Court that the Parties agreed that each Eligible User would be permitted to withdraw ninety-four percent (94%) of such user's eligible Custody Assets pending the resolution of the Shortfall Issue. Jan. 24, 2023 Hr'g. Tr. 63:14–64:6.

L.     **WHEREAS**, on January 31, 2023, the Debtors filed the Withdrawal Notice, listing the Eligible Users who were entitled to withdraw the Withdrawable Custody Assets pursuant to the Withdrawal Order and the procedures pursuant to which such withdrawals would be implemented, including the return of ninety-four percent of eligible coin balances of Withdrawable Custody Assets.

M.     **WHEREAS**, shortly after the December 7 Hearing, the Parties began discussions on a potential settlement of the Phase II issues and the Non-Withdrawable Custody Assets.

N.     **WHEREAS**, following good faith and arm's–length negotiations, on February 28, 2023, the Parties reached an agreement on the terms of a settlement as set forth in the settlement term sheet attached hereto as **Exhibit A** (the "Settlement Term Sheet").

NOW, THEREFORE, it is hereby agreed to by and among the Parties:

## Definitions

a.     "Allowed Custody Claim" means any allowed Custody claims on account of Custody Assets.

b.     "Bankruptcy Code" has the meaning set forth in the recitals.

c.     "Bankruptcy Court" has the meaning set forth in the recitals.

d.     "Blonstein Declaration" means the *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with Respect to Certain Phase I Issues Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the*

---

[6]   Withdrawal Order ¶¶ 1–2. In the Withdrawal Order, the Court reserved decision "with respect to whether digital assets transferred into the Custody Program, but not held in the Custody Wallets are property of the Debtors' estates under section 541 of the Bankruptcy Code." *See* Withdrawal Order, Recitals.

*Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1192].

   e.  "<u>Celsius</u>" has the meaning set forth in the preamble.

   f.  "<u>Committee</u>" has the meaning set forth in the preamble.

   g.  "<u>Custody Account Holder</u>" has the meaning set forth in the preamble.

   h.  "<u>Custody Ad Hoc Group</u>" has the meaning set forth in the preamble.

   i.  "<u>Custody Assets</u>" has the meaning set forth in the recitals.

   j.  "<u>Custody Claim</u>" means a claim, as defined in section 101(5) of the Bankruptcy Code, held by a Custody Account Holder against Celsius on account of Custody Assets.

   k.  "<u>Custody Complaint</u>" means the complaint filed by the Custody Ad Hoc Group on August 31, 2022 commencing the adversary proceeding captioned *Ad Hoc Group of Custodial Account Holders v. Celsius Network LLC, et. al.*, Case No. 22-10964, Adv. No. 22-01142 (MG) (Bankr. S.D.N.Y. Aug. 31, 2022).

   l.  "<u>Custody Distribution Claim</u>" means the balance of a Custody Account Holder's Custody Account (such balance, the "<u>Custody Account Balance</u>") *minus* (a) any Withdrawn Assets with respect to such Custody Account Holder and (b) any other amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an allowed Deposit Claim (as will be defined in the Plan) related to the Debtors' Borrow program  in an amount that results in an obligation to value ratio of equal to or less than 80% as of the date of the entry of the Settlement Approval Order (it is expected that no such claims exist).  With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's obligation to value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated.

   m.  "<u>Custody Issues</u>" has the meaning set forth in the recitals.

   n.  "<u>Custody Settlement Payments</u>" has the meaning set forth in paragraph 5.

   o.  "<u>Debtors</u>" has the meaning set forth in the preamble.

   p.  "<u>December 7 Hearing</u>" has the meaning set forth in the recitals.

   q.  "<u>Election Form</u>" means the election form to participate in this Settlement Agreement, attached hereto as **Exhibit B,** as may be modified prior to entry of the Settlement Approval Order, and approved by the Settlement Approval Order.

r.      "Election Period" means the 30 calendar days following entry of the Settlement Approval Order during which any account holders with balances reflected in Custody Accounts shall be permitted to sign on to the Settlement Agreement.

s.      "First Custody Settlement Payment" has the meaning set forth in paragraph 5.

t.      "Non-Settling Custody Account Holders" means each Holder of an Allowed Custody Claim that does not "opt-in" to the Settlement Agreement within 30 days after entry of the Settlement Approval Order and that abstains from voting or votes to reject the Plan.

u.      "Non-Withdrawal Custody Account Holders" means all account holders with balances reflected in Custody Accounts that are not authorized to fully withdraw 94% of such holders' Custody Assets from Celsius's platform pursuant to the Withdrawal Order, including any holders with both (1) a Custody Account Balance and (2) an outstanding obligation owed to the Debtors through the Debtors' Borrow Program.  Each Non-Withdrawal Custody Account Holder shall be afforded an opportunity to become a Settling Custody Account Holder.

v.      "Parties" has the meaning set forth in the preamble.

w.      "Petition Date" has the meaning set forth in the recitals.

x.      "Plan" means any joint chapter 11 plan filed by the Debtors.

y.      "Plan Effective Date" has the meaning set forth in paragraph 5.

z.      "Pure Custody Assets" has the meaning set forth in the recitals.

aa.     "Rejection Event" means the date (if any) on which the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

bb.     "Scheduling Order" means the *Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044].

cc.     "Second Custody Settlement Payment" has the meaning set forth in paragraph 5.

dd.     "Settlement Agreement" has the meaning set forth in the preamble.

ee.     "Settlement Approval Order" means any order entered by the Bankruptcy Court approving the Settlement Motion, this Settlement Agreement, and the Election Form, which order shall be in a form reasonably acceptable to each of the Parties.

ff.     "Settlement Motion" means the *Joint Motion for Entry of an Order (I) Approving (A) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2148].

5

gg.     "Settlement Term Sheet" has the meaning set forth in the recitals.

hh.     "Settling Custody Account Holders" has the meaning set forth in the preamble.

ii.     "Shortfall Issue" has the meaning set forth in the recitals.

jj.     "Standstill" means the earlier of (a) the occurrence of a Rejection Event, (b) the occurrence of the Plan Effective Date, and (c) 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed.

kk.     "Transferred Custody Assets" has the meaning set forth in the recitals.

ll.     "Withdrawal Date" is the first date on which digital assets corresponding to Custody Assets are withdrawn from the Debtors' platform following the entry of the Settlement Approval Order, in accordance with the terms set forth therein.  The Withdrawal Date shall occur as soon as reasonably practicable following the (i) entry of the Settlement Approval Order and (ii) expiration of the Election Period.

mm.     "Withdrawal Motion" means the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670].

nn.     "Withdrawal Notice" means the *Notice of Schedule of Custody Users Entitled to Withdraw Certain Assets* [Docket No. 1958].

oo.     "Withdrawal Order" means the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767].

pp.     "Withdrawn Assets" means any assets that may be withdrawn from the Debtors' platform pursuant to the Withdrawal Order.

## Agreement

1.     **Settlement Term Sheet**.  The Settlement Term Sheet attached hereto as **Exhibit A** is fully incorporated into this Settlement Agreement.  To the extent there is any inconsistency between this Settlement Agreement, on the one hand, and the Settlement Term Sheet, on the other, the terms of this Settlement Agreement shall govern and control.  For the avoidance of any doubt, any provisions set forth in the Settlement Term Sheet not otherwise explicitly discussed in this Settlement Agreement shall be deemed part of this Settlement Agreement.

2.     **For Settlement Purposes Only**.  This Settlement Agreement is for settlement purposes only.  Except as explicitly set forth in this Settlement Agreement, the fact of this Settlement Agreement or any provision herein, the negotiations or proceedings related hereto, and any actions taken hereunder shall not constitute or be construed as (a) any admission of the validity

of any claim or any fact alleged by any of the Parties, (b) any admission of any wrongdoing, fault, violation of law, breach of contract, or liability of any kind on the part of Debtors, (c) any admission as to any claim or allegation made in any demand of, action against, or proceeding against Debtors, and/or (d) a waiver of any applicable defense, including, without limitation, any applicable statute of limitations. This Settlement Agreement and its exhibits shall not be offered or admissible as evidence against Settling Custody Account Holders or the Debtors in any action or proceeding in any forum for any purpose whatsoever, except any action or proceeding brought to enforce its terms.

3. **Approval**. This Settlement Agreement shall be effective on the date the Bankruptcy Court enters the Settlement Approval Order. Although the Parties shall sign this Settlement Agreement prior to the entry of the Settlement Approval Order, this Settlement Agreement shall not be effective or binding on the Parties if the Settlement Approval Order is not entered by the Bankruptcy Court.

Upon entry of the Settlement Approval Order:

- the Custody Ad Hoc Group shall withdraw, subject to the Standstill, the Custody Complaint (which shall be withdrawn with prejudice on the Plan Effective Date);

- the Scheduling Order shall be subject to the Standstill;

- the Debtors shall be authorized to distribute to those account holders with Custody Account Balances authorized to withdraw assets pursuant to the Withdrawal Order the additional 6% originally held back as a result of the Shortfall Issue.[7] For the avoidance of any doubt, those Custody Account Holders permitted to withdraw assets pursuant to the Withdrawal Order shall be entitled to receive assets totaling 100% of such holders' entitlements to the amounts permitted to be withdrawn by such holders under the Withdrawal Order, minus applicable transaction costs and fees;

- neither the Debtors nor the Debtors' estates shall pursue any avoidance actions such entities may have against the Settling Custody Account Holders related to any such holder's Custody Claims, and the Settling Custody Account Holders shall not pursue any litigation, including seeking relief from the automatic stay, turnover, or other claims or causes of action, related to any such holder's Custody Claims, subject to the Standstill; and

- the Parties agree that any and all digital assets (other than collateral on account of obligations under the Borrow program) in the Settling Custody Account

---

[7] In the event that the Debtors have an insufficient amount of certain types of cryptocurrency to make all distributions in-kind to satisfy the Shortfall Issue, the Debtors shall make distributions in alternative cryptocurrencies, which conversion rate shall be determined using the value of the original digital asset as of the Petition Date in U.S. dollars that will be converted into alternative available cryptocurrency based on the value of such digital asset as of the date of entry of the Settlement Approval Order.

Holders' Custody Accounts that are not distributed or required to be distributed to such Holders under the Withdrawal Order, the Settlement Approval Order, or any order confirming the Plan, as applicable, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such applicable order. For the avoidance of any doubt, after the Plan Effective Date, holders of Allowed Custody Claims that vote to accept the Plan agree that, on the Plan Effective Date, any and all digital assets in such holders' accounts that are not distributed to such holder under the order confirming the Plan, or were not distributed or required to be distributed to such holder under the Withdrawal Order or the Settlement Approval Order, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such order.

4.     **Offer to All Custody Account Holders**.  The settlement set forth in this Settlement Agreement will be offered to all Custody Account Holders with Custody Account Balances that are not authorized to fully withdraw Custody Assets from Celsius' platform pursuant to the Withdrawal Order, including any holders with both (1) a Custody Account and (2) an outstanding obligation owed to the Debtors through the Debtors' Borrow Program.  Custody Account Holders have the right to opt in to this Settlement Agreement by returning the Election Form, and/or pursuant to the Plan in full and final satisfaction of all Allowed Custody Claims held by the respective Custody Account Holder.  Upon returning an Election Form, such Settling Custody Account Holder shall be a Party to this Settlement Agreement.  For the avoidance of any doubt, Settling Custody Account Holders shall not be required to sign this Settlement Agreement but, by following the procedures described herein and in the Settlement Approval Order, including by returning an Election Form and/or voting for the Plan, such Settling Custody Account Holder shall be deemed to be a Party to this Settlement Agreement.

5.     **Settlement Payments & Conditions**.[8]  The Parties agree that the First Custody Settlement Payment (as defined below) for Custody Account Holders who return an Election Form within the Election Period shall occur as soon as reasonably practicable following the entry of the Settlement Approval Order and the expiration of the Election Period.  Any Settling Custody Account Holder wishing to elect in to and become a Party to this Settlement Agreement must vote all of his or her Allowed Custody Claims to accept the Plan and shall receive, in full and final satisfaction and settlement of such Settling Custody Account Holder's Allowed Custody Claim and in exchange for such Settling Custody Account Holder's agreement not to pursue any litigation on account of such Allowed Custody Claim for period of time as set forth in the Settlement Term Sheet:

---

[8]     For the avoidance of any doubt, each Holder of an Allowed Custody Claim that does not opt into this Settlement Agreement and is thus not a Settling Custody Account Holder within 30 days after entry of the Settlement Approval Order ***that votes to accept the Plan*** shall receive, in full and final satisfaction and settlement of such Holder's Allowed Custody Claim, a distribution comprised of the following:

- Commencing on the Plan Effective Date, the Custody Settlement Payments.
- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Custody Account Holder on account of such Holder's Custody Distribution Claim.

- Commencing on the Withdrawal Date, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such holder's Custody Account Balance (the "First Custody Settlement Payment"); **plus**

- Upon the earliest of (i) the effective date of the Plan (the "Plan Effective Date"), (ii) the occurrence of a Rejection Event, (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such holder's Custody Account Balance (the "Second Custody Settlement Payment" and, together with the First Custody Settlement Payment, the "Custody Settlement Payments").

- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Settling Custody Account Holder on account of such holder's Custody Distribution Claim.

- Notwithstanding the foregoing, if any sale or chapter 11 plan provides any holders, or subset thereof, of Allowed Custody Claims with treatment on terms better than those set forth in this Settlement Agreement, including as a result of a release of claims against holders of Allowed Custody Claims (including avoidance actions), then any Settling Custody Account Holder shall be entitled to receive the difference between such holder's Custody Settlement Payments and the treatment set forth in the sale or chapter 11 plan, as applicable, on the same terms set forth in such sale or chapter 11 plan, as applicable.

- Each Non-Settling Custody Account Holder shall have an amount escrowed corresponding to such Holder's Allowed Custody Claims, and the litigation trustee appointed under the Plan shall have a period of time to be set forth in the Plan to commence avoidance actions against any Non-Settling Custody Account Holders following the Plan Effective Date. For the avoidance of any doubt, any Non-Settling Custody Account Holders shall not grant or receive a release with respect to their Custody Claims, and shall retain all rights to litigate with respect to their Custody Claims following the Plan Effective Date, and the litigation trustee shall be vested with all legal entitlements, defenses, and other rights held by the Debtors with respect to such Custody Claims, including the right to pursue avoidance actions with respect to any such Custody Claims.

- For the avoidance of any doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding obligation owed to the Debtors through the Debtors' Borrow Program, shall

receive his or her Custody Assets in accordance with the treatment of allowed Deposit Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.

6.      **Release & Exculpation**.  Upon the Plan Effective Date, each of the Parties shall mutually release each other Party from any and all claims and causes of action related to the applicable Allowed Custody Claims of Settling Custody Account Holders, including any avoidance actions or, with respect to such Settling Custody Account Holders' Custody Distribution Claims, setoff rights.  Notwithstanding anything to the contrary set forth herein, the Parties are not releasing any rights or causes of action against any Parties with respect to any assets other than Custody Assets or claims other than Allowed Custody Claims, subject to the terms set forth in this Settlement Agreement, including:  (a) assets held in the Earn Program by an account holder party to the Settlement Agreement; (b) assets held in the Borrow Program by an account holder party to the Settlement Agreement; (c) assets corresponding to balances associated with the Withhold Accounts by an account holder party to the Settlement Agreement (if any); and (d) assets transferred off of Celsius's platform by an account holder party to the Settlement Agreement (other than in accordance with the Withdrawal Order and/or Settlement Approval Order).

7.      **Election Process**.  Upon entry of the Settlement Approval Order and at the start of the Election Period, the Debtors will communicate to each Custody Account Holder via the Celsius App and e-mail the entry of the Settlement Approval Order and such user's opportunity to participate in the Settlement Agreement.  This Settlement Agreement is only binding on the Custody Account Holders who elect to participate in the Settlement Agreement by submitting an Election Form during the Election Period or pursuant to the Plan.

8.      **Distribution Procedures**.  The Custody Settlement Payments shall be made in-kind and the Debtors may make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets (each as defined in the Blonstein Declaration), respectively, in an amount sufficient to satisfy such in-kind distribution.  In the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient.  Any distribution made in alternative cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date in U.S. dollars, which will then be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Approval Order.  Within 15 days of the expiration of the Election Period, the Debtors shall notify Settling Custody Account Holders through the Celsius App and by email, or other means, such as filing a Notice with the Bankruptcy Court, of the amount and type of digital assets that such holder will receive.  All Settling Custody Account Holders agree to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving any Custody Settlement Payments.

9.      **Fees & Expenses**.  The Debtors agree not object to or otherwise oppose the Custody Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Togut, Segal & Segal LLP, as counsel for the Custody Ad Hoc Group, in connection with the chapter 11 cases.

10. **Notice**. All notices, demands, instructions, and other communications required or permitted under the Settlement Agreement to any Party (a "<u>Notice</u>") must be in writing, will be effective upon receipt, and must be delivered by hand delivery, overnight courier, or email. Unless otherwise specified in a Notice sent or delivered in a manner indicated below, Notices must be sent to the Parties as indicated below:

**If to the Company:**
Celsius Network LLC
50 Harrison Street
Suite 209F
Hoboken, NJ 07030
Attn: Ron Deutsch, General Counsel
Email: ron.deutsch@celsius.network

**with a copy to**:
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Joshua A. Sussberg, P.C., Elizabeth Jones
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: jsussberg@kirkland.com, elizabeth.jones@kirkland.com

and

Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Attn: Patrick J. Nash, Jr. P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig, and Dan Latona
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com, ross.kwasteniet@kirkland.com, chris.koenig@kirkland.com, dan.latona@kirkland.com

**If to the Custody Ad Hoc Group:**
Togut, Segal & Segal LLP
One Penn Plaza
Suite 3335
New York, New York 10119
Attn: Kyle Ortiz, Bryan M. Kotliar
Telephone: (212) 594-5000
Email: kortiz@teamtogut.com, bkotliar@teamtogut.com

**If to the Committee**
White & Case LLP
1221 Avenue of the Americas

11

New York, New York 10020
Attn: David M. Turetsky, Samuel P. Hershey, Keith H. Wofford
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com, sam.hershey@whitecase.com, kwofford@whitecase.com

and

White & Case LLP
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60654
Attn: Michael C. Andolina, Gregory F. Pesce
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com, gregory.pesce@whitecase.com

and

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90012
Attn: Aaron E. Colodny
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

11.     **Governing Law**.  This Settlement Agreement, and any disputes related thereto, shall be governed by and be construed in accordance with (a) applicable federal law, or (b) to the extent federal law does not apply, the laws of the state of New York without regard to the rule of conflict of laws of the state of New York or any other jurisdiction that would require the application of the law of another jurisdiction.  The Parties hereto consent to submit to the jurisdiction of the appropriate federal district court for any litigation relating to this Settlement Agreement and agree not to commence any litigation relating to this Settlement Agreement except in the appropriate federal district court.

12.     **Authority**.  Each of the Parties hereto represents and warrants that it has the authority to enter into this Settlement Agreement and to undertake the transactions contemplated hereunder.

13.     **Successors and Assigns**.  The rights and obligations of each of the Parties under this Settlement Agreement shall be binding upon, and inure to the benefit of, any successor or assign of each such Party.

14. **Non-Severability**. Each of the terms of this Settlement Agreement is a material and integral part hereof. Should any provision of this Settlement Agreement be held to be unenforceable or contrary to law, the entire Settlement Agreement shall be deemed null and void.

15. **Entire Understanding**. This Settlement Agreement constitutes the entire understanding of the Parties hereto in connection with the subject matter covered herein, and may not be amended, modified, or altered except by an agreement in writing signed by each of the Parties.

16. **No Party Deemed Drafter**. The signatories to this Settlement Agreement are competent persons, each of whom is experienced in business and represented by counsel. Therefore, any ambiguous language in this Settlement Agreement will not be construed against any particular Party as the drafter of such language.

17. **Failure to Enforce**. The failure of any Party to enforce a provision of this Settlement Agreement will not constitute a waiver of such Party's right to enforce that provision.

18. **Counterparts**. This Settlement Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same document. Delivery of an executed counterpart of this Settlement Agreement by electronic mail (to Christopher S. Koenig (chris.koenig@kirkland.com) for the Debtors; to Bryan M. Kotliar (bkotliar@teamtogut.com) for the Custody Ad Hoc Group; and to Aaron Colodny (aaron.colodny@whitecase.com) for the Committee) shall be equally effective as delivery of an original executed counterpart.

**Celsius Network LLC on behalf of itself and
its debtor affiliates**

By: _____

    Name:  **Christopher Ferraro**
    **Title: Authorized Signatory**

**Official Committee of Unsecured Creditors**

**By:** _/s/ Scott Duffy_
      **Name:  Scott Duffy**
      **Title:  Co-Chair of Official Committee of**
      **Unsecured Creditors**

**CUSTODY AD HOC GROUP**
**BY ITS COUNSEL**

/s/ *Bryan M. Kotliar*
KYLE J. ORTIZ
BRYAN M. KOTLIAR
JARED C. BORRIELLO
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
kortiz@teamtogut.com
bkotliar@teamtogut.com

<u>**Exhibit A**</u>

**Settlement Term Sheet**

*In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG)

## SETTLEMENT TERM SHEET

## REGARDING CUSTODY ASSETS

THIS SETTLEMENT TERM SHEET (THIS "SETTLEMENT TERM SHEET") CONTAINS CERTAIN MATERIAL TERMS AND CONDITIONS OF A PROPOSED SETTLEMENT BY AND BETWEEN THE DEBTORS IN THE JOINTLY-ADMINISTERED CASES CAPTIONED *IN RE CELSIUS NETWORK LLC, ET AL.*, CASE NO. 22-10964 (MG) (THE "DEBTORS" AND, TOGETHER WITH THEIR NON-DEBTOR AFFILIATES, "CELSIUS"), THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "COMMITTEE"), THE AD HOC GROUP OF CUSTODIAL ACCOUNT HOLDERS (THE "CUSTODY AD HOC GROUP" AND, TOGETHER WITH THE DEBTORS AND THE COMMITTEE, THE "PARTIES").   THIS SETTLEMENT TERM SHEET CONTEMPLATES A FULL AND FINAL SETTLEMENT OF ALL CLAIMS BETWEEN THE PARTIES RELATED TO THE CUSTODY ASSETS, INCLUDING PHASE II OF THE CUSTODY AND WITHHOLD ISSUES (WITH RESPECT TO THE CUSTODY AD HOC GROUP), AS DEFINED IN THE *JOINT STIPULATION AND AGREED SCHEDULING ORDER BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE AD HOC GROUPS WITH RESPECT TO THE CUSTODY AND WITHHOLD ISSUES* [DOCKET NO. 1044] (THE "SCHEDULING ORDER").[1]

THIS SETTLEMENT TERM SHEET DOES NOT ADDRESS ALL TERMS, CONDITIONS, OR OTHER PROVISIONS THAT WOULD BE REQUIRED IN CONNECTION WITH THE SETTLEMENT, WHICH SHALL BE SET FORTH IN THE SETTLEMENT MOTION AND SETTLEMENT ORDER (EACH AS DEFINED BELOW), WHICH ARE SUBJECT TO AGREEMENT IN ACCORDANCE WITH THIS SETTLEMENT TERM SHEET.

THIS SETTLEMENT TERM SHEET IS NOT AN OFFER, ACCEPTANCE OR SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS, OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.   ANY SUCH OFFER, ACCEPTANCE OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE LAW, INCLUDING SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE TO THE EXTENT APPLICABLE.   NOTHING CONTAINED IN THIS SETTLEMENT TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL APPROVAL OF THE SETTLEMENT MOTION OR CONFIRMATION OF THE PLAN CONTEMPLATED HEREBY (AND THEN ONLY AS PROVIDED THEREIN), AS APPLICABLE, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Scheduling Order or the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "Withdrawal Order"), as applicable.

| **SETTLEMENT TERMS** |
|---|

| **Settlement Summary** | The settlement (the "Settlement") between the Parties will include the following, as set forth in further detail in this Settlement Term Sheet: |
|---|---|
| | ▪ The Parties will file a joint motion to approve the Settlement, including distribution procedures, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet (together with all exhibits attached thereto, the "Settlement Motion"), to be heard at the March 21, 2023 omnibus hearing. |
| | ▪ Subject to the terms set forth herein, it is contemplated that this Settlement shall be offered to all account holders with balances reflected in Custody Accounts that are not otherwise authorized to fully withdraw the substantial majority such holders' Custody Assets from Celsius' platform pursuant to the Withdrawal Order (the "Non-Withdrawal Custody Account Holders"), including any holder with both (1) a Custody Account and (2) an outstanding loan owed to the Debtors through the Debtors' Borrow Program. Each Non-Withdrawal Custody Account Holder shall be afforded an opportunity to become a Settling Custody Account Holder (as defined below). |
| | ▪ Any Non-Withdrawal Custody Account Holders that voluntarily agree to the terms of the Settlement (the "Settling Custody Account Holders") shall receive the treatment set forth herein. |
| | ▪ The Settlement constitutes the full and final satisfaction of all allowed Custody claims on account of Custody Assets (each such claim, an "Allowed Custody Claim") held by the Settling Custody Account Holders against Celsius, including a settlement with respect to the approximately six percent shortfall between the amount of digital assets in the Debtors' Custody wallets compared to aggregate Custody liabilities (the "Shortfall Issue"). |
| | ▪ This Settlement is contingent on the Steering Committee of the Custody Ad Hoc Group accepting the Settlement such that the Custody Ad Hoc Group agrees to the Standstill (the "Consenting Member Threshold"). |
| | ▪ Upon entry of an order approving the Settlement Motion, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet (together with all exhibits attached thereto, the "Settlement Order"), the Custody Ad Hoc Group shall withdraw, subject to the Standstill (as defined below), the complaint in the adversary proceeding captioned *Ad Hoc Group of Custodial Account Holders v. Celsius Network LLC, et al*, Adv. Pro. No. 22-01142 (MG) (Bankr. S.D.N.Y. Aug. 31, 2022) |

| | |
|---|---|
| | (the "<u>Custody Complaint</u>"). The Custody Complaint shall be withdrawn with prejudice on the Plan Effective Date (as defined below). |
| | ▪ Upon entry of the Settlement Order, the Scheduling Order shall be subject to the Standstill. The Scheduling Order shall be withdrawn with prejudice on the Plan Effective Date. |
| | ▪ Upon entry of the Settlement Order, the Debtors shall be authorized to distribute to those account holders with balances associated with Custody Accounts authorized to withdraw assets pursuant to the Withdrawal Order the additional 6% originally held back as a result of the Shortfall Issue. For the avoidance of doubt, only those holders of Custody Accounts permitted to withdraw assets pursuant to the Withdrawal Order shall receive assets totaling 100% of such holders' entitlement to the amounts permitted to be withdrawn by such holders under the Withdrawal Order, minus applicable transaction costs and fees. |
| | ▪ By agreeing to the Settlement, any Settling Custody Account Holder agrees that, following the distribution of a court-approved disclosure statement and balloting materials, he or she shall support and vote to accept all of its claims provided for hereunder in connection with a chapter 11 plan that provides for treatment of the Allowed Custody Claims that are subject to this Settlement held by Settling Custody Account Holders in accordance with the terms of this Settlement (the "<u>Plan</u>"). The disclosure statement for such Plan may include a statement that the Custody Ad Hoc Group supports such Plan as it relates to the treatment of Allowed Custody Claims that are subject to this Settlement held by the Settling Custody Account Holders or a letter from the Custody Ad Hoc Group to the same effect. For the avoidance of doubt, nothing in this Settlement shall dictate the manner in which a Settling Custody Account Holder votes any claim other than an Allowed Custody Claim. |
| | For the avoidance of any doubt, nothing herein precludes any account holder from withdrawing any assets from Celsius' platform as permitted by the Withdrawal Order (the "<u>Withdrawn Assets</u>"). |
| **Settlement Motion** | The Custody Ad Hoc Group shall inform the Debtors and the Committee (a) of the members of the Custody Ad Hoc Group that have stated their intention to participate in the Settlement and (b) that the Consenting Member Threshold has been met no later than two (2) business days prior to the filing of the Settlement Motion. |



| | Any account holders with balances reflected in Custody Accounts shall be permitted to sign on to the Settlement within 30 days of the entry of the Settlement Order (the "Election Period").[2] |
|---|---|
| **Custody Claims** | "Custody Distribution Claim" means the balance of the Custody Account Holder (such balance, the "Custody Account Balance") *minus* (a) any Withdrawn Assets and (b) any further amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an allowed Borrow Claim (as will be defined in the Plan) in an amount that results in a loan to value ratio of equal to or less than 80% on the date of the entry of the Settlement Order (it is expected that no such claims exist).  With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's loan to value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated. |

The "Withdrawal Date" is the first date on which digital assets corresponding to Custody digital assets are withdrawn from the Debtors' platform following the entry of the Settlement Order, in accordance with the terms set forth therein.  The Withdrawal Date shall occur as soon as reasonably practicable following the (i) entry of the Settlement Order and (ii) expiration of the Election Period.

Each Settling Custody Account Holder must vote all of his or her Allowed Custody Claims to accept the Plan and shall receive, in full and final satisfaction and settlement of such Settling Account Holder's Allowed Custody Claim and in exchange for such Holder's agreement to abide by the Standstill, a distribution comprising:

- Commencing on the Withdrawal Date, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such balance (the "First Custody Settlement Payment"); *plus*

- Upon the earliest of (i) the effective date of the Plan (the "Plan Effective Date"), (ii) the occurrence of a Rejection Event,[3] (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such balance (the "Second Custody Settlement Payment" and, together with the First Custody Settlement Payment, the "Custody Settlement Payments").

---

[2]   The process for joining the Settlement shall be set forth in the Settlement Motion as approved by the Settlement Order.

[3]   "Rejection Event" means the date the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Settling Custody Account Holder on account of such holders' Custody Distribution Claim;

- Notwithstanding the foregoing, if any sale or chapter 11 plan provides any holders, or subset thereof, of Allowed Custody Claims with treatment on terms better than those set forth in this Settlement, including as a result of a release of claims against holders of Custody Claims (including avoidance actions), then any Settling Custody Account Holders shall be entitled to receive the difference between the Custody Settlement Payments and the treatment set forth in the sale or chapter 11 plan, as applicable, on the same terms set forth in such sale or chapter 11 plan, as applicable.

Each Holder of an Allowed Custody Claim that does not opt into the above settlement and is not a Settling Custody Holder within 30 days after entry of the Settlement Order *that votes to accept the Plan* shall receive, in full and final satisfaction and settlement of such Holder's Allowed Custody Claim, a distribution comprising:

- Commencing on the Plan Effective Date, the Custody Settlement Payments.

- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Custody Account Holder on account of such holders' Custody Distribution Claim.

Each Holder of an Allowed Custody Claim that does not "opt-in" to the Settlement within 30 days after entry of the Settlement Order and that abstains from voting or votes to reject the Plan shall not be a Settling Custody Account Holder (the "Non-Settling Custody Account Holders"), and shall have an amount escrowed corresponding to such Holder's Allowed Custody Claims, and the litigation trustee appointed under the Plan shall have a period of time to be set forth in the Plan to commence avoidance actions against any Non-Settling Custody Account Holders following the Plan Effective Date.  For the avoidance of doubt, any Non-Settling Custody Account Holders shall not grant or receive a release with respect to their Custody Claims, and shall retain all rights to litigate with respect to their Custody Claims following the Plan Effective Date, and the litigation trustee shall be vested with all legal entitlements, and defenses, and other rights held by the Debtors with respect to such Custody Claims, including the right to pursue avoidance actions with respect to any such Custody Claims.

For the avoidance of doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody

| | |
|---|---|
| | Assets in accordance with the treatment of allowed Borrow Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order. |
| **Release & Exculpation Provisions** | Upon entry of the Settlement Order, neither the Debtors nor the Debtors' estates shall pursue any avoidance actions such entities may have against the Settling Custody Account Holders, and the Settling Custody Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, or other claims or causes of action, related to any such holder's Custody Claims, in each case until the earlier of (a) the occurrence of a Rejection Event, (b) Plan Effective Date, and (c) 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed (the "Standstill"). |
| | Upon entry of the Settlement Order, the Parties agree that any and all digital assets (other than collateral on account of loan claims) in the Settling Custody Account Holders' accounts that are not distributed or required to be distributed to such Holders under the Withdrawal Order, the Settlement Order, or any order confirming the Plan, as applicable, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such applicable order. For the avoidance of doubt, after the Plan Effective Date, Holders of Allowed Custody Claims that vote to accept the Plan agree that on the Plan Effective Date any and all digital assets in such Holders' accounts that are not distributed to such Holder under the order confirming the Plan, or were not distributed or required to be distributed to such Holder under the Withdrawal Order or the Settlement Order, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such order. |
| | Upon the Plan Effective Date, each of the Parties shall mutually release each other Party from any and all claims and causes of action related to the applicable Custody Claims of Settling Custody Account Holders, including any avoidance actions or, with respect to such Settling Custody Account Holders' Custody Distribution Claims, setoff rights. |
| | Notwithstanding anything to the contrary set forth herein, the Parties are not releasing any rights or causes of action against any Parties with respect to any assets other than Custody Assets, subject to the terms set forth in this Settlement Term Sheet, including: (a) assets held in the Earn Program by an account holder party to the Settlement; (b) assets held in the Borrow Program by an account holder party to the Settlement; (c) assets held in the Withhold Accounts by an account holder party to the Settlement (if any); and (d) assets transferred off of Celsius' platform by an account holder party to the Settlement (other than in accordance with the Withdrawal Order and/or Settlement Order). |
| **Distribution Procedures** | The Custody Settlement Payments shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets, respectively, in an amount sufficient to satisfy such in-kind distribution; *provided that*, in the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the |

|  | remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. The Debtors shall notify Settling Custody Account Holders through the Debtors' mobile application (the "Celsius App") and by email of the amount and type of digital asset that such holder will receive within 15 days of expiration of the Election Period. Settling Custody Account Holders shall be required to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving the Custody Settlement Payment. |
|---|---|
| **Fees and Expenses** | The Debtors will not object to or otherwise oppose the Custody Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Togut, Segal & Segal LLP, as counsel for the Custody Ad Hoc Group, in connection with the chapter 11 cases. |
| **Minimum Distributions** | No holders of Custody Distribution Claims that aggregate less than $10.00 shall be entitled to a distribution under the Settlement, except as otherwise provided under the Plan. |
| **Undeliverable Distributions** | Any distribution under the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distribution shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan. |
| **Tax Matters** | The Settlement shall be structured in a tax-efficient and cost-effective manner. |

7

## Exhibit 2

***Notice of Election to Opt In to the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group* and Election Form**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF ELECTION TO OPT IN TO THE
## SETTLEMENT BY AND AMONG THE DEBTORS,
## THE COMMITTEE, AND THE CUSTODY AD HOC GROUP

> **YOU ARE RECEIVING THIS NOTICE (THIS "NOTICE") BECAUSE OUR RECORDS SHOW YOU HOLD CUSTODY ASSETS AND ARE A CUSTODY ACCOUNT HOLDER.**
>
> **CUSTODY ACCOUNT HOLDERS MAY VOLUNTARILY "OPT IN" TO THE SETTLEMENT IN FULL AND FINAL SATISFACTION OF SUCH CUSTODY ACCOUNT HOLDERS' ALLOWED CUSTODY CLAIM**

Celsius Network LLC and certain of its affiliates (collectively, the "Debtors") hereby offer all Custody Account Holders, other than current and former employees and insiders, the opportunity to participate in the settlement (the "Settlement") set forth in the *Settlement Agreement* by and among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and the Ad Hoc Group of Custodial Account Holders (the "Custody Ad Hoc Group") dated March 20, 2023 (the "Settlement Agreement") and described in the *Joint Motion for Entry of an Order (I) Approving (a) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (b) the Election Form and (II) Granting Related Relief* [Docket No. 2418] (the "Motion").[2]  Copies of the Settlement Agreement and Motion can be obtained by accessing the Debtors' case information website (located at https://cases.stretto.com/celsius).

The United States Bankruptcy Court for the Southern District of New York (the "Court") has approved the Settlement and the Settlement Agreement pursuant to the *Order (I) Approving*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  Capitalized terms used and not otherwise defined herein have the meaning ascribed to them in the Motion.  A copy of the Settlement Agreement was filed at Docket No. 2271.

*(a) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (b) the Election Form and (II) Granting Related Relief* [Docket No. [●]] (the "Settlement Approval <u>Order</u>").  The Settlement Agreement is attached to the Settlement Approval Order as <u>Exhibit 1</u> and hereto as **Appendix 2**.  A letter form the Ad Hoc Group regarding the Settlement is attached to the Settlement Approval Order as <u>Exhibit 3</u> and attached hereto as **Appendix 1**.

**THE OPT IN ELECTION FORM ATTACHED HERETO AS <u>EXHIBIT A</u> (THE "<u>ELECTION FORM</u>") PROVIDES YOU WITH THE OPTION TO SETTLE ALL ACTIONS AND CLAIMS YOU MAY HAVE AGAINST THE DEBTORS RELATED TO YOUR CUSTODY ASSETS.  THE RELEASES CONTAINED IN THE SETTLEMENT AGREEMENT ARE A CONDITION TO RECEIVING THE CUSTODY SETTLEMENT PAYMENTS.**

Pursuant to the Settlement Agreement, as soon as reasonably practicable following the expiration of the Election Period (*i.e.*, 30 days after the Order is entered), Settling Custody Account Holders shall have the right to receive the First Custody Settlement Payment, equal to 36.25% of such account holder's Custody Distribution Claim,[3] and upon the earliest of (i) the effective date of the Plan, (ii) the occurrence of a Rejection Event,[4] (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the Settling Custody Account Holders shall have the right to receive the Second Custody Settlement Payment, which is also equal to 36.25% of such account holder's Custody Distribution Claim (*a combined distribution of 72.5%*); *provided, however*, that any Custody Account Holder must affirmatively sign on to the Settlement Agreement by submitting the Election Form attached hereto as **Exhibit A** to receive the payments set forth above on the date specified therein.

The Settlement Agreement provides for certain releases of claims by the Debtors, and certain releases of claims by the Custody Account Holders.  These releases are described in greater detail in the Motion and set forth in the Settlement Agreement.  By agreeing to the Settlement Agreement, you are irrevocably electing not to pursue any claims or causes of action prohibited by these releases.  **Please read the following section carefully, as it describes these releases**:

**NEITHER THE DEBTORS NOR THE DEBTORS' ESTATE SHALL PURSUE ANY AVOIDANCE ACTIONS SUCH ENTITIES MAY HAVE AGAINST THE**

---

[3]  A "<u>Custody Distribution Claim</u>" means the balance of the Custody Account of a Custody Account Holder (such balance, the "<u>Custody Account Balance</u>") *minus* (a) any Withdrawable Custody Assets and (b) any further amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an Allowed Borrow Claim (as defined in the forthcoming plan) in an amount that results in a loan to value ratio of equal to or less than 80% on the date of the entry of the Order (it is expected that no such claims exist).  With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's loan-to-value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated.

[4]  "<u>Rejection Event</u>" means the date the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

SETTLING CUSTODY HOLDERS, AND THE SETTLING CUSTODY HOLDERS SHALL AGREE NOT TO PURSUE ANY LITIGATION, INCLUDING SEEKING RELIEF FROM THE AUTOMATIC STAY, TURNOVER, OR OTHER CLAIMS OR CAUSES OF ACTION, RELATED TO ANY SUCH HOLDER'S CUSTODY CLAIMS, IN EACH CASE UNTIL THE EARLIER OF (A) THE OCCURRENCE OF A REJECTION EVENT, (B) PLAN EFFECTIVE DATE, AND (C) THE STANDSTILL.[5]

ANY AND ALL DIGITAL ASSETS (OTHER THAN COLLATERAL ON ACCOUNT OF LOAN CLAIMS) IN THE SETTLING CUSTODY HOLDERS' ACCOUNTS THAT ARE NOT DISTRIBUTED OR REQUIRED TO BE DISTRIBUTED TO SUCH HOLDERS UNDER THE WITHDRAWAL ORDER, THE SETTLEMENT APPROVAL ORDER, OR ANY ORDER CONFIRMING THE PLAN, AS APPLICABLE, SHALL BE CONSIDERED PROPERTY OF THE DEBTORS' ESTATES AND ANY CLAIMS AND/OR CAUSES OF ACTION HELD BY ANY PARTY WITH RESPECT TO SUCH ASSETS SHALL BE RELEASED AND WAIVED PURSUANT TO THE SETTLEMENT APPROVAL ORDER. FOR THE AVOIDANCE OF DOUBT, AFTER THE PLAN EFFECTIVE DATE, HOLDERS OF ALLOWED CUSTODY CLAIMS THAT VOTE TO ACCEPT THE PLAN AGREE THAT ON THE PLAN EFFECTIVE DATE ANY AND ALL DIGITAL ASSETS IN SUCH HOLDERS' ACCOUNTS THAT ARE NOT DISTRIBUTED TO SUCH HOLDER UNDER THE ORDER CONFIRMING THE PLAN, OR WERE NOT DISTRIBUTED OR REQUIRED TO BE DISTRIBUTED TO SUCH HOLDER UNDER THE WITHDRAWAL ORDER OR THE SETTLEMENT APPROVAL ORDER, SHALL BE CONSIDERED PROPERTY OF THE DEBTORS' ESTATES AND ANY CLAIMS AND/OR CAUSES OF ACTION HELD BY ANY PARTY WITH RESPECT TO SUCH ASSETS SHALL BE RELEASED AND WAIVED PURSUANT TO SUCH ORDER.

UPON THE PLAN EFFECTIVE DATE, EACH OF THE PARTIES SHALL MUTUALLY RELEASE EACH OTHER PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION RELATED TO THE APPLICABLE CUSTODY CLAIMS OF SETTLING CUSTODY ACCOUNT HOLDERS, INCLUDING ANY AVOIDANCE ACTIONS OR, WITH RESPECT TO SUCH SETTLING CUSTODY ACCOUNT HOLDERS' CUSTODY DISTRIBUTION CLAIMS, SETOFF RIGHTS.

NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THE SETTLEMENT AGREEMENT OR THIS NOTICE, THE PARTIES ARE NOT RELEASING ANY RIGHTS OR CAUSES OF ACTION AGAINST ANY PARTY WITH RESPECT TO ANY ASSETS OTHER THAN CUSTODY ASSETS, SUBJECT TO THE TERMS SET FORTH IN THE SETTLEMENT AGREEMENT, INCLUDING: (A) ASSETS HELD IN THE EARN PROGRAM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT; (B) ASSETS HELD IN THE BORROW PROGRAM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT; (C) ASSETS ASSOCIATED

---

[5] "Standstill" means 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed.

**WITH WITHHOLD BALANCES ASSOCIATED WITH AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT (IF ANY); AND (D) ASSETS TRANSFERRED OFF OF CELSIUS' PLATFORM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT (OTHER THAN IN ACCORDANCE WITH THE WITHDRAWAL ORDER AND/OR SETTLEMENT APPROVAL ORDER).**

**THE SETTLEMENT AGREEMENT IS OPT IN ONLY. NO ACTION IS NECESSARY TO OPT OUT AND BE TREATED IN ACCORDANCE WITH ANY CHAPTER 11 PLAN OF THE DEBTORS. IF YOU FAIL TO PROPERLY COMPLETE AND SUBMIT THE OPT IN ELECTION FORM PRIOR TO THE OPT-IN DEADLINE, YOU MAY STILL OPT INTO THE SETTLEMENT AGREEMENT UNDER ANY CHAPTER 11 PLAN OF THE DEBTORS.**

If you have any questions concerning this Notice, the Settlement Agreement, or the procedures set forth in the Election Form, please contact Stretto, Inc., the Debtors' claims, noticing, and solicitation agent by calling 855.423.1530 (toll free) or 949.669.5873 (international), or by email at Celsiusinquiries@stretto.com.

## EXHIBIT A

**Opt In Election Form**

Opt In Instructions

***If You Are a Custody Account Holder:***

Custody Account Holders who wish to sign on to the Settlement Agreement must electronically deliver their instruction to opt in to the Settlement ("Electronic Opt In") in accordance with the procedures as set forth herein.  If you do not wish to agree to the Settlement, the Election Form ***should not be*** submitted to the Debtors' Claims, Notice, and Solicitation Agent, Stretto, Inc. (the "Agent").  For the Electronic Opt In to be effective with respect to a Custody Account Holder's Claim, the Electronic Opt In must be received by the Agent by [April 24], 2023 at 5:00 p.m. (Prevailing Eastern Time) (the "Opt In Deadline").

**ONCE A HOLDER DELIVERS AN ELECTRONIC OPT IN TO THE AGENT, SUCH HOLDER WILL NO LONGER HAVE THE RIGHT TO SELL OR TRANSFER ANY CUSTODY ASSETS OR, TO THE EXTENT PERMITTED AND APPLICABLE REQUIREMENTS ARE MET, IN CERTAIN OTHER LIMITED CIRCUMSTANCES.  ONCE A HOLDER DELIVERS AN ELECTRONIC OPT IN TO THE AGENT, SUCH HOLDER CANNOT WITHDRAW THE ELECTRONIC OPT IN.**

All questions as to the validity, form, eligibility (including time of receipt) and acceptance and revocation of an Election Form will be resolved by the Debtors, in the Debtors' sole discretion, which resolution shall be final and binding.

**Completed Election Forms must be received by the Agent by the Opt In Deadline.**  If your Election Form is submitted after the Opt In Deadline, your Election Form will not be accepted.  If your Election Form is submitted and the opt in box below is not checked, you will not be deemed to have accepted the Settlement.  Any Election Form that does not provide sufficient information to identify the holder will not be valid.

If you are completing this Election Form on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Notice.

**Election Form**

**THIS ELECTION FORM PROVIDES THE OPPORTUNITY TO RECEIVE TREATMENT AS SPECIFIED IN THE SETTLEMENT AGREEMENT.   IF YOU (I) ABSTAIN FROM COMPLETING THIS ELECTION FORM OR (II) FAIL TO PROPERLY COMPLETE THIS ELECTION FORM AND SUBMIT IT BY THE OPT IN DEADLINE, YOU WILL RECEIVE AN ADDITIONAL OPPORTUNITY TO OPT INTO SIMILAR TREATMENT IN ACCORDANCE WITH THE DEBTORS' FORTHCOMING CHAPTER 11 PLAN.**

If you wish to elect into the Settlement Agreement for Custody Account Holders, you must check the box below and submit this Electronic Opt In to the Debtors' claims, noticing, and solicitation agent, Stretto, Inc., **so that such Election Form is actually received on or before [April 24], 2023, at 5:00 p.m. (prevailing Eastern Time).**  If you do not wish to "opt in" to the Settlement, there is no need to take any further action.

The Custody Account Holder identified below:

☐     elects to "sign" on to the Settlement Agreement.

Name: _____

Signature: _____

By: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

**You may obtain a copy of the (a) Settlement Agreement and (b) other important documents in these chapter 11 cases, by visiting the website of the Debtors' claims, noticing, and solicitation agent, Stretto, Inc., available at https://cases.stretto.com/celsius or by calling 855.423.1530 (toll free) or 949.669.5873 (international).**

## APPENDIX 1

**Custody Ad Hoc Group Letter**

# APPENDIX 2

## Settlement Agreement

**Exhibit 3**

**Custody Ad Hoc Group Letter**

# TOGUT, SEGAL & SEGAL LLP

ONE PENN PLAZA
NEW YORK, NEW YORK 10119
―――
WWW.TOGUTLAWFIRM.COM
―――
(212) 594-5000

BRYAN M. KOTLIAR, ESQ.
(212) 201-5582
BKOTLIAR@TEAMTOGUT.COM

March 20, 2023

**VIA ELECTRONIC TRANSMISSION**

TO: Celsius Custody Account Users

Re:     *In re Celsius Network LLC, et al.,*
        Case No. 22-10964 (MG) (Bankr. S.D.N.Y.)

Dear Celsius Custody Account Users:

We write this letter as counsel to, and on behalf of, an ad hoc group of Celsius Custody account users (the "Custody Ad Hoc Group") to express the Custody Ad Hoc Group's views on the settlement for Custody accounts recently approved by the Bankruptcy Court on [_____], 2023 [Docket No. [__]] (the "Custody Settlement").[1]

We represent solely the interests of the Custody Ad Hoc Group and not any member of that group (or you) individually, and the Custody Ad Hoc Group is not a fiduciary, agent, or representative of any particular Custody account user.  That said, we believe the actions that the Custody Ad Hoc Group has taken in the Celsius bankruptcy cases (the "Chapter 11 Cases") were designed to benefit all Custody account users regardless of whether such user was a member of the Custody Ad Hoc Group.

**While we do not represent you individually, for the reasons described in this letter, we recommend participating in the Custody Settlement.  Your decision whether**

―――――――――――――――

[1]    References to "Docket No. __" are to the docket of the chapter 11 cases, which can be accessed for free by visiting https://cases.stretto.com/Celsius/.

or not to participate in the Custody Settlement is up to you and depends upon your personal facts and circumstances.

I.    The Custody Ad Hoc Group

The Custody Ad Hoc Group is a grassroots group of Custody account users that formed in August 2022 to pursue the return of cryptocurrency held in Custody accounts. Since then, the Custody Ad Hoc Group has grown to more than 90 members holding $27.8 million in U.S. dollar value of digital assets in Custody accounts (measured as of the July 13, 2022 bankruptcy filing date (the "Petition Date")). The Custody Ad Hoc Group is administered by a sub-set of members referred to as the "Steering Committee" that have devoted substantial time and energy to negotiating for the best possible outcome for Custody account users under the circumstances.

The members of the Custody Ad Hoc Group have spent considerable amounts of their personal time and money in actively participating in the Chapter 11 Cases in pursuing the return of Custody assets. As a result of those efforts, we have reached agreement on the Custody Settlement with Celsius and the Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee"), which was approved by the Bankruptcy Court, and will allow you to receive a substantial amount of your Custody account balance distributed to you (in kind) as explained in greater detail below and the materials included with this letter.

II.    Background

After forming in August 2022, we negotiated extensively with Kirkland & Ellis LLP, as Celsius' bankruptcy counsel, and White & Case LLP, as counsel to the Unsecured Creditors' Committee, for Celsius to return cryptocurrency in the Custody program to Custody account users. Because the Custody Ad Hoc Group believed that Celsius' Terms of Use clearly establish that cryptocurrency in Custody accounts are not property of the Celsius bankruptcy estates, we demanded that Celsius return those coins to Custody account users immediately.

When Celsius would not commit to doing so for all holders, we filed a complaint against Celsius on behalf of the Custody Ad Hoc Group seeking the Bankruptcy Court's determination that Custody coins belong to Custody account users and requiring Celsius to return them to Custody account users. Around the same time, Celsius filed a motion for Bankruptcy Court approval to return some, but not all, Custody coins— specifically only those that (a) were only ever in the Custody program (the "Pure Custody Assets") and (b) transferred into Custody in the 90 days before the Petition Date from the Earn program or the Borrow program and, at the time of such transfer(s), the aggregate value of such transfers were less than $7,575 (the "Transferred Custody

<u>Assets</u>").[2]  The reason that Celsius gave for this distinction that restricted the vast majority of Custody coins from being withdrawn is that coins that were transferred from Earn into Custody (or off the platform directly from Earn) could be considered a "preference" under bankruptcy law and subject to a lawsuit to treat those assets as unsecured claims by Celsius' bankruptcy estate.

We believed this distinction should not restrict Custody users from getting back their coins.  In fact, Celsius agreed with us that Custody coins were not property of Celsius' estate, but did not want to return them because of this potential clawback issue. The Unsecured Creditors' Committee also agreed with us for the most part, but believed that Custody coins only belong to users to the extent held in Celsius' segregated internal Custody wallet, which does not contain sufficient coins to match customer deposits (there is an approximately 6% shortfall, though it varies on a coin-by-coin basis).  Both Celsius and the Unsecured Creditors' Committee opposed our request for return of all Custody coins—not just Pure Custody Assets and Transferred Custody Assets—because of the potential preference issue.

We took our dispute to the Bankruptcy Court.  After extensive briefing and a trial held on December 7, 2022, the Bankruptcy Court ruled that Custody coins in Celsius' segregated Custody wallet are customers' property, but reserved decision on the "shortfall" balance not held in such wallet.  The Bankruptcy Court also held that Custody coins subject to potential preference actions would not be released prior to a determination of certain issues with respect to the preference issues.  As a result, Custody coins other than the Pure Custody Assets and Transferred Custody Assets would not be returned to Custody users absent further litigation pursuant to a "Phase II" proceeding regarding certain potential customer defenses to clawback actions or a settlement or some other resolution among the parties.  The Bankruptcy Court also approved Celsius' request to distribute the Pure Custody Assets and Transferred Custody Assets but requested that the parties resolve the shortfall issue.

Following this ruling, we reached a short-term resolution of the shortfall issue for Pure Custody Assets and Transferred Custody Assets whereby Celsius would distribute a fixed 94% of Custody assets to eligible Custody account users, and reserved resolution of the 6% shortfall for a later date.  In addition, we engaged in extensive negotiations with Celsius and the Unsecured Creditors' Committee regarding a consensual resolution

---

[2]    Custody account users with an outstanding loan under the Borrow program did not qualify under Pure Custody Assets or Transferred Custody Assets for return of their cryptocurrency in the Custody program.  As explained in greater detail below, under the Custody Settlement, there is no such restriction, and users with an outstanding loan may participate in the Custody Settlement and receive their Custody coins as provided therein.

that would avoid the substantial cost and uncertainty of Phase II regarding the preference issues.

### III.      The Custody Settlement

These negotiations proved fruitful and Celsius, the Unsecured Creditors' Committee and the Custody Ad Hoc Group agreed on the terms of the Custody Settlement, which resolves all issues between the parties, including the Phase II litigation.  On March [__], the Bankruptcy Court entered an order approving the Custody Settlement [Docket No. [__]], including the procedures for you to elect to voluntarily participate in the Custody Settlement.  **You should closely review the Custody Settlement and the materials distributed to you by Celsius in considering whether to participate in the Custody Settlement.  The settlement is by voluntary election only and your decision whether or not to participate in it is up to you**.  **You will have 30 days to elect to participate in the Custody Settlement and receive the initial distribution.**

In broad strokes, the Custody Settlement provides the following for Custody account users that choose to participate in the settlement so long as such users (a) follow the instructions from Celsius and (b) vote all Custody claims in favor of Celsius' chapter 11 plan:[3]

- Coin Distribution (Two Installments):  You will receive 72.5% of your Custody balance distributed to you (in kind) based on the coins in your account.  You will receive (1) the first 36.25% of your Custody balance approximately two weeks after the expiration of the 30-day election period, and (2) the next 36.25% of your Custody balance on the earlier of (a) the effective date of a chapter 11 plan for Celsius (the "Plan Effective Date"), (b) the date Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code, (c) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (d) December 31, 2023.

- Release of Clawback Claims Against Custody Balance:  Celsius' bankruptcy estates will waive, and not pursue you for, any preference or clawback claims related to your Custody account.  You will receive your 72.5% under the Custody Settlement "free and clear."  Please note, under the Custody Settlement, Celsius is not releasing any preference or clawback claims against you outside of your Custody

---

[3]     If you participate in the Custody Settlement, you are required to vote your Custody claims in favor of Celsius' chapter 11 plan.  Note that this requirement does not apply to any other claims or interests you have in Celsius, such as under the Earn or Borrow programs, and you may separately vote those claims or interests against the plan in your discretion.

account, such as any coins you transferred off Celsius' platform from the Earn or Borrow Programs.

- <u>Resolution of Phase II Litigation</u>:  The Custody Ad Hoc Group has agreed to a standstill and resolution of the Phase II litigation concerning certain preference defenses.  The Custody Ad Hoc Group will not be pursuing the Bankruptcy Court's determination of these issues, and any preference or clawback defenses will have to be raised separately by customers if and when at a later date any preference or clawback claims are pursued.

- <u>Preservation of Additional Distributions</u>:  If you participate in the Custody Settlement and later it is determined that you are eligible to receive more than 72.5% under Celsius' chapter 11 plan (or otherwise), you are entitled to receive those additional amounts.  For example, if Celsius' chapter 11 plan provides for a release of preference and clawback claims against Custody users that transferred cryptocurrency below certain amounts and you fall in that category, you are eligible to receive 100% of your Custody balance on the Plan Effective Date.

- <u>No Loan Restriction</u>.  There is no restriction on participation if you have an outstanding loan with Celsius under the Borrow program; *provided* that if your loan has less than a loan-to-value ratio of 80%, Celsius may withhold a portion of your Custody distribution to satisfy that threshold.  If you have an outstanding loan, the loan will be treated separately in connection with the Celsius' chapter 11 plan (or otherwise) and discussions about the treatment of loans are ongoing.

The Custody Settlement also resolves the shortfall issue for Transferred Custody Assets and Pure Custody Assets and provides that if you are eligible to receive coins under those categories, you will receive 100% of your Custody balance distributed to you (instead of 94%).  In addition, the Custody Settlement will be incorporated into the terms of a chapter 11 plan for Celsius.  If you choose to not participate in the Custody Settlement, you can still receive a distribution of 72.5% of you Custody balance distributed to you on the Plan Effective Date if you vote in favor of the plan.

## IV.    <u>Recommendation</u>

We believe the Custody Settlement is beneficial because it allows Custody account users that are not eligible for a distribution of Transferred Custody Assets or Pure Custody Assets to obtain a substantial distribution of their Custody balance, including a sizeable (36.25%) distribution in the near-term and prior to the consummation of a chapter 11 plan.  In addition, if you participate in the Custody Settlement, you will receive a release and waiver of all causes of action against your Custody account, including preference claims.  If you do not participate in the Custody

Settlement and instead choose to pursue a 100% return of your Custody assets, Celsius' bankruptcy estates or any successors could pursue all causes of action held by Celsius against you with respect to you Custody assets, including preference claims. While you may have defenses to such actions, providing such defenses is often time-consuming and expensive. The outcome of any such litigation is highly uncertain, and there is a risk that you may be unsuccessful. In such a case, title to your Custody assets would be transferred from you to Celsius, and you would only have a general unsecured claim against the Celsius bankruptcy estates (that would be treated in accordance with the chapter 11 plan). Even if you are successful, you may incur significant legal costs, which would reduce your overall net recovery. Preference defenses often involve complicated legal and factual issues, many of which may be issues of first impression for a bankruptcy court in the cryptocurrency context.

If you participate in the Custody Settlement, you will avoid the risk of time-consuming and expensive litigation over your Custody assets and obtain a guaranteed return of at least 72.5% (which can be increased in certain circumstances as described above and as detailed in the Custody Settlement) and obtain a full release with respect to your Custody account.

## V. Conclusion

The Custody Settlement is being offered to you and your decision whether or not to participate in the Custody Settlement is up to you. Of course, before you choose to participate in the Custody Settlement, you should review the enclosed materials, including the Custody Settlement in their entirety, and you may want to consult your own legal and financial professionals. Although the Custody Ad Hoc Group, by this letter, expresses its support for the Custody Settlement and encourages your participation in it, this letter does not necessarily reflect the view of any of the members of the Custody Ad Hoc Group.

If you have any questions regarding the Custody Settlement and related procedures or otherwise, please contact counsel for Celsius at celsiuscreditorquestions@kirkland.com or counsel to the Unsecured Creditors' Committee at CelsiusCommitteeInquiries@Whitecase.com.

Very truly yours,

TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Bryan M. Kotliar*

Bryan M. Kotliar

A Member of the Firm

DISCLAIMER

THIS LETTER DOES NOT CONSTITUTE LEGAL ADVICE.  TOGUT, SEGAL & SEGAL LLP AND
THE CUSTODY AD HOC GROUP DO NOT REPRESENT ANY INDIVIDUAL USERS OR ANY
PARTICULAR CLAIMS AND CANNOT ADVISE CELSIUS USERS REGARDING THE IMPACT
OF THE CUSTODY SETTLEMENT OR THE PLAN OR ANY OTHER DOCUMENTS APPROVED
BY THE COURT AND IMPLEMENTED IN CONNECTION WITH THE CHAPTER 11 CASES.