# CELSIUS EX. 127

Dear Honorable Judge Martin Glenn,

I am writing today with regards to a motion to review a section 1127(a) violation.

Your honor, on the the most recent plan modification [Doc 3577] on 9/27 where the majority of CEL Token Holders in the Custody class rejected the plan, the following changes were made.

> 84.   83. "*Deactivation Date Cryptocurrency Conversion Table*" means the conversion table the Distribution Agent shall use to calculate the ~~amount of Cash or Cryptocurrency to distribute to a~~Claims of Holders of ~~an~~ Allowed Custody Claims ~~or Withhold Claim~~ that did not retrieve ~~its~~their Plan distribution from the Celsius platform by the Deactivation Date in Cash and Liquid Cryptocurrency, which table shall contain applicable Cryptocurrency prices as of a date agreed by the Debtors and the Committee, which date is expected to be approximately fifteen (15) days prior to the Deactivation Date. Notwithstanding anything to the contrary herein excepting Custody Claims from the CEL Token Settlement, the Deactivation Date Cryptocurrency Conversion Table shall provide that CEL Token is priced at $0.25 if the Bankruptcy Court approves the CEL Token Settlement, or such other amount as ordered by the Bankruptcy Court. For the avoidance of doubt, following the Deactivation Date, such Claims shall be subject to further conversion pursuant to any applicable Distribution Cryptocurrency Conversion Table in connection with subsequent distributions.
>
> 85.   84. "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.C of the Plan.

8

22-10964-mg   Doc 3577   Filed 09/27/23   Entered 09/27/23 11:25:05   Main Document
Pg 110 of 193

Your honor, this change is against my best interest. Today marks 7 days since this was entered into the docket, and I have had limited time to prepare, interpret, and argue these changes. I have been compromised in my best interests. I have reached out to several counsels for fair representation; however, this is an incredible amount of material to take in for a counsel that is not up to date on this matter.  I apologize to the court in advance for any mistakes I have made and may make in the future with regards any matters on this case, and appreciate the court's patience and grace on this matter. I however I cannot sit idle and allow the debtor to adversely affect me. I am doing my best without counsel at this point.

I am a non-consenting creditor that voted to reject the plan as an impaired Custody Class. My CEL Token is classified as Pure Custody and after further analysis, the change moves the deactivation value decision of prices from the UCC and Debtor to a pre-determined value of $0.25 for CEL Token, as per the plan amendment after the vote. The UCC and Debtor's have to follow best interest of a Pure CEL Custody holder such as myself in a Chapter 11 plan, which would have returned 100% of my CEL Token dollar value in my Pure Custody. For reference, the balloting docket is [3560] and was entered 9/25/23, two days prior to this plan change.

Under section 1127(a) of the Bankruptcy Code, the plan proponent may modify the plan at any time before confirmation, but the plan as modified must meet all the requirements of chapter 11. When there is a proposed modification after balloting has been conducted, and the court finds after a hearing that the proposed modification does not adversely affect the treatment of any creditor who has not accepted the modification in writing, the modification is deemed to have been accepted by all creditors who previously accepted the plan. Fed. R. Bankr. P. 3019. **If it is determined that the proposed modification does have an adverse effect on the claims of non-consenting creditors, then another balloting must take place.**

The UCC's expert witness, Mr. Galka, did not file his precise numerical opinion until 10/02/23, in docket 3646. The court has not ruled on the value of CEL, nor has a valuation hearing been called.

For the court's review I have uploaded to the court a ruling yesterday, 10/03/23, where the SEC was DENIED appeal on contesting Ripple as a Security. I am attaching the first page of the ruling on the following page, the full upload has been uploaded separately just before this filing.

Case 1:20-cv-10832-AT-SN   Document 917   Filed 10/03/23   Page 1 of 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
SECURITIES AND EXCHANGE COMMISSION,

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/3/2023_
```

                              Plaintiff,
              -against-                                   20 Civ. 10832 (AT)

RIPPLE LABS, INC., BRADLEY                                **ORDER**
GARLINGHOUSE, and CHRISTIAN A. LARSEN,

                              Defendants.

ANALISA TORRES, District Judge:

   Plaintiff, the Securities and Exchange Commission (the "SEC"), brings this action against Defendants Ripple Labs, Inc. ("Ripple") and two of its senior leaders, Bradley Garlinghouse and Christian A. Larsen, alleging that Defendants engaged in the unlawful offer and sale of securities in violation of Section 5 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), (c). Am. Compl. ¶¶ 9, 430–35, ECF No. 46. The SEC also alleges that Larsen and Garlinghouse aided and abetted Ripple's Section 5 violations. *Id.* ¶¶ 9, 436–40. On July 13, 2023, the Court granted in part and denied in part the parties' cross-motions for summary judgment (the "Order"). Order, ECF No. 874; *see SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2023 WL 4507900 (S.D.N.Y. July 13, 2023).

   The SEC now moves to certify for interlocutory appeal two holdings in the Order. ECF No. 892; SEC Mem. at 1, ECF No. 893. For the reasons stated below, the SEC's motion for certification of the interlocutory appeal is DENIED.

I request the following relief from the court under 1127(a) –

I call for another balloting to take place.

Thank you,

Dimitry Kirsanov, Pro Se

/s/Dimitry Kirsanov