Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
Hannah C. Simson (admitted *pro hac vice*)
Joseph D'Antonio (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' DEPOSITION SUBMISSION AND NOTICE OF OBJECTIONS**
**FOR THE DEPOSITION OF OREN BLONSTEIN BY JOHAN BRONGE**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Pursuant to the Court's instructions during the October 16-17, 2023 portion of the confirmation hearing, the above-captioned debtors and debtors in possession (collectively, the "Debtors") submit the below deposition testimony of Oren Blonstein and objections thereto.[2]  In addition to the testimonial objections listed below, the Debtors object to the extent that exhibits used during Mr. Bronge's questioning contain markings from Mr. Bronge that do not appear on the original documents.

| Page | Line | Page | Line | Reasoning for Objection |
|------|------|------|------|-------------------------|
| 12 | 15 | 13 | 12 | Calls for Legal Conclusion |
| 22 | 20 | 23 | 2 | Calls for Privileged Information |
| 23 | 3 | 23 | 20 | Calls for Privileged Information |
| 29 | 5 | 29 | 15 | Calls for Privileged Information |
| 29 | 16 | 30 | 6 | Non-Testimony |
| 37 | 23 | 40 | 17 | Calls for Legal Conclusion; Calls for Privileged Information |
| 46 | 5 | 47 | 20 | Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 47 | 21 | 49 | 11 | Calls for Legal Conclusion; Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 49 | 12 | 50 | 5 | Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 50 | 17 | 51 | 18 | Calls for Legal Conclusion; Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 52 | 13 | 53 | 9 | Calls for Legal Conclusion; Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 53 | 10 | 54 | 10 | Calls for Legal Conclusion; Calls for Information Within Previous Scope of Testimony (Terms of Use) |
| 54 | 18 | 55 | 20 | Non-Testimony; Calls for Legal Conclusion; Calls for Information Within Previous Scope of Testimony (Terms of Use) |

---

[2]    The transcript for the October 17, 2023 deposition of Oren Blonstein is attached hereto as **Exhibit A**.

Washington, D.C.
Dated:  October 18, 2023

/s/ T.J. McCarrick

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
Hannah C. Simson (admitted *pro hac vice*)
Joseph D'Antonio (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:     (202) 389-5000
Facsimile:      (202) 389-5200
Email:            judson.brown@kirkland.com
                      tj.mccarrick@kirkland.com
                      grace.brier@kirkland.com
                      hannah.simson@kirkland.com
                      joseph.dantonio@kirkland.com

 - and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

Page 1

| | |
|---|---|
| 1 | |
| 2 | UNITED STATES BANKRUPTCY COURT |
| 3 | SOUTHERN DISTRICT OF NEW YORK |
| | ----------------------------------------X |
| 4 | In re: |
| 5 | CELSIUS NETWORK LLC, et al., |
| 6 | Debtor. |
| | ----------------------------------------X |
| 7 | ***CONFIDENTIAL*** |
| 8 | |
| 9 | REMOTE DEPOSITION OF OREN BLONSTEIN |
| 10 | Tuesday, October 17, 2023 |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | Reported by: |
| 16 | Rebecca Schaumloffel, RPR, CLR |
| 17 | JOB #:  1015 |
| 18 | TIME:  12:13 p.m. Eastern |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

Page 2

| | |
|---|---|
| 1 | |
| 2 | A P P E A R A N C E S : |
| 3 | |
| 4 | |
| 5 | KIRKLAND & ELLIS LLP |
| 6 | Attorneys for the Debtors |
| | 1301 Pennsylvania Avenue NW |
| | Washington, DC 20004 |
| 7 | BY:  HANNAH SIMSON, ESQ. |
| 8 | DAN LATONA, ESQ. |
| | LORENZA VASSALLO, ESQ. |
| 9 | |
| 10 | |
| 11 | WHITE & CASE LLP |
| 12 | Attorneys for the Official Committee |
| | of Unsecured Creditors |
| 13 | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| 14 | BY:  KATHRYN KUETHMAN, ESQ. |
| 15 | |
| | ALSO PRESENT: |
| 16 | |
| 17 | Johan Bronge, pro se |
| 18 | Judy Diaz, Lexitas |
| 19 | |
| | *           *           * |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

Page 3

| | | |
|---|---|---|
| | 1 | O. BLONSTEIN |
| 12:14PM | 2 | THE VIDEOGRAPHER:  We are now on |
| 12:14PM | 3 | the record.  My name is Judy Diaz. |
| 12:14PM | 4 | I'm the legal videographer for |
| 12:14PM | 5 | Evolution Reporting.  Today's date is |
| 12:14PM | 6 | October 17, 2023, and the time is |
| 12:14PM | 7 | 12:14 p.m.  This remote video |
| 12:14PM | 8 | deposition is being held in the matter |
| 12:14PM | 9 | of Celsius Networks, LLC, et al.  The |
| 12:14PM | 10 | deponent is Oren Blonstein. |
| 12:14PM | 11 | All parties to this deposition |
| 12:14PM | 12 | are appearing remotely and have agreed |
| 12:14PM | 13 | to the witness being sworn in |
| 12:14PM | 14 | remotely.  All counsel will be noted |
| 12:14PM | 15 | on the stenographic record.  The court |
| 12:14PM | 16 | reporter is Rebecca and will now swear |
| 12:14PM | 17 | in the witness. |
| | 18 | OREN BLONSTEIN, called as a witness, having |
| | 19 | been first duly sworn by a Notary Public of |
| | 20 | the States of New York, New Jersey, and |
| | 21 | Pennsylvania was examined and testified as |
| | 22 | follows: |
| 12:15PM | 23 | MR. BRONGE:  Okay.  So am I to |
| 12:15PM | 24 | start now?  This is Johan Bronge, the |
| 12:15PM | 25 | creditor in the Celsius case. |

Page 4

| | | |
|---|---|---|
| | 1 | O. BLONSTEIN |
| 12:15PM | 2 | Am I okay to start or do I need |
| 12:15PM | 3 | anything further? |
| 12:15PM | 4 | MS. SIMSON:  You can start, |
| 12:15PM | 5 | Mr. Bronge. |
| 12:15PM | 6 | MR. BRONGE:  Thank you. |
| 12:15PM | 7 | EXAMINATION BY |
| 12:15PM | 8 | MR. BRONGE: |
| 12:15PM | 9 | Q.   Good, I suppose morning, |
| 12:15PM | 10 | Mr. Blonstein. |
| 12:15PM | 11 | A.   Good morning. |
| 12:15PM | 12 | Q.   So I would like to ask you a few |
| 12:15PM | 13 | questions regarding some different subjects, |
| 12:15PM | 14 | specifically around securities and ownership |
| 12:16PM | 15 | and valuation. |
| 12:16PM | 16 | So I would like first to start to |
| 12:16PM | 17 | confirm that you are and have been a |
| 12:16PM | 18 | compliance officer in Celsius; is that |
| 12:16PM | 19 | correct? |
| 12:16PM | 20 | A.   I am not currently the chief |
| 12:16PM | 21 | compliance officer. |
| 12:16PM | 22 | Q.   But you have been? |
| 12:16PM | 23 | A.   I was the chief compliance officer |
| 12:16PM | 24 | from September 2021 through November 2022. |
| 12:16PM | 25 | Q.   Okay.  So in this role did you |

Page 5

```
               O. BLONSTEIN
12:16PM  2  oversee Celsius interactions with different
12:16PM  3  governmental entities?
12:16PM  4              MS. SIMSON:  Objection.  Outside
12:16PM  5  of the scope.
12:16PM  6              MR. BRONGE:  Okay.  Why is
12:16PM  7  that -- why is that outside of the
12:16PM  8  scope?
12:16PM  9              MS. SIMSON:  Mr. Bronge, your
12:16PM 10  testimony -- your questions today are
12:16PM 11  limited to the questions that you
12:16PM 12  asked Mr. Ferraro during the last
12:17PM 13  hearing.
12:17PM 14              MR. BRONGE:  No, I'm not
12:17PM 15  supposed to ask those questions.
12:17PM 16  That's what the deal is.  I'm not
12:17PM 17  supposed to ask similar questions or
12:17PM 18  the same questions that I discussed
12:17PM 19  with Mr. Ferraro.
12:17PM 20      So this is not the same
12:17PM 21  questions that I asked Mr. Ferraro.
12:17PM 22  So I think I should be able to ask
12:17PM 23  them.
12:17PM 24              MS. SIMSON:  Mr. Blonstein, if
12:17PM 25  you know the answer, you may answer.
```

Page 6

```
               O. BLONSTEIN
12:17PM  2  BY MR. BRONGE:
12:17PM  3      A.   Sorry, can you repeat the
12:17PM  4  question, please.
12:17PM  5      Q.   Yes.  In your capacity as the
12:17PM  6  chief compliance officer, were you dealing
12:17PM  7  with the Celsius interactions with different
12:17PM  8  governmental entities and regulators?
12:17PM  9      A.   I had no direct interaction with
12:17PM 10  -- actually, I'm sorry.  Let me think about
12:18PM 11  this.
12:18PM 12      There were some state regulators
12:18PM 13  that I interacted with in the process of the
12:18PM 14  Company trying to acquire state lending
12:18PM 15  licenses and there were also Bank Secrecy
12:18PM 16  Act -- sorry, the FinCEN, the Financial
12:18PM 17  Crimes Enforcement Network, I interacted with
12:18PM 18  them.
12:18PM 19      But, generally speaking, we had a
12:18PM 20  -- we had a separate legal and regulatory
12:18PM 21  team that did not report to me that managed
12:18PM 22  governmental, you know, relations.
12:18PM 23      Q.   So as -- what did you ensure
12:18PM 24  compliance with, then?
12:18PM 25      A.   My primary responsibility was to
```

Page 7

```
               O. BLONSTEIN
12:18PM  2  focus on making sure that the Company's Bank
12:18PM  3  Secrecy Act, anti-money laundering, and
12:18PM  4  sanctions compliance programs were in place.
12:18PM  5      I -- you know, as the chief
12:19PM  6  compliance officer, my -- I had a plan to
12:19PM  7  expand out into other areas of the Company's
12:19PM  8  business, but we didn't get to that before
12:19PM  9  the Company filed for bankruptcy.
12:19PM 10      So really -- and I had mentioned
12:19PM 11  this in some of my previous depositions --
12:19PM 12  but, really, my focus was on the Company's
12:19PM 13  primary responsibility as a money services
12:19PM 14  business to comply with FinCEN and the
12:19PM 15  Department of Treasury's anti-money
12:19PM 16  laundering and sanctions regulations.
12:19PM 17      Q.   Okay.  So in that capacity, then,
12:19PM 18  did you get into contact at all with the
12:19PM 19  government's cease and desist orders,
12:19PM 20  different state governments, I think, of the
12:19PM 21  United States?
12:19PM 22      A.   I became aware of those at the
12:19PM 23  time they were made public.
12:19PM 24      Q.   Okay.  So --
12:19PM 25      A.   Also -- and just to make one other
```

Page 8

```
               O. BLONSTEIN
12:19PM  2  note, is that, from what I recall, all of
12:20PM  3  those -- the vast majority of those cease and
12:20PM  4  desist orders came before my time as chief
12:20PM  5  compliance officer.
12:20PM  6      Q.   Yes, but I would like to ask you a
12:20PM  7  couple of questions regarding those.  So that
12:20PM  8  would be the document that is called "A," if
12:20PM  9  that can be shared.  If you received my
12:20PM 10  e-mail with those documents.
12:20PM 11              THE COURT REPORTER:  Are you
12:20PM 12  asking to mark that as an exhibit?
12:20PM 13              MR. BRONGE:  Yes.
12:20PM 14      (Whereupon, Blonstein Exhibit A,
12:20PM 15  Decision + Order on Motion was marked
12:20PM 16  for identification as of this date by
12:20PM 17  the Reporter.)
12:20PM 18  BY MR. BRONGE:
12:20PM 19      Q.   So I think I --
12:20PM 20              MS. SIMSON:  Would you please
12:20PM 21  share -- would you be able to share
12:20PM 22  the whole document with the witness,
12:20PM 23  or scroll down so that he can see it?
12:20PM 24              THE COURT REPORTER:  And can
12:21PM 25  someone put it in the chat, please?
```

Page 9

O. BLONSTEIN

12:21PM 2      MS. SIMSON: And also, for
12:21PM 3   purposes of the record, I wanted to
12:21PM 4   let you know that I'm lodging
12:21PM 5   objections on the record to preserve
12:21PM 6   our right to object, but unless I
12:21PM 7   instruct otherwise, the witness can
12:21PM 8   proceed with answers and the Judge
12:21PM 9   will rule later.
12:21PM 10  BY MR. BRONGE:
12:21PM 11     Q.   All right.  So is it up to -- I
12:21PM 12  can start referring to the document?
12:21PM 13     I will just -- because it's a lot
12:21PM 14  to read.  So I will just go to the pertinent
12:21PM 15  parts.  But this document is a legal document
12:21PM 16  from the Supreme Court of the State of New
12:21PM 17  York and it discusses just status, basically,
12:21PM 18  of the Earn accounts in Celsius and if it is
12:21PM 19  security under the Martin Act and how it is.
12:21PM 20     MR. BRONGE:  And if we can go to
12:21PM 21  page 13 of this document.
12:21PM 22     THE COURT REPORTER:  Can someone
12:22PM 23  post the exhibit in the chat, please?
12:22PM 24     Thank you.
12:22PM 25     MR. BRONGE:  I think it's

Page 10

O. BLONSTEIN

12:22PM 2   actually page 12, sorry.  Page 12.
12:22PM 3   There should be some annotations on
12:22PM 4   that document, if I sent the correct
12:22PM 5   one.  So it should -- turn on the
12:22PM 6   annotations, you will be able to see.
12:22PM 7     MS. SIMSON:  For the purposes of
12:22PM 8   the record, I cannot see the document
12:22PM 9   anymore.
12:22PM 10    THE VIDEOGRAPHER:  Sorry, I'm
12:22PM 11  unable to transfer the files.
12:22PM 12    MS. SIMSON:  I think if you just
12:22PM 13  put it back on the screen, that will
12:22PM 14  work.  Thank you very much.
12:23PM 15    THE VIDEOGRAPHER:  Okay.
12:23PM 16    MR. BRONGE:  So if you can
12:23PM 17  scroll down, then, to page 12 of 25.
12:23PM 18    MS. SIMSON:  And noting for the
12:23PM 19  record that this is a document that
12:23PM 20  has been marked up and it's not the
12:23PM 21  original.
12:23PM 22    MR. BRONGE:  Yes, it's my
12:23PM 23  annotations to make it a little bit
12:23PM 24  clearer to see what I'm looking for.
12:23PM 25  BY MR. BRONGE:

Page 11

O. BLONSTEIN

12:23PM 2     Q.   So where I have that redline, I
12:23PM 3   can read it so you can see what it -- if you
12:23PM 4   can't read it.
12:23PM 5     In sum, the New York Attorney
12:23PM 6   General sufficiently alleged that the Earn
12:23PM 7   interest accounts satisfy the third prong of
12:23PM 8   the Howey Test.  The New York Attorney
12:23PM 9   General has therefore pleaded that Celsius'
12:24PM 10  Earn interest accounts are securities for
12:24PM 11  purposes of the Martin Act.
12:24PM 12    So were you aware of this?
12:24PM 13    A.   So --
12:24PM 14    MS. SIMSON:  Objection.
12:24PM 15    A.   Was I aware of this, I do remember
12:24PM 16  this being released in the -- I think the
12:24PM 17  date on the letter was in the late spring or
12:24PM 18  April 2023.  So I was no longer the chief
12:24PM 19  compliance officer.
12:24PM 20    If you are talking about was I
12:24PM 21  aware of the letter, yeah, I was aware of the
12:24PM 22  letter.  But it was after my role -- after I
12:24PM 23  was the chief compliance officer.
12:24PM 24    Q.   Did you have any interaction in
12:24PM 25  the -- let's say, they must have done an

Page 12

O. BLONSTEIN

12:24PM 2   investigation in this.
12:24PM 3     Did that happen during your time
12:24PM 4   there at all?
12:24PM 5     MS. SIMSON:  Objection.
12:24PM 6     I just want to say, Mr. Bronge,
12:24PM 7   you need to stop testifying and just
12:24PM 8   ask the questions without the
12:24PM 9   commentary.
12:25PM 10  BY MR. BRONGE:
12:25PM 11    A.   I was not contacted by -- I was
12:25PM 12  not contacted by any governmental agency as
12:25PM 13  part of their investig- -- this
12:25PM 14  investigation.
12:25PM 15    Q.   Okay.  So did you agree that
12:25PM 16  this -- this statement regarding the
12:25PM 17  accounts, in your opinion?
12:25PM 18    A.   I'm not an attorney, so -- and
12:25PM 19  these are incredibly complex issues to
12:25PM 20  evaluate.
12:25PM 21    MS. SIMSON:  And I also want to
12:25PM 22  jump in.
12:25PM 23    I'm objecting on calls for a
12:25PM 24  legal conclusion.
12:25PM 25    MR. BRONGE:  Okay.  I'm just

Page 13
O. BLONSTEIN

12:25PM 2 asking for his opinion as the chief
12:25PM 3 compliance officer.
12:25PM 4     MS. SIMSON:  Objection.  Calls
12:25PM 5 for a legal conclusion.
12:25PM 6     Mr. Blonstein, if you know the
12:25PM 7 answer, you may answer.
12:25PM 8 BY MR. BRONGE:
12:25PM 9   A.   I wouldn't -- I don't have an
12:25PM 10 opinion.  I try not to have an opinion on
12:25PM 11 things that I don't have a good understanding
12:25PM 12 of.
12:25PM 13   Q.   All right.
12:25PM 14     MR. BRONGE:  So there is going
12:25PM 15 to be a couple of these documents, so
12:25PM 16 we can move to the next one, then,
12:26PM 17 perhaps that's marked B.  Sorry, C no,
12:26PM 18 that's not even -- I think D is the
12:26PM 19 one, sorry.
20     (Whereupon, Blonstein Exhibit D,
21 Statement of Charges - State of
22 Washington Department of Financial
23 Institutions Securities Division was
24 marked for identification as of this
25 date by the Reporter.)

Page 14
O. BLONSTEIN

12:26PM 2 BY MR. BRONGE:
12:26PM 3   Q.   It's -- "The State of Washington
12:26PM 4 Department of Financial Institutions and
12:26PM 5 Securities Division" is the heading.
12:26PM 6     MR. BRONGE:  We can then move to
12:26PM 7 page 9 -- sorry, page 8 and the
12:26PM 8 beginning of page 9.  It should be
12:26PM 9 highlighted, the text that I'm
12:26PM 10 interested in.
12:26PM 11     MS. SIMSON:  Again, noting for
12:26PM 12 the record that the -- Mr. Bronge has
12:26PM 13 highlighted document -- this document,
12:26PM 14 so it is not the original.
12:27PM 15     MR. BRONGE:  Can the witness
12:27PM 16 read this or shall I read it?
12:27PM 17     MS. SIMSON:  Mr. Bronge, that's
12:27PM 18 your choice.
12:27PM 19     MR. BRONGE:  Okay.  So let me
12:27PM 20 read this and then we will see.
12:27PM 21 BY MR. BRONGE:
12:27PM 22   Q.   So it says, "CONCLUSIONS OF LAW."
12:27PM 23     "The offer and/or sale of the
12:27PM 24 Earned Interest Program described above
12:27PM 25 constitutes the offer and/or sale of the

Page 15
O. BLONSTEIN

12:27PM 2 security as defined in RCW 21.20.005 [14] and
12:27PM 3 [17]."
12:27PM 4     That's point 1.
12:27PM 5     Point 2, "Celsius Network Inc.,
12:27PM 6 Celsius Network Limited, Celsius US Holding
12:27PM 7 LLC, Celsius Network LLC, and Celsius Lending
12:27PM 8 LLC violated RCW 21.20.140, the securities
12:27PM 9 registration section of the Securities Act of
12:28PM 10 Washington, by offering and/or selling
12:28PM 11 securities for which no registration is on
12:28PM 12 file with the Securities" Administration.
12:28PM 13     Is this something you were aware
12:28PM 14 of as a chief compliance officer?
12:28PM 15     MS. SIMSON:  Objection.  Calls
12:28PM 16 for a legal conclusion.
12:28PM 17     MR. BRONGE:  No, I asked if he
12:28PM 18 was aware of the document.
12:28PM 19     MS. SIMSON:  That is not what
12:28PM 20 you asked, for the record.
12:28PM 21     MR. BRONGE:  Yes.  This is dated
12:28PM 22 the 20th of October, '21.  So I wonder
12:28PM 23 if he is aware of the document.
12:28PM 24 That's my question.
12:28PM 25     MS. SIMSON:  Objection.

Page 16
O. BLONSTEIN

12:28PM 2     Mr. Bronge, if you have a
12:28PM 3 question for him, could you please
12:28PM 4 restate it.
12:28PM 5 BY MR. BRONGE:
12:28PM 6   Q.   I wondered, in his capacity as the
12:28PM 7 chief compliance officer, was he aware of
12:28PM 8 this document and this -- from the -- from
12:28PM 9 this entity?
12:28PM 10     MS. SIMSON:  Objection.
12:29PM 11     Mr. Bronge, you may answer if
12:29PM 12 you know the answer.
12:29PM 13   A.   I know that we received documents
12:29PM 14 like this from some of the states.  This
12:29PM 15 particular one, like, I don't remember the
12:29PM 16 date, you know, the day we received it or
12:29PM 17 anything like that, but I do remember
12:29PM 18 receiving documents like this one.
12:29PM 19   Q.   Okay.  Do you remember that there
12:29PM 20 was any action taken following these letters?
12:29PM 21     MS. SIMSON:  Objection.  Vague.
12:29PM 22     MR. BRONGE:  Objection to what?
12:29PM 23     MS. SIMSON:  To your question.
12:29PM 24     MR. BRONGE:  Okay.
12:29PM 25   A.   I just want to -- just so, maybe,

Page 17

O. BLONSTEIN

12:29PM  2    you understand the structure of how things
12:29PM  3    were working at Celsius, we had a legal team,
12:29PM  4    we had a regulatory team, and we had a
12:29PM  5    compliance team.  In the -- in my capacity as
12:30PM  6    the chief compliance officer, I was
12:30PM  7    responsible primarily for Bank Secrecy Act,
12:30PM  8    anti-money laundering and sanctions
12:30PM  9    regulations.  So that is not the subject of
12:30PM 10    this letter or the previous letter.
12:30PM 11         So even if I was made aware of
12:30PM 12    these things, any kind of follow-up action
12:30PM 13    that was taken by those departments was
12:30PM 14    outside of the scope of my responsibilities.
12:30PM 15    You know, I may not -- I likely was not part
12:30PM 16    of those meetings.  No one was coming to me
12:30PM 17    and saying, hey, Oren, what do you think
12:30PM 18    about -- what should we do in this situation?
12:30PM 19    Because I'm not an attorney and I was not
12:30PM 20    the -- running the departments that were
12:30PM 21    responsible for replying to these -- to these
12:30PM 22    governmental agencies.
12:30PM 23         Q.   Okay.  So you mean you basically
12:30PM 24    heard, but you were not involved in the
12:30PM 25    discussions surrounding whatever Celsius

Page 18

O. BLONSTEIN

12:30PM  2    decided to do?
12:30PM  3         A.   Not whatever Celsius decided to
12:31PM  4    do.  If Celsius decided to do something that
12:31PM  5    pertained to anti-money laundering,
12:31PM  6    sanctions, you know, the areas that I was
12:31PM  7    responsible for, I'd certainly made sure I
12:31PM  8    was involved in those.  But this was outside
12:31PM  9    of what my responsibility was.
12:31PM 10         And, you know, this is not that
12:31PM 11    abnormal.  There are very different -- there
12:31PM 12    are various different structures for legal,
12:31PM 13    regulatory, and compliance teams, especially
12:31PM 14    in crypto companies but in financial services
12:31PM 15    companies broadly.  Sometimes they roll into
12:31PM 16    chief legal officer.  Sometimes they roll
12:31PM 17    into chief compliance officer.
12:31PM 18         In our case, these other
12:31PM 19    departments did not roll into me.  And that
12:31PM 20    makes a lot of sense because I'm not an
12:31PM 21    attorney and my compliance background was
12:31PM 22    really the few years that I spent working in
12:31PM 23    compliance in crypto.  So I'm just trying to
12:31PM 24    share the information with you so you
12:31PM 25    understand that I won't be able to comment on

Page 19

O. BLONSTEIN

12:32PM  2    a lot of these things because I'm not a
12:32PM  3    lawyer and these were outside of my
12:32PM  4    responsibility.
12:32PM  5         THE COURT REPORTER:  I'm sorry.
12:32PM  6    Excuse me one second.  If everybody
12:32PM  7    can make sure they are on mute, I hear
12:32PM  8    some tapping and it's hard to hear the
12:32PM  9    witness.
12:32PM 10         THE WITNESS:  Sorry.  And I'll
12:32PM 11    try to speak more slowly.
12:32PM 12         THE COURT REPORTER:  You can
12:32PM 13    continue, Mr. Bronge.
12:32PM 14         MR. BRONGE:  Okay.  Yes, thank
12:32PM 15    you.
12:32PM 16         So let's bring up -- I
12:32PM 17    understand the witness has limited
12:32PM 18    possibility, then, to answer.  But
12:32PM 19    just for the record, I would like to
12:32PM 20    bring up document E.
12:32PM 21         (Whereupon, Blonstein Exhibit E,
12:32PM 22    Emergency Order to Cease and Desist
12:32PM 23    was marked for identification as of
12:32PM 24    this date by the Reporter.)
12:32PM 25         MR. BRONGE:  That's from the

Page 20

O. BLONSTEIN

12:32PM  2    Commonwealth of Kentucky Public
12:32PM  3    Protection Cabinet, Department of
12:32PM  4    Financial Institutions, Division of
12:32PM  5    Securities.
12:33PM  6         This particular document, I
12:33PM  7    think, was dated in September '21, on
12:33PM  8    the 3rd, and I would like to go to
12:33PM  9    page 7 and 8.  And I'll have some
12:33PM 10    markings there as well so you can
12:33PM 11    object to that.
12:33PM 12         MS. SIMSON:  Objection.
12:33PM 13         Again, noting that there are
12:33PM 14    markings on this document so it's not
12:33PM 15    the original.
12:33PM 16    BY MR. BRONGE:
12:33PM 17         Q.   So if I read it for the record,
12:33PM 18    then:  "FINDINGS OF FACT AND CONCLUSIONS OF
12:33PM 19    LAW.  The Department has become aware that
12:33PM 20    the Company is offering securities in the
12:33PM 21    form of investment contracts in exchange for
12:33PM 22    deposit of assets with the Company.  These
12:33PM 23    investment contracts allow passive investors
12:33PM 24    to earn profit in the form of interests on
12:33PM 25    the assets deposited with the Company, and

22-10964-mg    Doc 3844    Filed 10/18/23    Entered 10/18/23 14:16:17    Main Document
Deposition of Oren Blonstein                    Pg 10 of 20                    Celsius Network LLC, et al.

CONFIDENTIAL

Page 21

O. BLONSTEIN

12:33PM 2  qualifying as securities under the Act."

12:33PM 3          MS. SIMSON:  Mr. Bronge, it

12:33PM 4      doesn't look like what you're reading

12:33PM 5      is on the page that's displayed.

12:34PM 6          MR. BRONGE:  Sorry.  You need to

12:34PM 7      display page 6 first.  Bottom of page

12:34PM 8      6.  Yeah, there it is.

12:34PM 9          So I just read that page, the

12:34PM 10     first.

12:34PM 11         Can I continue or do you want me

12:34PM 12     to read it again?

12:34PM 13         MS. SIMSON:  Mr. Bronge, that's

12:34PM 14     your choice.

12:34PM 15         MR. BRONGE:  Okay.  I'll read it

12:34PM 16     again, then.

12:34PM 17  BY MR. BRONGE:

12:34PM 18     Q.   "Findings of fact and" --

12:34PM 19         MS. SIMSON:  No need.  It's all

12:34PM 20     right.  If you want to proceed, you

12:34PM 21     don't have to.

12:34PM 22         MR. BRONGE:  Okay, thank you.

12:34PM 23     Q.   So then we start on the top of the

12:34PM 24  next page, that's 19.

12:34PM 25         "Based on the facts set forth

Page 22

O. BLONSTEIN

12:34PM 2  above, Respondent offered unregistered

12:34PM 3  securities in Kentucky through a publicly

12:34PM 4  available website in violation of the Act.

12:34PM 5  These securities were not registered with the

12:34PM 6  Department as required, and do not qualify

12:34PM 7  for an exemption from registration.

12:34PM 8      "These" Earn interest accounts

12:34PM 9  "amount to an investment contract because

12:34PM 10  they are 'an investment of money in a common

12:34PM 11  enterprise with profits to come solely from

12:34PM 12  the efforts of others,'" and then there's a

12:35PM 13  reference to "S.E.C. v W.J. Howey Co, 328

12:35PM 14  U.S. 293,301 (1946)?

12:35PM 15         So, again, I would like to ask the

12:35PM 16  witness if he was aware of this particular

12:35PM 17  governmental order or conclusion of law?

12:35PM 18         MS. SIMSON:  Objection.

12:35PM 19     A.   I was aware, yes.

12:35PM 20     Q.   Did you have an internal

12:35PM 21  discussion surrounding the earned accounts

12:35PM 22  and its status in the legal sense?

12:35PM 23         MS. SIMSON:  Objection.  Calls

12:35PM 24     for privileged information.

12:35PM 25         Mr. Blonstein, you do not need

Page 23

O. BLONSTEIN

12:35PM 2  to answer that question.

12:35PM 3      Q.   Okay.  How did Celsius react in

12:36PM 4  order to satisfy the government's -- the

12:36PM 5  entities' different worries about the status

12:36PM 6  of the earned accounts?

12:36PM 7          MS. SIMSON:  Objection.

12:36PM 8          You may answer it, if you know,

12:36PM 9      to the extent it doesn't call for

12:36PM 10     privileged information.

12:36PM 11     A.   From what I remember at the time

12:36PM 12  that some of these cease and desist letters

12:36PM 13  were received, was that we ceased offering

12:36PM 14  the earned products in those states.  Again,

12:36PM 15  this is, like, third or fourth-hand knowledge

12:36PM 16  because at the time my role was head of

12:36PM 17  innovation.  I believe for Kentucky, I think

12:36PM 18  I was not -- I was not the chief compliance

12:36PM 19  officer, but we ceased offering the products

12:36PM 20  in those states.

12:36PM 21     Q.   Okay.  So you had no direct

12:36PM 22  involvement, then, in -- neither this one

12:36PM 23  either?

12:36PM 24     A.   Correct.  Yeah.  I mean, if you --

12:36PM 25  yeah.  Actually the answer is, yes.  It

Page 24

O. BLONSTEIN

12:36PM 2  doesn't really matter the date.  No one was

12:37PM 3  coming to me to ask for my view on how to

12:37PM 4  handle these challenges because I'm not a

12:37PM 5  securities attorney.  I wasn't responsible

12:37PM 6  for regulatory matters with the Company

12:37PM 7  outside of anti-money laundering and

12:37PM 8  sanctions.

12:37PM 9      Q.   Yeah.

12:37PM 10         MR. BRONGE:  So let me just

12:37PM 11     quickly then, for the record, go for

12:37PM 12     the next document, which is document

12:37PM 13     J.

14         (Whereupon, Blonstein Exhibit J,

15         Texas State Securities Board document

16         was marked for identification as of

17         this date by the Reporter.)

12:37PM 18  BY MR. BRONGE:

12:37PM 19     Q.   It's going to be a bit of the

12:37PM 20  same.  I just want to have this thing stated

12:37PM 21  on the record.

12:37PM 22         This is Texas State Security

12:37PM 23  Board, and I see the date on this one is

12:37PM 24  September, again, '21, and if we can go to

12:38PM 25  page 6.

Page 25

O. BLONSTEIN

12:38PM 2    Again, this is going to be an
12:38PM 3  annotation with coloring of the pertinent
12:38PM 4  sections.
12:38PM 5    MR. BRONGE:  Are we at page 6?
12:38PM 6    THE VIDEOGRAPHER:  This is page
12:38PM 7  6, Counsel.
12:38PM 8    MR. BRONGE:  It doesn't look
12:38PM 9  like -- you need to scroll down to the
12:38PM 10  bottom of the page.  Yeah.  There we
12:38PM 11  are.  So if you can come up a little
12:38PM 12  bit, so you can show the start of the
12:38PM 13  -- of the lower page as well.  I can
12:38PM 14  read everything in one go.
12:38PM 15    MS. SIMSON:  I'm noting for the
12:38PM 16  record that this has been marked up
12:38PM 17  and is not the original document.
12:38PM 18  BY MR. BRONGE:
12:38PM 19    Q.  Yeah.  So we have the violations
12:38PM 20  of the Securities Act, and the Securities Act
12:38PM 21  regulates the offering states in Section 4A
12:39PM 22  of the Securities Act defines the term
12:39PM 23  securities to include traditional products
12:39PM 24  such as stocks and bonds.
12:39PM 25    The statute also broadly defines

Page 26

O. BLONSTEIN

12:39PM 2  the term "Securities" to include "investment
12:39PM 3  contracts, notes, and evidence of
12:39PM 4  indebtedness, broad categories of products
12:39PM 5  that capture the endless number of unique and
12:39PM 6  innovative investment schemes continuously
12:39PM 7  introduced into the market.  The mere fact an
12:39PM 8  investment is tied to cryptocurrency
12:39PM 9  blockchain technology or some type of digital
12:39PM 10  asset does not remove it from Securities
12:39PM 11  regulation.  If it constitutes an investment
12:39PM 12  contract, note, evidence of indebtedness, or
12:39PM 13  other type of security.  Based on the
12:39PM 14  information and allegations set forth herein,
12:39PM 15  the Celsius earn interest bearing accounts
12:39PM 16  constitute investment contracts, notes, or
12:39PM 17  evidences of indebtedness regulated as
12:39PM 18  securities as that term is defined by Section
12:39PM 19  4A of the Securities Act."
12:40PM 20    So, again, I'll just ask you if
12:40PM 21  you were aware of this document or this Texas
12:40PM 22  Security Board?
12:40PM 23    MS. SIMSON:  Objection.
12:40PM 24    A.  I was generally aware of these
12:40PM 25  documents.  I don't specifically remember

Page 27

O. BLONSTEIN

12:40PM 2  that they were -- or how this was -- how I
12:40PM 3  became aware of it.
12:40PM 4    Q.  Yep.  That's fine.  I understand
12:40PM 5  that.
12:40PM 6    So let's finish this section with
12:40PM 7  the last document, which is F.
12:40PM 8    (Whereupon, Blonstein Exhibit F,
12:40PM 9  Summary Cease and Desist Order was
12:40PM 10  marked for identification as of this
12:40PM 11  date by the Reporter.)
12:40PM 12  BY MR. BRONGE:
12:40PM 13    Q.  That's the State of New Jersey,
12:40PM 14  Bureau of Securities.
12:41PM 15    And here we can go to page 11.
12:41PM 16    A.  What's the date of this document?
12:41PM 17    Q.  Let me see what the date is here.
12:41PM 18    MS. SIMSON:  And objecting,
12:41PM 19  again, on grounds that the document
12:41PM 20  has been marked up and noting that for
12:41PM 21  the record, so it's not the original.
12:41PM 22    Q.  Yeah, I don't see the date,
12:41PM 23  actually, on this one.  It's signed -- 17 of
12:41PM 24  September '21.  17 of September '21.
12:41PM 25    A.  Okay.  Thank you.

Page 28

O. BLONSTEIN

12:41PM 2    Q.  So this section pertinent to my
12:41PM 3  question is, "CONCLUSION OF LAW, CELSIUS
12:41PM 4  OFFERED AND SOLD UNREGISTERED SECURITIES."
12:41PM 5    THE COURT REPORTER:  I'm sorry,
12:41PM 6  can you -- I apologize.  I can't hear
12:41PM 7  you.
12:41PM 8    MR. BRONGE:  Okay.  Can you hear
12:41PM 9  me better now?
12:41PM 10    THE COURT REPORTER:  Yes, I can
12:41PM 11  hear you.
12:41PM 12  BY MR. BRONGE:
12:41PM 13    Q.  So I made the pertinent section,
12:41PM 14  "CONCLUSION OF LAW, CELSIUS OFFERED AND SOLD"
12:41PM 15  under -- "UNREGISTERED SECURITIES N.J.S.A.
12:42PM 16  49:3-60."
12:42PM 17    "The preceding paragraphs are
12:42PM 18  incorporated by reference as though set forth
12:42PM 19  verbatim herein."
12:42PM 20    "The Earn Rewards product is a
12:42PM 21  security as defined in" the "N.J.S.A.
12:42PM 22  49:3-49(m)."
12:42PM 23    So, again, were you aware of this
12:42PM 24  document?
12:42PM 25    MS. SIMSON:  Objection.

Page 29

O. BLONSTEIN

12:42PM 2     A.     Generally, I was aware of it.
12:42PM 3 Yeah, I don't remember the specifics or how I
12:42PM 4 became aware of it.
12:42PM 5     Q.     That's fine.
12:42PM 6            So all in all, are you aware of
12:42PM 7 other states that had similar complaints,
12:42PM 8 other regulators?
12:42PM 9     MS. SIMSON:  Objection.
12:42PM 10            You may answer to the extent
12:42PM 11        that you know and it does not call for
12:42PM 12        privileged information.
12:43PM 13     A.     Yeah.  This is likely -- likely, I
12:43PM 14 became aware of it through discussions with
12:43PM 15 counsel, so I think it's privileged.
12:43PM 16     Q.     Okay.  If I can -- I can refer
12:43PM 17 that there is -- the SEC also had a
12:43PM 18 Complaint, which -- which states that earned
12:43PM 19 securities -- and there was an agreement
12:43PM 20 between Celsius and some of the regulators in
12:43PM 21 a non-prosecution agreement.
12:43PM 22     MS. SIMSON:  Mr. Bronge, I just
12:43PM 23        want to remind you that this is not --
12:43PM 24        you should ask questions.  This is not
12:43PM 25        for you to testify.  Ask a question to

Page 30

O. BLONSTEIN

12:43PM 2 the witness.
12:43PM 3     MR. BRONGE:  No, I'm just giving
12:43PM 4        the context.  Yeah, I'm trying to give
12:43PM 5        the context because I didn't send that
12:43PM 6        particular document.
12:44PM 7 BY MR. BRONGE:
12:44PM 8     Q.     Were you aware of that
12:44PM 9 non-prosecution agreement, or was that after
12:44PM 10 your time?
12:44PM 11     A.     If you're talking about the one
12:44PM 12 that was relatively recent, that was
12:44PM 13 completely outside of the scope of what I was
12:44PM 14 working on.  I was not aware of it until the
12:44PM 15 day it was published.
12:44PM 16     Q.     Okay.  So we can move on from this
12:44PM 17 section, then.
12:44PM 18            I would like to discuss a little
12:44PM 19 bit about the institutional loans.
12:44PM 20            Do you have any knowledge about
12:44PM 21 those?
12:44PM 22     MS. SIMSON:  Objection.  Vague.
12:44PM 23     A.     Yeah, I guess to answer your
12:44PM 24 question, I have some knowledge about the
12:44PM 25 institutional loans, but if you're talking

Page 31

O. BLONSTEIN

12:44PM 2 about, like, the agreement, I don't.  That
12:44PM 3 was not under my purview.
12:44PM 4     Q.     Were you aware that there was a
12:44PM 5 different loan agreement for institutional
12:44PM 6 loans compared to retail loans?
12:45PM 7     MS. SIMSON:  Objection.
12:45PM 8            You may answer to the extent
12:45PM 9        that it is not duplicative of
12:45PM 10        Mr. Ferraro's testimony.
12:45PM 11            And I also want to clarify for
12:45PM 12        the record that the scope of this is
12:45PM 13        limited to questioning and answering
12:45PM 14        that is not duplicative of
12:45PM 15        Mr. Ferraro's testimony.
12:45PM 16            You may answer, Mr. Blonstein.
12:45PM 17 BY MR. BRONGE:
12:45PM 18     A.     So I would say, like, I generally
12:45PM 19 knew or -- it made sense to me that there
12:45PM 20 would be a different agreement because, for
12:45PM 21 various reasons between institutional retail
12:45PM 22 borrowers, but I had not -- reviewing the
12:45PM 23 institutional loan -- master loan agreements
12:45PM 24 was not really under my purview, and so I
12:45PM 25 don't know the ways that those agreements

Page 32

O. BLONSTEIN

12:45PM 2 varied from each other.
12:46PM 3     Q.     Would you know who could answer
12:46PM 4 questions regarding those?
12:46PM 5     MS. SIMSON:  Objection.
12:46PM 6            You may answer if you know.
12:46PM 7     A.     The -- you know, the person who
12:46PM 8 oversaw the legal and regulatory teams --
12:46PM 9 there were two people.  There was Roni
12:46PM 10 Pavone-Cohen, and Yarden Hoi (phonetic.)
12:46PM 11 Those were the two individuals.
12:46PM 12     Q.     That were dealing with the master
12:46PM 13 loan agreements.
12:46PM 14            Did they also deal with the retail
12:46PM 15 loan agreements?
12:46PM 16     A.     You know, actually I take that
12:46PM 17 back.  I don't know if Yarden, he may not --
12:46PM 18 he was primarily on the regulatory side,
12:46PM 19 where -- and I think loan agreements were
12:46PM 20 really either with Roni or with our internal
12:47PM 21 counsel or external counsel.
12:47PM 22            Again, I'm just -- it's not
12:47PM 23 something that I thought a lot about.  I
12:47PM 24 don't really -- I'm not certain of who was
12:47PM 25 responsible for it, but I'm certain that I

Deposition of Oren Blonstein                                                        Celsius Network LLC, et al.

Page 33

12:47PM 1    O. BLONSTEIN
12:47PM 2    was not responsible for it.
12:47PM 3            Nobody -- if there were, you know,
12:47PM 4    issues with those -- with the institutional
12:47PM 5    loan agreements, no one would come to me with
12:47PM 6    those.  If, you know, changes needed to be
12:47PM 7    made, that was not something that I was
12:47PM 8    responsible for.  But if I had a question
12:47PM 9    about those, I would go to those individuals
12:47PM 10   that I mentioned.
12:47PM 11       Q.    Yes.
12:47PM 12       MR. BRONGE:  So just for the
12:47PM 13   record, I want to state I have not
12:47PM 14   discussed the MLA's with Mr. Ferraro
12:47PM 15   at all.
12:47PM 16       MS. SIMSON:  Objection.
12:47PM 17       Mr. Bronge, again, this is not
12:47PM 18   the time for you to testify.  If you
12:47PM 19   have a question for the witness, you
12:47PM 20   may ask a question.
12:48PM 21       But I want to reiterate that
12:48PM 22   we -- again, we are lodging objections
12:48PM 23   on the record, and we also preserve
12:48PM 24   our right to object.  So I just wanted
12:48PM 25   to note that again so the judge may

Page 34

12:48PM 1    O. BLONSTEIN
12:48PM 2    rule later.
12:48PM 3        MR. BRONGE:  So can we go to
12:48PM 4    Exhibit G.
12:48PM 5        (Whereupon, Blonstein Exhibit G,
12:48PM 6    Notice of Filing was marked for
12:48PM 7    identification as of this date by the
12:48PM 8    Reporter.)
12:48PM 9    BY MR. BRONGE:
12:48PM 10       Q.    It's the memorandum that the
12:48PM 11   Debtor has filed.  It's a memorandum of law
12:48PM 12   in support of the confirmation.  It is docket
12:48PM 13   3609.
12:48PM 14       MR. BRONGE:  And we should go to
12:48PM 15   page -- see -- yes.  Page 84, please.
12:49PM 16   It's the bottom of the page.
12:49PM 17       MS. SIMSON:  Noting for the
12:49PM 18   record that the title of this document
12:49PM 19   appears to say "Annotated" it in, so
12:49PM 20   this may contain markups, and,
12:49PM 21   therefore, may not be the original
12:49PM 22   document.
12:49PM 23       MR. BRONGE:  Yes, all of these
12:49PM 24   documents I sent for -- to easy find
12:49PM 25   the places.

Page 35

12:49PM 1    O. BLONSTEIN
12:49PM 2        So, I'm sorry, I gave you the
12:49PM 3    incorrect page numbers.  It's actually
12:49PM 4    much further down in the document.
12:49PM 5    It's page 265, we are looking at.  265
12:49PM 6    of 325.
12:49PM 7        MS. SIMSON:  I'm noting that
12:50PM 8    this document is marked up, for the
12:50PM 9    record.
12:50PM 10       MR. BRONGE:  Yeah.
12:50PM 11   BY MR. BRONGE:
12:50PM 12       Q.    So if I can just read this
12:50PM 13   paragraph.  It's paragraph 130.
12:50PM 14       "Further, to the extent the
12:50PM 15   Debtors reject the" master loan agreements,
12:50PM 16   the term of the master loan agreements "do
12:50PM 17   not provide 168 Trading any foundation for
12:50PM 18   its arguments.  168 Trading is not a secured
12:50PM 19   creditor and not entitled to the return of
12:50PM 20   any Collateral under the MLA.  Section 4 of
12:50PM 21   the MLA makes clear that upon 168 Trading's
12:50PM 22   transfer of the Collateral to Celsius, 168
12:50PM 23   Trading retains no interest in the
12:50PM 24   Collateral:  'The delivery of Collateral to
12:50PM 25   Lender shall be on a full-title transfer

Page 36

12:50PM 1    O. BLONSTEIN
12:50PM 2    basis, meaning the Lender shall be the legal
12:50PM 3    and beneficial owner of the assets posted as
12:50PM 4    Collateral and the Borrower shall have no
12:50PM 5    right, title or interest in those
12:50PM 6    assets...Moreover, the MLA includes language
12:51PM 7    similar to the language highlighted by the
12:51PM 8    Court's Earn Ruling when it held that,
12:51PM 9    pursuant to the Terms of Use, the Debtors
12:51PM 10   have title to assets in" their "Earn
12:51PM 11   Accounts.'"
12:51PM 12       And then they reference section
12:51PM 13   4.4.3 of the MLA that provides:  "Collateral
12:51PM 14   is not, and shall not be, held by Lender on
12:51PM 15   behalf of the Borrower, and Lender shall"
12:51PM 16   have "the sole and exclusive owner" -- sorry,
12:51PM 17   "Lender shall be the sole and exclusive owner
12:51PM 18   of all Digital Assets and/or Fiat Currencies
12:51PM 19   posted as Collateral.  Lender may lend, sell,
12:51PM 20   pledge, hypothecate, assign, invest, use,
12:51PM 21   commingle or otherwise dispose of the
12:51PM 22   Collateral to counterparties or hold them
12:51PM 23   with counterparties, or otherwise exercise
12:51PM 24   any ownership rights in the Collateral.
12:51PM 25   Borrower shall have no right or title in or

Page 37

O. BLONSTEIN

12:52PM 2  to the Collateral throughout the term of this

12:52PM 3  Agreement."

12:52PM 4       MS. SIMSON:  Mr. Bronge, just

12:52PM 5  flagging this.  This is -- just

12:52PM 6  reading documents, you know, pages of

12:52PM 7  documents into the record is not the

12:52PM 8  purpose of this.  This is -- the

12:52PM 9  purpose of this is for you to ask

12:52PM 10  questions of Mr. Blonstein --

12:52PM 11      MR. BRONGE:  I will ask

12:52PM 12  questions, but unless he can read it

12:52PM 13  himself, how can I ask questions?

12:52PM 14      So I'm happy not to read, as you

12:52PM 15  can hear my voice it's not doing very

12:52PM 16  well, so if he can read it himself, I

12:52PM 17  can ask his opinion on this text.

12:52PM 18      MS. SIMSON:  Mr. Belong, please

12:52PM 19  ask your question of the witness or

12:52PM 20  move on.

12:52PM 21      MR. BRONGE:  Yes.

12:52PM 22  BY MR. BRONGE:

12:52PM 23      Q.   So this text I just read, do you

12:52PM 24  consider it appropriate to transfer ownership

12:52PM 25  title of an asset?

Page 38

O. BLONSTEIN

12:52PM 2       MS. SIMSON:  Objection.  Calls

12:52PM 3  for a legal conclusion.  Also, object

12:52PM 4  to the extent it calls for privileged

12:52PM 5  information.

12:52PM 6       And, Mr. Bronge, if you could

12:52PM 7  let me finish talking so that I can

12:52PM 8  lodge my objections and not interrupt,

12:52PM 9  that would be great.  And that's for

12:52PM 10  the benefit of the court reporter.

12:53PM 11      So just for the clarity of the

12:53PM 12  record, I'm objecting to that question

12:53PM 13  on grounds that it calls for a legal

12:53PM 14  conclusion, and to the extent that it

12:53PM 15  calls for privileged information.

12:53PM 16      MR. BRONGE:  Okay.  So I cannot

12:53PM 17  ask any interpretation of text from

12:53PM 18  the witness; is that correct?

12:53PM 19      MS. SIMSON:  Mr. Blonstein, you

12:53PM 20  may answer that question to the extent

12:53PM 21  that you know that from your personal

12:53PM 22  knowledge and that it does not reveal

12:53PM 23  any privileged information.

12:53PM 24  BY MR. BRONGE:

12:53PM 25      A.   Can I just have a minute to review

Page 39

O. BLONSTEIN

12:53PM 2  the text on the screen?  And I'm happy to

12:53PM 3  read this if you -- you know, this and other

12:53PM 4  documents, if you just put them on the screen

12:53PM 5  and tell me where you want me to look.

12:53PM 6       Q.   I highlighted it.

12:53PM 7       A.   Yeah, I see that.  Yeah, let me

12:53PM 8  just review that again.

12:54PM 9       Yes, so, like, with the caveats,

12:54PM 10  you know, that were mentioned that I'm not an

12:54PM 11  attorney and this calls for a legal reading,

12:54PM 12  and I really have no -- I'm not an attorney.

12:54PM 13      MS. SIMSON:  Sorry, just real

12:54PM 14  quickly, I apologize, Mr. Blonstein.

12:54PM 15      Mr. Bronge, could you please ask

12:54PM 16  the question again?

12:54PM 17      MR. BRONGE:  I asked his opinion

12:54PM 18  if he considered this an appropriate

12:54PM 19  text in order to transfer legal title

12:54PM 20  to an asset.

12:54PM 21      MS. SIMSON:  Objection.

12:54PM 22      MR. BRONGE:  In his opinion.

12:54PM 23      MS. SIMSON:  Objection.  Calls

12:54PM 24  for a legal conclusion.  And also

12:54PM 25  calls for privileged information.

Page 40

O. BLONSTEIN

12:54PM 2       Mr. Blonstein, you may answer to

12:54PM 3  the extent you know in your personal

12:54PM 4  capacity and it does not reveal any

12:54PM 5  privileged information.  If you don't

12:54PM 6  know, then you do not have to answer.

12:54PM 7  BY MR. BRONGE:

12:54PM 8       A.   To -- yeah, I have no direct

12:55PM 9  experience with the institutional MLA, but

12:55PM 10  the language here is similar to the retail

12:55PM 11  loan terms of use, which I did read -- in my

12:55PM 12  previous depositions I mentioned that I also

12:55PM 13  -- I had taken out loans from Celsius as a

12:55PM 14  customer, and this was -- the language that

12:55PM 15  was used is similar, and I understood it to

12:55PM 16  mean that I was transferring ownership to the

12:55PM 17  Company.

12:55PM 18      Q.   Yes.  So may I direct you to the

12:55PM 19  corresponding language in the terms of

12:55PM 20  service?  And you will see that is not at all

12:55PM 21  similar in the text.

12:55PM 22      MS. SIMSON:  Objection.

12:55PM 23      Mr. Bronge, again, this is not

12:55PM 24  your chance to testify.  You are

12:55PM 25  supposed to ask questions of the

Page 41

O. BLONSTEIN

12:55PM 2    witness.

12:55PM 3              MR. BRONGE:  Yes, I wanted to --

12:55PM 4              MS. SIMSON:  You need to move

12:55PM 5        on.  Please let me finish, for the

12:55PM 6        benefit of the record, and then you

12:56PM 7        can respond to me and ask your

12:56PM 8        question.

12:56PM 9              Also, I want to remind you that

12:56PM 10       you -- the scope of this is limited

12:56PM 11       and you may not ask Mr. Blonstein

12:56PM 12       questions that are duplicative of what

12:56PM 13       Mr. Ferraro has already testified on.

12:56PM 14             MR. BRONGE:  Yes.  And to

12:56PM 15       respond to you, then, I have not asked

12:56PM 16       Mr. Ferraro all of any master lending

12:56PM 17       agreements, and I have not asked him

12:56PM 18       if the texts are similar between the

12:56PM 19       terms of service for retail loans or

12:56PM 20       master lending agreements.  This is

12:56PM 21       the first time I asked that.

12:56PM 22             MS. SIMSON:  Objection.

12:56PM 23             We will reserve our rights to

12:56PM 24       take this issue to the judge later,

12:56PM 25       but you absolutely did testify -- or

Page 42

O. BLONSTEIN

12:56PM 2    asked questions as to collateral.

12:56PM 3              And so, Mr. Blonstein, if you

12:56PM 4    understand his question, you can

12:56PM 5    answer to the extent that it is not

12:56PM 6    discussed ownership rights under the

12:56PM 7    Collateral.

12:56PM 8              THE WITNESS:  Understood.

12:56PM 9    BY MR. BRONGE:

12:56PM 10       Q.    All right.  So if -- then we move

12:57PM 11   on to different subject, then.  We need to go

12:57PM 12   to -- let me see what I should ask.  Just

12:57PM 13   give me a minute.

12:57PM 14             Do you know, in your capacity, why

12:57PM 15   the terms of service were changed so often at

12:57PM 16   Celsius?

12:57PM 17             MS. SIMSON:  Objection to the

12:57PM 18       extent it calls for a legal

12:57PM 19       conclusion, to the extent it calls for

12:57PM 20       privileged information, and to the

12:57PM 21       extent that it calls for information

12:57PM 22       that is outside the scope of this

12:57PM 23       deposition.

12:57PM 24   BY MR. BRONGE:

12:57PM 25       A.    Yeah, my answer to this is, I was

Page 43

O. BLONSTEIN

12:57PM 2    not -- no one consulted me about the updates

12:58PM 3    to our terms of use for loans or for EARN.

12:58PM 4    This was not -- this was not a routine -- no

12:58PM 5    one routinely came to me and said, hey, Oren,

12:58PM 6    what do you think about an update to our

12:58PM 7    Terms of Use?  This is managed by different

12:58PM 8    departments in the Company.

12:58PM 9        Q.    Okay.  Can we open the Terms of

12:58PM 10   Service document?

12:58PM 11             MS. SIMSON:  Mr. Bronge, are you

12:58PM 12       referring to docket number 393?

12:58PM 13             MR. BRONGE:  Correct.

12:58PM 14             MS. SIMSON:  Yes, we will share

12:58PM 15       that for you.

12:58PM 16             MR. BRONGE:  Thank you.

12:58PM 17             So while you look for that, I

12:58PM 18       will ask the witness a different

12:58PM 19       thing.

12:58PM 20   BY MR. BRONGE:

12:58PM 21       Q.    Do you know if Celsius -- because

12:58PM 22   I understand you are an American citizen; is

12:58PM 23   that correct?

12:59PM 24       A.    Yes.

12:59PM 25       Q.    So do you know if Celsius issued a

Page 44

O. BLONSTEIN

12:59PM 2    1099 for Earn accounts?

12:59PM 3              MS. SIMSON:  Objection.

12:59PM 4              You may answer if you know.

12:59PM 5        A.    Yes, we did.

12:59PM 6        Q.    And do you know if Celsius issued

12:59PM 7    a 1098 for the borrowers?

12:59PM 8              MS. SIMSON:  Objection.

12:59PM 9        A.    I'm not aware.  If we did, I did

12:59PM 10   not receive one for my loans.

12:59PM 11       Q.    Okay.

12:59PM 12             MR. BRONGE:  Okay.  So -- oh, we

12:59PM 13       have that document.  So -- very good.

12:59PM 14   BY MR. BRONGE:

12:59PM 15       Q.    Let's start with -- if we go to

12:59PM 16   the end of that document, I will give you the

12:59PM 17   page number in a second.  So it's going to be

12:59PM 18   page 1111 out of 1126.

12:59PM 19             The section I'm interested in, if

01:00PM 20   you can please read it, starts with "Celsius

01:00PM 21   deploys."

01:00PM 22       A.    Yeah, I will read it.

01:00PM 23             THE WITNESS:  I don't need to

01:00PM 24       read that aloud, right?

01:00PM 25             MS. SIMSON:  No, you do not,

Page 45
O. BLONSTEIN

01:00PM 2    Mr. Blonstein.
01:00PM 3         THE WITNESS:  Thank you.
01:00PM 4    BY MR. BRONGE:
01:00PM 5    Q.   So if you read from "Celsius
01:00PM 6    deploys digital assets" and then down to
01:00PM 7    "collateral" and "close your loan."  This is
01:00PM 8    risk disclosures, so it's three sections
01:00PM 9    there.
01:00PM 10        Yeah, that's it.
01:00PM 11   A.   Okay.  Got it.
01:01PM 12        Okay.  Yeah, I finished reading
01:01PM 13   it.
01:01PM 14   Q.   Thank you.
01:01PM 15        So if you look at the first two
01:01PM 16   parts, that's basically discussing risk
01:01PM 17   disclosure for the Earn accounts?
01:01PM 18        MS. SIMSON:  Objection.
01:01PM 19        Mr. Bronge, again, this is not
01:01PM 20   your opportunity to testify.  If you
01:01PM 21   have a question for the witness, you
01:02PM 22   may ask the question.  Otherwise, move
01:02PM 23   on.
01:02PM 24        MR. BRONGE:  The question is
01:02PM 25   coming.

Page 46
O. BLONSTEIN

01:02PM 2         MS. SIMSON:  Mr. Bronge, again,
01:02PM 3    please just ask the question.
01:02PM 4    BY MR. BRONGE:
01:02PM 5    Q.   Do you -- in your opinion, does
01:02PM 6    the two first sections discuss risk
01:02PM 7    associated with the Earn account?
01:02PM 8         MS. SIMSON:  Objection.  Calls
01:02PM 9    for a legal conclusion.  Calls for
01:02PM 10   privileged information.  And also to
01:02PM 11   the extent that it calls for testimony
01:02PM 12   that is duplicative of what Ferraro
01:02PM 13   also testified about, it is outside
01:02PM 14   the scope.
01:02PM 15        MR. BRONGE:  I have never --
01:02PM 16        MS. SIMSON:  Mr. Blonstein, if
01:02PM 17   you have any answer that is not a
01:02PM 18   legal conclusion or privileged or
01:02PM 19   outside the scope, then you may
01:02PM 20   answer.
01:02PM 21   BY MR. BRONGE:
01:02PM 22   A.   Yeah.  So with the same caveat,
01:02PM 23   I'm not an attorney and I think it's
01:02PM 24   challenging to review just, you know, two
01:02PM 25   paragraphs within a long document and make a

Page 47
O. BLONSTEIN

01:02PM 2    conclusion based on that.
01:03PM 3         But if I understood your question
01:03PM 4    to be, do these paragraphs talk about some of
01:03PM 5    the risks, yes, they do talk about some of
01:03PM 6    the risks of using the Earn service and also
01:03PM 7    --
01:03PM 8         THE COURT REPORTER:  And also?
01:03PM 9    I'm sorry.
01:03PM 10   A.   Sorry, also the borrower service.
01:03PM 11        THE COURT REPORTER:  Thank you.
01:03PM 12   Q.   You say that in relation to the
01:03PM 13   first two paragraphs?
01:03PM 14   A.   Correct.  I mean, Celsius offered
01:03PM 15   a number of services and the first sentences,
01:03PM 16   I believe, apply broadly to all services that
01:03PM 17   -- to all assets that are loaned to the
01:03PM 18   Company.  And then where the sentence says,
01:03PM 19   "Such as through Celsius' Earn services,"
01:03PM 20   just an example of one of those services.
01:03PM 21   Q.   Okay.  So then the third section,
01:03PM 22   do you consider that dealing with the risks
01:04PM 23   for borrower?
01:04PM 24        MS. SIMSON:  Objection.  That
01:04PM 25   calls for a legal conclusion.  Also

Page 48
O. BLONSTEIN

01:04PM 2    calls for privileged information.
01:04PM 3         Mr. Blonstein, you may answer --
01:04PM 4    oh, go ahead.
01:04PM 5         MR. BRONGE:  I can try to
01:04PM 6    rephrase.
01:04PM 7    BY MR. BRONGE:
01:04PM 8    Q.   Do you think that the risks
01:04PM 9    discussed in the third section are different
01:04PM 10   than the risks that are discussed in the
01:04PM 11   other two paragraphs?
01:04PM 12        MS. SIMSON:  Objection.  That --
01:04PM 13   that calls for a legal conclusion, and
01:04PM 14   also to the extent it calls for
01:04PM 15   privileged information.
01:04PM 16        MR. BRONGE:  Can I just ask the
01:04PM 17   dep- -- or, sorry, the lawyer here
01:04PM 18   that, if I ask for an opinion, how can
01:04PM 19   that be a legal conclusion?
01:04PM 20        If somebody comes to this
01:04PM 21   document, should they not be able to
01:04PM 22   have an opinion of what they read?
01:04PM 23        MS. SIMSON:  Mr. Bronge, this is
01:04PM 24   a deposition of a non-lawyer and you
01:04PM 25   are allowed to ask him questions and I

Page 49

O. BLONSTEIN

01:05PM 2   object when they are inappropriate.

01:05PM 3       MR. BRONGE:  I'm trying to

01:05PM 4   understand, to avoid you having to

01:05PM 5   object all the time, what I'm doing

01:05PM 6   wrong.

01:05PM 7       MS. SIMSON:  You are asking him

01:05PM 8   to interpret a legal document during a

01:05PM 9   deposition.

01:05PM 10      If you have any other questions,

01:05PM 11  please move on.

01:05PM 12  BY MR. BRONGE:

01:05PM 13      Q.  Okay.  So in the second paragraph,

01:05PM 14  it states that there is a risk to lose all

01:05PM 15  funds; is that correct?

01:05PM 16      MS. SIMSON:  Again, objection.

01:05PM 17  Calls for a legal conclusion.  And to

01:05PM 18  the extent it calls for privileged

01:05PM 19  information or information outside the

01:05PM 20  scope, I object to that as well.

01:05PM 21      Mr. Blonstein, you may answer if

01:05PM 22  you know.

01:05PM 23  BY MR. BRONGE:

01:05PM 24      A.   I mean, I do read the text in that

01:05PM 25  last sentence where it says, in which case,

Page 50

O. BLONSTEIN

01:05PM 2   your funds may be "lost in whole or in part."

01:05PM 3   But, you know, that's one sentence out of,

01:05PM 4   you know, many -- out of a long document.

01:06PM 5   But I -- I do see those words on the page.

01:06PM 6       Q.   Okay.  So let's try something

01:06PM 7   else.  If you give me a second, I'll find the

01:06PM 8   reference.

01:06PM 9       Did you know if Bitcoin is legal

01:06PM 10  tender anywhere in the world?

01:06PM 11      MS. SIMSON:  Objection.

01:06PM 12  You may answer if you know.

01:06PM 13      A.   I believe that there are some

01:06PM 14  countries that have made Bitcoin legal

01:06PM 15  tender, but -- but I can't remember the names

01:06PM 16  of the countries right now.

01:06PM 17      Q.   Okay.  That's fine.  There is one

01:06PM 18  country called El Salvador that has done

01:07PM 19  that.

01:07PM 20      Can you go to page 932, please.

01:07PM 21  And in the definitions, point number 9.

01:07PM 22      So here it reads, "'Fiat', when

01:07PM 23  used in reference to money or currency', means

01:07PM 24  any money that a recognized government

01:07PM 25  declares as legal tender."

Page 51

O. BLONSTEIN

01:07PM 2       If Bitcoin is declared legal

01:07PM 3   tender by a sovereign nation, would that

01:07PM 4   apply to Bitcoin?

01:07PM 5       MS. SIMSON:  Objection.

01:07PM 6       Mr. Bronge, that calls for a

01:07PM 7   legal conclusion and also privileged

01:07PM 8   information.

01:07PM 9       You may answer if you know,

01:07PM 10  Mr. Blonstein.

01:07PM 11  BY MR. BRONGE:

01:08PM 12      A.   This one is more complicated

01:08PM 13  because I don't know how that defined word

01:08PM 14  applies to different terms in the agreement.

01:08PM 15  So I don't know how to answer that question.

01:08PM 16  I would have to understand how that word --

01:08PM 17  how that term was used throughout the

01:08PM 18  agreement.

01:08PM 19      Q.   Okay.  So let me find the other

01:08PM 20  reference I have here.  Just give me a

01:08PM 21  second.

01:09PM 22      MR. BRONGE:  So if we can go to

01:09PM 23  page 202 in the document.  Sorry, this

01:09PM 24  was the wrong reference.  Give me one

01:09PM 25  second.  I'll find a later one.  There

Page 52

O. BLONSTEIN

01:09PM 2   are so many.

01:09PM 3       Here we are.  871, page 871.

01:10PM 4   The "Conversion Rates."

01:10PM 5   BY MR. BRONGE:

01:10PM 6       Q.   If you can please read that

01:10PM 7   section.

01:10PM 8       A.   The -- sorry, the conversion

01:10PM 9   section?

01:10PM 10      Q.   Yeah, "Conversion Rates" section.

01:10PM 11      A.   Okay.

01:10PM 12      Okay, I've read them.

01:10PM 13      Q.   Does this clause, in your opinion,

01:10PM 14  mean that if you convert from one asset to

01:10PM 15  another, whether it be the Digital Asset

01:10PM 16  or -- whether Digital Asset or Fiat -- Fiat

01:11PM 17  currency -- currency or the vice-versa, the

01:11PM 18  price -- the price that's going to be applied

01:11PM 19  is at the time of that conversion?

01:11PM 20      MS. SIMSON:  Objection.  Calls

01:11PM 21  for a legal conclusion and calls for

01:11PM 22  privileged information.

01:11PM 23      And to the -- to the extent that

01:11PM 24  you know the answer, Mr. Blonstein,

01:11PM 25  you may answer.

Page 53

O. BLONSTEIN

01:11PM 2    BY MR. BRONGE:

01:11PM 3        A.    There is all kinds of caveats in

01:11PM 4    that paragraph that I can read that seems to

01:11PM 5    give the Company discretion, but I do see the

01:11PM 6    words, essentially, where the conversion

01:11PM 7    shall be made by the Company "in accordance

01:11PM 8    with the rates and prices applicable at the

01:11PM 9    actual time of conversion."

01:11PM 10       Q.    Yeah, okay.  Would you agree that

01:11PM 11   if Bitcoin is legal tender and falls under

01:11PM 12   the Fiat currency definition, as we read

01:11PM 13   before, that could apply to Bitcoin in the

01:12PM 14   document?

01:12PM 15       MR. BRONGE:  "If," I'm asking

01:12PM 16   now, so there's no legal conclusion

01:12PM 17   required.

01:12PM 18       MS. SIMSON:  Objection.  To the

01:12PM 19   extent it calls for a legal conclusion

01:12PM 20   and privileged information, I'm

01:12PM 21   objecting.

01:12PM 22       To the extent you can answer,

01:12PM 23   you may do so.

01:12PM 24   BY MR. BRONGE:

01:12PM 25       A.    I don't really know anyone who

Page 54

O. BLONSTEIN

01:12PM 2    would consider Bitcoin Fiat currency, so I

01:12PM 3    don't -- I mean, I understand that there

01:12PM 4    might be a country or two that has -- that

01:12PM 5    has said that Bitcoin is Fiat currency, but I

01:12PM 6    think just on a practical -- as a practical

01:12PM 7    matter, I don't think anybody would read this

01:12PM 8    agreement and say that the reference to Fiat

01:12PM 9    currency here would apply to Bitcoin.

01:12PM 10       That's my opinion.

01:12PM 11       Q.    You don't think the digital asset

01:13PM 12   would be the correct definition of these

01:13PM 13   different things they have here in the

01:13PM 14   paragraph?

01:13PM 15       MS. SIMSON:  I'm sorry,

01:13PM 16   Mr. Bronge, would you mind restating

01:13PM 17   that?  You cut out a bit.

01:13PM 18       Q.    Yeah.  There is -- it mentions

01:13PM 19   Digital Assets currency and Fiat currency in

01:13PM 20   the paragraph.  And I understand the witness

01:13PM 21   thinks that Bitcoin and Fiat currency is not

01:13PM 22   a common way of looking at it.  So it rather

01:13PM 23   would be the Digital Assets here that Bitcoin

01:13PM 24   will fit into?

01:13PM 25       MS. SIMSON:  Mr. Bronge, again,

Page 55

O. BLONSTEIN

01:13PM 2    this is not your chance to testify.

01:13PM 3    If you have a question for the

01:13PM 4    witness, you may ask the question.

01:13PM 5        And again --

01:13PM 6        MR. BRONGE:  That was the

01:13PM 7    question.  That was the question.

01:13PM 8        MS. SIMSON:  Mr. Bronge, please

01:13PM 9    let me finish, for the benefit of the

01:13PM 10   record.

01:13PM 11       And I want to emphasize again

01:13PM 12   that we are lodging objections and

01:13PM 13   preserve our right to object.  And we

01:13PM 14   can -- the witness can proceed if he

01:13PM 15   understands the question.

01:14PM 16   BY MR. BRONGE:

01:14PM 17       A.    Yeah.  Generally, when I see

01:14PM 18   digital assets in our -- in the different

01:14PM 19   Terms of Use documents, I would consider

01:14PM 20   Bitcoin to fall into that.

01:14PM 21       MR. BRONGE:  Okay.  So,

01:14PM 22   obviously, seems that I'm not able to

01:14PM 23   ask very relevant questions here.

01:14PM 24   But, yeah, so I think that I will just

01:14PM 25   finish then.

Page 56

O. BLONSTEIN

01:14PM 2        I have no more questions.  Thank

01:14PM 3    you very much for your cooperation.

01:14PM 4        THE COURT REPORTER:  Counsel,

01:14PM 5    can we close the record?

01:14PM 6        MS. SIMSON:  I just have a

01:14PM 7    couple of very quick questions on

01:14PM 8    redirect.

01:14PM 9    EXAMINATION BY

01:14PM 10   MS. SIMSON:

01:14PM 11       Q.    Mr. Blonstein, you are not a

01:14PM 12   lawyer, correct?

01:14PM 13       A.    That's correct.

01:14PM 14       Q.    Are you able to render a legal

01:14PM 15   opinion on definitions within the Terms of

01:14PM 16   Use?

01:14PM 17       A.    I am not.

01:14PM 18       Q.    Are you able to render a legal

01:15PM 19   opinion on court documents?

01:15PM 20       A.    I am not.

01:15PM 21       MS. SIMSON:  Thank you very

01:15PM 22   much.

01:15PM 23       Nothing further.

01:15PM 24       And I want to say, again, on the

01:15PM 25   record that we are preserving our

Page 57

O. BLONSTEIN

01:15PM 2  rights to object to anything else in
01:15PM 3  here.  And to the extent we allowed
01:15PM 4  the -- the witness to answer, we may
01:15PM 5  still ask to object to that later in
01:15PM 6  front of the Court.
01:15PM 7      MR. BRONGE:  May I ask questions
01:15PM 8  to the lawyer on procedure -- to you?
01:15PM 9      MS. SIMSON:  Mr. Bronge, what is
01:15PM 10  your question?
01:15PM 11      MR. BRONGE:  Yes.  I would like
01:15PM 12  to know how I can ask questions -- who
01:15PM 13  and how in this context I can ask
01:15PM 14  questions that require legal opinion?
01:15PM 15  Who shall I direct it to and how
01:15PM 16  should it be it done?  From a
01:15PM 17  procedurally correct standpoint.
01:16PM 18      MS. SIMSON:  Mr. Bronge --
01:16PM 19      MR. BRONGE:  I'm not a lawyer.
01:16PM 20  I'm not a lawyer either.
01:16PM 21      MS. SIMSON:  Mr. Bronge, you
01:16PM 22  have requested the deposition of
01:16PM 23  Mr. Blonstein, who is not a
01:16PM 24  question -- who is not a lawyer.
01:16PM 25      So any questions that you have

Page 58

O. BLONSTEIN

01:16PM 2  that called for a legal conclusion
01:16PM 3  were not -- that is outside of what he
01:16PM 4  has to answer.
01:16PM 5      MR. BRONGE:  Yes, I understand.
01:16PM 6  But if I want to ask such question,
01:16PM 7  how should I go about doing it?  Who
01:16PM 8  should I ask -- who?  What person,
01:16PM 9  what entity should I ask them to?
01:16PM 10      MS. SIMSON:  I'm not sure what
01:16PM 11  you are asking, Mr. Bronge.  But if
01:16PM 12  you have legal questions, then that is
01:16PM 13  something that counsel can answer.
01:16PM 14      MR. BRONGE:  Okay.
01:16PM 15      THE VIDEOGRAPHER:  Are we going
01:16PM 16  off the video record?
01:16PM 17      MR. BRONGE:  Yeah, I have no
01:16PM 18  further questions.
01:16PM 19      MS. SIMSON:  Nothing further
01:16PM 20  from Kirkland.
01:16PM 21      THE VIDEOGRAPHER:  The time
01:16PM 22  right now is 1:16 p.m.  We are off the
23  record.
24      (Whereupon, at 1:16 p.m., the
25  Examination of this Witness was

Page 59

O. BLONSTEIN

2  concluded.)

_____
OREN BLONSTEIN

Subscribed and sworn to before me
this _____ day of _____, 2023.

_____
NOTARY PUBLIC

Page 60

E X H I B I T S

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE |
|---|---|---|
| Exhibit A | Decision + Order on Motion | 8 |
| Exhibit D | Statement of Charges - State of Washington Department of Financial Institutions Securities Division | 13 |
| Exhibit E | Emergency Order to Cease and Desist | 19 |
| Exhibit J | Texas State Securities Board document | 24 |
| Exhibit F | Summary Cease and Desist Order | 27 |
| Exhibit G | Notice of Filing | 34 |

I N D E X

Page 61

1
2      EXAMINATION BY                          PAGE
3
4      MR. BRONGE                                4
5      MS. SIMSON                               56
6
7
8
9      INFORMATION AND/OR DOCUMENTS REQUESTED
10     INFORMATION AND/OR DOCUMENTS          PAGE
11                (NONE)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 63

1   ERRATA SHEET FOR THE TRANSCRIPT OF:
2   Case Name:      In Re:  Celsius Network LLC
3   Dep. Date:      October 17, 2023
4   Deponent:       Oren Blonstein
5              CORRECTIONS:
6   Pg.  Ln.     Now Reads  Should Read     Reason
7   ___  ___   _____   _____  _____
8   ___  ___   _____   _____  _____
9   ___  ___   _____   _____  _____
10  ___  ___   _____   _____  _____
11  ___  ___   _____   _____  _____
12  ___  ___   _____   _____  _____
13  ___  ___   _____   _____  _____
14  ___  ___   _____   _____  _____
15  ___  ___   _____   _____  _____
16  ___  ___   _____   _____  _____
17                         _____
18                         Signature of Deponent
19
20  SUBSCRIBED AND SWORN BEFORE ME
21  THIS____DAY OF_____,2023.
22
23  _____
24  (Notary Public)  MY COMMISSION EXPIRES:_____
25

Page 62

1
2         C E R T I F I C A T E
3
4    STATE OF NEW YORK       )
5                     :  SS.:
     COUNTY OF NASSAU        )
6
7         I, REBECCA SCHAUMLOFFEL, a Notary
8    Public for and within the State of New York,
9    do hereby certify:
10        That the witness whose examination
11   is hereinbefore set forth was duly sworn and
12   that such examination is a true record of the
13   testimony given by that witness.
14        I further certify that I am not
15   related to any of the parties to this action
16   by blood or by marriage and that I am in no
17   way interested in the outcome of this matter.
18        IN WITNESS WHEREOF, I have hereunto
19   set my hand this 17th day of October, 2023.
20        _Rebecca Schaumloffel_
21        REBECCA SCHAUMLOFFEL
22
23
24
25