Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  September 28, 2023

17                  10:01 AM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  JONATHAN

1    HEARING re Hybrid Hearing on CEL Token Legal Issues (To The

2    Extent a CEL Token Resolution Event Has Not Occurred).

3    (Doc. ## 3356, 3360, 3412, 3431, 3432, 3433 to 3436, 3476,

4    3528).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  WHITE & CASE LLP

4      Attorneys for Official Committee of Unsecured Creditors

5      555 South Flower Street, Suite 2700

6      Los Angeles, CA 90071

7

8  BY:  AARON COLODNY

9

10  KIRKLAND ELLIPS LLP

11      Attorneys for the Debtor

12      300 North LaSalle

13      Chicago, IL 60654

14

15  BY:  CHRISTOPHER KOENIG

16

17  UNITED STATES SECURITIES AND EXCHANGE COMMISSION

18      Attorneys for the US SEC

19      100 F Street NE

20      Washington, D.C. 20549

21

22  BY:  THERESE SCHEUER

23

24  OTIS DAVIS, Pro se

25

Page 4

1    ARTUR ABREU, Pro se

2

3    ERIK MENDELSON, Pro se

4

5    JASON IOVINE, Pro se

6

7    ALSO PRESENT:

8    JASMINE ARMAND

9    DEAN LINDSAY CHAPMAN

10   CHRISTOPHER J. COCO

11   THOMAS DIFIORE

12   SCOTT DUFFY

13   SEAN ANDREW FEENER

14   MIRA HAQQANI

15   SAMUEL P. HERSHEY

16   JEFFREY S. KRAMER

17   NICHOLAS R. LOMBARDI

18   KEITH NOYES

19   CAITLIN O'CONNELL

20   GREGORY F. PESCE

21   MARK ROBINSON

22   ELIZABETH D. SCOTT

23   MICHAEL STANLEY

24   DAVID TURETSKY

25   CAROLINE WARREN

1    KEITH WOFFORD

2    ANDREW YOON

3    TANZILA ZOMO

4    UDAY GORREPATI

5    TAYLOR HARRISON

6    JEREMY HILL

7    MIKE LEGGE

8    VINCE SULLIVAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Good morning.  Everybody please be

 3    seated.  All right.  We're here in Celsius 22-10964.

 4            Mr. Koenig, good morning.

 5            MR. KOENIG:  good morning, Your Honor.  For the

 6    record, Chris Koenig, Kirkland & Ellis, for the Debtors.

 7            Your Honor, you know the case number by heart.

 8            Your Honor, this status conference was initially

 9    scheduled as an argument on the legal issues for CEL token

10    in the event that we did not have a settlement with the CEL

11    token holders.  As a reminder, our Chapter 11 plan includes

12    a settlement for CEL token that values the token at 25 cents

13    per CEL token.

14            At the disclosure statement hearing, you asked me

15    who is the counterparty to the settlement.  And I said,

16    well, we're going to wait and see.  We're going to see what

17    creditors say about the plan.  And as I'm sure Your Honor

18    saw, we filed the voting report on Monday.  The results were

19    overwhelming.  And if I can be candid, exceeded our wildest

20    hopes and expectations.

21            Just a couple of numbers for the record.  All

22    accountholder classes entitled to vote voted to accept the

23    plan by a very large margin.  In the Earn class, which is

24    our largest class of creditors, over $2.4 billion in dollar

25    amount voted on the plan out of a total of about $4.2
```

1    billion total of Earn creditors.  And of those voting, more

2    than 99 percent by both number and dollar amount voted to

3    accept the plan.  The same holds true for the other

4    accountholder Classes.  In all of those, over 98 percent in

5    number and 96 percent in dollar amount except for withhold,

6    where one large no vote in a small class brought the dollar

7    amount down a bit.

8            And that level of support continued for CEL token

9    holders, too.  We separately examined ballots of CEL token

10   holders and ran the calculations as if they were a separate

11   class.  With almost 37,000 CEL token holders submitting

12   ballots, 482 voted no.  that's an acceptance rate of 98.71

13   percent by number.  We believe that the process worked as

14   intended.  The CEL token settlement was an open offer to CEL

15   token holders, and the CEL token holders accepted that

16   offer.

17           As we disclosed at the prior discovery conference

18   on this topic, we signed two formal settlement agreements

19   with Mr. (indiscernible) and Mr. Wiles, who are two of the

20   very large CEL token holders who have been litigating this

21   issue throughout these cases.

22           The lack of objections to the plan bear this out,

23   too.  There was one formal objection that was filed by Mr.

24   Otis Davis.  There was one letter that was submitted.  This

25   is in stark contrast to the dozens of letters that Your

Page 8

1    Honor received on this topic in the past.

2           So our position is that the CEL token settlement

3    has been overwhelmingly accepted as part of the plan and the

4    CEL token settlement should be approved as part of

5    confirmation next week.  That's how Chapter 11 plans work.

6    Creditors have the right to vote on their treatment, and

7    dissenting creditors get dragged along.  Unanimity is not

8    required.

9           THE COURT:  Let me ask a couple of questions.

10          MR. KOENIG:  Sure.

11          THE COURT:  So not everybody has signed on the

12   settlement.

13          MR. KOENIG:  Sure.

14          THE COURT:  Can 9019 settlement bind non-settling

15   -- people who have not agreed to settle?

16          MR. KOENIG:  I think if we file this as a separate

17   9019 motion, that might be challenging.  But this is a

18   Chapter 11 --

19          THE COURT:  Let me just go through a series of

20   questions.

21          MR. KOENIG:  I understand.

22          THE COURT:  But you agree that in terms of the

23   9019, only those parties who have agreed are bound by this

24   settlement per say.

25          MR. KOENIG:  Pursuant to Bankruptcy Rule 9019, I

Page 9

1    agree.

2           THE COURT:  Okay.  The plan proposes a treatment

3    of 25 cents for CEL token holders, correct?

4           MR. KOENIG:  Yes, Your Honor.

5           THE COURT:  All right.  There is no single class

6    of CEL token holders.  They are spread among a number of

7    classes, of accepting classes.

8           MR. KOENIG:  Yes.

9           THE COURT:  So it is the issue of -- become

10   whether to the extent they object, for dissenting members of

11   an accepting class, the question then becomes the best

12   interest test; are they receiving at least as much as they

13   would in a Chapter 7 liquidation.  Is that about the

14   analysis?

15          MR. KOENIG:  I think that's right, Your Honor.

16          THE COURT:  Because I sort of went back and forth

17   in my own mind.  And I haven't read the entire trial brief.

18   I did look at parts of it last night.  And I specifically

19   looked at the CEL token portions of it.  And it doesn't

20   address this analysis.

21          So if I had a case where it didn't specifically

22   deal with the treatment of CEL tokens, the issue would then

23   become it seems to me in the claim objection process.  You

24   know, they filed claims and there's a contested matter

25   whether CEL tokens are worth zero, 25 cents, eight dollars,

Page 10

1    you pick a number.  And that would be resolved as part of a

2    claims resolution process.  But just to kind of work this

3    through in my mind, that doesn't seem to apply here because

4    the plan proposes the treatment of 25 cents.  And therefore,

5    we fall into this best interest analysis.  If they object --

6    okay, who has the burden in the best interest analysis?

7             MR. KOENIG:  The debtors.  I believe the debtor

8    has the burden by a preponderance of the evidence.

9             THE COURT:  So I read -- again, not every page,

10   but I looked at the expert the committee submitted, the

11   report on CEL tokens.  And maybe I missed something, but

12   what I derived from that is the expert doesn't believe it's

13   81 cents, but doesn't say what it is.

14            He's putting on evidence -- and I haven't made my

15   mind up -- this is the analysis that the Court has to make.

16   Okay.  So assume for those dissenting class members who

17   argue that the CEL token is worth more than 25 cents, what

18   does the Court have to conclude?  That the value of the CEL

19   token does not exceed 25 cents.  Is that a sufficient

20   finding?  I'm not saying that's -- okay.  I'm just thinking

21   out loud.  Okay?  Because -- so with respect to the CEL

22   token, there are many issues.  Is it a security?  If it's a

23   security, it's subordinated under 510.  If it's

24   subordinated, value zero.  If it's not a security, what's

25   the value of it?

Page 11

1              Assuming that the objectors carry forward with

2    objections, they're absolutely entitled to.

3              MR. KOENIG:  Of course.

4              THE COURT:  I'm just trying to understand what is

5    it I'm going to hear.  Because the only written expert

6    report that I've seen so far says it's not 81 cents.  Have I

7    missed something?

8              MR. KOENIG:  Your Honor, it's the committee's

9    experts -- I'll let Mr. Colodny speak, but I don't believe

10   that the expert report says it's 20 cents or 25 cents or

11   anything other than it's not 81.

12             THE COURT:  It says it's not 81 -- I looked.  That

13   was one of the things I was interested in seeing, what does

14   the expert say.

15             MR. KOENIG:  Right.

16             THE COURT:  And he said it's not 81 cents.

17             MR. KOENIG:  Right.  I think, Your Honor, the

18   standard would be for best interest whether the proper value

19   of CEL token under a Chapter 7 liquidation would be higher

20   than the value that is being given to CEL token holders

21   under our plan.

22             THE COURT:  I said the reverse.  Basically is it -

23   - does the court find based on the evidence presented that

24   the value of the CEL token is equal to or less than 25

25   cents.  Because that's the treatment that's proposed in the

Page 12

1    plan.

2              MR. KOENIG:  Right.  And I think it could even be,

3    depending on the math -- and lawyer math is admittedly

4    challenging.  But as long as the plan will provide higher

5    recovery for all creditors than under Chapter 7, that's our

6    burden, that's what we'll show generally.  But if there are

7    more proceeds to go out to creditors under a Chapter 11

8    plan, the math could work out such that CEL token could be

9    worth 30 cents and you still pass best interest because the

10   margin between the Chapter 11 plan distributions and the

11   Chapter 7 distributions are so high that that margin

12   actually -- there's a little bit of margin for error.

13             THE COURT:  So I searched the brief and I didn't

14   see anything in the brief that deals with the issue.  I

15   realize that we're probably dealing with a -- I don't know

16   how many people we're dealing with who didn't join the

17   settlement.

18             MR. KOENIG:  Right.  And we have the burden to

19   demonstrate at confirmation.

20             THE COURT:  Is somebody going to put on something

21   in the -- so, look, on the issue is it a security, one of

22   the conclusions, I've read both Ripple and Terraform.  You

23   know, Judge Torres' Decision in Ripple, Judge Rakoff's

24   decision in Terraform.  It seems to me different cases,

25   different CEL property -- not a capital C-E-L.  Crypto.

Page 13

1      Different crypto.  Different conclusions as to what's a

2      security and what's not.

3            So if based on the evidence presented the Court

4      concludes that the value of the CEL token is less than 25

5      cents, I don't think I have to resolve the issue of whether

6      it's a security or not.  The question is do I need to

7      resolve the issue.  I'm not (indiscernible) to decide

8      issues, but if I decide the issue, it's an appellate issue.

9      But it seems to me that I don't have -- if the evidence is

10     such that the Court concludes the value is less than 25

11     cents, I don't have to resolve the issue of whether it's a

12     security.  Those are my -- I'm ruminating about this.  I

13     haven't resolved how to deal with it, but that's -- I wanted

14     to get reactions from anybody on Zoom or in the courtroom

15     today.

16            MR. KOENIG:  Right.  Thank you, Your Honor.  And

17     we appreciate it.  I mean, obviously a trial about whether

18     or not CEL is a security could be a lengthy trial.  And I

19     know Ms. Scheuer from the SEC is here, and there are a lot

20     of folks that might be interested in what that decision is.

21     And we're trying to get out of bankruptcy first and

22     foremost.

23            THE COURT:  I understand.

24            MR. KOENIG:  And so if there's a way for us to

25     resolve the matter in a way that doesn't lead to a

Page 14

1    contested, expensive, drawn-out appellate process, we would

2    like to do that.  So we appreciate the guidance.  We'll

3    certainly --

4              THE COURT:  I'm asking questions.  I'm looking --

5    I didn't see a roadmap presented in what briefs I've looked

6    at so far.

7              MR. KOENIG:  Well, that is helpful feedback for us

8    to consider in advance of next week, Your Honor.

9              THE COURT:  So Mr. Colodny is -- if your witness

10   testifies and one of the pro se creditors or a represented

11   creditor or the court asks the question do you have an

12   opinion what the value of the CEL token was at the petition

13   date, is the witness going to answer that?

14             MR. COLODNY:  Your Honor, Aaron Colodny from White

15   & Case on behalf of the Official Committee of Unsecured

16   Creditors.

17             You are correct, we did not put a value and our

18   expert did not opine on the value of CEL token.  What he

19   opined on was that the value is less than 81 cents, and much

20   less than 81 cents.  The issue that we have, which I think

21   is uncontroverted, is that prior to the petition date,

22   significant manipulation of the CEL token price --

23             THE COURT:  Okay.  Let's assume I find -- I

24   understand the arguments about manipulation, indictment of

25   Mashinsky, the whole -- I think I understand that.

1          MR. COLODNY:  Correct.

2          THE COURT:  But then the question still may come

3     down to -- let's assume -- again, assumption, not making any

4     finding.  Let's assume that I find that 81 cents is not the

5     value of the CEL token, is not satisfactory evidence of the

6     value of the CEL token at the petition date.  Well, what is

7     it?

8          MR. COLODNY:  So I think you can get to your best

9     interest question and in a number of different ways.  I

10    think Mr. Koenig pointed out one.  You can assume that the

11    price is 81 cents.  And if the liquidation value of the

12    debtors would provide CEL token claims with more value than

13    if the token was 81 cents, then the best interest test is

14    satisfied.

15         In addition, if Your Honor found that the value of

16    the CEL token was less than 25 cents, it would be satisfied

17    (indiscernible) because you could not give -- we're not

18    giving a hundred percent back to everybody.

19         THE COURT:  I just want to say I didn't -- maybe

20    because I hadn't thought about it before, I didn't

21    completely follow how the best interest test is satisfied if

22    the value was 81 cents at the petition date.  I know you

23    went through it very quickly, and I'm not sure I was

24    completely tuned into it.

25         MR. COLODNY:  So the way that I as thinking about

Page 16

1    it, Your Honor, is if you assume that the value of the CEL

2    token is 81 cents and assuming a claim at 81 cents under a

3    Chapter 7 liquidation, a creditor would get back say five

4    dollars.  But under the 25 cent settlement in our plan, they

5    would get back seven.  Then the best interest plan test

6    would be satisfied.

7            THE COURT:  So if your expert is asked the

8    question during the confirmation hearing, do you have an

9    opinion as to the value of the CEL token at the petition

10   date.  Is the Court going to get an answer to that question?

11           MR. COLODNY:  In our expert's report, he opines

12   that the value is less than 81 cents.  He does not provide a

13   specific value to the CEL token.

14           THE COURT:  I didn't read every page of it, but I

15   did look for does he have an opinion as to the value of it.

16   And the only opinion I saw was it's less than 81 cents.

17           MR. COLODNY:  That's correct.

18           THE COURT:  But my question to you is if he's

19   asked on cross-examination do you have an opinion as to the

20   value of the CEL token on the petition date, is he going to

21   have an answer?

22           MR. COLODNY:  I'm not sure that I should be

23   testifying for my witness, Your Honor.

24           THE COURT:  I'm not -- he's your witness.  I just

25   -- I'm not asking what his opinion is.  Is he going to have

Page 17

1    an opinion as to the value of the CEL token on the petition

2    date?

3              MR. COLODNY:  Right.  And the problem I'm having,

4    Your Honor, is I am not my witness.  And so to --

5              THE COURT:  Okay.  Better find out the answer.

6              MR. COLODNY:  I understand, Your Honor.  What I'll

7    say, Your Honor, is in his expert report, he does not opine

8    as to the value of the CEL token.

9              THE COURT:  I know that.  That much I got.  I

10   looked carefully.  Because I was running through this

11   analysis in my head where people who didn't join the

12   settlement aren't bound.  The plan treatment is 25 cents.

13   They are dissenting members of a bunch of different classes.

14   The best interest test has to be satisfied.  And that raised

15   the question maybe you have multiple loops to get there.

16   But the question to me naturally followed if they're getting

17   25 cents, what would they get in a Chapter 7.

18             MR. COLODNY:  Understood, Your Honor.

19             THE COURT:  That could vary by -- is it a

20   security?  They get zero because it's subordinated.  It's

21   not a security, what do they get.

22             MR. COLODNY:  Right, Your Honor.  I think that's

23   one of the points that I wanted to raise today, is how I

24   view it, there are four different arguments that you could

25   get to zero.  And CEL token holders would have to win all of

Page 18

1    them to get to something more.

2            First, what is CEL token?  Is it a debt

3    instrument?  Is it equity?  If it's equity, then the answer

4    would be zero.

5            Second, if it's a security and subordinated under

6    510(b), it would also be zero or be subordinated to the

7    value of unsecured claims --

8            THE COURT:  My guess -- and I'm not anxious to

9    decide whether it's a security or not one way or the other -

10   -

11           MR. COLODNY:  Reading the room, I understand that.

12           THE COURT:  -- one way or the other.

13           MR. COLODNY:  Correct.  Third, does it have any

14   value since on the petition date Celsius ceased to exist.

15   And CEL token, when I think about CEL token, there is no

16   payment obligation.  There is no inherent right of anyone

17   that holds CEL token to any value from Celsius.

18           THE COURT:  For native tokens of an insolvent --

19   whatever, exchange, lending platform, whatever -- but for a

20   native token with company that's not going to have ongoing

21   business, one could say it can't have any value.

22           MR. COLODNY:  Correct.  Because --

23           THE COURT:  Whether it's a security or a

24   commodity, it's an it.  But if Celsius' business doesn't

25   exist anymore, how can it have any value other than people

Page 19

1   who want to manipulate the price.

2           MR. COLODNY:  Correct.  And then the third is the

3   market price -- or the fourth, excuse me, is the market

4   price, Your Honor.  And whether that market price was an

5   accurate indication of that.

6           THE COURT:  Let's assume I find it's not an

7   accurate -- what is it -- is it 80 cents instead of 81?  Is

8   it 75?  Let's take it all the way down.

9           MR. COLODNY:  Right.  And I think --

10           THE COURT:  Am I going to hear evidence about

11   that?

12           MR. COLODNY:  Your Honor hit the nail on the head

13   where you said if it's less than 25, then there's no issue.

14   And here, one of the things that we have is we have an

15   overwhelming amount of affected parties on both sides saying

16   we accept 25.  We have 96 percent --

17           THE COURT:  They do.  But people who didn't join

18   the settlement don't.

19           MR. COLODNY:  Correct.  But if I were to ask the

20   market is 25 cents a correct price, you now have 98 percent

21   of CEL token holder saying --

22           THE COURT:  No, you have 98 percent saying enough

23   is enough and we'll take the 25 cents.

24           MR. COLODNY:  You have 98 percent voting in favor

25   of a plan that treats CEL token as 25 cents.

Page 20

```
1              THE COURT:  Okay.  But the 98 percent can't bind
2     objectors -- you know, dissenting members of a class.
3              MR. COLODNY:  Understood, Your Honor.  You also
4     have 96 percent of all other creditors who are diluted by
5     that saying we accept this as well --
6              THE COURT:  And they still can't find -- you still
7     -- if I'm wrong, tell me.  Because none of the -- I haven't
8     seen any briefs that raise this issue.  But in my mind, it
9     then became an issue of dissenting creditors have to receive
10    at least as much as they would in a Chapter 7 liquidation,
11    the best interest test.  Okay.  So -- and if -- I take it
12    you're acknowledging that it's the Debtor's burden, the
13    committee pushing this burden to establish that the best
14    interest test is satisfied.
15             MR. COLODNY:  Correct.
16             THE COURT:  Okay.  Are you going to tell me how
17    you're going to do that?
18             MR. COLODNY:  Your Honor --
19             THE COURT:  Between now and Monday?
20             MR. COLODNY:  I guess my point, Your Honor --
21             THE COURT:  Just that I entered an order this
22    morning.  We're starting the evidence on Tuesday morning.
23    We're going to deal with -- we'll deal with opening
24    statements and I want to raise another issue that I want
25    addressed that I alluded to in the order that was entered a
```

Page 21

1    little while ago.

2            MR. COLODNY:  I guess my point, Your Honor, is

3    that the value of CEL, it's not as if this is a manipulation

4    case where we can look back and say a month ago, two months

5    ago there was no manipulation and we're going to look at

6    that price.  We've got a token that was heavily manipulated

7    throughout its history.  And that started at the very

8    beginning.

9            THE COURT:  At the (indiscernible) it was, what,

10   20 cents?

11           MR. COLODNY:  (indiscernible) it was 28 cents I

12   believe under Mr. (indiscernible) calculation.

13           THE COURT:  Okay.  I don't (indiscernible).

14           MR. COLODNY:  But even then, Your Honor --

15           THE COURT:  But I want to make sure that you

16   understood that the -- I'm not sure -- I'll listen to

17   anybody who wants to talk during the hearing about, well,

18   don't approve the settlement, Judge.  But let's assume I

19   approve the settlement.  What amount, how am I going to deal

20   with the dissenting members of -- and I appreciate the fact

21   that you -- while there was no separate class, you did --

22   the voting results do break out, look at the CEL

23   (indiscernible) overwhelmingly, but not a hundred percent.

24           MR. COLODNY:  That's right, Your Honor.

25           THE COURT:  You know, I mean, I could certainly

1    envision a witness, expect witness testifying assuming I've

2    been asked to assume that it's a security and I've been

3    advised about 510(a), assuming those issues, the value is

4    zero.  Okay.  I've been asked to assume that it's not a

5    security.  And in that scenario -- if one of the other

6    creditors hasn't asked about it, I'm going to ask about it.

7    Do you have an opinion as to the value -- assuming it wasn't

8    the security, do you have an opinion as to the value -- I

9    guess it wouldn't really matter if it was a security or not

10   -- do you have an opinion as to the value of the CEL token

11   on the petition date?  You know, whatever the value is.  If

12   it was a security, the law arguably demands a different

13   result.

14          Let me stop there.  I wanted to make sure I got

15   out -- and look, if you all disagree with this sort of

16   mental gymnastics I've been going through trying to figure

17   out how am I supposed to deal with dissenting members of the

18   class.  And I do -- and look, and it may be that somebody is

19   going to try and persuade me this is not an issue of the

20   best interest test, this is an issue of the claims allowance

21   process.  It struck me not if the plan proposes the

22   following treatment and the plan is adopted, that pushes you

23   back to the best interest test.  I don't know the difference

24   -- okay.  Anything else you want to say?

25          MR. COLODNY:  No, Your Honor.

1          THE COURT:  Okay.  Does anybody else want to be

2     heard?

3          UNIDENTIFIED SPEAKER:  (indiscernible).

4          THE COURT:  Hold on.  We have somebody else in the

5     courtroom.  And then I will hear anybody on Zoom.  But let

6     me finish with the people in the courtroom.  Okay?  Go

7     ahead.

8          MS. SCHEUER:  Thank you, Your Honor.  Good

9     morning.  For the record, Therese Scheuer for the U.S.

10    Securities and Exchange Commission.  With me on the line

11    through Zoom is my colleague, Matthew Uptegrove, also from

12    the U.S. Securities and Exchange Commission.

13         As Your Honor may know, the SEC filed an action in

14    the U.S. District Court for the Southern District of New

15    York against both Celsius and Mr. Mashinsky alleging, among

16    other things, that the CEL token was offered and sold as a

17    security.  Celsius has consented to a final judgment against

18    it I the district court, but that action has been stayed

19    pending the outcome of a criminal case against Mr.

20    Mashinsky.

21         Given what's been discussed today, I'm not sure

22    that the Court needs to rule on whether CEL is or is not a

23    security.  But to the extent that Your Honor is inclined to

24    do so --

25         THE COURT:  I'm not inclined to do so.  Unless I

Page 24

1   have to.

2             MS. SCHEUER:  -- the SEC would request that such a

3   ruling be limited to the facts before the Court.

4             THE COURT:  It would be.

5             MS. SCHEUER:  Thank you.  And not without

6   preclusive effect outside these cases.

7             THE COURT:  I've already said I'm not -- as I've

8   gone through these mental gymnastics, it seemed to me I

9   didn't have to reach a result -- under some scenarios, I

10  don't have to reach a result of deciding whether it is or is

11  not a security.  Okay.  And at least my reading of Judge

12  Rakoff's decision and Judge Torres' decision, they differ.

13  Not that either one is necessarily the absolute answer as

14  applied to the CEL token, but nevertheless.  I have great

15  respect for both Judge Rakoff and Judge Torres.

16            Let me ask you.  My understanding -- and may be

17  wrong, correct me -- is that the Celsius, its agreement with

18  the SEC -- and this is one of the things I focused on -- and

19  you can tell me if I'm wrong -- Celsius did not agree as

20  part of its settlement with the SEC that the CEL token was a

21  security.  Am I right or wrong about that?

22            MS. SCHEUER:  Well, Your Honor, the consent is on

23  a no-deny basis.  I think that the Debtors have given their

24  view of what the language in that consent means.  At this

25  time, not taking a position on whether that is...

1           THE COURT:  Thank you.  Anything else you want to

2      say?

3           MS. SCHEUER:  No thank you, Your Honor.

4           THE COURT:  Thank you very much.  Anybody else in

5      the courtroom want to be heard?

6           All right.  I'll listen to anybody who wants to be

7      heard on Zoom.

8           MR. DAVIS:  Can I go first, Your Honor?  This is

9      Otis Davis.

10          THE COURT:  (indiscernible), Mr. Davis.

11          MR. DAVIS:  Yes.  Sorry about my appearance

12     earlier.  I did try to login, but I got kicked off.  But for

13     the record, this is Otis Davis.

14          THE COURT:  Yes.

15          MR. DAVIS:  Your Honor, the burden of proof is on

16     the debtors to show that CEL token is below 81 cents after

17     the petition date.  Aaron Colodny cannot answer the question

18     of what the CEL token price is on the petition date because

19     his expert (indiscernible) doesn't know the answer.  The

20     answer is 81 cents --

21          THE COURT:  No, it --

22          MR. DAVIS:  I am sure Aaron Colodny --

23          THE COURT:  Mr. Davis, the expert report hasn't

24     been admitted in evidence yet, and he's not testified.  But

25     my reading of the report is that the value of the CEL token

1    on the petition date is less than 81 cents.  He didn't say

2    what it was, he just said it was less than 81 cents.

3              MR. DAVIS:  It's interesting that he didn't say

4    what it was.  He cannot say what it was because he doesn't

5    have any evidence to prove what it was.

6              Anyway, Judge, I did file a motion at Docket

7    Number 3532.  And in that motion, you will see the evidence

8    that I provided that shows why the CEL token should be at 81

9    cents.  Specifically 15 million shorts being closed that

10   pushed the price back up to neutral.  All the evidence --

11             THE COURT:  Mr. Davis, Mr. Davis, I don't consider

12   the activity of shorts as establishing what the price for

13   bankruptcy purposes of the CEL token was on the petition

14   date.  So if that's the evidence you're relying on, good

15   luck.  Okay.  You'll be free to cross-examine any witnesses

16   who testify about the value of the CEL token, and I ought to

17   hear evidence I suppose about the activity relating to the

18   short.  But don't expect that the Court is going to rule

19   based on the short activity that the value was 81 cents.

20   The price on the petition date, if it was manipulated, does

21   not reflect the value of the CEL token on the petition date.

22             If you have a witness who is going to testify to

23   give an opinion on value, I'll certify listen to that.  It

24   will be subject to any objections or anything.  But if you

25   have a witness, I gave a deadline for anyone objecting to

Page 27

1    confirmation to submit written testimony supporting that

2    position.  And the reason I staggered whether -- you know,

3    all of the objections are important.  There are fewer

4    objections than I thought we would find ourselves in this

5    position now.  I thought it was important for all of those

6    who are objecting to be able to see the written direct

7    testimony of anyone testifying in support of confirmation.

8    And of course we'll have a chance during the cross-

9    examination to participate in the cross-examination of them.

10   And I staggered it so that you wouldn't actually have to

11   submit the written testimony in support until you knew what

12   it is that you were responding to.  Okay.  That's why the

13   separate dates for submitting evidence in support of,

14   evidence in opposition.

15             But if you have a witness who is going to testify

16   that the value of the CEL token based on the big short

17   reflects its actual value, you could put on that evidence.

18   I'll listen to it and I'll keep an open mind about it.

19             Anything else you want to add at this point?  So

20   the issue is not --

21             MR. DAVIS:  No, that's it.

22             THE COURT:  -- getting decided today, Mr. Davis.

23             MR. DAVIS:  Correct, Your Honor.  It's not getting

24   decided today.

25             THE COURT:  Okay.  Anything else you want to add?

Page 28

1    I'm happy to hear you.

2              MR. DAVIS:  I think I'm done.

3              THE COURT:  Okay.  Does anybody else on Zoom wish

4    to be heard today?

5              MR. ABREU:  Judge, Your Honor?  Artur Abreu.

6              THE COURT:  Yes, go ahead.  Just identify yourself

7    again.

8              MR. ABREU:  Yes.  Pro se creditor, Artur Abreu.

9    You can call me Arthur.  I just want to...

10             THE COURT:  Go ahead.

11             MR. ABREU:  I just want to add some points that

12   the Judge brought.

13             So I purchased CEL from (indiscernible) at five

14   dollars.  You are referring to the value (indiscernible) if

15   CEL is given to those people that had CEL, they can at least

16   start (indiscernible) at their point in time, which will be

17   I suppose much more beneficial than just getting I think 17

18   cents with the recovery.  The other point that you mentioned

19   is that anyone that had no voice in arguing against this

20   plan and why Celsius did business is that it was -- it makes

21   sense to have a small percentage in CEL of their holdings,

22   but never a full position.  So everyone is forced to vote

23   for the plan because in most cases, their holdings on other

24   creditors are superior to the total value of CEL.  So the

25   plan puts us against the world and effectually in my view

1    not equitable because some people did not have CEL, others

2    had.  But all the proceedings of CEL was used in a matter

3    that had no determination or no separation of investments

4    and earnings.  And you could say that some of the

5    proceedings that Celsius received from the value of CEL went

6    to pay -- so you are creating an issue that is not equitable

7    and that should be seen as well.

8              The other matter that you refer -- that there is

9    no value in CEL without Celsius.  It's not entirely true

10   because the ledger itself, the coins are just a database

11   value.  And you could use the total value to create another

12   project.  For example, all the current CEL holders.  So in

13   many crypto projects you have tokens that are equal to CEL.

14   Sometimes even the company or the initial promoter or

15   creator of this coin went to other things and part of the

16   community uses the digital, decentralized entry to then

17   distribute maybe another token at no cost for the user but

18   tries to add some value.  So this is just to highlight that

19   it's not entirely true.  There is no value without Celsius.

20   Celsius actually after the filing disappears.  So I could

21   argue that for me, CEL currently -- if Celsius just

22   (indiscernible) the entire supply does not pass any sort of

23   security concerns.

24             My issue here is not really the price.  Okay?  The

25   issue is that Celsius (indiscernible) blocked the

Page 30

1     withdrawals of CEL at the filing.  So you could not

2     liquidate.  And what was perceived by creditors varies

3     greatly in time.

4          So first, people believed that some of the

5     statements of the liquidity were correct.  And I had some

6     creditors approach me telling that they were still buying

7     CEL due to the misrepresentations of the company.

8     (indiscernible).  So people were actually still believing it

9     was (indiscernible) and they bought more CEL.  And now they

10    are -- they bought more CEL in the app so they are now stuck

11    with an investment being made on false pretexts.

12         You also have -- the UCC I think (indiscernible)

13    at some point say highlight that Celsius still had value I

14    think around September or November, the CEL token.  That all

15    I think had impact on how creditors could (indiscernible)

16    because they think, oh, they are trying to make a plan that

17    could have some value to CEL.  So all of those things affect

18    this.

19         But I think it would have been simple just to know

20    how much Celsius earned from selling CEL.  So how much did

21    actually creditors spend buying CEL at inflated prices.

22    Because I should (indiscernible) the 81 cents.  Okay?  It's

23    (indiscernible) the long and the short side of different

24    points in time.  So I think it would have been simple just

25    to (indiscernible) how much CEL -- Celsius received from the

Page 31

1      proceedings of selling CEL.  See that value, what is the

2      average cost.  And if not given a recovery, (indiscernible)

3      at least have a discrimination of the claims.  Because most

4      of the claims that (indiscernible) are following seems to

5      portray to CEL itself.  Yet they are giving a very well

6      recovery and are not being specific on, okay, so we are

7      going to receive a (indiscernible) for following the CEL

8      market manipulation from insiders and company itself, but we

9      are not giving that recovery to the people that got affected

10     the most by buying inflated prices of CEL from the company.

11     That's my point.  If anyone wants to argue something -- I

12     read the (indiscernible) filing.  It's -- there is a lot of

13     information that is taken out of context that I would like

14     to at least (indiscernible).  But that's my other point.

15             Go ahead, Judge.  Sorry for the delay.

16             THE COURT:  All right.  Thank you very much.  Mr.

17     Mendelson?

18             MR. MENDELSON:  Thank you, Judge.  Good to see you

19     again.  Erik Mendelson, pro se creditor.

20             The foundation, the building blocks as to why we

21     are in this mess is because of the CEL token.  I'm a little

22     bit concerned why we've been talking so much about price for

23     the last 41 minutes and not talking about why CEL is a

24     security.  So I'll give my opinion.

25             The SEC determines a security based on the Howey

Page 32

1   Test, which qualifies an investment contact subjecting asset

2   as under the securities law.  When investment contracts

3   exist, there is investment money in a common enterprise with

4   a reasonable expectation of profits.  The four elements of

5   the Howey Test -- and I know I'm probably talking to an echo

6   chamber because all of you understand this -- is, A, an

7   investment of money.  Clearly, every person that bought CEL

8   token invested their money.  I don't think that can be

9   disputed.

10          Two, in a common enterprise, that common

11   enterprise is the CEL token, AKA Celsius Network.

12          Three, there was an expectation of profit.  There

13   is not one person that bought CEL token with the expectation

14   of a donation or with the expectation of losing money.

15          And four, (indiscernible) the efforts of others

16   clearly as the Elementus opinion stated, Alex Mashinsky and

17   other members of Celsius executive team manipulated the

18   price of CEL token even before the sales squeeze.

19          All four elements of the Howey Test are met with

20   the CEL token.  And I therefore respectfully request that

21   you rule the CEL token as a security.  And I hope that your

22   ruling of CEL as a security does not affect the other

23   creditors that have already opted into the plan.  That's the

24   only reason why I have been going on record about this.  I

25   don't want other class members that have accepted the plan

Page 33

1    to be affected by it.  Unfortunately, if your ruling does

2    affect them, then so be it.  But I hope that your ruling of

3    CEL as a security affects those members that feel like CEL

4    is worth more than 25 cents.  And I thank you for your

5    (indiscernible).

6              THE COURT:  Thank you, Mr. Mendelson.

7              Mr. Abreu?

8              MR. KOENIG:  He was the gentleman that just spoke,

9    Your Honor, right before Mr. Mendelson.  That was Mr. Abreu.

10             THE COURT:  Oh, okay.  All right.  Thank you.  All

11   right.  Anybody else who hasn't spoken yet wish to be heard?

12             MR. IOVINE:  Hi, Your Honor.  This is Jason

13   Iovine, pro se creditor.

14             THE COURT:  Yes, Mr. Iovine.

15             MR. IOVINE:  One of the issues that I had, one is

16   that I believe CEL token should have been a separate

17   question on the ballots.  It would have had I believe a

18   different outcome.  We are tired and we did want to just get

19   over this.  But a lot of us do believe that it is being

20   undervalued.  And I would point out that there would have

21   been a big difference in the vote if it was just CEL token

22   being questioned.

23             And the other thing is with -- I don't know if

24   this is the right hearing or not, but within the plan, there

25   is no recovery in the litigation for CEL token holders.

Page 34

1    They were removed from that.  And this is with

2    (indiscernible) pleading guilty to manipulation.  And we're

3    going to be left out of a possible fraud recovery when we

4    were hurt twice now with Celsius and CEL token.  I don't

5    think that's right.  And I hope Your Honor sees that and

6    changes that or instructs them to look into it.  Thank you.

7              THE COURT:  Thank you, Mr. Iovine.  Anybody else

8    wish to be heard?

9              MR. KIRSANOV:  Your Honor, Dimitry Kirsanov, pro

10   se creditor.

11             MR. KIRSANOV:  I have a comment about residents of

12   Hawaii where (indiscernible) CEL token holders cannot

13   receive their CEL or any cryptocurrency token in kind

14   according to the plan and thus are entitled to cash.  I have

15   attempted to reach out to Kirkland and the UCC regarding

16   this matter, but I have yet to receive a response.

17             My question is what valuation would they be

18   provided in the first 90 days of distribution.  This is not

19   explained in the plan.  I understand that after the 90 days,

20   it utilizes the deactivation date value.  In the custody

21   settlement, there is some language that indicates the Debtor

22   is not able to satisfy in-kind, they utilize the petition

23   date values.  So I'm wondering what Hawaii residents

24   actually receive.  Thank you.

25             THE COURT:  Thank you.  That's really not relevant

Page 35

1    to the issue today.  But, Mr. Koenig, are you able to

2    respond at all?

3            MR. KOENIG:  Good morning again.  Chris Koenig.

4            Mr. Kirsanov, so what Mr. Kirsanov is referring to

5    is that in certain jurisdictions, we can't make crypto

6    distributions under securities laws.  And we're obviously

7    not going to violate securities laws.

8            He has an interesting point that I frankly had not

9    considered.  And I apologize if we haven't connected.  If

10   you want to email me, my email is in the signature block for

11   all of the Celsius filings.  It's Chris.Koenig@kirkland.com.

12   And I'm happy to speak after this.

13           His point is that the plan provides that custody

14   distributions would be made for 90 days.  And then after the

15   90 days, there is a conversion table that will convert

16   crypto into fiat.  I think his question is what happens in

17   the first 90 days before that conversion table is set.

18           I want to think about it more, but we should -- we

19   can certainly discuss after the hearing.  It's a fair point.

20           THE COURT:  You ought to try and discuss and see

21   whether there's a way of...

22           MR. KOENIG:  I think there's a pretty simple

23   solution, Your Honor.

24           MR. KIRSANOV:  Thank you.  I appreciate it.

25           MR. KOENIG:  Thank you.

Page 36

1         THE COURT:  Does anybody else wish to be heard.

2         MR. AMERSON:  Yes, Judge.  This is Jason Amerson,

3    pro se creditor.

4         THE COURT:  Yes.  Go ahead.

5         MR. AMERSON:  So a couple quick comments if you

6    will indulge, comments and observations on just long and

7    shorting in general.  I would like to point out that buying

8    and selling activity is not the only determination that

9    should be considered, Your Honor.  I mean, it

10   (indiscernible) White & Case is putting on that only the

11   longing or the buying activity should be considered

12   manipulation.  But price activity is a two-way street and it

13   always is.  So the notion that shorting activity shouldn't

14   be considered -- should not be considered as price

15   manipulation seems to be very complex.  And I would like to

16   point out that even today there is -- just this last week

17   there was a Barons article published that Tesla tops the

18   list for one of the most manipulated insurance stocks on the

19   market.  Now, I know we're talking about a security and not

20   a crypto.  But the same rules apply.  Every price of every

21   stock in crypto is determined (indiscernible).  You cannot

22   dismiss the shorting activity and only consider the longing

23   activity.  And besides, not -- in and of itself, there's

24   nothing wrong with that.  There's nothing illegal.  There's

25   nothing amoral.  It's simply people choosing to buy a

Page 37

1    security or a crypto for whatever reason, which is their

2    right.

3              THE COURT:  Mr. Amerson, the issue potentially for

4    the Court to have to resolve is what was the value of the

5    CEL token on the petition date.  Let's say that it has to be

6    whatever the value was with all shorting activity at that

7    time, which is something I don't fully grasp.  I'll listen

8    to the testimony when it comes in.  So we're not going to

9    resolve that today.

10             MR. AMERSON:  I understand that.  I understand

11   that.  But all I'm trying to say is that --

12             THE COURT:  Thank you, Mr. Amerson.

13             MR. AMERSON:  -- the manipulation goes on with

14   every stock in every cryptocurrency, every single day.

15             THE COURT:  Okay.  Does anybody else wish to be

16   heard who has not been heard already?  All right.  The Court

17   has another hearing in 11 minutes.  So we'll adjourn this.

18             Deanna, are we using the same Zoom connection for

19   the others?

20             CLERK:  It's not hybrid, so it's going to be a

21   separate login.

22             THE COURT:  Fine.  Okay.

23             MR. KOENIG:  Your Honor, just very briefly.  You

24   mentioned you want to say something about -- you mentioned

25   your order for next week and there was something you wanted

1    to say about it.

2              THE COURT:  Yes, I did.  Thank you.  And it's one

3    of the reasons I added to the order that got entered.  And I

4    inadvertently left out the U.S. Trustee who had requested an

5    opening statement.  So a corrective order has been filed.

6              MR. KOENIG:  Yes.

7              THE COURT:  But the end of the order -- this is

8    something I wanted to talk about, how to deal with exhibits.

9    Something was brought to my attention yesterday that

10   Kirkland was, because of the volume, was putting F...

11             MR. KOENIG:  FTP.

12             THE COURT:  FTP address, but was requiring that

13   only people who had filed a proof of claim could get access

14   to it.  Where do you get that from?

15             MR. KOENIG:  We understand the point, Your Honor.

16             THE COURT:  Let me make crystal clear, I don't

17   know how this is going to shake out with all the exhibits.

18   I do public trials.  If there's anything that somebody

19   wishes to seal or redact, they have to make a motion.  Okay.

20   I understand with a lot of exhibits, that can get

21   complicated.  I, as I think you know from the beginning of

22   this case when I refused to redact a lot of information, I

23   am pretty much a stickler for public trials, public filings.

24   Everybody has access to it.  So what I would ask you to do,

25   talk with Mr. Colodny and your colleagues.  Come up with

1    another plan.  We're not going to have a system where only

2    creditors who signed a non-disclosure agreement and who have

3    had a proof of claim are going to get access to exhibits.

4    This is a public trial.

5              MR. KOENIG:  Understood.

6              THE COURT:  That's what I wanted to talk about.

7              MR. KOENIG:  Understood.  I have two very narrow

8    points there.  One is a number of our exhibits include

9    personally identifiable information that has been sealed.

10   We can redact those.

11             THE COURT:  Okay.  Redact.

12             MR. KOENIG:  And we have a very narrow -- we will

13   file a sealing motion of -- we have -- as part of the trial

14   -- I'm sorry.

15             THE COURT:  Personally identifiable information is

16   frankly a no-brainer as far as I am concerned.

17             MR. KOENIG:  Right.

18             THE COURT:  But redaction is the answer.

19             MR. KOENIG:  Right.  We will do that.  And the

20   other item is as part of our case-in-chief, we value the

21   illiquid assets.  The illiquid assets include litigations

22   against counterparties.  If the counterparty were to see

23   where we marked that litigation, that could harm the company

24   competitively.  So we will file a sealing motion for it

25   after --

Page 40

1            THE COURT:  You have to file a sealing motion.

2            MR. KOENIG:  We will of course -- I just wanted to

3     bring it to your attention.

4            THE COURT:  That was what -- I reacted when -- one

5     of my law clerks brought it to my attention that you had

6     filed something or put something that people had to -- only

7     people with proofs of claim, and they have to agree to a

8     non-disclosure agreement.  That's not how we conduct trials.

9            MR. KOENIG:  Understand.  We will redact

10    personally-identifiable information.  We will redact,

11    consistent with the sealing motion that we will file.

12    Because I just don't want the counterparty to see what we

13    marked the litigation at, which we will explain in the

14    sealing motion, Your Honor.

15            THE COURT:  That's fine.  I think...

16            MR. KOENIG:  Okay.  So we understand Monday will

17    be opening statements.

18            THE COURT:  Yes.

19            MR. KOENIG:  Tuesday we'll start the evidence.

20            THE COURT:  Yes.  Tuesday.  And also -- the only

21    reason I did that is I think we'll comfortably get the

22    opening statements done on Monday.  Because of the judicial

23    conference policy on access to court hearings, remote access

24    to court hearings once the evidence starts, the public and

25    the press can only be in the courthouse to hear it.  I don't

1   know how many are going to show up.  We'll have overflow

2   available to the extent we need it.  There is video into the

3   overflow rooms.  So that was one of the reasons I separated

4   out the evidence from opening statements.

5           Let me think.  I don't think there's anything else

6   that I want to raise specifically about the trial.

7           Just I will alert you all I should be back here by

8   -- I teach Monday morning and then I have another

9   commitment.  I should be back by exactly two or a few

10  minutes late.  We'll comfortably get everything done that is

11  going to get done on Monday.

12          MR. KOENIG:  Okay.  The only other question I had,

13  Your Honor, is if there is a government shutdown, I see that

14  that does not affect anything.  But I had to ask the

15  question.

16          THE COURT:  The court remains open.  We're

17  committed going -- look, the problem is not for this trial.

18  I have other things.  I can't -- you know, there's a lot of

19  days set aside for this.  I don't know whether we need all

20  of them.  We'll see.  November, I've got a 20-day trial.

21  I'm scheduling other matters for 5:00 in the afternoon

22  because I've got to keep up with a calendar.  That means

23  overtime for staff.

24          The federal courts have from filing fees money

25  available to keep us going for some time, whether judges and

Page 42

1    clerks and everybody gets paid or not, we'll keep going.  So

2    yes, we're going forward.

3                MR. KOENIG:  Okay.  That's what I thought.  I just

4    wanted to hear it from you.  Okay.  We will see you next

5    week.

6                THE COURT:  We'll see you next week.

7                MR. KOENIG:  Thank you, Your Honor.

8                THE COURT:  Okay.

9                (Whereupon these proceedings were concluded at

10   10:55 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7   *[signature]*

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  September 29, 2023

| & | 3 | | access 38:13,24 |
|---|---|---|---|

**&**

**&** 3:3 6:6
14:15 36:10

**1**

**100** 3:19
**10004** 1:14
**10:01** 1:17
**10:55** 42:10
**11** 6:11 8:5,18
12:7,10 37:17
**11501** 43:23
**12151** 43:7
**15** 26:9
**17** 28:17

**2**

**2.4** 6:24
**20** 11:10 21:10
41:20
**2023** 1:16
43:25
**20549** 3:20
**22-10964** 1:3
6:3
**25** 6:12 9:3,25
10:4,17,19
11:10,24 13:4
13:10 15:16
16:4 17:12,17
19:13,16,20,23
19:25 33:4
**2700** 3:5
**28** 1:16 21:11
**29** 43:25

**3**

**30** 12:9
**300** 3:12 43:22
**330** 43:21
**3356** 2:3
**3360** 2:3
**3412** 2:3
**3431** 2:3
**3432** 2:3
**3433** 2:3
**3436** 2:3
**3476** 2:3
**3528** 2:4
**3532** 26:7
**37,000** 7:11

**4**

**4.2** 6:25
**41** 31:23
**482** 7:12

**5**

**510** 10:23 18:6
22:3
**555** 3:5
**5:00** 41:21

**6**

**60654** 3:13

**7**

**7** 9:13 11:19
12:5,11 16:3
17:17 20:10
**75** 19:8

**8**

**80** 19:7
**81** 10:13 11:6
11:11,12,16

14:19,20 15:4
15:11,13,22
16:2,2,12,16
19:7 25:16,20
26:1,2,8,19
30:22

**9**

**90** 34:18,19
35:14,15,17
**90071** 3:6
**9019** 8:14,17
8:23,25
**96** 7:5 19:16
20:4
**98** 7:4 19:20,22
19:24 20:1
**98.71** 7:12
**99** 7:2

**a**

**aaron** 3:8
14:14 25:17,22
**able** 27:6 34:22
35:1
**abreu** 4:1 28:5
28:5,8,8,11
33:7,9
**absolute** 24:13
**absolutely** 11:2
**accept** 6:22 7:3
19:16 20:5
**acceptance**
7:12
**accepted** 7:15
8:3 32:25
**accepting** 9:7
9:11

**access** 38:13,24
39:3 40:23,23
**accountholder**
6:22 7:4
**accurate** 19:5
19:7 43:4
**acknowledgi...**
20:12
**action** 23:13,18
**activity** 26:12
26:17,19 36:8
36:11,12,13,22
36:23 37:6
**actual** 27:17
**actually** 12:12
27:10 29:20
30:8,21 34:24
**add** 27:19,25
28:11 29:18
**added** 38:3
**addition** 15:15
**address** 9:20
38:12
**addressed**
20:25
**adjourn** 37:17
**admitted** 25:24
**admittedly**
12:3
**adopted** 22:22
**advance** 14:8
**advised** 22:3
**affect** 30:17
32:22 33:2
41:14
**affected** 19:15
31:9 33:1

**affects** 33:3
**afternoon** 41:21
**ago** 21:1,4,5
**agree** 8:22 9:1 24:19 40:7
**agreed** 8:15,23
**agreement** 24:17 39:2 40:8
**agreements** 7:18
**ahead** 23:7 28:6,10 31:15 36:4
**aka** 32:11
**alert** 41:7
**alex** 32:16
**alleging** 23:15
**allowance** 22:20
**alluded** 20:25
**amerson** 36:2 36:2,5 37:3,10 37:12,13
**amoral** 36:25
**amount** 6:25 7:2,5,7 19:15 21:19
**analysis** 9:14 9:20 10:5,6,15 17:11
**andrew** 4:13 5:2
**angeles** 3:6
**answer** 14:13 16:10,21 17:5

18:3 24:13 25:17,19,20 39:18
**anxious** 18:8
**anybody** 13:14 21:17 23:1,5 25:4,6 28:3 33:11 34:7 36:1 37:15
**anymore** 18:25
**anyway** 26:6
**apologize** 35:9
**app** 30:10
**appearance** 25:11
**appellate** 13:8 14:1
**applied** 24:14
**apply** 10:3 36:20
**appreciate** 13:17 14:2 21:20 35:24
**approach** 30:6
**approve** 21:18 21:19
**approved** 8:4
**aren't** 17:12
**arguably** 22:12
**argue** 10:17 29:21 31:11
**arguing** 28:19
**argument** 6:9
**arguments** 14:24 17:24
**armand** 4:8

**arthur** 28:9
**article** 36:17
**artur** 4:1 28:5 28:8
**aside** 41:19
**asked** 6:14 16:7,19 22:2,4 22:6
**asking** 14:4 16:25
**asks** 14:11
**asset** 32:1
**assets** 39:21,21
**assume** 10:16 14:23 15:3,4 15:10 16:1 19:6 21:18 22:2,4
**assuming** 11:1 16:2 22:1,3,7
**assumption** 15:3
**attempted** 34:15
**attention** 38:9 40:3,5
**attorneys** 3:4 3:11,18
**available** 41:2 41:25
**average** 31:2

**b**

**b** 1:21 18:6
**back** 9:16 15:18 16:3,5 21:4 22:23 26:10 41:7,9

**ballots** 7:9,12 33:17
**bankruptcy** 1:1,12,23 8:25 13:21 26:13
**barons** 36:17
**based** 11:23 13:3 26:19 27:16 31:25
**basically** 11:22
**basis** 24:23
**bear** 7:22
**beginning** 21:8 38:21
**behalf** 14:15
**believe** 7:13 10:7,12 11:9 21:12 33:16,17 33:19
**believed** 30:4
**believing** 30:8
**beneficial** 28:17
**best** 9:11 10:5 10:6 11:18 12:9 15:8,13 15:21 16:5 17:14 20:11,13 22:20,23
**better** 17:5
**big** 27:16 33:21
**billion** 6:24 7:1
**bind** 8:14 20:1
**bit** 7:7 12:12 31:22
**block** 35:10

blocked  29:25
blocks  31:20
bought  30:9,10
  32:7,13
bound  8:23
  17:12
bowling  1:13
brainer  39:16
break  21:22
brief  9:17
  12:13,14
briefly  37:23
briefs  14:5
  20:8
bring  40:3
brought  7:6
  28:12 38:9
  40:5
building  31:20
bunch  17:13
burden  10:6,8
  12:6,18 20:12
  20:13 25:15
business  18:21
  18:24 28:20
buy  36:25
buying  30:6,21
  31:10 36:7,11

**c**

c  3:1 6:1 12:25
  43:1,1
ca  3:6
caitlin  4:19
calculation
  21:12
calculations
  7:10

calendar  41:22
call  28:9
candid  6:19
can't  18:21
  20:1,6 35:5
  41:18
capital  12:25
carefully  17:10
caroline  4:25
carry  11:1
case  1:3 3:3 6:7
  9:21 14:15
  21:4 23:19
  36:10 38:22
  39:20
cases  7:21
  12:24 24:6
  28:23
cash  34:14
ceased  18:14
cel  2:1,2 6:9,10
  6:12,13 7:8,9
  7:11,14,14,15
  7:20 8:2,4 9:3
  9:6,19,22,25
  10:11,17,18,21
  11:19,20,24
  12:8,25 13:4
  13:18 14:12,18
  14:22 15:5,6
  15:12,16 16:1
  16:9,13,20
  17:1,8,25 18:2
  18:15,15,17
  19:21,25 21:3
  21:22 22:10
  23:16,22 24:14

24:20 25:16,18
  25:25 26:8,13
  26:16,21 27:16
  28:13,15,15,21
  28:24 29:1,2,5
  29:9,12,13,21
  30:1,7,9,10,14
  30:17,20,21,25
  31:1,5,7,10,21
  31:23 32:7,11
  32:13,18,20,21
  32:22 33:3,3
  33:16,21,25
  34:4,12,13
  37:5
celsius  1:7 6:3
  18:14,17 23:15
  23:17 24:17,19
  28:20 29:5,9
  29:19,20,21,25
  30:13,20,25
  32:11,17 34:4
  35:11
celsius'  18:24
cent  16:4
cents  6:12 9:3
  9:25 10:4,13
  10:17,19 11:6
  11:10,10,16,25
  12:9 13:5,11
  14:19,20 15:4
  15:11,13,16,22
  16:2,2,12,16
  17:12,17 19:7
  19:20,23,25
  21:10,11 25:16
  25:20 26:1,2,9

26:19 28:18
  30:22 33:4
certain  35:5
certainly  14:3
  21:25 35:19
certified  43:3
certify  26:23
challenging
  8:17 12:4
chamber  32:6
chance  27:8
changes  34:6
chapman  4:9
chapter  6:11
  8:5,18 9:13
  11:19 12:5,7
  12:10,11 16:3
  17:17 20:10
chicago  3:13
chief  39:20
choosing  36:25
chris  6:6 35:3
chris.koenig
  35:11
christopher
  3:15 4:10
claim  9:23 16:2
  38:13 39:3
  40:7
claims  9:24
  10:2 15:12
  18:7 22:20
  31:3,4
class  6:23,24
  7:6,11 9:5,11
  10:16 20:2
  21:21 22:18

32:25

**classes** 6:22 7:4
9:7,7 17:13

**clear** 38:16

**clearly** 32:7,16

**clerk** 37:20

**clerks** 40:5
42:1

**closed** 26:9

**coco** 4:10

**coin** 29:15

**coins** 29:10

**colleague**
23:11

**colleagues**
38:25

**colodny** 3:8
11:9 14:9,14
14:14 15:1,8
15:25 16:11,17
16:22 17:3,6
17:18,22 18:11
18:13,22 19:2
19:9,12,19,24
20:3,15,18,20
21:2,11,14,24
22:25 25:17,22
38:25

**come** 15:2
38:25

**comes** 37:8

**comfortably**
40:21 41:10

**comment**
34:11

**comments** 36:5
36:6

**commission**
3:17 23:10,12

**commitment**
41:9

**committed**
41:17

**committee** 3:4
10:10 14:15
20:13

**committee's**
11:8

**commodity**
18:24

**common** 32:3
32:10,10

**community**
29:16

**company** 18:20
29:14 30:7
31:8,10 39:23

**competitively**
39:24

**completely**
15:21,24

**complex** 36:15

**complicated**
38:21

**concerned**
31:22 39:16

**concerns** 29:23

**conclude** 10:18

**concluded** 42:9

**concludes** 13:4
13:10

**conclusions**
12:22 13:1

**conduct** 40:8

**conference** 6:8
7:17 40:23

**confirmation**
8:5 12:19 16:8
27:1,7

**connected** 35:9

**connection**
37:18

**consent** 24:22
24:24

**consented**
23:17

**consider** 14:8
26:11 36:22

**considered**
35:9 36:9,11
36:14,14

**consistent**
40:11

**contact** 32:1

**contested** 9:24
14:1

**context** 31:13

**continued** 7:8

**contracts** 32:2

**contrast** 7:25

**conversion**
35:15,17

**convert** 35:15

**correct** 9:3
14:17 15:1
16:17 18:13,22
19:2,19,20
20:15 24:17
27:23 30:5

**corrective** 38:5

**cost** 29:17 31:2

**counterparties**
39:22

**counterparty**
6:15 39:22
40:12

**country** 43:21

**couple** 6:21 8:9
36:5

**course** 11:3
27:8 40:2

**court** 1:1,12
6:2 8:9,11,14
8:19,22 9:2,5,9
9:16 10:9,15
10:18 11:4,12
11:16,22,23
12:13,20 13:3
13:10,23 14:4
14:9,11,23
15:2,19 16:7
16:10,14,18,24
17:5,9,19 18:8
18:12,18,23
19:6,10,17,22
20:1,6,16,19
20:21 21:9,13
21:15,25 23:1
23:4,14,18,22
23:25 24:3,4,7
25:1,4,10,14
25:21,23 26:11
26:18 27:22,25
28:3,6,10
31:16 33:6,10
33:14 34:7,25

[court - dissenting]

35:20 36:1,4
37:3,4,12,15
37:16,22 38:2
38:7,12,16
39:6,11,15,18
40:1,4,15,18
40:20,23,24
41:16,16 42:6
42:8
**courthouse**
40:25
**courtroom**
13:14 23:5,6
25:5
**courts** 41:24
**create** 29:11
**creating** 29:6
**creator** 29:15
**creditor** 14:11
16:3 28:8
31:19 33:13
34:10 36:3
**creditors** 3:4
6:17,24 7:1 8:6
8:7 12:5,7
14:10,16 20:4
20:9 22:6
28:24 30:2,6
30:15,21 32:23
39:2
**criminal** 23:19
**cross** 16:19
26:15 27:8,9
**crypto** 12:25
13:1 29:13
35:5,16 36:20
36:21 37:1

**cryptocurrency**
34:13 37:14
**crystal** 38:16
**current** 29:12
**currently**
29:21
**custody** 34:20
35:13

**d**

**d** 4:22 6:1
**d.c.** 3:20
**database** 29:10
**date** 14:13,21
15:6,22 16:10
16:20 17:2
18:14 22:11
25:17,18 26:1
26:14,20,21
34:20,23 37:5
43:25
**dates** 27:13
**david** 4:24
**davis** 3:24 7:24
25:8,9,10,11
25:13,15,22,23
26:3,11,11
27:21,22,23
28:2
**day** 37:14
41:20
**days** 34:18,19
35:14,15,17
41:19
**deactivation**
34:20
**deadline** 26:25

**deal** 9:22 13:13
20:23,23 21:19
22:17 38:8
**dealing** 12:15
12:16
**deals** 12:14
**dean** 4:9
**deanna** 37:18
**debt** 18:2
**debtor** 1:9 3:11
10:7 34:21
**debtors** 6:6
10:7 15:12
24:23 25:16
**debtor's** 20:12
**decentralized**
29:16
**decide** 13:7,8
18:9
**decided** 27:22
27:24
**deciding** 24:10
**decision** 12:23
12:24 13:20
24:12,12
**delay** 31:15
**demands** 22:12
**demonstrate**
12:19
**deny** 24:23
**depending**
12:3
**derived** 10:12
**determination**
29:3 36:8
**determined**
36:21

**determines**
31:25
**didn't** 9:21
12:13,16 14:5
15:19,20 16:14
17:11 19:17
24:9 26:1,3
**differ** 24:12
**difference**
22:23 33:21
**different** 12:24
12:25 13:1,1
15:9 17:13,24
22:12 30:23
33:18
**difiore** 4:11
**digital** 29:16
**diluted** 20:4
**dimitry** 34:9
**direct** 27:6
**disagree** 22:15
**disappears**
29:20
**disclosed** 7:17
**disclosure** 6:14
39:2 40:8
**discovery** 7:17
**discrimination**
31:3
**discuss** 35:19
35:20
**discussed**
23:21
**dismiss** 36:22
**disputed** 32:9
**dissenting** 8:7
9:10 10:16

17:13 20:2,9
21:20 22:17
**distribute**
29:17
**distribution**
34:18
**distributions**
12:10,11 35:6
35:14
**district** 1:2
23:14,14,18
**doc** 2:3
**docket** 26:6
**doesn't** 9:19
10:3,12,13
13:25 18:24
25:19 26:4
**dollar** 6:24 7:2
7:5,6
**dollars** 9:25
16:4 28:14
**donation** 32:14
**don't** 11:9
12:15 13:5,9
13:11 19:18
21:13,18 22:23
24:10 26:11,18
32:8,25 33:23
34:4 37:7
38:16 40:12,25
41:5,19
**dozens** 7:25
**dragged** 8:7
**drawn** 14:1
**due** 30:7
**duffy** 4:12

**e**

**e** 1:21,21 3:1,1
6:1,1 12:25
43:1
**earlier** 25:12
**earn** 6:23 7:1
**earned** 30:20
**earnings** 29:4
**echo** 32:5
**ecro** 1:25
**effect** 24:6
**effectually**
28:25
**efforts** 32:15
**eight** 9:25
**either** 24:13
**elements** 32:4
32:19
**elementus**
32:16
**elizabeth** 4:22
**ellips** 3:10
**ellis** 6:6
**email** 35:10,10
**entered** 20:21
20:25 38:3
**enterprise** 32:3
32:10,11
**entire** 9:17
29:22
**entirely** 29:9
29:19
**entitled** 6:22
11:2 34:14
**entry** 29:16
**envision** 22:1

**equal** 11:24
29:13
**equitable** 29:1
29:6
**equity** 18:3,3
**erik** 4:3 31:19
**error** 12:12
**establish** 20:13
**establishing**
26:12
**event** 2:2 6:10
**everybody** 6:2
8:11 15:18
38:24 42:1
**evidence** 10:8
10:14 11:23
13:3,9 15:5
19:10 20:22
25:24 26:5,7
26:10,14,17
27:13,14,17
40:19,24 41:4
**exactly** 41:9
**examination**
16:19 27:9,9
**examine** 26:15
**examined** 7:9
**example** 29:12
**exceed** 10:19
**exceeded** 6:19
**except** 7:5
**exchange** 3:17
18:19 23:10,12
**excuse** 19:3
**executive**
32:17

**exhibits** 38:8
38:17,20 39:3
39:8
**exist** 18:14,25
32:3
**expect** 22:1
26:18
**expectation**
32:4,12,13,14
**expectations**
6:20
**expensive** 14:1
**expert** 10:10
10:12 11:5,10
11:14 14:18
16:7 17:7
25:19,23
**experts** 11:9
**expert's** 16:11
**explain** 40:13
**explained**
34:19
**extent** 2:2 9:10
23:23 41:2

**f**

**f** 1:21 3:19
4:20 38:10
43:1
**fact** 21:20
**facts** 24:3
**fair** 35:19
**fall** 10:5
**false** 30:11
**far** 11:6 14:6
39:16
**favor** 19:24

| | | | |
|---|---|---|---|
| **federal** 41:24 | **follow** 15:21 | **giving** 15:18 | **guidance** 14:2 |
| **feedback** 14:7 | **followed** 17:16 | 31:5,9 | **guilty** 34:2 |
| **feel** 33:3 | **following** | **glenn** 1:22 | **gymnastics** |
| **feener** 4:13 | 22:22 31:4,7 | **go** 8:19 12:7 | 22:16 24:8 |
| **fees** 41:24 | **forced** 28:22 | 23:6 25:8 28:6 | |
| **fewer** 27:3 | **foregoing** 43:3 | 28:10 31:15 | **h** |
| **fiat** 35:16 | **foremost** 13:22 | 36:4 | **hadn't** 15:20 |
| **figure** 22:16 | **formal** 7:18,23 | **goes** 37:13 | **happens** 35:16 |
| **file** 8:16 26:6 | **forth** 9:16 | **going** 6:16,16 | **happy** 28:1 |
| 39:13,24 40:1 | **forward** 11:1 | 11:5 12:20 | 35:12 |
| 40:11 | 42:2 | 14:13 16:10,20 | **haqqani** 4:14 |
| **filed** 6:18 7:23 | **found** 15:15 | 16:25 18:20 | **harm** 39:23 |
| 9:24 23:13 | **foundation** | 19:10 20:16,17 | **harrison** 5:5 |
| 38:5,13 40:6 | 31:20 | 20:23 21:5,19 | **hasn't** 22:6 |
| **filing** 29:20 | **four** 17:24 32:4 | 22:6,16,19 | 25:23 33:11 |
| 30:1 31:12 | 32:15,19 | 26:18,22 27:15 | **haven't** 9:17 |
| 41:24 | **fourth** 19:3 | 31:7 32:24 | 10:14 13:13 |
| **filings** 35:11 | **frankly** 35:8 | 34:3 35:7 37:8 | 20:7 35:9 |
| 38:23 | 39:16 | 37:20 38:17 | **hawaii** 34:12 |
| **final** 23:17 | **fraud** 34:3 | 39:1,3 41:1,11 | 34:23 |
| **find** 11:23 | **free** 26:15 | 41:17,25 42:1 | **head** 17:11 |
| 14:23 15:4 | **ftp** 38:11,12 | 42:2 | 19:12 |
| 17:5 19:6 20:6 | **full** 28:22 | **good** 6:2,4,5 | **hear** 11:5 |
| 27:4 | **fully** 37:7 | 23:8 26:14 | 19:10 23:5 |
| **finding** 10:20 | | 31:18 35:3 | 26:17 28:1 |
| 15:4 | **g** | **gorrepati** 5:4 | 40:25 42:4 |
| **fine** 37:22 | **g** 6:1 | **government** | **heard** 23:2 |
| 40:15 | **general** 36:7 | 41:13 | 25:5,7 28:4 |
| **finish** 23:6 | **generally** 12:6 | **grasp** 37:7 | 33:11 34:8 |
| **first** 13:21 18:2 | **gentleman** | **great** 24:14 | 36:1 37:16,16 |
| 25:8 30:4 | 33:8 | **greatly** 30:3 | **hearing** 2:1,1 |
| 34:18 35:17 | **getting** 17:16 | **green** 1:13 | 6:14 16:8 |
| **five** 16:3 28:13 | 27:22,23 28:17 | **gregory** 4:20 | 21:17 33:24 |
| **flower** 3:5 | **give** 15:17 | **guess** 18:8 | 35:19 37:17 |
| **focused** 24:18 | 26:23 31:24 | 20:20 21:2 | **hearings** 40:23 |
| **folks** 13:20 | **given** 11:20 | 22:9 | 40:24 |
| | 23:21 24:23 | | **heart** 6:7 |
| | 28:15 31:2 | | |

heavily 21:6
helpful 14:7
hershey 4:15
he's 16:18,24
  25:24
hi 33:12
high 12:11
higher 11:19
  12:4
highlight 29:18
  30:13
hill 5:6
history 21:7
hit 19:12
hold 23:4
holder 19:21
holders 6:11
  7:9,10,11,15
  7:15,20 9:3,6
  11:20 17:25
  29:12 33:25
  34:12
holdings 28:21
  28:23
holds 7:3 18:17
hon 1:22
honor 6:5,7,8
  6:17 8:1 9:4,15
  11:8,17 13:16
  14:8,14 15:15
  16:1,23 17:4,6
  17:7,18,22
  19:4,12 20:3
  20:18,20 21:2
  21:14,24 22:25
  23:8,13,23
  24:22 25:3,8

25:15 27:23
28:5 33:9,12
34:5,9 35:23
36:9 37:23
38:15 40:14
41:13 42:7
hope 32:21
  33:2 34:5
hopes 6:20
howey 31:25
  32:5,19
hundred 15:18
  21:23
hurt 34:4
hybrid 2:1
  37:20
hyde 2:25 43:3
  43:8

**i**

identifiable
  39:9,15 40:10
identify 28:6
il 3:13
illegal 36:24
illiquid 39:21
  39:21
impact 30:15
important 27:3
  27:5
inadvertently
  38:4
inclined 23:23
  23:25
include 39:8,21
includes 6:11
indicates 34:21

indication 19:5
indictment
  14:24
indiscernible
  7:19 13:7
  15:17 21:9,11
  21:12,13,23
  23:3 25:10,19
  28:13,14,16
  29:22,25 30:8
  30:9,12,15,22
  30:23,25 31:2
  31:4,7,12,14
  32:15 33:5
  34:2,12 36:10
  36:21
indulge 36:6
inflated 30:21
  31:10
information
  31:13 38:22
  39:9,15 40:10
inherent 18:16
initial 29:14
initially 6:8
insiders 31:8
insolvent 18:18
instructs 34:6
instrument
  18:3
insurance
  36:18
intended 7:14
interest 9:12
  10:5,6 11:18
  12:9 15:9,13
  15:21 16:5

17:14 20:11,14
22:20,23
interested
  11:13 13:20
interesting
  26:3 35:8
invested 32:8
investment
  30:11 32:1,2,3
  32:7
investments
  29:3
iovine 4:5
  33:12,13,14,15
  34:7
issue 7:21 9:9
  9:22 12:14,21
  13:5,7,8,8,11
  14:20 19:13
  20:8,9,24
  22:19,20 27:20
  29:6,24,25
  35:1 37:3
issues 2:1 6:9
  10:22 13:8
  22:3 33:15
item 39:20
it's 10:12,22,23
  10:23,24 11:6
  11:8,10,11,12
  11:16 13:6,8
  13:11 16:16
  17:20,20 18:3
  18:5,9,23,24
  19:6,13 20:12
  21:3 22:2,4
  26:3 27:23

29:9 30:22
31:12 35:11,19
36:25 37:20,20
38:2
**i'll** 11:9 17:6
21:16 25:6
26:23 27:18,18
31:24 37:7
**i'm** 6:17 10:20
10:20 11:4,5
13:7,12 14:4,4
15:23 16:22,24
16:25 17:3
18:8 20:7
21:16 22:6
23:21,25 24:7
24:19 28:1,2
31:21 32:5
34:23 35:12
37:11 39:14
41:21
**i've** 11:6 12:22
14:5 22:1,2,4
22:16 24:7,7
41:20,22

**j**

**j** 4:10
**jasmine** 4:8
**jason** 4:5 33:12
36:2
**jeffrey** 4:16
**jeremy** 5:6
**join** 12:16
17:11 19:17
**jonathan** 1:25
**judge** 1:23
12:23,23 21:18

24:11,12,15,15
26:6 28:5,12
31:15,18 36:2
**judges** 41:25
**judgment**
23:17
**judicial** 40:22
**jurisdictions**
35:5

**k**

**keep** 27:18
41:22,25 42:1
**keith** 4:18 5:1
**kicked** 25:12
**kind** 10:2
34:13,22
**kirkland** 3:10
6:6 34:15
38:10
**kirkland.com.**
35:11
**kirsanov** 34:9
34:9,11 35:4,4
35:24
**knew** 27:11
**know** 6:7 9:24
12:15,23 13:19
15:22 17:9
20:2 21:25
22:11,23 23:13
25:19 27:2
30:19 32:5
33:23 36:19
38:17,21 41:1
41:18,19
**koenig** 3:15 6:4
6:5,6 8:10,13

8:16,21,25 9:4
9:8,15 10:7
11:3,8,15,17
12:2,18 13:16
13:24 14:7
15:10 33:8
35:1,3,3,22,25
37:23 38:6,11
38:15 39:5,7
39:12,17,19
40:2,9,16,19
41:12 42:3,7
**kramer** 4:16

**l**

**l** 12:25
**lack** 7:22
**language** 24:24
34:21
**large** 6:23 7:6
7:20
**largest** 6:24
**lasalle** 3:12
**late** 41:10
**law** 22:12 32:2
40:5
**laws** 35:6,7
**lawyer** 12:3
**lead** 13:25
**ledanski** 2:25
43:3,8
**ledger** 29:10
**left** 34:3 38:4
**legal** 2:1 6:9
43:20
**legge** 5:7
**lending** 18:19

**lengthy** 13:18
**letter** 7:24
**letters** 7:25
**let's** 14:23 15:3
15:4 19:6,8
21:18 37:5
**level** 7:8
**limited** 24:3
**lindsay** 4:9
**line** 23:10
**liquidate** 30:2
**liquidation**
9:13 11:19
15:11 16:3
20:10
**liquidity** 30:5
**list** 36:18
**listen** 21:16
25:6 26:23
27:18 37:7
**litigating** 7:20
**litigation** 33:25
39:23 40:13
**litigations**
39:21
**little** 12:12
21:1 31:21
**llc** 1:7
**llp** 3:3,10
**login** 25:12
37:21
**lombardi** 4:17
**long** 12:4 30:23
36:6
**longing** 36:11
36:22

| look 9:18 12:21 | mark 4:21 | michael 4:23 | ne 3:19 |
| 16:15 21:4,5 | marked 39:23 | mike 5:7 | necessarily |
| 21:22 22:15,18 | 40:13 | million 26:9 | 24:13 |
| 34:6 41:17 | market 19:3,3 | mind 9:17 10:3 | need 13:6 41:2 |
| looked 9:19 | 19:4,20 31:8 | 10:15 20:8 | 41:19 |
| 10:10 11:12 | 36:19 | 27:18 | needs 23:22 |
| 14:5 17:10 | martin 1:22 | mineola 43:23 | network 1:7 |
| looking 14:4 | mashinsky | minutes 31:23 | 32:11 |
| loops 17:15 | 14:25 23:15,20 | 37:17 41:10 | neutral 26:10 |
| los 3:6 | 32:16 | mira 4:14 | never 28:22 |
| losing 32:14 | math 12:3,3,8 | misrepresent... | nevertheless |
| lot 13:19 31:12 | matter 1:5 | 30:7 | 24:14 |
| 33:19 38:20,22 | 9:24 13:25 | missed 10:11 | new 1:2,14 |
| 41:18 | 22:9 29:2,8 | 11:7 | 23:14 |
| loud 10:21 | 34:16 | monday 6:18 | nicholas 4:17 |
| luck 26:15 | matters 41:21 | 20:19 40:16,22 | night 9:18 |
| **m** | matthew 23:11 | 41:8,11 | non 8:14 39:2 |
| | mean 13:17 | money 32:3,7,8 | 40:8 |
| made 10:14 | 21:25 36:9 | 32:14 41:24 | north 3:12 |
| 30:11 35:14 | means 24:24 | month 21:4 | notion 36:13 |
| make 10:15 | 41:22 | months 21:4 | november |
| 21:15 22:14 | members 9:10 | morning 6:2,4 | 30:14 41:20 |
| 30:16 35:5 | 10:16 17:13 | 6:5 20:22,22 | noyes 4:18 |
| 38:16,19 | 20:2 21:20 | 23:9 35:3 41:8 | number 6:7 |
| makes 28:20 | 22:17 32:17,25 | motion 8:17 | 7:2,5,13 9:6 |
| making 15:3 | 33:3 | 26:6,7 38:19 | 10:1 15:9 26:7 |
| manipulate | mendelson 4:3 | 39:13,24 40:1 | 39:8 |
| 19:1 | 31:17,18,19 | 40:11,14 | numbers 6:21 |
| manipulated | 33:6,9 | multiple 17:15 | ny 1:14 43:23 |
| 21:6 26:20 | mental 22:16 | **n** | **o** |
| 32:17 36:18 | 24:8 | | |
| manipulation | mentioned | n 3:1 6:1 43:1 | o 1:21 6:1 43:1 |
| 14:22,24 21:3 | 28:18 37:24,24 | nail 19:12 | o'connell 4:19 |
| 21:5 31:8 34:2 | mess 31:21 | narrow 39:7 | object 9:10 |
| 36:12,15 37:13 | met 32:19 | 39:12 | 10:5 |
| margin 6:23 | mg 1:3 | native 18:18,20 | objecting |
| 12:10,11,12 | | naturally | 26:25 27:6 |
| | | 17:16 | |

[objection - position]                                                Page 11

objection   7:23
  9:23
objections   7:22
  11:2 26:24
  27:3,4
objectors   11:1
  20:2
obligation
  18:16
observations
  36:6
obviously
  13:17 35:6
occurred   2:2
offer   7:14,16
offered   23:16
official   3:4
  14:15
oh   30:16 33:10
okay   9:2 10:6
  10:16,20,21
  14:23 17:5
  20:1,11,16
  21:13 22:4,24
  23:1,6 24:11
  26:15 27:12,25
  28:3 29:24
  30:22 31:6
  33:10 37:15,22
  38:19 39:11
  40:16 41:12
  42:3,4,8
old   43:21
once   40:24
ongoing   18:20
open   7:14
  27:18 41:16

opening   20:23
  38:5 40:17,22
  41:4
opine   14:18
  17:7
opined   14:19
opines   16:11
opinion   14:12
  16:9,15,16,19
  16:25 17:1
  22:7,8,10
  26:23 31:24
  32:16
opposition
  27:14
opted   32:23
order   20:21,25
  37:25 38:3,5,7
otis   3:24 7:24
  25:9,13
ought   26:16
  35:20
outcome   23:19
  33:18
outside   24:6
overflow   41:1
  41:3
overtime   41:23
overwhelming
  6:19 19:15
overwhelmin...
  8:3 21:23
own   9:17

                  p

p   3:1,1 4:15 6:1
page   10:9
  16:14

paid   42:1
part   8:3,4 10:1
  24:20 29:15
  39:13,20
participate
  27:9
parties   8:23
  19:15
parts   9:18
pass   12:9 29:22
past   8:1
pay   29:6
payment   18:16
pending   23:19
people   8:15
  12:16 17:11
  18:25 19:17
  23:6 28:15
  29:1 30:4,8
  31:9 36:25
  38:13 40:6,7
perceived   30:2
percent   7:2,4,5
  7:13 15:18
  19:16,20,22,24
  20:1,4 21:23
percentage
  28:21
person   32:7,13
personally
  39:9,15 40:10
persuade
  22:19
pesce   4:20
petition   14:12
  14:21 15:6,22
  16:9,20 17:1

  18:14 22:11
  25:17,18 26:1
  26:13,20,21
  34:22 37:5
pick   10:1
plan   6:11,17
  6:23,25 7:3,22
  8:3 9:2 10:4
  11:21 12:1,4,8
  12:10 16:4,5
  17:12 19:25
  22:21,22 28:21
  28:23,25 30:16
  32:23,25 33:24
  34:14,19 35:13
  39:1
plans   8:5
platform   18:19
pleading   34:2
please   6:2
point   20:20
  21:2 27:19
  28:16,18 30:13
  31:11,14 33:20
  35:8,13,19
  36:7,16 38:15
pointed   15:10
points   17:23
  28:11 30:24
  39:8
policy   40:23
portions   9:19
portray   31:5
position   8:2
  24:25 27:2,5
  28:22

[possible - refer]                                                                                          Page 12

| | | | |
|---|---|---|---|
| **possible** 34:3 | **proceeds** 12:7 | **pushing** 20:13 | **reacted** 40:4 |
| **potentially** 37:3 | **process** 7:13 9:23 10:2 14:1 22:21 | **put** 12:20 14:17 27:17 40:6 | **reactions** 13:14 |
| **preclusive** 24:6 | **profit** 32:12 | **puts** 28:25 | **read** 9:17 10:9 12:22 16:14 31:12 |
| **preponderance** 10:8 | **profits** 32:4 | **putting** 10:14 36:10 38:10 | **reading** 18:11 24:11 25:25 |
| **present** 4:7 | **project** 29:12 | | |
| **presented** 11:23 13:3 14:5 | **projects** 29:13 | **q** | **realize** 12:15 |
| | **promoter** 29:14 | **qualifies** 32:1 | **really** 22:9 29:24 34:25 |
| **press** 40:25 | **proof** 25:15 38:13 39:3 | **question** 9:11 13:6 14:11 15:2,9 16:8,10 16:18 17:15,16 25:17 33:17 34:17 35:16 41:12,15 | **reason** 27:2 32:24 37:1 40:21 |
| **pretexts** 30:11 | **proofs** 40:7 | | **reasonable** 32:4 |
| **pretty** 35:22 38:23 | **proper** 11:18 | | **reasons** 38:3 41:3 |
| **price** 14:22 15:11 19:1,3,4 19:4,20 21:6 25:18 26:10,12 26:20 29:24 31:22 32:18 36:12,14,20 | **property** 12:25 | | **receive** 20:9 31:7 34:13,16 34:24 |
| | **proposed** 11:25 | **questioned** 33:22 | |
| | **proposes** 9:2 10:4 22:21 | **questions** 8:9 8:20 14:4 | **received** 8:1 29:5 30:25 |
| | **prove** 26:5 | **quick** 36:5 | **receiving** 9:12 |
| | **provide** 12:4 15:12 16:12 | **quickly** 15:23 | **record** 6:6,21 23:9 25:13 32:24 43:4 |
| **prices** 30:21 31:10 | **provided** 26:8 34:18 | **r** | |
| **prior** 7:17 14:21 | **provides** 35:13 | **r** 1:21 3:1 4:17 6:1 43:1 | **recovery** 12:5 28:18 31:2,6,9 33:25 34:3 |
| **pro** 3:24 4:1,3 4:5 14:10 28:8 31:19 33:13 34:9 36:3 | **public** 38:18 38:23,23 39:4 40:24 | **raise** 17:23 20:8,24 41:6 | |
| | **published** 36:17 | **raised** 17:14 | **redact** 38:19 38:22 39:10,11 40:9,10 |
| | **purchased** 28:13 | **rakoff** 24:15 | |
| **probably** 12:15 32:5 | **purposes** 26:13 | **rakoff's** 12:23 24:12 | |
| **problem** 17:3 41:17 | **pursuant** 8:25 | **ran** 7:10 | **redaction** 39:18 |
| **proceedings** 29:2,5 31:1 42:9 43:4 | **pushed** 26:10 | **rate** 7:12 | **refer** 29:8 |
| | **pushes** 22:22 | **reach** 24:9,10 34:15 | |

**referring** 28:14
35:4
**reflect** 26:21
**reflects** 27:17
**refused** 38:22
**regarding**
34:15
**relating** 26:17
**relevant** 34:25
**relying** 26:14
**remains** 41:16
**reminder** 6:11
**remote** 40:23
**removed** 34:1
**report** 6:18
10:11 11:6,10
16:11 17:7
25:23,25
**represented**
14:10
**request** 24:2
32:20
**requested** 38:4
**required** 8:8
**requiring**
38:12
**residents** 34:11
34:23
**resolution** 2:2
10:2
**resolve** 13:5,7
13:11,25 37:4
37:9
**resolved** 10:1
13:13
**respect** 10:21
24:15

**respectfully**
32:20
**respond** 35:2
**responding**
27:12
**response** 34:16
**result** 22:13
24:9,10
**results** 6:18
21:22
**reverse** 11:22
**right** 6:3 8:6
9:5,15 11:15
11:17 12:2,18
13:16 17:3,22
18:16 19:9
21:24 24:21
25:6 31:16
33:9,10,11,24
34:5 37:2,16
39:17,19
**ripple** 12:22,23
**road** 43:21
**roadmap** 14:5
**robinson** 4:21
**room** 18:11
**rooms** 41:3
**rule** 8:25 23:22
26:18 32:21
**rules** 36:20
**ruling** 24:3
32:22 33:1,2
**ruminating**
13:12
**running** 17:10

**s**

**s** 3:1 4:16 6:1
**sales** 32:18
**samuel** 4:15
**satisfactory**
15:5
**satisfied** 15:14
15:16,21 16:6
17:14 20:14
**satisfy** 34:22
**saw** 6:18 16:16
**saying** 10:20
19:15,21,22
20:5
**says** 11:6,10,12
**scenario** 22:5
**scenarios** 24:9
**scheduled** 6:9
**scheduling**
41:21
**scheuer** 3:22
13:19 23:8,9
24:2,5,22 25:3
**scott** 4:12,22
**se** 3:24 4:1,3,5
14:10 28:8
31:19 33:13
34:10 36:3
**seal** 38:19
**sealed** 39:9
**sealing** 39:13
39:24 40:1,11
40:14
**sean** 4:13
**searched** 12:13
**seated** 6:3

**sec** 3:18 13:19
23:13 24:2,18
24:20 31:25
**second** 18:5
**securities** 3:17
23:10,12 32:2
35:6,7
**security** 10:22
10:23,24 12:21
13:2,6,12,18
17:20,21 18:5
18:9,23 22:2,5
22:8,9,12
23:17,23 24:11
24:21 29:23
31:24,25 32:21
32:22 33:3
36:19 37:1
**see** 6:16,16
12:14 14:5
26:7 27:6 31:1
31:18 35:20
39:22 40:12
41:13,20 42:4
42:6
**seeing** 11:13
**seem** 10:3
**seemed** 24:8
**seems** 9:23
12:24 13:9
31:4 36:15
**seen** 11:6 20:8
29:7
**sees** 34:5
**selling** 30:20
31:1 36:8

sense  28:21
separate  7:10
   8:16 21:21
   27:13 33:16
   37:21
separated  41:3
separately  7:9
separation
   29:3
september
   1:16 30:14
   43:25
series  8:19
set  35:17 41:19
settle  8:15
settlement  6:10
   6:12,15 7:14
   7:18 8:2,4,12
   8:14,24 12:17
   16:4 17:12
   19:18 21:18,19
   24:20 34:21
settling  8:14
seven  16:5
shake  38:17
short  26:18,19
   27:16 30:23
shorting  36:7
   36:13,22 37:6
shorts  26:9,12
shouldn't
   36:13
show  12:6
   25:16 41:1
shows  26:8
shutdown
   41:13

side  30:23
sides  19:15
signature
   35:10 43:7
signed  7:18
   8:11 39:2
significant
   14:22
simple  30:19
   30:24 35:22
simply  36:25
single  9:5
   37:14
small  7:6 28:21
sold  23:16
solution  35:23
solutions  43:20
somebody
   12:20 22:18
   23:4 38:18
sonya  2:25
   43:3,8
sorry  25:11
   31:15 39:14
sort  9:16 22:15
   29:22
south  3:5
southern  1:2
   23:14
speak  11:9
   35:12
speaker  23:3
specific  16:13
   31:6
specifically
   9:18,21 26:9
   41:6

spend  30:21
spoke  33:8
spoken  33:11
spread  9:6
squeeze  32:18
staff  41:23
staggered  27:2
   27:10
standard  11:18
stanley  4:23
stark  7:25
start  28:16
   40:19
started  21:7
starting  20:22
starts  40:24
stated  32:16
statement  6:14
   38:5
statements
   20:24 30:5
   40:17,22 41:4
states  1:1,12
   3:17
status  6:8
stayed  23:18
stickler  38:23
stock  36:21
   37:14
stocks  36:18
stop  22:14
street  3:5,19
   36:12
struck  22:21
stuck  30:10
subject  26:24

subjecting
   32:1
submit  27:1,11
submitted  7:24
   10:10
submitting
   7:11 27:13
subordinated
   10:23,24 17:20
   18:5,6
sufficient
   10:19
suite  3:5 43:22
sullivan  5:8
superior  28:24
supply  29:22
support  7:8
   27:7,11,13
supporting
   27:1
suppose  26:17
   28:17
supposed
   22:17
sure  6:17 8:10
   8:13 15:23
   16:22 21:15,16
   22:14 23:21
   25:22
system  39:1

**t**

t  43:1,1
table  35:15,17
take  19:8,23
   20:11
taken  31:13

| | | | |
|---|---|---|---|
| **talk** 21:17 38:8 | 38:2 42:7 | **thinking** 10:20 | 32:8,11,13,18 |
| 38:25 39:6 | **that's** 7:12 8:5 | 15:25 | 32:20,21 33:16 |
| **talking** 31:22 | 9:15 10:20 | **third** 18:13 | 33:21,25 34:4 |
| 31:23 32:5 | 11:25,25 12:5 | 19:2 | 34:12,13 37:5 |
| 36:19 | 12:6 13:13 | **thomas** 4:11 | **tokens** 9:22,25 |
| **tanzila** 5:3 | 16:17 17:22 | **thought** 15:20 | 10:11 18:18 |
| **taylor** 5:5 | 18:20 21:24 | 27:4,5 42:3 | 29:13 |
| **teach** 41:8 | 26:14 27:12,21 | **three** 32:12 | **topic** 7:18 8:1 |
| **team** 32:17 | 31:11,14 32:23 | **time** 24:25 | **tops** 36:17 |
| **tell** 20:7,16 | 34:5,25 39:6 | 28:16 30:3,24 | **torres** 24:15 |
| 24:19 | 40:8,15 42:3 | 37:7 41:25 | **torres'** 12:23 |
| **telling** 30:6 | **therese** 3:22 | **tired** 33:18 | 24:12 |
| **terms** 8:22 | 23:9 | **today** 13:15 | **total** 6:25 7:1 |
| **terraform** | **there's** 9:24 | 17:23 23:21 | 28:24 29:11 |
| 12:22,24 | 12:12 13:24 | 27:22,24 28:4 | **transcribed** |
| **tesla** 36:17 | 19:13 35:21,22 | 35:1 36:16 | 2:25 |
| **test** 9:12 15:13 | 36:23,24,24 | 37:9 | **transcript** 43:4 |
| 15:21 16:5 | 38:18 41:5,18 | **token** 2:1,2 6:9 | **treatment** 8:6 |
| 17:14 20:11,14 | **they're** 11:2 | 6:11,12,12,13 | 9:2,22 10:4 |
| 22:20,23 32:1 | 17:16 | 7:8,9,11,14,15 | 11:25 17:12 |
| 32:5,19 | **thing** 33:23 | 7:15,20 8:2,4 | 22:22 |
| **testified** 25:24 | **things** 11:13 | 9:3,6,19 10:17 | **treats** 19:25 |
| **testifies** 14:10 | 19:14 23:16 | 10:19,22 11:19 | **trial** 9:17 13:17 |
| **testify** 26:16,22 | 24:18 29:15 | 11:20,24 12:8 | 13:18 39:4,13 |
| 27:15 | 30:17 41:18 | 13:4 14:12,18 | 41:6,17,20 |
| **testifying** | **think** 8:16 9:15 | 14:22 15:5,6 | **trials** 38:18,23 |
| 16:23 22:1 | 11:17 12:2 | 15:12,13,16 | 40:8 |
| 27:7 | 13:5 14:20,25 | 16:2,9,13,20 | **tries** 29:18 |
| **testimony** 27:1 | 15:8,10 17:22 | 17:1,8,25 18:2 | **true** 7:3 29:9 |
| 27:7,11 37:8 | 18:15 19:9 | 18:15,15,17,20 | 29:19 43:4 |
| **thank** 13:16 | 24:23 28:2,17 | 19:21,25 21:6 | **trustee** 38:4 |
| 23:8 24:5 25:1 | 30:12,14,15,16 | 22:10 23:16 | **try** 22:19 25:12 |
| 25:3,4 31:16 | 30:19,24 32:8 | 24:14,20 25:16 | 35:20 |
| 31:18 33:4,6 | 34:5 35:16,18 | 25:18,25 26:8 | **trying** 11:4 |
| 33:10 34:6,7 | 35:22 38:21 | 26:13,16,21 | 13:21 22:16 |
| 34:24,25 35:24 | 40:15,21 41:5 | 27:16 29:17 | 30:16 37:11 |
| 35:25 37:12 | 41:5 | 30:14 31:21 | |

**tuesday** 20:22
40:19,20
**tuned** 15:24
**turetsky** 4:24
**twice** 34:4
**two** 7:18,19
21:4 32:10
36:12 39:7
41:9

**u**

**u.s.** 1:23 23:9
23:12,14 38:4
**ucc** 30:12
34:15
**uday** 5:4
**unanimity** 8:7
**uncontrovert...**
14:21
**under** 10:23
11:19,21 12:5
12:7 16:2,4
18:5 21:12
24:9 32:2 35:6
**understand**
8:21 11:4
13:23 14:24,25
17:6 18:11
32:6 34:19
37:10,10 38:15
38:20 40:9,16
**understanding**
24:16
**understood**
17:18 20:3
21:16 39:5,7
**undervalued**
33:20

**unfortunately**
33:1
**unidentified**
23:3
**united** 1:1,12
3:17
**unsecured** 3:4
14:15 18:7
**uptegrove**
23:11
**use** 29:11
**used** 29:2
**user** 29:17
**uses** 29:16
**using** 37:18
**utilize** 34:22
**utilizes** 34:20

**v**

**valuation**
34:17
**value** 10:18,24
10:25 11:18,20
11:24 13:4,10
14:12,17,18,19
15:5,6,11,12
15:15,22 16:1
16:9,12,13,15
16:20 17:1,8
18:7,14,17,21
18:25 21:3
22:3,7,8,10,11
25:25 26:16,19
26:21,23 27:16
27:17 28:14,24
29:5,9,11,11
29:18,19 30:13
30:17 31:1

34:20 37:4,6
39:20
**values** 6:12
34:23
**varies** 30:2
**vary** 17:19
**veritext** 43:20
**video** 41:2
**view** 17:24
24:24 28:25
**vince** 5:8
**violate** 35:7
**voice** 28:19
**volume** 38:10
**vote** 6:22 7:6
8:6 28:22
33:21
**voted** 6:22,25
7:2,12
**voting** 6:18 7:1
19:24 21:22

**w**

**wait** 6:16
**want** 15:19
19:1 20:24,24
21:15 22:24
23:1 25:1,5
27:19,25 28:9
28:11 32:25
33:18 35:10,18
37:24 40:12
41:6
**wanted** 13:13
17:23 22:14
37:25 38:8
39:6 40:2 42:4

**wants** 21:17
25:6 31:11
**warren** 4:25
**washington**
3:20
**wasn't** 22:7
**way** 13:24,25
15:25 18:9,12
19:8 35:21
36:12
**ways** 15:9
**week** 8:5 14:8
36:16 37:25
42:5,6
**went** 9:16
15:23 29:5,15
**we'll** 12:6 14:2
19:23 20:23
27:8 37:17
40:19,21 41:1
41:10,20 42:1
42:6
**we're** 6:3,16
6:16 12:15,16
13:21 15:17
20:22,23 21:5
34:2 35:6
36:19 37:8
39:1 41:16
42:2
**we've** 21:6
31:22
**what's** 10:24
13:1,2 23:21
**white** 3:3 14:14
36:10

[wildest - zoom]                                          Page 17

| | |
|---|---|
| **wildest** 6:19 | **y** |
| **wiles** 7:19 | **yesterday** 38:9 |
| **win** 17:25 | **yoon** 5:2 |
| **wish** 28:3 | **york** 1:2,14 |
|   33:11 34:8 |   23:15 |
|   36:1 37:15 | **you'll** 26:15 |
| **wishes** 38:19 | **you're** 20:12 |
| **withdrawals** |   20:17 26:14 |
|   30:1 | **z** |
| **withhold** 7:5 | **zero** 9:25 10:24 |
| **witness** 14:9,13 |   17:20,25 18:4 |
|   16:23,24 17:4 |   18:6 22:4 |
|   22:1,1 26:22 | **zomo** 5:3 |
|   26:25 27:15 | **zoom** 13:14 |
| **witnesses** |   23:5,11 25:7 |
|   26:15 |   28:3 37:18 |
| **wofford** 5:1 | |
| **wondering** | |
|   34:23 | |
| **work** 8:5 10:2 | |
|   12:8 | |
| **worked** 7:13 | |
| **world** 28:25 | |
| **worth** 9:25 | |
|   10:17 12:9 | |
|   33:4 | |
| **wouldn't** 22:9 | |
|   27:10 | |
| **written** 11:5 | |
|   27:1,6,11 | |
| **wrong** 20:7 | |
|   24:17,19,21 | |
|   36:24 | |
| **x** | |
| **x** 1:4,10 | |