Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY   10004

14

15                    September 18, 2023

16                    3:59 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   JONATHAN

1    HEARING re Hearing Using Zoom for Government RE:  Discovery

2    Dispute Between Unsecured Creditors Committee and with Three

3    Pro Se Creditors — Otis Davis, Zach Wildes, and Santos

4    Caceres (Doc# 3464, 3468, 3476)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1   A P P E A R A N C E S :

2

3   IRA B. POLLACK ASSOCIATES, PLLC

4        Attorney for Claimant Otis Davis

5        26 Austin Place

6        Port Chester, NY 10573

7

8   BY: IRA B. POLLACK

9

10  WHITE & CASE

11       Attorneys for Official Committee of Unsecured Creditors

12       555 South Flower Street

13       Suite 2700

14       Los Angeles, CA 90071

15  BY:  AARON COLODNY

16       SAMUEL P. HERSHEY

17

18  KIRKLAND ELLIS

19       Attorney for Debtor

20       300 North LaSalle Drive

21       Chicago, IL 60654

22

23  BY: CHRIS KOENIG

24

25  ZACHARY WILDES, Pro Se

Page 4

1    SANTOS CACERES, Pro Se

2

3    ALSO PRESENT:

4    JASMINE ARMAND

5    DEAN LINDSAY CHAPMAN

6    CHRISTOPHER J. COCO

7    THOMAS DIFIORE

8    SCOTT DUFFY

9    SEAN ANDREW FEENER

10   MIRA HAQQANI

11   SAMUEL P. HERSHEY

12   JEFFREY S. KRAMER

13   NICHOLAS R. LOMBARDI

14   KEITH NOYES

15   CAITLIN O'CONNELL

16   GREGORY F. PESCE

17   MARK ROBINSON

18   ELIZABETH D. SCOTT

19   MICHAEL STANLEY

20   DAVID TURETSKY

21   CAROLINE WARREN

22   KEITH WOFFORD

23   ANDREW YOON

24   TANZILA ZOMO

25   UDAY GORREPATI

1    TAYLOR HARRISON

2    JEREMY HILL

3    MIKE LEGGE

4    VINCE SULLIVAN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  Good afternoon to everybody.  So this

3    conference was set at the request of the Committee.  So, Mr.

4    Hershey, are you going to be speaking today, or Mr. Colodny?

5            MR. HERSHEY:  I am, Your Honor, yes.

6            THE COURT:  All right.  Go ahead, Mr. Hershey.

7            MR. HERSHEY:  Thank you, Your Honor.  Sam Hershey,

8    from White & Case, for the Committee.  I apologize if the

9    Court was ready a few minutes ago.  I had trouble

10   connecting, but I'm glad Your Honor can apparently see and

11   hear me now.

12           Your Honor, we're here today for a conference in

13   connection with certain discovery regarding CEL token

14   valuation that the Committee served on three individuals

15   that Santos Caceres, Zachary Wildes, and Otis Davis --

16   excuse me -- Otis Davis.

17           At the time we requested the conference, none of

18   these three individuals had provided any response to the

19   written discovery by the September 1st deadline in the

20   confirmation schedule, which schedule is that Docket Number

21   3356, or produced any discovery to the Committee by the

22   September 11th deadline in that schedule.

23           So let me start with the good news.  After this

24   conference was scheduled, the Committee continued its

25   efforts to speak with these three individuals.  And two of

Page 7

1   them, Mr. Caceres and Mr. Wildes, willingly engaged with us.

2   We had several conversations with Mr. Caceres and Mr.

3   Wildes, and they provided the Committee with certain

4   document discovery.

5           I'm pleased to report that the Committee and Mr.

6   Caceres and Mr. Wildes have not only resolved their disputes

7   regarding discovery, but also their disputes regarding the

8   valuation of the CEL token in connection with the plan.  And

9   specifically, Mr. Caceres and Mr. Wildes have informed the

10  Committee they do not intend to object to the Debtors' plan

11  of reorganization, including the valuation of the CEL token

12  at 25 cents, and have entered into a settlement agreement

13  with the Debtors and with the Committee to that effect.

14          And we actually just filed a version of -- or the

15  settlement agreement on the docket.  It's at Docket Number

16  3486.  And when I say we just filed it, it was within the

17  last 15 minutes, so I assume the Court has not seen it.  But

18  that's where it is for the Court's reference.

19          That leaves Mr. Davis.  Unfortunately, this

20  conference remains necessary as to him.  Mr. Davis has

21  acknowledged receipt of our discovery requests.  He has

22  acknowledged receipt of our request to meet and confer

23  regarding the discovery requests, including the one we sent

24  after this conference was scheduled.  And he has written to

25  us, telling us that he refuses to speak with us.

Page 8

1        I'll add that about an hour before this conference

2   started, I received a call from Mr. Davis's newly retained

3   Counsel, Ira Pollack, who I believe is on the line.  I asked

4   Mr. Pollack to try to persuade Mr. Davis to speak with us

5   about the discovery.  I told him to tell Mr. Davis that we

6   are prepared to be reasonable and work with Mr. Davis, as we

7   have with Mr. Casares and Mr. Wildes.  And I understand from

8   Mr. Pollack that Mr. Davis again refused to speak with us.

9        Now, Mr. Davis has suggested that we are bullying

10  him as a pro se creditor.  The opposite is true.  The record

11  reflects that we have treated Mr. Davis and the other pro se

12  creditors on whom we serve discovery with the utmost respect

13  and understanding.

14       THE COURT:  Let me just stop you for a minute, Mr.

15  Hershey.

16       MR. HERSEY:  Sure.  Go ahead.

17       THE COURT:  And Mr. Pollack is on my screen and he

18  indicated he is -- I don't know whether -- Mr. Pollack, have

19  you filed your appearance on behalf of Mr. Davis yet?  You

20  have to unmute.  Mr. Pollack, you have to unmute.  Mr.

21  Pollack, you have to unmute.

22       MR. POLLACK:  Sorry, Judge, I was -- I'm working

23  on it.  No, I have not filed my appearance as yet.  I first

24  spoke with Mr. Davis late last night and this afternoon,

25  when I got back from Court.

Page 9

```
 1              THE COURT:  Is it correct that you are appearing
 2    on his behalf?
 3              MR. POLLACK:  Yes, sir.
 4              THE COURT:  Okay.  And you will file a notice of
 5    appearance?
 6              MR. POLLACK:  Yes, sir.
 7              THE COURT:  Okay.  All right.  So, you know, I
 8    stopped you, Mr. Hershey, because now that Mr. Davis is
 9    represented by counsel, you can't speak to him without his
10    lawyer's agreement, and he doesn't have to speak to you.
11    So, you know, Mr. Pollack's being retained certainly changes
12    that part of the landscape.  It doesn't change whether or
13    not Mr. Davis is required to respond to discovery, whether
14    he was already required to respond and failed to do so, and
15    what, if any, consequences should come from that.
16              May I ask you, Mr. Hershey, have you tried to
17    resolve -- and I know that Mr. Pollack is very new to the
18    case and the representation of Mr. Davis -- have you tried
19    to resolve the discovery issues with Mr. Pollack?
20              MR. HERSHEY:  Well, no, Your Honor.  I mean, to be
21    clear, when I spoke to Mr. Pollack, I asked for a call with
22    him and his client, understanding that Mr. Pollack would
23    need to be on the line and we couldn't speak to Mr. Davis
24    directly.
25              My understanding is that -- and that -- the point
```

Page 10

1    of that conversation would have been to try to resolve the

2    dispute.  I was hoping, frankly, if we could, to cancel this

3    conference, since we have resolved with, at that point,

4    (indiscernible) everyone.  My understanding is Mr. Davis did

5    not want to have that conversation directly with us.

6              THE COURT:  And look, now that he's retained by

7    counsel, he doesn't have to.  Okay?  He could have turned

8    you down anyway, even -- you know, there are consequences

9    for not responding to time -- you know, to discovery.  But

10   putting that aside, he was not -- he didn't have to

11   communicate with you.  He now has an attorney.  And you

12   can't communicate with him, without his attorney's

13   agreement.  So that's kind of water under the bridge.

14             I see Mr. Davis's hand raised, the Zoom hand

15   raised.  But let me say, you know, Mr. Pollack, I'm happy to

16   hear from your client, but you tell me whether you want him

17   to speak on the record.

18             MR. POLLACK:  Well, Your Honor, what I would say

19   is this.  I did speak with Mr. Hershey.  I did suggest that

20   we have a three-way with Mr. Davis, myself and Mr. Hershey,

21   and anyone else from White & Case, as I notice they have two

22   or three different offices that may be involved in this

23   case.  And that perhaps we could work things out.

24             THE COURT:  Look, I assume that Mr. Hershey is

25   taking the lead on this issue.  And Mr. Hershey, I assume

Page 11

1    you're the one he should speak with?

2            MR. HERSHEY:  That's correct, Your Honor.  Yes.

3            THE COURT:  Which is fine.  You don't have any --

4            MR POLLACK:  (indiscernible)

5            THE COURT:  You don't have any confusion about who

6    to try and resolve this with.  Okay.

7            MR. POLLACK:  Okay.  But I certainly want to

8    resolve the discovery portion of the matter and I suggested

9    that we have a conference.  My client suggested that we

10   appear before Your Honor, just to -- since the conference

11   was scheduled, which we are doing, and after the conference

12   and before Mr. Hershey is forced to make any motions, I

13   would like to be able to put together some sort of

14   conference to try to resolve the discovery, which I don't

15   see as being too difficult.

16           THE COURT:  Okay, let me let me say this.  So, Mr.

17   Davis' hand is raised.  So, what has been the procedure in

18   this case throughout, omnibus hearings, whatever hearings

19   we've had with remote participation, I will recognize

20   individuals who wish to be heard.  And that's certainly --

21   but I'm only going through that because, you know, if you

22   don't want Mr. Davis to speak on the record, he doesn't have

23   to.  If he wants to, I'm willing to hear from him.  So, do

24   you want him to be able to speak on the record?

25   (indiscernible)?

```
 1              MR. DAVIS:  I have nothing.  There's nothing --

 2              THE COURT:  It's not a trick question.  It's not -

 3  -

 4              MR. POLLACK:  No, I know, Judge.

 5              MR. DAVIS:  It's not a lot --

 6              MR. POLLACK:  It's at this point I would try to

 7  text him and find out if he really wants to speak.

 8              THE COURT:  Well --

 9              MR. POLLACK:  I will let him speak.

10              THE COURT:  Okay.

11              MR. POLLACK:  Otis --

12              THE COURT:  Go ahead, Mr. Davis.

13              MR. POLLACK:  -- I know you want to speak.  Please

14  speak up.

15              MR. DAVIS:  Judge, I just want to say that they

16  sent me a request for production of documents.  Your name

17  was not on it.  Then they said it was a subpoena.  I said, I

18  don't see a subpoena.  I never received a subpoena.  If you

19  sent me a subpoena, then I'm compelled.  Now they filed

20  documents in the court -- I don't have the docket number --

21  saying they served me with a subpoena.  And I said, you did

22  not serve me with a subpoena.  It's a discovery request.  I

23  don't have to respond to you.

24              And this got out of hand.  So I retained an

25  attorney --
```

1           THE COURT:  Okay.

2           MR. DAVIS:  -- because I do not have to respond to

3    them.

4           THE COURT:  Well, that's -- we won't -- I'm not

5    going to debate or decide today whether you have to respond.

6    You've appeared in this case.  I think you've spoken on the

7    record before.

8           MR. DAVIS:  Yes.  Yes, I have.

9           THE COURT:  Yeah.  So it is, particularly with the

10   confirmation hearing starting on October 2nd, it is very

11   proper for the Committee to seek discovery from you with

12   respect to the issues that are coming up in this hearing.

13   And obviously, valuation of the CEL token is a giant issue.

14   I've -- you know, I know that many Earn account holders and

15   you know, those who hold CEL -- who received CEL tokens,

16   many feel strongly about the issue, and that's fine.

17           But at the same time, the plan that's been

18   proposed proposes to compensate CEL token holders at 25

19   cents.  Originally it was 20 cents; increased to 25 cents.

20   I'm not saying whether that's correct, not correct, or

21   anything.  But because this is an issue for the

22   confirmation, they're entitled to take discovery from you.

23   Okay?

24           MR. DAVIS:  Okay.

25           THE COURT:  And, but look --

1        MR. DAVIS:  Judge, I'm willing to give it to them,

2    but I wanted to hear it from you.

3        THE COURT:  Okay.  Well, you've...

4        MR. DAVIS:  I wanted to hear it from you, because

5    they're saying they served me with a subpoena and they did

6    not.

7        THE COURT:  I don't know whether they did or

8    didn't.  Let me just say that right now.

9        MR. DAVIS:  (indiscernible) didn't you --

10        THE COURT:  I don't know --

11        MR. DAVIS:  Wouldn't you have to sign that

12    subpoena?

13        THE COURT:  No.

14        MR. DAVIS:  They did not serve me with a subpoena.

15

16        THE COURT:  It's issued -- look --

17        MR. POLLACK:  Otis, we'll take it up --

18        MR. DAVIS:  Yeah --

19        THE COURT:  No, Mr. Davis --

20        MR. POLLACK:  Let's take it up later.

21        MR. DAVIS:  Yeah.

22        THE COURT:  This this may sound unusual to you,

23    but it's on a form -- a subpoenas is not a form issued by

24    the Court.  Lawyers are authorized to sign those subpoenas.

25    If they're disputed, I will hear a dispute.  But that in

Page 15

1   itself, I don't know  -- Mr. Hershey -- let me, Mr. Hershey,

2   did you serve a subpoena on Mr. Davis?

3            MR. HERSHEY:  We did not, Your Honor.  I don't

4   think we've ever represented that we have.

5            THE COURT:  Okay.

6            MR. HERSHEY:  Just to be clear, if I may, Your

7   Honor, Mr. Davis has filed an objection to disclosure

8   statement that focused mainly on the treatment of CEL

9   tokens.  After that, he filed a motion regarding the

10  formation of a CEL token committee and valuing CEL token at

11  81 cents.

12           So he is a party to several contested matters.

13  Obviously, confirmation itself is a contested matter.  And

14  so, we didn't think we needed to serve a subpoena.  We did

15  just serve discovery requests directly on him --

16           THE COURT:  All right.

17           MR. HERSHEY:  -- as a party.

18           THE COURT:  Let me suggest this.  Mr. Hershey, Mr.

19  Pollack, Mr. Davis, why don't you speak as soon as this hear

20  -- can you do that, Mr. Pollack?  Can you speak as soon as

21  this hearing is over?

22           MR. POLLACK:  Yes, Sir.

23           THE COURT:  See if you can resolve this.  Okay?

24  I'm very appreciative that, you know, with Mr. Caceres and

25  Mr. Wildes, if the issues have been resolved, that's fine.

1   Look, I'm pleased that most of the discovery issues that

2   have ever come up in this case have been resolved

3   consensually.

4           What I do is to try and avoid the necessity of

5   expensive motion practice and time-consuming motion

6   practice.  So, when a party needs the assistance of the

7   Court in connection with the discovery dispute, we set a

8   conference as soon as the Court is able to do that.  That's

9   what we did -- we've done here.

10          And in setting the conference, I think I made

11  clear this is not an evidentiary hearing.  I wanted to see

12  whether -- what the issues are, whether they can be

13  resolved.

14          What I would like for you to do is -- and Mr.

15  Wildes, I'll recognize you in a moment.  Mr. Pollack, Mr.

16  Davis, Mr. Colodny, see -- hopefully, you will be able to

17  resolve these issues and confer.  May I ask this?  Mr.

18  Hershey, do you have Mr. Davis -- do you have Mr. Pollack's

19  contact information, so you can -- when we end this hearing,

20  you can contact him directly?

21          MR. HERSHEY:  Yes, we do.

22          MR. COLODNY:  Yes, Sir, I do.

23          THE COURT:  Okay.  So, why don't you do that?  And

24  if you can't resolve it and we still need a hearing, it

25  won't be today, it may be tomorrow -- I'll do my best.  I've

Page 17

1    got lots of hearings coming up.  But the hearing about

2    discovery before -- the confirmation hearing is very soon to

3    start.  Okay?  Let's see if we can get this resolved.

4           Mr. Wildes, let me recognize you.  You've got your

5    hand raised.  Go ahead and speak.

6           MR. WILDES:  Thank you, Your Honor.  No, I'm happy

7    that we're able to resolve the dispute.  I had some

8    conversations over the weekend with Mr. Colodny and Mr.

9    Hershey and got everything resolved.  And they even said

10   they weren't going to object to paying my attorney's fees.

11   So I really appreciate them for doing that.

12          And, yeah, I just wanted to echo that I believe

13   when they wrote a letter to you, they did talk about a

14   subpoena.  And again, I'm not a lawyer.  Otis wasn't a

15   lawyer, and they were coming very aggressive, and we just

16   didn't quite understand what they were asking when they made

17   those initial requests.  But I'm glad this is moving

18   forward.  And thanks, Your Honor, for all your work in this

19   case.

20          THE COURT:  Okay.  Thanks very much, Mr. Wildes.

21   Mr. Pollack, is there anything else you want to say?

22          MR. POLLACK:  No, Your Honor.  Thank you.

23          THE COURT:  Okay.  Anybody else who wishes to be

24   heard?

25          MR. HERSHEY:  Your Honor, can I make one more

Page 18

1    brief point?  The deadline for depositions is this

2    Wednesday, and if we end up getting documents from Mr.

3    Davis, we will probably want some time to review those

4    before we depose him.  So we'd like to ask for a brief

5    extension of that deadline for the depositions.

6            THE COURT:  All right.  I'm certainly going to be

7    agreeable to a reasonable extension of the deadline.  Work

8    with Mr. Pollack and hopefully get this resolved.  Okay?

9            MR. HERSHEY:  Thank you, Your Honor.

10           THE COURT:  All right.

11           MR. HERSHEY:  I do have one more small point.  I

12   know, Mr. Caceres and Mr. Davis -- excuse me -- and Mr.

13   Wildes may submit applications for substantial contribution.

14   The deadline for those is Wednesday as well, and they asked

15   if they could have a short extension for that to sometime

16   next week, just given they're pro se and we only recently

17   settled.

18           THE COURT:  That agreeable to me.  See if you can

19   agree on it a -- I'm sure you're going to be able to work

20   out with them.  I am -- I'm certainly willing to grant a

21   reasonable extension to do that.  Okay.  What I would ask

22   you to do is agree on a date certain, put it in a letter to

23   the Court.  Okay?

24           MR. HERSHEY:  You got it, Your Honor.  Thank you.

25           THE COURT:  Mr. Caceres, let me -- I'll hear you

1    next and then Mr. Koenig.  Go ahead, Mr. Caceres.

2              MR. CACERES:  Can you hear me, Your Honor?

3              THE COURT:  Yes, I can.  Go ahead.

4              MR. CACERES:  I just want to thank Your Honor for

5    all the work we've been doing this last year.  We've reached

6    a settlement agreement with the UCC, and we believe that

7    it's time for us to exit Chapter 11.  It's been a long year

8    of litigation and just -- we're ready to exit and we're

9    ready to support NewCo and just be successful.

10             THE COURT:  Look, you know, I decide the issues

11   that come before me.  From day one, I've hoped that this

12   case could result in a consensual plan that could be

13   confirmed.  There have been a lot of difficult issues and

14   there still may be during the during the confirmation

15   hearing.  We'll take them one at a time.

16             What I've tried to do is provide an opportunity

17   for people like yourself.  You've appeared multiple times at

18   hearings and I've tried as best I can always to listen to

19   whatever pro se creditors have to say.  Okay?

20             MR. CACERES:  Thank you, Your Honor.

21             THE COURT:  All right.  Thank you.  00:17:01 Mr.

22   Mendelson, you're next.

23             MR. MENDELSON:  Thank you, Your Honor.  Happy

24   Monday.  Has -- and I'm not sure who's -- would the courts

25   or the UCC or Celsius consider putting the Celsius -- the

Page 20

1    CEL token holders in different creditor buckets?  Meaning,

2    the creditors that participated in the alleged CEL 81 cent

3    squeeze be considered differently than real innocent CEL

4    creditors that didn't participate in the squeeze, as

5    referenced by the UCC's report and also mentioned in the

6    Roni Cohen-Pavon criminal case that he's going through?

7              THE COURT:  Well, let me say a plan was proposed,

8    the disclosure statement was approved, with the

9    classification that's proposed.  You ought to talk with the

10   Debtors' counsel and the Committee's counsel.  That's what's

11   up before me for confirmation.  I don't -- you know, if you

12   have an objection and you timely file a written object -- I

13   entered an order last Friday that -- it was nothing new.  It

14   reminded everybody of the deadline for filing written

15   objections to confirmation.  That's still your ability to do

16   that.  And if presented with contested issues, I'll resolve

17   the contested issues.  But I can't -- that's not something I

18   negotiate about.  Let me put it that way, Mr. Mendelson.

19   Okay?

20             MR. DAVIS:  What is that deadline, Judge, for the

21   record?

22             THE COURT:  I'm sorry?

23             MR. DAVIS:  When is the deadline for confirmation

24   objection?

25             MR. KOENIG:  Your Honor, it's Chris Koenig, from

Page 21

1    Kirkland & Ellis, on behalf of Celsius, if I --

2              THE COURT:  It's the -- go ahead.

3              MR. KOENIG:  It's the 22nd.  This Friday, the 22nd

4    at 4:00 PM, I believe.

5              MR. DAVIS:  Thank you.

6              THE COURT:  And that's not just recently set.

7    That was in an order quite some time ago that was entered.

8    And I entered an order on case management procedures for the

9    confirmation hearing, and I actually quoted from that prior

10   order as to the deadline for objections.  So, that's not

11   changing.  Okay.

12             Mr. Davis, did you want to be heard again, or is

13   your hand just still raised?

14             MR. DAVIS:  I'm sorry.  I'll lower my hand.  I

15   just wanted to know the deadline for objection.

16             THE COURT:  Okay.  Mr. Koenig, did you want to be

17   heard?

18             MR. KOENIG:  I did, Your Honor.  Thank you.

19   Again, Chris Koenig, for the record.  Just really briefly.

20   We're pleased to be able to reach this resolution.  We've

21   been trying to reach a settlement on CEL token.  Obviously,

22   we have a little bit more work to do and we're going to be

23   watching the votes as they come in on the plan to see how

24   that comes out.

25             But just wanted to note that the issue of the

1   deadline for the substantial contribution motions came up

2   and we just wanted to alert Your Honor that we've agreed to

3   extend that deadline out for all parties.  The U.S. Trustee

4   and some other parties wanted some additional time on that

5   deadline.  So we expect to file a revised form of order with

6   the Court via letter.

7            THE COURT:  Okay.  What's --

8            MR. KOENIG:  Which would apply to everybody.

9            THE COURT:  What's the new deadline to apply?

10            MR. KOENIG:  It would be a one-week extension.  I

11   believe the deadline is currently this Wednesday.  It would

12   be moved to next Wednesday the 27th, and then those

13   applications would be heard at the omnibus hearing at the

14   end of October.

15            THE COURT:  All right.  Thank you very much, Mr.

16   Koenig.

17            MR. KOENIG:  Thank you, Your Honor.

18            THE COURT:  Is there anybody else who wishes to be

19   heard?  Mr. Koenig, what's the deadline for voting?

20            MR. KOENIG:  This Friday.  This Friday, 4:00 PM.

21            THE COURT:  Okay.

22            MR. KOENIG:  And we'll be submitting our voting

23   report early next week with the tabulated results.

24            THE COURT:  See where we get to?

25            MR. KOENIG:  Yes.

Page 23

```
 1              THE COURT:  Okay.  All right.  So, hopefully --

 2              MR. COLODNY:  Your Honor?

 3              THE COURT:  Mr. Colodny?

 4              MR. COLODNY:  Yeah, Your Honor.  Aaron Colodny,

 5   from White & Case, on behalf of the Official Committee of

 6   Unsecured Creditors.  There were a couple of other briefing

 7   deadlines in our proposed confirmation calendar, which I

 8   believe you had agreed to.  The first is a response to the

 9   CEL token legal brief, which we had previously filed, which

10   is due on Wednesday.  So I didn't want that to be lost in

11   the confirmation objections.

12              And then we had proposed in that order, a hearing

13   on those legal issues on September 28th.  And I didn't know

14   if that was calendared yet, or if Your Honor wanted to defer

15   those to the beginning of confirmation.

16              THE COURT:  Bear with me a second, okay?

17              MR. COLODNY:  And I believe that that schedule is

18   at Docket Number 3356, Your Honor, if you (indiscernible)

19   the document.

20              THE COURT:  3356?

21              MR. COLODNY:  That's correct.

22              THE COURT:  Well, it is on my calendar for

23   Thursday, September 28th at 10:00.  We'll go forward if we

24   need to, if it's not resolved.

25              MR. COLODNY:  Great.
```

Page 24

1              THE COURT:  You know, let me say, I think it

2    should be obvious to everyone the Court's calendar is

3    packed.  And I recognize the importance of resolving issues

4    very timely.  And I've tried to do that throughout this

5    case.  I'm sure it's a challenge for all of you as well.

6    And you know, we just keep firing away.

7              I don't want -- what's hard for me is, like, with

8    the discovery conference.  This was requested.  I scheduled

9    it as quickly as I possibly could.  I'm glad that two of the

10   three were resolved and I hope that the third will be

11   resolved after our call today.

12             This is a press as we get into the confirmation

13   hearing, particularly in light of the changes from the

14   Judicial Conference on how the hearings have to be

15   conducted.  That's why I issued the procedures order last

16   week, last Friday.  I made clear if parties in interest

17   think there should be any modifications or additions, I'm

18   open to considering that, but we'll push forward.  Okay?

19             Anything else for today?  Thank you very much.

20             MAN:  Nothing, Your Honor.

21             THE COURT:  We're adjourned.  Mr. Pollack, you

22   know --

23             MR. POLLACK:  Yes, Sir.

24             THE COURT:  -- be in touch and see if you can get

25   this discovery -- with your client and with counsel for the

Page 25

1    Committee, Mr. Hershey, and let's see if we can get this

2    resolved.  Okay?

3              MR. POLLACK:  Yes, Sir.  Thank you.

4              THE COURT:  Thanks very much.  Okay.

5              MR. POLLACK:  Have a nice day, everybody.

6              THE COURT:  We are adjourned.

7              MR. HERSHEY:  Thank you, Your Honor.

8              (Whereupon these proceedings were concluded at

9    4:23 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                   C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 13, 2023