Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14

15                   October 16, 2023

16                   2:05 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  KAREN

Page 2

1    HEARING re Hybrid Confirmation Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:    Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    KIRKLAND ELLIS

4        Attorneys for the Debtors

5        300 N LaSalle Drive

6        Chicago, IL 60654

7

8    BY:  DAN LATONA

9

10   KIRKLAND ELLIS

11       Attorneys for the Debtor

12       1301 Pennsylvania Avenue NW

13       Washington, D.C. 20004

14

15   BY:  T.J. MCCARRICK

16       GRACE BRIER

17

18   MCELROY DEUTSCH MULVANEY CARPENTER LLP

19       Attorneys for the New Jersey Bureau of Securities

20       570 Broad Street

21       Newark, NY 07102

22

23   BY:  JEFFREY BERNSTEIN

24

25

**Page 4**

```
 1    WHITE CASE LLP

 2         Attorneys for the Official Committee of Unsecured

 3         Creditors

 4         555 South Flower Street, Suite 2700

 5         Los Angeles, CA 90071

 6

 7    BY:  AARON COLODNY

 8

 9    WHITE CASE LLP

10         Attorneys for the Official Committee of Unsecured

11         Creditors

12         1221 Avenue of the Americas

13         New York, NY 10020

14

15    BY:  KEITH WOFFORD

16         JOSHUA WEEDMAN

17

18    UNITED STATES DEPARTMENT OF JUSTICE

19         Attorneys for the U.S. Trustee

20         Alexander Hamilton Custom House

21         One Bowling Green, Room 534

22         New York, NY 10004

23

24    BY:  MARK BRUH

25         SHARA CORNELL
```

1    SECURITIES AND EXCHANGE COMMISSION

2         Attorneys for the U.S. Securities and Exchange

3         Commission

4         100 F Street NE

5         Washington, D.C. 20549

6

7    BY:  THERESE SCHEUER

8

9    SECURITIES AND EXCHANGE COMMISSION

10        Attorneys for the U.S. Securities and Exchange

11        Commission

12        950 East Paces Ferry Road NE, Suite 900

13        Atlanta, GA 30326

14

15   BY:  ALAN MAZA

16        WILLIAM UPTEGROVE

17

18   DIMITRY KIRSANOV, Pro Se

19

20   RICHARD PHILLIPS, Pro Se

21

22   DAVID SCHNEIDER, Pro Se

23

24   VICTOR UBIERNA DE LAS HERAS, Pro Se

25

Page 6

1    OTIS DAVIS, Pro Se

2

3    JASON IOVINE, Pro Se

4

5    DANIEL FRISHBERG, Pro Se

6

7    JOHAN BRONGE, Pro Se

8

9    ALSO PRESENT:

10   CHARLES ABONCE

11   ARTUR ABREU

12   DAVID J. ADLER

13   TEMIDAYO AGANGA-WILLIAMS

14   ANDREA AMULIC

15   JASMINE ARMAND

16   CHRIS BECIN

17   ANDREW BEHLMANN

18   DEREK BLOCHWITZ

19   KYLE BRAY

20   PAUL BREUDER

21   NURALDEEN BRIFKANI

22   JUDSON BROWN

23   KITRA CAHANA

24   ROBERT CAMPAGNA

25   RICKIE CHANG

Page 7

1   ROBERT CHRISTIANSEN

2   PAOLO CIAMARONE

3   CHRISTINA CIANCARELLI

4   CHRISTOPHER J. COCO

5   KEVIN COFSKY

6   LAFAYETTE COOK

7   CARL J. COTE

8   CAMERON CREWS

9   VTOR CUNHA

10   JOSEPH D'ANTONIO

11   STEFFAN DAVIED

12   THOMAS DIFIORE

13   TRISTAN DIAZ

14   SIMON DIXON

15   SHARON DOE

16   SCOTT DUFFY

17   JOHN PETER DZARAN

18   BEN EADES

19   JANELL ECKHARDT

20   KENNETH EHRLER

21   PAUL L. FABSIK

22   DAVID AVERY FAHEY

23   CHRIS FERRARO

24   FLORENCE FLANNIGAN

25   MAX GALKA

Page 8

1   JASLEIGH GEARY

2   DARIOUS GHEORGHE

3   BRADLEY GIARDIELLO

4   MICHAEL GONZALEZ

5   MICHAEL GRAUBERT

6   ANTHONY GREENE

7   KATHRYN GUNDERSEN

8   CAROLYN GURLAND

9   CAMERON GUTHRIE

10   MIRA HAQQANI

11   SAMUEL P. HERSHEY

12   ROBERTO HERNANDEZ

13   IMMANUEL HERRMANN

14   KAITLYN A. HITTELMAN

15   LUCAS HOLCOMB

16   ROBERTO JACOBS

17   JANKO JANKOVIC

18   MICHAEL JAOUDE

19   HARSH JIVANI

20   MIKE JOHNSON

21   ELIZABETH H. JONES

22   GREG KACZKOWSKI

23   DAVID KAHN

24   DAN KAPLAN

25   YARA KASS-GERGI

Page 9

1    RAVI KAZA

2    TRAVIS KEENEY

3    PHILLIP KHEZRI

4    LEA KLORANE

5    CHRIS KOENIG

6    UMBER KOHLI

7    MARIBEL L. KORDOMENOS

8    TOMAS KOSTER

9    RIKI KOULY

10   KATHRYN KUETHMAN

11   JOYCE A. KUHNS

12   CARLO KUHRT

13   ROSS M. KWASTENIET

14   CHRISPTOHER LACKEY

15   TYLER NATHANIEL LAYNE

16   JOE LEHRFELD

17   BRIAN S. LENNON

18   MARK LEONARD

19   NICOLE A. LEONARD

20   ESTHER LEVINE

21   PIETRO VINCENT LICARI

22   JOSE LOPEZ

23   DAVID LOS ARCOS CARCAMO

24   SERBAN LUPU

25   KEVIN M. MANUS

```
 1   ANDY MARKS

 2   CHASE MARSH

 3   BRIAN S. MASUMOTO

 4   CAROL MAUNDER

 5   GEORGIA MEADOW

 6   MOHSIN (MO) MEGHJI

 7   ERIK MENDELSON

 8   BRIAN MENDIETA

 9   LAYLA MILLIGA

10   KEITH NOYES

11   CAITLIN O'CONNELL

12   DONALD L. POYNTER

13   CHRISTOPHER PAGNANELLI

14   JEFF PATTON

15   BRETT A. PERRY

16   GREGORY F. PESCE

17   KHAI PHAM

18   MORGAN PHOENIX

19   KAROLINA PIASEK

20   HANS POLZMACHER

21   MACIEJ PRCZEK

22   CRAIG RASILE

23   ANNEMARIE V. REILLY

24   MARK ROBINSON

25   JONATHAN RODRIGUEZ
```

Page 11

1    MIKE SARKISSIAN

2    JAVIER SCHIFFRIN

3    NOAH M. SCHOTTENSTEIN

4    SAM SCHREIBER

5    TOBY SEGAR

6    DAVID SENES

7    SAMI SAIKH

8    LAUREN NICOLE SICKLES

9    MATTHEW W. SILVERMAN

10   HANNA SIMSON

11   LUKE SPANGLER

12   COURTNEY BURKS STEADMAN

13   CHINGIZ SULEYMANOV

14   KEYAN TAJI

15   ELLE TOUSSI

16   DAVID TURETSKY

17   ELVIN TURNER

18   VETON VEJSELI

19   PATRICIA WALSH

20   CAROLINE WARREN

21   KATIE WICK

22   ZACHARY WILDES

23   ANDREW YOON

24   BRIAN YOUNG

25   KAILA ZAHARIS

Page 12

1    JARNO BERG

2    JOEL BLOCK

3    DAKEN COLEMAN

4    ROBERT M. KAUFMANN

5    RAKESH PATEL

6    MIA COOPER

7    DREW DUFFY

8    SCOTT FLAHERTY

9    UDAY GORREPATI

10   TAYLOR HARRISON

11   DIETRICH KNAUTH

12   ALEX MCCAMMON

13   TIMOTHY REILLY

14   RYAN SCHRAMM

15   PETER J. SPROFERA

16   ZACHARY ZABIB

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3    WITNESSES:              DIRECT:    CROSS:    REDIRECT: RECROSS:

4    OTIS DAVIS

5    By Mr. McCarrick                  58

6    By Mr. Kirsanov                   91

7    By Mr. Frishberg                  95

8    By Mr. Iovine                     97

9

10   RICHARD PHILLIPS

11   By Mr. Weedman                    107

12   By Ms. Brie                       118

13

14   EXHIBITS:                                            PAGE:

15   Exhibit 90                                           75

16   Exhibit 87                                           76

17   Exhibit 102                                          80

18   Exhibit 99                                           82

19   Exhibit 94                                           90

20   Exhibit 237                                          110

21   Exhibit 236                                          112

22   Exhibit 118                                          121

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  Okay, good afternoon.  Starting the

3    recording for October 16th, 2023, two o'clock hearing.

4    Calling Case No. 22-10964, Celsius Network LLC.  For the

5    parties, let's start with the parties in the courtroom.  If

6    anyone is speaking on the record, please come to the (audio

7    glitch) appearance for the record.

8              Again, anyone in the courtroom so far?  Oh.

9              MR. LATONA:  Hi, good afternoon, Deanna.  It's Dan

10   Latona of Kirkland & Ellis.  Today we'll have T.J. McCarrick

11   and Grace Brier, among others for the Debtors.

12             CLERK:  Okay, thank you.  All right.  Yes, Dimitry

13   on Zoom.

14             MR. KIRSANOV:  Good afternoon.  Dimitry Kirsanov,

15   pro se creditor.  Thank you.

16             CLERK:  Thank you.  All right, any additional

17   parties that are speaking on the record this morning --

18   sorry, this afternoon, either in the courtroom or on Zoom?

19   All right.  I will pause the recording for now.  Thank you.

20             (Pause)

21             CLERK:  All right, good afternoon.  For the

22   parties in the courtroom, if anyone is speaking on (audio

23   glitch) this afternoon and would like to state their

24   appearance, please come to the middle podium to do so.

25             WOMAN:  You're not making an appearance?  But

Page 15

1    Deanna's taking it for the recording.

2              CLERK:   They could come back and give it, as long

3    as -- yeah, go ahead.

4              MR. SABIN:  Deanna.  Deanna, hi, it's Jeff Sabin.

5    I'm from Venable LLP for Ignat Tuganov.  Thank you.

6              CLERK:  Okay, thank you.  For the parties on Zoom,

7    if anyone is speaking on the record, please use the raise

8    hand function.  I will ask you to state your appearance.

9    Mr. Schneider.

10             MR. SCHNEIDER:  David Schneider, pro se creditor.

11             CLERK:  Thank you.  Mr. Bernstein.

12             MR. BERNSTEIN:  Good afternoon.  Just in case,

13   Jeffery Bernstein, McElroy, Deutsch, Mulvaney & Carpenter

14   for the New Jersey Bureau of Securities.

15             CLERK:  Thank you.  Mr. Phillips.

16             MR. PHILLIPS:  Richard Phillips, pro se.

17             CLERK:  Okay, thank you.  All right, are there any

18   additional parties at this time that are speaking on the

19   record and have not put in their appearance?  If not, I'll

20   pause the recording for now.  Okay.

21             (Pause)

22             CLERK:  All right.  Good afternoon.  For the

23   parties in the courtroom, if anyone is speaking on the

24   record, please come to the middle podium and state your

25   appearance.

1          WOMAN:  Just give Deanna your appearance.

2          MR. COLODNY:  For White & Case LLP on behalf of

3     the Official Committee of Unsecured Creditors, Aaron

4     Colodny, Keith Wofford, and Joshua Weedman.

5          CLERK:  Okay, thank you.  Are there any additional

6     parties in the courtroom that have stated their appearance

7     on the record?  If so, please come to the middle podium to

8     give your appearance.

9          MR. BRUH:  Deanna, Mark Bruh for the United States

10    Trustee.

11         CLERK:  All right, thank you.  Are there any

12    parties on Zoom that have not stated their appearance for

13    the record?  If so, please use the raise hand function.  Ms.

14    Cornell?

15         MS. CORNELL:  Morning.  Shara Cornell for the

16    Office of the United States Trustee.  Thank you.

17         CLERK:  Thank you.  All right.  Victor?

18         MR. UBIERNA DE LAS HERAS:  Good morning, Deanna.

19    Victor Ubierna de las Heras, pro se creditor.

20         CLERK:  All right, thank you.  All right, any

21    additional parties in the courtroom or on Zoom?

22         All right.  Again, for the parties that have

23    joined, if anyone is speaking on the record this afternoon

24    and has not given their appearance yet and would like to

25    make their appearance, if you are on Zoom, please use the

1    raised hand function to do so.  Mr. Davis.

2              MR. DAVIS:  Otis Davis.  I'm not sure I'll be

3    speaking, but I just want to note my appearance.  Pro se

4    creditor.

5              CLERK:  Thank you.  All right, Jason?

6              MR. IOVINE:  Yes, Jason Iovine, pro se creditor.

7    I don't know if I'm going to speak, just notifying.

8              CLERK:  Okay, thank you.  All right, again, any

9    additional parties that are speaking on the record this

10   afternoon and have not given their appearance yet?  All

11   right, I'll pause the recording for now.

12             (Pause)

13             CLERK:  All right.  Again this after -- good

14   afternoon.  For the parties that are in the courtroom, if

15   anyone is speaking on the record, please come to the middle

16   --

17             MR. McCARRICK:   T.J. McCarrick, Kirkland & Ellis.

18   Oh, you already got it?  Never mind.

19             WOMAN:  Okay, you're going to have to

20   (indiscernible) appearance.  So you go to the podium

21   (indiscernible).  Right there.  Yep.

22             MR. MAZA:  Right now, I should make --

23             WOMAN:  Yeah, she's on.  Deanna, someone making an

24   appearance.  Go ahead.

25             MR. MAZA:  Alan Maza from the SEC and I have on

1    Zoom also my colleagues Therese Scheuer and William

2    Uptegrove.

3              CLERK:  All right, thank you, sir.  Are there any

4    additional parties in the courtroom?  This is the final call

5    for appearances.  All right.  Are there any parties on Zoom

6    that are speaking on the record this afternoon and have not

7    stated their appearance yet?  If so, please use the raise

8    hand function in Zoom.  Mr. Frishberg.

9              MR. FRISHBERG:  Hi, Danial Frishberg, pro se.  I

10   don't plan on speaking (audio glitch).

11             CLERK:  Okay, thank you.  Johan.

12             MR. BRONGE:  Yes, hello.  Johan Bronge, pro se

13   creditor, and I may speak.

14             CLERK:  Okay, thank you.  Yeah, Mr. Bernstein, did

15   you have a question?

16             MR. BERNSTEIN:  No, sorry --

17             CLERK:  Okay.

18             All right, are we waiting for any additional

19   parties or can we start promptly at two?

20             MR. COLODNY:  Hi, Deanna.  This is Aaron Colodny

21   from White & Case.  I believe we are ready to begin.

22             CLERK:  All right, thank you.

23             All right, if everyone could please pay attention

24   to the following announcement.  All persons are strictly

25   prohibited from making any recording of Court proceedings,

Page 19

1    whether by video, audio, screenshot, or otherwise.

2    Violation of this prohibition may result in the imposition

3    of monetary and nonmonetary sanctions.  The clerk of the

4    court maintains an audio recording of all proceedings which

5    constitutes the official record.

6         Parties must state their name each time they speak

7    on the Court record.  Party must join with the full first

8    and last name to be admitted from the waiting room.  Parties

9    that join with initials, a partial name, a designation such

10   as iPhone, et cetera, will not be admitted.  Also the phone

11   number that you sign up for your e-Court appearance needs to

12   be the same number that you use to log in.

13        Also, please keep in mind that you should mute all

14   your cell phone and devices so they do not interfere with

15   the recording.  Thank you.

16        MR. ABREU:  Sorry Deanna, can you hear me?

17        CLERK:  Yes, Mr. Abreu.

18        MR. ABREU:  Just to state that I might speak as

19   well.

20        CLERK:  Okay.

21        MR. ABREU:  Pro se creditor.

22        CLERK:  Okay, Artur Abreu, your appearance is

23   noted.  Thank you.

24        CLERK:  All rise.

25        THE COURT:  All right, please be seated.  Good

Page 20

1    afternoon, everyone.  I'm sure you all had busy weeks even

2    though we weren't in the courtroom last week.  Let me just

3    cover just a few preliminaries.  So we're going to pick up,

4    I know for sure, with the objections today.

5              I inadvertently -- so there was an order that was

6    entered on October 13th and had the list, the order in which

7    I would hear objectors.  I inadvertently omitted Dmitry

8    Kirsanov, and I think it was because he had actually filed

9    the objection before and I hadn't seen it.  So I'm going to

10   include him after number six, Koala 2 LLC.  We'll give Mr.

11   Kirsanov an opportunity to speak then.

12             So I also am aware that the Committee has

13   objected to the new proposed expert report and this really

14   goes -- I know there are also objections to some of the pro

15   se creditors as well.  I'm going to reserve ruling on

16   whether or not the proposed expert report is or is not

17   admissible.  I'm going to hear, and this is really going to

18   go with respect to some of the pro se creditors who are

19   going to speak as well.

20             If you have an objection, you should assert it,

21   but I will listen to the testimony and will decide after

22   whether or not to sustain objections or not.  But I'm going

23   to give people an opportunity to have their say.  Okay?

24             So with that, let me ask first from the Debtor,

25   anything that I need to cover preliminarily before we get

Page 21

1    started?

2          MR. McCARRICK:  Thank you, Your Honor.  T.J.

3    McCarrick, Kirkland & Ellis, on behalf of the Debtors.  Just

4    as a process point, we understand Your Honor entered the

5    October 13th order identifying the order in which you would

6    hear argument and testimony, depending upon whether or not

7    folks submitted testimony.

8          The only -- it's a wee proposal that I would

9    offer for Your Honor's consideration, is whether it would

10   make sense to have the folks who are going to be giving a

11   statement but not evidence or testimony go sequentially and

12   then pick up with the evidence.  I'm happy to do it anyway

13   Your Honor --

14         THE COURT:  Mr. McCarrick, at this stage, I don't

15   have clearly in mind --

16         MR. McCARRICK:  That's perfectly fine.

17         THE COURT:  I thought it would -- it was going to

18   be easier if I had an order, so we don't have five people

19   trying to interject at the same time, not there was anything

20   wrong with it, but it's just difficult with (audio glitch)

21   on Zoom.  Okay.  And the other thing I raise is about remote

22   testimony and I tried to make clear the Federal Rules, Rule

23   43(a) has a rule that essentially requires compelling

24   circumstances in order for me to permit remote testimony.

25         The case law is not particularly well developed on

Page 22

1    this area.  As I understand it, where no objections have

2    been raised to remote testimony, Courts have more often than

3    not permitted the remote testimony.  I think, you know, for

4    example, where there are pro se creditors outside the United

5    States or in California, I'll leave it to the U.S. Trustee,

6    the Committee, and the Debtors to see whether there are

7    objections to that person testifying remotely or not.

8           Obviously, there'll be cross examination by Zoom.

9    But Rule 43(a) creates a pretty strong presumption that the

10   testimony is supposed to be in the courtroom.  Until

11   September 21st, the Bankruptcy Courts had much greater

12   flexibility about it.  After the judicial conference imposed

13   new limitations on remote hearings, it got a little -- it

14   got tighter.

15          So I'm not telling anybody whether to object,

16   don't object, or whatever.  I think, you know, we don't have

17   juries.  Frankly, I think the remote testimony for the most

18   part has gone pretty well, but we'll deal with it as the

19   individuals arise.

20          So as much -- we came up with the order because I

21   just wanted people to know you're next online, you're next

22   online.

23          MR. McCARRICK:  Understood, Your Honor, and we're

24   happy to proceed that way.

25          THE COURT:  Okay.  Thanks very much, Mr.

Page 23

 1    McCarrick.  All right, anything from the Committee before we

 2    start?

 3              MR. COLODNY:  No, Your Honor.

 4              THE COURT:  Okay.  All right --

 5              MR. KIRSANOV:  Your Honor, (audio glitch), pro se

 6    creditor.

 7              THE COURT:  Yes.

 8              MR. KIRSANOV:  I wasn't aware that I would be

 9    number six today.  May I ask the Court --

10              THE COURT:  You're going to be number seven today,

11    Mr. Kirsanov.

12              MR. KIRSANOV:  I understand.  Thank you, Your

13    Honor.  May I ask permission to go last on the list, so

14    prepare?

15              THE COURT:  All right, so right now, I will do

16    that.  I didn't want you to feel that somehow you've been

17    slighted and not put on the list and it was my oversight

18    that kept you from going on.  With your permission, you'll

19    be number 23 after Cathy Lau.

20              MR. KIRSANOV:  Thank you --

21              THE COURT:  Is that all right?

22              MR. KIRSANOV:  Yes, thank you.

23              THE COURT:  Okay.  I slotted you up because I

24    didn't -- you've spoken before.  I didn't want you to feel

25    that I'd left you off and then didn't consider you.

```
 1              MR. KIRSANOV:  I appreciate that sincerely, Your
 2    Honor.  Thank you.
 3              THE COURT:  All right.  So you're going to be on
 4    the list for number 23.  All right?
 5              So let's start with the U.S. Trustee.  Mr. Bruh?
 6              MR. BRUH:  Thank you, Your Honor.  For the record,
 7    Mark Bruh for the United States Trustee.  We will not be
 8    presenting, Your Honor, so that will be quick.
 9              THE COURT:  Okay.
10              MR. BRUH:  We'll just reserve for closing in the
11    case.
12              THE COURT:  Well, let me ask you.  I asked the
13    Debtor, the Committee, and the U.S. Trustee to confer about
14    the Consumer Privacy ombudsman and is -- has there been a
15    resolution reached on that?  I see Ms. Cornell shaking her
16    head, but somebody tell me where we stand on that because
17    she's not on the list.
18              MR. KOENIG:  Good afternoon, Your Honor.  Chris
19    Koenig, Kirkland & Ellis, for the Debtors.  We've been in
20    conversations with her.  We're very close on a resolution of
21    language that would go in a confirmation order.  I don't
22    know whether she intends to testify or not.  If we reach a
23    resolution, maybe her testimony is no longer needed.  We've
24    discussed it with her.
25              THE COURT:  Okay.  And I guess the point, first
```

Page 25

1    off, she's not lawyer, I take it.  Her statement wasn't

2    under oath.

3              MR. KOENIG:  Right.

4              THE COURT:  I went out of my way and this last

5    thing is to put what the two subsections of 1746 are about

6    what it has to say.  Hopefully, you'll be able to work out a

7    resolution.  If she wishes to put the testimony in, point

8    out to her the affirmation that it has to have.

9              MR. KOENIG:  We have.

10             THE COURT:  And it may be that you're not going to

11   want -- if you reached a resolution her testimony

12   (indiscernible) but there won't be cross examination.

13             MR. KOENIG:  Yes.

14             THE COURT:  Okay.  The argument --

15             MS. CORNELL:  Your Honor --

16             THE COURT:  Just a second.  The arguments for her

17   not having to come up from Washington are weaker than

18   somebody who's out of the country.  Go ahead, Ms. Cornell.

19             MS. CORNELL:  Your Honor, Shara Cornell again for

20   the Office of the United States Trustee.  I just wanted to

21   clarify for the record that Ms. Thompson is, in fact, an

22   attorney.

23             THE COURT:  She is.  Well --

24             MS. CORNELL:  Yes, sir.

25             THE COURT:  Then she ought to know what you have

Page 26

1    to do to say something under oath, but in any event.  See if

2    you can work it out.  It may be that she doesn't care about

3    the testimony going in, if you've reached a resolution.

4    Leave that to you to work out.

5            MR. KOENIG:  Right.  I don't want to speak for

6    her.  I suspect that that will likely be the case, but we'll

7    continue --

8            THE COURT:  All right.

9            MR. KOENIG:  -- with her.

10           THE COURT:  That's fine.

11           MR. KOENIG:  Thanks, Your Honor.

12           THE COURT:  Okay.  All right.  The SEC.  Anybody

13   from the SEC wish to make a statement?  I think they had a

14   reservation of rights.  Is anybody from the SEC on Zoom?

15           MS. SCHEUER:  Yes, good afternoon, Your Honor.

16   Therese Scheuer for the U.S. Securities and Exchange

17   Commission.

18           THE COURT:  Yes.

19           MS. SCHEUER:  With me on the line is William

20   Uptegrove and in the courtroom is Alan Maza from the U.S.

21   Securities and Exchange Commission.

22           THE COURT:  Okay.

23           MS. SCHEUER:  Your Honor, the SEC filed a limited

24   objection and a reservation of rights at Docket 3522.  Based

25   on representations by Debtors' counsel, I anticipate the

Page 27

1   Debtors will incorporate changes to respond to the issues

2   raised in our informal comments and limited objections, and

3   we're review any proposed modifications.

4          Your Honor, the SEC does not have an evidentiary

5   presentation for today, but if Your Honor will permit, I

6   would like to clarify a few points for the record.

7          THE COURT:  Please go ahead.

8          MS. SCHEUER:  Thank you, Your Honor.  Certain

9   statements have been made about the SEC's District Court

10  action and our position in the case during the course of

11  these hearings, as including in Mr. Davis' filed statement

12  at Docket 3769, and similar statements may be made again.

13         Your Honor, regarding the District Court action,

14  we would respectfully refer the Court to the SEC complaint

15  for an accurate statement of the SEC's position in that

16  case, which was filed at Docket 3293.  In addition, I wanted

17  to clarify for the record that we're not asking for this

18  Court to rule on whether CEL and Earn are securities, as

19  that is an issue for the District Court, nor are we taking

20  any position as to whether any claim should be subordinated.

21         Your Honor, determining the priority of these

22  claims may turn on whether these programs are debt or equity

23  instruments and not necessarily on whether they're

24  securities.  To the extent the Court may have to make

25  certain findings about whether something is a security, we'd

Page 28

1    reiterate our request that such a ruling be limited to the

2    bankruptcy case and without conclusive effect on the SEC

3    outside of this case.

4          I'm happy to walk the Court through the factual

5    allegations about CEL and Earn and the commission's

6    complaint if that would be helpful to Your Honor.

7          THE COURT:  I -- what I'm going to say now, I've

8    said on the record before and that is -- and while I've

9    certainly reached no final conclusion about it, it seemed to

10   me that it was unlikely that I would have to decide the

11   issue of whether either the Earn or the CEL token was a

12   security in the case of Celsius.  What the Court is faced

13   with is a proposed plan which, with a couple of exceptions,

14   has been overwhelmingly accepted by classes that proposes

15   plan treatment for the CEL token and obviously for Earn

16   account holders.

17         The issue may well be, then, whether dissenting

18   members of accepting classes are receiving at least as much

19   as they would in a Chapter 7 liquidation.  If they are, it

20   seemed likely to the Court that the plan could be confirmed.

21   May be other objections the Court has to deal with, and the

22   Court would be able to do that without having to take a

23   position on whether either Earn or the CEL token was a

24   security.

25         From the Court's standpoint, I usually try not to

Page 29

1    decide more than I have to decide.  And so, it seemed to me

2    -- I'm not foreclosing entirely the possibility, but it did

3    not seem to me that the issues for confirmation in this case

4    were going to require the Court to reach that determination.

5    Obviously, if I did, it's not binding on any District Court

6    or any, you know, or any other Court.

7              So, I mean that -- you know, you're -- the SEC is

8    free to take whatever position it's going to take elsewhere

9    or in this Court.  But that's -- I've said this.  You were

10   that prior hearing we had.  Not everybody was a party to

11   that -- that that was the Court's thinking.  We'll see.

12   Okay?  I don't know what to say more than that.  I can't

13   give you more comfort than that.

14             I understand the SEC's position.  I know these are

15   difficult issues.  I commented before that I think Judge

16   Torres and Judge Rakoff have somewhat different views of the

17   analysis and conclusions.  Obviously, they had two different

18   cases.  But I'm aware of that and I don't -- I'm not looking

19   for the opportunity to jump into the fray of the differences

20   between those two judges and maybe others.  Okay?

21             MS. SCHEUER:  Thank you, Your Honor.

22             THE COURT:  I think with respect -- again and

23   understand, I'm not asking you to waive whatever limited

24   objections you have.  I'll make no secret of it.  I was

25   quite concerned with the events during the Voyager case with

Page 30

1     respect to what certainly appeared to me to be late

2     objections by securities regulators.  It torpedoed one

3     confirmed plan.  I think throughout this case, I have

4     encouraged the Debtors and the Committee multiple times to

5     make sure they were conferring with the regulators, state

6     and federal securities regulators, CFTC, et cetera.

7               I think -- obviously, I was not privy to those

8     conversations, but there were from time to time reports that

9     those were ongoing and I was glad to hear that.  Obviously,

10    the plan structure in Celsius is not the same as it was in

11    Voyager.  I think that that doesn't -- you know, still -- if

12    the plan is confirmed, which is far from being the case at

13    this point, the plan sponsor would still have to get SEC

14    approval and registration for what they're attempting and

15    I'm not -- that's not today -- that's not the issue for the

16    Court at this point.

17              I don't know whether that -- so yes, I've been

18    quite sensitive to the issues of the regulators.  They've

19    been important throughout this case and to the extent that

20    their views could be taken into account and orders adjusted

21    accordingly to avoid those issues, that's helpful.  Anything

22    else you wish to add?

23              MS. SCHEUER:  No.  Thank you, Your Honor.

24              THE COURT:  All right.  Okay.  The New Jersey

25    Bureau of Securities.

Page 31

1              MR. BERNSTEIN:  Good afternoon, Your Honor.

2      Jeffrey Bernstein, McElroy, Deutsch, Mulvaney & Carpenter

3      for the New Jersey Bureau of Securities.

4              THE COURT:  Nice to see you, Mr. Bernstein.

5              MR. BERNSTEIN:  Thank you, Your Honor.  Your

6      Honor, the New Jersey Bureau of Securities filed a

7      reservation of rights at Docket 3524 and that was prior to

8      the Debtor filing at Docket 3526 a resolution of plan

9      language with the state.  Accordingly, I had notified the

10     Debtor earlier today that we no longer intended to make any

11     presentation to the Court today on any issues.  Thank you.

12             THE COURT:  Thank you, Mr. Bernstein.

13             MR. BERNSTEIN:  Good day.

14             THE COURT:  Core Scientific and Core Scientific

15     Operating Company.

16             MR. KOENIG:  Your Honor, again for the record,

17     Chris Koenig for Celsius.   Their reservation of rights was

18     --

19             THE COURT: That was the thing that was resolved?

20             MR. KOENIG:  To the extent their settlement was

21     not approved, their settlement was approved.  I'm not

22     surprised that they're not here today.

23             THE COURT:  Okay.  All right.  Next is 168 Trading

24     Limited.  Is there anyone appearing for 168 Trading Limited?

25             MR. KOENIG:  Your Honor, it's Chris Koenig.  I'm

1   informed by my colleagues that they actually asked if they

2   could go at the conclusion.  We're close on language and --

3              THE COURT:  All right.

4              MR. KOENIG:  -- that was a request that they --

5              THE COURT:  I will --

6              MR. KOENIG:  -- earlier.

7              THE COURT:  The conclusion today or the conclusion

8   --

9              MS. BRIER:  They just said last.

10             MR. KOENIG:  Perhaps this is --

11             THE COURT:  Ms. Nathanson?  You're in mute.

12             MS. NATHANSON:  Apologies, Your Honor.  I'm the

13  next -- counsel for the next objector, so we're not quite up

14  to me.

15             THE COURT:  You're for Koala or --

16             MS. NATHANSON:  Yes.

17             THE COURT:  All right.  Okay.  So I will move --

18  remind me to call -- I don't know where we're going to get

19  to today.  Okay?

20             MR. KOENIG:  And we'll email that as well.

21             THE COURT:  Okay.  Remind me to call them again at

22  the end of today, and if it's not today, we'll see where we

23  are.  Okay.

24             MR. KOENIG:  Thank you.

25             THE COURT:  All right.  Ms. Nathanson, Koala 2

Page 33

1       LLC.

2              MS. NATHANSON:   Thank you, Your Honor.   Leigh

3       Nathanson from King & Spalding for Koala 2 LLC.   We too had

4       filed a limited objection.   This was based on Koala 2's

5       inclusion on the proposed list of equitably subordinated

6       entities.   The Debtor subsequently filed some revisions to

7       the plan language that were designed to address our

8       objection, which was essentially to the effect that the plan

9       did not provide clearly for what would happen to a party

10      that was proposed to be equitably subordinated, but for

11      which the Court ultimately denied that subordination

12      proceeding, should that occur.

13              So the changes that the Debtors have proposed

14      resolve Koala 2's limited objection, but I did just want to

15      note for the record that this objection and Koala 2's

16      inclusion on the proposed equitable subordination list are

17      based on a factual inaccuracy that Koala 2 is an entity that

18      is controlled by Alex Mashinsky.   It is not.

19              We've discussed with the Kirkland team that fact

20      and expect that given the stay of the equitable

21      subordination proceeding, we will have discussions with them

22      and either deal with that at the subordination proceeding or

23      potentially agree to some resolution beforehand.   But I just

24      wanted to note for the record that fact.

25              THE COURT:   All right.   Thank you very much, Ms.

Page 34

1    Nathanson.  All right.  Mr. Bronge, can you hear me?

2              MR. BRONGE:  Yes, hello?  Can you hear me?

3              THE COURT:  Yes, I can.

4              MR. BRONGE:  Yes.  Good afternoon, I suppose it is

5    in New York.  So --

6              THE COURT:  It is.

7              MR. BRONGE:  I, obviously, I'm a pro se and I'm

8    not a hundred percent sure what I'm supposed to do at this

9    stage, but I would like to bring up a couple of issues.  One

10   is that I requested for the witness Oren Blonstein and I

11   have not heard anything about that. So, I don't know if

12   that's going to show up or not because I also saw that the

13   Debtor have objected to it.

14              THE COURT:  Well, let me see.  One of the Debtors'

15   lawyers has approached the podium, and let me have her

16   identify herself and we'll see what happens.

17              MS. BRIER:  Good afternoon, Your Honor.  Grace

18   Brier, Kirkland & Ellis on behalf of Debtors.  Your Honor,

19   Mr. Bronge requested Mr. Blonstein's testimony as part of

20   his exhibit list and witness list.  Mr. Blonstein's a

21   Celsius employee.  He's the chief compliance officer there.

22              We filed an objection to his testimony, a motion

23   in limine, on October 13th.  It's Docket No. 3802.  For the

24   reasons that we list in there, we anticipate based on Mr.

25   Bronge's objection, that it will be questioning that is

Page 35

1    duplicative of questioning he already posed to Mr. Ferraro

2    who was here last week or two weeks ago and offered

3    testimony in response to Mr. Bronge's questions.

4           Mr. Bronge responded and said that he does not

5    anticipate they will be duplicative and we filed our motion.

6    We think that if he's going to ask questions entirely

7    duplicative of Mr. Ferraro's questioning, it would be

8    duplicative and unnecessary.  And to the extent he can

9    proffer or allege that he --

10          THE COURT:  Let's schedule Mr. Blonstein's

11   testimony, and I will not permit duplicative testimony on

12   it.

13          MS. BRIER:  Thank you, Your Honor.

14          THE COURT:  You'll be able to do it.  So Mr.

15   Bronge, you'll get your deposition, but it can't cover what

16   Mr. Ferraro testified about.

17          MS. BRIER:  And Your Honor, my understanding is

18   he's seeking testimony in Court from Mr. Blonstein.  We have

19   reached out to Mr. Blonstein.  He's based in California.

20   We'd request that he can testify remotely as we understand

21   it Mr. Bronge will be questioning remotely and he's, you

22   know, a few hours away at this point for a few questions, it

23   sounds like Mr. Bronge has.

24          THE COURT:  Here's my suggestion.  Well, here's my

25   order.  Arrange his deposition.  He's out of -- he's in

```
 1    California.  He's out of the subpoena range of the Court to

 2    compel him to come to Court to testify.  Let Mr. Bronge take

 3    the deposition remotely and if there are non-duplicative

 4    testimony questions and answers, he'll -- Mr. Bronge will be

 5    able to introduce them here.

 6              MS. BRIER:  Understood.

 7              THE COURT:  So we won't have to have Mr. Blonstein

 8    travel to New York and Mr. Bronge will get to ask his

 9    questions.

10              MS. BRIER:  Understood.  Thank you, Your Honor.

11              THE COURT:  Okay?  And hopefully you can arrange

12    that within the next day or so.

13              MS. BRIER:  We'll do what we can, Your Honor.

14              THE COURT:  Mr. Bronge, does that work for you?

15              MR. BRONGE:  Yeah, that sounds adequate.  So, I

16    will not have duplicative questions.  There might be one or

17    two in that area but they mainly a different focus.

18              THE COURT:  All right.  So Ms. Brier will be in

19    touch with you and arrange for the deposition of Mr.

20    Blonstein for non-duplicative questions and then you'll get

21    a transcript quickly prepared and whatever comes in will

22    come in.  Okay?  Is there anything else you wanted to raise,

23    Mr. Bronge?

24              MR. BRONGE:  Yes.  It has to do with the similar

25    objection that the Debtor had to the exhibit list I want to
```

Page 37

1    have introduced.  They objected to that as well, to all my

2    exhibits.  I don't understand why, and I do -- I would like

3    the Court to allow them.

4              THE COURT:  Ms. Brier, do you want to address the

5    issue of the exhibits that Mr. Bronge has offered?

6              MS. BRIER:  Yes, Your Honor.  We filed objections

7    to and responses to the exhibits that Mr. Bronge included on

8    his exhibit list.

9              THE COURT:  Right.

10             MS. BRIER:  Largely, our objections were that they

11   were more appropriately judicially noticed and entered into

12   evidence.  A lot of them are docket filings.  I'm happy to

13   walk through each of them.  I think there are 11, but it's

14   on Docket No. 3810.

15             THE COURT:  All right.  Just give me a second.

16             MR. BRONGE:  I did early this morning file an

17   extended, an updated list as well.  Obviously, I'm not 100

18   percent familiar what the difference is to have the document

19   in evidence or as a judicial notice.

20             THE COURT:  I'm a little bit at a loss.  Are there

21   --

22             MS. BRIER:  Your Honor, do you want -- would you

23   like us to pull up our objections to the --

24             THE COURT:  Yeah, could you?

25             MS. BRIER:  Absolutely.  So this is Docket No.

Page 38

1   3810.  If someone could please get that to our helpful trial

2   tech, we would love to be able to show that to the Court.

3           CLERK:  Excuse me, who am I making a cohost, if

4   I'm -- is it -- who's screen sharing?

5           MR. LOPEZ:  Jose Lopez.

6           MS. BRIER:  Jose Lopez, please.

7           CLERK:  Okay, he is a cohost.

8           MS. BRIER:  Thank you.  And actually -- thank you.

9   And if you --

10          THE COURT:  Just give me a minute.

11          MS. BRIER:  Of course.

12          THE COURT:  I'm trying to put them up on my other

13  computer as well.

14          MS. BRIER:  Excellent.

15          THE COURT:  Sorry for the delay.

16          MS. BRIER:  No problem.

17          THE COURT:  All right.  So I have 3810 open on my

18  own computer rather than just on the -- on what's on the

19  screen.

20          MS. BRIER:  Excellent.

21          THE COURT:  I'm looking at Mr. Bronge --

22          MS. BRIER:  Perfect.

23          THE COURT:  -- his exhibit offer.

24          MS. BRIER:  All right, so I'm looking at Page 3,

25  starting with Johan Bronge's first exhibit, Mashinsky

1    declaration.  We could pull that -- yeah.

2          THE COURT:  Mashinsky declaration?

3          MS. BRIER:  Yes.  Your Honor, we have no objection

4    to the admission of the Terms of Use that were attached to

5    Mashinsky's declaration and in fact, they are already in

6    evidence as Debtors' Exhibit 38.  He seeks to admit the

7    entire filing.  We just objected to the admission of the

8    declaration itself, which just describes the contents behind

9    it.  But to the extent he intends to use anything in that,

10   we're happy to discuss it.  If he just is using the Terms of

11   Use, already in evidence as Exhibit 38.

12         THE COURT:  Well --

13         MR. BRONGE:  Yeah, can -- so I do intend to use

14   certain parts in the preceding pages as they are relevant to

15   my arguments and to the whole Terms of Use, especially

16   because of the different version of the Terms of Use are

17   described when they were valid and certain other statements

18   in the beginning that are important as well.

19         THE COURT:  I'm overruling the objection and the

20   Mashinsky declaration is an admission and it comes into

21   evidence.

22         MS. BRIER:  Let me see.  Exhibits 2 -- I don't

23   know if it's easier to do this by category or by each

24   exhibit.  I'm happy to --

25         THE COURT:  Well, you can tell me by category and

Page 40

1    then we'll see if we have to go through by exhibits.

2              MS. BRIER:  Understood.  Exhibits 2, 5, 6, 7, 8,

3    9, 10, and 11, it's our position that they are more

4    appropriately judicially noticed than entered into evidence,

5    as many of them are filings or complaints or legal arguments

6    as opposed to evidence that would be admissible.

7              MR. BRONGE:  Okay, can I comment on that?

8              THE COURT:  Go ahead.

9              MR. BRONGE:  Yeah.  First of all, I would

10   appreciate if you can explain the difference between the

11   document being in evidence and subject to judicial notice

12   from a legal standpoint.

13             THE COURT:  I'm going to sustain the objection.

14   I'll consider it as judicial notice, so that's Exhibits 2 --

15   Ms. Brier, which were the other ones?

16             MS. BRIER:  2, 5, 6, 7, 8, 9,. 10, and 11.

17             THE COURT:  What about Exhibit 3?

18             MS. BRIER:  So three is, I think a category

19   slightly separate from the others that we -- has a slight

20   caveat.  The others, I think, all fall within the category

21   of judicial notice.

22             MR. BRONGE:  So if I, I still would like to

23   understand the difference between judicial notice and to the

24   document being in evidence.  Can the Debtor explain that?

25   The reason is that in the Exhibit 3 as well, there is

 1   statements and legal conclusions regarding securities that I

 2   would like to have --

 3              THE COURT:  Mr. Bronge --

 4              MR. BRONGE:  -- able to argue from.  Yes?

 5              THE COURT:  Mr. Bronge.

 6              MR. BRONGE:  Yes.

 7              THE COURT:  It was largely without admission, or

 8   without admitting or denying, so this is not -- it may be

 9   that that was the resolution of the DOJ, you know, for DOJ

10   non-prosecution agreement for an SEC complaint, but there

11   are only portions of it which are actually binding on the

12   Debtor.  So I'll take judicial notice of them but they're

13   not properly in evidence as admissions.

14              MS. BRIER:  Yes, Your Honor, and part of that

15   document is in, depending on what he asks about.  We're

16   happy to object to that as well, but that was our position.

17              THE COURT:  Okay.

18              MR. BRONGE:  May I use those references for argue

19   --

20              THE COURT:  Well, you can try.  We'll see how --

21   we'll have to see as we go along.

22              MR. BRONGE:  Okay.

23              THE COURT:  I'm just making some notes here.

24              Does that deal with all of Mr. Bronge's --

25              MS. BRIER:  That deals with all of his evidentiary

1   -- proposed exhibits, to the extent he offers any evidence

2   at this time.  I don't understand.  He submitted a

3   declaration but reserved the right to cross examine on

4   anything he submits at this time.

5           THE COURT:  All right.  Go ahead, Mr. Bronge.

6           MS. BRIER:  Thank you, Your Honor.

7           MR. BRONGE:  Okay. So I understand that this is

8   not the time to do a proper argument.  Is that correct?

9           THE COURT:  You can make your argument now, sure.

10           MR. BRONGE:  Okay.  So I have two lines of

11   argument that I want to pursue going forward and I also

12   reserve to have another go at this at the late -- later,

13   more appropriate state.  But what I shortly trying to argue

14   is the ownership of the collateral and I base that on my

15   first loan, primarily.  And let me see if I can give you the

16   docket number of that.

17           My -- let me see here, where it is.  So I have

18   filed an objection and I also filed a motion regarding the

19   collateral ownership.  My first loan is governed by the

20   Terms of Service No. 7, the loan agreement number seven,

21   which I think unambiguously states that there is no legal

22   title transfer on collateral.  Therefore, I think that the

23   collateral ownership of that loan particularly should be

24   that the legal title reside with me and it is not part of

25   the bankruptcy estate.

Page 43

```
1              And I also argue that the same applies for my

2      other loans that are governed by Terms of Service No. 9.

3      The basic only thing that has changed in that -- in the No.

4      9 from No. 7 is one sentence that has been added that

5      collateral is exclusive property of Celsius.

6              Now, I argue that when you look at the Terms of

7      Service, the intention of a collateralized loan agreement is

8      not to transfer title and should there be a transfer of

9      legal title involved, it should be explicitly state so, not

10     just a cursory one sentence or not even one sentence in one

11     paragraph, while all other paragraphs referring to the

12     collateral as the borrowers or it's even so in the

13     definition.

14             Additionally, in the terms, General Terms of

15     Service and the Risk Disclosure, it also specifically state

16     that the borrower's risk is not being able to fulfill the

17     loan obligation.  And that is when the collateral is at

18     risk.  And that is very different from what it states when

19     it comes to the Earn accounts.  So I will obviously have a

20     better prepared speech when I come to argument because I

21     thought this was not the time to do this.

22             The other line of -- that I will follow is Earn

23     subordination.  Several governmental entities have rulings

24     saying Earn is a security and securities would be

25     subordinated in Chapter 11.  Especially this plan, I would
```

Page 44

1    receive a significantly better recovery under Chapter 7

2    where Earn would be subordinated.  That also was admitted by

3    the expert Mr. (audio glitch) in the last hearing.

4             So finally, the last thing I want to argue is that

5    the valuation of the collateral is unfair and incorrect.

6    There has been a lot of discussion regarding CEL token

7    valuation where there has been witnesses and arguments that

8    there has been manipulated market in relation to the price

9    of CEL, and that should preclude the use of the petition

10   price.  Now, this turns out that the same is -- seems to be

11   true with Bitcoin as it was heavily shorted by FTX during

12   the time of the bankruptcy of Celsius.

13            That's one thing, but the proposed plan had

14   different pricing of Bitcoin.  I specifically refer to

15   Bitcoin collateral, but it's true even for other collateral

16   because the Debtor suggests to use petition price when

17   valuing the collateral, but when you give back collateral

18   after dollarizing, you use market prices.

19            Now, obviously, when you have the petition price

20   done at the bottom of a bear market, it's very likely that

21   the market price when the actual repurchase of the remaining

22   collateral value in Bitcoin will significantly reduce the

23   amount of Bitcoin you get back, which is unfair.  So my

24   argument is that the valuation should be, one, so either you

25   use market prices all the time or you use petition prices

Page 45

```
 1    all the time.  And I think the fairest thing is to use

 2    market prices as all crypto markets are manipulated one way

 3    or another, short selling, long selling, or as in the case

 4    of CEL, by trying to increase value for insiders.

 5              So these are the three lines of argument and when

 6    it comes to the more appropriate time, I will have the

 7    references all ready for this.

 8              THE COURT:  Let me ask one -- ask for

 9    clarification.  So I understand one of your arguments to be

10    that collateral as a legal matter remain property of the

11    account holder as opposed to becoming property of the

12    Debtor.  Am I correct in that, that's your argument, Mr.

13    Bronge?

14              MR. BRONGE:  That's absolutely correct.  And --

15              THE COURT:  Okay.

16              MR. BRONGE:  And --

17              THE COURT:  And I would just say that when we get

18    to any closing briefs, I would expect the Committee and/or

19    the Debtor to address that issue specifically.  I mean, the

20    issue has come up in the case before.  It's not precisely

21    what was decided in the Earn opinion because it didn't deal

22    with the collateral.

23              I think it would during one other earlier day in

24    the hearing.  I think I was actually pointed to and we did

25    look at the language in the Terms of Use.  I think it may
```

1   have been from an earlier version, I don't remember which

2   version, and looked at the difference in the language.  I

3   just -- I'm not reaching a conclusion.  It just did -- it

4   appeared to me then, that the Debtor had the better side of

5   the argument, that Debtor and the Committee had the better

6   side of the argument that collateral did become property of

7   the estate.

8           But I'll -- I'm going to reserve any ruling on

9   that.  So I understand your point on that, Mr. Bronge.  I

10  think it's a fair legal argument to -- that has to be

11  addressed.

12          MR. BRONGE:  Yes, Your Honor --

13          THE COURT:  I'm not sure I follow --

14          MR. BRONGE:  (indiscernible)

15          THE COURT:  Let me just say I'm not sure I

16  followed completely when you were talking about on

17  valuation, market price.

18          MR. BRONGE:  Yeah.  So let me see if I can explain

19  it better.  So when -- because of the dollarization that is

20  done, there is a petition date price on all the different

21  cryptocurrencies.  Now when you -- let's say you do the set

22  of treatment like the debtor has planned in his plan.  You

23  would use that petition price for bitcoin.  So if you settle

24  for low, one bitcoin will only be valued to $19,980 roughly.

25          But when you -- when the excess collateral after

Page 47

1   such treatment is going to be handed back to the borrowers

2   after the haircut that is in the plan, it will then go out

3   and buy bitcoin for the remaining value and then use market

4   prices.  And for instance, today I think it's $8,000, $9,000

5   more expensive per bitcoin.  And that gives you an

6   additional 30 percent haircut on your bitcoin recovery.  For

7   me, that is very unfair and especially since bitcoin is

8   legal tender and used as a currency and a commodity.  So --

9           THE COURT:  The Bankruptcy Code requires that you

10  use dollars and not bitcoin.  But I think I understand your

11  point.

12          Mr. Koenig, did you want to respond?

13          MR. KOENIG:  Yes.  Thank you, Your Honor.  Chris

14  Koenig, from Kirkland & Ellis, for the debtors.  I just

15  wanted to point out on the loan terms of use points is

16  actually in our confirmation brief and, not surprised, it's

17  a long document.  But if Your Honor wanted to look at that,

18  we'll for sure address it again in closing argument, but if

19  you wanted to refresh the citations we have.

20          THE COURT:  And I did look at it.  But we'll --

21  it's important.  He's not -- Mr. Bronge is not the only

22  person to raise this --

23          MR. KOENIG:  No.  It's a very fair point.

24          MR. BRONGE:  May I interject there?  Because --

25          THE COURT:  Yes, go ahead.

1            MR. BRONGE:  Yeah.  In this response to my motion

2     that the debtor has filed and I have responded to as well,

3     they state only citations from version nine of the loan

4     terms of years and that is, let me say, a little bit unfair

5     since the wording is different in version seven, which is

6     the one that controls the loan I'm discussing here.

7            There is also in those pages that the debtor

8     conveniently didn't want to have as evidence statement that

9     says that the version that was in force when the loan was

10    approved is the one that controls the loan, which means if

11    you have a loan from, let's say, early 2021, you fall under

12    this version seven.  There is no statement of exclusivity --

13    exclusive property to Celsius in that version seven, while

14    there is in version nine.  And there is quite a few

15    references where it's abundantly clear that there is no

16    legal title transfer in version seven.

17            In addition, as I said, in the general disclosure,

18    risk disclosure, there is specific -- it's a specific

19    section stating that the borrower's risk is in conjunction

20    with notes fulfilling the loan obligation.  And finally, the

21    debtor has in the 168 -- where they discuss the 168 issue,

22    they refer to their master loan agreement in one space, and

23    there it's again unambiguously clear how it's written when

24    you do transfer title.  Very different from any other terms

25    and service that the retail borrowers have.

1           Additionally the debtor has not shown, properly

2     shown any of their master loan agreements which they argue

3     are different from the retail loan agreements, and that's

4     why these groups should have different treatment.  But as

5     long as they don't show those agreements, it's just hearsay

6     in my view.  So there's two places in the terms and service

7     and at least one master loan agreement where you can

8     explicitly see how the agreement should be written if there

9     is an attempt to try and transfer the ownership title, and

10    it's that master loan agreement for the 168 issue.  It's

11    also in the sale and repurchase agreement that was the

12    structure that was done in UK.  You can see -- if you

13    compare those two agreements, it's abundantly clear that

14    title is transferred in the sale and repurchase agreement.

15           But no such statements are available in any of the

16    terms of service for the retail loans, not even in number

17    nine.  So to me, it's no question here because in a common

18    sense approach (indiscernible) collateralized loan agreement

19    not to transfer title.  Those are done to provide security

20    for an obligation to repay a loan.  If they --

21           THE COURT:  Well, I'm not sure that the language

22    in the terms of use supports your argument.  But we're going

23    to leave that for the closing.

24           MR. BRONGE:  Yes.  I understand that.  But --

25           THE COURT:  Because I don't have the terms of use

Page 50

1    open in front of me, Mr. Bronge.

2              MR. BRONGE:  No.  There is many --

3              THE COURT:  But I recall it saying that when

4    collateral is deposited with the debtor, they have the right

5    to hypothecate, rehypothecate, et cetera, all of the

6    attributes of ownership.

7              MR. BRONGE:  Yes.  But --

8              THE COURT:  But that's not the issue.  I

9    understand your argument, Mr. Bronge.

10             MR. BRONGE:  Yeah.  So --

11             THE COURT:  (indiscernible) have we gone through

12   all of his list of exhibits and, one, I overrule the

13   objection as to the Mashinsky declaration, which comes in as

14   an admission; 2, 3, 5, 6, 7, 8, 9, 10 and 11 are all

15   judicial notice.

16             WOMAN 1:  Yes, Your Honor.  Two points from our

17   end.  To the extent any of his testimony, or I --

18             THE COURT:  That wasn't testimony.

19             WOMAN 1:  That was exactly my question.  I was

20   wondering if any of that --

21             THE COURT:  It's not testimony.

22             WOMAN 1:  -- was given testimonial value.  Thank

23   you.  Then no cross from us as to that argument.

24             THE COURT:  Right.

25             WOMAN 1:  And to the extent we are sending up Mr.

Page 51

```
 1    Bronstein's declaration, my understanding from Your Honor's

 2    order is that we will be entering that evidence --

 3              THE COURT:  Correct.

 4              WOMAN 1:  -- as deposition designation --

 5              THE COURT:  Yes.

 6              WOMAN 1:  -- from the deposition.

 7              THE COURT:  Correct.

 8              WOMAN 1:  Understood.  We just would reserve

 9    rights to enter a rebuttal evidence to the extent anything

10    is still open as to his evidence to that point.

11              THE COURT:  That's fine.  Okay.  All right.  All

12    right.

13              Thank you, Mr. Bronge.

14              MR. BRONGE:  Thank you.

15              WOMAN 1:  Thank you, Your Honor.

16              THE COURT:  All right.  Just bear with me now.

17    The next is Harrison Schoenau, and I may have mispronounced

18    your name.  Is Mr. Schoenau on Zoom?

19              Mr. Colodny?

20              MR. COLODNY:  Hi, Your Honor.  Aaron Colodny, from

21    White & Case, on behalf of the Official Committee of

22    Unsecured Creditors.  Mr. Schoenau objected to the ADR

23    procedures.

24              THE COURT:  I'm having a little trouble hearing

25    you.
```

Page 52

1          MR. COLODNY:  Sorry.  Mr. Schoenau objected to the

2    ADR procedures, and we've been working with him and counsel

3    for the withhold group this week.  I think we're very close.

4    We're talking about form discovery requests that hopefully

5    will speed up the exchange of information between parties,

6    and I hope that we get to the bottom of that shortly.  We've

7    been trying to push that along with Your Honor's comment

8    last week and hope to be done soon.

9          THE COURT:  All right.  Mr. Davis, you're next.

10          MR. DAVIS:  Thank you, Your Honor.  Your Honor,

11    I'm objecting to the 25-cent CEL token settlement between

12    the UCC and the debtors.  I'm also objecting to the UCC and

13    the debtors giving me 81 cents for my CEL token in custody

14    and 25 cents for my CEL tokens in Earn, which is not

15    equitable, which objections are all outlined in my

16    "Statement Under Oath of Otis Davis" located at Docket 3769.

17          Your Honor, the day the UCC and the debtors agreed

18    to give CEL token holders in custody 81 cents which was on

19    or around February 28, 2023 is the day the debtors and the

20    UCC agreed that all CEL token holders, regardless if they're

21    in custody or Earn to get 81 cents and Your Honor approved

22    that CEL token custody settlement.

23          I also object, Your Honor, to the Max Galka expert

24    report for undisclosed bias which is also in my statement

25    under oath at Docket Number 3769.  And lastly, Your Honor, I

Page 53

1    would also like to join in Johan Bronge's deposition

2    request.  I have a few questions for Mr. Blonstein as well.

3    Thank you.

4            THE COURT:  Well, first off, Mr. Davis, unless you

5    requested and this Court approved remote testimony, your

6    direct testimony does not come in.

7            What's the position of the debtor with respect to

8    that?  I set this out quite clearly in an order for today's

9    hearing that Federal Rule of Civil Procedure 43(a) requires

10   in-court testimony.  Written direct is fine, but the

11   declarant has to be available in court for cross-

12   examination.  Let me first -- were you able to take Mr.

13   Davis's deposition?

14           MR. MCCARRICK:  We were, Your Honor.

15           THE COURT:  All right.  Do you object to his --

16   the direct occurring by Zoom?

17           MR. MCCARRICK:  I think Your Honor is well within

18   your rights to enforce the pretrial procedures which were

19   clear I think on multiple occasiosn that --

20           THE COURT:  Where are you located, Mr. Davis?

21           MR. DAVIS:  I'm in Jamaica.

22           MR. MCCARRICK:  We're prepared to proceed with

23   cross-examination, to the extent that Your Honor wishes.

24   But we think your pretrial order was clear and that a

25   request has not been filed by Mr. Davis to submit his direct

Page 54

1    or to appear remotely for purposes of this hearing.

2              THE COURT:  Mr. Davis, did you receive the order

3    that said that if you wished to have remote testimony, you

4    had to file an application?

5              MR. DAVIS:  No, Your Honor.  I don't recall seeing

6    it.

7              THE COURT:  It was just filed a couple of days

8    ago.

9              MR. DAVIS:  I'll check the docket.  But I don't

10   recall seeing it.  I'm outside the country.  I simply don't

11   recall seeing it.

12             MR. MCCARRICK:  However Your Honor wants to

13   proceed, the debtors are happy to, although, if it's

14   acceptable, we will ask Mr. Davis to go on camera for his

15   cross.

16             THE COURT:  Yeah.  Just a second.  So I'm

17   referring to ECF Document 3813.  It was filed on the docket

18   on October 13, 2023, and it says, in part, beginning at the

19   bottom of Page 1, "For the direct testimony to be admitted

20   in evidence, witnesses must appear in the courtroom for

21   cross-examination and redirect examination unless the Court

22   permits remote appearance by Zoom pursuant to Federal Rule

23   of Civil Procedure 43(a) which requires, in relevant part,

24   'for good cause and compelling circumstances and with

25   appropriate safeguards, the Court may permit testimony in

Page 55

```
1    open court by contemporaneous transmission from a different

2    location.'  Witnesses requesting to appear remotely must

3    file an application with the Court requesting to do so and

4    must satisfy the compelling circumstances standard."  You

5    didn't do that.  I'm going to reserve ruling on whether I'm

6    going to permit your testimony to be considered by the

7    Court.  You submitted -- you submitted written direct.  Let

8    me just find it again.

9              MR. DAVIS:  Your Honor, does that include my

10   deposition or that's outside my deposition?

11             THE COURT:  Just stop.

12             MR. MCCARRICK:  Your Honor, the docket number --

13             THE COURT:  3769.

14             MR. MCCARRICK:  Beat me to it.

15             THE COURT:  So your "Statement Under Oath of Otis

16   Davis" was submitted before the Court posted what is the

17   rules.  I didn't make up the rules about what oath has to

18   be.  I will take it under consideration.  I'll permit you to

19   cross-examine Mr. Davis now.  So your direct testimony is in

20   evidence, subject to being stricken for failure to comply

21   with the rules.  But I'll permit you to go ahead and cross-

22   examine Mr. Davis now.

23             MR. MCCARRICK:  Thank you, Your Honor.  May I

24   approach with copies of the cross-examination exhibit

25   binder?
```

Page 56

```
 1                 THE COURT:  Sure.  Please.  Go ahead.

 2                 CLERK:  Judge Glenn?  He has to be sworn in?  He

 3      has to be sworn?

 4                 THE COURT:  Yes.  He has to be sworn, particularly

 5      since he didn't follow the oath for the --

 6                 MR. MCCARRICK:  Yes, and could I ask that his

 7      camera be enabled?

 8                 THE COURT:  Yeah.  Could you turn your camera on,

 9      Mr. Davis?

10                 MR. MCCARRICK:  Your Honor, I didn't know I was

11      going to be deposed today.  I have a t-shirt and shorts on.

12                 THE COURT:  Mr. Davis, if you want your testimony

13      considered, you have to turn your camera on.

14                 MR. DAVIS:  I'm not saying no.  I'm just telling

15      you I have a t-shirt and shorts on.

16                 THE COURT:  That's fine.  That's fine.  If you

17      would raise your right hand, and the ECRO operator will --

18                 MR. DAVIS:  Can I put a white shirt -- can I put a

19      regular white shirt on?

20                 THE COURT:  Mr. Davis, raise your right hand and

21      be sworn.

22                 CLERK:  Do you solemnly swear or affirm that all

23      the testimony you're about to give before this Court is the

24      truth and the whole truth?

25                 MR. DAVIS:  Yes, I do.
```

1              THE COURT:  Okay.

2              MR. MCCARRICK:  May I proceed?

3              THE COURT:  Yes.

4                    CROSS-EXAMINATION OF OTIS DAVIS

5      BY MR. MCCARRICK:

6      Q    Good afternoon, Mr. Davis.

7      A    Good afternoon.

8              THE COURT:  Just identify yourself for the record.

9              MR. MCCARRICK:  This is TJ McCarrick, Kirkland &

10     Ellis, on behalf of the debtors.

11     BY MR. MCCARRICK:

12     Q    You've offered an opinion on the value of CEL token,

13     correct?

14     A    The petition date price opinion, which was 81 cents.

15     Correct.

16     Q    And that's right, your view, your personal view is that

17     CEL token's value as of the petition date was 81 cents,

18     correct?

19     A    Correct.

20     Q    That 81 cents figure is based on the price of CEL token

21     on the petition date?

22     A    That is correct.

23     Q    And so what you're focused on is the price, correct?

24     A    The price.

25     Q    And you agree with me there's a difference between

1    price and value, correct?

2    A    I do.

3    Q    You personally didn't conduct a valuation of CEL token,

4    correct?

5    A    I did not.

6    Q    And you're not qualified to provide a valuation of CEL

7    token, correct?

8    A    I'm not an expert.

9    Q    Yeah.  I tallied up --

10   A    No, I'm not.

11   Q    I'm sorry.  Please.

12            THE COURT:  He answered your question, I thought.

13            MR. MCCARRICK:  Okay.

14   BY MR. MCCARRICK:

15   Q    Okay.  You're not trained in valuation techniques,

16   correct?

17   A    Correct.

18   Q    And instead you're offering a valuation opinion from

19   someone you claim is an expert witness, Hussen Faraj,

20   correct?

21   A    Correct.

22   Q    And your expert does not agree with you that the value

23   of CEL token is 81 cents, true?

24   A    He came to the valuation of 71 cents.

25   Q    And 71 cents is different than 81 cents, correct?

Page 59

1   A     Yes, it is.

2   Q     The 71 cents is also different from the 86-cent value

3   that you discussed in your sworn statement, true?

4   A     I don't recall discussing any 86-cent value in my sworn

5   statement.

6          MR. MCCARRICK:  Okay.  Can we display Celsius

7   Exhibit 82, which would be Tab 1 in the cross binder.  It's

8   Mr. Davis's sworn statement.

9          CLERK:  Give me one moment, please.  All right.

10  Mr. Lopez is a co-host.

11         MR. MCCARRICK:  Thank you, and can we turn to Page

12  PDF -- or PDF Page 86, Exhibit 82?  And can you blow up the

13  top paragraph there?

14  BY MR. MCCARRICK:

15  Q     This is an excerpt from your sworn statement in which

16  you're discussing the expert report of Mr. Galka, correct?

17  A     Correct.

18  Q     And what you're observing here is that certain

19  dislocation events were backed out, Mr. Galka's price should

20  have been 86 cents, correct?

21  A     I think that should have been -- it could have been 81.

22  But I don't recall doing the 86 cents.

23  Q     Well, do you see at the last line here where it says, I

24  will submit to this Court the average price between both

25  dislocation events is 86 cents?

Page 60

1    A    I see that.

2    Q    Okay.  You also in your --

3              MR. MCCARRICK:  You can take that down, Mr. Lopez.

4    Thank you.

5    BY MR. MCCARRICK:

6    Q    You also in your sworn statement refer to a $2.01 price

7    value, correct?

8    A    Correct.

9    Q    And your expert doesn't agree with you that the value

10   of CEL token is $2.01, correct?

11   A    He does not.

12   Q    You also discussed a $2.88 figure in your sworn

13   statement, correct, Mr. Davis?

14   A    Correct.

15   Q    And your expert doesn't agree with you that $2.88 is

16   the value of CEL token on the petition date, correct?

17   A    He didn't opine on the $2 billion claim that was filed

18   in the FTX bankruptcy.

19   Q    So is that a yes to my question, Mr. Davis, that your

20   expert does not agree with you that the value of CEL token

21   on the petition date is $2.88?

22   A    My expert agreed that the value is 71 cents.  You are

23   correct.

24   Q    Okay.  So fair to say, sir, you've put forward four

25   different potential CEL token valuations, 81 cents, 86

Page 61

```
 1    cents, $2.01 and $2.88, correct?

 2    A    Sir, I'm not an expert.  The $2.01 came from a

 3    dislocation event.  But your expert, Mr. Galka, said as a

 4    result the price would be 35.5 cents based on a dislocation.

 5    So I said why not use the Terra Luna dislocation event which

 6    is a much bigger dislocation event.  Why are you just using

 7    one dislocation event?  We had two huge dislocation events

 8    in crypto and the Terra Luna one was much bigger.

 9    Q    Okay, and just to be clear, what you're talking about

10    now are the two dislocation events that you think should

11    have been, or that you criticize Mr. Galka for not using,

12    correct?

13    A    Correct.

14    Q    Or for not backing out, I should say, correct?

15    Q    My opinion is if he's going to use one dislocation

16    event, why not use other dislocation event, which was much

17    bigger.

18    Q    And let's just get on the record what those dislocation

19    events are.  The first dislocation event is the collapse of

20    Terra Luna you just testified about, correct?

21    A    Correct.

22    Q    The second dislocation event is the pause on June 12,

23    2022, on Celsius's platform, correct?

24    A    Correct.

25    Q    And you think, sir, that the fair market value of CEL
```

Page 62

1    token is best measured before both of those dislocation

2    events, don't you?

3    A    Sir, I'm not an expert.  My expert agreed that 71 cents

4    is a fair value for CEL token.  I was simply pointing out

5    that -- I was simply pointing out that Mr. Galka, prior to

6    the pause, said the price should be 35.5 cents.  That's one

7    dislocation event.  And I was saying to the Court, if you're

8    going to use this dislocation event, why not use the other

9    dislocation event where the price was $2.01?  You can't just

10   use one dislocation event and ignore a bigger dislocation

11   event.

12   Q    Okay.  I just want to make clear, it is your sworn

13   testimony that the fair market value of CEL token is best

14   measured before the Terra Luna dislocation event and the

15   pause, true?

16   A    Correct.  That's what I wrote.

17   Q    That's what you put in your sworn statement, correct?

18   A    That's what I put in my sworn statement.

19   Q    Terra Luna collapsed May 6, 2022, correct?

20   A    It happened over a timeframe.  It didn't happen in one

21   day.

22   Q    Okay.  What's the timeframe, sir?

23   A    I think the timeframe was around -- I think it was

24   around May 7th to May 12th, May 13th.

25   Q    All right.  So it's your position that any valuation of

Page 63

1    CEL token should be before May 7, correct?

2    A    Sir, my opinion is if Mr. Galka is going to use one

3    dislocation event, why not use another?  That's all I was

4    saying.  There are two dislocation events.  Why would you

5    choose the lower one?  If you're going to choose 35.5 cents,

6    why not choose the $2.01 cents?

7    Q    My question, Mr. Davis, is, is it your position that

8    the fair market value of CEL needs to be measured, or is

9    best measured before both of those dislocation events, yes

10   or no?

11   A    Sir, my fair market value of CEL, I agree with my

12   expert, should be 71 cents.  I'm not an expert.  I did

13   provide this document.

14           THE COURT:  Mr. Davis, listen to the question

15   again, and then answer the question.

16           Go ahead, ask your question again, Mr. McCarrick.

17   BY MR. MCCARRICK:

18   Q    Mr. Davis, is it your position that the fair market

19   value of CEL token is best measured before the collapse of

20   Terra Luna and the pause, yes or no?

21   A    No.

22   Q    Okay.  You submitted a sworn statement in this case,

23   correct?

24   A    Correct.

25   Q    Told the truth in that sworn statement, didn't you?

Page 64

1    A    I did.

2    Q    You had the chance -- actually, you submitted an

3    unsworn statement first, correct?

4    A    I'm not sure what that means.

5    Q    Okay.  Well, you submitted your sworn statement after

6    reviewing it carefully, correct?

7    A    Correct.

8    Q    And you stand by everything in that sworn statement?

9    A    I do.

10           MR. MCCARRICK:  Okay.  Mr. Lopez, can we please

11   put Celsius Exhibit 81 back up?  And we're going to go to

12   Page 6 of the PDF.

13           THE COURT:  What's the page of the ECF?  I want to

14   see it my screen here so I can see it.

15           MR. LOPEZ:  ECF 3769, Page 6.

16           THE COURT:  Page 6?  Okay.  Go ahead.

17           MR. MCCARRICK:  It's Page 7 of the PDF with the

18   exhibit slip sheet.  Okay.

19           THE COURT:  Go ahead.

20   BY MR. MCCARRICK:

21   Q    This is your sworn statement, correct?

22   A    Correct.

23   Q    Do you see where you write, "I submit to this Court

24   that the fair market value of CEL token is best measured

25   before both of these dislocation events, one being the

1   pause, the other being the gigantic collapse of the $60

2   billion crypto project, Terra Luna."

3   A    That was my opinion before I was in contact with my

4   expert.  I filed it before speaking to my expert.  I see

5   that, yes.

6   Q    Well, that's not true, sir, is it?  You contacted the

7   expert during the first or second week of October, right?

8   A    But he didn't agree to testify then.  We were just

9   talking.

10  Q    Okay.

11  A    He didn't agree to testify until, I think, around seven

12  or eight days ago, or write a report, I should say.

13  Q    When was the first time you talked to Mr. Faraj?

14  A    The first time ever?

15  Q    Yes, sir.

16  A    I think it was after Celsius filed for bankruptcy, and

17  he was on a (indiscernible) where I was on, I think,

18  probably July 2022 or maybe August 2022.

19  Q    Okay.  Well, the first time you talked to Mr. Faraj

20  about the expert report in this case was on October 6th,

21  wasn't it?

22  A    It wasn't about the expert report that we discussed on

23  October 6th.  He just contacted me and said, if you need

24  some help, I can provide some assistance.  We didn't speak

25  about him writing a report until about, I think, around

Page 66

1    seven or eight days ago.

2    Q    Okay.  Well, you posted on Twitter about Mr. Faraj's

3    71-cent valuation before October 11th, didn't you?

4    A    Correct.

5    Q    And you submitted this sworn statement on October 11th,

6    correct?

7    A    October 11th was around five or six days ago, sir.

8    Q    Right.  My question is, you were aware of Mr. Faraj's

9    71-cent valuation before you submitted this sworn statement

10   to the Court, true?

11   A    I was not aware of it.

12   Q    Okay.  So it's your -- I just want to be very clear.

13   It's your sworn testimony that you were not aware of the 71-

14   cent valuation before October 11th?

15   A    It is my sworn testimony that I was not aware of Mr.

16   Faraj's 71-cent valuation before I submitted this.  That is

17   my testimony, my sworn testimony.

18   Q    Okay.  In any event, you generally think that any

19   valuation should exclude trading data from the Terra Luna

20   collapse, correct?

21   A    I'm not sure what that means.

22   Q    Okay.  You agree with me that Mr. Faraj, his own

23   valuation period, looked at data from May 21st to June 9th,

24   correct?

25   A    Correct.

Page 67

1    Q    And you don't criticize Mr. Faraj for doing that, do

2    you?

3    A    No, I do not.  He's an expert.  I'm not.

4    Q    Well, Mr. Galka is an expert too, right?

5    A    Yes.  He's an expert.  I disagree with his opinion.

6    Q    Okay.  You agree with me that Mr. Faraj, your expert

7    witness in this case, did not value CEL token as of the

8    petition date, correct?

9    A    He did not.

10   Q    Okay.

11   A    You testified that Mr. Faraj contacted you to offer an

12   expert opinion in this case, right?  He was the first one to

13   reach out to you?

14   A     I don't recall who contacted who first.  I remember

15   there are some tweets back and forth that were public, and

16   he could have contacted me first.  I could have contacted

17   him first.  I really don't remember who contacted who first,

18   but I believe he contacted me first.  But as I said, I don't

19   recall who contacted who first.

20   Q    Okay.  Well, you gave a deposition in this case,

21   correct?

22   A    Correct.

23   Q    The deposition was, like, 48 hours ago?

24   A    Correct.

25   Q    You took the same oath that you took today?

Page 68

1   A      Yes, I did.

2   Q      And you told the truth during that deposition?

3   A      Yes, I did.

4            MR. MCCARRICK:  Okay.  Mr. Lopez, can we look at

5   Page 41, Lines 2 to 5 of Mr. Davis's deposition?

6   BY MR. MCCARRICK:

7   Q      Do you have that?  Do you see that on your screen

8   there, sir?

9   A      I see that.

10  Q      And did I ask you this question, and did you give this

11  answer:

12         Question: Okay.  So who contacted who first?  Did you

13  contact Mr. Faraj or did Mr. Faraj contact you?

14         Answer: He contacted me.

15         That's the testimony you gave, correct?

16  A      Correct.

17            MR. MCCARRICK:  Okay.  You can take that down.

18  BY MR. MCCARRICK:

19  Q      You spoke with Mr. Faraj twice on the phone, correct?

20  A      Correct.

21  Q      The first time, he offered to provide an expert report

22  on the value of CEL token, correct?

23  A      I don't recall exactly what the first conversation was

24  about.  They may blend in my mind, but if you have something

25  to refresh my recollection, I'm happy to look at it.

Page 69

1   Q    Sure.  We can go back to your deposition.  Let's look

2   at Page 33, Lines 20 to 24.  And do you see where I asked

3   you what kind of assistance did Mr. Faraj offer, ad your

4   answer was, he said he could prepare an expert report and do

5   an analysis and come to the fair market price of CEL token.

6   Do you see that?

7   A    Correct.

8   Q    Is your recollection refreshed that that's the

9   assistance that Mr. Faraj offered you during the first phone

10  call you had with him?

11  A    Correct, and I recall asking him if there would be any

12  charge, if he would charge, and he said no, he would not

13  charge me.

14  Q    Okay.  So Mr. Faraj said he wouldn't charge you.  Did

15  he ask you to do anything in return?

16  A    No.  He did not.

17  Q    Did he ask you to do --

18  A    I did ask him --

19  Q    Sorry.  Go ahead.

20  A    I did ask him why he's doing this.  He says he loved

21  the space and he believes he can add value and give the

22  Court a proper valuation.

23  Q    Okay.  The second phone call you had with Mr. Faraj,

24  you claim you didn't discuss anything related to these

25  Chapter 11 cases at all, right?

1    A    We didn't discuss anything related to the Chapter 11

2    cases because I said to him at the beginning of the

3    conversation that I don't have counsel here on this phone,

4    so I don't have any attorney-client privilege as far as I

5    know.  So we shouldn't even discuss anything related to the

6    Chapter 11 or your expert report or what you're going to do

7    or your value or anything like that because it's all

8    discoverable.

9    Q    Well, we'll get to whether or not it's discoverable in

10   a second.  You communicated with Mr. Faraj in writing as

11   well, correct?

12   A    Correct.

13   Q    You direct messaged Mr. Faraj on Twitter, correct?

14   A    Correct.

15   Q    You had conversations with Mr. Faraj on WhatsApp

16   correct?

17   A    Correct.

18   Q    And at your deposition, I asked you to read those

19   messages with your expert witness into the record, didn't I?

20   A    Yes, you did.

21   Q    And you refused to do that, didn't you, sir?

22   A    I did not read them into the record.

23   Q    You acknowledge --

24            THE COURT:  Did you refuse to do that?

25            THE WITNESS:  I did refuse to do that, Your Honor.

Page 71

```
 1              THE COURT:  Go ahead.

 2    BY MR. MCCARRICK:

 3    Q    You acknowledge that in those messages you talked about

 4    what the Court was interested in with respect to the value

 5    of CEL token, correct?

 6    A    I don't recall that.

 7              MR. MCCARRICK:  Okay.  Could we bring up Mr.

 8    Davis's deposition, Page 44, Lines 13 to 22.

 9    BY MR. MCCARRICK:

10    Q    And I asked you some questions about whether or not you

11    had discussed the Court or what the Court is interested in,

12    correct?

13    A    Correct.

14    Q    Did I ask this question, and did you give this answer:

15         Question: I'm not assuming you disparaged Judge Glenn

16    at all.  I'm just wondering whether or not you had any

17    conversations about what you think Judge Glenn might be

18    interested in and what testimony you might want to elicit

19    from Mr. Galka -- not Mr. Galka, excuse me, Mr. Faraj.

20         Answer: The conversation would be around Judge Glenn

21    wants a value for CEL token.  Mr. Galka couldn't give him

22    that value.

23         Did I ask that question?  Did you give that answer?

24    A    Yes, you did.

25              MR. MCCARRICK:  Okay.  You could take that down,
```

Page 72

1    Mr. Lopez.

2    BY MR. MCCARRICK:

3    Q    Mr. Davis, you're familiar with the concept of utility

4    token, correct?

5    A    Yes, I am.

6    Q    A utility token is a token that is used in connection

7    with a particular ecosystem or platform, correct?

8    A    Correct.

9    Q    And a utility token's value primarily derives from the

10   use cases it has on the ecosystem it's in, fair?

11   A    That is not fair.

12   Q    Well, you would agree with me that the more utilities

13   that a token has, the better it is, right?

14   A    Correct.

15   Q    And CEL token is a utility token, in your view, right?

16   A    It is.

17   Q    Before the pause or petition date, you thought that

18   CEL's utility could use some improvement, correct?

19   A    Correct.

20   Q    In your view, there weren't enough use cases for CEL

21   before the pause and petition date, correct?

22   A    Correct.

23   Q    And in fact, you talked with Celsius's former CEO, who

24   is now under federal indictment, Alex Mashinsky, about how

25   to improve CEL, correct?

1    A    Correct.

2            MR. MCCARRICK:  Okay.  Mr. Lopez, we'd like to

3    look at Celsius Exhibit 90, which is Tab 3 in the cross

4    binder.  And can we go to Page 3 of the PDF?  And can we

5    blow up the -- no, the one before that.  I'm adjusting my

6    head, Mr. Lopez.  Thank you.

7    BY MR. MCCARRICK:

8    Q    That's an email from yourself to Mr. Mashinsky.  Do you

9    see that?

10   A    What date is this?

11   Q    December 6, 2021.  Do you see that's an email from you

12   on December 6, 2021?

13   A    Correct.  I see that.

14   Q    It says CEL token fixes, correct?

15   A    Correct.

16   Q    And you proposed a number of changes to the CEL token

17   program, right?

18   A    Correct.

19   Q    And the idea was to make CEL more attractive to users,

20   true?

21   A    True.

22   Q    One of the reasons you wanted to make CEL more

23   attractive to users is so that Celsius wasn't the only whale

24   in the marketplace doing buybacks; is that correct?

25   A    Celsius was not the only whale that I know that was in

1    the marketplace doing buybacks.

2         MR. MCCARRICK:  Okay.  Let's turn to Page 5 of the

3    PDF, and I want to look at Entry Number 32.  Page 4.  There

4    we go.  Could we blow up Number 32?

5    BY MR. MCCARRICK:

6    Q    Do you see where you wrote Mr. Mashinsky, you can

7    guarantee more people in the market like Celsius buying lots

8    of CEL tokens every week, and this creates a new flywheel

9    effect.  Do you see that?

10   A    I see that.

11   Q    So it's your understanding that in December 2021,

12   Celsius was buying lots of CEL tokens on a weekly basis,

13   right?

14   A    They did their weekly buybacks on a weekly basis.

15   Q    And it's your understanding that those weekly buybacks

16   created a flywheel effect, correct?

17   A    Correct.

18   Q    And the gist of a flywheel effect is that by increasing

19   demand, CEL token price is going to rise and the cycle is

20   going to reinforce itself, true?

21   A    True.

22   Q    And at that time, sir, was it or was it not your view

23   that Celsius was the only whale making buybacks?

24   A    Sir, I know what I wrote, but I could not have known

25   how many whales are buying CEL token.  I wrote that, but

Page 75

1    there is no way for me to know how many whales are buying

2    CEL tokens.  We had a lot of whales in Celsius.

3    Q    The only whale that you knew of at the time, sir, was

4    Celsius making buybacks, right?

5    A    I didn't know of any of a specific whale, but there

6    were other whales, but I didn't know of any of a specific

7    whale.

8    Q    Okay.  This isn't the last time you talked to Mr.

9    Mashinsky about CEL.

10           MR. MCCARRICK:  Actually, Your Honor, we'd like to

11   move Exhibit 90 into evidence.

12           THE COURT:  Any objections?  Exhibit 90 is in

13   evidence.

14       (Exhibit 90 admitted into evidence.)

15   BY MR. MCCARRICK:

16   Q    Okay.  That's not the last time you talked to Mr.

17   Mashinsky about CEL token utility, correct?

18   A    Correct.

19           MR. MCCARRICK:  Okay.  Mr. Lopez, can we bring up

20   Celsius Exhibit 87?  Can we turn to Page 2 of the PDF, and

21   can we blow up the bottom email from Mr. Davis so we can see

22   what the date is?

23   BY MR. MCCARRICK:

24   Q    This is an email from you to Mr. Mashinsky on January

25   26, 2022.  Do you see that?

1    A    I see that.

2    Q    And that is, in fact, a fair and accurate copy of your

3    email.  We looked at this during your deposition, right?

4    A    Right.

5             MR. MCCARRICK:  Okay.  Your Honor, we'd offer

6    Celsius Exhibit 87 into evidence.

7             THE COURT:  All right.  It's admitted in evidence.

8         (Exhibit 87 admitted into evidence.)

9             MR. MCCARRICK:  All right.  Let's look at Page 3

10   of the PDF, and I want to look at the paragraph, the last

11   paragraph that says, Alex, all you need.  Can we blow that

12   up, Mr. Lopez?

13   BY MR. MCCARRICK:

14   Q    Do you see in this paragraph, Mr. Davis, where you

15   write, we also voiced our concerns that CEL has no utilities

16   whatsoever?

17   A    I see that.

18   Q    And you write, it's only when the tide goes out you

19   realize who's swimming naked.  The tide has gone out and CEL

20   is swimming naked.  Do you see that?

21   A    I see that.

22   Q    And that was your view in January 2022.  CEL had no

23   useful utilities, correct?

24   A    CEL had no good utilities.  They could add more.  They

25   did have utilities.  There was Earn in CEL, discount on

Page 77

1    loans and higher swap limits.  Those are utilities.  And you

2    can also take loans against your CEL token.  That's a big

3    utility.

4    Q    Well, you said in January 2022 that it had no useful

5    utilities, right?

6    A    Sir, I know what I said.  I wrote the email to get the

7    attention of Alex Mashinsky because I could not get the

8    attention of Alex Mashinsky no matter what I did.

9    Q    So is it your answer that you were saying something

10   that might have been inaccurate in order to get the

11   attention of someone whose attention you wanted?

12   A    I was being hyperbolic.  You seem to think that Alex

13   Mashinsky and I had a good relationship before the pause.

14   We did not and we don't now.  I was hounding him for 15

15   months to add useful utilities.  That's why I wrote the

16   email.

17   Q    I just want to break that down, Mr. Davis.  You were

18   hounding Mr. Mashinsky for 15 months to add useful utilities

19   to CEL that you did not think it had, correct?

20   A    I didn't think it had enough utilities.  I didn't think

21   Earn in CEL, discount on loans, highest swap limits and

22   taking a loan against your CEL token was enough.  I thought

23   there should be more.  An example that I gave you in the

24   deposition was withdrawal fees.  When you withdraw Bitcoin,

25   ETH or other altcoins, the fee should be paid in CEL.

Page 78

1    Q    Understood, Mr. Davis.  I was just following up on your

2    last answer.  Your last answer was that you had been

3    hounding Mr. Mashinsky for 15 months to add useful utilities

4    to CEL, correct?  That was your testimony.

5    A    Correct.

6    Q    And he didn't add that utility, correct?

7    A    He didn't add any more utilities.

8             MR. MCCARRICK:  Okay.  Can we go to the next page?

9    BY MR. MCCARRICK:

10   Q    You just listed a number of utilities that you said CEL

11   had at the time, right?

12   A    Correct.

13   Q    You didn't like any of those utilities, did you?

14   A    That's not true.  I love the swap utilities.  I love

15   the loans utilities, had my CEL-backed loans liquidated.  I

16   think the loans was one of the best utilities.  I just

17   wanted him to add more.  As I said, I was being hyperbolic.

18   We just needed more utilities as a community.

19   Q    Okay.  Well, you see here where you wrote Mr.

20   Mashinsky: I don't know how one -- withdrawn.

21        You see here that you wrote Mr. Mashinsky, I don't know

22   of one CEL utility that I use or that I like, not one.

23        That's what you wrote in January of 2022, correct?

24   A    That was hyperbolic.  I obviously had loans at that

25   point.  And the loans were -- they totaled to be seven

Page 79

```
 1   figures, so that was hyperbolic.  A loan is a very useful
 2   utility.
 3            MR. MCCARRICK:  Okay.  Mr. Lopez, you can take
 4   that down.
 5   BY MR. MCCARRICK:
 6   Q    Sir, it's true that you communicated with Mr. Mashinsky
 7   in between the pause and the petition date, right?
 8   A    Your definition of communication, as we agreed in the
 9   deposition, we disagree on because you are the attorney that
10   represented Mr. Mashinsky at that point, and you instructed
11   him not to speak to anybody.  I sent Mr. Mashinsky a direct
12   message, and he did not respond.  You are the attorney
13   Kirkland & Ellis that represented Mr. Mashinsky between the
14   pause and when he was ousted, and you directed him not to
15   speak to anybody, and he did not respond to that DM, and
16   that's what I told you at the deposition.
17   Q    Well, I'll represent to you I've never spoken to Mr.
18   Mashinsky in my life.  But my question -- I won't use word
19   communication, if it helps.
20   A    I meant your firm.
21   Q    You mentioned -- or withdrawn.
22        You messaged Mr. Mashinsky in between the pause and the
23   petition date, true?
24   A    True.
25            MR. MCCARRICK:  All right.  Let's put up Celsius
```

1   Exhibit 102, which are a series of direct messages between

2   Mr. Davis and Mr. Mashinsky, and Your Honor, we would offer

3   Exhibit 102 into evidence.

4           THE COURT:  What is it comprised?  Just tell me

5   what it is.

6           MR. MCCARRICK:  Your Honor, it's a series of

7   direct messages that begins in June of 2022 between Mr.

8   Mashinsky and Mr. Davis.

9           THE COURT:  Are there messages back from

10  Mashinsky?

11          MR. MCCARRICK:  There are not any messages.

12          THE COURT:  They're all messages from Mr. Davis to

13  Mr. Mashinsky?

14          MR. MCCARRICK:  Yes, Your Honor.

15          THE COURT:  All right.  Exhibit 102 is admitted in

16  evidence.

17      (Exhibit 102 admitted into evidence.)

18  BY MR. MCCARRICK:

19  Q    Okay.  Do you see here on June 24, 2022, that you write

20  Mr. Mashinsky, I've singlehandedly inspired the community

21  against these short sellers.

22  A    I see that.

23  Q    That refers to your efforts to organize the so-called

24  short squeeze, correct?

25  A    It wasn't an effort to organize.  I was DM'ing him to

1    get his attention, like I said before.

2    Q    I'm sorry.  I couldn't understand your answer.  Could

3    you please repeat it?

4    A    I was being hyperbolic once again here.

5    Q    Okay.  Well, fair enough.

6    A    I can't singlehandedly inspire an entire community.

7    Q    Okay.  So when you said that here, that was false.

8    A    It was not false.  I was being hyperbolic.  I wanted

9    him to respond to the message, but I knew between the pause

10   and petition date, he was probably pretty busy.  And as you

11   can see, I did not get a response.

12   Q    All right.  Well, do you see a couple of lines down

13   where you say, that's what you need them to do, make them

14   believe, give them a reason to believe.  Useful utility/use

15   cases around CEL and not gimmicks will give them that reason

16   to believe.  Do you see that?

17   A    Yes, I see that.

18   Q    And that's consistent with the January 2022 email we

19   just looked at where you're complaining about the use cases

20   of CEL, right?

21   A    In this instance, I thought we were going to open back

22   up.  The pause is just temporary.  And my opinion was if

23   you're going to open back up, you need to add more utilities

24   to CEL tokens.  The ones that you have, because we have a

25   market downturn, would just not be enough.  You need to add

Page 82

1    more utilities.

2    Q    Well, you also were complaining about the lack of

3    utilities on CEL back in January of 2022, well before any

4    pause, correct?

5    A    Yes.

6    Q    Okay.  Sir, is it your view today that CEL is

7    worthless?

8    A    No, it's not.

9           MR. MCCARRICK:  All right.  Let's put up Celsius

10   Exhibit 99, which is a tweet from Mr. Davis.  And can we

11   blow up the top part of that, Mr. Lopez?  I can't see it.

12          First we'd move Celsius Exhibit 99 into evidence.

13          THE COURT:  It's in evidence.

14      (Exhibit 99 admitted into evidence.)

15   BY MR. MCCARRICK:

16   Q    Okay.  Mr. Davis, do you see where you wrote here, at

17   Celsius Network is a bankrupt company with a worthless

18   token?

19   A    I see that.

20   Q    I asked you about this tweet at your deposition,

21   correct?

22   A    I think you did.

23   Q    I asked whether CEL is a worthless token, and you told

24   me that the document speaks for itself, correct?

25   A    I think I said that.

Page 83

1   Q    Do you want me to refresh your recollection?  Would

2   that be helpful?

3   A    Yes, please.

4           MR. MCCARRICK:  Okay.  Can we bring up Mr. Davis's

5   deposition, Page 92, Lines 13 to 14.

6           MR. LOPEZ:  (indiscernible)

7           MR. MCCARRICK:  (indiscernible) the Internet?

8   Okay.

9   BY MR. MCCARRICK:

10  Q    Well, Mr. Davis, I can read it out loud to you.

11          MR. MCCARRICK:  And, Your Honor, it's the first

12  tab in your binder.  It's Page 92.  It's Line 13 to 14.

13  BY MR. MCCARRICK:

14  Q    And I'll represent to you that the question I asked

15  was:

16      Question: Okay --

17          THE COURT:  I have it open and I see it.  Go ahead

18  and put it in the record.

19  BY MR. MCCARRICK:

20  Q    Okay.  You were asked this question, and you gave this

21  answer Mr. Davis:

22      Question: Okay.  Is CEL a worthless token?

23      Answer: The document speaks for itself, sir.

24      Does that sound familiar to you?

25  A    What date is that document?

Page 84

1    Q    What day was that?  That was two days ago when we spoke

2    --

3    A    What date?  No.  What date is the tweet, sir?

4    Q    Oh, the date of the tweet.  Well, it was certainly

5    after the bankruptcy.  Give me one moment.  I can get that

6    for you.  It looks like it's in October of 2022.

7             THE WITNESS:  Objection, Your Honor, relevance.

8    Post-petition.

9             THE COURT:  You agree then, that the Celsius token

10   is worthless post-petition?

11            THE WITNESS:  I didn't think it was fully

12   worthless.

13            THE COURT:  I'm asking -- I'm asking you a direct

14   question.  Do you believe that the Celsius token is

15   worthless post-petition?

16            THE WITNESS:  No.

17   BY MR. MCCARRICK:

18   Q    Okay.  Mr. Davis, that's what you wrote, though, in

19   October of 2022, correct, that Celsius is a bankrupt company

20   with a worthless token, right?

21   A    I see that.

22   Q    Is that more hyperbole?

23   A    I wrote that.  But Celsius cannot be worthless because

24   the market cap right now is -- I don't recall exactly what

25   it is, but I'm sure it's something like $40 or $50 million.

Page 85

1   That is obviously not worthless.  It is hyperbole.

2   Q    Okay, and when I asked you, after you had told me that

3   the document speaks for itself, again, whether or not CEL

4   was worthless, you took the Fifth Amendment, didn't you?

5   A    I don't recall what I said.

6   Q    You don't recall what you said.  Okay.  Well, why don't

7   we bring back your deposition.

8            MR. MCCARRICK:  And let's go to Pages 93, 24 to

9   94, 7.  Can I have that, Mr. Lopez?

10            MR. LOPEZ:  I have to log on (indiscernible) --

11   BY MR. MCCARRICK:

12   Q    Okay.  Well, I'll represent to you --

13            THE COURT:  Just read him question and answer.

14            MR. MCCARRICK:  Yes.

15   BY MR. MCCARRICK:

16   Q    Question: Do you think that CEL is a worthless token

17   today?

18       Answer: I'll take the Fifth Amendment.  Do you feel

19   better?

20       Does that sound familiar?

21   A    It sounds familiar.

22   Q    Yeah.  That's what you said, isn't it?

23            THE COURT:  Ask him the next --

24            THE WITNESS:  You kept asking me the same question

25   over and over again and it was asked and answered.

Page 86

```
 1            MR. MCCARRICK:  Let's go to Page 94.  You're still

 2    off, Mr. Lopez.

 3            MR. LOPEZ:  (indiscernible)

 4            MR. MCCARRICK:  Okay.

 5            THE COURT:  I'll read it to you, Mr. Davis.  Page

 6    94, Line 3: You're taking the Fifth Amendment on whether or

 7    not you think CEL is a worthless token.

 8            Answer on Line 6: Taking the Fifth about you

 9    asking questions outside the petition date.

10            Question: Okay.  Is it your position that CEL was

11    a worthless token on the petition date?

12            No.

13            Question: What changed between, in your view, why

14    is it worthless after the petition date, but not on the

15    petition date?

16            Answer: In my mind, after the petition date, you

17    can't use any utilities.

18    BY MR. MCCARRICK:

19    Q    That was your testimony, right, Mr. Davis?

20    A    Correct.

21    Q    And so your testimony is that the reason you don't

22    think that CEL has value after the petition date is because

23    you're unable to use it anymore, correct?

24    A    You can use CEL token for anything in DeFi, just like

25    you can use DOGE that has no utility, that has a $5 billion
```

1    market cap.

2    Q    Understood, Mr. Davis.  I'm just asking when you say,

3    in my mind after the petition date, you can't use any

4    utilities, that's the reason you called it worthless after

5    the petition date?

6    A    That was hyperbole, and that's what I said because you

7    can't use it.  The platform is obviously paused, so you

8    can't take a loan.  You can't get discount interest on

9    loans.

10   Q    And that was true on the pause date as well, correct,

11   sir?

12   A    As of June 13, 2022, no one could use utilities for

13   CEL.

14   Q    Okay.  I just have a few more questions, Mr. Davis.

15   Have you ever publicly threatened anyone in connection with

16   these Chapter 11 proceedings?

17   A    I know what you're going to ask me.  You asked me at my

18   deposition.  But I don't consider that a threat.

19          MR. MCCARRICK:  Okay.  Well, let's look at it.

20   Let's go to Celsius Exhibit 94, and that's a tweet from

21   February 21, 2023.

22          Deanna, can you grant Mr. Lopez rights to share

23   his screen again?

24          CLERK:  Judge, unfortunately, Deanna stepped away

25   from her desk, and I can't give rights.  We'll have to wait

Page 88

1    for her to return, unfortunately.

2    BY MR. MCCARRICK:

3    Q    Okay.  Well, Mr. Davis, you said that you know the

4    tweet that I'm referring to, correct?

5    A    Correct.

6    Q    Celsius Exhibit 94 is a Tweet you wrote on February 21,

7    2023, correct?

8    A    Correct.

9         MR. MCCARRICK:  And, Your Honor, just for your

10   reference, that's going to be Tab 5.  Oh, no, I'm sorry,

11   it's not Tab 5 in the binder.  We'll have to wait for Mr.

12   Lopez.

13        THE COURT:  Okay.

14   BY MR. MCCARRICK:

15   Q    Let me ask you just if you recall it.  Do you recall

16   making the following post: the days are coming when we CEL

17   token holders will lift you up out of the water with butcher

18   hooks and the rest of you with fish hooks and then burn your

19   tabernacle to the ground for your error towards us CEL token

20   holders.  Do you remember issuing that tweet?

21   A    It's part of a Bible quote.  I remember it.

22   Q    Okay, and when I asked you who that tweet was directed

23   to, you refused to answer, correct?

24   A    I think I refused to answer initially, and then I

25   answered.  When you said, is it directed at White & Case, I

1     said no.  It's not directed at White & Case.  White & Case

2     and I had no beef at that point.

3     Q     Well, who's it directed at, sir?

4     A     It was directed at all the people that were attacking

5     CEL token holders.

6     Q     And when you say attack CEL token holders, what do you

7     mean?

8     A     The people on Twitter.  All the people on Twitter that

9     are saying we deserve zero.  You guys deserve nothing.  Go

10    away.  You're lucky you're getting something.

11    Q     Okay.  So it's your position --

12    A     Told me to burn in hell.

13             MR. MCCARRICK:  Your Honor, permission to approach

14    with copies of Exhibit 94.  Thank you.

15             THE WITNESS:  And these are the people that were

16    making threats towards CEL token holders.

17    BY MR. MCCARRICK:

18    Q     Understood.  I just want to clean up your testimony a

19    little bit.  Is it your testimony that the people who need

20    to be hung by butcher and fish hooks are the people who

21    think that CEL has a value of zero?

22    A     Sir, it was hyperbole, and they were threatening me,

23    telling me, you should burn in hell, go to hell.  And as you

24    know, there are a lot of threats.  Your firm and White &

25    Case have said the same thing, that you guys have to look

1    over your shoulders.  We did, too.  Same thing that was

2    going on at that point.  We even brought it to the judge's

3    attention.  People's lives are in danger.  There are a lot

4    of threats.  So I was pushing back on those threats.  And I

5    don't know why you would think it was White & Case.  I had

6    no beef with White & Case at that point.

7              MR. MCCARRICK:  Okay.  Your Honor, we'd move

8    Exhibit 94 into evidence.

9              THE COURT:  Into evidence.

10         (Exhibit 94 admitted into evidence.)

11             MR. MCCARRICK:  Thank you for your time, Mr.

12   Davis.  To the extent the committee has any questions, I'll

13   pass the witness.

14             THE COURT:  Mr. Colodny?

15             MR. COLODNY:  No questions at this time, Your

16   Honor.

17             THE COURT:  Anybody else wish to examine Mr.

18   Davis?

19             MR. KIRSANOV:  Yes, Your Honor.  Dimitry Kirsanov,

20   pro se.

21             THE COURT:  Go ahead.

22                  CROSS-EXAMINATION OF OTIS DAVIS

23   BY MR. KIRSANOV:

24   Q    Mr. Davis, good afternoon.

25   A    Good afternoon, Dimitry.

1    Q    Mr. Davis, does dogecoin trade today?

2    A    Yes, it does.

3    Q    Mr. Davis, is dogecoin worthless?

4    A    No, it's not.

5    Q    Mr. Davis, do you know that expert witness Max Galka

6    obtained seed funding from Alameda Research?

7              MR. MCCARRICK:  Objection.

8              THE COURT:  Sustained.

9              THE WITNESS:  Yes, I do.

10             THE COURT:  Sustained.  Strike the answer.

11   BY MR. KIRSANOV:

12   Q    Mr. Davis, do you know that Alameda Research was FTX's

13   sister company?

14   A    Yes, I do.

15   Q    Mr. Davis, did you know that FTX was a competitor of

16   Celsius?

17   A    Yes, it was.

18   Q    Mr. Davis, do you think there was market manipulation

19   from competitors of Celsius?

20             MR. MCCARRICK:  Objection.

21             THE WITNESS:  Please repeat the question.  I

22   didn't hear all of the question.

23             MR. KIRSANOV:  Certainly.

24   BY MR. KIRSANOV:

25   Q    Mr. Davis, do you think there was market manipulation

Page 92

1    from the competitors of Celsius?

2    A    Yes.

3    Q    Mr. Davis, is the CEL token traded today?

4    A    Yes, it is.

5    Q    Mr. Davis, has CEL token been traded after bankruptcy?

6    A    Yes, it has.

7    Q    Mr. Davis, did you have loans on Celsius?

8    A    Yes, I did.

9    Q    Mr. Davis, did all your loans get liquidated?

10   A    Yes, they did.

11   Q    Mr. Davis, did your CEL from liquidation go to your

12   custody wallet?

13   A    Yes, it did.  I believe 54,000 CEL tokens went to my

14   custody wallet.

15   Q    I see.  Mr. Davis, did you know the Chapter 7

16   liquidation rates across --

17             MR. MCCARRICK:  Objection.

18             THE COURT:  Sustained.  Ask another question, Mr.

19   Kirsanov.

20             THE WITNESS:  I didn't -- I didn't hear the

21   question.

22   BY MR. KIRSANOV:

23   Q    Mr. Davis, do you know the liquidation for your Earn

24   claim on your CEL tokens?

25             MR. MCCARRICK:  Objection, Your Honor.

Page 93

1             THE COURT:  Sustained.

2             THE WITNESS:  Eighty-one cents.

3             THE COURT:  Sustained.

4    BY MR. KIRSANOV:

5    Q    Mr. Davis, do you think you are receiving fair value in

6    comparison to your Earn from your custody class?

7             MR. MCCARRICK:  Objection, Your Honor.

8             THE WITNESS:  No, I do not.

9    BY MR. KIRSANOV:

10   Q    Mr. Davis, are you aware of deactivation day pricing?

11   A    Please explain it to me what it means.

12            MR. KIRSANOV:  I'd like to open to the plan, Page

13   3000 -- I'm sorry, Docket 3000 --

14            MR. COLODNY:  Objection.  He's testifying.

15            THE COURT:  Sustained.

16            MR. KIRSANOV:  Can we open the plan up to the

17   witness, please?

18            THE COURT:  No.  If you wish to cross-examine, you

19   have to post the exhibits that you wish to use in

20   examination.

21   BY MR. KIRSANOV:

22   Q    Okay.  Mr. Davis, have you been intimidated relating to

23   the CEL token?

24   A    Yes, I have.

25   Q    Have you been threatened in relation to the CEL token?

Page 94

1    A    Yes, I have.

2            MR. KIRSANOV:  I have no further questions, Your

3    Honor.  Thank you.

4            THE COURT:  Thank you, Mr. Kirsanov.

5            Anybody else wish to cross-examine?

6            MR. FRISHBERG:  I do.  Daniel Frishberg, pro se.

7            THE COURT:  Mr. Frishberg, go ahead.

8                CROSS-EXAMINATION OF OTIS DAVIS

9    BY MR. FRISHBERG:

10   Q    Mr. Davis, do you recall being in a Twitter Space where

11   you said in reference to me that, quote, "Motherfuckers will

12   hunt you down."

13   A    Play the recording.  I don't recall that.

14           MR. FRISHBERG:  Your Honor, may I admit the

15   recording into evidence?

16           MS. CORNELL:  Your Honor, this is Shara Cornell,

17   with the Office of the United States Trustee.  I object to

18   the relevance and hearsay.

19           THE COURT:  Yeah.  Sustained.

20           MS. CORNELL:  Thank you.

21           THE COURT:  Mr. Frishberg --

22           MR. FRISHBERG:  No further questions.

23           THE COURT:  Mr. Frishberg, let me just say this.

24   There have been, in my view, inappropriate things that have

25   been said, directed at creditors, directed at the creditors'

Page 95

1    committee counsel, directed at the Court, directed at the

2    debtor's counsel.

3            On several occasions I've contacted the U.S.

4    marshals or the U.S. trustee to report episodes.  I think at

5    this stage, and I know it occurred.  I think it's

6    unfortunate.  I think feelings were very high.  People lost

7    a lot of money.  People felt deceived.  And it can't excuse

8    what I perceive to be serious, inappropriate behavior in

9    connection with a bankruptcy case.

10           What I'd like to do, Mr. Frishberg, is try and

11   keep this going forward directed at the issues that the

12   Court is going to have to resolve.  So I understand your

13   strong feelings, Mr. Frishberg.  I'm aware of things that

14   happened in the past.  I want to try and keep it on the

15   scope of the direct examination and cross-examination.  So

16   I'm going to sustain my own objection to that, Mr.

17   Frishberg.  But if there are other questions you want to ask

18   that go to the testimony you've heard, I'll certainly permit

19   that.

20           MR. FRISHBERG:  I do not.  Thank you, Your Honor.

21           THE COURT:  Thanks, Mr. Frishberg.

22           Is there anybody else who wishes to examine the

23   witness, Mr. Davis?

24           MR. IOVINE:  Yes, Mr. -- Judge Glenn.  I'm sorry.

25   Jason Iovine, pro state creditor.

Page 96

1           THE COURT:  Okay.  Go ahead, Mr. Iovine.

2                 CROSS-EXAMINATION OF OTIS DAVIS

3     BY MR. IOVINE:

4     Q     Mr. Davis, good afternoon.

5     A     Good afternoon, sir.

6     Q     Real quick questions.  Was CEL token able to be used

7     outside of Celsius?

8     A     Yes.

9     Q     Do you recall which platforms allowed this?

10    A     FTX, OKX and I believe Gate.io post-petition.

11    Q     Do you remember any decentralized platform finance

12    platforms that allowed it?

13    A     Uniswap was the main one.

14    Q     Do you recall (indiscernible) or (indiscernible)?

15    A     Yes.

16    Q     And what were you able to do, if you know, with CEL

17    token on those platforms?

18    A     I think you can post your CEL token as collateral on

19    those platforms.

20    Q     So CEL token wasn't dependent strictly on Celsius?

21    A     No.  You can also use it in DeFi.

22          MR. IOVINE:  Thank you.  All my questions.

23          THE COURT:  Thank you very much, Mr. Iovine.

24    Anybody else?  All right.  Thank you very much, Mr. Davis.

25    So I will consider -- again your direct examination wasn't

1    really in the proper form.  I will evaluate, I'm going to

2    admit it in evidence and give it such weight as I think it's

3    entitled to under the circumstances, and I appreciate your

4    cross-examination.

5              The issue arose about you sitting for a

6    deposition, and the Court had entered an order.  I'm pleased

7    that you did cooperate and that your deposition was taken.

8    And thank you for your testimony and your statements.  All

9    right.

10             MR. DAVIS:  You are very welcome, Your Honor.

11             THE COURT:  Okay.  Mr. Ubierna, you're next.

12             MR. UBIERNA DE LAS HERAS:  Good afternoon, Your

13   Honor.  Can you hear me okay?

14             THE COURT:  Yeah, I can hear you okay, Mr.

15   Ubierna.

16             MR. UBIERNA DE LAS HERAS:  Okay.  Victor Ubierna

17   de las Heras, pro se creditor.  I don't have any evidentiary

18   presentation for today, Your Honor.  I only restate what I

19   said at the opening statement of the confirmation hearing,

20   and I don't have anything for today.  Thank you for your

21   time.

22             THE COURT:  Thank you very much, Mr. Ubierna.  All

23   right.  The next on my list are the securities plaintiffs.

24   I have them listed separately.  But who is their counsel?

25             MR. KHEZRI:  Good afternoon, Your Honor.  Phil

Page 98

```
 1    Khezri, Lowenstein Sandler, on behalf of the securities

 2    plaintiffs.

 3              THE COURT:  Thanks, Mr. Khezri.

 4              MR. KHEZRI:  I'm going to be very brief.

 5              THE COURT:  Go ahead.

 6              MR. KHEZRI:  We filed a limited objection, which

 7    appears at Docket Number 3544.  Securities plaintiffs appear

 8    to fall within the class of subordinated claims under

 9    510(b).  Limited objection seeks to preserve rights to

10    pursue recovery from Side C coverage of any applicable

11    insurance policies.  We are in discussion with the debtors

12    about adding language to the confirmation order to resolve

13    the objection.  So hopefully, this can just be kicked out

14    pending resolution.

15              THE COURT:  All right.  Thanks very much, Mr.

16    Khezri.  All right.  David Schneider?  Mr. Schneider, are

17    you on Zoom?

18              MR. SCHNEIDER:  Can you hear me now, sir?

19              THE COURT:  Okay, Mr. Schneider.  I can hear you.

20    Go ahead.

21              MR. SCHNEIDER:  Okay.  I'm sorry.  I'm on phone

22    using my phone.

23              THE COURT:  Okay.  Go ahead.  That's all right.

24              MR. SCHNEIDER:  David Schneider, and -- creditor.

25    And I would also like to request to be moved to a later
```

1    order position because --

2              THE COURT:  I'm sorry.  I couldn't hear that.  I

3    couldn't hear that, Mr. Schneider.  Just say that again.  I

4    heard you were requesting something, but I couldn't hear

5    what.

6              MR. SCHNEIDER:  I would also like to request to be

7    moved to a later order position as far as presenting my

8    testimony -- presenting my exhibit --

9              MR. MCCARRICK:  TJ McCarrick, Kirkland & Ellis, on

10   behalf of the debtors.  I think Mr. Schneider is asking to

11   be put later in the order.

12             THE COURT:  Okay.  Mr. Schneider, I'll put you at

13   the end.  It'll give you a little more time.  Okay.

14             MR. SCHNEIDER:  Thank you very much, Your Honor.

15             THE COURT:  All right.  Mr. Phillips?

16             MR. PHILLIPS:  Yes, Your Honor.  Well, I guess I'd

17   prefer -- I thought I would go tomorrow, and so I'd prefer

18   to do later as well, but if necessary, I'll proceed.  I did

19   put in my request to appear remotely at Docket Number 3648.

20             THE COURT:  All right.  And you were deposed?

21             MR. PHILLIPS:  I was deposed yesterday for four

22   hours.

23             THE COURT:  Okay.

24             MR. PHILLIPS:  By both debtor and committee

25   counsel.

Page 100

1              THE COURT:  Well, let me ask the debtor and the

2       committee, is there any objection to Mr. Phillips testifying

3       remotely?

4              MR. WEEDMAN:  Your Honor, I think with the same

5       reservations that we discussed earlier, not necessarily to

6       the remoteness, but we do have overall objections to his

7       declaration being admitted into evidence.  We think it's

8       just a wholesale adoption of his argument put into a

9       declaration form, and so we would -- but we're prepared to

10      go forward with a cross-examination.

11             THE COURT:  I'll give it such weight as I think

12      it's entitled to.  We always have this issue about mixing

13      argument and evidence.  But go ahead, Mr. Phillips, if you

14      want to --

15             MR. WEEDMAN:  Your Honor, if I may just --

16             THE COURT:  Well, let Mr. Phillips.  Just be brief

17      and summarize what your objections are and then we'll permit

18      -- are you going to cross-examine?

19             MR. WEEDMAN:  We are, Your Honor.  I was just

20      going to note that I think counsel for Perella Weinberg was

21      going to dial in when he knew that Mr. Phillips was joining.

22      We've kind of gone a lot faster than we expected.

23             THE COURT:  Yeah.

24             MR. WEEDMAN:  So we --

25             THE COURT:  I'll tell you what.  I have on my

Page 101

1    watch 3:59, so 4:00.  Let's take a recess until 4:15.

2              MR. WEEDMAN:  Thank you, Your Honor.

3              THE COURT:  Okay, and then we'll -- so, Mr.

4    Phillips, we'll be back and you can remain on the line.

5    We're taking a break of 15 minutes, and you can contact

6    Perella.  Okay?

7              MR. WEEDMAN:  Thank you, Your Honor.

8              MR. PHILLIPS:  Yes, Your Honor.  Thank you very

9    much.

10             THE COURT:  Thank you.

11        (Recess)

12             THE COURT:  Please be seated.  All right.  Are we

13   ready to proceed with Mr. Phillips's examination?

14             MR. WEEDMAN:  Yes, Your Honor.

15             THE COURT:  All right.  Mr. Phillips, do you want

16   to briefly -- I mean, I'm going to admit your direct

17   testimony.  Let me ask you, are you a lawyer, Mr. Phillips?

18             MR. PHILLIPS:  No, sir.

19             THE COURT:  All right.  I'm trying to bend over

20   backwards not to strictly apply the rules of evidence.  I'm

21   admitting things in evidence where I think the substance is

22   important to be heard.  I'll give it such weight as I think

23   is appropriate.  You've been deposed.  So I'll give you a

24   chance if you want to say anything briefly, and then I'll

25   turn it over for cross-examination.

Page 102

```
 1              MR. PHILLIPS:  Thank you, Your Honor.  I am a

 2    little confused, Your Honor, about testifying to my

 3    declaration as opposed to providing argument, how you want

 4    to handle that.

 5              THE COURT:  Well, I'll give you a chance if you

 6    want to summarize.  Some of what was in your declaration is

 7    really argument in a sense.  I'll give you a chance if you

 8    want to just summarize your argument and then in terms of

 9    cross-examination, I'll turn it over to counsel to the

10    committee for it.  But before I ask for cross-examination, I

11    thought I would give you a chance, if there's anything that

12    you want to raise.

13              MR. PHILLIPS:  Thank you, Your Honor.

14              THE COURT:  Did we swear Mr. Phillips?

15              CLERK:  I did not.

16              THE COURT:  Let's do this.  Let me have you sworn

17    at this point so I don't forget.  Karen, our ECRO operator,

18    keeps me on the straight and narrow to make sure that I

19    always make sure that all witnesses have been sworn.  So if

20    you would raise your right hand, Karen is going to go ahead

21    and administer the oath.

22              CLERK:  Do you solidly swear or affirm that all

23    the testimony you're about to give before this Court is the

24    truth, the whole truth and nothing but the truth?

25              MR. PHILLIPS:  Yes.
```

1            THE COURT:  All right.  Thank you, Mr. Phillips.

2     All right.  So is there anything you wanted to summarize

3     before?  And I have your statement.  I've read it.  But if

4     there's anything that you wanted to add orally, I'll permit

5     you to do that.

6            MR. PHILLIPS:  Well, just in brief outline, if I

7     could, I did file my original objection at 3548 and 3557 on

8     the docket, the remote request at 3648.  I added some

9     amended exhibits which I used in cross at 3706.  I then

10    filed a declaration at 3758, which I'd like to submit into

11    evidence.  And I also filed a rebuttal argument that relied

12    in part on the declaration at 3705.  I filed the rebuttal at

13    3767 and that relied in part on the declaration at 3705.  I

14    have not responded to all the exhibits that were filed late

15    last night by both the debtor and UCC.  And I do have

16    objections to some of the UCC exhibits, should they be used.

17            THE COURT:  All right.

18            MR. PHILLIPS:  So my fundamental argument is this,

19    right, which is that the professionals in this case who are

20    representing the committee, both White & Case and Perella,

21    should be accountable.  And I believe that there's evidence

22    of misconduct in both the appointment of the litigation

23    oversight committee as well as the board.

24            And I think that given especially the speed at

25    which this confirmation hearing is proceeding and the

Page 104

1    limited amount of discovery that was available, especially

2    since some of the facts and circumstances did not become

3    apparent until post the discovery schedule that was laid out

4    at the beginning of the hearing, which really it was laid

5    out, in my opinion, to support the CEL valuation argument

6    that we just heard, that complete discovery and

7    investigation wasn't able to occur.

8            So therefore, those claims should be preserved

9    post the effective date, that an appropriate fiduciary

10   should be unable to prosecute those behaviors, those claims

11   essentially on behalf of the UCC, the committee itself and

12   that I'd propose two separate ones that for that fiduciary

13   would either be a subset of the litigation oversight

14   committee who is unconflicted and not a witness.  And that

15   would be the three members, Mr. Adler, Mr. Crews and Ms.

16   O'Connor or that the U.S. trustee would appoint such a

17   fiduciary, that if Your Honor saw fit, given to the

18   circumstances of the misconduct, that he would remove Mr.

19   Aidoo from the board of NewCo and vacate the appointments

20   essentially from the board of NewCo of Mr. Aidoo and of Mr.

21   Jindal, Mr. Uzzi and Mr. Noyes from the litigation oversight

22   committee.

23           And then the separate part of my declaration,

24   which relies in part on my qualification, is regarding the

25   valuations that were presented during the debtor's case by

Page 105

1    experts from three different firms, Mr. Kielty on behalf of

2    Centerview, Mr. Cohen on behalf of behalf of Stout Risius

3    Ross and by Mr. Campagna on behalf of Alvarez & Marsal.  And

4    in my opinion, their valuation of the orderly winddown

5    versus NewCo was in error.  And I provided an updated

6    valuation of NewCo, showing that its recovery percentage is

7    lower than that of the orderly winddown scenario, both of

8    which scenarios are included under the plan, and thus that

9    the debtors and committee should be directed to carry out

10   their fiduciary duties and evaluate the current value of

11   both the recovery of NewCo and orderly winddown and to make

12   the proper determination to toggle through orderly winddown

13   because it's important to note that all the valuation work

14   that has been done to date and presented in the disclosure

15   statement, which was approved but has some inadequacies, as

16   I will point out.

17          But I did not object to it at the time, but was

18   done as of a stale valuation date of May 31, 2023, which was

19   neither current with the disclosure statement approval,

20   which was late August, nor is it current now, especially

21   true in light of the volatility, for example, of Bitcoin

22   Microsoft prices, which are the key comp set that Mr. Kielty

23   used in evaluating (indiscernible).  So that's my brief

24   summary, Your Honor.

25          THE COURT:  Okay.  All right.  All right.  Cross-

Page 106

1    examination.

2            MR. WEEDMAN:  Thank you, Your Honor.  Your Honor,

3    Joshua Weedman, White & Case LLP, on behalf of the

4    committee.  May I approach, Your Honor?

5            THE COURT:  Yes, you can.  Thank you.

6            CROSS-EXAMINATION OF RICHARD PHILLIPS

7    BY MR. WEEDMAN:

8    Q    Good afternoon, Mr. Phillips.

9    A    Good afternoon, Mr. Weedman.

10   Q    You applied to be on the board of NewCo, right?

11   A    Yes.

12   Q    And you submitted your application well in advance of

13   the process being formally announced, right?

14   A    I don't remember exactly the formal date of

15   announcement, but I started expressing my interest

16   (indiscernible) I believe of this year.

17   Q    I'm sorry.  I couldn't hear you.  Could you please

18   repeat that?

19   A    Sure.  I don't remember the date of the "formal"

20   announcement of the process because I'm not sure there was a

21   date of formal announcement of when the process was

22   launched, but I believe I submitted my, you know, and

23   started indicating interest in March of this year.

24   Q    Okay.  In March of 2023, correct?

25   A    Correct.

Page 107

1    Q    And when you submitted your application, you submitted

2    it pseudonymously, right?  Under a pseudonym?

3    A    Yes.

4    Q    And you were told that the use of a pseudonym on your

5    resume was a problem, right?

6    A    Well, the committee members who co-chaired it knew who

7    I was because they were able to identify my LinkedIn profile

8    from the pseudonymous resume.

9    Q    And my question was, you were told that the use of a

10   pseudonym was a problem for your resume, correct?

11   A    That is what Mr. Colodny told me, yes.

12   Q    And eventually you did send a resume with your name,

13   correct?

14   A    Yes.

15   Q    And that was in around June or July of 2023, right?

16   Correct.

17   Q    And you've never previously served on the board of a

18   publicly traded company, right?

19   A    Correct.

20   Q    But you were still interviewed for a seat on NewCo's

21   board, right?

22   A    Yes, on approximately August 30th.

23   Q    That was my next question.  You were interviewed on

24   August 30th, right?

25   A    I just said so.

Page 108

1   Q    And that interview was approximately one hour?

2   A    Yes, it was.

3   Q    And you recall being asked questions during that

4   interview, right?

5   A    I do.

6   Q    And you vaguely recollect that you were told that you

7   were being asked the same series of questions that were

8   being asked of all board applicants, right?

9   A    Well, I believe what occurred in the depo, and I'm sure

10  you have the testimony, is you stated that there were five

11  standard questions that were asked, and that I was asked

12  that.  And I couldn't recall that I was specifically asked

13  about five standard questions that were there.  But I

14  vaguely recall being told that I was being asked similar

15  questions.  But there were clearly some questions that were

16  not asked of all applicants.

17          MR. WEEDMAN:  And if I could ask Mr. Lopez to

18  please bring up UCC Exhibit 237.

19          THE WITNESS:  Objection, Your Honor.

20          THE COURT:  You can't object to his putting up an

21  exhibit on the screen.  When he asks you some questions,

22  we'll see if there's an objection.

23          THE WITNESS:  Okay.

24          MR. WEEDMAN:  And Your Honor, this is in your

25  binder under Tab 3C, as in Charlie.  I'm sorry, 3D.

Page 109

```
 1              THE COURT:  Okay.

 2    BY MR. WEEDMAN:

 3    Q    And Mr. Phillips, you see on this is an email from an

 4    email address celbk7@proton.me.  Do you see that?

 5    A    Yes.

 6              THE WITNESS:  And I still object to this email

 7    being brought here, Your Honor.

 8    BY MR. WEEDMAN:

 9    Q    I'm still asking some questions about this, Mr.

10    Phillips.  Is that your email address?

11    A    Yes.

12              MR. RICHARDS:  Your Honor, I object.  He's not

13    aware of this exhibit.

14              THE COURT:  Overruled.  Go on with your questions.

15    BY MR. WEEDMAN:

16    Q    And this is an email that you sent on August 30, 2023

17    at 6:12 p.m. to Aaron Colodny, at White & Case, correct?

18    A    That is what it says, so, yes.

19    Q    And you remember sending this email, don't you?

20    A    Yes.

21              MR. WEEDMAN:  Your Honor, I would offer Exhibit

22    237 into evidence.

23              THE COURT:  Any objections?

24              THE WITNESS:  Objection.  Objection, Your Honor.

25              MR. RICHARDS:  I object.
```

Page 110

```
 1            THE COURT:  What's the objection?

 2            MR. RICHARDS:  He's not (indiscernible) this

 3    exhibit.

 4            THE COURT:  One at a time.  First, Mr. Richards.

 5    Mr. Phillips, I'm sorry.

 6            MR. PHILLIPS:  Thank you, Your Honor.  This

 7    applies to the whole series of emails that Mr. Weedman may

 8    or may not introduce here, in that they're out of context.

 9    And so I would like to introduce the full email train,

10    thread that includes all the emails and the particular that

11    that one is taken from.

12            THE COURT:  You acknowledge this is an email that

13    you sent to Mr. Colodny on Wednesday, August 30, 2023, at

14    6:12 p.m.; is that correct?

15            THE WITNESS:  Yes, and he responded to at 10:23

16    the same night.

17            THE COURT:  Objections is overruled.  It's in

18    evidence.

19        (Exhibit 237 admitted into evidence.)

20            MR. WEEDMAN:  Thank you.

21    BY MR. WEEDMAN:

22    Q    And, Mr. Phillips, in this email to Mr. Colodny, of

23    White & Case, you said, thanks for taking the time to

24    interview me and meet over Zoom.  You see that?

25    A    Yes.
```

Page 111

1    Q    And you also say, I appreciate the ups you gave me.  Do

2    you see that?

3    A    Yes.

4    Q    And when you said appreciate the ups, you were thanking

5    Mr. Colodny for speaking favorably about you during the Zoom

6    meeting.  Isn't that correct?

7    A    Yes.

8    Q    And so, as of August 30, 2023, you thought Mr. Colodny

9    had been speaking favorably about you, correct?

10            THE WITNESS:  Misstates the testimony.  So I'll

11    object on that ground.

12            THE COURT:  Can you answer the question yes or no?

13    The objection is overruled.

14            THE WITNESS:  So yes, he did, but it was only

15    solely on that date.

16    BY MR. WEEDMAN:

17    Q    And in fact, you'd had many conversations with Mr.

18    Colodny before August 30th, correct?

19    A    Yes.

20    Q    And those had spanned over the course of many months,

21    correct?

22    A    Since probably -- yes.

23            MR. WEEDMAN:  Can I ask Mr. Lopez to please bring

24    up UCC Exhibit Number 236?

25    BY MR. WEEDMAN:

Page 112

1   Q    And, Mr. Phillips, you see this is another email from

2   your email address, celbk7@proton.me, dated Friday, August

3   25, 2023, at 10:14 a.m.  Do you see that?

4   A    Yes.

5   Q    And this is another email you sent to Mr. Colodny, of

6   White & Case, with a subject line, "Good Job and Some Follow

7   Up."  Do you see that?

8   A    Yes.

9   Q    And you recall sending this email to Mr. Colodny as

10  well, correct?

11  A    Yes.

12         MR. WEEDMAN:  Your Honor, I would offer in UCC

13  Exhibit Number 236 into evidence.

14         THE COURT:  Any objections?

15         THE WITNESS:  Same objection, that it's part of an

16  email thread, so I would like to -- can I submit the whole

17  thread as rebuttal evidence?

18         THE COURT:  Well, I take -- I rule one at a time.

19         THE WITNESS:  Fair enough.

20         THE COURT:  Objection's overruled.  It's admitted.

21  236 is admitted into evidence.

22      (Exhibit 236 admitted into evidence.)

23  BY MR. WEEDMAN:

24  Q    And again, Mr. Phillips, this is you on August 25,

25  2023, telling Mr. Colodny in the first sentence, great job

Page 113

```
1    on the spaces.  Do you see that?

2    A    Yes.

3    Q    Is that a reference to Twitter Spaces that Mr. Colodny

4    had hosted?

5    A    Yes.

6    Q    And I'm going to direct your attention to the last

7    paragraph of this email.  You say to Mr. Colodny, of White &

8    Case: Thank you.  I really do appreciate all the hard work

9    you and your team have put into the case.  I'm probably one

10   of the few in the creditor community that truly understand

11   how much work these engagements are and the sacrifices they

12   require on the work-life balance front.  If we exit prior to

13   the end of the year, I'll try to get you to a Chargers game

14   at SoFi, the yolo incentive plan.  Think the Chiefs and the

15   Bills are the final two games, so they could be important

16   and exciting.  Did I read that correctly?

17   A    Yes.

18   Q    And again, this is you on August 25th thanking Mr.

19   Colodny for what you've described as a good job and all the

20   hard work that he put into the case, correct?

21   A    Correct.

22   Q    Shortly after these two emails that we just reviewed,

23   you learned you weren't selected for the NewCo's board,

24   correct?

25   A    Define shortly.
```

Page 114

1    Q    How about September 4, 2023?

2    A    Yes.

3    Q    And you learned who had been selected, correct?

4    A    Yes.

5    Q    And you were upset learning that the board included

6    someone named Emmanuel Aidoo over you, correct?

7    A     Not at that time.  I would not characterize, you know,

8    I would --

9            THE WITNESS:  Well, again, object, misstates

10   testimony.  I would more characterize my feeling at that

11   time as disappointed that I was not selected.

12   BY MR. WEEDMAN:

13   Q    I'm going to show you what is marked as UCC Exhibit

14   Number 238.  Mr. Phillips, this is an email chain.  If we

15   scroll down to the bottom, it's an email that you sent again

16   from your email address, celbk7@proton.me, on September 4,

17   14, 2023 at 3:48 p.m., to Aaron Colodny, Gregory Pesce,

18   Keith Wafford, Scott Duffy, and Thomas DiFiore.  Do you see

19   that?

20   A    Yes.

21   Q    And you recall sending this email, correct?

22   A    Yes.

23   Q    And the subject line of this email says "Board

24   Diversity Requirements UCC Only Needs ONE," and one is in

25   all caps, correct?

1   A   Yes, and I appreciate you increasing the magnification

2   so I can read it.

3   Q   And by one in all caps, you were referring to a diverse

4   member of the board, correct?

5   A   Yes.

6   Q   And you sent this email because you were worried that

7   Mr. Aidoo had been selected for diversity requirements,

8   correct?

9   A   No.

10   Q   I'm sorry.  You said that's not -- are you saying no to

11   that?

12   A   I did.

13   Q   Can I please direct you to your deposition that was

14   taken yesterday?

15          MR. WEEDMAN:  I'd ask Mr. Lopez to bring up Mr.

16   Phillips' deposition, Page 49.  And, Your Honor, this is Tab

17   4 in your binder.

18          THE COURT:  I have it open.  What line number?

19          MR. WEEDMAN:  And I'm going to read, Your Honor,

20   from Line 6 to 16.

21          THE COURT:  Okay.

22          MR. WEEDMAN:  And the question, you say --

23          THE COURT:  I think you're starting in the wrong

24   place.

25          MR. WEEDMAN:  Oh, I'm sorry.  Page 48.  Thank you.

Page 116

```
 1   BY MR. WEEDMAN:

 2   Q    And so the only thing I couldn't -- I couldn't

 3   understand why and so I thought that they may perceive that

 4   they needed him for diversity requirements.  And so I wrote

 5   that, that, you know, because of Mr. Genoot meeting those

 6   diversity requirements, they didn't need anybody else as

 7   long as they kept Ms. LaPuma.  And I was not aware that

 8   there was another director, apparently, that also met

 9   diversity requirements.

10        Do you see that?

11   A    I do.

12   Q    Is that testimony that you gave under oath yesterday?

13   A    It is.  And also I don't see the prior transcript, so I

14   don't know if there was an objection.  I saw that there was

15   an objection in the other page.  I don't know if there was

16   an objection on the record prior to this statement.

17   Q    Mr. Phillips, you agree you did not participate in the

18   committee's deliberations regarding the board composition?

19   A    I agree, yes.

20   Q    I'm sorry.  You cut out.

21   A    I said I do agree with that, yes.

22           MR. WEEDMAN:  And Your Honor, I would like to move

23   UCC Exhibit 238 into evidence.

24           THE WITNESS:  I'm sorry, Your Honor.  For

25   clarification, is that the whole transcript or what is UCC
```

Page 117

 1    Exhibit 238?

 2              THE COURT:  He hasn't moved -- he moved the

 3    emails.  UCC 238 was an email chain.

 4              THE WITNESS:  The August 30th email?

 5              THE COURT:  The top of the list says Email 3, but

 6    this is ECF 3706, Pages 9 and 10 are what are included here.

 7              THE WITNESS:  Okay.  Thank you, Your Honor.

 8              THE COURT:  All right.  Are there any objections?

 9    All right.  Exhibit 238 is admitted into evidence.

10         (Exhibit 239 admitted into evidence.)

11              MR. WEEDMAN:  Thank you, Your Honor.

12    BY MR. WEEDMAN:

13    Q    Shortly after you found out that you had not been

14    selected for the NewCo board, you filed a limited objection

15    on September 22nd, correct?

16    A    I believe it was September 21st when I submitted it,

17    but it appeared on the docket on September 22nd.

18    Q    And one of the objections that you lodged in your

19    limited objection from September related to White & Case and

20    Perella Weinberg's conduct in the board selection process,

21    correct?

22    A    Yes.

23    Q    And in particular you object to the exculpation of

24    White & Case and Perella Weinberg, correct?

25    A    Correct.

Page 118

1   Q    And that's because you believed that creditors,

2   including yourself, should be able to sue those two

3   companies regarding the board selection process, correct?

4   A    And the fiduciary appointed on behalf of the UCC goes

5   out of business on the effective date.

6   Q    And you agree with me that you probably would have not

7   filed that objection if you had been selected to the Board,

8   right?

9   A    Yes.

10           MR. WEEDMAN:  I have no further questions, Your

11  Honor.

12           THE COURT:  Any other examination?

13           MR. BRIER:  Yes, Your Honor.

14           THE COURT:  Okay, Ms. Brier.

15           MS. BRIER:  Grace Brier, Kirkland & Ellis, on

16  behalf of Debtors.

17              CROSS-EXAMINATION OF RICHARD PHILLIPS

18  BY MS. BRIER:

19  Q    Good afternoon, Mr. Phillips.

20  A    Good afternoon, Ms. Brier.

21  Q    I saw you pretty recently.  Welcome.

22  A    We did.

23  Q    Mr. Phillips, you submitted a ballot in this case

24  regarding the plan, correct?

25  A    I did.

1    Q    And you voted to approve the plan when you submitted

2    your ballot, correct?

3    A    I did.

4    Q    And you submitted that in September of 2023?

5    A    I did.  I submitted that ballot either the last day or

6    the day before the end of the voting period, on the -- I

7    think it was September 22nd.

8    Q    I would like to talk about some of your early

9    involvement in this case.  You signed an NDA to listen in on

10   the auction proceedings, right?

11   A    I did.

12            MS. BRIER:  Your Honor, permission to approach

13   with Celsius Exhibit 118?

14            THE COURT:  Sure.

15            MS. BRIER:  Mr. Lopez, if you could please pull

16   that up.

17            THE COURT:  Thank you.

18            MS. BRIER:  All right.  And if you could please

19   zoom in on that first tweet, Mr. Lopez.

20   BY MS. BRIER:

21   Q    Mr. Phillips, this is a tweet from your.  Your Twitter

22   handle is @cryptoyolo7, correct?

23   A    Yes.

24   Q    And in May 2023, you tweeted, "It's official.  The

25   winner is @farenheithldg @arrington.  Significant work to

Page 120

```
 1   improve the value of @CelsiusNetwork mining operations for
 2   #Celsians @CelsiusUCC and reductions in overall management
 3   fees, #auctionswork."  Right?
 4   A    Yes.
 5   Q    Now, as a result of the things that you learned and saw
 6   while observing the auction, you thought the Celsius auction
 7   involved significant work to improve the value of the
 8   Celsius Network mining operations, correct?
 9   A    I would rephrase that.  I think that taking a 140-
10   character tweet does not summarize my thoughts.  It just
11   says the length of 140 characters.  So first off, the
12   transcript was essentially public at that point.  The
13   transcript was publicized.  And I referred to the Stretto
14   filing here.  So I based it essentially on the Stretto
15   filing, not on listening in on the auction.  But it was
16   clear that the resulting final bid as described in that
17   Stretto filing was better than the stalking horse bid that
18   existed at the beginning of the auction process from
19   NovaWulf and that's why I tweeted this.
20   Q    And you tweeted on May 25th, 2023, "Significant work to
21   improve the value of the mining operations."  True?
22   A    Yes.
23        MS. BRIER:  Your Honor, permission to move into
24   evidence Celsius Exhibit 118.
25        THE COURT:  I'm sorry, say it again.
```

Page 121

1          MS. BRIER:  Celsius Exhibit 118, the tweet.

2    Permission to move into evidence.

3          THE COURT:  All right.  Any objections?

4          THE WITNESS: That's this tweet, correct, Ms.

5    Brier?

6          THE COURT:  Yes, this tweet.  Exhibit 118 is

7    admitted in evidence.

8          (Exhibit 118 admitted into evidence)

9    BY MS. BRIER:

10   Q    And, Mr. Phillips, as a result of the things that you

11   learned and you saw and you knew about the auction, you

12   tweeted, "#AuctionsWork".  Right?

13         THE WITNESS:  Objection.  Misstates testimony.

14         MS. BRIER:  My question is did you tweet

15   "#AuctionsWork" based on what you knew and learned and saw

16   about the auction?

17         THE WITNESS:  Objection.  Misstates testimony.

18         THE COURT:  Could you just answer the question,

19   Mr. Phillips?

20         THE WITNESS:  Sure.

21         THE COURT:  You can answer it yes or no.

22   BY MS. BRIER:

23   A    Well, no based on how she phrased it.

24   Q    All right.  On --

25   A    I tweeted "Auctions Work" based on the two public

Page 122

1   filings, one post-auction and the NovaWulf stalking horse

2   pre-auction.

3   Q    So let's do it this way.  Based on the public filings

4   that you saw, you tweeted #AuctionsWork on May 25th, 2023,

5   right?

6   A    Yes.

7   Q    Now, since that time, May 25th, 2023, you've applied to

8   be a member of the NewCo board, right?

9         THE WITNESS:  Asked and answered.

10        THE COURT:  Mr. Phillips.

11        THE WITNESS:  Yes.

12        THE COURT:  Look, let's stop fencing.  We're going

13   to get through this a lot faster if she asks questions, you

14   can answer the questions.  Okay?

15   BY MS. BRIER:

16   Q    I'll ask that again.  You applied to serve as a member

17   of the NewCo board since this time in May 25th, 2023, right?

18   A    Yes.

19   Q    And you were not selected for the board, right?

20   A    Yes.

21        THE COURT:  I mean, that's established already.

22   Let's move on.

23   BY MS. BRIER:

24   Q    Now, after you weren't selected, you filed some

25   objections.  And I would like to talk about those.  Mr.

Page 123

1    Phillips, you submitted a valuation to the Court as part of

2    a recent declaration.  Now, that valuation wasn't included

3    in your original declaration, true?

4    A    Yes.

5    Q    And you're not offering an expert opinion in this

6    matter, correct?

7    A    No.

8    Q    But you offered some valuation statements in your

9    declaration that you filed with the Court, correct?

10   A    Yes.  But I am an expert.

11   Q    Your testimony is that you're an expert?

12   A    Absolutely.

13             THE COURT:  Well, you haven't been -- you didn't

14   lay the foundation for expertise.  I'm not hearing the

15   expert opinions.  Go on with your examination.  He's not

16   testifying as an expert.

17             THE WITNESS:  Your Honor?

18             THE COURT:  No.  I'm sorry.  You did not -- you're

19   being examined as a fact witness.  You put in your

20   declarations as a fact witness.  I understand your

21   background with Houlihan Lokey and others.  You're not

22   testifying here as an expert.  Ask questions of the witness

23   and let's get answers and let's move on.

24             MS. BRIER:  Thank you, Your Honor.  In Tab 2 of

25   the binder that the UCC handed up, which is also Celsius

Page 124

1   Exhibit 81 -- I'm happy to bring up a copy, but I think that

2   it's the exact same document.

3              THE COURT:  This is in the (indiscernible) binder?

4              MS. BRIER:  Oh, no.  This is a copy of Mr.

5   Phillips declaration.  I'll just bring this up.  And, Mr.

6   Lopez, if you could please pull up Exhibit 81.  And turn to

7   the next page.

8   BY MS. BRIER:

9   Q    Mr. Phillips, this is the declaration you filed,

10  correct?

11  A    Yes.

12  Q    And on the last page, Page 28, you offer a valuation

13  hearing, right?

14  A    Yes.

15  Q    And in that valuation, you take two discounts to the

16  total NewCo number of $1.2 billion, correct?

17  A    Can you repeat the question, please?

18  Q    Sure.  That was a confusing one.  You take two

19  different --

20             THE COURT:  Let's make sure I'm -- you're looking

21  at Exhibit E, the last page of this page, 28 of 28?

22             MS. BRIER:  Exactly.

23             THE COURT:  All right.  Go ahead.

24  BY MS. BRIER:

25  Q    And, Mr. Phillips, this is a valuation that you

Page 125

```
 1    yourself prepared, right?

 2    A    Yes.

 3    Q    And what you did was you took two different discounts

 4    to the total valuation that was included in the disclosure

 5    statement for NewCo at $1.2 billion, correct?

 6    A    Yes.

 7    Q    And one of those discounts was a Holdco discount at 7.5

 8    percent, right?

 9    A    Yes.

10    Q    And you took that Holdco discount because, as you say,

11    this is a sum of the parts number, right?

12    A    Yes.

13    Q    And that's the only reason you apply that 7.5 percent

14    number here, right?

15    A    No.

16    Q    Is it your testimony that you apply a 7.5 percent

17    discount for any other reason than the fact that it's a sum

18    of the parts number?

19              THE WITNESS:  It's not a yes/no answer, Your

20    Honor.

21              THE COURT:  Go ahead and explain, Mr. Phillips.

22              THE WITNESS:  Sure.

23    BY MS. BRIER:

24    A    So a holdco discount is appropriate because it is a sum

25    of the parts.  7.5 percent was the factor I used because
```

Page 126

```
 1    that was in my (indiscernible), however you want to

 2    characterize my judgement, an appropriate discount factor

 3    given the normal range of holdco discounts for the facts and

 4    circumstances (indiscernible).

 5    Q    Now, however you reached the 7.5 percent discount, the

 6    only reason you're buying a holdco discount at all is

 7    because it's a sum of the parts number, right?

 8    A    Yes.

 9    Q    And you also apply a 30 percent discount, correct?

10    A    Yes.

11    Q    And you apply that 30 percent discount because, as you

12    explain in your declaration, the voting results of the plan

13    result in a 30 percent discount, correct?

14    A    Yes.

15    Q    You have no other valuation or independent reason to

16    reach that 30 percent number, right?

17    A    Correct.

18    Q    You pulled it directly out of the plan?

19    A    Out of the plan and voting results.

20    Q    Correct.  And you apply that 30 percent discount across

21    the entire total, that $1,248 number, correct?

22    A    Yes.

23    Q    Now, you don't know why --

24            THE COURT:  It's billions.

25            MS. BRIER:  Yes.
```

Page 127

1                    THE COURT:  $1,248,000,000.

2                    MS. BRIER:  Thank you for the clarification,  Your

3        Honor.

4                    THE COURT:  Everything is adding thousands to.

5                    MS. BRIER:  For purposes of the record, this 1,248

6        number I'm referencing is in millions on this sheet.  So I

7        will be more clear next time.  Thank you.

8        BY MS. BRIER:

9        Q    Now, Mr. Phillips, you don't know why any single

10       creditor voted to elect either liquid crypto or equity,

11       correct?

12       A    No.

13       Q    But you applied the results of the plan to apply this -

14       -

15                    THE COURT:  Wait.  I think there's an ambiguity.

16       You asked if that's correct and he said no.

17                    MS. BRIER:  Thank you, Your Honor.

18       BY MS. BRIER:

19       Q    You have no knowledge as to why any other creditor

20       voted to select liquid crypto or equity, right?

21       A    No.

22                    THE COURT:  You have to answer the question if you

23       can.  No comment is not an --

24                    THE WITNESS:  I --

25                    THE COURT:  Yes, no, I don't know.  But you can't

Page 128

1    --

2              THE WITNESS:  Your Honor, I said no.  I said no

3    twice.

4    BY MS. BRIER:

5    Q    So just to be clear, there are other reasons people

6    could have selected liquid crypto or NewCo equity other than

7    a valuation opinion that you offered here, right?

8    A    Yes.

9              THE COURT:  That was the point.

10             MS. BRIER:  Thank you, Your Honor.

11   BY MS. BRIER:

12   Q    Now, you apply the 7.5 percent discount and the 30

13   percent discount to the total.  You don't make any

14   distinctions among the three component parts, correct?

15   A    Correct.

16   Q    Now, you would agree with me that the $450 million

17   number there is liquid cryptocurrency, right?

18   A    I don't --

19             THE COURT:  You're talking about staking as

20   opposed to value.

21             MS. BRIER:  Yes, Your Honor.

22             THE COURT:  I want to be sure we have a clear

23   transcript.  The $450 million number is listed for staking

24   of book value.  Is that what you're referring to?

25             MS. BRIER:  Yes, Your Honor.  And at this time, it

Page 129

```
1      is liquid cryptocurrency.

2                THE COURT:  Yes.

3      BY MS. BRIER:

4      A    Yes -- I'm sorry.  Was there a question on the floor or

5      not?

6      Q    I'll re-ask it.  You would agree with me that that $450

7      million number there is at this moment liquid

8      cryptocurrency, correct?

9      A    Yes.

10     Q    And you apply the 30 percent discount and the 7.5

11     percent discount to a total that includes it without making

12     any distinction for that number, correct?

13     A    Correct.

14               THE COURT:  Let me ask you this, Mr. Philips.  How

15     did you arrive at the 7.5 percent reduction for conglomerate

16     discount and the 30 percent initial market capitalization?

17     Because you're applying those numbers across the board

18     whether it's staking at book value, which is essentially

19     it's liquid crypto.  You're applying those discounts to the

20     full numbers and not simply to particular categories.  Why

21     did you do that?

22               THE WITNESS:  Yes, Your Honor.  I mean, that's the

23     way it's done.  There is no holdco/conglomerate discount on

24     each individual part.  The holdco conglomerate discount only

25     exists when someone is doing a sum-of-the-parts type
```

Page 130

1    valuation, which is what is attempted in the disclosure

2    statement by simply adding the three numbers up, which is

3    what Mr. Campagna testified to in his direct testimony, and

4    that's inappropriate.  And so that's why the holdco

5    conglomerate discount is applied at the total because that's

6    the right level (indiscernible) buy it at.  And I chose 7.5

7    percent, which is at the lower end of the common range,

8    which usually is either five to 15 percent or five to 20

9    percent because of the similarity of the three types of

10   businesses or operations that are -- or assets that are

11   included in the total enterprise.

12            THE COURT:  Did you include -- did you make a

13   comparable company analysis to determine what discount rates

14   you were going to apply?

15            THE WITNESS:  Your Honor, comparable company

16   analyses are not usually used in holdco conglomerate

17   discounts.  Mr. Kielty --

18            THE COURT:  Did you just pick the numbers out of

19   the air if there are no comparable companies that would

20   apply such discounts?

21            The  Your Honor, there are numerous studies that

22   establish the holdco conglomerate discounts in the range

23   that I stated of five to 15 percent or five to 20 percent.

24            THE COURT:  Go ahead, Ms. Brier.

25   BY MS. BRIER:

Page 131

1  Q    Mr. Phillips, you include the 30 percent discount and

2  the 7.5 percent discount and you add them both together,

3  correct?

4  A    Correct.

5  Q    And you would agree with me that it's possible that

6  there's overlap between the two, right?

7  A    Yes.

8  Q    You don't account for that at all, right?

9  A    Correct.

10  Q    In your view, Mr. Phillips, it's in the best interest

11  of the creditors to confirm this plan, correct?

12  A    Subject to the modifications that I have suggested,

13  yes.

14  Q    Subject to the limited modifications you suggested, you

15  agree with me that it's in your view that it's in the best

16  interest of creditors to confirm this plan, right?

17  A    Yes.  I think it's time for everyone to get out of

18  this.

19  Q    And you're not offering that it would be better for

20  creditors to enter a Chapter 7 liquidation than it would be

21  to confirm the plan, true?

22  A    Correct.  And I have not done that analysis, although I

23  did establish on cross that the liquidation value of the

24  mining business was significantly understated and Mr.

25  Campagna admitted it was significantly understated by at

Page 132

1    least a factor of two.

2    Q     So, Mr. Philips, the answer to my question is yes.

3    You're not offering the view that there is a -- that it

4    would be better for creditors to enter a Chapter 7

5    liquidation than confirm the plan, true?

6    A     Correct.

7    Q     Thank you.

8              MS. BRIER:  No further questions, Your Honor.  I

9    pass the witness.

10             THE COURT:  Any other cross-examination?

11   BY MR. SABIN:

12   Q     Good afternoon, Mr. Phillips.  Jeff Sabin from Venable.

13   I have four quick questions.  One, on what date did you

14   submit your ballot?

15   A     Your Honor -- sorry, Mr. Sabin, as I said, I believe

16   that a final ballot was submitted either on the final

17   deadline date, which was September 22nd, or on September

18   21st, the day before.

19   Q     And was that before or after you filed your initial

20   plan objection?

21   A     I don't remember the exact deadlines for each.  I

22   believe it might well have been -- I mean, I just don't

23   remember.  If I could look at the filing date, I could tell

24   you the answer to that.

25   Q     That's okay.  I'm just asking your recollection.  My

Page 133

1    third question is did you read the approved disclosure

2    statement before you voted?

3    A    Yes.

4    Q    And did you read the ballot and instructions before you

5    voted?

6    A    Yes.

7    Q    Thank you.

8            THE COURT:  All right.  Anybody else wish to

9    cross-examine?  All right.

10           Mr. Phillips, when I've had a witness testify

11   without counsel, I've usually given them an opportunity to

12   in effect redirect.  We don't use the Q&A format.  So if

13   there are any evidentiary points that you want to raise in

14   effectively redirect in response to the cross-examination,

15   now would be the time to do it.

16           MR. PHILLIPS:  Yes, Your Honor.  I think that with

17   respect to the two emails that were introduced -- let me get

18   the right one here.  Actually, it was -- I'm sorry, what was

19   the date of the email that had the (indiscernible)?  That's

20   the one I wanted to put up.  Or if you could re-put that one

21   up.  Because the whole spread was on that.  And Mr. Weedman

22   used it.

23           THE COURT:  I'm trying to see which ones you're

24   referring to.  So the ones --

25           MR. PHILLIPS:  It's on 9/14.

```
 1              THE COURT:  What I have is Celsius Exhibit 118

 2    which was the exchange of Twitter messages it looks like.

 3    Well, it's up on the screen now.  Go ahead.

 4              MR. PHILLIPS:  Yeah.  And if we could magnify that

 5    top email there, Your Honor?

 6              THE COURT:  Exhibit 238.

 7              MR. PHILLIPS:  Yes, thank you.  One of the things

 8    that I point out in my rebuttal is essentially what starts

 9    here on the second paragraph and which I will read.  "I am

10    still waiting for anyone on the UCC side, advisor or member,

11    to explain the observer's duties and responsibilities.  The

12    agreement I sought provided no or unspecified compensation

13    and the right for NewCo to sue the observer for any number

14    of reasons.  In other words, no upside and high downside.

15    Please articulate to me the observer's duties and

16    responsibilities."

17              So I do think that this is something that has

18    never been responded to by the UCC, yet Mr. Colodny used in

19    his rebuttal to my objection that the statement that the

20    board consist of five prepetition -- significant prepetition

21    creditors which are two board members and three board

22    observers.  But the three board observers have no power.  So

23    I think that that's something that's very telling.

24              I do think that the orderly winddown scenario

25    needs to be considered much more strongly.  I do believe
```

Page 135

1    that one of the -- the definition of value -- you can take

2    that down, please.

3              THE COURT:  Let's take the email down so Mr.

4    Phillips is on the screen.

5              MR. PHILLIPS:  Thank you.

6              THE COURT:  Go ahead, Mr. Phillips.

7              MR. PHILLIPS:  Thank you.  I do believe that the

8    definition of value in any valuation is the price that a

9    willing buyer and seller would agree to in a transaction.  I

10   think that the ballot, the weighted distribution election,

11   which had a compelling number of creditors choose more

12   crypto, over $1.1 billion in claims toggling for more

13   crypto, which is over 25 percent of the actual claims in the

14   case and actually over 80 percent of the people that

15   participated in the toggle by claim value are quite telling

16   as to value.  And so the 30 percent discount that I applied

17   to the equity value, the NewCo equity value, is actually

18   understated if anything because it's clear that there wasn't

19   a fair market set at 30 percent.  And if you were to go to

20   the disclosure statement, the weighted distribution example

21   table, which was in my exhibits to my declaration I believe

22   and is an excerpt from the disclosure table basically showed

23   that you would get eight percent more value or less value

24   depending on which way you toggle and assumed essentially an

25   equal number claims toggling in each direction.  Which

Page 136

1    clearly wasn't the case once the ballot results came in.  So

2    I think that my 30 percent discount is conservative if

3    anything and is higher.

4            And I would point to three specific actions that

5    occurred in the month of September that undercut the value

6    of NewCo stock and contributed to that election being so

7    lopsided.

8            One was the lack of creditor representation on the

9    board, which as Mr. Weedman pointed out (indiscernible) on

10   September 4th posted a disclosure statement but brought in

11   on a Friday night filing that a lot of creditors don't read.

12   And also wasn't distributed in the same way that the

13   disclosure statement was.  So that occurred on September

14   4th.

15           Subsequent to that in the next plan supplement,

16   which I think was one or two weeks later, again, on a Friday

17   night, there is the revelation that Fahrenheit had dropped

18   its initial contribution from $50 million up front to $33

19   million which undercut the price of the stock out of the

20   gate no doubt because there is less of a stabilization fund

21   available to stabilize the price upon listing.

22           And thirdly, there seemed to be some kind of board

23   twitter war between Mr. Arrington and Mr. Dixon and -- that

24   or -- no, a following, a subsequent plan supplement resigned

25   from the board in a surprise move, Mr. Arrington did.  And

Page 137

1    he is the lead name investor in the Fahrenheit Group.

2    Arrington Capital is the lead investor.  Mr. Arrington

3    suddenly resigned from the board and replaced himself with

4    Ravi Kava.  I had no objection to him and is certainly well-

5    qualified and well within Fahrenheit's rights to put on the

6    board.  But basically said he was doing that because he

7    disagreed with the board observer process and specifically

8    the appointment of Mr. Dixon in a board observer role.

9           And so I believe that those all undercut the stock

10   price significantly and that is why creditors ran and taking

11   more equity.  And a 30 percent discount is the minimum

12   discount that should be taken to the NewCo equity in the

13   valuation.

14           THE COURT:  All right.  Thank you very much, Mr.

15   Phillips.

16           The next person is Mr. Cassidy, Eric Cassidy.  Mr.

17   Cassidy, are you on Zoom?  No response from Mr. Cassidy.

18           The next is Elizabeth Bohon.  Ms. Bohon, are you

19   on?  I may be mispronouncing your name, for which I

20   apologize.  No response.

21           Travis Keeney?  Mr. Keeney, are you on the line,

22   on Zoom?

23           Michael Windham?

24           James Johantgen?  J-O-H-A-N-T-G-E-N?

25           May I ask whoever is operating the Zoom -- and I

1    know Deanna has left for the day, but I know somebody is.

2    Are you able to tell whether Ms. Bohan, Mr. Keeney, Mr.

3    Windham, or Mr. Johantgen are still on the Zoom connection?

4              CLERK:  Good afternoon, Judge.  It's Jessica.  No,

5    those entities are not on Zoom.

6              THE COURT:  Okay.  The next person is Caroline

7    Abruzese, A-B-R-U-Z-E-S-E.  Is she on Zoom?

8              CLERK:  I do not see her.

9              THE COURT:  Okay.  Peter Truss?  Is Mr. Truss on

10   Zoom?

11             CLERK:  I do not see him, either.

12             THE COURT:  Benjamin Dame, D-A-M-E?

13             CLERK:  I do not see him, either.

14             THE COURT:  Okay.  Cathy Lau, L-A-U.

15             CLERK:  Ms. Lau is on.

16             THE COURT:  All right.  Mr. Kirsanov, we are back

17   to you.  Dimitry Kirsanov.  Are you still on the line?

18             MR. KIRSANOV:  I am indeed.

19             THE COURT:  Okay, Mr. Kirsanov, you are up.

20             MR. KIRSANOV:  Thank you, Your Honor, for hearing

21   my concerns.

22             So my concerns primarily revolve around best

23   interests and fair and equitable clauses and the mixed

24   language in the plan along with the concerns of CEL token

25   and other cryptocurrency in the custody class.  And the

Page 139

1    language of deactivation they value, not providing

2    guaranteed value returned in comparison to a Chapter 7

3    liquidation.

4         From my understanding, all distribution methods

5    from effective date to deactivation day are to follow best

6    interests.  On the plan under CEL token settlement in the

7    plan, Docket 3332 on Page 116, it indicates that all CEL

8    token deposit claims other than custody claims that are CEL

9    token deposit claims shall be valued at 25 cents.

10        However, on the debtor's balloting, the custody

11   class was assigned 25 cent valuation for cell tokens in the

12   custody class.  And I do want to note that the custody class

13   in the CEL monetary majority voted to reject the CEL

14   settlement plan.

15        In my particular situation, I had pure custody

16   assets that were not able to be withdrawn pursuant to the

17   withdrawal order as a result of having a (indiscernible).

18   This resulted in my pure custody assets moved into 6A from

19   the 6B class as I -- and I was able to reject the proposed

20   CEL custody settlement in the custody class by a monetary

21   majority after initially accepting the custody settlement as

22   a result.

23        This was never explained in explicit listing or

24   ballot instructions or otherwise.  From my understanding

25   maybe a double-digit number of people in the world that

Page 140

1    could do this.  But I fell under that category.  So the

2    settlement, the custody settlement calls for the debtor if

3    they cannot satisfy in-kind distributions during the trustee

4    phase and the debtor has confirmed they are not able to

5    distribute any other cryptocurrency aside from bitcoin or

6    Ethereum in Hawaii in that phase, that the conversion rate

7    shall be determined using the value of the original digital

8    asset of petition date in U.S. dollars and will be converted

9    into an (indiscernible) cryptocurrency based on the value of

10   such digital asset on the date of entry of the settlement

11   approval order.

12          In the CEL token hearing of September 28th which

13   was a day after the final amendment of the plan, the

14   debtor's counsel indicated that this was an excellent

15   question and they had not thought of that scenario.

16          In addition, I do believe the deactivation day

17   language indicates that a creditor may receive less than

18   their Chapter 7 liquidation value.  It is reasonable to

19   assume that many people have moved on from Celsius and will

20   simply receive a check in the mail from the trustee with the

21   activation day value.

22          While most cryptocurrencies have indeed risen in

23   value, there are some that have fallen in value on petition

24   date.  And I believe the Debtor must follow the best

25   interest in that case, providing equal or greater value to

Page 141

1     the cryptocurrency as of that petition date.

2          The Debtor has indicated they want to use market

3     rates, which do not always reflect liquidation values of the

4     assets that have fallen in value since petition date.  My

5     interpretation of the change after balloting on the 27th

6     stem from the fact that the debtor wishes to assign a value

7     of 25 cents to the CEL token in custody class, which in my

8     opinion is not fair and equitable in terms of liquidation

9     rates in comparison to other classes.

10          Custody is targeted with the most monetary loss as

11    a result.  I do believe that this violates Bankruptcy Code

12    1127 and Bankruptcy Rule 3019.  My stance is that CEL should

13    be assigned a liquidation value across its respective

14    classes.  For the CEL token in pure custody, that's 100

15    percent liquidation value of petition day prices.  The value

16    returned in that case must be equal to 81 cents.

17          For CEL general custody at a 72.5 liquidation

18    rate, the value returned must be equal or to at least 59

19    cents.  For CEL in general Earn, which has a 47.4 percent

20    liquidation rate of a Chapter 7, the value returned must be

21    equal or greater than 38 cents.

22          And my concerns is this does not meet the best

23    interest of a creditor like myself.  My claim, my dollarized

24    claim on CEL token is $600,000.  And I believe the Debtor

25    tries to mitigate that petition date value down to under

1    $200,000.  And this monetary loss is not fair and equitable

2    to me in comparison to other classes.  And therefore I

3    reject the plan.

4         You know, I do want to mention since becoming a

5    vocal dissenting member, I've been the subject of

6    harassment, intimidation, and threats.  And I don't think

7    that's appropriate at all.  You know, my objective is to get

8    through this Chapter 11 in a fast process so we can all

9    maximize our value.  But these specific concerns, I have

10   been getting vague responses on.  Nobody has given me my

11   direct options on this.  This wasn't even explained on the

12   balloting, Your Honor.  And the debtor's counsel even said

13   that was a great question and they didn't even think of

14   that.  So, you know, I would like a clarification on that.

15        I would also like to update the Court in regards

16   to a criminal matter from the FTX and Alameda case.  And I

17   submitted this on the docket today, Your Honor.  I did

18   submit a formal transcript.  The CEO of Alameda Research,

19   Caroline Ellison, who has agreed on a plea deal with

20   prosecutors to testify against FTX, last Wednesday, Ms.

21   Ellison testified that her and Mr. Bankman-Fried the CEO of

22   FTX, were considering selling billions of dollars-worth of

23   bitcoin if it was ever above $20,000.  I believe this

24   presents potential challenges to any valuation arguments and

25   presents challenges to valuation concerns on all assets

Page 143

1    (indiscernible), especially if a competitor was conspiring

2    to suppress the price of bitcoin.

3            So, Your Honor, those are my concerns today.  And

4    I appreciate the Court's time in hearing my objections and

5    concerns.

6            THE COURT:  All right.  I think, Mr. Kirsanov, you

7    previously raised issues about those with custody.  And I

8    believe that the Debtor's counsel words to effect that it

9    was a good question and that it clearly -- it doesn't go to

10   the evidence that's been admitted, but it is clearly going

11   to go to final arguments that have to be made.  So I'm not

12   going to ask Debtor's counsel to respond today.  But it's

13   something -- and Mr. Kirsanov, when we get to the closing

14   argument, you'll have a chance to raise it again.  I think

15   because this is the second time, you laid it out in more

16   detail today.  And I'm sure the Debtor's counsel is going to

17   want to respond.

18           I think the one point, if I'm understanding what

19   you said that I'm going to push back on -- and I'm not

20   deciding the evidence at this point.  There's no witness who

21   has testified that CEL should be valued at 81 cents at the

22   petition date.  There's been a variety of testimony from --

23   at the petition date, it was really worthless because it was

24   a utility token and had no utility.  Or if it did, it was

25   purely speculative whether there was going to be a

Page 144

1    reorganization possible where the CEL token would have any

2    utility going forward.  So zero at the low end.  No one,

3    including in the cross-examination today, there is no one

4    who said it's 81 cents.  So we'll have to see.  This will be

5    for legal argument.

6              MR. KIRSANOV:  If I may respond to that, Your

7    Honor?

8              THE COURT:  Briefly.

9              MR. KIRSANOV:  With regard to the most recent

10   testimony by Ms. Ellison from Alameda Research, I do believe

11   it is perhaps even a conflict of interest in the expert

12   witness who will have admitted to receiving seed funding

13   from Alameda research.  And now if Alameda research and FTX

14   were indeed conspiring to keep the price of bitcoin

15   suppressed under $20,000, this prevents -- excuse me, this

16   presents substantial issues on general valuation not only on

17   the CEL token, but across all other petition date values.

18             THE COURT:  All right.  So I'm going to stop that

19   testimony.  I'm going to stop those arguments for now.

20             We have one other witness that we moved to the

21   end, and that's Mr. Schneider.  Do you wish to be heard

22   today?  It was David Schneider.  He originally was number 12

23   on the list.  And at his request, I moved him to the last

24   for today.

25             MR. SCHNEIDER:  Yes.

Page 145

```
 1                THE COURT:  Go ahead, Mr. Schneider.

 2                MR. SCHNEIDER:  Okay.  Can you hear me fine, Your

 3     Honor?

 4                THE COURT:  Yes, I can.  Go ahead.

 5                MR. SCHNEIDER:  Okay.  Yeah, I would prefer to be

 6     heard tomorrow.  I've been up all night for the past 24

 7     hours working on this.  I am definitely inexperienced at

 8     what -- where I'm at here today.  And I need a little bit

 9     more time to be able to be prepared.

10                THE COURT:  What is it that you're preparing, Mr.

11     Schneider?

12                MR. SCHNEIDER:  To be honest, I'm not exactly sure

13     exactly the intent and purpose of this hearing here today.

14     I know I submitted my exhibits and I'm basically preparing a

15     statement of verbalizing how the exhibits fit in with my

16     objections.  And I'm not there yet, Your Honor.

17                THE COURT:  Okay.  Why don't you hold off for a

18     second.  So let me ask the debtors then.  So the objectors

19     are seeking to call an additional expert witness.

20                MR. MCCARRICK:  Yes, Your Honor.  We're happy to -

21     -

22                THE COURT:  Make your appearance.

23                MR. MCCARRICK:  Sorry.  Every time.

24                THE COURT:  Every time.

25                MR. MCCARRICK:  T.J. McCarrick, Kirkland &  Ellis,
```

Page 146

1    on behalf of the Debtors.  We're happy to push forward

2    tonight to the extent the witness is available.  If you'd

3    like to proceed tomorrow with remote testimony, we're happy

4    to do that.

5              THE COURT:  I think I would like to proceed

6    tomorrow with remote testimony.

7              MR. MCCARRICK:  And in fairness, I would like

8    that, too.  There have been some new underlying materials I

9    understand have been posted on Twitter from the expert.  So

10   I'll spend the evening with those and we can --

11             THE COURT:  All right.  So let me understand.  I

12   am prepared to allow Mr. Schneider to go in the morning as

13   well to give him some more time.  I hope you're not going to

14   spend another sleepless night, Mr. Schneider, but I will

15   wait to give you a chance to speak tomorrow morning, okay?

16             MR. SCHNEIDER:  Okay.  Thank you, Your Honor.  I

17   appreciate it very much.

18             THE COURT:  Let's deal with -- I guess I have a

19   couple of questions.  So who is the expert and who is

20   calling him?

21             MR. MCCARRICK:  Mr. Faraj.  There's been a number

22   of letters on the docket, but Mr. Davis identified Mr. Faraj

23   on his witness list.  So I think technically Mr. Davis would

24   be the sponsoring --

25             THE COURT:  Okay.  Have you deposed Mr. Faraj?

Page 147

1           MR. MCCARRICK:  We have.

2           THE COURT:  Okay.  So the only witnesses as of now

3   for the objectors to listen to would be Mr. Faraj and Mr.

4   Schneider.

5           MR. MCCARRICK:  Correct.  And my understanding

6   just as to Mr. Schneider is that he did not submit any

7   written testimony.

8           THE COURT:  Correct.

9           MR. MCCARRICK:  He had certain exhibits listed,

10  which we can discuss.  But yes.

11          THE COURT:  Correct.

12          UNIDENTIFIED SPEAKER:  Your Honor, Ms. Lau raised

13  her hand.

14          THE COURT:  Yeah.  We're going to finish with Ms.

15  Lau this afternoon before we finish.

16          Does the Debtors or the Committee plan to call any

17  rebuttal witnesses?

18          MR. MCCARRICK:  Speaking for the Debtors, not at

19  this time, Your Honor.

20          THE COURT:  I don't know what time you're thinking

21  about.

22          MR. MCCARRICK:  No, I understand.  I would be

23  surprised if we had to haul someone in here tomorrow.

24          THE COURT:  Okay.  Let me hear from the Committee.

25          UNIDENTIFIED SPEAKER:  We're in the same

Page 148

```
 1   situation, Your Honor.

 2              THE COURT:  Okay.  So, Ms. Lau, I'm going to go

 3   ahead and listen to you.  I called you earlier.  I don't

 4   know whether you had dropped off and signed back on, but you

 5   were on the list.  So go ahead, Ms. Lau.  Go ahead, Ms. Lau.

 6              MS. LAU:  Can you hear me?

 7              THE COURT:  Yes, I can hear you.

 8              MS. LAU:  Okay.  Sorry.  I had to hook up an

 9   external microphone.  This is like -- I didn't know if it

10   works.

11              THE COURT:  Okay.

12              MS. LAU:  I wasn't aware that I was supposed to be

13   here, but I can, like, voice my objections, the ones that I

14   wrote down before.  Because I do have everything.

15              THE COURT:  Well, let me ask you this.  If there's

16   anything you want to add to your written objections, now

17   would be the time to do it.

18              So the Court entered an order on October 13th and

19   it provided the list and the order that I was going to hear

20   the objectors.  And you were listed as number 22 on the

21   list.  So it's okay.  It's okay.  I'm listening to you now.

22              In your written objection, you don't have to just

23   repeat what's there, but I'm going to give you a chance to

24   speak if you wish to.

25              MS. LAU:  Can I say what was in there and then
```

Page 149

1    also maybe add?  Or do you just want me to say if I have

2    anything new.

3              THE COURT:  We have the written objection.  I'm

4    not -- I want to give you a chance to say what you want to

5    say.  Okay?  So go ahead.

6              MS. LAU:  I guess my feelings towards, like, what

7    I felt was based on the disclosure statement.  Because I

8    really felt like it made all these -- it took all these

9    liberties that I don't feel were really there.  Like, I

10   thought that, like, for example, I'm in my very first

11   objection, like you already ruled, but we were supposed to

12   get our Flare tokens back.  And then they said they're not

13   going to give us the Flare tokens back because, like,

14   Celsius didn't have a custody account at the time.  And,

15   like, I've never had a custody account because I'm Canadian.

16   Canadians don't even have custody accounts.  And we've been

17   waiting since 2020 to get those.  So I was like, how could

18   you just say we're not going to give you back just because

19   there were no custody accounts?

20             And, like, a lot of the rulings I felt like didn't

21   take into account a lot of -- like even how they said that

22   everybody -- that because so many people voted in favor of

23   the Celsius plan that Celsius creditor -- like all the

24   people who have Celsius actually agreed to the valuation of

25   Celsius.  I really wanted to stress that I don't think that

Page 150

1    that's true.  I already know another creditor who only voted

2    that way because she wanted to get some money back from the

3    claim.  And even though she has CEL token, she's like, well,

4    what can I do.  If I don't vote yes, I don't any money.  And

5    that doesn't reflect the fact that we're like, yes, we're

6    fine with you valuing 25 cents.

7            Like I said in my letter, I took out a line of

8    credit just to buy some CEL token.  And some of it was even

9    for, like, four dollars.  And I think that it's crazy that

10   regardless -- I realize that everyone's trying to value CEL

11   and see what price it was at the time, but I think it's

12   ridiculous if we get nothing back.

13           Like, I feel -- from what I understand, Alex

14   Mashinsky and all the other people aren't even getting any

15   value for their CEL.  But I don't -- if they're not going to

16   get anything for their CEL, why is it that everyone who

17   bought CEL has to suffer?  Because so many people are mad at

18   Alex and all the people for, like, manipulating the price of

19   Celsius.  We bought CEL token at certain prices.  And now

20   because so many people are, like, Celsius is stupid, Celsius

21   did this and that and that, then we can't get anything what

22   we purchased because of all these negative feelings towards

23   Celsius people.  I feel like it should at least be taken

24   into account that there was a lot of us that bought Celsius,

25   and we bought it for certain prices, like a lot higher than

Page 151

```
 1    this 25 cents or 20 cents and all those prices that they got

 2    to buy it for.  And now we have to worry about not even

 3    getting anything for it or getting like 20 cents or 25

 4    cents.  Like I said, I took out one line of credit just to

 5    buy it for 40 cents and another just to buy it for like four

 6    dollars.  So I already had $10,000 invested in Celsius.  And

 7    I feel like everybody just being like we shouldn't get

 8    anything because Celsius is, like, this, that and another.

 9    Like that we all bought it thinking that it had value, and

10    it should.  And it's not like it didn't have any value.

11    Like somebody mentioned, there's still a market cap for it.

12    So I don't understand why there's this big argument that we

13    should just get nothing for it.

14            And I know it's probably too late to talk about

15    this, but I thought it was really unfair how they forced us

16    to, like, just accept our coins in terms of bitcoin and in

17    Ethereum.  It's like I have 36 coins and then my taxes are

18    going to be ridiculous now because they're selling all my

19    coins without me getting a say in it.  And just so that the

20    people who kept lots of bitcoin because from my

21    understanding, a lot of the creditors that have big holdings

22    have, like, mostly just bitcoin and Ethereum.  So it all

23    helps them.  And then they get what they want.  But all

24    these little guys like me who only buys -- who have, like,

25    smaller holdings.  But we have many coins.  Now we lose all
```

Page 152

1    the work we put into, like, getting each one of those --

2    every one of those coins.  Like, we have to research a lot

3    to find out which coins we want to buy.  We have to, like,

4    try to buy them at good prices all the time.  It's really

5    difficult.  There was so much work into going into that.

6    And I thought that it was really unfair that people just --

7    just because the biggest creditors have bitcoin and

8    Ethereum, we all just lose all the work we put in just

9    because that satisfies them.

10            I put in my -- I submitted evidence.  I didn't

11   know after the fact with the letter.  And I showed that one

12   of the articles was showing that (indiscernible) of Celsius

13   -- of the (indiscernible) in Celsius (indiscernible).  I

14   think it said like sixth-something percent (indiscernible)

15   coin.  And they lost the coin that they had, but it's not

16   like they lost the coins that we bought.  But because so

17   many people are invested in bitcoin, now it feels like we

18   just get -- we have to go along with whatever everybody else

19   does.  I just didn't think that was fair.

20            And I wrote for number four inappropriate

21   allocation of $2.6 million of accountholder funds to the

22   emergence incentive plan awards.  I know that's been

23   addressed a number of times.  And I know that people have

24   come on here saying that, oh, this is normal that -- but I

25   already feel like they're already getting paid so much money

Page 153

1    from creditor money.  And then it already said somewhere

2    later, like in the plan way later that NewCo, they were

3    going to get -- they were going to have penalties instead of

4    incentives for, like, if they don't meet quota.  And I don't

5    understand why.  Like, I think that would motivate someone

6    just as much to have a penalty if they didn't meet what they

7    were supposed to do than, like, an incentive.

8             And I said there was too much freedom for plan

9    creators to use the plan after the fact with no limitations

10   and no requirements to stick to what was already put forth

11   (indiscernible).  I just thought it was crazy that they

12   have, like, potential exists for inaccuracies and the

13   Debtors have no duty to update.  They're basically saying

14   that we could put something completely wrong here and we

15   don't have to tell you and we can change it.  And as long as

16   you, the judge, doesn't tell them you have to inform

17   everybody that you've made an update or changed something,

18   they can get away with changing the plan as much as they

19   want.  And the fact that they added two NewCo members

20   without telling anybody even though that's going to require

21   so much Celsius creditor money, I felt like that was really

22   unfair.  That's a huge deal.  Like, how much is it going to

23   cost to pay for two more people?  Plus, they're people from

24   the NewCo board.  They're not even Celsius creditors.  So it

25   just felt to me like how do you know that they're not just

Page 154

1    voting for each other and promising each other I'll vote for

2    you here if you vote for me here so then we can all get

3    seats.  And then we don't even get a say because we're

4    creditors.  From my understanding, people from the committee

5    of creditors, they have seats on the litigation committee,

6    (indiscernible) board and all these different committees.

7    And some of them you get to vote on.  And how do we know

8    that they're not voting for each other so that they can stay

9    on and make even more money after this while we still get

10   less money and less money and less money because they keep

11   creating these positions that we are funding from our money.

12        And then I said it was unfair protection of plan

13   creators from litigation because I was saying that if these

14   people are really taking advantage of the fact that there's

15   all these holes where they can add what they want and then

16   change so many things whenever they want, now we're not even

17   allowed to complain about it because we're not allowed to

18   litigate against them because we were forced to sign and we

19   were forced to opt out of the third-party release if we

20   wanted (indiscernible) of this plan.  I thought that it was

21   really unfair that if you want to accept the plan, even if

22   you say I opt out of the third-party release, you still get

23   opted in regardless so then you can't do anything about it.

24        And then later I said overly narrow scope of plans

25   for litigation, administrators appearing confined to

Page 155

1    pursuing litigation against former debtors with no

2    indication of a plan to go after potentially bigger fish.

3    I'm not sure if they already were planning to go after FTX,

4    because I know there was a claim that was, like, Celsius

5    filed a $2 billion claim against FTX.  But when I read the

6    (indiscernible) last year (indiscernible) everybody hates

7    now because they, like, ran off with creditor money, but

8    they're not going after this big fish that has, like, a $2

9    billion claim.  Where if they go after them, then we could

10   all get back $2 billion.  And then that's going to be so

11   much more money for creditors.

12          I know that it said that they're not necessarily -

13   - they don't have to name everybody they're going after, but

14   I thought it was very concerning that they don't list

15   something huge like that.  Because we could get so much more

16   money if they actually pursued that and if they actually

17   made that a focus rather than just focusing every -- all

18   their energy Alex, Alex, Alex.  Like --

19          THE COURT:  Ms. Lau, I'm going to -- because I

20   think I have your arguments down.  And there will be closing

21   argument in the case.  Let me raise -- thank you very much,

22   Ms. Lau, for your participation.

23          Let me ask a couple of things with respect to Mr.

24   Blonstein's deposition, has that been set at this point?

25          MS. BRIER:  Your Honor, Grace Brier, Kirkland &

Page 156

1    Ellis on behalf of Debtors.  I don't know that we have an

2    official time set, but we will get confirmation as soon as

3    we have it.

4            THE COURT:  Okay.  Here's what I would like to do.

5    We've got Mr. Faraj should be available to -- where is he?

6    I don't know where --

7            MS. BRIER:  Australia.

8            THE COURT:  Sydney, Australia.  Nine a.m. tomorrow

9    morning he has to be available for examination in court.  My

10   plan is -- and Mr. Schneider will have his opportunity.  I'm

11   going to give Mr. Schneider -- Mr. Schneider, I'm going to

12   give you a chance to speak first right at 9:00 tomorrow

13   morning.  All right?  And then we'll deal with Mr. Faraj.

14           I plan to recess this hearing tomorrow no later

15   than 12:30.  We can talk about a schedule for closing

16   statements in any post-trial briefs.  The opening briefs

17   were quite comprehensive.  I think they may need -- they may

18   have some additional arguments in light of how the evidence

19   has come in.

20           I don't know what your schedule is for when you

21   expect to have transcripts, when they'll be posted.  Others

22   would have an opportunity as well to file briefs.  So we

23   ought to do that tomorrow.

24           Is there any reason that anybody expects the

25   testimony to go beyond tomorrow morning?

Page 157

1             MS. BRIER:  None from Debtors, Your Honor, other

2    than Mr. Blonstein's deposition.

3             THE COURT:  Right.  So, look, I would hope that

4    that could be done -- if necessary, we could resume the

5    hearing on Wednesday morning just with respect to Mr.

6    Blonstein.

7             MS. BRIER:  Understood, Your Honor.  We'll have an

8    update for the Court right when we start tomorrow as to when

9    that's scheduled.  And we'll endeavor to get that done

10   tomorrow.

11            THE COURT:  All right.  So one of my law clerks

12   just handed me a note.  Mr. Kirsanov, you wanted to say

13   something?

14            MR. KIRSANOV:  Yes, sir.  May I ask a procedural

15   question?

16            THE COURT:  Go ahead.

17            MR. KIRSANOV:  Does the Court have jurisdiction

18   over the claim of breach of contract before a petition date

19   and before the freeze?

20            THE COURT:  Prepetition claims are definitely part

21   of this Court's jurisdiction to deal with.  That would have

22   to be included in -- and that had to be -- any breach of

23   contract claim had to be asserted and a proof of claim filed

24   with the Court by the bar date.  There certainly have been

25   breach of contract claims that have been asserted, but the

Page 158

1     bar date has come and gone a long time ago.

2              MR. KIRSANOV:  Yes, sir.  And in regards to a

3     breach of settlement, is that something that the Court has

4     jurisdiction over the custody settlement?

5              THE COURT:  I'm sorry, I didn't understand the

6     beginning of your question, Mr. Kirsanov.

7              MR. KIRSANOV:  With regards to breach of

8     settlement and the custody settlement, the first payout,

9     does the Court also have jurisdiction over that?

10             MR. KOENIG:  Your Honor, Chris Koenig for the

11    Debtors.  I think what Mr. Kirsanov is asking is do you have

12    jurisdiction -- he signed the custody settlement.  I think

13    he is alleging that we violated the custody settlement.  I

14    think he's asking --

15             THE COURT:  I certainly have jurisdiction over

16    that issue.

17             MR. KOENIG:  Yes.

18             THE COURT:  Okay.  And the other thing is, Mr.

19    Davis, I've been advised that you also wanted to say

20    something before we end for the day.

21             MR. DAVIS:  Yes I do, Judge.  Your Honor, I would

22    just once again ask the UCC and the Debtors to turn over all

23    the FTX data they received through the subpoena that you

24    issued.

25             THE COURT:  Overruled.  I mean sustained --

Page 159

1    objection.  There's an objection.  It's sustained.

2              MR. MCCARRICK:  Objection, Your Honor.  T.J.

3    McCarrick, Kirkland & Ellis, on behalf of the Debtors.

4              THE COURT:  Yes.

5              MR. MCCARRICK:  I would just note that the

6    discovery deadline for opposition of confirmation --

7              THE COURT:  Has come and gone.  Come and gone.

8    All right.

9              So that finishes our hearing for today.  I'll see

10   you all at 9:00 tomorrow morning.  You can leave anything in

11   the courtroom.  The courtroom is going to be locked up.

12   Okay?  Thanks very much.  See you all tomorrow.

13             MR. DAVIS:  Judge, tomorrow --

14             THE COURT:  No, Mr. Davis.  Enough.  Enough.  See

15   you all -- if you log in tomorrow, we'll have a hearing

16   tomorrow morning.  Court is adjourned.  Thank you.

17             (Whereupon these proceedings were concluded at

18   5:39 PM)

19

20

21

22

23

24

25

Page 160

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *Sonya M. Ledanski Hyde*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:

[& - 238]                                                                      Page 1

| & | | | |
|---|---|---|---|

**&**   14:10 15:13
16:2 17:17
18:21 21:3
24:19 31:2
33:3 34:18
47:14 51:21
57:9 79:13
88:25 89:1,1
89:24 90:5,6
99:9 103:20
105:3 106:3
109:17 110:23
112:6 113:7
117:19,24
118:15 145:25
155:25 159:3

**0**

**07102**   3:21

**1**

**1**   50:16,19,22
50:25 51:4,6,8
51:15 54:19
59:7
**1,248**   126:21
127:5
**1,248,000,000**
127:1
**1.1**   135:12
**1.2**   124:16
125:5
**10**   40:3,16
50:14 117:6
**10,000**   151:6
**100**   5:4 37:17
141:14

**10004**   1:13
4:22
**10020**   4:13
**102**   13:17 80:1
80:3,15,17
**107**   13:11
**10:14**   112:3
**11**   37:13 40:3
40:16 43:25
50:14 69:25
70:1,6 87:16
142:8
**110**   13:20
**112**   13:21
**1127**   141:12
**11501**   160:23
**116**   139:7
**118**   13:12,22
119:13 120:24
121:1,6,8
134:1
**11th**   66:3,5,7
66:14
**12**   61:22
144:22
**121**   13:22
**12151**   160:7
**1221**   4:12
**12:30**   156:15
**12th**   62:24
**13**   54:18 71:8
83:5,12 87:12
**1301**   3:12
**13th**   20:6 21:5
34:23 62:24
148:18

**14**   83:5,12
114:17
**140**   120:9,11
**15**   77:14,18
78:3 101:5
130:8,23
**16**   1:15 115:20
**168**   31:23,24
48:21,21 49:10
**16th**   14:3
**1746**   25:5
**19,980**   46:24

**2**

**2**   20:10 32:25
33:3,17 39:22
40:2,14,16
50:14 60:17
68:5 75:20
123:24 155:5,8
155:10
**2's**   33:4,14,15
**2.01**   60:6,10
61:1,2 62:9
63:6
**2.6**   152:21
**2.88**   60:12,15
60:21 61:1
**20**   69:2 130:8
130:23 151:1,3
**20,000**   142:23
144:15
**200,000**   142:1
**20004**   3:13
**2020**   149:17
**2021**   48:11
73:11,12 74:11

**2022**   61:23
62:19 65:18,18
75:25 76:22
77:4 78:23
80:7,19 81:18
82:3 84:6,19
87:12
**2023**   1:15 14:3
52:19 54:18
87:21 88:7
105:18 106:24
107:15 109:16
110:13 111:8
112:3,25 114:1
114:17 119:4
119:24 120:20
122:4,7,17
**20549**   5:5
**21**   87:21 88:6
**21st**   22:11
66:23 117:16
132:18
**22**   71:8 148:20
**22-10964**   1:3
14:4
**22nd**   117:15,17
119:7 132:17
**23**   23:19 24:4
**236**   13:21
111:24 112:13
112:21,22
**237**   13:20
108:18 109:22
110:19
**238**   114:14
116:23 117:1,3
117:9 134:6

**[239 - 80]**                                                                    Page 2

| | | | |
|---|---|---|---|
| **239**  117:10 | **31**  105:18 | **4** | **60**  65:1 |
| **24**  69:2 80:19 | **32**  74:3,4 | | **600,000**  141:24 |
| 85:8 145:6 | **3293**  27:16 | **4**  74:3 114:1,16 | **60654**  3:6 |
| **25**  52:11,14 | **33**  69:2 136:18 | 115:17 | **6:12**  109:17 |
| 112:3,24 | **330**  160:21 | **40**  84:25 151:5 | 110:14 |
| 135:13 139:9 | **3332**  139:7 | **41**  68:5 | **6a**  139:18 |
| 139:11 141:7 | **35.5**  61:4 62:6 | **43**  21:23 22:9 | **6b**  139:19 |
| 150:6 151:1,3 | 63:5 | 53:9 54:23 | **6th**  65:20,23 |
| **25th**  113:18 | **3522**  26:24 | **44**  71:8 | **7** |
| 120:20 122:4,7 | **3524**  31:7 | **450**  128:16,23 | |
| 122:17 | **3526**  31:8 | 129:6 | **7**  28:19 40:2,16 |
| **26**  75:25 | **3544**  98:7 | **47.4**  141:19 | 42:20 43:4 |
| **2700**  4:4 | **3548**  103:7 | **48**  67:23 | 44:1 50:14 |
| **27th**  141:5 | **3557**  103:7 | 115:25 | 63:1 64:17 |
| **28**  52:19 | **36**  151:17 | **49**  115:16 | 85:9 92:15 |
| 124:12,21,21 | **3648**  99:19 | **4:00**  101:1 | 131:20 132:4 |
| **28th**  140:12 | 103:8 | **4:15**  101:1 | 139:2 140:18 |
| **2:05**  1:16 | **3705**  103:12,13 | **4th**  136:10,14 | 141:20 |
| **3** | 117:6 | **5** | **7.5**  125:7,13,16 |
| | **3706**  103:9 | | 125:25 126:5 |
| **3**  38:24 40:17 | 117:6 | **5**  40:2,16 50:14 | 128:12 129:10 |
| 40:25 50:14 | **3758**  103:10 | 68:5 74:2 | 129:15 130:6 |
| 73:3,4 76:9 | **3767**  103:13 | 86:25 88:10,11 | 131:2 |
| 86:6 117:5 | **3769**  27:12 | **50**  84:25 | **71**  58:24,25 |
| **30**  47:6 109:16 | 52:16,25 55:13 | 136:18 | 59:2 60:22 |
| 110:13 111:8 | 64:15 | **510**  98:9 | 62:3 63:12 |
| 126:9,11,13,16 | **38**  39:6,11 | **534**  4:21 | 66:3,9,13,16 |
| 126:20 128:12 | 141:21 | **54,000**  92:13 | **72.5**  141:17 |
| 129:10,16 | **3802**  34:23 | **555**  4:4 | **75**  13:15 |
| 131:1 135:16 | **3810**  37:14 | **570**  3:20 | **76**  13:16 |
| 135:19 136:2 | 38:1,17 | **58**  13:5 | **7th**  62:24 |
| 137:11 | **3813**  54:17 | **59**  141:18 | **8** |
| **300**  3:5 160:22 | **3:48**  114:17 | **5:39**  159:18 | |
| **3000**  93:13,13 | **3:59**  101:1 | **6** | **8**  40:2,16 50:14 |
| **3019**  141:12 | **3c**  108:25 | | **8,000**  47:4 |
| **30326**  5:13 | **3d**  108:25 | **6**  40:2,16 50:14 | **80**  13:17 |
| **30th**  107:22,24 | | 62:19 64:12,15 | 135:14 |
| 111:18 117:4 | | 64:16 73:11,12 | |
| | | 86:8 115:20 | |

**81**  52:13,18,21
57:14,17,20
58:23,25 59:21
60:25 64:11
124:1,6 141:16
143:21 144:4
**82**  13:18 59:7
59:12
**86**  59:2,4,12,20
59:22,25 60:25
**87**  13:16 75:20
76:6,8

**9**

**9**  40:3,16 43:2
43:4 50:14
117:6
**9,000**  47:4
**9/14**  133:25
**90**  13:15,19
73:3 75:11,12
75:14
**900**  5:12
**90071**  4:5
**91**  13:6
**92**  83:5,12
**93**  85:8
**94**  13:19 85:9
86:1,6 87:20
88:6 89:14
90:8,10
**95**  13:7
**950**  5:12
**97**  13:8
**99**  13:18 82:10
82:12,14
**9:00**  156:12
159:10

**9th**  66:23

**a**

**a.m.**  112:3
156:8
**aaron**  4:7 16:3
18:20 51:20
109:17 114:17
**able**  25:6 28:22
35:14 36:5
38:2 41:4
43:16 53:12
96:6,16 104:7
107:7 118:2
138:2 139:16
139:19 140:4
145:9
**abonce**  6:10
**above**  142:23
**abreu**  6:11
19:16,17,18,21
19:22
**abruzese**  138:7
**absolutely**
37:25 45:14
123:12
**abundantly**
48:15 49:13
**accept**  151:16
154:21
**acceptable**
54:14
**accepted**  28:14
**accepting**
28:18 139:21
**account**  28:16
30:20 45:11
131:8 149:14

149:15,21
150:24
**accountable**
103:21
**accountholder**
152:21
**accounts**  43:19
149:16,19
**accurate**  27:15
76:2 160:4
**acknowledge**
70:23 71:3
110:12
**action**  27:10,13
**actions**  136:4
**activation**
140:21
**actual**  44:21
135:13
**actually**  20:8
32:1 38:8
41:11 45:24
47:16 64:2
75:10 133:18
135:14,17
149:24 155:16
155:16
**ad**  69:3
**add**  30:22
69:21 76:24
77:15,18 78:3
78:6,7,17
81:23,25 103:4
131:2 148:16
149:1 154:15
**added**  43:4
103:8 153:19

**adding**  98:12
127:4 130:2
**addition**  27:16
48:17 140:16
**additional**
14:16 15:18
16:5,21 17:9
18:4,18 47:6
145:19 156:18
**additionally**
43:14 49:1
**address**  33:7
37:4 45:19
47:18 109:4,10
112:2 114:16
**addressed**
46:11 152:23
**adequate**
36:15
**adjourned**
159:16
**adjusted**  30:20
**adjusting**  73:5
**adler**  6:12
104:15
**administer**
102:21
**administrators**
154:25
**admissible**
20:17 40:6
**admission**  39:4
39:7,20 41:7
50:14
**admissions**
41:13

[admit - answer]                                                                              Page 4

| | | | |
|---|---|---|---|
| **admit**  39:6 | 97:12,25 106:8 | 71:1 83:17 | 154:17 |
| 94:14 97:2 | 106:9 118:19 | 90:21 94:7 | **altcoins**  77:25 |
| 101:16 | 118:20 132:12 | 96:1 98:5,20 | **alvarez**  105:3 |
| **admitted**  19:8 | 138:4 147:15 | 98:23 100:13 | **ambiguity** |
| 19:10 44:2 | **aganga**  6:13 | 102:20 124:23 | 127:15 |
| 54:19 75:14 | **ago**  35:2 54:8 | 125:21 130:24 | **amended**  103:9 |
| 76:7,8 80:15 | 65:12 66:1,7 | 134:3 135:6 | **amendment** |
| 80:17 82:14 | 67:23 84:1 | 145:1,4 148:3 | 85:4,18 86:6 |
| 90:10 100:7 | 158:1 | 148:5,5 149:5 | 140:13 |
| 110:19 112:20 | **agree**  33:23 | 157:16 | **americas**  4:12 |
| 112:21,22 | 57:25 58:22 | **aidoo**  104:19 | **amount**  44:23 |
| 117:9,10 121:7 | 60:9,15,20 | 104:20 114:6 | 104:1 |
| 121:8 131:25 | 63:11 65:8,11 | 115:7 | **amulic**  6:14 |
| 143:10 144:12 | 66:22 67:6 | **air**  130:19 | **analyses** |
| **admitting**  41:8 | 72:12 84:9 | **alameda**  91:6 | 130:16 |
| 101:21 | 116:17,19,21 | 91:12 142:16 | **analysis**  29:17 |
| **adoption**  100:8 | 118:6 128:16 | 142:18 144:10 | 69:5 130:13 |
| **adr**  51:22 52:2 | 129:6 131:5,15 | 144:13,13 | 131:22 |
| **advance** | 135:9 | **alan**  5:15 17:25 | **andrea**  6:14 |
| 106:12 | **agreed**  52:17 | 26:20 | **andrew**  6:17 |
| **advantage** | 52:20 60:22 | **alex**  12:12 | 11:23 |
| 154:14 | 62:3 79:8 | 33:18 72:24 | **andy**  10:1 |
| **advised**  158:19 | 142:19 149:24 | 76:11 77:7,8 | **angeles**  4:5 |
| **advisor**  134:10 | **agreement** | 77:12 150:13 | **annemarie** |
| **affirm**  56:22 | 41:10 42:20 | 150:18 155:18 | 10:23 |
| 102:22 | 43:7 48:22 | 155:18,18 | **announced** |
| **affirmation** | 49:7,8,10,11 | **alexander**  4:20 | 106:13 |
| 25:8 | 49:14,18 | **allegations** | **announcement** |
| **afternoon**  14:2 | 134:12 | 28:5 | 18:24 106:15 |
| 14:9,14,18,21 | **agreements** | **allege**  35:9 | 106:20,21 |
| 14:23 15:12,22 | 49:2,3,5,13 | **alleging**  158:13 | **answer**  63:15 |
| 16:23 17:10,14 | **ahead**  15:3 | **allocation** | 68:11,14 69:4 |
| 18:6 20:1 | 17:24 25:18 | 152:21 | 71:14,20,23 |
| 24:18 26:15 | 27:7 40:8 42:5 | **allow**  37:3 | 77:9 78:2,2 |
| 31:1 34:4,17 | 47:25 55:21 | 146:12 | 81:2 83:21,23 |
| 57:6,7 90:24 | 56:1 63:16 | **allowed**  96:9 | 85:13,18 86:8 |
| 90:25 96:4,5 | 64:16,19 69:19 | 96:12 154:17 | 86:16 88:23,24 |

91:10 111:12
121:18,21
122:14 125:19
127:22 132:2
132:24
**answered**
58:12 85:25
88:25 122:9
**answers** 36:4
123:23
**anthony** 8:6
**anticipate**
26:25 34:24
35:5
**anybody** 22:15
26:12,14 79:11
79:15 90:17
94:5 95:22
96:24 116:6
133:8 153:20
156:24
**anymore** 86:23
**anyway** 21:12
**apologies**
32:12
**apologize**
137:20
**apparent**
104:3
**apparently**
116:8
**appear** 54:1,20
55:2 98:7
99:19
**appearance**
14:7,24,25
15:8,19,25

16:1,6,8,12,24
16:25 17:3,10
17:20,24 18:7
19:11,22 54:22
145:22
**appearances**
18:5
**appeared** 30:1
46:4 117:17
**appearing**
31:24 154:25
**appears** 98:7
**applicable**
98:10
**applicants**
108:8,16
**application**
54:4 55:3
106:12 107:1
**applied** 106:10
122:7,16
127:13 130:5
135:16
**applies** 43:1
110:7
**apply** 101:20
125:13,16
126:9,11,20
127:13 128:12
129:10 130:14
130:20
**applying**
129:17,19
**appoint** 104:16
**appointed**
118:4

**appointment**
103:22 137:8
**appointments**
104:19
**appreciate**
24:1 40:10
97:3 111:1,4
113:8 115:1
143:4 146:17
**approach**
49:18 55:24
89:13 106:4
119:12
**approached**
34:15
**appropriate**
42:13 45:6
54:25 101:23
104:9 125:24
126:2 142:7
**appropriately**
37:11 40:4
**approval** 30:14
105:19 140:11
**approve** 119:1
**approved**
31:21,21 48:10
52:21 53:5
105:15 133:1
**approximately**
107:22 108:1
**arcos** 9:23
**area** 22:1
36:17
**aren't** 150:14
**argue** 41:4,18
42:13 43:1,6

44:4 49:2
**argument** 21:6
25:14 42:8,9
42:11 43:20
44:24 45:5,12
46:5,6,10
47:18 49:22
50:9,23 100:8
100:13 102:3,7
102:8 103:11
103:18 104:5
143:14 144:5
151:12 155:21
**arguments**
25:16 39:15
40:5 44:7 45:9
142:24 143:11
144:19 155:20
156:18
**armand** 6:15
**arose** 97:5
**arrange** 35:25
36:11,19
**arrington**
119:25 136:23
136:25 137:2,2
**arrive** 129:15
**articles** 152:12
**articulate**
134:15
**artur** 6:11
19:22
**aside** 140:5
**asked** 24:12
32:1 69:2
70:18 71:10
82:20,23 83:14

83:20 85:2,25
87:17 88:22
108:3,7,8,11
108:11,12,14
108:16 122:9
127:16
**asking** 27:17
29:23 69:11
84:13,13 85:24
86:9 87:2
99:10 109:9
132:25 158:11
158:14
**asks** 41:15
108:21 122:13
**assert** 20:20
**asserted**
157:23,25
**asset** 140:8,10
**assets** 130:10
139:16,18
141:4 142:25
**assign** 141:6
**assigned**
139:11 141:13
**assistance**
65:24 69:3,9
**assume** 140:19
**assumed**
135:24
**assuming**
71:15
**atlanta** 5:13
**attached** 39:4
**attack** 89:6
**attacking** 89:4

**attempt** 49:9
**attempted**
130:1
**attempting**
30:14
**attention** 18:23
77:7,8,11,11
81:1 90:3
113:6
**attorney** 25:22
70:4 79:9,12
**attorneys** 3:4
3:11,19 4:2,10
4:19 5:2,10
**attractive**
73:19,23
**attributes** 50:6
**auction** 119:10
120:6,6,15,18
121:11,16
122:1,2
**auctions**
121:25
**auctionswork**
120:3 121:12
121:15 122:4
**audio** 14:6,22
18:10 19:1,4
21:20 23:5
44:3
**august** 65:18
105:20 107:22
107:24 109:16
110:13 111:8
111:18 112:2
112:24 113:18
117:4

**australia** 156:7
156:8
**available** 49:15
53:11 104:1
136:21 146:2
156:5,9
**avenue** 3:12
4:12
**average** 59:24
**avery** 7:22
**avoid** 30:21
**awards** 152:22
**aware** 20:12
23:8 29:18
66:8,11,13,15
93:10 95:13
109:13 116:7
148:12

| **b** |
|---|

**b** 1:21 98:9
138:7
**back** 15:2
44:17,23 47:1
64:11 67:15
69:1 80:9
81:21,23 82:3
85:7 90:4
101:4 138:16
143:19 148:4
149:12,13,18
150:2,12
155:10
**backed** 59:19
78:15
**background**
123:21

**backing** 61:14
**backwards**
101:20
**balance** 113:12
**ballot** 118:23
119:2,5 132:14
132:16 133:4
135:10 136:1
139:24
**balloting**
139:10 141:5
142:12
**bankman**
142:21
**bankrupt**
82:17 84:19
**bankruptcy**
1:1,11,23
22:11 28:2
42:25 44:12
47:9 60:18
65:16 84:5
92:5 95:9
141:11,12
**bar** 157:24
158:1
**base** 42:14
**based** 26:24
33:4,17 34:24
35:19 57:20
61:4 120:14
121:15,23,25
122:3 140:9
149:7
**basic** 43:3
**basically**
135:22 137:6

145:14 153:13
**basis** 74:12,14
**bear** 44:20
51:16
**beat** 55:14
**becin** 6:16
**becoming**
45:11 142:4
**beef** 89:2 90:6
**beginning**
39:18 54:18
70:2 104:4
120:18 158:6
**begins** 80:7
**behalf** 16:2
21:3 34:18
51:21 57:10
98:1 99:10
104:11 105:1,2
105:2,3 106:3
118:4,16 146:1
156:1 159:3
**behavior** 95:8
**behaviors**
104:10
**behlmann** 6:17
**believe** 18:21
67:18 81:14,14
81:16 84:14
92:13 96:10
103:21 106:16
106:22 108:9
117:16 132:15
132:22 134:25
135:7,21 137:9
140:16,24
141:11,24

142:23 143:8
144:10
**believed** 118:1
**believes** 69:21
**ben** 7:18
**bend** 101:19
**benjamin**
138:12
**berg** 12:1
**bernstein** 3:23
15:11,12,13
18:14,16 31:1
31:2,4,5,12,13
**best** 62:1,13
63:9,19 64:24
78:16 131:10
131:15 138:22
139:5 140:24
141:22
**better** 43:20
44:1 46:4,5,19
72:13 85:19
120:17 131:19
132:4
**beyond** 156:25
**bias** 52:24
**bible** 88:21
**bid** 120:16,17
**big** 77:2 151:12
151:21 155:8
**bigger** 61:6,8
61:17 62:10
155:2
**biggest** 152:7
**billion** 60:17
65:2 86:25
124:16 125:5

135:12 155:5,9
155:10
**billions** 126:24
142:22
**bills** 113:15
**binder** 55:25
59:7 73:4
83:12 88:11
108:25 115:17
123:25 124:3
**binding** 29:5
41:11
**bit** 37:20 48:4
89:19 145:8
**bitcoin** 44:11
44:14,15,22,23
46:23,24 47:3
47:5,6,7,10
77:24 105:21
140:5 142:23
143:2 144:14
151:16,20,22
152:7,17
**blend** 68:24
**blochwitz** 6:18
**block** 12:2
**blonstein**
34:10 35:18,19
36:7,20 53:2
157:6
**blonstein's**
34:19,20 35:10
**blonstein's**
155:24 157:2
**blow** 59:12
73:5 74:4
75:21 76:11

82:11
**board** 103:23
104:19,20
106:10 107:17
107:21 108:8
113:23 114:5
114:23 115:4
116:18 117:14
117:20 118:3,7
122:8,17,19
129:17 134:20
134:21,21,22
136:9,22,25
137:3,6,7,8
153:24 154:6
**bohan** 138:2
**bohon** 137:18
137:18
**book** 128:24
129:18
**borrower's**
43:16 48:19
**borrowers**
43:12 47:1
48:25
**bottom** 44:20
52:6 54:19
75:21 114:15
**bought** 150:17
150:19,24,25
151:9 152:16
**bowling** 1:12
4:21
**bradley** 8:3
**bray** 6:19
**breach** 157:18
157:22,25

158:3,7
**break**  77:17
101:5
**brett**  10:15
**breuder**  6:20
**brian**  9:17 10:3
10:8 11:24
**brie**  13:12
**brief**  47:16
98:4 100:16
103:6 105:23
**briefly**  101:16
101:24 144:8
**briefs**  45:18
156:16,16,22
**brier**  3:16
14:11 32:9
34:17,18 35:13
35:17 36:6,10
36:13,18 37:4
37:6,10,22,25
38:6,8,11,14
38:16,20,22,24
39:3,22 40:2
40:15,16,18
41:14,25 42:6
118:13,14,15
118:15,18,20
119:12,15,18
119:20 120:23
121:1,5,9,14
121:22 122:15
122:23 123:24
124:4,8,22,24
125:23 126:25
127:2,5,8,17
127:18 128:4

128:10,11,21
128:25 129:3
130:24,25
132:8 155:25
155:25 156:7
157:1,7
**brifkani**  6:21
**bring**  34:9 71:7
75:19 83:4
85:7 108:18
111:23 115:15
124:1,5
**broad**  3:20
**bronge**  6:7
18:12,12 34:1
34:2,4,7,19
35:4,15,21,23
36:2,4,8,14,15
36:23,24 37:5
37:7,16 38:21
39:13 40:7,9
40:22 41:3,4,5
41:6,18,22
42:5,7,10
45:13,14,16
46:9,12,14,18
47:21,24 48:1
49:24 50:1,2,7
50:9,10 51:13
51:14
**bronge's**  34:25
35:3 38:25
41:24 53:1
**bronstein's**
51:1
**brought**  90:2
109:7 136:10

**brown**  6:22
**bruh**  4:24 16:9
16:9 24:5,6,7
24:10
**bureau**  3:19
15:14 30:25
31:3,6
**burks**  11:12
**burn**  88:18
89:12,23
**business**  118:5
131:24
**businesses**
130:10
**busy**  20:1
81:10
**butcher**  88:17
89:20
**buy**  47:3 130:6
150:8 151:2,5
151:5 152:3,4
**buybacks**
73:24 74:1,14
74:15,23 75:4
**buyer**  135:9
**buying**  74:7,12
74:25 75:1
126:6
**buys**  151:24

**c**

**c**  3:1 14:1
98:10 160:1,1
**ca**  4:5
**cahana**  6:23
**caitlin**  10:11
**california**  22:5
35:19 36:1

**call**  18:4 32:18
32:21 69:10,23
145:19 147:16
**called**  80:23
87:4 148:3
**calling**  14:4
146:20
**calls**  140:2
**camera**  54:14
56:7,8,13
**cameron**  7:8
8:9
**campagna**  6:24
105:3 130:3
131:25
**canadian**
149:15
**canadians**
149:16
**can't**  127:25
150:21 154:23
**cap**  84:24 87:1
151:11
**capital**  137:2
**capitalization**
129:16
**caps**  114:25
115:3
**carcamo**  9:23
**care**  26:2
**carefully**  64:6
**carl**  7:7
**carlo**  9:12
**carol**  10:4
**caroline**  11:20
138:6 142:19

**carolyn** 8:8
**carpenter** 3:18
  15:13 31:2
**carry** 105:9
**case** 1:3 4:1,9
  14:4 15:12
  16:2 18:21
  21:25 24:11
  26:6 27:10,16
  28:2,3,12 29:3
  29:25 30:3,12
  30:19 45:3,20
  51:21 63:22
  65:20 67:7,12
  67:20 88:25
  89:1,1,25 90:5
  90:6 95:9
  103:19,20
  104:25 106:3
  109:17 110:23
  112:6 113:8,9
  113:20 117:19
  117:24 118:23
  119:9 135:14
  136:1 140:25
  141:16 142:16
  155:21
**cases** 29:18
  69:25 70:2
  72:10,20 81:15
  81:19
**cassidy** 137:16
  137:16,17,17
**categories**
  129:20
**category** 39:23
  39:25 40:18,20

140:1
**cathy** 23:19
  138:14
**cause** 54:24
**caveat** 40:20
**cel** 27:18 28:5
  28:11,15,23
  44:6,9 45:4
  52:11,13,14,18
  52:20,22 57:12
  57:17,20 58:3
  58:6,23 60:10
  60:16,20,25
  61:25 62:4,13
  63:1,8,11,19
  64:24 67:7
  68:22 69:5
  71:5,21 72:15
  72:20,25 73:14
  73:16,19,22
  74:8,12,19,25
  75:2,9,17
  76:15,19,22,24
  76:25 77:2,19
  77:21,22,25
  78:4,10,15,22
  81:15,20,24
  82:3,6,23
  83:22 85:3,16
  86:7,10,22,24
  87:13 88:16,19
  89:5,6,16,21
  92:3,5,11,13
  92:24 93:23,25
  96:6,16,18,20
  104:5 138:24
  139:6,7,8,13

139:13,20
  140:12 141:7
  141:12,14,17
  141:19,24
  143:21 144:1
  144:17 150:3,8
  150:10,15,16
  150:17,19
**cel's** 72:18
**celbk7** 109:4
  112:2 114:16
**cell** 19:14
  139:11
**celsians** 120:2
**celsius** 1:7 14:4
  28:12 30:10
  31:17 34:21
  43:5 44:12
  48:13 59:6
  64:11 65:16
  73:3,23,25
  74:7,12,23
  75:2,4,20 76:6
  79:25 82:9,12
  82:17 84:9,14
  84:19,23 87:20
  88:6 91:16,19
  92:1,7 96:7,20
  119:13 120:6,8
  120:24 121:1
  123:25 134:1
  140:19 149:14
  149:23,23,24
  149:25 150:19
  150:20,20,23
  150:24 151:6,8
  152:12,13

153:21,24
  155:4
**celsius's** 61:23
  72:23
**celsiusnetwork**
  120:1
**celsiusucc**
  120:2
**cent** 52:11 59:2
  59:4 66:3,9,14
  66:16 139:11
**centerview**
  105:2
**cents** 52:13,14
  52:18,21 57:14
  57:17,20 58:23
  58:24,25,25
  59:2,20,22,25
  60:22,25 61:1
  61:4 62:3,6
  63:5,6,12 93:2
  139:9 141:7,16
  141:19,21
  143:21 144:4
  150:6 151:1,1
  151:3,4,5
**ceo** 72:23
  142:18,21
**certain** 27:8,25
  39:14,17 59:18
  147:9 150:19
  150:25
**certainly** 28:9
  30:1 84:4
  91:23 95:18
  137:4 157:24
  158:15

certified 160:3
cetera 19:10
  30:6 50:5
cftc 30:6
chain 114:14
  117:3
chaired 107:6
challenges
  142:24,25
chance 64:2
  101:24 102:5,7
  102:11 143:14
  146:15 148:23
  149:4 156:12
chang 6:25
change 141:5
  153:15 154:16
changed 43:3
  86:13 153:17
changes 27:1
  33:13 73:16
changing
  153:18
chapter 28:19
  43:25 44:1
  69:25 70:1,6
  87:16 92:15
  131:20 132:4
  139:2 140:18
  141:20 142:8
character
  120:10
characterize
  114:7,10 126:2
characters
  120:11

charge 69:12
  69:12,13,14
chargers
  113:13
charles 6:10
charlie 108:25
chase 10:2
check 54:9
  140:20
chicago 3:6
chief 34:21
chiefs 113:14
chingiz 11:13
choose 63:5,5,6
  135:11
chose 130:6
chris 6:16 7:23
  9:5 24:18
  31:17,25 47:13
  158:10
chrisptoher
  9:14
christiansen
  7:1
christina 7:3
christopher
  7:4 10:13
ciamarone 7:2
ciancarelli 7:3
circumstances
  21:24 54:24
  55:4 97:3
  104:2,18 126:4
citations 47:19
  48:3
civil 53:9 54:23

claim 27:20
  58:19 60:17
  69:24 92:24
  135:15 141:23
  141:24 150:3
  155:4,5,9
  157:18,23,23
claims 27:22
  98:8 104:8,10
  135:12,13,25
  139:8,8,9
  157:20,25
clarification
  45:9 116:25
  127:2 142:14
clarify 25:21
  27:6,17
class 93:6 98:8
  138:25 139:11
  139:12,12,19
  139:20 141:7
classes 28:14
  28:18 141:9,14
  142:2
clauses 138:23
clean 89:18
clear 21:22
  48:15,23 49:13
  53:19,24 61:9
  62:12 66:12
  120:16 127:7
  128:5,22
  135:18
clearly 21:15
  33:9 53:8
  108:15 136:1
  143:9,10

clerk 14:2,12
  14:16,21 15:2
  15:6,11,15,17
  15:22 16:5,11
  16:17,20 17:5
  17:8,13 18:3
  18:11,14,17,22
  19:3,17,20,22
  19:24 38:3,7
  56:2,22 59:9
  87:24 102:15
  102:22 138:4,8
  138:11,13,15
clerks 157:11
client 70:4
close 24:20
  32:2 52:3
closing 24:10
  45:18 47:18
  49:23 143:13
  155:20 156:15
coco 7:4
code 47:9
  141:11
cofsky 7:5
cohen 105:2
cohost 38:3,7
coin 152:15,15
coins 151:16
  151:17,19,25
  152:2,3,16
coleman 12:3
collapse 61:19
  63:19 65:1
  66:20
collapsed
  62:19

collateral
42:14,19,22,23
43:5,12,17
44:5,15,15,17
44:17,22 45:10
45:22 46:6,25
50:4 96:18
collateralized
43:7 49:18
colleagues 18:1
32:1
colodny 4:7
16:2,4 18:20
18:20 23:3
51:19,20,20
52:1 90:14,15
93:14 107:11
109:17 110:13
110:22 111:5,8
111:18 112:5,9
112:25 113:3,7
113:19 114:17
134:18
come 14:6,24
15:2,24 16:7
17:15 25:17
36:2,22 43:20
45:20 53:6
69:5 152:24
156:19 158:1
159:7,7
comes 36:21
39:20 43:19
45:6 50:13
comfort 29:13
coming 88:16

comment 40:7
52:7 127:23
commented
29:15
comments 27:2
commission
5:1,3,9,11
26:17,21
commission's
28:5
committee 4:2
4:10 16:3
20:12 22:6
23:1 24:13
30:4 45:18
46:5 51:21
90:12 95:1
99:24 100:2
102:10 103:20
103:23 104:11
104:14,22
105:9 106:4
107:6 147:16
147:24 154:4,5
committee's
116:18
committees
154:6
commodity
47:8
common 49:17
130:7
communicated
70:10 79:6
communicati...
79:8,19

community
78:18 80:20
81:6 113:10
comp 105:22
companies
118:3 130:19
company 31:15
82:17 84:19
91:13 107:18
130:13,15
comparable
130:13,15,19
compare 49:13
comparison
93:6 139:2
141:9 142:2
compel 36:2
compelling
21:23 54:24
55:4 135:11
compensation
134:12
competitor
91:15 143:1
competitors
91:19 92:1
complain
154:17
complaining
81:19 82:2
complaint
27:14 28:6
41:10
complaints
40:5
complete 104:6

completely
46:16 153:14
compliance
34:21
comply 55:20
component
128:14
composition
116:18
comprehensive
156:17
comprised
80:4
computer
38:13,18
concept 72:3
concerned
29:25
concerning
155:14
concerns 76:15
138:21,22,24
141:22 142:9
142:25 143:3,5
concluded
159:17
conclusion
28:9 32:2,7,7
46:3
conclusions
29:17 41:1
conclusive
28:2
conduct 58:3
117:20
confer 24:13

conference
    22:12
conferring
    30:5
confined
    154:25
confirm   131:11
    131:16,21
    132:5
confirmation
    2:1 24:21 29:3
    47:16 97:19
    98:12 103:25
    156:2 159:6
confirmed
    28:20 30:3,12
    140:4
conflict   144:11
confused   102:2
confusing
    124:18
conglomerate
    129:15,23,24
    130:5,16,22
conjunction
    48:19
connection
    72:6 87:15
    95:9 138:3
conservative
    136:2
consider   23:25
    40:14 87:18
    96:25
consideration
    21:9 55:18

considered
    55:6 56:13
    134:25
considering
    142:22
consist   134:20
consistent
    81:18
conspiring
    143:1 144:14
constitutes
    19:5
consumer
    24:14
contact   65:3
    68:13,13 101:5
contacted   65:6
    65:23 67:11,14
    67:16,16,17,18
    67:19 68:12,14
    95:3
contemporan...
    55:1
contents   39:8
context   110:8
continue   26:7
contract
    157:18,23,25
contributed
    136:6
contribution
    136:18
controlled
    33:18
controls   48:6
    48:10

conveniently
    48:8
conversation
    68:23 70:3
    71:20
conversations
    24:20 30:8
    70:15 71:17
    111:17
conversion
    140:6
converted
    140:8
cook   7:6
cooper   12:6
cooperate   97:7
copies   55:24
    89:14
copy   76:2
    124:1,4
core   31:14,14
cornell   4:25
    16:14,15,15
    24:15 25:15,18
    25:19,19,24
    94:16,16,20
correct   42:8
    45:12,14 51:3
    51:7 57:13,15
    57:18,19,22,23
    58:1,4,7,16,17
    58:20,21,25
    59:16,17,20
    60:7,8,10,13
    60:14,16,23
    61:1,12,13,14
    61:20,21,23,24

62:16,17,19
63:1,23,24
64:3,6,7,21,22
66:4,6,20,24
66:25 67:8,21
67:22,24 68:15
68:16,19,20,22
69:7,11 70:11
70:12,13,14,16
70:17 71:5,12
71:13 72:4,7,8
72:14,18,19,21
72:22,25 73:1
73:13,14,15,18
73:24 74:16,17
75:17,18 76:23
77:19 78:4,5,6
78:12,23 80:24
82:4,21,24
84:19 86:20,23
87:10 88:4,5,7
88:8,23 106:24
106:25 107:10
107:13,16,19
109:17 110:14
111:6,9,18,21
112:10 113:20
113:21,24
114:3,6,21,25
115:4,8 117:15
117:21,24,25
118:3,24 119:2
119:22 120:8
121:4 123:6,9
124:10,16
125:5 126:9,13
126:17,20,21

127:11,16
128:14,15
129:8,12,13
131:3,4,9,11
131:22 132:6
147:5,8,11
**correctly**
113:16
**cost** 153:23
**cote** 7:7
**counsel** 26:25
32:13 52:2
70:3 95:1,2
97:24 99:25
100:20 102:9
133:11 140:14
142:12 143:8
143:12,16
**country** 25:18
54:10 160:21
**couple** 28:13
34:9 54:7
81:12 146:19
155:23
**course** 27:10
38:11 111:20
**court** 1:1,11
18:25 19:4,7
19:11,25 21:14
21:17 22:25
23:4,7,9,10,15
23:21,23 24:3
24:9,12,25
25:4,10,14,16
25:23,25 26:8
26:10,12,18,22
27:7,9,13,14

27:18,19,24
28:4,7,12,20
28:21,22 29:4
29:5,6,9,22
30:16,24 31:4
31:11,12,14,19
31:23 32:3,5,7
32:11,15,17,21
32:25 33:11,25
34:3,6,14
35:10,14,18,24
36:1,2,7,11,14
36:18 37:3,4,9
37:15,20,24
38:2,10,12,15
38:17,21,23
39:2,12,19,25
40:8,13,17
41:3,5,7,17,20
41:23 42:5,9
45:8,15,17
46:13,15 47:9
47:20,25 49:21
49:25 50:3,8
50:11,18,21,24
51:3,5,7,11,16
51:24 52:9
53:4,5,10,11
53:15,20 54:2
54:7,16,21,25
55:1,3,7,11,13
55:15,16 56:1
56:4,8,12,16
56:20,23 57:1
57:3,8 58:12
59:24 62:7
63:14 64:13,16

64:19,23 66:10
69:22 70:24
71:1,4,11,11
75:12 76:7
80:4,9,12,15
82:13 83:17
84:9,13 85:13
85:23 86:5
88:13 90:9,14
90:17,21 91:8
91:10 92:18
93:1,3,15,18
94:4,7,19,21
94:23 95:1,12
95:21 96:1,23
97:6,11,14,22
98:3,5,15,19
98:23 99:2,12
99:15,20,23
100:1,11,16,23
100:25 101:3
101:10,12,15
101:19 102:5
102:14,16,23
103:1,17
105:25 106:5
108:20 109:1
109:14,23
110:1,4,12,17
111:12 112:14
112:18,20
115:18,21,23
117:2,5,8
118:12,14
119:14,17
120:25 121:3,6
121:18,21

122:10,12,21
123:1,9,13,18
124:3,20,23
125:21 126:24
127:1,4,15,22
127:25 128:9
128:19,22
129:2,14
130:12,18,24
132:10 133:8
133:23 134:1,6
135:3,6 137:14
138:6,9,12,14
138:16,19
142:15 143:6
144:8,18 145:1
145:4,10,17,22
145:24 146:5
146:11,18,25
147:2,8,11,14
147:20,24
148:2,7,11,15
148:18 149:3
155:19 156:4,8
156:9 157:3,8
157:11,16,17
157:20,24
158:3,5,9,15
158:18,25
159:4,7,14,16
**court's** 28:25
29:11
**courtney** 11:12
**courtroom**
14:5,8,18,22
15:23 16:6,21
17:14 18:4

20:2 22:10
26:20 54:20
159:11,11
courts 22:2,11
court's 143:4
157:21
cover 20:3,25
35:15
coverage 98:10
craig 10:22
crazy 150:9
153:11
created 74:16
creates 22:9
74:8
creating
154:11
creators 153:9
154:13
credit 150:8
151:4
creditor 14:15
15:10 16:19
17:4,6 18:13
19:21 23:6
95:25 97:17
98:24 113:10
127:10,19
136:8 140:17
141:23 149:23
150:1 153:1,21
155:7
creditors 4:3
4:11 16:3
20:15,18 22:4
51:22 94:25,25
118:1 131:11

131:16,20
132:4 134:21
135:11 136:11
137:10 151:21
152:7 153:24
154:4,5 155:11
crews 7:8
104:15
criminal
142:16
criticize 61:11
67:1
cross 13:3 22:8
25:12 42:3
50:23 53:11,23
54:15,21 55:19
55:21,24 57:4
59:7 73:3
90:22 93:18
94:5,8 95:15
96:2 97:4
100:10,18
101:25 102:9
102:10 103:9
105:25 106:6
118:17 131:23
132:10 133:9
133:14 144:3
crypto 45:2
61:8 65:2
127:10,20
128:6 129:19
135:12,13
cryptocurren...
46:21 140:22
cryptocurrency
128:17 129:1,8

138:25 140:5,9
141:1
cryptoyolo7
119:22
cunha 7:9
currency 47:8
current 105:10
105:19,20
cursory 43:10
custody 52:13
52:18,21,22
92:12,14 93:6
138:25 139:8
139:10,12,12
139:15,18,20
139:20,21
140:2 141:7,10
141:14,17
143:7 149:14
149:15,16,19
158:4,8,12,13
custom 4:20
cut 116:20
cycle 74:19

d

d 13:1 14:1
138:12
d.c. 3:13 5:5
daken 12:3
dame 138:12
dan 3:8 8:24
14:9
danger 90:3
danial 18:9
daniel 6:5 94:6
darious 8:2

data 66:19,23
158:23
date 46:20
57:14,17,21
60:16,21 67:8
72:17,21 73:10
75:22 79:7,23
81:10 83:25
84:3,3,4 86:9
86:11,14,15,16
86:22 87:3,5
87:10 104:9
105:14,18
106:14,19,21
111:15 118:5
132:13,17,23
133:19 139:5
140:8,10,24
141:1,4,25
143:22,23
144:17 157:18
157:24 158:1
160:25
dated 112:2
david 5:22
6:12 7:22 8:23
9:23 11:6,16
15:10 98:16,24
144:22
davied 7:11
davis 6:1 13:4
17:1,2,2 27:11
52:9,10,16
53:4,20,21,25
54:2,5,9,14
55:9,16,19,22
56:9,12,14,18

56:20,25 57:4
57:6 60:13,19
63:7,14,18
72:3 75:21
76:14 77:17
78:1 80:2,8,12
82:10,16 83:10
83:21 84:18
86:5,19 87:2
87:14 88:3
90:12,18,22,24
91:1,3,5,12,15
91:18,25 92:3
92:5,7,9,11,15
92:23 93:5,10
93:22 94:8,10
95:23 96:2,4
96:24 97:10
146:22,23
158:19,21
159:13,14
**davis's** 53:13
59:8 68:5 71:8
83:4
**day** 31:13
36:12 45:23
52:17,19 62:21
84:1 93:10
119:5,6 132:18
138:1 139:5
140:13,16,21
141:15 158:20
**days** 54:7
65:12 66:1,7
84:1 88:16
**de** 5:24 16:18
16:19 97:12,16

97:17
**deactivation**
93:10 139:1,5
140:16
**deadline**
132:17 159:6
**deadlines**
132:21
**deal** 22:18
28:21 33:22
41:24 45:21
142:19 146:18
153:22 156:13
157:21
**deals** 41:25
**deanna** 14:9
15:4,4 16:1,9
16:18 17:23
18:20 19:16
87:22,24 138:1
**deanna's** 15:1
**debt** 27:22
**debtor** 1:9 3:11
20:24 24:13
31:8,10 33:6
34:13 36:25
40:24 41:12
44:16 45:12,19
46:4,5,22 48:2
48:7,21 49:1
50:4 53:7
99:24 100:1
103:15 140:2,4
140:24 141:2,6
141:24
**debtor's** 95:2
104:25

**debtors** 3:4
14:11 21:3
22:6 24:19
26:25 27:1
30:4 33:13
34:14,18 39:6
47:14 52:12,13
52:17,19 54:13
57:10 98:11
99:10 105:9
118:16 145:18
146:1 147:16
147:18 153:13
155:1 156:1
157:1 158:11
158:22 159:3
**debtor's**
139:10 140:14
142:12 143:8
143:12,16
**deceived** 95:7
**december**
73:11,12 74:11
**decentralized**
96:11
**decide** 20:21
28:10 29:1,1
**decided** 45:21
**deciding**
143:20
**declarant**
53:11
**declaration**
39:1,2,5,8,20
42:3 50:13
51:1 100:7,9
102:3,6 103:10

103:12,13
104:23 123:2,3
123:9 124:5,9
126:12 135:21
**declarations**
123:20
**defi** 86:24
96:21
**define** 113:25
**definitely**
145:7 157:20
**definition**
43:13 79:8
135:1,8
**delay** 38:15
**deliberations**
116:18
**demand** 74:19
**denied** 33:11
**denying** 41:8
**department**
4:18
**dependent**
96:20
**depending**
21:6 41:15
135:24
**depo** 108:9
**deposed** 56:11
99:20,21
101:23 146:25
**deposit** 139:8,9
**deposited** 50:4
**deposition**
35:15,25 36:3
36:19 51:4,6
53:1,13 55:10

55:10 67:20,23
68:2,5 69:1
70:18 71:8
76:3 77:24
79:9,16 82:20
83:5 85:7
87:18 97:6,7
115:13,16
155:24 157:2
**derek** 6:18
**derives** 72:9
**described**
39:17 113:19
120:16
**describes** 39:8
**deserve** 89:9,9
**designation**
19:9 51:4
**designed** 33:7
**desk** 87:25
**detail** 143:16
**determination**
29:4 105:12
**determine**
130:13
**determined**
140:7
**determining**
27:21
**deutsch** 3:18
15:13 31:2
**developed**
21:25
**devices** 19:14
**dial** 100:21
**diaz** 7:13

**didn't** 123:13
142:13 148:9
149:14,20
151:10 152:10
152:19 153:6
158:5
**dietrich** 12:11
**difference**
37:18 40:10,23
46:2 57:25
**differences**
29:19
**different** 29:16
29:17 36:17
39:16 43:18
44:14 46:20
48:5,24 49:3,4
55:1 58:25
59:2 60:25
105:1 124:19
125:3 154:6
**difficult** 21:20
29:15 152:5
**difiore** 7:12
114:18
**digit** 139:25
**digital** 140:7
140:10
**dimitry** 5:18
14:12,14 90:19
90:25 138:17
**direct** 13:3
53:6,10,16,25
54:19 55:7,19
70:13 79:11
80:1,7 84:13
95:15 96:25

101:16 113:6
115:13 130:3
142:11
**directed** 79:14
88:22,25 89:1
89:3,4 94:25
94:25 95:1,1
95:11 105:9
**direction**
135:25
**directly** 126:18
**director** 116:8
**disagree** 67:5
79:9
**disagreed**
137:7
**disappointed**
114:11
**disclosure**
43:15 48:17,18
105:14,19
125:4 130:1
133:1 135:20
135:22 136:10
136:13 149:7
**discount** 76:25
77:21 87:8
125:7,10,17,24
126:2,5,6,9,11
126:13,20
128:12,13
129:10,11,16
129:23,24
130:5,13 131:1
131:2 135:16
136:2 137:11
137:12

**discounts**
124:15 125:3,7
126:3 129:19
130:17,20,22
**discoverable**
70:8,9
**discovery** 52:4
104:1,3,6
159:6
**discuss** 39:10
48:21 69:24
70:1,5 147:10
**discussed**
24:24 33:19
59:3 60:12
65:22 71:11
100:5
**discussing** 48:6
59:4,16
**discussion** 44:6
98:11
**discussions**
33:21
**dislocation**
59:19,25 61:3
61:4,5,6,7,7,10
61:15,16,18,19
61:22 62:1,7,8
62:9,10,10,14
63:3,4,9 64:25
**disparaged**
71:15
**display** 59:6
**dissenting**
28:17 142:5
**distinction**
129:12

distinctions
  128:14
distribute
  140:5
distributed
  136:12
distribution
  135:10,20
  139:4
distributions
  140:3
district   1:2
  27:9,13,19
  29:5
diverse   115:3
diversity
  114:24 115:7
  116:4,6,9
dixon   7:14
  136:23 137:8
dm   79:15
dm'ing   80:25
dmitry   20:7
docket   26:24
  27:12,16 31:7
  31:8 34:23
  37:12,14,25
  42:16 52:16,25
  54:9,17 55:12
  93:13 98:7
  99:19 103:8
  117:17 139:7
  142:17 146:22
document
  37:18 40:11,24
  41:15 47:17
  54:17 63:13

82:24 83:23,25
  85:3 124:2
doe   7:15
doesn't   143:9
  150:5 153:16
doge   86:25
dogecoin   91:1
  91:3
doing   59:22
  67:1 69:20
  73:24 74:1
  129:25 137:6
doj   41:9,9
dollarization
  46:19
dollarized
  141:23
dollarizing
  44:18
dollars   47:10
  140:8 142:22
  150:9 151:6
donald   10:12
don't   49:5,25
  54:5,9,10 59:4
  59:22 126:23
  127:9,25
  128:13,18
  131:8 132:21
  132:22 133:12
  136:11 142:6
  145:17 147:20
  148:3,22 149:9
  149:16,25
  150:4,4,15
  151:12 153:4,4
  153:15 154:3

155:13,14
  156:1,6,20
double   139:25
doubt   136:20
downside
  134:14
downturn
  81:25
drew   12:7
drive   3:5
dropped
  136:17 148:4
duffy   7:16 12:7
  114:18
duplicative
  35:1,5,7,8,11
  36:3,16,20
duties   105:10
  134:11,15
duty   153:13
dzaran   7:17
d'antonio   7:10

e

e   1:21,21 3:1,1
  13:1 14:1,1
  19:11 124:21
  137:24 138:7,7
  138:12 160:1
eades   7:18
earlier   31:10
  32:6 45:23
  46:1 100:5
  148:3
early   37:16
  48:11 119:8
earn   27:18
  28:5,11,15,23

43:19,22,24
  44:2 45:21
  52:14,21 76:25
  77:21 92:23
  93:6 141:19
easier   21:18
  39:23
east   5:12
ecf   54:17 64:13
  64:15 117:6
eckhardt   7:19
ecosystem   72:7
  72:10
ecro   1:25 56:17
  102:17
effect   28:2 33:8
  74:9,16,18
  133:12 143:8
effective   104:9
  118:5 139:5
effectively
  133:14
effort   80:25
efforts   80:23
ehrler   7:20
eight   65:12
  66:1 135:23
eighty   93:2
either   14:18
  28:11,23 33:22
  44:24 104:13
  119:5 127:10
  130:8 132:16
  138:11,13
elect   127:10
election   135:10
  136:6

elicit  71:18
elizabeth  8:21
   137:18
elle  11:15
ellis  3:3,10
   14:10 17:17
   21:3 24:19
   34:18 47:14
   57:10 79:13
   99:9 118:15
   145:25 156:1
   159:3
ellison  142:19
   142:21 144:10
elvin  11:17
email  32:20
   73:8,11 75:21
   75:24 76:3
   77:6,16 81:18
   109:3,4,6,10
   109:16,19
   110:9,12,22
   112:1,2,5,9,16
   113:7 114:14
   114:15,16,21
   114:23 115:6
   117:3,4,5
   133:19 134:5
   135:3
emails  110:7
   110:10 113:22
   117:3 133:17
emergence
   152:22
emmanuel
   114:6

employee
   34:21
enabled  56:7
encouraged
   30:4
endeavor
   157:9
energy  155:18
enforce  53:18
engagements
   113:11
enter  51:9
   131:20 132:4
entered  20:6
   21:4 37:11
   40:4 97:6
   148:18
entering  51:2
enterprise
   130:11
entire  39:7
   81:6 126:21
entirely  29:2
   35:6
entities  33:6
   43:23 138:5
entitled  97:3
   100:12
entity  33:17
entry  74:3
   140:10
episodes  95:4
equal  135:25
   140:25 141:16
   141:18,21
equitable
   33:16,20 52:15

138:23 141:8
   142:1
equitably  33:5
   33:10
equity  27:22
   127:10,20
   128:6 135:17
   135:17 137:11
   137:12
eric  137:16
erik  10:7
error  88:19
   105:5
especially
   39:15 43:25
   47:7 103:24
   104:1 105:20
   143:1
essentially
   21:23 33:8
   104:11,20
   120:12,14
   129:18 134:8
   135:24
establish
   130:22 131:23
established
   122:21
estate  42:25
   46:7
esther  9:20
et  19:10 30:6
   50:5
eth  77:25
ethereum
   140:6 151:17
   151:22 152:8

evaluate  97:1
   105:10
evaluating
   105:23
evening  146:10
event  26:1 61:3
   61:5,6,7,16,16
   61:19,22 62:7
   62:8,9,10,11
   62:14 63:3
   66:18
events  29:25
   59:19,25 61:7
   61:10,19 62:2
   63:4,9 64:25
eventually
   107:12
everybody
   29:10 149:22
   151:7 152:18
   153:17 155:6
   155:13
everyone's
   150:10
evidence  21:11
   21:12 37:12,19
   39:6,11,21
   40:4,6,11,24
   41:13 42:1
   48:8 51:2,9,10
   54:20 55:20
   75:11,13,14
   76:6,7,8 80:3
   80:16,17 82:12
   82:13,14 90:8
   90:9,10 94:15
   97:2 100:7,13

101:20,21
103:11,21
109:22 110:18
110:19 112:13
112:17,21,22
116:23 117:9
117:10 120:24
121:2,7,8
143:10,20
152:10 156:18
**evidentiary**
27:4 41:25
97:17 133:13
**exact** 124:2
132:21
**exactly** 50:19
68:23 84:24
106:14 124:22
145:12,13
**examination**
22:8 25:12
53:12,23 54:21
54:21 55:24
57:4 90:22
93:20 94:8
95:15,15 96:2
96:25 97:4
100:10 101:13
101:25 102:9
102:10 106:1,6
118:12,17
123:15 132:10
133:14 144:3
156:9
**examine** 42:3
55:19,22 90:17
93:18 94:5

95:22 100:18
133:9
**examined**
123:19
**example** 22:4
77:23 105:21
135:20 149:10
**excellent** 38:14
38:20 140:14
**exceptions**
28:13
**excerpt** 59:15
135:22
**excess** 46:25
**exchange** 5:1,2
5:9,10 26:16
26:21 52:5
134:2
**exciting** 113:16
**exclude** 66:19
**exclusive** 43:5
48:13
**exclusivity**
48:12
**exculpation**
117:23
**excuse** 38:3
71:19 95:7
144:15
**exhibit** 13:15
13:16,17,18,19
13:20,21,22
34:20 36:25
37:8 38:23,25
39:6,11,24
40:17,25 55:24
59:7,12 64:11

64:18 73:3
75:11,12,14,20
76:6,8 80:1,3
80:15,17 82:10
82:12,14 87:20
88:6 89:14
90:8,10 99:8
108:18,21
109:13,21
110:3,19
111:24 112:13
112:22 114:13
116:23 117:1,9
117:10 119:13
120:24 121:1,6
121:8 124:1,6
124:21 134:1,6
**exhibits** 13:14
37:2,5,7 39:22
40:1,2,14 42:1
50:12 93:19
103:9,14,16
135:21 145:14
145:15 147:9
**existed** 120:18
**exists** 129:25
153:12
**exit** 113:12
**expect** 33:20
45:18 156:21
**expected**
100:22
**expects** 156:24
**expensive** 47:5
**expert** 20:13
20:16 44:3
52:23 58:8,19

58:22 59:16
60:9,15,20,22
61:2,3 62:3,3
63:12,12 65:4
65:4,7,20,22
67:3,4,5,6,12
68:21 69:4
70:6,19 91:5
123:5,10,11,15
123:16,22
144:11 145:19
146:9,19
**expertise**
123:14
**experts** 105:1
**explain** 40:10
40:24 46:18
93:11 125:21
126:12 134:11
**explained**
139:23 142:11
**explicit** 139:23
**explicitly** 43:9
49:8
**expressing**
106:15
**extended** 37:17
**extent** 27:24
30:19 31:20
35:8 39:9 42:1
50:17,25 51:9
53:23 90:12
146:2
**external** 148:9

| **f** | **fairness** 146:7 | **feel** 23:16,24 | 54:7,17 60:17 |
|---|---|---|---|
| **f** 1:21 5:4 | **fall** 40:20 | 85:18 149:9 | 65:4,16 98:6 |
| 10:16 160:1 | 48:11 98:8 | 150:13,23 | 103:10,11,12 |
| **fabsik** 7:21 | **fallen** 140:23 | 151:7 152:25 | 103:14 117:14 |
| **faced** 28:12 | 141:4 | **feeling** 114:10 | 118:7 122:24 |
| **fact** 25:21 | **false** 81:7,8 | **feelings** 95:6 | 123:9 124:9 |
| 33:19,24 39:5 | **familiar** 37:18 | 95:13 149:6 | 132:19 155:5 |
| 72:23 76:2 | 72:3 83:24 | 150:22 | 157:23 |
| 111:17 123:19 | 85:20,21 | **feels** 152:17 | **filing** 31:8 39:7 |
| 123:20 125:17 | **far** 14:8 30:12 | **fees** 77:24 | 120:14,15,17 |
| 141:6 150:5 | 70:4 99:7 | 120:3 | 132:23 136:11 |
| 152:11 153:9 | **faraj** 58:19 | **fell** 140:1 | **filings** 37:12 |
| 153:19 154:14 | 65:13,19 66:22 | **felt** 95:7 149:7 | 40:5 122:1,3 |
| **factor** 125:25 | 67:1,6,11 | 149:8,20 | **final** 18:4 28:9 |
| 126:2 132:1 | 68:13,13,19 | 153:21,25 | 113:15 120:16 |
| **facts** 104:2 | 69:3,9,14,23 | **fencing** 122:12 | 132:16,16 |
| 126:3 | 70:10,13,15 | **ferraro** 7:23 | 140:13 143:11 |
| **factual** 28:4 | 71:19 146:21 | 35:1,16 | **finally** 44:4 |
| 33:17 | 146:22,25 | **ferraro's** 35:7 | 48:20 |
| **fahey** 7:22 | 147:3 156:5,13 | **ferry** 5:12 | **finance** 96:11 |
| **fahrenheit** | **faraj's** 66:2,8 | **fiduciary** | **find** 55:8 152:3 |
| 136:17 137:1 | 66:16 | 104:9,12,17 | **findings** 27:25 |
| **fahrenheit's** | **farenheithldg** | 105:10 118:4 | **fine** 21:16 |
| 137:5 | 119:25 | **fifth** 85:4,18 | 26:10 51:11 |
| **failure** 55:20 | **fast** 142:8 | 86:6,8 | 53:10 56:16,16 |
| **fair** 46:10 | **faster** 100:22 | **figure** 57:20 | 145:2 150:6 |
| 47:23 60:24 | 122:13 | 60:12 | **finish** 147:14 |
| 61:25 62:4,13 | **favor** 149:22 | **figures** 79:1 | 147:15 |
| 63:8,11,18 | **favorably** | **file** 37:16 54:4 | **finishes** 159:9 |
| 64:24 69:5 | 111:5,9 | 55:3 103:7 | **firm** 79:20 |
| 72:10,11 76:2 | **february** 52:19 | 156:22 | 89:24 |
| 81:5 93:5 | 87:21 88:6 | **filed** 20:8 | **firms** 105:1 |
| 112:19 135:19 | **federal** 21:22 | 26:23 27:11,16 | **first** 19:7 20:24 |
| 138:23 141:8 | 30:6 53:9 | 31:6 33:4,6 | 24:25 38:25 |
| 142:1 152:19 | 54:22 72:24 | 34:22 35:5 | 40:9 42:15,19 |
| **fairest** 45:1 | **fee** 77:25 | 37:6 42:18,18 | 53:4,12 61:19 |
| | | 48:2 53:25 | 64:3 65:7,13 |

65:14,19 67:12
67:14,16,17,17
67:18,19 68:12
68:21,23 69:9
82:12 83:11
110:4 112:25
119:19 120:11
149:10 156:12
158:8
**fish**  88:18
89:20 155:2,8
**fit**  104:17
145:15
**five**  21:18 66:7
108:10,13
130:8,8,23,23
134:20
**fixes**  73:14
**flaherty**  12:8
**flannigan**  7:24
**flare**  149:12,13
**flexibility**
22:12
**floor**  129:4
**florence**  7:24
**flower**  4:4
**flywheel**  74:8
74:16,18
**focus**  36:17
155:17
**focused**  57:23
**focusing**
155:17
**folks**  21:7,10
**follow**  43:22
46:13 56:5
112:6 139:5

140:24
**followed**  46:16
**following**
18:24 78:1
88:16 136:24
**force**  48:9
**forced**  151:15
154:18,19
**foreclosing**
29:2
**foregoing**
160:3
**forget**  102:17
**form**  52:4 97:1
100:9
**formal**  106:14
106:19,21
142:18
**formally**
106:13
**format**  133:12
**former**  72:23
155:1
**forth**  67:15
153:10
**forward**  42:11
60:24 95:11
100:10 144:2
146:1
**found**  117:13
**foundation**
123:14
**four**  60:24
99:21 132:13
150:9 151:5
152:20

**frankly**  22:17
**fray**  29:19
**free**  29:8
**freedom**  153:8
**freeze**  157:19
**friday**  112:2
136:11,16
**fried**  142:21
**frishberg**  6:5
13:7 18:8,9,9
94:6,6,7,9,14
94:21,22,23
95:10,13,17,20
95:21
**front**  50:1
113:12 136:18
**ftx**  44:11 60:18
91:15 96:10
142:16,20,22
144:13 155:3,5
158:23
**ftx's**  91:12
**fulfill**  43:16
**fulfilling**  48:20
**full**  19:7 110:9
129:20
**fully**  84:11
**function**  15:8
16:13 17:1
18:8
**fund**  136:20
**fundamental**
103:18
**funding**  91:6
144:12 154:11
**funds**  152:21

**further**  94:2,22
118:10 132:8

---

**g**

**g**  14:1 137:24
**ga**  5:13
**galka**  7:25
52:23 59:16
61:3,11 62:5
63:2 67:4
71:19,19,21
91:5
**galka's**  59:19
**game**  113:13
**games**  113:15
**gate**  136:20
**gate.io**  96:10
**geary**  8:1
**general**  43:14
48:17 141:17
141:19 144:16
**generally**
66:18
**genoot**  116:5
**georgia**  10:5
**gergi**  8:25
**getting**  89:10
142:10 150:14
151:3,3,19
152:1,25
**gheorghe**  8:2
**giardiello**  8:3
**gigantic**  65:1
**gimmicks**
81:15
**gist**  74:18
**give**  15:2 16:1
16:8 20:10,23

[give - guthrie]    Page 22

| | | | |
|---|---|---|---|
| 29:13 37:15 | 47:25 54:14 | 61:15 62:8 | 132:12 138:4 |
| 38:10 42:15 | 55:21 56:1 | 63:2,5 64:11 | 143:9 152:4 |
| 44:17 52:18 | 63:16 64:11,16 | 70:6 74:19,20 | **gorrepati** 12:9 |
| 56:23 59:9 | 64:19 69:1,19 | 81:21,23 87:17 | **governed** |
| 68:10 69:21 | 71:1 73:4 74:4 | 88:10 90:2 | 42:19 43:2 |
| 71:14,21,23 | 78:8 83:17 | 95:11,12,16 | **governmental** |
| 81:14,15 84:5 | 85:8 86:1 | 97:1 98:4 | 43:23 |
| 87:25 97:2 | 87:20 89:9,23 | 100:18,20,21 | **grace** 3:16 |
| 99:13 100:11 | 90:21 92:11 | 101:16 102:20 | 14:11 34:17 |
| 101:22,23 | 94:7 95:18 | 113:6 114:13 | 118:15 155:25 |
| 102:5,7,11,23 | 96:1 98:5,20 | 115:19 122:12 | **grant** 87:22 |
| 146:13,15 | 98:23 99:17 | 130:14 143:10 | **graubert** 8:5 |
| 148:23 149:4 | 100:10,13 | 143:12,16,19 | **great** 112:25 |
| 149:13,18 | 102:20 109:14 | 143:25 144:2 | 142:13 |
| 156:11,12 | 123:15 124:23 | 144:18,19 | **greater** 22:11 |
| **given** 16:24 | 125:21 130:24 | 146:13 147:14 | 140:25 141:21 |
| 17:10 33:20 | 134:3 135:6,19 | 148:2,19,23 | **green** 1:12 |
| 50:22 103:24 | 143:9,11 145:1 | 149:13,18 | 4:21 |
| 104:17 126:3 | 145:4 146:12 | 150:15 151:18 | **greene** 8:6 |
| 133:11 142:10 | 148:2,5,5 | 152:5 153:3,3 | **greg** 8:22 |
| **gives** 47:5 | 149:5 152:18 | 153:20,22 | **gregory** 10:16 |
| **giving** 21:10 | 155:2,3,9 | 155:8,10,13,19 | 114:17 |
| 52:13 | 156:25 157:16 | 156:11,11 | **ground** 88:19 |
| **glad** 30:9 | **goes** 20:14 | 159:11 | 111:11 |
| **glenn** 1:22 56:2 | 76:18 118:4 | **gonzalez** 8:4 | **group** 52:3 |
| 71:15,17,20 | **going** 17:7,19 | **good** 14:2,9,14 | 137:1 |
| 95:24 | 20:3,9,15,17 | 14:21 15:12,22 | **groups** 49:4 |
| **glitch** 14:7,23 | 20:17,19,22 | 16:18 17:13 | **guarantee** 74:7 |
| 18:10 21:20 | 21:10,17 23:10 | 19:25 24:18 | **guaranteed** |
| 23:5 44:3 | 23:18 24:3 | 26:15 31:1,13 | 139:2 |
| **go** 15:3 17:20 | 25:10 26:3 | 34:4,17 54:24 | **guess** 24:25 |
| 17:24 20:18 | 28:7 29:4,8 | 57:6,7 76:24 | 99:16 146:18 |
| 21:11 23:13 | 32:18 34:12 | 77:13 90:24,25 | 149:6 |
| 24:21 25:18 | 35:6 40:13 | 96:4,5 97:12 | **gundersen** 8:7 |
| 27:7 32:2 40:1 | 42:11 46:8 | 97:25 106:8,9 | **gurland** 8:8 |
| 40:8 41:21 | 47:1 49:22 | 112:6 113:19 | **guthrie** 8:9 |
| 42:5,12 47:2 | 55:5,6 56:11 | 118:19,20 | |

**guys** 89:9,25
 151:24

**h**

**h** 8:21 137:24
**haircut** 47:2,6
**hamilton** 4:20
**hand** 15:8
 16:13 17:1
 18:8 56:17,20
 102:20 147:13
**handed** 47:1
 123:25 157:12
**handle** 102:4
 119:22
**hanna** 11:10
**hans** 10:20
**happen** 33:9
 62:20
**happened**
 62:20 95:14
**happens** 34:16
**happy** 21:12
 22:24 28:4
 37:12 39:10,24
 41:16 54:13
 68:25 124:1
 145:20 146:1,3
**haqqani** 8:10
**harassment**
 142:6
**hard** 113:8,20
**harrison** 12:10
 51:17
**harsh** 8:19
**hates** 155:6
**haul** 147:23

**haven't** 123:13
**hawaii** 140:6
**he'll** 36:4
**head** 24:16
 73:6
**hear** 19:16
 20:7,17 21:6
 30:9 34:1,2
 91:22 92:20
 97:13,14 98:18
 98:19 99:2,3,4
 106:17 145:2
 147:24 148:6,7
 148:19
**heard** 34:11
 95:18 99:4
 101:22 104:6
 144:21 145:6
**hearing** 2:1,1
 14:3 29:10
 44:3 45:24
 51:24 53:9
 54:1 97:19
 103:25 104:4
 123:14 124:13
 138:20 140:12
 143:4 145:13
 156:14 157:5
 159:9,15
**hearings** 22:13
 27:11
**hearsay** 49:5
 94:18
**heavily** 44:11
**hell** 89:12,23
 89:23

**hello** 18:12
 34:2
**help** 65:24
**helpful** 28:6
 30:21 38:1
 83:2
**helps** 79:19
 151:23
**heras** 5:24
 16:18,19 97:12
 97:16,17
**here's** 156:4
**hernandez**
 8:12
**herrmann** 8:13
**hershey** 8:11
**he's** 123:15
 158:14
**hi** 14:9 15:4
 18:9,20 51:20
**high** 95:6
 134:14
**higher** 77:1
 136:3 150:25
**highest** 77:21
**hittelman** 8:14
**holcomb** 8:15
**hold** 145:17
**holdco** 125:7
 125:10,24
 126:3,6 129:23
 129:24 130:4
 130:16,22
**holder** 45:11
**holders** 28:16
 52:18,20 88:17
 88:20 89:5,6

 89:16
**holdings**
 151:21,25
**holes** 154:15
**hon** 1:22
**honest** 145:12
**honor** 21:2,4
 21:13 22:23
 23:3,5,13 24:2
 24:6,8,18
 25:15,19 26:11
 26:15,23 27:5
 27:5,8,13,21
 28:6 29:21
 30:23 31:1,5,6
 31:16,25 32:12
 33:2 34:17,18
 35:13,17 36:10
 36:13 37:6,22
 39:3 41:14
 42:6 46:12
 47:13,17 50:16
 51:15,20 52:10
 52:10,17,21,23
 52:25 53:14,17
 53:23 54:5,12
 55:9,12,23
 56:10 70:25
 75:10 76:5
 80:2,6,14
 83:11 84:7
 88:9 89:13
 90:7,16,19
 92:25 93:7
 94:3,14,16
 95:20 97:10,13
 97:18,25 99:14

99:16 100:4,15
100:19 101:2,7
101:8,14 102:1
102:2,13
104:17 105:24
106:2,2,4
108:19,24
109:7,12,21,24
110:6 112:12
115:16,19
116:22,24
117:7,11
118:11,13
119:12 120:23
123:17,24
125:20 127:3
127:17 128:2
128:10,21,25
129:22 130:15
130:21 132:8
132:15 133:16
134:5 138:20
142:12,17
143:3 144:7
145:3,16,20
146:16 147:12
147:19 148:1
155:25 157:1,7
158:10,21
159:2
**honor's** 21:9
51:1 52:7
**hook** 148:8
**hooks** 88:18,18
89:20
**hope** 52:6,8
146:13 157:3

**hopefully** 25:6
36:11 52:4
98:13
**horse** 120:17
122:1
**host** 59:10
**hosted** 113:4
**houlihan**
123:21
**hounding**
77:14,18 78:3
**hour** 108:1
**hours** 35:22
67:23 99:22
145:7
**house** 4:20
**huge** 61:7
153:22 155:15
**hundred** 34:8
**hung** 89:20
**hunt** 94:12
**hussen** 58:19
**hybrid** 2:1
**hyde** 2:25
160:3,8
**hyperbole**
84:22 85:1
87:6 89:22
**hyperbolic**
77:12 78:17,24
79:1 81:4,8
**hypothecate**
50:5

|   i   |
| :---: |

**idea** 73:19
**identified**
146:22

**identify** 34:16
57:8 107:7
**identifying**
21:5
**ignat** 15:5
**ignore** 62:10
**il** 3:6
**immanuel** 8:13
**important**
30:19 39:18
47:21 101:22
105:13 113:15
**imposed** 22:12
**imposition**
19:2
**improve** 72:25
120:1,7,21
**improvement**
72:18
**inaccuracies**
153:12
**inaccuracy**
33:17
**inaccurate**
77:10
**inadequacies**
105:15
**inadvertently**
20:5,7
**inappropriate**
94:24 95:8
130:4 152:20
**incentive**
113:14 152:22
153:7
**incentives**
153:4

**include** 20:10
55:9 130:12
131:1
**included** 37:7
105:8 114:5
117:6 123:2
125:4 130:11
157:22
**includes**
110:10 129:11
**including**
27:11 118:2
144:3
**inclusion** 33:5
33:16
**incorporate**
27:1
**incorrect** 44:5
**increase** 45:4
**increasing**
74:18 115:1
**independent**
126:15
**indicated**
140:14 141:2
**indicates** 139:7
140:17
**indicating**
106:23
**indication**
155:2
**indictment**
72:24
**indiscernible**
17:20,21 25:12
46:14 49:18
50:11 65:17

83:6,7 85:10
86:3 96:14,14
105:23 106:16
110:2 124:3
126:1,4 130:6
133:19 136:9
139:17 140:9
143:1 152:12
152:13,13,14
153:11 154:6
154:20 155:6,6
**individual**
129:24
**individuals**
22:19
**inexperienced**
145:7
**inform** 153:16
**informal** 27:2
**information**
52:5
**informed** 32:1
**initial** 129:16
132:19 136:18
**initially** 88:24
139:21
**initials** 19:9
**insiders** 45:4
**inspire** 81:6
**inspired** 80:20
**instance** 47:4
81:21
**instructed**
79:10
**instructions**
133:4 139:24

**instruments**
27:23
**insurance**
98:11
**intend** 39:13
**intended** 31:10
**intends** 24:22
39:9
**intent** 145:13
**intention** 43:7
**interest** 87:8
106:15,23
131:10,16
140:25 141:23
144:11
**interested** 71:4
71:11,18
**interests**
138:23 139:6
**interfere** 19:14
**interject** 21:19
47:24
**internet** 83:7
**interpretation**
141:5
**interview**
108:1,4 110:24
**interviewed**
107:20,23
**intimidated**
93:22
**intimidation**
142:6
**introduce** 36:5
110:8,9
**introduced**
37:1 133:17

**invested** 151:6
152:17
**investigation**
104:7
**investor** 137:1
137:2
**involved** 43:9
120:7
**involvement**
119:9
**iovine** 6:3 13:8
17:6,6 95:24
95:25 96:1,3
96:22,23
**iphone** 19:10
**issue** 27:19
28:11,17 30:15
37:5 45:19,20
48:21 49:10
50:8 97:5
100:12 158:16
**issued** 158:24
**issues** 27:1
29:3,15 30:18
30:21 31:11
34:9 95:11
143:7 144:16
**issuing** 88:20
**it'll** 99:13
**it's** 119:24
124:2 125:17
125:19 126:7
126:24 129:18
129:19,23
131:5,10,15,15
131:17 133:25
134:3 135:18

138:4 143:12
144:4 148:21
148:21 150:9
150:11 151:10
151:14,17
152:4,15 159:1
**i'll** 122:16
124:5 129:6
146:10 154:1
159:9
**i'm** 120:25
123:14,18
124:1,20 127:6
129:4 132:25
133:18,23
143:11,16,18
143:19,19
144:18,19
145:8,12,14,16
148:2,21,23
149:3,10,15
155:3,19
156:10,11
158:5
**i've** 133:10,11
142:5 145:6
149:15 158:19

**j**

**j** 6:12 7:4,7
12:15 137:24
**jacobs** 8:16
**jamaica** 53:21
**james** 137:24
**janell** 7:19
**janko** 8:17
**jankovic** 8:17

| | | | |
|---|---|---|---|
| **january** 75:24 76:22 77:4 78:23 81:18 82:3 | **joining** 100:21 | **justice** 4:18 | **khezri** 9:3 97:25 98:1,3,4 98:6,16 |
| | **jonathan** 10:25 | **k** | |
| | **jones** 8:21 | | **kicked** 98:13 |
| **jaoude** 8:18 | **jose** 9:22 38:5 38:6 | **kaczkowski** 8:22 | **kielty** 105:1,22 130:17 |
| **jarno** 12:1 | **joseph** 7:10 | **kahn** 8:23 | **kind** 69:3 100:22 136:22 140:3 |
| **jasleigh** 8:1 | **joshua** 4:16 16:4 106:3 | **kaila** 11:25 | |
| **jasmine** 6:15 | | **kaitlyn** 8:14 | |
| **jason** 6:3 17:5 17:6 95:25 | **joyce** 9:11 | **kaplan** 8:24 | **king** 33:3 |
| | **judge** 1:23 29:15,16 56:2 71:15,17,20 87:24 95:24 138:4 153:16 158:21 159:13 | **karen** 1:25 102:17,20 | **kirkland** 3:3 3:10 14:10 17:17 21:3 24:19 33:19 34:18 47:14 57:9 79:13 99:9 118:15 145:25 155:25 159:3 |
| **javier** 11:2 | | | |
| **jeff** 10:14 15:4 132:12 | | **karolina** 10:19 | |
| | | **kass** 8:25 | |
| **jeffery** 15:13 | | **kathryn** 8:7 9:10 | |
| **jeffrey** 3:23 31:2 | **judge's** 90:2 | **katie** 11:21 | |
| | **judgement** 126:2 | **kaufmann** 12:4 | |
| **jersey** 3:19 15:14 30:24 31:3,6 | **judges** 29:20 | **kava** 137:4 | **kirsanov** 5:18 13:6 14:14,14 20:8,11 23:5,8 23:11,12,20,22 24:1 90:19,19 90:23 91:11,23 91:24 92:19,22 93:4,9,12,16 93:21 94:2,4 138:16,17,18 138:19,20 143:6,13 144:6 144:9 157:12 157:14,17 158:2,6,7,11 |
| | **judicial** 22:12 37:19 40:11,14 40:21,23 41:12 50:15 | **kaza** 9:1 | |
| **jessica** 138:4 | | **keeney** 9:2 137:21,21 138:2 | |
| **jindal** 104:21 | | | |
| **jivani** 8:19 | | **keep** 19:13 95:11,14 144:14 154:10 | |
| **job** 112:6,25 113:19 | **judicially** 37:11 40:4 | | |
| **joe** 9:16 | **judson** 6:22 | **keeps** 102:18 | |
| **joel** 12:2 | **july** 65:18 107:15 | **keith** 4:15 10:10 16:4 114:18 | |
| **johan** 6:7 18:11,12 38:25 53:1 | | | |
| | **jump** 29:19 | **kenneth** 7:20 | |
| **johantgen** 137:24 138:3 | **june** 61:22 66:23 80:7,19 87:12 107:15 | **kept** 23:18 85:24 116:7 151:20 | **kitra** 6:23 |
| **john** 7:17 | | | **klorane** 9:4 |
| **johnson** 8:20 | **juries** 22:17 | **kevin** 7:5 9:25 | |
| **join** 19:7,9 53:1 | **jurisdiction** 157:17,21 158:4,9,12,15 | **key** 105:22 | |
| | | **keyan** 11:14 | |
| **joined** 16:23 | | **khai** 10:17 | |

knauth 12:11
knew 75:3 81:9
100:21 107:6
121:11,15
know 17:7 20:4
20:14 22:3,16
22:21 24:22
25:25 29:6,7
29:12,14 30:11
30:17 32:18
34:11 35:22
39:23 41:9
56:10 70:5
73:25 74:24
75:1,5,6 77:6
78:20,21 87:17
88:3 89:24
90:5 91:5,12
91:15 92:15,23
95:5 96:16
106:22 114:7
116:5,14,15
126:23 127:9
127:25 138:1,1
142:4,7,14
145:14 147:20
148:4,9 150:1
151:14 152:11
152:22,23
153:25 154:7
155:4,12 156:1
156:6,20
knowledge
127:19
known 74:24
koala 20:10
32:15,25 33:3

33:4,14,15,17
koenig 9:5
24:18,19 25:3
25:9,13 26:5,9
26:11 31:16,17
31:20,25,25
32:4,6,10,20
32:24 47:12,13
47:14,23
158:10,10,17
kohli 9:6
kordomenos
9:7
koster 9:8
kouly 9:9
kuethman 9:10
kuhns 9:11
kuhrt 9:12
kwasteniet
9:13
kyle 6:19

**l**

l 7:21 9:7 10:12
138:14
lack 82:2 136:8
lackey 9:14
lafayette 7:6
laid 104:3,4
143:15
language 24:21
31:9 32:2 33:7
45:25 46:2
49:21 98:12
138:24 139:1
140:17
lapuma 116:7

largely 37:10
41:7
las 5:24 16:18
16:19 97:12,16
97:17
lasalle 3:5
lastly 52:25
late 30:1 42:12
103:14 105:20
151:14
latona 3:8 14:9
14:10
lau 23:19
138:14,15
147:12,15
148:2,5,5,6,8
148:12,25
149:6 155:19
155:22
launched
106:22
lauren 11:8
law 21:25
157:11
lawyer 25:1
101:17
lawyers 34:15
lay 123:14
layla 10:9
layne 9:15
lea 9:4
lead 137:1,2
learned 113:23
114:3 120:5
121:11,15
learning 114:5

leave 22:5 26:4
49:23 159:10
ledanski 2:25
160:3,8
left 23:25
138:1
legal 40:5,12
41:1 42:21,24
43:9 45:10
46:10 47:8
48:16 144:5
160:20
lehrfeld 9:16
leigh 33:2
length 120:11
lennon 9:17
leonard 9:18
9:19
letter 150:7
152:11
letters 146:22
let's 122:3,12
122:22 123:23
123:23 124:20
135:3 146:18
level 130:6
levine 9:20
liberties 149:9
licari 9:21
life 79:18
113:12
lift 88:17
light 105:21
156:18
likely 26:6
28:20 44:20

**limine** 34:23
**limitations**
   22:13 153:9
**limited** 26:23
   27:2 28:1
   29:23 31:24,24
   33:4,14 98:6,9
   104:1 117:14
   117:19 131:14
**limits** 77:1,21
**line** 26:19
   43:22 59:23
   83:12 86:6,8
   101:4 112:6
   114:23 115:18
   115:20 137:21
   138:17 150:7
   151:4
**lines** 42:10
   45:5 68:5 69:2
   71:8 81:12
   83:5
**linkedin** 107:7
**liquid** 127:10
   127:20 128:6
   128:17 129:1,7
   129:19
**liquidated**
   78:15 92:9
**liquidation**
   28:19 92:11,16
   92:23 131:20
   131:23 132:5
   139:3 140:18
   141:3,8,13,15
   141:17,20

**list** 20:6 23:13
   23:17 24:4,17
   33:5,16 34:20
   34:20,24 36:25
   37:8,17 50:12
   97:23 117:5
   144:23 146:23
   148:5,19,21
   155:14
**listed** 78:10
   97:24 128:23
   147:9 148:20
**listen** 20:21
   63:14 119:9
   147:3 148:3
**listening**
   120:15 148:21
**listing** 136:21
   139:23
**litigate** 154:18
**litigation**
   103:22 104:13
   104:21 154:5
   154:13,25
   155:1
**little** 22:13
   37:20 48:4
   51:24 89:19
   99:13 102:2
   145:8 151:24
**lives** 90:3
**llc** 1:7 14:4
   20:10 33:1,3
**llp** 3:18 4:1,9
   15:5 16:2
   106:3

**loan** 42:15,19
   42:20,23 43:7
   43:17 47:15
   48:3,6,9,10,11
   48:20,22 49:2
   49:3,7,10,18
   49:20 77:22
   79:1 87:8
**loans** 43:2
   49:16 77:1,2
   77:21 78:15,15
   78:16,24,25
   87:9 92:7,9
**located** 52:16
   53:20
**location** 55:2
**locked** 159:11
**lodged** 117:18
**log** 19:12 85:10
   159:15
**lokey** 123:21
**long** 15:2 45:3
   47:17 49:5
   116:7 153:15
   158:1
**longer** 24:23
   31:10
**look** 43:6 45:25
   47:17,20 68:4
   68:25 69:1
   73:3 74:3 76:9
   76:10 87:19
   89:25 122:12
   132:23 157:3
**looked** 46:2
   66:23 76:3
   81:19

**looking** 29:18
   38:21,24
   124:20
**looks** 84:6
   134:2
**lopez** 9:22 38:5
   38:5,6 59:10
   60:3 64:10,15
   68:4 72:1 73:2
   73:6 75:19
   76:12 79:3
   82:11 83:6
   85:9,10 86:2,3
   87:22 88:12
   108:17 111:23
   115:15 119:15
   119:19 124:6
**lopsided** 136:7
**los** 4:5 9:23
**lose** 151:25
   152:8
**loss** 37:20
   141:10 142:1
**lost** 95:6
   152:15,16
**lot** 37:12 44:6
   75:2 89:24
   90:3 95:7
   100:22 122:13
   136:11 149:20
   149:21 150:24
   150:25 151:21
   152:2
**lots** 74:7,12
   151:20
**loud** 83:10

**love**  38:2 78:14
  78:14
**loved**  69:20
**low**  46:24
  144:2
**lowenstein**
  98:1
**lower**  63:5
  105:7 130:7
**lucas**  8:15
**lucky**  89:10
**luke**  11:11
**luna**  61:5,8,20
  62:14,19 63:20
  65:2 66:19
**lupu**  9:24

**m**

**m**  9:13,25 11:3
  12:4 138:12
**maciej**  10:21
**mad**  150:17
**made**  27:9,12
  143:11 149:8
  153:17 155:17
**magnification**
  115:1
**magnify**  134:4
**mail**  140:20
**main**  96:13
**maintains**  19:4
**majority**
  139:13,21
**make**  16:25
  17:22 21:10,22
  26:13 27:24
  29:24 30:5
  31:10 42:9

55:17 62:12
73:19,22 81:13
102:18,19
105:11 124:20
128:13 130:12
145:22 154:9
**making**  14:25
  17:23 18:25
  38:3 41:23
  74:23 75:4
  88:16 89:16
  129:11
**management**
  120:2
**manipulated**
  44:8 45:2
**manipulating**
  150:18
**manipulation**
  91:18,25
**manus**  9:25
**march**  106:23
  106:24
**maribel**  9:7
**mark**  4:24 9:18
  10:24 16:9
  24:7
**marked**  114:13
**market**  44:8,18
  44:20,21,25
  45:2 46:17
  47:3 61:25
  62:13 63:8,11
  63:18 64:24
  69:5 74:7
  81:25 84:24
  87:1 91:18,25

129:16 135:19
141:2 151:11
**marketplace**
  73:24 74:1
**markets**  45:2
**marks**  10:1
**marsal**  105:3
**marsh**  10:2
**marshals**  95:4
**martin**  1:22
**mashinsky**
  33:18 38:25
  39:2,20 50:13
  72:24 73:8
  74:6 75:9,17
  75:24 77:7,8
  77:13,18 78:3
  78:20,21 79:6
  79:10,11,13,18
  79:22 80:2,8
  80:10,13,20
  150:14
**mashinsky's**
  39:5
**master**  48:22
  49:2,7,10
**masumoto**
  10:3
**materials**
  146:8
**matter**  1:5
  45:10 77:8
  123:6 142:16
**matthew**  11:9
**maunder**  10:4
**max**  7:25 52:23
  91:5

**maximize**
  142:9
**maza**  5:15
  17:22,25,25
  26:20
**mccammon**
  12:12
**mccarrick**  3:15
  13:5 14:10
  17:17,17 21:2
  21:3,14,16
  22:23 23:1
  53:14,17,22
  54:12 55:12,14
  55:23 56:6,10
  57:2,5,9,9,11
  58:13,14 59:6
  59:11,14 60:3
  60:5 63:16,17
  64:10,17,20
  68:4,6,17,18
  71:2,7,9,25
  72:2 73:2,7
  74:2,5 75:10
  75:15,19,23
  76:5,9,13 78:8
  78:9 79:3,5,25
  80:6,11,14,18
  82:9,15 83:4,7
  83:9,11,13,19
  84:17 85:8,11
  85:14,15 86:1
  86:4,18 87:19
  88:2,9,14
  89:13,17 90:7
  90:11 91:7,20
  92:17,25 93:7

99:9,9 145:20
145:23,25,25
146:7,21 147:1
147:5,9,18,22
159:2,3,5
mcelroy 3:18
15:13 31:2
meadow 10:5
mean 29:7
45:19 89:7
101:16 122:21
129:22 132:22
158:25
means 48:10
64:4 66:21
93:11
meant 79:20
measured 62:1
62:14 63:8,9
63:19 64:24
meet 110:24
141:22 153:4,6
meeting 111:6
116:5
meghji 10:6
member 115:4
122:8,16
134:10 142:5
members
28:18 104:15
107:6 134:21
153:19
mendelson
10:7
mendieta 10:8
mention 142:4

mentioned
79:21 151:11
message 79:12
81:9
messaged
70:13 79:22
messages 70:19
71:3 80:1,7,9
80:11,12 134:2
met 116:8
methods 139:4
mg 1:3
mia 12:6
michael 8:4,5
8:18 137:23
microphone
148:9
microsoft
105:22
middle 14:24
15:24 16:7
17:15
mike 8:20 11:1
milliga 10:9
million 84:25
128:16,23
129:7 136:18
136:19 152:21
millions 127:6
mind 17:18
19:13 21:15
68:24 86:16
87:3
mineola 160:23
minimum
137:11

mining 120:1,8
120:21 131:24
minute 38:10
minutes 101:5
mira 8:10
misconduct
103:22 104:18
mispronounc...
51:17
mispronounc...
137:19
misstates
111:10 114:9
121:13,17
mitigate
141:25
mixed 138:23
mixing 100:12
mo 10:6
modifications
27:3 131:12,14
mohsin 10:6
moment 59:9
84:5 129:7
monetary 19:3
139:13,20
141:10 142:1
money 95:7
150:2,4 152:25
153:1,21 154:9
154:10,10,10
154:11 155:7
155:11,16
month 136:5
months 77:15
77:18 78:3
111:20

morgan 10:18
morning 14:17
16:15,18 37:16
146:12,15
156:9,13,25
157:5 159:10
159:16
motherfuckers
94:11
motion 34:22
35:5 42:18
48:1
motivate 153:5
move 32:17
75:11 82:12
90:7 116:22
120:23 121:2
122:22 123:23
136:25
moved 98:25
99:7 117:2,2
139:18 140:19
144:20,23
multiple 30:4
53:19
mulvaney 3:18
15:13 31:2
mute 19:13
32:11

**n**

n 3:1,5 13:1
14:1 137:24,24
160:1
naked 76:19,20
name 19:6,8,9
51:18 107:12
137:1,19

155:13
named 114:6
narrow 102:18
154:24
nathaniel 9:15
nathanson
32:11,12,16,25
33:2,3 34:1
nda 119:9
ne 5:4,12
necessarily
27:23 100:5
155:12
necessary
99:18 157:4
need 20:25
65:23 76:11
81:13,23,25
89:19 116:6
145:8 156:17
needed 24:23
78:18 116:4
needs 19:11
63:8 114:24
134:25
negative
150:22
neither 105:19
network 1:7
14:4 82:17
120:8
never 17:18
79:17 107:17
134:18 139:23
149:15
new 1:2,13
3:19 4:13,22

15:14 20:13
22:13 30:24
31:3,6 34:5
36:8 74:8
146:8 149:2
newark 3:21
newco 104:19
104:20 105:5,6
105:11 106:10
117:14 122:8
122:17 124:16
125:5 128:6
134:13 135:17
136:6 137:12
153:2,19,24
newco's 107:20
113:23
nice 31:4
nicole 9:19
11:8
night 103:15
110:16 136:11
136:17 145:6
146:14
nine 48:3,14
49:17 156:8
noah 11:3
non 36:3,20
41:10
nonmonetary
19:3
normal 126:3
152:24
note 17:3 33:15
33:24 100:20
105:13 139:12
157:12 159:5

noted 19:23
notes 41:23
48:20
notice 37:19
40:11,14,21,23
41:12 50:15
noticed 37:11
40:4
notified 31:9
notifying 17:7
novawulf
120:19 122:1
noyes 10:10
104:21
number 19:11
19:12 20:10
23:9,10,19
24:4 42:16,20
49:16 52:25
55:12 73:16
74:3,4 78:10
98:7 99:19
111:24 112:13
114:14 115:18
124:16 125:11
125:14,18
126:7,16,21
127:6 128:17
128:23 129:7
129:12 134:13
135:11,25
139:25 144:22
146:21 148:20
152:20,23
numbers
129:17,20
130:2,18

numerous
130:21
nuraldeen 6:21
nw 3:12
ny 1:13 3:21
4:13,22 160:23

**o**

o 1:21 14:1
137:24 160:1
o'clock 14:3
o'connell 10:11
o'connor
104:16
oath 25:2 26:1
52:16,25 55:15
55:17 56:5
67:25 102:21
116:12
object 22:15,16
41:16 52:23
53:15 94:17
105:17 108:20
109:6,12,25
111:11 114:9
117:23
objected 20:13
34:13 37:1
39:7 51:22
52:1
objecting
52:11,12
objection 20:9
20:20 26:24
33:4,8,14,15
34:22,25 36:25
39:3,19 40:13
42:18 50:13

84:7 91:7,20
92:17,25 93:7
93:14 95:16
98:6,9,13
100:2 103:7
108:19,22
109:24,24
110:1 111:13
112:15 116:14
116:15,16
117:14,19
118:7 121:13
121:17 132:20
134:19 137:4
148:22 149:3
149:11 159:1,1
159:2
**objection's**
112:20
**objections** 20:4
20:14,22 22:1
22:7 27:2
28:21 29:24
30:2 37:6,10
37:23 52:15
75:12 100:6,17
103:16 109:23
110:17 112:14
117:8,18 121:3
122:25 143:4
145:16 148:13
148:16
**objective** 142:7
**objector** 32:13
**objectors** 20:7
145:18 147:3
148:20

**obligation**
43:17 48:20
49:20
**observer**
134:13 137:7,8
**observers**
134:22,22
**observer's**
134:11,15
**observing**
59:18 120:6
**obtained** 91:6
**obviously** 22:8
28:15 29:5,17
30:7,9 34:7
37:17 43:19
44:19 78:24
85:1 87:7
**occasions** 95:3
**occasiosn**
53:19
**occur** 33:12
104:7
**occurred** 95:5
108:9 136:5,13
**occurring**
53:16
**october** 1:15
14:3 20:6 21:5
34:23 54:18
65:7,20,23
66:3,5,7,14
84:6,19 148:18
**offer** 21:9
38:23 67:11
69:3 76:5 80:2
109:21 112:12

124:12
**offered** 35:2
37:5 57:12
68:21 69:9
123:8 128:7
**offering** 58:18
123:5 131:19
132:3
**offers** 42:1
**office** 16:16
25:20 94:17
**officer** 34:21
**official** 4:2,10
16:3 19:5
51:21 119:24
156:2
**oh** 14:8 17:18
84:4 88:10
115:25 124:4
152:24
**okay** 14:2,12
15:6,17,20
16:5 17:8,19
18:11,14,17
19:20,22 20:23
21:21 22:25
23:4,23 24:9
24:25 25:14
26:12,22 29:12
29:20 30:24
31:23 32:17,19
32:21,23 36:11
36:22 38:7
40:7 41:17,22
42:7,10 45:15
51:11 57:1
58:13,15 59:6

60:2,24 61:9
62:12,22 63:22
64:5,10,16,18
65:10,19 66:2
66:12,18,22
67:6,10,20
68:4,12,17
69:14,23 71:7
71:25 73:2
74:2 75:8,16
75:19 76:5
78:8,19 79:3
80:19 81:5,7
82:6,16 83:4,8
83:16,20,22
84:18 85:2,6
85:12 86:4,10
87:14,19 88:3
88:13,22 89:11
90:7 93:22
96:1 97:11,13
97:14,16 98:19
98:21,23 99:12
99:13,23 101:3
101:6 105:25
106:24 108:23
109:1 115:21
117:7 118:14
122:14 132:25
138:6,9,14,19
145:2,5,17
146:15,16,25
147:2,24 148:2
148:8,11,21,21
149:5 156:4
158:18 159:12

okx  96:10
old  160:21
ombudsman
  24:14
omitted  20:7
once  81:4
  136:1 158:22
ones  40:15
  81:24 104:12
  133:23,24
  148:13
ongoing  30:9
online  22:21,22
open  38:17
  50:1 51:10
  55:1 81:21,23
  83:17 93:12,16
  115:18
opening  97:19
  156:16
operating
  31:15 137:25
operations
  120:1,8,21
  130:10
operator  56:17
  102:17
opine  60:17
opinion  45:21
  57:12,14 58:18
  61:15 63:2
  65:3 67:5,12
  81:22 104:5
  105:4 123:5
  128:7 141:8
opinions
  123:15

opportunity
  20:11,23 29:19
  133:11 156:10
  156:22
opposed  40:6
  45:11 102:3
  128:20
opposition
  159:6
opt  154:19,22
opted  154:23
options  142:11
orally  103:4
order  20:5,6
  21:5,5,18,24
  22:20 24:21
  35:25 51:2
  53:8,24 54:2
  77:10 97:6
  98:12 99:1,7
  99:11 139:17
  140:11 148:18
  148:19
orderly  105:4
  105:7,11,12
  134:24
orders  30:20
oren  34:10
organize  80:23
  80:25
original  103:7
  123:3 140:7
originally
  144:22
otis  6:1 13:4
  17:2 52:16
  55:15 57:4

90:22 94:8
  96:2
ought  25:25
  156:23
ousted  79:14
outline  103:6
outlined  52:15
outside  22:4
  28:3 54:10
  55:10 86:9
  96:7
overall  100:6
  120:2
overlap  131:6
overly  154:24
overrule  50:12
overruled
  109:14 110:17
  111:13 112:20
  158:25
overruling
  39:19
oversight
  23:17 103:23
  104:13,21
overwhelmin...
  28:14
own  38:18
  66:22 95:16
ownership
  42:14,19,23
  49:9 50:6

p

p  3:1,1 8:11
  14:1
p.m.  109:17
  110:14 114:17

paces  5:12
page  13:14
  38:24 54:19
  59:11,12 64:12
  64:13,15,16,17
  68:5 69:2 71:8
  73:4 74:2,3
  75:20 76:9
  78:8 83:5,12
  86:1,5 93:12
  115:16,25
  116:15 124:7
  124:12,12,21
  124:21 139:7
pages  39:14
  48:7 85:8
  117:6
pagnanelli
  10:13
paid  77:25
  152:25
paolo  7:2
paragraph
  43:11 59:13
  76:10,11,14
  113:7 134:9
paragraphs
  43:11
part  22:18
  34:19 41:14
  42:24 54:18,23
  82:11 88:21
  103:12,13
  104:23,24
  112:15 123:1
  129:24 157:20

partial 19:9
participate
  116:17
participated
  135:15
participation
  155:22
particular 72:7
  110:10 117:23
  129:20 139:15
particularly
  21:25 42:23
  56:4
parties 14:5,5
  14:17,22 15:6
  15:18,23 16:6
  16:12,21,22
  17:9,14 18:4,5
  18:19 19:6,8
  52:5
parts 39:14
  125:11,18,25
  126:7 128:14
  129:25
party 19:7
  29:10 33:9
  154:19,22
pass 90:13
  132:9
past 95:14
  145:6
patel 12:5
patricia 11:19
patton 10:14
paul 6:20 7:21
pause 14:19,20
  15:20,21 17:11

17:12 61:22
62:6,15 63:20
65:1 72:17,21
77:13 79:7,14
79:22 81:9,22
82:4 87:10
paused 87:7
pay 18:23
  153:23
payout 158:8
pdf 59:12,12
  64:12,17 73:4
  74:3 75:20
  76:10
penalties 153:3
penalty 153:6
pending 98:14
pennsylvania
  3:12
people 20:23
  21:18 22:21
  74:7 89:4,8,8
  89:15,19,20
  95:6,7 128:5
  135:14 139:25
  140:19 149:22
  149:24 150:14
  150:17,18,20
  150:23 151:20
  152:6,17,23
  153:23,23
  154:4,14
people's 90:3
perceive 95:8
  116:3
percent 34:8
  37:18 47:6

125:8,13,16,25
126:5,9,11,13
126:16,20
128:12,13
129:10,11,15
129:16 130:7,8
130:9,23,23
131:1,2 135:13
135:14,16,19
135:23 136:2
137:11 141:15
141:19 152:14
percentage
  105:6
perella 100:20
  101:6 103:20
  117:20,24
perfect 38:22
perfectly 21:16
period 66:23
  119:6
permission
  23:13,18 89:13
  119:12 120:23
  121:2
permit 21:24
  27:5 35:11
  54:25 55:6,18
  55:21 95:18
  100:17 103:4
permits 54:22
permitted 22:3
perry 10:15
person 22:7
  47:22 137:16
  138:6

personal 57:16
personally
  58:3
persons 18:24
pesce 10:16
  114:17
peter 7:17
  12:15 138:9
petition 44:9
  44:16,19,25
  46:20,23 57:14
  57:17,21 60:16
  60:21 67:8
  72:17,21 79:7
  79:23 81:10
  84:8,10,15
  86:9,11,14,15
  86:16,22 87:3
  87:5 96:10
  140:8,23 141:1
  141:4,15,25
  143:22,23
  144:17 157:18
pham 10:17
phase 140:4,6
phil 97:25
philips 129:14
  132:2
phillip 9:3
phillips 5:20
  13:10 15:15,16
  15:16 99:15,16
  99:21,24 100:2
  100:13,16,21
  101:4,8,15,17
  101:18 102:1
  102:13,14,25

103:1,6,18
106:6,8 109:3
109:10 110:5,6
110:22 112:1
112:24 114:14
115:16 116:17
118:17,19,23
119:21 121:10
121:19 122:10
123:1 124:5,9
124:25 125:21
127:9 131:1,10
132:12 133:10
133:16,25
134:4,7 135:4
135:5,6,7
137:15

**phillips's**
101:13
**phoenix** 10:18
**phone** 19:10,14
68:19 69:9,23
70:3 98:21,22
**phrased**
121:23
**piasek** 10:19
**pick** 20:3 21:12
130:18
**pietro** 9:21
**place** 115:24
**places** 49:6
**plaintiffs** 97:23
98:2,7
**plan** 18:10
28:13,15,20
30:3,10,12,13
31:8 33:7,8

43:25 44:13
46:22 47:2
93:12,16 105:8
113:14 118:24
119:1 126:12
126:18,19
127:13 131:11
131:16,21
132:5,20
136:15,24
138:24 139:6,7
139:14 140:13
142:3 147:16
149:23 152:22
153:2,8,9,18
154:12,20,21
155:2 156:10
156:14
**planned** 46:22
**planning** 155:3
**plans** 154:24
**platform** 61:23
72:7 87:7
96:11
**platforms** 96:9
96:12,17,19
**play** 94:13
**plea** 142:19
**please** 14:6,24
15:7,24 16:7
16:13,25 17:15
18:7,23 19:13
19:25 27:7
38:1,6 56:1
58:11 59:9
64:10 81:3
83:3 91:21

93:11,17
101:12 106:17
108:18 111:23
115:13 119:15
119:18 124:6
124:17 134:15
135:2
**pleased** 97:6
**plus** 153:23
**pm** 1:16
159:18
**podium** 14:24
15:24 16:7
17:20 34:15
**point** 21:4
24:25 25:7
30:13,16 35:22
46:9 47:11,15
47:23 51:10
78:25 79:10
89:2 90:2,6
102:17 105:16
120:12 128:9
134:8 136:4
143:18,20
155:24
**pointed** 45:24
136:9
**pointing** 62:4,5
**points** 27:6
47:15 50:16
133:13
**policies** 98:11
**polzmacher**
10:20
**portions** 41:11

**posed** 35:1
**position** 27:10
27:15,20 28:23
29:8,14 40:3
41:16 53:7
62:25 63:7,18
86:10 89:11
99:1,7
**positions**
154:11
**possibility** 29:2
**possible** 131:5
144:1
**post** 84:8,10,15
88:16 93:19
96:10,18 104:3
104:9 122:1
156:16
**posted** 55:16
66:2 136:10
146:9 156:21
**potential** 60:25
142:24 153:12
**potentially**
33:23 155:2
**power** 134:22
**poynter** 10:12
**prczek** 10:21
**pre** 122:2
**preceding**
39:14
**precisely** 45:20
**preclude** 44:9
**prefer** 99:17
99:17 145:5
**preliminaries**
20:3

**preliminarily**
20:25
**prepare** 23:14
69:4
**prepared**
36:21 43:20
53:22 100:9
125:1 145:9
146:12
**preparing**
145:10,14
**prepetition**
134:20,20
157:20
**present** 6:9
**presentation**
27:5 31:11
97:18
**presented**
104:25 105:14
**presenting**
24:8 99:7,8
**presents**
142:24,25
144:16
**preserve** 98:9
**preserved**
104:8
**presumption**
22:9
**pretrial** 53:18
53:24
**pretty** 22:9,18
81:10 118:21
**prevents**
144:15

**previously**
107:17 143:7
**price** 44:8,10
44:16,19,21
46:17,20,23
57:14,20,23,24
58:1 59:19,24
60:6 61:4 62:6
62:9 69:5
74:19 135:8
136:19,21
137:10 143:2
144:14 150:11
150:18
**prices** 44:18,25
44:25 45:2
47:4 105:22
141:15 150:19
150:25 151:1
152:4
**pricing** 44:14
93:10
**primarily**
42:15 72:9
138:22
**prior** 29:10
31:7 62:5
113:12 116:13
116:16
**priority** 27:21
**privacy** 24:14
**privilege** 70:4
**privy** 30:7
**pro** 5:18,20,22
5:24 6:1,3,5,7
14:15 15:10,16
16:19 17:3,6

18:9,12 19:21
20:14,18 22:4
23:5 34:7
90:20 94:6
95:25 97:17
**probably**
65:18 81:10
111:22 113:9
118:6 151:14
**problem** 38:16
107:5,10
**procedural**
157:14
**procedure** 53:9
54:23
**procedures**
51:23 52:2
53:18
**proceed** 22:24
53:22 54:13
57:2 99:18
101:13 146:3,5
**proceeding**
33:12,21,22
103:25
**proceedings**
18:25 19:4
87:16 119:10
159:17 160:4
**process** 21:4
106:13,20,21
117:20 118:3
120:18 137:7
142:8
**professionals**
103:19

**proffer** 35:9
**profile** 107:7
**program** 73:17
**programs**
27:22
**prohibited**
18:25
**prohibition**
19:2
**project** 65:2
**promising**
154:1
**promptly**
18:19
**proof** 157:23
**proper** 42:8
69:22 97:1
105:12
**properly** 41:13
49:1
**property** 43:5
45:10,11 46:2
48:13
**proposal** 21:8
**propose**
104:12
**proposed**
20:13,16 27:3
28:13 33:5,10
33:13,16 42:1
44:13 73:16
139:19
**proposes** 28:14
**prosecute**
104:10
**prosecution**
41:10

prosecutors
142:20
protection
154:12
proton.me
112:2 114:16
proton.me.
109:4
provide 33:9
49:19 58:6
63:13 65:24
68:21
provided 105:5
134:12 148:19
providing
102:3 139:1
140:25
pseudonym
107:2,4,10
pseudonymous
107:8
pseudonymo...
107:2
public 67:15
120:12 121:25
122:3
publicized
120:13
publicly 87:15
107:18
pull 37:23 39:1
119:15 124:6
pulled 126:18
purchased
150:22
pure 139:15,18
141:14

purely 143:25
purpose
145:13
purposes 54:1
127:5
pursuant
54:22 139:16
pursue 42:11
98:10
pursued
155:16
pursuing 155:1
push 52:7
143:19 146:1
pushing 90:4
put 15:19
23:17 25:5,7
38:12 56:18,18
60:24 62:17,18
64:11 79:25
82:9 83:18
99:11,12,19
100:8 113:9,20
123:19 133:20
133:20 137:5
152:1,8,10
153:10,14
putting 108:20

q

q&a 133:12
qualification
104:24
qualified 58:6
137:5
question 18:15
49:17 50:19
58:12 60:19

63:7,14,15,16
66:8 68:10,12
71:14,15,23
79:18 83:14,16
83:20,22 84:14
85:13,16,24
86:10,13 91:21
91:22 92:18,21
107:9,23
111:12 115:22
121:14,18
124:17 127:22
129:4 132:2
133:1 140:15
142:13 143:9
157:15 158:6
questioning
34:25 35:1,7
35:21
questions 35:3
35:6,22 36:4,9
36:16,20 53:2
71:10 86:9
87:14 90:12,15
94:2,22 95:17
96:6,22 108:3
108:7,11,13,15
108:15,21
109:9,14
118:10 122:13
122:14 123:22
132:8,13
146:19
quick 24:8
96:6 132:13
quickly 36:21

quite 29:25
30:18 32:13
48:14 53:8
135:15 156:17
quota 153:4
quote 88:21
94:11

r

r 1:21 3:1 14:1
138:7 160:1
raise 15:7
16:13 18:7
21:21 36:22
47:22 56:17,20
102:12,20
133:13 143:14
155:21
raised 17:1
22:2 27:2
143:7 147:12
rakesh 12:5
rakoff 29:16
ran 137:10
155:7
range 36:1
126:3 130:7,22
rasile 10:22
rate 140:6
141:18,20
rates 92:16
130:13 141:3,9
rather 38:18
155:17
ravi 9:1 137:4
reach 24:22
29:4 67:13
126:16

**reached** 24:15
25:11 26:3
28:9 35:19
126:5
**reaching** 46:3
**read** 70:18,22
83:10 85:13
86:5 103:3
113:16 115:2
115:19 133:1,4
134:9 136:11
155:5
**ready** 18:21
45:7 101:13
**real** 96:6
**realize** 76:19
150:10
**really** 20:13,17
67:17 97:1
102:7 104:4
113:8 143:23
149:8,9,25
151:15 152:4,6
153:21 154:14
154:21
**reason** 40:25
81:14,15 86:21
87:4 125:13,17
126:6,15
156:24
**reasonable**
140:18
**reasons** 34:24
73:22 128:5
134:14
**rebuttal** 51:9
103:11,12

112:17 134:8
134:19 147:17
**recall** 50:3
54:5,10,11
59:4,22 67:14
67:19 68:23
69:11 71:6
84:24 85:5,6
88:15,15 94:10
94:13 96:9,14
108:3,12,14
112:9 114:21
**receive** 44:1
54:2 140:17,20
**received**
158:23
**receiving** 28:18
93:5 144:12
**recent** 123:2
144:9
**recently**
118:21
**recess** 101:1,11
156:14
**recollect** 108:6
**recollection**
68:25 69:8
83:1 132:25
**record** 14:6,7
14:17 15:7,19
15:24 16:7,13
16:23 17:9,15
18:6 19:5,7
24:6 25:21
27:6,17 28:8
31:16 33:15,24
57:8 61:18

70:19,22 83:18
116:16 127:5
160:4
**recording** 14:3
14:19 15:1,20
17:11 18:25
19:4,15 94:13
94:15
**recovery** 44:1
47:6 98:10
105:6,11
**recross** 13:3
**redirect** 13:3
54:21 133:12
133:14
**reduce** 44:22
**reduction**
129:15
**reductions**
120:2
**refer** 27:14
44:14 48:22
60:6
**reference**
88:10 94:11
113:3
**references**
41:18 45:7
48:15
**referencing**
127:6
**referred**
120:13
**referring** 43:11
54:17 88:4
115:3 128:24
133:24

**refers** 80:23
**reflect** 141:3
150:5
**refresh** 47:19
68:25 83:1
**refreshed** 69:8
**refuse** 70:24,25
**refused** 70:21
88:23,24
**regard** 144:9
**regarding**
27:13 41:1
42:18 44:6
104:24 116:18
118:3,24
**regardless**
52:20 150:10
154:23
**regards** 142:15
158:2,7
**registration**
30:14
**regular** 56:19
**regulators**
30:2,5,6,18
**rehypothecate**
50:5
**reilly** 10:23
12:13
**reinforce** 74:20
**reiterate** 28:1
**reject** 139:13
139:19 142:3
**related** 69:24
70:1,5 117:19
**relating** 93:22

| | | | |
|---|---|---|---|
| **relation** 44:8 | **remove** 104:18 | **requests** 52:4 | 133:17 155:23 |
| 93:25 | **reorganization** | **require** 29:4 | 157:5 |
| **relationship** | 144:1 | 113:12 153:20 | **respectfully** |
| 77:13 | **repay** 49:20 | **requirements** | 27:14 |
| **release** 154:19 | **repeat** 81:3 | 114:24 115:7 | **respective** |
| 154:22 | 91:21 106:18 | 116:4,6,9 | 141:13 |
| **relevance** 84:7 | 124:17 148:23 | 153:10 | **respond** 27:1 |
| 94:18 | **rephrase** 120:9 | **requires** 21:23 | 47:12 79:12,15 |
| **relevant** 39:14 | **replaced** 137:3 | 47:9 53:9 | 81:9 143:12,17 |
| 54:23 | **report** 20:13 | 54:23 | 144:6 |
| **relied** 103:11 | 20:16 52:24 | **research** 91:6 | **responded** |
| 103:13 | 59:16 65:12,20 | 91:12 142:18 | 35:4 48:2 |
| **relies** 104:24 | 65:22,25 68:21 | 144:10,13,13 | 103:14 110:15 |
| **remain** 45:10 | 69:4 70:6 95:4 | 152:2 | 134:18 |
| 101:4 | **reports** 30:8 | **reservation** | **response** 35:3 |
| **remaining** | **represent** | 26:14,24 31:7 | 48:1 81:11 |
| 44:21 47:3 | 79:17 83:14 | 31:17 | 133:14 137:17 |
| **remember** 46:1 | 85:12 | **reservations** | 137:20 |
| 67:14,17 88:20 | **representation** | 100:5 | **responses** 37:7 |
| 88:21 96:11 | 136:8 | **reserve** 20:15 | 142:10 |
| 106:14,19 | **representations** | 24:10 42:12 | **responsibiliti...** |
| 109:19 132:21 | 26:25 | 46:8 51:8 55:5 | 134:11,16 |
| 132:23 | **represented** | **reserved** 42:3 | **rest** 88:18 |
| **remind** 32:18 | 79:10,13 | **reside** 42:24 | **restate** 97:18 |
| 32:21 | **representing** | **resigned** | **result** 19:2 |
| **remote** 21:21 | 103:20 | 136:24 137:3 | 61:4 120:5 |
| 21:24 22:2,3 | **repurchase** | **resolution** | 121:10 126:13 |
| 22:13,17 53:5 | 44:21 49:11,14 | 24:15,20,23 | 139:17,22 |
| 54:3,22 103:8 | **request** 28:1 | 25:7,11 26:3 | 141:11 |
| 146:3,6 | 32:4 35:20 | 31:8 33:23 | **resulted** |
| **remotely** 22:7 | 53:2,25 98:25 | 41:9 98:14 | 139:18 |
| 35:20,21 36:3 | 99:6,19 103:8 | **resolve** 33:14 | **resulting** |
| 54:1 55:2 | 144:23 | 95:12 98:12 | 120:16 |
| 99:19 100:3 | **requested** | **resolved** 31:19 | **results** 126:12 |
| **remoteness** | 34:10,19 53:5 | **respect** 20:18 | 126:19 127:13 |
| 100:6 | **requesting** | 29:22 30:1 | 136:1 |
| | 55:2,3 99:4 | 53:7 71:4 | |

**resume**  107:5,8
  107:10,12
  157:4
**retail**  48:25
  49:3,16
**return**  69:15
  88:1
**returned**  139:2
  141:16,18,20
**revelation**
  136:17
**review**  27:3
**reviewed**
  113:22
**reviewing**  64:6
**revisions**  33:6
**revolve**  138:22
**richard**  5:20
  13:10 15:16
  106:6 118:17
**richards**
  109:12,25
  110:2,4
**rickie**  6:25
**ridiculous**
  150:12 151:18
**right**  14:12,16
  14:19,21 15:17
  15:22 16:11,17
  16:20,20,22
  17:5,8,11,13
  17:21,22 18:3
  18:5,18,22,23
  19:25 23:1,4
  23:15,15,21
  24:3,4 25:3
  26:5,8,12

30:24 31:23
32:3,17,25
33:25 34:1
36:18 37:9,15
38:17,24 42:3
42:5 50:4,24
51:11,12,16
52:9 53:15
56:17,20 57:16
59:9 62:25
65:7 66:8 67:4
67:12 69:25
72:13,15 73:17
74:13 75:4
76:3,4,7,9 77:5
78:11 79:7,25
80:15 81:12,20
82:9 84:20,24
86:19 96:24
97:9,23 98:15
98:16,23 99:15
99:20 101:12
101:15,19
102:20 103:1,2
103:17,19
105:25,25
106:10,13
107:2,5,15,18
107:21,24
108:4,8 117:8
117:9 118:8
119:10,18
120:3 121:3,12
121:24 122:5,8
122:17,19
124:13,23
125:1,8,11,14

126:7,16
127:20 128:7
128:17 130:6
131:6,8,16
133:8,9,18
134:13 137:14
138:16 143:6
144:18 146:11
156:12,13
157:3,8,11
159:8
**rights**  26:14,24
  31:7,17 51:9
  53:18 87:22,25
  98:9 137:5
**riki**  9:9
**rise**  19:24
  74:19
**risen**  140:22
**risius**  105:2
**risk**  43:15,16
  43:18 48:18,19
**road**  5:12
  160:21
**robert**  6:24 7:1
  12:4
**roberto**  8:12
  8:16
**robinson**  10:24
**rodriguez**
  10:25
**role**  137:8
**room**  4:21 19:8
**ross**  9:13 105:3
**roughly**  46:24
**rule**  21:22,23
  22:9 27:18

53:9 54:22
  112:18 141:12
**ruled**  149:11
**rules**  21:22
  55:17,17,21
  101:20
**ruling**  20:15
  28:1 46:8 55:5
**rulings**  43:23
  149:20
**ryan**  12:14

---

**s**

**s**  3:1 9:17 10:3
  14:1 138:7
**sabin**  15:4,4
  132:11,12,15
**sacrifices**
  113:11
**safeguards**
  54:25
**saikh**  11:7
**sale**  49:11,14
**sam**  11:4
**sami**  11:7
**samuel**  8:11
**sanctions**  19:3
**sandler**  98:1
**sarkissian**  11:1
**satisfies**  152:9
**satisfy**  55:4
  140:3
**saw**  34:12
  104:17 116:14
  118:21 120:5
  121:11,15
  122:4

[saying - seller]                                    Page 41

saying  43:24
   50:3 56:14
   62:7 63:4 77:9
   89:9 115:10
   152:24 153:13
   154:13
says  48:9 54:18
   59:23 69:20
   73:14 76:11
   109:18 114:23
   117:5 120:11
scenario  105:7
   134:24 140:15
scenarios
   105:8
schedule  35:10
   104:3 156:15
   156:20
scheduled
   157:9
scheuer  5:7
   18:1 26:15,16
   26:19,23 27:8
   29:21 30:23
schiffrin  11:2
schneider  5:22
   15:9,10,10
   98:16,16,18,19
   98:21,24,24
   99:3,6,10,12
   99:14 144:21
   144:22,25
   145:1,2,5,11
   145:12 146:12
   146:14,16
   147:4,6 156:10
   156:11,11

schoenau
   51:17,18,22
   52:1
schottenstein
   11:3
schramm
   12:14
schreiber  11:4
scientific  31:14
   31:14
scope  95:15
   154:24
scott  7:16 12:8
   114:18
screen  38:4,19
   64:14 68:7
   87:23 108:21
   134:3 135:4
screenshot
   19:1
scroll  114:15
se  5:18,20,22
   5:24 6:1,3,5,7
   14:15 15:10,16
   16:19 17:3,6
   18:9,12 19:21
   20:15,18 22:4
   23:5 34:7
   90:20 94:6
   97:17
seat  107:20
seated  19:25
   101:12
seats  154:3,5
sec  17:25 26:12
   26:13,14,23
   27:4,14 28:2

29:7 30:13
   41:10
sec's  27:9,15
   29:14
second  25:16
   37:15 54:16
   61:22 65:7
   69:23 70:10
   134:9 143:15
   145:18
secret  29:24
section  48:19
securities  3:19
   5:1,2,9,10
   15:14 26:16,21
   27:18,24 30:2
   30:6,25 31:3,6
   41:1 43:24
   97:23 98:1,7
security  27:25
   28:12,24 43:24
   49:19
see  22:6 24:15
   26:1 29:11
   31:4 32:22
   34:14,16 39:22
   40:1 41:20,21
   42:15,17 46:18
   49:8,12 59:23
   60:1 64:14,14
   64:23 65:4
   68:7,9 69:2,6
   73:9,11,13
   74:6,9,10
   75:21,25 76:1
   76:14,17,20,21
   78:19,21 80:19

80:22 81:11,12
   81:16,17 82:11
   82:16,19 83:17
   84:21 92:15
   108:22 109:3,4
   110:24 111:2
   112:1,3,7
   113:1 114:18
   116:10,13
   133:23 138:8
   138:11,13
   144:4 150:11
   159:9,12,14
seed  91:6
   144:12
seeing  54:5,10
   54:11
seeking  35:18
   145:19
seeks  39:6 98:9
seem  29:3
   77:12
seemed  28:9,20
   29:1 136:22
seems  44:10
seen  20:9
segar  11:5
select  127:20
selected  113:23
   114:3,11 115:7
   117:14 118:7
   122:19,24
   128:6
selection
   117:20 118:3
seller  135:9

sellers  80:21
selling  45:3,3
  142:22 151:18
send  107:12
sending  50:25
  109:19 112:9
  114:21
senes  11:6
sense  21:10
  49:18 102:7
sensitive  30:18
sent  79:11
  109:16 110:13
  112:5 114:15
  115:6
sentence  43:4
  43:10,10
  112:25
separate  40:19
  104:12,23
separately
  97:24
september
  22:11 114:1,16
  117:15,16,17
  117:19 119:4,7
  132:17,17
  136:5,10,13
  140:12
sequentially
  21:11
serban  9:24
series  80:1,6
  108:7 110:7
serious  95:8
serve  122:16

served  107:17
service  42:20
  43:2,7,15
  48:25 49:6,16
set  46:21 53:8
  105:22 135:19
  155:24 156:2
settle  46:23
settlement
  31:20,21 52:11
  52:22 139:6,14
  139:20,21
  140:2,2,10
  158:3,4,8,8,12
  158:13
seven  23:10
  42:20 48:5,12
  48:13,16 65:11
  66:1 78:25
several  43:23
  95:3
shaking  24:15
shara  4:25
  16:15 25:19
  94:16
share  87:22
sharing  38:4
sharon  7:15
sheet  64:18
  127:6
she's  150:3
shirt  56:11,15
  56:18,19
short  45:3
  80:21,24
shorted  44:11

shortly  42:13
  52:6 113:22,25
  117:13
shorts  56:11,15
shoulders  90:1
shouldn't
  151:7
show  34:12
  38:2 49:5
  114:13
showed  135:22
  152:11
showing  105:6
  152:12
shown  49:1,2
sickles  11:8
side  46:4,6
  98:10 134:10
sign  19:11
  154:18
signature
  160:7
signed  119:9
  148:4 158:12
significant
  119:25 120:7
  120:20 134:20
significantly
  44:1,22 131:24
  131:25 137:10
silverman  11:9
similar  27:12
  36:24 108:14
similarity
  130:9
simon  7:14

simply  54:10
  62:4,5 129:20
  130:2 140:20
simson  11:10
sincerely  24:1
single  127:9
singlehandedly
  80:20 81:6
sir  18:3 25:24
  60:24 61:2,25
  62:3,22 63:2
  63:11 65:6,15
  66:7 68:8
  70:21 74:22,24
  75:3 77:6 79:6
  82:6 83:23
  84:3 87:11
  89:3,22 96:5
  98:18 101:18
  157:14 158:2
sister  91:13
sitting  97:5
situation
  139:15 148:1
six  20:10 23:9
  66:7
sixth  152:14
sleepless
  146:14
slight  40:19
slighted  23:17
slightly  40:19
slip  64:18
slotted  23:23
smaller  151:25
sofi  113:14

| | | | |
|---|---|---|---|
| **solely** 111:15 | **space** 48:22 | **spoke** 68:19 | **state** 14:23 |
| **solemnly** 56:22 | 69:21 94:10 | 84:1 | 15:8,24 19:6 |
| **solidly** 102:22 | **spaces** 113:1,3 | **spoken** 23:24 | 19:18 30:5 |
| **solutions** | **spalding** 33:3 | 79:17 | 31:9 42:13 |
| 160:20 | **spangler** 11:11 | **sponsor** 30:13 | 43:9,15 48:3 |
| **somebody** | **spanned** | **sponsoring** | 95:25 |
| 24:16 25:18 | 111:20 | 146:24 | **stated** 16:6,12 |
| 138:1 151:11 | **speak** 17:7 | **spread** 133:21 | 18:7 108:10 |
| **somewhat** | 18:13 19:6,18 | **sprofera** 12:15 | 130:23 |
| 29:16 | 20:11,19 26:5 | **squeeze** 80:24 | **statement** |
| **sonya** 2:25 | 65:24 79:11,15 | **stabilization** | 21:11 25:1 |
| 160:3,8 | 146:15 148:24 | 136:20 | 26:13 27:11,15 |
| **soon** 52:8 | 156:12 | **stabilize** | 48:8,12 52:16 |
| 156:2 | **speaker** 147:12 | 136:21 | 52:24 55:15 |
| **sorry** 14:18 | 147:25 | **stage** 21:14 | 59:3,5,8,15 |
| 18:16 19:16 | **speaking** 14:6 | 34:9 95:5 | 60:6,13 62:17 |
| 38:15 52:1 | 14:17,22 15:7 | **staking** 128:19 | 62:18 63:22,25 |
| 58:11 69:19 | 15:18,23 16:23 | 128:23 129:18 | 64:3,5,8,21 |
| 81:2 88:10 | 17:3,9,15 18:6 | **stale** 105:18 | 66:5,9 97:19 |
| 93:13 95:24 | 18:10 65:4 | **stalking** | 103:3 105:15 |
| 98:21 99:2 | 111:5,9 147:18 | 120:17 122:1 | 105:19 116:16 |
| 106:17 108:25 | **speaks** 82:24 | **stance** 141:12 | 125:5 130:2 |
| 110:5 115:10 | 83:23 85:3 | **stand** 24:16 | 133:2 134:19 |
| 115:25 116:20 | **specific** 48:18 | 64:8 | 135:20 136:10 |
| 116:24 120:25 | 48:18 75:5,6 | **standard** 55:4 | 136:13 145:15 |
| 123:18 129:4 | 136:4 142:9 | 108:11,13 | 149:7 |
| 132:15 133:18 | **specifically** | **standpoint** | **statements** |
| 145:23 148:8 | 43:15 44:14 | 28:25 40:12 | 27:9,12 39:17 |
| 158:5 | 45:19 108:12 | **start** 14:5 | 41:1 49:15 |
| **sought** 134:12 | 137:7 | 18:19 23:2 | 97:8 123:8 |
| **sound** 83:24 | **speculative** | 24:5 157:8 | 156:16 |
| 85:20 | 143:25 | **started** 21:1 | **states** 1:1,11 |
| **sounds** 35:23 | **speech** 43:20 | 106:15,23 | 4:18 16:9,16 |
| 36:15 85:21 | **speed** 52:5 | **starting** 14:2 | 22:5 24:7 |
| **south** 4:4 | 103:24 | 38:25 115:23 | 25:20 42:21 |
| **southern** 1:2 | **spend** 146:10 | **starts** 134:8 | 43:18 94:17 |
| | 146:14 | | |

stating 48:19
stay 33:20
  154:8
steadman
  11:12
steffan 7:11
stem 141:6
stepped 87:24
stick 153:10
stock 136:6,19
  137:9
stop 55:11
  122:12 144:18
  144:19
stout 105:2
straight 102:18
street 3:20 4:4
  5:4
stress 149:25
stretto 120:13
  120:14,17
stricken 55:20
strictly 18:24
  96:20 101:20
strike 91:10
strong 22:9
  95:13
strongly
  134:25
structure
  30:10 49:12
studies 130:21
stupid 150:20
subject 40:11
  55:20 112:6
  114:23 131:12
  131:14 142:5

submit 53:25
  59:24 64:23
  103:10 112:16
  132:14 142:18
  147:6
submits 42:4
submitted 21:7
  42:2 55:7,7,16
  63:22 64:2,5
  66:5,9,16
  106:12,22
  107:1,1 117:16
  118:23 119:1,4
  119:5 123:1
  132:16 142:17
  145:14 152:10
subordinated
  27:20 33:5,10
  43:25 44:2
  98:8
subordination
  33:11,16,21,22
  43:23
subpoena 36:1
  158:23
subsections
  25:5
subsequent
  136:15,24
subsequently
  33:6
subset 104:13
substance
  101:21
substantial
  144:16

suddenly 137:3
sue 118:2
  134:13
suffer 150:17
suggested
  131:12,14
suggestion
  35:24
suggests 44:16
suite 4:4 5:12
  160:22
suleymanov
  11:13
sum 125:11,17
  125:24 126:7
  129:25
summarize
  100:17 102:6,8
  103:2 120:10
summary
  105:24
supplement
  136:15,24
support 104:5
supports 49:22
suppose 34:4
supposed
  22:10 34:8
  148:12 149:11
  153:7
suppress 143:2
suppressed
  144:15
sure 17:2 20:1
  20:4 30:5 34:8
  42:9 46:13,15
  47:18 49:21

56:1 64:4
  66:21 69:1
  84:25 102:18
  102:19 106:19
  106:20 108:9
  119:14 121:20
  124:18,20
  125:22 128:22
  143:16 145:12
  155:3
surprise
  136:25
surprised
  31:22 47:16
  147:23
suspect 26:6
sustain 20:22
  40:13 95:16
sustained 91:8
  91:10 92:18
  93:1,3,15
  94:19 158:25
  159:1
swap 77:1,21
  78:14
swear 56:22
  102:14,22
swimming
  76:19,20
sworn 56:2,3,4
  56:21 59:3,4,8
  59:15 60:6,12
  62:12,17,18
  63:22,25 64:5
  64:8,21 66:5,9
  66:13,15,17
  102:16,19

sydney 156:8

**t**

t 56:11,15
137:24 160:1,1
t.j. 3:15 14:10
17:17 21:2
145:25 159:2
tab 59:7 73:3
83:12 88:10,11
108:25 115:16
123:24
tabernacle
88:19
table 135:21,22
taji 11:14
take 25:1 28:22
29:8,8 36:2
41:12 53:12
55:18 60:3
68:17 71:25
77:2 79:3
85:18 87:8
101:1 112:18
124:15,18
135:1,3 149:21
taken 30:20
97:7 110:11
115:14 137:12
150:23
talk 119:8
122:25 151:14
156:15
talked 65:13
65:19 71:3
72:23 75:8,16
talking 46:16
52:4 61:9 65:9

128:19
tallied 58:9
targeted
141:10
taxes 151:17
taylor 12:10
team 33:19
113:9
tech 38:2
technically
146:23
techniques
58:15
tell 24:16 39:25
80:4 100:25
132:23 138:2
153:15,16
telling 22:15
56:14 89:23
112:25 134:23
135:15 153:20
temidayo 6:13
temporary
81:22
tender 47:8
terms 39:4,10
39:15,16 42:20
43:2,6,14,14
45:25 47:15
48:4,24 49:6
49:16,22,25
102:8 141:8
151:16
terra 61:5,8,20
62:14,19 63:20
65:2 66:19

testified 35:16
61:20 67:11
130:3 142:21
143:21
testify 24:22
35:20 36:2
65:8,11 133:10
142:20
testifying 22:7
93:14 100:2
102:2 123:16
123:22
testimonial
50:22
testimony
20:21 21:6,7
21:11,22,24
22:2,3,10,17
24:23 25:7,11
26:3 34:19,22
35:3,11,11,18
36:4 50:17,18
50:21 53:5,6
53:10 54:3,19
54:25 55:6,19
56:12,23 62:13
66:13,15,17,17
68:15 71:18
78:4 86:19,21
89:18,19 95:18
97:8 99:8
101:17 102:23
108:10 111:10
114:10 116:12
121:13,17
123:11 125:16
130:3 143:22

144:10,19
146:3,6 147:7
156:25
thank 14:12,15
14:16,19 15:5
15:6,11,15,17
16:5,11,16,17
16:20 17:5,8
18:3,11,14,22
19:15,23 21:2
23:12,20,22
24:2,6 27:8
29:21 30:23
31:5,11,12
32:24 33:2,25
35:13 36:10
38:8,8 42:6
47:13 50:22
51:13,14,15
52:10 53:3
55:23 59:11
60:4 73:6
89:14 90:11
94:3,4,20
95:20 96:22,23
96:24 97:8,20
97:22 99:14
101:2,7,8,10
102:1,13 103:1
106:2,5 110:6
110:20 113:8
115:25 117:7
117:11 119:17
123:24 127:2,7
127:17 128:10
132:7 133:7
134:7 135:5,7

137:14 138:20
146:16 155:21
159:16
**thanking** 111:4
113:18
**thanks** 22:25
26:11 95:21
98:3,15 110:23
159:12
**that's** 118:1
120:19 121:4
122:21 125:13
127:16 129:22
130:4,4,5
132:25 133:19
134:23,23
141:14 142:7
143:10 144:21
150:1 152:22
153:20,22
155:10 157:9
**therese** 5:7
18:1 26:16
**there's** 127:15
131:6 143:20
143:22 146:21
148:15 151:11
151:12 154:14
159:1
**they'll** 156:21
**they're** 149:12
150:15 151:18
152:25 153:13
153:23,24,25
154:8 155:8,12
155:13

**thing** 21:21
25:5 31:19
43:3 44:4,13
45:1 89:25
90:1 116:2
158:18
**things** 94:24
95:13 101:21
120:5 121:10
134:7 154:16
155:23
**think** 20:8 22:3
22:16,17 26:13
29:15,22 30:3
30:7,11 35:6
37:13 40:18,20
42:21,22 45:1
45:23,24,25
46:10 47:4,10
52:3 53:17,19
53:24 59:21
61:10,25 62:23
62:23 65:11,16
65:17,25 66:18
71:17 77:12,19
77:20,20 78:16
82:22,25 84:11
85:16 86:7,22
88:24 89:21
90:5 91:18,25
93:5 95:4,5,6
96:18 97:2
99:10 100:4,7
100:11,20
101:21,22
103:24 113:14
115:23 119:7

120:9 124:1
127:15 131:17
133:16 134:17
134:23,24
135:10 136:2
136:16 142:6
142:13 143:6
143:14,18
146:5,23
149:25 150:9
150:11 152:14
152:19 153:5
155:20 156:17
158:11,12,14
**thinking** 29:11
147:20 151:9
**third** 133:1
154:19,22
**thirdly** 136:22
**thomas** 7:12
114:18
**thompson**
25:21
**thought** 21:17
43:21 58:12
72:17 77:22
81:21 99:17
102:11 111:8
116:3 120:6
140:15 149:10
151:15 152:6
153:11 154:20
155:14
**thoughts**
120:10
**thousands**
127:4

**thread** 110:10
112:16,17
**threat** 87:18
**threatened**
87:15 93:25
**threatening**
89:22
**threats** 89:16
89:24 90:4,4
142:6
**three** 40:18
45:5 104:15
105:1 128:14
130:2,9 134:21
134:22 136:4
**tide** 76:18,19
**tighter** 22:14
**time** 15:18
19:6 21:19
30:8,8 42:2,4,8
43:21 44:12,25
45:1,6 65:13
65:14,19 68:21
74:22 75:3,8
75:16 78:11
90:11,15 97:21
99:13 105:17
110:4,23
112:18 114:7
114:11 122:7
122:17 127:7
128:25 131:17
133:15 143:4
143:15 145:9
145:23,24
146:13 147:19
147:20 148:17

149:14 150:11
152:4 156:2
158:1
**timeframe**
62:20,22,23
**times** 30:4
152:23
**timothy** 12:13
**title** 42:22,24
43:8,9 48:16
48:24 49:9,14
49:19
**tj** 57:9 99:9
**toby** 11:5
**today** 14:10
20:4 23:9,10
27:5 30:15
31:10,11,22
32:7,19,22,22
47:4 56:11
67:25 82:6
85:17 91:1
92:3 97:18,20
142:17 143:3
143:12,16
144:3,22,24
145:8,13 159:9
**today's** 53:8
**together** 131:2
**toggle** 105:12
135:15,24
**toggling**
135:12,25
**token** 28:11,15
28:23 44:6
52:11,13,18,20
52:22 57:12,20

58:3,7,23
60:10,16,20,25
62:1,4,13 63:1
63:19 64:24
67:7 68:22
69:5 71:5,21
72:4,6,6,13,15
72:15 73:14,16
74:19,25 75:17
77:2,22 82:18
82:23 83:22
84:9,14,20
85:16 86:7,11
86:24 88:17,19
89:5,6,16 92:3
92:5 93:23,25
96:6,17,18,20
138:24 139:6,8
139:9 140:12
141:7,14,24
143:24 144:1
144:17 150:3,8
150:19
**token's** 57:17
72:9
**tokens** 52:14
74:8,12 75:2
81:24 92:13,24
139:11 149:12
149:13
**told** 63:25 68:2
79:16 82:23
85:2 89:12
107:4,9,11
108:6,14
**tomas** 9:8

**tomorrow**
99:17 145:6
146:3,6,15
147:23 156:8
156:12,14,23
156:25 157:8
157:10 159:10
159:12,13,15
159:16
**tonight** 146:2
**took** 67:25,25
85:4 125:3,10
149:8 150:7
151:4
**top** 59:13
82:11 117:5
134:5
**torpedoed** 30:2
**torres** 29:16
**total** 124:16
125:4 126:21
128:13 129:11
130:5,11
**totaled** 78:25
**touch** 36:19
**toussi** 11:15
**towards** 88:19
89:16 149:6
150:22
**trade** 91:1
**traded** 92:3,5
107:18
**trading** 31:23
31:24 66:19
**train** 110:9
**trained** 58:15

**transaction**
135:9
**transcribed**
2:25
**transcript**
36:21 116:13
116:25 120:12
120:13 128:23
142:18 160:4
**transcripts**
156:21
**transfer** 42:22
43:8,8 48:16
48:24 49:9,19
**transferred**
49:14
**transmission**
55:1
**travel** 36:8
**travis** 9:2
137:21
**treatment**
28:15 46:22
47:1 49:4
**trial** 38:1
156:16
**tried** 21:22
**tries** 141:25
**tristan** 7:13
**trouble** 51:24
**true** 44:11,15
58:23 59:3
62:15 65:6
66:10 73:20,21
74:20,21 78:14
79:6,23,24
87:10 105:21

| | | | |
|---|---|---|---|
| 120:21 123:3 | tweeted 119:24 | ubierna 5:24 | underlying |
| 131:21 132:5 | 120:19,20 | 16:18,19 97:11 | 146:8 |
| 150:1 160:4 | 121:12,25 | 97:12,15,16,16 | understand |
| **truly** 113:10 | 122:4 | 97:22 | 21:4 22:1 |
| **truss** 138:9,9 | **tweets** 67:15 | **ucc** 52:12,12 | 23:12 29:14,23 |
| **trustee** 4:19 | **twice** 68:19 | 52:17,20 | 35:20 37:2 |
| 16:10,16 22:5 | 128:3 | 103:15,16 | 40:23 42:2,7 |
| 24:5,7,13 | **twitter** 66:2 | 104:11 108:18 | 45:9 46:9 |
| 25:20 94:17 | 70:13 89:8,8 | 111:24 112:12 | 47:10 49:24 |
| 95:4 104:16 | 94:10 113:3 | 114:13,24 | 50:9 81:2 |
| 140:3,20 | 119:21 134:2 | 116:23,25 | 95:12 113:10 |
| **truth** 56:24,24 | 136:23 146:9 | 117:3 118:4 | 116:3 123:20 |
| 63:25 68:2 | **two** 14:3 18:19 | 123:25 134:10 | 146:9,11 |
| 102:24,24,24 | 25:5 29:17,20 | 134:18 158:22 | 147:22 150:13 |
| **try** 28:25 41:20 | 35:2 36:17 | **uday** 12:9 | 151:12 153:5 |
| 49:9 95:10,14 | 42:10 49:6,13 | **uk** 49:12 | 158:5 |
| 113:13 152:4 | 50:16 61:7,10 | **ultimately** | **understanding** |
| **trying** 21:19 | 63:4 84:1 | 33:11 | 35:17 51:1 |
| 38:12 42:13 | 104:12 113:15 | **umber** 9:6 | 74:11,15 139:4 |
| 45:4 52:7 | 113:22 118:2 | **unable** 86:23 | 139:24 143:18 |
| 101:19 133:23 | 121:25 124:15 | 104:10 | 147:5 151:21 |
| 150:10 | 124:18 125:3 | **unambiguou...** | 154:4 |
| **tuganov** 15:5 | 131:6 132:1 | 42:21 48:23 | **understated** |
| **turetsky** 11:16 | 133:17 134:21 | **unconflicted** | 131:24,25 |
| **turn** 27:22 | 136:16 153:19 | 104:14 | 135:18 |
| 56:8,13 59:11 | 153:23 | **under** 25:2 | **understood** |
| 74:2 75:20 | **tyler** 9:15 | 26:1 44:1 | 22:23 36:6,10 |
| 101:25 102:9 | **type** 129:25 | 48:11 52:16,25 | 40:2 51:8 78:1 |
| 124:6 158:22 | **types** 130:9 | 55:15,18 72:24 | 87:2 89:18 |
| **turner** 11:17 | **u** | 97:3 98:8 | 157:7 |
| **turns** 44:10 | | 105:8 107:2 | **undisclosed** |
| **tweet** 82:10,20 | **u** 138:7,14 | 108:25 116:12 | 52:24 |
| 84:3,4 87:20 | **u.s.** 1:23 4:19 | 139:6 140:1 | **unfair** 44:5,23 |
| 88:4,6,20,22 | 5:2,10 22:5 | 141:25 144:15 | 47:7 48:4 |
| 119:19,21 | 24:5,13 26:16 | **undercut** | 151:15 152:6 |
| 120:10 121:1,4 | 26:20 95:3,4 | 136:5,19 137:9 | 153:22 154:12 |
| 121:6,14 | 104:16 140:8 | | 154:21 |

**unfortunate**
95:6
**unfortunately**
87:24 88:1
**unidentified**
147:12,25
**uniswap** 96:13
**united** 1:1,11
4:18 16:9,16
22:4 24:7
25:20 94:17
**unnecessary**
35:8
**unsecured** 4:2
4:10 16:3
51:22
**unspecified**
134:12
**unsworn** 64:3
**update** 142:15
153:13,17
157:8
**updated** 37:17
105:5
**ups** 111:1,4
**upset** 114:5
**upside** 134:14
**uptegrove** 5:16
18:2 26:20
**use** 15:7 16:13
16:25 18:7
19:12 39:4,9
39:11,13,15,16
41:18 44:9,16
44:18,25,25
45:1,25 46:23
47:3,10,15

49:22,25 61:5
61:15,16 62:8
62:8,10 63:2,3
72:10,18,20
78:22 79:18
81:14,19 86:17
86:23,24,25
87:3,7,12
93:19 96:21
107:4,9 133:12
141:2 153:9
**used** 47:8 72:6
96:6 103:9,16
105:23 125:25
130:16 133:22
134:18
**useful** 76:23
77:4,15,18
78:3 79:1
81:14
**users** 73:19,23
**using** 39:10
61:6,11 98:22
140:7
**usually** 28:25
130:8,16
133:11
**utilities** 72:12
76:15,23,24,25
77:1,5,15,18
77:20 78:3,7
78:10,13,14,15
78:16,18 81:23
82:1,3 86:17
87:4,12
**utility** 72:3,6,9
72:15,18 75:17

77:3 78:6,22
79:2 81:14
86:25 143:24
143:24 144:2
**uzzi** 104:21

**v**

**v** 10:23
**vacate** 104:19
**vague** 142:10
**vaguely** 108:6
108:14
**valid** 39:17
**valuation** 44:5
44:7,24 46:17
58:3,6,15,18
58:24 62:25
66:3,9,14,16
66:19,23 69:22
104:5 105:4,6
105:13,18
123:1,2,8
124:12,15,25
125:4 126:15
128:7 130:1
135:8 137:13
139:11 142:24
142:25 144:16
149:24
**valuations**
60:25 104:25
**value** 44:22
45:4 47:3
50:22 57:12,17
58:1,22 59:2,4
60:7,9,16,20
60:22 61:25
62:4,13 63:8

63:11,19 64:24
67:7 68:22
69:21 70:7
71:4,21,22
72:9 86:22
89:21 93:5
105:10 120:1,7
120:21 128:20
128:24 129:18
131:23 135:1,8
135:15,16,17
135:17,23,23
136:5 139:1,2
140:7,9,18,21
140:23,23,25
141:4,6,13,15
141:15,18,20
141:25 142:9
150:10,15
151:9,10
**valued** 46:24
139:9 143:21
**values** 141:3
144:17
**valuing** 44:17
150:6
**variety** 143:22
**vejseli** 11:18
**venable** 15:5
132:12
**verbalizing**
145:15
**veritext** 160:20
**version** 39:16
46:1,2 48:3,5,9
48:12,13,14,16

versus 105:5
veton 11:18
victor 5:24
    16:17,19 97:16
video 19:1
view 49:6
    57:16,16 72:15
    72:20 74:22
    76:22 82:6
    86:13 94:24
    131:10,15
    132:3
views 29:16
    30:20
vincent 9:21
violated
    158:13
violates 141:11
violation 19:2
vocal 142:5
voice 148:13
voiced 76:15
volatility
    105:21
vote 150:4
    154:1,2,7
voted 119:1
    127:10,20
    133:2,5 139:13
    149:22 150:1
voting 119:6
    126:12,19
    154:1,8
voyager 29:25
    30:11
vtor 7:9

**w**

w 11:9
wafford
    114:18
wait 87:25
    88:11 127:15
    146:15
waiting 18:18
    19:8 134:10
    149:17
waive 29:23
walk 28:4
    37:13
wallet 92:12,14
walsh 11:19
want 17:3
    23:16,24 25:11
    26:5 33:14
    36:25 37:4,22
    42:11 44:4
    47:12 48:8
    56:12 62:12
    64:13 66:12
    71:18 74:3
    76:10 77:17
    83:1 89:18
    95:14,17
    100:14 101:15
    101:24 102:3,6
    102:8,12 126:1
    128:22 133:13
    139:12 141:2
    142:4 143:17
    148:16 149:1,4
    149:4 151:23
    152:3 153:19
    154:15,16,21

wanted 22:21
    25:20 27:16
    33:24 36:22
    47:15,17,19
    73:22 77:11
    78:17 81:8
    103:2,4 133:20
    149:25 150:2
    154:20 157:12
    158:19
wants 54:12
    71:21
war 136:23
warren 11:20
washington
    3:13 5:5 25:17
wasn't 123:2
    135:18 136:1
    136:12 142:11
    148:12
watch 101:1
water 88:17
way 22:24 25:4
    45:2 75:1
    122:3 129:23
    135:24 136:12
    150:2 153:2
we've 24:19,23
    33:19 52:2,6
    100:22
weaker 25:17
wednesday
    110:13 142:20
    157:5
wee 21:8
weedman 4:16
    13:11 16:4

100:4,15,19,24
101:2,7,14
106:2,3,7,9
108:17,24
109:2,8,15,21
110:7,20,21
111:16,23,25
112:12,23
114:12 115:15
115:19,22,25
116:1,22
117:11,12
118:10 133:21
136:9
week 20:2 35:2
    52:3,8 65:7
    74:8
weekly 74:12
    74:14,14,15
weeks 20:1
    35:2 136:16
weight 97:2
    100:11 101:22
weighted
    135:10,20
weinberg
    100:20 117:24
weinberg's
    117:20
welcome 97:10
    118:21
went 25:4
    92:13
weren't 122:24
we'll 144:4
    156:13 157:7,9
    159:15

we're 122:12
145:20 146:1,3
147:14,25
149:18 150:5,5
154:3,16,17
we've 149:16
156:5
whale 73:23,25
74:23 75:3,5,7
whales 74:25
75:1,2,6
whatsapp
70:15
whatsoever
76:16
what's 148:23
white 4:1,9
16:2 18:21
51:21 56:18,19
88:25 89:1,1
89:24 90:5,6
103:20 106:3
109:17 110:23
112:6 113:7
117:19,24
wholesale
100:8
wick 11:21
wildes 11:22
william 5:16
18:1 26:19
williams 6:13
willing 135:9
winddown
105:4,7,11,12
134:24

windham
137:23 138:3
winner 119:25
wish 26:13
30:22 90:17
93:18,19 94:5
133:8 144:21
148:24
wished 54:3
wishes 25:7
53:23 95:22
141:6
withdraw
77:24
withdrawal
77:24 139:17
withdrawn
78:20 79:21
139:16
withhold 52:3
witness 34:10
34:20 58:19
67:7 70:19,25
84:7,11,16
85:24 89:15
90:13 91:5,9
91:21 92:20
93:2,8,17
95:23 104:14
108:19,23
109:6,24
110:15 111:10
111:14 112:15
112:19 114:9
116:24 117:4,7
121:4,13,17,20
122:9,11

123:17,19,20
123:22 125:19
125:22 127:24
128:2 129:22
130:15 132:9
133:10 143:20
144:12,20
145:19 146:2
146:23
witnesses 13:3
44:7 54:20
55:2 102:19
147:2,17
wofford 4:15
16:4
woman 14:25
16:1 17:19,23
50:16,19,22,25
51:4,6,8,15
wondering
50:20 71:16
word 79:18
wording 48:5
words 134:14
143:8
work 25:6 26:2
26:4 36:14
105:13 113:8
113:11,12,20
119:25 120:7
120:20 121:25
152:1,5,8
working 52:2
145:7
works 148:10
world 139:25

worried 115:6
worry 151:2
worth 142:22
worthless 82:7
82:17,23 83:22
84:10,12,15,20
84:23 85:1,4
85:16 86:7,11
86:14 87:4
91:3 143:23
write 64:23
65:12 76:15,18
80:19
writing 65:25
70:10
written 48:23
49:8 53:10
55:7 147:7
148:16,22
149:3
wrong 21:20
115:23 153:14
wrote 62:16
74:6,24,25
77:6,15 78:19
78:21,23 82:16
84:18,23 88:6
116:4 148:14
152:20

| x |
| --- |
| x 1:4,10 13:1 |

| y |
| --- |
| yara 8:25 |

yeah 15:3
17:23 18:14
36:15 37:24

39:1,13 40:9
46:18 48:1
50:10 54:16
56:8 58:9
85:22 94:19
97:14 100:23
134:4 145:5
147:14
**year** 106:16,23
113:13 155:6
**years** 48:4
**yep** 17:21
**yesterday**
99:21 115:14
116:12
**yolo** 113:14
**yoon** 11:23
**york** 1:2,13
4:13,22 34:5
36:8
**young** 11:24
**you'd** 146:2
**you'll** 143:14
**you're** 123:5
123:11,18,21
124:20 126:6
128:19,24
129:17,19
131:19 132:3
133:23 145:10
146:13 147:20
**you've** 122:7
153:17

**z**

**z** 138:7
**zabib** 12:16

**zachary** 11:22
12:16
**zaharis** 11:25
**zero** 89:9,21
144:2
**zoom** 14:13,18
15:6 16:12,21
16:25 18:1,5,8
21:21 22:8
26:14 51:18
53:16 54:22
98:17 110:24
111:5 119:19
137:17,22,25
138:3,5,7,10