Daniel A. Frishberg

*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,* | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# DANIEL A. FRISHBERGS' CLOSING BRIEF/JOINDER IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN

Daniel A. Frishberg ("Mr. Frishberg") hereby respectfully submits this closing brief (the "Brief") in support of the confirmation (the "Confirmation") of the chapter 11 plan (the "Plan"). Mr. Frishberg repeats, realleges and joins in all relevant parts with all briefs supporting the plan. In support, Mr. Frishberg respectfully states as follows:

# TABLE OF CONTENTS

I.    **Table Of Contents**

II.   **Preliminary Statement**

III.  **Argument**

      1.  The Plan Should Be Approved

      2.  Professionals Should Not Get Releases For Malpractice (And The Like)

      3.  Finalizing The Earn Order

      4.  CEL Valuation

IV.    **Conclusion**

**Preliminary Statement**

This has been a long, complex and extremely difficult process to navigate for all Celsius creditors, Mr. Frishberg included. The US Bankruptcy Code, and Bankruptcy process as a whole are not currently designed to be compatible with cryptocurrency, and especially are not compatible with the decentralized way of cryptocurrency. Customers need protection to ensure that no one else is thrust into the same situation that Celsius, Voyager, BlockFi (and other) creditors found themselves in. This cannot be adequately achieved through the courts, it is a job for Congress. Mr. Frishberg believes that it would be a grave injustice to set a precedent that allows companies (such as a crypto exchange) to take ownership of coins deposited by customers. This Court, if it feels inclined, should specifically state in the Final Order which turns the Earn Order into a Final Order that it is solely with the limited information before the court, and the circumstances (need for liquidity, lack of regulations about cryptocurrency, etc) in this case. The Plan is far from perfect, but it is the only option we have that does not involve massive value destruction. There are improvements that can be made, such as cutting or eliminating the EIP bonuses, and bifurcating the overly broad releases for professionals and employees until after the Supreme Court issues its ruling in *Purdue*, which SCOTUS is expected to review in December of 2023.

**Argument**

1. **The Plan Should Be Approved**

The best path forward for customers is to approve the Plan. The Plan is *far* from perfect, but by not confirming the Plan, a <u>massive</u> amount of harm would befall creditors. The Debtors and the UCC have, and will make further arguments (which are far better written, and supported

by mountains of precedent), so I will let them carry the torch (so to speak) on that part of it.

What I will say is that this plan should be slightly modified to only grant limited releases now

(and not grant any releases for any form of malpractice, damage, or harm done to the estate), and

bifurcate further releases until the Supreme Court issues its ruling in *Purdue*. There is no rush to

grant these releases at this time. The professionals are being extremely well compensated for

their work, and there is no risk that any of them would withdraw from the case at this point

(since it would be fatal to their professional reputations).

The EIP's are overly generous, and set the targets extremely low. The targeted thresholds

are something that is already a part of their job. Giving them bonuses for maintaining the

app/processing withdrawals is unnecessary since the KERP bonuses already paid them for that

(as well as it being a basic part of their job description).

Regardless of what Your Honor chooses to include, or exclude from the plan (such as

valuing CEL at 0, which is what the expert testimony said it is worth), Your Honor should

approve this plan as soon as possible, and allow us to exit Chapter 11.

## 2. Professionals Should Not Get Releases For Malpractice (And The Like)

While the *Voyager* matter has a specific carve out in the plan, any malpractice claims

should be carved out, for professionals and Celsius employees alike. The various

professionals/employees are being handsomely compensated for performing their jobs. If they

harm the estate (intentionally, or unintentionally), they should compensate the estate for the harm

caused.

If the allegations made against White & Case and Perella Weinberg Partners ("Perella") by Mr. Phillips are true, then significant changes (to the composition of the NewCo board, and Litigation Trust) need to be made. The parties who harmed the estate should be sued, and for that to be possible, they should not be released.

### 3. Finalizing The Earn Order

It is no secret that I (and *many* creditors) strongly disagree with the Earn Order. While I do believe that I could win on appeal due to the fatal defects in the ruling (bypassing Rule 7001, etc), doing so likely will harm customers more than it will help them. When the Earn Order is converted from an Interlocutory Order to a Final Order, Your Honor should do it in a way that will not set a precedent which will allow what effectively is a way to bypass Rule 7001. What occurred with the Earn Order was that customers effectively lost control of their property (and ownership) in an interlocutory order, but it carried the weight, and was treated by the Debtors as a Final Order.

Allowing the Earn Order to be used as a precedent and a way to bypass Rule 7001 will further decay the rights of creditors in bankruptcy cases. Your Honor noted that Bankruptcy "has a way of doing that" when a creditor said that their crypto was taken from them. Rule 7001 exists for a reason. Adversary Proceedings have protections in place for a reason. Allowing the (frankly brilliant) way of bypassing these protections that was used in this Bankruptcy to occur again would have a significant negative effect on creditors' rights, and send shockwaves throughout the whole bankruptcy system as a whole. While Your Honor does not have the power (it is

Congress's job) to ensure that all customers own their crypto which they deposit to crypto exchanges (and similar platforms), taking this step would be a significant step in the right direction.

### 4. CEL Valuation

It has become abundantly clear throughout the process of valuing CEL tokens that the CEL token is worthless, and was worthless on the petition date. The CEL token also is of no use to the estate, since they are unable to sell it (partially due to regulatory reasons, and partially because no one[1] wants to buy it). I do not believe that it would be fair to give the *genuine* victims who purchased CEL tokens nothing for them, but I do believe that it is fair to give nothing to anyone who obtained them for free (employees, etc), and anyone who participated (and specifically led) the CEL Short Squeeze (which was an organized effort to increase the price of the CEL token pre-petition artificially).

## **CONCLUSION**

For the aforementioned reasons, this Court should **APPROVE** the Chapter 11 Plan, with (ideally) or without the suggested changes. This Court should also **APPROVE** the Plan as soon as possible, and as the Debtors requested, waive the 14 day stay, with the exception of a partial stay for regulators/the US Trustee *if* they choose to appeal releases, and other issues that they filed specific reservation of rights/objections to. The Plan as a whole should not be delayed. We must exit Bankruptcy as soon as possible. Every single week costs creditors millions of dollars.

---

[1] I have in the past (jokingly) offered to purchase all of Celsius's CEL token holdings for $100 (in total), in the unlikely event that the Debtors do want to sell it to me, the offer still stands.

Respectfully submitted,


*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
October 20, 2023
Hillsborough County, Florida