Case number: 22-10964 (MG)

Re. Request to have my demonstratives that were submitted incorrectly (plus an additional demonstrative) permitted for use in my Closing Statement

Dear Chief Judge Glenn,

I filed my submission for demonstratives incorrectly by failing to include vital information that I wasn't aware I needed to include for my submission to count. Normally, I just copy what those before me have done, but in this case, I was in a rush and failed to include anything other than a title and what I hoped to use as demonstratives to accompany my Closing Statement. I submitted my file at 8:58am Pacific Time (11:58am New York time), and hope that you will permit me to count this new submission with the necessary information as filed by the deadline of 12pm, despite me needing to resubmit it with the additions I failed to include in my first submission.

I also had a demonstrative that I forgot to include that I didn't remember I had until a few minutes past the deadline, so, rather than trying to submit it in the same manner, I wrote an accompanying letter asking if it could be permitted to be included with my other demonstratives. I also asked if I could please have a confirmation of what a demonstrative is, as I was and still am unclear on this, as I don't understand a lot of legal matters, as I lack any legal training whatsoever.

I have attached the email I received from the US Courts informing me of my incorrectly filed submission. Unfortunately, I did not record the Reference number, so I don't have one to provide for either of my submissions. I have always recorded them before, but failed to do so this time, and I hope that there is still some record of my initial submission and submission times.

I have attached my first batch of demonstratives I submitted as Exhibit B, and the second demonstrative that I hoped you would permit me to include, along with the accompanying letter I wrote, as Exhibit C.

I greatly apologize for my cluelessness in law and legal proceedings that have led me to make the many mistakes I have made in trying to file my submissions.

Thank you for your time, patience, and consideration.

Sincerely,

Cathy Lau, Pro Se

October 26, 2023

**Exhibit A**



**Exhibit B**

Demonstratives for Closing Arguments Hearing



https://www.reddit.com/r/CelsiusNetwork/comments/16p2zc6/let_me_get_this_straight_thirdparty_release/



https://www.reddit.com/r/CelsiusNetwork/comments/15vyrkt/aaron_bennett_covers_the_latest_disclosure/



https://www.reddit.com/r/CelsiusNetwork/comments/16ma51f/vote_to_reject_the_plan/



https://www.reddit.com/r/CelsiusNetwork/comments/16ma51f/vote_to_reject_the_plan/





https://www.reddit.com/r/CelsiusNetwork/comments/15zadew/vote_for_or_against_plan/

**Exhibit C**

Request to include additional forgotten demonstrative to demonstratives already filed, and request for clarification as to what constitutes a demonstrative, and, if needed, request to amend my submitted demonstrative to meet any requirements by the court for my submissions to qualify as demonstratives

Dear Chief Judge Glenn,

I am very sorry, as I forgot to include the article I have included below in my submission of demonstratives, and was not able to put it together in time to meet the deadline for demonstrative submissions. I actually don't quite understand what a demonstrative is or what is allowed to be included in a closing argument, and had to spend time researching them before determining what I would submit, as I had many other things I wanted to submit but wasn't sure if they constituted me introducing a new argument that would not be permitted in court, so I ended up being rushed when it came time to finally decide what to submit, subsequently leading me to try to squeeze in what I hoped would be allowed just before the deadline to submit demonstratives.

I don't know if what I have included in what I have already uploaded constitute demonstratives, or if the document I have amended and copied and pasted below does, but I think they serve to illustrate arguments I have already introduced in my objection, rather than add new arguments. I request if possible to be allowed to please include this additional item in my demonstratives, and thank you for the patience and leniency you have thus far shown in my lack of knowledge as to how to present things in court.

**Upon looking at the Court Dockets, I can see that what has been uploaded by others as Demonstratives are PowerPoint slides that describe what is being uploaded in an organized manner, and present summaries of arguments. I do not know if it is required to already have the demonstratives one is planning to use already organized and explained in such a manner. If so, I request that I be allowed to submit a revised demonstrative that explains how such documents will be used in    my objection, as I have not yet prepared something like that, as I had no guidance as to what demonstratives entailed until being able to see what had been submitted by professionals experienced in such matters.

Again, I apologize for my inexperience and lack of knowledge in legal proceedings, and would appreciate receiving something informing me of whether anything I have submitted counts as demonstratives that are permitted in court, and the opportunity to amend what I have submitted if they do not.

Sincerely,

Cathy Lau
Pro Se Creditor
Oct. 26, 2023

**Additional Demonstrative**

https://www.bradley.com/insights/publications/2022/03/nonconsensual-third-party-releases-what-they-are-and-why-you-should-care



# Nonconsensual Third-Party Releases: What They Are and Why You Should Care

Authored Article
Published Date - 3/14/2022
AUTHOR(S):

Although bankruptcy filings have been scarce in the couple years since COVID-19 emerged,[1] filings are expected to start ticking upward again as governmental pandemic assistance and financial leeway, such as forbearance agreements, are lifted. Despite the current lull in bankruptcy filings, bankruptcy law has continued to evolve over the past few years with the passage of the Small Business Reorganization Act of 2019, which created Subchapter V for small business restructurings, along with temporary changes to the Bankruptcy Code included in the CARES Act and the Consolidated Appropriations Act, 2021. Current bankruptcy buzz involves the potential for new common law rulings pertaining to nonconsensual third-party releases.

To fully understand the landscape of these releases, we'll first review the Chapter 11 plan process. Most businesses choose to file for bankruptcy relief under Chapter 11. In this chapter, a debtor will propose a "plan" that deals with its debt through a restructuring and reorganization, a liquidation, a sale, or a combination of those three. Whereas Chapter 12 and 13 plans are typically court-approved form plans that include minimal variations from case to case, Chapter 11 plans are uniquely tailored to the debtor's particular needs so that the debtor can successfully emerge from bankruptcy and continue operating on a going forward basis. Accordingly, debtors and creditors in Chapter 11 cases enjoy a great deal of creativity to negotiate Chapter 11 plans.

Essentially, Chapter 11 plans are comprehensive changes in terms agreements or loan modifications among the debtor and all of its creditors. As with typical change in terms agreements and loan modifications, release provisions are often included in Chapter 11 plans. The most common types of releases included in these plans are indemnification and exculpation clauses, which provide releases for the debtor's officers, employees, and agents for conduct related to the bankruptcy case.[2] Bankruptcy courts generally require these provisions to be narrowly tailored, but they are commonly allowed.

However, another type of release is frequently found in mega-bankruptcy case Chapter 11 plans: nonconsensual third-party releases.[3] These releases provide protection for non-debtor third parties for conduct that is generally not related to the bankruptcy case. For example, in *In re Drexel Burnham Lambert Group, Inc.*, the debtors' directors and officers, who did not file for bankruptcy relief themselves, received a release in the confirmed Chapter 11 plan from liability for certain securities actions.[4] In *In re Millennium Lab Holdings II, LLC*, after the debtor paid a pre-bankruptcy special dividend to its shareholders using proceeds from a large credit agreement with lenders, the bankruptcy court confirmed the Chapter 11 plan, which released shareholders from claims asserted by Millennium's lenders. [5] Significantly, although some of Millennium's lenders opposed confirmation, their claims against the non-debtor shareholders were nonetheless released

Bradley Arant Boult Cummings LLP | bradley.com                                                                 1 of 3

when the plan was confirmed.[6] Oftentimes in confirmed plans with nonconsensual third-party releases, the non-debtor releasees contribute capital toward the plan or agree to some legal detriment in return for the release, and the plan would not be feasible or otherwise work without such contributions.

The controversy surrounding third-party releases stems from the question of whether a bankruptcy court has authority to confirm a plan that includes a non-debtor release. Generally speaking (and according to the express language of the Bankruptcy Code), only a debtor is entitled to a bankruptcy discharge.[7] However, bankruptcy courts have found authority under other sections of the code, combined with the code's silence as to whether a non-debtor may receive a release, to provide authority for nonconsensual third-party releases.[8]

The issue of a bankruptcy court's authority to confirm a plan with nonconsensual third-party releases has recently come to the forefront with the Southern District of New York's Judge McMahon's 142-page opinion overruling the bankruptcy court's confirmation order in *In re Purdue Pharma LP*.[9] In Purdue Pharma, the debtor filed for bankruptcy relief in response to litigation regarding its product, OxyContin. Purdue Pharma's proposed plan included a release from liability related to existing and future opioid lawsuits for individuals who founded and managed Purdue Pharma, namely members of the Sackler family. Such release would have been binding against not only current plaintiffs of opioid suits but also future plaintiffs who may not have voted on the plan, as well as state attorneys general who actively opposed confirmation. The Second Circuit has agreed to fast track an appeal of Judge McMahon's ruling with oral arguments set for hearing on April 25, 2022.

In her thorough opinion, Judge McMahon held that the Bankruptcy Code provides express authority under Section 524(g) for bankruptcy courts to confirm plans with nonconsensual third-party releases only in asbestos cases. The fact that Congress added this particular provision to Section 524 indicated Congress's intent that the allowance of nonconsensual third-party releases in this context was an exception, not the norm allowed under the code.[10]

Judge McMahon went on to identify the current circuit split on the issue. Plans with nonconsensual third-party releases are confirmed in the Second Circuit, but it is unclear from where bankruptcy courts obtain their authority to confirm such plans.[11] The Fourth and Eleventh circuits find authority under Section 105(a) alone,[12] and the Sixth and Seventh circuits find authority under Section 105(a) in conjunction with Section 1123(b)(6).[13] Conversely, the Fifth, Ninth, and Tenth circuits do not allow for nonconsensual third-party releases other than in asbestos cases.[14] In light of Judge McMahon's opinion, the forthcoming Second Circuit decision in the appeal of her opinion, and the ongoing circuit split, this issue may finally find its way to the Supreme Court in the near future.[15]

In the meantime, clients will benefit from keeping an eye on mega-bankruptcy case filings and their proposed plans. It is possible that clients' legal rights could be impacted as a result of a confirmed Chapter 11 plan. For instance, if a debtor files for bankruptcy relief to deal with widespread litigation of which the client may be a codefendant, the client may find itself on the hook for more liability if the debtor, its affiliates, insurance companies, or possible other codefendants have received releases. In the same vein, if the client is engaged in litigation against an entity and an affiliate of the entity files for bankruptcy, the entity may also receive a release, ending the client's litigation or decreasing the number of defendants from which the client could recover. On the flip side, clients may benefit from actively participating in Chapter 11 plans where the client can negotiate its own release despite the client not having filed for bankruptcy itself.

[1] See *Corporate Bankruptcy Wave Turns to Dust, Defying Expectations*, Bloomberg Law (Jan. 5, 2022), available at https://news.bloomberglaw.com/bankruptcy-law/corporate-bankruptcy-wave-turns-to-dust-defying-expectations.

[2] Chapter 11 plans are "confirmed" upon the plan proponent's satisfaction of the requirements under section 1129 of the Bankruptcy Code and the bankruptcy court's approval. Once a plan is confirmed and a corresponding confirmation order is entered, the plan becomes the operational agreement between the debtor and its creditors.

[3] See *In re Purdue Pharma LP*, 635 B.R. 26, 37 (S.D.N.Y. 2021) ("Almost every proposed Chapter 11 Plan that I receive includes proposed releases." (emphasis omitted) (quoting *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 726 (S.D.N.Y. 2019))).

[4] See *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 914 (S.D.N.Y. 1991).

[5] See *In re Millennium Lab Holdings II, LLC, et al.*, 575 B.R. 252 (Bankr. D. Del. 2017).

[6] This is an example of a *nonconsensual* third-party release.

[7] See 11 U.S.C. §§ 524 and 1141. *But see* 11 U.S.C. § 524(g) providing for non-debtor releases in asbestos cases.

[8] See 11. U.S.C. §§ 105(a), 1123(a)(5), 1123(b)(6), and 1129(a)(1).

[9] *In re Purdue Pharma LP*, 635 B.R. 26 (S.D.N.Y 2021).

[10] See *id*. at 54.

[11] See *id*. at 104.

[12] See *id*. at 105.

[13] See *id*.

[14] See *id*. at 104. These circuits have held that, pursuant to Section 524(e) of the Bankruptcy Code, a discharge in bankruptcy applies only to the debtor and "does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

[15] *See also Patterson v. Mahwah Bergen Retail Group, Inc.*, 2021 WL 2653732 (E.D. Va. Jun. 28, 2021).

No representation is made that the quality of the legal services to be performed is greater than the quality of legal services performed by other lawyers. ATTORNEY ADVERTISING. Contact: John D. Watson, Esq., 205.521.8436, jwatson@bradley.com, Bradley Arant Boult Cummings LLP, 1819 Fifth Avenue North, Birmingham, AL 35203.