David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for the Retail Borrower Ad Hoc Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**RESPONSE OF THE RETAIL BORROWER AD HOC GROUP
TO THE DEBTORS' PROPOSED FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER CONFIRMING
THE MODIFIED JOINT CHAPTER 11 PLAN OF CELSIUS
NETWORK LLC AND ITS DEBTOR AFFILIATES (ECF DOC. # 3867)**

The Ad Hoc Group of Retail Borrowers (the "**Retail Borrower Ad Hoc Group**"), by and through its counsel, McCarter & English, LLP submits this response to the Debtors' Proposed Findings Of Fact, Conclusions Of Law, And Order Confirming The Modified Joint Chapter 11 Plan Of Celsius Network LLC And Its Debtor Affiliates (ECF Doc. # 3867; the "**Proposed Confirmation Order**") and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1. **Reservation of Rights Regarding the Retail Advance Obligation Repayment**

As noted at the confirmation hearing, the Class 2 Ballot[2] did not contain the Retail Advance Obligation Repayment Election.  The Debtor addressed this issue by modifying the Plan and redefining the Retail Advance Obligation Election as "election of a Retail Borrower to repay its Retail Advance Obligations, *which will be in the Retail Advance Obligations Repayment Instructions*." Plan, Art I.A.211.  The "Retail Advance Obligation Repayment Instructions", in turn, is defined as "the instructions regarding repayment of Retail Advance Obligations, which instructions the Debtors shall e-mail to all Retail Borrowers at least thirty (30) calendar days prior to the anticipated Effective Date and which instructions shall specify the Retail Advance Obligation Repayment Deadline."  Plan, Art I.A.212. Finally, the "Retail Advance Obligation Repayment Deadline" is defined as five (5) calendar days prior to the Effective Date. Plan, Art I.A.210.

To date, the Retail Advance Obligation Repayment Instructions has not been circulated to Borrowers.  The Retail Borrower Ad Hoc Group has identified and has been in discussion with three potential sources of third-party financing (Figure, LEDN and SALT).  One issue that all three sources have pointed to is the timing issue between the Repayment Deadline (5 calendar days prior to the Effective Date) and the Effective Date.[3]  No third-party lender is willing to repay a loan and then wait five days to receive the collateral.

The Retail Borrower Ad Hoc Group believes this issue can be easily resolved with the Debtors but raises this issue now in an abundance of caution. The Retail Borrowers' Settlement

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan.
[3] Figure has advised counsel to the Retail Borrower Ad Hoc Group that it has previously raised this issue with the Debtors.

(contained in Article IV.B.7 of the Plan) contains a "cooperation clause" in connection with the repayment process that provides:

> To the extent the Retail Borrower Ad Hoc Group, the Debtors, or the Committee identify a source of third-party financing reasonably acceptable to the Debtors, the Debtors shall take commercially reasonable efforts to facilitate such party in refinancing applicable Retail Advance Obligations with the consideration provided to Retail Borrowers under the Plan.

The Retail Borrower Ad Hoc Group respectfully requests that the Confirmation Order include a reservation of rights to address issues that may arise after the Retail Advance Obligation Repayment Instructions has been provided and third party lenders prepare to repay the Advance Repayment Obligations. The Retail Borrower Group would request the following reservation:

> The Debtors acknowledge that the Retail Advance Obligation Repayment Election has not been circulated to date. The Debtors shall cooperate and take commercially reasonable efforts to facilitate such third-party financing with respect to the repayment of the Retail Advance Obligations, including any issues related to the timing of the Retail Advance Obligations Repayment Deadline and the distributions to be made on the Effective Date.

**2. The Litigation Administrator Agreement**

The Seventh Plan Supplement Agreement was filed on October 20, 2023-after the close of the evidentiary portion of the confirmation hearing. *See* ECF Doc. # 3869. That Plan Supplement contained a redlined version of the Litigation Administrator Agreement which reflected significant modifications to the duties and oversight of the Litigation Oversight Committee (the "**LOC**"). Specifically, Section 2.5 of the Litigation Administrator Agreement was modified as follows:

> 2.5  Payment of Fees and Expenses. The Litigation Administrator may incur any reasonable and necessary expenses in connection with the performance of its obligations under the Plan, the Confirmation Order and this Agreement, including fees and expenses incurred to monetize the Post-Emergence Claims and pursue the Post-Emergence Claims and in connection with retaining professionals, consultants and advisors as the Litigation Administrator deems necessary to aid it in fulfilling its obligations under this Agreement

3

and the Plan ("Litigation Administrator Professionals"), and on whatever reasonable and/or customary fee arrangements the Litigation Administrator deems appropriate, ~~including contingency fee arrangements, with~~ such retention and compensation being subject to the approval of the Litigation Oversight Committee ~~(if appointed)~~. The Litigation Administrator has the right and authority, without further approval from the Bankruptcy Court or any other party, to engage Litigation Administrator Professionals, including without limitation one or more attorneys, to handle specific litigations or to represent the Litigation Administrator in a general capacity, in furtherance of the Litigation Administrator's duties. The Litigation Oversight Committee shall exercise oversight and may give direction with respect to the initiation or settlement of litigation to the extent specifically provided in the Plan, but shall not control the selection, compensation or supervision of counsel, which shall be reserved to the Litigation Administrator.

Of particular concern is that the modification to the Litigation Administrator Agreement now provides the LOC "shall not control the selection, compensation or supervision of counsel, which shall be reserved to the Litigation Administrator" whereas the earlier version made the retention and compensation of all Litigation Administrator Professionals subject to the approval of the LOC.

Notably, the Plan imposes a fiduciary duty on the members of the LOC. Plan, Art. I.A.152 ( "Litigation Oversight Committee" means the seven (7) member committee that will oversee (in a fiduciary capacity) the Litigation Administrator's prosecution of the Recovery Causes of Action in accordance with the Plan ….") As such, it is inconsistent with the discharge of the LOC's fiduciary duty to have no control over the selection, compensation or supervision of Litigation Administrator Professionals. Moreover, this modification conflicts with the Plan which provides:

> The Litigation Oversight Committee, in consultation with the Litigation Administrator(s), shall be entitled to *control the financing of any litigation*, with the right to cause the Litigation Administrator(s) to pledge or transfer a portion of the Recovery Causes of Action, the Litigation Recovery Account, or any proceeds of the foregoing to facilitate such financing, and may obtain such financing from NewCo or third-party sources, in their respective business judgment."

Plan, Art. IV.G.5 (emphasis supplied). The modification to Section 2.5 makes no sense in light of the Plan.

In addition, oversight committees *always* consult with plan/litigation administrators concerning the selection of professionals and approval of their compensation if for no other reasons that the business judgment rule will apply to actions taken by the Litigation Administrator.

In short, this modification is inconsistent with the provisions of the Plan and basic rules of governance for post-confirmation vehicles. The original language in Section 2.5 of the Litigation Administrator Agreement should stay in place and the Court should determine that the proposed modification is inconsistent with the Plan.

### 3. Ownership of the Collateral

It is respectfully requested that the Court limit any findings concerning the ownership of the collateral to those Borrowers who have objected to confirmation. In connection with the Retail Borrower Settlement, the Retail Borrower Ad Hoc Group has agreed to dismiss its adversary proceeding (Adv. No. 23-01007 (MG)) with prejudice pursuant to the Confirmation Order upon the Effective Date. Plan, Art. IV.B.7. That complaint sought, among other things, a declaration that the Borrowers owned the collateral.

As a settling party, the Retail Borrower Ad Hoc Group is not pursuing the ownership of the collateral issue and will not be entering into the fray.[4] Nonetheless, the ruling sought by the Debtors could have potential implications to settling Borrowers, including potential tax issues. To preserve their rights, the settling Borrowers would respectfully request that they be excluded from any legal conclusion reached by the Court on the ownership issue and would propose the

---

[4] For the record, the Retail Borrower Ad Hoc Group disagrees with the Debtors' factual and legal analysis concerning the ownership of the collateral.

5

following change with respect to Paragraph 266 of the Proposed Confirmation Order (and any other paragraph where similar legal conclusions are made).

> 266. **Loan Collateral**. Pursuant to the applicable Loan T&Cs, including versions 7, 8, and 9 of the Loan T&Cs and version 1 of the SAR T&C, which explicitly incorporated the General Terms of Use by reference, ~~Account Holders~~ the Objecting Borrowers transferred ownership and control of their Cryptocurrency used to secure loans in the Debtors' Borrow Program to the Debtors. Accordingly, such collateral constitutes property of the Debtors' estates.

## CONCLUSION

WHEREFORE, the Retail Borrower Ad Hoc Group respectfully requests that the Court approve the Proposed Confirmation Order subject to the proposed changes addressed herein and grant such other relief as is just and proper.

Dated: New York, New York
October 27, 2023

           **McCARTER & ENGLISH, LLP**

By:   */s/ David J. Adler*
      David J. Adler
      (A member of the Firm)
      Email: dadler@mccarter.com
      825 8th Avenue
      Worldwide Plaza
      New York, New York 10019
      Telephone: (212) 609-6847
      Facsimile: (212) 609-6921
      *Attorneys for Retail Borrower Ad Hoc Group*