David Schneider
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] ) | Case No. 22-10964 (MG) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

## PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ADDITIONAL BRIEFING FOR SCHNEIDER'S OBJECTION TO PLAN

Comes David Schneider, a creditor in the above styled bankruptcy case, *Pro Se*, to submit his *Proposed Findings of Fact, Conclusions of Law, And Additional Briefing for Schneider's Objection to Plan*.

*[Rest of page intentionally left blank]*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................................3

I.     DEBTOR IS LEGALLY OBLIGATED TO REPAY CREDITORS RECOVERY IN DIGITAL ASSETS ...............4

II.    DEBTOR'S "DEBT FOR EQUITY" SCHEME CONVERTS A PORTION OF CREDITORS CRYPTO RECOVERY INTO NEWCO EQUITY ..................................................................................................5

III.   DEBTOR IS PROHIBITED FROM REPAYING DEBT WITH NEWCO COMMON STOCK WITHOUT CREDITORS' PROPER CONSENT .....................................................................................................6

IV.    IT'S IMPROPER FOR DEBTOR TO OFFER THEIR "DEBT FOR EQUITY" SCHEME TO CREDITORS WITHOUT AN OPTION TO REJECT ..................................................................................................6

V.     DEBTOR'S "DEBT FOR EQUITY" SCHEME REQUIRES AN AGREEMENT WITH OPTION TO REJECT IT ..7

VI.    AN OPTION TO REJECT DEBTOR'S "DEBT FOR EQUITY" SCHEME IS REQUIRED FOR CREDITOR CONSENT TO BE PROPER ................................................................................................................7

VII.   DEBTOR'S "DEBT FOR EQUITY" SCHEME VIOLATES CREDITOR'S RIGHT TO EQUAL PROTECTION UNDER THE LAW .............................................................................................................................8

VIII.  DEBTOR'S "DEBT FOR EQUITY" SCHEME UNCONSTITUTIONALLY FORCES CREDITORS INTO A PROFESSION ....................................................................................................................................9

IX.    CASE LAW SHOWS COURTS' POWER TO CONVERT DEBT TO EQUITY IS LIMITED TO DEBT THAT IS AT LEAST PARTIALLY SECURED OR DEBT THAT WAS AN INFUSION OF CAPITAL ......................11

X.     NEWCO'S PROSPECTS AND NEWCO'S STOCK VALUE ARE HIGHLY SPECULATIVE WITH BOTH BEING AT HIGH RISK FOR FAILURE ...............................................................................................13

## **TABLE OF AUTHORITIES**

U.S. Const. Amendment V

U.S. Const. Amendment XIII Section 1

U.S. Const. Amendment XIV, section 1

In re Live Primary, LLC, 2021 WL 772248 (Bankr. S.D.N.Y. Mar. 1, 2021)

In re AutoStyle Plastics, Inc., 269 F.3d 726, 747-48 (6th Cir. 2001)

In re Westpoint Stevens, Inc., 333 B.R. 30 (Bankr. S.D.N.Y. 2005)

Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct 963, 99 L.Ed2d 169 (1988)

United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986)

**Preliminary Statement**

1. At the heart of Schneider's *Objection to Plan Confirmation* [Doc. # 3547] is that Debtor's Plan converts a portion of Creditors' recovery into equity. More specifically the NewCo Plan doesn't provide any option for Creditors to reject this debt for equity transaction. Therefore Debtor's Plan unconstitutionally forces Creditors such as Mr. Schneider to become investors against their will.

2. Debtor has failed to show just, good and due cause (collectively "**cause**") why Creditors should be forced into investing in NewCo and be forced to risk suffering highly potential harm therefrom. Debtor has also failed to show any legal authority to force Creditors to become investors in NewCo.

3. Forcing Creditors against their will without cause or legal authority has all the markings of tyranny. With force being at its core, tyranny tends to give small regard for the equality and welfare of its subjects.

4. To force Creditors to become investors against their will without due cause and legal authority is antithetical to our freedom loving constitutional republic, is unlawful and denies Creditors' their fundamental rights to Liberty, Property and Contract, and furthermore violates Creditors' rights to due process and equal protection under the law. This court has no constitutional authority to strip Creditors of their fundamental rights without cause, due process and legal authority. U.S. Const. Amendment V; U.S. Const. Amendment XIV, section 1.

5. Debtors' transactional scheme of converting debt for equity is a death trap outside legal limits due to Debtor denying Creditors their contractual right to reject Debtor's securities offering of NewCo common stock in exchange for the cryptocurrency that is being withheld for NewCo capitalization,.

**I.     Debtor is Legally Obligated to Repay Creditors Recovery in Digital Assets**

6. The Terms of Use ("**TOU**") requires Debtor to repay Creditors in the same form of value that they loaned to Debtor, i.e. in Digital Assets. Debtor therefore has a legal obligation to repay Creditors their recoveries in Digital Assets, i.e. in cryptocurrency ("**crypto**"). Celsius Ex. 38; "Celsius Terms of Use Compilation;" Docket #393.

> 11. Withdrawals
>
> Subject to these Terms, for any of your Eligible Digital Assets that you elect to utilize in the Earn Service (if available to you), ==you have a call option on all loans made to Celsius to demand immediate, complete or partial repayment of any loan at any time== through (i) transfer to a Custody Wallet, if available to you, or (ii) a complete or partial withdrawal of Eligible Digital Assets at any time. Such repayment will terminate in whole or in part your loan to Celsius and you shall no longer accrue Rewards on the amount of loans as of the time of your exercise of the call option. Celsius initiates the withdrawal process immediately following a withdrawal request when possible; however, we may require up to three (3) days after you submit your withdrawal request to process the withdrawal.
>
> For every withdrawal request, you will be required to provide the details of the Virtual Wallet to which you wish to receive your repayment of Digital Assets. ==For the avoidance of doubt, any repayment shall be in-kind (i.e., in the same type of Eligible Digital Assets loaned by you==, but not the actual same Digital Assets originally transferred by you). In the event that the details you provide are inaccurate, incomplete, or misleading, your Digital Assets may be permanently lost. We will not be liable for any loss that results from inaccurate, incomplete, or misleading details that you may provide for such transfer. If the transfer address you specify is one to which we are unable to

> process transfers, we will have no liability for any resulting failure or delay in processing your requested withdrawal.
>
> **Celsius Ex. 38, Terms of Use version 8, Pg 550-551 of 1126**

7. Every version of the TOU requires repayment of Creditor assets solely in the form of Digital Assets, i.e. crypto.  Celsius Ex. 38.

8. No version of the TOU has provisions allowing Debtor to repay Creditors their Digital Assets in any form other than in Digital Assets, i.e. in crypto.  Celsius Ex. 38.

9. Excepting for any bankruptcy laws mandating cash to be the form of Creditor repayment for purposes of Creditors' recovery, Debtors are legally obligated to repay Creditors in the form of Digital Assets, i.e. crypto  Celsius Ex. 38.

10. Furthermore, Article 1 Section 10, Clause 1 of the United States Constitution forbids any "Law impairing the Obligation of Contracts." Therefore this court, to the extent materially possible, must uphold Debtor's obligation to repay to Creditors assets in the same form of value Creditors loaned to Debtor which said form is crypto.  For this court to act otherwise without just cause and due process in the face of Debtors contractual obligation to Creditors would effect an unlawful and unconstitutional taking of property. U.S. Const. Amendment V; U.S. Const. Amendment XIV, Section 1.

## II.    Debtor's "Debt for Equity" Scheme Converts a Portion of Creditors Crypto Recovery into NewCo Equity

11. Debtor is withholding a portion of Creditor's crypto recovery, i.e., "$450 million of cryptocurrency that will "seed" NewCo." **Schneider Exhibit 4**, Docket #3332, *Recovery*

5

22-10964-mg    Doc 3938    Filed 10/27/23    Entered 10/30/23 12:26:28    Main Document
Pg 6 of 17

*and Distribution Comparison Waterfall*, Pg. 28 of 830;  **Celsius Ex. 46**, Doc. #3582, *Declaration of Robert Campagna*, Pg. 21 of 27.

12. Instead of repaying Creditors their due recovery in crypto as required by contract (*see section I*) Debtor is repaying Creditors with NewCo common stock by converting a portion of the value of Creditor's due recovery of crypto into NewCo equity. Schneider Exhibit 4, Docket #3332, *Recovery and Distribution Comparison Waterfall*, Pg. 28 of 830.

### III.     Debtor Is Prohibited From Repaying Debt with NewCo Common Stock Without Creditors' Proper Consent

13. No version of the TOU has provisions allowing Debtor to repay Creditors in the form of common stock. Celsius Ex. 38.

14. Since the Terms of Use give Debtor no right or authority to repay Creditors common stock in exchange for crypto, Debtors must first get proper consent from Creditors before this transaction can occur. Celsius Ex. 38.

### IV.     It's Improper for Debtor to Offer Their "Debt for Equity" Scheme To Creditors Without an Option to Reject

15. The NewCo Plan provides no option for Creditors to reject Debtor's debt for equity transaction.

16. Even Creditors who voted no and rejected the Plan such as Schneider[2] will still be bound to the Plan and its debt for equity scheme if the Plan is confirmed. Docket #3332 *Disclosure Statement: 4th Revision*, Pg. 8 of 830, Para. 3.

17. Debtor's failure to provide Creditors with an option to reject Debtor's transactional debt for equity scheme is an improper and invalid contract for purposes of proper consent.

18. Enforcement by this court of Debtor's existing debt for equity scheme would violate Creditors' existing contractual rights they have with Debtor for it would deny Creditors their contractual right to reject said scheme.

### V.    Debtor's "Debt for Equity" Scheme Requires an Agreement with Option to Reject It

19. Since Debtors have no right to repay Creditors with common stock without Creditor consent this transactional debt for equity scheme to capitalize NewCo requires an agreement that provides Creditors the option to reject said scheme.

20. Furthermore, to protect Creditor's fundamental right to contract and to protect Creditor's existing contractual rights with Debtor this transactional debt for equity scheme also calls for an agreement that provides Creditors the option to reject said scheme.

### VI.    An Option to Reject Debtor's "Debt for Equity" Scheme is Required for Creditor Consent to Be Proper

21. A contract or agreement that gives no option to reject said contract is a wholly improper and invalid contract. Therefore any alleged Creditor consent to said contract can only be

---

[2] Schneider did not accept the NewCo Plan but rather rejected the NewCo Plan with a no vote in all of the classes (2, 5 & 6a) that he is a member of. Docket # 3547 *Schneider's Objection*.

improper and invalid as well and is unequivocally unenforceable against a party who did not properly consent to the agreement.

22. As with any transaction all parties to a transaction must have the right of free will to accept or reject it for it to be a valid contract with proper consent. A transaction such as Debtors debt for equity scheme that provides no option to reject it is improper and unconscionable, being merely a one-sided contract of undue influence without a valid meeting of the minds and is therefore unenforceable.

23. Therefore, any alleged Creditor acceptance or consent to Debtor's debt for equity scheme can be nothing less than an improper and invalid consent and unenforceable due to the fact that Creditors are denied the option to reject said scheme.

### VII.   Debtor's "Debt For Equity" Scheme Violates Creditor's Right To Equal Protection Under The Law

24. A presumption that a yes vote to accept the Plan is tacit acceptance of Debtor's debt for equity scheme is wholly flawed, for as shown above Debtor must receive proper consent from Creditors with an agreement that provides Creditors option to either accept or reject said transaction.

25. While the presumption in the proceeding paragraph protects the liberties of Creditors who actually want the NewCo securities offering, it tramples on the liberties of Creditors who don't want the securities offering such as Schneider because they are without choice to reject it. Debtor's existing debt for equity scheme doesn't afford the same protection of

rights for all Creditors and therefore violates Creditors' constitutional right to equal protection under the law. U.S. Const. Amendment XIV, Section 1.

### VIII.    Debtor's "Debt for Equity" Scheme Unconstitutionally Forces Creditors Into a Profession

26. Nobody has ever said, "Please force me to become a Venture Capitalist," or "Please force me to invest in a high risk, highly speculative business venture that is against my expertise and risk tolerance," or "Please force me to except equity in place of the available crypto that is rightfully and lawfully owed to me. Why is that? It is self evident. Without just cause, forced investing is fundamentally wrong and harmful. Wrongs and harms which government officials are sworn to protect Creditor's rights against.

27. Creditors such as Schneider are being forced into a profession they do not consent to. Specifically, the NewCo Plan is unduly forcing Creditors to become Venture Capitalists and/or Investors. Even as America's government has no authority or jurisdiction to choose for Creditors what profession they must employ their labor in, neither does this court have such discretion.

28. There is no constitutional authority allowing for government to dictate the profession a person must employ their labor at. Such a thing is wholly antithetical to the intent of why our government exists, which said intent is primarily to secure our rights against miscreants, bullies and tyrants.

a) "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That *to secure these rights, Governments are instituted among Men,* deriving their just powers from the consent of the governed," — Declaration of Independence [*emphasis added*]

b) "*We the People of the United States, in Order to* form a more perfect Union, *establish Justice*, insure domestic Tranquility, provide for the common defense, promote the general Welfare, *and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution* for the United States of America." U.S. Constitution Preamble [*emphasis added*]

29. In an essay "On Property" James Madison eloquently states some of the fundamental rights Creditors have:

- [A man] has a property of peculiar value in his religious opinions, and in the profession and practice dictated by them.
- He has a property very dear to him in the safety and liberty of his person.
- He has an equal property in the free use of his faculties and free choice of the objects on which to employ them.
- In a word, as a man is said to have a right to his property, he may be equally said to have a property in his rights. James Madison, *On Property*.

30. Therefore, Creditors, such as Mr. Schneider, have property in their right to be free to choose whatsoever profession they deem proper to employ their labor in. Furthermore, Creditors have property in the safety and liberty of their persons with right to protect their selves from a speculative high risk venture such as Debtor's proposed NewCo [*see section X*] by rejecting Debtor's debt for equity scheme.

31. For this government to force a Creditor, such as Schneider, against their will, to employ their labor in a profession of the government's choosing (such as forcing one to become a Venture Capitalist or Investor in NewCo) is akin to involuntary servitude and is a repugnant violation of the Thirteenth Amendment and its ethos thereof as well as a violation of Creditor's property rights and their right to labor in a lawful profession of their choosing.

> "The property which every man has in his own labour, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of a poor man lies in the strength and dexterity of his hands; and to hinder him from employing this strength and dexterity in what manner he thinks proper, without injury to his neighbour, is a plain violation of this most sacred property" Adam Smith, "Wealth of Nations"

32. Such are some of the reasons, as stated above, why Debtor has failed to show good cause for why Creditors should be forced into investing in NewCo and be forced to endure high risk and suffer harm therefrom (*See section X*). Even reasons why Debtor has failed to show any legal authority to force Creditors to become investors in NewCo.

## IX.    Case Law Shows Courts' Power To Convert Debt To Equity Is Limited To Debt That Is At Least Partially Secured Or Debt That Was An Infusion Of Capital

33. The Southern District of New York provides a textbook example of the recharacterization of a debt to an equity position in a chapter 11 case in In re Live Primary, LLC, 2021 WL 772248 (Bankr. S.D.N.Y. Mar. 1, 2021). In In re Live Primary, and other cases which have had similar findings most often the discussion and analysis centers around loans or capital provided to the entity (Debtor) by one of its shareholders or members. In the

11

Celsius bankruptcy, the Plan Proponent seeks to force average customers to become equity holders which goes well beyond the purpose or authority of this Court even given the broad reach of section 105(a) of the Bankruptcy Code.

34. In the In re Live Primary case, it is important to point out that the Court quoting the Sixth Circuit in *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 747-48 (6th Cir. 2001) noted that recharacterization is appropriate where the circumstances show that a debt transactions was actually an equity contribution *ab initio* AutoStyle, 269 F.3d at 747-48. The Court further provided that the "paradigmatic" recharacterization case involves a situation where the same entities (or their affiliates) control both the transferor and the transferee, and inferences can be drawn that funds were put into an enterprise with little or no expectation that they would be paid back along with other creditor claims.

35. The 11- factor test of In re Autostyle, does not apply to the facts of Creditors' claim such as Schneider's. Further, Creditors are not the "same entities" and Creditors certainly had the expectation that they would be paid back along with other creditor claims. So, in almost any analysis, forcing Creditors' claims such as Schneider's into an equity position is inappropriate at every level.

36. After scanning through maybe one hundred 2nd Circuit, New York Bankruptcy Court, and New York federal district cases, it seems obvious that any power to convert debt to equity is limited to cases where the debt is at least a partially secured debt or it is obvious the "debt" was an infusion of capital to keep the company afloat.

37. <u>In re Westpoint Stevens, Inc.</u>, 333 B.R. 30 (Bankr. S.D.N.Y. 2005) : Section 105 does not authorize bankruptcy courts to ignore Code requirements simply because they might constitute barriers to otherwise desirable outcomes.  The Supreme Court made clear the limits of the courts' general equitable powers in bankruptcy in this regard in <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 108 S.Ct 963, 99 L.Ed2d 169 (1988), a decision in which it rejected an attempt to avoid the structures of Bankruptcy Section 1129(b)'s "absolute priority" rule in connection with a confirmation of a plan that the circuit believed would have produced a better outcome for the objecting creditors than liquidation. See also United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) (While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code.  The statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, . . . or constitute a roving commission to do equity (footnotes omitted)).

X.     <u>NewCo's Prospects And NewCo's Stock Value Are Highly Speculative With Both Being At High Risk For Failure</u>

38. **Schneider Exhibits 23a, 23b & 23c:** [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 9-10 of 830]

   The Debtors make statements in this Disclosure Statement that are considered forward-looking statements under federal securities laws. The Debtors consider all statements regarding anticipated or future matters to be forward-looking statements. Although the Debtors believe the expectations reflected in such forward-looking statements are based on reasonable assumptions, the Debtors can give no assurance that

13

their expectations will be attained, and it is possible that actual results may differ materially from those indicated by these forward-looking statements due to a variety of risks and uncertainties. Such factors include, but are not limited to, the following:

- plans, objectives, expectations, and intentions;
- business and financial strategies, budgets, and projections;
- changes in political, economic, or market conditions generally and in the Cryptocurrency industry specifically;
- governmental regulation and taxation applicable to the Debtors, Post-Effective Date Debtors, or NewCo, including any changes thereto;
- possible restrictions on the ability of the Debtors, Post-Effective Date Debtors, or NewCo to operate;
- the unfavorable resolution of legal or regulatory proceedings;
- the regulatory licenses held by the Debtors, Post-Effective Date Debtors, or NewCo;
- risks associated with the chapter 11 process, including the Debtors' ability to develop, confirm, and consummate a plan under chapter 11;
- inability to maintain relationships with customers, employees, and other third parties as a result of the Chapter 11 Cases or other failure of such parties to comply with their contractual obligations; and
- failure to satisfy the Debtors', Post-Effective Date Debtors', or NewCo's short- or long-term liquidity needs, including their inability to generate sufficient cash flow from operations or to obtain adequate financing;
- the Debtors' or NewCo's technology and ability to adapt to rapid technological change;
- the outcome of pending and future litigation;
- exchange rate fluctuations and Cryptocurrency price fluctuations;
- risks in connection with dispositions of assets; and
- risk of information technology or data security breaches or other cyberattacks.

STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF ANY FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE NEWCO'S ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN. THESE RISKS, UNCERTAINTIES, AND FACTORS MAY INCLUDE THE FOLLOWING:

- the Debtors' ability to confirm and consummate the Plan;
- the potential that the Debtors may need to pursue an alternative transaction if the plan is not confirmed;
- the potential adverse impact of the Chapter 11 Cases on the Debtors', Post-Effective Date Debtors', or NewCo's operations, management, and employees;
- the Debtors' inability to discharge or settle Claims during the Chapter 11 Cases;
- general economic, business, and market conditions;

- Cryptocurrency fluctuations;
- interest rate fluctuations;
- price increases;
- exposure to litigation;
- a decline in the Debtors' or NewCo's market share due to competition;
- adverse tax changes;
- limited access to capital resources;
- the impact of a Cryptocurrency market downturn on the Debtors' or NewCo's business;
- changes in domestic and foreign laws and regulations;
- trade balance;
- natural disasters;
- geopolitical instability; and
- the effects of governmental regulation on the Debtors' or NewCo's business.

**Schneider Exhibits 23a, 23b & 23c:** [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 9-10 of 830]

39. "In preparing this Disclosure Statement, the ==Debtors relied on … various assumptions==."

    **Schneider Ex. 7:** [Doc 3332, *Disclosure Statement*, 4th *Revision*, Pg. 7 of 830, Para. 5].

40. "…==no representations or warranties are made as to the accuracy of the financial information== contained herein ==or assumptions regarding the Debtors' business or their future results or operations==. The Debtors expressly caution readers not to place undue reliance on any forward-looking statements contained herein." **Schneider Ex. 7:** [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 7 of 830, Para 5].

41. "…there is ==no assurance that the statements contained herein will be correct== at any time…" **Schneider Ex. 7**: [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 7 of 830, Para. 6].

15

42. "Holders of Claims and Interests … should not infer that …. The facts set forth herein have not changed since this Disclosure Statement was filed." **Schneider Ex. 7:** [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 7 of 830, Para. 6].

43. "This Disclosure Statement does not constitute and may not be construed as an admission of fact…" **Schneider Ex. 8**: [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 8 of 830, Para. 2].

44. "The Information contained in this Disclosure Statement is included for purposes of soliciting votes for and Confirmation of the Plan and may not be relied on for any other purpose." **Schneider Ex. 8**: [Doc 3332, *Disclosure Statement, 4th Revision*, Pg. 8 of 830, Para. 4].

45. "The Financial Projections are based on a number of assumptions … with respect to the future performance of the assets currently held by Celsius Mining ("Reorganized Mining")." **Schneider Ex. 9:** [Doc 3332, *Disclosure Statement, 4th Revision, Mining Financial Projections*, Pg. 359 of 830]

46. "Certain assumptions … have not been independently verified…" **Schneider Ex. 9:** [Doc 3332, *Disclosure Statement, 4th Revision, Mining Financial Projections*, Pg. 359 of 830]

47. "No representations or warranties, express or implied, are provided in relation to the fairness, accuracy, correctness, completeness, or reliability of the information, opinions, or conclusions expressed herein." **Schneider Ex. 9:** [Doc 3332, *Disclosure Statement, 4th Revision, Mining Financial Projections*, Pg. 359 of 830]

48. "==These Financial Projections were not prepared ... for preparation and presentation of prospective financial information==." **Schneider Ex. 10:** [Doc 3332, *Disclosure Statement, 4th Revision, Mining Financial Projections*, Pg. 359 of 830].

49. "Although Management has prepared ==the financial projections== ... Celsius mining, the Debtors, Reorganized Mining, and NewCo can provide ==no assurances that such assumptions will be realized==." **Schneider Ex. 10:** [Doc 3332, *Disclosure Statement, 4th Revision, Mining Financial Projections*, Pg. 359 of 830]

Respectfully, Submitted,

/s/ David Schneider
David Schneider
*Pro Se*
September 27, 2023