Cameron Crews
*Pro se creditor, LOC nominee*
camcrews@proton.me

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Celsius Network LLC, et al.,[1] | ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | Jointly Administered |

**Request to Restore the Litigation Oversight Committee's
Oversight of Hiring and Budget Decisions;
Joinder to Response of Retail Borrower's Ad Hoc (ECF 3928 Section 2)
And Richard Phillips' Closing Brief (ECF 3929 22.1)**

1. The power of the Litigation Oversight Committee (the "LOC") has been compromised by the Seventh Plan Supplement (ECF 3869) having shifted budget and hiring decisions to the sole discretion of the Litigation Administrator (the Administrator). Restoring this oversight power to the LOC is important to the success of the Litigation Trust, as has been asserted by both David Adler on behalf of the Ad Hoc Group of Borrowers (ECF 3928; Section 2) and Richard Phillips's Closing Brief (ECF 3929; 22.1). Additionally, contradictory language in sections 4.7(b) and 4.10/4.10(b) pertaining to the distribution of Litigation Proceeds to Creditors should be clarified to require LOC oversight.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Governance of the Litigation Trust**

2. Proper governance is vital to the Litigation Trust's successful operation. The Administrator must be accountable to the LOC, and each Litigation Oversight Committee Member (Member) accountable to each other and their fiduciary obligations set forth under the Plan of Reorganization (the Plan). Allowing the Administrator, who has not been assigned a fiduciary obligation, to bypass the LOC on key decisions of hiring and budget compromises governance obligations, thereby imperiling the successful operation of the Litigation Trust.

**Budget and Hiring Should be Subject to LOC Approval**

3. Having now introduced language granting the Administrator complete control over budget and hiring, to the extent the LOC and Administrator disagree on these matters, the LOC is left with only the extreme measure of removing the Administrator (Section 6.4).

4. Removal of the Administrator would be a significant setback for the Litigation Trust. In addition to delays in execution, it risks sandbagging the LOC with residual professional engagements that it did not consent to. To protect against this, all contracts entered into at the sole discretion of the Administrator should include language to be voidable at the discretion of the LOC upon removal of an Administrator. This would only be necessary to the extent LOC oversight on these matters is not restored.

5. By encouraging the LOC to lean upon its power of Administrator removal rather than traditional oversight mechanisms, a dysfunctional dynamic is introduced

where the Administrator's incentives for self-preservation may be drawn into conflict with his beliefs as to how best to otherwise administer the Litigation Trust. Allowing the Administrator to recommend hiring and budget decisions subject to LOC approval would provide for a better governance dynamic.

6. Because hiring and budget decisions impact the quantity of funds available to be distributed to Creditors, they should be entrusted to a fiduciary. Importantly, the plan identifies LOC Members as fiduciaries but not the Administrator (Section 2.5). It is therefore vital budget and hiring decisions be placed back under the purview of the LOC, which they were prior to the Seventh Plan Supplement.

### Affirm LOC Oversight over Pro-Rata Distribution of Litigation Proceeds

7. While Sections 4.10 and 4.10(b) state the distribution of Litigation Proceeds falls within LOC oversight, Section 4.7(b) lays out a scenario granting the Administrator power to divert the proceeds away from Creditors, apparently beyond the oversight of the LOC.

8. Section 4.7(b) stipulates the Administrator may unilaterally divert proceeds to NewCo, a Wind-Down entity, or to the Bankruptcy Court, based upon his "reasonable judgement" as to the "infeasibility" of distributions to Creditors.

> (b) In the reasonable discretion of the Litigation Administrator and subject to Section 4.7(a) hereof, the Litigation Administrator shall promptly distribute, to the extent not spent or committed to be spent by the Litigation Administrator(s) or reasonably determined by the Litigation Administrator to be maintained as an expense reserve in the proper performance of its responsibilities hereunder, the funds in the Litigation Recovery Account Pro Rata to the Claim Holders entitled to receive Litigation Proceeds hereunder, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; provided that **if such distributions are, in the Litigation Administrator's reasonable judgment, infeasible to distribute Pro Rata, or such distributions cannot be effectuated for any other reason,**

> **the Litigation Administrator(s) may (i) contribute such amounts to NewCo for the benefit of holders of NewCo Common Stock in the event the NewCo Transaction is consummated or (ii) (a) utilize such amounts to fund Wind-Down Expenses or, if no such expenses remain, (b) contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of title 28 of the Judicial Code in the event an Orderly Wind Down is consummated.**

9. This language (emphasized above) is at odds with sections 4.10 and 4.10(b) which explicitly place the pro-rata distribution of Litigation Proceeds as a matter within the purview of the LOC. In furtherance of clarity, the "reasonable judgement" of the Litigation Administrator as pertains to distribution of Litigation Proceeds should be explicitly subject to LOC approval.

10. Should Litigation Proceeds be diverted to NewCo rather than distributed pro-rata, this would accrue only to the benefit of Creditors who had retained their shares. Creditors who parted with their shares may be among those most in need of receiving Litigation Proceeds. Furthermore, under this scenario, non-Creditor shareholders would effectively dilute Creditor recoveries, which the LOC has a fiduciary duty to prevent.

### **CONCLUSION**

The Court is respectfully asked to approve the Proposed Confirmation Order subject to the proposed changes addressed herein and grant other relief as is just and proper.

Respectfully submitted,

Dated: October 29, 2023              /s/Cameron Crews
                                      Cameron Crews
                                      *pro se creditor, LOC Nominee*