Dimitry Kirsanov
*Pro Se*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

_____

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY10004

Re: Balloting Integrity, contrary statements by the debtor's Counsel

Dear Chief Judge Glenn,

Mr. Kirsanov requests the court to clarify the critical matter of balloting integrity. Mr Kirsanov's vote was accurately counted to reject in the Custody Class balloting results, contrary to the debtor's counsel claim that Mr. Kirsanov voted yes. The debtor's counsel has erroneously claimed on the confirmation hearing on 10/30/23 that Mr. Kirsanov's vote was claimed to be changed. Mr. Kirsanov asserts that his vote was properly tabulated to reject the plan.

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

1. Mr. Kirsanov voted to reject the Custody Class on Ballot, as per his interpretation pursuant to his acceptance and interpretation of the Custody Settlement[2] and language of "votes to reject".

2. Mr. Kirsanov's claim included 749,200[3] CEL Token in Class 6B that was impaired to 6A, resultant of outstanding loans.

3. Mr. Kirsanov was not able to pursue his 6B Pure CEL Token pursuant to the Pure Withdrawal Order[4], resultant of these outstanding loans.

4. Mr. Kirsanov notes in written dialogue with the debtor's counsel, it was confirmed that his 6B funds were impaired due to having a loan.

5. Mr. Kirsanov previously wrote[5] the court under perjury on this matter a day after the debtor's had issued their memorandum of law[6] on 10/20/23 where the debtor's counsel allege Mr. Kirsanov voted yes, on 10/21/23. Mr. Kirsanov affirms again today that he voted to reject the balloting.

6. Mr. Kirsanov notes his impaired 6B funds were reflected on the 6A balloting[7] in dollar amount.

---

[2] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903212380000000219.pdf 2291

[3] https://cases.stretto.com/public/x191/11749/CORRESPONDENCE/1174903272350000000022.pdf 2311 - 3.1.150403

[4] https://cases.stretto.com/public/x191/11749/CORRESPONDENCE/1174903272350000000033.pdf 1767

[5] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910232380000000053.pdf 3877

[6] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910202380000000242.pdf 3864

[7] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909272380000000037.pdf 3574

7. The balloting results, that have been sworn and testified by Stretto, it is confirmed that Mr. Kirsanov indeed voted to reject the plan, as shown in the balloting results by CEL monetary value in the Custody class. Stretto confirmed they changed all applicable votes from the Custody Settlement, and confirmed that the monetary CEL majority voted to reject the Custody CEL Token Settlement in Custody in testimony.

8. Mr. Kirsanov notes that 9 Custody CEL Token Holders rejected the Custody ballot, and no combination of 9 CELToken Holders in the Custody Class could have rejected it in such monetary value if it was not for Mr. Kirsanov's vote to reject the plan.

9. Mr. Kirsanov asserts the results are clear. He has followed the Custody Settlement and exercised his rights to reject with his impaired 6B funds resultant of a loan.

10. Mr. Kirsanov notes that even if he was not allowed reject pursuant to the debtor's counsel interpretation of the Settlement Agreement, the balloting results are then flawed, as it was shown he voted to reject. No other combination of 9 CEL Token Holders in Monetary value could have done so in the Custody Class if Mr. Kirsanov was not part of those 9.

11. The debtor's counsel has misrepresented Mr. Kirsanov's vote according to the balloting results, by claiming he voted yes.

12. Mr. Kirsanov also notes that his surname is misspelled several times in the transcripts provided to the court. The variations located thus far are "Kirsakov", "Kirsaov", and "Kirksanov"

[CONTINUED ON NEXT PAGE]

Your honor, ever since bringing up my concerns vocally with the Court on the CEL Token Legal Hearing on the 28th of September, I have and continue to be the subject of what I interpret as harassment, intimidation, and threats. I believe some of these are organized. When it involves a multi-billion dollar estate and law firms that have annual revenue in the billions, this is extremely concerning. I have informed Law Enforcement as early as 10/9 and have forwarded my concerns to the appropriate Federal Agencies, including the Trustee. What I have gone through, and other creditors have reported they have gone through, is not right at all.

To have such shocking ballot integrity, where it is clear that the balloting is misrepresented – is a shock to the conscience. If my vote was misrepresented, how many more votes were? Who is responsible, with so many people swearing and testifying under oath? How does the Court and the Federal Government handle this misrepresentation and balloting errors? This is staggering blow to the Bankruptcy process. Creditors deserve better, and so does this process.

I have been accused of not knowing the Bankruptcy process, and I will be the first to admit, I don't know everything.  But I do know what I voted on and what I signed, and the rights I interpreted. I do know the testified on balloting results simply don't add up to what the debtor's counsel is claiming of my alleged yes vote – it is an impossible according to the monetary rejecting majority of CEL in Custody.

I have attempted to communicate my concerns as best I could to the Court when I detected and interpreted misrepresentation of the balloting.

To have my rights trampled on in attempt to overrule my legitimate concerns about best interest and fair and equitable outcome of this Bankruptcy, is not right. I have previously asserted my Breach of Settlement claim, and I did submit a proof of claim addendum on 2/9/23, prior to the Bar Date, which reserved my rights to assert my Pre-Petition, Pre-Freeze Breach of Contract claims where I could not transfer my Custody funds which I have communicated well ahead of the bar dates. I am attaching that to this letter. As I could not get any answers from the UCC or the Debtor's Counsel, I did my best to obtain answers from the witnesses. I have not even received a direct answer about my recovery rights about my no vote. I ask the Court to clarify this matter.

Your honor, addressing this balloting matter is critical to the Integrity of the Bankruptcy Process. We all deserve better. The Court, creditors, and the public have been misled on the balloting.

I declare that, to the best of my knowledge and belief, the information herein is true and complete. I understand this statement is made for use as evidence in court and is subject to penalty for perjury.

Executed on 11/7/2023

I remain respectfully,

Dimitry Kirsanov, Pro Se Creditor

/s/Dimitry Kirsanov

PROOF OF CLAIM ADDENDUM ATTACHED BELOW

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

ADDENDUM TO PROOF OF CLAIM

This addendum is submitted by Dimitry Kirsanov ("Creditor").

1. Documents Incorporated by Reference

Creditor hereby incorporates the following documents by reference into this Addendum to proof of claim.

- *In The Matter Of Determining Whether There Has Been A Violation Of The Uniform Money Services Act Of Washington And Consumer Loan Act Of Washington By: Celsius Network, Inc,* C-19-2750-19-CO01. Consent Order entered on September 16, 2019 by the State of Washington, Department of Financial Institutions, Division of Consumer Services
https://dfi.wa.gov/sites/default/files/consumer-services/enforcement-actions/C-19-2750-19-CO01.pdf
- *In the Matter of Celsius Network, LLC*, Summary Cease And Desist Order entered on September 17, 2021 by the New Jersey Bureau of Securities against Celsius Network LLC
https://www.nj.gov/oag/newsreleases21/Celsius-Order-9.17.21.pdf
- Emergency Order to Cease and Desist Order entered on September 23, 2021 by the Commonwealth of Kentucky, Public Protection Cabinet, Department of Financial Institutions, Division of Securities
https://kfi.ky.gov/Documents/Celsius%20Network%20LLC%202021AH00024.pdf
- Statement Of Charges And Notice Of Intent To Enter Order To Cease And Desist, To Impose A Fine, And To Charge Costs entered on October 20, 2021 by the State of Washington, Department Of Financial Institutions

- Securities Division
  https://dfi.wa.gov/documents/securities-orders/S-21-3212-21-SC01.pdf
- Notice of Hearing seeking entry of Cease and Desist Order dated September 17, 2021
  https://www.ssb.texas.gov/sites/default/files/2021-09/20210917_FINAL_Celsius_NOH_js_signed.pdf
- *In re Celsius Network LLC*, Case No. 22-10964 (MG), Interim Report Of Shoba Pillay, Examiner, filed on November 19, 2022 (ECF Doc. #1411)
  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911202280000000001.pdf
- *In re Celsius Network LLC*, Case No. 22-10964 (MG), Final Report Of Shoba Pillay, Examiner filed on January 31, 2023 (ECF Doc. #1956)
  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901312380000000039.pdf
- *In re Celsius Network LLC,* Case No 22-10964, Order, signed on 11/17/2022, Directing the Debtors to Amend Their Schedules in Certain Circumstances (ECF Doc. # 1387)
  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911172280000000062.pdf
- *In re Celsius Network LLC,* Case No 22-10964, Statement/Notice of Filing of Cryptocurrency Conversion Rates filed on November 21, 2022 (ECF Doc. #1420)
  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911222280000000082.pdf
- *In re Celsius Network LLC,* Case No 22-10964, Adversary case 23-01007. Adversary Complaint against Celsius Network LLC filed on February 7, 2023 on behalf of Ad Hoc Group of Borrowers (ECF Doc. #2001)
  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902072380000000112.pdf
- The People of the State of New York vs. Alex Mashinsky dated January 5, 2023, (https://ag.ny.gov/sites/default/files/mashinsky_complaint.pdf)

Question 7a – Basis of Claim

Claimants' crypto holdings ("Crypto Claim") against Celsius Network LLC and its affiliates (collectively, "Celsius" or the "Debtors") are set forth on the Proof of Claim. In submitting this proof of claim, Creditor relies on prior statements by Celsius that the Crypto Claim did not need to be dollarized. Notwithstanding these statements, to the extent that Creditor is required to state the amount of

the cryptocurrency claim in dollars, Creditor incorporates the notice of filing cryptocurrency Conversion Rates by Celsius filed on November 21, 2022.
In addition to the Crypto Claim, and as detailed in the response to Question 8 (Basis of Claim), Creditors asserts numerous claims against Celsius for damages as a result of its actions and conduct including: (i) breach of contract; (ii) fraudulent inducement; (iii) fraudulent misrepresentation; (iv) negligent misrepresentation; (v) breach of fiduciary duty; (vi) conversion; and (vii) violation of applicable consumer fraud and unfair and deceptive trade practices statutes (collectively, the "Non-Crypto Claims").  The value of Creditor's Non-Crypto Claims is presently unliquidated.

Question 8 - (Basis of Claim)
Based on the actions and conduct of Celsius, Creditors asserts a claim against Celsius for: (i) breach of contract; (ii) fraudulent inducement; (iii) fraudulent misrepresentation; (iv) negligent misrepresentation; (v) breach of fiduciary duty; (vi) conversion; and (vii) violation of applicable consumer fraud and unfair and deceptive trade practices statutes.
As noted in the Final Report of the Examiner ("Examiner's Final Report"), Celsius promoted and advertised its services, using social media.  articular, Mr. Alex Mashinsky would host weekly AMAs (Ask Mashinsky Anything) ("AMAs") on youtube.com.[2]  The AMAs are replete with repeated misrepresentations concerning the financial stability of Celsius, the risks associated with depositing cryptocurrency at Celsius, its regulatory compliance, its transparency and ownership of the cryptocurrency assets, including the ownership of the cryptocurrency on the Celsius Platform.
Among other things, the following false representations were made during the AMAs:
1. Representations concerning Regulation Compliance
- On October 10, 2020, Mashinsky replied to a tweet: "We are ready for all outcomes. We registered with the SEC in 2018 so we won't have the issues others have."

- During a media interview in December 2020, Mashinsky stated, "Celsius from day one, one of the first things we did . . . was register with the SEC . . . "

- In December 2021, Mashinsky was quoted in Barron's as stating, "The regulators looked into us and said these guys know what they're doing."

- In an AMA from December 3, 2021, Mashinsky represented that "states and other regulators have looked into Celsius, they all came back thumbs up, there's no problem, we didn't find anything…."

1. Representations concerning The Safety Of Its Business Model

- [t]he Celsius business model is structured to do the exact opposite of what banks do — by giving 80% of total revenue back to our community each week in the form of earned interest. We earn profits by lending coins to hedge funds, exchanges, and institutional traders, and by issuing asset backed loans at an average of 9% interest.

- Mashinsky publicly claimed in an April 22, 2022 AMA that "what Celsius does best, better than anybody else, is go out to market and earn yield on these assets."

- Mashinsky claimed on April 13, 2022 "[o]n the institutional side, we have very credible counterparties that have billions of dollars on their balance sheet and for those, we have undercollateralized but we don't offer any non-collateralized loans."

1. Representations concerning Celsius' Financial Stability

- A run on the bank cannot happen at Celsius because Celsius never lends more than what it has …we always have enough coins and enough collateral and so on to return all the assets to all of our users. Celsius, Expansion in Asia with Special Guest Lennis Lai (OkEx) - Celsius AMA,

YouTube (April 30, 2021),



- .


- Celsius takes full responsibility if anything goes bad we take full responsibility that's part of why we raised it 750 million and now we have over two billion dollars on our balance sheet again more than anybody

else." Celsius AMA 10th December 2021, YouTube (December 10, 2021),



- .

1. Representations concerning Bankruptcy of Celsius

- On March 25, 2021, Mashinsky, posted on Twitter, in reply to a Twitter user who asked what would happen to their coins in the event of Celsius's bankruptcy, that "all coins are returned to their owners even in the case of bankruptcy."

1. Representations concerning Ownership of Cryptocurrency

- In a November 26, 2019 AMA, Mr. Mashinsky stated "[t]hese are your coins, not our coins. Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin . . . It's always your Bitcoin. Always your Ether.

Always your CEL Token."



- On February 10, 2020, Aliza Landes, the Vice President of Retail Lending, described taking a retail loan as "you're not going into debt, you're just borrowing against something you own." Celsius, Celsius Network AMA –

Ask Aliza Anything!, YouTube (February 10, 2020),



- On July 24, 2020, Mr. Mashinsky stated:

[W]hen you give us bitcoin it's not like it's ours, right? It's yours legally. It is still your bitcoin. The only thing we do is when you lend us your bitcoin, we lend them to people who pay us interest. When they return them, it goes back to the wallet and it's still yours from that wallet.  Celsius Network AMA with Alex Mashinsky and HFN's Roni Cohen-Pavon, YouTube (July 24, 2020),



.

These misrepresentations were made by Celsius to induce new customers to open up accounts and to keep existing customers on the platform. Creditor relied on some or all of these misrepresentations in opening its account at Celsius and in deciding to keep Creditor's cryptocurrency on the Celsius platform.

Celsius knew that the representations identified above were false as detailed at length in the Final Examiner's Report,.   See Final Examiner's Report, Part II, Article VI,G at pp. 256-67 entitled "*Celsius did not Correct Its Misleading and Inaccurate Statements*" ("the Examiner found no evidence that anyone at Celsius suggested or executed on a process of correcting or retracting inaccurate and misleading statements that Celsius's employees identified and removed (or attempted to remove) between May 2021 and June 2022.")(emphasis supplied). By way of example, on or about March 15, 2022, Peter Graham Celsius Head of Intelligence and Credit Officer sent an email which listed "a selection of recent misrepresentations made by Alex and other Celsius reps on Twitter Spaces AMAs," including:

- We Don't Use Leverage (Alex) . . . And Celsius doesn't have any leverage, right? I mean, we, we have a little bit of leverage, because we sometimes lend out the collateral we get from third parties. So it's maybe again, instead of 1.0, it's 1.2 or something like that.

- You can use rewards explorer to prove that what we give you actually came from third parties and that's what is part of our proof of community effort to show you that Celsius does not rely on subsidies or does not kind of try to create some kind of monkey business where stuff comes from other investors.

In addition, Mr. Graham continued to identify inaccurate statements in April and May of 2022, including:
- Alex states that market downturns and CEL losing value does not impact Celsius. This is not true, please remove.

- Alex says that almost 2 mm users have earned yield with us; while we have 1.8 mm registered users, my understanding is that many of these have not transferred assets and therefore would not have earned yield. Please remove.

- Alex says that it's [business as usual] at Celsius and that we are unaffected by a downturn, this is incorrect, please remove.

- Alex insinuates that our operations are the same with [$2 billion] assets or [$20 billion], this is incorrect, please remove.

- Alex says that on Tuesday everyone will have swaps. Because Celsius cannot provide custody in several jurisdictions, and custody is required for swaps, we will not be providing swaps to everyone. Please remove.

- Zach Wildes; Celsius's then AMA Co-Host says that we do not have directional positions. This is untrue and misrepresents material risk factors associated with yield accounts, please remove.

As a result of these misrepresentations, Creditor asserts claims for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation.  In addition, in making these misrepresentations, Celsius violated consumer fraud laws and unfair and deceptive trade practices laws.

By instituting the pause on June 12, 2022 and in refusing to return Creditor's cryptocurrency, Celsius has breached its contract with Creditor and is liable for all damages that Creditor has incurred as a result therefrom.  By refusing to return Creditor's cryptocurrency, Celsius has converted the assets of Creditor and is liable for all damages that Creditor has incurred as a result therefrom.

Finally, because it was insolvent, Celsius owed a fiduciary duty to its creditors (including its customers) to maximize the value of its assets.  As detailed in the Examiner's Report, Celsius used its assets to benefit its insiders including, among other things, by using its assets to prop up the value of the CEL token.  In so doing, Celsius breached its fiduciary duty owed to Creditor.

Question 11 -  (Claim Subject to Right of Setoff)

Creditor participated in the Celsius borrow program and received a loan in exchange for posting cryptocurrency as collateral.  As detailed in the Complaint dated February 7, 2023, which is incorporated herein by reference, the loan issued by Celsius is void and unenforceable against the Creditor.  See In re Celsius Network LLC, Case No. 22-10964, ECF Doc. #2001.

RESERVATION OF RIGHTS

Creditor expressly reserves all of it rights to file an amended or supplementary proof of claim, if and when necessary, for additional, contingent, and or other claims, including, but not limited to, acts or conduct of the Debtors that will be determined in discovery.

The filing of this Claim is not, nor shall deemed to be, a waiver or release of any of Claimant's rights against any person, entity, property, or a waiver of Claimant's right to seek a  jury trial with respect to this Claim.

Nothing contained herein shall prejudice or limit the rights of the Claimant from filing any proceeding or taking any action concerning its Claim.

Dated: 02/09/2023

//S// Dimitry Kirsanov
Print Name Dimitry Kirsanov

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Celsius has hundreds of these marketing videos on its Youtube.com channel. *See* https://www.youtube.com/@CelsiusNetwork/videos