**Hearing Date:  November 30, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  November 23, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING**
**THE SETTLEMENT BY AND BETWEEN THE DEBTORS AND**
**EZ BLOCKCHAIN SERVICES, LLC AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Settlement By and Between the Debtors and EZ Blockchain Services, LLC, and (II) Granting Related Relief* (the "Motion") will be held on **November 30, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. When making an eCourtAppearance, parties must specify whether they are making a "live" or "listen only" appearance. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (*i.e.*, on Wednesday, November 29, 2023**).

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on November 30, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on November 30, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect)

2

with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **November 23, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: November 9, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Hearing Date:  November 30, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  November 23, 2023, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND EZ BLOCKCHAIN SERVICES, LLC AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):[2]

**Preliminary Statement**

1.    The Debtors seek approval of a settlement by and between Celsius Mining LLC

("Celsius") and EZ Blockchain Services, LLC ("EZ Blockchain" and together with Celsius,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined herein).

the ("Parties") to resolve all claims arising under the hosting agreements. The Settlement is the result of arms'-length and good-faith negotiations between the Parties. Under the terms of the Settlement Agreement, the Parties agree to: (a) enter a new 18-month hosting services agreement, pursuant to which EZ Blockchain will (i) provide the Debtors with 32 megawatts ("MW") of total hosting capacity at the EZ Blockchain facilities located in West Point, Georgia and Douglas, Georgia, and (ii) return certain prepayments made by Celsius under the prepetition Hosting Agreements; and (b) mutually release any claims arising out of the prepetition hosting agreements.[3]

2.      By providing a final resolution of the Parties' dispute, the Settlement allows the Debtors to pursue a beneficial business relationship with EZ Blockchain, allows the Parties to avoid the distraction and uncertainty of protracted litigation, and allow the Debtors to focus on the confirmation and consummation of their chapter 11 plan of reorganization at this crucial juncture of these chapter 11 cases. Accordingly, for the reasons set forth below, the Settlement is in the best interests of the Debtors' estates and should be approved.

## Relief Requested

3.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) approving the settlement (the "Settlement") as embodied in the settlement agreement attached to the Order as Exhibit 1 (the "Settlement Agreement"), by and among the Parties; and (b) granting related relief.[4]

---

[3]     The description of the settlement herein is a summary of the material terms of the settlement. In the event of any conflict between the terms recited herein and those set forth in the Settlement Agreement, the Settlement Agreement shall control.

[4]     The Settlement Agreement is in substantially final form but remains subject to ongoing review by the parties. The Debtors will file a revised form of Order with the finalized Settlement Agreement.

## Jurisdiction and Venue

4.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

7.    Between January 2022 and March 2022, Celsius and EZ Blockchain entered into three hosting services agreements (the "Hosting Agreements"), pursuant to which EZ Blockchain agreed to provide Celsius with 35 MW of hosting capacity at EZ Blockchain's Georgia facilities for 18 months.[5]  In exchange for the hosting services provided, Celsius agreed to pay EZ Blockchain a variable monthly fee, which was a function of energy prices and costs incurred by EZ Blockchain plus a fixed amount.  As part of the Hosting Agreements, Celsius provided EZ Blockchain approximately $5 million in deposits and prepayments (the "Prepayments"), which were to be credited against the monthly fees over the term of the Hosting Agreement.

---

[5]    The three hosting agreements were entered into on (a) January 27, 2022 (approximately 15 MW of hosting capacity), (b) February 22, 2022 (approximately 9.75 MW of hosting capacity), and (c) March 15, 2022 (approximately 10 MW of hosting capacity).

Unfortunately, due to high energy prices in Georgia, Celsius never utilized more than 19 MW of the 35 MW in contracted hosting capacity. Celsius asked EZ Blockchain to shut off all Celsius's rigs in July of 2022.

8.      Since the beginning of these chapter 11 cases, the Parties have remained in discussions regarding the Hosting Agreements and the possibility of redeploying the Celsius mining rigs. The Parties have also sought to resolve a number of disputes arising out of the Hosting Agreements, including Celsius's claim for the return of uncredited Prepayments and EZ Blockchain's unauthorized use of Celsius's rigs for its own account. The Parties seek to enter into the Settlement Agreement to allow for a consensual and mutually beneficial resolution without the need for costly and time-consuming litigation.

### The Settlement[6]

9.      The Settlement resolves all disputes arising out of the Hosting Agreements, as set forth in the Settlement Agreement. Subject to the Court's approval, the Parties intend to enter a new 18-month hosting services agreement (the "New Agreement"), pursuant to which EZ Blockchain will provide fixed-rate hosting services to Celsius on the terms set forth in the Settlement Agreement. Under the terms of the Settlement, EZ Blockchain will return to Celsius the Prepayments in the form of monthly credits under the New Agreement, with any uncredited Prepayment remaining to be returned to Celsius in cash. Both Celsius and EZ Blockchain agree to release any claims relating to the Hosting Agreements and the disputes referenced above.

10.      The key terms of the Settlement are as follows:

---

[6]   Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Settlement Agreement (including the terms in the New Agreement). The following summary of the Settlement terms is provided for illustrative purpose only and is qualified in its entirety by reference to the Settlement Agreement. In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects. Furthermore, this summary shall not be used to construe or interpret the terms of the Settlement Agreement or intent of the Parties.

| **SETTLEMENT TERMS** | |
| --- | --- |
| **Agreement Summary** | EZ Blockchain Services, LLC ("EZB") will provide mining hosting services to Celsius Mining LLC ("Celsius," and together with EZB, the "Parties") and Celsius will receive the return of its prepetition deposits.  The Parties agree to mutually release all claims arising under the prepetition hosting agreements. |
| **Hosting Capacity** | Beginning on the Effective Date, EZB will provide power and internet access to allow Celsius Equipment to mine cryptocurrency ("Hosting") at EZB's facilities located in West Point, Georgia and Douglas, Georgia (the "Facility").  Hosting capacity for Celsius at the Facility shall initially be capped at eighteen (18) megawatts, with an additional fourteen (14) megawatts deployed within thirty-days following the Effective Date of this Agreement, provided that Celsius provides sufficient Celsius Equipment to receive such capacity not later than the Effective Date.  Celsius is solely responsible for managing its wallet and ensuring that any cryptocurrency generated by the Celsius Equipment is properly accounted for. |
| **Term** | 18 months, subject to extension for curtailment. |
| **Uptime** | Except for periods of curtailment, as defined below, Celsius equipment failure, and downtime caused by a Force Majeure Event or Relocation as defined in the New Agreement, EZB shall provide Hosting with ninety-five percent (95%) uptime in accordance with the formula ("Minimum Service Level"):<br><br>$$\text{Minimum Service Level (\%)} = \left( \frac{\text{Average \# of ASICs hashing (24 hr period)}}{\text{Total \# of ASICs deployed}} \right) \times 100$$<br><br>The source for the average # of ASIC's hashing will be calculated using data from ASIC management software used by EZB at the Facility and reasonably consented to by Celsius (*e.g.*, Foreman) using 5-minute periods, with 288 periods averaged over each 24-hour period.  Broken ASIC miners shall not be included in the calculation of the Minimum Service Level.<br><br>In the event that EZB fails (or is on track to fail) to meet the 95% uptime requirement in any ninety-day period, EZB will dynamically or retroactively (through a true-up) redirect EZB's share of hashrate attributable to the Incentive Payment (or, to the extent done retroactively, the mined BTC attributable to the Incentive Payment) to Celsius in the amount required for the resulting hashrate (or mined BTC) going to Celsius being equal to the amount that would have gone to Celsius had the Minimum Service Level been achieved. |
| **Return of Deposits** | On the condition that Celsius has fully performed its payment obligations under this Agreement and is not in default, EZB shall, to the extent there remains a balance on the Deposit, each month pay or credit to Celsius an amount equal to 1/18th of the remaining Net Deposit, after any deductions pursuant to this Agreement ("Deposit Credit").  Any amount remaining under the Deposit at the end of the Term shall be returned to Celsius within thirty days after the end of the Term.  For the avoidance of doubt, the Parties acknowledge and agree that EZB's obligation to issue a Deposit Credit is expressly conditioned on Celsius' |

| **SETTLEMENT TERMS** | |
|---|---|
| | performance of its payment obligations hereunder such that if Celsius fails to perform its payment obligations, EZB is not required to issue the Deposit Credit unless and until Celsius has cured its default. |
| **Pricing** | <u>Prepayment of Monthly Fees</u>.  Upon the Effective Date and upon the first of each month thereafter during the Term, Celsius shall prepay to EZB the amount of $1,379,700.00 (the "<u>Prepayment Amount</u>") which shall be subject to adjustment for any credits/off-sets and to true-up at the end of each month pursuant to the terms of this Agreement. The Prepayment Amount for the first month of the term shall be paid by Celsius within three (3) business days of the Effective Date. <br><br> <u>Hashrate Split</u>. The "Hashrate Split" is defined by the proportion of the daily mining output generated by the Celsius Equipment, which is 87.5% to Celsius and 12.5% to EZB. Celsius shall, at its option, remit EZB's 12.5 share (the "<u>Incentive Payment</u>") to EZB (a) within five (5) business days of the end of each month or (b) in real time through a direction of hashrate to EZB's designated mining pool. <br><br> <u>Monthly True-Up.</u>  No later than fifteen (15) days after the end of each month, EZB shall provide Celsius with the final invoice for the immediately preceding month reflecting (i) $.06.75 per MWH used in mining by Celsius calculated as 87.5% of the total MWH for operation of the Celsius Equipment, as verified by the meter ("<u>Actual Usage Amount</u>")  ; minus (ii) the Prepayment Amount; minus (iii) the Deposit Credit; plus (iv) the EZB Curtailment Credit to the extent not already deducted from the Deposit, if any; plus (v) amounts due for Ancillary Services, to the extent not already deducted from the Deposit, if any(the "<u>Final Monthly Invoice</u>"). If the amount of the Final Monthly Invoice is positive,  Celsius shall pay 100% of such excess amount in USD to EZB within five (5) business days of receipt of the Final Monthly Invoice. If the amount of the Final Monthly Invoice is negative, EZB shall apply such amount (expressed as a positive number) as a credit towards Celsius' payment of the Prepayment Amount for the following month.  To the extent there is any Invoice Credit on the Final Monthly Invoice for the last month of the Term, EZB shall pay such amount to Celsius within five (5) business days following issuance of such invoice. |
| **Curtailment** | <u>Celsius Curtailment</u>.  If the revenue measured in USD/kwh of BTC mining at the Facility for Celsius Equipment falls below $0.0675 per kwh, Celsius may curtail by providing written notice to EZB, at which time Celsius shall not be responsible for the costs of operating the Celsius Equipment at the Facility pursuant to this Agreement and, at its discretion, EZB may use Celsius Equipment to generate cryptocurrency for EZB's own account.  Celsius may not curtail more than once per day. <br><br> <u>EZ Blockchain Curtailment</u>.  If the revenue measured in USD/kwh of BTC mining at the Facility for Celsius Equipment falls below $0.05 per kwh, EZB may curtail by providing written notice of Celsius, at which time EZB may shut down the Celsius Equipment.  EZB may not curtail more than once per day. |

| **SETTLEMENT TERMS** |  |
|---|---|
|  | Curtailment Extension. The initial term of this Agreement shall be automatically extended for each day of curtailment, whether curtailed by EZB or Celsius, up to three additional months. For the avoidance of doubt, the Parties acknowledge and agree that the maximum length of term for this Agreement is twenty-one (21) months from the Effective Date. Notwithstanding curtailment rights set forth in Sections 3.1 and 3.2 above, neither Party may curtail if the total amount of curtailment during the Term would exceeds ninety days. |
|  | Curtailment Payment. In the event that EZB curtails during any month during the Term, Celsius shall pay to EZB the amount equal to 87.5% of EZB's Net Losses incurred in such month as a result of such curtailment ("EZB Curtailment Credit"). For purposes of this section, Net Losses means the reasonable and documented amount of losses actually incurred by EZB after taking into account any offsetting revenue from mining using Celsius Equipment, energy sales, liquidation of hedges or otherwise. Notwithstanding the foregoing, the EZB Curtailment Credit for a month shall be capped at a maximum amount equal to the Deposit Credit for such month. To the extent available, EZB shall deduct the EZB Curtailment Credit from the Deposit in lieu of requiring cash payment from Celsius. |
| **Security** | If Celsius fails to pay amounts due on a monthly basis, EZB has the right to use equipment to mine for its own account and/or deduct amounts due from the Net Deposit |
|  | EZB will grant Celsius a first lien security interest in all data centers which house Celsius' equipment, on the following conditions: |
|  | • Celsius payment of amounts due under the contract is a condition precedent the exercise of any rights in the collateral such that Celsius waives and cannot exercise any rights in the collateral if it defaults on its payment obligations under the contract, regardless of reason. |
|  | • Celsius shall cooperate in releasing the security interest in certain collateral consistent with the decreasing value of the remaining Net Deposit. |
|  | EZB shall make customary representations and covenants in support of such security interest. |
|  | Either party can terminate for non-performance/material breach with 30-day notice and cure period |
| **Release of Claims** | The parties agree to mutually release each another from past any claims, causes actions, demands, etc. that either may have against the other (or their affiliated entities) arising out of or relating to prior hosting agreements between the parties. |

11.     The Debtors have determined, in an exercise of their reasonable business judgment, that entering into the Settlement Agreement is in the best interest of their estates and all stakeholders as it provides for the return of the Prepayment, allows the Debtors to secure hosting services from EZ Blockchain on favorable terms, and obviates the need for costly and time-consuming litigation. The Settlement Agreement was negotiated at arm's length and in good faith among the Debtors, in consultation with the Committee, and EZ Blockchain.

### Basis for Relief

**I.     The Settlement is A Sound Exercise of the Debtors' Business Judgment.**

12.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for the debtors but must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991). In determining the range of reasonableness, the bankruptcy court need not decide issues of law and fact raised by the settlement. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) ("The standard does not require that the settlement be the best the debtor could have obtained nor does it require the court to conduct a mini-trial of the questions of law and fact.").

13.     Rather, the court must be "apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640–41 (MG) (Bankr. S.D.N.Y. 2012). In conducting this

assessment, "a court may rely on the opinion of the debtor, parties to the settlement, and the professionals" in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement. *Id.* at 641.

14.      Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 496; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

15.      A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."); *see also In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy court [and such] discretion should be exercised in light of the general public policy favoring settlements.") (citing *Nellis* 165 B.R. at 121); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting the paramount public policy for settlements).[7]  Notably, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the

---

[7]      Furthermore, under section 105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the Bankruptcy Code's predilection for compromise.  Thus, to the extent necessary, relief under section 105(a) of the Bankruptcy Code is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

bankruptcy estate." *In re LATAM Airlines Grp. S.A.*, 2022 WL 272167, at *12 (Bankr. S.D.N.Y. Jan. 28, 2022) (quoting *In re MF Glob. Inc.*, 2012 WL 3242533, at *5 (MG) (Bankr. S.D.N.Y. Aug. 10, 2012)).

16.     In determining whether to approve a settlement as fair and equitable and in the best interests of the debtor's estates under Bankruptcy Rule 9019, courts in the Second Circuit consider the "*Iridium*" factors:   (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining.  *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp.*, 960 F.2d at 292; *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

17.     The Settlement, a sound exercise of the Debtors' reasonable business judgment, represents a fair and equitable compromise between the Parties, falls well within the range of reasonableness, and satisfies the *Iridium* factors.  More specifically, with respect to the ***first*** and ***second*** *Iridium* factors, any litigation related to the prepetition Hosting Agreements would consume considerable valuable estate resources and cause significant delay at this critical juncture to the cases.  From the outset of these chapter 11 cases, the Parties have worked to resolve the interrelated disputes arising out of the Hosting Agreements, including the Debtors' entitlement to the return of the Prepayments, without resorting to litigation.  The Settlement allows for the consensual resolution of these disputes, provides for the return of the Prepayments, and enables

the Parties to establish a mutually beneficial go-forward business relationship under the terms of the New Agreement.  Moreover, the Settlement Agreement will allow the Debtors to avoid the time and expense of further litigation as the Debtors set their focus on consummating their plan of reorganization and returning value to the Debtors' stakeholders.  Time is of the essence in these chapter 11 cases, and it is crucial that the Debtors avoid the costs, delays, and distraction that would inevitably arise in the event the litigation was unavoidable.

18.     With respect to the *third Iridium* factor, the Settlement maximizes value of the Debtors' estates and benefits each of the Debtors' stakeholders by providing for the return of the Prepayments over the course of the New Agreement.  Moreover, the Debtors, in their reasonable business judgment, believe that the New Agreement and restored relationship with EZ Blockchain, a major provider of hosting services, will provide significant value to the Debtors' and NewCo's mining operations.  On the other hand, if the Debtors were forced to institute litigation against EZ Blockchain for the return of the Prepayment, the Debtors would be required to expend considerable estate resources at a critical juncture in these chapter 11 cases.  In addition, the resolution of these disputes will allow the Debtors' management to remain focused on confirming the Debtors' plan of reorganization and returning value to the Debtors' account holders as soon as possible.  Therefore, the Settlement is in the best interests of the Debtors' estates.

19.     With respect to the *fourth* Iridium factor, the Debtors have consulted with the official committee of unsecured creditors (the "Committee"), which have expressed support of the Settlement Agreement.

20.     With respect to the *fifth Iridium* factor, the releases granted by the Settlement are consensual, mutual, and essential to the Settlement, and are similar in nature to other settlements of the same nature in other chapter 11 cases.  Specifically, the releases granted by the Parties in

11

the Settlement are a necessary component of the Settlement and appropriate under the circumstances and provide finality to the Settlement as the Parties enter into the New Agreement.

21.    Finally, with respect to the *sixth* and *seventh Iridium* factors, the Settlement is the product of hard-fought negotiations between the Parties.  Facing the prospect of costly litigation, the Parties engaged in arm's-length, hard-fought negotiations over many months, and exchanged multiple drafts before executing the Settlement Agreement, with meaningful concessions made by both Parties.

22.    Accordingly, the terms of the Settlement satisfy the requirements of Bankruptcy Rule 9019 and the Parties request that the Court approve the Settlement and authorize each of the Parties to perform thereunder.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

24.    Except as explicitly set forth in this Motion and the Settlement (once approved by the Court and implemented in accordance with its terms), nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **Motion Practice**

25.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### **Notice**

26.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee for the Southern District of New York, (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) EZ Blockchain; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

27.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: November 9, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

14

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING
## THE SETTLEMENT BY AND BETWEEN THE DEBTORS AND
## EZ BLOCKCHAIN SERVICES, LLC AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving the Settlement, as embodied in the Settlement Agreement attached hereto as **Exhibit 1**, by and between the Debtors and EZ Blockchain Services, LLC and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement (as embodied in the Settlement Agreement attached hereto as **Exhibit 1**) and the Settlement Agreement are approved in their entirety including, without limitation, the releases contained therein.

3.      Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform under the Settlement as embodied in the Settlement Agreement, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Agreement.  For the avoidance of doubt, the Parties are authorized to enter into the New Agreement as contemplated by the Settlement Agreement.

4.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

5.      Nothing contained in any chapter 11 plan confirmed or confirmation order entered in these chapter 11 cases shall prejudice, impair, alter, or modify the New Hosting Agreement or the Settlement Agreement.

6.      The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.  Solely for purposes of the Settlement and Settlement Agreement, the automatic stay of section 362(a) of the Bankruptcy Code shall not apply to nor prevent the exercise or performance by any Party of its rights or obligations under the Settlement and Settlement Agreement.

9.      This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, the Post-Effective Date Debtors, Plan Administrator, Litigation Administrator, or any other estate representative.

10.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

# **EXHIBIT 1**

**Settlement Agreement**

DocuSign Envelope ID: A3060725-E314-412B-8416-11F6ACE373F2

**Celsius/EZ Blockchain – Post-Petition Term Sheet**

This term sheet is not binding other than with respect to the Interim Services (as specified below), but is intended merely as a guide to assist the parties in ongoing negotiations of a potential contractual relationship between the parties whereby EZ Blockchain Services, LLC ("EZB") would provide hosting services to Celsius Mining LLC ("Celsius") and Celsius would receive return of its pre-petition deposits. No legally binding obligations will be created, implied or inferred unless and until definitive documents are executed and delivered by the parties in each case other than with respect to the Interim Services, as set forth below.

| | |
|---|---|
| **Capacity** | 32 MW (18 MW in GA pursuant to prior contracts and an additional 14 MW also located in Georgia to be available within 1 month following the effective date of the definitive agreements). |
| **Term** | 18 months, subject to extension for curtailment. |
| **Services and Uptime** | EZB will provide hosting services with 95% uptime guarantee subject to curtailment.  In the event of a failure to meet its uptime guarantee, EZ will redirect its share of hashrate from Celsius mining rigs to Celsius until the uptime commitment is met (at the subpool level). Only if, following such reallocation, the uptime commitment remains unmet, Celsius will receive compensation, in the form of a bill credit, for any remaining failure to meet uptime guarantee.  Uptime will be calculated on a 90-day basis assuming 32 MW of capacity and rigs hashing 24/7/365 consistent with the following formula for daily uptime: $$Uptime \ = \frac{Average \ \# \ of \ ASICs \ hashing \ (24 \ hr \ period) \ \times \ 100}{Total \ \# \ of \ ASICs \ deployed}$$ The source for the average # of ASIC's online will be calculated using data from ASIC Management Software (e.g., Foreman) using 5 minute periods, with 288 periods averaged over each 24 hour period.  Broken ASIC miners are not included in the calculation of Uptime. Celsius may provide extra ASIC miners to keep higher uptime, EZ Blockchain may install them at empty spaces. If EZB fails to meet 95% uptime in any 90-day period, EZB will issue a credit equal to the hosting fees paid over that 90-day period multiplied by the ratio that is (95-uptime percentage provided)/95.  For example, if EZB delivered 85% uptime over a 90-day period, Celsius would receive a credit as follows: $$Credit = [monthly \ payment \ x \ 3] * \frac{(95-85)}{95}$$ |

DocuSign Envelope ID: 03060725-E314-412B-84F6-11EEACE373F2

| Return of Deposits[1] | Net Deposit will be refunded back to Celsius (as a bill credit) on a monthly basis, in equal monthly installments equal to 1/18th the net deposit. |
|---|---|
| | Net Deposit = gross deposits paid by Celsius to EZB pre-petition (approximately $5 million) less (i) $1,379,700 to be held for last month's payment and (ii) approximately $[383,250,000][2] for total racking/unracking fees. |
| | Net Deposit is estimated to be ~$3,237,050.00 |
| | Return of deposits is conditioned on Celsius performance of its payment obligations under the contract (i.e. – to the extent Celsius does not make its monthly payments, EZB is not required to return deposits). |
| | The amount of any deposit or prepayment not applied to Celsius' obligations or returned by the end or termination of the contract shall be returned in cash within 3 business days following the end of the contract. |
| Pricing | Maximum fee of $1,379,700.00 per 30.42-day month based on 32MW of available capacity (paid in advance (as may be adjusted for credits)); plus 12.5% hash rate split. To be adjusted at end of month for actual MW used with Celsius responsible for $6.75 per MWH used in mining for Celsius calculated as 87.5% of MWH metered at the container level. The difference between the Maximum fee and the actual usage fee will be credited to Celsius on the last day of such month. |
| | First month due upon execution. |

---

[1] EZB does not agree that Celsius is entitled to a return of the pre-petition deposits, but is willing to enter into a forward looking post-petition contract including an agreement to return such deposits in the interests of ongoing business relationships.
[2] To be $30/rig to rack and $30/rig unrack.

**CONFIDENTIAL**

DocuSign Envelope ID: A3060725-E314-412B-84A6-11E5ACE373F2

| Curtailment | Celsius may curtail if contract becomes loss-making (i.e. – if breakeven point is below $0.0675 per kwh).  If Celsius curtails, EZB can use equipment to mine for its own account.  EZB is not obligated to run the equipment if contract is loss-making for EZB (i.e. if breakeven point is below $0.05 per kwh). A ratable portion of the monthly fee of $1,379,700 corresponding to the period of curtailment shall be applied as a fee credit against the next month's payment and, to the extent unused by termination of the contract, returned to Celsius along with any remaining portions of the Net Deposit.<br><br>Solely to the extent that Celsius has curtailed in a month and EZB is loss making for such month (i.e. if breakeven point is below $0.05 per kwh), Celsius shall be required to pay EZB for 87.5% of actual losses borne by EZB in such month directly attributable to the capacity dedicated to Celsius mining rigs after taking into account any offsetting revenue from mining, energy sales, liquidation of hedges or otherwise; provided that Celsius shall not be liable to pay EZB as a curtailment credit contemplated by this provision more than 1/18th of the Net Deposit.  During curtailment, EZB agrees to deduct such amount from the Net Deposit, as available, in lieu of requiring cash payment from Celsius.<br><br>All curtailment to be based on objective triggers and occur no more often than daily.<br><br>Contract term will be extended for each day of curtailment up to a maximum contract length of 21 months (3 months of curtailment). Days of curtailment shall be calculated at the end of such month by dividing the number of hours curtailed in such month by 24 and rounding down to the nearest whole number of days. During curtailment EZB shall not be required to issue a bill credit for Net Deposits, which instead will be issued during any curtailment extension. |
| --- | --- |

**CONFIDENTIAL**

| Security | For EZB:  If Celsius fails to pay amounts due on a monthly basis, EZB has the right to use equipment to mine for its own account and/or deduct amounts due from the Net Deposit<br><br>For Celsius:  EZB will grant Celsius a first lien security interest in all data centers which house Celsius' equipment, on the following conditions:<br><br>• Celsius payment of amounts due under the contract is a condition precedent the exercise of any rights in the collateral such that Celsius waives and cannot exercise any rights in the collateral if it defaults on its payment obligations under the contract, regardless of reason<br>• Celsius shall cooperate in releasing the security interest in certain collateral consistent with the decreasing value of the remaining Net Deposit<br><br>EZB shall make customary representations and covenants in support of such security interest.<br><br>Either party can terminate for non-performance/material breach with 30-day notice and cure period |
|---|---|
| Release of Claims | The parties agree to mutually release one another from past any claims, causes actions, demands, etc. that either may have against the other (or their affiliated entities) arising out of or relating to prior hosting agreements between the parties. |
| Court Approval | The parties understand that this agreement may require approval of the U.S. Bankruptcy Court for the Southern District of New York.  The definitive agreements shall not become effective unless and until all parties have duly executed such agreements and the Court approves of such agreement or finds that such approval is not required; provided that to the extent the Court has not approved of such term sheet (or found that such approval is not required) by June 30, 2023 (or such later date as agreed by the parties), the parties shall be returned to the status quo ante and the Interim Services below may be immediately terminated and this entire term sheet shall be of no further force and effect. |
| Relocation | Subject to conditions to be agreed, EZB may relocate Celsius' equipment to a new or different site, that is substantially similar to the current site, with 30-days advanced written notice, provided that Celsius shall be no worse off as a result of such relocation and EZB shall bear all costs of such relocation. |

**CONFIDENTIAL**

DocuSign Envelope ID: A3060725-E314-412B-84F6-11ECACE373F2

| Interim Services | Immediately following entrance into this term sheet by Celsius and EZB and until the definitive agreements contemplated hereby become effective or following five (5) days written notice to the other party, EZB shall cause the mining rigs owned by Celsius that are currently hosted by EZB (the "Subject Miners") to resume hashing for the benefit of Celsius, on EZB's pool, at a cost to Celsius of $0.07 per kwh (the "Interim Cost"). EZB shall liquidate any bitcoin generated by the Subject Miners on a daily or near daily basis and accumulate such funds. EZB shall deduct the Interim Cost owed by Celsius to EZB from such funds and remit the balance to Celsius no later than three (3) business days following the end of each month. Nothing herein does or is intended to vary or waive either of Celsius' or EZB's rights or obligations under that or other agreements between Celsius and EZB. Each party reserves all rights under the Hosting Agreement between Celsius and EZB dated as January 27, 2022 and otherwise. |
|---|---|

**EZ Blockchain Services, LLC**

By: _Sergii Gerasymovych_

Name: Sergii Gerasymovych

Title: Managing member

Date: 06/01/2023

**Celsius Mining LLC**

By: _Chris Ferraro_
 ⎣1315E92CCA0F408...
 Chris Ferraro

Name: 

Title: Authorized Signatory

Date: 6/2/2023

**CONFIDENTIAL**

DocuSign Envelope ID: 6DB93D68-AB6B-4785-B232-AA93FBEAFFD7

## <u>Celsius/EZ Blockchain – Post-Petition Term Sheet Supplement</u>

EZ Blockchain Services LLC ("EZB") and Celsius Mining LLC ("Celsius") hereby enter into this Supplement to the Term Sheet as of the date set forth below.

WHEREAS, EZB and Celsius entered into a Post-Petition Term Sheet dated May 31, 2023 ("Term Sheet")[1];

WHEREAS, the Term Sheet sets forth the parties' rights and obligations concerning Interim Services, as defined therein;

WHEREAS, the parties desire to amend the provision of Interim Services as set forth herein.

NOW THEREFORE, the parties agree as follows.

1. Celsius shall provide to EZB an additional 1,800 miners ("Additional Miners"), which, once received, shall be included in the definition of Subject Miners as set forth in the Term Sheet.

2. The Additional Miners are and shall remain the property of Celsius.

3. For the avoidance of doubt, the parties acknowledge and agree that EZB shall provide hosting using the Additional Miners on the same terms as set forth in the Interim Services.

4. Celsius represents that Interim Services are within the ordinary course of its business and no approval from any Court is required to authorize it to enter into or perform its obligations hereunder or to effectuate the terms of the Term Sheet or this Supplement.

5. No other modifications to the Term Sheet are created or intended hereby, except that EZB will provide hosting for the Additional Miners.

**EZ Blockchain Services, LLC**                    **Celsius Mining LLC**

By: *Sergii Gerasymovych*                          By: *Chris Ferraro*

Name: Sergii Gerasymovych                          Name: Chris Ferraro

Title: Managing member                             Title: Authorized Signatory

Date: 08/17/2023                                   Date: 8/18/2023

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Term Sheet.

**CONFIDENTIAL**

DocuSign Envelope ID: 9A9C6450-07C4-4023-8BA0-0B2E858DB4BC

## Celsius/EZ Blockchain – Post-Petition Term Sheet Second Supplement

EZ Blockchain Services LLC ("EZB") and Celsius Mining LLC ("Celsius") hereby enter into this Supplement to the Term Sheet as of the date set forth below.

WHEREAS, EZB and Celsius entered into a Post-Petition Term Sheet dated May 31, 2023 ("Term Sheet")[1];

WHEREAS, EZB and Celsius entered into a Post-Petition Term Sheet supplement dated August 18, 2023;

WHEREAS, the Term Sheet as supplemented sets forth the parties' rights and obligations concerning Interim Services, as defined therein;

WHEREAS, Celsius has delivered additional equipment for hosting by EZB;

WHEREAS, the parties desire to further amend the provision of Interim Services as set forth herein.

NOW THEREFORE, the parties agree as follows.

1.     Celsius has provided EZB an additional 1,800 miners ("Second Set of Additional Miners"), which, are hereby included in the definition of Subject Miners as set forth in the Term Sheet.

2.     The Second Set of Additional Miners are and shall remain the property of Celsius.

3.     For the avoidance of doubt, the parties acknowledge and agree that EZB shall provide hosting using the Second Set of Additional Miners on the same terms as set forth in the Interim Services.

4.     Celsius represents that Interim Services are within the ordinary course of its business and no approval from any Court is required to authorize it to enter into or perform its obligations hereunder or to effectuate the terms of the Term Sheet or this Supplement.

5.     No other modifications to the Term Sheet are created or intended hereby, except that EZB will provide hosting for the Second Set of Additional Miners.

| **EZ Blockchain Services, LLC** | **Celsius Mining LLC** |
|---|---|
| By: _____ | By: _____ |
| Name: Sergii Gerasymovych | Name: Chris Ferraro |
| Title: CEO, co-founder | Title: Authorized Signatory |
| Date: 11/03/2023 | Date: 11/7/2023 |

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Term Sheet.

**CONFIDENTIAL**

DocuSign Envelope ID: 0A0C6450-07C4-4023-8DA0-0B2F6589B4BC

**CONFIDENTIAL**