Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 23-01167-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK LLC,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   CELSIUS NETWORK LIMITED,

13                   Plaintiff,

14           v.

15   EQUITIES FIRST HOLDINGS, LLC ET AL.,

16                   Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18                   United States Bankruptcy Court

19                   One Bowling Green

20                   New York, NY  10004

21

22                   October 24, 2023

23                   10:04 AM

24

25

1    B E F O R E :

2    HON MARTIN GLENN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   KAREN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    HEARING re Hybrid Hearing RE: Motion for Relief from Stay to

2    Allow for Setoff of Mutual Obligations.

3

4    HEARING re Adversary proceeding: 23-01167-mg Celsius Network

5    Limited v. Equities First Holdings, LLC et al

6    Hybrid Hearing RE: Motion to compel arbitration. (Doc# 9,

7    23, 25)

8

9    HEARING re Adversary proceeding: 23-01167-mg Celsius Network

10   Limited v. Equities First Holdings, LLC et al

11   Hybrid Pretrial Conference. (Doc ## 1 to 4)

12

13   HEARING re Adversary proceeding: 23-01167-mg Celsius Network

14   Limited v. Equities First Holdings, LLC et al

15   Hybrid Hearing RE: Debtor's Motion for Entry of an Order (I)

16   Authorizing the Debtors to File Under Seal the Adversary

17   Complaint Against Equities First Holdings, LLC and

18   Alexander Christy and Redact Certain Information Contained

19   Therein and (II) Granting Related Relief. (Doc## 2, 7, 8,

20   13, 19)

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    HOLLAND KNIGHT LLP

4         Attorneys for Joint Liquidators of Three Arrows

5         Capital, Ltd

6         10 Street James Avenue, 11th Floor

7         Boston, MA 02116

8

9    BY:  JOHN J. MONAGHAN

10

11   DLA PIPER LLP

12        Attorneys for Equities First Holdings LLC.

13        444 West Lake Street, Suite 900

14        Chicago, Illinois 60606-0089

15

16   BY:  JEFFREY SCOTT TOROSIAN

17

18   KIRKLAND AND ELLIS LLP

19        Attorneys for Debtors

20        601 Lexington Ave

21        New York, NY 10022

22

23   BY:  ELIZABETH HELEN JONES

24        T.J. McCARRICK

25

1  ICE MILLER LLP

2        Attorneys for Alexander Christy

3        One American Square, Suite 2900

4        Indianapolis, IN 46282-0200

5

6  BY:  AARON L. CASAGRANDE

7

8  ALSO PRESENT TELEPHONICALLY:

9  DIMITRY KIRSANOV

10  DAVID SCHNEIDER

11  ARTUR ABREU

12  DANIEL FRISHBERG

13  DAVID J. DALHART

14  KATHERINE AIZPURU

15  JAMES ENGEL

16  REBECCA GALLAGHER

17  CHRIS KOENIG

18  ANDREA AMULIC

19  JASMINE ARMAND

20  TAI PHAN

21  LALANA PUNDISTO

22  CHRIS BECIN

23  JEFFREY BERNSTEIN

24  INGO BEUTLER

25  MARTIN E KEDZIOR

Page 6

1    KYLE BRAY

2    JOHAN BRONGE

3    WILLIAM D SCHROEDER

4    MARTIN WILLIAMS

5    RICKIE CHANG

6    ROBERT S. DALLEY

7    CHRISTOPHER J. COCO

8    AARON COLODNY

9    KAREN CORDRY

10   SHARA CLAIRE CORNELL

11   ALEX ENGLANDER

12   CARL J. COTE

13   VTOR CUNHA

14   SANTOS CACERES

15   ANDREW CARTY

16   WARREN E. GLUCK

17   STEFFAN DAVIES

18   THOMAS DIFIORE

19   TRISTAN DIAZ

20   SHARON DOW

21   SCOTT DUFFY

22   JOHN PETER DZARAN

23   BEN EADES

24   TANZILA ZOMO

25   FLORENCE FLANNIGAN

1  JASLEIGH GEARY

2  DARIOUS GHEORGHE

3  BRADLEY GIARDIELLO

4  MICHAEL GRAUBERT

5  MIRA HAQQANI

6  SAMUEL P. HERSHEY

7  KAITLYN A. HITTELMAN

8  ALI JAMSHID FAR

9  ANNE S. KEASEY

10  VICTOR UBIERNA DE LAS HERAS

11  YARA KASS-GERGI

12  RAVI KAZA

13  DAN LATONA

14  JEAN-PHILIPPE LATREILLE

15  CATHY LAU

16  ROSS M. KWASTENIET

17  MARK S. LEONARD

18  NICOLE A. LEONARD

19  JOSEPH LEHRFELD

20  KEVIN M. MANUS

21  JEREMY MARONPOT

22  CHASE MARSH

23  CHASE A STONE

24  LAYLA MILLIGAN

25  KEITH NOYES

Page 8

1   KEITH MCCORMACK

2   KEITH WOFFORD

3   DONALD L. POYNTER

4   MILIN PATEL

5   GREGORY F. PESCE

6   MARK ROBINSON

7   WAYNE P ROTHENBERGER

8   PRIYA SAIHGAL

9   MIKE SARKISSIAN

10  NOAH M. SCHOTTENSTEIN

11  SAM SCHREIBER

12  DAVID SENES

13  MATTHEW W. SILVERMAN

14  HANNAH SIMSON

15  LUKE SPANGLER

16  COURTNEY BURKS STEADMAN

17  RAFFAELE SENESE

18  KEYAN TAJI

19  LUCY THOMSON

20  DAVID TURETSKY

21  ELVIN TURNER

22  VETON VEJSELI

23  CAROLINE WARREN

24  JOSHUA WEEDMAN

25  ZACHARY WILDES

1    TAK YEUNG

2    ANDREW YOON

3    KAILA ZAHARIS

4    JARNO BERG

5    ROBERT M. KAUFMANN

6    RAKESH PATEL

7    DREW DUFFY

8    ALEX MICHAELS

9    RICHARD L. WYNNE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  Good

3        morning, Ms. Jones.

4              MS. JONES:  Good morning, Your Honor.  Elizabeth

5        Jones of Kirkland & Ellis on behalf of the Debtors.

6              THE COURT:  Okay.

7              MS. JONES:  Your Honor, the first item on the

8        agenda today is the Three Arrows motion for relief from stay

9        that was filed at Docket 3569.  I believe counsel for Three

10       Arrows is on remotely and I'm happy to let them present

11       first as it was their motion, and then we can discuss our --

12             THE COURT:  Sure.  All right.  Who's appearing for

13       Three Arrows.

14             MR. MONAGHAN:  Your Honor, good morning.  John

15       Monaghan, counsel -- of Holland & Knight, counsel to the --

16       excuse me, joint official liquidators and Three Arrows

17       Capital.  Your Honor, the motion was filed primarily just to

18       check what -- both through the statute and under the

19       Debtors' plan is an administrative box.  Three Arrows assert

20       that it has certain BVI rights arising out of unfair

21       preference provisions under applicable BVI law in the BVI.

22       The Debtor has asserted in those proceedings a claim of

23       approximately $42 million.

24             It is the joint liquidator's assertion that under

25       applicable BVI law, that claim in the BVI is subject to

Page 11

1      setoff in accordance with a section of the insolvency law

2      down there.  As the Court well knows, 553 preserves setoff

3      rights and the Court also well knows the automatic stay

4      prevents assertion of those setoff rights, absent leave of

5      this Court.

6              The Debtors' plan that was -- is currently on file

7      adopts those very provisions by -- that the setoff rights

8      are preserved, that they are unimpaired other administrative

9      claim, but does condition the assertion of those -- of that

10     claim on bringing a motion before this Court.

11             The Debtor and the -- we as counsel to the joint

12     liquidators and the joint liquidators have conferred, have

13     proposed a form of order that does effectuate the ability to

14     preserve and to assert the setoff rights in the BVI claim

15     adjudication proceedings as a setoff and does preserve all

16     of the Debtors' rights, Your Honor, all of Celsius' rights

17     to object, to contest the validity of those of those

18     asserted rights and to also contest the appropriate place

19     for adjudication.

20             So as I said, Your Honor, the primary purpose of

21     this motion is really just to make sure that when the

22     objection is filed to the Debtors' claim in the BVI and when

23     that objection contains a counterclaim asserting setoff

24     rights, that we don't get into trouble with you, Your Honor,

25     for having violated the automatic stay or having violated

Page 12

1    the discharge injunction, that will end if the Debtor

2    confirms its plan.  And so the joint liquidators would

3    respectfully request, Your Honor, that you enter the order

4    that was submitted.  It's an updated order that was

5    submitted late yesterday afternoon for your review and

6    entry, if you approve it, Your Honor.

7            THE COURT:  And I see from the amended agenda that

8    an amended -- a modified order was submitted as ECF Document

9    No. 3880 in this case.

10           MS. JONES:  That's correct, Your Honor.

11           THE COURT:  So Ms. Jones, is that a consent,

12   consensual form of order?

13           MS. JONES:  Yes, Your Honor, that's correct, and

14   it matches the order we filed as well attached to our

15   statement and reservation of rights at 3841.  We just wanted

16   to put it on the docket as a standalone and we have no

17   objection to modifying the automatic stay for the limited

18   purpose of preserving their defense rights, and then as we

19   noted there, we'll preserve our rights and where we also

20   want to have the claim heard.

21           THE COURT:  Okay.  Does anybody else wish to be

22   heard with respect to Three Arrows' motion?  All right, it's

23   granted, then.  Thanks very much, Mr. Monaghan.  I'm glad

24   that you and the Debtors were able to work out the form of

25   the order.

1           MR. MONAGHAN:  Thank you, Your Honor.  Thank you

2      very much.  And Your Honor, with all respect, I have nothing

3      else before you today.  May I be excused from the rest of

4      hearing?

5           THE COURT:  You may.  Do I have a Word copy of the

6      order?

7           MS. JONES:  We'll send that to chambers.

8           THE COURT:  You'll send.  Send it to chambers and

9      it'll be entered.  Thank you, Mr. Monaghan.

10           MR. MONAGHAN:  Thank you very much, Your Honor.

11           THE COURT:  Okay.  So the next matter is in the

12      adversary proceeding, Celsius Network Limited v. Equities

13      First Holdings LLC, Adversary Proceeding 23-01167.

14           MS. JONES:  That's correct, Your Honor, and you

15      will get to hear from my colleague, Mr. McCarrick on that

16      one.

17           THE COURT:  Okay.  Thank you.  Mr. McCarrick?

18           MR. McCARRICK:  T.J. McCarrick, Kirkland & Ellis,

19      on behalf of the Debtors, Your Honor.  I think because this

20      is EFH and Mr. Christy's motion, I'll turn the podium over

21      to them.

22           THE COURT:  Okay.  Thank you very much.

23           MR. TOROSIAN:  Good morning, Your Honor, Jeff

24      Torosian from DLA Piper on behalf of Equities First Holdings

25      LLC.

1          THE COURT:  Could you have added more appearances

2     on the front of your pleading?  How many offices do you have

3     involved in this?

4          MR. TOROSIAN:  Well, we have two, but then we also

5     have co-counsel from IceMiller who represents Mr. Christy

6     and they have, I believe, three --

7          THE COURT:  I'm teasing a little bit.  That's all

8     right.

9          MR. TOROSIAN:  Well, we all ate dinner in New York

10    last night, so --

11         THE COURT:  I hope you had a nice dinner.  Who you

12    charging it to?

13         MR. TOROSIAN:  Business development, Your Honor.

14    Your Honor, we have two motions to be heard today.  One is

15    the motion seal which Debtors filed, but obviously we have

16    the burden on, and the other is motion to compel

17    arbitration.  We're happy to take them in any order.

18         THE COURT:  Tell me what -- I'm not a fan of

19    sealing.  Make that clear.

20         MR. TOROSIAN:  Sure.

21         THE COURT:  I've got a whole line of opinions that

22    deal with sealing.  I do it when it's appropriate.

23    Obviously, without telling me the precise language that you

24    -- give me the gist of what this sealing relates to.

25         MR. TOROSIAN:  Sure.  So there are a few bases for

Page 15

1    the sealing.  So first off, it's tied hand in hand somewhat

2    with the arbitration motion because this is a matter that

3    should be arbitrated, which we'll deal with in a separate

4    argument.  That arbitration will be wholly confidential.

5              THE COURT:  I think so, but that may not be.  May

6    not remain that way.

7              MR. TOROSIAN:  Well, it should be.  It's supposed

8    to be under the parties' agreement and --

9              THE COURT:  Well, look.  Let me make one thing

10   crystal clear.  The parties' agreement counts for very

11   little as to whether I permit sealing.  It's common,

12   appropriate for the parties in the contract to agree on

13   confidentiality, to agree in discovery for confidentiality.

14             I don't -- it's rare that I ever sort of step in

15   the way.  But all of that changes when a proceeding is filed

16   in a Court.  I understand you say it should be arbitrated

17   and that may be right, but that doesn't affect the standards

18   under Bankruptcy Code 107(b) as to what should be sealed and

19   what should be part of the public record.  I just want to

20   make that clear that.

21             MR. TOROSIAN:  Understood.

22             THE COURT:  I've got a long line of decisions that

23   basically deals with that, and I respect the fact where

24   there is confidentiality provision in a contract or

25   discovery stipulation, it's appropriate to bring the matter

1    here; but quite honestly, it counts for little as to whether

2    or not I permit sealing a matter that relates to a

3    bankruptcy case.

4                MR. TOROSIAN:  Understood.  We also do have

5    particular confidential information that is within the

6    complaint itself.  Obviously, we think we prefer that the

7    whole complaint was sealed pending --

8                THE COURT:  It's not.

9                MR. TOROSIAN:  -- arbitration --

10               THE COURT:  That isn't happening.

11               MR. TOROSIAN:  I understand that.  But there is --

12               THE COURT:  It gets redacted.

13               MR. TOROSIAN:  Yes.

14               THE COURT:  And the question is, what should be

15   redacted.

16               MR. TOROSIAN:  And there is a myriad financial

17   private information, competitive information of Equities

18   First Holdings within the complaint.  First of all, the

19   parties agreements, which have confidentiality clauses.

20               THE COURT:  Say that again?  I'm sorry.

21               MR. TOROSIAN:  The parties' agreements that are at

22   issue in the case.  There are several agreements that are

23   attached to the complaint.  They have confidentiality

24   clauses.  Those --

25               THE COURT:  But that -- that let me come back to

Page 17

1    that.  Okay.  That counts for almost nothing when a lawsuit

2    is filed in my Court, even where the disposition is an order

3    compelling arbitration.  Okay.  So you can forget that right

4    now.  The question is reduction, not wholesale sealing.

5              MR. TOROSIAN:  No, I understand.  I'm getting to

6    that, Your Honor.  The agreements themselves are attached to

7    the complaint.  Those agreements have financial terms in

8    them.  We believe those should, the very least, be redacted.

9              THE COURT:  Tell me why.

10             MR. TOROSIAN:  Why?

11             THE COURT:  Yes.

12             MR. TOROSIAN:  Because that is competitive

13   information for other trades and other activity that

14   Equities First negotiates, and with that information, other

15   counterparties could negotiate different deals.  Other

16   competitors could replicate the same --

17             THE COURT:  Now you're getting to what the

18   argument should be.

19             MR. TOROSIAN:  Yes.  And -- look, let me take a

20   step back.  Before this case was filed, there were 408

21   settlement negotiations, and those negotiations involved

22   Equities First Holdings providing under Your Honor's

23   protective order highly confidential materials on every

24   single financial piece of data this company has, this

25   privately held company has, small privately held company,

Page 18

1    all of its financials, bank statements, revenue, profits,

2    forecasts, pipeline deals.

3              THE COURT:  Is that an issue?  I mean, that's not

4    -- that's in the complaint?

5              MR. TOROSIAN:  That's all over the complaint.

6              THE COURT:  Okay.

7              MR. TOROSIAN:  That's largely what the complaint

8    is based on.  Their allegations of insolvency are all based

9    on that data that was given to them under the auspices of

10   408, but also under Your Honor's protective order.

11             THE COURT:  Okay.

12             MR. TOROSIAN:  So if we are going to file a

13   redacted version of this complaint to be held under seal,

14   all of that financial data, which the only reason they have

15   and the only reason they were able to allege is because of

16   the 408, highly confidential settlement negotiations, should

17   be redacted from the complaint.

18             Your Honor, also as part of those discussions, we

19   gave access to EFH's financial professionals internally to

20   explain all of these documents which also found its way into

21   the complaint.  Those professionals were subject to

22   discussions with, I believe, a dozen or so financial

23   professionals on the UCC side and the Debtors' side, all as

24   part of the 408 settlement negotiations, all as highly

25   confidential negotiations under Your Honor's protective

Page 19

1    order.

2            We understand that the Debtors filed, Celsius at

3    least, filed this complaint under seal and gave us the

4    burden and they said they had no, really, dog in this fight.

5    They didn't believe it's confidential, but they didn't

6    reference in that motion to seal the protective order, which

7    is where all this information came from.  It all came from

8    highly confidential information under the protective order.

9            THE COURT:  Again, I signed, you know -- and I

10   don't know whether this one was submitted to me or not.  I

11   mean, I regularly approve discovery confidentiality orders.

12   The issue becomes when it becomes relevant to a proceeding

13   before me and then the 107(b) standards kick in and

14   determine the outcome.

15           I am -- you reference information that was given

16   to them, you've described as highly confidential financial

17   information about First Equities that were provided part of

18   settlement negotiations, et cetera.  I generally agree that

19   that can be maintained under seal.  The issue for me is what

20   gets redacted and what doesn't get redacted.

21           MR. TOROSIAN:  And we provided, Your Honor, I

22   believe, in our response to the proposed redacted complaint

23   --

24           THE COURT:  Well, when you say that's your

25   proposed, does that reflect discussions between you and the

Page 20

1    Debtors' counsel to try and resolve -- I mean, it's not a

2    one-sided --

3              MR. TOROSIAN:  Understood and the difficulty there

4    is the Debtors didn't follow the protective order guidelines

5    for how to do that.  If they did, we would have had that

6    discussion.

7              THE COURT:  Well --

8              MR. TOROSIAN:  We have not had that discussion.

9              THE COURT:  We're here today, and what's going to

10   happen today is I'm going to require that counsel meet and

11   confer promptly to try and agree on appropriate redactions,

12   and to the extent that you can't agree, you can submit it to

13   me in camera so I can resolve the remaining disputes.

14             MR. TOROSIAN:  Absolutely.

15             THE COURT:  I'm not -- I'm really try not trying

16   to be difficult --

17             MR. TOROSIAN:  We're happy to do that.

18             THE COURT:  It just -- what's what has to happen.

19             MR. TOROSIAN:  Yes, absolutely.  And we agree, and

20   that's why we submitted the proposed redactions.  We have

21   not heard from counsel.  We're happy to do that.  And we

22   believe, Your Honor, I think we even said in the response,

23   if there's a dispute Your Honor should review it in camera,

24   and I can't imagine there'd be a dispute, honestly.

25             THE COURT:  I think you'll work it out.

Page 21

1              MR. TOROSIAN:  Yes.

2              THE COURT:  I -- you know, I say that because it's

3    been rare when I've ultimately had to be the one who decided

4    in the end.

5              MR. TOROSIAN:  Right.

6              THE COURT:  Okay.  So that's what -- I'm not

7    taking it under submission today because I'm going to -- I'm

8    adjourning it.  I'm going to require you to meet and confer,

9    and here's what I would propose.  To the extent you can,

10   prepare -- if you can work it out entirely, submit a

11   proposed revised pleading with the redactions.  To the

12   extent that you can't resolve certain issues, submit one

13   that shows in different colors, what your position is, what

14   their position is and I'll -- I hopefully it won't -- if

15   necessary, we can do another hearing.  Hopefully it won't.

16   Usually what I just do if that happens, there may be a

17   handful of things you can't agree on.  I'll just make the

18   decision and do it.  We won't come back here and have

19   another hearing.

20             MR. TOROSIAN:  And Your Honor --

21             THE COURT:  I'm not trying to prolong --

22             MR. TOROSIAN:  No, I think that's -- I think

23   that's a perfectly acceptable to us procedure.  The Debtors

24   did not file a reply brief on this motion.  They may agree

25   today.  I haven't heard from them to our redactions.  I

Page 22

```
 1   don't know.  But we're happy to do that in a short time

 2   period and --

 3            THE COURT:  Okay.

 4            MR. TOROSIAN:  -- get back to you.

 5            THE COURT:  Mr. McCarrick, are you going to

 6   address this?

 7            MR. McCARRICK:  T.J. McCarrick, Kirkland & Ellis,

 8   on behalf of the Debtors.  The procedure Your Honor outlined

 9   makes good sense to us.  We're happy to meet and confer with

10   EFH over the proposed redactions.  We would note that we

11   don't agree that much of the information that was exchanged

12   was in the context of 408 negotiations rather than

13   negotiating --

14            THE COURT:  That's kind of -- that really is a

15   different issue.

16            MR. McCARRICK:  Yes.

17            THE COURT:  Okay?  You got information, whether it

18   was 408, not 408.  Undoubtedly, if there were discovery,

19   you'd probably be asking for the same thing.  But the issue

20   on this is whether or not it should be redacted from the

21   pleading.

22            MR. McCARRICK:  Yes, and we're happy to meet and

23   confer with that promptly.

24            THE COURT:  All right.  Okay.  So you can move on

25   to your motion to compel arbitration.
```

1              MR. TOROSIAN:  Your Honor, again, Jeff Torosian,

2       DLA Piper, on behalf of Equities First Holdings.  Your

3       Honor, our -- the essential question that we're asking

4       ourselves -- obviously, we're happy to be in this beautiful

5       courthouse -- is why are we here.  This is a straightforward

6       contract claim against a company that is not a party to this

7       bankruptcy.  EFH, which is what I refer to as Equities First

8       Holdings, is not a Debtor, of course, although many of the

9       claims against it here seem to think it is.

10              It's not.  It's a privately held LLC based in

11      Indianapolis.  It's not a party to this bankruptcy and

12      importantly, it hasn't even filed a proof of claim in this

13      bankruptcy.  The contracts on which Celsius bases its claims

14      here have broad and all-encompassing arbitration clauses.

15      They call for the arbitration of any claim, dispute, or

16      controversy relating to the agreements or the relationships

17      resulting from the agreements.

18              And the only relationship here between these

19      parties is these agreements and the actions between them as

20      a result.  The arbitration clauses even state that they're

21      supposed to be given the broadest possible meaning.  The

22      complaint itself pointed these arbitration clauses out in

23      Paragraph 14.  In fact, the whole complaint looks like it

24      was drafted for the purposes of arbitration.  Rather than

25      seeking relief from the Court, the complaint says in its

Page 24

1    claims that it asks for relief from the panel.  The claims

2    talk about a final hearing rather than a trial.

3            Making matters more inconsistent, we believe,

4    Celsius may be a mere days away from getting its plan

5    confirmed, which would include an ADR procedure for all

6    claims, including this --

7            THE COURT:  ADR is, in an effort to consensually

8    resolve disputes, but go ahead.

9            MR. TOROSIAN:  Well, I agree and I have not been

10   part of the trial that's been going on on the plan, but our

11   understanding of the plan ADR procedures is there's a

12   mediation component.

13           THE COURT:  There is.

14           MR. TOROSIAN:  Which we understand it is not part

15   of our agreement, so we're happy to mediate, frankly.  But

16   then there's also an arbitration component which gives each

17   of the defendants the option to either arbitrate under that

18   component or come back to Your Honor and have the case

19   decided there.  We -- all the other claims, dozens of other

20   claims for hundreds of millions of dollars are going through

21   this arbitration procedure.  We --

22           THE COURT:  Have you actually tried to discuss

23   whether mediation is the best way to avoid either the

24   litigation or the arbitration?

25           MR. TOROSIAN:  We sought a meeting with counsel

Page 25

1   and parties in Chicago and were rebuffed for several months.

2   So yes, we have --

3            THE COURT:  But you're standing here today and I

4   will probably ask Mr. McCarrick, is the Debtor prepared to

5   mediate.  I mean, if -- there have been a number of really

6   difficult disputes that have arisen in this case, sometimes

7   an adversary proceedings, sometimes in the main case, and

8   remarkably, most if not all of those have been resolved in

9   mediation.

10           MR. TOROSIAN:  We're happy to mediate, but we

11   still prefer, obviously, if mediation is not successful, to

12   have this case arbitrated pursuant to the parties'

13   agreement.  The parties' agreements are not too dissimilar

14   from Your Honor's ADR procedures for arbitration, but there

15   are some nuanced differences and we prefer to be in the

16   arbitration that the parties agreed to as part of their

17   agreement.

18           Why they filed here, why they filed here now, and

19   why they won't consent to this motion is a mystery to us,

20   considering in a matter of weeks, all other claims are going

21   through Your Honors ADR procedure, hundreds of millions of

22   dollars of claims that are very important, just like this

23   claim might be important to them, and there are dozens of

24   them.

25           THE COURT:  So, what's not clear to me and that I

1   do want you to address is to whether all of the claims

2   asserted in the complaint against all of the parties are

3   arbitrable or whether some of them are subject to

4   adjudication in the Court.  So one of the areas where I do

5   want to hear from both sides is with respect to statutory

6   avoidance claims.  And when I say statutory, either under

7   the federal bankruptcy code or under applicable non-

8   bankruptcy state law.

9            MR. TOROSIAN:  Sure.  Well, let me take that in

10  two different ways.  So first off, as to the arbitration

11  clauses themselves and what they cover, Celsius concedes ad

12  Counts 2, 3, 4, 5, and 6, so 2 through 6, are covered by the

13  arbitration clauses.  That's been conceded.  We believe the

14  disputes cover the rest as well, because all of the rest of

15  the disputes relate to the parties' agreement, parties'

16  relationship, which the only relationship between these

17  parties was as a result of the agreements that are attached

18  to the complaint.  All of those other claims are still

19  predicated on that relationship and the allegation that

20  defendants breached those contracts --

21           THE COURT:  But you know, avoidance claims are

22  often predicated on the parties' relationship.

23           MR. TOROSIAN:  I -- sorry.

24           THE COURT:  And, you know, I've written multiple

25  opinions with respect to, for example, whether avoidance

Page 27

1    claims are arbitrable or not.  If they're estate claims,

2    they're not, generally speaking.  You are otherwise

3    (indiscernible), but so that's why it's -- you know, it's

4    rare that an avoidable transaction has occurred between two

5    strangers and the fact that underlying a relationship is a

6    contract doesn't determine whether or not avoidance claims

7    are arbitrable or not arbitrable.

8              MR. TOROSIAN:  Well, Your Honor, I would argue

9    that the arbitration clause here, which is not just --

10             THE COURT:  The arbitration clause doesn't --

11   can't determine if something is an estate claim.  The

12   arbitration -- you know, the estate is not a party to the

13   arbitration agreement.  The Debtor was a part to the

14   arbitration agreement.  There's no dispute about that.

15   Okay, but -- so I disagree with you with respect to, you

16   know, the relationship arose from a contract, but that does

17   not insulate from challenge of voidable transactions, if

18   there are such transactions.

19             MR. TOROSIAN:  I think one distinction, Your

20   Honor, here is EFH is not a debtor.  So if EFH brought a

21   claim here for an avoidance claim and the defendant said,

22   well, wait a minute, there's an arbitration clause, I agree

23   with you.  EFH really might not be bound by that --

24             THE COURT:  So, look.  What -- among my questions

25   are whether what the Debtor is seeking to avoid is a

Page 28

1    transfer of property of the estate, property of the Debtor,

2    property of the estate, or whether what they're seeking to

3    challenge -- you say that their avoidance claims are really

4    disguised breach of contract claims.  And I understand that

5    among the underlying claims is a transfer by First Equities

6    to --  what, I don't know whether he was the chairman or the

7    principal of the company.  What is there that shows whose

8    property it was?

9              For example, if the property in the possession of

10   First Equities was the Debtor's property and First Equity

11   transferred that property to someone else.  In my view, I'd

12   like to know why that isn't a proper avoidance claim that is

13   not subject to arbitration.

14             MR. TOROSIAN:  The main reason, Your Honor, is

15   because that's not the claim.

16             THE COURT:  Well, that's --

17             MR. TOROSIAN:  They never --

18             THE COURT:  I'm giving you a chance to explain.

19             MR. TOROSIAN:  And the claim here, EFH is not a

20   Debtor.  EFH can transfer property --

21             THE COURT:  No, it can transfer its own property,

22   but --

23             MR. TOROSIAN:  Right.

24             THE COURT:  -- it can't transfer -- so what do I

25   look at as to whose property it was that was transferred?

1              MR. TOROSIAN:  They have not made an allegation

2      that their property held by EFH was transferred to Mr.

3      Christy.  They had not made that allegation.

4              THE COURT:  So where do I -- where --

5              MR. TOROSIAN:  They've said that --

6              THE COURT:  And show me in a pleading where -- or

7      in your motion, evidence that shows it was property of First

8      Equities that was allegedly transferred to its principal.

9              MR. TOROSIAN:  That's the allegation, Your Honor.

10     They -- the allegation is simply that money was paid as a

11     distribution to Mr. Christy.  That's the only allegation.

12     They're not saying it's their --

13             THE COURT:  That's what I like to know.

14             MR. TOROSIAN:  -- it's their identifiable money.

15             THE COURT:  I'm going to ask Mr. McCarrick that

16     question.  Is there something where it's alleged that it was

17     property of the estate, property of the Debtor prior to

18     bankruptcy that was transferred.

19             MR. TOROSIAN:  No.  There's nothing in the

20     complaint that alleges that with respect  to the

21     distribution to --

22             THE COURT:  Okay.

23             MR. TOROSIAN:  -- Mr. Christy.  It's just money

24     that's paid as a distribution to presumably Equity.  That's

25     the allegation they're making.  EFH is not a debtor.

Page 30

1    They're acting like --

2            THE COURT:  You've already said that.

3            MR. TOROSIAN:  They're stepping in issues --

4            THE COURT:  I understand they're not debtor.

5            MR. TOROSIAN:  It would be different --

6            THE COURT:  But that would not insulate them from

7    an avoidance claim if they had transferred property of the

8    debtor.  I understand, they're not a debtor.

9            MR. TOROSIAN:  Right.

10           THE COURT:  But if they held in trust, if they

11   held -- if there was something that showed that the assets

12   or property that the debtor transferred to First Equity

13   remained property of the Debtor in the safekeeping of First

14   Equity and then they went ahead and transferred it to

15   someone else.

16           MR. TOROSIAN:  Right.

17           THE COURT:  Okay.  That, if that were the

18   allegation I was faced with, it would be a serious question

19   whether, you know, an avoidance claim not subject to the

20   arbitration agreement would exist in this case.

21           MR. TOROSIAN:  And I understand Your Honor's

22   position on that.  Those aren't he allegations.  That's just

23   not the claim here.  They do have a claim for coins, but the

24   agreements at issue say that those coins are not -- they're

25   not collateral in the traditional sense.

Page 31

1            THE COURT:  Is there -- can you point me to

2    language in the agreements that shows that property that

3    Celsius transferred to First Equities remained property of

4    Celsius?

5            MR. TOROSIAN:  We can.  So there are two --

6            THE COURT:  Is there something in your -- is there

7    something in your agreements that says when you transfer

8    crypto to us, it becomes our property to do with as we

9    please?

10            MR. TOROSIAN:  We will point -- we will point that

11    to Your Honor with respect to the coins.  The other aspect

12    of it is just money.  But with respect to the coins -- Your

13    Honor, I'm being handed the master loan agreement which is

14    Exhibit C, Section 2.8 titled "Authority and Rights of the

15    Pledged Collateral."  That section says, "The borrower

16    acknowledges that the lender has all rights, title,

17    ownership, and interest associated with the pledged

18    collateral during the term of this agreement."

19            THE COURT:  Okay.  That's what I'm asking about.

20            MR. TOROSIAN:  Yeah, and --

21            THE COURT:  Okay.

22            MR. TOROSIAN:  -- hopefully it provided Your Honor

23    with an answer.  But that's with respect to claims.  The

24    other avoidance action, or if you'd call it that, it's a

25    state law, fraudulent transfer action deals with just a

Page 32

1    distribution that EFH made of money to Mr. Christy that has

2    nothing to do with their property and --

3            THE COURT:  Was it money that Celsius transferred

4    --

5            MR. TOROSIAN:  No.

6            THE COURT:  -- to First -- okay.

7            MR. TOROSIAN:  And that's not the allegation.

8            THE COURT:  Okay.

9            MR. TOROSIAN:  Your Honor, the other issue is core

10   versus noncore.  I think we've dealt with that fairly

11   explicitly in the briefs.  We believe under Orion and U.S.

12   Lines, the Second Circuit is clear.  A post-petition breach

13   of a prepetition contract --

14           THE COURT:  Be careful when you cite U.S. Lines,

15   because the determination by the Second Circuit was

16   affirming that the claim again in the U.S. Lines was subject

17   to adjudication by the Bankruptcy Court.

18           MR. TOROSIAN:  Well, Your Honor, we believe the

19   Second Circuit was clear, the claim for a post-petition

20   breach of a prepetition contract when the defendant has not

21   a group of claim is not core claim.  It's a garden variety

22   breach of contract claim.  If this would be a core claim,

23   then everything's a core claim and that's not what the

24   Second Circuit hold, Your Honor.

25           THE COURT:  Okay.

1          MR. TOROSIAN:  Happy to answer any --

2          THE COURT:  All right, thank you very much.

3          MR. TOROSIAN:  Thank you.

4          THE COURT:  Mr. McCarrick?

5          MR. TOROSIAN:  Your Honor, if I may, I believe my

6     co-counsel on behalf of Mr. Christy wanted to address --

7          THE COURT:  Okay.  Let me hear from -- go ahead.

8          MR. CASAGRANDE:  Good morning, Your Honor.  Aaron

9     Casagrande from IceMiller on behalf of Alexander Christy.  I

10    was going to speak to you today with respect to the claims

11    against Mr. Christy in his individual capacity and why we

12    believe the arbitration agreements in the underlying loan

13    documents and master loan agreements require arbitration --

14         THE COURT:  So four of your offices have appeared

15    in -- on this pleading.

16         MR. CASAGRANDE:  Three, I think:  Indianapolis,

17    Chicago --

18         THE COURT:  No, four.  Indianapolis, Chicago,

19    Baltimore, and New York.  That's four.

20         MR. CASAGRANDE:  Yes.  Our co-counsel Allison,

21    yes.  Forgot about that.

22         THE COURT:  And you're from Baltimore?

23         MR. CASAGRANDE:  I'm from Baltimore.  So Your

24    Honor, the claims against Mr. Christy in his individual

25    capacity here all arise out of his conduct as the CEO and

Page 34

1    founder of EFH.  They are not independent claims against him

2    with respect to conduct that is not tied to his position as

3    CEO and founder of EFH.

4         To attempt to avoid this fact in Celsius'

5    opposition, they tried to create a distinction and said that

6    the claims asserted against him were brought in his

7    individual capacity, but there are no allegations in the

8    complaint of any conduct by Mr. Christy in his individual

9    capacity.  The only allegations in the complaint with

10   respect to Mr. Christy relate to his receipt of

11   distributions from EFH, the company of which he is the CEO

12   and founder.

13        Like I said, the claims against Mr. Christy arise

14   out of the loan agreements.  Count 1 of the complaint is

15   based on a provision of the loan agreement that required EFH

16   to make certain representations and warranties about

17   distributions to people such as Mr. Christy and other

18   insiders.  Moreover, the claims are all predicated on Mr.

19   Christy -- or sorry, are all predicated on Celsius

20   prevailing on its underlying contract claims against EFH.

21        What I really want to discuss is the theory of

22   estoppel and why that theory here requires arbitration of

23   the claims against Mr. Christy by Celsius.  In defendant's

24   opening papers, we cite to the decision of Revis v. Schwartz

25   which contains a thorough discussion of this issue.  Of

Page 35

1    note, the Court recognized the fundamental principle

2    underlying this theory of estoppel.  It's a necessary rule

3    of application to prevent (indiscernible) of arbitration

4    agreements and to effectuate the intent of signatory parties

5    to arbitrate disputes.

6           In essence, it's to prevent what happened here by

7    suing an officer or director of a company in an attempt to

8    avoid an arbitration provision and an agreement with the

9    company itself.

10           We also cited DeGraw Construction Group v. McGowan

11   Builders on that same point in our opening papers.

12   Plaintiff makes no attempt to address that caselaw.  Simply,

13   they cite to DeGraw and say only signatories to an

14   arbitration agreement can enforce an arbitration agreement,

15   but that's not what DeGraw stands for and that's not what

16   the caselaw stands for.

17           I also want to briefly highlight a decision that

18   we cited in our reply brief, the (indiscernible) decision.

19   I think that decision is particularly relevant to the

20   dispute here.  There, the Southern District reiterated that

21   a non-signatory to an arbitration agreement may compel

22   arbitration under estoppel when two things occur:  there's a

23   close relationship between the parties and controversies

24   involved; and two, the signatory's claims against the non-

25   signatory are intimately found and intertwined with the

Page 36

1    underlying relationship between the parties, essentially the

2    contract that contained the arbitration agreement.

3            There, the Court found that the close relationship

4    factor was satisfied because the defendants were the

5    president and CEO and the controlling shareholder of the

6    entity subject to the arbitration agreement.  Similarly

7    here, as I've already noted, Mr. Christy is the founder and

8    CEO of EFH, the entity that has the contractual right to

9    arbitrate its disputes with Celsius.

10           The (indiscernible) court also found that the

11   claims asserted by plaintiff against the non-signatory

12   defendants were intertwined with the underlying terms of the

13   agreement.  Court found that that element of the test was

14   satisfied.  The Court continued to compel arbitration of not

15   only the underlying contractual claims that were directly

16   out of the contract, but the related claims of conversion,

17   fraud, tortious interference, breach of a personal

18   guarantee, and fiduciary duty.

19           Essentially, the Court found that all of those

20   claims were derived from the relationship that had the

21   arbitration agreement, the contract had the arbitration

22   agreement, and compelled arbitration of all of those

23   disputes.  That's the same here.  All of the claims against

24   Mr. Christy are intertwined with the underlying loan

25   agreements and the relationship that was created by those

Page 37

1    documents.

2          Indeed, Courts have found that when a party

3    depends on the provision of an underlying contract that

4    contains a arbitration agreement against a non-signatory,

5    that's precisely the type of situation in which the non-

6    signatory has the right to seek to compel arbitration of

7    claims asserted against it.

8          By way of example, in Paragraph 33 of the

9    complaint, plaintiff describes a provision of the loan

10   agreements that represented and warranted certain facts and

11   limitations with respect to distributions to Mr. Christy.

12   Plaintiffs alleged that Mr. Christy and EFH violated that.

13   So again, that part of their claim which ties through all of

14   the claims arises out of the loan agreements.

15          Similarly, Paragraph 48 alleges that distributions

16   were completed in violation of the loan agreements and seeks

17   injunctive relieve, again, throughout the entire complaint,

18   all of the claims against Mr. Christy tie back to the

19   provisions of the loan agreement.  And again, we would

20   assert that he's entitled to seek arbitration of the

21   disputes against him as well.

22          I don't know if Your Honor has any questions, but

23   I was mainly going to speak on that issue today.

24          THE COURT:  Okay.  Thank you very much.

25          MR. McCARRICK:  Good morning, Your Honor.  T.J.

Page 38

1    McCarrick, Kirkland & Ellis, on behalf of the Debtors.  I

2    just want to begin with the mediation point that counsel had

3    had raised.  We would note that they proposed a meeting, not

4    any formal mediation.  We would be open to discussing that.

5              THE COURT:  What's your position on a mediation?

6              MR. McCARRICK:  We would be open to discussing

7    that with them, including the logistics, subject to having a

8    qualified mediator.  That's something we're happy to explore

9    with them, now that they've made the overture.

10             THE COURT:  Well, I'm not sure it was a voluntary

11   overture.  It was result of my questions.  So I'll just say

12   now, I'm going to take the matter under submission.  But I

13   expect you to confer promptly about mediation, and what I

14   would like you to try and do is agree on a mediator.  There

15   are a lot of good mediators and, you know, report back to me

16   by Thursday, whether you've been able to agree on mediation

17   and hopefully the selection of a mediator.

18             I have a little bit on my plate at the moment.  I

19   don't expect I'm going to be issuing a decision on this in

20   the next few days; let me put it that way.  What I would

21   hope would happen is that in fact, you would agree on a

22   mediator.  You would set up a prompt schedule for mediation

23   and take a real serious crack at trying to resolve this.

24   That's -- you know, that has successfully occurred in a

25   number of the matters in the Celsius case, either

Page 39

1    adversaries or adversary proceedings or in -- within the

2    main case and, you know, some get resolved, some don't, but

3    you know, it may be your agreements have provisions about

4    mediation and arbitration and everything.  It's not going to

5    get resolved in the next week; let's put it that way.  I got

6    a lot going on and if you're able to reach -- if you can't

7    reach an agreement, just put that in writing.  I don't need

8    the details.  If you can, give me a little bit more flavor

9    whether you can work out an agreement on a mediator,

10   schedule, et cetera.

11           MR. TOROSIAN:  Your Honor, can I just be heard on

12   this?

13           THE COURT:  Yeah.

14           MR. TOROSIAN:  Again, Jeff Torosian for EFH.

15   We're happy to mediate.  We're not going to -- I'm sure

16   we'll reach agreement.  I'm just looking ahead.  The only

17   hiccup I can see, and I don't want to speak for Celsius, is

18   that these claims will be going to the litigation trust to

19   be run by the litigation trustee.  I don't know if they'll

20   be in a position --

21           THE COURT:  A, they got to get plan confirmed.

22           MR. TOROSIAN:  Yeah, exactly.

23           THE COURT:  And B, it would have to get to its

24   effective date, which is not -- there's -- under the current

25   plan that's proposed, there are many steps before a plan

Page 40

1    could become effective, even assuming -- so --

2         MR. TOROSIAN:  As long as they have the right

3    people in the room in a mediation and not have to defer to a

4    future time period, I think we'd be happy to --

5         THE COURT:  Okay.

6         MR. McCARRICK:  We'll make sure the right people

7    are in the room.  Okay.  Your Honor, EFH's motion to compel

8    should be denied, at least in part.  I'd like to divide the

9    analysis along two axes, first by defendant, and second by

10   claim.  So picking up where my colleague left off, our

11   position is that Mr. Christy cannot invoke the benefit of

12   the arbitration clauses.  No one here disputes that EFH and

13   Celsius agreed to arbitrate certain disputes that are

14   enumerated in the relevant arbitration clauses, but Celsius

15   never agreed to arbitrate its disputes with Mr. Christy and

16   he has no right to invoke those agreements.

17        Just a level set about the subject matter of the

18   claims are alleged against Mr. Christy, which I think help

19   frame things.  First is Count 1 for injunctive relief and

20   that's to prevent transfers of assets, property, or payments

21   to Mr. Christy from EFH.  And I will come back to Your

22   Honor's question when we go claim by claim about where the

23   complaint is it alleged that these are estate assets.  The

24   second claim or the next bucket of claims against Mr.

25   Christy are  Counts 8, 9, and 10, and those are various

Page 41

1  flavors of fraudulent transfer claims as I think Your Honor

2  is aware.

3          So EFH argues that these claims are arbitrable

4  under an agency theory and under an estoppel theory.

5  Neither one of those has merit.  As to the agency theory,

6  EFH rightly notes that agents sometimes can lay benefit to

7  the -- to arbitration clauses that are entered into by their

8  principals, but that truism doesn't answer the specific

9  question that's presented here, which is whether Mr.

10  Christy's receipt of certain distributions or so-called

11  bonus payments were in his capacity as an agent of EFH, and

12  it plainly wasn't.

13          Mr. Christy didn't accept the distributions on

14  half of EFH.  They're not received into an EFH bank account.

15  They're accepted into Mr. Christy's account, and I would be

16  surprised if counsel here represented today that those

17  payments are in fact property of EFH rather than Mr.

18  Christy.  And I think --

19          THE COURT:  But --

20          MR. McCARRICK:  Yes, Your Honor.

21          THE COURT:  Do you contend that the funds that

22  were paid to Mr. Christy were property of the estate?

23          MR. McCARRICK:  Our position on that, Your Honor,

24  would be yes, insofar as it is chipping away, I think, at

25  the value of the claims.  So we can jump to that, Your

Page 42

1      Honor, if you'd like.

2              In terms of the complaint in particular, if you go

3      to Paragraph 48, this is where it's referring to the

4      transfers to other creditors and insiders like Mr. Christy

5      and it says "frustrating, jeopardizing Celsius' efforts to

6      recover property of the Chapter 11 estate."  And I think

7      when you think about the way --

8              THE COURT:  Well, what's the property of the

9      Chapter 11 estate?

10             MR. McCARRICK:  That would be the value of the

11     claim, Your Honor, that we are entitled to.  And if it is

12     true under the fraudulent transfer claim that EFH is

13     insolvent, those transfers are diminishing and wasting

14     estate assets and chipping away at the pro rata value that

15     we would be able to recover from EFH.

16             THE COURT:  Well, it's not estate property.  It

17     may be that you have a claim and it's -- you know, your firm

18     didn't handle the StakeHound case, but I'm sure you're

19     familiar with it and from my -- you may disagree with me,

20     but important to me is, whose property was it.  That's why I

21     asked counsel to -- what is it that addresses whose property

22     it was not, whether not whether you -- not whether Celsius

23     has a good claim, that may become more difficult to recover.

24     But the injunction is -- you know, this in part where Grupo

25     Mexicano comes into play that that was precisely an issue in

Page 43

```
 1   StakeHound.  Go ahead.

 2            MR. McCARRICK:  Your Honor, I guess I would also

 3   say to the extent that you don't think it's property of the

 4   estate --

 5            THE COURT:  You're looking for a prejudgment

 6   remedy --

 7            MR. McCARRICK:  Yeah.

 8            THE COURT:  -- against them when it's not estate

 9   property.  It may be contractually they agreed that they

10   wouldn't make certain transfers to Christy, and you say they

11   breached -- one of the things you say is they breached the

12   contract by doing that.

13            MR. McCARRICK:  What I would say is those were two

14   analytically independent claims, Your Honor.  Yes, there is

15   a breach of representation claim against Mr. Christy, based

16   on the representations that EFH made about who was getting

17   paid during a specific period of time.  But Celsius doesn't

18   have to prevail on that claim in order to prevail on its

19   fraudulent conveyance claim, and what I would say is, even

20   set aside whether or not the property that was transferred

21   to Mr. Christy is the property of the estate, we still don't

22   think that falls within the scope of the arbitration

23   clauses.

24            And the reason we don't think it falls within the

25   scope of the arbitration clauses is twofold.  First, EFH
```

1    invokes the end-relationships language from the MLAs in

2    support of its arguments -- in support of its argument, the

3    fraudulent transfer claims are not -- or are

4    (indiscernible), excuse me.  The first thing I would note is

5    those MLAs are only implicated for Celsius' turnover claims.

6    It is the language in the dollarized tranche agreements

7    which are Exhibits F through N, which do not contain that

8    relationships language, that would be relevant for purposes

9    --

10          THE COURT:  Which exhibits again?

11          MR. McCARRICK:  Exhibits F through N.  And that

12   does not have the same relationships language as the

13   original MLAs.  So I think the narrow language from the

14   dollarized tranche agreements is what supersedes here.  I

15   think EFH all but concedes on Pages 4 to 5 of their reply

16   that the fraudulent transfer claims are collateral to the

17   agreements and that nothing raises questions about the

18   existence, validity, termination, or loan amount under those

19   dollarized tranche agreements.  And again, that's language

20   from Exhibit F through N, Section 15.1, Your Honor.

21          And the fundamental point is that anyone of

22   Celsius' -- or excuse me, anyone of EFH's creditors could

23   bring the fraudulent transfer action Celsius has alleged

24   here, right?  The foundational elements are that you have an

25   insolvent entity and that they've made an improper

1    distribution.  Any creditor with any contract could bring

2    that here, and there's nothing about prevailing on that

3    claim that requires Celsius to prevail on its separate

4    breach of contract claim, which we acknowledge is arbitrable

5    for the breach of the rep in the dollarized tranche

6    agreements.

7            And again, just in case Your Honor wants to know

8    which arbitration clause governs here, the representation

9    that EFH makes so much about is in the dollarize tranche

10   agreements.

11           THE COURT:  So Mr. McCarrick, there is a body of

12   caselaw that deals with the issues where a complaint

13   includes arbitrable and non-arbitrable claims, as to whether

14   the non-arbitrable claims should be stayed pending the

15   outcome of the arbitration.

16           Assuming you're correct in your analysis as to why

17   the claims against Christy, some of the claims against

18   Christy, are non-arbitrable, why wouldn't those -- why

19   shouldn't those claims be stayed pending the outcome of the

20   arbitration?  It -- I mean, under any version of your

21   argument, doesn't it depend on whether the contracts, any of

22   the contracts with Celsius limited or restricted what

23   distributions could be made to Christy?

24           MR. McCARRICK:  I think the answer that's no, Your

25   Honor, and the reason I would say, and I think you're

1      hitting on it, the body of law around whether or not

2      arbitrable cases should stayed, focuses on whether or not

3      there's an overlap, right?

4              THE COURT:  Right.  That's why I'm asking that

5      question.

6              MR. McCARRICK:  Exactly, and I think the answer

7      here is no.

8              THE COURT:  Why not?

9              MR. McCARRICK:  Because for the breach of

10     representation claim, it's an up or down.  Either they made

11     distributions within the past 12 months to Mr. Christy or

12     they didn't, in breach of that rep or not in breach of that

13     rep.  That doesn't require, you know, first -- and I don't

14     even think they dispute they made the distributions to Mr.

15     Christy, which is another reason why I don't think that the

16     non-arbitrable claims should be stayed.

17             For the fraudulent transfer claims, both against

18     Mr. Christy and against EFH, that requires a showing of

19     insolvency plus a transfer under one of the three theories

20     we identified.  We don't need to prevail on any of that.

21     None of that's going to be bound up in the underlying

22     allegations in the arbitration, so I just don't think there

23     is the kind of overlap that Your Honor would ordinarily be

24     concerned with when it comes to those fraudulent transfer

25     claims.

Page 47

```
1              And so I think the -- I think the -- so that's

2    with respect to the fraudulent transfer claims and I think

3    to the extent Your Honor finds that they're not made in

4    connection with or arising out of the agreement, that's true

5    for Mr. Christy, who we don't think has the right to invoke

6    the clause in any event, but also as to EFH.

7              Now, if we want to look at the turnover action, I

8    think this is an action that comes much closer to Your

9    Honor's as kind of avoidance property of the estate.  The

10   agreements here are ended.  The Bitcoin collateral that

11   Celsius wants returned to it is property of the estate.

12   That is defined.  It's liquidated.

13             And obviously, you know, under 11 USC

14   157(b)(2)(E), orders to turn over property of the estate are

15   core proceedings under the Bankruptcy Code.  EFH responds

16   that you're just giving this claim, what's really a breach

17   of contract claim, a bankruptcy gloss.

18             THE COURT:  What is it that shows that the Bitcoin

19   collateral is property of the estate?

20             MR. McCARRICK:  Yes, Your Honor.  If you want --

21   if I wanted to point you to an allegation of the complaint,

22   that would be Paragraph 79.  And Paragraph 79 of the

23   complaint refers to the Bitcoin collateral as property of

24   the estate.  If you want to look at the agreements, which

25   would tell you that this is a debt that's matured and it's
```

1     the -- it belongs to the Debtors.

2          Now, I'm not going to get the amount of the

3     Bitcoin collateral, largely because I think, that's probably

4     something we're going to maybe seal, so I'm going to avoid

5     the specific amount.  Under the master loan agreements, and

6     that's Exhibit A and Exhibit C, EFH agreed to maintain its

7     full ability to return the pledged collateral at maturity,

8     and that's Section 2.1.

9          Likewise, under the master pledge agreement which

10    is Exhibit B to the complaint, EFH promised to "reassign all

11    right, title, ownership, and interest" in "identical

12    Bitcoins," which I think makes this somewhat different than

13    the ordinary context where you would have --

14          THE COURT:  So they breached it.  They didn't

15    return it, but it's -- the question in my mind, maybe not in

16    yours, is, whose property was it that they were agreeing to

17    return?  So they had a -- what you just told me, if I

18    understand it correctly, is they had a contractual

19    obligation at that point in time to return a like amount of

20    Bitcoin.  Bitcoin is fungible.

21          You can't identify -- you know, it's not physical.

22    It's on a blockchain.  You can't identify whether it's the

23    same or different.  Is there something that -- contractual

24    provision that required them to segregate the Bitcoin that

25    Celsius deposited with them?

1            MR. McCARRICK:  So I think the two provisions, I

2    would look at, Your Honor, I think the ultimate answer is, I

3    think we still prevail either way.  But to Your Honor's

4    specific question of whether or not they were required to

5    cordon off specific Bitcoins or a specific amounts --

6            THE COURT:  I can't believe they were.

7            MR. McCARRICK:  -- of Bitcoins, I do think the

8    identical Bitcoins language is unlike what you would see in

9    a lot of other contract --

10           THE COURT:  Read it to me again.

11           MR. McCARRICK:  Yes, Your Honor.  It says, EFH

12   promised to "reassign all right, title, ownership, and

13   interest in identical Bitcoins" upon Celsius' satisfaction

14   of the obligations under the agreement.  Now, EFH --

15           THE COURT:  I don't know what that means.

16           MR. McCARRICK:  That's -- understood, Your Honor,

17   and Bitcoin, I understand it is fungible as a factual

18   matter, so recognizing it's a little unusual and also

19   recognizing there's other contractual language that talks

20   about EFH's ability to rehypothecate.

21           THE COURT:  Is there a definitional section that

22   defines?

23           MR. McCARRICK:  There is not a definitional

24   section that's going to identical or Bitcoins,

25   unfortunately, but I do think that that presses against the

1    conclusion that they were allowed to do whatever they wanted

2    with the Bitcoin collateral that we had pledged.  Now, the

3    last thing, or I guess not the last thing that I would say,

4    Your Honor, is in a letter agreement --

5              THE COURT:  So what about -- I was pointed to the

6    MLA which is Exhibit C Section 2.8, which sounded like the

7    language I've been used to seeing in this case --

8              MR. McCARRICK:  Yes.

9              THE COURT:  -- about all right, title, and

10   interest, the collateral transferred to them.

11             MR. McCARRICK:  And rehypothecated.

12             THE COURT:  Right.

13             MR. McCARRICK:  There's tension.

14             THE COURT:  That's -- you know, that's pretty much

15   the language in the language in the terms of use that I

16   interpreted last January.

17             MR. McCARRICK:  Yes.  I think the one qualifier,

18   Your Honor, would be that the terms of use don't have

19   identical Bitcoin language in a way --

20             THE COURT:  But like, how do you square a Section

21   2.8 with the language you're quoting about identical

22   Bitcoin, which is in Exhibit B, the master pledge agreement?

23             MR. McCARRICK:  I think the best way to do it is

24   the way that Your Honor started, which was to say they had

25   an obligation to return to you a certain amount of Bitcoin.

Page 51

1     Maybe not these identical Bitcoins --

2             THE COURT:  You have no clue whether they --

3             MR. McCARRICK:  Right.

4             THE COURT:  There's no way to identify whether

5     they return the same Bitcoins, is there?

6             MR. McCARRICK:  Unless they were holding them in a

7     separate account.

8             THE COURT:  Sure.  And there was nothing that

9     required them to hold them in a separate account.

10            MR. McCARRICK:  I think that that is correct, Your

11    Honor.  At least, I'm not aware of anything that required

12    them to put it escrow or something to that effect.  EFH did

13    -- this is Exhibit E at 1 -- reiterate its obligation to

14    return the outstanding collateral pursuant to the EFH MLAs

15    and all pledge agreements, and that's Exhibit E at 1.  And

16    so --

17            THE COURT:  And so the collateral that wouldn't --

18    that would in part take you back to Section 2.8.

19            MR. McCARRICK:  Correct.  I think it would take

20    you all the way back there.  I think at the end of the day,

21    though, even if it's not a specific amount of Bitcoin that's

22    being held in a separate account or that a return of

23    specific property isn't required --

24            THE COURT:  Let's say Celsius transferred 50

25    Bitcoin.

Page 52

1            MR. McCARRICK:  Yes.

2            THE COURT:  I mean, it sounds to me that the

3    agreements required they're going to return 50 Bitcoin to

4    Celsius.

5            MR. McCARRICK:  Yes, Your Honor.

6            THE COURT:  Nothing -- it's not going to be the

7    identical coins, but there's nothing that required them to

8    segregate or escrow those specific Bitcoin, just, we gave

9    you 50, it's time to give us back 50.

10           MR. McCARRICK:  And I think, Your Honor, that once

11   Celsius had satisfied its obligations under the agreements

12   which EFH acknowledges in Exhibit E at Page 1 that Celsius

13   did, to the extent that they had 50 Bitcoins, right, those -

14   - that's property of the estate.

15           THE COURT:  Sounds like they had a great breach of

16   contract claim.

17           MR. McCARRICK:  I think, though, Your Honor, I

18   think -- I'm not sure that's correct, because I think it's

19   still under 542(b), you have a debt that's matured, payable

20   on demand, and payable on order, at least with -- for

21   purposes of determining whether or not it's a core

22   proceedings.  And obviously, Your Honor is allowed to retain

23   jurisdiction over otherwise arbitrable claims that are core.

24           THE COURT:  Just give me a second.

25           MR. McCARRICK:  Yes, Your Honor.

1              THE COURT:  How does 552(b) --

2              MR. McCARRICK:  Your Honor, I think the language

3       is -- and if it's not 542(b), I'm sure someone on my team

4       will correct me this.

5              THE COURT:  Maybe I misunderstood.  552?

6              MR. McCARRICK:  542.

7              THE COURT:  Because -- but 552 deals with post-

8       petition effective security interest.

9              MR. McCARRICK:  I'm sorry, Your Honor, 542(b).

10              THE COURT:  Okay, let me switch back, there.

11              Okay, I'm looking at 542(b).

12              MR. McCARRICK:  And so, Your Honor, that's the

13       Bankruptcy Code statutory provision that we're relying on

14       for the turnover action, and so our view is at the point

15       that EFH had acknowledged that Celsius had completed all of

16       its obligations that are antecedent to return of the Bitcoin

17       collateral that's matured, it's payable on demand, and it's

18       payable on order, EFH's response to this in their opposition

19       and that is that well, you can't bring a turnover action if

20       something is, you know, "disputed."

21              And what they point to is Celsius' declaratory

22       judgment claim and then they have a threadbare statement

23       that they hotly dispute the right to return the collateral.

24       Difficult to square with the August 2021 letter where they

25       say, we discharged all of our obligations, which is the

Page 54

1    condition precedent to getting that collateral back.  But

2    that's what they say.

3           I think the bigger point, Your Honor, is that the

4    caselaw is pretty clear on this.  For an action to be a

5    turnover proceeding, it's not relevant that the defendant

6    disputes the existence of the debt by perhaps denying the

7    complaints allegations, as long as the complaint allegations

8    state the existence of a mature debt.  And just to give Your

9    Honor some pincites on that, there's in re:  Bay Vista of

10   Virginia and that's 394 B.R. 820, 837 (Bankr. E.D. Va.).

11          THE COURT:  -- cite again?

12          MR. McCARRICK:  Yes.  Sorry, Your Honor.  The --

13          THE COURT:  394 B.R.?

14          MR. McCARRICK:  The Reporter number is 394 B.R.

15   820, 837 (Bankr. E.D. Va. 2008).  That's been cited by --

16   with approval by in re:  Kenston, and that's 137 B.R. 100,

17   107-108 (E.D.N.Y. 1992).  They don't (indiscernible) quote

18   the same language.  And in fact, Your Honor quoted that

19   language with approval in in re:  MF Global, which is 531

20   B.R. 424, 438.  And that's a case that EFH repeatedly cites

21   but not on this particular issue.

22          So our view would be that under 542 we have

23   adequately alleged a turnover action that is a core

24   proceeding, whether or not you think it's return of specific

25   collateral, we think we satisfy the debt is mature and it's

Page 55

1    payable on demand.  That's what we would say about the

2    turnover action.

3             The last point we would make as to the post-

4    petition breaches, understand Your Honor's position on that.

5    We're going to preserve the argument; although, I would say

6    the only claim that I might treat differently would be Count

7    3, the declaratory judgment, the turnover portion of the

8    declaratory judgment claim in Count 3.

9             To the extent that Your Honor is going to retain

10   jurisdiction over the merits of the turnover action itself,

11   it would seem strange to cleave off the declaratory judgment

12   piece of that into arbitration, and I think that will have a

13   much more intrinsic and close connection to the

14   administration of the bankruptcy proceedings to the extent

15   it's actually dealing with property of the estate.

16            THE COURT:  Does your argument about the 542(b)

17   turnover claim, to resolve that, does a Court or arbitrator

18   also have to resolve the garden variety breach of contract

19   claim?  And if the turnover claim rises or falls from a

20   resolution of the contract claim, isn't that the

21   circumstance in which a Court ordinarily, not always, would

22   stay the turnover claim while the contract claim is resolved

23   in arbitration?

24            MR. McCARRICK:  I don't think so and the reason I

25   don't think so is that the breach of contract claims that

Page 56

1    we're alleging here are for payment of monies under the

2    dollarized tranche agreements and the turnover claim is for

3    -- it's based on different provisions of different, you

4    know, contract for, you know, a specific amount of Bitcoin.

5             And I guess what I would say is to the extent that

6    there are some dispute, effectively Your Honor if EFH's

7    position is well, we dispute your contractual entitlement to

8    that property and that's enough to kick it to arbitration

9    because then you're kind of dealing with a breach of

10   contract action, effectively that would mean anytime someone

11   disputes a turnover claim, you're headed to arbitration.

12   And that's exactly counter, I think, intuitive to the idea

13   that a 542 claim is a core proceeding because it deals with

14   property of the estate.

15             THE COURT:   The analysis of whether a core

16   proceeding should -- whether an action that would still be -

17   - that would be a core proceeding should nevertheless be

18   arbitrated, is not -- it's not, you know, I mean, because I

19   have dealt with this before and certainly my colleagues have

20   dealt with this before.  Not all core claims get litigated.

21   Some, you nevertheless have to submit to arbitration.  So

22   why -- so assuming that this is a properly stated core claim

23   for turnover, why wouldn't this nevertheless be subject to

24   arbitration?  It's not -- I mean, the core, non-core is

25   important but not determinative.

Page 57

1          MR. McCARRICK:  Understood, Your Honor.  Celsius'

2    position is not that this wouldn't be arising out of in

3    connection with the agreements.  Of course, it is.  I think

4    part of it depends on what exactly EFH or how, if at all,

5    they intend to dispute it and --

6          THE COURT:  Have they -- other than in protected

7    settlement discussions, have they asserted the basis on

8    which they dispute?

9          MR. McCARRICK:  Other than saying they hotly

10   dispute the entitlement to that, I'm not sure of the precise

11   basis and I understand --

12         THE COURT:  The hotly puts it over the line?

13         MR. McCARRICK:  That's -- yes.  It's the hotly

14   principle.  What I would say is knowing more about that

15   would help me answer that question more precisely, but in

16   the absence of a specific allegation of why that's not going

17   to be, or why that's not owing to us when they represented

18   in Exhibit E that we had satisfied all conditions precedent,

19   I don't think that we're -- we don't think that that should

20   go to arbitration, at least just on the threadbare assertion

21   of it's a dispute.

22         THE COURT:  I mean, I've never done this before.

23   There's always a first time.  It may be I can't resolve the

24   motion until there's been some limited discovery.  You know,

25   yes, turnover claim is core, but some core claims, many core

1   claims -- somewhere in between that -- get arbitrated and

2   some don't.

3           MR. McCARRICK:  The most specific, at least is as

4   I'm recalling some of the correspondence, is that there are

5   some suggestion of some sort of fraudulent inducement kind

6   of claim.  I think that's difficult given how many times

7   they've re-ratified the agreements and the number of

8   dollarized tranche pieces.  But I'm not sure exactly what

9   their defense is going to be, so I'll reserve on that.

10  That's all I have, Your Honor.

11          THE COURT:  Okay, thank you.

12          MR. McCARRICK:  Thank you.

13          MR. TOROSIAN:  Thank you, Your Honor.  Jeff

14  Torosian, DLA Piper, for Equities First Holdings.  Your

15  Honor, obviously, we haven't even answered or responded

16  substantively to this complaint, but I will tell you --

17          THE COURT:  Maybe I should require that that

18  happen first, so I can see what it is rather than just pure

19  pablum as your defenses, why it is -- I mean, I think -- I'm

20  not saying I'm persuaded yet, but I think Mr. McCarrick has

21  made, what on its face would seem to be a persuasive

22  argument why the turnover claim, why it doesn't fit squarely

23  within 542(b) and should be required to be litigated, not

24  arbitrated.  And -- go ahead.

25          MR. TOROSIAN:  (indiscernible) respond, Your

Page 59

```
 1   Honor.  First of all, we do challenge the enforceability of
 2   these agreements.  We believe they were --
 3             THE COURT:  You what?
 4             MR. TOROSIAN:  We do -- we will challenge --
 5             THE COURT:  You're relying on an arbitration
 6   clause in something you say is an unenforceable agreement.
 7             MR. TOROSIAN:  Not the arbitration --
 8             THE COURT:  Oh, not the arbitration clause, it's
 9   just the rest of the agreements you don't like,
10             MR. TOROSIAN:  The agreements were fraudulently
11   induced and that will be one of our defenses here, but
12   fraudulent inducement in dealing with the arbitration clause
13   to get out of the arbitration clause when you have a
14   fraudulent inducement allegation --
15             THE COURT:  Tell me on what basis you contend the
16   agreements were fraudulently induced.  That's a specific
17   question.  I want a specific answer.
18             MR. TOROSIAN:  Your Honor, at the time of these
19   agreements that they were -- that they were amended and had
20   payment obligations, the -- Celsius had an obligation 90
21   days before repayment of these repo transactions to inform
22   us that they had the ability to pay off these loans.  We
23   don't believe they did, and to the --
24             THE COURT:  They paid off the loans and you think
25   they didn't tell you 90 days before that we have the ability
```

Page 60

```
 1      to pay off?  Is that what you're telling me?

 2               MR. TOROSIAN:  Your Honor, if you understand the

 3      structure of how these agreements work, we provide money in

 4      exchange for Bitcoin and equities that they give us.  At the

 5      time the loan comes due, 90 days before, they have to tell

 6      us that they have the ability to repay these loans and then

 7      we give whatever equity or Bitcoin back.

 8               THE COURT:  And you're saying they didn't tell you

 9      they had the ability, they just simply paid it off?

10               MR. TOROSIAN:  We said, when they told us they had

11      the ability to pay hundreds of millions of dollars of loans

12      off, they were fraudulently inducing us to have an

13      obligation to pay them back.  A lot of --

14               THE COURT:  They did pay you back, right?

15               MR. TOROSIAN:  No, they did not.  They did not.

16      There was a series of tranches that were supposed to come

17      due.  We were told that they had the ability to pay off all

18      of those tranches when we don't think they actually did have

19      that ability.

20               THE COURT:  So they paid off some of the tranches

21      and they want the collateral back from that?

22               MR. TOROSIAN:  They -- we reached the agreements

23      that are part of this claim in connection with the first

24      tranche payoff.  And so we never got to the other tranche

25      payoffs.  And we believe that they fraudulently induced us
```

Page 61

1    into this whole new payment scheme as a result of saying

2    they have the ability -- I don't want to give amounts, but

3    they had the ability to pay off all of the amounts for all

4    of the tranches, when they didn't.

5           We also believe that there's a question and we

6    haven't done the final analysis of this, yes, but there's a

7    question of whether they had good title to the Bitcoin that

8    they gave us, which transferred --

9           THE COURT:  Really?

10           MR. TOROSIAN:  -- title to us.

11           THE COURT:  Really?

12           MR. TOROSIAN:  Your Honor, we've been in this case

13    for three weeks.  It's a large case.

14           THE COURT:  Did you read my January 4th, 2023

15    decision on the who the crypto asset, whose property it was?

16    Did you?

17           MR. TOROSIAN:  I have not, Your Honor, and I have

18    not --

19           THE COURT:  Maybe you ought to go read it.

20           MR. TOROSIAN:  Well, Your Honor, this is a

21    separate dispute with a separate adversary and we will get

22    into --

23           THE COURT:  Nonsense.  Nonsense.

24           MR. TOROSIAN:  Your Honor, I'm not --

25           THE COURT:  You can't make it up as you go.

```
 1              MR. TOROSIAN:  I'm not making it up as I go, Your

 2      Honor, but we haven't even answered this complaint yet.

 3              THE COURT:  I think you should do that.

 4              MR. TOROSIAN:  Well, I -- Your Honor --

 5              THE COURT:  I think you should do that.

 6              MR. TOROSIAN:  -- don't think we should have to do

 7      that here.

 8              THE COURT:  When is the answer due, Mr. McCarrick?

 9              MR. TOROSIAN:  There is no answer due, Your Honor,

10      because --

11              THE COURT:  Well --

12              MR. TOROSIAN:  -- right now this motion --

13              THE COURT:  Your answer is due 30 days from today.

14              MR. TOROSIAN:  Well, Your Honor, we have defenses

15      --

16              THE COURT:  I will enter an order today requiring

17      responsive pleadings to be filed to this complaint before I

18      decide the motion to compel arbitration, and you better lay

19      out all your defenses and it better be specific.

20              MR. TOROSIAN:  Well, Your Honor --

21              THE COURT:  That's what -- that's my order.  I'm

22      going to enter an order today.

23              MR. TOROSIAN:  And we move to dismiss at the same

24      time.  We have motions --

25              THE COURT:  You know, you can follow -- you follow
```

Page 63

1    the rules.  I'm requiring a responsive pleading.  Okay.  And

2    30 days.  I'm being generous by saying 30 days from today.

3    And confer about mediation as I discussed.  After I see the

4    answer, you file a motion, I'll see any response to it,

5    I'll, you know, in due course, get to your motion to compel

6    arbitration.

7                MR. TOROSIAN:  Your Honor, may I just point Your

8    Honor to some other contract language --

9                THE COURT: Sure.

10               MR. TOROSIAN:  -- that Your Honor had questions

11   on?  In Section 6.1.

12               THE COURT:  Of which?

13               MR. TOROSIAN:  Of the master pledge agreement

14   between Celsius and Equities First, which is Exhibit B.  The

15   last sentence says, "The lender may combine the pledged

16   collateral with other assets and is under no obligation to

17   sequester or escrow the pledged collateral."

18               THE COURT:  Is that in the papers that you filed

19   with me or you just finding that now?

20               MR. TOROSIAN:  Your Honor, you asked a question

21   whether --

22               THE COURT:  I know.  I mean, did you brief -- is -

23   - I asked questions and I appreciate you're pointing me to

24   it.  Is that in your papers?

25               MR. TOROSIAN:  Your Honor, our paper said that

1    there is no claim here for property of the estate and that

2    this was collateral -- was not --

3              THE COURT:  Anything else you want to point me to?

4              MR. TOROSIAN:  Your Honor, no, thank you.

5              THE COURT:  All right.  I'm taking it under

6    submission.  I'm going to enter an order today requiring a

7    responsive pleading -- pleadings, because there's more than

8    one defendant, to be filed within 30 days from today.

9    Please meet and confer on mediation and just update me in a

10   letter as to whether or not you've been able to agree that

11   there will be a mediation and if you can agree on a mediator

12   and it doesn't have to all be at the same time.  Let's move

13   this forward.  Okay, I'm taking the motions under

14   submission.  All right.

15             Ms. Jones, we have anything else on the calendar

16   for today?

17             MS. JONES:  No, Your Honor.  The other motions

18   that were up for today were the substantial contribution

19   which --

20             THE COURT:  Right.  We put those off until --

21             MS. JONES:  Yeah.

22             THE COURT:  -- November 30th.

23             MS. JONES:  Yes.  That's right.

24             THE COURT:  All right.  We are adjourned.  Thank

25   you very much.

Page 65

1           MS. JONES:   Thank you.

2           (Whereupon these proceedings were concluded at

3    11:18 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                            RULINGS

4                                              Page      Line

5   Three Arrows motion for relief from stay,

6   granted                                     12        23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 67

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 25, 2023

[& - action]                                                                          Page 1

| & | | | a |
|---|---|---|---|

**&**

**&**   10:5,15
13:18 22:7
38:1

**0**

**02116**   4:7

**1**

**1**   3:11 34:14
40:19 51:13,15
52:12
**10**   4:6 40:25
**100**   54:16
**10004**   1:20
**10022**   4:21
**107**   15:18
19:13
**107-108**   54:17
**10:04**   1:23
**11**   42:6,9 47:13
**11501**   67:23
**11:18**   65:3
**11th**   4:6
**12**   46:11 66:6
**12151**   67:7
**13**   3:20
**137**   54:16
**14**   23:23
**15.1**   44:20
**157**   47:14
**19**   3:20
**1992**   54:17

**2**

**2**   3:19 26:12,12
47:14
**2.1.**   48:8

**2.8**   31:14 50:6
50:21
**2.8.**   51:18
**2008**   54:15
**2021**   53:24
**2023**   1:22
61:14 67:25
**22-10964**   1:3
**23**   3:7 66:6
**23-01167**   1:4
3:4,9,13 13:13
**24**   1:22
**25**   3:7 67:25
**2900**   5:3

**3**

**3**   26:12 55:7,8
**30**   62:13 63:2,2
64:8
**300**   67:22
**30th**   64:22
**33**   37:8
**330**   67:21
**3569**   10:9
**3841**   12:15
**3880**   12:9
**394**   54:10,13
54:14

**4**

**4**   3:11 26:12
44:15
**408**   17:20
18:10,16,24
22:12,18,18
**42**   10:23
**424**   54:20

**438**   54:20
**444**   4:13
**46282-0200**   5:4
**48**   37:15 42:3
**4th**   61:14

**5**

**5**   26:12 44:15
**50**   51:24 52:3,9
52:9,13
**531**   54:19
**542**   52:19 53:3
53:6,9,11
54:22 55:16
56:13 58:23
**552**   53:1,5,7
**553**   11:2

**6**

**6**   26:12,12
**6.1.**   63:11
**601**   4:20
**60606-0089**
4:14

**7**

**7**   3:19
**79**   47:22,22

**8**

**8**   3:19 40:25
**820**   54:10,15
**837**   54:10,15

**9**

**9**   3:6 40:25
**90**   59:20,25
60:5
**900**   4:13

**a**

**aaron**   5:6 6:8
33:8
**ability**   11:13
48:7 49:20
59:22,25 60:6
60:9,11,17,19
61:2,3
**able**   12:24
18:15 38:16
39:6 42:15
64:10
**abreu**   5:11
**absence**   57:16
**absent**   11:4
**absolutely**
20:14,19
**accept**   41:13
**acceptable**
21:23
**accepted**   41:15
**access**   18:19
**accordance**
11:1
**account**   41:14
41:15 51:7,9
51:22
**accurate**   67:4
**acknowledge**
45:4
**acknowledged**
53:15
**acknowledges**
31:16 52:12
**acting**   30:1
**action**   31:24,25
44:23 47:7,8

53:14,19 54:4
54:23 55:2,10
56:10,16
**actions** 23:19
**activity** 17:13
**actually** 24:22
55:15 60:18
**ad** 26:11
**added** 14:1
**address** 22:6
26:1 33:6
35:12
**addresses**
42:21
**adequately**
54:23
**adjourned**
64:24
**adjourning**
21:8
**adjudication**
11:15,19 26:4
32:17
**administration**
55:14
**administrative**
10:19 11:8
**adopts** 11:7
**adr** 24:5,7,11
25:14,21
**adv** 1:4
**adversaries**
39:1
**adversary** 3:4
3:9,13,16
13:12,13 25:7
39:1 61:21

**affect** 15:17
**affirming**
32:16
**afternoon** 12:5
**agency** 41:4,5
**agenda** 10:8
12:7
**agent** 41:11
**agents** 41:6
**agree** 15:12,13
19:18 20:11,12
20:19 21:17,24
22:11 24:9
27:22 38:14,16
38:21 64:10,11
**agreed** 25:16
40:13,15 43:9
48:6
**agreeing** 48:16
**agreement**
15:8,10 24:15
25:13,17 26:15
27:13,14 30:20
31:13,18 34:15
35:8,14,14,21
36:2,6,13,21
36:22 37:4,19
39:7,9,16 47:4
48:9 49:14
50:4,22 59:6
63:13
**agreements**
16:19,21,22
17:6,7 23:16
23:17,19 25:13
26:17 30:24
31:2,7 33:12

33:13 34:14
35:4 36:25
37:10,14,16
39:3 40:16
44:6,14,17,19
45:6,10 47:10
47:24 48:5
51:15 52:3,11
56:2 57:3 58:7
59:2,9,10,16
59:19 60:3,22
**ahead** 24:8
30:14 33:7
39:16 43:1
58:24
**aizpuru** 5:14
**al** 1:15 3:5,10
3:14
**alex** 6:11 9:8
**alexander** 3:18
5:2 33:9
**ali** 7:8
**allegation**
26:19 29:1,3,9
29:10,11,25
30:18 32:7
47:21 57:16
59:14
**allegations**
18:8 30:22
34:7,9 46:22
54:7,7
**allege** 18:15
**alleged** 29:16
37:12 40:18,23
44:23 54:23

**allegedly** 29:8
**alleges** 29:20
37:15
**alleging** 56:1
**allison** 33:20
**allow** 3:2
**allowed** 50:1
52:22
**amended** 12:7
12:8 59:19
**american** 5:3
**amount** 44:18
48:2,5,19
50:25 51:21
56:4
**amounts** 49:5
61:2,3
**amulic** 5:18
**analysis** 40:9
45:16 56:15
61:6
**analytically**
43:14
**andrea** 5:18
**andrew** 6:15
9:2
**anne** 7:9
**answer** 31:23
33:1 41:8
45:24 46:6
49:2 57:15
59:17 62:8,9
62:13 63:4
**answered**
58:15 62:2
**antecedent**
53:16

anybody  12:21
anytime  56:10
appearances
   14:1
appeared
   33:14
appearing
   10:12
applicable
   10:21,25 26:7
application
   35:3
appreciate
   63:23
appropriate
   11:18 14:22
   15:12,25 20:11
approval  54:16
54:19
approve  12:6
19:11
approximately
   10:23
arbitrable  26:3
   27:1,7,7 41:3
   45:4,13,13,14
   45:18 46:2,16
   52:23
arbitrate  24:17
   35:5 36:9
   40:13,15
arbitrated
   15:3,16 25:12
   56:18 58:1,24
arbitration  3:6
   14:17 15:2,4
   16:9 17:3

22:25 23:14,15
23:20,22,24
24:16,21,24
25:14,16 26:10
26:13 27:9,10
27:12,13,14,22
28:13 30:20
33:12,13 34:22
35:3,8,14,14
35:21,22 36:2
36:6,14,21,21
36:22 37:4,6
37:20 39:4
40:12,14 41:7
43:22,25 45:8
45:15,20 46:22
55:12,23 56:8
56:11,21,24
57:20 59:5,7,8
59:12,13 62:18
63:6
arbitrator
   55:17
areas  26:4
argue  27:8
argues  41:3
argument  15:4
   17:18 44:2
   45:21 55:5,16
   58:22
arguments
   44:2
arisen  25:6
arises  37:14
arising  10:20
   47:4 57:2

armand  5:19
arose  27:16
arrows  4:4
   10:8,10,13,16
   10:19 12:22
   66:5
artur  5:11
aside  43:20
asked  42:21
   63:20,23
asking  22:19
   23:3 31:19
   46:4
asks  24:1
aspect  31:11
assert  10:19
   11:14 37:20
asserted  10:22
   11:18 26:2
   34:6 36:11
   37:7 57:7
asserting  11:23
assertion  10:24
   11:4,9 57:20
asset  61:15
assets  30:11
   40:20,23 42:14
   63:16
associated
   31:17
assuming  40:1
   45:16 56:22
ate  14:9
attached  12:14
   16:23 17:6
   26:17

attempt  34:4
   35:7,12
attorneys  4:4
   4:12,19 5:2
august  53:24
auspices  18:9
authority
   31:14
authorizing
   3:16
automatic  11:3
   11:25 12:17
ave  4:20
avenue  4:6
avoid  24:23
   27:25 34:4
   35:8 48:4
avoidable  27:4
avoidance  26:6
   26:21,25 27:6
   27:21 28:3,12
   30:7,19 31:24
   47:9
aware  41:2
   51:11
axes  40:9

|  b  |
| :---: |

b  2:1 15:18
   19:13 39:23
   47:14 48:10
   50:22 52:19
   53:1,3,9,11
   55:16 58:23
   63:14
b.r.  54:10,13
   54:14,16,20

**back**  16:25
17:20 21:18
22:4 24:18
37:18 38:15
40:21 51:18,20
52:9 53:10
54:1 60:7,13
60:14,21
**baltimore**
33:19,22,23
**bank**  18:1
41:14
**bankr**  54:10,15
**bankruptcy**
1:1,18 2:3
15:18 16:3
23:7,11,13
26:7,8 29:18
32:17 47:15,17
53:13 55:14
**based**  18:8,8
23:10 34:15
43:15 56:3
**bases**  14:25
23:13
**basically**  15:23
**basis**  57:7,11
59:15
**bay**  54:9
**beautiful**  23:4
**becin**  5:22
**behalf**  10:5
13:19,24 22:8
23:2 33:6,9
38:1
**believe**  10:9
14:6 17:8

18:22 19:5,22
20:22 24:3
26:13 32:11,18
33:5,12 49:6
59:2,23 60:25
61:5
**belongs**  48:1
**ben**  6:23
**benefit**  40:11
41:6
**berg**  9:4
**bernstein**  5:23
**best**  24:23
50:23
**better**  62:18,19
**beutler**  5:24
**bigger**  54:3
**bit**  14:7 38:18
39:8
**bitcoin**  47:10
47:18,23 48:3
48:20,20,24
49:17 50:2,19
50:22,25 51:21
51:25 52:3,8
53:16 56:4
60:4,7 61:7
**bitcoins**  48:12
49:5,7,8,13,24
51:1,5 52:13
**blockchain**
48:22
**body**  45:11
46:1
**bonus**  41:11
**borrower**
31:15

**boston**  4:7
**bound**  27:23
46:21
**bowling**  1:19
**box**  10:19
**bradley**  7:3
**bray**  6:1
**breach**  28:4
32:12,20,22
36:17 43:15
45:4,5 46:9,12
46:12 47:16
52:15 55:18,25
56:9
**breached**
26:20 43:11,11
48:14
**breaches**  55:4
**brief**  21:24
35:18 63:22
**briefly**  35:17
**briefs**  32:11
**bring**  15:25
44:23 45:1
53:19
**bringing**  11:10
**broad**  23:14
**broadest**  23:21
**bronge**  6:2
**brought**  27:20
34:6
**bucket**  40:24
**builders**  35:11
**burden**  14:16
19:4
**burks**  8:16

**business**  14:13
**bvi**  10:20,21,21
10:25,25 11:14
11:22

c

**c**  4:1 10:1
31:14 48:6
50:6 67:1,1
**caceres**  6:14
**calendar**  64:15
**call**  23:15
31:24
**called**  41:10
**camera**  20:13
20:23
**capacity**  33:11
33:25 34:7,9
41:11
**capital**  4:5
10:17
**careful**  32:14
**carl**  6:12
**caroline**  8:23
**carty**  6:15
**casagrande**  5:6
33:8,9,16,20
33:23
**case**  1:3,4 12:9
16:3,22 17:20
24:18 25:6,7
25:12 30:20
38:25 39:2
42:18 45:7
50:7 54:20
61:12,13
**caselaw**  35:12
35:16 45:12

54:4
cases  46:2
cathy  7:15
celsius  1:8,12
3:4,9,13 11:16
13:12 19:2
23:13 24:4
26:11 31:3,4
32:3 34:4,19
34:23 36:9
38:25 39:17
40:13,14 42:5
42:22 43:17
44:5,22,23
45:3,22 47:11
48:25 49:13
51:24 52:4,11
52:12 53:15,21
57:1 59:20
63:14
ceo  33:25 34:3
34:11 36:5,8
certain  3:18
10:20 21:12
34:16 37:10
40:13 41:10
43:10 50:25
certainly  56:19
certified  67:3
cetera  19:18
39:10
chairman  28:6
challenge
27:17 28:3
59:1,4
chambers  13:7
13:8

chance  28:18
chang  6:5
changes  15:15
chapter  42:6,9
charging  14:12
chase  7:22,23
check  10:18
chicago  4:14
25:1 33:17,18
chipping  41:24
42:14
chris  5:17,22
christopher
6:7
christy  3:18
5:2 14:5 29:3
29:11,23 32:1
33:6,9,11,24
34:8,10,13,17
34:19,23 36:7
36:24 37:11,12
37:18 40:11,15
40:18,21,25
41:13,18,22
42:4 43:10,15
43:21 45:17,18
45:23 46:11,15
46:18 47:5
christy's  13:20
41:10,15
circuit  32:12
32:15,19,24
circumstance
55:21
cite  32:14
34:24 35:13
54:11

cited  35:10,18
54:15
cites  54:20
claim  10:22,25
11:9,10,14,22
12:20 23:6,12
23:15 25:23
27:11,21,21
28:12,15,19
30:7,19,23,23
32:16,19,21,21
32:22,22,23
37:13 40:10,22
40:22,24 42:11
42:12,17,23
43:15,18,19
45:3,4 46:10
47:16,17 52:16
53:22 55:6,8
55:17,19,19,20
55:22,22 56:2
56:11,13,22
57:25 58:6,22
60:23 64:1
claims  23:9,13
24:1,1,6,19,20
25:20,22 26:1
26:6,18,21
27:1,1,6 28:3,4
28:5 31:23
33:10,24 34:1
34:6,13,18,20
34:23 35:24
36:11,15,16,20
36:23 37:7,14
37:18 39:18
40:18,24 41:1

41:3,25 43:14
44:3,5,16
45:13,14,17,17
45:19 46:16,17
46:25 47:2
52:23 55:25
56:20 57:25
58:1
claire  6:10
clause  27:9,10
27:22 45:8
47:6 59:6,8,12
59:13
clauses  16:19
16:24 23:14,20
23:22 26:11,13
40:12,14 41:7
43:23,25
clear  14:19
15:10,20 25:25
32:12,19 54:4
cleave  55:11
close  35:23
36:3 55:13
closer  47:8
clue  51:2
coco  6:7
code  15:18
26:7 47:15
53:13
coins  30:23,24
31:11,12 52:7
collateral
30:25 31:15,18
44:16 47:10,19
47:23 48:3,7
50:2,10 51:14

51:17 53:17,23
54:1,25 60:21
63:16,17 64:2
**colleague**
13:15 40:10
**colleagues**
56:19
**colodny** 6:8
**colors** 21:13
**combine** 63:15
**come** 16:25
21:18 24:18
40:21 60:16
**comes** 42:25
46:24 47:8
60:5
**common** 15:11
**company** 17:24
17:25,25 23:6
28:7 34:11
35:7,9
**compel** 3:6
14:16 22:25
35:21 36:14
37:6 40:7
62:18 63:5
**compelled**
36:22
**compelling**
17:3
**competitive**
16:17 17:12
**competitors**
17:16
**complaint** 3:17
16:6,7,18,23
17:7 18:4,5,7

18:13,17,21
19:3,22 23:22
23:23,25 26:2
26:18 29:20
34:8,9,14 37:9
37:17 40:23
42:2 45:12
47:21,23 48:10
54:7 58:16
62:2,17
**complaints**
54:7
**completed**
37:16 53:15
**component**
24:12,16,18
**conceded**
26:13
**concedes** 26:11
44:15
**concerned**
46:24
**concluded** 65:2
**conclusion**
50:1
**condition** 11:9
54:1
**conditions**
57:18
**conduct** 33:25
34:2,8
**confer** 20:11
21:8 22:9,23
38:13 63:3
64:9
**conference**
3:11

**conferred**
11:12
**confidential**
15:4 16:5
17:23 18:16,25
19:5,8,16
**confidentiality**
15:13,13,24
16:19,23 19:11
**confirmed** 24:5
39:21
**confirms** 12:2
**connection**
47:4 55:13
57:3 60:23
**consensual**
12:12
**consensually**
24:7
**consent** 12:11
25:19
**considering**
25:20
**construction**
35:10
**contain** 44:7
**contained** 3:18
36:2
**contains** 11:23
34:25 37:4
**contend** 41:21
59:15
**contest** 11:17
11:18
**context** 22:12
48:13

**continued**
36:14
**contract** 15:12
15:24 23:6
27:6,16 28:4
32:13,20,22
34:20 36:2,16
36:21 37:3
43:12 45:1,4
47:17 49:9
52:16 55:18,20
55:22,25 56:4
56:10 63:8
**contracts**
23:13 26:20
45:21,22
**contractual**
36:8,15 48:18
48:23 49:19
56:7
**contractually**
43:9
**contribution**
64:18
**controlling**
36:5
**controversies**
35:23
**controversy**
23:16
**conversion**
36:16
**conveyance**
43:19
**copy** 13:5
**cordon** 49:5

[cordry - debtor]                                                                    Page 7

| | | | d |
|---|---|---|---|
| **cordry** 6:9 | 11:3,5,10 12:7 | 51:2,4,8,17,24 | |
| **core** 32:9,21,22 | 12:11,21 13:5 | 52:2,6,15,24 | **d** 6:3 10:1 66:1 |
| 32:23 47:15 | 13:8,11,17,22 | 53:1,5,7,10 | **dalhart** 5:13 |
| 52:21,23 54:23 | 14:1,7,11,18 | 54:11,13 55:16 | **dalley** 6:6 |
| 56:13,15,17,20 | 14:21 15:5,9 | 55:17,21 56:15 | **dan** 7:13 |
| 56:22,24,24 | 15:16,22 16:8 | 57:6,12,22 | **daniel** 5:12 |
| 57:25,25,25 | 16:10,12,14,20 | 58:11,17 59:3 | **darious** 7:2 |
| **cornell** 6:10 | 16:25 17:2,9 | 59:5,8,15,24 | **data** 17:24 |
| **correct** 12:10 | 17:11,17 18:3 | 60:8,14,20 | 18:9,14 |
| 12:13 13:14 | 18:6,11 19:9 | 61:9,11,14,19 | **date** 39:24 |
| 45:16 51:10,19 | 19:24 20:7,9 | 61:23,25 62:3 | 67:25 |
| 52:18 53:4 | 20:15,18,25 | 62:5,8,11,13 | **david** 5:10,13 |
| **correctly** 48:18 | 21:2,6,21 22:3 | 62:16,21,25 | 8:12,20 |
| **corresponde...** | 22:5,14,17,24 | 63:9,12,18,22 | **davies** 6:17 |
| 58:4 | 23:25 24:7,13 | 64:3,5,20,22 | **day** 51:20 |
| **cote** 6:12 | 24:22 25:3,25 | 64:24 | **days** 24:4 |
| **counsel** 10:9 | 26:4,21,24 | **courthouse** | 38:20 59:21,25 |
| 10:15,15 11:11 | 27:10,24 28:16 | 23:5 | 60:5 62:13 |
| 14:5 20:1,10 | 28:18,21,24 | **courtney** 8:16 | 63:2,2 64:8 |
| 20:21 24:25 | 29:4,6,13,15 | **courts** 37:2 | **de** 7:10 |
| 33:6,20 38:2 | 29:22 30:2,4,6 | **cover** 26:11,14 | **deal** 14:22 15:3 |
| 41:16 42:21 | 30:10,17 31:1 | **covered** 26:12 | **dealing** 55:15 |
| **count** 34:14 | 31:6,19,21 | **crack** 38:23 | 56:9 59:12 |
| 40:19 55:6,8 | 32:3,6,8,14,17 | **create** 34:5 | **deals** 15:23 |
| **counter** 56:12 | 32:25 33:2,4,7 | **created** 36:25 | 17:15 18:2 |
| **counterclaim** | 33:14,18,22 | **creditor** 45:1 | 31:25 45:12 |
| 11:23 | 35:1 36:3,10 | **creditors** 42:4 | 53:7 56:13 |
| **counterparties** | 36:13,14,19 | 44:22 | **dealt** 32:10 |
| 17:15 | 37:24 38:5,10 | **crypto** 31:8 | 56:19,20 |
| **country** 67:21 | 39:13,21,23 | 61:15 | **debt** 47:25 |
| **counts** 15:10 | 40:5 41:19,21 | **crystal** 15:10 | 52:19 54:6,8 |
| 16:1 17:1 | 42:8,16 43:5,8 | **cunha** 6:13 | 54:25 |
| 26:12 40:25 | 44:10 45:11 | **current** 39:24 | **debtor** 1:10 |
| **course** 23:8 | 46:4,8 47:18 | **currently** 11:6 | 10:22 11:11 |
| 57:3 63:5 | 48:14 49:6,10 | | 12:1 23:8 25:4 |
| **court** 1:1,18 | 49:15,21 50:5 | | 27:13,20,25 |
| 10:2,6,12 11:2 | 50:9,12,14,20 | | 28:1,20 29:17 |

29:25 30:4,8,8
30:12,13
**debtor's** 3:15
28:10
**debtors** 3:16
4:19 10:5,19
11:6,16,22
12:24 13:19
14:15 18:23
19:2 20:1,4
21:23 22:8
38:1 48:1
**decide** 62:18
**decided** 21:3
24:19
**decision** 21:18
34:24 35:17,18
35:19 38:19
61:15
**decisions** 15:22
**declaratory**
53:21 55:7,8
55:11
**defendant**
27:21 32:20
40:9 54:5 64:8
**defendant's**
34:23
**defendants**
1:16 24:17
26:20 36:4,12
**defense** 12:18
58:9
**defenses** 58:19
59:11 62:14,19
**defer** 40:3

**defined** 47:12
**defines** 49:22
**definitional**
49:21,23
**degraw** 35:10
35:13,15
**demand** 52:20
53:17 55:1
**denied** 40:8
**denying** 54:6
**depend** 45:21
**depends** 37:3
57:4
**deposited**
48:25
**derived** 36:20
**described**
19:16
**describes** 37:9
**details** 39:8
**determination**
32:15
**determinative**
56:25
**determine**
19:14 27:6,11
**determining**
52:21
**development**
14:13
**diaz** 6:19
**differences**
25:15
**different** 17:15
21:13 22:15
26:10 30:5
48:12,23 56:3

56:3
**differently**
55:6
**difficult** 20:16
25:6 42:23
53:24 58:6
**difficulty** 20:3
**difiore** 6:18
**diminishing**
42:13
**dimitry** 5:9
**dinner** 14:9,11
**directly** 36:15
**director** 35:7
**disagree** 27:15
42:19
**discharge** 12:1
**discharged**
53:25
**discovery**
15:13,25 19:11
22:18 57:24
**discuss** 10:11
24:22 34:21
**discussed** 63:3
**discussing** 38:4
38:6
**discussion** 20:6
20:8 34:25
**discussions**
18:18,22 19:25
57:7
**disguised** 28:4
**dismiss** 62:23
**disposition**
17:2

**dispute** 20:23
20:24 23:15
27:14 35:20
46:14 53:23
56:6,7 57:5,8
57:10,21 61:21
**disputed** 53:20
**disputes** 20:13
24:8 25:6
26:14,15 35:5
36:9,23 37:21
40:12,13,15
54:6 56:11
**dissimilar**
25:13
**distinction**
27:19 34:5
**distribution**
29:11,21,24
32:1 45:1
**distributions**
34:11,17 37:11
37:15 41:10,13
45:23 46:11,14
**district** 1:2
35:20
**divide** 40:8
**dla** 4:11 13:24
23:2 58:14
**doc** 3:6,11,19
**docket** 10:9
12:16
**document** 12:8
**documents**
18:20 33:13
37:1

[dog - exhibit]

| | | | |
|---|---|---|---|
| **dog** 19:4 | **effectuate** | **encompassing** | **essence** 35:6 |
| **doing** 43:12 | 11:13 35:4 | 23:14 | **essential** 23:3 |
| **dollarize** 45:9 | **effort** 24:7 | **ended** 47:10 | **essentially** |
| **dollarized** 44:6 | **efforts** 42:5 | **enforce** 35:14 | 36:1,19 |
| 44:14,19 45:5 | **efh** 13:20 22:10 | **enforceability** | **estate** 27:1,11 |
| 56:2 58:8 | 23:7 27:20,20 | 59:1 | 27:12 28:1,2 |
| **dollars** 24:20 | 27:23 28:19,20 | **engel** 5:15 | 29:17 40:23 |
| 25:22 60:11 | 29:2,25 32:1 | **englander** 6:11 | 41:22 42:6,9 |
| **donald** 8:3 | 34:1,3,11,15 | **enter** 12:3 | 42:14,16 43:4 |
| **dow** 6:20 | 34:20 36:8 | 62:16,22 64:6 | 43:8,21 47:9 |
| **dozen** 18:22 | 37:12 39:14 | **entered** 13:9 | 47:11,14,19,24 |
| **dozens** 24:19 | 40:12,21 41:3 | 41:7 | 52:14 55:15 |
| 25:23 | 41:6,11,14,14 | **entire** 37:17 | 56:14 64:1 |
| **drafted** 23:24 | 41:17 42:12,15 | **entirely** 21:10 | **estoppel** 34:22 |
| **drew** 9:7 | 43:16,25 44:15 | **entitled** 37:20 | 35:2,22 41:4 |
| **due** 60:5,17 | 45:9 46:18 | 42:11 | **et** 1:15 3:5,10 |
| 62:8,9,13 63:5 | 47:6,15 48:6 | **entitlement** | 3:14 19:18 |
| **duffy** 6:21 9:7 | 48:10 49:11,14 | 56:7 57:10 | 39:10 |
| **duty** 36:18 | 51:12,14 52:12 | **entity** 36:6,8 | **event** 47:6 |
| **dzaran** 6:22 | 53:15 54:20 | 44:25 | **everything's** |
| | 57:4 | **entry** 3:15 12:6 | 32:23 |
| **e** | **efh's** 18:19 | **enumerated** | **evidence** 29:7 |
| **e** 2:1,1 4:1,1 | 40:7 44:22 | 40:14 | **exactly** 39:22 |
| 5:25 6:16 10:1 | 49:20 53:18 | **equities** 1:15 | 46:6 56:12 |
| 10:1 47:14 | 56:6 | 3:5,10,14,17 | 57:4 58:8 |
| 51:13,15 52:12 | **either** 24:17,23 | 4:12 13:12,24 | **example** 26:25 |
| 57:18 66:1 | 26:6 38:25 | 16:17 17:14,22 | 28:9 37:8 |
| 67:1 | 46:10 49:3 | 19:17 23:2,7 | **exchange** 60:4 |
| **e.d.** 54:10,15 | **element** 36:13 | 28:5,10 29:8 | **exchanged** |
| **e.d.n.y.** 54:17 | **elements** 44:24 | 31:3 58:14 | 22:11 |
| **eades** 6:23 | **elizabeth** 4:23 | 60:4 63:14 | **excuse** 10:16 |
| **ecf** 12:8 | 10:4 | **equity** 28:10 | 44:4,22 |
| **ecro** 2:5 | **ellis** 4:18 10:5 | 29:24 30:12,14 | **excused** 13:3 |
| **effect** 51:12 | 13:18 22:7 | 60:7 | **exhibit** 31:14 |
| **effective** 39:24 | 38:1 | **escrow** 51:12 | 44:20 48:6,6 |
| 40:1 53:8 | **elvin** 8:21 | 52:8 63:17 | 48:10 50:6,22 |
| **effectively** 56:6 | | | 51:13,15 52:12 |
| 56:10 | | | |

57:18 63:14
**exhibits** 44:7
  44:10,11
**exist** 30:20
**existence** 44:18
  54:6,8
**expect** 38:13
  38:19
**explain** 18:20
  28:18
**explicitly**
  32:11
**explore** 38:8
**extent** 20:12
  21:9,12 43:3
  47:3 52:13
  55:9,14 56:5

### f

**f** 2:1 8:5 44:7
  44:11,20 67:1
**face** 58:21
**faced** 30:18
**fact** 15:23
  23:23 27:5
  34:4 38:21
  41:17 54:18
**factor** 36:4
**facts** 37:10
**factual** 49:17
**fairly** 32:10
**falls** 43:22,24
  55:19
**familiar** 42:19
**fan** 14:18
**far** 7:8
**federal** 26:7

**fiduciary**
  36:18
**fight** 19:4
**file** 3:16 11:6
  18:12 21:24
  63:4
**filed** 10:9,17
  11:22 12:14
  14:15 15:15
  17:2,20 19:2,3
  23:12 25:18,18
  62:17 63:18
  64:8
**final** 24:2 61:6
**financial** 16:16
  17:7,24 18:14
  18:19,22 19:16
**financials** 18:1
**finding** 63:19
**finds** 47:3
**firm** 42:17
**first** 1:15 3:5
  3:10,14,17
  4:12 10:7,11
  13:13,24 15:1
  16:18,18 17:14
  17:22 19:17
  23:2,7 26:10
  28:5,10,10
  29:7 30:12,13
  31:3 32:6 40:9
  40:19 43:25
  44:4 46:13
  57:23 58:14,18
  59:1 60:23
  63:14

**fit** 58:22
**flannigan** 6:25
**flavor** 39:8
**flavors** 41:1
**floor** 4:6
**florence** 6:25
**focuses** 46:2
**follow** 20:4
  62:25,25
**forecasts** 18:2
**foregoing** 67:3
**forget** 17:3
**forgot** 33:21
**form** 11:13
  12:12,24
**formal** 38:4
**forward** 64:13
**found** 18:20
  35:25 36:3,10
  36:13,19 37:2
**foundational**
  44:24
**founder** 34:1,3
  34:12 36:7
**four** 33:14,18
  33:19
**frame** 40:19
**frankly** 24:15
**fraud** 36:17
**fraudulent**
  31:25 41:1
  42:12 43:19
  44:3,16,23
  46:17,24 47:2
  58:5 59:12,14
**fraudulently**
  59:10,16 60:12

60:25
**frishberg** 5:12
**front** 14:2
**frustrating**
  42:5
**full** 48:7
**fundamental**
  35:1 44:21
**funds** 41:21
**fungible** 48:20
  49:17
**future** 40:4

### g

**g** 10:1
**gallagher** 5:16
**garden** 32:21
  55:18
**geary** 7:1
**generally**
  19:18 27:2
**generous** 63:2
**gergi** 7:11
**getting** 17:5,17
  24:4 43:16
  54:1
**gheorghe** 7:2
**giardiello** 7:3
**gist** 14:24
**give** 14:24 39:8
  52:9,24 54:8
  60:4,7 61:2
**given** 18:9
  19:15 23:21
  58:6
**gives** 24:16
**giving** 28:18
  47:16

glad  12:23
glenn  2:2
global  54:19
gloss  47:17
gluck  6:16
go  24:8 33:7
  40:22 42:2
  43:1 57:20
  58:24 61:19,25
  62:1
going  18:12
  20:9,10 21:7,8
  22:5 24:10,20
  25:20 29:15
  33:10 37:23
  38:12,19 39:4
  39:6,15,18
  46:21 48:2,4,4
  49:24 52:3,6
  55:5,9 57:16
  58:9 62:22
  64:6
good  10:2,4,14
  13:23 22:9
  33:8 37:25
  38:15 42:23
  61:7
governs  45:8
granted  12:23
  66:6
granting  3:19
graubert  7:4
great  52:15
green  1:19
gregory  8:5
group  32:21
  35:10

grupo  42:24
guarantee
  36:18
guess  43:2 50:3
  56:5
guidelines  20:4

**h**

half  41:14
hand  15:1,1
handed  31:13
handful  21:17
handle  42:18
hannah  8:14
happen  20:10
  20:18 38:21
  58:18
happened  35:6
happening
  16:10
happens  21:16
happy  10:10
  14:17 20:17,21
  22:1,9,22 23:4
  24:15 25:10
  33:1 38:8
  39:15 40:4
haqqani  7:5
headed  56:11
hear  13:15
  26:5 33:7
heard  12:20,22
  14:14 20:21
  21:25 39:11
hearing  3:1,1,4
  3:6,9,13,15
  13:4 21:15,19
  24:2

held  17:25,25
  18:13 23:10
  29:2 30:10,11
  51:22
helen  4:23
help  40:18
  57:15
heras  7:10
hershey  7:6
hiccup  39:17
highlight  35:17
highly  17:23
  18:16,24 19:8
  19:16
hittelman  7:7
hitting  46:1
hold  32:24
  51:9
holding  51:6
holdings  1:15
  3:5,10,14,17
  4:12 13:13,24
  16:18 17:22
  23:2,8 58:14
holland  4:3
  10:15
hon  2:2
honestly  16:1
  20:24
honor  10:4,7
  10:14,17 11:16
  11:20,24 12:3
  12:6,10,13
  13:1,2,10,14
  13:19,23 14:13
  14:14 17:6
  18:18 19:21

20:22,23 21:20
  22:8 23:1,3
  24:18 27:8,20
  28:14 29:9
  31:11,13,22
  32:9,18,24
  33:5,8,24
  37:22,25 39:11
  40:7 41:1,20
  41:23 42:1,11
  43:2,14 44:20
  45:7,25 46:23
  47:3,20 49:2
  49:11,16 50:4
  50:18,24 51:11
  52:5,10,17,22
  52:25 53:2,9
  53:12 54:3,9
  54:12,18 55:9
  56:6 57:1
  58:10,13,15
  59:1,18 60:2
  61:12,17,20,24
  62:2,4,9,14,20
  63:7,8,10,20
  63:25 64:4,17
honor's  17:22
  18:10,25 25:14
  30:21 40:22
  47:9 49:3 55:4
honors  25:21
hope  14:11
  38:21
hopefully
  21:14,15 31:22
  38:17

**hotly** 53:23
57:9,12,13
**hundreds**
24:20 25:21
60:11
**hybrid** 3:1,6
3:11,15
**hyde** 3:25 67:3
67:8

**i**

**ice** 5:1
**icemiller** 14:5
33:9
**idea** 56:12
**identical** 48:11
49:8,13,24
50:19,21 51:1
52:7
**identifiable**
29:14
**identified**
46:20
**identify** 48:21
48:22 51:4
**ii** 3:19
**illinois** 4:14
**imagine** 20:24
**implicated**
44:5
**important**
25:22,23 42:20
56:25
**importantly**
23:12
**improper**
44:25

**include** 24:5
**includes** 45:13
**including** 24:6
38:7
**inconsistent**
24:3
**independent**
34:1 43:14
**indianapolis**
5:4 23:11
33:16,18
**indiscernible**
27:3 35:3,18
36:10 44:4
54:17 58:25
**individual**
33:11,24 34:7
34:8
**induced** 59:11
59:16 60:25
**inducement**
58:5 59:12,14
**inducing** 60:12
**inform** 59:21
**information**
3:18 16:5,17
16:17 17:13,14
19:7,8,15,17
22:11,17
**ingo** 5:24
**injunction**
12:1 42:24
**injunctive**
37:17 40:19
**insiders** 34:18
42:4

**insofar** 41:24
**insolvency**
11:1 18:8
46:19
**insolvent** 42:13
44:25
**insulate** 27:17
30:6
**intend** 57:5
**intent** 35:4
**interest** 31:17
48:11 49:13
50:10 53:8
**interference**
36:17
**internally**
18:19
**interpreted**
50:16
**intertwined**
35:25 36:12,24
**intimately**
35:25
**intrinsic** 55:13
**intuitive** 56:12
**invoke** 40:11
40:16 47:5
**invokes** 44:1
**involved** 14:3
17:21 35:24
**issue** 16:22
18:3 19:12,19
22:15,19 30:24
32:9 34:25
37:23 42:25
54:21

**issues** 21:12
30:3 45:12
**issuing** 38:19
**it'll** 13:9
**item** 10:7

**j**

**j** 4:9 5:13 6:7
6:12
**james** 4:6 5:15
**jamshid** 7:8
**january** 50:16
61:14
**jarno** 9:4
**jasleigh** 7:1
**jasmine** 5:19
**jean** 7:14
**jeff** 13:23 23:1
39:14 58:13
**jeffrey** 4:16
5:23
**jeopardizing**
42:5
**jeremy** 7:21
**johan** 6:2
**john** 4:9 6:22
10:14
**joint** 4:4 10:16
10:24 11:11,12
12:2
**jones** 4:23 10:3
10:4,5,7 12:10
12:11,13 13:7
13:14 64:15,17
64:21,23 65:1
**joseph** 7:19
**joshua** 8:24

judge 2:3
judgment
  53:22 55:7,8
  55:11
jump 41:25
jurisdiction
  52:23 55:10

**k**

kaila 9:3
kaitlyn 7:7
karen 2:5 6:9
kass 7:11
katherine 5:14
kaufmann 9:5
kaza 7:12
keasey 7:9
kedzior 5:25
keith 7:25 8:1
  8:2
kenston 54:16
kevin 7:20
keyan 8:18
kick 19:13 56:8
kind 22:14
  46:23 47:9
  56:9 58:5
kirkland 4:18
  10:5 13:18
  22:7 38:1
kirsanov 5:9
knight 4:3
  10:15
know 19:9,10
  21:2 22:1
  26:21,24 27:3
  27:12,16 28:6
  28:12 29:13

30:19 37:22
38:15,24 39:2
39:3,19 42:17
42:24 45:7
46:13 47:13
48:21 49:15
50:14 53:20
56:4,4,18
57:24 62:25
63:5,22
knowing 57:14
knows 11:2,3
koenig 5:17
kwasteniet
  7:16
kyle 6:1

**l**

l 5:6 8:3 9:9
lake 4:13
lalana 5:21
language 14:23
  31:2 44:1,6,8
  44:12,13,19
  49:8,19 50:7
  50:15,15,19,21
  53:2 54:18,19
  63:8
large 61:13
largely 18:7
  48:3
las 7:10
late 12:5
latona 7:13
latreille 7:14
lau 7:15
law 10:21,25
  11:1 26:8

31:25 46:1
lawsuit 17:1
lay 41:6 62:18
layla 7:24
leave 11:4
ledanski 3:25
  67:3,8
left 40:10
legal 67:20
lehrfeld 7:19
lender 31:16
  63:15
leonard 7:17
  7:18
letter 50:4
  53:24 64:10
level 40:17
lexington 4:20
likewise 48:9
limitations
  37:11
limited 1:12
  3:5,10,14
  12:17 13:12
  45:22 57:24
line 14:21
  15:22 57:12
  66:4
lines 32:12,14
  32:16
liquidated
  47:12
liquidator's
  10:24
liquidators 4:4
  10:16 11:12,12
  12:2

litigated 56:20
  58:23
litigation 24:24
  39:18,19
little 14:7
  15:11 16:1
  38:18 39:8
  49:18
llc 1:8,15 3:5
  3:10,14,17
  4:12 13:13,25
  23:10
llp 4:3,11,18
  5:1
loan 31:13
  33:12,13 34:14
  34:15 36:24
  37:9,14,16,19
  44:18 48:5
  60:5
loans 59:22,24
  60:6,11
logistics 38:7
long 15:22 40:2
  54:7
look 15:9 17:19
  27:24 28:25
  47:7,24 49:2
looking 39:16
  43:5 53:11
looks 23:23
lot 38:15 39:6
  49:9 60:13
lucy 8:19
luke 8:15

| m | matter 1:6 | mean 18:3 | mike 8:9 |
|---|---|---|---|
| m 7:16,20 8:10 9:5 | 13:11 15:2,25 16:2 25:20 38:12 40:17 49:18 | 19:11 20:1 25:5 45:20 52:2 56:10,18 56:24 57:22 58:19 63:22 | milin 8:4 miller 5:1 milligan 7:24 million 10:23 |
| ma 4:7 | matters 24:3 38:25 | meaning 23:21 | millions 24:20 25:21 60:11 |
| made 29:1,3 32:1 38:9 43:16 44:25 45:23 46:10,14 47:3 58:21 | matthew 8:13 mature 54:8,25 matured 47:25 52:19 53:17 | means 49:15 mediate 24:15 25:5,10 39:15 mediation | mind 48:15 mineola 67:23 minute 27:22 mira 7:5 |
| main 25:7 28:14 39:2 | maturity 48:7 mccarrick 4:24 | 24:12,23 25:9 25:11 38:2,4,5 38:13,16,22 | misunderstood 53:5 mla 50:6 |
| maintain 48:6 maintained 19:19 | 13:15,17,18,18 22:5,7,7,16,22 25:4 29:15 | 39:4 40:3 63:3 64:9,11 mediator 38:8 | mlas 44:1,5,13 51:14 modified 12:8 |
| make 11:21 14:19 15:9,20 21:17 34:16 40:6 43:10 55:3 61:25 | 33:4 37:25 38:1,6 40:6 41:20,23 42:10 43:2,7,13 44:11 45:11,24 | 38:14,17,22 39:9 64:11 mediators 38:15 meet 20:10 | modifying 12:17 moment 38:18 monaghan 4:9 10:14,15 12:23 |
| makes 22:9 35:12 45:9 48:12 | 46:6,9 47:20 49:1,7,11,16 49:23 50:8,11 | 21:8 22:9,22 64:9 meeting 24:25 | 13:1,9,10 money 29:10 29:14,23 31:12 |
| making 24:3 29:25 62:1 | 50:13,17,23 51:3,6,10,19 52:1,5,10,17 | 38:3 mere 24:4 merit 41:5 | 32:1,3 60:3 monies 56:1 months 25:1 |
| manus 7:20 mark 7:17 8:6 | 52:25 53:2,6,9 53:12 54:12,14 | merits 55:10 mexicano | 46:11 morning 10:3 |
| maronpot 7:21 marsh 7:22 | 55:24 57:1,9 57:13 58:3,12 58:20 62:8 | 42:25 mf 54:19 | 10:4,14 13:23 33:8 37:25 |
| martin 2:2 5:25 6:4 | mccormack 8:1 | mg 1:3,4 3:4,9 3:13 | motion 3:1,6 3:15 10:8,11 |
| master 31:13 33:13 48:5,9 50:22 63:13 | mcgowan 35:10 | michael 7:4 michaels 9:8 | 10:17 11:10,21 12:22 13:20 14:15,16 15:2 |
| matches 12:14 materials 17:23 | | | |

19:6 21:24
22:25 25:19
29:7 40:7
57:24 62:12,18
63:4,5 66:5
**motions**  14:14
62:24 64:13,17
**move**  22:24
62:23 64:12
**multiple**  26:24
**mutual**  3:2
**myriad**  16:16
**mystery**  25:19

**n**

**n**  4:1 10:1 44:7
44:11,20 66:1
67:1
**narrow**  44:13
**necessary**
21:15 35:2
**need**  39:7
46:20
**negotiate**
17:15
**negotiates**
17:14
**negotiating**
22:13
**negotiations**
17:21,21 18:16
18:24,25 19:18
22:12
**neither**  41:5
**network**  1:8,12
3:4,9,13 13:12
**never**  28:17
40:15 57:22

60:24
**nevertheless**
56:17,21,23
**new**  1:2,20
4:21 14:9
33:19 61:1
**nice**  14:11
**nicole**  7:18
**night**  14:10
**noah**  8:10
**non**  26:7 35:21
35:24 36:11
37:4,5 45:13
45:14,18 46:16
56:24
**noncore**  32:10
**nonsense**  61:23
61:23
**note**  22:10 35:1
38:3 44:4
**noted**  12:19
36:7
**notes**  41:6
**november**
64:22
**noyes**  7:25
**nuanced**  25:15
**number**  25:5
38:25 54:14
58:7
**ny**  1:20 4:21
67:23

**o**

**o**  2:1 10:1 67:1
**object**  11:17
**objection**
11:22,23 12:17

**obligation**
48:19 50:25
51:13 59:20
60:13 63:16
**obligations**  3:2
49:14 52:11
53:16,25 59:20
**obviously**
14:15,23 16:6
23:4 25:11
47:13 52:22
58:15
**occur**  35:22
**occurred**  27:4
38:24
**october**  1:22
67:25
**officer**  35:7
**offices**  14:2
33:14
**official**  10:16
**oh**  59:8
**okay**  10:6
12:21 13:11,17
13:22 17:1,3
18:6,11 21:6
22:3,17,24
27:15 29:22
30:17 31:19,21
32:6,8,25 33:7
37:24 40:5,7
53:10,11 58:11
63:1 64:13
**old**  67:21
**once**  52:10
**open**  38:4,6

**opening**  34:24
35:11
**opinions**  14:21
26:25
**opposition**
34:5 53:18
**option**  24:17
**order**  3:15
11:13 12:3,4,8
12:12,14,25
13:6 14:17
17:2,23 18:10
19:1,6,8 20:4
43:18 52:20
53:18 62:16,21
62:22 64:6
**orders**  19:11
47:14
**ordinarily**
46:23 55:21
**ordinary**  48:13
**original**  44:13
**orion**  32:11
**ought**  61:19
**outcome**  19:14
45:15,19
**outlined**  22:8
**outstanding**
51:14
**overlap**  46:3
46:23
**overture**  38:9
38:11
**owing**  57:17
**own**  28:21
**ownership**
31:17 48:11

49:12

**p**

**p**  4:1,1 7:6 8:7
  10:1
**pablum**  58:19
**page**  52:12
  66:4
**pages**  44:15
**paid**  29:10,24
  41:22 43:17
  59:24 60:9,20
**panel**  24:1
**paper**  63:25
**papers**  34:24
  35:11 63:18,24
**paragraph**
  23:23 37:8,15
  42:3 47:22,22
**part**  15:19
  18:18,24 19:17
  24:10,14 25:16
  27:13 37:13
  40:8 42:24
  51:18 57:4
  60:23
**particular**  16:5
  42:2 54:21
**particularly**
  35:19
**parties**  15:8,10
  15:12 16:19,21
  23:19 25:1,12
  25:13,16 26:2
  26:15,15,17,22
  35:4,23 36:1
**party**  23:6,11
  27:12 37:2

**past**  46:11
**patel**  8:4 9:6
**pay**  59:22 60:1
  60:11,13,14,17
  61:3
**payable**  52:19
  52:20 53:17,18
  55:1
**payment**  56:1
  59:20 61:1
**payments**
  40:20 41:11,17
**payoff**  60:24
**payoffs**  60:25
**pending**  16:7
  45:14,19
**people**  34:17
  40:3,6
**perfectly**  21:23
**period**  22:2
  40:4 43:17
**permit**  15:11
  16:2
**personal**  36:17
**persuaded**
  58:20
**persuasive**
  58:21
**pesce**  8:5
**peter**  6:22
**petition**  32:12
  32:19 53:8
  55:4
**phan**  5:20
**philippe**  7:14
**physical**  48:21

**picking**  40:10
**piece**  17:24
  55:12
**pieces**  58:8
**pincites**  54:9
**pipeline**  18:2
**piper**  4:11
  13:24 23:2
  58:14
**place**  11:18
**plainly**  41:12
**plaintiff**  1:13
  35:12 36:11
  37:9
**plaintiffs**  37:12
**plan**  10:19
  11:6 12:2 24:4
  24:10,11 39:21
  39:25,25
**plate**  38:18
**play**  42:25
**pleading**  14:2
  21:11 22:21
  29:6 33:15
  63:1 64:7
**pleadings**
  62:17 64:7
**please**  10:2
  31:9 64:9
**pledge**  48:9
  50:22 51:15
  63:13
**pledged**  31:15
  31:17 48:7
  50:2 63:15,17
**plus**  46:19

**podium**  13:20
**point**  31:1,10
  31:10 35:11
  38:2 44:21
  47:21 48:19
  53:14,21 54:3
  55:3 63:7 64:3
**pointed**  23:22
  50:5
**pointing**  63:23
**portion**  55:7
**position**  21:13
  21:14 30:22
  34:2 38:5
  39:20 40:11
  41:23 55:4
  56:7 57:2
**possession**
  28:9
**possible**  23:21
**post**  32:12,19
  53:7 55:3
**poynter**  8:3
**precedent**  54:1
  57:18
**precise**  14:23
  57:10
**precisely**  37:5
  42:25 57:15
**predicated**
  26:19,22 34:18
  34:19
**prefer**  16:6
  25:11,15
**preference**
  10:21

prejudgment 43:5
prepare 21:10
prepared 25:4
prepetition 32:13,20
present 5:8 10:10
presented 41:9
preserve 11:14 11:15 12:19 55:5
preserved 11:8
preserves 11:2
preserving 12:18
president 36:5
presses 49:25
presumably 29:24
pretrial 3:11
pretty 50:14 54:4
prevail 43:18 43:18 45:3 46:20 49:3
prevailing 34:20 45:2
prevent 35:3,6 40:20
prevents 11:4
primarily 10:17
primary 11:20
principal 28:7 29:8

principals 41:8
principle 35:1 57:14
prior 29:17
private 16:17
privately 17:25 17:25 23:10
priya 8:8
pro 42:14
probably 22:19 25:4 48:3
procedure 21:23 22:8 24:5,21 25:21
procedures 24:11 25:14
proceeding 3:4 3:9,13 13:12 13:13 15:15 19:12 54:5,24 56:13,16,17
proceedings 10:22 11:15 25:7 39:1 47:15 52:22 55:14 65:2 67:4
professionals 18:19,21,23
profits 18:1
prolong 21:21
promised 48:10 49:12
prompt 38:22
promptly 20:11 22:23

38:13
proof 23:12
proper 28:12
properly 56:22
property 28:1 28:1,2,8,9,10 28:11,20,21,25 29:2,7,17,17 30:7,12,13 31:2,3,8 32:2 40:20 41:17,22 42:6,8,16,20 42:21 43:3,9 43:20,21 47:9 47:11,14,19,23 48:16 51:23 52:14 55:15 56:8,14 61:15 64:1
propose 21:9
proposed 11:13 19:22,25 20:20 21:11 22:10 38:3 39:25
protected 57:6
protective 17:23 18:10,25 19:6,8 20:4
provide 60:3
provided 19:17 19:21 31:22
providing 17:22
provision 15:24 34:15 35:8 37:3,9

48:24 53:13
provisions 10:21 11:7 37:19 39:3 49:1 56:3
public 15:19
pundisto 5:21
pure 58:18
purpose 11:20 12:18
purposes 23:24 44:8 52:21
pursuant 25:12 51:14
put 12:16 38:20 39:5,7 51:12 64:20
puts 57:12

q

qualified 38:8
qualifier 50:17
question 16:14 17:4 23:3 29:16 30:18 40:22 41:9 46:5 48:15 49:4 57:15 59:17 61:5,7 63:20
questions 27:24 37:22 38:11 44:17 63:10,23
quite 16:1
quote 54:17
quoted 54:18

| | | | |
|---|---|---|---|
| **quoting** 50:21 | **receipt** 34:10 | **related** 3:19 | **repeatedly** |
| **r** | 41:10 | 36:16 | 54:20 |
| **r** 2:1 4:1 10:1 | **received** 41:14 | **relates** 14:24 | **replicate** 17:16 |
| 67:1 | **recognized** | 16:2 | **reply** 21:24 |
| **raffaele** 8:17 | 35:1 | **relating** 23:16 | 35:18 44:15 |
| **raised** 38:3 | **recognizing** | **relationship** | **repo** 59:21 |
| **raises** 44:17 | 49:18,19 | 23:18 26:16,16 | **report** 38:15 |
| **rakesh** 9:6 | **record** 15:19 | 26:19,22 27:5 | **reporter** 54:14 |
| **rare** 15:14 21:3 | 67:4 | 27:16 35:23 | **representation** |
| 27:4 | **recover** 42:6 | 36:1,3,20,25 | 43:15 45:8 |
| **rata** 42:14 | 42:15,23 | **relationships** | 46:10 |
| **rather** 22:12 | **redact** 3:18 | 23:16 44:1,8 | **representations** |
| 23:24 24:2 | **redacted** 16:12 | 44:12 | 34:16 43:16 |
| 41:17 58:18 | 16:15 17:8 | **relevant** 19:12 | **represented** |
| **ratified** 58:7 | 18:13,17 19:20 | 35:19 40:14 | 37:10 41:16 |
| **ravi** 7:12 | 19:20,22 22:20 | 44:8 54:5 | 57:17 |
| **reach** 39:6,7,16 | **redactions** | **relief** 3:1,19 | **represents** |
| **reached** 60:22 | 20:11,20 21:11 | 10:8 23:25 | 14:5 |
| **read** 49:10 | 21:25 22:10 | 24:1 40:19 | **request** 12:3 |
| 61:14,19 | **reduction** 17:4 | 66:5 | **require** 20:10 |
| **real** 38:23 | **refer** 23:7 | **relieve** 37:17 | 21:8 33:13 |
| **really** 11:21 | **reference** 19:6 | **relying** 53:13 | 46:13 58:17 |
| 19:4 20:15 | 19:15 | 59:5 | **required** 34:15 |
| 22:14 25:5 | **referring** 42:3 | **remain** 15:6 | 48:24 49:4 |
| 27:23 28:3 | **refers** 47:23 | **remained** | 51:9,11,23 |
| 34:21 47:16 | **reflect** 19:25 | 30:13 31:3 | 52:3,7 58:23 |
| 61:9,11 | **regularly** | **remaining** | **requires** 34:22 |
| **reason** 18:14 | 19:11 | 20:13 | 45:3 46:18 |
| 18:15 28:14 | **rehypothecate** | **remarkably** | **requiring** |
| 43:24 45:25 | 49:20 | 25:8 | 62:16 63:1 |
| 46:15 55:24 | **rehypothecat...** | **remedy** 43:6 | 64:6 |
| **reassign** 48:10 | 50:11 | **remotely** 10:10 | **reservation** |
| 49:12 | **reiterate** 51:13 | **rep** 45:5 46:12 | 12:15 |
| **rebecca** 5:16 | **reiterated** | 46:13 | **reserve** 58:9 |
| **rebuffed** 25:1 | 35:20 | **repay** 60:6 | **resolution** |
| **recalling** 58:4 | **relate** 26:15 | **repayment** | 55:20 |
| | 34:10 | 59:21 | |

**resolve** 20:1,13
21:12 24:8
38:23 55:17,18
57:23
**resolved** 25:8
39:2,5 55:22
**respect** 12:22
13:2 15:23
26:5,25 27:15
29:20 31:11,12
31:23 33:10
34:2,10 37:11
47:2
**respectfully**
12:3
**respond** 58:25
**responded**
58:15
**responds** 47:15
**response** 19:22
20:22 53:18
63:4
**responsive**
62:17 63:1
64:7
**rest** 13:3 26:14
26:14 59:9
**restricted**
45:22
**result** 23:20
26:17 38:11
61:1
**resulting** 23:17
**retain** 52:22
55:9
**return** 48:7,15
48:17,19 50:25

51:5,14,22
52:3 53:16,23
54:24
**returned** 47:11
**revenue** 18:1
**review** 12:5
20:23
**revis** 34:24
**revised** 21:11
**richard** 9:9
**rickie** 6:5
**right** 10:2,12
12:22 14:8
15:17 17:3
21:5 22:24
28:23 30:9,16
33:2 36:8 37:6
40:2,6,16
44:24 46:3,4
47:5 48:11
49:12 50:9,12
51:3 52:13
53:23 60:14
62:12 64:5,14
64:20,23,24
**rightly** 41:6
**rights** 10:20
11:3,4,7,14,16
11:16,18,24
12:15,18,19
31:14,16
**rises** 55:19
**road** 67:21
**robert** 6:6 9:5
**robinson** 8:6
**room** 40:3,7

**ross** 7:16
**rothenberger**
8:7
**rule** 35:2
**rules** 63:1
**rulings** 66:3
**run** 39:19

**s**

**s** 4:1 6:6 7:9,17
10:1
**safekeeping**
30:13
**saihgal** 8:8
**sam** 8:11
**samuel** 7:6
**santos** 6:14
**sarkissian** 8:9
**satisfaction**
49:13
**satisfied** 36:4
36:14 52:11
57:18
**satisfy** 54:25
**saying** 29:12
57:9 58:20
60:8 61:1 63:2
**says** 23:25 31:7
31:15 42:5
49:11 63:15
**schedule** 38:22
39:10
**scheme** 61:1
**schneider** 5:10
**schottenstein**
8:10
**schreiber** 8:11

**schroeder** 6:3
**schwartz** 34:24
**scope** 43:22,25
**scott** 4:16 6:21
**seal** 3:16 14:15
18:13 19:3,6
19:19 48:4
**sealed** 15:18
16:7
**sealing** 14:19
14:22,24 15:1
15:11 16:2
17:4
**seated** 10:2
**second** 32:12
32:15,19,24
40:9,24 52:24
**section** 11:1
31:14,15 44:20
48:8 49:21,24
50:6,20 51:18
63:11
**security** 53:8
**see** 12:7 39:17
49:8 58:18
63:3,4
**seeing** 50:7
**seek** 37:6,20
**seeking** 23:25
27:25 28:2
**seeks** 37:16
**seem** 23:9
55:11 58:21
**segregate**
48:24 52:8
**selection** 38:17

[send - successful]                                                        Page 20

| | | | |
|---|---|---|---|
| **send** 13:7,8,8 | **sided** 20:2 | **speaking** 27:2 | **stayed** 45:14 |
| **senes** 8:12 | **sides** 26:5 | **specific** 41:8 | 45:19 46:2,16 |
| **senese** 8:17 | **signatories** | 43:17 48:5 | **steadman** 8:16 |
| **sense** 22:9 | 35:13 | 49:4,5,5 51:21 | **steffan** 6:17 |
| 30:25 | **signatory** 35:4 | 51:23 52:8 | **step** 15:14 |
| **sentence** 63:15 | 35:21,25 36:11 | 54:24 56:4 | 17:20 |
| **separate** 15:3 | 37:4,6 | 57:16 58:3 | **stepping** 30:3 |
| 45:3 51:7,9,22 | **signatory's** | 59:16,17 62:19 | **steps** 39:25 |
| 61:21,21 | 35:24 | **square** 5:3 | **stipulation** |
| **sequester** | **signature** 67:7 | 50:20 53:24 | 15:25 |
| 63:17 | **signed** 19:9 | **squarely** 58:22 | **stone** 7:23 |
| **series** 60:16 | **silverman** 8:13 | **stakehound** | **straightforw...** |
| **serious** 30:18 | **similarly** 36:6 | 42:18 43:1 | 23:5 |
| 38:23 | 37:15 | **standalone** | **strange** 55:11 |
| **set** 38:22 40:17 | **simply** 29:10 | 12:16 | **strangers** 27:5 |
| 43:20 | 35:12 60:9 | **standards** | **street** 4:6,13 |
| **setoff** 3:2 11:1 | **simson** 8:14 | 15:17 19:13 | **structure** 60:3 |
| 11:2,4,7,14,15 | **single** 17:24 | **standing** 25:3 | **subject** 10:25 |
| 11:23 | **situation** 37:5 | **stands** 35:15 | 18:21 26:3 |
| **settlement** | **small** 17:25 | 35:16 | 28:13 30:19 |
| 17:21 18:16,24 | **solutions** 67:20 | **started** 50:24 | 32:16 36:6 |
| 19:18 57:7 | **somewhat** 15:1 | **state** 23:20 | 38:7 40:17 |
| **several** 16:22 | 48:12 | 26:8 31:25 | 56:23 |
| 25:1 | **sonya** 3:25 | 54:8 | **submission** |
| **shara** 6:10 | 67:3,8 | **stated** 56:22 | 21:7 38:12 |
| **shareholder** | **sorry** 16:20 | **statement** | 64:6,14 |
| 36:5 | 26:23 34:19 | 12:15 53:22 | **submit** 20:12 |
| **sharon** 6:20 | 53:9 54:12 | **statements** | 21:10,12 56:21 |
| **short** 22:1 | **sort** 15:14 58:5 | 18:1 | **submitted** 12:4 |
| **show** 29:6 | **sought** 24:25 | **states** 1:1,18 | 12:5,8 19:10 |
| **showed** 30:11 | **sounded** 50:6 | **statute** 10:18 | 20:20 |
| **showing** 46:18 | **sounds** 52:2,15 | **statutory** 26:5 | **substantial** |
| **shows** 21:13 | **southern** 1:2 | 26:6 53:13 | 64:18 |
| 28:7 29:7 31:2 | 35:20 | **stay** 3:1 10:8 | **substantively** |
| 47:18 | **spangler** 8:15 | 11:3,25 12:17 | 58:16 |
| **side** 18:23,23 | **speak** 33:10 | 55:22 66:5 | **successful** |
| | 37:23 39:17 | | 25:11 |

successfully
    38:24
suggestion
    58:5
suing  35:7
suite  4:13 5:3
    67:22
supersedes
    44:14
support  44:2,2
supposed  15:7
    23:21 60:16
sure  10:12
    11:21 14:20,25
    26:9 38:10
    39:15 40:6
    42:18 51:8
    52:18 53:3
    57:10 58:8
    63:9
surprised
    41:16
switch  53:10

**t**

t  67:1,1
t.j.  4:24 13:18
    22:7 37:25
tai  5:20
taji  8:18
tak  9:1
take  14:17
    17:19 26:9
    38:12,23 51:18
    51:19
talk  24:2
talks  49:19

tanzila  6:24
team  53:3
teasing  14:7
telephonically
    5:8
tell  14:18 17:9
    47:25 58:16
    59:15,25 60:5
    60:8
telling  14:23
    60:1
tension  50:13
term  31:18
termination
    44:18
terms  17:7
    36:12 42:2
    50:15,18
test  36:13
thank  13:1,1,9
    13:10,17,22
    33:2,3 37:24
    58:11,12,13
    64:4,24 65:1
thanks  12:23
theories  46:19
theory  34:21
    34:22 35:2
    41:4,4,5
thing  15:9
    22:19 44:4
    50:3,3
things  21:17
    35:22 40:19
    43:11
think  13:19
    15:5 16:6

20:22,25 21:22
21:22 23:9
27:19 32:10
33:16 35:19
40:4,18 41:1
41:18,24 42:6
42:7 43:3,22
43:24 44:13,15
45:24,25 46:6
46:14,15,22
47:1,1,2,5,8
48:3,12 49:1,2
49:3,7,25
50:17,23 51:10
51:19,20 52:10
52:17,18,18
53:2 54:3,24
54:25 55:12,24
55:25 56:12
57:3,19,19
58:6,19,20
59:24 60:18
62:3,5,6
thomas  6:18
thomson  8:19
thorough
    34:25
threadbare
    53:22 57:20
three  4:4 10:8
    10:9,13,16,19
    12:22 14:6
    33:16 46:19
    61:13 66:5
thursday  38:16
tie  37:18

tied  15:1 34:2
ties  37:13
time  22:1 40:4
    43:17 48:19
    52:9 57:23
    59:18 60:5
    62:24 64:12
times  58:6
title  31:16
    48:11 49:12
    50:9 61:7,10
titled  31:14
today  10:8
    13:3 14:14
    20:9,10 21:7
    21:25 25:3
    33:10 37:23
    41:16 62:13,16
    62:22 63:2
    64:6,8,16,18
told  48:17
    60:10,17
torosian  4:16
    13:23,24 14:4
    14:9,13,20,25
    15:7,21 16:4,9
    16:11,13,16,21
    17:5,10,12,19
    18:5,7,12
    19:21 20:3,8
    20:14,17,19
    21:1,5,20,22
    22:4 23:1,1
    24:9,14,25
    25:10 26:9,23
    27:8,19 28:14
    28:17,19,23

[torosian - va]    Page 22

29:1,5,9,14,19
29:23 30:3,5,9
30:16,21 31:5
31:10,20,22
32:5,7,9,18
33:1,3,5 39:11
39:14,14,22
40:2 58:13,14
58:25 59:4,7
59:10,18 60:2
60:10,15,22
61:10,12,17,20
61:24 62:1,4,6
62:9,12,14,20
62:23 63:7,10
63:13,20,25
64:4
**tortious** 36:17
**trades** 17:13
**traditional**
30:25
**tranche** 44:6
44:14,19 45:5
45:9 56:2 58:8
60:24,24
**tranches** 60:16
60:18,20 61:4
**transaction**
27:4
**transactions**
27:17,18 59:21
**transcribed**
3:25
**transcript** 67:4
**transfer** 28:1,5
28:20,21,24
31:7,25 41:1

42:12 44:3,16
44:23 46:17,19
46:24 47:2
**transferred**
28:11,25 29:2
29:8,18 30:7
30:12,14 31:3
32:3 43:20
50:10 51:24
61:8
**transfers** 40:20
42:4,13 43:10
**treat** 55:6
**trial** 24:2,10
**tried** 24:22
34:5
**tristan** 6:19
**trouble** 11:24
**true** 42:12 47:4
67:4
**truism** 41:8
**trust** 30:10
39:18
**trustee** 39:19
**try** 20:1,11,15
38:14
**trying** 20:15
21:21 38:23
**turetsky** 8:20
**turn** 13:20
47:14
**turner** 8:21
**turnover** 44:5
47:7 53:14,19
54:5,23 55:2,7
55:10,17,19,22
56:2,11,23

57:25 58:22
**two** 14:4,14
26:10 27:4
31:5 35:22,24
40:9 43:13
49:1
**twofold** 43:25
**type** 37:5

**u**

**u.s.** 2:3 32:11
32:14,16
**ubierna** 7:10
**ucc** 18:23
**ultimate** 49:2
**ultimately** 21:3
**under** 3:16
10:18,21,24
15:8,18 17:22
18:9,10,13,25
19:3,8,19 21:7
24:17 26:6,7
32:11 35:22
38:12 39:24
41:4,4 42:12
44:18 45:20
46:19 47:13,15
48:5,9 49:14
52:11,19 54:22
56:1 63:16
64:5,13
**underlying**
27:5 28:5
33:12 34:20
35:2 36:1,12
36:15,24 37:3
46:21

**understand**
15:16 16:11
17:5 19:2
24:14 28:4
30:4,8,21
48:18 49:17
55:4 57:11
60:2
**understanding**
24:11
**understood**
15:21 16:4
20:3 49:16
57:1
**undoubtedly**
22:18
**unenforceable**
59:6
**unfair** 10:20
**unfortunately**
49:25
**unimpaired**
11:8
**united** 1:1,18
**unusual** 49:18
**update** 64:9
**updated** 12:4
**usc** 47:13
**use** 50:15,18
**used** 50:7
**usually** 21:16

**v**

**v** 1:14 3:5,10
3:14 13:12
34:24 35:10
**va** 54:10,15

[validity - zomo]                                                      Page 23

| | | |
|---|---|---|
| validity  11:17 | 50:1 | writing  39:7 |
| 44:18 | wants  45:7 | written  26:24 |
| value  41:25 | 47:11 | wynne  9:9 |
| 42:10,14 | warranted | |

**x**

| | | |
|---|---|---|
| variety  32:21 | 37:10 | x  1:5,11,17 |
| 55:18 | warranties | 66:1 |
| various  40:25 | 34:16 | |

**y**

| | | |
|---|---|---|
| vejseli  8:22 | warren  6:16 | yara  7:11 |
| veritext  67:20 | 8:23 | yeah  31:20 |
| version  18:13 | wasting  42:13 | 39:13,22 43:7 |
| 45:20 | way  15:6,15 | 64:21 |
| versus  32:10 | 18:20 24:23 | yesterday  12:5 |
| veton  8:22 | 37:8 38:20 | yeung  9:1 |
| victor  7:10 | 39:5 42:7 49:3 | yoon  9:2 |
| view  28:11 | 50:19,23,24 | york  1:2,20 |
| 53:14 54:22 | 51:4,20 | 4:21 14:9 |
| violated  11:25 | wayne  8:7 | 33:19 |
| 11:25 37:12 | ways  26:10 | |

**z**

| | | |
|---|---|---|
| violation  37:16 | we've  32:10 | zachary  8:25 |
| virginia  54:10 | 61:12 | zaharis  9:3 |
| vista  54:9 | weedman  8:24 | zomo  6:24 |
| voidable  27:17 | week  39:5 | |
| voluntary | weeks  25:20 | |
| 38:10 | 61:13 | |
| vtor  6:13 | went  30:14 | |

**w**

| | |
|---|---|
| w  8:13 | west  4:13 |
| wait  27:22 | wholesale  17:4 |
| want  12:20 | wholly  15:4 |
| 15:19 26:1,5 | wildes  8:25 |
| 34:21 35:17 | william  6:3 |
| 38:2 39:17 | williams  6:4 |
| 47:7,20,24 | wish  12:21 |
| 59:17 60:21 | wofford  8:2 |
| 61:2 64:3 | word  13:5 |
| wanted  12:15 | work  12:24 |
| 33:6 47:21 | 20:25 21:10 |
| | 39:9 60:3 |