Dimitry Kirsanov
*Pro Se*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY 10004

# MR. KIRSANOV'S MOTION FOR CLARIFICATION

Dear Chief Judge Glenn,

      Mr. Kirsanov writes to the court to clarify the terms and rights in the Custody Settlement, that are ambiguous to Mr. Kirsanov's interpretation. On November 9th, 2023, the Court issued an order denying Mr. Kirsanov's motion to convert to a Chapter 7 ("Conversion Denial", ECF Doc. #3975), indicating that "Each Settling Custody Account Holder must vote all of his or her Allowed Custody Claims to accept the Plan.". In the Custody Settlement ("Custody Settlement",

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

ECF Doc. #2291), on page 9&10 (Docket page 10&11), it indicates rights to vote to reject below, resultant of having an outstanding obligation owed to the debtor, which Mr. Kirsanov has.

"For the avoidance of any doubt, any Holder of an Allowed Custody Claim that abstains from voting or **votes to reject the Plan** and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding obligation owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Deposit Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order."

In the Court's confirmation order (ECF Doc. #3972), it is indicated on Docket Page 22, note 200. "Pure Custody Claim" means any Custody Claim on account of Cryptocurrency that was never used in any of the Debtors' services other than the Custody Program that is eligible for withdrawal under the Custody Settlement Order." On this confirmation on docket page 11 under Vote Tabulation section, the court indicates "Class 6B (Withdrawable Custody Claims) are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

Mr. Kirsanov's 6B, however, was impaired and visible on his 6A voting results, resultant of the outstanding loan with the debtors, as the filings indicate.

In the Court's Order Authorizing the Debtors to Reopen Withdrawals for certain customers with respect to certain assets held in the Custody and Withhold accounts and granting related relief ("Withdrawal Order", ECF Doc #1767", on paragraph 9, it cites the following impairment:

9. Notwithstanding anything in this Order to the contrary, this Order does not authorize the Debtors to permit withdrawals of any digital assets (a) other than digital assets held in the Custody Program and/or associated with Withhold Accounts that is a Distributable Asset, (b) by (1) any current or former employee or insider or (2) any affiliate of any current or former employee or insider, or **(c) to any customer with an outstanding loan owed to the Debtors through the Debtors' Borrow Program.**

2

On the withdrawal order (ECF Doc #974), Mr. Kirsanov's name is not listed, and the debtor's counsel has prior confirmed in written dialogue on April 10th, 2023 that he was not eligible for distributions resultant of the outstanding loan.

The Court indicated in the Conversion Denial, that "His attempt to reject the plan with respect to his Custody Claims was thus ineffective and deemed as an acceptance." Mr. Kirsanov notes that in the final amended balloting results ("Ballot Results, ECF Doc. #3574"), on docket page 17, his vote was counted voted to reject. Mr. Brian Karpuk of Stretto indicated "I understand, however, that based on my review of the Plan that these Holders could not abstain or reject the Plan and that any vote by such Holders would be counted as a vote to accept the Plan.". Mr. Karpuk did not precisely indicate he reviewed the Custody Settlement. Mr. Karpuk did confirm the following: "By dollar amount, yes, 64 percent of the CEL Token holders in Class A voted to reject". The court indicated that it did not understand my questions, and that the documents say what they say.

For the avoidance of doubt, Mr. Kirsanov had Pure Custody CEL Token. In the Statement of Financial Affairs ("SOFA", ECF Doc. 973), Mr. Kirsanov is noted having Custody Wallet Deposits of CEL Token, dated 4/19/2022 (25,000 CEL Tokens), dated 5/16/22 (430,200 CEL Tokens), and dated 6/12/22 (294,000 CEL Tokens). The CEL was exclusively in Custody never interacted with any other program with the debtors, as shown in the SOFA.

Mr. Kirsanov's additional ambiguity is related to the distribution of Custody assets in Hawaii, where the Plan ("Plan", ECF Doc #3332), indicates that Custody asset classes in Hawaii receive "Cash, for individuals only), or another distribution agent (BTC/ETH), but unlikely to find a distribution agent to distribute in BTC/ETH". All other asset classes receive petition day values

The Custody Settlement, on Paragraph 8, indicates the following:

[QUOTE CONTINUED ON NEXT PAGE]

3

"In the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. Any distribution made in alternative cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date in U.S. dollars, which will then be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Approval Order be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Approval Order"

Mr. Kirsanov's ambiguity on this matter has been amplified due to the lack of clarity on the Plan from the debtor's counsel related to this specific concern and Mr. Kirsanov's rights with how he voted. The Court in the closing arguments asked Mr. Kirsanov if he was in Hawaii, Mr. Kirsanov responded that he was not presently in Hawaii, and would be affected. The Court indicated he would not be affected by this provision, and did not mention this subject in the Confirmation Order. Mr. Kirsanov notes that on effective day, pursuant to the Custody Settlement he is unable to pursue any claims and causes of action due to the exculpation provision.

Mr. Kirsanov remains unclear on these subjects, as the Custody Settlement indicates voting rights to reject, as he did, due to an outstanding obligation, which was reflected on the balloting. From Mr. Kirsanov's understanding, the Custody Settlement is final and binding, as agreed upon by Mr. Kirsanov and the debtors.

Mr. Kirsanov also remains unclear on the interaction with Custody assets in Hawaii, as during the distribution schedule only Cash and possibly BTC/ETH are able to be distributed in the 180 day distribution period. Despite Mr. Kirsanov's numerous requests and objections related to this matter throughout the confirmation hearing, this was never clarified on the record or reflected on the plan. The only clarification on the record by the debtor's counsel was on the Confirmation hearing transcript provided to the court (ECF Doc #3881), where the debtor's counsel indicated they cannot make crypto distributions, where Hawaii falls under. The debtor's counsel indicated

they had not considered that point, and that it was a fair point.

Mr. Kirsanov respectfully submits that the court offer clarity on these two ambiguous topics. Throughout the Confirmation Hearing after interpreting an adverse change. For the avoidance of doubt, Mr. Kirsanov had always interpreted that the "Deactivation Day Price" would reflect best interests based on the individual creditor, and this was changed on the 27th of September, after balloting, and one day before the objection deadline.

Mr. Kirsanov has attempted to communicate his concerns as best as he could to the Court, but uncertainty remains as reflected on the Plan and his Custody Settlement rights. Mr. Kirsanov has

attempted in good faith to communicate everything as best as he can as a Pro Se on short notice. Mr Kirsanov would like to clarify that it is not his intention to be argumentized with any of the above, he is simply seeking answers to the filings on the docket on behalf of the debtor that no one would answer. Mr. Kirsanov sincerely appreciates the time allocated by the court in his closing argument that went over the allocated time of 10 minutes. I hope this motion is taken in no other way that a creditor that continues to be extremely uncertain about his voting and rights pursuant to what is communicated and submitted by the debtor's counsel, reflected by the balloting, and his prior acceptance of the Custody Settlement. The debtor's counsel has prior responded with all their rights are reserved and none are waived.

Your honor, you would know these answers to my ambiguous position and rights as a creditor. I implore you to clarify these matters.

I remain respectfully,

Dimitry Kirsanov, Pro Se Creditor

/S/Dimitry Kirsanov