# EXHIBIT A



Luna
Squares

**CUSTOMER EQUIPMENT CO-LOCATION AGREEMENT**

Between

Luna Squares LLC
2015 George Lyons Parkway,
Sandersville, GA 31082
United States of America
("**Luna Squares**")

and

("**Customer**")

Confidential                                                                                    LUNA0001214

DocuSign Envelope ID: 6B842402-E3A6-4F00-987A-1C16A99B8F5A

## CUSTOMER EQUIPMENT CO-LOCATION AGREEMENT

This Customer Equipment Co-Location Agreement (this "**Agreement**" or "**CECA**"), dated February 23, 2021, is between Luna Squares LLC, with a location at 2015 George Lyons Parkway, Sandersville, GA 31082, United States of America ("**Luna Squares**"), and "**Customer**" as set out in Schedule A, Item 1, Legal Name.

In consideration of the promises, services, management set forth below, the parties agree as follows:

1. **Service**

   1.1. **Facility**

   Luna Squares will provide, as of the Deployment Date specified in Addendum A, hosting facility, electrical power, and internet access to Customer at the facility specified on Addendum A (the "**Facility**") for the purposes of installing, maintaining, and operating (the "**Services**") Customer's computer hardware specified on Addendum A (the "**Customer Equipment**"), which may be updated from time to time to add or delete Equipment, by mutual written agreement of the parties. Luna Squares shall have no obligation to provide Customer access to the Facility or electrical power, and internet access before the Deployment Date.

   Luna Squares hereby grants to Customer, its employees and its authorized agents, contractors, subcontractors, and their respective employees, a non-exclusive right to enter the Facility to install, use, operate, maintain, repair, disconnect and replace Customer Equipment, at Customer's sole cost and expense, subject and subordinate to: (a) the terms and provision of Luna Squares' lease with its landlord (the "**Lease**"); (b) the terms and conditions of this Agreement; and (c) Luna Squares' installation and maintenance specifications, which Luna Squares shall provide to Customer and which Luna Squares may update or modify from time to time by delivering such update or modification to Customer.

   Luna Squares reserves the right to change the location or configuration of the Facility; provided, however, that Luna Squares shall notify Customer of such change as soon as reasonably practicable, and further, shall not arbitrarily or discriminatorily require such changes and such change shall not result in (i) a material deterioration in the quality of the Services, (ii) locating the Customer Equipment outside of the United States and Luna Squares must use commercial endeavors to ensure that there is no material change to the overall renewability profile of the energy used with respect to the Customer Equipment (for the avoidance of doubt, offsetting credits may be counted toward the renewability profile). Luna Squares and Customer shall work reasonably and in good faith to minimize any disruption in Customer's services that may be caused by such changes in location or configuration of the area of the Facility in which the Customer Equipment is installed (the "**Equipment Space**") and the direct costs of such changes will be borne by Luna Squares. Notwithstanding the foregoing, Luna Squares hereby agrees that the location of the Customer Equipment shall not be changed until and unless the location of all other equipment which may be moved instead of the Customer Equipment is also changed.

   Nothing contained herein shall be construed as granting to Customer any property or ownership rights in the Facility or in the Equipment Space. Customer shall not intentionally or knowingly commit any act that would in any way encumber the Facility.  Luna Squares shall have sole control of access to the Equipment Space and the Facility by customers, service providers, or others. Customer shall not engage in or provide any meet-me-room, interconnection, or any services either directly or indirectly related to the trading of telecommunications capacity.

   1.2. **Tools of Trade & Luna Squares Equipment**

   Luna Squares will provide all the necessary tools of trade required to perform its tasks under this Agreement and will not be able to recover the costs of these tools from the Customer. Further, Luna Squares will have its own equipment which it uses to provide the Services pursuant to this Agreement ("**Luna Squares Equipment**"). All Luna Squares Equipment remains the property of Luna Squares and may be located in or outside the Facility.

Confidential                                                                                                                LUNA0001215

### 1.3.   Services & Change Orders

The Customer may request a **"Change Order"** to: (a) change the configuration or setup of the Customer Equipment; or (b) add additional Services to this Agreement and Luna Squares shall consider such Change Order in good faith. No "**Change Order"** willbecome effective unless and until signed by both parties, at which time it will become a part of this Agreement on the date it is signed by both parties. Luna Squares will provide the Services in accordance with applicable law or regulation, the terms of this Agreement and consistent with the standard of service it provides for its own operations or those of its affiliates.

### 1.4.   Management & Consulting

Luna Squares shall also provide management and consulting services to the Customer under this Agreement and any such services will be provided pursuant to the pricing and terms set out in Addendum A (as amended), and subject to Customer acceptance in writing prior to commencement of such services.

### 1.5.   Maintenance – Customer Equipment

Luna Squares shall use reasonable efforts to provide and maintain the Luna Squares Equipment in good working order. Luna Squares shall be entitled to remove all Luna Squares Equipment for repair, replacement, or otherwise as Luna Squares may determine in its sole and absolute discretion, but Luna Squares shall use reasonable efforts to minimize disruptions to the Services provided to Customer, which are caused thereby. The Customer shall not, and shall not permit others to, rearrange, disconnect, remove, and attempt to repair or otherwise tamper with any Luna Squares Equipment.

Luna Squares shall be responsible for the operation or maintenance solely of Customer Equipment specified in Addendum A or a Change Order incorporated herein or part hereof, or in a separately signed agreement between Luna Squares and Customer, and no other equipment of Customer.

### 1.6.   Maintenance – Facilities

Luna Squares shall perform such janitorial services, environmental systems maintenance, power plant maintenance and other actions as are reasonably required to maintain the Facility for use as a data center and Customer supporting infrastructure in a condition which is suitable for the placement of computer, telecommunications and Internet access equipment.

## 2.   Term, Renewal, Suspension and Termination

### 2.1.   Term

The Agreement commences on the earliest date Luna Squares notifies Customer in writing that any Customer Equipment has been received and turned on by Luna Squares (**"Installation"**), and is for a minimum term as specified on Addendum A,unless terminated earlier as provided below.

### 2.2.   Renewal

After the expiration of the initial term of Services for each piece of Customer Equipment set forth in Addendum A, the term of Services for such Customer Equipment shall automatically renew for successive periods set forth in Addendum A unless terminated by either party as provided herein.

Luna Squares shall use its reasonable best efforts to extend its power procurement contracts for an additional period on substantially the same terms as currently available. In the event that Luna Squares successfully extends its power procurement contracts for an additional period or periods, it shall offer Customer an option to extend the term of this Agreement on terms corresponding to those of the power procurement contract(s) (including any associated ancillary costs) covering such extended period(s) (on terms mutually agreeable, both parties acting in good faith and reasonably).

Confidential

**2.3.   Pause in Term**

If the Customer wishes to pause the receipt of Services at any time, Customer must fill out and sign a "Customer Pause Agreement Addendum" on the terms provided by Luna Squares.

**2.4.   Suspension**

Luna Squares reserves the rights to suspend the Services, without terminating the Agreement, in the event that:

2.4.1.   Any undisputed amount due is unpaid, or undisputed invoice issued hereunder is past due;

2.4.2.   The Customer is in violation of the Agreement or any of Luna Squares' policies, Acceptable Use Policy, located at lunasquares.com/terms-of-use/ and incorporated by reference herein, and which Luna Squares reserves the right to reasonably amend and update from time to time ("**AUP**"); provided that Luna Squares shall provide Customer with 30 days' advance notice of any such change and Customer shall be entitled to terminate this Agreement before the date the change commences with 15 days' notice following any amendment or update to the AUP which materially adversely impacts Customer;

2.4.3.   The Customer is in violation of any applicable law;

2.4.4.   Luna Squares is required by law, regulation or governmental authority to suspend any of the Services; or

2.4.5.   Except to the extent resulting from Luna Squares gross negligence or wilful misconduct, in providing any of the Services, Luna Squares would cause significant damage to Luna Squares, the Luna Squares network or other Luna Squares customers.

In each case, Luna Squares shall resume the Services as soon as practicable following the provision of evidence of the cure by the Customer to Luna Squares and shall give Customer notice of any circumstances known by it which may result in suspension as soon as practicable.

**2.5.   Mutual Termination**

The parties may agree to mutually terminate this Agreement in writing.

**2.6.   Termination for Cause**

Luna Squares may terminate this Agreement for cause immediately following written notice to Customer if Customer: (a) fails to make any undisputed payment(s) due pursuant to this Agreement, and does not rectify the unpaid undisputed amount within seven (7) days after becoming due, whereby Luna Squares has not elected to suspend service under Clause 2.4; (b) violates, or fails to perform or fulfil, any covenant or provision of this Agreement, and any such matter is not cured within fourteen (14) days after notification from Luna Squares; or (c) enters into bankruptcy, dissolution,financial failure or insolvency, or Change in Control, unless approved in advance by Luna Squares (each, a "**Default**"). For purposes of this Agreement, "**Change of Control**" shall mean:

(i) any merger, reorganization or consolidation of the party, other than a merger, reorganization or consolidation in which the holders of the party's voting stock or equity immediately prior to the transaction have substantially the same proportionate ownership of voting stock or equity of the surviving entity immediately after the transaction; (ii) any sale, lease, exchange, transfer or disposition (in one transaction or a series of related transactions) of all or substantially all the assets (which shall be defined as more than 50% of the total gross fair market value of all of the assets) of the party; and/or (iii) any issuance, sale, exchange or other disposition (in one transaction or a series of related transactions) of voting stock or equity representing 50% or more of the voting stock or equity of the party which, in each case, results in Celsius Network Limited no longer being, directly or through its affiliates, the largest holder of equity in the Customer.

Luna Squares will also have the right to terminate this Agreement as set forth in other clauses of this Agreement, provided that such other reasons shall not be deemed to be a Default by Customer.

Customer may terminate this Agreement if Luna Squares fails to perform or fulfil, any covenant or provision of this Agreement, and any such matter is not cured within fourteen (14) days after

Confidential

notification from Customer; or (c) enters into bankruptcy, dissolution, financial failure or insolvency, or Change in Control, unless approved in advance by Customer (each, a "**Default**").

### 2.7. Termination due to Lease

Luna Squares occupies the Facility under the Lease, and in the event the rights to use the facility within which the Facility is located terminates or expires for any reason, then Luna Squares will promptly notify the Customer of the event, and in any event, within five (5) business days of any material event which may cause Luna Squares to lose the right to continue to use the Facility. If Luna Squares loses access to the Facility, it will use commercially reasonable efforts to relocate the Customer Equipment to another Luna Squares facility, but if Luna Squares is not able to do so using its commercially reasonable efforts, then either party may terminate the Agreement. In the event of a termination of this Agreement under this Clause 2.7, Luna Squares will, at its cost, prepare the Customer Equipment for removal from the Facility; provided that, in the event the loss of access to the Facility is the result of Luna Squares' gross negligence, wilful misconduct or breach of applicable law, Luna Squares shall relocate the Customer Equipment to another Luna Squares facility or otherwise provide replacement hosting services (as long as compliance with this clause does not materially increase the cost of providing the Services under this Agreement).

### 2.8. Effect of Termination

In the event this Agreement expires or is terminated, Customer agrees to pay immediately to Luna Squares all undisputed amounts then owed. Luna Squares will provide, in writing to the Customer, an invoice setting out all outstanding charges up to the date of the termination, less any credits for amounts held as a deposit. The Customer must make the final payment of undisputed amounts within fourteen (14) days of the date on the final invoice.  Luna Squares need not release the Customer Equipment until all undisputed amounts owing have been paid.

Customer will, at its own cost, remove all Customer Equipment from the Facility, provided that if Customer has failed to pay the final invoice or to remove the remove the Customer Equipment, Luna Squares shall have the right to:

(a) Reconfigure the Customer Equipment for Luna Square's use (provided such reconfiguration is reversible and does not materially impair the value of the Customer Equipment); or
(b) remove and store, at Customer's reasonable expense, all or any portion of the Customer Equipment without any cost, obligation or liability of Luna Squares to Customer in order to defray the costs to Luna Squares of the Customers non-payment.

Luna Squares will keep account of the amounts recovered as a result and account to the Customer of all revenues and expense on the same terms as this Agreement.

In the event that Luna Squares recovers more than the amounts outstanding in the final invoice, then Luna Squares may continue to operate the Customer Equipment, but must account for fifty percent (50%) of the profits (after all direct and indirect costs and expenses) to the Customer until such time the Customer either arranges the removal of the Customer Equipment or a new agreement with Luna Squares.

## 3. Fees and Payment

### 3.1. Deposits / Bonds; Deposit and Power Allocation Forfeiture

The Customer may be required to provide a deposit to Luna Squares. The amount of any deposit for any Customer Equipment shall be set out in Addendum A as "Deposit Amount". Where the Customer has failed to pay any amount to Luna Squares due hereunder, Luna Squares may apply the funds held as deposit against the outstanding amounts and will notify the Customer of this application.

Customer agrees and understands that a deposit reserves both space in the Facility and an allocation of power for Customer's expected power consumption.  If Customer fails to deliver equipment within 60 days of the Deployment Date, Customer forfeits the applicable deposit and its power allocation.

**3.2.** **Initial Setup Fees**

Customer shall pay Luna Squares the Initial Setup Fees set forth on Addendum A. In return for the Initial Setup Fees, Luna Squares will commission the standard equipment in the Facility and connect the Customer Equipment in the configuration determined with the Customer.

**3.3.** **Monthly Services Fees**

Customer shall pay Luna Squares the Monthly Services Fees set forth on Addendum A. Monthly Services Fees are based on the Customer Equipment expected power consumption as listed on Addendum A ("**Expected Consumption**"). Customer shall not deploy Customer Equipment having an actual power consumption that exceeds the expected power consumption listed on Addendum A by more than 3%. If actual power consumption, as reasonably determined by Luna Squares, exceeds the Customer's Equipment's Expected Consumption, Luna Squares may, at its discretion (1) adjust the Monthly Services Fees to account for the excess power consumption; or (2) limit or suspend power to Customer Equipment solely to the extent required to reduce power consumption to the Expected Consumption and, in either case, Customer shall be entitled remove Customer Equipment in the amount necessary to cause overall power consumption to equal the Expected Consumption.

**3.4.** **Cost Increases**

In the event of any change in applicable law, regulation, rule, or order or any other change outside of Luna Squares' direct control that materially increases the costs or other terms of delivery of Services under this Agreement, including but not limited to electrical rate increases, Luna Squares will notify the Customer in writing of such change and provide an update to Addendum A showing the new Monthly Services Fee. The Customer may then agree to an increased fee related to such costs via the variation to the Addendum A with Luna Squares, or if rejected, the Customer may terminate the specific productor service in question or all services without termination penalty, with prior written notice.

**3.5.** **Taxes**

Customer shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Customer hereunder. The Customer will not make any deductions from payments to Luna Squares for any taxes, insurance, bonds or any other subscription of any kind, unless it is so ordered by any order or determination served on the Customer with respect of Luna Squares. For the avoidance of doubt, Customer shall not be responsible for paying the income taxes of Luna Squares.

**3.6.** **Billing and Payment Terms**

Luna Squares shall issue Customer an invoice via email for Services. Customer shall pay for Services atthe rates and charges set forth herein within fifteen (15) days of the date of the invoice.

**3.7.** **Late Payment**

All invoices are due upon receipt and become past due fifteen (15) days after the date of the invoice. Any undisputed payment not made when due will be subject to late charges of 1% per month (prorated on a daily basis beginning on the past due date), or the highest rate allowed by law, whichever is less, calculated daily and compounded monthly. Customer shall also reimburse Luna Squares for all costs incurred in collecting any late payments, including, without limitation,attorneys' fees.

**3.8.** **Payment Methods**

All payment for Services shall be paid in US dollars, unless otherwise mutually agreed upon in writing between Customer and Luna Squares.

Luna Squares' banking details for payment will be provided on each invoice.

Confidential

**3.9.    Dispute with invoices**

Disagreements with invoices by the Customer must be given in writing within fifteen (15) days of the invoice date and the undisputed portion paid in full; provided that if the dispute is not registered until thirty (30) days after the invoice date, the invoice must be paid in full, including the disputed portion. Customer must raise disputes regarding invoices within sixty (60) days of the later of (i) the invoice date and (ii) discovery of events or circumstances giving rise to the dispute. Any disputed amounts resolved in favor of Customer will be credited to Customer's account and amounts payable to Luna Squares shall be paid within ten (10) days of dispute resolution.

**4.    Network, Access and Security**

**4.1.    Network**

Luna Squares will provide a minimum of 100mbps of local network connectivity to each single Ethernet segment. Customer may elect to use Luna Squares' standard firewall and Dynamic Host Configuration Protocol ("**DHCP**") services. Customer is responsible for all network and device security, including providing a firewall and managing passwords.

Where Luna Squares provides a fully managed service for the Customer Equipment, which wouldbe set out in Addendum A, Luna Squares will become responsible for the network and device security, including providing a firewall and managing passwords.

**4.2.    Transmission over Network**

Customer is solely responsible for the content of any transmissions or storage utilizing Customer's Equipment. The use of another organization's network or computing resources is subject to its respective permission and usage policies. Customer agrees to comply with all applicable laws with regard to the transmission, storage and use of information and content. Customer further agrees not to use the Services provided hereunder for illegal purposes, to interfere with or disrupt other network users, network services or network equipment.

**4.3.    Access**

Subject to this clause 4.3, Luna Squares shall provide Customer with reasonable access to conduct periodic inspections of the Customer Equipment and Facility and to facilitate the pick-up and delivery of Customer Equipment to the Facility. Only those persons specifically authorized by Luna Squares may access the Facility. Luna Squares may deny or suspend Customer's access to the Customer Equipment based on Luna Squares' then-current Security Policies and Procedures, as amended and updated from time to time in the sole and absolute discretion of Luna Squares, including:

**4.3.1.**    All access into the Facility must be supervised by a Luna Squares representative, unless Luna Squares waives this right;

**4.3.2.**    Customer shall provide at least one (1) day written notice to Luna Squares prior to any inspection of the Customer Equipment;

**4.3.3.**    Customer shall perform Customer Equipment maintenance and repairs during normal business hours (Monday-Friday, 7AM – 6PM Eastern Standard Time);

**4.3.4.**    Customer may request immediate and/or after-hour access to the Facility to perform emergency maintenance and Luna Squares will use reasonable efforts to accommodate Customer's after-hour emergency access requests, which may be limited by availability of Luna Squares staff; and

**4.3.5.**    In the event that unauthorized parties gain access to the Facility through access cards, keys or other access devices provided to Customer, Customer shall be responsible for any damages incurred as a result thereof and Customer shall be responsible for the cost of replacing any security devices lost or stolen after delivery thereof to Customer.

Confidential                                                                                                    LUNA0001220

### 4.4. Hazardous Conditions

If, in the sole and absolute discretion of Luna Squares, its employees or agents, any hazardous conditions arise on, from, or affecting the Facility, Luna Squares is hereby authorized to suspend Service under this Agreement without subjecting Luna Squares to any liability.

### 4.5. Security

Luna Squares will take reasonable and responsible measures to protect the security of Customer Equipment, but makes neither guarantees nor warranties as to the security of Customer Equipment, or Customer's information or data, or its safety from alteration, destruction, disclosure, forgery or misuse. Customer acknowledges that implementation, maintenance and verification of appropriate security measures with respect to Customer's network, facilities, Customer Equipment, user accounts and uploaded data is solely under Customer's control and is Customer's responsibility. In the event of any losses or damages to Customer Equipment are caused by a third party, Luna Squares will provide reasonable assistance to resolve any disputes regarding such losses or damages, but will not under any circumstances be liable for any such losses or damages unless due to the gross negligence or intentional and wilful misconduct of Luna Squares.

Notwithstanding the foregoing, Luna Squares represents and warrants that it shall provide reasonable site security at the Facility.

### 4.6. Restricted Access under certain events

Luna Squares reserves the right to limit or restrict Customer's access to the Facility and Customer Equipment if undisputed balances are past due, Services are suspended, or the Agreement has been terminated. Customer will be notified of any such restriction, in writing, via e-mail.

## 5. Removals and Relocation of Customer Equipment

### 5.1. Relocation

Luna Squares may require Customer to relocate the Customer Equipment within the facility or to another Luna Squares facility within the Unite States upon thirty (30) days' prior written notice to Customer, provided that the site of relocation shall afford conditions no less favorable for the Customer Equipment, comparable site security and accessibility to the Customer Equipment, not including geographical conditions and Luna Square must use commercial endeavors to ensure a comparable renewability profile for energy provided to Customer Equipment (for the avoidance of doubt, offsetting credits may be counted toward the renewability profile). Notwithstanding the foregoing, Luna Squares shall not arbitrarily, capriciously or without good reason require Customer to relocate the Customer Equipment. If the Customer Equipment is relocated according to this Clause 5.1, all costs of or associated with relocating the Customer Equipment and improving the Facility to which the Customer Equipment will be relocated shall be borne by Luna Squares. Nothing in this Clause 5.1 is intended to limit the rights of Luna Squares under Clause 5.3, which will control if there is any inconsistency between this Clause 5.1 and Clause 5.3. Notwithstanding the foregoing, Luna Squares hereby agrees that the location of the Customer Equipment shall not be changed until and unless the location of all other equipment which may be moved instead of the Customer Equipment is also changed.

### 5.2. Interference

Except as contemplated by this Agreement, Customer shall not interfere with Luna Squares or any of its affiliates, agents, contractors or employees use of the Facility. Luna Squares may suspend the Services in the event that Customer or Customer Equipment interferes with Luna Squares' or its affiliates operation or maintenance of the Facility in a manner other than as contemplated by this Agreement, including interfering with the lawful use of the Facility by any third party, and Luna Squares may take reasonable steps to stop such interference, including, but not limited to, suspending power to Customer Equipment. In the event that Luna Squares takes any steps to stop interference caused by Customer, Luna Squares will reverse such steps

Confidential
LUNA0001221

as soon as reasonably practicable after Luna Squares is reasonably satisfied that Customer has cured the interference. Further, either party may terminate this Agreement if the Services are suspended more than three (3) times during a twelve (12) month period. Except as otherwise provided, Luna Squares agrees to use commercially reasonable efforts to ensure that use of Customer's Equipment is not unreasonably interfered with by Luna Square, its employees, agents, contractors or other customers.

**5.3. Emergency Event**

In the event of an emergency, as determined in Luna Squares's reasonable discretion, Luna Squares may rearrange, remove, or relocate the Customer Equipment without any liability to Luna Squares. Notwithstanding the foregoing, in the case of emergency, Luna Squares shall provide Customer, to the extent practicable, reasonable notice prior to rearranging, removing, orrelocating the Customer Equipment.

**5.4. Prior Approval**

Customer shall not remove any of the Customer Equipment from the Facility without the prior written authorization of Luna Squares. Customer will provide Luna Squares with written notification a minimum of two (2) days before Customer wishes to remove any of the Customer Equipment from the Facility. Before authorizing the removal of the Customer Equipment, Luna Squares will verify that Customer has no payments due. Once Luna Squares authorizes the removal of the Customer Equipment from the Facility, Customer will remove such Customer Equipment, and shall be solely responsible to bring appropriate packaging and moving materials. If Customer uses an agent or other third party to remove the Customer Equipment, Customer shall be solely responsible for the acts of such party, and any damages caused by such party tothe Customer Equipment, the Facility or otherwise.

## 6. Customer Responsibilities

**6.1. Acceptable Use Policy**

Customer shall at all times use the Customer Equipment and the Facility, in a safe and respectful manner, and according to the then current applicable policies and procedures of Luna Squares, including the AUP.

**6.2. Compliance with Laws**

Customer's use of the Facility and the Customer Equipment located at the Facility, must at all times conform to all applicable laws, including international laws (to the extent applicable), the laws of the United States ofAmerica, the laws of the states in which Customer is doing business, and the laws of the state where the Facility is located.

**6.3. License and Permits**

Customer shall be responsible for obtaining any licenses, permits, consents, or approvals from any federal, state or local government, which may be necessary to install, possess, own, or operate the Customer Equipment.

**6.4. Insurance**

It is understood that Luna Squares is not an insurer and Customer Equipment is not covered by any insurance policy held by Luna Squares. Customer is responsible for obtaining insurance coverage for the Customer Equipment. Customer agrees to look primarily to Customer's insurer to recover for injury or damage in the event of any loss or injury.

**6.5.    Customer Equipment; Installation; Inspection**

6.5.1    Customer represents, warrants and covenants that it owns or has the legal right and authority, and will continue to own or secure the legal right and authority, during the term of this Agreement, to use Customer Equipment and software located in the Equipment Space. Customer is responsible for all aspects of installation, replacement and removal of Customer Equipment, unless otherwise agreed in writing by the Parties. Customer will install Customer Equipment in the Facility only after obtaining authorization from Luna Squares. Installation and testing shall at all times be under the direct supervision of an authorized employee or agent of Luna Squares. If Customer uses an agent or other third party to deliver, install, or remove Customer's Equipment, then Customer will be solely responsible for the acts of such agent/third party and such third party shall be required to deliver evidence of insurance coverage prior to any entry. Customer shall engineer, furnish, install, and test, at its sole cost and expense, all of Customer Equipment in accordance with the plans and specifications approved in advance by Luna Squares. All Customer Equipment shall be clearly labeled as such, and Customer shall be responsible for removal of all installation material, for daily clean-up of the Facility during installation, and for a final clean up after completion of installation.

6.5.2    Luna Squares may inspect Customer Equipment from time to time, upon twenty-four (24) hours' prior written notice to Customer, and Customer personnel may be present during such inspections; provided, however, that if in the reasonable judgment of Luna Squares, safety or a technical emergency require an inspection without providing such notice, Luna Squares may inspect Customer Equipment immediately and promptly thereafter provide notice of such inspection to Customer.

**6.6.    Customer Equipment in Good Working Order**

Customer shall ensure all Customer Equipment is in good working order and suitable for use in the Facility. It is understood that Customer is responsible for any costs associated with the troubleshooting and repair of Customer Equipment received in non-working order, including labor and parts. Luna Squares is not responsible in any way for installation delays or loss of profits as a result of Customer Equipment deemed not to be in good working order upon arrival at the Facility.

**6.7.    Modification and/or Overclocking of Customer Equipment**

Customer shall notify and obtain prior written approval from Luna Squares before any modifications, alternations, firmware adjustments or overclocking are made to Customer's Equipment which might cause Customer Equipment's performance to deviate from the standard and/or factory specifications. If Luna Squares determines in its sole discretion (acting reasonably) that one or more pieces of the Customer's Equipment has been altered or modified without Luna Squares prior written approval not to unreasonably withheld ("Non-Compliant Equipment"), Luna Squares reserves the right to immediately discontinue Services to such Non-Compliant Equipment and/or invoice Customer for Luna Squares incremental cost from such Non-Compliant Equipment. Additionally, Customer will be subject to a Non-Compliant Equipment fee equal to 10% of Customer Equipment's monthly rate, which will be applied for each month Customer Equipment was deemed to be Non-Compliant Equipment.

**6.8.    No Approach / No Hiring**

Customer acknowledges that Luna Squares has incurred substantial recruitment, screening, training, and administrative expenses with respect to its network engineers and other employees. If, at any time since the inception of this Agreement up to one (1) calendar year of the date of the completion or termination of this Agreement, for any reason whatsoever, Customer hires as an employee or independent contractor, or on any other basis, any agent or employee of Luna Squares who, to Customer's knowledge, has worked on any project performed for Customer by Luna Squares, the parties agree Luna Squares will be damaged, but that the amount of this damage will be difficult to ascertain. Accordingly, the parties agree that for each such agent, consultant, or employee directly or indirectly employed or utilized as an employee, consultant or independent contractor by Customer within such period, the Client shall pay Luna Squares, as liquidated damages and not as a penalty, the amount of Fifty Thousand Dollars ($50,000.00); provided that, to the extent such employment or utilization is pursuant to a response by such

Confidential                                                                                                    LUNA0001223

agent, consultant, or employee to a general advertising, solicitation by a third party or an approach by such individual to the Customer without initial solicitation by the Customer.

Liquidated Damages Provision Initials: _____    [Customer to initial]

## 7. Common Carrier

Luna Squares and Customer agree that Luna Squares is acting solely as a common carrier in its capacity of providing the Services hereunder and is not a publisher of any material or information. Furthermore, Luna Squares has no right or ability to censor materials or information traversed through Luna Squares' networks by Customer.

## 8. No Warranty and Disclaimer

LUNA SQUARES MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICES OR THE OPERATING TEMPERATURE OF THE FACILITY. THE SERVICES AND THE FACILITY PROVIDED BY LUNA SQUARES IS PROVIDED "AS IS." LUNA SQUARES DOES NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE FACILITY IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY. LUNA SQUARES MAKES NO WARRANTY WHATSOEVER, INCLUDING ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; OR (C) WARRANTY AGAINST INTERFERENCE. LUNA SQUARES DOES NOT WARRANT THAT (I) THE SERVICES WILL BE AVAILABLE 24/7 OR FREE FROM MINOR INTERRUPTIONS; OR (II) THE SERVICES WILL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS SET OUT IN THE DOCUMENTATION; OR (C) THE SERVICES WILL PROVIDE ANY FUNCTION NOT DESIGNATED IN THE DOCUMENTATION. ALL EXPRESS AND IMPLIED WARRANTIES ARE EXPRESSLY DISCLAIMED.

## 9. Limitation of Liability

### 9.1. Customer Equipment malfunctions

Customer understands and acknowledges that in some situations Customer Equipment functionality may be unavailable due to factors outside of Luna Squares' control, including, but not limited to, network failures, pool operator failures, denial of service attacks, currency network outages, hacking or malicious attacks on the crypto networks or exchanges, power outages, or Acts of God.

EXCEPT TO THE EXTENT RESULTING FROM LUNA SQUARES'S GROSS NEGLIGENCE, FRAUD, WILFUL MISCNDUCT, BREACH OF APPLICABLE LAW OR BREACH OF THIS AGREEMENT, LUNA SQUARES SHALL HAVE NO OBLIGATION, RESPONSIBILITY, AND/OR LIABILITY FOR THE FOLLOWING: (A) ANY INTERRUPTION OR DEFECTS IN THE CUSTOMER EQUIPMENT FUNCTIONALITY CAUSED BY FACTORS OUTSIDE OF LUNA SQUARES' REASONABLE CONTROL; (B) ANY LOSS, DELETION, OR CORRUPTION OF CUSTOMER'S DATA OR FILES WHATSOEVER; (C) ANY LOST REVENUE TO CUSTOMER DURING OUTAGES, CUSTOMER EQUIPMENT FAILURES, ETC.; (D) DAMAGES RESULTING FROM ANY ACTIONS OR INACTIONS OF CUSTOMER OR ANY THIRD PARTY NOT UNDER LUNA SQUARES' CONTROL; OR (E) DAMAGES RESULTING FROM CUSTOMER EQUIPMENT OR ANY THIRD PARTY EQUIPMENT.

### 9.2. Liability Limitation

EXCEPT TO THE EXTENT RESULTING FROM LUNA SQUARES'S GROSS NEGLIGENCE, FRAUD, WILFUL MISCONDUCT, BREACH OF APPLICABLE LAW OR BREACH OF THIS AGREEMENT, IN NO EVENT SHALL LUNA SQUARES BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR ANY LOSSES OR DAMAGES OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF MISTAKES, NEGLIGENCE, ACCIDENTS, ERRORS, OMISSIONS, INTERRUPTIONS, OR DEFECTS IN TRANSMISSION, OR DELAYS,

Confidential

LUNA0001224

INCLUDING, BUT NOT LIMITED TO, THOSE WHICH MAY BE CAUSED BY REGULATORY OR JUDICIAL AUTHORITIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OBLIGATIONS OF LUNA SQUARES PURSUANT TO THIS AGREEMENT.

IN NO EVENT SHALL LUNA SQUARES BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE, OR PROFIT OR LOSS OF DATA OR DIMINUTION IN VALUE, OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT LUNA SQUARES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

EXCEPT FOR LIABILITIES RESULTING IN PERSONAL INJURY, PROPERTY DAMAGE, DEATH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT SHALL LUNA SQUARES' AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACHOF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, EXCEED THE AGGREGATE AMOUNTS ACTUALLY RECEIVED BY LUNA SQUARES FROM CUSTOMER IN RESPECT OF THE TWELVE (12) MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM (OR IF SUCH EVENT OCCURS IN THE FIRST TWELVE (12) MONTHS FOLLOWING THE DATE OF THIS AGREEMENT, AN ANNUALIZED AMOUNT BASED ON AMOUNTS ACTUALLY RECEIVED BY OR PAYABLE TO LUNA SQUARES FROM CUSTOMER IN RESPECT OF THE PERIOD ELAPSED BETWEEN THE DATE OF THIS AGREEMENT AND SUCH EVENT).

### 10. Indemnification

Customer will indemnify, hold harmless, and defend Luna Squares, its subsidiaries, employees, agents, directors, owners, executives, representatives, and subcontractors from any liability, claim, judgment, loss, cost, expense or damage, including reasonable attorneys' fees and reasonable legal expenses, brought by any party on account of the Customer Equipment or Customer's use of the CustomerEquipment.

### 11. Confidentiality

From time to time during the term of this Agreement, either party (as the "**Disclosing Party**") may disclose or make available to the other party (as the "**Receiving Party**"), non-public, proprietary, and confidential information of Disclosing Party that, if disclosed in writing or other tangible form is clearly labelled as "confidential," or if disclosed orally, is identified as confidential when disclosed and within three (3) days thereafter, is summarized in writing and confirmed as confidential ("**Confidential Information**"); provided, however, that Confidential Information does not include any information that: (a) is or becomes generally available to the public other than as a result of Receiving Party's breach of this Clause 11; (b) is or becomes available to the Receiving Party on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information; (c) was in Receiving Party's possession prior to Disclosing Party's disclosure hereunder; or (d) was or is independently developed by Receiving Party without using any Confidential Information. The Receiving Party shall: (x) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would use to protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care; (y) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement; and (z) not disclose any such Confidential Information to any person or entity, except to the Receiving Party's affiliates and its or their employees, officers, directors, shareholders, partners, members, managers, agents, independent contractors, service providers, sublicensees, subcontractors, attorneys, accountants, and financial advisors who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement.

If the Receiving Party is required by applicable law or legal process to disclose any Confidential Information, it may do so but shall, prior to making such disclosure, use commercially reasonable efforts to notify Disclosing Party of such requirements to afford Disclosing Party the opportunity to seek, at Disclosing Party's sole cost and expense, a protective order or other remedy.

Confidential

LUNA0001225

## 12. Miscellaneous

### 12.1. No Other Representations

The parties have not made or relied upon any representations, understandings, or other Agreements not specifically set forth in this Agreement.

### 12.2. Whole Agreement

This Agreement, the Addendums, and any documents referenced in this Agreement represent the whole Agreement between the parties and is a final, complete and exclusive statement of the terms of this Agreement. No course of prior dealing between the parties shall be relevant or admissible to supplement, explain, or vary any of the terms of this Agreement.

### 12.3. Waiver, Severability

The waiver of any breach or default does not constitute the waiver of any subsequent breach or default. If any provision of this Agreement is held to be illegal or unenforceable, it shall be deemed amended to conform to the applicable laws or regulations, or, if it cannot be so amended without materially altering the intention of the parties, it shall be stricken and the remainder of this Agreement shall continue in full force and effect.

### 12.4. Amendment

Amendments, modifications, or supplements to this Agreement must be in writing signed by authorized representatives of both parties.

### 12.5. Assignment

Neither Customer nor Luna Squares shall assign or transfer this Agreement in whole or in part without the prior written consent of the other party, which shall not be unreasonably withheld.

### 12.6. Reporting & Public Announcements

Customer understands that Internet use, and related products and services provided under this Agreement, may require registration and related administrative reports which are public in nature. Luna Squares may be required to file with the appropriate regulatory agency tariffs respecting the delivery of certain services by Luna Squares to Customer. In the event that such tariffs are filed, respecting services ordered by Customer, then the terms set forth in the applicable tariff shall govern Luna Squares' delivery of, and Customer's consumption or use of, such services.

### 12.7. Force Majeure

Neither party shall be liable in any way for delay, failure in performance, loss or damage due to any of the following force majeure conditions; fire, strike, embargo, explosion, power failure, flood, lightning, war, water, epidemic or global pandemic, electrical storms, labor disputes, civil disturbances, governmental requirements, acts of civil or military authority, acts of God, acts of public enemies, inability to secure replacement parts or materials, transportation facilities, or other causes beyond its reasonable control, whether or not similar to the foregoing. This also includes planned service and maintenance needs.

### 12.8. Governing Law and Venue

This Agreement and performance of the parties to this Agreement shall be construed and governed according to the internal substantive and procedural laws of the State of Delaware applicable to contracts made and to be fully performed in such state (except any laws of that state that would render such choice of law ineffective). If there is any dispute between the parties in connection with this Agreement, including any question regarding its existence, validity or termination, unless amicably resolved by the parties, such dispute shall be finally settled by arbitration in accordance with the terms set forth hereunder. The parties agree that any such dispute shall be submitted exclusively to arbitration in accordance with the American Arbitration Association (AAA) Rules (the **"Rules"**) in effect at the time of submission for arbitration which

Confidential                                                                                                              LUNA0001226

Rules are deemed to be incorporated by reference into this clause. The arbitration proceedings shall be conducted in the English language, the number of arbitrators shall be one (1), and the seat, or legal place, of arbitration shall be New York, New York with exclusive jurisdiction over any such dispute. The arbitral award is final and binding on both Parties. Unless the arbitral award is otherwise determined, the arbitration fee shall be borne by the losing party. The losing party shall also compensate the winning party's reasonable legal fees and other expenses. Judgment upon any award rendered may be entered in any court having jurisdiction, or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the case may be..

EACH OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS ANY DISPUTE OF ANY NATURE BETWEEN THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT TO ARBITRATION AS PROVIDED FOR ABOVE AND (B) WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO, ANY DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY COURT AND ANY RIGHT OF JURISDICTION ON ACCOUNT OF ITS PLACE OF RESIDENCE OR DOMICILE.

### 12.9. Relationship of the Parties

The parties agree that their relationship hereunder is in the nature of independent contractors. Neither party shall be deemed to be the agent, partner, joint venturer or employee of the other, and neither shall have any authority to make any Agreements or representations on the other's behalf. Each party shall be solely responsible for the payment of compensation, insurance and taxes of its own personnel, and such personnel are not entitled to the provisions of any employee benefits from the other party. Neither party shall have any authority to make any Agreements or representations on the other's behalf without the other's written consent. Additionally, Luna Squares shall not be responsible for any costs and expenses arising from Customer's performance of its duties and obligations pursuant to this Agreement.

### 12.10. Notices

Notices hereunder shall be deemed properly given when delivered, if delivered in person, or when transferred via overnight courier and upon delivery, or in the case of email 24 hours from being sent. Notices to shall be delivered to the addresses indicated below until such time as either party informs the other in writing of a change:

**Customer**

*As set out in Schedule A*

**Luna Squares**

ATTN:

Chief Operating Officer
Luna Squares
2015 George Lyons
Parkway, Sandersville, GA
31082
United States of America
liam@mawsoninc.com

With an email copy to: legal@lunasquares.com

### 12.11. Interpretation

Any rule of construction to the effect that ambiguities are to be resolved against the drafting party

Confidential                                              LUNA0001227

shall not apply to the interpretation and construction of this Agreement, and this Agreement shall be construed as having been jointly drafted by the parties. The titles and headings for particular paragraphs, sections and subsections of this Agreement have been inserted solely for reference purposes and shall not be used to interpret or construe the terms of this Agreement.

## 12.12. Counterparts

This Agreement may be executed in one or more counterparts, all of which when fully executed and delivered by all parties to this Agreement and taken together shall constitute a single agreement, binding against each of the parties. To the maximum extent permitted by law or by any applicable governmental authority, this Agreement may be transmitted by facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*[The remainder of this page intentionally left blank.]*

**EXECUTION**

The parties signing below represent that they are authorized to enter into this Agreement on behalf of the respective parties. IN WITNESS WHEREOF, the parties hereto have caused this Master Service Agreement to be executed by their duly authorized representatives as of the day and year first above written.

FOR LUNA SQUARES

_____    February 23, 2022

**Luna Squares Signature**          **Date**

James Manning, CEO
_____

**Print Name**

FOR CUSTOMER

DocuSigned by:

_____    2/23/2022
C9BBF49D0B5D482

**Customer Signature**          **Date**

Roni Cohen Pavon
_____

**Print Name**

Confidential

LUNA0001229

**ADDENDUM A**

**Facility Locations:** Luna Squares

Midland - Tenth Street, Midland, PA 15059
Sharon - 200 Clark Street in the City of Sharon, Mercer County, PA

**Deposit Amount**

| Batch # | Contract Date | Detail of Deposit | Deposit Amount |
|---|---|---|---|
| 1-5 | Deposits to be paid 14 days prior to commissioning of any units | Turn on deposit | 2 months forecast bill |

**Customer Equipment**

| Batch # | Deployment Date | Term of Contract | Equipment Model | QTY | Expected Consumption (per machine in watts) | Monthly Services Fee (per unit of Equipment/QTY) | Fully Managed Service? |
|---|---|---|---|---|---|---|---|
| 1 | March | 1-year initial term. | TBA | 2,000 | TBA | TBA | Yes |
| 2 | April | 1-year initial term. | TBA | 4,000 | TBA | TBA | Yes |
| 3 | May | 1-year initial term. | TBA | 6,000 | TBA | TBA | Yes |
| 4 | June | 1-year initial term. | TBA | 8,000 | TBA | TBA | Yes |
| 5 | June - Sharon | 1-year initial term. | TBA | 5,000 | TBA | TBA | Yes |
| 7 | July – Sharon | 1-year initial term. | TBA | 5,000 | TBA | TBA | Yes |

**Standard Service Charges**

| Nature | Payable / When Payable | Price |
|---|---|---|
| Setup Fee | Waived | Waived |
| Monthly Management Fee | Payable upon receipt of invoice | Waived |
| Advanced troubleshooting | Optional | $30/ hr |
| Decommission and relocation fee | Upon termination or request of thecustomer | Waived |
| Monthly Power Rate | Payable upon receipt of invoice | Cost to comprise of the total of: Luna Power Cost + $11.60 / MWH of infrastructure + 10% operating margin = Monthly power rate (Worked example below) |

The first 50MW will be at $41/MWH, the balance of the power will be at spot price.  Luna Squares will make at least 90MW available to Customer under this Agreement.

Worked example based on 1MWH:

| | |
|---|---|
| Power | $41 |
| Infrastructure Cost | $11.60 |
| Base cost | $52.60 |
| 10% Operating Margin | $5.26 |
| **Total cost** | **$57.83** |

Confidential

DocuSign Envelope ID: 6B842402-E3A6-4F00-987A-7C16A99A8F5A

**Dedicated Team**

Luna Squares will ensure at all times through the contract, Customer has a dedicated team, employed by Luna Squares, working solely on the Customer Equipment. This team will include:

- No less than 1 Site Admin Engineer band 3
- No less than 1 Site Admin Engineer band 2
- No less than 1 Network Engineer
- No less than 1 Machine Maintenance staff – ensuring MDCs are being maintained

**Uptime**

Luna Squares will guarantee uptime of Customer Equipment within 1% of Luna Squares' or its affiliates uptime, on comparable ASIC hardware. This uptime is based purely on power provided, and does not include any issues relating to the performance of the ASIC hardware.

**Addendum B**

**Exhibit A**

Luna Squares Managed Services include the following services:

1. Luna Squares will undertake the initial setup of the machines, including unpacking, racking, powering on, connecting to the network, configuration of the miner and establishment of remote access.
2. Onsite Staff will use their eyes, ears, and hands to report and provide feedback as to the operation of the machines, including any physical fault issues, including to ensure a regular check of power, network, fans, lights.
3. Where machines become non-operational, diagnose and advise client on what is needed to get their miner back online, including arranging returns to manufacture for repairs as required.
4. Where machines require resets, Luna Squares will make the resets.
5. Where machines require physical works to be undertaken, Luna Squares will purchase and bill client at current market values for replacement of hardware.

**Exhibit B**

The Service Level Agreement does not cover downtime caused either directly or indirectly by:

1. Custom application coding error
2. Changes to software configuration not made or approved by Luna Squares
3. Changes to hardware configuration not made or approved by Luna Squares
4. Regular, scheduled or emergency maintenance to equipment
5. Failure of any components or services not managed by Luna Squares, including but not limited to hardware, network access, and third-party vendor support, power loss from electrical company.

**Wire Information for Luna Squares LLC**

| | |
|---|---|
| Beneficiary Accounts: | Luna Squares LLC |
| Address: | 2015 George Lyons PKWY |
| | Sandersville, GA 31082 |
| | |
| Bank Name: | Signature Bank |
| | 565 Fifth Avenue |
| | New York NY 10017 |
| | |
| Beneficiary Account: | ███████ |
| | |
| Domestic Wires: | ███████ |

International Wires:

Confidential                                                                                                    LUNA0001233

**Schedule A**

| Item 1 | **Legal Name** | Celsius Mining LLC |
|---|---|---|
| Item 2 | **Physical Address** | 221 River Street, 9th Floor, Hoboken, NJ 07030 |
| Item 3 | **Postal Address** | 221 River Street, 9th Floor, Hoboken, NJ 07030 |
| Item 4 | **Phone Number** | |
| Item 5 | **Contact Name** | Ron Deutsch |
| Item 6 | **Contact Email** | legal@celsius.network |
| Item 7 | **Website** | |

Confidential

LUNA0001234