**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT IN SUPPORT OF AND OBJECTION TO CERTAIN SUBSTANTIAL CONTRIBUTION MOTIONS

The Official Committee of Unsecured Creditors (the "**Committee**")[2] appointed in the cases

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).    The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (the

of the above-captioned debtors and debtors-in-possession (collectively the "**Debtors**") states as follows in support of and objection to certain applications for the payment of expenses for making a substantial contribution in these Chapter 11 Cases:

## STATEMENT AND OBJECTION

1.      After sixteen months, the Plan has been confirmed and Celsius is preparing to emerge from bankruptcy and make distributions to creditors.  That result would not be possible without the contributions of certain creditors to develop and negotiate the Plan.  Unlike most large chapter 11 cases, in these proceedings there was neither a fulcrum funded debt security nor a represented group that controlled (or represented any meaningful percentage of) any individual class of creditors.  Rather, individual account holders participated and negotiated with estate fiduciaries directly and through ad hoc groups.  The efforts of those creditors and their representatives significantly benefited large groups of similarly situated creditors, many of whom were placed in the very difficult situation of having significant personal assets invested with the Debtors and determining whether to expend substantial, additional personal funds on fees and expenses to protect their claim.  They also benefited the Debtors' estates as a whole by moving these cases forward and aiding confirmation.

2.      The Bankruptcy Code provides for the payment of expenses of creditors whose efforts benefit more than their own self-interest.  *See* 11 U.S.C. § 503(b)(4).  "To qualify for administrative priority status under section 503, the contribution must be (i) substantial, (ii) directly benefit the estate — and not merely a class of creditors or interest holders — and (iii) not duplicative of services performed by others."  *In re Synergy Pharm., Inc.*, 621 B.R. 588, 609 (Bankr. S.D.N.Y. 2020).  Proving substantial contribution is a high bar.  *In re Granite*

---

"**Plan**").

2

*Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 2008).  Many of the contributions of creditors in these chapter 11 cases clear that mark.

3.    First, the Ad Hoc Group of Earn Account Holders, the Ad Hoc Group of Custody Account Holders, the Ad Hoc Group of Withhold Account Holders, and the Ad Hoc Group of Borrowers (collectively, the "**Ad Hoc Groups**")[3] all negotiated separate settlements with the Debtors and the Committee that were widely accepted by their respective classes and were integral to confirmation of the Plan.[4]  *See In re Best Prods*., 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994) (opining that "[c]ompensable services are those which facilitate progress of the case, rather than those which retard or interrupt.") (internal citations omitted).  Those settlements resolved complex gating issues that were incorporated into the Plan.  The Ad Hoc Groups also developed methods to communicate with wider groups of creditors, similarly situated and otherwise, which was essential for many of those creditors to understand these complicated cases and protect their rights.

4.    While the specific settlements negotiated by the Ad Hoc Groups may have benefited the individual classes of creditors, they benefit far more than the specific creditors that made up the various Ad Hoc Groups.  Those settlements also contributed to the equitable distribution of the Debtors' estates, building consensus, and moving these cases towards confirmation.  Accordingly, those efforts benefited the Debtors' estates as a whole.  "A bankruptcy court may find that an ad hoc committee has made a substantial contribution to a chapter 11 case 'if and only if the [committee's] services directly and materially contributed to the

---

[3]    The applications of the Ad Hoc Groups are filed at Docket Nos. 3654 (Ad Hoc Group of Earn Account Holders), 3660 (Ad Hoc Group of Custody Account Holders), 3663 (Ad Hoc Group of Withhold Account Holders), and 3671 (Ad Hoc Group of Borrowers).

[4]    *See, e.g., Order (I) Approving (A) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2291]; *Order (I) Approving the Settlement By and Among the Debtors, the Committee, and the Withhold Ad Hoc Group and (II) Granting Related Relief* [Docket No. 2509]; *Plan Support Agreement* [Docket No. 3516].

reorganization.'" *In re M&G USA Corp.*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) (internal citations omitted). Here, those creditors who chose to constructively engage to fairly divide the pie materially contributed to the reorganization and should be compensated for the fees and expenses they incurred in doing so.

5.      In addition, Ignat Tuganov and Rebecca Gallagher[5] extensively participated in these cases. Both agreed to be Class Claim Representatives for the Committee's proposed Class Claim against the Debtors. Both individuals submitted declarations in support of the certification of the Class Claim. *See* Docket Nos. 2673; 2674. By definition, those actions were taken as a representative of the class of all account holders to establish a claim against the Debtors on behalf of that class. The Class Claim Settlement significantly streamlined distributions, reduced administrative expenses and will enable the Debtors to get funds back to creditors quicker. Those creditors' participation in achieving that settlement provided a substantial contribution to the Debtors' estates.

6.      Ms. Gallagher also participated in the hearing regarding whether the coins associated with Earn account balances are property of the Estate and was one of the bellwether claimants whose claim was objected to by the Debtors in early January to set a precedent for all similarly-situated account holders who asserted damage claims against the Debtors. It is hard to quantify the cost of these cases on Ms. Gallagher, who did not have the funds to hire her own counsel. She vigorously advocated to return the most cryptocurrency possible to account holders. The Committee believes she should be compensated for any expenses incurred and as the Court otherwise deems appropriate.[6]

---

[5]      The applications of Mr. Tuganov and Ms. Gallagher are filed at Docket Nos. 3665 and 3662, respectively.

[6]      The Committee understands that Ms. Gallagher's expenses were set forth in the application of the Earn Ad Hoc Group.

7.      Mr. Tuganov has actively participated in these cases, including determining the Examiner's scope, which expanded scope helped clarify the Debtors' prepetition conduct and provided a common set of facts through which the parties could weigh their relative rights.  Mr. Tuganov's counsel also participated in the mediation that resulted in the Plan's treatment of Earn and Borrow Claims, the negotiation of the Plan Support Agreement executed by Mr. Tuganov and the Ad Hoc Earn Group, Mr. Dixon and several other *pro se* creditors.  Mr. Tuganov's counsel has also provided valuable insight in addressing key issues in the construction of the Plan and Class Claim Settlement.  The Committee and the Debtors have discussed the total amount sought by Mr. Tuganov, who has agreed to reduce his fees by 15%.

8.      Simon Dixon's participation in these cases largely occurred outside of the courtroom.  He is the Chief Executive Officer of BNK to the Future, who was initially a bidder for the Debtors' assets.[7]  He has provided regular online video updates on the cases, providing creditors with his interpretation of the cases and advocating for his desired restructuring alternatives.  Mr. Dixon also interviewed for a position on the New Board.  After the announcement of the proposed New Board and during the Plan solicitation process, Mr. Dixon felt strongly that the New Board was incorrectly constituted and advocated for more creditors to be appointed to board positions.  He agreed to support the Plan just before the voting deadline as part of a compromise that included naming Mr. Dixon and two other creditors as observers to the New Board.  The Committee supports Mr. Dixon's efforts to bring consensus to these cases in that regard, and although the Committee still litigated the board selection process in connection with confirmation of the Plan, supports the payment of the fees incurred by Mr. Dixon in engaging counsel to negotiate the Plan Support Agreement and the Board Observer Agreements.

---

[7]     BNK to the Future's application is filed at Docket No. 3672.

9.      BNK to the Future seeks reimbursement for a portion of the legal and investment banking fees incurred in connection with submitting a bid for the Debtors' assets and Mr. Dixon's promotion of various BNK to the Future initiatives.  The Committee does not support the reimbursement of fees spent pursuing a self-interested, unsuccessful bid and marketing campaign. Indeed, Bankruptcy Courts have held that expenses incurred by an unsuccessful bidder of a debtor's assets are not compensable as substantial contributions under section 503(b)(4).  *In re S & Y Enters.*, 480 B.R. 452, 465 (Bankr. E.D.N.Y. 2012) (holding that an unsuccessful bidder for the debtor's assets is not entitled to administrative expense priority); *see also*, *In re S.N.A. Nut Co.*, 186 B.R. 98, 106 (Bankr. N.D. Ill. 1995).  Stalking horse bidders are provided with breakup fees for just that purpose.  BNK to the Future was not the stalking horse bidder nor were its fees previously approved by the Court as part of the auction process.  Mr. Dixon has also leveraged, and has continued to leverage, his social media presence among Celsius creditors to attract those creditors to his personal website and BNK to the Future, including uploading their claim information to BNKtotheFuture.com.  The portion of BNK to the Future's application, which the Committee understands to be the $222,688.50 owed to Brown Rudnick LLP, $59,034.00 owed to DBK Financial Services, Ltd., and fees to Erving Cohen & Jessup not relating to the Plan Support Agreement and Board Observer Agreement should be denied.[8]

10.      Finally, in accordance with and subject to the Court's prior order regarding cooperating witnesses,[9] the Committee and the Debtors have also identified three current employees of the Debtors as Eligible Individuals:  Connor Nolan, Dean Tappen, and Ron Deutsch.

---

[8]    The Committee does not agree with many of the characterizations in Mr. Dixon's declaration and application but does not believe it is necessary to comment or clarify the record as part of this statement.

[9]    *Order (I) Authorizing the Debtors to Enter Into Witness Cooperation Agreements with Certain and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Relating Relief* [Docket No. 3515] (the "**Cooperating Witness Order**").

Mr. Nolan and Mr. Tappen have submitted requests for reimbursement of certain of their expenses incurred through their cooperation with the various investigations of the Debtors' prepetition conduct and these chapter 11 cases. Connor Nolan is the current Head of Institutional Lending of the Debtors.[10]  Mr. Nolan has provided testimony in the *Celsius et al. v. Jason Stone et al.* adversary proceeding and confirmation hearing and has participated in interviews with the Examiner and various federal agencies. Mr. Nolan has executed a Reimbursement Agreement and committed to comply with all of the requirements in the Cooperating Witness Procedures approved by the Court.

11.     Likewise, Dean Tappen was a coin deployment specialist for Celsius and has been a key member of the Celsius team navigating these chapter 11 cases. Mr. Tappen provided testimony that was key to understand the Debtors' coin management system and define the legal rights of creditors in the Debtors' estate. He has cooperated with the Examiner and federal agencies as part of their investigations. Mr. Tappen also provided testimony in connection with confirmation relevant to the CEL Token dispute. Mr. Tappen has executed a Reimbursement Agreement and committed to comply with all of the requirements in the Cooperating Witness Procedures approved by the Court.

12.     Mr. Deutsch is the General Counsel of the Debtors who focused on corporate transactions and governance prior to the Petition Date. Mr. Deutsch has led the Debtors cooperation with federal agencies and provided information to their investigations throughout these Chapter 11 Cases. He has also made key contributions to litigation that has been brought to date, identified potentially valuable causes of action to be retained by the estate, and has committed

---

[10]    Mr. Nolan submitted an application for payment of his attorney's fees as a substantial contribution, which application is located at Docket No. 2045. The Committee understand that application will be addressed through the process set forth in the Cooperating Witness Order.

to cooperate and assist the Plan Administrator and Litigation Administrator to prosecute those causes of action, including through providing helpful testimony.

13.     Each of the individuals and groups listed above have contributed to advancing these cases, returning value to creditors, and promoting the fair and equitable distribution of the Estate. They have contributed to the cases and should have certain of their expenses compensated as they benefited all creditors.

*[Remainder of page intentionally left blank]*

Dated:  November 22, 2023            Respectfully submitted,
        New York, New York

                                    */s/ Aaron Colodny*
                                    **WHITE & CASE LLP**
                                    David M. Turetsky
                                    Samuel P. Hershey
                                    Joshua D. Weedman
                                    1221 Avenue of the Americas
                                    New York, New York 10020
                                    Telephone:  (212) 819-8200
                                    Facsimile:  (212) 354-8113
                                    Email:  david.turetsky@whitecase.com
                                            sam.hershey@whitecase.com
                                            jweedman@whitecase.com

                                    – and –

                                    **WHITE & CASE LLP**
                                    Gregory F. Pesce (admitted *pro hac vice*)
                                    111 South Wacker Drive, Suite 5100
                                    Chicago, Illinois 60606
                                    Telephone:  (312) 881-5400
                                    Facsimile:  (312) 881-5450
                                    Email:  gregory.pesce@whitecase.com

                                    – and –

                                    **WHITE & CASE LLP**
                                    Keith H. Wofford
                                    Southeast Financial Center
                                    200 South Biscayne Blvd., Suite 4900
                                    Miami, Florida 33131
                                    Telephone:  (305) 371-2700
                                    Facsimile:  (305) 358-5744
                                    Email:   kwofford@whitecase.com

                                    – and –

                                    **WHITE & CASE LLP**
                                    Aaron E. Colodny (admitted *pro hac vice*)
                                    555 South Flower Street, Suite 2700
                                    Los Angeles, California 90071
                                    Telephone:  (213) 620-7700
                                    Facsimile:  (213) 452-2329
                                    Email:  aaron.colodny@whitecase.com

                                    *Counsel to the Official Committee of*
                                    *Unsecured Creditors*