| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CHRISTOPHER**
**FERRARO, INTERIM CHIEF EXECUTIVE OFFICER, CHIEF**
**RESTRUCTURING OFFICER, AND CHIEF FINANCIAL OFFICER OF**
**THE DEBTORS IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER (I) APPROVING THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND EZ BLOCKCHAIN SERVICES, LLC AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius," and together with the above-captioned debtors and debtors-in-possession, the "Debtors"). I joined Celsius on March 21, 2022. I was

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

appointed as Chief Financial Officer on July 11, 2022, and I was appointed as interim Chief Executive Officer and Chief Restructuring Officer by the Special Committee of Debtor Celsius Network Limited on September 27, 2022.

2.  I am familiar with the *Debtors' Motion for Entry of an Order (I) Approving the Settlement by and Between the Debtors and EZ Blockchain Services, LLC and (II) Granting Related Relief* [Docket No. 3983] (the "Motion")[2] and submit this declaration (this "Declaration") in support of thereof.

3.  In my capacity as the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and the ongoing restructuring efforts. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents and information concerning the Debtors' operations. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

## Qualifications

4.  I have approximately two decades of experience in financial planning and analysis activities, asset and liability management, and product control. Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Settlement Agreement (including the terms in the New Agreement), as appliable.

2

I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

5. Prior to Cerberus, I served in various roles at JPMorgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, where I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

6. I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

### The Settlement

7. The Settlement resolves the dispute between Celsius and EZ Blockchain Services, LLC ("EZ Blockchain" and together with Celsius, the "Parties") arising out of three prepetition hosting services agreements (the "Hosting Agreements"), pursuant to which EZ Blockchain agreed to provide Celsius with 35 MW of hosting capacity at EZ Blockchain's Georgia facilities for 18 months. The three Hosting Agreements were entered by and between the Debtors and EZ Blockchain on (a) January 27, 2022, for approximately 15 MW of hosting capacity, (b) February 22, 2022, for approximately 9.75 MW of hosting capacity) and (c) March 15, 2022, for approximately 10 MW of hosting capacity). Under the Hosting Agreements, Celsius provided EZ Blockchain approximately $5 million deposits and prepayments (the "Prepayments"), which were to be credited against the monthly fees incurred by Celsius over the term of the Agreements.

8. The terms of the Settlement, which are memorialized in the Settlement Agreement, provide for a new, mutually beneficial hosting services agreement that provides for the return of

the approximately $5 million of Prepayments in the form of monthly credits under the New Agreement.

9. Pursuant to the New Agreement, which is incorporated into the Settlement Agreement, as of the Effective Date, each of the Parties unequivocally, fully, irrevocably and forever releases and forever discharges the other Party and their affiliates—including their current or former employees, attorneys, officers, owners, members, managers, shareholders, directors, and agents—of and from any and all claims, known and unknown, asserted or unasserted, arising out of or in connection with the Hosting Agreement. I believe the Settlement is in the best interests of the Debtors, their estates, and their creditors, is a sound exercise of the Debtors' business judgment, as it provides for the return of the Prepayment, allows the Debtors to secure hosting services from EZ Blockchain on favorable economic terms, and resolves a significant dispute between the Parties, thereby, obviating the need for costly and time-consuming litigation with EZ Blockchain.

10. *First*, the Settlement resolves a significant dispute between Celsius and EZ Blockchain. I understand that commencing litigation related to the prepetition Hosting Agreements could be lengthy and costly and would expend significant time that the Debtors could use towards finding an alternative mining host. The Parties have worked since the start of these chapter 11 cases to resolve the Parties' interrelated disputes arising out of the Hosting Agreements, including the Debtors' right to the return of the Prepayments. The prospect of protracted litigation would only add to the administrative costs and expenses of these chapter 11 cases. Furthermore, I believe that the Settlement Agreement provides a mutually beneficial path forward for all Parties—allowing the Debtors to secure favorable hosting services agreement as they work to establish a standalone, reorganized mining business. Together, I believe the Settlement Agreement serves to return maximal value to the Debtors' estates for the benefit of their creditors.

11. *Second*, the Settlement benefits the Debtors' stakeholders by reducing uncertainty as the Debtors work to emerge from chapter 11. By entering the Settlement Agreement, the Debtors' management team can focus its efforts on consummating the restructuring transactions contemplated in the Debtors' plan and transitioning the Debtors' mining operations to new management. The costs associated with any litigation would drain the Debtors' resources as the Debtors prepare to establish a standalone mining company.

12. *Third*, I understand that the Settlement is supported by the official committee of unsecured creditors (the "Committee"). As the only non-Debtor parties with a fiduciary duty to advocate for unsecured creditors and account holders in these chapter 11 cases, I believe the Committee's approval and acceptance of the Settlement is a strong indication that the Settlement is fair and equitable.

13. *Fourth*, I understand that the releases granted by the Settlement are consensual, mutual, and essential to the Settlement, and are similar in nature to those in other similar settlements in other chapter 11 cases. I believe that the releases granted by the Parties in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

14. *Fifth*, the Settlement is the product of hard-fought bargaining between the Parties. Facing the prospect of costly litigation, the Debtors and EZ Blockchain have engaged in arm's-length negotiations for over a year, exchanging multiple drafts of the Settlement Agreement, including the terms of the New Agreement, before executing the Settlement Agreement. I believe the Settlement represents a favorable outcome for the Debtors at the culmination of protracted but successful arm's-length negotiations.

## Conclusion

15.     In light of the foregoing, I believe that the Settlement is a reasonable compromise of the outstanding disputes between the Debtors and EZ Blockchain, which will inure to the benefit of all parties in interest. In my opinion, the Settlement is fair, equitable, in the best interest of the Debtors' estates, and will allow the Debtors' management to concentrate its efforts on pursuing alternative mining hosts for the Debtors' mining business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 22, 2023            /s/ *Christopher Ferraro*
                                                              Name: Christopher Ferraro
                                                              Title: Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC