Dimitry Kirsanov
*Pro Se Creditor*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____
_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY 10004

# MR. KIRSANOV'S MOTION OF RECONSIDERATION

Dear Chief Judge Glenn,

     Mr. Kirsanov files this Motion of Reconsideration with the Court. To the best of Mr. Kirsanov's understanding, this falls under Bankruptcy Rule 9023/9024, which adopt Rules 59 and 60. Specifically, Mr. Kirsanov seeks reconsideration and relief on Findings of Fact, Conclusions of Law, and Order Signed on 11/9/2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates ("Plan Confirmation", ECF#3974), the Memorandum Opinion signed on 11/9/2023 Approving the CEL Token Settlement and Resolving Issue of Collateral Ownership in the Modified Joint Chapter 11 Plan of Celsius Network and its Debtor Affiliates ("Celsius Opinion", ECF#3974), and Order Signed on 11/9/2023 Denying Dimitry Kirsanovs Motion to Convert Chapter 11 Case to Liquidation Proceeding Under Chapter 7. ("Conversion Denial", ECF#3975).

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

## Case Authorities

**Williams v. Akers, 837 F.3d 1075, 1077 n. 1 (10th Cir. 2016)**[2, 3, 4]

Motions for reconsideration are not recognized under the Federal Rules of Civil Procedure (the "Rule(s)") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)").[2]

A party seeking reconsideration of an order in the bankruptcy courts can file either: (1) a motion to alter or amend a judgment under Bankruptcy Rule 9023, if the order is interlocutory; or (2) a motion for relief from judgment under Bankruptcy Rule 9024, if the order is a final one.[3]

The applicable rules to motions for reconsideration are different depending on whether the motion is for an interlocutory or final order.[4]

**Calyon N.Y. Branch v. Am. Home Mortg. Corp., 388 B.R. 585, 589 (Bankr. D. Del. 2008).**[5, 6]

There are various policies surrounding both types of motions for reconsideration.[5]

These underlying polices have helped define which rules are applicable for either motion.[6] (id 589)

**Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; In re Conex Holdings, LLC, 524 B.R. 55, 58 (Bankr. D. Del. 2015)**[7]

Rule 59(e), incorporated by Bankruptcy Rule 9023, allows a party to seek reconsideration where: (1) there has been an intervening change in the controlling law; (2) new evidence has become available; or (3) there is a need to prevent manifest injustice or to correct a clear error of fact or law.[7]

**In re W.R. Grace & Co., 398 B.R. 368, 371–72 (D. Del. 2008).**[8]

In very few situations, a court will take the extraordinary step of granting a motion to reconsider under the third situation of this standard.[8]

**[CONTINUED ON NEXT PAGE]**

**Energy Future Holdings Corp., 575 B.R. at 634.**[9, 10]

In determining whether there was a manifest injustice or clear error, a movant bears a "heavy burden" to demonstrate that relief is appropriate.[9]

There is no uniform application of agreed upon definitions of the meanings of "manifest injustice" and "clear error of law or fact."[10]

**In re Titus, 479 B.R. 362, 367–368 (Bankr. W.D. Pa. 2012).**[11, 12]

However, some courts have concluded manifest injustice to mean "an error in the trial court that is direct, obvious, and observable . . . the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it."[11]

Additionally, courts have found that a clear error of fact or law is a plain and indisputable error "that amounts to a complete disregard of the controlling law or the credible evidence in the record."[12]

**See In re Energy Future Holdings Corp., 575 B.R. at 636–37.**[13, 14]

Conversely, a motion to reconsider may not be used as a method to reargue issues the district court has decided upon or to advance any new arguments that a party forgot to argue before the judgment was made.[13]

The Delaware bankruptcy court held that it is appropriate to allow parties to use a motion to reconsider when the court misapprehended the facts presented but not to reargue facts or law.[14]

[CONTINUED ON NEXT PAGE]

**Energy Future Holdings Corp., 575 B.R. at 628.**[15, 16, 17, 18, 19]

In In re Energy Future Holdings Corp., granting a motion for reconsideration, the Delaware bankruptcy court found the third prong of Bankruptcy Rule 9023 applicable where a termination fee was to be amended to prevent a manifest injustice and to correct a clear error of fact and law.[15]

The court found that it had fundamentally misapprehended the facts as to when a termination fee would be payable due to an incomplete and confusing record on that essential point and further stated that it would have not approved the termination fee provision of a merger agreement if it had understood the critical facts.[16]

The court noted that its misapprehension as to when the termination fee did and did not apply was based on "imprecise and incorrect" witness testimony, "incomplete responses by [] counsel" to the court's questions, and parties' "conspicuous and unhelpful silence."[17]

The court explained that while it did "not believe the Debtors acted improperly or with malice," it was clear from the record that the parties "[were] happy to remain silent" and "made no effort to clarify the [misapprehended] record" to the court.[18]

The interests of justice "require[] parties seeking relief from the Court to be accurate in their representations."[19]

[CONTINUED ON NEXT PAGE]

**Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024.**[20]

II. Motions to Reconsider Final Orders If an order is a final one, Rule 60(b), incorporated by Bankruptcy Rule 9024, allows a party to seek relief from a judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), **misrepresentation**, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.[20]

**See In re New Century TRS Holdings, Inc., 07-10416 KJC, 2012 WL 38974 at *2.**,[21]

A motion for reconsideration of a final order focuses on the balancing of the interests of justice and the interests of finality of an order.[21]

**Boughner v. Sec'y of Health, Educ., & Welfare, 572 F.2d 976, 977 (3d Cir. 1978)**[22]

The purpose of Rule 60(b) and Bankruptcy Rule 9024, is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done" and the trial court has discretion to grant or deny relief.[22]

[CONTINUED ON NEXT PAGE]

**Fed. R. Civ. P. 60(c).**[23]

To determine whether a motion to reconsider under Rule 60(b) should prevail, the motion must be filed timely within a "reasonable time."[23]

**Energy Future Holdings Corp., 575 B.R. at 630.**[24]

The main difference between motions to reconsider an interlocutory order versus a final order is the finality and reliance that a court places on a final order.[24]

**Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).**[25]

However, the "substance" of review under either Bankruptcy Rules 9023 or 9024 is that the purpose of a reconsideration motion "'is to correct manifest errors of law or fact or to present newly discovered evidence.'"[25]

**BRAUN V AMERICA-CV STATION GROUP, INC., 56 F.4TH 1302 (11TH CIR. JAN. 5, 2023**[26]

The bankruptcy court erred in granting the debtor's modification without first requiring that the debtor provide the Pegaso Equity Holders with a revised disclosure statement and a second opportunity to cast a ballot. We therefore REVERSE the order granting the debtor's emergency motion to modify the reorganization plans, REVERSE IN PART the bankruptcy court's order confirming the reorganization plans to the extent that it adopts the modification, and REMAND to the bankruptcy court to fashion an equitable remedy consistent with this opinion.[26]

[INTENTIONALLY LEFT BLANK]

PREFACE, MR. KIRSANOV'S CELSIUS STORY

1. Mr. Kirsanov is a participating creditor in these proceedings.
2. Mr. Kirsanov holds earn, borrow, and Custody claims.
3. Mr. Kirsanov holds the predominant share of CEL Tokens in the "Custody" class, totaling 749,200 tokens, constituting approximately 60% of his total petition day claim in dollar value.
4. Since April 2022, Mr. Kirsanov encountered difficulties transferring his CEL Tokens from the "Custody" wallet.
5. Mr. Kirsanov's CEL Tokens were categorized as 6B due to his non-engagement with other debtor programs.
6. Mr. Kirsanov accepted the Custody Settlement when it was initially proposed.
7. Due to an outstanding loan, Mr. Kirsanov was unable to withdraw his Pure Custody in full, resulting in the reclassification of his 6B to 6A.
8. Mr. Kirsanov's interpretation of the Custody Settlement granted him rejection rights on the Plan, given the existence of an outstanding loan.
9. Attempting to withdraw his CEL Tokens pursuant to the Custody Settlement, Mr. Kirsanov faced challenges until the debtor addressed the shortfall in their Custody/Aggregator wallets, as outlined in his breach motion (ECF #3878).
10. Mr. Kirsanov advocated for an alternative cryptocurrency distribution, converted based on the original digital asset's value as of the petition date in US dollars. This proposal received no response from the Debtor's Counsel, the Custody Counsel, and the UCC Counsel.
11. In light of the Custody/Aggregator wallet shortfall, Mr. Kirsanov contends that all his CEL Tokens should be entitled to petition day values, converted into the date of entry of the Settlement Approval Order.
12. The breach claim raised by Mr. Kirsanov also pertains to his inability to transfer assets pre-freeze.
13. Mr. Kirsanov's rejection vote on the solicitation ballot was promptly acknowledged in the results, underscoring his monetary majority.

14. Mr. Kirsanov highlighted a change in the Plan on September 27, 2023 (ECF# 3604), lowering the "Deactivation Day Price" from petition day prices to $0.25 per CEL, contrary to his interpretation and the exemption of the Custody Class from the CEL Token Settlement (ECF#3332, Page 116).

15. Mr. Kirsanov promptly engaged in the CEL Token Legal Hearing, expressing concerns about the CEL Tokens' distribution prices.

16. Mr. Kirsanov submitted a letter to the court on the same day.

17. The debtor's counsel acknowledged being unaware of certain jurisdictions' distribution constraints based on securities laws, deeming it a fair point raised by Mr. Kirsanov.

18. Mr. Kirsanov actively participated in arguments throughout the proceedings, including requesting to be heard on opening arguments.

19. On October 20, 2023, the debtor's counsel inaccurately claimed that Mr. Kirsanov voted in favor of the plan, asserting he was not a dissenting creditor.

20. Mr. Kirsanov promptly recognized this misrepresentation, contradicting the balloting results and his supermajority vote in the Custody Class.

21. Mr. Kirsanov informed the court about this balloting discrepancy and the misrepresentation of his vote under perjury.

22. Mr. Kirsanov continued to engage in due process, addressing these concerns in his closing arguments and demonstratives.

23. The debtor's counsel contended that Mr. Kirsanov improperly changed his vote on the plan. Contrary to this claim, Mr. Kirsanov's vote was correctly tabulated to reject, as confirmed by Stretto's Tabulation results and Mr. Brian Karpuk.

24. Your Honor confirmed the Plan, the CEL Token Settlement, and denied Mr. Kirsanov's motion for a Chapter 7 conversion, overruling his objections.

25. Mr. Kirsanov submitted a Motion of Clarification to elucidate his ambiguous position.

26. Your Honor ordered the debtor's counsel to respond.

27. The debtor's counsel confirmed that Mr. Kirsanov's vote was indeed a rejection (ECF#4014, paragraph 24).

28. In their response, counsel to the debtor's counsel clarified that, by their interpretation, the balloting included 6B classes that were ineligible to vote according to the Plan and confirmation, contrary to the balloting results.

29. Mr. Kirsanov believes balloting integrity is a fundamental principle that should not be skewed or misrepresented.

30. Mr. Kirsanov respectfully submits this motion for reconsideration as an appeal to Your Honor.

[CONTINUED ON NEXT PAGE]

## **MANIFEST INJUSTICE & CLEAR ERROR**

1. In opposition to the Confirmation Order designating 6B as an unimpaired class and therefore ineligible to vote, the Custody Withdrawal Order (ECF #1767) specifies that having an outstanding loan impedes the class from withdrawing under said order. This is elucidated in Paragraph 9, which articulates that the withdrawal option is not extended to customers with an outstanding loan owed to the Debtors through the Debtors' Borrow Program

2. In the Custody Settlement (ECF #2291), specific rights are explicitly allocated and confirmed, granting the authority to "vote to reject" for holders of Pure Custody assets impaired by a loan. This allocation is outlined on Pages 9-10, stipulating, "For the avoidance of any doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding obligation owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Deposit Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order."

3. As evidenced by the tabulation results (ECF #3574) and Mr. Kirsanov's decisive supermajority rejecting vote in the CEL Custody Class, as articulated in his letter on balloting integrity (ECF #3967), he asserted himself as a dissenting creditor based on his interpretation of the circumstances.

**[CONTINUED ON NEXT PAGE]**

4. In the absence of a monetary majority among any 9 CEL Token Holders in Custody, Mr. Kirsanov would have encountered greater difficulty in discerning the misrepresentation of his vote and, consequently, the potential compromise of his 6B voting rights. The misrepresentation by the debtor's counsel, affirming that he voted affirmatively, would likely have been accepted as accurate until the point of Confirmation. It was only subsequent to Your Honor's directive for a response from the debtor's counsel, leading to clarification, that the accurate disclosure emerged, confirming Mr. Kirsanov's negative vote.

5. The preservation of balloting integrity stands as a pivotal cornerstone within our systems. It is imperative that no individual's votes be intentionally or fraudulently misrepresented, particularly with the purpose of weaponizing them against a creditor's legitimate objections and concerns. Regrettably, Mr. Kirsanov found himself subjected to such unwarranted weaponization, inside and outside the courtroom.

6. In the Debtor's Counsel Response (ECF#4014), there appears to be a disregard for the tabulation results. Mr. Brian Karpuk, under oath, affirmed the adjustment of all applicable ballots and testified that the monetary majority of CEL Token Holders had indeed rejected the plan. The debtor's counsel's apparent lack of precision in tabulation, as reflected in the following statement, is concerning: "Because he had previously accepted the Custody Settlement, his Class 6A Claim was deemed a vote to accept the Plan, regardless of whether it was shown as an accept or reject on the Amended Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates.

7. In any circumstance, whether Mr. Kirsanov accepted or did not accept the Custody Settlement, it remains evident that his 6B funds were unequivocally impaired by the preceding Custody Withdrawal Order due to the existence of a loan. The Custody Settlement explicitly confirms this impairment, affording rejection rights while still preserving the entitlement to pursue disbursement. It also permits the exercising of a rejecting vote, as substantiated by the documented balloting records.

8. According to Mr. Kirsanov's computations, there are in excess of 12,000 collateralized loans, and a portion of these involve Pure Custody 6B. Consequently, as Mr. Kirsanov's balloting accurately manifested a rejection, it is reasonable to infer that numerous other account holders within the 6B class similarly rejected, irrespective of their participation or non-participation in the Custody Settlement.

9. In the event that 6B was considered unimpaired and thus ineligible to vote, contrary to the provisions outlined in prior Custody Withdrawal and Settlement orders indicating impairment and voting rights, the tabulation results conspicuously reveal a different scenario. This is evidenced by Mr. Kirsanov's monetary rejection of CEL in the Custody Class, a stance reflective of all other impaired 6B class members. Consequently, this has cast a shadow over all pertinent documents, numerical data, and percentages presented during the trial, including Your Honor's ruling on Plan Confirmation in the CEL Token Matter.

10. In the Debtor's latest press release, as documented on November 20th, 2023 (ECF #4017), it is asserted that the debtor is presently contemplating an alternative plan, deviating from the previously agreed-upon and creditor-voted plan. Failing to accompany this shift with a revised disclosure statement, coupled with re-solicitation, is deemed procedurally deficient.

22-10964-mg    Doc 4031    Filed 11/23/23    Entered 11/27/23 10:06:04    Main Document
Pg 13 of 16

In light of the manifest injustice and evident errors outlined above, it is submitted that Mr. Kirsanov, alongside all other 6B classholders with outstanding loans, has suffered a miscarriage of justice. The dismissal of the class was executed erroneously, in direct contradiction to the tabulation results.

The following remedies are imperative to safeguard the integrity of the balloting process and to preserve the voting rights of the impaired 6B class:

1. Reconsideration of the Confirmation Order, The CEL Token Settlement
2. Revision of the Plan to accurately reflect the voting rights of impaired 6B classholders
3. Re-Solicitation and Re-Voting to rectify the errors in the initial balloting process.
4. A new trial to be conducted in order to thoroughly address the issues at hand.

These measures are respectfully submitted for the Court's consideration in rectifying the perceived injustices and upholding the principles of fairness and due process.

## **LEGALITIES & DISTRIBUTION OF CRYPTO ASSETS**

1. In Mr. Kirsanov's inquiries and legal arguments regarding the legality of Crypto Distribution in Hawaii, the debtor's counsel expressed an inability to conduct Crypto distributions under securities laws, emphasizing their commitment to compliance with securities regulations (ECF #3881).

2. Subsequently, the debtor's counsel acknowledged not having previously considered this aspect, deeming it a valid point.

3. Within the Plan (ECF#3332), specifically on pages 47 and 48 of the distribution agent schedule, all classes in Hawaii designate PayPal as the distribution agent for Cash, determined by petition day prices.

4. In the event a distribution agent is identified, the Plan states a preference for distributions in BTC/ETH. However, it also notes the "unlikely" prospect of finding a Distribution Agent willing to facilitate distributions in BTC/ETH.

5. Mr. Kirsanov brought attention to this matter in correspondence to the court (ECF#3647) by highlighting companies authorized by Hawaii to operate as distribution agents.

6. Additionally, Mr. Kirsanov communicated with the court about the potential tax implications of distributions in Hawaii (ECF#3729), noting the relevance to current and prospective residents, emphasizing the potential tax benefits of not being fully liquidated at petition day values, as outlined in all Crypto asset classes in Hawaii.

7. In response to the Motion of Clarification (ECF#4014), the debtor indicated in paragraph 30 that holders of Custody Claims in Hawaii entitled to distributions before the Deactivation Date are likely to receive their distributions "in-kind" from the Debtors' platform, with the exception of LUNC and UST.

8. As per Mr. Kirsanov's understanding, the debtor has not identified a distribution agent willing to handle CEL or most other cryptocurrencies for distribution to Hawaii.

9. Despite these inquiries, there remains a lack of clarity, and the plan has not deviated from valuing cryptocurrencies at petition day prices if in-kind distribution cannot be executed during this period. The term "likely receive" introduces ambiguity and contradicts the Plan's explicit statement of "unlikely." Creditors require precise and definitive information, which the debtor's counsel has yet to provide.

## **CHAPTER 7 CONVERSION**

1. Mr. Kirsanov, respectfully petitions the court for a reevaluation of his request to convert the case to Chapter 7 bankruptcy.
2. Mr. Kirsanov asserts that converting to Chapter 7 would expedite the return of maximum value to creditors, particularly given the appreciating nature of most Crypto assets.
3. Pursuant to Section 1112, specifically under section (M), there has been an inability to achieve substantial consummation of a confirmed plan
4. In reference to the Chapter 7 Conversion denial (ECF#3975), Your Honor noted that Mr. Kirsanov "withdrew his eligible CEL Tokens pursuant to the terms of the Custody Settlement." The undersigned seeks confirmation from Your Honor that such withdrawal does not impede the pursuit of his rights in the breach of settlement claim (ECF#3878), as the Breach was not a related document,

[CONTINUED ON NEXT PAGE]

Your Honor, I wish to express my appreciation for your consideration of my Motion for Reconsideration. As a pro se creditor, I find myself confronted with limited notice following what I perceive as an adverse change, and I lack representation from the Custody Ad Hoc Group. I am earnestly endeavoring to articulate my concerns to the Court regarding what I believe to be a significant injustice.

I extend a humble acknowledgment and apology for any inadvertent errors that may have arisen during these proceedings. I am mindful of my limited legal expertise, understanding of various legal intricacies, and the added challenge of a language barrier. Despite these constraints, I am conscious of the matters upon which I cast my vote and the implications of the tabulation results. I am resolute in my commitment to advocate ardently for the protection of not only my rights but also those of my fellow creditors.

Furthermore, I am dedicated to upholding the integrity of the balloting process, recognizing its crucial role in our bankruptcy system. I pledge to exert my utmost effort to ensure fairness and justice prevail in this matter, appreciating the Court's role in safeguarding the principles upon which our legal system is built.

I remain respectfully,

Dimitry Kirsanov, Pro Se Creditor

/S/Dimitry Kirsanov