UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, et al.,<br><br>Debtors. | Case No. 22-10964 (MG) |

### ORDER DENYING KIRSANOV'S MOTION FOR RECONSIDERATION

On November 1, 2023 Dimitry Kirsanov filed a *Motion of Conversion of Bankruptcy to Chapter 7 Pursuant to U.S. Code § 1112* ("Conversion Motion," ECF Doc. # 3956). The Court denied the Conversion Motion on November 9, 2023 ("Conversion Denial," ECF Doc. # 3975), following the entry of an order confirming the Debtors' chapter 11 plan ("Confirmation Order," ECF Doc. # 3972) and an accompanying opinion ("Confirmation Opinion," ECF Doc. # 3974).

On November 10, 2023 Dimitry Kirsanov filed a *Motion for Clarification* ("Clarification Motion," ECF Doc. #3998). The Clarification Motion sought, among other things, clarification with respect to how his acceptance of the Custody Settlement[1] affected his vote on the Plan, and how certain assets associated with Custody Claims would be valued and distributed to creditors in Hawaii. On November 14, 2023, the Court ordered the Debtors to respond to the Clarification Motion. (*See* ECF Doc. # 4005.) On November 20, Debtors filed *Debtor's Response to Mr. Kirsanov's Motion for Clarification* ("Response," ECF Doc. # 4014).

On November 23, Mr. Kirsanov filed a motion for reconsideration ("Reconsideration Motion, ECF Doc. # 4031) reiterating the concerns from the Clarification Motion as well as

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order.

requesting reconsideration of the Confirmation Order, the Confirmation Opinion, and the Conversion Denial.

For the reasons explained below, the Reconsideration Motion is **DENIED**.

*First*, the Debtors have responded in great detail to Mr. Kirsanov's balloting concerns, which the Conversion Denial also addressed. Mr. Kirsanov argued that (1) he had "[a right] to vote to reject the plan, resultant of having an outstanding obligation owed to the [Debtors] (Clarification Motion at 2); (2) that "[his] 6B claim was impaired and visible on his 6A voting results (*Id.*); and (3) that "in the final amended balloting results . . . his vote was counted to reject." (*Id.* at 3.) Mr. Kirsanov does not dispute that he accepted the Custody Settlement. (*See* Reconsideration Motion at 7.) As previously stated in the Conversion Denial, because Mr. Kirsanov had accepted the Custody Settlement, his attempt to reject was deemed as an acceptance. (*See* Conversion Denial at 2.)

In their Response, Debtors further explain exactly how and why Mr. Kirsanov's vote was deemed an acceptance. "Mr. Kirsanov mistakenly believes that he had the right to vote to reject the Plan because he also has a Class 2 [Retail Borrow Deposit] claim." (Response ¶ 21.) However, that provision "merely [clarified] how Holders of an Allowed Custody Claim would be treated under the Plan if the ***only*** reason they could not withdraw their Pure Custody Assets . . . was because of a Class 2 Claim" and that the provision did *not* refer to or apply to Account Holders who accepted the Custody Settlement, nor did it preserve any such Account Holders' right to reject the Plan. (*Id.* ¶ 25.)

Furthermore, as Debtors explain, "[h]olders of Class 6B Withdrawable Custody Claims were unimpaired under the Plan and deemed to accept the Plan." (*Id.* ¶ 26, citing Plan, Art. III.A.6B.) The Plan's language is unambiguous: "Holders of Allowed Withdrawable Custody

2

Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Withdrawable Custody Claims are not entitled to vote to accept or reject the Plan." (Plan, Art. III.A.6B.) Mr. Kirsanov's assertion that his claim was impaired is without merit.

In the Reconsideration Motion, Mr. Kirsanov claims that "[Debtors'] counsel contended that Mr. Kirsanov improperly changed his vote on the plan. Contrary to this claim, Mr. Kirsanov's vote was correctly tabulated to reject." (Reconsideration Motion at 8.) He also states that in "the [Response], counsel to the debtor's counsel (sic) clarified that, by their interpretation, the balloting included 6B classes that were ineligible to vote according to the Plan and confirmation, contrary to the balloting results." (*Id.* at 9.) Mr. Kirsanov's second claim appears to be that Debtors believed the Class 6B was ineligible to vote, but the balloting results showed that 6B claimholders had voted; thus, the balloting contradicted Debtors' position.

Contrary to Mr. Kirsanov's assertion, Debtors never contended that Mr. Kirsanov improperly changed his vote, nor does inclusion of 6B on the voting results undercut Debtors' position. Rather, Debtors explained in painstaking detail why Mr. Kirsanov's vote in Class 6B was *deemed to accept*, "regardless of whether it was shown as an accept or reject" on the ballot. (Response ¶ 24.) There is no question that Class 6B was unimpaired and thus deemed to accept; the balloting results reflect the votes that Account Holders in that Class *attempted* to make, but for purposes of the Plan, were *counted* as acceptances. Mr. Kirsanov was one such creditor who voted his 6B claims to reject, but was *deemed* to accept.

*Second*, Mr. Kirsanov's concerns with regard to crypto distributions in Hawaii are premature. Mr. Kirsanov was "unclear on the interaction with Custody assets in Hawaii, as during the distribution schedule only Cash and possibly BTC/ETH are able to be distributed in

3

the 180 day distribution period." (Clarification Motion at 4.) Debtors responded that "[h]olders of Custody Claims in Hawaii entitled to distributions prior to the Deactivation Date will likely receive their distributions 'in-kind,' except for with respect to any LUNC and UST, from the Debtors' platform. After the Deactivation Date, Holders of Custody Claims in Hawaii will receive distributions in Cash, BTC, or ETH." (Response ¶ 30.) Mr. Kirsanov was unsatisfied with the term "likely," which "introduces ambiguity," and because as he understands, Debtors have "not identified a distribution agent willing to handle CEL or most other cryptocurrencies for distribution to Hawaii." (Reconsideration Motion at 14.)

Distributions have not begun, and are not expected to begin until early 2024. Debtors are working to identify and coordinate with distribution agents and need not keep Mr. Kirsanov apprised of their continued negotiations. Debtors have stated their intention of making in-kind distributions in Hawaii; if Debtors are unable to do so, the Court will revisit Mr. Kirsanov's concerns with respect to such distributions at that time.

*Lastly*, the Court does not have jurisdiction to reconsider the Confirmation Order and the Confirmation Opinion, as three notices of appeal have been filed. (*See* ECF Doc. ## 4032, 4033, 4039.) *See In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016) ("The divestiture doctrine, in its simplest terms, provides that the filing of an appeal divests the lower court of its control over the issue or matter that is on appeal. Courts have held that the same legal principle applies to appeals of bankruptcy court orders. *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.),* 170 B.R. 222, 243 (S.D.N.Y.1994)."

/ / / / /

/ / / / /

/ / / / /

4

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

That the Reconsideration Motion is **DENIED**.

Dated:  November 29, 2023
       New York, New York

                                              **/s/ Martin Glenn**
                                              MARTIN GLENN
                                  Chief United States Bankruptcy Judge