| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF ROBERT CAMPAGNA IN SUPPORT**
**OF JOINT MOTION OF THE DEBTORS AND THE COMMITTEE**
**FOR ENTRY OF AN ORDER (I) APPROVING THE IMPLEMENTATION**
**OF THE MININGCO TRANSACTION AND (II) GRANTING RELATED RELIEF**

I, Robert Campagna, hereby declare under penalty of perjury, as follows:

1.   I am a Managing Director with Alvarez & Marsal North America, LLC (together with its wholly-owned subsidiaries and independent contractors and also with employees of its professional service provider affiliates, all of which are wholly-owned by its parent company and employees, "A&M"), a restructuring advisory services firm with numerous offices throughout the country. I submit this Declaration in support of approval of the *Joint Motion of the Debtors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith.

2.  Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' business, (b) information learned from my review of relevant documents, (c) information I received from the A&M team working under my supervision or the Debtors' management team and other advisors, or (d) my experience as a restructuring professional. Although A&M is being compensated for its work as financial advisors to the Debtors, I am not being compensated separately for this Declaration or testimony. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## Qualifications

3.  Since 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas. A&M's debtor advisory services have encompassed a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts and business plans; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

4.  Since the Debtors engaged A&M in June of 2022, I have worked closely with the Debtors' management and other professionals with respect to the Debtors' restructuring efforts, including assisting the Debtors in preparing cash flow projections, budgets (including the Plan

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the *Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Plan"), attached as Exhibit A to the *Finding of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Confirmation Order") [Docket No. 3972], or the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), as applicable.

2

Administrator Budget and now the Wind-Down Budget), and other financial information. I lead the A&M team advising the Debtors.

5. I have over twenty-five years of distressed company advisory experience. Through roles in both senior management and as a restructuring advisor, I have substantial experience helping financially distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the necessary restructuring of their operations and finances. I have advised clients in numerous major bankruptcy cases, including *In re Murray Energy Holdings Co.*, No. 19-56885 (JEH); *In re Stearns Holdings, LLC*, No. 19-12226 (SCC); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ); *In re Payless Holdings LLC*, No. 17-42257 (KSS); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH); *GT Advanced Techs. Inc.*, No. 14-11916 (HJB); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS); *V2V Holding LLC*, No. 12-11385 (MG); *Education Holdings 1, Inc.*, No. 13-10101 (BLS); *Orchard Brands Corp.*, No. 20-10566 (MFW); *Cooper Standard Auto.*, No. 09-12743; and *Interstate Bakeries Corp.*, No. 04-45814 (JWV). I received my bachelor's degree in business administration from Bucknell University. I am a Certified Public Accountant (inactive) and a Certified Insolvency and Restructuring Advisor.

## The Plan Toggle

6. I am familiar with the Plan and the two paths to emergence contemplated thereby—the NewCo Transaction and the MiningCo Transaction (referred to as an "Orderly Wind Down" in the Plan). The NewCo Transaction and the MiningCo Transaction are substantially similar, with the primary difference being that in the MiningCo Transaction, the "illiquid" investment assets allocated to the Fahrenheit NewCo in the NewCo Transaction are instead retained by the Debtors' Estates to be monetized for the benefit of creditors.

3

7. It is my understanding that guidance received from the SEC effectively ended the NewCo registration process (but would permit a public MiningCo). Following the receipt of this guidance, the Debtors and the Committee evaluated next steps with their advisors. All agreed that the best available path to maximize value, minimize execution risk, and return Liquid Cryptocurrency to Account Holders as soon as possible would be to pursue a MiningCo Transaction. As a result, the Debtors and the Committee determined to activate the toggle feature.

**Transaction Developments**

8. Since the Backup Plan Sponsor Agreement was executed, the Debtors have made substantial progress preparing for the implementation of the Plan under either the NewCo Transaction or the MiningCo Transaction, which progress reduces the need for many services initially envisioned under the Backup Plan Administration Agreement Term Sheet.

9. For example, the Debtors negotiated for PayPal and Coinbase to facilitate distributions of Liquid Cryptocurrency on favorable economic terms,[3] and the Debtors have converted the majority of their altcoins that are not reserved for Custody distributions to BTC, ETH, or Cash in preparation for distribution. The Debtors negotiated the Plan Administrator Agreement, which provides for a monthly fee of $200,000 for three months and $100,000 thereafter (as well as a $1,000,000 substantial completion bonus if certain conditions regarding administration of the Estates are satisfied), and the Litigation Administrator Agreement, which provides for a monthly fee of $50,000 for the first three months and $25,000 thereafter. *See Seventh Notice of Filing of Plan Supplement* [Docket No. 3869]. Together with the

---

[3] The pricing terms of the Coinbase agreements are sealed to protect commercially sensitive information. The PayPal agreements provide that PayPal will pay the Estates.

4

Coinbase and PayPal agreements, these agreements combined contemplate substantially all of the non-mining services provided under the Backup Plan Administration Agreement Term Sheet.

10.   Additionally, the Debtors and the Committee have streamlined the Claims resolution process through the Class Claim Settlement, which resolved over 25,000 non-custody Account Holder Claims, with a books and records amount of approximately $1,360,000,000 in the aggregate, leaving only approximately 1,700 non-custody Account Holder Claims, with a books and records amount of approximately $270,000,000, to be resolved post-emergence. The Debtors have also monetized certain of their illiquid assets that were to be liquidated over time by the Backup Plan Sponsor, including their shares in the Osprey Bitcoin Trust. Certain of the Debtors' other largest illiquid assets, which were initially envisioned to be monetized by the Backup Plan Sponsor, have either been resolved or proceeded down a litigation path (including assets related to StakeHound, EFH, Core Scientific, and Mawson). As a result, the Debtors do not require the Backup Plan Sponsor to provide many of the services originally contemplated by the Backup Plan Administration Agreement Term Sheet.

### The MiningCo Transaction

11.   As the Court and all parties are aware, the Debtors previously ran a comprehensive process to select a NewCo operator and, at the conclusion of that process, selected Fahrenheit as the Plan Sponsor and the BRIC as the Backup Plan Sponsor. Following the decision to toggle to a MiningCo Transaction and the renewed negotiations described in the Motion and the *Declaration of Kenneth Ehrler in Support of the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief*, filed contemporaneously herewith, the Debtors and the Committee, in an exercise of their business judgment, ultimately selected US Bitcoin to serve as the mining manager for the proposed MiningCo Transaction.

12. In connection with the decision to proceed with a US Bitcoin-led MiningCo Transaction, the A&M team prepared an illustrative waterfall showing anticipated initial Liquid Cryptocurrency distributions, the Wind-Down Budget, the funding of the Litigation Recovery Account, and the disbursements associated with MiningCo, which is attached hereto as **Exhibit A**.

13. To avoid attributing the appreciation of various cryptocurrencies to the recoveries under the MiningCo Transaction, the waterfall compares creditors' recoveries under the MiningCo Transaction to the Orderly Wind Down using the same cryptocurrency, mining business, and illiquid asset values as those used for the Disclosure Statement. Specifically, these assets were valued as of May 31, 2023. Under the Orderly Wind Down, which reflects the terms contained in the amended and restated Backup Plan Administrator Term Sheet, approximately $2.6 billion worth of distributable assets would be available to creditors receiving Unsecured Claim Distribution Consideration, and these creditors could expect a 61.2% recovery on their Claims. In comparison, under the MiningCo Transaction, approximately $2.8 billion worth of distributable assets is expected to be available for distribution to the same group of creditors, and these creditors can expect a 67.0% recovery on their Claims. Ultimately, the MiningCo Transaction results in higher recoveries to the Debtors' creditors than the Orderly Wind Down solicited with the Plan, indicating satisfaction with the requirement that "the terms of the [MiningCo Transaction] [] are no worse than those contained in the Backup Plan Administrator Term Sheet." Confirmation Order ¶ 356.

## The Wind-Down Budget

14. The Plan requires that the Debtors file a Wind-Down Budget and Wind-Down Procedures in the event that the toggle is activated. The A&M team worked with the Debtors to

6

develop the Wind-Down Budget, which is attached to the proposed Order as Exhibit 1. As detailed in the Wind-Down Budget, the Debtors expect it will cost approximately $75 million to wind down the Wind-Down Debtors' Estates. The Wind-Down Budget includes, among other things, the funding of the Wind Down Estates, payment of the fees of the Plan Administrator, expenses associated with the distribution process, and the costs associated with maintaining the Debtors' platform prior to the Deactivation Date.

15. The Wind-Down Procedures reflecting the proposed allocation of responsibilities formerly contemplated to be provided by Fahrenheit between US Bitcoin, the Plan Administrator, and the Litigation Administrator are attached to the proposed Order as Exhibit 2. The proposed allocation is reasonable and promotes an efficient resolution of outstanding issues.

16. Additionally, the Plan requires that the Debtors establish a Disputed and Contingent Claims Reserve, which will hold Liquid Cryptocurrency and MiningCo Common Stock that would otherwise have been distributed on account of Claims not Allowed as of the Effective Date or which may be subject to Withdrawal Preference Exposure. The A&M team has been working with the Debtors to resolve outstanding Claims, but certain Claims (including those of parties proposed to be equitably subordinated) remain outstanding. Based on the Debtors' Claims register, the provisions in the Plan and Confirmation Order allowing for the resolution of certain Claims, and discussions with the Debtors' other advisors, I believe it is necessary to hold Liquid Cryptocurrency and MiningCo Common Stock valued at approximately $613 million as of November 17, 2023, in the Disputed and Contingent Claims Reserve pending resolution of any related matters.[4] A significant portion of that amount is on account of Claims associated with Withdrawal Preference Exposure over $100,000. To the extent that the Holders

---

[4] The Plan Administrator is charged with maintaining the Disputed and Contingent Claims Reserve, including determining whether, in its business judgment, it is advisable to convert such Liquid Cryptocurrency to fiat.

of such Claims accept the Account Holder Avoidance Action Settlement, that amount would be released upon settlement or payment of the Withdrawal Preference Exposure pursuant to the Plan.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 30, 2023

/s/ *Robert Campagna*
Robert Campagna
Managing Director
Alvarez and Marsal, LLC

Pg 10 of 11

# Exhibit A

# Illustrative Waterfall

# Plan Recovery Waterfall

$ in millions

|  | Filed Disclosure Statement | | Informational Only |
|---|---|---|---|
|  | Orderly Wind Down (as of 5/31 pricing) | MiningCo (as of 5/31 pricing) | MiningCo (as of 11/17 pricing) |
| Liquid Cryptocurrency | $ 2,657 | $ 2,657 | $ 2,941 |
| Less: Post Emergence Costs to the Estate | (163) | (75) | (75) |
| Less: Litigation Administration Funding | (50) | (50) | (50) |
| Less: Mining Business Capitalization | (50) | (225) | (225) |
| **Net Liquid Cryptocurrency** | **$ 2,394** | **$ 2,307** | **$ 2,591** |
| Less: Distribution to Claims | | | |
| Administrative Claims | $ (85) | $ (70) | $ (70) |
| Convenience Class Claims | (242) | (242) | (242) |
| Custody Claims | (206) | (206) | (124) |
| Withhold Claims (Eligible 15% Distribution) | (2) | (2) | (2) |
| **Liquid Crypto Available for Unsecured Claims** | **$ 1,859** | **$ 1,787** | **$ 2,153** |
| **Illiquid Assets** | **$ 306** | **$ 306** | **$ 305** |
| Mining Business Valuation | $ 424 | $ 565 | $ 565 |
| Less: Capitalization presumed in Mining Valuation | (50) | (50) | (50) |
| Plus: Mining Business Capitalization | 50 | 225 | 225 |
| **MiningCo Net Asset Value** | **$ 424** | **$ 740** | **$ 740** |
| **Remaining Distributable Value** | **$ 2,588** | **$ 2,832** | **$ 3,198** |
| **Total Remaining Claims** | **$ 4,225** | **$ 4,225** | **$ 4,225** |
| Initial Liquid Cryptocurrency Distribution % | 44.0% | 42.3% | 51.0% |
| Wind Down Period Illiquid Asset Recovery % | 7.2% | 7.2% | 7.2% |
| MiningCo Common Stock Recovery % | 10.0% | 17.5% | 17.5% |
| **Total Recovery %** | **61.2%** | **67.0%** | **75.7%** |

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.