Dimitry Kirsanov
*Pro Se Creditor*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
_____
                                                    )
In re:                                              )        Chapter 11
                                                    )
CELSIUS NETWORK LLC, *et al.,*[1]                   )        Case No. 22-10964 (MG)
                                                    )
         Debtors.                                   )        (Jointly Administered)
_____)

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY 10004

# Statement and Motion of Clarification

Chief Judge Glenn,

     I want to open with saying thank you to Your Honor for allowing me to be heard after interpreting a adverse change. It is very difficult and complicated to navigate this legal atmosphere without legal prowess and appropriate counsel (This was certainly not without trying – No Counsel would take this with so much "water under the bridge" so to say – even though I have had many hopeful initial consultations), nor did the Custody Ad Hoc group want to represent my concerns. I will admit, I have learned a great deal throughout this process. As Your Honor had indicated after I attempted to make an opening statement, it did not preclude me from

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

examining witnesses on the issues I had, and I did my best to get as many answers as I could regarding my issues. I am writing this motion to you respectfully with continued grave concerns stemming from the responses on behalf of the debtor's counsel and the Court's order.

      First, the Court had indicated "Mr. Kirsanov's assertion that his claim was impaired is without merit.". On the Plan Balloting Instructions for Custody, (ECF#3332, Page 825), it cites "Is at least some of your Custody Claim authorized to be withdrawn pursuant to the Custody Withdrawal Order? (Is your name listed on the Revised Withdrawal Notice [Docket No. 2491]?)" on the Revised Withdrawal Notice (ECF#2491), my name was not listed. The balloting instructions, it indicates that resultant of not having my name listed, my claim is converted into 6A. I do not dispute that 6B without a loan is unimpaired, however, my name was not listed under the Revised Withdrawal Notice, and thus, my claim was converted into 6A, as the balloting indicates. The balloting does not show what exactly happens with 6B that is impaired into 6A with a loan, and the only reference to that is the Custody Settlement (ECF#2291), which indicates "For the avoidance of doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Borrow Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.". From my understanding, the Custody Settlement shall control the disclosure statement.

      Second, the Court indicated "Contrary to Mr. Kirsanov's assertion, Debtors never contended that Mr. Kirsanov improperly changed his vote, nor does inclusion of 6B on the voting results undercut Debtors' position.". In my transcript posted to the docket of the closing arguments (ECT#3999), the debtor's counsel indicated "He's now claiming that we improperly changed his Custody vote on the plan, but just to reiterate, he accepted the Custody settlement and actually withdrew his Custody coins off the platform consistent with that settlement.". Further, the debtor's counsel indicated that "As I said in my opening, even if Mr. Kirsanov voted no, that doesn't change his class vote". Your honor, it was only after your directive ordering the response from the debtor's counsel that the accurate disclosure happened, I had voted no in the Custody Class. And that vote Your Honor, was indeed for my impaired 6A funds, as my name

2

was not listed on the revised withdrawal notice. 6B impaired by a loan into 6A recovery rights was never clarified on the ballot. The first disclosure statement was published on June 6th, of 2023 (ECF#2902), well after the Custody Class settlement on March 21st of 2023 (#ECF 2291).

Third, the Debtors contend they had adequate funding to fulfill my initial Custody request. In my questioning of Mr. Ferraro (ECF#3881), he indicates he was aware of the Blonstein Declaration (Page 268, "Generally. It's been a while ago, 3 but yes."), and indicated that the debtor "Celsius has enough CEL Tokens to satisfy any obligations.". However, according to the Blonstein Declaration (ECF#1192), there was not enough assets to meet the liabilities in the Custody Class, pre-freeze, as early as June 8th, 2022 (Page 16). The debtor's counsel moved to exclude confirmation testimony of Oren Blonstein in (ECF#3802), which from my understanding, was not excluded. In my Breach of Settlement enforcement motion (ECF#3878), the debtor's application says "Not enough funds" (Pages 26-39), and the funds only available when the shortfall was resolved with a deposit of 500,000 CEL (Footnote $^3$ on the Breach Motion), the debtor's platform then pushed a deposit to my account. The debtor's counsel on closing arguments said "I think he's complaining that it took us too long to make distributions, but the settlement only required that Celsius make distributions "as soon as reasonably practicable," and we did just that.  We made distributions about a month after the settlement opt-in period ended in April.  The remainder of his argument is essentially the same as the other CEL token holders' argument.".

In the debtor's Counsel Clarification response (ECF#4014), they cite on page 2, "The Debtors' response to the Clarification Request is based on the Debtors' understanding of Mr. Kirsanov's questions.  To the extent the Debtors misunderstood what Mr. Kirsanov is asking, they will further supplement the record upon the Court's request."

Your honor, I still have very grave concerns about my rights. First, since my name was not listed on the revised withdrawal order (ECF#2491), how were my funds not classified as 6A? My individual ballot showed 6A for my Pure Custody CEL, along with the tabulation results which showed me rejecting. Additionally, the debtor's counsel had indicated[2] on April 10th of 2023, indicating that my Pure Custody funds were indeed impaired and unable to be withdrawn

---

[2] Exhibit A below

pursuant to the Withdrawal order. On the balloting instructions, that indicates my funds were indeed 6A as a result. Furthermore, in the debtor's post-confirmation Custody withdrawal notice (ECF#4040), this impairment, contrary to the balloting instructions which indicate 6B is withdrawable, is confirmed on page 4, "For the avoidance of doubt, and pursuant to the Plan, any Holder of a Class 6B Withdrawable Custody Claim that also has an outstanding Retail Advance Obligation is also eligible to withdraw the Cryptocurrency associated with such Holder's Class 6B Withdrawable Custody Claim".

      Second, in the Custody Settlement (ECF#2291), it indicates on page 10, Paragraph 8 "The Custody Settlement Payments shall be made in-kind and the Debtors may make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets (each as defined in the Blonstein Declaration), respectively, in an amount sufficient to satisfy such in-kind distribution. In the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. Any distribution made in alternative cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date in U.S. dollars, which will then be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Approval Order.". The Blonstein Declaration indicated there was not enough assets of CEL to meet the liabilities ahead of the freeze, and after the freeze. As indicated in my breach motion and blockchain data, the debtor funded their Custody/Aggregator wallets with a 500,000 deposit of CEL weeks after my initial full request to be able satisfy my request in full, and I was not provided the shortfall provision as I had requested. This was only prompted after I had raised the issue to the UCC, Custody, and Debtor's Counsel multiple times. The Shortfall is defined on page 2 with the following: "The Settlement constitutes the full and final satisfaction of all allowed Custody claims on account of Custody Assets (each such claim, an "Allowed Custody Claim") held by the Settling Custody Account Holders against Celsius, including a settlement with respect to the approximately six percent shortfall between the amount of digital assets in the Debtors' Custody wallets compared to aggregate Custody liabilities (the "Shortfall Issue")"

[CONTINUED ON NEXT PAGE]

Your Honor, I remain unclear on the two topics above. How could my Pure CEL have been 6B if my name was not listed in the revised withdrawal order pursuant to the balloting instructions[3] on the Plan? The instructions show my 6A voting status, and the tabulation showed me rejecting with that 6A status. Furthermore, would the debtor lacking funds in their Custody Wallets, subsequently transferring 500,000 CEL Tokens to their Custody wallets weeks later to fulfill my eligible withdrawal request in full not be classified as a Shortfall event pursuant to the Custody Settlement?

I am doing everything I know to safeguard my understanding of my rights, liberty, and undoubtably other creditors that have also fallen under similar circumstances. I was the only one that could have determined my rejecting vote as a 6A classholder based on the separate CEL Report on the Custody tabulation results due to my supermajority status. I am trying so to the best of my abilities. Your Honor you would know these answers, I implore you to clarify the above.

I remain respectfully,

Dimitry Kirsanov, Pro Se Creditor

/S/Dimitry Kirsanov

---

[3] Exhibit B

EXHIBIT A – K&E CONFIRMING INELIGIBILITY ON APRIL 10th, 2023



EXHIBIT B --- PLAN BALLOTING INSTRUCTIONS

**You are a Holder of a Custody Claim, start here.**

*All defined terms are defined in the Plan.*

**Is at least some of your Custody Claim authorized to be withdrawn pursuant to the Custody Withdrawal Order?** (Is your name listed on the Revised Withdrawal Notice [Docket No. 2491]?)*

**Yes →** **You are a Holder of a Class 6B Withdrawable Custody Claim.**

You are presumed to accept the Plan, solely with respect to your Class 6B Claim, and are not entitled to vote your Class 6B Claim.

You can decide whether to opt out of the releases. (Review the Notice of Non-voting Status.)

You will be eligible to withdraw 100% of the Cryptocurrency making up your Class 6B Claim in accordance with the Custody Withdrawal Order.

**If you opt out of the release**, you will not receive a release and you will not provide the Released Parties with a release, solely with respect to your Class 6B Claim.

**If you do not opt out of the release**, you will receive a release and you will provide the Released Parties with a release, solely with respect to your Class 6B Claim.

If a portion of your Custody Claim is not on the Revised Withdrawal Notice (because it was transferred from the Earn Program or Borrow Program into the Custody Program <u>and it</u> was valued at more than $7,575 in the aggregate, valued at the time of the transfer), restart this chart with a "No" answer to review the options on account of that portion of your Custody Claim.

**No →** **You are a Holder of a Class 6A General Custody Claim.**

**Did you *opt in* to the Custody Settlement on or before April 24, 2023?**

**Yes → You are a Holder of a Class 6A General Custody Claim** and you are deemed to accept the Plan with respect to your Class 6A Claim, regardless of whether you return your Ballot or vote to reject the Plan on your Ballot, as you agreed to do in accepting the Custody Settlement.

**Have you previously withdrawn any amounts of your Custody Claim pursuant to the Custody Settlement?**

**Yes →** You will receive a distribution in the amount of Treatment A *minus* any amounts you have previously withdrawn from the Debtors' platform. In either the NewCo Transaction or the Orderly Wind Down, you will be eligible to withdraw 72.5% of the Cryptocurrency in your Allowed Class 6A General Custody Claim, less any amounts (up to 36.25%) previously withdrawn, on or shortly after the Effective Date.

You will also receive a full and final release of all Causes of Action, including Avoidance Actions, with respect to such Class 6A General Custody Claim.+

**No →** You will receive a distribution in the amount of Treatment A. If the Plan is Confirmed, in either the NewCo Transaction or the Orderly Wind Down, you will be eligible to withdraw 72.5% of the Cryptocurrency in your Allowed Class 6A General Custody Claim on or shortly after the Effective Date.

You will also receive a full and final release of all Causes of Action, including Avoidance Actions, with respect to such Class 6A General Custody Claim.+

**No → You are a Holder of a Class 6A General Custody Claim** and you may vote to reject or accept the Plan. **Do you vote to accept or reject the Plan?** (Review Items 6, 9 on your Ballot.)

**You vote to accept the Plan.** → (see left path: Treatment A distribution)

**You vote to reject the Plan or you abstain (do nothing) from voting your Class 6A General Custody Claim on the Plan.**

You will receive Treatment B. In either the NewCo Transaction or the Orderly Wind Down, 100% of the Cryptocurrency associated with your Class 6A General Custody Claim will be transferred to a segregated wallet held by the Post-Effective Date Debtors and will be subject to all Avoidance Actions and other claims with respect to such Class 6A General Custody Claim. The Litigation Administrator(s) shall have 180 days (or longer if approved by the Bankruptcy Court) to bring any Avoidance Action or other claim against you with respect to such assets. If no action is brought and no settlement is reached in such time period (as extended), such assets shall be released to you. Any such Allowed General Custody Claim will be subject to the ADR Procedures.

You will not receive a release with respect to your Class 6A General Custody Claim and you will not provide the Released Parties with a release with respect to your Class 6A General Custody Claim.

---

\*   Assets that are eligible to be withdrawn pursuant to the Custody Settlement Order are those that either (a) were only ever held in the Custody Program or (b) were transferred from the Earn Program or the Borrow Program into the Custody Program <u>and</u> were valued at less than $7,575 in the aggregate, valued at the time of the transfer.

+   If your Withdrawal Preference Exposure is under $100,000 (review Items 1, 12 on your Ballot), and you either (a) have no other Claims to vote or (b) have other Claims to vote and vote *all* of those Claims to accept the Plan, then you will receive a 100% recovery of your Class 6A General Custody Claim.

7