**WHITE & CASE**

December 11, 2023

VIA EMAIL AND ECF

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1415
mg.chambers@nysb.uscourts.gov

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90071-2433
T +1 213 620 7700

whitecase.com

**Re:** *In re Celsius Network LLC, et al.*, **Case No. 22-10964 (MG)**

Dear Judge Glenn:

White & Case LLP is counsel to the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-referenced chapter 11 cases. I write in response to the letters [D.I. 4073] (the "**BRIC Letter**") from the Blockchain Recovery Investment Consortium ("**BRIC**") and Galaxy Digital LP ("**Galaxy**") [D.I. 4077].

By way of background, on December 1, 2023, counsel to BRIC informed the Debtors and the Committee that it intends to depose nine individuals in connection with the hearing currently scheduled for December 21. Those individuals included three Committee members (Scott Duffy, Tom DiFiore, and Andrew Yoon)—half of the Committee—as well as Kenneth Ehrler, the Committee's declarant in support of the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [D.I. 4050] (the "**Wind Down Motion**").[1] The Debtors have identified five individuals from BRIC, and its proposed mining manager, Global[X]Digital, who they intend to depose and served document requests and requests for admission on BRIC. BRIC likewise served document requests on the Committee and the Debtors on the evening of December 8, 2023.

Just today, counsel for Galaxy, another party who submitted a proposal following the SEC's decision with respect to the proposed registration statement for NewCo, approached the Debtors and the Committee for the first time stating that it intends to object to the MiningCo transaction proposed in the Wind Down Motion and will be serving discovery requests, including "depositions of the

---

[1] The Committee has agreed to a deposition of Mr. Ehrler, which is currently scheduled to proceed on December 12, 2023.

Debtors' representatives *and all UCC members*, as well as document production." (emphasis added).

As the Court is aware, under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26. In light of these criteria, BRIC has stated no valid basis for deposing a single member of the Committee in his or her individual capacity, much less three of them. BRIC asserts that "Messrs. Duffy and DiFiore have agreed to serve on the board governing the MiningCo proposed by the Joint Motion" and therefore should be subject to deposition in their individual capacity as they have "personal knowledge and facts concerning the transaction proposed by the Joint Motion." That is incorrect. All of Messrs. Duffy and DiFiore interactions in connection with these cases are based on their status as Committee members and their testimony will be as representatives of the Committee. Moreover, a significant amount of the Committee members' knowledge and information regarding the proposed transaction is privileged, as it was communicated to them by or with counsel and in furtherance of obtaining legal advice from counsel. BRIC states no basis for expending estate resources on three depositions that will seek information that is commonly shared among the Committee and overwhelmingly privileged.

BRIC's attempt to tar certain Committee members and their advisors as "conflicted" is also meritless. Messrs. Duffy and DiFiore were appointed to the New Board envisioned under the NewCo transaction. After extensive testimony at the hearing with respect to the confirmation of the Plan, the Court found that such appointments were consistent with the interests of creditors and public policy and satisfied section 1125 of the Bankruptcy Code. *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [D.I. 3972] (the "**Confirmation Order**") ¶¶ 283; 284. The Committee has now proposed that Messrs. Duffy and DiFiore also be appointed to the board of MiningCo, along with each other individual appointed to the New Board under the NewCo transaction. The three board observers proposed under the NewCo transaction would also remain in the MiningCo transaction.

BRIC's draft mining transaction which was provided to the Committee in PowerPoint form provided that the Committee would appoint four members to the board of the proposed new mining company. Prior to selecting the mining manager under the MiningCo transaction, other members of the Committee voted that Mr. DiFiore and Mr. Duffy would be two of the Committee's selections to the board of any of the companies proposed by the prospective backup plan sponsors, including BRIC. Those members resolved that, accordingly, Mr. Duffy and Mr. DiFiore did not have a conflict of interest with respect to the selection of the backup mining manager and were able to vote on that issue. The Committee is willing to stipulate to those facts.

Additionally, BRIC contends that the Committee's counsel and financial advisor are conflicted because "the UCC's counsel and financial advisor are going to represent the litigation trust." *Id.*

The Hon. Martin Glenn, p. 3
December 11, 202

WHITE & CASE

Not true. Following a competitive process that included two other firms, the Committee selected Mr. Mohsin Meghji, of M3 Partners (the Committee's court-appointed financial advisor) as the Litigation Administrator under the Plan. *See Third Notice of Filing of Plan Supplement* [D.I. 3444], Ex. F. Mr. Meghji disclosed that he intends to retain M3 Partners, subject to approval of the Litigation Oversight Committee, as financial advisor to support the prosecution, settlement, or resolution of Claims and Causes of Action. *See Eighth Notice of Filing Plan Supplement* [D.I. 3935], Ex. A, Ex. B. The identity of the Litigation Administrator does not change in the Orderly Wind Down.

There have been no arrangements or promises made with any counsel by the Litigation Administrator or otherwise. Indeed, under the Litigation Administrator Agreement, the Litigation Administrator does not have the authority to retain professionals or agree to compensation arrangements for such Litigation Administrator Professionals without approval of the Litigation Oversight Committee to the extent provided in Section 2.5 of that agreement. *Id.* Ex. A § 4.11(f). Section 2.5 provides that the Litigation Oversight Committee shall exercise oversight and may give direction with respect to the selection, compensation, and supervision of Litigation Administration Professionals. The Committee is also willing to stipulate to these facts.

To the extent discovery regarding the Wind Down Motion moves forward, the Committee would be willing to offer a Committee member as a Rule 30(b)(6) witness and would not object to BRIC asking that individual questions in his personal capacity. The Committee believes that the burden to the Committee and the estate from any additional depositions of Committee members would far outweigh any potential benefit to BRIC or any other disgruntled bidder.

Despite the Committee's willingness to make this accommodation, it is extremely concerned regarding the scope of discovery sought by all parties in this matter and the exorbitant cost of the prospective litigation—all of which will be borne by the Committee's constituents—unsecured creditors of the Debtors' estates. The Wind Down Motion seeks to implement the terms of the Plan to pivot to an Orderly Wind Down. *See* Ex. A, Art. IV.E.1 ("To toggle to the Orderly Wind Down, the Debtors . . . (iv) shall file the Wind-Down Motion."). The Wind Down Motion fits within the parameters disclosed to all creditors. *Id.* (Describing the Wind Down Motion which shall include the Wind-Down Procedures and describing the Wind-Down Procedures "shall provide additional details regarding the Wind-Down Assets, the Wind-Down Budget, ***the identity of the Mining manager*** . . . . and shall be subject to approval by the Bankruptcy Court in connection with [the] Wind-Down Motion.") (emphasis added). The Debtors ran the market test envisioned by the Plan and consulted with the Committee to select the proposed Mining manager and Plan Administrator. *See* Ex. A, Art. IV.E.1 (describing that the Backup Plan Sponsor & Backup Plan Sponsor Transaction "becomes operative, subject to a market test of the fees contained in the Backup Plan Administrator Term Sheet . . ."). The Plan also specifically contemplated that US Bitcoin Corporation, a key member of the Fahrenheit team that was overwhelmingly approved by creditors as the plan sponsor of the NewCo Transaction, could be selected as the Mining manager. *Id.* (describing that the provisions related to the "US Bitcoin Agreements" would be "eliminated, ***unless US Bitcoin is selected as the Mining manager in connection with the Orderly Wind Down***") (emphasis added).

The issues before the Court are narrow and, as indicated by the Court at the November 30, 2023 hearing, may include (1) does the Wind Down Motion comply with the Plan, (2) does the MiningCo transaction result in a modification of the Plan, and (3) if so, does that modification adversely affect a creditor who voted to accept the Plan and require re-solicitation. The Committee has significant concern that the vindictive squabbles of disgruntled bidders could lead to excessive legal expenses regarding questions that are not relevant to the decision before the Court. Again, all such fees will be borne by the Debtors' unsecured creditors.

Importantly, BRIC cannot compel the Debtors to choose BRIC as the Back Up Plan Sponsor. It is therefore unclear what purpose BRIC's aggressive litigation strategy serves.

The Committee therefore agrees with BRIC that, before the Committee and the Debtors are forced to further embark on this expensive and time-consuming litigation, the Court should clarify the scope of relevant inquiries with respect to the Motion to control what otherwise could get out of hand quickly. The Committee will make itself available to discuss these matters at the Court's convenience.

Respectfully submitted,

*/s/ Aaron Colodny*

**Aaron Colodny**


cc: Counsel to all parties (by ECF)

AMERICAS 125830998