Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 819-8200
Facsimile:    (212) 354-8113

Gregory F. Pesce (admitted *pro hac vice*)
**WHITE & CASE LLP**
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone:    (312) 881-5400
Facsimile:    (312) 881-5450

Aaron Colodny (admitted *pro hac vice*)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:    (213) 620-7700
Facsimile:    (213) 452-2329

Keith H. Wofford
**WHITE & CASE LLP**
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone:    (305) 371-2700
Facsimile:    (305) 358-5744

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**SUPPLEMENTAL JOINT STATEMENT REGARDING
THE JOINT MOTION OF THE DEBTORS AND THE COMMITTEE
FOR ENTRY OF AN ORDER (I) APPROVING THE IMPLEMENTATION
OF THE MININGCO TRANSACTION AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") together with official committee of unsecured creditors (the "Committee") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this supplemental statement (the "Supplemental Statement") in support of the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "Wind Down Motion")[2] setting forth certain supplemental terms of the MiningCo Transaction.

**Supplemental Statement**

1. After receiving feedback from the Securities and Exchange Commission that the NewCo Transaction could not be consummated, the Debtors and the Committee pivoted to consummating the Orderly Wind Down in the confirmed Plan. In accordance with the Plan, the Debtors and the Committee jointly filed the Wind Down Motion to notify creditors of their chosen path, the identity of the Mining manager, and additional details regarding the Wind-Down Assets, the Wind-Down Budget, and the Wind-Down Procedures, and to seek approval of the Orderly Wind Down through the MiningCo Transaction. The Plan specifically disclosed that either Global[X]Digital (the BRIC's proposed mining management partner) or US Bitcoin could be the Mining manager in the event the Debtors elected to pursue the Orderly Wind Down. The Wind Down Motion detailed why, despite the Plan's identification of the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the *Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Plan"), attached as Exhibit A to the *Finding of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Confirmation Order") [Docket No. 3972], or the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), as applicable.

2

BRIC as a potential Backup Plan Sponsor, the Debtors and Committee ultimately selected US Bitcoin as the Mining manager for the MiningCo Transaction.

2. Furthermore, since the Disclosure Statement was approved, the Debtors improved the terms and economics of the administration of the Plan and Wind Down of the Debtors' estates for creditors including by monetizing certain illiquid assets, reaching agreement with two distribution agents on significantly reduced fees as compared to those initially offered by the BRIC, significantly streamlining the claims reconciliation process, and converting altcoins into bitcoin and cash. Even after filing the Wind Down Motion, the Debtors and the Committee continued to negotiate with the BRIC regarding a potential role in monetizing certain of the Debtors' illiquid assets as part of the MiningCo Transaction.

3. At the discovery conference on December 13, 2023, the Debtors informed the Court that they had reached an agreement with the BRIC that resolved its potential objection to the Wind Down Motion. Specifically, the Debtors, the Committee, and the BRIC have agreed that the BRIC will act as a Litigation Administrator under the Plan, and the material terms of such agreement are included in **Exhibit A** attached hereto.[3] As part of its role, the BRIC will be responsible for monetizing certain of the Debtors' illiquid assets and certain claims and causes of action of the Debtors' Estates. This outcome is expressly contemplated by the Plan in that it permits the Committee to appoint "one or more Litigation Administrators" "to prosecute, settle, or otherwise resolve any remaining Disputed Claims." Plan Art. IV.G.

---

[3] Pursuant to the agreement with the BRIC, the Debtors will also file a motion prior to the hearing on the Wind Down Motion seeking approval of the BRIC's professional fees as described in **Exhibit A**. The summary contained in **Exhibit A** is qualified in its entirety by the terms contained in the agreement with the BRIC, which the Debtors will file as part of the Plan Supplement. To the extent there are any conflicts between **Exhibit A** and the agreement with the BRIC included in the Plan Supplement, the terms in the Plan Supplement shall govern.

4. To be clear, the resolution with the BRIC does not modify the agreement with US Bitcoin described in the Wind Down Motion. Rather, it is a separate agreement under which the BRIC will monetize certain illiquid assets for the benefit of the Debtors' creditors. Absent the BRIC's involvement, the existing Litigation Administrator and the Plan Administrator would monetize the illiquid assets (and accordingly, as described below, the Litigation Administrator and Plan Administrator have reduced their initial budgets due to the BRIC's role in monetizing illiquid assets). The BRIC's involvement in monetizing illiquid assets will facilitate the expedient and value-maximizing return of funds to creditors, as the BRIC's principals have unique and substantial experience in monetizing assets such as these.

5. Furthermore, the terms of the agreement with the BRIC and the Plan Administrator are significantly less expensive to the Debtors' estates compared to the Orderly Wind Down contemplated by the Plan and Disclosure Statement. The prior agreement with the BRIC, as shown in the Disclosure Statement, included at least $46 million in flat fees to serve as Plan Administrator, plus a 10% incentive fee on illiquid assets, among other fees for distributions and other services. The proposed agreement with the BRIC contemplates a maximum of $15 million in fixed annual fees[4] (which will be funded by a reduction in the initial budgets to the Litigation Oversight Board and Plan Administrator as detailed further below) and incentive fees that are on better terms than the prior agreement. The chart below shows the reallocation of

---

[4] In addition, the Debtors' Plan Administrator budget anticipates up to $5 million of additional fees for the Plan Administrator for a total of $20 million in fees for the Plan Administrator and ARM combined as compared to the $46 million under the initial BRIC Backup Plan Administrator Term Sheet.

4

the Wind-Down Budget among the Plan Administrator, the BRIC, and the previously disclosed Litigation Administrator[5]

|  | **NewCo Transaction** | **MiningCo Transaction** |
|---|---|---|
| **Litigation Administrator Budget** | $50 million | $40 million |
| **Plan Administrator Budget** | $75 million | $70 million |
| **BRIC Litigation Administrator Cash Fee** | $0 | $15 million |
| **TOTAL** | $125 million | $125 million |

6. As a Litigation Administrator, the BRIC will be subject to oversight by a sub-committee of the Litigation Oversight Committee. Furthermore, the Litigation Oversight Committee will approve the BRIC's budget (which will not result in incremental costs to the Debtors' estates), and the BRIC will bear the cost of any financial advisors retained for the purpose of assisting it in its role as a Litigation Administrator, which is the primary justification for the reduction in the applicable budgets and BRIC's cash fee.

7. The Debtors and the Committee each believe, in their business judgment, that the agreement with the BRIC will substantially assist the Debtors in maximizing value for all of their stakeholders.

[*Remainder of page intentionally left blank*]

---

[5] The prior agreement included a 10% incentive fee on all illiquid assets. The revised agreement includes: (a) a 10% incentive fee on recoveries in excess of the pro forma value of each illiquid asset as set forth on the schedule to the term sheet and previously determined by Stout, the Debtors' third-party valuation consultant, for certain illiquid assets that are expected to require more active management; (b) a 5% incentive fee on the net recovered proceeds from certain litigation actions; and (c) no incentive fee on assets that would not require active management, such as locked tokens, the Core Scientific assets, or the Stakehound assets.

New York, New York
Dated: December 16, 2023

| | |
|---|---|
| */s/ Joshua A. Sussberg* | */s/ Aaron Colodny* |
| Joshua A. Sussberg, P.C. | David M. Turetsky |
| **KIRKLAND & ELLIS LLP** | Samuel P. Hershey |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Joshua D. Weedman |
| 601 Lexington Avenue | **WHITE & CASE LLP** |
| New York, New York 10022 | 1221 Avenue of the Americas |
| Telephone:    (212) 446-4800 | New York, New York 10020 |
| Facsimile:    (212) 446-4900 | Telephone:    (212) 819-8200 |
| | Facsimile:    (212) 354-8113 |
| Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) | |
| Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) | Gregory F. Pesce (admitted *pro hac vice*) |
| Christopher S. Koenig | **WHITE & CASE LLP** |
| Dan Latona (admitted *pro hac vice*) | 111 South Wacker Drive, Suite 5100 |
| **KIRKLAND & ELLIS LLP** | Chicago, Illinois 60606 |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Telephone:    (312) 881-5400 |
| 300 North LaSalle Street | Facsimile:    (312) 881-5450 |
| Chicago, Illinois 60654 | |
| Telephone:    (312) 862-2000 | Aaron Colodny (admitted *pro hac vice*) |
| Facsimile:    (312) 862-2200 | **WHITE & CASE LLP** |
| | 555 South Flower Street, Suite 2700 |
| *Counsel to the Debtors and Debtors in Possession* | Los Angeles, California 90071 |
| | Telephone:    (213) 620-7700 |
| | Facsimile:    (213) 452-2329 |
| | |
| | Keith H. Wofford |
| | **WHITE & CASE LLP** |
| | Southeast Financial Center |
| | 200 South Biscayne Blvd., Suite 4900 |
| | Miami, Florida 33131 |
| | Telephone:    (305) 371-2700 |
| | Facsimile:    (305) 358-5744 |
| | |
| | *Counsel to the Official Committee of Unsecured Creditors* |

# Exhibit A

**BRIC Agreement – Material Terms**

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Plan Administrator | Christopher Ferraro will serve as the Plan Administrator as set forth in further detail below. |
| ARM | BRIC or its designee will serve as a Litigation Administrator (Complex Asset Recovery Manager or "ARM"). |
| Oversight of ARM | The Litigation Oversight Committee will oversee the ARM. The composition of the Litigation Oversight Committee shall remain as contemplated in the Plan and Confirmation Order.<br><br>BRIC shall propose candidates to be considered by the Litigation Oversight Committee for the final spot on the Litigation Oversight Committee, among any other candidates the Litigation Oversight Committee may elect to consider.<br><br>The ARM shall be overseen by an "ARM Oversight Sub-Committee" which shall be comprised of Gerard Uzzi and two other members of the Litigation Oversight Committee to be determined by the Litigation Oversight Committee in consultation with the BRIC.<br><br>The ARM Oversight Sub-Committee shall oversee the ARM and its management of the Illiquid Assets and BRIC Litigation Assets, and shall provide regular reports to the Litigation Oversight Committee. |
| Access to Resources | The Litigation Oversight Committee shall ensure that the ARM has reasonable and timely access to the Company's books, records, accounts, and other resources as contemplated herein to facilitate the administration of its duties. Any requests for information by the ARM to the Plan Administrator shall be made through Robert Campagna, Samuel Schreiber, or another person designated by the Debtors or the Plan Administrator prior to or on the Effective Date (such person, the "Gatekeeper"). The Gatekeeper will use reasonable efforts to respond to such information requests, including providing reasonable access to employees, as appropriate, to facilitate an efficient complex assets recovery process and litigation recovery process. Any dispute regarding access set forth in this paragraph shall be resolved by the Litigation Oversight Committee, excluding any member proposed by the BRIC for the final spot on the Litigation Oversight Committee. The Plan Administrator shall select any successor Gatekeeper.<br><br>The Plan Administrator shall have direct and sole management and oversight of Wind Down Estate employment and retention matters. Interested parties (including the Litigation Oversight Committee and each Litigation Administrator) shall receive notice of any proposed terminations of employees and consultants. For the avoidance of doubt, any Celsius employee who is employed by the estates post-emergence shall report to the Plan Administrator, provided that the Litigation Oversight Committee shall have the ability to resolve disputes regarding the ARM's or other Litigation Administrator's reasonable access to employees.<br><br>The Litigation Oversight Committee will approve a comprehensive budget for BRIC, as Litigation Administrator (ARM), to engage counsel and experts, and manage the Illiquid Assets. For the avoidance of doubt, the budget shall exclude Financial Advisors retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by the BRIC. If such Financial Advisors are retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by BRIC, such costs shall be borne solely by the BRIC and not the Debtors' estates. |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Illiquid Assets | The BRIC, in its capacity as ARM, will manage the monetization of all of the illiquid assets listed in the attached schedule, including the "Illiquid Assets Subject to Incentive Fees" and the "Illiquid Assets Not Subject to Incentive Fees." The value of the Mawson asset to be allocated to the ARM shall include only the Mawson note and not the claims arising under the Mawson Co-Location Agreement (including for return of the deposit), which agreement and deposit rights are property of MiningCo. The litigation with respect to Mawson shall be overseen by the ARM. The Litigation Oversight Committee and the MiningCo Board shall have joint authority to direct the litigation and resolution of such litigation. The ARM shall only earn its incentive fee on the portion of any recovery associated with the Mawson note and not rights asserted under the Co-Location Agreement, and any dispute as to allocation of litigation proceeds shall be resolved by the Bankruptcy Court.<br><br>The Litigation Oversight Committee shall have the sole authority to designate Illiquid Assets as subject to Incentive Fees in addition to those set forth as "Illiquid Assets Subject to Incentive Fees."<br><br>For the avoidance of doubt, those assets currently identified as "Illiquid Assets Subject to Incentive Fees" shall not be changed.<br><br>All illiquid assets within the Estates (but not causes of actions other than the causes of action identified as "Litigation Assets" in the section immediately below this one) not identified on the attached schedule will be discussed in good faith between the Litigation Oversight Committee and the ARM to determine whether they should be designated as additional "Illiquid Assets Subject to Incentive Fees" or "Illiquid Assets Not Subject to Incentive Fees," all subject to the sole discretion of the Litigation Oversight Committee.<br><br>Furthermore, to the extent that an asset designated as "Illiquid Assets Not Subject to Incentive Fees" requires active management and workout activities more akin to the Illiquid Assets Subject to Incentive Fees, the Litigation Oversight Committee shall have the authority to change such designation to be subject to Incentive Fees.<br><br>The ARM shall be required to consult with the ARM Oversight Sub-Committee on a periodic basis regarding whether to monetize Illiquid Assets Subject to Incentive Fees that would result in a recovery below the market "pro forma" value in the attached schedule. |
| Litigation Assets | As part of its role as ARM, BRIC will be designated as a Litigation Administrator under the Plan solely with respect to (a) potential claims and causes of action related to the Debtors' pre-bankruptcy activities against the Debtors' professionals who are Excluded Parties under the Plan (those claims will be set forth on a schedule to BRIC's agreement and are envisioned to include, but not be limited to potential claims and causes of action against accountants, attorneys, and other advisors, such as Chainalysis, that were not released under the Plan) and (b) Retained Causes of Action solely as follows:<br><br>  i. BRIC shall be the Litigation Administrator for all Causes of Action related to Illiquid Assets (*e.g.* loan defaults related to illiquid assets, illiquid mining assets, etc., <u>but</u> not all claims related to counterparties with institutional loans, whereby such claims are not related to such institutional loans).<br>  ii. Additionally, BRIC shall be the Litigation Administrator for the BitMEX and Tether Claims.<br><br>The Litigation Oversight Committee will approve a budget for BRIC, as a Litigation Administrator, to engage counsel and experts (but not financial advisors) and manage the above-described litigation. |
| Liquid Distributions | The Debtors will appoint Christopher Ferraro as the Plan Administrator for a five-year term. Mr. Ferraro will work with the Distribution Agents to make initial and subsequent distributions under the Plan to creditors (including liquid cryptocurrency) and be compensated as agreed between the Debtors, the Committee, and Mr. Ferraro.<br><br>If Mr. Ferraro resigns as Plan Administrator prior to the completion of his duties (including all distributions under the Plan), the Litigation Oversight Committee shall select the successor Plan Administrator. |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Exculpation | BRIC shall be exculpated with respect to any potential liability in connection with any actions taken, including distributions, by the Plan Administrator and the other Litigation Administrator. The Plan Administrator and the Litigation Administrator shall be exculpated with respect to any potential liability in connection with actions taken by the BRIC in the course of their duties as Litigation Administrator (ARM). |
| Mutual Non-Disparagement | The Debtors, the Committee, the Plan Administrator, the BRIC/Litigation Administrator (ARM), the other Litigation Administrator, and the Litigation Oversight Committee (collectively, the "Parties") shall agree to mutual non-disparagement clauses as follows:<br><br>Beginning immediately upon agreement to this term sheet and through the date on which the Litigation Administrator Agreement terminates, the Parties shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Parties, the professionals or employees of the other Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in (i); provided that the foregoing shall not prevent the Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information. These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan. |
| Tax Filings | The Plan Administrator shall be responsible for all pre-Effective Date tax filings, including, for the avoidance of doubt, all 2023, stub 2024 and prior tax filings.<br><br>The Plan Administrator shall be responsible for all regulatory filings and financial reporting for the Estates post-Effective Date; provided that the Plan Administrator shall first present such filings and reports to the Litigation Oversight Committee and consult with the Litigation Oversight Committee with respect to such filings and reports; provided that the ARM shall make regular reports to the Court as set forth in the agreement governing its services. |
| Governing Documentation | There will be one agreement that governs the BRIC's role as Litigation Administrator (ARM), that will be substantially consistent with the Litigation Administrator Agreement included in the Plan Supplement except as otherwise expressly modified by this term sheet (e.g., to include the monetization of Illiquid Assets, fee structure, oversight by Litigation Oversight Committee, *etc.*), provided that the following clarifications shall be made:<br><br>- the Litigation Oversight Committee shall provide the BRIC at least 90 days' notice if it determines to terminate the BRIC's role as Litigation Administrator (ARM) without cause;<br><br>- the Litigation Oversight Committee shall not be able to terminate the BRIC without cause until the date that is 18 months following the Effective Date (it being understood that notice of such termination without cause may be provided to the BRIC as early as the date that is the 15 month anniversary of the Effective Date); and<br><br>- if the BRIC is terminated without cause, on the date of termination (90 days after notice of termination without cause is provided), the BRIC shall be entitled to immediate payment of all unpaid accrued fees through the date of termination, plus a $1 million termination fee; and<br><br>- if the BRIC is no longer engaged as Litigation Administrator (ARM) (unless terminated for cause), the BRIC shall be entitled to prompt payment of the Recovery Incentive Fee and Litigation Incentive Fee that would otherwise have been owed to the BRIC from the monetization of an illiquid asset or cause of action previously managed by BRIC if a Resolution Event with respect to such asset or cause of action occurs prior to the BRIC's termination, other than a termination for cause. "Resolution Event" means, as applicable, a settlement agreement, an agreement in principle to settle or otherwise resolve a matter, a judgment or similar court resolution, or substantial completion of a litigation or resolution process that has not yet led to a judgment, similar court resolution, or other resolution. Any dispute regarding such right to payment will be resolved in the first instance by the Litigation Oversight Committee, and if a dispute remains, it will be resolved by the Bankruptcy Court. Notwithstanding the above, if a Resolution Event with respect to an asset or cause of action has not occurred prior to the BRIC's termination (other than for cause), but the BRIC has expended substantial efforts towards the monetization or resolution of such asset or cause of action and such asset or cause of action is subsequently monetized or resolved, the BRIC shall be entitled to request that the Litigation Oversight Committee authorize a payment, in full or in part, of a Recovery Incentive Fee or Litigation Incentive Fee to the BRIC in connection with the monetization or resolution of such asset or cause of action that is the result of the BRIC's |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
|  | substantial efforts. The Litigation Oversight Committee will have sole and absolute discretion regarding the approval of any such request for payment of a Recovery Incentive Fee or Litigation Incentive Fee, including a determination that no such fee is appropriate.<br><br>• Following any termination of the BRIC without cause, the Litigation Oversight Committee and any successor Litigation Administrator (Complex Asset Recovery Manager or "ARM") shall provide the BRIC with reasonable access to information regarding the status of the monetization of any asset that would result in payment of a Recovery Incentive Fee or Litigation Incentive Fee to the BRIC. |
| Mining NewCo | BRIC to support the modified Joint Motion and not support the objections of any other party. |
| Economics | *Fixed Fee:* Commencing on the Effective Date, a cash fee of $5,000,000 per year for 3 years (to be paid monthly in equal installments beginning on the Effective Date), subject to any extension that may be approved by the Litigation Oversight Committee on compensation set by the Litigation Oversight Committee at the time of such extension.<br><br>The justification for the ARM's fixed fee is in part that the ARM will use its own team to do much of the work that would be outsourced by the other Litigation Administrator, including the hiring of financial advisors on an hourly basis. When the Litigation Oversight Committee sets a budget for the ARM, as set forth above, this will be taken into account and such budget will not include line items for financial advisors (and if a financial advisor is hired by the ARM, it will be paid for solely by the ARM).<br><br>*Recovery Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 10% of value realized in respect of each asset designated as among the Illiquid Assets Subject to Incentive Fees in excess of the current marked value on the attached schedule in the column labeled "pro forma" value, paid promptly to the ARM upon such monetization event from the proceeds of such monetization event.<br><br>*Litigation Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 5% of value realized (*i.e.* Net Recovered Proceeds)[1] in respect of litigation actions managed by BRIC as Litigation Administrator, paid promptly to the ARM upon such monetization event and from the proceeds of such monetization event; and, for the avoidance of doubt, excluding any Illiquid Assets Subject to Incentive Fees.<br><br>At any meeting of the Litigation Oversight Committee, the ARM may present a progress report and the Litigation Oversight Committee may determine, in its sole and absolute discretion, that substantial efforts have been expended by BRIC towards the monetization or resolution of any particular asset or cause of action, and authorize the vesting of a partial Recovery Incentive Fee or Litigation Incentive Fee to be paid promptly to the ARM upon a monetization event of such asset or cause of action, from the proceeds of such monetization event, notwithstanding whether the BRIC is subsequently terminated without cause.<br><br>The net effect to the proposed Plan Administration Budget will be neutral with the Plan Administrator and Litigation Administrator Budgets reduced as follows, and such amounts budgeted to account for the $15 million in flat fees to be paid to the BRIC:<br>• The initial Plan Administrator Budget reduced to $70 million (from $75 million)<br>• The initial Litigation Trust Funding Amount shall be reduced to $40 million (from $50 million) |
| Releases | The parties will exchange mutual releases as part of the settlement and the parties agree that the agreements contained herein shall supersede and replace all prior contractual arrangements between the BRIC, the Debtors and the Committee.<br><br>There shall be no representations and warranties as to the assets to be managed by BRIC which shall vest in the estates and monetized by BRIC on "as is, where is" basis. |
| Process | Subject to execution of this term sheet, the Debtors and the UCC shall promptly supplement the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* to reflect the modified and clarified terms herein. |

---

[1] "Net Recovered Proceeds" means recoveries from causes of action overseen by the BRIC as Litigation Administrator, net of (1) contingency or similar payments to law firms or other professionals retained by BRIC as Litigation Administrator on each such cause of action and (2) any other fees and expenses incurred in the prosecution, management, or settlement of each respective cause of action by BRIC as Litigation Administrator.

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Fees & Expenses | The revised motion shall seek court approval for the Debtors to reimburse the BRIC's reasonable and documented out-of-pocket expenses, including the fees and expenses incurred by Willkie Farr & Gallagher LLP and Quinn Emmanuel LLP ("QE"), provided that QE's reimbursable amount shall not exceed $500,000.  To the extent such reimbursement is not approved, the Debtors and Committee shall not object to any motion filed by the BRIC's professionals seeking an allowed administrative expense for such fees and expenses. |

**Schedule**

**Illiquid Assets**

**Summary of Estimated Remaining Illiquid Assets at Emergence**
($ in 000s)

**Illiquid Assets Subject to Incentive Fees**

| Assets | 4th DS Value | Pro Forma Adjustments | Pro Forma Value | Subject to Incentive Fees |
|---|---|---|---|---|
| EFH Loans (Dollarized and BTC) | | | | Yes |
| Rhodium | | | | Yes |
| Spartan | | | | Yes |
| QRDO Investment | | | | Yes |
| Institutional Loans[1] | | | | Yes |
| Mawson | | | | Yes |
| CoinRoutes | | | | Yes |
| Luxor | | | | Yes |
| Sarson Funds | | | | Yes |
| Avantgarde Finance | | | | Yes |
| Orgenesis | | | | Yes |
| CegaPte | | | | Yes |
| Pythagoras | | | | Yes |
| **Subtotal** | | | | |

**Illiquid Assets Not Subject to Incentive Fees**

| Assets | 4th DS Value | Pro Forma Adjustments | Pro Forma Value |
|---|---|---|---|
| Core Scientific | | | |
| MATIC | | | |
| Other - DOT | | | |
| Other - Various AltCoins | | | |
| 1Inch | | | |
| QRDO | | | |
| Other - ETH | | | |
| Stakehound | | | |
| **Subtotal** | | | |
| **TOTAL** | | | |

**Footnote (1): Institutional Loan Detail**

| Loan Counterparty | Principal Value | Collateral Value | Net Loan Value |
|---|---|---|---|
| 168 Trading Limited | | | |
| B2C2 LTD | | | |
| B-Brick Inc | | | |
| Blockchain Access UK Ltd | | | |
| Liquidity Technologies LTD | | | |
| Onchain Custodian Pte Ltd | | | |
| OPTIMAL ALPHA MASTER FUND LTD | | | |
| Profluent Trading Inc | | | |
| Reliz LTD | | | |
| Symbolic Capital Partners Ltd | | | |
| Tower BC Ltd | | | |
| Alameda Research Ltd[a] | | | |
| Iterative OTC LLC[b] | | | |
| Three Arrows Capital Ltd[c] | | | |
| **Total** | | | |
| **Total (rounded)** | | | |

(a) As of May 31, 2023, Alameda Research Ltd. had four outstanding loans owed to Celsius, denominated in various cryptocurrencies, worth approximately $15.3 million. Celsius has fully reserved against this receivable on its balance sheet.

(b) Iterative OTC LLC has two outstanding loans owed to Celsius. Iterative OTC LLC borrowed 450 BTC worth approximately $12.3 million as of May 31, 2023. Celsius has fully reserved against this receivable on its balance sheet. Iterative OTC LLC has filed for Chapter 7 liquidation in the Bankruptcy Court for the District of Delaware and any payments from such loan shall not be subject to incentive fees.

(c) As of May 31, 2023, Three Arrows Capital Ltd had two outstanding loans owed to Celsius, denominated in USDC, worth approximately $40.6 million. Celsius has fully reserved against this receivable on its balance sheet.