

Willow House,
Cricket Square,
Cayman Islands,
KY1 1001

December 19, 2023

RE:    Letter In Support Of: *Joint Motion Of The Debtors And The Committee For Entry Of An Order (I) Approving The Implementation Of The MiningCo Transaction And (II) Granting Related Relief* (the "Joint Motion") [Docket No. 4050] submitted by creditor Simon Dixon and David Kahn on behalf of creditor Bnk To The Future

Dear Chief Judge Glenn,

As a creditor in the Celsius bankruptcy case, with aggregate claims of approximately $20 million (roughly $16 million stemming from my personal account and $4 million from the company I co-founded, Bnk To The Future), I am submitting this letter of support from myself, creditor, and David Kahn on behalf of Bnk To The Future, creditor, in support of the Debtors' and UCC's Joint Motion. Our reasons are as follows:

1. **Delay Could Lead To Significant Losses For Creditors**

Crypto prices have appreciated significantly, which presents a new risk to creditors' recovery. As of the Petition Date, the bankruptcy fixed the value of crypto in dollar terms. However, creditors' losses were crypto losses, *not* dollar losses. At this juncture, creditors may still recover losses (via the appreciation of the remaining crypto)—and could at some point be made "whole" in dollar terms—but increases in value of crypto can never compensate creditors for the actual loss of their crypto assets.

At the beginning of the Chapter 11 process, in my discussions with counsel representing Debtors and the UCC respectively, I reiterated the point that Celsius lost creditor's crypto assets, not dollars. I explained that, from the point of view of creditors, the following must be achieved:

(i)     Celsius' crypto must be retained on the balance sheet;
(ii)    Any appreciation in the price of crypto should accrue to creditors' recovery;
(iii)   If crypto had been liquidated for dollars (as has happened in the FTX and BlockFi bankruptcies), creditors would have lost out on the current 108% recovery in the Bitcoin price since the Petition Date.

At my recommendation, Debtors/UCC argued for crypto to remain on the balance sheet for distribution. However, if the bankruptcy is delayed by re-solicitation, crypto prices could rise to a point where creditors receive 100% "recovery" in dollar terms—which means that the 'surplus' value would accrue to the next subordinated group of creditors. Based on the *Plan Recovery Waterfall* table

DocuSign Envelope ID: 78B6A92E-28B1-491F-B2F5-7583F41A79A6

presented by Alvarez & Marsal, LLC (attached as Exhibit A to Docket No. 4051, page 11), if the price of Bitcoin rises only 25%, or to approximately $54,000/per BTC, the risk will become a reality. As of December 19, 2023, the value of Bitcoin was approximately $42,555.70.

Creditors lost crypto when Celsius went into bankruptcy—we did not lose dollars—and any appreciation of crypto should accrue to creditors, not to the next subordinated group. For the purposes of this bankruptcy, value is measured in dollars, therefore, the only way that creditors can be protected from this kind of loss is by exiting Chapter 11 as quickly as possible. In other words, creditors must exit from Chapter 11 as soon as possible to limit the risk of further losses due to this crypto/dollar pricing arbitrage.

**2. No Viable Alternative And Time Is Of The Essence**

Debtors and the UCC have clarified BRIC's participation in the MiningCo Transaction.[1] As a result, it is clear that BRIC no longer represents a viable alternative to the MiningCo Transaction. No other viable option was presented to the Court. Consequently, we believe that the MiningCo transaction is the only viable path forward for creditors. Further, based on our experience in the crypto market (as one of the first crypto companies in the world and having experienced every crypto boom and bust cycle to date) several very strong drivers of Bitcoin appreciation are driving the entire market, including the highly anticipated approval of spot Bitcoin ETFs expected in Q1 2024 and the Bitcoin halving expected in April 2024. Creditors want to get their crypto as soon as possible and they do not want to wait up to another 6 months for their crypto to be released from Chapter 11 resulting in gains going to the next subordinated class.

**3. Cost Of Re-Solicitation Will Be Harmful To Estate And Creditors**

Re-soliciting the vote will reduce assets that may be distributed to creditors. For example, assuming the re-solicitation process will take up to 6 months, the actual cost of additional legal, procedural and ongoing Estate administrative expenses could average $20 million per month based on the historic costs of (i) professional fees as disclosed in the Fee Examiners Report on 20 November 2023 (doc. 4013), (ii) the Debtors Periodic Report of 19 September(doc. 3495) and (iii) The Debtors' Operating Report for October 2023 (doc.4020)

By contrast, the Ad Hoc Group of Borrowers object to the Joint Motion (*see* Docket No. 4100) on the grounds that, according to the Alvarez & Marsal *Plan Recovery Waterfall* table, under the BRIC OWD proposal (which is now no longer being proposed by BRIC), creditors would receive $175 million more crypto distribution than in the MiningCo transaction. <u>This is incorrect in at least two ways</u>:

    (i)    Post-emergence costs of the BRIC OWD proposal is $88 million *more* than the MiningCo transaction. The BRIC OWD administrative claims will cost $15 million more than the MiningCo transaction. This means that, far from being a $175 million difference, the actual number is $72 million. As explained above, the likely cost to creditors of a re-solicitation process is estimated at $120 million, i.e., representing a **reduction** of distributable crypto in the amount of $48 million. The Ad Hoc Group of

---

[1] *See Supplemental Joint Statement Regarding The Joint Motion Of The Debtors And The Committee For Entry Of An Order (I) Approving The Implementation Of The MiningCo Transaction And (II) Granting Related Relief* [Docket No. 4115].

       Borrowers' objection, if upheld, would result in creditors recovering $48 million **less liquid crypto** than they would from the MiningCo transaction.

(ii)    Under the MiningCo transaction, creditors will receive the full value of the $175 million because this money will go to capitalize MiningCo and drive a stronger valuation for the MiningCo. Taking this into consideration, creditors will **receive $292 million more** value under the MiningCo transaction, of which $48 million would be in the form of liquid crypto.

4. <u>**'Left Pocket, Right Pocket'—Same Value Returned To Creditors**</u>

The Plan confirmed on November 9, 2023 promised that creditors (other than the classes referred to as convenience, custody and some of withhold) would receive distributions of essentially all of the remaining assets of the Celsius estates (less deductions and holdbacks). Such assets comprise the following:

(i)    Liquid Crypto;
(ii)    Mining Assets;
(iii)    Illiquid Assets and Institutional Loans;
(iv)    Litigation Receipts.

Under the MiningCo transactions, the *same* creditors will receive these *same* assets: $175 million of crypto is replaced with $175 million of cash value within MiningCo, *but with a higher equity recovery*, as described above. As a result, there is no material change in what creditors will receive ('left pocket, right pocket')—even if the precise mechanism for distribution is varied.

5. <u>**MiningCo Can Merge With Another Miner Once Public**</u>

Creditors are very focused on recovering more of the value of their crypto and not just the Petition Date dollar value. A second way for creditors to achieve a better recovery is via the possibility of the MiningCo equity. Based on our experience, there are numerous Bitcoin mining firms that aspire to be public companies right now. The potential merger of MiningCo (once public) with such companies could generate more value for creditors if the Board explores these opportunities post-bankruptcy, irrespective of the performance of the current mining company utilizing Celsius mining assets. Even in the event that the SEC does not sanction such a listing, other stock exchanges are increasingly approving public companies involved in Bitcoin mining.

Consequently, if we emerge in January 2024, equity distribution can occur, regardless of the outcome, without impeding crypto distributions *before* Bitcoin potentially hits $54,000. The only way that this may even be imaginable is if MiningCo is well-capitalized, well-managed and well-governed. From the point of view of creditors, MiningCo must be adequately capitalized. Based on our decades-long experience in the global capital markets, $50 million capitalization (as is argued by the Ad Hoc Group of Borrowers in their objection to the motion in Docket No. 4100) is completely inadequate and insufficient to sustain the valuation expectations of creditors. We believe that $225 million capitalization is a far more suitable number and is estimated to drive a stronger valuation performance of the MiningCo after emergence.

Given the factors mentioned above, we advocate for approving the MiningCo plan, enabling an effective date in January. This aligns with our firsthand experiences across all four Bitcoin four-year halving cycles, emphasizing the importance of timing, especially as Bitcoin approaches the potential $54,000 threshold.

### 6. Celsius Should Heed Caution In Light Of Prior Crypto Cases

Finally, I would like to draw to your attention two Bitcoin bankruptcies, which, based upon my experience, are quite similar to the current circumstances of Celsius.

Firstly Mt. Gox, who lost 90% of client Bitcoin when they registered for bankruptcy in Japan in 2014. As Bitcoin's price rose, creditors surpassed the threshold of being fully compensated in USD value. However, with the substantial growth in Bitcoin value, the diminishing quantity of Bitcoin needed for USD full recovery adversely impacted creditors' Bitcoin recoveries. Opportunistically, as the price rose, subordinated creditors started delaying exit to try and pay creditors off in USD and opportunistically come after the creditors estate. Each attempt led to years of delay and eventually creditors were entitled to the same recovery minus all the administrative costs due to long expensive delays significantly harming their recovery.

In stark contrast to Mt. Gox, Bnk To The Future and myself were directly engaged in the recovery of Bitfinex from its hack insolvency in 2016. Bitfinex distributed crypto swiftly prior to the 2017 Bitcoin bull market and even though creditors settled on a USD haircut, the price increase in crypto was distributed before creditors were made 100% whole and it led to the most successful recovery from insolvency in Bitcoin company history.

Drawing from our experience in both cases, we wish to underscore to the Court the relevance of our insights in determining the best course for Celsius creditors at this juncture in the case. With direct experience of Bitcoin's four-year cycles, traditional investment banking, and Bitcoin company restructuring, we firmly believe that the MiningCo transaction stands as the sole viable path for creditors at this stage, offering the most favorable recovery given the proposed exit timing in the Bitcoin cycle. We find no substantial adverse impact for creditors in the MiningCo transaction and hold a strong conviction that any re-solicitation, aside from being entirely unnecessary, would significantly jeopardize the recovery for all creditors.

---

Ultimately, this Court's approval of the relief sought in the Joint Motion is in the best interests of creditors at this stage in the bankruptcy and Bitcoin cycle. I am in support of implementing the MiningCo transaction, which proves more advantageous for creditors than moving to a re-vote. Pursuing a re-vote poses a risk to a substantial portion of our recovery due to potential cryptocurrency price fluctuations and additional legal/administrative expenses—which will result in approval in the same plan, but with far greater costs imposed on creditors without any benefit.

Respectfully submitted,

*[DocuSigned by: signature, CC7C264C349E42E...]*

Simon Dixon, Creditor

*[DocuSigned by: David Kahn, 27F2803A0052498...]*

David Kahn, on behalf of Bnk To The Future, Creditor

Biography:

**Simon Dixon** has worked in financial services and investment banking (including corporate finance) since 2004. In 2011, Mr. Dixon co-founded the longest standing regulated Bitcoin corporate finance and investment platform, serving as its CEO ever since. His expertise spans M&A, public offerings, corporate finance, and bankruptcy restructurings within the Bitcoin sector, including notable entities like BitFinex, Coinbase, Kraken, Circle, Robinhood, Ripple Labs, and over 100 other transactions. Additionally, Mr. Dixon hold a master's degree in economics from the University of Manchester, complemented by various professional financial qualifications.

**David Kahn** is Head of Investment Banking at Bnk To The Future where he has worked for the past two years including on the Celsius bankruptcy. Dr. Kahn is a seasoned investment banker and corporate finance expert with a career spanning three decades. Dr. Kahn worked at the global investment bank, Rothschild & Co, for 18 years and as an independent corporate financial adviser for 12 years. Dr. Kahn has advised hundreds of corporate and government clients on a wide range of corporate financial transactions all over the world including mergers and acquisitions and public and private capital markets transactions (including IPOs, secondary offers, rights issues, financings and restructurings) amounting to over $100 billion in transaction value. Dr. Kahn has also served as a regulated valuation expert on several occasions. Dr. Kahn holds a D.Phil degree from the University of Oxford.