# EXHIBIT A

# PLAN TERM SHEET

*In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG)

PLAN TREATMENT TERM SHEET REGARDING CLAIMS AND OBLIGATIONS OF RETAIL BORROWERS AND GENERAL EARN CLAIMS

This term sheet (the "**Term Sheet**") is presented in connection with the mediation of the treatment of Retail Borrow Deposit Claims and General Earn Claims in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (the "**Plan**") proposed by Celsius Network LLC and its affiliated debtors (the "**Debtors**") in the jointly-administered cases styled *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (the "**Chapter 11 Cases**").[1]

This term sheet contains certain material terms and conditions concerning a framework for a proposed settlement and treatment of the claims and obligations of individual account holders (the "**Retail Borrowers**") with outstanding obligations (each, a "**Retail Advance Obligation**") with respect to advances made by the Debtors in connection with the Debtors' Borrow program as of July 13, 2022 (the "**Petition Date**") and individual account holders with outstanding obligations in connection with the Debtors' Earn program as of July 13, 2022.

This Term Sheet is being provided for negotiation purposes only and does not address all terms, conditions, or other provisions that would be required in connection with the Plan, which terms shall be set forth in the Plan, which is subject to further negotiation between the parties. This term sheet is not an offer and is subject to definitive documentation in all respects.

THIS TERM SHEET IS NOT AN OFFER, ACCEPTANCE OR SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS, OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER, ACCEPTANCE OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE LAW, INCLUDING SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE TO THE EXTENT APPLICABLE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE CONFIRMATION OF THE PROPOSED PLAN (AND THEN ONLY AS PROVIDED THEREIN), AS APPLICABLE, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

| TERMS | |
|---|---|
| *Plan Treatment of Non-Contract Claims Associated with the Earn and Borrow Accounts* | The Debtors and the Committee shall enter into a settlement agreement resolving the Committee Class Claim and Class Certification Motion (the "Class Claim Settlement"), which shall Allow a Claim for each Account Holder who does not opt out of the Class Claim Settlement against each Debtor entity on account of their contract claims and non-contract claims as follows: <br><br> All holders of Account Holder Claims other than Custody Claims shall receive, in lieu of any scheduled claim or a proof of claim, 105% of the scheduled amount of such Claim as the same type of Account Holder Claim |

---

[1] Where context requires, capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

1

| | |
|---|---|
| | (*e.g.*, a General Earn Claim for $10,000 shall receive a General Earn Claim in an amount of $10,500 or a Retail Borrower Deposit Claim for $10,000 shall receive a Retail Borrower Deposit Claim for $10,500) (the "Settlement Claim"). |
| | Each Account Holder shall receive notice and an opportunity to opt out of the Class Claim Settlement. |
| | Any applicable scheduled claim or filed claim relating to any Account Holder who does not opt out of the Class Claim Settlement shall be deemed amended consistent with the foregoing. |
| | For the avoidance of doubt, no Account Holder may receive value under the Plan that exceeds the amount of their Settlement Claim. |
| | The Class Claim Settlement (other than Claims based on CEL Token) will resolve any argument that any damage claim on account of the Earn or Borrow program is subject to subordination pursuant to section 510(b) of the Bankruptcy Code. |
| | The Earn Ad Hoc Group, Borrower Ad Hoc Group, Mr. Tuganov, Mr. Hermann, Mr. Crews, and Mr. Frishberg shall support the Class Claim Settlement. |
| ***Calculation of Retail Deposit Claims and General Earn Claims*** | All Retail Deposit Claims and General Earn Claims, except for any such claims associated with CEL Token, shall be calculated by converting the value of the Claim into Cash as of the Petition Date using the conversion rates provided in the Cryptocurrency Conversion Table [Dkt. No. 1420]. CEL Token shall be valued as provided in Article IV.B.2. |
| ***Treatment of Retail Deposit Claim*** | The Plan will be amended to provide Holders of Retail Borrower Deposit Claims the following treatment in full and final satisfaction of such Retail Borrower Deposit Claims, including, without limitation, dismissal with prejudice of the adversary proceeding brought by the Ad Hoc Group of Borrowers and participating *pro se* account holders: |
| | o **Optional Repayment of Retail Advance Obligation**: |
| | A Retail Borrower must elect on its ballot whether it intends to repay its Retail Advance Obligation. To the extent a Retail Borrower makes such election and repays its Retail Advance Obligation on the terms set forth below, the Debtors shall pay an amount of BTC or ETH (at the Retail Borrower's election) equivalent to the Retail Advance Obligation repaid with such amount of BTC or ETH valued as of Noon ET on such date based on prices on a cryptocurrency exchange agreed upon by the Debtors and the Ad Hoc Group of Borrowers. |
| | The Debtors shall email a notice of the projected Effective Date to all Retail Borrowers at least thirty (30) calendar days prior to such Effective Date and provide each such Retail Borrower with instructions on how to repay the applicable Retail Advance Obligation. |

2

If a Retail Borrower elects to repay its Retail Advance Obligation, it must do so no later than five (5) calendar days prior to the projected Effective Date.

To the extent a Retail Borrower elects to repay its Retail Advance Obligation, but does not repay such obligation no later than five (5) calendar days prior to the projected Effective Date, the applicable Retail Borrower's Retail Advance Obligation shall be set off against the Retail Borrower Deposit Claim. The difference between the Retail Borrower Deposit Claim and the Retail Advance Obligation, is referred to herein as the "**Retail Borrower Excess Claim.**"

o **Treatment**: On the Effective Date, a Retail Borrower shall receive:

A. Either:

1. If the Retail Borrower repays its Retail Advance Obligation, an amount of BTC or ETH (at the Retail Borrower's election) equal to the Repayment Amount; *or*
2. If the Retail Borrower elects to not repay or fails to repay its Retail Advance Obligation, such Retail Advance Obligation shall be set off against the Retail Borrower Deposit Claim (*i.e.* the Retail Borrower Deposit Claim shall be reduced by the amount of the Retail Advance Obligation); *plus*

B. On account of the Retail Borrower Excess Claim, subject to a redistribution of consideration to accommodate Unsecured Claim Distribution Mix Elections, in an amount such that the Retail Borrower receives its pro rata amount of the Unsecured Claim Distribution Consideration (*i.e.* (i) the Liquid Cryptocurrency Distribution Amount, (ii) Litigation Proceeds, and (iii) 100% of NewCo Common Stock (subject to dilution by the Management Equity Compensation); *provided,* that any election to Liquid Cryptocurrency Weighed Distribution Election shall be given priority over all other such elections.

C. In exchange for the agreements herein, the parties acknowledge that any obligation of the Borrowers to pay any amount on account of interest owed to the Debtors on account of the applicable Retail Advance Obligation for the duration of these Chapter 11 Cases is waived.

D. All recoveries on account of a Retail Borrower Deposit Claim shall be capped at 100% of such Claim.

3

| | |
|---|---|
| ***General Earn Claim Treatment*** | The Plan will be amended to provide Holders of General Earn Claims the following treatment in full and final satisfaction of such General Earn Claims:<br><br>**Treatment**: Subject to a redistribution of consideration to accommodate Unsecured Claim Distribution Mix Elections, each Holder of an Allowed General Earn Claim shall receive its pro rata share of the Unsecured Claim Distribution. |
| ***Substantive Consolidation*** | The Plan shall be amended to provide for the substantive consolidation of Celsius Network LLC, Celsius Network Limited, Celsius Lending LLC, and Celsius Networks Lending LLC. |
| ***Outstanding Adversary Proceedings*** | Following the execution of the Restructuring Support Agreements described below, the parties shall stay all deadlines related to the adversary proceedings filed by the Ad Hoc Group of Borrowers, Mr. Tuganov, Mr. Herrmann, and Mr. Frishberg; and Mr. Frishberg and Mr. Hermann's appeal of the Customer Claims Opinion and Order (the "Outstanding Litigation"). Upon the occurrence of the Effective Date, the Outstanding Litigation shall be dismissed with prejudice. |
| ***Restructuring Support Agreements*** | The Ad Hoc Group of Borrowers, Ad Hoc Group of Earn Holders, Mr. Tuganov, Mr. Herrmann, Mr. Frishberg and Mr. Crews shall execute a Restructuring Support Agreement to support the Plan (as amended in accordance with this term sheet) and not take any actions inconsistent with such support. The parties recognize that any Restructuring Support Agreement executed by an ad hoc group does not bind any individual members in such group other than the signatories. |
| ***Tax Matters*** | The parties agree to use commercially reasonable efforts to structure the transaction in a tax efficient manner for Earn and Borrow creditors. |
| ***Plan Supplement*** | The Debtors shall provide the Ad Hoc Group of Earn Holders, Mr. Tuganov, and Ad Hoc Group of Borrowers with copies of the governance documents for NewCo prior to the filing of the Plan Supplement. |
| ***Definitions*** | "*Distribution Valuation Table*" means the conversion table the Debtors shall use to calculate the amount of any Cryptocurrency a Holder of an Allowed Claim (other than Custody Claims) shall receive under the Plan, which table shall contain applicable Cryptocurrency prices as of a date agreed by the Debtors and the Committee, which date is expected to be approximately fifteen (15) days prior to the anticipated Effective Date.<br><br>"*Liquid Cryptocurrency Distribution Amount*" means the amount of Liquid Cryptocurrency to be distributed as part of the Unsecured Claim Distribution Consideration, which shall be an amount equal to the total value of Liquid Cryptocurrency held by the Debtors on the Effective Date less, without duplication: (a) distributions to (or reserves for) Holders of Allowed Convenience Class Claims, Allowed Custody Claims, and Allowed Withhold Claims; (b) the NewCo Capitalization Amount; (c) amounts liquidated to fund the Professional Fee Escrow Account; (d) the Initial Litigation Funding |

Amount; (e) Cash needed at emergence (pre-transaction items); and (f) Cryptocurrency in an amount equal to the Senior Claims Amount. The Committee, in consultation with the Debtors, shall have the discretion to adjust the Liquid Cryptocurrency Distribution Amount downward based upon the amount of aggregate Unsecured Claim Distribution Mix Elections, the status and funding of the Litigation Recovery Account, or any other factors affecting the evaluation or liquidity of the assets anticipated to be transferred to NewCo and/or its subsidiaries on the Effective Date of the Plan.

"*Litigation Proceeds*" means the proceeds of the Recovery Causes of Action.

"*Liquid Cryptocurrency*" means the types of Cryptocurrency to be distributed to Holders of Claims pursuant to this Plan, which may include: (a) BTC and (b) ETH.

"*NewCo Equity*" means shares of common stock in NewCo to be distributed on the Effective Date in accordance with the terms hereof, representing each such Holder's common equity interest in NewCo.

"*Recovery Causes of Action*" means, to the extent not expressly released pursuant to the terms of the Plan or the Confirmation Order, any (a) Causes of Action that the Debtors or their Estates may have that are based on or related to actions taken by, or omissions of, any Excluded Party or any other Person or Entity that is not a Released Party in connection with the management or affairs of the Debtors prior to or after the filing of the Chapter 11 Cases and (b) Avoidance Actions. For the avoidance of doubt, the Recovery Causes of Action shall include (x) those Causes of Action identified in (i) the complaint attached as Exhibit 2 to the UCC Claims Stipulation Motion and Roni Cohen-Pavon and (ii) the Schedule of Additional Recovery Causes of Action, (y) the Contributed Claims, and (z) any additional Causes of Action determined to be included by the Court and described in the Confirmation Order.

"*Retail Advance Obligation*" means any claim of the Debtors against a Retail Borrower with respect to advances made by the Debtors in connection with the Debtors' Borrow Program as of the Petition Date.

"*Retail Borrower Deposit Claim*" means a Retail Borrower's Claim against the Debtors on account of the Cryptocurrency such Retail Borrower transferred in connection with its Retail Advance Obligation(s).

"*Retail Borrower Post-Set Off Claim*" means the amount of the Retail Borrower Deposit Claim remaining after the set off or repayment of the Retail Advance Obligation as set forth in this term sheet.

"*Unsecured Claim Distribution Consideration*" means (i) the Liquid Cryptocurrency Distribution Amount, (ii) Litigation Proceeds, and (iii) 100% of the NewCo Equity (subject to dilution by the Management Equity Compensation).

| | |
|---|---|
| *Expense Reimbursement* | The Plan shall be amended to provide for the payment of expense reimbursement for reasonable and documented expenses and legal fees incurred by the Ad Hoc Group of Earn Account Holders, the Ad Hoc Group of Borrowers, the participating *pro se* claimants in their individual capacities, and Ignat Tuganov, under Section 503(b)(3)(D) of the Bankruptcy Code as consideration, in part, for the settlement of the relevant adversary proceedings and the appeal as provided herein, participation in the mediation, their role as class representative, and other contributions to the case as applicable. |
| *Governance* | The Ad Hoc Group of Earn Account Holders and the Ad Hoc Group of Borrowers shall each appoint one member of the Litigation Oversight Committee and Avoidance Action Subcommittee, which shall be subject to the consent of the Committee. |
| *Reservation of Rights* | The Ad Hoc Group of Earn Account Holders, the Ad Hoc Group of Borrowers, the participating *pro se* claimants in their individual capacities, and Ignat Tuganov shall be consulted prior to the execution of the Plan wind-down "toggle."<br><br>The class representatives in the class action, the Earn Ad Hoc Group, and Borrower Ad Hoc Group (including their members and Related Parties) shall be added as Released Parties and Exculpated Parties under the Plan. |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

Celsius Network LLC and its Affiliated Debtors

By: Christopher Ferraro

The Official Committee of Unsecured Creditors

By: Thomas DiFiore

**Ad Hoc Group of Borrowers**

By: Veton Vejseli

**Ad Hoc Group Earn Group**

By: Joyce Kuhns, Esq.

Ignat Tuganov

By: Jeffrey Sabin, Esq.

7

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

Cameron Crews

_____
By: Cameron Crews

Daniel Frishberg

_____
By: Daniel Frishberg

IMMANUEL HERRMANN

_____