**Hearing Date:  January 11, 2024, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  January 4, 2024, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF HEARING ON
## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING AND APPROVING CERTAIN FEES AND
## EXPENSES FOR THE BRIC IN CONNECTION WITH THE IMPLEMENTATION
## OF THE MININGCO TRANSACTION, AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order*

*(I) Authorizing and Approving Certain Fees and Expenses for the BRIC in Connection with the*

*Implementation of the MiningCo Transaction, and (II) Granting Related Relief* (the "Motion") will

be held on **January 11, 2024, at 10:00 a.m., prevailing Eastern Time** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on

January 11, 2024, at 10:00 a.m., prevailing Eastern Time.  The hearing will be held in person

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States

Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One

Bowling Green, New York, New York 10004-1408.  With the permission of the Court, only parties

in interest, their attorneys and witnesses may attend hearings by Zoom at which evidence is

expected to be presented.  Any person or entity that is permitted to attend the hearing by Zoom

must certify that they are appearing in a permitted capacity by registering their appearance in the

Electronic        Appearance        portal        located        on        the        Court's        website        at:

http://www.nysb.uscourts.gov/ecourt-appearances.  Appearances must be entered no later than

4:00 p.m., the business day before the hearing, prevailing Eastern Time.

The public, including members of the media, may only attend evidentiary hearings in the

courthouse, not remotely.  This change in practice regarding evidentiary hearings reflects the

policies  of  the  Judicial  Conference  of  the  United  States  that  became  effective  on

September 22, 2023.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected

participants in the Hearing and the Court's security requirements for participating in a Zoom for

Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m.,

prevailing Eastern Time on January 11, 2024, must connect to the Hearing beginning at 9:00 a.m.,

prevailing Eastern Time on January 11, 2024.  When parties sign in to Zoom for Government and

add their names, they must type in the first and last name that will be used to identify them at the

Hearing.  Parties that type in only their first name, a nickname or initials will not be admitted into

the Hearing.  When seeking to connect for either audio or video participation in a Zoom for

Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to

connect.  Court personnel will admit each person to the Hearing from the Waiting Room after

confirming the person's name (and telephone number, if a telephone is used to connect) with their

eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **January 4, 2024, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: December 20, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:            patrick.nash@kirkland.com
                     ross.kwasteniet@kirkland.com
                     chris.koenig@kirkland.com
                     dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING CERTAIN FEES AND EXPENSES**
**FOR THE BRIC IN CONNECTION WITH THE IMPLEMENTATION OF**
**THE MININGCO TRANSACTION, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):

**Preliminary Statement**[2]

1.    At the discovery conference on December 13, 2023, the Debtors informed the Court

that they and the Committee reached an agreement to appoint the BRIC as a Litigation

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the: *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "Wind Down Motion"), the *Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Plan"); *Supplemental Joint Statement*

Administrator under the Plan (the "Complex Asset Recovery Manager" or "ARM") to monetize certain of the Debtors' illiquid assets and certain claims and causes of action against the Debtors' estates (the "ARM Term Sheet"), the material terms of which are attached hereto as **Exhibit B**.[3] A summary of the key terms is set forth below:

| Key Terms of ARM Term Sheet | |
| --- | --- |
| **Plan Administrator** | Christopher Ferraro will serve as the Plan Administrator as set forth in further detail below. |
| **Oversight of ARM** | The Litigation Oversight Committee will oversee the ARM. The composition of the Litigation Oversight Committee shall remain as contemplated in the Plan and Confirmation Order. |
| | BRIC shall propose candidates to be considered by the Litigation Oversight Committee for the final spot on the Litigation Oversight Committee, among any other candidates the Litigation Oversight Committee may elect to consider. |
| | The ARM shall be overseen by an "ARM Oversight Sub-Committee" which shall be comprised of Gerard Uzzi and two other members of the Litigation Oversight Committee to be determined by the Litigation Oversight Committee in consultation with the BRIC. |
| | The ARM Oversight Sub-Committee shall oversee the ARM and its management of the Illiquid Assets and BRIC Litigation Assets, and shall provide regular reports to the Litigation Oversight Committee. |

---

*Regarding the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4115] (the "Supplemental Statement"); *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"); and ARM Term Sheet (as defined herein), as applicable.

[3]   The ARM Term Sheet provides a summary of the material terms contained in the agreement with the BRIC, which will be filed as part of the Plan Supplement.  To the extent there are any conflicts between the summary of key terms in the Motion, the ARM Term Sheet attached hereto as **Exhibit B**, and the agreement with the BRIC included in the Plan Supplement, the terms of the Plan Supplement shall govern.

| Key Terms of ARM Term Sheet | |
|---|---|
| **Access to Resources** | The Litigation Oversight Committee shall ensure that the ARM has reasonable and timely access to the Company's books, records, accounts, and other resources as contemplated herein to facilitate the administration of its duties.  Any requests for information by the ARM to the Plan Administrator shall be made through Robert Campagna, Samuel Schreiber, or another person designated by the Debtors or the Plan Administrator prior to or on the Effective Date (such person, the "Gatekeeper").  The Gatekeeper will use reasonable efforts to respond to such information requests, including providing reasonable access to employees, as appropriate, to facilitate an efficient complex assets recovery process and litigation recovery process.  Any dispute regarding access set forth in this paragraph shall be resolved by the Litigation Oversight Committee, excluding any member proposed by the BRIC for the final spot on the Litigation Oversight Committee.  The Plan Administrator shall select any successor Gatekeeper.<br><br>The Plan Administrator shall have direct and sole management and oversight of Wind Down Estate employment and retention matters.  Interested parties (including the Litigation Oversight Committee and each Litigation Administrator) shall receive notice of any proposed terminations of employees and consultants.  For the avoidance of doubt, any Celsius employee who is employed by the estates post-emergence shall report to the Plan Administrator, provided that the Litigation Oversight Committee shall have the ability to resolve disputes regarding the ARM's or other Litigation Administrator's reasonable access to employees.<br><br>The Litigation Oversight Committee will approve a comprehensive budget for BRIC, as Litigation Administrator (ARM), to engage counsel and experts, and manage the Illiquid Assets.  For the avoidance of doubt, the budget shall exclude Financial Advisors retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by the BRIC.  If such Financial Advisors are retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by BRIC, such costs shall be borne solely by the BRIC and not the Debtors' estates. |

| Key Terms of ARM Term Sheet | |
|---|---|
| **Illiquid Assets** | The BRIC, in its capacity as ARM, will manage the monetization of all of the illiquid assets listed in the schedule attached to the ARM Term Sheet, including the "Illiquid Assets Subject to Incentive Fees" and the "Illiquid Assets Not Subject to Incentive Fees." The value of the Mawson asset to be allocated to the ARM shall include only the Mawson note and not the claims arising under the Mawson Co-Location Agreement (including for return of the deposit), which agreement and deposit rights are property of MiningCo. The litigation with respect to Mawson shall be overseen by the ARM. The Litigation Oversight Committee and the MiningCo Board shall have joint authority to direct the litigation and resolution of such litigation. The ARM shall only earn its incentive fee on the portion of any recovery associated with the Mawson note and not rights asserted under the Co-Location Agreement, and any dispute as to allocation of litigation proceeds shall be resolved by the Bankruptcy Court.<br><br>The Litigation Oversight Committee shall have the sole authority to designate Illiquid Assets as subject to Incentive Fees in addition to those set forth as "Illiquid Assets Subject to Incentive Fees."<br><br>For the avoidance of doubt, those assets currently identified as "Illiquid Assets Subject to Incentive Fees" shall not be changed.<br><br>All illiquid assets within the Estates (but not causes of actions other than the causes of action identified as "Litigation Assets" in the section immediately below this one) not identified on the schedule attached to the ARM Term Sheet will be discussed in good faith between the Litigation Oversight Committee and the ARM to determine whether they should be designated as additional "Illiquid Assets Subject to Incentive Fees" or "Illiquid Assets Not Subject to Incentive Fees," all subject to the sole discretion of the Litigation Oversight Committee.<br><br>Furthermore, to the extent that an asset designated as "Illiquid Assets Not Subject to Incentive Fees" requires active management and workout activities more akin to the Illiquid Assets Subject to Incentive Fees, the Litigation Oversight Committee shall have the authority to change such designation to be subject to Incentive Fees.<br><br>The ARM shall be required to consult with the ARM Oversight Sub-Committee on a periodic basis regarding whether to monetize Illiquid Assets Subject to Incentive Fees that would result in a recovery below the market "pro forma" value in the schedule attached to the ARM Term Sheet. |
| **Litigation Assets** | As part of its role as ARM, BRIC will be designated as a Litigation Administrator under the Plan solely with respect to (a) potential claims and causes of action related to the Debtors' pre-bankruptcy activities against the Debtors' professionals who |

| Key Terms of ARM Term Sheet | |
|---|---|
| | are Excluded Parties under the Plan (those claims will be set forth on a schedule to BRIC's agreement and are envisioned to include, but not be limited to potential claims and causes of action against accountants, attorneys, and other advisors, such as Chainalysis, that were not released under the Plan) and (b) Retained Causes of Action solely as follows:: |
| | (i) BRIC shall be the Litigation Administrator for all Causes of Action related to Illiquid Assets (e.g., loan defaults related to illiquid assets, illiquid mining assets, etc., but not all claims related to counterparties with institutional loans, whereby such claims are not related to such institutional loans. |
| | (ii) Additionally, BRIC shall be the Litigation Administrator for the BitMEX and Tether Claims. |
| | The Litigation Oversight Committee will approve a budget for BRIC, as a Litigation Administrator, to engage counsel and experts (but not financial advisors) and manage the above-described litigation. |
| **Liquid Distributions** | The Debtors will appoint Christopher Ferraro as the Plan Administrator for a five-year term.  Mr. Ferraro will work with the Distribution Agents to make initial and subsequent distributions under the Plan to creditors (including liquid cryptocurrency) and be compensated as agreed between the Debtors, the Committee, and Mr. Ferraro. |
| | If Mr. Ferraro resigns as Plan Administrator prior to the completion of his duties (including all distributions under the Plan), the Litigation Oversight Committee shall select the successor Plan Administrator |
| **Economics** | *Fixed Fee:* Commencing on the Effective Date, a cash fee of $5,000,000 per year for 3 years (to be paid monthly in equal installments beginning on the Effective Date), subject to any extension that may be approved by the Litigation Oversight Committee on compensation set by the Litigation Oversight Committee at the time of such extension. |
| | The justification for the ARM's fixed fee is in part that the ARM will use its own team to do much of the work that would be outsourced by the other Litigation Administrator, including the hiring of financial advisors on an hourly basis.  When the Litigation Oversight Committee sets a budget for the ARM, as set forth above, this will be taken into account and such budget will not include line items for financial advisors (and if a financial advisor is hired by the ARM, it will be paid for solely by the ARM). |
| | *Recovery Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 10% of value realized in respect of each asset |

| Key Terms of ARM Term Sheet |
|---|

| | designated as among the Illiquid Assets Subject to Incentive Fees in excess of the current marked value on the schedule attached to the ARM Term Sheet in the column labeled "pro forma" value, paid promptly to the ARM upon such monetization event from the proceeds of such monetization event. |
|---|---|
| | *Litigation Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 5% of value realized (*i.e.* Net Recovered Proceeds)[4] in respect of litigation actions managed by BRIC as Litigation Administrator, paid promptly to the ARM upon such monetization event and from the proceeds of such monetization event; and, for the avoidance of doubt, excluding any Illiquid Assets Subject to Incentive Fees. |
| | At any meeting of the Litigation Oversight Committee, the ARM may present a progress report and the Litigation Oversight Committee may determine, in its sole and absolute discretion, that substantial efforts have been expended by BRIC towards the monetization or resolution of any particular asset or cause of action, and authorize the vesting of a partial Recovery Incentive Fee or Litigation Incentive Fee to be paid promptly to the ARM upon a monetization event of such asset or cause of action, from the proceeds of such monetization event, notwithstanding whether the BRIC is subsequently terminated without cause. |
| | The net effect to the proposed Plan Administration Budget will be neutral with the Plan Administrator and Litigation Administrator Budgets reduced as follows, and such amounts budgeted to account for the $15 million in flat fees to be paid to the BRIC: <br><br> • The initial Plan Administrator Budget reduced to $70 million (from $75 million) <br><br> • The initial Litigation Trust Funding Amount shall be reduced to $40 million (from $50 million) |

---

[4] As defined in the ARM Term Sheet, "Net Recovered Proceeds" means recoveries from causes of action overseen by the BRIC as Litigation Administrator, net of (1) contingency or similar payments to law firms or other professionals retained by BRIC as Litigation Administrator on each such cause of action and (2) any other fees and expenses incurred in the prosecution, management, or settlement of each respective cause of action by BRIC as Litigation Administrator.

| Key Terms of ARM Term Sheet | |
|---|---|
| **Exculpation** | BRIC shall be exculpated with respect to any potential liability in connection with any actions taken, including distributions, by the Plan Administrator and the other Litigation Administrator. The Plan Administrator and the Litigation Administrator shall be exculpated with respect to any potential liability in connection with actions taken by the BRIC in the course of their duties as Litigation Administrator (ARM). |

2.      The Debtors, in consultation with the Committee, selected the BRIC as the Backup Plan Sponsor to ensure the Debtors would be ready in the case of an Orderly Wind Down, in which case the BRIC would serve as the Plan Administrator as contemplated in the Plan.  As the Debtors ultimately were not able to consummate the NewCo Transaction, the need for a Backup Plan Sponsor became pressing.  Nevertheless, the scope of services contemplated by the Backup Plan Sponsor Agreement did not envision the progress the Debtors would make over the last six months monetizing certain Illiquid Assets.  The ARM Term Sheet closes this gap by narrowing the scope of services to be provided by the BRIC under the MiningCo Transaction.  In comparison to the Backup Plan Sponsor Agreement, where the BRIC would have received a minimum of $46 million in fixed annual fees to serve as Plan Administrator (not including incentive fees), under the ARM Term Sheet, the BRIC will be entitled to a maximum of $15 million in fixed annual fees, plus reduced incentive fees.  Moreover, the fixed annual fees are ***not*** incremental to the Debtors' Estates:  rather, to fund the fees under the ARM Term Sheet, the current Litigation Administration Budget is being reduced by $10 million, and the current Plan Administration Budget is being reduced by $5 million.

3.      The Debtors and the Committee have determined that the BRIC should be appointed as ARM, overseeing the monetizing and disposition of the Illiquid Assets and Litigation Assets, for the same reasons they selected the BRIC as the Backup Plan Sponsor:  the BRIC's principals have unique capabilities and expertise monetizing and disposing of illiquid assets.

Moreover, as a result of the BRIC's involvement in these chapter 11 cases, the BRIC is highly familiar with the Debtors' illiquid assets. The BRIC's engagement with the Debtors and their advisors over the last six months has significantly helped the Debtors' estates and management prepare for the MiningCo Transaction and makes the BRIC uniquely qualified to serve as a Litigation Administrator. Furthermore, as described in <u>Article III.CC</u> of the Disclosure Statement, the Committee is authorized under the Plan to appoint one or multiple Litigation Administrators with different scopes of responsibility.

4.     In consideration for the BRIC's commitment to serve as the ARM, and the substantial time, effort, and resources the BRIC has expended and will continue to expend in assisting the Debtors to implement the MiningCo Transaction, the Debtors have agreed to pay the BRIC's reasonable and documented out-of-pocket fees and expenses (the "<u>Expense Reimbursement</u>"). Specifically, pursuant to the terms of the ARM Term Sheet, the Debtors will pay the BRIC's reasonable and documented out-of-pocket fees and expenses, including the fees and expenses of the BRIC's counsel Willkie Farr & Gallagher LLP and Quinn Emanuel LLP ("<u>QE</u>"); *provided* that QE's reimbursable fees and expenses shall not exceed $500,000. Importantly, the Debtors would have been required to pay the reasonable and documented fees and expenses incurred by the BRIC were the Debtors and the Committee to toggle to the Orderly Wind Down.[5]

5.     The Expense Reimbursement is an integral part of the ARM Term Sheet and the BRIC's willingness to serve as ARM. Moreover, the BRIC made clear that it would not be willing to serve as ARM absent the Expense Reimbursement. Accordingly, paying the Expense

---

[5]     *See Order (I) Authorizing and Approving Certain Fees and Expenses for the Backup Plan Sponsor, and (II) Granting Related Relief* [Docket No. 3057] at ¶   ("The Debtors are authorized to pay in cash or by wire transfer . . . the Expense Reimbursement.").

Reimbursement is in the best interest of the Debtors' estates and should be approved as a sound exercises of the Debtors' business judgment.

## Relief Requested

6.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing and approving certain fees and expenses for the BRIC, and (b) granting related relief.

## Jurisdiction and Venue

7.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 503(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York.

## Basis for Relief

**I.      The Relief Requested Is In the Best Interests of the Debtors' Estates and Their Creditors and Should Be Approved.**

10.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  In this district, "[t]he standard used for judicial

approval of the use of estate property outside of the ordinary course of business is [] the business judgment of the debtor." *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 464 (Bankr. S.D.N.Y. 2014) (citing *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003)). The "business judgement rule" is not an unduly strict standard; it merely requires showing that a decision was based on the debtor's sound business judgement. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for under section 363(b) of the Bankruptcy Code is "good business reason"); *see also Glob. Crossing Ltd.*, 295 B.R at 743 (Bankr. S.D.N.Y. 2003). The business judgement rule also shields a debtor's decision from second guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (noting a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to a debtor's conduct after a reasonable basis is set forth); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (stating "the business judgement rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company," and has continued applicability in bankruptcy) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

11.     The ARM Term Sheet and Expense Reimbursement are in the best interest of the Debtors' estates. The BRIC is well-qualified to monetize the Illiquid Assets and Litigation Assets (each as defined in the ARM Term Sheet). As described in the Disclosure Statement, the Debtors originally selected the BRIC as the Backup Plan Sponsor because of the BRIC's experience and unique capabilities monetizing complex and illiquid assets. For that reason, the Debtors and the

Committee believe that securing the BRIC as ARM is in the best interest of the Debtors' estates. Furthermore, given the BRIC's involvement throughout these chapter 11 cases and familiarity with the Debtors' Illiquid Assets, the BRIC is uniquely positioned to return value to the Debtors' creditors in a value-maximizing and timely manner.

12.    The Expense Reimbursement was a material inducement for, and a condition of, the BRIC's agreeing to the terms of the ARM Term Sheet. Absent the Debtors' agreement to pay such amounts, the BRIC would not have been willing to agree to the ARM Term Sheet. Accordingly, the Expense Reimbursement is in the best interest of the Debtors' estates.

## II.    Paying the Expense Reimbursement Is a Sound Exercise of the Debtors' Business Judgment.

13.    Courts in this District regularly approve the payment of fees that secure value-maximizing transactions for the estate (*e.g.*, in connection with backstop agreements) under the business judgement rule.  *See, e.g.*, *In re Stearns Holdings, LLC*, Case No. 19-12226 (SCC) (Bankr. S.D.N.Y. Sept. 26, 2019) (authorizing entry into a postpetition restructuring support agreement and payment by the debtors of all reasonable and documented fees and expenses incurred by certain restructuring support parties); *In re Aegean Marine Petroleum Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 15, 2019) (same); *In re AOG Entm't, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 29, 2016) (same); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (S.D.N.Y. May 12, 2020) (approving the debtors' reimbursement of fees and expenses incurred by backstop parties as part of debtors' rights offering); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 6, 2017) (same); *see also Integrated Res.*, 147 B.R. at 657 (applying "business judgment rule" standard in context of bid incentive and focusing analysis on following questions:  "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than

11

encourage, bidding; [and] (3) is the amount of the fee unreasonable relative to the proposed purchase price?"); *Genco Shipping & Trading Ltd.*, 509 B.R. at 465; *Metaldyne Corp.*, 409 B.R. at 670.

14.  ***First***, the BRIC has agreed to serve as a Litigation Administrator under the Plan pursuant to which it will monetize some of the Debtors' most complex illiquid and litigation assets. To date, the BRIC has spent hundreds of hours preparing for the possibility of the Orderly Wind Down.  In light of the BRIC's continued efforts and the substantial resources the BRIC has expended in agreeing to the ARM Term Sheet and will continue to expend as the BRIC prepares to serve as a Litigation Administrator, payment of the Expense Reimbursement is necessary to ensure the Debtors are prepared to efficiently maximize the value of their estates.  Furthermore, the Expense Reimbursement can be viewed as a replacement for the expense reimbursement that BRIC was entitled to under the Backup Plan Sponsor Agreement.  Under the terms of the Backup Plan Sponsor Agreement, the BRIC would have been entitled to the uncapped reimbursement of its reasonable and documented fees and expenses upon the Debtors pivot to the Orderly Wind Down.  That expense reimbursement provided significant value to the Debtors' estates by allowing the Debtors to benefit from the BRIC's continued engagement.  While the Debtors and Committee have terminated the Backup Plan Sponsor Agreement, the Debtors and the Committee believe that the Expense Reimbursement under the ARM Term Sheet serves a similar function—ensuring that the BRIC is able to make the necessary preparations prior to emergence so that value is returned to creditors as quickly and efficiently as possible.

15.  ***Second***, the Expense Reimbursement is the product of good faith, arm's-length negotiations among the Debtors, the Committee, and the BRIC, and each party's respective advisors.  The BRIC has made clear that it would be unwilling to serve as a Litigation Administrator absent the Expense Reimbursement.  The Debtors and the BRIC are wholly

unrelated, sharing no officers, directors, shareholders, incorporators, employees, or economic interests—other than as embodied in these transactions—in common. Additionally, the BRIC is not an "insider" as that term is defined in the Bankruptcy Code. 11 U.SC. § 101(31).

16. **_Third_**, the Expense Reimbursement constitutes the "actual and necessary costs and expenses of preserving the estate" and is therefore entitled to administrative expense status and payment under sections 503(b) and 507(a)(2) of the Bankruptcy Code. 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2). The Expense Reimbursement enables the BRIC to prepare to serve as a Litigation Administrator, thereby ensuring that upon confirmation the BRIC will be able to work as expeditiously and efficiently to monetize certain of the Debtors' illiquid assets and causes of action. Given that the Debtors and the Committee have determined that the ARM Term Sheet in the best interest of the Debtors' estates, the Expense Reimbursement should be approved.

17. **_Last_**, the amount of the Fees and Expenses is fair and reasonable relative to the benefits that have inured and will continue to inure to the Debtors and their stakeholders from the ARM Term Sheet. The Expense Reimbursement is limited to the fees and expenses actually incurred and determined to be reasonable and necessary. Such fees and expenses are reasonable and justified here given the substantial expenses that have been, and will continue to be, incurred by the BRIC as they prepare to dispose of and monetize the Debtors' assets. Accordingly, the Court should approve the proposed payment and/or reimbursement of the Expense Reimbursement.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

18. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a) and (ii) the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry

of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

## **Notice**

19.    The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) the BRIC; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

20.    No prior motion for the relief requested herein has been made to this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: December 20, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) AUTHORIZING AND
### APPROVING CERTAIN FEES AND EXPENSES TO
### THE BRIC IN CONNECTION WITH THE IMPLEMENTATION OF
### THE MININGCO TRANSACTION, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving certain fees and expenses for the BRIC in connection with the MiningCo Transaction and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

opportunity for a hearing thereon were appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Expense Reimbursement is approved, subject to the terms of the

ARM Term Sheet.

3.      The Debtors are authorized to pay the Expense Reimbursement, including the

reasonable and documented fees and expenses incurred by Willkie Farr & Gallagher LLP and

Quinn Emanuel LLP ("QE"), without further action or order by the Court; *provided* that QE's

reimbursable amount shall in no event exceed $500,000.

4.      The Expense Reimbursement, to the extent payable under the ARM Term Sheet,

shall constitute allowed administrative expense claims against the Debtors' estates pursuant to

section 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code.

5.      Except with respect to the Expense Reimbursement and any actions taken pursuant

to such relief, the relief granted in this Order and any actions taken pursuant to such relief, nothing

in this Order shall be deemed: (a) an admission as to the validity of any particular claim against

the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds;

(c) a promise or requirement to pay any particular claim; (d) an implication or admission that any

particular claim is of a type specified or defined in this Order or the Motion; (e) a request or

authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated:      _____, 2024

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

## **ARM Term Sheet**

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Plan Administrator | Christopher Ferraro will serve as the Plan Administrator as set forth in further detail below. |
| ARM | BRIC or its designee will serve as a Litigation Administrator (Complex Asset Recovery Manager or "ARM"). |
| Oversight of ARM | The Litigation Oversight Committee will oversee the ARM. The composition of the Litigation Oversight Committee shall remain as contemplated in the Plan and Confirmation Order.<br><br>BRIC shall propose candidates to be considered by the Litigation Oversight Committee for the final spot on the Litigation Oversight Committee, among any other candidates the Litigation Oversight Committee may elect to consider.<br><br>The ARM shall be overseen by an "ARM Oversight Sub-Committee" which shall be comprised of Gerard Uzzi and two other members of the Litigation Oversight Committee to be determined by the Litigation Oversight Committee in consultation with the BRIC.<br><br>The ARM Oversight Sub-Committee shall oversee the ARM and its management of the Illiquid Assets and BRIC Litigation Assets, and shall provide regular reports to the Litigation Oversight Committee. |
| Access to Resources | The Litigation Oversight Committee shall ensure that the ARM has reasonable and timely access to the Company's books, records, accounts, and other resources as contemplated herein to facilitate the administration of its duties. Any requests for information by the ARM to the Plan Administrator shall be made through Robert Campagna, Samuel Schreiber, or another person designated by the Debtors or the Plan Administrator prior to or on the Effective Date (such person, the "Gatekeeper"). The Gatekeeper will use reasonable efforts to respond to such information requests, including providing reasonable access to employees, as appropriate, to facilitate an efficient complex assets recovery process and litigation recovery process. Any dispute regarding access set forth in this paragraph shall be resolved by the Litigation Oversight Committee, excluding any member proposed by the BRIC for the final spot on the Litigation Oversight Committee. The Plan Administrator shall select any successor Gatekeeper.<br><br>The Plan Administrator shall have direct and sole management and oversight of Wind Down Estate employment and retention matters. Interested parties (including the Litigation Oversight Committee and each Litigation Administrator) shall receive notice of any proposed terminations of employees and consultants. For the avoidance of doubt, any Celsius employee who is employed by the estates post-emergence shall report to the Plan Administrator, provided that the Litigation Oversight Committee shall have the ability to resolve disputes regarding the ARM's or other Litigation Administrator's reasonable access to employees.<br><br>The Litigation Oversight Committee will approve a comprehensive budget for BRIC, as Litigation Administrator (ARM), to engage counsel and experts, and manage the Illiquid Assets. For the avoidance of doubt, the budget shall exclude Financial Advisors retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by the BRIC. If such Financial Advisors are retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by BRIC, such costs shall be borne solely by the BRIC and not the Debtors' estates. |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Illiquid Assets | The BRIC, in its capacity as ARM, will manage the monetization of all of the illiquid assets listed in the attached schedule, including the "Illiquid Assets Subject to Incentive Fees" and the "Illiquid Assets Not Subject to Incentive Fees." The value of the Mawson asset to be allocated to the ARM shall include only the Mawson note and not the claims arising under the Mawson Co-Location Agreement (including for return of the deposit), which agreement and deposit rights are property of MiningCo.  The litigation with respect to Mawson shall be overseen by the ARM.  The Litigation Oversight Committee and the MiningCo Board shall have joint authority to direct the litigation and resolution of such litigation.  The ARM shall only earn its incentive fee on the portion of any recovery associated with the Mawson note and not rights asserted under the Co-Location Agreement, and any dispute as to allocation of litigation proceeds shall be resolved by the Bankruptcy Court.<br><br>The Litigation Oversight Committee shall have the sole authority to designate Illiquid Assets as subject to Incentive Fees in addition to those set forth as "Illiquid Assets Subject to Incentive Fees."<br><br>For the avoidance of doubt, those assets currently identified as "Illiquid Assets Subject to Incentive Fees" shall not be changed.<br><br>All illiquid assets within the Estates (but not causes of actions other than the causes of action identified as "Litigation Assets" in the section immediately below this one) not identified on the attached schedule will be discussed in good faith between the Litigation Oversight Committee and the ARM to determine whether they should be designated as additional "Illiquid Assets Subject to Incentive Fees" or "Illiquid Assets Not Subject to Incentive Fees," all subject to the sole discretion of the Litigation Oversight Committee.<br><br>Furthermore, to the extent that an asset designated as "Illiquid Assets Not Subject to Incentive Fees" requires active management and workout activities more akin to the Illiquid Assets Subject to Incentive Fees, the Litigation Oversight Committee shall have the authority to change such designation to be subject to Incentive Fees.<br><br>The ARM shall be required to consult with the ARM Oversight Sub-Committee on a periodic basis regarding whether to monetize Illiquid Assets Subject to Incentive Fees that would result in a recovery below the market "pro forma" value in the attached schedule. |
| Litigation Assets | As part of its role as ARM, BRIC will be designated as a Litigation Administrator under the Plan solely with respect to (a) potential claims and causes of action related to the Debtors' pre-bankruptcy activities against the Debtors' professionals who are Excluded Parties under the Plan (those claims will be set forth on a schedule to BRIC's agreement and are envisioned to include, but not be limited to potential claims and causes of action against accountants, attorneys, and other advisors, such as Chainalysis, that were not released under the Plan) and (b) Retained Causes of Action solely as follows:<br><br>   i.   BRIC shall be the Litigation Administrator for all Causes of Action related to Illiquid Assets (*e.g.* loan defaults related to illiquid assets, illiquid mining assets, etc., <u>but</u> not all claims related to counterparties with institutional loans, whereby such claims are not related to such institutional loans).<br>   ii   Additionally, BRIC shall be the Litigation Administrator for the BitMEX and Tether Claims.<br><br>The Litigation Oversight Committee will approve a budget for BRIC, as a Litigation Administrator, to engage counsel and experts (but not financial advisors) and manage the above-described litigation. |
| Liquid Distributions | The Debtors will appoint Christopher Ferraro as the Plan Administrator for a five-year term.  Mr. Ferraro will work with the Distribution Agents to make initial and subsequent distributions under the Plan to creditors (including liquid cryptocurrency) and be compensated as agreed between the Debtors, the Committee, and Mr. Ferraro.<br><br>If Mr. Ferraro resigns as Plan Administrator prior to the completion of his duties (including all distributions under the Plan), the Litigation Oversight Committee shall select the successor Plan Administrator. |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Exculpation | BRIC shall be exculpated with respect to any potential liability in connection with any actions taken, including distributions, by the Plan Administrator and the other Litigation Administrator. The Plan Administrator and the Litigation Administrator shall be exculpated with respect to any potential liability in connection with actions taken by the BRIC in the course of their duties as Litigation Administrator (ARM). |
| Mutual Non-Disparagement | The Debtors, the Committee, the Plan Administrator, the BRIC/Litigation Administrator (ARM), the other Litigation Administrator, and the Litigation Oversight Committee (collectively, the "Parties") shall agree to mutual non-disparagement clauses as follows:<br><br>Beginning immediately upon agreement to this term sheet and through the date on which the Litigation Administrator Agreement terminates, the Parties shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Parties, the professionals or employees of the other Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in (i); provided that the foregoing shall not prevent the Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information. These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan. |
| Tax Filings | The Plan Administrator shall be responsible for all pre-Effective Date tax filings, including, for the avoidance of doubt, all 2023, stub 2024 and prior tax filings.<br><br>The Plan Administrator shall be responsible for all regulatory filings and financial reporting for the Estates post-Effective Date; provided that the Plan Administrator shall first present such filings and reports to the Litigation Oversight Committee and consult with the Litigation Oversight Committee with respect to such filings and reports; provided that the ARM shall make regular reports to the Court as set forth in the agreement governing its services. |
| Governing Documentation | There will be one agreement that governs the BRIC's role as Litigation Administrator (ARM), that will be substantially consistent with the Litigation Administrator Agreement included in the Plan Supplement except as otherwise expressly modified by this term sheet (e.g., to include the monetization of Illiquid Assets, fee structure, oversight by Litigation Oversight Committee, *etc.*), provided that the following clarifications shall be made:<br><br>• the Litigation Oversight Committee shall provide the BRIC at least 90 days' notice if it determines to terminate the BRIC's role as Litigation Administrator (ARM) without cause;<br><br>• the Litigation Oversight Committee shall not be able to terminate the BRIC without cause until the date that is 18 months following the Effective Date (it being understood that notice of such termination without cause may be provided to the BRIC as early as the date that is the 15 month anniversary of the Effective Date); and<br><br>• if the BRIC is terminated without cause, on the date of termination (90 days after notice of termination without cause is provided), the BRIC shall be entitled to immediate payment of all unpaid accrued fees through the date of termination, plus a $1 million termination fee; and<br><br>• if the BRIC is no longer engaged as Litigation Administrator (ARM) (unless terminated for cause), the BRIC shall be entitled to prompt payment of the Recovery Incentive Fee and Litigation Incentive Fee that would otherwise have been owed to the BRIC from the monetization of an illiquid asset or cause of action previously managed by BRIC if a Resolution Event with respect to such asset or cause of action occurs prior to the BRIC's termination, other than a termination for cause. "Resolution Event" means, as applicable, a settlement agreement, an agreement in principle to settle or otherwise resolve a matter, a judgment or similar court resolution, or substantial completion of a litigation or resolution process that has not yet led to a judgment, similar court resolution, or other resolution. Any dispute regarding such right to payment will be resolved in the first instance by the Litigation Oversight Committee, and if a dispute remains, it will be resolved by the Bankruptcy Court. Notwithstanding the above, if a Resolution Event with respect to an asset or cause of action has not occurred prior to the BRIC's termination (other than for cause), but the BRIC has expended substantial efforts towards the monetization or resolution of such asset or cause of action and such asset or cause of action is subsequently monetized or resolved, the BRIC shall be entitled to request that the Litigation Oversight Committee authorize a payment, in full or in part, of a Recovery Incentive Fee or Litigation Incentive Fee to the BRIC in connection with the monetization or resolution of such asset or cause of action that is the result of the BRIC's |

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| | substantial efforts.  The Litigation Oversight Committee will have sole and absolute discretion regarding the approval of any such request for payment of a Recovery Incentive Fee or Litigation Incentive Fee, including a determination that no such fee is appropriate. <br><br> • Following any termination of the BRIC without cause, the Litigation Oversight Committee and any successor Litigation Administrator (Complex Asset Recovery Manager or "ARM") shall provide the BRIC with reasonable access to information regarding the status of the monetization of any asset that would result in payment of a Recovery Incentive Fee or Litigation Incentive Fee to the BRIC. |
| Mining NewCo | BRIC to support the modified Joint Motion and not support the objections of any other party. |
| Economics | *Fixed Fee:* Commencing on the Effective Date, a cash fee of $5,000,000 per year for 3 years (to be paid monthly in equal installments beginning on the Effective Date), subject to any extension that may be approved by the Litigation Oversight Committee on compensation set by the Litigation Oversight Committee at the time of such extension. <br><br> The justification for the ARM's fixed fee is in part that the ARM will use its own team to do much of the work that would be outsourced by the other Litigation Administrator, including the hiring of financial advisors on an hourly basis.  When the Litigation Oversight Committee sets a budget for the ARM, as set forth above, this will be taken into account and such budget will not include line items for financial advisors (and if a financial advisor is hired by the ARM, it will be paid for solely by the ARM). <br><br> *Recovery Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 10% of value realized in respect of each asset designated as among the Illiquid Assets Subject to Incentive Fees in excess of the current marked value on the attached schedule in the column labeled "pro forma" value, paid promptly to the ARM upon such monetization event from the proceeds of such monetization event. <br><br> *Litigation Incentive Fees:* Commencing on the Effective Date, a cash fee equal to 5% of value realized (*i.e.* Net Recovered Proceeds)[1] in respect of litigation actions managed by BRIC as Litigation Administrator, paid promptly to the ARM upon such monetization event and from the proceeds of such monetization event; and, for the avoidance of doubt, excluding any Illiquid Assets Subject to Incentive Fees. <br><br> At any meeting of the Litigation Oversight Committee, the ARM may present a progress report and the Litigation Oversight Committee may determine, in its sole and absolute discretion, that substantial efforts have been expended by BRIC towards the monetization or resolution of any particular asset or cause of action, and authorize the vesting of a partial Recovery Incentive Fee or Litigation Incentive Fee to be paid promptly to the ARM upon a monetization event of such asset or cause of action, from the proceeds of such monetization event, notwithstanding whether the BRIC is subsequently terminated without cause. <br><br> The net effect to the proposed Plan Administration Budget will be neutral with the Plan Administrator and Litigation Administrator Budgets reduced as follows, and such amounts budgeted to account for the $15 million in flat fees to be paid to the BRIC: <br> • The initial Plan Administrator Budget reduced to $70 million (from $75 million) <br> • The initial Litigation Trust Funding Amount shall be reduced to $40 million (from $50 million) |
| Releases | The parties will exchange mutual releases as part of the settlement and the parties agree that the agreements contained herein shall supersede and replace all prior contractual arrangements between the BRIC, the Debtors and the Committee. <br><br> There shall be no representations and warranties as to the assets to be managed by BRIC which shall vest in the estates and monetized by BRIC on "as is, where is" basis. |
| Process | Subject to execution of this term sheet, the Debtors and the UCC shall promptly supplement the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* to reflect the modified and clarified terms herein. |

---

[1] "Net Recovered Proceeds" means recoveries from causes of action overseen by the BRIC as Litigation Administrator, net of (1) contingency or similar payments to law firms or other professionals retained by BRIC as Litigation Administrator on each such cause of action and (2) any other fees and expenses incurred in the prosecution, management, or settlement of each respective cause of action by BRIC as Litigation Administrator.

| Issue | Debtors, Committee & BRIC Final Terms |
|---|---|
| Fees & Expenses | The revised motion shall seek court approval for the Debtors to reimburse the BRIC's reasonable and documented out-of-pocket expenses, including the fees and expenses incurred by Willkie Farr & Gallagher LLP and Quinn Emmanuel LLP ("QE"), provided that QE's reimbursable amount shall not exceed $500,000.  To the extent such reimbursement is not approved, the Debtors and Committee shall not object to any motion filed by the BRIC's professionals seeking an allowed administrative expense for such fees and expenses. |

## Schedule

**Illiquid Assets**

**Summary of Estimated Remaining Illiquid Assets at Emergence**
*($ in 000s)*

**Illiquid Assets Subject to Incentive Fees**

| Assets | 4th DS Value | Pro Forma Adjustments | Pro Forma Value | Subject to Incentive Fees |
|---|---|---|---|---|
| EFH Loans (Dollarized and BTC) | | | | Yes |
| Rhodium | | | | Yes |
| Spartan | | | | Yes |
| QRDO Investment | | | | Yes |
| Institutional Loans[1] | | | | Yes |
| Mawson | | | | Yes |
| CoinRoutes | | | | Yes |
| Luxor | | | | Yes |
| Sarson Funds | | | | Yes |
| Avantgarde Finance | | | | Yes |
| Orgenesis | | | | Yes |
| CegaPte | | | | Yes |
| Pythagoras | | | | Yes |
| **Subtotal** | | | | |

**Illiquid Assets Not Subject to Incentive Fees**

| Assets | 4th DS Value | Pro Forma Adjustments | Pro Forma Value |
|---|---|---|---|
| Core Scientific | | | |
| MATIC | | | |
| Other - DOT | | | |
| Other - Various AltCoins | | | |
| 1Inch | | | |
| QRDO | | | |
| Other - ETH | | | |
| Stakehound | | | |
| **Subtotal** | | | |
| **TOTAL** | | | |

**Footnote (1): Institutional Loan Detail**

| Loan Counterparty | Principal Value | Collateral Value | Net Loan Value |
|---|---|---|---|
| 168 Trading Limited | | | |
| B2C2 LTD | | | |
| B-Brick Inc | | | |
| Blockchain Access UK Ltd | | | |
| Liquidity Technologies LTD | | | |
| Onchain Custodian Pte Ltd | | | |
| OPTIMAL ALPHA MASTER FUND LTD | | | |
| Profluent Trading Inc | | | |
| Reliz LTD | | | |
| Symbolic Capital Partners Ltd | | | |
| Tower BC Ltd | | | |
| Alameda Research Ltd[a] | | | |
| Iterative OTC LLC[b] | | | |
| Three Arrows Capital Ltd[c] | | | |
| **Total** | | | |
| **Total (rounded)** | | | |

(a) As of May 31, 2023, Alameda Research Ltd. had four outstanding loans owed to Celsius, denominated in various cryptocurrencies, worth approximately $15.3 million. Celsius has fully reserved this receivable on its balance sheet.

(b) Iterative OTC LLC has two outstanding loans owed to Celsius. Iterative OTC LLC borrowed 450 BTC worth approximately $12.3 million as of May 31, 2023. Celsius has fully reserved against this receivable on its balance sheet. Iterative OTC LLC has filed for Chapter 7 liquidation in the Bankruptcy Court for the District of Delaware and any payments from such loan shall not be subject to incentive fees.

(c) As of May 31, 2023, Three Arrows Capital Ltd had two outstanding loans owed to Celsius, denominated in USDC, worth approximately $40.6 million. Celsius has fully reserved against this receivable on its balance sheet.