Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 22-10964-mg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   CELSIUS NETWORK LLC,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY  10004

14

15                  December 13, 2023

16                  3:00 PM

17

18

19

20

21  B E F O R E :

22  HON MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  F. FERGUSON

1   HEARING re Scheduling Discovery Conference Held Using Zoom

2   for Government.   (related document(s) Doc# 4086, 4073, 4079,

3   4077).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    KIRKLAND & ELLIS LLP

4        Attorneys for Debtor

5        601 Lexington Avenue

6        New York, NY 10022

7

8    BY:  ROSS KWASTENIET (TELEPHONICALLY)

9        CHRISTOPHER KOENIG (TELEPHONICALLY)

10

11    WHITE & CASE LLP

12        Attorneys for Official Committee of Unsecured Creditors

13        White & Case LLP

14        555 South Flower Street

15        Los Angeles, California 90071

16

17    BY:  AARON COLODNY (TELEPHONICALLY)

18

19    MCCARTER & ENGLISH LLP

20        Attorneys for Ad Hoc Group of Retail Borrowers

21        825 Eighth Avenue

22        New York, NY 10019

23

24    BY:  DAVID ADLER (TELEPHONICALLY)

25        LISA BONSALL (TELEPHONICALLY)

Page 4

1    WILKIE FARR & GALLAGHER LLP

2         Attorneys for Blockchain Recovery Investment Consortium

3         787 Seventh Avenue

4         New York, NY 10019

5

6    BY:  BRIAN LENNON (TELEPHONICALLY)

7

8    QUINN EMANUEL URQUHART & SULLIVAN, LLP

9         Attorneys for Blockchain Recovery Investment Consortium

10        51 Madison Avenue

11        New York, NY 10010

12

13   BY:  MARIO GAZZOLA (TELEPHONICALLY)

14

15   MCDERMOTT WILL & EMERY

16        Attorneys for Galaxy Partners

17        One Vanderbilt Avenue

18        New York, NY 10017

19

20   BY:  JOEL HAIMS (TELEPHONICALLY)

21        DARREN AZMAN (TELEPHONICALLY)

22

23

24

25

Page 5

1    UNITED STATES DEPARTMENT OF JUSTICE

2          Attorneys for The United States Trustee

3          Alexander Hamilton Custom House

4          One Bowling Green

5          New York, NY 10004

6

7    BY:   SHARA CORNELL (TELEPHONICALLY)

8          MARK BRUH (TELEPHONICALLY)

9

10   ALSO APPEARING TELEPHONICALLY:

11         JASON IOVINE, Pro se Creditor

12         REBECCA GALLAGER, Pro se Creditor

13         JOHAN BRONGE, Pro se Creditor

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                   P R O C E E D I N G S

2            THE COURT:  All right, good afternoon.  The Court

3    has scheduled this discovery conference at the request of

4    Mr. Finestone.  I'll let him begin and then I'll hear from

5    the Debtor and the Committee's counsel next.

6            MR. KWASTENIET:  Good afternoon, Your Honor.  It's

7    Ross Kwasteniet and from Kirkland.  If I may just start with

8    a brief update to the Court?

9            THE COURT:  Sure.  Go ahead, Mr. Kwasteniet.

10            MR. KWASTENIET:  Great.  So Your Honor, I have

11   good news, which is that the Debtors and the Committee and

12   the BRIC have been engaged in discussions and we've reached

13   a resolution with the BRIC that obviates the need for

14   today's discovery conference.

15            THE COURT:  That's the best update I've heard.  Go

16   ahead.  In a while.

17            MR. KWASTENIET:  I thought -- I told Mr. Koenig, I

18   said, no, there's good news, so I'm going to be the one --

19            THE COURT:  So that's why you want to be the one

20   to do it.

21            MR. KWASTENIET:  Yeah, you got it.  When Mr.

22   Koenig had to tell you that we got bad news from the SEC, I

23   let him deliver it, but I'm stealing his thunder.  So, Your

24   Honor, in a high level, the company, the UCC and the BRIC

25   have reached agreement on the terms for the BRIC to handle

Page 7

```
 1    the pursuit of and monetization of certain illiquid assets

 2    and litigation claims.  We've agreed to an immediate

 3    cessation of discovery and we are going to be working to

 4    document this agreement and expect to file a supplement to

 5    our motion describing these terms by the end of the week.

 6              Your Honor, I'll note, we have many creditors on

 7    the line.  We continue to be very focused on emergence from

 8    bankruptcy as soon as possible.  We are aware that Bitcoin

 9    is now trading over, I think it was over 41,000 this

10    morning, which is, you know, roughly double where it was as

11    of the petition date.  And so we placed a huge premium on

12    concluding these cases and getting coins back to people as

13    soon as possible and we look forward to presenting our

14    proposed winddown procedures to Your Honor next week and at

15    least as far as BRIC is concerned, again, pleased to report

16    that we've reached a resolution and the terms will be

17    forthcoming as soon as we can get them down on paper.

18              THE COURT:  Okay.  Bear with me a second.  So what

19    about the Galaxy issues?

20              MR. KWASTENIET:  I suppose they can speak for

21    themselves.  They filed a pleading today saying that they

22    didn't have discovery issues, that they may object to the

23    motion, but their counsel is on the line, Your Honor, so

24    they can speak for themselves.  But obviously, from our

25    standpoint, if, you know, if somebody objects to our motion
```

Page 8

```
 1   we'll respond to it and we'll be prepared to carry our

 2   burden.

 3              THE COURT:  Just give me a second.

 4              MR. HAIMS:  Your Honor, this is Joel --

 5              THE COURT:  Hold on, hold on.  Everybody stop.  I,

 6   I guess I'll hear from Galaxy's counsel in a minute.  I

 7   asked the question because Mr. Colodny's letter suggested

 8   that Galaxy wanted to depose everybody in the world, but --

 9              MR. COLODNY:  That's correct, Your Honor, but

10   today, Galaxy filed a letter saying it was not, it did not

11   intend to seek any discovery.

12              THE COURT:  Okay.  I'm a step behind.  I didn't

13   see that.

14              MR. KWASTENIET:  It just hit the docket this

15   morning, Your Honor.

16              MR. HAIMS:  This is Joel Haims from McDermott,

17   Will & Emery on behalf of Galaxy.  That's correct, Your

18   Honor.  We filed a letter saying -- we still plan to file an

19   objection, but we don't need discovery (indiscernible).

20              THE COURT:  All right, thank you.  So, what do

21   people -- well, let me ask the Debtor and the Committee.

22   What do you expect will be -- will happen at the hearing on

23   the 21st?

24              MR. KWASTENIET:  Yes, Your Honor.  Again, Ross

25   Kwasteniet from Kirkland, for the record.  On the 21st, Your
```

1    Honor, we expect to present our proposed winddown

2    procedures.  We built into the plan on the concept that if

3    there was an adverse regulatory decision that caused us to

4    have to deviate from the Fahrenheit transaction that we

5    would describe that in what we called winddown procedures

6    and we would file that with the Court and parties had --

7    would have at least ten days, you know, ten days' notice and

8    the winddown procedures could be approved by the Court and

9    then we could implement the plan.

10            So, from the Debtors' perspective, that's what we

11   would like to present to Your Honor.  And obviously, we will

12   address any objections that are filed.

13            THE COURT:  The objection deadline is tomorrow at

14   four o'clock; is that right?

15            MR. KWASTENIET:  I believe that's correct, Your

16   Honor, yes.  And then subject to, you know, once the

17   winddown procedures are approved, the Debtors have been in

18   the background making all necessary plans to be able to

19   emerge from Chapter 11, to make the cryptocurrency

20   distributions, et cetera, you know.  As soon as the winddown

21   procedures are approved, we would plan to go forward and

22   implement and go effective on the plan.

23            THE COURT:  So, am I correct, the motion that's on

24   for the 21st, it's styled notice of hearing on joint motion

25   of the Debtors and the Committee for entry of an order

Page 10

```
 1    approving the implementation of the MiningCo transaction and

 2    granting related relief?

 3              MR. KWASTENIET:  That's correct, Your Honor.

 4              THE COURT:  Okay.  Ms. Cornell, I see you on the

 5    screen.  Is the U.S. Trustee going to be filing an

 6    objection?

 7              MS. CORNELL:  Yes, Your Honor.

 8              THE COURT:  Could you just give me a two-sentence

 9    preview?

10              MS. CORNELL:  I'm not sure if two sentences is

11    going to suffice.

12              THE COURT:  I won't hold you to the two sentences.

13              MS. CORNELL:  Our issues this point, and we have

14    previewed them for both the Committee and the Debtors, so

15    this is not a surprise to them, either.

16              THE COURT:  I'm not surprised either.  That's why

17    I asked you the question.

18              MS. CORNELL:  Many of our issues echo Your Honor's

19    comments at the November 30th hearing.

20              THE COURT:  My comments were only a question.

21    They weren't -- I wasn't suggesting that --

22              MS. CORNELL: Sure.

23              THE COURT:  -- it can or can't be approved.  I

24    raised a question.  Go ahead.

25              MS. CORNELL:  Sure.  It is our current viewing of
```

Page 11

1    the motion that it seeks to implement a transaction that was

2    not contemplated by the plan, and therefore a new disclosure

3    statement and solicitation would be required under the code.

4              THE COURT:  I will look forward to seeing it.

5              MS. CORNELL:  Thank you, Your Honor.

6              THE COURT:  Okay. I don't mean that exactly

7    seriously, but I --

8              MS. CORNELL:  I understand.

9              THE COURT:  Obviously, I will pay attention to it.

10   Does anybody else want to be heard?

11             CLERK:  Judge, there's two parties with their

12   hands raised, Mr. Adler and Ms. Bonsall.

13             MR. ADLER:  Good afternoon, Your Honor.  David

14   Adler on behalf of the Ad Hoc Group of Retail Borrowers.

15   I'm joined today by my partner Lisa Bonsall, who will be

16   handling aspects of this proceeding.  I'm a little bit

17   confused because we're preparing to object to the motion

18   tomorrow, and like the U.S. Trustee, our position is that

19   the plan that or the toggle that they wish to go to is not

20   that which was described in the disclosure statement or the

21   plan.

22             And I get the sense from the comments from Mr.

23   Kwasteniet that we're going to file this objection and then

24   the next day, there's going to be something new that comes

25   out on the docket with new winddown procedures.  So, I'd

Page 12

1    like to address the timing of the objections and the, you

2    know, the proposal that will be coming, forthcoming relating

3    to BRICs.  That's number one.

4            Number two, just to advise Your Honor, we did

5    serve discovery, very limited discovery, on the Debtors and

6    the Committee relating to communications with the SEC.  We

7    had a meet and confer yesterday with the Debtors.  We're

8    still waiting to hear from the committee, so the issue --

9    there may be additional issues that come up before Your

10   Honor.

11           THE COURT:  What's the relevance of their

12   communications with the SEC?

13           MR. ADLER:  I think that a record is being -- has

14   been established in those communications regarding MineCo so

15   that those submissions, I assume, have to do or have a lot

16   to say about the mining company as well as the other, you

17   know, issues that were raised.  We don't know for certain,

18   Your Honor, but we think (audio glitch) those

19   communications.

20           THE COURT:  Ms. Bonsall, I see your hand next.

21           MS. BONSALL:  I think that Mr. Adler covered it,

22   Your Honor.  I guess the only thing I would add with respect

23   to the relevance of the SEC communications is that it's all

24   over their motion.  If you --

25           THE COURT:  Are you doubting that the SEC said

Page 13

```
1    that they wouldn't permit the staking operation to be part

2    of mining?

3              MS. BONSALL:  I don't know what --

4              THE COURT:  Are you doubting that?

5              MS. BONSALL:  -- they said, Your Honor.

6              THE COURT:  Are you really doubting that?

7              MS. BONSALL:  I don't doubt that.  I do wonder

8    what kind of communications there were with respect to

9    MineCo, since a good portion of the motion promotes the idea

10   that MineCo will also be a publicly listed company.

11             THE COURT:  Still is.  Still the proposal. That

12   hasn't changed.  I think the issue was, as I understand it,

13   MiningCo had audited financials and the staking operation

14   didn't.  And the issue of whether you could do a quick

15   procedure with the SEC is, were there audited financials.

16   That's been out there for a long time.  I mean, there's

17   nothing -- so are you doubting the SEC said no, your

18   proposal for this public company is a no-go because you

19   don't have audited financials for the staking operation?

20             I mean, that was -- I knew that was the position

21   at the time of the confirmation hearing.  They hadn't taken

22   a final position on it, but that issue, I think, was

23   previewed.

24             MS. BONSALL:  Well, I didn't see it in the

25   disclosure statement, Your Honor.  So --
```

```
 1                    THE COURT:  Did you attend the confirmation

 2    hearing?

 3                    MS. BONSALL:  I read --

 4                    THE COURT:  Did you attend the confirmation

 5    hearing?

 6                    MS. BONSALL:  -- transcripts -- I did not.  I did

 7    get the transcripts, Your Honor, and in all fairness, Judge,

 8    it's their motion and they are the ones who put at issue the

 9    --

10                    THE COURT:  Yeah, but --

11                    MS. BONSALL:  -- the SEC communication.

12                    THE COURT:  -- it may be their motion, but I'm not

13    sure I'm getting -- you're going to get discovery.  That's

14    what I'm saying.

15                    MS. BONSALL:  Well, the Debtor agreed --

16                    THE COURT:  -- the hearing.  The Debtor agreed

17    what?

18                    MS. BONSALL:  The Debtor agreed to provide the SEC

19    communications with the objection that he did not believe

20    them to be relevant, but at the meet and confer yesterday,

21    the Debtor did agree to provide those communications, Your

22    Honor.

23                    THE COURT:  All right.  So, it sounds like we

24    don't have a dispute to deal with.  Mister --

25                    MS. BONSALL:  And that's why I didn't put a letter
```

Page 15

1    in, Your Honor.

2              THE COURT:  That's fine.

3              MS. BONSALL:  I did -- and I was hopeful that

4    there would be nothing to say.

5              THE COURT:  Thank you, Ms. Bonsall.  I'll go in

6    the order I see the hands raised.  Mr. Dixon, briefly.

7              MR. DIXON:  Hi, there.  Simon Dixon, pro se

8    creditor.  I just wanted to bring attention to the value

9    destruction that may occur from delaying this plan too far.

10   As one of the top creditors, we've done the maths and once

11   Bitcoin hits a price of 54,000 or above, the next in line

12   under subordination, which I believe to be U.S. government

13   agencies may end up with a significant portion of our

14   recovery.  And so by delaying this, I do believe that the

15   value destruction could be significantly worse.

16             THE COURT:  The only thing, Mr. Dixon, let me --

17   that's not today's issue, but I think the Debtor and the

18   Committee -- Debtors, plural, and Committee are keenly

19   focused on that and they're trying to get the distribution

20   to creditors as soon as they can.  I commented at the last

21   hearing, that's my goal, too, but the question is whether

22   applicable bankruptcy law and procedure because of the

23   changes they're proposing to make, would require a new

24   disclosure statement and solicitation.

25             That's really a legal issue.  I share with you a

1    desire to get this wrapped up as soon as possible and

2    distributions to creditors as soon as possible.  I don't say

3    it embarrassingly.  I'm constrained by the law.  I'll follow

4    what the law is.  We'll see what happens at the hearing on

5    the 21st, but your point, I think, is essentially the

6    position that the Committee and the Debtors take.

7              They're trying to get a plan effective as soon as

8    possible in light of the position of the SEC that mining --

9    no public MiningCo could include the staking operation.

10   They've had to shift gears.  Okay, so I have your point

11   clearly. We'll take this up at the hearing on the 21st.

12             Mr. Colodny?  Thank you, Mr. Dixon.

13             MR. COLODNY:  Yes, Your Honor.  I always like when

14   you make my points before I make them, but we are focused on

15   getting out of bankruptcy as soon as possible.  I disagree

16   with Mr. Dixon's characterizations of the plan.  I also

17   disagree with, I believe it was Mr. Adler's

18   characterizations of a meet and confer yesterday, which was

19   attended by the Committee.  So, I didn't want Your Honor to

20   think that the Committee was not engaging here.

21             We are.  We are focused on getting out of

22   bankruptcy as soon as possible and we believe that the

23   motion that will be heard on the 21st fits squarely within

24   the four corners of the document.  Obviously, Your Honor,

25   that's the issue for you to decide on the 21st and we will

Page 17

1    look forward to doing that then.

2              THE COURT:  Okay.  Mr. Breuder?

3              MR. BREUDER:  Paul Breuder, pro se creditor.  I

4    don't want to put words in any of -- anybody else's mouths

5    about the need for discovery, but I believe it wasn't so

6    much a concern that the SEC was going to deny of the NewCo

7    transaction due to the staking operation, but I think it

8    concerns the timeline of when that communication with the

9    SEC occurred and there appears to have been discussion as

10   far back as June or July that the UCC and the Debtors had

11   communication where the SEC had already pre-denied the NewCo

12   transaction, but the Debtors and the UCC proceeded to

13   solicit a plan that included it knowing that it was dead on

14   arrival.

15             So, I think some of the committees like the Ad Hoc

16   are tiptoeing around why they want discovery, but I believe

17   that's the reason why.

18             THE COURT:  Well, I'm not -- Mr. Breuder, I'm not

19   at all persuaded that discovery is appropriate or needed for

20   the purposes of the hearing on the 21st.  We'll see what

21   happens when we get there.  Mr. McCarrick?

22             MR. BREUDER:  Understood.

23             MR. McCARRICK:  T.J. McCarrick, Kirkland & Ellis,

24   on behalf of the Debtors, Your Honor.  Just on this SEC

25   discovery issue, as Your Honor noted, there's no live

Page 18

1   dispute because the Debtors have agreed to produce, subject

2   to their relevance objection, our formal communications with

3   the SEC, but for the reasons Your Honor noted, there's no

4   dispute among anyone that the SEC did not approve the NewCo

5   transaction, and candidly, it's not at all clear to us what

6   -- why that would be relevant to an argument that the

7   proposed -- or the proposed MiningCo transaction is not

8   within the four corners of the disclosure statement or the

9   plan.

10          That's a legal determination that Your Honor can

11   make.  No discovery is appropriate or warranted and

12   candidly, I think, you know, this sort of show me more

13   approach to discovery as we go here is just going to cost

14   the estate more.  But we're happy to give the Committee --

15   or the Ad Hoc the communications.

16          THE COURT:  All right, thanks very much, Mr.

17   McCarrick.  Is there anybody else who hasn't spoken yet who

18   wishes to be heard, other -- Mr. Breuder and Mr. McCarrick,

19   you can put your hands down.  That would be appreciated.

20   Thank you.

21          MR. KWASTENIET:  Your Honor, it's Ross Kwasteniet

22   from Kirkland, if I may just make a few remarks in response,

23   first of all, to Mr. Dixon's comments.  I agree with Your

24   Honor.  We are completely focused on it. The feedback we got

25   from the SEC and I guess I'll address Mr. Breuder's comments

Page 19

1    as well.  There seems to be a bit of a budding conspiracy

2    theory that this was somehow known all along.  But I can

3    just say on its face, like that's absurd that -- to think

4    that we'd pursue a plan that was dead on arrival.

5            We -- as we've -- we indicated at the confirmation

6    trial; we filed a pre-clearance application with the SEC in

7    July.  We found out from the SEC; we got a phone call from

8    them literally hours after Your Honor entered the

9    confirmation order saying that they would not grant

10   preclearance with respect to anything other than the mining

11   assets.

12           We then pivoted very quickly and filed a motion,

13   you know, within, I think less than two weeks, proposing the

14   winddown procedures.  We're going to be supplementing the

15   winddown procedures to incorporate the agreement we've

16   reached with the BRIC, but again, from the Debtor and the

17   Committee's --

18           THE COURT:  And when -- you expect to do that

19   when?

20           MR. KWASTENIET:  By the end of the week, Your

21   Honor.  The agreement was reached, you know, on the

22   proverbial courthouse steps.  So, by the --

23           THE COURT:  Let me ask you this.  I'm just trying

24   to -- on my other screen, I've got what was the docket for

25   Thursday the 21st.  My understanding is the hearing on the

Page 20

1        substantial contribution claims has been pushed to January.

2                MR. KWASTENIET:  That's correct, Your Honor.

3                THE COURT:  So, is there anything on the Celsius

4        docket other than this motion to essentially approve this?

5                MR. KWASTENIET:  I don't believe there is, Your

6        Honor, and if there is, there's nothing more important than

7        this and we'll -- I would move whatever else there was.

8                THE COURT:  All right.  And then the question is,

9        I -- because it's still not clear to me after hearing the

10       colloquy as to whether this is going to be an evidentiary

11       hearing, because our rules are that the first hearing is not

12       evidentiary unless the Court has said it.  And, you know,

13       we're not having a two-week evidentiary hearing starting on

14       Monday and ending on -- starting on Thursday and ending on

15       Thursday.  What is -- what's the Debtors' position as to

16       whether evidence is required to be heard?

17               MR. KWASTENIET:  Your Honor, we -- in the first

18       instance, we do not believe that evidence is required.  We

19       think that the winddown procedures are squarely -- fit

20       squarely within the plan.  We believe that while the SEC's

21       feedback was unfortunate, it was something that we had

22       contemplated and we designed, you know, a fallback

23       transaction, if you will, that was a public, take a mining

24       only public company and administering the rest.

25               We had the concept of winddown procedures because

Page 21

1    of course, we couldn't know exactly in advance, you know,

2    how that would work and what would have to change, but --

3              THE COURT:  Let me ask you this.  What -- winddown

4    was clearly one of the contemplated alternatives and what

5    has -- what, if anything, has changed from what was

6    described in disclosure statement, as the winddown

7    transaction?  You know, I -- U.S. Bitcoin was identified but

8    in a somewhat different role than what's proposed now.  So,

9    tell me just briefly, I think -- you know, this is not the

10   time for the full argument about this hearing, but what is

11   it that has changed from what was described in the

12   disclosure statement and the plan?

13             MR. KWASTENIET:  Absolutely, Your Honor.  So, what

14   was described in the disclosure statement and the plan was

15   BRIC was a backup bidder.  There was -- we had a backup

16   agreement with them.  That did not include a detailed mining

17   management agreement, right, so the first thing that changed

18   what we said in the plan and disclosure statement, was we

19   would, in the event we're going forward with a mining only

20   newco, we would identify as part of the winddown procedures,

21   the proposed mining manager and the terms.

22             And we said in that the mining manager might be

23   U.S. Bitcoin.  We couldn't have known exactly who the mining

24   manager was in advance, because there's the Fahrenheit

25   Group, and of course, U.S. Bitcoin was part of that group.

```
1    And we couldn't really go to them and say, hey, if the rest

2    of the deal doesn't work, will you still be the mining

3    manager of the, you know, a mining only newco.

4              They had agreements as between themselves.  They

5    were a consortium.  What -- we said in the plan, it might be

6    U.S. Bitcoin, right, so the first thing we did, Your Honor,

7    once we got the feedback from the SEC is we engaged in

8    discussions with Fahrenheit.  We gave them the news, of

9    course.  We had been partnering with them and working

10   towards emergence.  And we said, well, unfortunately, we

11   can't go forward with the whole Fahrenheit deal, but we

12   would like permission to speak with U.S. Bitcoin about

13   continuing to serve as the mining manager.

14             And then there was some work to break their

15   agreement out and separate it from the broader Fahrenheit

16   deal, which we did, and then that was attached to what we

17   filed.  Your Honor, the story here, you know, the work that

18   goes into this and from the company's perspective, goes way

19   back to the auction this spring, right.  The main purpose of

20   the auction this spring was not to, you know, see who could

21   write, you know, the cheapest proposal for managing the

22   newco or the mining business or whatever.

23             It was to pick a partner, who we were going to

24   work with and who was going to, you know, manage the new

25   business for us, whatever that new business looked like, and
```

1    people were pitching different business ideas, et cetera.

2    We came out of that auction with U.S. Bitcoin as the

3    preferred manager for the mining business, right, which was

4    the core -- always the core of the NewCo business, and now

5    it's the only part of the NewCo business, right, that's

6    going to go forward.  But it -- we had to -- we couldn't

7    have known in advance for sure that U.S. Bitcoin would be

8    there and would continue to manage the mining business.

9              THE COURT:  With --

10             MR. KWASTENIET:  Your Honor --

11             THE COURT:  With some trepidation, let me ask a

12   question that will undoubtedly be asked by me or someone

13   else at the hearing.  Has the Debtor and the Committee

14   considered as an alternative a proposed sale of the mining

15   business to convert it to cash or other crypto or something

16   to distribute currently, rather than having a new publicly

17   traded mining business?

18             MR. KWASTENIET:  Yes, Your Honor, we have.  And

19   earlier in the case, we ran a marketing process and I

20   believe -- I forget exactly at what hearing.  I think that

21   there was testimony on this, Your Honor, but I -- if you'll

22   allow me to just represent what I think Centerview and Mr.

23   Kielty and Mr. Puntus would testify to, the Debtors ran a

24   marketing process in the first instance, to see what we

25   could monetize, right?  We had various illiquid assets, so

Page 24

1    we solicited bids.

2              THE COURT:  And I do remember that, and the

3    question -- my question now is, was there a mining only sale

4    that was considered?

5              MR. KWASTENIET:  We solicited bids on the mining

6    business, Your Honor, and the bids came in at that

7    effectively equipment liquidation values.

8              THE COURT:  All right.

9              MR. KWASTENIET:  And so, we determined that we

10   were going to be leaving incredible -- the going concern

11   value effectively, of the mining business, we'd be leaving

12   on the table if we were to sell it.  Which is, you know, not

13   to say we haven't -- that mining that marketing process

14   happened earlier in the case.  There are some on the phone -

15   - Galaxy, I'm looking in your direction -- who may be

16   wanting to suggest to Your Honor that we should, you know,

17   run a new marketing process.

18              Our perspective is we've made sequential decisions

19   and we're -- we want to want to go forward with the deal

20   that -- with U.S. Bitcoin who has been the preferred mining

21   manager since the conclusion of the auction and that we

22   never told people -- in fact, we told people the opposite.

23   We said that, you know, based on regulatory feedback, we

24   will figure out what adjustments need to be made.  We will

25   disclose them in a motion.  We will seek Court approval and

Page 25

1    we will go forward to confirm and distribute liquid crypto

2    and make distributions to creditors.

3           So, we have no intention, Your Honor, of reopening

4    the marketing process.  But we did earlier in the case,

5    before we went down the path of figuring out a newco and who

6    would manage it, we did a marketing effort and we got bids

7    that were just liquidation bids for the mining assets.

8           THE COURT:  Let me ask this, and it is part of my,

9    I suppose, underlying my question about whether this is an

10   evidentiary hearing.  Is the Debtor or the Committee going

11   to offer -- has it offered any evidence, will it offer any

12   evidence that the proposed changes in the transaction

13   structure will not result in a decrease in recoveries for

14   any of the classes of creditors that were projected in --

15   or, I'll use the word projected.  It's not exactly right,

16   but that were described in the plan and disclosure

17   statement.

18          MR. KWASTENIET:  We are prepared to make that

19   case, Your Honor, and have submitted declarations, both the

20   Committee and the company have submitted declarations in

21   support of the motion to make that case.

22          THE COURT:  And it's the position of the Debtor

23   and the Committee that there's no material negative effect

24   of these proposed changes.  The winddown was always one of

25   the contemplated solutions.  It's just, the particulars of

Page 26

1    it that have changed.

2            MR. KWASTENIET:  Yes.  Yes, Your Honor.

3            THE COURT:  So, your position is, and the

4    Committee's position is, it will not result in any decrease

5    in recoveries --

6            MR. KWASTENIET:  That's --

7            THE COURT:  -- that were already projected in the

8    disclosure statement?

9            MR. KWASTENIET:  That's correct, Your Honor, and

10   in fact, as the scope of the NewCo transaction has been

11   reduced to be just the mining company, the need for the

12   capitalization of the NewCo is less --

13           THE COURT:  I know your --

14           MR. KWASTENIET:  The fees are less.

15           THE COURT:  -- distributing more.

16           MR. KWASTENIET:  More liquid crypto, but yes, Your

17   Honor, absolutely.  It's not worse.  It's neutral to better.

18   We think better for creditors.

19           THE COURT:  All right.  Let me ask one other

20   question and then we can -- is, whether the Debtor and the

21   Committee have tried to engage with the U.S. Trustee and see

22   whether you can come to a resolution that would lead the

23   U.S. Trustee to object and argue that a new disclosure

24   statement and solicitation would be required.

25           MR. KWASTENIET:  I believe that members of my team

Page 27

1    and the White & Case team had a call with Ms. Cornell

2    yesterday where we learned of that position.

3            THE COURT:  Keep talking, would you, please?

4            MR. KWASTENIET:  Absolutely, Your Honor.  I was

5    not on that call, but I am happy to engage.  I can't speak

6    for Mr. Colodny, but I'm sure he's happy to -- '

7            THE COURT:  I'm sure Mr. Colodny's answer is yes.

8    I won't even -- you know.

9            MR. COLODNY:  Right.  Your Honor, I was on a call

10   with Ms. Cornell yesterday and we have spoken with her and

11   we will continue to discuss with her what we can do to

12   resolve the issue.

13           THE COURT:  Okay.  I hope you'll do that, and Mr.

14   Colodny, I -- just keep talking and see whether there's a

15   solution that's possible.  All right.  One more hand raised

16   -- go ahead, Mr. Colodny.

17           MR. COLODNY:  No, you asked about the

18   consideration and the evidence, Your Honor.  The Debtors

19   submitted a declaration of Robert Compagna which speaks to

20   them the issue that you squarely put.

21           And then as the consideration under the orderly

22   winddown, there were, I believe, three things to be

23   distributed:  liquid cryptocurrency, what we called illiquid

24   recovery rights, which was essentially a, you know, an

25   interest in the illiquid assets which would be monetized;

1    litigation trust interests or litigation interests, which

2    were the same under both scenarios; and then NewCo mining

3    stock, and that is exact -- or mining stock.  And that is

4    exactly what's to be distributed under what the MiningCo

5    motion, which is in essence the orderly winddown.

6              THE COURT:  All right, thank very much. There's

7    one more hand raised.  Briefly, Mr. Iovine.

8              MR. IOVINE:  Yes, Jason Iovine, pro se.  I just

9    wanted to point out that that marketing campaign was done

10   when the market was distressed and pushed very negative.

11   The price of bitcoin has almost doubled since the petition

12   date and it could have a different outcome if another

13   marketing campaign was done.

14             THE COURT:  It could have a big outcome in the

15   value -- it could have --

16             MR. IOVINE:  Just wanted to point that out.

17             THE COURT:  -- a big -- in the value of NewCo, you

18   know, mining bitcoin looks much more profitable today than

19   it did at the start of the case, so -- but I take your

20   point.  But you don't rewind the case every time there's a

21   change in a market price of a commodity or something.  So,

22   all right.  We'll -- I guess the discovery issues, which was

23   the reason for setting the conference today, have been

24   resolved, so we are adjourned.

25             MR. ADLER:  Thank you, Your Honor.

1           MR. KWASTENIET:   Thank you, Your Honor.

2

3           (Whereupon these proceedings were concluded at

4    3:33 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

1                 C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *Sonya M. Ledanski Hyde*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 20, 2023

[& - attorneys]                                                                          Page 1

| & | | |
|---|---|---|

**&**  3:3,11,13,19
  4:1,8,15 8:17
  17:23 27:1

| 1 |
|---|

**10004**  1:13 5:5
**10010**  4:11
**10017**  4:18
**10019**  3:22 4:4
**10022**  3:6
**11**  9:19
**11501**  30:23
**12151**  30:7
**13**  1:15

| 2 |
|---|

**20**  30:25
**2023**  1:15
  30:25
**21st**  8:23,25
  9:24 16:5,11
  16:23,25 17:20
  19:25
**22-10964**  1:3

| 3 |
|---|

**300**  30:22
**30th**  10:19
**330**  30:21
**3:00**  1:16
**3:33**  29:4

| 4 |
|---|

**4073**  2:2
**4077**  2:3
**4079**  2:2
**4086**  2:2

**41,000**  7:9

| 5 |
|---|

**51**  4:10
**54,000**  15:11
**555**  3:14

| 6 |
|---|

**601**  3:5

| 7 |
|---|

**787**  4:3

| 8 |
|---|

**825**  3:21

| 9 |
|---|

**90071**  3:15

| a |
|---|

**aaron**  3:17
**able**  9:18
**above**  15:11
**absolutely**
  21:13 26:17
  27:4
**absurd**  19:3
**accurate**  30:4
**ad**  3:20 11:14
  17:15 18:15
**add**  12:22
**additional**  12:9
**address**  9:12
  12:1 18:25
**adjourned**
  28:24
**adjustments**
  24:24
**adler**  3:24
  11:12,13,14
  12:13,21 28:25

**adler's**  16:17
**administering**
  20:24
**advance**  21:1
  21:24 23:7
**adverse**  9:3
**advise**  12:4
**afternoon**  6:2
  6:6 11:13
**agencies**  15:13
**agree**  14:21
  18:23
**agreed**  7:2
  14:15,16,18
  18:1
**agreement**
  6:25 7:4 19:15
  19:21 21:16,17
  22:15
**agreements**
  22:4
**ahead**  6:9,16
  10:24 27:16
**alexander**  5:3
**allow**  23:22
**alternative**
  23:14
**alternatives**
  21:4
**angeles**  3:15
**answer**  27:7
**anybody**  11:10
  17:4 18:17
**appearing**  5:10
**appears**  17:9
**applicable**
  15:22

**application**
  19:6
**appreciated**
  18:19
**approach**
  18:13
**appropriate**
  17:19 18:11
**approval**  24:25
**approve**  18:4
  20:4
**approved**  9:8
  9:17,21 10:23
**approving**
  10:1
**argue**  26:23
**argument**  18:6
  21:10
**arrival**  17:14
  19:4
**asked**  8:7
  10:17 23:12
  27:17
**aspects**  11:16
**assets**  7:1
  19:11 23:25
  25:7 27:25
**assume**  12:15
**attached**  22:16
**attend**  14:1,4
**attended**  16:19
**attention**  11:9
  15:8
**attorneys**  3:4
  3:12,20 4:2,9
  4:16 5:2

**auction** 22:19
22:20 23:2
24:21
**audio** 12:18
**audited** 13:13
13:15,19
**avenue** 3:5,21
4:3,10,17
**aware** 7:8
**azman** 4:21

**b**

**b** 1:21
**back** 7:12
17:10 22:19
**background**
9:18
**backup** 21:15
21:15
**bad** 6:22
**bankruptcy**
1:1,11,23 7:8
15:22 16:15,22
**based** 24:23
**bear** 7:18
**behalf** 8:17
11:14 17:24
**believe** 9:15
14:19 15:12,14
16:17,22 17:5
17:16 20:5,18
20:20 23:20
26:25 27:22
**best** 6:15
**better** 26:17,18
**bidder** 21:15
**bids** 24:1,5,6
25:6,7

**big** 28:14,17
**bit** 11:16 19:1
**bitcoin** 7:8
15:11 21:7,23
21:25 22:6,12
23:2,7 24:20
28:11,18
**blockchain** 4:2
4:9
**bonsall** 3:25
11:12,15 12:20
12:21 13:3,5,7
13:24 14:3,6
14:11,15,18,25
15:3,5
**borrowers**
3:20 11:14
**bowling** 1:12
5:4
**break** 22:14
**breuder** 17:2,3
17:3,18,22
18:18
**breuder's**
18:25
**brian** 4:6
**bric** 6:12,13,24
6:25 7:15
19:16 21:15
**brics** 12:3
**brief** 6:8
**briefly** 15:6
21:9 28:7
**bring** 15:8
**broader** 22:15
**bronge** 5:13

**bruh** 5:8
**budding** 19:1
**built** 9:2
**burden** 8:2
**business** 22:22
22:25,25 23:1
23:3,4,5,8,15
23:17 24:6,11

**c**

**c** 3:1 6:1 30:1,1
**california** 3:15
**call** 19:7 27:1,5
27:9
**called** 9:5
27:23
**campaign** 28:9
28:13
**candidly** 18:5
18:12
**capitalization**
26:12
**carry** 8:1
**case** 1:3 3:11
3:13 23:19
24:14 25:4,19
25:21 27:1
28:19,20
**cases** 7:12
**cash** 23:15
**caused** 9:3
**celsius** 1:7 20:3
**centerview**
23:22
**certain** 7:1
12:17
**certified** 30:3

**cessation** 7:3
**cetera** 9:20
23:1
**change** 21:2
28:21
**changed** 13:12
21:5,11,17
26:1
**changes** 15:23
25:12,24
**chapter** 9:19
**characterizat...**
16:16,18
**cheapest** 22:21
**christopher**
3:9
**claims** 7:2 20:1
**classes** 25:14
**clear** 18:5 20:9
**clearance** 19:6
**clearly** 16:11
21:4
**clerk** 11:11
**code** 11:3
**coins** 7:12
**colloquy** 20:10
**colodny** 3:17
8:9 16:12,13
27:6,9,14,16
27:17
**colodny's** 8:7
27:7
**come** 12:9
26:22
**comes** 11:24
**coming** 12:2

**commented**
   15:20
**comments**
   10:19,20 11:22
   18:23,25
**committee**
   3:12 6:11 8:21
   9:25 10:14
   12:6,8 15:18
   15:18 16:6,19
   16:20 18:14
   23:13 25:10,20
   25:23 26:21
**committee's**
   6:5 19:17 26:4
**committees**
   17:15
**commodity**
   28:21
**communicati...**
   14:11 17:8,11
**communicati...**
   12:6,12,14,19
   12:23 13:8
   14:19,21 18:2
   18:15
**compagna**
   27:19
**company**   6:24
   12:16 13:10,18
   20:24 25:20
   26:11
**company's**
   22:18
**completely**
   18:24

**concept**   9:2
   20:25
**concern**   17:6
   24:10
**concerned**   7:15
**concerns**   17:8
**concluded**   29:3
**concluding**
   7:12
**conclusion**
   24:21
**confer**   12:7
   14:20 16:18
**conference**   2:1
   6:3,14 28:23
**confirm**   25:1
**confirmation**
   13:21 14:1,4
   19:5,9
**confused**   11:17
**consideration**
   27:18,21
**considered**
   23:14 24:4
**consortium**   4:2
   4:9 22:5
**conspiracy**
   19:1
**constrained**
   16:3
**contemplated**
   11:2 20:22
   21:4 25:25
**continue**   7:7
   23:8 27:11
**continuing**
   22:13

**contribution**
   20:1
**convert**   23:15
**core**   23:4,4
**cornell**   5:7
   10:4,7,10,13
   10:18,22,25
   11:5,8 27:1,10
**corners**   16:24
   18:8
**correct**   8:9,17
   9:15,23 10:3
   20:2 26:9
**cost**   18:13
**counsel**   6:5
   7:23 8:6
**country**   30:21
**course**   21:1,25
   22:9
**court**   1:1,11
   6:2,2,8,9,15,19
   7:18 8:3,5,12
   8:20 9:6,8,13
   9:23 10:4,8,12
   10:16,20,23
   11:4,6,9 12:11
   12:20,25 13:4
   13:6,11 14:1,4
   14:10,12,16,23
   15:2,5,16 17:2
   17:18 18:16
   19:18,23 20:3
   20:8,12 21:3
   23:9,11 24:2,8
   24:25 25:8,22
   26:3,7,13,15
   26:19 27:3,7

   27:13 28:6,14
   28:17
**courthouse**
   19:22
**covered**   12:21
**creditor**   5:11
   5:12,13 15:8
   17:3
**creditors**   3:12
   7:6 15:10,20
   16:2 25:2,14
   26:18
**crypto**   23:15
   25:1 26:16
**cryptocurrency**
   9:19 27:23
**current**   10:25
**currently**
   23:16
**custom**   5:3

**d**

**d**   6:1
**darren**   4:21
**date**   7:11 28:12
   30:25
**david**   3:24
   11:13
**day**   11:24
**days**   9:7,7
**dead**   17:13
   19:4
**deadline**   9:13
**deal**   14:24 22:2
   22:11,16 24:19
**debtor**   1:9 3:4
   6:5 8:21 14:15
   14:16,18,21

15:17 19:16
23:13 25:10,22
26:20
**debtors** 6:11
9:10,17,25
10:14 12:5,7
15:18 16:6
17:10,12,24
18:1 20:15
23:23 27:18
**december** 1:15
30:25
**decide** 16:25
**decision** 9:3
**decisions** 24:18
**declaration**
27:19
**declarations**
25:19,20
**decrease** 25:13
26:4
**delaying** 15:9
15:14
**deliver** 6:23
**denied** 17:11
**deny** 17:6
**department**
5:1
**depose** 8:8
**describe** 9:5
**described**
11:20 21:6,11
21:14 25:16
**describing** 7:5
**designed** 20:22
**desire** 16:1

**destruction**
15:9,15
**detailed** 21:16
**determination**
18:10
**determined**
24:9
**deviate** 9:4
**different** 21:8
23:1 28:12
**direction** 24:15
**disagree** 16:15
16:17
**disclose** 24:25
**disclosure** 11:2
11:20 13:25
15:24 18:8
21:6,12,14,18
25:16 26:8,23
**discovery** 2:1
6:3,14 7:3,22
8:11,19 12:5,5
14:13 17:5,16
17:19,25 18:11
18:13 28:22
**discuss** 27:11
**discussion** 17:9
**discussions**
6:12 22:8
**dispute** 14:24
18:1,4
**distressed**
28:10
**distribute**
23:16 25:1
**distributed**
27:23 28:4

**distributing**
26:15
**distribution**
15:19
**distributions**
9:20 16:2 25:2
**district** 1:2
**dixon** 15:6,7,7
15:16 16:12
**dixon's** 16:16
18:23
**doc** 2:2
**docket** 8:14
11:25 19:24
20:4
**document** 2:2
7:4 16:24
**doing** 17:1
**double** 7:10
**doubled** 28:11
**doubt** 13:7
**doubting** 12:25
13:4,6,17
**due** 17:7

**e**

**e** 1:21,21 3:1,1
6:1,1 30:1
**earlier** 23:19
24:14 25:4
**echo** 10:18
**ecro** 1:25
**effect** 25:23
**effective** 9:22
16:7
**effectively** 24:7
24:11

**effort** 25:6
**eighth** 3:21
**either** 10:15,16
**ellis** 3:3 17:23
**else's** 17:4
**emanuel** 4:8
**embarrassin...**
16:3
**emerge** 9:19
**emergence** 7:7
22:10
**emery** 4:15
8:17
**engage** 26:21
27:5
**engaged** 6:12
22:7
**engaging** 16:20
**english** 3:19
**entered** 19:8
**entry** 9:25
**equipment**
24:7
**essence** 28:5
**essentially**
16:5 20:4
27:24
**established**
12:14
**estate** 18:14
**et** 9:20 23:1
**event** 21:19
**everybody** 8:5
8:8
**evidence** 20:16
20:18 25:11,12
27:18

**evidentiary**
20:10,12,13
25:10
**exact** 28:3
**exactly** 11:6
21:1,23 23:20
25:15 28:4
**expect** 7:4 8:22
9:1 19:18

**f**

**f** 1:21,25 30:1
**face** 19:3
**fact** 24:22
26:10
**fahrenheit** 9:4
21:24 22:8,11
22:15
**fairness** 14:7
**fallback** 20:22
**far** 7:15 15:9
17:10
**farr** 4:1
**feedback** 18:24
20:21 22:7
24:23
**fees** 26:14
**ferguson** 1:25
**figure** 24:24
**figuring** 25:5
**file** 7:4 8:18
9:6 11:23
**filed** 7:21 8:10
8:18 9:12 19:6
19:12 22:17
**filing** 10:5
**final** 13:22

**financials**
13:13,15,19
**fine** 15:2
**finestone** 6:4
**first** 18:23
20:11,17 21:17
22:6 23:24
**fit** 20:19
**fits** 16:23
**flower** 3:14
**focused** 7:7
15:19 16:14,21
18:24
**follow** 16:3
**foregoing** 30:3
**forget** 23:20
**formal** 18:2
**forthcoming**
7:17 12:2
**forward** 7:13
9:21 11:4 17:1
21:19 22:11
23:6 24:19
25:1
**found** 19:7
**four** 9:14 16:24
18:8
**full** 21:10

**g**

**g** 6:1
**galaxy** 4:16
7:19 8:8,10,17
24:15
**galaxy's** 8:6
**gallager** 5:12
**gallagher** 4:1

**gazzola** 4:13
**gears** 16:10
**getting** 7:12
14:13 16:15,21
**give** 8:3 10:8
18:14
**glenn** 1:22
**glitch** 12:18
**go** 6:9,15 9:21
9:22 10:24
11:19 13:18
15:5 18:13
22:1,11 23:6
24:19 25:1
27:16
**goal** 15:21
**goes** 22:18,18
**going** 6:18 7:3
10:5,11 11:23
11:24 14:13
17:6 18:13
19:14 20:10
21:19 22:23,24
23:6 24:10,10
25:10
**good** 6:2,6,11
6:18 11:13
13:9
**government**
2:2 15:12
**grant** 19:9
**granting** 10:2
**great** 6:10
**green** 1:12 5:4
**group** 3:20
11:14 21:25,25

**guess** 8:6 12:22
18:25 28:22

**h**

**haims** 4:20 8:4
8:16,16
**hamilton** 5:3
**hand** 12:20
27:15 28:7
**handle** 6:25
**handling** 11:16
**hands** 11:12
15:6 18:19
**happen** 8:22
**happened**
24:14
**happens** 16:4
17:21
**happy** 18:14
27:5,6
**hear** 6:4 8:6
12:8
**heard** 6:15
11:10 16:23
18:18 20:16
**hearing** 2:1
8:22 9:24
10:19 13:21
14:2,5,16
15:21 16:4,11
17:20 19:25
20:9,11,11,13
21:10 23:13,20
25:10
**held** 2:1
**hey** 22:1
**hi** 15:7

**high** 6:24
**hit** 8:14
**hits** 15:11
**hoc** 3:20 11:14
  17:15 18:15
**hold** 8:5,5
  10:12
**hon** 1:22
**honor** 6:6,10
  6:24 7:6,14,23
  8:4,9,15,18,24
  9:1,11,16 10:3
  10:7 11:5,13
  12:4,10,18,22
  13:5,25 14:7
  14:22 15:1
  16:13,19,24
  17:24,25 18:3
  18:10,21,24
  19:8,21 20:2,6
  20:17 21:13
  22:6,17 23:10
  23:18,21 24:6
  24:16 25:3,19
  26:2,9,17 27:4
  27:9,18 28:25
  29:1
**honor's** 10:18
**hope** 27:13
**hopeful** 15:3
**hours** 19:8
**house** 5:3
**huge** 7:11
**hyde** 2:25 30:3
  30:8

**i**

**idea** 13:9
**ideas** 23:1
**identified** 21:7
**identify** 21:20
**illiquid** 7:1
  23:25 27:23,25
**immediate** 7:2
**implement** 9:9
  9:22 11:1
**implementati...**
  10:1
**important** 20:6
**include** 16:9
  21:16
**included** 17:13
**incorporate**
  19:15
**incredible**
  24:10
**indicated** 19:5
**indiscernible**
  8:19
**instance** 20:18
  23:24
**intend** 8:11
**intention** 25:3
**interest** 27:25
**interests** 28:1,1
**investment** 4:2
  4:9
**iovine** 5:11
  28:7,8,8,16
**issue** 12:8
  13:12,14,22
  14:8 15:17,25
  16:25 17:25

  27:12,20
**issues** 7:19,22
  10:13,18 12:9
  12:17 28:22

**j**

**january** 20:1
**jason** 5:11 28:8
**joel** 4:20 8:4,16
**johan** 5:13
**joined** 11:15
**joint** 9:24
**judge** 1:23
  11:11 14:7
**july** 17:10 19:7
**june** 17:10
**justice** 5:1

**k**

**keenly** 15:18
**keep** 27:3,14
**kielty** 23:23
**kind** 13:8
**kirkland** 3:3
  6:7 8:25 17:23
  18:22
**knew** 13:20
**know** 7:10,25
  9:7,16,20 12:2
  12:17,17 13:3
  18:12 19:13,21
  20:12,22 21:1
  21:1,7,9 22:3
  22:17,20,21,24
  24:12,16,23
  26:13 27:8,24
  28:18

**knowing** 17:13
**known** 19:2
  21:23 23:7
**koenig** 3:9 6:17
  6:22
**kwasteniet** 3:8
  6:6,7,9,10,17
  6:21 7:20 8:14
  8:24,25 9:15
  10:3 11:23
  18:21,21 19:20
  20:2,5,17
  21:13 23:10,18
  24:5,9 25:18
  26:2,6,9,14,16
  26:25 27:4
  29:1

**l**

**law** 15:22 16:3
  16:4
**lead** 26:22
**learned** 27:2
**leaving** 24:10
  24:11
**ledanski** 2:25
  30:3,8
**legal** 15:25
  18:10 30:20
**lennon** 4:6
**letter** 8:7,10,18
  14:25
**level** 6:24
**lexington** 3:5
**light** 16:8
**limited** 12:5
**line** 7:7,23
  15:11

liquid   25:1
  26:16 27:23
liquidation
  24:7 25:7
lisa   3:25 11:15
listed   13:10
literally   19:8
litigation   7:2
  28:1,1
little   11:16
live   17:25
llc   1:7
llp   3:3,11,13,19
  4:1,8
long   13:16
look   7:13 11:4
  17:1
looked   22:25
looking   24:15
looks   28:18
los   3:15
lot   12:15

**m**

made   24:18,24
madison   4:10
main   22:19
make   9:19
  15:23 16:14,14
  18:11,22 25:2
  25:18,21
making   9:18
manage   22:24
  23:8 25:6
management
  21:17
manager   21:21
  21:22,24 22:3

22:13 23:3
  24:21
managing
  22:21
mario   4:13
mark   5:8
market   28:10
  28:21
marketing
  23:19,24 24:13
  24:17 25:4,6
  28:9,13
martin   1:22
material   25:23
maths   15:10
matter   1:5
mccarrick
  17:21,23,23
  18:17,18
mccarter   3:19
mcdermott
  4:15 8:16
mean   11:6
  13:16,20
meet   12:7
  14:20 16:18
members
  26:25
mg   1:3
mineco   12:14
  13:9,10
mineola   30:23
mining   12:16
  13:2 16:8
  19:10 20:23
  21:16,19,21,22
  21:23 22:2,3

22:13,22 23:3
  23:8,14,17
  24:3,5,11,13
  24:20 25:7
  26:11 28:2,3
  28:18
miningco   10:1
  13:13 16:9
  18:7 28:4
minute   8:6
mister   14:24
monday   20:14
monetization
  7:1
monetize   23:25
monetized
  27:25
morning   7:10
  8:15
motion   7:5,23
  7:25 9:23,24
  11:1,17 12:24
  13:9 14:8,12
  16:23 19:12
  20:4 24:25
  25:21 28:5
mouths   17:4
move   20:7

**n**

n   3:1 6:1 30:1
necessary   9:18
need   6:13 8:19
  17:5 24:24
  26:11
needed   17:19
negative   25:23
  28:10

network   1:7
neutral   26:17
never   24:22
new   1:2,13 3:6
  3:22 4:4,11,18
  5:5 11:2,24,25
  15:23 22:24,25
  23:16 24:17
  26:23
newco   17:6,11
  18:4 21:20
  22:3,22 23:4,5
  25:5 26:10,12
  28:2,17
news   6:11,18
  6:22 22:8
note   7:6
noted   17:25
  18:3
notice   9:7,24
november
  10:19
number   12:3,4
ny   1:13 3:6,22
  4:4,11,18 5:5
  30:23

**o**

o   1:21 6:1 30:1
o'clock   9:14
object   7:22
  11:17 26:23
objection   8:19
  9:13 10:6
  11:23 14:19
  18:2
objections   9:12
  12:1

| | | | |
|---|---|---|---|
| objects 7:25 | parties 9:6 | plans 9:18 | price 15:11 |
| obviates 6:13 | 11:11 | pleading 7:21 | 28:11,21 |
| obviously 7:24 | partner 11:15 | please 27:3 | pro 5:11,12,13 |
| 9:11 11:9 | 22:23 | pleased 7:15 | 15:7 17:3 28:8 |
| 16:24 | partnering | plural 15:18 | procedure |
| occur 15:9 | 22:9 | pm 1:16 29:4 | 13:15 15:22 |
| occurred 17:9 | partners 4:16 | point 10:13 | procedures |
| offer 25:11,11 | path 25:5 | 16:5,10 28:9 | 7:14 9:2,5,8,17 |
| offered 25:11 | paul 17:3 | 28:16,20 | 9:21 11:25 |
| official 3:12 | pay 11:9 | points 16:14 | 19:14,15 20:19 |
| okay 7:18 8:12 | people 7:12 | portion 13:9 | 20:25 21:20 |
| 10:4 11:6 | 8:21 23:1 | 15:13 | proceeded |
| 16:10 17:2 | 24:22,22 | position 11:18 | 17:12 |
| 27:13 | permission | 13:20,22 16:6 | proceeding |
| old 30:21 | 22:12 | 16:8 20:15 | 11:16 |
| once 9:16 | permit 13:1 | 25:22 26:3,4 | proceedings |
| 15:10 22:7 | perspective | 27:2 | 29:3 30:4 |
| ones 14:8 | 9:10 22:18 | possible 7:8,13 | process 23:19 |
| operation 13:1 | 24:18 | 16:1,2,8,15,22 | 23:24 24:13,17 |
| 13:13,19 16:9 | persuaded | 27:15 | 25:4 |
| 17:7 | 17:19 | pre 17:11 19:6 | produce 18:1 |
| opposite 24:22 | petition 7:11 | preclearance | profitable |
| order 9:25 | 28:11 | 19:10 | 28:18 |
| 15:6 19:9 | phone 19:7 | preferred 23:3 | projected |
| orderly 27:21 | 24:14 | 24:20 | 25:14,15 26:7 |
| 28:5 | pick 22:23 | premium 7:11 | promotes 13:9 |
| outcome 28:12 | pitching 23:1 | prepared 8:1 | proposal 12:2 |
| 28:14 | pivoted 19:12 | 25:18 | 13:11,18 22:21 |
| | placed 7:11 | preparing | proposed 7:14 |
| **p** | plan 8:18 9:2,9 | 11:17 | 9:1 18:7,7 21:8 |
| p 3:1,1 6:1 | 9:21,22 11:2 | present 9:1,11 | 21:21 23:14 |
| paper 7:17 | 11:19,21 15:9 | presenting | 25:12,24 |
| part 13:1 21:20 | 16:7,16 17:13 | 7:13 | proposing |
| 21:25 23:5 | 18:9 19:4 | preview 10:9 | 15:23 19:13 |
| 25:8 | 20:20 21:12,14 | previewed | proverbial |
| particulars | 21:18 22:5 | 10:14 13:23 | 19:22 |
| 25:25 | 25:16 | | |

provide 14:18
  14:21
public 13:18
  16:9 20:23,24
publicly 13:10
  23:16
puntus 23:23
purpose 22:19
purposes 17:20
pursue 19:4
pursuit 7:1
pushed 20:1
  28:10
put 14:8,25
  17:4 18:19
  27:20

**q**

question 8:7
  10:17,20,24
  15:21 20:8
  23:12 24:3,3
  25:9 26:20
quick 13:14
quickly 19:12
quinn 4:8

**r**

r 1:21 3:1 6:1
  30:1
raised 10:24
  11:12 12:17
  15:6 27:15
  28:7
ran 23:19,23
rather 23:16
reached 6:12
  6:25 7:16

19:16,21
read 14:3
really 13:6
  15:25 22:1
reason 17:17
  28:23
reasons 18:3
rebecca 5:12
record 8:25
  12:13 30:4
recoveries
  25:13 26:5
recovery 4:2,9
  15:14 27:24
reduced 26:11
regarding
  12:14
regulatory 9:3
  24:23
related 2:2
  10:2
relating 12:2,6
relevance
  12:11,23 18:2
relevant 14:20
  18:6
relief 10:2
remarks 18:22
remember 24:2
reopening 25:3
report 7:15
represent
  23:22
request 6:3
require 15:23
required 11:3
  20:16,18 26:24

resolution 6:13
  7:16 26:22
resolve 27:12
resolved 28:24
respect 12:22
  13:8 19:10
respond 8:1
response 18:22
rest 20:24 22:1
result 25:13
  26:4
retail 3:20
  11:14
rewind 28:20
right 6:2 8:20
  9:14 14:23
  18:16 20:8
  21:17 22:6,19
  23:3,5,25 24:8
  25:15 26:19
  27:9,15 28:6
  28:22
rights 27:24
road 30:21
robert 27:19
role 21:8
ross 3:8 6:7
  8:24 18:21
roughly 7:10
rules 20:11
run 24:17

**s**

s 2:2 3:1 6:1
sale 23:14 24:3
saying 7:21
  8:10,18 14:14
  19:9

scenarios 28:2
scheduled 6:3
scheduling 2:1
scope 26:10
screen 10:5
  19:24
se 5:11,12,13
  15:7 17:3 28:8
sec 6:22 12:6
  12:12,23,25
  13:15,17 14:11
  14:18 16:8
  17:6,9,11,24
  18:3,4,25 19:6
  19:7 22:7
sec's 20:20
second 7:18
  8:3
see 8:13 10:4
  12:20 13:24
  15:6 16:4
  17:20 22:20
  23:24 26:21
  27:14
seeing 11:4
seek 8:11 24:25
seeks 11:1
seems 19:1
sell 24:12
sense 11:22
sentence 10:8
sentences
  10:10,12
separate 22:15
sequential
  24:18

seriously  11:7
serve  12:5
    22:13
setting  28:23
seventh  4:3
shara  5:7
share  15:25
shift  16:10
show  18:12
signature  30:7
significant
    15:13
significantly
    15:15
simon  15:7
solicit  17:13
solicitation
    11:3 15:24
    26:24
solicited  24:1,5
solution  27:15
solutions  25:25
    30:20
somebody  7:25
somewhat  21:8
sonya  2:25
    30:3,8
soon  7:8,13,17
    9:20 15:20
    16:1,2,7,15,22
sort  18:12
sounds  14:23
south  3:14
southern  1:2
speak  7:20,24
    22:12 27:5

speaks  27:19
spoken  18:17
    27:10
spring  22:19
    22:20
squarely  16:23
    20:19,20 27:20
staking  13:1,13
    13:19 16:9
    17:7
standpoint
    7:25
start  6:7 28:19
starting  20:13
    20:14
statement  11:3
    11:20 13:25
    15:24 18:8
    21:6,12,14,18
    25:17 26:8,24
states  1:1,11
    5:1,2
stealing  6:23
step  8:12
steps  19:22
stock  28:3,3
stop  8:5
story  22:17
street  3:14
structure
    25:13
styled  9:24
subject  9:16
    18:1
submissions
    12:15

submitted
    25:19,20 27:19
subordination
    15:12
substantial
    20:1
suffice  10:11
suggest  24:16
suggested  8:7
suggesting
    10:21
suite  30:22
sullivan  4:8
supplement
    7:4
supplementing
    19:14
support  25:21
suppose  7:20
    25:9
sure  6:9 10:10
    10:22,25 14:13
    23:7 27:6,7
surprise  10:15
surprised
    10:16

**t**

t  30:1,1
t.j.  17:23
table  24:12
take  16:6,11
    20:23 28:19
taken  13:21
talking  27:3,14
team  26:25
    27:1

telephonically
    3:8,9,17,24,25
    4:6,13,20,21
    5:7,8,10
tell  6:22 21:9
ten  9:7,7
terms  6:25 7:5
    7:16 21:21
testify  23:23
testimony
    23:21
thank  8:20
    11:5 15:5
    16:12 18:20
    28:6,25 29:1
thanks  18:16
theory  19:2
thing  12:22
    15:16 21:17
    22:6
things  27:22
think  7:9 12:13
    12:18,21 13:12
    13:22 15:17
    16:5,20 17:7
    17:15 18:12
    19:3,13 20:19
    21:9 23:20,22
    26:18
thought  6:17
three  27:22
thunder  6:23
thursday  19:25
    20:14,15
time  13:16,21
    21:10 28:20

timeline  17:8
timing  12:1
tiptoeing  17:16
today  7:21
8:10 11:15
28:18,23
today's  6:14
15:17
toggle  11:19
told  6:17 24:22
24:22
tomorrow  9:13
11:18
top  15:10
towards  22:10
traded  23:17
trading  7:9
transaction  9:4
10:1 11:1 17:7
17:12 18:5,7
20:23 21:7
25:12 26:10
transcribed
2:25
transcript  30:4
transcripts
14:6,7
trepidation
23:11
trial  19:6
tried  26:21
true  30:4
trust  28:1
trustee  5:2
10:5 11:18
26:21,23

trying  15:19
16:7 19:23
two  10:8,10,12
11:11 12:4
19:13 20:13

**u**

u.s.  1:23 10:5
11:18 15:12
21:7,23,25
22:6,12 23:2,7
24:20 26:21,23
ucc  6:24 17:10
17:12
under  11:3
15:12 27:21
28:2,4
underlying
25:9
understand
11:8 13:12
understanding
19:25
understood
17:22
undoubtedly
23:12
unfortunate
20:21
unfortunately
22:10
united  1:1,11
5:1,2
unsecured  3:12
update  6:8,15
urquhart  4:8
use  25:15

using  2:1

**v**

value  15:8,15
24:11 28:15,17
values  24:7
vanderbilt
4:17
various  23:25
veritext  30:20
viewing  10:25

**w**

waiting  12:8
want  6:19
11:10 16:19
17:4,16 24:19
24:19
wanted  8:8
15:8 28:9,16
wanting  24:16
warranted
18:11
way  22:18
we've  6:12 7:2
7:16 15:10
19:5,15 24:18
week  7:5,14
19:20 20:13
weeks  19:13
went  25:5
white  3:11,13
27:1
wilkie  4:1
winddown
7:14 9:1,5,8,17
9:20 11:25
19:14,15 20:19

20:25 21:3,6
21:20 25:24
27:22 28:5
wish  11:19
wishes  18:18
wonder  13:7
word  25:15
words  17:4
work  21:2 22:2
22:14,17,24
working  7:3
22:9
world  8:8
worse  15:15
26:17
wrapped  16:1
write  22:21

**x**

x  1:4,10

**y**

yeah  6:21
14:10
yesterday  12:7
14:20 16:18
27:2,10
york  1:2,13 3:6
3:22 4:4,11,18
5:5

**z**

zoom  2:1