Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| | **Re Docket No. 3671** |

**DEBTORS' OBJECTION TO THE APPLICATION OF
THE BORROWER AD HOC GROUP FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§503(B)(3)(D) AND 503(B)(3)(4), FOR ALLOWNACE
AND REIMBURSEMENT OF PROFESSIONAL FEES AND ACTUAL, NECESSARY
EXPENSES IN MAKING A SUBSTANTIAL CONTRIBUTION TO THESE CASES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" and

together with their non-debtor affiliates, collectively, "Celsius") file this objection

(the "Objection") to the *Application of the Borrower Ad Hoc Group for Entry of an Order*

*Pursuant to 11 U.S.C. §§503(b)(3)(D) and 5503(b)(4), for Allowance and Reimbursement of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution to These Cases* [Docket No. 3671] (the "Application") filed by the Ad Hoc Group of Borrowers (the "Borrower Ad Hoc Group").  In support of this Objection, the Debtors state the following.

## Introduction

1.      As outlined in the *Debtors' Omnibus Objection to Certain Applications for Substantial Contribution to the Debtors' Estates* [Docket No. 4025] (the "Omnibus Objection"), creditor participation in these Chapter 11 Cases has been robust.  Because of the significant benefits provided by certain creditors, the Debtors are not objecting to the substantial contribution applications of those certain parties that were instrumental in key plan negotiations and worked to move these cases forward not only for their own benefit, but for creditors generally (collectively, the "Supported Applications").[2]

2.      On October 2, 2023, the Borrower Ad Hoc Group filed its Application seeking reimbursement of costs it incurred for alleged "substantial contributions" to these Chapter 11 Cases.  The Borrower Ad Hoc Group argues that it substantially contributed to these Chapter 11 Cases by seeking the removal of prior management at the outset of these Chapter 11 Cases, filing an adversary proceeding to determine the Borrower Ad Hoc Group's rights and remedies, and

---

[2]    The Supported Applications include:  (a) *Application of Ad Hoc Group of Earn Account Holders Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution* [Docket No. 3654] (the "Earn Ad Hoc Group Application"); (b) *Application of the Custody Ad Hoc Group, Pursuant to Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, for Allowance and Payment of Professional Fees and Expenses* [Docket No. 3660] (the "Custody Ad Hoc Group Application"); (c) *Application of the Ad Hoc Group of Withhold Account Holders for Allowance and Payment of Fees Under Bankruptcy Code Sections 503(b)(3)(D) and 503(b)(4)* [Docket No. 3663] (the "Withhold Application"); (d) *Application of Ignat Tuganov for Entry of an Order, Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4), for Allowance and Reimbursement of Reasonable Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution to These Cases* [Docket No. 3666] (the "Tuganov Application"); (e) *Application of Immanuel Herrmann Pursuant to 11 U.S.C. § 503 for Allowance and Payment of Expenses Incurred in Making a Substantial Contribution* [Docket No. 3674] (the "Herrmann Application"); and (f) *Daniel A. Frishberg'[s] Motion for Expenses and Fees to Be Paid for a Substantial Contribution to the Estate* [Docket No. 3675] (the "Frishberg Application").

participating in the negotiations and mediation, which resulted in the Retail Borrower Settlement. The Borrower Ad Hoc Group, represented by McCarter & English, LLP, requests administrative expenses in the amount of (a) $1,018,265.50 in legal fees and (b) $1,957.97 in expenses.  The Debtors initially did not object to the Borrower Ad Hoc Group's Application given the Debtors' obligations pursuant to the *Joint Motion for Entry of an Order (I) Approving the Settlement by and among the Debtors and the Committee with Respect to the Committee's Class Claim and (II) Granting Related Relief* [Docket No. 3064], Ex. B (the "Settlement Term Sheet").  Moreover, at the time that the Borrower Ad Hoc Group filed the application, the Debtors were focused on its participation in the plan mediation with the Debtors, the Committee, the Ad Hoc Group of Earn Account Holders (the "Earn Ad Hoc Group"), and certain individual Earn Account Holders, which resulted in a full and final settlement regarding the treatment of Retail Borrower Deposit Claims and Earn Claims and resolved several pending adversary proceedings (the "Retail Borrower Settlement").[3]  But, importantly, since the Application was filed, the Borrower Ad Hoc Group violated its obligations under the Settlement Term Sheet, and in so doing, revealed that the Borrower Ad Hoc Group has not "acted to benefit all parties in the case."  *In re Dana Corp.,* 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008).  Indeed, it appears that the Borrower Ad Hoc Group is not even acting for retail borrowers as a whole, but instead are working to advance the interests of the five members of its steering committee.

3.    Specifically, just after the Plan was confirmed, the Securities and Exchange Commission announced that it would not approve the NewCo Transaction[4] pursuant to

---

[3]    *Memorandum Opinion Approving the Settlement Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders* [Docket No. 3074].

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

the Debtors' *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (the "<u>Plan</u>"). As a result, the Debtors and the Committee filed the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] requesting that the Court approve an alternate transaction to create a publicly traded, stand-alone bitcoin mining company and provide distributions to creditors in the forms of: (a) Liquid Cryptocurrency; (b) Backup MiningCo Common Stock; (c) Illiquid Recovery Rights; and (d) Litigation Proceeds (such transaction, the "<u>MiningCo Transaction</u>," and such motion, the "<u>Wind-Down Motion</u>").

4.      Shortly thereafter, the Borrower Ad Hoc Group filed the *Preliminary Opposition of the Ad Hoc Group of Borrowers to the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4100] (the "<u>Wind-Down Objection</u>"),[5] arguing that the Debtors should implement the Orderly Wind Down as described in the Plan or provide further disclosures and support for their proposed MiningCo Transaction. The Wind-Down Objection presented a single-minded focus on maximizing Liquid Cryptocurrency distributions for the Borrower Ad Hoc Group's own tax purposes (and so they could try to refinance their loans to avoid negative tax consequences) and sought to destroy the value of the MiningCo to the detriment of all creditors

---

[5]      The Borrower Ad Hoc Group subsequently filed the *Supplemental Objection of the Ad Hoc Group of Borrowers to the Supplemental Joint Statement Regarding the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief (ECF Doc. #4115)* [Docket No. 4122] and the *Declaration of Christopher Villinger* [Docket No. 4123], further supplementing its Wind-Down Objection.

for only a slight increase in Liquid Cryptocurrency.[6]  Notably, the Borrower Ad Hoc Group was the only significant economic stakeholder of the Debtors to object to the Wind Down Motion.[7]

5.      The Court held a lengthy hearing on December 21, 2023, to consider the Wind Down Motion, during which the Borrower Ad Hoc Group prosecuted the Wind-Down Objection. Nevertheless, the Court, on December 27, 2023, issued its *Memorandum Opinion Granting the Wind-Down Motion of Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4171] and entered the Order[8] approving the Wind Down Motion.

6.      Rather than supporting the efforts of the Debtors and the Committee to secure approval of the MiningCo Transaction, the Borrower Ad Hoc Group's Wind-Down Objection and accompanying pleadings did nothing other than attempt to stall the Debtors' emergence and seek to extract hold up value from the Debtors' Estates for its own parochial interests, even at the expense of its broad creditor base.  As such, the Debtors are objecting to the Borrower Ad Hoc Group's Application.

7.      While section 503(b)(3)(D) of the Bankruptcy Code allows for administrative expense status for reasonable professional fees or expenses incurred by certain parties in making

---

[6]     *See Declaration of Robert Campagna in Support of Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4051] Ex. A (demonstrating the decreased in net distributable value and increase in Liquid Cryptocurrency of the Orderly Wind Down compared to the MiningCo Transaction)

[7]     The United States Trustee and creditor Cathy Lau also filed objections.  *See Objection of the United States Trustee to the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4097] and *Objection to the Mining Plan* [Docket No. 4101].

[8]     *Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4172].

a substantial contribution to chapter 11 cases, such relief is inappropriate to the extent requested in the Application for the reasons set forth herein. Accordingly, the Application should be denied.

## **Background**

8.    On September 27, 2023, the Debtors filed the latest version of the Plan, and on October 2, 2023, the hearings to consider confirmation of the Plan (the "Confirmation Hearing") commenced.

9.    Pursuant to the Confirmation Schedule filed on September 19, 2023,[9] the Borrower Ad Hoc Group filed their Application on October 2, 2023.

10.    On November 9, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972].

11.    Pursuant to the Confirmation Schedule,[10] the Debtors filed the Omnibus Objection on November 22, 2023.

12.    On November 30, 2023, the Debtors and the Committee filed the Wind-Down Motion. Subsequently, on December 14, 2023, the Borrower Ad Hoc Group filed the Wind-Down Objection and further supplemented its Wind-Down Objection with additional pleadings on December 19, 2023.

13.    After further review of the Borrower Ad Hoc Group's Application, the Debtors file this Objection to the Application.

---

[9]    *See Notice of Further Revised Schedule for Substantive Contribution Applications* [Docket No. 3498].

[10]    The hearing on the Applications was adjourned to January 11, 2024 and the deadline to file replies in support of the substantive contribution applications was extended to January 4, 2024. *See Notice of Adjournment Regarding the Hearing to Consider the Substantial Contribution Applications* [Docket No. 4093].

**Objection**

14.     Section 503(b)(4) of the Bankruptcy Code provides for the payment of "reasonable compensation for professional services rendered by an attorney or an accountant of any entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection[.]"  11 U.S.C. § 503(b)(4).  Accordingly, the Court need not consider whether an entity is entitled to administrative expense treatment of its professional fees until the entity is deemed to have an administrative expense claim under the applicable subparagraph of section 503(b)(3) of the Bankruptcy Code.

15.     Section 503(b)(3)(D) of the Bankruptcy Code provides, in relevant part, for the administrative expense treatment of:

> the actual, necessary expenses, . . . incurred by a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . in making a *substantial contribution* in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D) (emphasis added).

16.     The term "substantial contribution" is not defined in the Bankruptcy Code.  In determining whether a party has made a "substantial contribution" within the meaning of section 503(b)(3)(D) of the Bankruptcy Code, however, courts have found that "the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors."  *In re Lebron v. Mecham Fin. Inc.*, 27 F.3d 937, 944 (3d. Cir. 1994) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).

17.     To be entitled to a payment as a substantial contribution, the applicant must "demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case."  *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008).   Compensation for substantial contribution is "designed to promote meaningful participation in the reorganization

process, but at the same time, discourage mushrooming administrative expenses." *In re Synergy Pharms. Inc.*, 621 B.R. 588, 609 (Bankr. S.D.N.Y. 2020) (quoting *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997). As such, courts in the Second Circuit narrowly construe section 503 of the Bankruptcy Code. *See Granite Partners*, 213 B.R. at 445 ("[T]he substantial contribution provisions must be narrowly construed and do not change the basic rule that the attorney must look to his own client for payment.") (internal citations omitted); *see also In re Best Prods. Co., Inc.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994) ("[E]xtensive participation in a case, without more, is insufficient to compel compensation . . . The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate."); *In re Bayou Grp., LLC*, 431 B.R. 549, 558 (Bankr. S.D.N.Y. 2010) ("[P]riorities must be narrowly construed in light of the presumption in bankruptcy cases that the debtor's limited resources will be equally distributed among all unsecured creditors.").

I.     **The Borrower Ad Hoc Group Has Not Satisfied Its Burden of Demonstrating That It Made a Substantial Contribution to the Debtors' Estates.**

18.     When analyzing a request for substantial contribution, courts in the Second Circuit consider various factors, including "(i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case." *In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014) (citing *Trade Creditor Grp. v. L.J. Hooker Corp., Inc.* (*In re Hooker Invs., Inc.*), 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd*, 109 F.3d 349 (2d. Cir. 1996); *In re Best Prods. Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994)). Analyzing these factors demonstrates that the Borrower Ad Hoc Group's actions were self-interested and that the respective acts and services

the Borrower Ad Hoc Group alleges benefitted the Debtors' Estates were duplicative of services
rendered by Estate professionals.

> ### A.    The Borrower Ad Hoc Group Acted Primarily in Its Own Self Interest, and Any Benefit to the Debtors' Estates Is Incidental.

19.    For a creditor's services to be considered a substantial contribution, "the benefit
received by the estate must be more than an incidental one arising from activities the applicant has
pursued in protecting his or her own interests." *Dana Corp.*, 390 B.R. at 108. "Creditors face an
especially difficult burden in passing the 'substantial contribution' test since they are presumed to
act primarily for their own interests." *Id.* A creditor's self-interested act does not justify a
substantial contribution award even if it indirectly benefitted the debtor's estate. *Id.*; *see also In
re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW), 2019 WL 4555990, at *12 (Bankr.
S.D.N.Y. Sept. 19, 2019) ("A creditor does not need to be completely altruistic, but where a
creditor's actions have been performed primarily to protect the creditor's own interests no
'substantial contribution' claim is appropriate."); *Granite Partners*, 213 B.R. at 446 ("[S]ervices
calculated primarily to benefit the client do not justify an award even if they also conferred an
indirect benefit on the estate.").

20.    Courts in the Second Circuit have noted that a creditor's motive in contributing to
the estate is not outcome determinative. *See Bayou Grp.*, 431 B.R. at 561 (noting that a creditor's
mere motive should not determine the outcome) (citing *In re DP Partners Ltd. Pshp,* 106 F.3d
667, 673 (5th Cir. 1997); *In re Pow Wow River Campground, Inc.*, 296 B.R. 81, 86 (Bankr. D.N.H.
2003)). Rather, the analysis "focuses on process as much as on contribution, on the movant's
substantial contribution in *the case*—that is, the entire chapter 11 case—and, generally speaking,
the proper administration of the case as a whole rarely contemplates individual creditors or even
unofficial committees contributing to *the case*." *Bayou Grp.*, 431 B.R. at 561. "Third parties, who

generally represent only their clients' interests and only indirectly contribute to the case's administration, therefore normally would not be compensated by the estate on an administrative priority basis." *Id.*

21.    Here, the Borrower Ad Hoc Group fails to demonstrate that its services were pursued for the benefit of the Debtors' Chapter 11 Cases such that it is entitled to a substantial contribution award.  To the contrary, the services performed by counsel to the Borrower Ad Hoc Group were self-interested and only inured to the benefit of a smaller subset of the Debtors' creditors.  For example, the Borrower Ad Hoc Group's Wind-Down Objection sought to destroy the value of the MiningCo to the detriment of all creditors for only a slight increase in Liquid Cryptocurrency to the benefit of the Borrower Ad Hoc Group's own tax purposes (and so they could try to refinance their loans to avoid negative tax consequences).[11]  It is inappropriate under the facts and circumstances of these Chapter 11 Cases to award this sixteen-person ad hoc group for its efforts, as section 503(b) of the Bankruptcy Code cannot "be relied on to reward creditors and unofficial committees who merely furthered their own or their constituents' interests, the Code having established other claims and priorities for such expenses." *Bayou Grp.*, 431 B.R. at 561–62.

22.    While the Application alleges at surface level that the services rendered by counsel to the Borrower Ad Hoc Group were necessary to "reach the right result for the Borrowers,"[12] the Application fails to indicate that the Debtors' and the Committee's counsel ineffectively

---

[11]    The Borrower Ad Hoc Group consists of thirty-three Celsius creditors, *see Verified Statement Pursuant to Bankruptcy Rule 2019* [Docket No. 1920], Ex. A (listing the members of the Borrower Ad Hoc Group), although counsel to the Borrower Ad Hoc Group represented at the December 21, 2023, hearing that his group included approximately seventy members. *See* Dec. 21, 2023 Hr'g Tr., 112:12—14 ("The Court: How many members of your Ad Hoc Committee.  Mr. Adler:  Approximately 70 I believe.").

[12]    *See* Application, ¶ 12.

represented the interests of the Borrower Ad Hoc Group and the Debtors' Estates. Rather, the Borrower Ad Hoc Group voluntarily interjected itself into the Debtors' reorganization process to further its members' respective self-interests and ensure that the Borrower Ad Hoc Group's members would obtain the largest recovery possible in these Chapter 11 Cases. The Debtors' Estates should not be burdened by the Borrower Ad Hoc Group's fees and expenses incurred on account of their self-interested participation in these Chapter 11 Cases, especially in light of the Borrower Ad Hoc Group's objection to the Wind-Down Motion, which only serves to extract value from the Debtors' Estates and further delay the Debtors' emergence from these Chapter 11 Cases.

**B.      The Borrower Ad Hoc Group Failed to Demonstrate Actual, Significant Benefits Conferred to the Debtors' Estates.**

23.      Substantial contribution awards under section 503 of the Bankruptcy Code are "reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *Dana Corp.*, 390 B.R. at 108. Services that substantially contribute to a chapter 11 case are those which foster and enhance, rather than retard or interrupt the progress of reorganization." *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981).

24.      The Borrower Ad Hoc Group fails to demonstrate that its services directly benefitted the Debtors' Estates in a way that rises to a substantial contribution. While the Borrower Ad Hoc Group's actions, such as filing an adversary proceeding to determine the rights and remedies of the Borrower Ad Hoc Group and participating in mediation and settlement negotiations with Estate professionals furthered the interests of the Borrower Ad Hoc Group and similarly-situated creditors, it has failed to demonstrate how its actions provided a substantial, demonstrable benefit to the Debtors' Estates and these Chapter 11 Cases as a whole, as demonstrated by the Wind-Down Objection that was approved only by the five-member steering

committee purportedly on behalf of the entire Borrower Ad Hoc Group.  Dec. 21, 2023 Hr'g Tr.

112:12-113:21 ("Mr. Adler:  All five members of the steering Committee [voted to object].  The

Court:  I didn't ask about the steering Committee.  […] did the whole Ad Hoc Committee vote

whether to file objections?  Mr. Adler:  No.").  The adversary proceeding to determine the rights

and remedies of the Borrower Ad Hoc Group conferred negligible, if any, benefit to the Debtors'

Estates—in fact, it was never adjudicated and only sought to advance the interests of the Borrower

Ad Hoc Group, not the borrower group as a whole.  Moreover, the Retail Borrower Settlement

was successful due to the *combined* efforts of the Debtors, the Committee, the Earn Ad Hoc Group,

and the Borrower Ad Hoc Group.  The Borrower Ad Hoc Group's participation in such settlement

was limited to its representation and advocacy for its members and other similarly-situated

creditors.

25.    As such, the Borrower Ad Hoc Group has not met its burden demonstrating

anything more than an incidental benefit to the Debtors' Estates through its services in these

Chapter 11 Cases.

**C.    Even If the Borrower Ad Hoc Group's Services Benefitted the Debtors' Estates, Such Services Were Duplicative of Services Rendered by Estate Professionals.**

26.    Even assuming the Borrower Ad Hoc Group's services rise to the level of

"substantial contribution," contrary to the Borrower Ad Hoc Group's assertion otherwise, many of

its services were duplicative of services already provided by Estate professionals.

27.    In a majority of chapter 11 cases where courts have allowed a creditor's substantial

contribution claim, courts have "found that the creditor played a leadership role that normally

would be expected of an estate-compensated professional *but was not so performed.*"  *In re Bayou*

*Grp., LLC*, 431 B.R. 549, 562 (Bankr. S.D.N.Y. 2010).  For example, such cases "involved a

creditor who actively facilitated the negotiation and successful confirmation of the chapter 11 plan

or, in opposing a plan, brought about the confirmation of a more favorable plan." *Id.* Outside of the plan confirmation process, courts have allowed a substantial contribution claim "because the creditor's efforts led to a concrete, measurably monetary benefit for the estate" and such creditor "performed functions that normally would have been undertaken by estate-compensated professionals, or that had to be performed because estate compensated professionals were not doing their job." *Id.*

28.    As discussed in the Debtors' Omnibus Objection, counsel to both the Debtors and Committee undertook substantial efforts to maximize Estate value and bring these Chapter 11 Cases closer to a successful resolution.  While the Borrower Ad Hoc Group participated in these Chapter 11 Cases by forming its creditor constituency, assisting Retail Borrowers and certain Earn creditors with understanding claim requirements, and participating in the Retail Borrower Settlement, the ultimate success of these Chapter 11 Cases is overwhelmingly due to the work of Estate professionals who have a fiduciary duty to maximize the value of the Debtors' Estates. While the Borrower Ad Hoc Group asserts that its counsel's services were necessary to reach the right result for *its constituency*, [13] the Borrower Ad Hoc Group does not allege that counsel to the Debtors or the Committee are incompetent such that the Borrower Ad Hoc Group or its professionals were required to intervene for the successful administration of these Chapter 11 Cases as a whole.  As such, it cannot be said that the Borrower Ad Hoc Group's professionals provided any contributions to the Debtors' Estates not already provided for by the Debtors' and Committee's retained professionals.

---

[13]    *See* Application, ¶ 12 ("[T]he services provided by McCarter & English were not duplicative of those provided by the Debtors' or Committee's professionals, but rather were necessary in order to reach the right result *for the Borrowers*.").

29.     Based on the foregoing, the Borrower Ad Hoc Group has failed to show that it is entitled to a substantial contribution award because, even if the Borrower Ad Hoc Group's services benefitted the Debtors' Estates, such services were duplicative of those rendered by the Debtors' and the Committee's retained professionals.

## II.     The Borrower Ad Hoc Group Has Not Demonstrated that the Services Rendered Are Reasonable.

30.     In    addition    to    requesting    administrative    expense    priority    under section 503(b)(3)(D) of the Bankruptcy Code, the Borrower Ad Hoc Group requests payment of their professional fees and expenses under section 503(b)(4) of the Bankruptcy Code.

31.     Under section 503(b)(4) of the Bankruptcy Code, an entity may request payment of an administrative expense for:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(3)(4).

32.     Even if the Court determines that the Borrower Ad Hoc Group has made a substantial contribution to the Debtors' Estates, it has failed to satisfy its burden to demonstrate that the compensation requested for services rendered by its professionals is reasonable as required under section 503(b)(4) of the Bankruptcy Code.

33.     With respect to the services performed by the Borrower Ad Hoc Group, such as the negotiation and mediation of the Retail Borrower Settlement and negotiations and conversations regarding the Borrow Program, such services duplicated those of counsel to both the Debtors and Committee.  Other than the Borrower Ad Hoc Group's blanket assertion that the interests of the Borrower Ad Hoc Group's members were not protected by Estate professionals, no explanation

is advanced for the necessity of the Borrower Ad Hoc Group's participation in plan-related negotiations and the Retail Borrower Settlement given that Estate professionals were present in ongoing negotiations and adequately represented the interests of the Estates and the Debtors' creditors.

34.    Based on the foregoing, the Borrower Ad Hoc Group has not met its burden to establish that fees of their professionals were reasonable as required under section 503(b)(4) of the Bankruptcy Code.  Therefore, the Application must be denied.

## <u>Conclusion</u>

35.    For the reasons set forth herein, the Debtors request that the Court deny the Application.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter an order denying the Applications.

New York, New York
Dated: January 2, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                     ross.kwasteniet@kirkland.com
                     chris.koenig@kirkland.com
                     dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*