**Hearing Date: January 11, 2024 at 10:00 am**
**Objection Deadline: January 4, 2024 at 4:00 pm**

**VENABLE LLP**
Jeffrey S. Sabin
151 West 42nd St.
New York, New York 10036
Telephone (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com

Andrew Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

*Counsel to Ignat Tuganov*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.* | Case No. 22-10964 (MG) |
| Debtors.[1] | Jointly Administered |

**REPLY TO OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO SUBSTANTIAL CONTRIBUTION APPLICATION OF IGNAT TUGANOV**

Ignat Tuganov ("Mr. Tuganov"), a creditor of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and one of three class representatives (each a "Class

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

Representative," and collectively, the "Class Representatives") in connection with the Official Unsecured Creditors' Committee's efforts to certify the class of account holders holding non-contract claims against the Debtors, through his counsel, hereby submits this reply (the "Reply") to the Omnibus Objection of the United States Trustee ("UST") to Substantial Contribution Applications [Dkt. No. 4016] (the "UST Objection") and respectfully represents as follows:

## PRELIMINARY STATEMENT

Mr. Tuganov's application for allowance of a substantial contribution claim has been strongly supported by both the Debtors and the Committee, with both parties expressly emphasizing the contributions made by Mr. Tuganov and his counsel, Venable LLP, and the benefits they conferred upon these estates (which are now ready to have their orderly wind down plan soon become effective). More than merely the results of a negotiated settlement, the Debtors and the Committee have gone out of their way to recognize Mr. Tuganov's contributions. In the Debtors' objection to substantial contribution applications filed by other parties, the Debtors singled out Mr. Tuganov as having actually made substantial contributions to these cases, saying "[i]n particular, counsel to Ignat Tuganov . . . went above and beyond merely advocating for his client – his actions had a demonstrable impact on the Debtors' Estates. . .". Similarly, the Committee specifically identified Mr. Tuganov's participation as a Class Representative, his contributions to the Class Claim Settlement, his efforts to expand the Examiner's scope, and his counsel's role in the mediation as providing "valuable insight in addressing key issues in the construction of the Plan and Class Claim Settlement" (including advocating for the substantive consolidation of Celsius Lending LLC and Celsius Networks Lending LLC now embodied in the Debtors' Plan). Moreover, Mr. Tuganov has agreed to reduce his reimbursement request by 15%,

which is a significant reduction in an otherwise reimbursable administrative expense claim and constitutes additional substantial value being contributed to these estates.

Only the UST has objected to Mr. Tuganov's Application, and it is apparent from its objection that the UST either misread Mr. Tuganov's Application or misunderstood the claim he is making. Virtually the entire UST Objection is devoted to fees for which Mr. Tuganov is **_NOT_** seeking reimbursement. For example, Mr. Tuganov is not seeking reimbursement of fees for services rendered in connection with the filing of his proof of claim or his counsel's notice of appearance, attending the Stablecoin Motion depositions, or, importantly, seeking allowance of, and/or defending this Application. Mr. Tuganov only seeks reimbursement of fees incurred for work that he believes substantially contributed to these Debtors.

To facilitate allowance of his Application, Mr. Tuganov provided a breakdown, by category of work performed (i.e., the Work Summary), to the UST (and this Court) at the time he filed the Application. Subsequently, and at the request of the UST, Venable filed its unredacted time records, which included *all* time billed to Mr. Tuganov for services provided on this matter, not only the time for which Mr. Tuganov seeks reimbursement. The Work Summary (which has been updated to reflect fees incurred subsequent to the filing of this Application) reflects only those fees for which Mr. Tuganov is seeking reimbursement. It appears that the UST either never reviewed, or misunderstood, the Work Summary and, instead, relied solely on Venable's full (and overinclusive) time records as the basis for objecting to Mr. Tuganov's Application.

Mr. Tuganov seeks reimbursement for far less than the total fees he incurred in connection with the Debtors' cases (i.e., far less than is reflected in Venable's complete time records). He believes that his Application and the Work Summary make that clear. Both the Debtors' and the Committee's strong support of Mr. Tuganov's Application is particularly meaningful here, as they

3

and their counsel were the persons and professionals that worked closest with Mr. Tuganov and his counsel throughout these cases, and they are the constituents most familiar with the benefits Mr. Tuganov and Venable conferred upon these estates.[2] As such, Mr. Tuganov respectfully requests that this Court overrule the UST Objection as it relates to Mr. Tuganov's Application and grant Mr. Tuganov the relief he has requested therein.

## BACKGROUND

1.  On October 2, 2023, Mr. Tuganov filed his substantial contribution application [Dkt No. 3666] (the "Application")[3] for entry of an order, pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, for the allowance and reimbursement of reasonable professional fees and actual, necessary expenses in the amount of $1,389,892.46 (plus up to an additional $300,000 for work to be performed in the future)[4] for making substantial contributions to the Debtors' cases.

2.  Subsequent to the filing of the Application, Mr. Tuganov agreed with the Debtors and the Committee to reduce the amount he is seeking to have reimbursed by 15% (i.e., from $1,689,892.46 to $1,436,408.60 (the "Reduced Substantial Contribution Claim"). This is a significant reduction in his otherwise fully reimbursable claim and constitutes additional substantial value that Mr. Tuganov is contributing to these estates.

---

[2] Indeed, it was Mr. Tuganov's argument in the MiningCo Joinder (hereinafter defined) that Venable filed on his behalf on December 20, 2023 regarding the Borrower Ad Hoc Group's violation of its obligations under the Plan Term Sheet and resulting lack of standing to object to the Debtors' wind down plan that appears to have played an important role in rebutting the Borrower Ad Hoc Group's efforts to derail these cases. Reference to Mr. Tuganov's argument was recently made by the Debtors in their objection to the Borrower Ad Hoc Group's Substantial Contribution Application [Dkt. No. 4179] at ¶ 2.

[3] Capitalized terms not otherwise defined herein have the same meaning as ascribed to such terms in the Application.

[4] The Substantial Contribution Claim set forth in the Application of $1,389,892.46 was calculated as of September 11, 2023. Additional work was required to be performed by Venable under the Plan Support Agreement, and, at the time, Venable estimated that such future work would cost up to, and be capped at, an additional $300,000. Thus, the total amount Mr. Tuganov sought to have reimbursed in the Application was $1,689,892.46.

3. On November 22, 2023, the Debtors filed an objection to certain substantial contribution applications but *expressly supported* Mr. Tuganov's Application. *See Debtors' Omnibus Objection Certain Applications For Substantial Contributions to the Debtors' Cases* [Dkt. No. 4025] ¶ 2, n.6 ("In particular, counsel to Ignat Tuganov. . . went above and beyond merely advocating for his client—his actions had a demonstrable impact on the Debtors' Estates and as such, his efforts constitute a substantial contribution within the meaning of section 503 of the Bankruptcy Code. Moreover, Mr. Tuganov's counsel's [*sic*] voluntary reduced its fees by 15 percent, which will result in more funds being available for creditor recoveries. In light of such reduction and Mr. Tuganov's continued involvement and support in these Chapter 11 Cases, the Debtors therefore support the Tuganov Application").

4. On the same date, the Committee filed an objection to certain substantial contribution applications *expressly supporting* Mr. Tuganov's Application, stating:

> Ignat Tuganov and Rebecca Gallagher extensively participated in these cases. Both agreed to be Class Claim Representatives for the Committee's proposed Class Claim against the Debtors. Both individuals submitted declarations in support of the certification of the Class Claim. . . By definition, those actions were taken as a representative of the class of all account holders to establish a claim against the Debtors on behalf of that class. The Class Claim Settlement significantly streamlined distributions, reduced administrative expenses and will enable the Debtors to get funds back to creditors quicker. Those creditors' participation in achieving that settlement provided a substantial contribution to the Debtors' estates. . .
>
> Mr. Tuganov has actively participated in these cases, including determining the Examiner's scope, which expanded scope helped clarify the Debtors' prepetition conduct and provided a common set of facts through which the parties could weigh their relative rights. Mr. Tuganov's counsel also participated in the mediation that resulted in the Plan's treatment of Earn and Borrow Claims, the negotiation of the Plan Support Agreement. . . [and] also provided valuable insight in addressing key issues in the construction of the Plan and Class Claim Settlement. The Committee and the Debtors have discussed the total amount sought by Mr. Tuganov, who has agreed to reduce his fees by 15%.

*The Official Committee of Unsecured Creditors' Statement In Support of and Objection To Certain Substantial Contribution Motions* [Dkt. No. 4027] ¶¶ 5 and 7.

5

5. Both the Debtors and the Committee make it clear that their support for Mr. Tuganov's claim reflects more than simply a statement made as part of a negotiated settlement. Each of these parties clearly recognize that Mr. Tuganov and his counsel's participation in various aspects of these cases contributed significantly to resolution of key issues and helped them resolve these cases more expeditiously and effectively than had they not participated in the same manner.

6. The deadline for filing objections to applications for substantial contribution claims in these cases was November 23, 2023, and other than the UST Objection, no objections were filed against Mr. Tuganov's Application.

7. As part of the filing of Mr. Tuganov's Application, and at the UST's request, Mr. Tuganov delivered to the UST's office (and to this Court) a copy of (i) Venable's time records through September 11, 2023 (redacted only for the purpose of removing time that predated Venable's work for which Mr. Tuganov sought reimbursement and removing time that had been recorded after September 11, 2023 and not yet billed), (ii) Venable's expense records, and (iii) a Summary of Work Performed and Time Allocated (the "Work Summary") reflecting the time billed by Venable for which Mr. Tuganov was seeking reimbursement broken down by category of work performed and fees incurred in connection therewith. A copy of the Work Summary was also delivered to the Debtors and the Committee. A copy of the Work Summary is attached hereto as **Exhibit A.**

8. On November 16, 2023, Venable filed a *Supplement to the Substantial Contribution Application* [Dkt. No. 4010] (the "First Supplement") attaching its unredacted time records for services rendered for the period from October 12, 2022 through September 11, 2023 in connection with Mr. Tuganov's participation in the Debtors' cases.

6

9. On November 21, 2023, the UST filed its Objection to all applications for substantial contribution, including Mr. Tuganov's Application.

10. On December 22, 2023, Venable filed a *Second Supplement to the Substantial Contribution Application* [Dkt. No. 4158] (the "Second Supplement") attaching its unredacted time records for services rendered for the period from September 12, 2023 through November 9, 2023 (the "Confirmation Period") and an Amended Summary of Work Performed and Time Allocated (the "Amended Work Summary") incorporating the fees incurred during the Confirmation Period and reflecting a 15% consensual discount. For convenience, a copy of the Amended Work Summary is attached hereto as **Exhibit B**.[5]

11. Notably, Mr. Tuganov is ***not*** seeking reimbursement of all fees he has incurred in connection with the Debtors' cases (such as for work performed in filing his individual proof of claim or seeking allowance or defense of this Application) but only time incurred in connection with the categories set forth in the Work Summary (as supplemented by the Amended Work Summary). It appears that the UST either misread the Application, failed to review the initial Work Summary, or misunderstands that Mr. Tuganov is seeking reimbursement of only those fees incurred in connection with the categories of work set forth in the Work Summary.

12. As this Court is aware, on November 30, 2023, the Debtors and Committee filed a Joint Motion (the "Joint Motion") seeking approval for implementation of a "MiningCo Transaction" and an orderly wind down of the Debtors' non-mining operations in accordance with the Debtors' modified joint plan of reorganization. Certain creditors of these estates filed objections to the Joint Motion, including the Retail Borrowers' Ad Hoc Group (the "Borrower Ad

---

[5] Prior to the hearing on the Substantial Contribution Application, Venable intends to file a third supplement attaching time records for the period from November 10, 2023 through December 31, 2023. Together, the Second Supplement and the anticipated third supplement will substantiate Mr. Tuganov's incurrence of the $300,000 in estimated fees.

7

Hoc Group"), and both the Debtors and Committee requested Mr. Tuganov express his support for the Joint Motion and matters related thereto. In keeping with his obligations under the Plan Support Agreement, Mr. Tuganov's counsel participated in discussions with the Debtors, the Committee, the Borrower Ad Hoc Group and others to try to resolve objections to the Joint Motion and otherwise support the Joint Plan and the Joint Motion. In connection therewith, on December 20, 2023, Mr. Tuganov's counsel filed a *Statement in Support of Debtors' and Committee's Joint Motion* [Dkt. No. 4136] (the "Statement in Support"), the *Joinder to Joint Omnibus Reply of Debtors and Committee for Entry of an Order Approving Implementation of the MiningCo Transaction* [Dkt. No. 4137] (the "MiningCo Joinder"), and a *Joinder to Statement of the Official Committee of Unsecured Creditors in Support of Settlement Agreement with StakeHound S.A. and Related Transfers* [Dkt. No. 4138] (the "Stakehound Joinder" and, together with the Statement in Support and the MiningCo Joinder, collectively, the "Supporting Pleadings"). In addition, Mr. Tuganov's counsel appeared and participated in the hearing held on December 21, 2023 to consider the relief requested in the Joint Motion. Venable's work in preparing and filing the Supporting Pleadings and in participating in the December 21st hearing were both consistent with Mr. Tuganov's obligations under the Plan Support Agreement and favorably recognized by this Court. *See* 12/21/23 Hr'g Tr. 82:5; *Memorandum Opinion Granting the Wind-Down Motion of Debtors and the Committee for Entry of an Order (I) Approving Implementation of the MiningCo Transaction and (II) Related Relief* [Dkt. No. 4171] p.26.

## REPLY TO THE UST OBJECTION

13. The UST Objection, as it relates to Mr. Tuganov's Application, appears to misunderstand the facts of Mr. Tuganov's request and, Mr. Tuganov respectfully submits, incorrectly applies the legal requirements for substantial contribution applications.

8

**Factual Inaccuracies**

14.     The Objection is replete with factual errors regarding Mr. Tuganov's Application, including the following:

a. The UST claims that Mr. Tuganov's Substantial Contribution Claim is in the amount of $1,707,396.30 (*not including* the $300,000 of estimated future fees), presumably because the UST relied only on Venable's time records, assuming Mr. Tuganov was requesting reimbursement of all fees he has incurred in these cases as of September 11, 2023, and did not look at the amount actually requested in the Application. In his Application, Mr. Tuganov requested reimbursement of only **$1,383,089.00** in fees he had incurred up to that date for work he believes substantially contributed to these cases (plus an estimated $300,000 for future work required under the Plan Support Agreement). The UST misstates the initial fee request by over $320,000.

b. Virtually all the fees the UST identifies as not making a substantial contribution to these cases are fees for which Mr. Tuganov *is not seeking reimbursement*! Time billed for filing a *pro hac* application, preparing Mr. Tuganov's proofs of claim, attending depositions, work related to the Debtors' Stablecoin motion, and attendance at exclusivity hearings are not included in the Work Summary and are not included in the Application. Venable painstakingly prepared the Work Summary for the UST to make it very clear that Mr. Tuganov was only seeking reimbursement for 5 categories of work performed which he believes substantially contributed to the success of the Debtors' cases: expanding the Examiner's scope of investigation, filing the Ponzi and Substantive Consolidation Complaint, the Class Proof of Claim, the mediation and Plan/Confirmation Order formulation, and other tasks required in order to effectively participate in these categories of work. Each of these categories of work have been recognized by the Debtors and the Committee as

9

having made substantial contributions to these cases. Moreover, footnote 2 of the Work Summary makes it very clear that Mr. Tuganov is not seeking reimbursement for the cost of performing the type of activities to which the UST is objecting. Clearly, the UST did not review the Work Summary and/or misunderstood Mr. Tuganov's substantial contribution request.

    c.  The UST argues that, because it was already actively speaking to the Debtors and the Committee regarding the Examiner's scope of investigation, the pleadings Mr. Tuganov filed to expand the scope must have been solely on his behalf and not the estates. In fact, both the Debtors and the Committee *objected* to expanding the Examiner's scope, and it was not until Mr. Tuganov filed his pleadings, raising the issue of a potential Ponzi scheme and seeking an expanded scope of investigation to flesh out those facts, that this Court *ordered* the scope of the Examiner's investigation to be expanded and the Debtors and the Committee were forced to comply. The UST's negotiations did not result in a negotiated settlement nor a stipulation expanding the Examiner's scope; only Mr. Tuganov's efforts resulted in an expansion of the Examiner's scope over the Debtors' and Committee's objections. This is, in fact, the *classic example* of work performed by a creditor that makes a substantial contribution to a chapter 11 case. *See, e.g. In re Bayou Group., LLC*, 431 B.R. 549, 564-66 (Bankr. S.D.N.Y. 2010) (in a Ponzi scheme case, where an unofficial investors' committee had, prepetition, taken steps to have a receiver appointed and, postpetition, had followed a creative litigation strategy to keep the receiver in place despite objections by the UST, the court found that the committee had substantially benefitted the estate).

    d.  The UST makes a bald statement that "[t]here is no explanation as to how actions related to these activities [review of the DOJ complaint and related Ponzi Schemes] rise to the level of substantial contribution to these bankruptcy estates," even though Mr. Tuganov devotes multiple pages in his Application specifying exactly why the preparation and filing of his Ponzi/Substantive Consolidation Complaint directly led to the filing of the Class Proof of Claim, the substantive

10

consolidation of additional Debtors, the mediation of stakeholder disputes and the eventual resolution of the Debtors' cases. *See* Substantial Contribution Application ¶¶ 10 – 20.

      e.    Finally, the UST contends that Venable's time records were filed two months after the Application was filed and were redacted. That is simply not true. On November 16, 2023, Venable filed the First Supplement which had Venable's fully unredacted time records attached thereto. Prior to that, however, and with the UST's emailed consent, on October 9, 2023, Venable provided to the UST a copy of its time records and the Work Summary, which time records contained the redactions only for entries (i) that predated any work for which Mr. Tuganov was seeking reimbursement and (ii) recorded after the period for which Mr. Tuganov was seeking reimbursement and were, as yet, unbilled. Neither of these sets of redactions related to the time being sought for reimbursement in the Application and, as such, any objection based on Venable's failure to provide unredacted time records is simply disingenuous.

    15.    In fact, other than the baseless challenge to Venable's work in connection with expanding the Examiner's scope of investigation, the UST does not substantively object to any of the fees incurred by Mr. Tuganov for the five categories of work Venable performed that substantially contributed to the success of the Debtors' cases (and which the Debtors and the Committee acknowledge was beneficial). Nothing in the UST Objection challenges Venable's work in connection with the Class Proof of Claim and Mr. Tuganov's role as a Class Representative, nor does it challenge Venable's central role in calling for and participating in the mediation that led to the Plan Term Sheet and the Plan Support Agreement. It is unclear whether the UST objects to the preparation and filing of the Ponzi/Substantive Consolidation Complaint that had a role in triggering mediation and plan negotiations or simply work related to the preparation of the Ponzi/Substantive Consolidation Complaint. In either case, the UST's Objection is insufficient to counter Mr. Tuganov's claim (as supported by the Debtors and the

11

Committee) that he provided substantial benefits to these cases and the Debtors' and Committee's recognition that Mr. Tuganov and his counsel made substantial contributions to the cases.[6]

16.     Under relevant case law, Mr. Tuganov and Venable's work and participation were precisely the type of substantial contributions that section 503(b)(3) awards were intended to reimburse. *In re Synergy Pharms., Inc.*, 621 B.R. 588, 610 (Bankr. S.D.N.Y. 2020) ("[S]ervices that warrant a substantial contribution award 'generally take the form of constructive contributions in key reorganizational aspects, when *but for* the role of the creditor, the movement towards final reorganization would have been substantially diminished.'"). Accordingly, this Court should find that Mr. Tuganov made a substantial contribution to the Debtors' cases and that he is entitled to a section 503(b) award as a result.

**Form of Substantial Contribution Request**

17.     The UST also objects to the form in which Venable maintained its time records, contending that a request for allowance of an administrative expense claim requires compliance with the UST Guidelines for compensation of estate professionals. *See* UST Objection p. 28.

18.     Unlike applications for compensation of estate professionals under Bankruptcy Code section 330, nothing in section 503(b) requires an administrative expense claimant to comply with any fee application rules or guidelines. The *United States Trustee's Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* (General Order M-447) (the "UST Fee Guidelines"), which is referenced in Local Bankruptcy

---

[6] The UST contends that the Debtors' and Committee's support of Mr. Tuganov's was an "advance agreement for unknown reimbursement of fees and expenses" to "secure votes." The UST was not a party to the mediation in these cases and, therefore, is perhaps unaware that Venable provided to the Debtors and the Committee during the mediation an estimate of the fees Mr. Tuganov had incurred (which was within $100,000 of the initial fee request) and an estimate (and cap) on fees to be incurred through confirmation. Given the parties' relative involvement in these cases, it is more likely that the Debtors and the Committee were in a better position than the UST to evaluate which creditors' contributions benefitted the Debtors' reorganization process and which did not. Clearly, the Debtors and the Committee recognized the significant contributions made by Mr. Tuganov and his counsel and even made public statements to that effect.

Rule 2016-1, apply to professionals retained by the estate making interim and final fee applications under Bankruptcy Code section 330 and not to requests for administrative expense claims under section 503(b).  Indeed, when describing the content of applications governed by the UST Fee Guidelines, General Order 447 expressly states, "All applications should include sufficient detail to demonstrate compliance with the standards set forth in 11 U.S.C. § 330." *UST Fee Guidelines* § A.  Section 330 of the Bankruptcy Code, applies only to estate officers or professionals and provides, in pertinent part: "a court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 - (A) reasonable compensation . . ."  11 U.S.C. § 330(a)(1)(A). Nothing in section 330 purports to apply to allowance of administrative expense claims for non-estate professionals.

19. Moreover, section 503(b)(3) expressly applies only to non-estate professionals and does not reference section 330 at all.  The section provides, in pertinent part: "there shall be allowed administrative expenses . . . including – (3) the actual, necessary expenses. . . incurred by – (D) a creditor, indenture trustee, an equity security holder, or a committee representing creditors or equity security holders *other than a committee appointed under section 1102* of this title . . ." 11 U.S.C. § 503(b)(3)(D) (emphasis added).  Similarly, section 503(b)(4) provides for reasonable compensation to an attorney whose expense is allowable under section 503(b)(3) based on the nature and extent of the attorney's services but nothing in that section requires compliance with section 330 of the Bankruptcy Code.

20. Venable footnoted in the Work Summary that time entries had been recorded in blocks as is customary for Venable attorneys who are not appointed to represent debtors or committees in a bankruptcy case and that Venable had made a good faith effort, based on a review

13

of each time entry, to estimate the amount of time likely to have been attributable to each category of work set forth in the Work Summary. Mr. Tuganov submits that the good faith estimates are sufficient for determining the amount of fees he incurred in making substantial contributions to these cases.

**The Fees and Costs For Which Mr. Tuganov Seeks Reimbursement are Reasonable, Actual and Necessary**

21.     The standard for determining whether to allow an administrative claim for reimbursement of expenses under section 503(b) is a general "reasonableness" and "actual and necessary" standard set out in applicable substantial contribution case law. The reasonableness of professional charges is determined based on the time, nature, extent, and value of the services provided, the cost of comparable services in non-bankruptcy cases, and whether related expenses are actual and necessary. 11 U.S.C. §§ 503(b)(4).

22.     Mr. Tuganov submits that the fees of his counsel for which he is seeking reimbursement pursuant to his Substantial Contribution Application are reasonable given the nature and complexity of the Debtors' cases, relate only to work performed in connection with the beneficial contribution he and his counsel made to these cases and estates, were additive and not duplicative, have been adequately described in Venable's filed time records, and were, as set forth in more detail in his Substantial Contribution Application, necessary to the successful resolution of the Debtors' cases. *See* Debtors' Omnibus Objection ¶ 2; Committee's Objection ¶¶ 5 and 7.

23.     The UST does not claim that any of the work performed by Venable for which Mr. Tuganov actually seeks reimbursement (as opposed to all the entries to which the UST has objected for which Mr. Tuganov is *not* seeking reimbursement) was unreasonable under the circumstances, excessive, duplicative (other than its meritless challenge regarding Mr. Tuganov's efforts to expand the scope of the Examiner's investigation), or unnecessary in bringing about a resolution

14

to these cases. Indeed, the parties most intimately involved in the class claim process, the mediation, and the plan settlement negotiations, i.e., the Debtors and the Committee, each believe that Venable's participation provided substantial, additive benefit to these estates and each publicly affirmed as much in their objections to other substantial contribution applications.

24. Finally, any UST concern regarding excessive expenses or the good faith estimates of fees attributed to any single work category in the Work Summary are addressed by Mr. Tuganov's agreement to reduce his Substantial Contribution Claim by 15% (more than $250,000).

## CONCLUSION

For all the reasons set forth herein, this Court should overrule the UST Objection as it relates to Mr. Tuganov and grant Mr. Tuganov's Application.

Dated: January 4, 2024
New York, New York

VENABLE LLP

By:  /s/ Jeffrey S. Sabin
Jeffrey S. Sabin
Carol Weiner Levy
Arie Peled
151 West 42nd St.
New York, New York 10036
Telephone: (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com
Email: CWeinerLevy@venable.com
Email: APeled@venable.com

- and -

Andrew J. Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

*Counsel for Ignat Tuganov*

15