**Hearing Date: January 11 at 10:00 a.m. EST**
**Reply Deadline: January 4, 2024 at 4:00 a.m. EST**

| | |
|---|---|
| OFFIT KURMAN, P.A. | OFFIT KURMAN, P.A. |
| Jason A. Nagi | Joyce A. Kuhns (*pro hac vice*) |
| 590 Madison Avenue, 6th Floor | 1954 Greenspring Drive, Suite 605 |
| New York, NY 10022 | Timonium, Maryland 21093 |
| Telephone: (212) 545-1900 | Telephone: (410) 209-6463 |
| Jason.nagi@offitkurman.com | Jkuhns@offitkurman.com |

*Counsel to Ad Hoc Group of Earn Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                                                            :   Chapter 11
                                                                                       :
**CELSIUS NETWORK LLC, et al**[1].                     :   Case No. 22-10964 (MG)
                                                                                       :
                                                                                       :   Jointly Administered
                                                         **Debtor**        :
---------------------------------------------------------------X

**REPLY OF AD HOC GROUP OF EARN ACCOUNT HOLDERS
TO OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO
ITS APPLICATION PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR
ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES**

The Ad Hoc Group of Earn Account Holders ("**Ad Hoc Earn Group**") by its undersigned counsel (individually and collectively, the "**Applicant**"), files this Reply (the "**Reply**") to the Omnibus Objection ("**Omnibus Objection**") of the United States Trustee ("**UST**") [ECF No. 4016] to its Application Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses [ECF No. 3654] ("**Earn Application**") and, in support, states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956) (collectively, the "**Bankruptcy Cases**").

## I.    OVERVIEW

1.    The Ad Hoc Earn Group has acted since its inception based on two guiding principles, promoting parity among creditors and building consensus to achieve the speediest exit possible to cut off a $20 million monthly administrative burn[2] while obtaining the best creditor recoveries under the circumstances. Contrary to the UST's assertion in its Omnibus Objection, the Ad Hoc Earn Group and its counsel have not duplicated efforts of or attempted to act in lieu of counsel for the Debtors or the Official Committee of Unsecured Creditors ("**Committee**") who have been more than ably represented by exceptional counsel throughout, but rather in a supportive role to enhance the outcome for both Earn constituents and the overall estates.

2.    While the Applicant appreciates the role of the UST, it did not live this case the way the customer account holders did. The Ad Hoc Earn Group did an astounding thing. Although the victims of a massive fraud that in some instances took their life savings, they reached into their own pockets to help ensure the Earn customers would have a definitive role in creating consensus and parity of treatment among unsecured creditors which the Ad Hoc Earn Group believes it has achieved as more fully set forth in the Earn Application and in this Reply and in any further statements to be made and the January 11, 2024 hearing. In this Reply, Applicant will not reiterate what is in the Earn Application, but specifically address concerns raised by the UST in its Omnibus Objection regarding the adequacy of documentation with respect to certain professional time and expenses and professional and Ad Hoc Earn Group expenses.

---

[2] *See* Memorandum Opinion Granting the Wind-Down Motion of Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Related Relief (the "**Memorandum Opinion**"), at page 33, citing December 21, 2-23 Hr'g Tr. 99:15 (Kuhns); *id*. 108:18-20 (Dixon).

## II.     ARGUMENT

**A.     Offit Kurman, P.A. Has Fully Complied with the Requirements of 11 U.S.C. § 503(b) in the Earn Application as Opposed to Section 11 U.S.C. § 330 Which Only Applies to Court-Retained Professionals.**

3.      Offit Kurman, P.A. ("**Offit**"), counsel to the Ad Hoc Earn Group, is not a court-retained professional under 11 U.S.C. § 327(a) required to satisfy the specific requirements of Section 330 in seeking an award of substantial contribution as the U.S. Trustee appears to contend. It is incontrovertible that the compensation sought in the Earn Application was brought pursuant to Section 503(b). Nonetheless, mindful that Section 503(b)(4) of the Bankruptcy Code allows for reasonable compensation for professional services based on "the time, the nature, the extent, and the value of such services", Offit has provided a detailed unredacted invoice for services for which it seeks compensation by date, description of such task, timekeeper, hourly rate, hours expended per task, and the total amount sought or each time entry (the "**Invoice Detail**") to the Office of the U.S. Trustee, Debtors' counsel, counsel for the Committee, and this Court. The Invoice Detail also contains a summary of time spent by each timekeeper broken into attorney and paralegal categories. Applicant believes the information in the Invoice Detail and summary of services in the Earn Application fully satisfies the requirements of Section 503(b). Substantially contemporaneously with the filing of this Reply, Applicant is filing the Declaration of Joyce A. Kuhns in Support of the Earn Application and Reply and their respective exhibits, which includes the Invoice Detail.

4.      In addition, Applicant maintains that the U.S. Trustee Guidelines as amended at General Order M-447 only imposes the project category requirement on fees and disbursements for professionals retained in the Southern District of New York bankruptcy cases. To the extent the Court would be assisted in evaluating the Earn Application by division of time entries and to

3

"project" or "task categories," Applicant is willing to file a supplemental pleading dividing the time entries into the categories for which it seeks compensation as providing a substantial contribution to these estates.

5. Furthermore, while the Plan Treatment Term Sheet ("**Mediation Term Sheet**") entered into at the conclusion of the mediation with Judge Wiles [ECF No. 3064] contains a provision that the Plan would be amended to allow for payment for reasonable and documented expenses of the Ad Hoc Earn Group and reasonable legal expenses incurred pursuant to Section 503(b), the Debtors' and Committee's agreement to support *appropriate* requests for substantial contribution was not an impermissible *quid pro quo* for Plan support nor intended to impermissibly burden the estates with administrative expense, as the UST suggests[3]. It is noteworthy that this Bankruptcy Case is replete with joinders and statements of support with respect to a variety of motions[4]. Nonetheless, all applicants must satisfy the requirements of Section 503(b) independent of Debtor or Committee support. While the Debtors' and Committee's support is appreciated, it remains the Earn Applicant's burden to satisfy the Court it meets the criteria for a substantial contribution which it believes it has satisfied.

---

[3] *See* Debtors' Omnibus Objection to Certain Applications for Substantial Contribution to the Debtors' Estates [ECF No. 4025] at fn. 6, which specifically includes the Earn Application as supported by the Debtors; *see also* The Official Committee of Unsecured Creditors' Statement in Support of and Objection to Certain Substantial Contribution Motions [ECF No. 4027] at fn. 3 (same). *But see,* Debtor's Objection to the Application of the Borrower Ad Hoc Group for Entry of an Order Pursuant to 11 U.S.C. §§ 503(B)(3)(D) and 503(B)(3)(4), for Allowance and Reimbursement of Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution to these Cases [ECF No. 4179] and The Official Committee of Unsecured Creditors' Joinder to the Debtors' Objection to the Application of the Borrower Ad Hoc Group for Allowance and Reimbursement of Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution to these Chapter 11 Cases [ECF No. 4183], opposing the Ad Hoc Borrower Application.

[4] *See, e.g.*, Memorandum Opinion at fn. 1, citing Ad Hoc Earn Group support and various joinders in Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief [ECF No. 4050] (the "**Joint MiningCo Transaction Motion**").

4

B. **The Requests for Reimbursement of Actual Incurred Expenses on behalf of the Ad Hoc Earn Group and its Counsel are Fair and Reasonable and Should be Approved.**

  i. **Mediation-Related Expenses**

6. All requested expenses by the Ad Hoc Earn Group and its counsel are fair and reasonable. The UST is apparently confused about the Expense Summary attached as Exhibits A and B to the Earn Application. The vast majority of their expenses are attributable to the 3-day mediation before Judge Wiles in New York (the "**Mediation**"). As a condition to participation in the Mediation, Judge Wiles required all participants to attend the Mediation in New York, in-person, to its conclusion, and to have full settlement authority. The Ad Hoc Earn Group was represented by its counsel, Jason Nagi (on the first day, July 17, 2023) and Joyce Kuhns (on all three days, July 17 – July 19, 2023). Two members of the Ad Hoc Earn Group Steering Committee, Brett Perry and Immanual Hermann, its chair, attended the Mediation in person. A third member of the Steering Committee, Nicholas Farr, was out of the country and because no Zoom option was available, he did not participate or incur any expenses in connection with the Mediation. While Mr. Hermann has actively participated as a *pro se* claimant on his behalf in the Bankruptcy Cases he attended the Mediation in his capacity as Steering Committee Chair. Likewise, Mr. Frishberg has actively participated in the bankruptcy cases as a *pro se* claimant and subsequently joined the Ad Hoc Earn Group. *See* Second Verified Statement Pursuant to Rule 2019 Regarding Ad Hoc Group of Earn Account Holders at ECF No. 3638. The Ad Hoc Earn Group's counsel has actively encouraged participation by its members, but in the instance of the Mediation, requested that interested members clear attendance for the Mediation with counsel for the Debtor and/or Committee, which Mr. Frishberg apparently did. Cameron Crews, also an active *pro se* claimant, attended all three days of the Mediation and joined the Ad Hoc

5

Earn Group representatives in their deliberations and working session lunches and dinners during the Mediation. All such lunches and dinner listed on Exhibit A were working strategic sessions.

7. The UST has requested an explanation for the difference in room rates. The difference in room rates depended on when the reservations were made and the specific night(s) each individual booked; the various websites used to make the reservations offered variable promotions and discounts. All attempts were made to find the most favorable rates closest to the courthouse to avoid additional transportation costs. None of the Ad Hoc Earn Group participants reside in New York and therefore scheduled their arrival for Sunday evening, July 16, 2023, for the Mediation which commenced first thing Monday morning, and also to permit a pre-Mediation meeting with the Fahrenheit Group, the then-Plan Sponsor. Mr. Frishberg had made alternate lodging arrangements, except for the night of July 16 – July 17, 2023 which appears on the Earn Ad Hoc Group Expense Summary. The Mediation concluded after hours on Wednesday July 19, 2023, when the Mediation Term Sheet was executed and those traveling by train were able to travel home that evening. Mr. Perry resides in the Western part of the United States and was not able to fly out until the following morning, necessitating an additional night stay at the hotel.

    **ii.**    **Miscellaneous Expenses**

        **a.**    **Web Hosting, Email Communications, and Social Media Expenses**

8. The UST also requested a further explanation of the miscellaneous expenses on the Expense Summary for Mr. Hermann for Earncommittee.org hosting/Google Workspace totaling $190.04. A decision was made by the Steering Committee of the Ad Hoc Earn Group to host a website on google at Earncommittee.org where creditors could support the Ad Hoc Earn Group's efforts, where emails could be freely exchanged among Earn creditors, and where bulk

email updates about the Ad Hoc Earn Group could be sent to the more than 1,200 Celsius creditors who opted to receive them. The variance in pricing has to do with the expiration of certain promotional pricing and the consolidation of licenses from two people to one to save money for the Ad Hoc Earn Group. This website, in addition to other media, acted as an information highway for collecting comments, forwarding questions to the Debtors and the Committee, and responding to Earn creditors inquiries as appropriate. Likewise, the third-party vendor payments for August and September totaling $6,774.55 incurred at a rate of $35.00 per hour as enumerated in the footnote to the Expense Summary was for twitter monitoring, docket extractions and to maintain social media communications among creditor groups.

      **b.**     **Rebecca Gallagher Expenses**

    9.     Throughout the Bankruptcy Cases, Rebecca Gallagher has been an active participant on her own behalf and as an active member of the Earn Ad Hoc Group since its inception. Apparently in the Spring of 2023, Ms. Gallagher was chosen as a possible representative plaintiff in a class action the Committee was exploring as a mechanism to resolve certain non-contract claims against the Debtors. On information and belief, Ms. Gallagher traveled by car from West Virginia to Washington D.C., and charged mileage at IRS-approved rates, to have lunch with Mr. Hermann to discuss the pros and cons of being a *pro se* class action lead plaintiff. It is noted that her lunch expense was only $15.00. Ms. Gallagher has advised Ad Hoc Earn Group counsel that her conversation with Mr. Hermann was crucial in her decision to agree to be named as a class action representative. The key terms of the class action settlement which resolved over 30,000 claims resulting in a 105% recovery for those creditors who opted into the settlement on the Plan ballot were memorialized in the Mediation Term Sheet. Due to her indirect contribution in the Mediation and her active participation as a member of the Ad Hoc

7

Earn Group, Ms. Gallagher's *de minimis* lunch and travel expenses were added as an accommodation to her by Applicant to Exhibit A to the Earn Application.

### III.    REQUEST TO FILE SUPPLEMENTAL APPLICATION

10.    Since filing the Earn Application on October 2, 2023, the date the confirmation hearings commenced, the Earn Application has been adjourned twice from October 24, 2023 to December 21, 2023, and from December 21, 2023 to January 11, 2024 [*See* ECF Nos. 4035 and 4093] to ensure priority consideration of confirmation and wind-down issues. In the original Earn Application, Applicant anticipated the need to later supplement for time expended advancing the Bankruptcy Cases to the ultimate effective date of any confirmed Plan and therefore advised the Court it might seek to supplement the original Earn Application in an amount then anticipated to be approximately $100,000. Contrary to the UST's contention, Applicant was merely foreshadowing an anticipated need to supplement and not presuming that the Court would grant an award for prospective, undocumented fees.

11.    As it turned out, Applicant was right. Even after entry of the Confirmation Order, significant events continued to take place including the SEC's denial of a pre-clearance letter leading to the toggle to winddown and the Joint MiningCo Transaction Motion and subsequent contested hearing, among other things. These significant, subsequent events necessitated the continued vigilance and active support of the Ad Hoc Earn Group through its counsel, which ultimately resulted in approval of the MiningCo Transaction and these Bankruptcy Cases proceeding to exit with anticipated distributions in late January 2024, for the benefit of all creditors.

12.    In light of these subsequent events and after review of subsequent time entries, Applicant anticipates that a supplemental Application for the period of October 1, 2023 forward

8

will range between $100,000.00 and $125,000.00, and asks permission from this Court to file a supplemental Application seeking an award of such fees as a substantial contribution to these estates.

WHEREFORE, Applicant requests that the Court enter an Order in conformity with the Application of Ad Hoc Group of Earn Account Holders Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution, and grant such other relief as may be just.

Dated: New York, New York
January 4, 2024

Respectfully Submitted,

Jason A. Nagi, Esq.
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 545-1900
Jason.nagi@offitkurman.com
    -and-

/s/ Joyce A. Kuhns
Joyce A. Kuhns (*pro hac vice*)
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
Telephone: (410) 209-6463
Jkuhns@offitkurman.com

*Counsel to the Ad Hoc Group
of Earn Account Holders*