**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**REPLY OF THE AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS**
**IN SUPPORT OF ITS APPLICATION FOR ALLOWANCE AND PAYMENT**
**OF FEES UNDER BANKRUPTCY CODE SECTIONS 503(b)(3)(D) AND 503(b)(4)**

The Ad Hoc Group of Withhold Account Holders and Other Transferees (the

"Withhold Ad Hoc Group")[2] hereby submits this reply in support of its application (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] The members of the Withhold Ad Hoc Group are listed in the *Fourth Supplemental Verified Statement Pursuant to* Bankruptcy *Rule* 2019 [Docket No. 1860], as amended from time to time.

1

166126541v3

"Application"),[3] pursuant to sections 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code"), for allowance of legal fees and expenses for professional services rendered by Troutman Pepper Hamilton Sanders LLP ("Troutman Pepper") to the Withhold Ad Hoc Group, as an administrative expense incurred in connection with making a substantial contribution in the Debtors' Chapter 11 Cases, and respectfully states as follows:

## ARGUMENT

### A. The Withhold Ad Hoc Group substantially contributed to the equitable distribution of the Debtors' estates, building consensus, and moving these Chapter 11 Cases forward.

1. In its sweeping and indiscriminate objection to all requests for substantial contribution in these cases, the US Trustee erroneously claims that "the Withhold Ad Hoc Group does not even try to argue that it benefited other creditors." US Trustee Objection at 41. To the contrary, the Withhold Ad Hoc Group clearly explained in its application how its actions benefited the Debtors' estates and the reorganization process. *See* Application ¶¶ 32-35. The Withhold Ad Hoc Group's efforts led to the "proper allocation of the Debtors' value among stakeholders," which benefited the estates and protected the integrity of the bankruptcy process, and has expressly been found to be the type of services to be compensable as a substantial contribution. *See, e.g., In re Mirant Corp.*, 354 B.R. 113, 132 (Bankr. N.D. Tex. 2006), *aff'd* F. App'x 824 (5th Cir. 2009); Application ¶ 33.

2. The US Trustee argues that contributions that "do not actually increase the size of the estate" are not compensable. US Trustee Objection at 25. This is simply untrue. "A finding of a substantial contribution does not necessarily require that the overall size of the estate be enhanced." *In re The New Power Co.*, 2007 WL 7143077, at *8 (Bankr. N.D. Ga. June 25,

---

[3] Capitalized terms not otherwise defined herein have the meanings set forth in the Application.

2

2007). Rather, a contribution may be substantial, and compensable, where it "result[s] in the fair allocation of the Debtors' remaining value." *Id.* That is precisely what the Withhold Ad Hoc Group accomplished, as detailed in its Application.

3. Furthermore, as the Withhold Ad Hoc Group noted, the settlement it reached allowed "approximately $12 million of cryptocurrency, which otherwise might have been deemed to be property of the Withhold account holders, to be treated as property of the estate." Application ¶ 34. Even more importantly, as the Withhold Ad Hoc Group explained, "[t]he Phase I and Phase II process and the subsequent Withhold Settlement also helped pave the way for a largely consensual Plan and avoided significant costs, delays and uncertainty. Thus, the Withhold Ad Hoc Group substantially contributed to the Debtors' reorganization process." *Id.* ¶ 35.

4. Although the US Trustee studiously ignored these arguments, both the Debtors and the Official Committee concurred that the Withhold Ad Hoc Group substantially contributed to the Debtors' estates and their reorganization.

5. The Debtors explained that the Withhold Settlement, along with the settlements reached with other ad hoc groups, "helped foster a broad consensus and framework that served as the foundation for the Plan, which has been confirmed." Debtors' Omnibus Objection to Certain Applications for Substantial Contribution to the Debtors' Estates ("Debtors' Response") [Docket No. 4025], ¶ 1. Moreover, the Withhold Ad Hoc Group, like other ad hoc groups whose applications the Debtors support,

> have been actively involved in these Chapter 11 Cases and were key participants in the Settlements, all of which resolved critical legal issues regarding the treatment of certain classes contained within the Plan and further propelled the Chapter 11 Cases forward to a successful resolution. Such applicants brought creative solutions and unique perspectives to complex issues requiring

3

> bespoke solutions. Their support for the Settlements and the Plan likely built additional consensus and votes for the Plan, and thereby helped the Debtors exit chapter 11 quicker than without such support.

*Id.* ¶ 2.

6. The US Trustee may try to discount the Debtors' support, arguing (as in the Objection) that the Debtors' agreements not to object to certain substantial contribution applications "were clearly bargains made by the Debtors (and the Committee) in order to gain the votes and support of the Applicants." US Trustee Objection at 4. The US Trustee's cavalier accusation that the estates' professionals essentially ignored their fiduciary obligations and used estate assets to buy the Withhold Ad Hoc Group's votes is unfounded. As an initial matter, the Withhold Settlement did *not* require the members of the Withhold Ad Hoc Group to vote in favor of the Debtors' plan. They were perfectly free to vote against it or object to it (and, in fact, they did object to the disclosure statement [Docket No. 3146] and raised issues about the plan at the confirmation hearing).[4] Second, the Debtors merely agreed to refrain from objecting to the Withhold Ad Hoc Group's application. The fact that the Debtors affirmatively *support* it is telling.

7. What is even more telling is that the Committee, which was under no obligation whatsoever to refrain from objecting to the Withhold Ad Hoc Group's application, likewise voiced its support and explained how the actions of the Withhold Ad Hoc Group—like those of certain other ad hoc groups—materially benefited the estates as a whole:

> After sixteen months, the Plan has been confirmed and Celsius is preparing to emerge from bankruptcy and make distributions to

---

[4] To be clear, the Withhold Ad Hoc Group is not seeking reimbursement for the substantial fees incurred in connection with its objection to the disclosure statement, participation in the confirmation hearing, and negotiating the terms of the Alternative Dispute Resolution procedures with the Committee.

creditors. That result would not be possible without the contributions of certain creditors to develop and negotiate the Plan. Unlike most large chapter 11 cases, in these proceedings there was neither a fulcrum funded debt security nor a represented group that controlled (or represented any meaningful percentage of) any individual class of creditors. Rather, individual account holders participated and negotiated with estate fiduciaries directly and through ad hoc groups. The efforts of those creditors and their representatives significantly benefited large groups of similarly situated creditors, many of whom were placed in the very difficult situation of having significant personal assets invested with the Debtors and determining whether to expend substantial, additional personal funds on fees and expenses to protect their claim. ***They also benefited the Debtors' estates as a whole by moving these cases forward and aiding confirmation***. . . .

While the specific settlements negotiated by the Ad Hoc Groups may have benefited the individual classes of creditors, they benefit far more than the specific creditors that made up the various Ad Hoc Groups. ***Those settlements also contributed to the equitable distribution of the Debtors' estates, building consensus, and moving these cases towards confirmation***.

The Official Committee of Unsecured Creditors' Statement in Support of and Objection to Certain Substantial Contribution Motions ("Committee's Statement in Support") [Docket No. 4027], ¶¶ 1, 4 (emphasis added).

        8.     The US Trustee further makes the specious argument that the Withhold Ad Hoc Group's efforts in these cases to ensure the proper allocation of the Debtors' assets were unnecessary and duplicative because "the Debtors would have had to make this asset allocation *regardless*." US Trustee Objection at 30 (emphasis in original). In fact, the Debtors would *not* have made the asset allocation reflected in the Withhold Settlement "regardless." Who exactly does the US Trustee think would have pushed them to do so, and to recognize that Withhold account holders had a colorable claim to ownership of their assets? Certainly not the Committee, which opposed the Withhold Ad Hoc Group every step of the way. The Debtors would not have done it of their own accord, given their own opposition. In the adversarial process that was

needed to get to the right result, the Withhold Ad Hoc Group provided the necessary counterpoint to the Debtors and the Committee.

9. The fact that not a single party with a pecuniary interest in these cases objected to the Withhold Ad Hoc Group's application, while the two entities with fiduciary duties to creditors actively support it, strongly suggests that the US Trustee has taken too narrow a view of the value that the Withhold Ad Hoc Group brought to the estates and their reorganization process. As demonstrated in the Application, the Debtors' Response and the Committee's Statement in Support, the Withhold Ad Hoc Group's actions substantially contributed to the Debtors' estates, the reorganization process, and the positive outcome in these Chapter 11 Cases.

**D.    The amounts requested represent the Withhold Ad Hoc Group's actual and necessary expenses and reasonable compensation for professional fees.**

10. Pursuant to section 330 of the Bankruptcy Code, in determining the reasonableness of requested compensation, courts consider factors including:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

11. Although the Withhold Ad Hoc Group believes that Troutman Pepper's time records and itemization of expenses filed with the Application provide sufficient information for the Court to determine whether the hourly rates and the number of hours worked were reasonable, it will specifically respond to each section 330 factor here.

12. <u>Time spent on such services</u>. Troutman Pepper spent 226.5 hours on this matter for which the Withhold Ad Hoc Group seeks reimbursement.[5] As noted in the Application, the Withhold Ad Hoc Group is not seeking reimbursement for Troutman Pepper's time spent and fees incurred in connection with the Withhold Ad Hoc Group's statement in support of the Debtors' motion to redact certain personally identifiable information or in connection with the Withhold Ad Hoc Group's objection to the Debtors' Disclosure Statement, negotiation of the ADR Procedures set forth in the Plan, or participation in the confirmation hearing. In addition, Troutman Pepper agreed to waive all non-working travel as well as all time and fees incurred in connection with the Application.

13. <u>The rates charged for such services</u>. Deborah Kovsky-Apap is the primary timekeeper, with a blended hourly rate between 2022 and 2023 of $841. The overall blended hourly rate for all Troutman Pepper timekeepers between 2022 and 2023 is $812.

14. The US Trustee alleges that the Withhold Ad Hoc Group somehow tried to hide from the Court the fact that the nearly 30% discount of Ms. Kovsky's hourly rate that Troutman Pepper provided to the Withhold Ad Hoc Group was only offered during 2022. US Trustee Objection at 41-42. In reality, the Withhold Ad Hoc Group clearly disclosed in its

---

[5] The total hours sought in the Application were 244.1. However, as explained below, the Withhold Ad Hoc Group is voluntarily reducing its request by 17.6 hours.

166126541v3

application that Troutman Pepper had agreed to provide such discount "through 2022." Application ¶ 38. Moreover, the reversion to standard hourly rates in 2023 is highlighted on the front summary page of Troutman Pepper's invoice submitted in support of the Withhold Ad Hoc Group's application.

15. For further clarification, at the time the Withhold Ad Hoc Group engaged Troutman Pepper, the expectation, as discussed between them, was that resolution of the status of Withhold assets would be relatively straightforward, mirroring the anticipated resolution of the status of Custody assets. *See* **Exhibit A**, Supplemental Declaration of Deborah Kovsky-Apap ("Kovsky Suppl. Dec.") ¶ 4. As it turned out, those expectations were overly optimistic, as the issues involved in determining the proper treatment of Withhold assets (and Custody assets, for that matter) were far more complex and demanded significantly more time and resources than projected. *Id.* ¶ 5. The Withhold Ad Hoc Group's engagement letter with Troutman Pepper advised them that hourly rates increase annually, and the Withhold Ad Hoc Group was aware that the discount would not continue indefinitely. *Id.* ¶ 6. Upon the annual increase of Troutman Pepper's fees on January 1, 2023, the Withhold Ad Hoc Group did not request—and, in light of the increased scope and complexity of the representation, Troutman Pepper did not offer—a continuation of the discount that had already resulted in a fee reduction of nearly $50,000. *Id.* ¶ 7.

16. The Withhold Ad Hoc Group notes that Ms. Kovsky's blended hourly rate of $841 is less than *half* the rates charged by estate professionals with the same or less experience.

17. <u>Whether the services were necessary or beneficial</u>. The US Trustee has challenged specific services as being unnecessary, particularly those involving administrative

8

166126541v3

tasks or communications between the Withhold Ad Hoc Group and Troutman Pepper. With respect to communications, courts have recognized that communications between clients and counsel are a necessary part of any representation and may be compensable as part of the client's substantial contribution to a bankruptcy case. *See, e.g., In re Keeley & Grabanski Land P'ship*, 2013 WL 4170414, at *6 (Bankr. D.N.D. Aug. 15, 2013) (recognizing "the critical need for counsel to communicate fully and regularly with clients")[6]; *New Power*, 2007 WL 7143077, at *9 (including, among the categories of compensable tasks, monitoring litigation, performing legal research, and communications). With respect to administrative tasks, all such tasks were appropriately performed by a paralegal, not an attorney, and were necessary to the Withhold Ad Hoc Group's participation in the Chapter 11 Cases.

18. That said, the Withhold Ad Hoc Group recognizes that certain of Troutman Pepper's time entries may fall into a gray area as to compensability. Accordingly, the Withhold Ad Hoc Group is withdrawing its request for reimbursement as to the specific services set forth on **Exhibit B** hereto, totaling $7,826.00.

19. The US Trustee also takes applicants to task for "requests for reimbursement for a variety of expenses, including deodorant, monitoring Twitter, and lavish dinners exceeding more than $400 for an unknown number of people." US Trustee Objection at 3. The Withhold Ad Hoc Group has requested no such reimbursements. Counsel for the Withhold Ad Hoc Group did not so much as expense the sandwich she purchased during the

---

[6] The court in *Keeley* found the "almost daily communications" to be excessive and the entries lacking in adequate detail, and reduced the fees requested. That is not an issue with respect to the Withhold Ad Hoc Group's communications with Troutman Pepper. Troutman Pepper provided detailed time entries indicating the topic of each communication with the Withhold Ad Hoc Group, showing that the communications were, in fact, not merely related to clients' own individual interests. Moreover, the client communications for which the Withhold Ad Hoc Group seeks reimbursement were far from daily and total just $21,409.

166126541v3

lunch break at the Phase I hearing. The Withhold Ad Hoc Group's *only* requests for reimbursement are for a single filing fee and modest service expenses—amounts incidental to, but necessary to enable, the Withhold Ad Hoc Group's valuable activities in these cases.[7] As the US Trustee notes, "[e]xpenses are actual if they are actually incurred and necessary if 'reasonably needed to accomplish proper representation of the client.' *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005)." US Trustee Objection at 28. Counsel could not properly represent the Withhold Ad Hoc Group without incurring some minimal expenses for filing and serving documents. Accordingly, these expenses were both actual and necessary.

20. <u>Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed</u>. The key issue addressed by the Withhold Ad Hoc Group—the proper treatment of digital assets that were subject to neither the Earn nor Custody Terms of Use—was complex and novel. The Withhold Ad Hoc Group respectfully submits that the 226.5 hours for which reimbursement is sought is reasonable, if not modest.

21. <u>Whether counsel has demonstrated skill and experience in the bankruptcy field</u>. As set forth in Ms. Kovsky's supplemental declaration, Ms. Kovsky is a partner in the Finance and Restructuring practice group at Troutman Pepper Hamilton Sanders, LLP, a large national firm, and has been practicing law for over 20 years. She represents debtors, creditors, official and ad hoc committees, and other key stakeholders in chapter 11 cases across the

---

[7] Troutman Pepper has agreed to waive the $163.20 sought for search costs in the Application. In addition, it appears that $1,000 of the total $3,394.41 for service costs was erroneously listed as "copy charges" on the invoice attached to the Application. Neither Troutman Pepper nor its outside vendor, Parcels Inc., charged the Withhold Ad Hoc Group for copying costs. Copies of the Parcels invoices are attached hereto as **Exhibit C**.

10

166126541v3

country. She regularly lectures on bankruptcy topics to national and regional organizations. *See* Kovsky Suppl. Dec. ¶ 8. The Withhold Ad Hoc Group believes that Ms. Kovsky has adequately demonstrated skill and experience in the bankruptcy field.

22. <u>Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than chapter 11 cases</u>. Based on the rates disclosed by estate professionals in their fee applications, which the Withhold Ad Hoc Group assumes are the customary rates they charge in cases other than these Chapter 11 Cases, the Withhold Ad Hoc Group submits that Troutman Pepper's compensation is eminently reasonable.

## CONCLUSION

WHEREFORE, the Withhold Ad Hoc Group respectfully request that the Court overrule the US Trustee's objection and enter an order, substantially in the form attached to the Application, (i) allowing as an administrative expense claim in the amount of $183,871.00 on account of professional fees and $3,582.41 on account of actual and reasonable expenses incurred in connection with the Withhold Ad Hoc Group's substantial contribution in these Chapter 11 Cases, (ii) authorizing and directing the Debtors to pay Troutman Pepper the amount of $187,453.41 in fees and expenses, and (iii) granting the Withhold Ad Hoc Group such other and further relief as the Court deems just and appropriate.

**[signature page follows]**

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 4, 2024<br>New York, New York | /s/ Deborah Kovsky-Apap<br>**TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>Deborah Kovsky-Apap<br>875 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 704-6000<br>Facsimile: (212) 704-6288<br>Email: deborah.kovsky@troutman.com<br><br>*Counsel to the Ad Hoc Group of Withhold Account Holders* |

12

166126541v3