**Hearing Date: January 11, 2024 at 10:00 a.m.**
                                                **Reply Deadline: January 4, 2024 at 4:00 p.m.**

William Christopher Manderson, Esq. (admitted *pro hac vice*)
  cmanderson@ecjlaw.com
David Tarlow, Esq.
  dtarlow@ecjlaw.com
Chase A. Stone, Esq. (admitted *pro hac vice*)
  cstone@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

*Attorneys for Simon Dixon and BNK To The Future (BNK)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
|                     Debtors. | (Jointly Administered) |

**RESPONSE ON BEHALF OF SIMON DIXON AND BNK TO THE FUTURE TO OBJECTIONS TO THE APPLICATION PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION**

       BNK To The Future ("BNK") and its CEO Simon Dixon ("Mr. Dixon") (together, the "Applicants") provide the following response to objections filed by the Office of the United States Trustee (the "UST") [ECF Dkt. No. 4018], pro se creditors Jason Amerson ("Amerson") [ECF

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Dkt. No. 4015] and Cathy Lau ("Lau") [ECF Dkt. No. 4034], and statements/limited objections filed by Debtors [ECF Dkt. No. 4025] and the Official Committee of Unsecured Creditors (the "UCC") [ECF Dkt. No. 4027], to the Application and Amended Application submitted by Mr. Dixon/BNK seeking reimbursement for substantial contributions made to the Estate under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4).[2] The Applicants respectfully state as follows.

## PRELIMINARY STATEMENT

1.  Pursuant to sections 503(b)(3)(D) and 503(b)(4), Mr. Dixon/BNK put forth overwhelming evidence to establish each of the factors applied by the Second Circuit Court of Appeals to evaluate substantial contribution applications. *See In re AMR Corp.*, 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014); *see* Application, pgs. 8-40 of 48; *see also* Dixon Declaration ¶¶ 1-188 and Exhibit E attached thereto.[3]

2.  As discussed in the Application, Mr. Dixon/BNK are not seeking reimbursement for all fees incurred in connection with the Debtors' cases. Further, Mr. Dixon/BNK's counsel, Ervin Cohen & Jessup LLP ("ECJ"), voluntarily reduced its fees by 6% for its services rendered through October 2, 2023. *See* Amended Application, pg. 8 of 46. Besides seeking disclosure of time records, the UST's Objection does not make any substantive argument(s) in connection to the work performed by ECJ as to whether it was unreasonable, excessive, or duplicative. As discussed

---

[2] As used herein, "Application" means, collectively: the *Application Pursuant To 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4)) For Allowance Of Payment Of Professional Fees And Expenses Incurred In Making A Substantial Contribution* [ECF Dkt. No. 3672]; the *Declaration Of Simon Dixon In Support Of Application Pursuant To 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4) for Allowance Of Payment Of Professional Fees And Expenses Incurred in Making a Substantial Contribution* filed concurrently therewith (the "Dixon Declaration") [ECF Dkt. No. 3670]; that *Amended Application Pursuant To 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4)) For Allowance Of Payment Of Professional Fees And Expenses Incurred In Making A Substantial Contribution* with the *Declaration Of Simon Dixon In Support Of Application Pursuant To 11 U.S.C. §§ 503(b)(3)(D) And 503(b)(4) for Allowance Of Payment Of Professional Fees And Expenses Incurred in Making a Substantial Contribution* [ECF Dkt. No. 3799] (the "Amended Application") (hereinafter references to specific documents will be for citation purposes).

[3] Mr. Dixon did not serve as a formal plan consultant to the Earn Ad Hoc Committee, though was invited to participate in meetings and join their constituency. Although the Earn Ad Hoc Committee and Mr. Dixon/BNK worked together closely, Mr. Dixon/BNK remained independent.

infra, Debtor and UCC support ECJ fees.

3. However, on November 30, 2023, subsequent to filing the Application, the Debtors and the UCC filed the Wind-Down Motion,[4] which led the Court to inquire as to whether the relief sought by the Debtors and the UCC deviated from the terms of the Plan voted on by creditors. As a result, the Court requested the input of creditors to express their opinions as to whether the Wind-Down Motion was understood to be part of the confirmed Plan, or whether re-solicitation was required.

4. On or around December 15, 2023, counsel for Debtors and the UCC, respectively, contacted Mr. Dixon, David Kahn, and counsel for Mr. Dixon/BNK, to request Mr. Dixon/BNK's support for the Wind-Down Motion by submitting a statement of support and speaking on behalf of creditors at the hearing scheduled on December 21, 2023. Mr. Dixon/BNK agreed to support the Wind-Down Motion in the manner requested by the Debtors and the UCC and, among other things, submitted a detailed letter (the "Letter") [ECF Dkt. No. 4124] on December 19, 2023, and also appeared at the hearing to speak in support of the Wind-Down Motion (which the Court considered and later referenced in citations). Relevant here, the benefits conferred upon the Estate through supporting the Wind-Down Motion relied upon the work of Mr. Dixon/BNK, and by extension, the fees incurred by the professionals, which reinforced the substantial contribution made to the case overall, and serves as an additional justification as to why the fees and costs sought through the Application should be reimbursed in full. *See In re Synergy Pharms., Inc.*, 621 B.R. 588, 610 (Bankr. S.D.N.Y. 2020) ("[*B*]*ut for* the role of the creditor, the movement towards

---

[4] As used herein, "Wind-Down Motion" means that *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [ECF Dkt. No. 4050] and that *Supplemental Joint Statement Regarding The Joint Motion Of The Debtors And The Committee For Entry Of An Order (I) Approving The Implementation Of The Miningco Transaction And (II) Granting Related Relief* [ECF Dkt. No. 4115].

final reorganization would have been substantially diminished.'")

5.  Beyond his expertise in cryptocurrency, the Debtors and UCC requested Mr. Dixon's support due to his extensive communication with other creditors throughout this case, as well as his educational outreach to the creditor community in general, which enabled him to articulate a key creditors' perspective(s) about the Wind-Down Motion. Unequivocally Mr. Dixon has his 'finger on the pulse' of the case developed substantial expertise and credibility with other Creditors, the Debtor and the UCC, he was put on the shortlist of creditors who the Debtors and UCC asked to speak in support of the Wind-Down Motion at the hearing. Of paramount importance, Mr. Dixon/BNK was asked to voice the creditors' perspective as to the reasons why the Wind-Down Motion was in the best interest of creditors. Moreover, Mr. Dixon/BNK also sought to convey important details/analysis regarding, among other things, the risks of re-solicitation (i.e., delay and expense), including the burn rate and the danger of surplus value accruing to subordinated creditors. *See* Letter, pgs. 2-3 of 5. Mr. Dixon/BNK have articulated these points consistently throughout this case, which uniquely added value to the efforts of the Debtors and the UCC to effect recovery for creditors. Especially noteworthy among these points (as reiterated in Mr. Dixon's Letter) was the instrumental role Mr. Dixon played in convincing the Debtors and the UCC *not* to liquidate the Estate's liquid cryptocurrency in the early stages of the Chapter 11 process, which has benefited the Estate by increasing creditors' recoveries by at least 55% (i.e., $1.5 billion USD).

6.  The substance of Mr. Dixon/BNK's Letter, which he discussed in his statement on the record at the hearing, summarized, in pertinent part, the analysis gained through the retention of his own professionals at his expense throughout this case. Mr. Dixon's statements were cited

by several creditors as representative of their views.[5] Further, the Court noted that "Mr. Dixon is probably right" in reference to Mr. Dixon's analysis of the burn rate's material adverse affect on creditors, as discussed in the Letter and his testimony. December 21, 2023 Hr'g Tr. 137:18; *see also* Letter, pgs. 2-3 of 5.

7. As demonstrated in the Letter, in statements made at the December 21, 2023 hearing, and throughout this case, Mr. Dixon/BNK conferred a substantial contribution upon the Estate, which meets the standard for reimbursement under 11 U.S.C. § 503(b) for the reasons stated in the Application, and discussed *infra* in response to objections.

## RESPONSES TO OBJECTIONS TO APPLICATION

**A.    The UST's Objection Is Controverted By The Record And Preponderance Of Evidence In Support Of The Application.**

8. With respect to the *Omnibus Objection Of The United States Trustee To Substantial Contribution Applications* (the "UST Objection"), the UST argued that "there is not one substantive or affirmative filing on the docket on behalf of Mr. Dixon or BNK." UST Objection, pg. 55 of 69. Instead, there is a preponderance of evidence submitted by Applicants, stated on the record, reflected in filings of the Debtors and the UCC, and demonstrated in countless hours of Mr. Dixon's content on Twitter/X and YouTube (which Applicants are not seeking to be reimbursed for), that collectively support reimbursement of entirety of the fees and costs sought through the Application.

9. As discussed *supra*, in December 2023, Debtors and the UCC engaged Mr. Dixon and BNK as a key representative creditor in support of the Wind-Down Motion. The specific

---

[5] *See* December 21, 2023 Hr'g Tr. 123:21—124:2. (Lucas Holcomb: "I do agree with Simon Dixon that getting out of bankruptcy is in the best interest of the creditors."); *see also id.* at 124:23—125:10 (Immanuel Herrmann: "First I just wanted to join in what Simon Dixon and the Earn Ad Hoc said. Second, I take issue with implications like Mr. Dixon does that I can't speak out . . . I believe that the current plan is consistent with what's already been voted on and that we should avoid re-solicitation, which for the reasons that Mr. [D]ixon outlined, will cost the estate. . .").

request made by the Debtors and the UCC to seek Mr. Dixon/BNK's support further demonstrates the outsized role Mr. Dixon plays as a major voice for creditors. Even more, this Court's *Memorandum Opinion Granting The Wind-Down Motion Of Debtors And The Committee For Entry Of An Order (I) Approving The Implementation Of The Miningco Transaction And (II) Related Relief* (the "Opinion") [ECF Dkt. No. 4171] cites Mr. Dixon's statements at the hearing, which were based upon the analysis of Mr. Dixon/BNK and their professionals, and concluded that,

> [t]he Debtors have carried their burden of showing that creditors are not materially or adversely harmed—on the contrary, they are receiving better distributions. The only creditor constituency to object, the Borrower Group, . . . fails to account for the costs of the additional months in bankruptcy of attempting to pursue that option (estimated during the hearing as $20 million per month of delay). . .

Opinion, pg. 33 of 36, Footnote 8; *see* December 21, 2023 Hr'g Tr. 108:18—20. In granting the Wind-Down Motion, the Opinion's reliance on Mr. Dixon's Letter and statements on the record were critical, and thereby aided in the overall progress of reorganization.

10. The UST argues that Mr. Dixon/BNK's fees for developing plan structure were duplicative. UST's Objection pg. 56 of 69. However, as Debtors have argued recently, "[c]ourts in the Second Circuit have noted that a creditor's motive in contributing to the estate is **not** outcome determinative." Debtors' Objection To Application Of Borrower Group[6] ¶ 20 (citing *In re Bayou Grp., LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) [bold added]). Relevant here, Mr. Dixon/BNK leveraged the analyses of its legal counsel and financial experts, such as DBK Financial Services, Ltd. ("DBK"), retained previously by Mr. Dixon/BNK which, the Opinion, in

---

[6] As used herein, Debtors' Objection To Application Of Borrower Group means *Debtors' Objection To The Application Of The Borrower Ad Hoc Group For Entry Of An Order Pursuant To 11 U.S.C. §§503(B)(3)(D) And 503(B)(3)(4), For Allownace* [sic] *And Reimbursement Of Professional Fees And Actual, Necessary Expenses In Making A Substantial Contribution To These Cases* [ECF Dkt. No. 4179].

turn, utilized to conclude that "[c]reditors, including the Borrower Group, *receive increased overall recoveries*" under the Wind-Down Motion. *Id.* at pgs. 33-34 [emphasis added]. Mr. Dixon/BNK's motive is not dispositive of the outcome because "section 503(b)(3)(D) focuses on process as much as on contribution, on the movant's substantial contribution in *the case*—that is, the entire chapter 11 case . . ." *In re Bayou Grp., LLC*, 431 B.R. at 561. In this instance, when viewed holistically, Mr. Dixon/BNK have satisfied their burden and established the substantial contribution(s) made in this case as a whole.

11. The UST observes correctly that Mr. Dixon/BNK "reached creditors and parties-in-interest outside of the traditional paradigm." UST Objection, pg. 62 of 69. Given Mr. Dixon's influence, of all the creditors in this case, Mr. Dixon's voice has become the most prominent. In that vein, Mr. Dixon/BNK's Letter was one of only three (3) documents submitted by creditors that the Court appears to reference in the Opinion,[7] and more importantly, Mr. Dixon is one of only two (2) creditors cited in the substantive portion of the Court's analysis regarding whether Debtors had satisfied their burden.[8] *See* Opinion at pg. 26 of 36; *see id.* at pg. 33 of 36, Footnote 8; *see also* December 21, 2023 Hr'g Tr. 105:18-19 (The Court: "I did have a written communication from Mr. Dixon . . .").

12. The UST's Objection incorrectly asserts that the Application is seeking reimbursement for social media posts and other online activities. *See* UST Objection, pgs. 55-56 of 69 (The UST argues, among other things, that "allowing compensation for such creditor

---

[7] The Opinion further mentions the *Statement Of Ignat Tuganov In Support Of Debtors' And Committee's Joint Motion For Entry Of An Order Approving Implementation Of The Miningco Transaction* [ECF Dkt. No. 4136] and the *Pro Se Customers' Joinder To Ad Hoc Group Of Earn Account Holders' Statement Of Position In Support Of Exit And Reservation Of Rights Regarding Joint Motion Of The Debtors And The Committee For Entry Of An Order (I) Approving The Implementation Of The Miningco Transaction; And (II) Granting Related Relief* [ECF Dkt. No. 4154].

[8] The other being Joyce Kuhns, counsel to the Ad Hoc Group of Earn Account Holders (the "Earn Group").

outreach . . . would open the floodgates to future requests for creditors acting on their own behalf."). Although Mr. Dixon devoted more than 160 hours of recorded and unrecorded content on Twitter spaces, which would total approximately $1.5 million (based upon Mr. Dixon's hypothetical hourly rate(s)), the Application is not seeking to be reimbursed for those services whatsoever. *See* Amended Application ¶ 14; *see also* Exhibit B appended to the Dixon Declaration, pgs. 56-57 of 434. Thus, the UST's Objection should be overruled because it argues that the Application is seeking reimbursement for activities associated with social media, which it clearly does not.

13. That said, in Exhibit E appended to the Dixon Declaration, Mr. Dixon attaches approximately 481 responses from creditors who submitted, in their own words, the reasons why they believe Mr. Dixon/BNK made a substantial contribution in this case. *See* Dixon Declaration, pgs. 74-434 of 434. The abundance of submissions from creditors in support of Mr. Dixon/BNK's Application cut directly against the UST's argument that the Application "fails to evidence why Mr. Dixon or BNK should be entitled to reimbursement." UST Objection, pg. 62 of 69. The sheer number and quality of creditors' responses submitted by Mr. Dixon/BNK far exceed the burden of proof required of substantial contribution applications.

14. Even if the creditors' responses are disregarded, the contributions of Mr. Dixon/BNK cited in the Court's own Opinion, and the analysis performed by Mr. Dixon/BNK throughout this case, are inextricably linked. Without the knowledge and analysis gained from Mr. Dixon/BNK's retained professionals, Mr. Dixon's testimony and Letter would lack utility to the Court. This was apparent during oral argument on December 21, 2023, when counsel for the UCC, Aaron Colodny, cited Mr. Dixon as being among the key group of creditors that the Debtors and UCC had "spoken with a lot" to determine that NewCo. should be capitalized with $225

million in order to emerge successfully post-confirmation. December 21, 2023 Hr'g Tr. 152:22—153:4 (Mr. Colodny: "I think that the business judgment in arriving at that is what Your Honor has to look at, and I think that here, you have a creditor-led fiduciary. . . and you heard from Mr. Dixon . . . creditors we've spoken with a lot that all are saying 225 is the correct number.")

15.     Here, the UCC's confidence in Mr. Dixon was made crystal clear by Mr. Colodny, on behalf of the UCC, who asserted that the Court should rely upon Mr. Dixon in ascertaining the 'correct' capitalization of NewCo. through the lens of the 'business judgment' standard. *See id*. Such a sweeping statement by the UCC is a tacit recognition of the fees and costs incurred by Mr. Dixon and BNK to retain professionals, including BR and DBK, to gain insights into the capitalization of NewCo., and to accurately convey the economic implications in the context of the Plan structure, which later proved critical to the success of the Wind-Down Motion.

16.     Consequently, Mr. Dixon/BNK have not only demonstrated by a preponderance of the evidence that the substantial contributions performed throughout this case rendered an 'actual' and 'demonstrable benefit' to the Estate, the creditors, and to the extent relevant, the future equity holders in NewCo., but critically, this Court utilized Applicants' analysis to conclude that Debtors carried their burden in approving the Wind-Down Motion, which allowed the Estate to progress with reorganization as a whole. *See In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).

**B.**     **Applicants Will Contemporaneously Submit Time Records At The Time Of Filing.**

17.     The UST also objects to the Application on the grounds that time records and proof of expenses have not been provided. *See* UST Objection, pg. 64 of 69. For the reasons stated *infra*, the Court must overrule the UST's Objection regarding time records.

18.     First, Applicants will concurrently submit the time records to the Court, Debtors, the UCC, and the UST upon filing this response. Since October 2, 2023, however, the UST has

not requested any time records and/or proof of expenses from Applicants. Moreover, Applicants have offered to provide copies of all supporting billing statements/invoices to the UST as soon as practicable after entry of the Order approving the Application.

19. Secondly, there is no statutory basis to assert that time records must be provided to the parties-in-interest, or filed on the docket, on behalf of an applicant for substantial contribution. Such a disclosure is applicable to professionals employed on behalf of the Estate (e.g., under 11 U.S.C. § 330), which is not relevant here. Further, no such requirement exists under section 503(b).

20. Applicants have proof of all expenses incurred to serve the Application, which included the dozens of pages attached to Mr. Dixon's declaration. These documents will also be submitted concurrently to the Court and parties-in-interest listed above at the time of filing.

21. Lastly, the UST objects to Applicants' request for counsel's anticipated fees of $50,000 in support of this Application on the grounds that 'prospective' relief is not warranted. *See* Objection, pg. 64 of 69. Given the necessity of drafting the moving papers (as a prerequisite to seeking reimbursement), responding to objections, and appearing at the hearing on the Application, it appears reasonable to seek reimbursement for anticipated fees in support of the Application.

22. For the foregoing reasons, Applicants have met their burden and the UST's Objection must be overruled.

C. **The Court Should Approve Reimbursement In Full—Debtors' And UCC's Support Of Partial Reimbursement Must Be Considered In Light Of December 2023 Hearing.**

23. Prior to the December 21, 2023 hearing, Mr. Dixon and BNK enjoyed support from the Debtors and the UCC in seeking reimbursement for fees and costs associated with negotiating the Plan Support Agreement ("PSA") as a substantial contribution. *See Debtors' Omnibus*

*Objection To Certain Applications For Substantial Contribution To the Debtors' Estates* ("Debtors' Objection")[9] [ECF Dkt. No. 2025]; *see also Official Committee Of Unsecured Creditors' Statement In Support Of And Objection To Certain Substantial Contribution Motions* (the "UCC Objection")[10] [ECF Dkt. No. 4027].

24. Applicants appreciate the support of Debtors and the UCC in seeking reimbursement of those fees and costs, which amount to $225,000 for the fees incurred by ECJ through October 2, 2023, as well as $50,000 in anticipated fees incurred to, among other things, respond to objections and appear at the hearing on Application.[11] Therefor, the Debtors' and the UCC's reliance upon Mr. Dixon/BNK's support for the Wind-Down Motion is a further illustration of the substantial contributions made by Mr. Dixon/BNK throughout this case. Consequently, full reimbursement of the fees and costs sought through the Application, including the fees of BR and DBK, is merited here. The 'fruits' borne from the fees and costs incurred by Mr. Dixon/BNK's were material to the analysis of the Wind-Down Motion, which in turn, were incorporated into the Court's Opinion, and facilitated the reorganization process as a whole.

25. When implementation of the Plan was jeopardized by objections from, most prominently, the Ad Hoc Group of Borrowers [ECF Dkt. No. 4100], the Debtors and the UCC engaged Mr. Dixon/BNK for support. But-for Mr. Dixon/BNK expending resources, generating

---

[9] Debtors agreed "to support any substantial contribution application filed by Mr. Dixon or BNK to the Future 'for the payment of legal fees and expenses pursuant to section 503(b)(3)(D) of the Bankruptcy Code *relating to the negotiation and execution of [the Plan Sponsor Agreement]*,'" but critically, Debtors requested that any of Applicants' requested fees "not relating to the negotiation and execution of the Plan Sponsor Agreement" be denied. Debtors' Objection ¶ 7.

[10] While the UCC "supports Mr. Dixon's efforts to bring consensus to these cases" and "supports the payment of the fees incurred by Mr. Dixon in engaging counsel to negotiate the Plan Support Agreement and Board Observer Agreements" the UCC "does not support the reimbursement of fees spent pursuing a self-interested, unsuccessful bid and marketing campaign." UCC Objection ¶¶ 8-9.

[11] In December 2023, ECJ incurred additional and unexpected fees and costs to support Mr. Dixon/BNK's efforts in support of the Wind-Down Motion, at the request of Debtors and the UCC.

their own analyses, retaining their own professionals early on in this case, and incurring fees to analyze the same issues at the core of the Wind-Down Motion, Mr. Dixon/BNK would lack specific insight into complex issues related to the Plan structure necessary to understand how the Wind-Down Motion benefited creditors. These specific issues include, among other things, the mechanics of the 'toggle' feature, the benefits of distributing liquid cryptocurrency, and the risks of delaying confirmation (which have been the subject of Mr. Dixon/BNK's investigation in this case dating back to November 2022). In sharing these insights, Mr. Dixon/BNK conferred an actual and demonstrable benefit to the Estate. *See In re Bayou Grp., LLC*, 431 B.R. at 562 (noting successful substantial contribution application "brought about the confirmation of a more favorable plan.").

26. The work performed by Mr. Dixon and BNK fostered and enhanced the progress of reorganization. Given the developments in December 2023, the Court should weigh the Debtors' and the UCC's previously stated positions on this Application in the context of the case as a whole. For the foregoing reasons, the Court should approve full reimbursement of fees incurred by Mr. Dixon/BNK for making a substantial contribution throughout this case.

**D.    Pro Se Creditor Jason Amerson's Objection Lacks Merit And Must Be Overruled.**

27. The *Objection To Motion For (I) Allowance And Payment Of Professional Fees And Expenses Incurred In Making A Substantial Contribution (II) Granting Related Relief* (the "Amerson Objection") [ECF Dkt. No. 4015] submitted by pro se creditor Jason Amerson must be overruled on the grounds that, among other things, (1) Amerson misapprehends the applicable legal standard in the Second Circuit Court of Appeals as requiring proof of an 'intent' by citing inapposite legal authority; (2) overlooks compelling evidence submitted in support of the Application, including Mr. Dixon's declaration and the exhibits attached thereto; and (3) characterizes the amount of the fees sought through the Application as 'egregious' notwithstanding

the numerous other applications requesting far more (e.g., $786,649.66 sought by the Custody Ad Hoc Group; $1,020,223.47 sought by the Borrower Ad Hoc Group; $1,383,089.00 sought by Ignat Tuganov).

    **E.**    **Pro Se Creditor Cathy Lau's Objection Lacks Merit And Must Be Overruled.**

28.    The *Objection to Motion filed by Cathy Lau* (the "Lau Objection") [ECF Dkt. No. 4034] lacks merit, relies on inadmissible evidence, and fails to apply the facts to the relevant law. Consequently, the Court must overrule the Lau Objection.

### RESERVATION OF RIGHTS TO SUPPLEMENT APPLICATION

29.    Through the Application, Mr. Dixon/BNK previously reserved rights to supplement the Application, if necessary, given the timing and stage of the case. At this juncture, in light of the events in December 2023, Mr. Dixon/BNK respectfully wish to exercise their rights by seeking this Court's permission to file a supplemental brief and obtain reimbursement for additional fees incurred in connection to the Wind-Down Motion.

30.    ECJ, on behalf of Mr. Dixon/BNK, incurred roughly $26,000 in additional fees associated with the appearance at the December 21, 2023 hearing, advising Mr. Dixon/BNK, and reviewing the Letter.

31.    In the alternative, to the extent that the Court prefers to finalize all remaining/outstanding fees at the upcoming hearing, Mr. Dixon/BNK, and ECJ, will be prepared to answer any question(s) and, in advance of the hearing, will submit invoices/statements in support of the additional fees in December 2023, that will permit the Court to rule on this issue, at its discretion.

[*Remainder of page intentionally left blank*]

32. WHEREFORE, BNK, by and through its CEO, Mr. Dixon, respectfully requests that (1) the Court approve the Application, as amended, and reimburse the entirety of the fees sought for the work performed in this matter on behalf of the Estate; and (2) respectfully request this Court's permission to submit supplementary briefing on the fees accrued in support of the Wind-Down Motion and/or proceed in any manner the Court deems fit.

Beverly Hills, California
Dated: January 4, 2024

Respectfully submitted,

By: /s/ William Christopher Manderson

William Christopher Manderson, Esq. (*pro hac vice*)
  cmanderson@ecjlaw.com
David Tarlow, Esq.
  dtarlow@ecjlaw.com
Chase A. Stone, Esq. (*pro hac vice*)
  cstone@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

*Attorneys for Simon Dixon and BNK To The Future (BNK)*