Immanuel J. Herrmann, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

# REPLY IN SUPPORT OF IMMANUEL HERRMANN'S SUBSTANTIAL CONTRIBUTION APPLICATION

Immanuel J. Herrmann, Celsius Network LLC, *et al.* creditor, hereby submits this reply in support of my substantial contribution application, Dkt. No. 3674, and respectfully states as follows:

# REPLY

I attended the mediation in New York in my capacity as chair of the Earn Ad Hoc. The Debtors have acknowledged that my contributions to the New York mediation played an 'instrumental' role in the Retail Borrower Settlement negotiations and the term sheet that led to the final, confirmed plan. I attended mediation focusing only on general Earn customers, and put all self-interest aside. As part of a signed term sheet coming out of those negotiations, I **gave up** all of individual claims and causes of action against the estate for the benefit of all creditors.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Expenses related to those actions I gave up—the ones I settled and gave up for the benefit of all creditors—are the expenses I seek in my substantial contribution application.

With the term sheet I signed in New York, I agreed to stay my adversary proceeding outlining my own individual case, which different from most general Earn creditors, and all pending appeals, including an appeal of the Customer Claims Opinion and Order, in exchange for a mediated resolution that included substantive consolidation—a great outcome for general unsecured creditors, and the Debtors' estates.

Going into mediation, I had a distinctive and colorable "corner case" that *could have* benefited me personally, had I continued pursuing it. My contractual relationship with Celsius differed from that of general Earn creditors, and most general unsecured creditors. In fact, I was an Earn customer who had contractual language closer to a Borrower, and a better contractual case than active borrowers, in my view. Coming out of mediation, I was the same as every other Earn account holder, pending confirmation of a plan consistent with the negotiated term sheet.

In her objection, the Trustee asserts that "Any benefit from Mr. Herrmann or Mr. Frishberg's attendance at the mediation was for their own personal benefit and any benefit that flowed to the Debtors' estates was incidental." Yet, I would challenge the Trustee to name one *personal* benefit I got from the mediation. She cannot, because there isn't one. On the contrary, I attended the mediation in my capacity as Chair of the Earn Ad Hoc, and then expressly *gave up* any personal benefits I *could have* had from my own individual situation, once a global resolution between Earn account holders and Borrowers was reached, and once substantive

consultation was accomplished. In the mediation, we not only negotiated treatment between Earn Account Holders and Borrowers but agreed upon a 5% settlement for all fraud claims, including mine.

Only the UST has objected to my Application. It is apparent from its objection that the UST has confused, or at a bare minimum, conflated, my application with other applications. While my application asked for $1,143.90 in personally incurred expenses, which consist of only court costs and PACER fees I incurred in my individual *pro se* capacity during the pendency of these cases, the Trustee misleadingly claims that "Mr. Frishberg, Mr. Herrmann, and Ms. Gallagher seek an award of expenses of approximately $437,065.38 in the aggregate for dates beginning prepetition through the filing of the Applications" as if we submitted one application together. The Trustee also feigns confusion at my direct expenses vs Earn committee expenses, when really, the distinction is quite clear: My expenses were incurred by me directly, in paying for a personally-filed adversary proceeding, and personally-filed appeals.

I went to mediation to represent all Earn creditors, and left my own self-interest at the door. Dropping valuable claims and causes of actions against the estate for the good of all creditors meets the definition of substantial contribution, and all I am doing is seeking reimbursement of filing fees and PACER fees that I paid in my *pro se* capacity.

In the end, the Trustee only expressly objected to one of the expenses in my individual expense report: an adversary proceeding filing fee of $350 for *Herrmann vs. Celsius Network LLC, et al.,* a case which I expressly agreed to dismiss–pending plan confirmation–as part of the

term sheet I signed in New York. The stated rationale behind the objection is: "filing of actions are not compensable," but there is no legal rationale or precedent for making that assertion. Her objection should be overruled.

As noted in my initial application, I also played a key role, earlier in these cases, in advocating for an expanded scope for the examiner, which was instrumental in benefitting all creditors, and the debtors' estates. Expanding the examiner's scope helped make it clear how extensive the fraud was.

Furthermore, the Earn appeal, which I seek reimbursement of, was the only appeal that wasn't still pending at the time of the mediation. The appeal resulted in a ruling that the Earn order was interlocutory. This gave more leverage to general creditors of the estate in negotiations with certain other creditors who claimed their coins were, contractually, not property of the Debtors' estates. Knowing that if the recoveries of general creditors were too low, the Earn decision could be appealed gave general unsecured creditors more leverage when negotiating against those who claimed that their coins belonged to them—meaning, ultimately, that general unsecured creditors had more leverage against those claiming their coins were not property of the estate. This leverage helped in negotiating a global settlement that everyone could live with. The leverage was ultimately used for the benefit of general creditors to negotiate a settlement that considered *more* assets as part of the Debtors estates, and greatly increased general creditor recoveries, not for me personally.

## **CLOSING STATEMENT**

Based upon the mediation in New York, and other actions taken in these cases, I have made a substantial contribution to these cases by putting general, unsecured creditors first. The Trustee's Objection should be denied in full. I also have a few more PACER charges that have been billed since my last filing. With the Court's permission, I will submit a supplemental filing with those charges.

Respectfully Submitted,

Immanuel J. Herrmann
*Pro Se*
*/s/ Immanuel J. Herrmann*
January 4, 2024