UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>CELSIUS NETWORK LLC, et al.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

## MOTION OF PROFESSIONAL SOLUTIONS INSURANCE COMPANY, HUDSON EXCESS INSURANCE COMPANY, STARSTONE SPECIALTY INSURANCE COMPANY AND ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC. FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE

PEABODY & ARNOLD, LLP
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 951-2011
Scarlett M. Rajbanshi
srajbanshi@peabodyarnold.com
*Attorney for Professional Solutions Insurance*
*Company and Hudson Excess Insurance*
*Company*

BAILEY CAVALIERI LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215
Phone: (614) 229-3254
Elan Kandel (EK 8345)
ekandel@baileycav.com
*Attorney for StarStone Specialty Insurance Company*
*and Associated Industries Insurance Company, Inc.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ii

I.     JURISDICTION ................................................................................................ 1

II.    FACTUAL BACKGROUND............................................................................ 1

    A.     The Pending Investigations and Lawsuits Involving Celsius and its Directors and Officers ...........................................................................................................1

    B.     The Excess Directors and Officers Liability Policies Issued to Celsius Network by the Excess Insurers.........................................................................................4

    C.     Multiple Claims Have Been Reported Under the Excess Policies ...........................9

III.   RELIEF REQUESTED AND BASIS THEREFOR ........................................... 10

IV.    WAIVER OF MEMORANDUM OF LAW ....................................................... 17

V.     NO PRIOR REQUEST...................................................................................... 17

VI.    CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Homsy v. Floyd (In re Vitek, Inc.)*,
    51 F. 3d 530 (5th Cir. 1995) ............................................................................................. 13

*In re Adelphia Commc'ns Corp.*,
    285 B.R. 580 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49
    (Bankr. S.D.N.Y. 2003) ............................................................................................. 15, 16

*In re Adelphia Commc'ns Corp.*,
    298 B.R. 49 (S.D.N.Y. 2003) .......................................................................................... 12

*In re Continental Airlines*,
    203 F.3d 203 (3d Cir. 2000) ........................................................................................... 11

*In re CyberMedica, Inc.*,
    280 B.R. 12 (Bankr. D. Mass. 2002) ........................................................................... 12, 16

*In re Downey Fin. Corp.*,
    428 B.R. 595 (Bankr. D. Del. 2010) ............................................................................... 16

*In re Eastwind Group, Inc.*,
    303 B.R. 743 (Bankr. E.D. Pa. 2004) ............................................................................. 12

*In Re Edgeworth*,
    993 F.2d 51 (5th Cir. 1993) ............................................................................................ 13

*In re Enron Corp.*,
    2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) ....................................................... 16

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 11, 12

*In re Louisiana World Exposition, Inc.*,
    832 F.2d 1391 (5th Cir. 1987) ........................................................................................ 11

*In re MF Global*,
    469 B.R. 177 (S.D.N.Y. 2012) ................................................................................. passim

*Ochs v. Lipson (In re First Central Fin. Corp.)*,
    238 B.R. 9 (Bankr. E.D.N.Y. 1999), *aff'd in an unreported decision*, No. 99-CV-6730 (TCP),
    2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2, 2000) .................................. 12, 13, 14, 15

## Other Authorities

11 U.S.C. § 101 ................................................................................................................. 2

11 U.S.C. § 362(d) .................................................................................................... passim

11 U.S.C. § 541 ........................................................................................................... 10, 11

28 U.S.C. § 1334 .............................................................................................................. 1

28 U.S.C. § 1409 .............................................................................................................. 1

28 U.S.C. § 157 ................................................................................................................ 1

Rule 9013-1(a) S.D.N.Y. Bankruptcy Court ..................................................................... 17

1.      Professional Solutions Insurance Company, Hudson Excess Insurance Company, StarStone Specialty Insurance Company and Associated Industries Insurance Company Inc. (collectively, the "Excess Insurers") by and through their undersigned counsel, enter a limited appearance solely for the purpose of moving the Court pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a) for relief from the automatic stay, to the extent applicable, for the purpose of the advancement and/or payment of certain defense costs being incurred by the insured persons of the Debtor and its subsidiaries (collectively, "Celsius") under certain excess Directors & Officers Liability and Corporate Securities Liability insurance policies (the "Excess Policies") issued by the Excess Insurers to one of the Debtors, namely, Celsius Network, Inc. ("Celsius Network").  True and accurate copies of the Excess Policies are annexed as Exhibit 1. Please note that the Excess Insurers do not consent to jurisdiction for any other purpose other than this Motion.

2.      The Excess Policies generally follow the form of the primary insurers, namely, Lloyd's of London RenaissanceRe Syndicate 1458, Policy No. EFI120308800 and Vanguard Insurance Company, Policy No. EFI120308800 (collectively the "Primary Insurers" and their policies will be collectively referred to as the "Primary Policy").

## I.    <u>**JURISDICTION**</u>

3.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## II.    FACTUAL BACKGROUND

### A.    The Pending Investigations and Lawsuits Involving Celsius and its Directors and Officers

4.      In July 13, 2022, the Debtor, Celsius Network LLC and certain of its subsidiaries and affiliates, namely, Celsius Network Inc., Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC (collectively "the Debtors") filed voluntary bankruptcy petitions and for joint administration of their respective cases under the case number assigned to the Chapter 11 case filed by Celsius Network LLC under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (Doc. Nos. 1, 2 and 7 ). On July 9, 2022, this Court ordered that the Debtors' estates be jointly administered (Doc. 53).

5.      Beginning in July 2022, Celsius Network and its subsidiaries, as well as numerous directors, officers and employees of Celsius, including Adrian Alisie, Amir Ayalon, Tal Bentov, Guillermo Bodnar, Rod Bolger, Ron Deutsch, Chris Ferraro, Hanoch ("Nuke") Goldstein, Shiran Kleiderman, Jason Perman, Trunshedda Ramos, Alex Mashinsky, Shlomi Daniel Leon, Jeremie Beaudry, Rodney Sunada-Wong, Kristine Meehan Mashinsky, Aliza Landes, Roni Cohen-Pavon, Johannes Treutler, Asaf Iram, Dean Tappan, Harumi Urata-Thompson, David Barse and Alan Jeffrey, have either: (a) been sued in in court cases or in arbitration, (b) received demand letters and/or emails (*i.e.*, Albert Yao (employment matter); Matthew Bowen; Brad Hart; Erik Jan Smulders), (c) received subpoenas, formal and/or informal requests for documents and information or formal letters, and/or (d) received subpoenas or formal letters announcing investigations and/or requests for documents or information in connection with various investigations being conducted by the United States Department of Justice, the Securities and Exchange Commission, the Commodity Future Trading Commission,

the Federal Trade Commission, by Shoba Pillay, the Chapter 11 Examiner this Court approved

by Order dated September 29, 2022 (who interviewed 26 current and former Celsius directors,

officers and/or employees and others, propounded Rule 2004 requests and reviewed

approximately 231,000 documents, and issued a Final Report on January 30, 2023) and by

multiple state regulators and/or Attorneys General, including Alabama, Alaska, California,

Georgia, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Minnesota, Mississippi, New

Hampshire, New Jersey, New York, North Carolina, Oklahoma, Pennsylvania, South Carolina,

South Dakota, Tennessee, Texas, Vermont, Washington and the District of Columbia. In

addition, certain of the states have initiated proceedings (i.e., the Texas State Securities Board

[Docket No.: 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] on September 17, 2021; the Texas State Securities Board [no Docket

No.] on August 4, 2022; the California Department of Financial Protection and Innovation

(proceeding regarding revocation of license) on August 19, 2022) and issued cease and desist

Orders (i.e., the New Jersey Bureau of Securities on September 17, 2021; the Kentucky

Department of Financial Institutions, Securities Division on September 23, 2021; the California

Business, Consumer Services and Housing Agency Department of Financial Protection and

Innovation dated August 8, 2022; the Alaska Department of Commerce, Community, and

Economic Development Division of Banking and Securities dated October 19, 2022) or Orders

to Show Cause why a Cease and Desist Order should not be issued or Ex Parte Motions for a

Cease and Desist Order or Notice to Cease and Desist and Opportunity for a Hearing (i.e., the

Vermont State Department of Financial Regulation on August 12, 2022; the Alabama Securities

Commission on September 16, 2021; the District of Columbia, Department of Insurance,

Securities and Banking on October 13, 2022). Investigations have also been initiated by certain

foreign regulatory agencies, including the Quebec Authority on Financial Markets, the Ontario

Securities Commission and the UK Financial Conduct Authority against Celsius Network,

Celsius Network Ltd and Celsius Network LLC. The following actions, adversary proceedings or arbitrations have also been commenced: a) *Plutus21 Blockchain Opportunities Fund, I, LP, et al. v. Alex Mashinsky and S. Daniel Leon* (Arbitration); b) Ray M. Langley (customer complaint against Celsius Network dated June 14, 2022 filed just with the State of California Department of Justice); c) Hugh Minton (customer complaint) against Celsius Network, LLC dated June 24, 2022, filed just to the South Dakota Dep't of Labor & Regulation); d) *Samuel Taylor Goines v. Celsius Network, LLC, Celsius Lending, LLC, Celsius KeyFi, LLC, Alexander Mashinsky, Shlomi "Daniel" Leon, David Barse and Alan Jeffrey Carr* filed in the United States District Court, District of New Jersey on July 13, 2022 (securities class action); e) *KeyFi, Inc. v. Celsius Network Ltd. and Celsius KeyFi, LLC* filed in New York County Supreme Court on July 7, 2022; f) *Valentin Komarovskiy v. Celsius Network, LLC, Alexander Mashinsky and Shlomi "Daniel" Leon*, (filed in the Commonwealth of Massachusetts, Superior Court Department, Worcester on December 9, 2022) ; g) *The People of the State of New York v. Alex Mashinsky* filed in New York County Supreme Court on January 5, 2023; h) *Official Committee of Unsecured Creditors of Celsius Network, LLC, et al. v. Alexander Mashinsky, et al.* [draft Adversary Proceeding dated February 14, 2023, and as amended in draft March 30, 2023]; and i) *Thomas Bull v. Alex Mashinsky and Kristine Mashinsky* (filed in the United States District Court, Southern District of New York on February 16, 2023).

6.      There are also ongoing investigations being conducted by the United States Attorneys' Offices for the Southern District of New York, the Securities and Exchange Commission, the Commodity Future Trading Commission, the Federal Trade Commission and other state regulatory agencies in connection with the events leading up the Debtors' bankruptcy filings.

B.      **The Directors and Officers Liability Policy Issued to Celsius Network by the Primary Insurers**

4

7.       Before the Debtors' bankruptcy filings, the Primary Insurers issued Policy No. EFI1203088-00, to Celsius Network for the policy period of May 30, 2021 to May 30, 2022, extended to June 15, 2023 by Endorsement #13, with a Directors and Officers and Corporate Securities Liability Limit of $1,500,000 subject to a retention of $2,500,000 per **Claim** for Insuring Agreements B and C and no retention for Coverage A (non-indemnifiable **Loss**) pursuant to Endorsement #14. Subject to all of its terms and conditions, the Primary Policy potentially affords coverage up to a maximum aggregate limit of liability of $1,500,000, inclusive of **Defense Costs**.[2]   A true and correct copy of the Primary Policy is attached hereto as Exhibit 2.

8.       In relevant part, the Directors & Officers and Corporate Securities Liability Coverage Section (the "D&O Coverage Section") of the Primary Policy contains three types of coverage under its Insuring Agreements. (Ex. 1, D&O Coverage Section p.1 of 12). First, under **Coverage A: Individual Insurance Coverage**, coverage is provided for a covered **Loss** incurred by **Individual Insureds** arising from **Claims** made against them if such **Loss** is not indemnified by the **Company**. Second, under **Coverage B: Company Reimbursement Coverage**, coverage is provided for a covered **Loss** by the **Company** to the extent it indemnifies the **Individual Insureds** for covered **Loss** in connection with **Claims** made against **Individual Insureds**. Third, **Coverage C: Company Coverage**, provides coverage for the **Company** for covered **Loss** resulting from **Claims** for covered **Loss** made against it.

9.       The term **Company** is defined in the General Terms and Conditions Coverage Section of the Primary Policy ("GTC Section") to mean, in pertinent part, the **Named Insured**, any **Subsidiary,** and the **Named Insured** or any **Subsidiary** as a debtor-in-possession under

---

[2] Words appearing in bold are defined terms under the Primary Policy.

United States of America Bankruptcy law or similar legal statutes under foreign law. (Ex. 1, GTC Coverage Section at p.1 of 9).

10.     In addition to the Definitions in the GTC Section of the Primary Policy, additional relevant terms of the Primary Policy are defined in the D&O Coverage Section of the Primary Policy (Ex. 1, D&O Coverage Section pp.1-6 of 12). A **Claim** is defined (at p. 1 of 12) in pertinent part to mean:

1. a written demand, other than a **Derivative Demand,** for monetary, nonmonetary or injunctive relief (including any request to toll or waive any statute of limitations and including any demand for mediation, arbitration or any other alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:

    (i)    service of a complaint or similar pleading;

    (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (iii)  receipt or filing of a notice of charges;

3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

    (i)    once such **Individual Insured** is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or

    (ii)   in the case of an investigation by the Securities and Exchange Commission ("**SEC**") or a similar state or foreign government authority, after:

        (a) the service of a subpoena upon such **Individual Insured**; or

        (b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**;

11.     The D&O Coverage Section of the Primary Policy (Ex. 1, p.5 of 12) defines a **Securities Claim** as a **Claim** made against any **Insured**:

1. alleging a violation of any federal, state, local or foreign regulation, rule or

6

statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

(i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

(ii) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or

2. brought derivatively on behalf of a **Company** by a security holder of such **Company**.

12.　　The D&O Coverage Section of the Primary Policy (Ex. 1, p.2 of 12) defines an Employee, in pertinent part, to mean any past, present or future employee of the Company, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee.

13.　　The D&O Coverage Section of the Primary Policy (Ex.1, pp.3-4 of 12) defines the terms of Executive, Individual Insured, and Insured as set forth below:

C. **Executive** means:

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;

2. any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or

3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

D. **Individual Insured** means any:
   1. **Executive**;
   2. **Employee**; or

7

   3. **Outside Entity Executive**.

  E. **Insured** means any:
    1. **Company**; or
    2. Individual Insured.

 14. The D&O Coverage Section defines the term **Loss** (Ex. 1, at p.4 of 12) as follows:

  J. **Loss** means:

   1. the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

   2. **Defense Costs**

 15. The D&O Coverage Section defines the term **Wrongful Act** (Ex. 1, p.6 of 12) as follows:

  P. **Wrongful Act** means:

   1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation**, by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive**, **Employee**, or **Outside Entity Executive**; or

   2. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim**.

 16. Section VI.A. of the D&O Coverage Section of the Primary Policy provides, in pertinent part, that the Insurers do not have any duty to defend a Claim, that an Insured shall defend and contest any Claim made against them and that the Insurer shall advance Defense Costs in excess of the applicable retention on behalf of the Insured prior to the final disposition of the Claim. (Ex. 1, pp. 9-10 of 12).

17.    Section X. of the D&O Coverage Section of the Primary Policy contains an "Order of Payments" provision, which provides, in pertinent part, that in the event of Loss arising from any Claim for which payment is due under the provisions of this Coverage Section but which Loss, in the aggregate, exceeds the remaining available Limits of Liability applicable to this Coverage Section (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the Insurers shall first pay Loss under the Policy for which coverage is provided under Coverage A of this Coverage Section and that the "Financial Insolvency of any Company or any Individual Insured shall not relieve the Insurer of its obligations to prioritize payment of covered Loss under the Coverage Section pursuant to this Section X." (Ex. 1, pp. 11-12 of 12).

18.    On May 3, 2023, the Primary Insurers filed a motion seeking relief from the automatic stay pursuant to 11 U.S.C. § 362 with the Primary Policy ("Motion," ECF Doc. # 2585.)

19.    Shlomi Daniel Leon and Aliza Landes filed a joinder ("Joinder," ECF Doc. # 2760) to the Motion. The Official Committee of Unsecured Creditors (the "Committee") filed a limited objection ("Committee Objection," ECF Doc. # 2839). The Debtors also filed a limited objection ("Debtor Objection," ECF Doc. # 2842). An objection was filed by Víctor Ubierna de las Heras ("Ubierna Objection," ECF Doc. # 2849).

20.    The Court held a hearing on the Motion on June 28, 2023. Thereafter, on July 10, 2023, the Court issued its Decision on the Motion (the "Decision," ECF Doc. # 2981).

21.    Per the Decision, the Court: (i) lifted the automatic stay pursuant to 11 U.S.C. § 362(d)(1) so that the proceeds of the Primary Policy could be used to advance defense costs to Individual Insureds; (ii) required quarterly aggregate reporting of fees and expenses paid by the Primary Policy as well as Court approval before any settlement could be paid out using insurance proceeds from the Primary Policy; and (iii) required that any Individual Insureds receiving

insurance proceeds pursuant to the Decision and Order consent to the Court's jurisdiction with respect to the Primary Policy. (Id. at 14-24).

22.     On July 18, 2023, the Court issued its Order on the Motion (the "Order," ECF Doc. #3044).

### C.     Multiple Notices of Claims Have Been Reported Under the Excess Policies

23.     Since May 6, 2022, the Excess Insurers have received numerous notices seeking coverage under the Excess Policies on behalf of the directors, officers and certain employees of the Debtors in connection with the lawsuits and investigations that are now pending, including multiple requests from Individual Insureds for the payment of Defense Costs incurred in connection with the aforementioned investigations, lawsuits and arbitration proceeding. Although the Excess Insurers have reserved their rights to deny and/or limit coverage for these matters under the Excess Policies, given that the quantum of potentially covered and reasonable Defense Costs are well in excess of the Primary Policy's Aggregate Limit of Liability as well as the Excess Policies' Limit of Liability, they are agreeable at this time to advancing those covered and reasonable Defense Costs incurred by those Individual Insureds that are potentially covered subject to a full reservation of rights under the Excess Policies, including those set forth in Section VI of the Primary Policy.

### III.     RELIEF REQUESTED AND BASIS THEREFOR

24.     Because the case law is not uniform on the question of whether the proceeds of liability insurance policies are property of the estate under 11 U.S.C. § 541 and thereby subject to the automatic stay contained in 11 U.S.C. § 362, the Excess Insurers have filed this motion out of abundance of caution so as to avoid violating the stay. While the Excess Insurers take no position in this case on whether the proceeds of the Primary Policy or Excess Policies are property of the Debtors' estates, if it is determined that the stay applies both to the Excess

Policies and its proceeds, the Excess Insurers seek entry of an order granting relief from the stay, if applicable, for purposes of advancing reasonable and necessary **Defense Costs** incurred by **Individual Insureds** under the Excess Policies in connection with the arbitration, the pending lawsuits and investigations, as well as additional matters that may arise in the future (in the remote chance that any of the **Individual Insureds** withdraw their claims for potentially covered and reasonable **Defense Costs** already incurred such that the Excess Policies' respective Aggregate Limits of Liability are not exhausted), subject to the Excess Insurers' determination that such matters are potentially covered under the Excess Policies.[3]

25.    Further, the Excess Insurers agree to provide the Court with quarterly aggregate reporting of fees and expenses paid by the Excess Insurers under the Excess Policies as well as obtain Court approval before any settlement could be paid out using insurance proceeds from the Excess Policies.[4] Separately, the Excess Insurers respectfully request that the Court require that any **Individual Insureds** receiving insurance proceeds from the Excess Policies consent to the Court's jurisdiction with respect to the Excess Policies.

26.    Although it is well established that a Debtor's liability policy is considered property of a Debtor's estate under 11 U.S.C. § 541, the proceeds are not necessarily so. *See, In re Continental Airlines*, 203 F.3d 203, 216 (3d Cir. 2000) (the "proceeds from [an] insurance policy should be evaluated separately from the Debtor's interest in the policy itself"); *see also In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1400-01 (5th Cir. 1987) (proceeds of D&O policy which did not provide liability coverage for third-party claims against the Debtor

---

[3] The Excess Insurers are not requesting that this Court approve, review or otherwise become involved in coverage determinations under the Excess Policies.

[4] From a practical standpoint, quarterly reporting of **Defense Costs** paid under the Excess Policies is moot since, as noted supra, the quantum of potentially covered and reasonable **Defense Costs** already incurred is well in excess of the Excess Policies' total aggregate Limits of Liability. Similarly, given that the Excess Policies will be exhausted once the Excess Insurers pay **Defense Costs**, there will be no insurance proceeds available under the Excess Policies to pay any settlement. Accordingly, while the Excess Insurers are nonetheless agreeable to obtaining this Court's consent for any settlement, practical realities render such a requirement moot.

not property of the estate); *In re MF Global*, 469 B.R. 177, 191 (S.D.N.Y. 2012) ("In cases where

liability policies provide direct coverage to both directors and officers and debtors, courts have

held that 'the proceeds will be the property of the estate if depletion of the proceeds would have

an adverse effect on the estate to the extent the policy actually protects the estate's other assets

from diminution.'") (citations omitted); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D.

436, 463 (S.D.N.Y. 2004) ("individual insureds . . . have a right to use the policies' proceeds to

cover  their defense and settlement costs in litigation"); *In re Adelphia Commc'ns Corp.*, 298

B.R. 49, 52-54 (S.D.N.Y. 2003) (debtor did not have property interest in proceeds of D&O

policies where it had made no payments for which it would be entitled to indemnity coverage

under the policies); *Ochs v. Lipson (In re First Central Fin. Corp.)*, 238 B.R. 9, 16 (Bankr.

E.D.N.Y. 1999), aff'd in an unreported decision, No. 99-CV-6730 (TCP), 2000 U.S. Dist. LEXIS

22005 (E.D.N.Y. Mar. 2, 2000) ("While a majority of courts consider a D&O policy estate

property, there is an increasing view that a distinction should be drawn when considering

treatment of proceeds arising under such policies.") (citation omitted). *Cf. In re Eastwind Group,

Inc.*, 303 B.R. 743, 748 (Bankr. E.D. Pa. 2004) (where securities laws violations were asserted

both against the directors and officers and the Debtor, the proceeds of a D&O policy providing

entity coverage for securities claims were property of the estate); *In re CyberMedica, Inc.*, 280

B.R. 12 (Bankr. D. Mass. 2002) (proceeds of D&O policy which provided coverage to Debtor

for indemnity and third-party claims were property of the Chapter 7 Debtor's estate).

27.     In *In re MF Global*, this court found that "Courts in this circuit and other

jurisdictions have permitted the advancement of defense costs to a debtor's directors and officers

even though the insurance policies provided direct coverage to the debtor." 469 B.R. at 192

(citations omitted). This court also observed that "[t]he District Court for the Southern District

of New York has also held that where the insurance proceeds are available to both a debtor and

individual insureds, "the individual insureds have a right to use the policies' proceeds to cover their defense and settlement costs in litigation." *Id.* (*citing In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004). In *MF Global*, this Court also found that "[l]ifting the automatic stay to permit U.S. Specialty to advance defense costs on behalf of the Individual Insureds would not severely prejudice the Debtors' estates. But failure to do so would significantly injure the Individual Insureds whose defense costs were covered by the Specialty Policies." 469 B.R. at 193. This Court also cited to the case of *Ochs v. Lipson*, in which the Bankruptcy Court for the Eastern District of New York explained that even if a D&O liability policy provides coverage to the Debtor for claims against it -- in addition to providing coverage for claims against the directors and officers -- it does not necessarily follow that all proceeds of such a policy are property of the estate. 238 B.R. at 16-17. In that case, the D&O policy provided coverage for claims against the directors and officers, coverage to the Debtor for indemnity payments made to the directors and officers for claims against them, and coverage to the Debtor for securities claims against it. A shareholder class action securities lawsuit had been filed against the directors and officers, and the Chapter 7 Trustee also had filed suit against the directors and officers alleging mismanagement and waste of corporate assets. The Trustee sought to enjoin the payment from the D&O policy of any amount incurred by the directors and officers in their defense of the lawsuits and also sought to enjoin payment of any amount to the shareholder plaintiffs, arguing instead that the policy should be preserved for satisfaction of his own claim against the directors and officers. *Id.* The court rejected the Trustee's position and held instead that the proceeds of the D&O policy were not property of the Debtor's estate in the circumstances of that case, notwithstanding that the policy provided securities claims coverage to the Debtor:

> The mere appendage of entity coverage to this Policy by way of a rider, providing
> the Debtor with protection from securities claims, does not provide sufficient

predicate, per se, to metamorphose the proceeds into estate property. It may well be that proceeds of certain D&O insurance policies, which provide direct entity coverage to a corporate debtor, can be considered property of the estate. *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F. 3d 530, 535 (5th Cir. 1995) (commenting that the court has "not yet grappled with how to treat the proceeds of [a D&O policy] when the policy-owning debtor is but one of two or more coinsureds or additional named insureds"). Perhaps, this determination would be appropriate when many and/or large entity coverage claims against the debtor threaten to become a "free-for-all" that might exhaust the insurance proceeds and thereby jeopardize estate assets over and above the limits of the policy. *In Re Edgeworth*, 993 F. 2d at 56 n. 21. In such situations, the debtor's entity coverage competes for proceeds with the officer and director liability portion of the insurance policy. For every dollar paid out to the officers and directors there is one less dollar of coverage protecting the debtor's estate.

238 B.R. at 17 (citations omitted). Similar to this Court's holding in *MF Global*, the court in *Ochs v. Lipson* found that payment of the D&O policy proceeds for the directors' and officers' defense costs did not violate the stay.

28.   Similar to the Specialty Policies at issue in the *MF Global* case, the Primary Policy and the Excess Policies here provide the **Individual Insureds** with priority to any interest that may be asserted by the Debtors. The Order of Payments section of the Primary Policy provides in pertinent part that "[i]n the event of Loss arising from any **Claim** for which payment is due under the provisions of [the] Coverage Section but for which **Loss**, in the aggregate, exceeds the remaining Limits of Liability…then the Insurer shall: A. first pay such **Loss** for which coverage is provided under Coverage A of this Coverage Section." (Ex. 1, D&O Coverage Section, Section X., pp.11-12 of 12). The **Individual Insureds'** needs far outweigh the Debtors' need for coverage. Here, the Excess Policies potentially provide coverage for non-indemnifiable **Loss** incurred by **Individual Insureds**. As detailed above, the Primary Policy and the Excess Policies also potentially provide coverage to the Debtors to the extent the Debtors indemnify the **Individual Insureds**, and for **Securities Claims** and fiduciary liability **Claims** made against the Debtors. To date, the Excess Insurers have received multiple requests for coverage for **Loss** in

the form of unreimbursed **Defense Costs** on behalf of the **Individual Insureds** referenced in paragraph 4 herein. It is Excess Insurers' understanding that the Debtors will not be indemnifying the **Individual Insureds** for their **Defense Costs** incurred in connection with the pending lawsuits and investigations described in paragraph 4. At this point, the Debtors' interest in coverage under the Excess Policies for direct claims that may be asserted against the Debtors is subject to this Court's oversight. Nevertheless, even if the Court were to conclude that the proceeds of the Excess Policies should be deemed property of the Debtors' estates, "cause" exists under 11 U.S.C. § 362(d) for relief from the stay for the purpose of permitting the Excess Insurers to advance payments under the Excess Policies for reasonable and necessary **Defense Costs** incurred by the **Individual Insureds**.

29.    Section 362(d) provides that the Court may grant relief from the automatic stay on request from a party in interest "for cause." 11 U.S.C. § 362(d)(1). Whether "cause" exists for purposes of this section is determined on a case-by-case basis and is left to the discretion of the bankruptcy judge. *See*, *In re MF Global*, 469 B.R. at 191; *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49 (Bankr. S.D.N.Y. 2003). Among other things, the Court should consider the relative harm to interested parties if the stay is not lifted. *See id.* at 594 (considering multiple factors, including the impact of the stay on the parties and the balance of harms).

30.    Here, "cause" exists for granting relief from the stay in order to permit the Excess Insurers to advance **Defense Costs** on behalf of the **Individual Insureds** under the Excess Policies. As detailed above, the Primary Policy and, by extension the Excess Policies, provide coverage to **Individual Insureds**, who have a present need for payment of their **Defense Costs** that outweighs the Debtors' need for coverage. In the *MF Global* case, this Court followed the court's finding in *Ochs v. Lipson*, that "'D&O policies are obtained for the protection of

individual directors and officers. In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."' *In re MF Global*, 469 B.R. at 192 (*citing Ochs v. Lipson*, 238 B.R. at 16).

31.     In recognition of the separate and distinct interests of non-debtor co-insureds, a number of courts in this district and elsewhere have granted relief from the automatic stay to permit the advancement of defense costs to a Debtor's directors and officers even though the insurance policies also provided direct coverage to the co-insured Debtor. *See In re MF Global*, 469 B.R. at 191-192 (granting relief from stay in order to Specialty Policies to advance defense costs); *In re Adelphia Commc'ns Corp.*, 285 B.R. at 598 (granting relief from stay in order to permit primary insurer to advance defense costs); *In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010) (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs *In re Enron Corp.*, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. at 18-19 (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy).  As explained by Judge Gerber in *In re Adelphia*, "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage." 285 B.R. at 598.

32.     The **Individual Insureds**' interests in Excess Policies' proceeds should be given priority to any interest that may be asserted by the Debtors. Section X. of the D&O Coverage Section of the Primary Policy expressly prioritizes providing insurance coverage to the individual directors and officers, and there is no provision in the contract subordinating their rights to coverage to those of the Debtors. If the stay is not lifted, the harm to the **Individual Insureds** would outweigh any harm to the Debtors. Even assuming that the Debtors had a

property interest in the Excess Policies' proceeds, the Priority of Payment provisions in the Primary Policy makes clear that the coverage potentially afforded to the **Individual Insureds** for non-indemnifiable **Loss** must be paid prior to any payments made for matters implicating coverage potentially provided to the debtors for amounts they might pay as indemnification to the **Individual Insureds** or for covered **Claims** made against them. The "**Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of its obligations to prioritize payment of covered **Loss** under the **Coverage Section** pursuant to this Section X." Thus, under the Primary Policy, the Debtors' potential rights to coverage are subordinated to the rights of the **Individual Insureds**. (Ex.1, D&O Coverage Section pp.11-12 of 12).

33.    Based on the foregoing, "cause" under 11 U.S.C. § 362(d) exists to warrant relief from the stay to permit the Excess Insurers to advance payments of **Defense Costs** pursuant to the Excess Policies on behalf of the **Individual Insureds**.

**IV.    <u>WAIVER OF MEMORANDUM OF LAW</u>**

34.    This motion includes, directly or by reference, citations to applicable authorities and a discussion of their application to the relief sought. Therefore, the Excess Insurers respectfully request that service and filing of a memorandum of law as required under Rule 9013-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

**V.    <u>NO PRIOR REQUEST</u>**

35.    No prior motion or application for the relief sought herein by the Excess Insurers has been made to this or any other Court.

**VI.    <u>CONCLUSION</u>**

36.    For the foregoing reasons, the Excess Insurers respectfully request relief from

the automatic stay provision in 11 U.S.C. § 362, to the extent applicable, in order to advance

reasonable and necessary **Defense Costs** incurred by **Individual Insureds** under the Excess

Policies in connection with the pending lawsuits and investigations, as well as any additional

matters that may arise in the future, subject to Excess Insurers' determination that such matters

are potentially covered under the Excess Policies and subject to a full reservation of its rights

under the Excess Policies and applicable law. The Excess Insurers further request that the Court's

order be effective upon entry, and that the 14-day stay period provided under Rule 4001(a)(3)

not apply.


STARSTONE SPECIALTY
INSURANCE COMPANY and
ASSOCIATED INDUSTRIES
INSURANCE COMPANY,

By their Attorneys,

*Elan R. Kandel*
BAILEY CAVALIERI LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215
Phone: (614) 229-3254
Elan Kandel (EK 8345)
ekandel@baileycav.com

PROFESSIONAL SOLUTIONS
INSURANCE COMPANY and
HUDSON EXCESS INSURANCE
COMPANY,

By their Attorneys,

*/s/Scarlett M. Rajbanshi*
PEABODY & ARNOLD, LLP
11 Broadway, Suite 615
New York, NY 10004
Phone: (646) 448-5250
Scarlett M. Rajbanshi
srajbanshi@peabodyarnold.com