# ANV Policy



# POLICY DECLARATIONS

## EXCESS LIABILITY INSURANCE POLICY

This policy is a claims made and reported policy which covers only claims first made against the insured during the policy period.  The limit of liability available to pay loss, including judgments or settlement amounts, may be reduced by amounts incurred for costs of defense. Further note that amounts incurred for costs of defense may be applied against the applicable retention amount.

Please read this policy carefully.

**Item A**

**Policy Number: ANV156364A**

**ANV GLOBAL SERVICES INC.**
**ON BEHALF OF:**
**ASSOCIATED INDUSTRIES INSURANCE COMPANY INC. – 100%**

Policy No. :    **ANV156364A**

**Renewal of Policy Number: N/A**

**Insurer: Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.**

**Item B**

| | |
|---|---|
| **Named Insured:** | **Broker Name:** |
| **Celsius Network, Inc.** | **RT Specialty** |
| | |
| **Mailing Address:** | **Mailing Address**: |
| 221 River Street 9th Floor | 500 W Monroe, 30th Floor |
| Hoboken, NJ 07030 | Chicago, IL, 60661 |

**Item C**

**Policy Period:**

From **June 30, 2021** to **May 30, 2022** at 12:01 A.M. Standard Time at your mailing address shown above.

**Item D**

| LIMITS OF LIABILITY* | AGGREGATE LIMIT |
|---|---|
| Maximum Per **Claim** | $1,500,000 |
| Aggregate All **Claim** | $1,500,000 |

| UNDERLYING LIMITS | |
|---|---|
| Total Underlying Limits | $6,000,000 |

# Item E

**Notice of Claim or Potential Claim:**

Attn: Claims Department

ANV Global Services, Inc.,
200 Hudson Street, Suite 800
Jersey City, NJ 07311
Email: mgaclaims@anv.us.com

**All other notices**

ANV Global Services, Inc.
200 Hudson Street, Suite 800
Jersey City, NJ 07311
PLUnderwriting@anv.us.com

# Item F

**Premium:  $**

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH, AND THE COVERAGE FORM AND ANY ENDORSEMENTS ATTACHED HERETO, CONSTITUTE THE ABOVE NUMBERED INSURANCE POLICY.

August 31, 2021

_____                    _____
**(Date)**                                 **(Authorized Representative)**

POLICY PREMIUM: $
SURPLUS LINES TAX: $
TOTAL: $



# Schedule of Underlying Insurance

## *Schedule A: Underlying Insurance*

### A. Followed Policy:

| | |
|---|---|
| **Coverage:** | Directors and Officers Liability |
| **Carrier:** | Certain Underwriters at Lloyd's |
| **Policy Term:** | May 30, 2021 to May 30, 2022 |
| **Policy Number:** | EFI1203088-00 |
| **Limits:** | 1500000 |

### B. All Other Underlying Policies:

| | |
|---|---|
| **Carrier:** | Professional Solutions Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | FS461DMLA210 |
| **Limits:** | $1,500,000 |
| **Excess:** | $1,500,000 |

| | |
|---|---|
| **Carrier:** | Hudson Excess Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | HE-0303-7685 |
| **Limits:** | $1,500,000 |
| **Excess:** | $3,000,000 |

| | |
|---|---|
| **Carrier:** | StarStone Specialty Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | F77130210ASP |
| **Limits:** | $1,500,000 |
| **Excess:** | $4,500,000 |

## Schedule of Forms:

| Form Number: | Description: |
|---|---|
| **ANV EX 0001** | **ANV Excess Professional Liability Insurance Policy** |
| **ANV EX 0105** | **Service of Suit Endorsement** |
| **ANV PL 0028** | **Cap On Losses From Certified Acts of Terrorism** |
| **ANV PL 0102** | **U.S. Treasury Department OFAC Advisory Notice** |
| **ANV EX 0078** | **Pending or Prior Litigation Exclusion** |
| **ANV EX 0148** | **RT Specialty Amend Excess Professional Policy Endorsement** |



# Contents

**I.    Insuring Agreement**

**II.   Definitions**

**III.  Attachment; Limit of Liability**

**IV.  Underlying Insurance**

**V.   Claims; Notices**

UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.  COVERAGE APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND REPORTED DURING THE POLICY PERIOD OR ANY DISCOVERY PERIOD, IF APPLICABLE.  WORDS PRINTED IN BOLD FACE, OTHER THAN CAPTIONS, ARE DEFINED IN THE POLICY. VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

# Excess Liability Insurance Policy

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer** shown in the Declarations, including those furnished in the **Application,** and subject to all terms, conditions and limitations of this Policy, the **Insureds** and **Insurer** agree:

## *I.    Insuring Agreement*

In consideration of the payment of the premium and in reliance upon all statements made in the Application for this Policy and the **Followed Policy**, including the information furnished in connection therewith, whether directly or through public filings, the **Insurer** agrees to provide insurance coverage to the **Insureds** in accordance with the terms, definitions, warranties, conditions, exclusions and limitations of the **Followed Policy** and, to the extent coverage is further limited or restricted thereby, of any other **Underlying Policy**, except as otherwise provided herein.

## *II.    Definitions*

A. The term "**Insurer**" means the insurance company identified in the Declarations.

B. The term "**Followed Policy**" means the policy designated as such in Schedule A of this Policy.

C. The term "**Insureds**" means those individuals and entities insured by the **Followed Policy**.

D. The terms "**Claim**," "**Loss**" and "**Discovery Period**" have the meanings attributed to them, or to comparable terms, in the **Followed Policy**.

E. The term "**Primary Policy**" means the first listed **Underlying Policy** in Schedule A of the Declarations.

F. The term "**Policy Period**" means the policy period set forth in the Declarations, subject to prior termination in accordance with the **Followed Policy**.

G. The term "**Underlying Limit(s)**" means an amount equal to the aggregate of all limits of liability as set forth in Schedule A for all **Underlying Policies**, plus the uninsured retention, if any, applicable under the **Followed Policy**.

H. The term "**Underlying Policy(ies)**" means the **Followed Policy** and all other policies listed in Schedule A of this Policy.

## *III.    Attachment; Limit Of Liability*

A. Liability under this Policy shall attach to the **Insurer** only after the insurers of the **Underlying Policies** and/or the **Insureds** shall have paid in legal currency the full amount of the **Underlying Limit**.  The aggregate limit of liability set forth in the LIMITS OF LIABILITY section of the Declarations shall be the **Insurer's** maximum liability under this Policy with respect to all covered **Claims** against all **Insureds**.

B. Only in the event of the reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Policies** and/or the **Insureds** paying in legal currency **Loss** covered under the respective **Underlying Policy**, this Policy shall: (i) in the event of reduction, pay excess of the reduced **Underlying Limit**, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention, if any, applicable under the **Primary Policy**, which retention shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy**.

C. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of reduction or exhaustion of the **Underlying Limit** as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any **Underlying Policy**. The risk of uncollectability of the **Underlying Policies** (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

D. If any Underlying Policy contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any **Claim** which is otherwise subject to such grant of coverage. However, any **Loss** paid under the **Underlying Policies** on account of such **Claim** shall reduce or exhaust the **Underlying Limit**, as provided in Section III.B. above, for purposes of this Policy.

## IV.   Underlying Insurance

A. If the **Underlying Policies** are canceled or terminate during the **Policy Period**, including the **Discovery Period** if exercised, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policies** not been canceled or terminated.

B. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Underlying Policy**. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed after the **Underlying Policy** is bound to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the **Insurer** agrees to such changes by written endorsement to this Policy and the **Insureds** pay any additional premium reasonably required by the **Insurer** for such changes.

## V. Claims; Notices

A. The **Insureds** shall, as a condition precedent to their rights under this Policy, give to the **Insurer** written notice of:
(i) any **Claim** at the same time and in the same manner required by the terms and conditions of the **Followed Policy**, regardless of the amount of the **Claim** or the **Underlying Limit** applicable to the **Claim**, and
(ii) any circumstances which could give rise to a **Claim** at the same time and with the same specificity as notice of such circumstances is given under all **Underlying Policies**. To be effective under this Policy, such notice of circumstances shall contain the information required by and shall otherwise

comply with the terms and conditions of the **Followed Policy** and shall also be given under all **Underlying Policies**.

B.  The **Insurer** may, at its sole discretion, participate in the investigation, defense or settlement of any **Claim** or circumstance reported to the **Insurer** under this Policy even if the **Underlying Limit** has not been exhausted.

C.  All notices under this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.  Notice to the **Insureds** may be given to the Parent Company at the address as shown in the Named Insured section of the Declarations.  Notice to the **Insurer** of any **Claim** or potential **Claim** shall be given to the **Insurer** at the address set forth in the Notices to Insurer section of the Declarations.  All other notices to the **Insurer** under this Policy shall be given to the **Insurer** at the address set forth in Notices to Insurer section of the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is properly sent, whichever is earlier.  Any notice to an insurer of an **Underlying Policy** shall not constitute notice to the **Insurer** unless also given to the **Insurer** as provided in this Section V.C.

# Insured Education Document

**Representative of the Insurer**

ANV Global Services, Inc., (200 Hudson Street , Suite 800, Jersey City, NJ 07311) shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of Claims shall be given pursuant to Section VII of the Policy.

**Insurer**

This Policy is underwritten by Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.

**Law**

All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules.

**Queries**

Any query or question about this Policy or any claim under it should be addressed in the first instance to your broker.

**Complaints**

ANV aims to provide a professional service to its customers. Should you have any questions or concerns about your Policy or the handling of a Claim you should, in the first instance, contact your broker.  If your broker does not provide you with a satisfactory response, please contact ANV Global Services, Inc., at 200 Hudson Street, Suite 800, Jersey City, NJ 07311, email: PLUnderwriting@anv.us.com or for any Claims matters, Attn: Claims Department at the same address.  The Claims Department email is: MGAClaims@anv.us.com.  In the event that you remain dissatisfied and wish to make a complaint, please contact ANV´s compliance department at complaints@anv.eu.com.

Endorsement No:   1

Policy Number: ANV156364A

Named Insured:  Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the service of process in any **Claim** or suit on the policy against ANV Global Services, Inc. may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued.  The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such **Claim** or suit.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

Endorsement No:   2

Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**SIDE-A DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that this policy is amended as follows:

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

Endorsement No:   3                                        Policy Number: ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN
ASSETS CONTROL ("OFAC")
ADVISORY NOTICE TO POLICYHOLDERS**

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.
This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:
  • Foreign agents;
  • Front organizations;
  • Terrorists;
  • Terrorist organizations; and
  • Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site — http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Endorsement No:   4                                                 Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PENDING OR PRIOR LITIGATION EXCLUSION**

This endorsement modifies insurance provided under the following:

**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

| Pending or Prior Litigation Date: | 06/25/2021 |
|---|---|

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the **Insurer** shall not be liable for **Loss** resulting from any **Claim** based upon, arising out of, or attributable to any civil or criminal demand, suit or proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the date specified above or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

Endorsement No:   5                                           Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## RT SPECIALTY AMEND EXCESS PROFESSIONAL POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:

## EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that this Policy shall be amended as follows:

1. Section III. ATTACHMENT; LIMIT OF LIABILITY, paragraphs A. and B. are deleted and replaced with the following:

   A. Liability under this Policy shall attach to the **Insurer** only after the insurers of the **Underlying Policies**, the **Insureds** and/or a third party on behalf of the **Insureds** shall have paid in legal currency the full amount of the **Underlying Limit**.  The aggregate limit of liability set forth in the LIMITS OF LIABILITY section of the Declarations shall be the **Insurer's** maximum liability under this Policy with respect to all covered **Claims** against all **Insureds**.

   B. Only in the event of the reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Policies**, the **Insureds** and/or a third party on behalf of the **Insureds** paying in legal currency **Loss** covered under the respective **Underlying Policy**, this Policy shall:  (i) in the event of reduction, pay excess of the reduced **Underlying Limit**, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention, if any, applicable under the **Primary Policy**, which retention shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy**.

2. Section IV. UNDERLYING INSURANCE, paragraph B. is deleted and replaced with the following:

   B. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed after the **Underlying Policy** is bound, this Policy shall become subject to such changes only if and to the extent the **Insurer** agrees to such changes by written endorsement to this Policy and the **Insureds** pay any additional premium reasonably required by the **Insurer** for such changes. In no event shall any such change or modification affect this Policy's excess position or attachment point.

3. Section V. CLAIMS; NOTICES, paragraph C. is deleted and replaced with the
   following:

   C.  All notices under this Policy shall be in writing and given by prepaid express
       courier, certified mail or fax properly addressed to the appropriate party.
       Notice to the **Insureds** may be given to the Parent Company at the address
       as shown in the Named Insured section of the Declarations.  Notice to the
       **Insurer** of any **Claim** or potential **Claim** shall be given to the **Insurer** at
       the address, or email address if notice is given via email, set forth in the
       Notices to Insurer section of the Declarations.   All other notices to the
       **Insurer** under this Policy shall be given to the **Insurer** at the address set
       forth in Notices to Insurer section of the Declarations.   Notice given as
       described above shall be deemed to be received and effective upon actual
       receipt thereof by the addressee or one day following the date such notice is
       properly sent, whichever is earlier.   Any notice to an insurer of an
       **Underlying Policy** shall not constitute notice to the **Insurer** unless also
       given to the **Insurer** as provided in this Section V.C.

All other terms, conditions and exclusions under the policy are applicable to this
endorsement and remain unchanged.

# StarStone Policy



**DECLARATIONS**

**STARSTONE SPECIALTY INSURANCE COMPANY**
**Harborside Five**
**185 Hudson Street, Suite 2600**
**Jersey City, New Jersey 07311**
**855-275-6041**

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE

**NOTICE: THIS IS A CLAIMS-MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DEFENSE COSTS AND DAMAGES.  PLEASE READ THIS POLICY CAREFULLY.**

**NOTICE: THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THE NAMED INSURED'S STATE OF DOMICILE AND IS ISSUED AND DELIVERED AS A SURPLUS LINE COVERAGE PURSUANT TO THE INSURANCE STATUTES.**

POLICY NO: F77130210ASP

ITEM 1.   NAMED INSURED:   Celsius Network, Inc.

              ADDRESS:   221 River Street
                                9th Floor
                                Hoboken, NJ 07030

ITEM 2.   POLICY PERIOD:   From:  June 30, 2021 to May 30, 2022
                                         (12:01 A.M. local time at the address stated in Item 1.)

ITEM 3.   LIMIT OF LIABILITY:   a.  $1,500,000 each **Claim** (inclusive of defense costs)
                                        b.  $1,500,000 in the aggregate (inclusive of defense costs)

ITEM 4.   PENDING & PRIOR DATE:   a.  06/25/2021
          RETROACTIVE DATE:   b.  N/A
This Policy follows any Pending & Prior Litigation Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.a.

This Policy follows any Retroactive Date Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.b.

ITEM 5.   FOLLOWED POLICY:

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000each **Claim** |

ITEM 6.   UNDERLYING POLICY(IES):

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.

SSS-MPL-EFF-DEC (01-17)

**STARSTONE**

| Professional Solutions Insurance Company | FS461DMLA210 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |
|---|---|---|---|---|
| Hudson Excess Insurance Company | HE-0303-7685 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $3,000,000 each **Claim** |

ITEM 7.    POLICY PREMIUM:

ITEM 8.    EXTENDED REPORTING PERIOD PREMIUM:  As per **Followed Policy**.

ITEM 9.    FORMS & ENDORSEMENTS:

These Declarations, together with the attached Policy Form and Endorsements as stated in the SSS-MPL-EFF-END-CW-001 (01-17) Policy Form Schedule and the **Application** (including all information furnished by the **Insured's** in the underwriting of this Policy), shall constitute the contract between the **Insureds** and the **Insurer** ("Policy").

ITEM 10.   NOTICE TO THE INSURER:

| A.   Address for Notice of Claim or Potential Claim: | B.   Address for all other Notices: |
|---|---|
| Attn:  StarStone US Services Claims Office<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (877) 412-7985<br>Tel: (201) 830-2568<br>Email: claims@starstone.com | Attn:  StarStone US Services<br>Specialty Underwriting Department<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (201) 743-7701<br>Tel: (201) 743-7700 |

The **Insurer** hereby causes this Policy to be signed by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary

08/30/2021
DATE

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.



**Named Insured:** Celsius Network, Inc.

**Endorsement No:** 1

**Premium:** Included

**Policy No:** F77130210ASP

**Effective Date:** June 30, 2021

### Management and Professional Liability Follow Form Excess Insurance
### Policy Form Schedule

It is agreed that:

1. Item 9. Forms and Endorsements of the Declarations of this Policy is amended by the addition of the following:

    Item 9.  Forms and Endorsements:

    | Form | Form Title |
    |---|---|
    | SSS-MPL-EFF-GTC (01-17) | Management and Professional Liability Follow Form Excess Insurance |
    | SSS-MPL-EFF-END-CW-36 (10-19) | Enhancement Endorsement |
    | SSS-MPL-EFF-END-CW-60 (01-17) | War And Terrorism Exclusion Endorsement |
    | SSS-NOT-NJ (04.16) | New Jersey Notice |

_____
President

_Thomas J. Balkan_

_____
Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

SSS-MPL-EFF-END-CW-001 (01-17)                                                                                     Page 1 of 1

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
855-275-6041
www.starstone.com

**STARSTONE**

Part of the Enstar Group

# STARSTONE SPECIALTY INSURANCE COMPANY

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE

In consideration of the premium paid and in reliance on all statements made and information furnished by the **Insureds** in the **Application** and the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, the **Insureds** agree with the **Insurer** as follows:

## I.  INSURING AGREEMENT

The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the most restrictive **Underlying Policy**.

## II. CONDITIONS

### A. UNDERLYING INSURANCE

1. Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

2. This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**. The risk of such uncollectability, whether because of financial impairment or insolvency or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

3. If any **Underlying Policy** contains a specific grant of coverage that is subject to a sublimit of liability or a supplementary payment, then this Policy shall not provide such coverage.  However, this Policy shall recognize any reduction and, if applicable, exhaustion of the **Underlying Limit** by payment under such coverage.

4. Any and all **Underlying Policy(ies)** shall be maintained in full force and effect. In the event of failure to maintain any **Underlying Policy(ies)**, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been maintained.

### B. LIMITS OF LIABILITY AND RETENTION

1. If an each **Claim** Limit of Liability is specified in Item 3.a. of the Declarations, the maximum liability of the **Insurer** for all **Loss**, including without limitation defense costs, arising from each **Claim** covered under this Policy shall not exceed the each **Claim** Limit of Liability specified in Item 3.a. of the Declarations.

2. The maximum liability of the **Insurer** for the combined total of all **Loss**, including without limitation defense costs, arising from any and all **Claims** covered under this Policy shall not exceed the aggregate Limit of Liability specified in Item 3.b. of the Declarations.

3. If this Policy drops down because of the exhaustion of the **Underlying Limit**, the applicable deductible, retention and/or coinsurance of the **Followed Policy** shall apply to each **Claim** handled by the **Insurer** on a primary basis.

### C. REPORTING AND NOTICE REQUIREMENTS

1. All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

2. Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable address shown in Item 10 of the Declarations.



3. The **Insurer** may, at its sole discretion, fully and effectively associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** under this Policy even if the **Underlying Limit** has not been exhausted. The **Insureds** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably require.

### D. EXTENDED REPORTING PERIOD COVERAGE

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. Such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy**. The additional premium for the extended reporting period under this Policy shall be calculated at the same percentage of this Policy's annual premium as the percentage stated in the **Followed Policy** for calculating the extended reporting period premium thereunder. The right to purchase extended reporting period coverage under this Policy shall lapse unless written notice of such election, together with payment of the additional premium due, is given to the **Insurer** within the time specified in the **Followed Policy**. The entire premium for the extended reporting period shall be deemed fully earned and non-refundable upon payment.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

### E. CHANGES

To the extent any term, condition, representation, limitation or restriction of any of the **Underlying Policy(ies)** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

## III. DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form in this Policy, the following terms shall have the meanings indicated below. Any term used in this Policy that is defined in the **Followed Policy**, including but not limited to **Application**, **Claim** and **Loss**, shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy** unless otherwise stated herein.

1. **DIC Insurer** means any insurer of an insurance policy written specifically excess of this Policy that is contractually obligated to drop down and pay covered **Loss** that is not paid by any **Underlying Policy**. This Policy does not follow form to the provisions of the policy of such **DIC Insurer**.
2. **Followed Policy** means the policy specified in Item 5 of the Declarations.
3. **Insurer** means the insurance company shown at the top of the Declarations.
4. **Insureds** means all natural persons and entities insured by the **Followed Policy**.
5. **Named Insured** means the person or entity named in Item 1 of the Declarations.
6. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination in accordance with the **Followed Policy**.
7. **Underlying Limit** means an amount equal to the total limits of liability of all **Underlying Policies**, plus the retention, deductible, and/or coinsurance, if any, applicable under the **Underlying Policy(ies)**.
8. **Underlying Policy(ies)** means the **Followed Policy** and any other policies listed in Item 6 of the Declarations.

## IV. SERVICE OF SUIT CLAUSE

The **Insurer** appoints the highest state official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the state) of the **Insured's** domiciliary state and his/her successor or successors in office as his/her and their duly authorized deputies, as the **Insurer's** true and lawful attorney in and for the aforesaid state, upon whom all lawful process may be served in any action, suit or proceeding instituted in the **Insured's** domiciliary state by or on behalf of any **Insured** or beneficiary against the **Insurer** arising out of this Policy, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to:



Thomas Balkan
Secretary
StarStone US Companies
150 2nd Avenue North
Third Floor
St Petersburg, FL 33701
Facsimile: (727) 576-3627
Tel: (727) 217-2908
Email: thomas.balkan@enstargroup.com

IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President and Secretary, and, if required by state law, this Policy will not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary



**Named Insured:** Celsius Network, Inc.                    **Policy No:** F77130210ASP

**Endorsement No:** 2                                       **Effective Date:** June 30, 2021

**Premium:** Included

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE POLICY ENHANCEMENT ENDORSEMENT

It is agreed that:

I.  Section I. Insuring Agreement of this Policy is deleted in its entirety and replaced with the following:

    **I.  INSURING AGREEMENT**

    The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the **Followed Policy**.

II.  With respect to Section II. Conditions, A. Underlying Insurance of this Policy, subsections 1 and 2 are deleted in their entirety and replaced with the following:

    1.  Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** or other party have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

    2.  This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**.

III.  Section II. Conditions, C. Reporting and Notice Requirements of this Policy is deleted in its entirety and replaced with the following:

    **C.  REPORTING AND NOTICE REQUIREMENTS**

    1.  All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

    2.  Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable street address or email address shown in Item 10 of the Declarations.

    3.  The **Insurer** may, at its sole discretion, associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** and reasonably expected to involve this Policy even if the **Underlying Limit** has not been exhausted.

IV.  Section II. Conditions, D. Extended Reporting Period Coverage of this Policy is deleted in its entirety and replaced with the following:

---

*Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.*
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



**D. EXTENDED REPORTING PERIOD COVERAGE**

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy** and such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

V.  Section II. Conditions, E. Changes of this Policy is deleted in its entirety and replaced with the following:

**E. CHANGES**

To the extent any term, condition, representation, limitation or restriction of the **Followed Policy** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

VI. Section III. Definitions, 4. **Insureds** and 5. **Named Insured** are deleted in their entirety and replaced with the following:

4.  **Insureds** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

5.  **Named Insured** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

_____
President

_____
Secretary

**STARSTONE**
Part of the Enstar Group

| | |
|---|---|
| **Named Insured:** Celsius Network, Inc. | **Policy No:** F77130210ASP |
| **Endorsement No:** 3 | **Effective Date:** June 30, 2021 |
| **Premium:** Included | |

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE WAR, TERRORISM AND MILITARY ACTION EXCLUSION ENDORSEMENT

It is agreed that:

1.  The following exclusion is added to this Policy:

    This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a.  War, including undeclared or civil war;

    b.  Warlike action by a military force, including action to defend against or hinder an actual or expected attack by any government, sovereign or other authority using military personnel or other agents;

    c.  **Terrorism**, including any action taken to defend against or hinder any actual or expected **Terrorism**; or

    d.  Insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, riot, usurped power, rebellion, revolution, or action taken by governmental authority to defend against or hinder any of these;

2.  As used in this endorsement, **Terrorism** means activities against persons, organizations or property that involve the following or preparation for the following:

    a.  use of threat or violence, or commission or threat of a dangerous act; or

    b.  commission or threat of an act that interferes with or disrupts infrastructure or any electronic, communication, information or mechanical system;

    when the effect is to intimidate or coerce the civilian population, any segment of the economy, or to influence the policy or conduct of the government by coercion, or to further political, ideological, religious, social or economic objectives or to express a philosophy or opposition to a philosophy.

_____
President

_____
Secretary



# STARSTONE SPECIALTY INSURANCE COMPANY

**Harborside 5**
**185 Hudson Street, Suite 2600**
**Jersey City, New Jersey  07311**
**855-275-6041**

**NEW JERSEY SURPLUS LINES POLICY NOTICE**

**THIS POLICY IS WRITTEN BY A SURPLUS LINES INSURER AND IS NOT SUBJECT TO THE FILING OR APPROVAL REQUIREMENTS OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. SUCH A POLICY MAY CONTAIN CONDITIONS, LIMITATIONS, EXCLUSIONS AND DIFFERENT TERMS THAN A POLICY ISSUED BY AN INSURER GRANTED A CERTIFICATE OF AUTHORITY BY THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. THE INSURER HAS BEEN APPROVED BY THE DEPARTMENT AS AN ELIGIBLE SURPLUS LINES INSURER, BUT THE POLICY IS NOT COVERED BY THE NEW JERSEY INSURANCE GUARANTY FUND, AND ONLY A POLICY OF MEDICAL MALPRACTICE LIABILITY INSURANCE AS DEFINED IN N.J.S.A. 17:30D-3D OR A POLICY OF PROPERTY INSURANCE COVERING OWNER-OCCUPIED DWELLINGS OF LESS THAN FOUR DWELLING UNITS ARE COVERED BY THE NEW JERSEY SURPLUS LINES GUARANTY FUND.**

SSS-NOT-NJ (01/17)

# Hudson Policy



# TruXS Excess
# Liability Insurance Policy

**PLEASE READ YOUR POLICY CAREFULLY**
**If it is not correct, please return it immediately to:**

**HUDSON EXCESS INSURANCE COMPANY**
**100 William Street, 5th Floor**
**New York, NY 10038**
**212.978.2800**

# Hudson Excess Insurance Company

100 William Street, 5th Floor, New York, NY 10038 hereinafter "Insurer"

## TruXS℠ EXCESS LIABILITY POLICY

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY AND COVERS ONLY CLAIMS FIRST MADE DURING THE POLICY PERIOD OR THE DISCOVERY PERIOD, IF EXERCISED, AND REPORTED TO THE INSURER AS PROVIDED HEREIN.  PLEASE READ THIS POLICY CAREFULLY.**

## <u>DECLARATIONS</u>

<u>Policy No.</u>
**HE-0303-7685**

Item 1.  Parent Company:     **Celsius Network Inc**
Address:          **221 River Street**
                  **9th Floor**
                  **Hoboken, NJ  07030**

Item 2.  Policy Period:

From 12:01 A.M.  **June 30, 2021**
To    12:01 A.M.  **May 30, 2022**
Local time at the address shown in Item 1.

Item 3.  Limit of Liability:

**$1,500,000**  All Claims first made during each Policy Period

Item 4.  Underlying Insurance:

(A) Primary Policy:

| <u>Insurer</u> | <u>Policy Number</u> | <u>Limits</u> | <u>Policy Period</u> |
|---|---|---|---|
| **Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company** | **EFI1203088-00** | **$1,500,000** | **May 30, 2021 to May 30, 2022** |

(B) Underlying Excess Policy(ies):

| <u>Insurer</u> | <u>Policy Number</u> | <u>Limits</u> | <u>Policy Period</u> |
|---|---|---|---|
| **Professional Solutions Insurance Company** | **FS461DMLA210** | **$1,500,000** | **June 30, 2021 to May 30, 2022** |

Item 5.  Premium:          **$**

Item 6.  Discovery Period:

(A)  Additional Premium: **$**

(B)  Additional Period:    **One year**

**Hudson Excess Insurance Company**
100 William Street, 5th Floor
New York, NY 10038
hereinafter "Insurer"

Item 7.  Form number and endorsements attached at issuance:
        Form No.:  **TruXS HG  Ed. 2/07**
        Endorsements:
        1.  **SS-NJ (05/17) - Service of Suit Endorsement - New Jersey**
        2.  **HSIC TruXS E1   Ed.  2/07 - Pending or Prior Litigation Exclusion**
        3.  **HSIC TRU-XS.A38 (02/21) - Amend Item 8 of the Declarations (FI)**
        4.  **IL 09 85 01 21 (01/21) - Disclosure Pursuant to Terrorism Risk Insurance Act**
        5.  **X-19 (01/21) - Cap on Losses from Certified Acts of Terrorism**


Item 8.  Notice to Insurer:

        Hudson Insurance Group
        100 William Street, 5th Floor
        New York, NY 10038
        Fax:  516.739.1862

        Or

        HFP-Claims@Hudsoninsgroup.com


Item 9.  Followed Policy:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| **Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company** | **EFI1203088-00** | **$1,500,000** | **May 30, 2021 to May 30, 2022** |


In witness whereof, the Insurer has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.


08/24/2021
Date

By: _____
    Authorized Representative

## I.   INSURING AGREEMENT

The Insurer designated in the Declarations ("Insurer"), in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Insurer shall provide the **Insured** with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as set forth in Item 4 of the Declarations, and shall pay **Loss** arising from a **Claim** for a **Wrongful Act** first made during the **Policy Period**.

## II.   POLICY DEFINITIONS

**A.**   **Insured** means any natural person or entity designated as such in the **Underlying Insurance**.

**B.**   The terms **Followed Policy, Primary Policy, Policy Period,** and **Underlying Insurance** shall each have the same meaning as attributed to them in the Declarations.

**C.**   The terms **Wrongful Act**, **Loss** and **Claim** shall each have the same meaning as defined in the **Primary Policy**.

## III.   POLICY LIMIT OF LIABILITY AND PAYMENTS UNDER UNDERLYING INSURANCE

**A.**   The Insurer shall be liable to pay **Loss** only after any combination of the **Insured** and all insurers constituting the **Underlying Insurance** shall have paid the full amount of  liability provided by the **Underlying Insurance**, or  any insurer providing a coverage that is otherwise excess of this policy but with a difference in conditions provision shall have paid the full amount of any such insurer's liability solely due to the financial insolvency of that insurer. The Insurer shall then be liable to pay only such additional amount up to the Limit of Liability set forth in Item 3 of the Declarations.

**B.**   In the event of the reduction or exhaustion of the aggregate limits of liability in the **Underlying Insurance** by reason of **Loss** paid thereunder for **Claim(s)** first made during the **Policy Period**, this policy shall (1) in the event of reduction, continue in force in excess of the remaining amount of **Underlying Insurance**; or (2) in the event of total exhaustion, continue in force as primary insurance, subject to all terms, conditions and other provisions of this policy, including endorsements hereto; provided that in the event of this policy becoming primary insurance, it shall only pay excess of the retention or deductible amount set forth in the **Primary Policy**, which shall be applied to any subsequent loss. Notice of reduction or exhaustion of any limits of liability within the **Underlying Insurance** shall be given to the Insurer promptly upon such reduction or exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Insurer to defend any **Insured** or to pay defense costs or any other part of **Loss** in addition to the Limit of Liability set forth in Item 3 of the Declarations.

## IV.   MAINTENANCE OF UNDERLYING INSURANCE

**A.**   This policy is subject to the same terms, conditions, other provisions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in the **Followed Policy** identified in Item 9 of the Declarations  as such policy has been represented to the Insurer as to be issued, or as may be added at a later time to restrict coverage. Any changes made to such **Followed Policy** to expand or broaden it shall only be effective as part of this policy if accepted in writing by the Insurer.

**B.**   The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the aggregate limits contained therein (as provided for in Section III.B. above), and such maintenance shall be a condition precedent to the attachment of any liability of the Insurer under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force, the **Insured** shall be deemed to be self-insured for the amount of the limit of liability of the **Underlying Insurance,** which is not so maintained.

## V.   CLAIM AND OTHER NOTICES

The Insurer shall be given notice in writing as soon as practicable: (a) in the event of cancellation or non-renewal of any **Underlying Insurance**; and (b) of any additional or return premiums assessed in connection with any **Underlying Insurance**.  Any changes in policy provisions in the **Underlying Insurance** or any changes in the **Insured** that would require notice under the **Underlying Insurance** shall be reported to the Insurer in writing as soon as practicable, provided always that the Insurer shall not be bound by any such changes without its consent.

Written notice of **Claim** made against any **Insured** or any circumstances or matters that might later result in a **Claim** shall be given to the Insurer in the same manner and at the same time as given to the **Primary Policy** and shall be sent to the Insurer at the address set forth in Item 8 of the Declarations.

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York.*

President                                        Secretary

Policy Number: **HE-0303-7685**                                        Endorsement Number: **1**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

### SERVICE OF SUIT ENDORSEMENT - NEW JERSEY

It is hereby agreed by the Company and the Named Insured that:

In the event of a failure by the Company to pay any amount claimed to be due under this policy, the Company will, at the Named Insured's request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the court jurisdiction. Nothing in this endorsement constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  In a suit instituted against the Company under this contract, the Company agrees to abide by the final decision of the court or of any appellate court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision therefore, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or its beneficiary arising out of this contract of insurance.

The officer named below is authorized and directed to accept service of process on the Company's behalf:

**Commissioner of Insurance**
**20 West State Street**
**Trenton, NJ  08625-0325**

Having accepted service of process on the Company's behalf, the officer is authorized to mail the process or a true copy to:

**Dina G Daskalakis**
**Hudson Excess Insurance Company**
**Administrative Office**
**100 William Street, 5th floor**
**New York, NY  10038**

**All Other Terms and Conditions of This Policy Remain Unchanged.**

Policy Number: **HE-0303-7685**                                    Endorsement Number: **2**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

PENDING OR PRIOR LITIGATION EXCLUSION
FOLLOW FORM UNDERLYING EXCEPT AS TO DATE

It is hereby agreed that:

The Insurer shall not be liable to make any payment under this policy for **Loss** resulting from any **Claim** made against an **Insured** for, based upon, arising from, or in any way related to any demand, suit, administrative or regulatory proceeding against or involving an **Insured** which was pending on or existed prior to 06/30/2021, or  any **Claim** arising from the same or substantially the same facts, circumstances or allegations which are the subject of or basis for such demand, suit or  proceeding described in this paragraph.

Notwithstanding the preceding paragraph, which is provided solely for identification and reference purposes, the Insurer shall follow form of and incorporate into this Policy, the substantively similar exclusion or endorsement found in Policy No. EFI1203088-00 issued by Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company as part of the **Underlying Insurance,** except that the operative date of such exclusion or endorsement shall remain as set forth in the preceding paragraph.


**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HE-0303-7685**                                                    Endorsement Number: **3**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

## AMEND ITEM 8 OF THE DECLARATIONS (FI)

It is hereby agreed that Item 8. of the DECLARATIONS is deleted in its entirety and replaced with the following:

Item 8. Address for Notices to Insurer:

**Send Claims related notices to:**       **Send all other notices to:**

Hudson Insurance Group                    Hudson Insurance Group
ATTN: **Claims Department**               ATTN: **Underwriting**
100 William Street, 5th Floor             100 William Street, 5th Floor
New York, NY  10038                       New York, NY  10038

or                                        or
HFP-Claims@HudsonInsGroup.com             HFI-Underwriting@HudsonInsGroup.com

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE EFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HE-0303-7685**                                      Endorsement Number: **4**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

**SCHEDULE**

**SCHEDULE – PART I**                    **(Enter charge, even if -0-)**
**Terrorism Premium (Certified Acts) $0**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**

**Additional information, if any, concerning the terrorism premium:**
**N/A**

**SCHEDULE – PART II**
**Federal share of terrorism losses 80% Year: 20 20**
**(Refer to Paragraph B. in this endorsement.)**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**
   In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**
   The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations)  of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the

Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Includes material copyrighted by Insurance Services Office, Inc.**

Policy Number: **HE-0303-7685**                                    Endorsement Number: **5**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Program Reauthorization Act of 2019 - H.R. 1865 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.   The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

**Includes material copyrighted by Insurance Services Office, Inc.**



100 William Street, 5th Floor, New York, NY 10038

# Nexus Policy

nexus

Underwritten by: Professional Solutions Insurance Company, 14001 University Avenue, Clive, IA 50325

# FOLLOW FORM EXCESS LIABILITY POLICY

# DECLARATIONS

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED TO THE UNDERWRITER IN ACCORDANCE WITH THIS POLICY. DEFENSE EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE EXPENSES. ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES OR OTHERWISE, NO COVERAGE IS AVAILABLE UNDER THIS POLICY FOR THE PAYMENT OF SETTLEMENTS OR JUDGMENTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1**

| NAMED INSURED AND ADDRESS | UNDERWRITER |
|---|---|
| Celsius Network, Inc.<br>221 River Street, 9th Floor, Suite 9129<br>Hoboken, NJ 07030 | Professional Solutions Insurance Company,<br>14001 University Avenue, Clive, IA 50325 |
| POLICY NUMBER | PRODUCER |
| FS461DMLA210 | RT ProExec (Chicago) |

**ITEM 2**   **POLICY AGGREGATE LIMIT OF LIABILITY:** $1,500,000

**ITEM 3**   **POLICY PERIOD:**   FROM  06/30/2021   TO  05/30/2022
12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

**ITEM 4**   **NOTICE TO UNDERWRITER:**

Notice of Claim or Circumstances:

Nexus Specialty, Inc.
Attn: Claims
25 Broadway, 9th Floor
New York, NY 10004
notifications@nexusclaims.com

All Other Notices:

Nexus Specialty, Inc.
Attn: Underwriting
25 Broadway, 9th Floor
New York, NY 10004
NSIsubs@nexusunderwriting.com

**ITEM 5**   **POLICY PREMIUM:** $

**ITEM 6**   **UNDERLYING INSURANCE:**

(A)   **Followed Policy:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Retention: |
|---|---|---|---|---|---|
| Certain Underwriters at Lloyd's | D&O | TBD | 05/30/21 to 05/30/22 | $1,500,000 | D&O - $1,500,000 |

(B)    Other **Underlying Insurance:**

| Insurer: | Policy Number: | Policy Period: | Limits of Liability: | Attachment: |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

**ITEM 7**    **FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED**
**See attached Schedule of Forms and Endorsements**

nexus

## FOLLOW FORM EXCESS LIABILILITY POLICY

In consideration of payment of the premium and in reliance on all statements made in the Application (as defined in the Followed Policy), and subject to the terms, conditions and limitations of this policy, including the Declarations and all endorsements hereto ("this Policy"), the Underwriter (shown on the Declarations) and the **Insured** agree as follows:

**I.      INSURING AGREEMENT**

Except as specifically set forth herein, and subject to the applicable Limit of Liability shown in ITEM 2 of the Declarations, this Policy shall provide insurance excess of the **Underlying Insurance** in conformance with all provisions of the **Followed Policy**. Liability shall attach to the Underwriter only after the full amount of the applicable **Underlying Limit**, and any applicable retention or deductible, has been paid, in legal currency, by the insurers of the **Underlying Insurance**, the **Insureds**, or others on behalf of the **Insureds**, in any combination, in accordance with the terms of the **Underlying Insurance**.

For the purposes of determining when the coverage afforded under this Policy shall attach, only actual payments for covered loss, including defense expenses, count towards reduction or exhaustion of the applicable retention(s) and the limits of liability of the Underlying Insurance.

**II.     DEFINITIONS**

When used in this Policy, the following terms, whether in the singular or plural, are defined as follows:

A.   **Followed Policy** means the policy scheduled as such in ITEM 6(A) of the Declarations.

B.   **Insured** means the person or organization shown in ITEM 1 of the Declarations and any person or organization included within the definition of **Insured** in the **Underlying Insurance**.

C.   **Underlying Insurance** means all insurance policies scheduled in ITEM 6 of the Declarations, including the **Followed Policy**.

**III.    LIMITS OF LIABILITY**

The amount stated in ITEM 2 of the Declarations is the Underwriter's maximum aggregate Limit of Liability under this Policy for all loss, including defense expenses. This Policy shall attach only in the event of exhaustion of the limits of liability of the **Underlying Insurance** and shall not drop down for any reason, including partial or total uncollectibility of the **Underlying Insurance**.

**IV.    CONDITIONS**

A.   Underlying Insurance: The **Insureds** shall give written notice to the Underwriter if any **Underlying Insurance** is changed or terminated or if any insurer of the **Underlying Insurance** becomes financially unable to pay its limit of insurance. No such event shall affect coverage under this Policy, unless the Underwriter so agrees in writing. The failure of the **Insureds** to comply with this section shall not invalidate coverage. However, the Underwriter shall not be liable to a greater extent than it would have been had no such event occurred.

B.   Sublimited Coverage: This Policy shall not apply to any coverage under the **Followed Policy** that is subject to a sublimit of liability of a lesser amount than that is Scheduled in ITEM 6 of

MXF-10001-12-19                                                                 Page **1** of **2**

the Declarations, but payment for such coverage in any manner described in the INSURING AGREEMENT section of this Policy shall reduce the **Underlying Limit** by the amount of such payment.

C.  Association: The Underwriter has the right, but not the duty, to associate in the defense, investigation, or settlement of any claim reasonably likely to reach the attachment point of this Policy, even if the **Underlying Insurance** has not been exhausted.

D.  Cooperation: The **Insured** will cooperate with the Underwriter and provide the Underwriter with all information that the Underwriter reasonably requests.

E.  Changes and Assignment: No change in or modification of this Policy shall be effective, and no assignment of any interest under this Policy shall bind the Underwriter, unless agreed to in writing by the Underwriter.

F.  Notice: All notices to the Underwriter must be in writing and delivered to the address designated in ITEM 4 of Declarations. Notice to any other insurer shall not constitute notice to the Underwriter unless also given to the Underwriter as provided herein.

G.  Claims Control:  The Underwriter shall maintain full and complete control as respects coverage for claims under this Policy, and no action by any other insurer, or positions taken by any other insurer, shall bind the Underwriter under this Policy.

## V.    STATE AMENDATORY ENDORSEMENTS

In the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then, where permitted by law, the Underwriter shall apply those terms and conditions of either the state amendatory endorsement or this Policy which are more favorable to the **Insured**.

**ENDORSEMENT NO.** MXE-10003-12-19

SPECIFIC CLAIM OR MATTER EXCLUSION

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|------------|--------------|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration of the premium charged, no coverage will be available under this Policy for any claim or loss based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the claim or matter shown in the schedule below.

SPECIFIC CLAIM OR MATTER:

　　　　WA State matter

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10009-12-19

PRIOR OR PENDING LITIGATION EXCLUSION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|---|---|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration the premium charged, the following is added to Section I INSURING AGREEMENT:

This Policy excludes coverage for any claim or loss based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any (1) any demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding which was pending as of, or existed prior to, the date shown in the SCHEDULE below; or (2) the same or substantially similar fact, circumstance, situation, transaction, event, act, error, or omission underlying or alleged in such demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding.

**Prior or Pending Litigation Date:**

06/30/2021

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10011-07-20

DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| | |
|---|---|
| Policy No. | FS461DMLA210 |
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

1.  In accordance with the Terrorism Risk Insurance Act, the Underwriter is required to provide the Insured with a notice disclosing the premium, if any, attributable to coverage for Certified Acts of Terrorism. The premium attributable to such coverage is $

2.  If coverage is provided by the Coverage Section(s) identified above for losses resulting from **Certified Acts of Terrorism**, such losses may be partially reimbursed by the United States Government under a formula established by federal law. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

3.  If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

4.  For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

    **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

a.    the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

b.    the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10013-07-20

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|---|---|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration of the premium charged:

1. If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

2. For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

   a. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

   b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.