AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**FOURTH INTERIM FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin") |
| Authorized to Provide Services to: | Debtors and Debtors in Possession |
| Petition Date: | July 13, 2022 |
| Retention Date: | September 16, 2022, *nunc pro tunc* to July 13, 2022 |
| Prior Applications: | 3 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | July 1, 2023 through and including November 9, 2023 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $6,110,140.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $301,357.65 |
| Total Compensation and Expenses Requested for the Compensation Period: | $6,411,498.15 |

| Summary of Prior Payments Relating to Fourth Compensation Period | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order[2] But Not Yet Allowed (80% of Fees): | $4,763,290.68 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses): | $222,087.62 |

---

[2]    "Interim Compensation Order" means that certain *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745].

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $4,985,378.30 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $1,426,119.85 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $256,567.38 [3] |
| **Summary of Rates and Timekeepers** | |
| Blended Rate in this Application for All Attorneys: | $1,183.51 |
| Blended Rate in this Application for All Timekeepers: | $1,113.34 |
| Number of Timekeepers Included in this Application: | 43 (33 attorneys; 11 paraprofessionals/non-legal/staff attorney) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 4 |
| Increase in Rates Since Date of Retention: | 1[4] |
| Interim or Final Application: | Interim |

---

[3]    Akin agreed to bill its time at 90% of its standard rates.  In addition, Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement (defined herein).  The aggregated amounts of such voluntary reductions were: (i) $203,837.40 for fee reductions and (ii) $52,729.98 for expense reductions.

[4]    In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year).  Pursuant to the Initial Retention Order (defined herein), on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.  Moreover, on December 14, 2023, Akin filed a notice of rate increase [Docket No. 4095], disclosing Akin's rate increases that went into effect on January 1, 2024; this annual rate increase falls outside of the Compensation Period.

## SUMMARY OF MONTHLY FEE STATEMENTS

| FEE STATEMENT | DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|---|
| Twelfth Monthly Fee Statement | 9/13/2023 | 3461 | 7/1/2023 – 7/31/2023 | $577,153.08 (80% of $721,441.35) | $47,995.16 | $577,153.08 | $47,995.16 |
| Thirteenth Monthly Fee Statement | 10/17/2023 | 3842 | 8/1/2023 – 8/31/2023 | $1,338,575.40 (80% of $1,673,219.25) | $72,651.73 | $1,338,575.40 | $72,651.73 |
| Fourteenth Tenth Monthly Fee Statement | 11/22/2023 | 4021 | 5/1/2023 – 5/31/2023 | $1,604,309.04 (80% of $2,005,386.30) | $74,502.28 | $1,604,309.04 | $74,502.28 |
| Fifteenth Monthly Fee Statement | 11/30/2023 | 4055 | 10/1/2023 – 10/31/2023 | $1,243,253.16 (80% of $ $1,554,066.45) | $26,938.45 | $1,243,253.16 | $26,938.45 |
| Sixteenth Monthly Fee Statement | 1/12/2024 | 4224 | 11/1/2023 – 11/9/2023 | $124,821.72 (80% of $156,027.15) | $79,270.03 | NA | NA |

Summary of Any Objections to Monthly Fee Statements:  None.

Compensation and Expenses Sought in This Application Not Yet Paid: $1,426,119.85

## COMPENSATION BY TIMEKEEPER
## JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023[1]

| Partners | Department | Year of Admission | 2023 Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Dean L. Chapman | Litigation | 2006 | $1,552.50 | 554.90 | $861,482.25 |
| Mitchell Hurley | Litigation | 1997 | $1,795.50 | 665.80 | $1,195,443.90 |
| Eli Miller | Corporate | 2009 | $1,296.00 | 17.50 | $22,680.00 |
| Elizabeth Scott | Litigation | 2007 | $1,278.00 | 486.70 | $622,002.60 |
| Rosa A. Testani | Corporate | 1989 | $1,795.50 | 13.80 | $24,777.90 |
| **Partner Total:** | | | | **1,738.70** | **$2,726,386.65** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **2023 Rate** | **Total Hours** | **Total Compensation** |
| Adam A. Bereston | Litigation | 2017 | $1,008.00 | 80.40 | $81,043.20 |
| Christine Doniak | Litigation | 1999 | $949.50 | 68.40 | $64,945.80 |
| Jeffrey A. Latov | Litigaiton | 2017 | $1,188.00 | 80.50 | $95,634.00 |
| Matthew Lloyd | Litigation | 2012 | $1,098.00 | 31.70 | $34,806.60 |
| Nicholas R. Lombardi | Litigation | 2018 | $1,188.00 | 848.80 | $1,008,374.40 |
| Jessica Mannon | Litigation | 2017 | $1,008.00 | 203.70 | $205,329.60 |
| Joanna F. Newdeck | Financial Restructuring | 2005 | $1,350.00 | 128.20 | $173,070.00 |
| Patrick G. O'Brien | Litigation | 2004 | $1,111.50 | 27.30 | $30,343.95 |
| Heather L. Peckham | Litigation | 2000 | $1,111.50 | 85.70 | $95,255.55 |
| Tiffanye Threadcraft | Corporate | 2013 | $1,242.00 | 6.30 | $7,824.60 |
| **Senior Counsel & Counsel Total:** | | | | **1,561.00** | **$1,796,627.70** |
| **Associates** | **Department** | **Year of Admission** | **2023 Rate** | **Total Hours** | **Total Compensation** |
| Fatima M. Bishtawi | Litigation | 2021 | $864.00 | 16.20 | $13,996.80 |
| Alexandra E. Boyd | Litigation | 2019 | $963.00 | 27.70 | $26,675.10 |
| Daniel A. Chasin | Litigation | 2023 | $711.00 | 13.30 | $9,456.30 |
| Michael Chen | Litigation | 2019 | $1,012.50 | 260.00 | $263,250.00 |
| Maddalena Desimone | Litigation | 2021 | $864.00 | 29.30 | $25,315.20 |
| Evan D. Frohman | Litigation | 2021 | $864.00 | 5.50 | $4,752.00 |
| Victoria Fydrych | Litigation | 2020 | $940.50 | 59.00 | $55,489.50 |
| Tina M. Jeffcoat | Litigation | 2020 | $814.50 | 75.90 | $61,820.55 |
| Patrick Glackin | Litigation | 2019 | $1,012.50 | 94.50 | $95,681.25 |
| Christina Makarova | Litigation | 2022 | $661.50 | 32.50 | $21,498.75 |
| Kyle P. McGoey | Litigation | 2022 | $787.50 | 138.90 | $109,383.75 |

---

[1]   In the Thirteenth Monthly Fee Statement and the Fourteenth Monthly Fee Statement, the compensation chart included therein inadvertently listed Mr. Smith's undiscounted 2023 rate. However, the totals fees incurred by Mr. Smith were reported correctly, and were calculated using the correct 10% discounted amount. In addition, in the Thirteenth Monthly Fee Statement, the total hours for Mr. Hurley and Mr. Chapman were transposed. However, the total fee incurred by Mr. Hurley and Mr. Chapman therein were reported correctly.

| Matthew Myatt | Litigation | 2019 | $738.00 | 60.80 | $44,870.40 |
|---|---|---|---|---|---|
| Matthew S. Noxsel | Litigation | 2020 | $891.00 | 35.90 | $31,986.90 |
| Svetlana Pavlovic | Intellectual Property | 2019 | $1,012.50 | 28.40 | $28,755.00 |
| Jessica H. Ro | Litigation | 2019 | $891.00 | 96.30 | $85,803.30 |
| Rachel Sereix | Litigation | Not Yet Admitted | $711.00 | 15.00 | $10,665.00 |
| Michael Stanley | Litigation | 2022 | $661.50 | 605.70 | $400,670.55 |
| Kaila Zaharis | Financial Restructuring | 2022 | $787.50 | 51.20 | $40,320.00 |
| **Associate Total:** | | | | **1,646.10** | **$1,330,390.35** |
| **Paraprofessionals/ Non-Legal/ Staff Attorney** | **Department** | **Year of Admission** | **2023 Rate** | **Total Hours** | **Total Compensation** |
| Russell J. Collins | Litigation | 1998 | $522.00 | 106.20 | $55,436.40 |
| Adelle Else | Paralegal, Financial Restructuring | N/A | $243.00 | 5.60 | $1,360.80 |
| Julie Hunter | EDiscovery | N/A | $409.50 | 36.40 | $14,905.80 |
| Dagmara K. Krasa | Paralegal, Financial Restructuring | N/A | $459.00 | 5.90 | $2,708.10 |
| Amy Laaraj | Paralegal, Financial Restructuring | N/A | $459.00 | 144.40 | $66,279.60 |
| Donna P. Moye | Litigation | 2001 | $571.50 | 64.30 | $36,747.45 |
| Christine Patton | Litigation | N/A | $346.50 | 16.50 | $5,717.25 |
| Risa J. Slavin | Litigation | N/A | $432.00 | 11.50 | $4,968.00 |
| David A. Smith | EDiscovery | N/A | $459.00 | 40.60 | $17,721.90 |
| Karen C. Woodhouse | Litigation | 2003 | $441.00 | 55.80 | $24,607.80 |
| Melodie Young | Litigation | 2003 | $477.00 | 55.10 | $26,282.70 |
| **Paraprofessionals/ Non-Legal/ Staff Attorney Total:** | | | | **542.30** | **$256,735.80** |
| **Total Hours / Fees Requested:** | | | | **5,488.10** | **$6,110,140.50** |

**TOTAL FEES**
**JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,568.06 | 1,738.70 | $2,726,386.65 |
| Senior Counsel / Counsel | $1,150.95 | 1,561.00 | $1,796,627.70 |
| Associates | $808.21 | 1,646.10 | $1,330,390.35 |
| Paraprofessionals/ Practice Attorneys / EDiscovery | $473.42 | 542.30 | $256,735.80 |
| **Blended Attorney Rate** | **$1,183.51** | | |
| **Blended Rate for All Timekeepers** | **$1,113.34** | | |
| **Total Fees Incurred** | | **5,488.10** | **$6,110,140.50** |

**COMPENSATION BY PROJECT CATEGORY**
**JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

| Task Code | Matter | Hours | Value ($) |
|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 178.20 | $211,963.50 |
| 3 | Retention of Professionals | 18.50 | $23,743.80 |
| 4 | Case Administration | 68.10 | $45,380.25 |
| 5 | Stone/KeyFi | 551.70 | $543,231.45 |
| 6 | Prime Trust | 0.70 | $1,003.50 |
| 8 | Hearings | 28.80 | $40,513.05 |
| 9 | Rhodium | 467.80 | $478,665.00 |
| 10 | Voyager Digital | 10.20 | $9,850.50 |
| 11 | Travel Time | 3.00 | $5,143.50 |
| 12 | BlockFi | 4.00 | $1,836.00 |
| 13 | StakeHound | 4,157.10 | $4,748,809.95 |
| | **TOTAL:** | **5,488.10** | **$6,110,140.50** |

## EXPENSE SUMMARY
## JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $4,454.35 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $170,356.58 |
| Computerized Legal Research - Courtlink - In Contract 50% discount | $974.60 |
| Computerized Legal Research - Westlaw - Out of Contract | $413.60 |
| Computerized Legal Research - Other | $351.90 |
| Courier Service/Messenger Service - Off Site | $1,366.37 |
| Court Cost | $400.00 |
| Color Copy | $503.90 |
| Duplication - In House | $409.60 |
| Duplication - Off Site | $538.60 |
| Filing Fees | $350.00 |
| Meals - Business | $15.35 |
| Meals - Overtime | $160.00 |
| Meals - In House Catering | $921.74 |
| Professional Fees - Legal | $17,240.14 |
| Professional Fees - Miscellaneous | $91,434.28 |
| Professional Fees - Translation Services | $195.00 |
| Research | $205.94 |
| Deposition | $82.80 |
| Transcripts | $8,497.29 |
| Recruiting - Transcript Fees | $535.95 |
| Local Transportation - Overtime | $1,311.73 |
| Travel - Ground Transportation | $637.93 |
| **TOTAL:** | **$301,357.65** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[2] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**FOURTH INTERIM FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

Akin Gump Strauss Hauer & Feld LLP ("Akin"), special litigation counsel to the debtors

and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"), hereby submits its fourth application (the "Application"), pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), requesting

---

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending
LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal
place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F,
Hoboken, New Jersey 07030.

interim allowance of compensation for services rendered to the Debtors for the period July 1, 2023 through and including November 9, 2023 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.   In support of this Application, Akin submits the declaration of Mitchell P. Hurley, a partner at Akin, which declaration is attached hereto as **Exhibit A** and incorporated by reference into this Application.   In further support of this Application, Akin respectfully represents as follows:

## INTRODUCTION

1.      By this Application, Akin seeks (i) interim allowance of compensation for the professional services rendered by Akin during the Compensation Period in the amount of $6,110,140.50 representing 4,945.80 hours of professional services and 542.30 hours of staff attorney, paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary expenses incurred by Akin during the Compensation Period in the amount of $301,357.65.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745] (the "Interim Compensation Order"), the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

8

3.      In accordance with Local Rule 2016-1, the Debtors have been given the opportunity to review this Application and have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-1.

## BACKGROUND

**A.      The Debtors' Chapter 11 Cases**

*7.*      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in certain declarations the ("Declarations") filed at the outset of these cases, including the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].[3]

8.      On August 17, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (i) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (ii) Granting Related Relief* [Docket No. 521].

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Declarations (defined herein) or the Application, as applicable.

9.      On November 9, 2023, the Court entered an order [Docket No. 3319] confirming the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* (the "Plan").  The Plan has not yet gone effective.

**B.      Retention of Akin as Special Litigation Counsel**

10.     On August 8, 2022, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 392] (the "Initial Retention Application").  On August 31, 2022, Akin filed the supplemental declaration of Mitchell P. Hurley in further support of the Initial Retention Application [Docket No. 649].

11.     On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 843] (the "Initial Retention Order").

12.     On November 11, 2022, the Debtors filed and served the *Notice of Proposed Additional Services, Effective as of October 14, 2022, With Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1330] (the "Notice of Additional Services") in accordance with the Initial Retention Order.  On November 30, 2022, the Court entered an order approving the Notice of Additional Services [Docket No. 1521] (the "Additional Services Order"). On January 10, 2023, at the request of the United States Trustee, the Debtors filed and served the *Supplemental Declaration of Mitchell Hurley Regarding the Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1847] in support of the Notice of Additional Services.

10

13.     On March 31, 2023, the Debtors filed and served the *Second Notice of Proposed Additional Services, Effective as of March 15, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 2290] (the "Second Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application and the Notice of Additional Services, the "Akin Retention Application").  On April 7, 2023, the Court entered an order approving the Second Notice of Additional Services [Docket No. 2385] (the "Second Additional Services Order").

14.     On June 8, 2023, the Debtors filed and served the *Third Notice of Proposed Additional Services, Effective as of April 24, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 2782] (the "Third Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application, the Notice of Additional Services and the Second Notice of Additional Services, the "Akin Retention Application").  On July 10, 2023, the Court entered an order approving the Third Notice of Additional Services [Docket No. 2987] (together with the Initial Retention Order, the Additional Services Order and the Second Additional Services Order, the "Retention Order").

15.     The Retention Order authorizes the Debtors to retain and employ Akin as its special litigation counsel in the Chapter 11 Cases in accordance with Akin's normal hourly rates – subject to an agreed-upon 10% discount on its standard billing rates for all timekeepers – and disbursement policies, as of the Petition Date, as contemplated by the Akin Retention Application.  Specifically, the Retention Order authorizes Akin to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.  This Application is Akin's fourth interim application for compensation and reimbursement of expenses.

**C.      Prior Fee Statements and Interim Applications Filed**

16.      On December 15, 2022, Akin filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 13, 2022 Through and Including October 31, 2022* [Docket No. 1707] (the "First Interim Fee Application").  Pursuant to the First Interim Fee Application, Akin requested interim allowance of fees in the amount of $2,322,174.60 and reimbursement of expenses in the amount of $107,347.68 for the period of July 13, 2022 through and including October 31, 2022.  On January 4, 2023, *pro se* creditor Daniel A. Frishberg filed an omnibus objection (the "First Objection") [Docket No. 1823] to the interim fee applications of substantially all of the professionals whose fees are paid for by the Debtors' estates, including the Akin First Interim Fee Application, though Mr. Frishberg did not identify any objection specific to Akin's fees.  In addition, on April 7, 2023, the fee examiner appointed in these Chapter 11 Cases (the "Fee Examiner") filed *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearing on April 18, 2023* (the "Fee Examiner First Report") [Docket No. 2387].  As noted in the Fee Examiner First Report, Akin agreed to certain reductions in connection with the fees ($58,326.86) and expenses ($33,386.46) requested in the First Interim Fee Application.  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the First Interim Fee Application was held on April 18, 2023 and, on April 24, 2023, an order entered approving the First Interim Fee Application was entered [Docket No. 2523].

17.      On April 14, 2023, Akin filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period November 1, 2022 Through and Including February 28, 2023* [Docket

No. 2446] (the "<u>Second Interim Fee Application</u>").  Pursuant to the Second Interim Fee Application, Akin requested interim allowance of fees in the amount of $ 4,884,132.60 and reimbursement of expenses in the amount $61,571.97.68 for the period of November 1, 2022 through and including February 28, 2023.  On July 7, 2023, the Fee Examiner filed the *Fee Examiner's Summary Report on Fee Review Process and Second Interim Fee Applications Scheduled for Uncontested Hearing on July 18, 2023* (the "<u>Fee Examiner Second Report</u>") [Docket No. 2975].  As noted in the Fee Examiner Second Report, Akin agreed to certain reductions in connection with the fees ($71,248.19) and expenses ($1,489.58) requested in the Second Interim Fee Application.  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the Second Interim Fee Application was held on July 18, 2023 and, on July 19, 2023, an order entered approving the Second Interim Fee Application was entered [Docket No. 3055].

18.    On August 14, 2023, Akin filed and served the *Third Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period March 1, 2022 Through and Including June 30, 2023* [Docket No. 3291] (the "<u>Third Interim Fee Application</u>").  Pursuant to the Third Interim Fee Application, Akin requested interim allowance of fees in the amount of $3,276,242.10 and reimbursement of expenses in the amount $91,832.77 for the period of July 1, 2023 through and including October 31, 2023.  On November 20, 2023, the Fee Examiner filed the *Fee Examiner's Summary Report on Fee Review Process and Third Interim Fee Applications Scheduled for Uncontested Hearing on November 30, 2023* (the "<u>Fee Examiner Third Report</u>") [Docket No. 4013].  As noted in the Fee Examiner Third Report, Akin agreed to certain reductions in connection with the fees ($76,380.32) and expenses ($5,501.40) requested in the Third Interim Fee Application.  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A

hearing on the Third Interim Fee Application was held on November 30, 2023 and the Court

entered an order granting the Third Interim Fee Application [Docket No. 4054].

19.     On September 13, 2023, Akin filed and served the *Twelfth Monthly Fee Statement*

*of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and*

*Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of July 1*

*through July 31, 2023* [Docket No. 3461] (the "Twelfth Monthly Fee Statement"),[4] pursuant to

which Akin sought payment of (i) $577,153.08 (80% of $721,441.35) as compensation for

professional services rendered and (ii) $47,995.16 for reimbursement of expenses.  Akin did not

receive any objections to the Twelfth Monthly Fee Statement and received payment in respect

thereof.

20.     On October 17, 2023, Akin filed and served the *Thirteenth Monthly Fee Statement*

*of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and*

*Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of August*

*1, 2023 Through August 31, 2023* [Docket No. 3842] (the "Thirteenth Monthly Fee Statement"),[5]

pursuant to which Akin sought payment of (i) $1,338,575.40 (80% of $1,673,219.25) as

compensation for professional services rendered and (ii) $72,651.73 for reimbursement of

expenses.  Akin did not receive any objections to the Thirteenth Monthly Fee Statement and

received payment in respect.

21.     On November 223, Akin filed and served the *Fourteenth Monthly Fee Statement of*

*Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and*

*Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of*

*September 1, 2023 Through September 30, 2023* [Docket No. 4021] (the "Fourteenth Monthly Fee

---

[4]     A copy of the Twelfth Monthly Fee Statement can be accessed at:
        https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909132380000000027.pdf.
[5]     A copy of the Thirteenth Monthly Fee Statement can be accessed at:
        https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910172380000000319.pdf.

Statement") pursuant to which Akin sought payment of (i) $1,604,309.04 (80% of $2,005,386.30)[6] as compensation for professional services rendered and (ii) $74,502.28 for reimbursement of expenses.  Akin did not receive any objections to the Fourteenth Monthly Fee Statement and received payment in respect thereof.

22.      On November 30, 2023, Akin filed and served the *Fifteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of October 1, 2023 Through October 31, 2023* [Docket No. 4055] (the "Fifteenth Monthly Fee Statement" and, together with the Twelfth Monthly Fee Statement, Thirteenth Monthly Fee Statement and the Fourteenth Monthly Fee Statement, the "Monthly Fee Statements"),[7] pursuant to which Akin sought payment of (i) $1,243,253.16 (80% of $1,554,066.45) as compensation for professional services rendered and (ii) $26,938.45 for reimbursement of expenses.  Akin did not receive any objections to the Fifteenth Monthly Fee Statement and received payment in respect thereof.

23.      On January 12, 2024, Akin filed and served the *Sixteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of November 1, 2023 Through November 9, 2023* [Docket No. 4224] (the "Sixteenth Monthly Fee Statement" and, together each of the prior filed monthly fee statement, the "Monthly Fee Statements"),[8] pursuant to which Akin sought payment of (i) $124,821.72 (80% of $156,027.15) as compensation for professional services rendered and (ii) $79,270.03 for reimbursement of expenses.  The objection deadline for the Sixteenth Monthly Fee Statement has not yet passed.

---

[6]   A copy of the Fourteenth Monthly Fee Statement can be accessed at:
      https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911222380000000196.pdf
[7]   A copy of the Fifteenth Monthly Fee Statement can be accessed at:
      https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911302380000000262.pdf.
[8]   A copy of the Sixteenth Monthly Fee Statement can be accessed at:
      https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901122480000000111.pdf.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

24.      By this Application, Akin requests allowance of interim compensation for professional services rendered during the Compensation Period in the amount of $6,110,140.50 and expense reimbursements of $301,357.65.[9]  During the Compensation Period, Akin attorneys, paraprofessionals and other professionals expended a total of 5,488.10 hours for which compensation is sought.

25.      The fees charged by Akin in the Chapter 11 Cases are billed in accordance with Akin's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters, subject to an agreed-upon 10% discount on its standard rates for all timekeepers.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

26.      Akin maintains computerized records of the time spent by all Akin professionals, paraprofessionals and other professionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of compensation by task code against budgeted hours and fees for the Compensation Period is attached hereto in **Exhibit D**.  The itemized time records for Akin professionals, paraprofessionals and other professionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

---

[9]      Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement.  The aggregated amounts of such voluntary reductions were: (i) $203,837.40 for fee reductions and (ii) $52,729.98 for expense reductions. For the avoidance of doubt, these voluntary reductions do not include the aggregated fee reduction resulting from the agreed-upon 10% discount.

27.     Akin also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

28.     Akin's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

### SUMMARY OF SERVICES PERFORMED BY AKIN DURING THE COMPENSATION PERIOD

29.     The services provided by Akin during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Debtors and commensurate with the complexity and significance of the matters for which Akin has been retained (collectively, the "Litigation Matters").  The variety and complexity of the Litigation Matters and the need to act or respond to such issues on an expedited basis during the Compensation Period required the expenditure of significant time by Akin professionals and paraprofessionals from numerous legal disciplines.

30.     The following is a summary of certain of the professional services rendered by Akin during the Compensation Period.  This summary is organized in accordance with Akin's internal system of task codes established in connection with Akin's retention based on the Fee Guidelines. In classifying services into task codes, Akin attempted to place the services performed in the category that most closely related to the services provided.

31.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin was required to address during the Compensation Period.

A.      **Akin Monthly and Interim Fee Applications (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 178.20 | $211,963.50 |

17

32.     This category includes time spent by Akin attorneys and paraprofessionals in connection with the preparation of Akin's Monthly Fee Statements and the Third Interim Fee Application.  Akin attorneys expended significant time during the Compensation Period reviewing Akin's monthly invoices in order to protect privileged and confidential information and to ensure accuracy and compliance with the Interim Compensation Order, Local Rules and U.S. Trustee Guidelines.  Pursuant to the Interim Compensation Order, each of the Monthly Fee Statements and this Application contain a list of individuals who rendered services to the Debtors during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended.

33.     In addition, this category includes time spent by Akin attorneys in connection with responding to, and successfully resolving, the *Fee Examiner's Confidential Letter Report on the Third Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period March 1, 2023 Through and Including June 30, 2023*.

**B.     Retention of Professionals (Task Code 3)**

| Total Hours | Fees |
| --- | --- |
| 18.50 | $23,743.80 |

34.     This category includes time spent by Akin attorneys and paraprofessionals in connection with various retention matters.  Specifically, during the Compensation Period, Akin attorneys spent time considering certain expert and retention issues with respect to the Stone/KeyFi matter which resulted in the filing of the *Debtors' Application for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363 (i) Authorizing the Retention and Employment of FTI Consulting Technology LLC for Expert Services Effective as of January 30, 2023 and (ii) Granting Related Relief* [Docket No. 3418], which was granted on September 28 2023 [Docket No. 3613].  The

Debtors' retention of FTI Consulting Technology LLC ("FTI") was critical in assisting Akin and

the Debtors in conducting a significant tracing/accounting analysis in the Stone/KeyFi matter.

## C.    Case Administration (Task Code 4)

| Total Hours | Fees |
|---|---|
| 68.10 | $45,380.25 |

35.    This category includes time spent by Akin attorneys and paraprofessionals in

connection with various case administration matters in furtherance of the Chapter 11 Cases.

Specifically, during the Compensation Period, Akin, among other things, spent time:   (i)

monitoring the Court's docket in the Chapter 11 Cases and circulating relevant filings to members

of the Akin team; (ii) preparing and updating internal case calendars to keep Akin professionals

appraised of relevant case deadlines and deliverables; (iii) considering budget issues with respect

to Akin's services; (iii) communicating with the client and Debtors' restructuring professionals

with respect to general case issues and updates; (iv) reviewing and analyzing general case materials

and pleadings; and (v) performing other administrative tasks that enabled Akin to represent the

Debtors in the Chapter 11 Cases with respect to the Litigation Matters in an efficient and cost

effective manner.

36.    Akin's attention to the administrative matters reflected in this category enabled the

Akin team to function in a coordinated manner and avoid duplicating efforts with respect to various

work streams.

## D.    Stone/KeyFi (Task Code 5)[10]

| Total Hours | Fees |
|---|---|
| 551.70 | $543,231.45 |

37.    This category includes time spent by Akin professionals in connection with the

adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Jason Stone*

---

[10]    Capitalized terms used in this Stone/KeyFi summary, but not otherwise defined herein, shall have the meanings
given to them in the Stone Adversary Proceeding (defined herein).

*and KeyFi, Inc.*, Adv. No. 22-01139 (MG), which was filed on August 23, 2022 (the "Stone

Adversary Proceeding").  As alleged in the Stone Adversary Proceeding, the Defendants were

provided with, but did not return, millions of Celsius coins collectively worth substantially in

excess of $100 million and engaged in other conduct giving rise to additional substantial liability.

38.     Prior to the Compensation Period, on October 13, 2022, Akin prepared and filed an

Amended Complaint against Jason Stone ("Stone") and KeyFi, Inc. ("KeyFi" and together with

Stone, the "Stone Defendants"), which, among other things, asserted claims for turnover,

conversion, fraudulent representation, breach of fiduciary duty, unjust enrichment, replevin and

accounting, against one or both of the Stone Defendants.  *See generally* Adversary Complaint,

*Celsius Network Limited and Celsius Network LLC v. Jason Stone and KeyFi, Inc.*, Adv. No. 22-

01139 (Bankr. S.D.N.Y. Aug. 23, 2022) [Stone Adv. Pro. No. 10].  Thereafter, Akin attorneys

engaged in substantial discovery and case management efforts, filed the *Motion of Plaintiffs for*

*Preliminary Injunction Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure*

[Stone Adv. Pro. Nos. 20, 21], took discovery in connection therewith, and participated in a hearing

on January 11 and 12, 2023 which resulted in the issuance of a temporary restraining order (the

"Temporary Restraining Order") immediately freezing assets in the Stone Defendants' possession,

custody or control.  Thereafter, the parties agreed to a partial stay of certain deadlines in the Stone

Adversary Proceeding, which partial stay has been extended through January 31, 2024, and Akin

professionals worked closely with FTI to perform a tracing/accounting analysis of the more than

$1 billion worth of coins provided to the Stone Defendants for deployment in order to ascertain

the fate of the $100 million plus worth of coins that the Stone Defendants failed to return to Celsius.

39.     During the Compensation Period, Akin professionals continued their work with FTI

on the tracing/accounting analysis and met-and-conferred with the Stone Defendants regarding

issues identified by FTI.  Akin professionals also prepared a presentation highlighting FTI's

findings as well as the key themes of the case and hot documents discovered in discovery.  Akin

professionals also engaged in continued discovery efforts with the Stone Defendants as well as certain third parties, including the drafting of letters and other correspondences concerning document production deficiencies and attending meet-and-confers. These efforts resulted in the production of thousands of additional documents. Akin professionals reviewed those documents and prepared written summaries and analyses with respect thereto.

40. During the Compensation Period, Akin professionals also performed a number of other tasks related to the Temporary Restraining Order. The Temporary Restraining Order permits the Stone Defendants to continue to deploy subject property in certain decentralized finance ("DeFi") activities (the "Positions") and allows them to make requests to engage in certain transactions related to those Positions to dispose, transfer or otherwise use property subject to the Temporary Restraining Order ("Subject Property"). Celsius and the Official Committee of Unsecured Creditors (the "Committee") each have the right to object to any such transaction, following which the parties are required to meet and confer, and if they are unable to reach agreement, may request a conference with the Court to seek its guidance. During the Compensation Period, Akin professionals considered multiple requests submitted by the Stone Defendants to engage in certain transactions involving Subject Property. In some cases, Celsius consented to the requests, and in others it objected, triggering the objection process under the Temporary Restraining Order which included a number of meet and confer conferences among counsel. In one case, the request involved review and comment on a proposed NFT sale transaction, including marking up various contracts.

41. The Temporary Restraining Order also requires the Stone Defendants to send Celsius and the Committee a current statement of profits and losses associated with their ongoing DeFi activities (a "Report"), including a list and description of any transactions executed in connection with the Positions. During the Compensation Period, Akin professionals, working closely with FTI, monitored the Stone Defendants' Reports and sent multiples correspondences to

and engaged in multiple meet and confer conferences with the Stone Defendants related to the transactions disclosed on the Report.

42.    In addition, the Committee is an intervenor in the Stone Adversary Proceeding and, on a common interest basis, Akin professionals have worked with the Committee's counsel extensively, and made substantial efforts to keep the Committee informed and involved in all aspects of the litigation.  During the Compensation Period, Akin has arranged and participated in numerous telephone calls and correspondences with the Committee, its professionals, FTI and others, and supplied information and analysis to the Committee at its request.

### E.    Hearings (Task Code 8)

| Total Hours | Fees |
|---|---|
| 28.80 | $40,513.05 |

43.    This category includes time spent by Akin attorneys preparing for and attending various hearings and/or status conferences held before the Court during the Compensation Period, including omnibus hearings in the Chapter 11 Cases.  In light of Akin's role as special litigation counsel in these Chapter 11 Cases, Akin attorneys, among other things:  (i) reviewed upcoming hearing agendas and kept apprised of issues on connection therewith; (ii) analyzed relevant issues, motions and applications filed with the Court with respect to the applicable hearing; (iii) communicated with the Debtors' advisors and other parties in interest, as necessary, with respect to such relief;  and (iv) attended such hearings in order to stay apprised of information that could be relevant with respect to general case matters and the Litigation Matters.

### G.    Rhodium (Task Code 9)[11]

| Total Hours | Fees |
|---|---|
| 467.80 | $478,665.00 |

---

[11]    Capitalized terms used in this Rhodium summary, but not otherwise defined herein, shall have the meanings given to them in the Rhodium Trust Adversary Proceeding (defined herein).

44.    During the Compensation Period, Akin worked to preserve value for the Debtors and their creditors related to the Debtors' *Simple Agreement for Future Equity* ("SAFE") with Rhodium Enterprises, Inc. ("Rhodium").  Rhodium announced a plan of merger ("Merger") with SilverSun Technologies, Inc. ("SilverSun"), as described in the SilverSun Form 8-K dated September 29, 2022.

45.    In connection therewith, during the Compensation Period, Akin attorneys researched legal and factual issues concerning the Debtors' rights under the SAFE in light of the Merger.  Akin attorneys conducted extensive diligence regarding the Merger and its proposed treatment of SAFE holders.  In addition, on behalf of the Debtors, Akin engaged with Rhodium on these issues, including through efforts to obtain the documents and information needed in support of the Debtors' review and expressing the Debtors' position with respect to the Merger's proposed treatment of the SAFE.

46.    In particular, during the Compensation Period, Akin attorneys conducted extensive negotiations with counsel for Rhodium to ensure Rhodium provided appropriate documents and disclosures in response to the subpoena Akin served on Rhodium  pursuant to the Court's May 23, 2023 order granting Celsius' *Ex Parte Motion for Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of Rhodium Enterprises, Inc.* [Docket No. 2697] (the "Rule 2004 Subpoena").

47.    As a result of these negotiations, Rhodium collected and produced over 5,000 documents retrieved through an ad hoc, manual collection procedure, which Akin professionals reviewed and analyzed during the Compensation Period.   Akin additionally engaged in negotiations with counsel for Rhodium regarding search terms, custodians, and other parameters for the collection, review and production of electronically stored information ("ESI") responsive to the Rule 2004 Subpoena, including the preparation of numerous rounds of proposed search terms and correspondence and conferences regarding the same.  In that regard, Akin prepared a

stipulation and order setting a schedule for the production of ESI responsive to the Rule 2004 Subpoena, which it negotiated with Rhodium, and ultimately submitted to the Court for its approval. The Court signed the stipulation and order on or around July 25, 2023.

48.    Following these efforts, Rhodium agreed to collect and review an additional approximately 58,000 unique documents returned through ESI searches. Akin attorneys reviewed the substantial number of documents produced in response to those searches and analyzed their implications with respect to Rhodium's proposed treatment of the Celsius SAFE and Celsius' potential claims with respect thereto. Akin additionally analyzed the privilege log Rhodium produced concerning documents it withheld from its ESI production on a claim of privilege, work product, or other immunity from disclosure.

49.    Throughout the Compensation Period, Akin professionals engaged in extensive negotiations with counsel for Rhodium regarding the treatment of the SAFE in connection with the Merger and other efforts to reach a consensual resolution of Celsius' dispute with Rhodium. In connection therewith, Akin attorneys held numerous calls and conferences and exchanged various correspondence with Rhodium's counsel. Through these efforts, Akin was ultimately able to negotiate an agreement in principle to resolve its dispute with Rhodium through a deal that would have substantially improved the consideration to be received by Celsius as a result of the Merger. Akin attorneys spent time during the Compensation Period formally documenting the terms of that agreement and negotiating the same with Rhodium, as well as preparing pleadings relating to its approval.[12]

50.    Akin carefully coordinated with counsel for the Committee throughout this process and in connection with all aspects of its dispute with Rhodium. In connection therewith, Akin attorneys held multiple calls and conferences and engaged in extensive correspondence with

---

[12] SilverSun ultimately filed an 8-K on October 13, 2023, stating that it had terminated the Agreement and Plan of Merger with Rhodium.

counsel for the Committee.  Throughout the Compensation Period, Akin personnel additionally prepared updates and memoranda for the Special Committee concerning the Rhodium dispute, the Rhodium Adversary Proceeding, efforts to resolve the same and issues related thereto.

**H.     Voyager Digital (Task Code 10)**

| Total Hours | Fees |
|:---:|:---:|
| 10.20 | $9,850.50 |

51.     On November 5, 2022, the Debtors' bankruptcy counsel asked Akin to act as conflicts counsel in connection with transfers the Debtors' bankruptcy professionals had identified during the 90 days prior to the filing of the Chapter 11 Cases by Voyager Digital Holdings, Inc. and its affiliated debtors (collectively, "Voyager"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York (consolidated as Case No. 22-10943 (MEW), the "Voyager Bankruptcy Cases" and, such court, the "Voyager Bankruptcy Court").  Akin thereafter filed a motion in the Voyager Bankruptcy Cases on behalf of Celsius Network LLC ("Celsius Network") seeking leave to file a late claim against Voyager and to lift the automatic stay to allow Celsius Network to prosecute the claim in this Court (the "Late Claim Motion").  Following a contested evidentiary hearing on January 24, 2023, the Voyager Bankruptcy Court denied the Late Claim Motion without prejudice to Celsius Network re-filing the Late Claim Motion supported by certain categories of additional evidence.  Thereafter, Akin sought to consensually resolve the Late Claim Motion with representatives of Voyager, but also prepared additional evidentiary support for a renewed Late Claim Motion in the event a resolution could not be reached.

52.     During the Compensation Period, Akin professionals worked with counsel to the Voyager Plan Administrator to negotiate a stipulation to defer further litigation between Celsius

Network and Voyager – as well as a potential settlement thereof – until such time as a Litigation

Administrator (as defined in the Plan) is appointed in these Chapter 11 Cases.

## I.     BlockFi (Task Code 12)

| Total Hours | Fees |
|:-----------:|:----:|
| 4.00 | $1,836.00 |

53.     Akin acts as conflicts counsel to the Debtors in connection with any potential claims

that any of the Debtors may have against BlockFi Inc. and its affiliated debtors (collectively,

"BlockFi"), entities which are presently involved in their own chapter 11 bankruptcy cases in the

United States Bankruptcy Court for the District of New Jersey (consolidated as Case No. 22-

19361, the "BlockFi Bankruptcy Cases").   In that capacity, Akin professionals performed an

analysis of potential claims that the Debtors may possess against BlockFi and filed a proof of claim

against BlockFi in the BlockFi Bankruptcy Cases on behalf of the Debtors on March 30, 2023.

54.     During the Compensation Period, Akin has continued to monitor the docket in the

BlockFi Bankruptcy Cases for any relevant developments.

## J.     StakeHound (Task Code 13)[13]

| Total Hours | Fees |
|:-----------:|:----:|
| 4,157.10 | $4,748,809.95 |

55.     Akin acts as counsel to the Debtors in connection with the StakeHound Matter for

which Akin recently negotiated and obtained final Court approval of a settlement that represents a

major victory for Celsius and its creditors.   Under the approved settlement, StakeHound is required

to transfer to Celsius virtually all of the assets in its possession, custody, or control, comprised of

ETH, MATIC, and DOT tokens that collectively are worth more than $105 million at recent prices.

56.     Background and Adversary Complaint.   From January 2021 through April 2021,

Celsius Network Limited ("CEL Ltd.") provided StakeHound S.A. ("StakeHound") with

---

[13]     Capitalized terms used in this StakeHound summary, but not otherwise defined herein, shall have the meanings
given to them in the StakeHound Adversary Proceeding defined herein).

substantial amounts of native tokens for staking, and StakeHound in turn offered CEL Ltd. "stTokens" in an equivalent amount to the native tokens which CEL Ltd. could either sell or tender back to StakeHound for native tokens.  CEL Ltd. provided native tokens to StakeHound for staking in four separate transactions, including: (i) 25,000 Staked ETH, (ii) an additional 35,000 ETH, (iii) 40,000,000 MATIC and (iv) 66,000 Polka DOT.

57.    On or about April 10, 2023, Akin professionals acting on CEL Ltd.'s behalf demanded via letter the return of the 25,000 Staked ETH it had provided to StakeHound, together with the interests, fees, and rewards that had accrued thereon (worth about $50 million). StakeHound refused to return the Staked ETH.  In response, Akin professionals proposed via letter a standstill and freezing agreement whereby StakeHound would agree not to use, transfer or otherwise dispose of the Staked ETH while the parties attempted to negotiate a resolution to their dispute.  StakeHound did not respond to this offer.  To the contrary, it commenced an arbitration proceeding before the Swiss Arbitration Centre in Zurich (the "StakeHound Arbitration") on or about April 25, 2023.   In the StakeHound Arbitration, StakeHound is seeking a declaratory judgment related to a services agreement under which CEL Ltd. provided StakeHound with the 25,000 Staked ETH, allowing it to retain all or nearly all the 25,000 Staked ETH.[14]

58.    On or about May 25, 2023, Akin professionals sent a letter to StakeHound behalf demanding the return of the MATIC and Polka DOT native tokens held by StakeHound (worth approximately $40 million).  Once again, StakeHound did not respond.  CEL Ltd. management thereafter reached out to StakeHound management to attempt to discuss the issue, but StakeHound management referred CEL Ltd. to its newly-retained U.S. lawyers.  Akin thereafter proposed to StakeHound's U.S. counsel that CEL Ltd. and StakeHound agree to a freezing and standstill agreement, but once again StakeHound refused to do so.

---

[14] The cryptographic keys to the 35,000 ETH provided by CEL Ltd. to StakeHound were lost by StakeHound's security provider, and there is an ongoing litigation in Israel related thereto.  CEL Ltd. was therefore not in a position to demand the immediate return of those coins.

59.     As a result, at the outset of the Compensation Period, on July 11, 2023, Akin professionals on behalf of CEL Ltd. commenced an adversary proceeding against StakeHound in these Chapter 11 Cases, captioned *Celsius Network Limited v. StakeHound SA*, A.P. No. 23-01138 (the "StakeHound Adversary Proceeding"), relating to all of the native tokens (and rewards accruing thereon) provided by CEL Ltd. and held by StakeHound.    Akin professionals subsequently filed an Amended Complaint against StakeHound on August 22, 2023, asserting claims for violation of the automatic stay, turnover under Sections 542(b) and 542(e), disallowance under Section 502(d), breach of contract, unjust enrichment, conversion, constructive trust, and accounting of profits.    Akin professionals engaged in considerable legal research and factual diligence in connection with drafting both the complaint and the amended complaint, and frequently consulted with Swiss counsel concerning Swiss law issues applicable (or potentially applicable) to the matter.

60.     The Compensation Period was an extremely active period for the StakeHound Matter.  During the Compensation Period, Akin professionals appeared at eight different hearings and/or Court conferences; researched, drafted, and filed 10 different briefs supported by 12 different witness declarations, as well as three substantive letters concerning scheduling and other disputes; engaged in extensive document discovery efforts, took and defended depositions, and otherwise prepared for trial; and prepared a mediation statement, participated in a two-day mediation, and engaged in lengthy negotiations concerning the terms of settlement of the StakeHound Matter, resulting in a highly favorable settlement.

61.     Court Appearances.  Akin professionals appeared at eight hearings and conferences as directed by the Court during the Compensation Period.  Those hearings were both in-person and via Zoom and ranged from argument on various of the motions discussed immediately below to discussions regarding case management and scheduling.  Akin professionals incurred time and expense preparing for these hearings, and negotiating resolutions of the various subjects at issue.

28

In addition to argument on the motions discussed immediately below, the hearings and conferences related to the type and cadence of motions the parties intended to file; the schedule for briefing such motions; the timing and nature of all discovery in connection with the motions; and interim asset freezing measures to preserve StakeHound's assets for recovery by CEL Ltd. Akin professionals spent significant time engaging with StakeHound's counsel on all these issues before, during, and after the appearances.

62.     <u>Motion Practice</u>.  During the Compensation Period, Akin professionals on behalf of CEL Ltd. filed two motions and opposed three motions filed by StakeHound.  First, on July 19, 2023, Akin professionals on behalf of CEL Ltd. filed a motion, supported by a witness declaration, seeking an order authorizing alternative service of the complaint on StakeHound pursuant to Fed. R. Civ. P. 4(f)(3) to avoid having to serve StakeHound through the Hague Convention, which could take months.  That motion was opposed by StakeHound, and Akin professionals on behalf of CEL Ltd. filed a reply brief together with an additional witness declaration.  StakeHound filed a surreply in support of its opposition.  During a subsequent hearing, the Court indicated it was inclined to grant the alternative service motion, and following the exchange of additional submissions with the Court and a further hearing, StakeHound's counsel agreed to accept service of the complaint.  During this time, and in connection with negotiating an agreement by StakeHound to accept service, the parties also negotiated and ultimately agreed to a temporary asset freeze of certain of StakeHound's assets at issue in the litigation.

63.     Second, on August 23, 2023, Akin professionals on behalf of CEL Ltd. filed a motion for a temporary restraining order and preliminary injunction seeking (i) a declaration that the commencement and prosecution of the Swiss Arbitration was a violation of the automatic stay and (ii) a freeze on all of StakeHound's assets for the duration of the StakeHound Adversary Proceeding, supported by multiple witness declarations.  StakeHound first opposed the portion of the motion seeking a temporary restraining order, and Akin professionals filed a reply brief

29

supported by additional witness declarations.  During a subsequent hearing, the Court indicated it would grant CEL Ltd.'s motion to enforce the automatic stay (and subsequently did so in an order dated August 30, 2023) but that it wanted additional briefing in respect of the Court's ability to issue the injunctive relief sought by CEL Ltd.  Akin professionals prepared supplemental briefing on that issue supported by an additional declaration; StakeHound filed an opposition brief; and Akin professionals filed a reply brief.  The Court subsequently held oral argument on the motion, and on September 8, 2023, the Court issued a temporary restraining order freezing nearly all of StakeHound's assets until such time as an evidentiary hearing could be conducted on CEL Ltd.'s motion for a preliminary injunction.  StakeHound subsequently filed an opposition to that portion of CEL Ltd.'s motion seeking a preliminary injunction, and Akin professionals on behalf of CEL Ltd. filed reply papers supported by an additional witness declaration.   The motion for a preliminary injunction was scheduled for an evidentiary hearing on October 25, 2023, which hearing was adjourned when the parties came to terms on a settlement of the matter.

64.     Third, on August 25, 2023, StakeHound filed a motion to dismiss the action based on lack of personal jurisdiction.  Akin professionals on behalf of CEL Ltd. filed an opposition to StakeHound's motion supported by a witness declaration.  Following receipt and review of Akin's filing, StakeHound agreed to withdraw its motion entirely and voluntarily subject itself to the personal jurisdiction of the Court.

65.     Fourth, on August 25, 2023, StakeHound filed a motion to compel arbitration of CEL Ltd.'s claims against it, or in the alternative, for the Court to abstain from hearing the matter in favor of the Swiss Arbitration.  Akin professionals on behalf of CEL Ltd. filed an opposition to StakeHound's motion supported by a witness declaration, and StakeHound filed reply papers in further support of its motion.  The motion to compel arbitration was scheduled for an evidentiary hearing on October 25, 2023, which hearing was adjourned when the parties came to terms on a settlement of the matter.

66.     Fifth, on September 15, 2023, StakeHound filed a motion seeking reconsideration of the Court's order granting a temporary restraining order.  Akin professionals on behalf of CEL Ltd. filed an opposition to the motion, supported by a witness declaration.  The Court subsequently conducted oral argument on StakeHound's motion and indicated it was a "loser," leading StakeHound to concede most all of the relief it had sought aside from a few narrow exceptions, which CEL Ltd. consented to in a stipulation amending the temporary restraining order negotiated between the parties and so-ordered by the Court.

67.     Collectively, Akin professionals on behalf of CEL Ltd. filed hundreds of pages of briefing in connection with each of the five motions.  Each of the briefs required extensive legal research on a wide variety of topics including alternative service, the ability of the Court to enter a freezing injunction, CEL Ltd.'s likelihood of success on its claims, irreparable harm, StakeHound's solvency, whether certain claims asserted by CEL Ltd. were "substantially core," the nature of a turnover claim, choice of law, the doctrine of abstention, personal jurisdiction, and many more.  Akin professionals also engaged extensively with Swiss counsel on various Swiss law issues.  Significant factual development was also necessary to support many of the legal arguments and theories advanced by Akin, requiring the review of many documents, multiple interviews of and discussions with Celsius' current and former employees, and the drafting of a dozen witness declarations.

68.     Discovery. During the Compensation Period, Akin professionals engaged in substantial discovery in anticipation of an evidentiary hearing on CEL Ltd.'s motion for a preliminary injunction, as well as StakeHound's motion to dismiss for lack of personal jurisdiction (later withdrawn) and its motion to compel arbitration.  Akin professionals drafted and served document requests and interrogatories on StakeHound, drafted multiple correspondences related thereto, and engaged in extensive meet-and-confers.  Akin professionals also responded and objected to document requests served on its by StakeHound, and engaged in meet-and-confers in

connection therewith.  Akin professionals reviewed in excess of 15,000 Celsius and StakeHound documents, and produced a lengthy categorial privilege log.  Akin professionals also took the deposition of StakeHound's expert witnesses, defended the deposition of its own expert witness, and prepare to take and defend additional depositions.  Akin professionals also prepared and filed an extensive pre-trial order consistent with the Court's rules and began to prepare CEL Ltd.'s trial exhibit lists and deposition designations in anticipation of the evidentiary hearing.  Ultimately, the additional depositions and trial preparations were obviated by the agreement to settle the case.

69.     _Mediation and Resolution_.  During the Compensation Period, the parties agreed to mediate the various disputes between them before the Hon. Michael E. Wiles.  In connection therewith, Akin professionals prepared a Mediation Order governing the mediation, as well as a mediation statement.  Akin professionals thereafter participated in two full-day mediation sessions, as well as engaged in extensive conversations with the Special Committee, Celsius management and in-house counsel, the Committee and NewCo before and after those sessions concerning the terms of a possible settlement.  Akin professionals turned multiple drafts of the various documents evidencing the settlement, including a term sheet, settlement agreement, and motion papers seeking Court approval of the settlement pursuant to Rule 9019.

70.     Following the Compensation Period, the parties entered into a settlement agreement under which StakeHound agreed to turn over to CEL Ltd. ETH, MATIC, and DOT tokens that collectively are worth more than $105 million at recent prices.  In addition, Celsius acquired valuable rights with respect to StakeHound's litigation against Fireblocks, Inc. in Israel, which StakeHound values at $190 million or more and could result in Celsius recovering all of the coins (or their value) that Celsius ever provided to StakeHound, and potentially substantially more.

## ACTUAL AND NECESSARY DISBURSEMENTS

71.     Akin seeks allowance of reimbursement of expenses in the amount of $222,087.62 for expenses incurred during the Compensation Period in the course of providing professional

services to the Debtors.  Akin's disbursement policies pass through all out-of-pocket expenses at

actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example,

as it relates to computerized research, Akin believes that it does not make a profit on that service

as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable

expenses (whether the service is performed by Akin in-house or through a third-party vendor)

include, but are not limited to, overtime meals, deliveries, court costs and filing fees, transcript

fees, computerized research and overtime travel.

## <u>FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES</u>

72.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"  *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E)    with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonably based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

33

73.    The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

74.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[15] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

---

[15]    The factors articulated by the Fifth Circuit in *First Colonial*, were first articulated by the Fifth Circuit in *Johnson,* with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

75.    Akin respectfully submits that a consideration of these factors should result in the

Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>.  Akin billed a total of 4,945.80 hours of professional
services and 542.30 hours of staff attorney, paraprofessional and other non-legal
services during the Compensation Period.  Akin has taken care to ensure that
the time spent by its professionals and paraprofessionals was actually necessary
and appropriate to ensure adequate representation of the Debtors.  As evidenced
by this Application, Akin attorneys, paraprofessionals and other professionals
worked diligently and efficiently without unnecessary duplication of efforts
throughout the Compensation Period.  Akin's representation of the Debtors has
required it to balance the need to provide quality services with the need to act
quickly and represent the Debtors in the Litigation Matters in an effective,
efficient and timely manner.  Akin submits that the hours spent were reasonable
given the complexity of the Litigation Matters, the significant legal and
business issues raised, the pleadings filed in the various adversary proceedings
and the obstacles faced by the Debtors with respect thereto.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin tasked knowledgeable attorneys
to research, analyze and provide advice on difficult and complex issues with
respect to the Litigation Matters.  As further described herein, Akin's skilled
teams assisted the Debtors in filing and prosecuting certain adversary
proceedings and otherwise assisting with the Litigation Matters.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin believes that its
recognized experience and expertise with respect to, among other things, the
Litigation Matters as well as general litigation matters, its ability to draw from
highly experienced professionals in Akin's practice and its creative approach to
issues has benefited the Debtors and their creditors.  Due to the nature and
complexity of the legal issues presented with respect to the Litigation Matters,
Akin was required to exhibit a high degree of legal skill in areas related to, *inter
alia*, bankruptcy and litigation matters.

d.    <u>Preclusion of Other Employment by Applicant Due to Acceptance of the
Engagement</u>.  Due to the size of Akin's financial restructuring and litigation
departments, Akin's representation of the Debtors as special litigation counsel
did not preclude its acceptance of new clients, but the demands for immediate
and substantive action with respect to the Litigation Matters imposed significant
burdens on Akin professionals working concurrently on other matters.

e.    <u>Customary Fee</u>.  As set forth herein and in the Initial Retention Application,
Akin agreed to provide a 10% discount to its standard billing rates for this
engagement.  With the exception of this 10% discount, the rates Akin charges

35

for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin's fee structure also is equivalent to the fee structure used by Akin for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Except with respect to the 10% discount described herein, Akin's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.   <u>Whether the Fee is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin increased the risk Akin was assuming by representing the Debtors in the Chapter 11 Cases. Despite this risk, Akin has achieved and will continue to strive for excellent and tangible results for the Debtors and the estates.

g.   <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As further described herein, during the Compensation Period, Akin was under time pressure with respect to certain of the Litigation Matters as it was in the best interests of the estates.  Significantly, with respect to the StakeHound Matter, Akin was required to research, draft and file ten briefs spanning hundreds of pages supported by a dozen witness declarations in a compressed period of approximately six weeks, while simultaneously engaging in extensive discovery and pre-trial efforts.

h.   <u>Amount Involved and Results Obtained</u>.  Akin attorneys and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  As a result of its efforts during the Compensation Period, Akin was able to obtain significant positive results for the Debtors.  Among other things, as more fully described herein, Akin professionals also achieved considerable success in the StakeHound matter, including (i) service of the complaint by alternative service, (ii) the voluntary agreement by StakeHound to withdraw its motion to dismiss for lack of personal jurisdiction, (iii) entry of an order declaring the Swiss Arbitration in violation of the automatic stay, (iv) entry of a temporary restraining order freezing nearly all of StakeHound's assets and (v) a constructive denial of StakeHound's motion to reconsider the terms of the temporary restraining order.  These successes ultimately led to a highly favorable settlement that will return crypto assets to the Debtors' estates worth in excess of $100 million and provides the opportunity for significant additional upside.  Akin submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Debtors as more fully described herein.

    i.   <u>Experience, Reputation and Ability of Attorneys</u>.  Akin is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries.  Further, Akin has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases.  Akin's experience enabled it to perform the services described herein competently and expeditiously.

    j.   <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

    k.   <u>Nature and Length of Professional Relationship</u>.  This Court entered the Initial Retention Order on September 16, 2022 authorizing the Debtors to employ Akin as special litigation counsel with respect to the Specified Litigation Matters, as of the Petition Date.  In addition, the Court has entered subsequent orders allowing the Debtors to retain Akin with respect to certain additional Litigation Matters.  Lastly, since March 2021, Akin has performed legal work for Celsius Network and certain of its affiliates.

76.    For the reasons set forth above, the services rendered by Akin were necessary and beneficial to the Debtors and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Debtors, Akin's demonstrated skill and expertise in bankruptcy and litigation (as well as other areas of expertise relevant to the Litigation Matters) and the customary compensation charged by comparably skilled practitioners at Akin.  Accordingly, Akin respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

77.    No agreement or understanding exists between Akin and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

78.    The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

**<u>Question</u>**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    Yes, as set forth in the Initial Retention Application and herein, Akin agreed to provide a 10% discount to its standard billing rates for this engagement, which standard rates are consistent with (i) market rates for comparable services and (ii) the rates that Akin charges and will charge other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    As further detailed on **Exhibit D** attached hereto, Akin did not exceed the total fees budgeted for the Compensation Period.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:    Yes.  During the Compensation Period 178.20 hours and $211,963.50 in fees were billed to Task Code 2 (Akin Gump Monthly and Interim Fee Applications).  As further described herein, the work billed in this category included, without limitation, time spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    There were no rate increases during the Compensation Period.  There was one rate increase prior to the Compensation Period.  In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year).  Pursuant to the Initial Retention Order, on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.  Moreover, although outside the Compensation Period, on December 14, 2023, Akin filed a notice of rate increase

[Docket No. 4095], disclosing Akin's rate increases that went into effect on January 1, 2024.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## CONCLUSION

WHEREFORE, Akin respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $6,110,140.50 and expense reimbursement in the amount of $301,357.65; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: January 17, 2024
New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Mitchell P. Hurley*
    Mitchell P. Hurley
    Dean L. Chapman
    One Bryant Park
    New York, New York 10036
    Telephone: (212) 872-1000
    Facsimile: (212) 872-1002
    mhurley@akingump.com
    dchapman@akingump.com

    *Special Litigation Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT A**

**CERTIFICATION OF MITCHELL P. HURLEY**

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE FOURTH
INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
<u>PERIOD JULY 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023</u>**

I, Mitchell P. Hurley, hereby certify that:

1.      I am a partner with Akin,[2] with responsibility for the Litigation Matters in these Chapter 11 Cases.  Akin is special litigation counsel to the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)      I have read the Application;
(b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]      Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

       (c)     the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin and generally accepted by Akin's clients, subject to the 10% discount that Akin has agreed to provide to the Debtors in connection with the Litigation Matters; and

       (d)     in providing a reimbursable service, Akin does not make a profit on that service, whether the service is performed by Akin in-house or through a third party.

4.     In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin has complied with those provisions requiring it to provide the Debtors with a statement of Akin's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines.

5.     In respect of section B.3 of the Local Guidelines, I certify that the Debtors and the U.S. Trustee are each being provided with a copy of the Application.

Dated: New York, New York                By:  */s/ Mitchell P. Hurley*
January 17, 2024                        Mitchell P. Hurley

## **EXHIBIT B**

### **CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and Dallas Offices for Preceding Year**[1] | **Billed in this Application** |
| Partner | $1,409.74 | $1,568.06 |
| Senior Counsel and Counsel | $1,076.43 | $1,150.95 |
| Associate | $785.58 | $808.21 |
| Paraprofessionals/ Non-Legal/ Staff Attorney | $425.45 | $473.42 |
| **All Timekeepers Aggregated** | **$1,040.36** | **$1,113.34** |

---

[1]  Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month period ending November 9, 2023.

## EXHIBIT C

### SUMMARY OF COMPENSATION BY TIMEKEEPER[1]

| Partners | Department | Year of Admission | 2023 Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Dean L. Chapman | Litigation | 2006 | $1,552.50 | 554.90 | $861,482.25 |
| Mitchell Hurley | Litigation | 1997 | $1,795.50 | 665.80 | $1,195,443.90 |
| Eli Miller | Corporate | 2009 | $1,296.00 | 17.50 | $22,680.00 |
| Elizabeth Scott | Litigation | 2007 | $1,278.00 | 486.70 | $622,002.60 |
| Rosa A. Testani | Corporate | 1989 | $1,795.50 | 13.80 | $24,777.90 |
| **Partner Total:** | | | | **1,738.70** | **$2,726,386.65** |

| Senior Counsel & Counsel | Department | Year of Admission | 2023 Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Adam A. Bereston | Litigation | 2017 | $1,008.00 | 80.40 | $81,043.20 |
| Christine Doniak | Litigation | 1999 | $949.50 | 68.40 | $64,945.80 |
| Jeffrey A. Latov | Litigation | 2017 | $1,188.00 | 80.50 | $95,634.00 |
| Matthew Lloyd | Litigation | 2012 | $1,098.00 | 31.70 | $34,806.60 |
| Nicholas R. Lombardi | Litigation | 2018 | $1,188.00 | 848.80 | $1,008,374.40 |
| Jessica Mannon | Litigation | 2017 | $1,008.00 | 203.70 | $205,329.60 |
| Joanna F. Newdeck | Financial Restructuring | 2005 | $1,350.00 | 128.20 | $173,070.00 |
| Patrick G. O'Brien | Litigation | 2004 | $1,111.50 | 27.30 | $30,343.95 |
| Heather L. Peckham | Litigation | 2000 | $1,111.50 | 85.70 | $95,255.55 |
| Tiffanye Threadcraft | Corporate | 2013 | $1,242.00 | 6.30 | $7,824.60 |
| **Senior Counsel & Counsel Total:** | | | | **1,561.00** | **$1,796,627.70** |

| Associates | Department | Year of Admission | 2023 Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Fatima M. Bishtawi | Litigation | 2021 | $864.00 | 16.20 | $13,996.80 |
| Alexandra E. Boyd | Litigation | 2019 | $963.00 | 27.70 | $26,675.10 |
| Daniel A. Chasin | Litigation | 2023 | $711.00 | 13.30 | $9,456.30 |
| Michael Chen | Litigation | 2019 | $1,012.50 | 260.00 | $263,250.00 |
| Maddalena Desimone | Litigation | 2021 | $864.00 | 29.30 | $25,315.20 |
| Evan D. Frohman | Litigation | 2021 | $864.00 | 5.50 | $4,752.00 |
| Victoria Fydrych | Litigation | 2020 | $940.50 | 59.00 | $55,489.50 |
| Tina M. Jeffcoat | Litigation | 2020 | $814.50 | 75.90 | $61,820.55 |
| Patrick Glackin | Litigation | 2019 | $1,012.50 | 94.50 | $95,681.25 |
| Christina Makarova | Litigation | 2022 | $661.50 | 32.50 | $21,498.75 |
| Kyle P. McGoey | Litigation | 2022 | $787.50 | 138.90 | $109,383.75 |
| Matthew Myatt | Litigation | 2019 | $738.00 | 60.80 | $44,870.40 |
| Matthew S. Noxsel | Litigation | 2020 | $891.00 | 35.90 | $31,986.90 |

---

[1] In the Thirteenth Monthly Fee Statement and the Fourteenth Monthly Fee Statement, the compensation chart included therein inadvertently listed Mr. Smith's undiscounted 2023 rate. However, the totals fees incurred by Mr. Smith were reported correctly, and were calculated using the correct 10% discounted amount. In addition, in the Thirteenth Monthly Fee Statement, the total hours for Mr. Hurley and Mr. Chapman were transposed. However, the total fee incurred by Mr. Hurley and Mr. Chapman therein were reported correctly.

| Svetlana Pavlovic | Intellectual Property | 2019 | $1,012.50 | 28.40 | $28,755.00 |
| Jessica H. Ro | Litigation | 2019 | $891.00 | 96.30 | $85,803.30 |
| Rachel Sereix | Litigation | Not Yet Admitted | $711.00 | 15.00 | $10,665.00 |
| Michael Stanley | Litigation | 2022 | $661.50 | 605.70 | $400,670.55 |
| Kaila Zaharis | Financial Restructuring | 2022 | $787.50 | 51.20 | $40,320.00 |
| **Associate Total:** | | | | **1,646.10** | **$1,330,390.35** |
| **Paraprofessionals/ Non-Legal/ Staff Attorney** | **Department** | **Year of Admission** | **2023 Rate** | **Total Hours** | **Total Compensation** |
| Russell J. Collins | Litigation | 1998 | $522.00 | 106.20 | $55,436.40 |
| Adelle Else | Paralegal, Financial Restructuring | N/A | $243.00 | 5.60 | $1,360.80 |
| Julie Hunter | EDiscovery | N/A | $409.50 | 36.40 | $14,905.80 |
| Dagmara K. Krasa | Paralegal, Financial Restructuring | N/A | $459.00 | 5.90 | $2,708.10 |
| Amy Laaraj | Paralegal, Financial Restructuring | N/A | $459.00 | 144.40 | $66,279.60 |
| Donna P. Moye | Litigation | 2001 | $571.50 | 64.30 | $36,747.45 |
| Christine Patton | Litigation | N/A | $346.50 | 16.50 | $5,717.25 |
| Risa J. Slavin | Litigation | N/A | $432.00 | 11.50 | $4,968.00 |
| David A. Smith | EDiscovery | N/A | $459.00 | 40.60 | $17,721.90 |
| Karen C. Woodhouse | Litigation | 2003 | $441.00 | 55.80 | $24,607.80 |
| Melodie Young | Litigation | 2003 | $477.00 | 55.10 | $26,282.70 |
| **Paraprofessionals/ Non-Legal/ Staff Attorney Total:** | | | | **542.30** | **$256,735.80** |
| **Total Hours / Fees Requested:** | | | | **5,488.10** | **$6,110,140.50** |

## EXHIBIT D

### SUMMARY OF COMPENSATION BY TASK CODE
### AGAINST BUDGETED HOURS AND FEES

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 180.00 – 310.00 | $180,000.00 - $260,000.00 | 178.20 | $211,963.50 |
| 3 | Retention of Professionals | 30.00 - 80.00 | $40,000.00 - $100,000.00 | 18.50 | $23,743.80 |
| 4 | Case Administration | 40.00 - 140.00 | $55,000.00 - $150,000.00 | 68.10 | $45,380.25 |
| | Stone/KeyFi | 500.00 - 1,400.00 | $650,000.00 - $1,700,000.00 | 551.70 | $543,231.45 |
| 6 | Prime Trust | 0.00 – 25.00 | $0.00 - $15,000.00 | 0.70 | $1,003.50 |
| 8 | Hearings | 30.00 - 75.00 | $40,000.00 - $80,000.00 | 28.80 | $40,513.05 |
| 9 | Rhodium | 500.00 - 700.00 | $600,000.00 - $775,000.00 | 467.80 | $478,665.00 |
| 10 | Voyager | 25.00 – 55.00 | $20,000.00 - $45,000.00 | 10.20 | $9,850.50 |
| 11 | Travel | N/A | N/A | 3.00 | $5,143.50 |
| 12 | BlockFi | 60.00 – 100.00 | $20,000.00 - $45,000.00 | 4.00 | $1,836.00 |
| 13 | StakeHound | 4,000 – 5,500 | $4,500,000.00 - $5,700,000.00 | 4,157.10 | $4,748,809.95 |
| TOTAL | | **5,365.00 - 8,385.00** | **$6,105,000.00 - $8,870,000.00** | **5,488.10** | $6,110,140.50 |

Akin did not provide a separate task code estimate for travel time.  In addition, the budgeted fees and expenses were for the period of July 1, 2023 through October 31, 2023.  Notwithstanding the foregoing, as noted herein, the total fees sought for the Compensation Period are within the total budgeted amount.

## EXHIBIT E

## SUMMARY OF EXPENSES BY CATEGORY

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $4,454.35 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $170,356.58 |
| Computerized Legal Research - Courtlink - In Contract 50% discount | $974.60 |
| Computerized Legal Research - Westlaw - Out of Contract | $413.60 |
| Computerized Legal Research - Other | $351.90 |
| Courier Service/Messenger Service - Off Site | $1,366.37 |
| Court Cost | $400.00 |
| Color Copy | $503.90 |
| Duplication - In House | $409.60 |
| Duplication - Off Site | $538.60 |
| Filing Fees | $350.00 |
| Meals - Business | $15.35 |
| Meals - Overtime | $160.00 |
| Meals - In House Catering | $921.74 |
| Professional Fees - Legal | $17,240.14 |
| Professional Fees - Miscellaneous | $91,434.28 |
| Professional Fees - Translation Services | $195.00 |
| Research | $205.94 |
| Deposition | $82.80 |
| Transcripts | $8,497.29 |
| Recruiting - Transcript Fees | $535.95 |
| Local Transportation - Overtime | $1,311.73 |
| Travel - Ground Transportation | $637.93 |
| **TOTAL:** | **$301,357.65** |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate (with 10% discount) |
|---|---|---|
| Partner | 6 | $1,540 |
| Senior Counsel and Counsel | 5 | $1,150 |
| Associate | 14 | $845 |
| Paralegals & Non-Legal Staff | 2 | $425 |