Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SUMMARY COVER SHEET TO THE**
**FOURTH INTERIM AND FINAL FEE APPLICATION**
**OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS**
**INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION, FOR THE (I) INTERIM FEE**
**PERIOD FROM JULY 1, 2023 THROUGH AND INCLUDING**
**NOVEMBER 9, 2023 AND (II) FINAL FEE PERIOD FROM**
**JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

In accordance with the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "K&E"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "<u>Fee Application</u>")[2] for the period from July 1, 2023 through November 9, 2023 (the "<u>Interim Fee Period</u>"), and July 13, 2022 through and including November 9, 2023 (the "<u>Final Fee Period</u>").

K&E submits the Fee Application as an interim and final fee application in accordance with the First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief [Docket No. 2779] (the "<u>Interim Compensation Order</u>"), which permits K&E to file interim fee applications every four months and a final fee application pursuant to Article II.B.2 of the Plan and paragraph 341 of the Confirmation Order.

| *General Information* | |
|---|---|
| Name of Applicant: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
| Authorized to Provide Services to: | Celsius Network LLC, *et al.* |
| Petition Date: | July 13, 2022 |
| Date of Order Authorizing the Debtors to Retain K&E [Docket No. 845]: | September 16, 2022, effective as of July 13, 2022 |

| *Summary of Fees and Expenses Sought in the Fee Application* | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | July 13, 2022 through November 9, 2023 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: | Reduced fees by $2,205,349.00 and expenses by $161,389.35 [3] |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $76,323,621.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $1,719,338.75 |

---

[2]    Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

[3]    K&E voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

Total Compensation and Expense
Reimbursement Requested for the Fee Period: $78,042,959.75

## *Rate Increases Applicable to the Fee Period*

Total Amount of Compensation
Sought for the Fee Period, Calculated
Using Rates as of the Date of Retention: $71,580,055.00

## *Summary of Past Requests for Compensation and Prior Payments*

Total Amount of Compensation Previously
Requested Pursuant to the Interim Compensation $61,018,738.00
Order to Date:

Total Amount of Expense
Reimbursement Previously Requested
Pursuant to the Interim Compensation Order to $1,062,546.35
Date:

Total Compensation Approved
Pursuant to the Interim Compensation Order to $61,018,738.00
Date:

Total Amount of Expense Reimbursement Approved
Pursuant to the Interim Compensation Order to $1,062,546.35
Date:

Total Allowed Compensation Paid to Date: $66,212,089.20

Total Allowed Expenses Paid to Date: $1,240,701.76

Compensation Sought in
this Application Already Paid Pursuant to
the Interim Compensation Order But Not Yet $5,130,351.20
Allowed:

Expenses Sought In This
Application Already Paid Pursuant to the
Interim Compensation Order But Not Yet Allowed: $178,155.41

New York, New York
Date: January 18, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FOURTH INTERIM AND FINAL FEE**
**APPLICATION OF KIRKLAND & ELLIS LLP**
**AND KIRKLAND & ELLIS INTERNATIONAL LLP, ATTORNEYS**
**FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE**
**(I) INTERIM FEE PERIOD FROM JULY 1, 2023 THROUGH AND**
**INCLUDING NOVEMBER 9, 2023 AND THE (II) FINAL FEE PERIOD**
**FROM JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "K&E"), attorneys

for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby

submits its fourth interim and final fee application (the "Fee Application") for allowance of

(a) compensation for professional services provided in the amount of $15,304,883.00 and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

reimbursement of actual and necessary expenses in the amount of $656,792.40 that K&E incurred for the period from July 1, 2023 through and including November 9, 2023 (the "Interim Fee Period") and (b) compensation for professional services provided in the amount of $76,323,621.00 and reimbursement of actual and necessary expenses in the amount of $1,719,338.75 that K&E incurred for the period from July 13, 2022 through November 9, 2023 (the "Final Fee Period"). In support of this Fee Application, K&E submits the declaration of Patrick J. Nash, Jr., president of Patrick J. Nash, Jr., P.C., a partner of K&E (the "Nash Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, K&E respectfully states as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Kirkland confirms its consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), and the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for*

*Retained Professionals and (II) Granting Related Relief* [Docket No. 2779] (together with the Interim Compensation Order entered on December 19, 2022 [Docket No. 1745], the "Interim Compensation Orders").

**Background**

4.        The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

5.        On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration").[2]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

6.        The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53 & 1648]. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). On September 29, 2022, the Court entered an order approving the appointment of Shoba Pillay, as examiner (the "Examiner") [Docket No. 923]. On April 4, 2023, the Court entered an order discharging the Examiner [Docket No. 2364]. On October 20, 2022, the Court entered an order appointing Judge Christopher S. Sontchi as fee examiner (the "Fee Examiner") [Docket No. 1151].

7.      On December 19, 2022 and June 8, 2023, the Court entered the Interim Compensation Orders, which set forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

8.      On November 9, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order") confirming the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC & its Debtor Affiliates* [Docket No. 3577] (as amended and supplemented, the "Plan").[3]

### Preliminary Statement

9.      These chapter 11 cases are nearing their conclusion, with distributions to creditors expected to commence in the next several weeks. The Debtors will be distributing substantially all of their cryptocurrency to their creditors (excluding amounts earmarked for the capitalization of the MiningCo, the wind down of the estate, and disputed claims reserves). The consummation

---

[3]      On December 27, 2023, the Court entered the *Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4172].

of the Plan will also include the creation of the new Mining company, which will be one of the largest in the country and will be owned by the Debtors' creditors. There will also be two independent Litigation Administrators appointed to pursue causes of action for the benefit of creditors, including claims against former insiders and counterparties who breached their contracts with the Debtors. All told, the percentage recovery on unsecured claims under the Plan (including Earn claims) is currently expected to be above 90%.

10.    This outcome was not inevitable. When these cases were filed in July 2022, there were many questions that stemmed from this unique chapter 11 bankruptcy. Novel legal questions included the ownership of the cryptocurrency deposited on the Debtors' platform, the interplay between the various Celsius programs (Earn, Custody, Loans) and how cryptocurrency claims would be treated under the Bankruptcy Code, just to name a few. There were many practical questions, too, such as how a bankruptcy case with over 600,000 retail investors located all over the globe would be efficiently administered, how claims would be resolved, and how distributions could be made. Moreover, all of these retail investors "wanted their crypto back," and came up with a variety of theories to advance that goal, which they pursued through motions, letters, court appearances, and an endless stream of social media.

11.    These cases presented many unique challenges that required an enormous effort by the Debtors and their professionals. First, the Debtors had to stabilize the business and secure the Debtors' cryptocurrency assets from threats. This took months and ultimately involved a bespoke cryptocurrency security protocol and monthly reporting package—both of which provided transparency and comfort to creditors and regulators. Next, the Debtors had to work to develop answers to novel and complex critical legal and practical questions. Finally, the Debtors had to try to drive consensus amongst an extremely large and disparate creditor body to allow the Debtors

to confirm a chapter 11 plan and emerge from bankruptcy. There is no "playbook" for a first-of-its-kind chapter 11 case like this one; to the contrary, the Debtors and their advisors had to "build the plane as they were flying it." This case involved numerous issues of first impression and required substantial effort to devise solutions to these unique problems.

12.    These cases have been too complex to fully summarize in just a few paragraphs, but this Application will do so in an effort to put the requested fees and expenses in perspective. In response to precarious business conditions—the onset of a "crypto winter," the well-publicized collapse of Luna, the failure of other crypto funds and exchanges, and a proverbial "run on the bank," the Debtors commenced these chapter 11 cases to utilize the breathing spell afforded by the automatic stay and develop and implement a value-maximizing transaction as promptly as possible. But there were certain key legal issues that needed to be resolved first before a transaction could be developed—for example, the Debtors could not effectively market their business for sale until the Court determined whether the Debtors owned the cryptocurrency that had been deposited or not. Additionally, there were questions about what exactly happened at Celsius prepetition that ultimately caused the Pause in June 2022, and an Examiner was appointed to investigate and provide an independent report.

13.    Accordingly, the first phase of the case—from July 2022 until January 2023 when the Court issued the Earn opinion and the Examiner's report was released—was focused on stabilizing the business and securing assets, resolving governance issues given the prepetition actions of former insiders, cooperating with investigations by the Committee and the Examiner, responding to numerous attempts by customers to do an end-around the bankruptcy process (from lift-stay motions and adversary proceedings to motions to dismiss these chapter 11 cases), and obtaining court resolution of key legal questions relating to the Earn, Custody and Withhold

programs.    The amount of formal motions, investigations, informal inquiries and other communications necessitated high engagement by the Debtors and their advisors to answer key legal and practical questions, cooperate with the Committee and the Examiner, and generally stabilize the business in chapter 11.  As the Debtors' lead counsel, Kirkland was on the front lines of addressing these formal and informal inquiries and advising the Debtors in connection with their responsibilities in these chapter 11 cases.

14.    The Debtors and their advisors also fully cooperated with various governmental agencies and investigations into prepetition conduct of certain of the Debtors' former insiders. Specifically, the Debtors facilitated the production of thousands of documents, delivered requested factual presentations, and provided access to current and former employees as part of the Debtors' robust cooperation in these governmental investigations.  These investigations resulted in several former insiders being indicted and criminally charged by governmental units.  Due to the Debtors' exemplary cooperation in these investigations, the Debtors were able to reach agreements with various governmental bodies to fully resolve all regulatory claims and penalties against the Debtors by various regulators, including the DOJ, SEC, CFTC, and FTC, and any such claims were (by the agreement of the governmental parties) subordinated to customer claims.  These claims and penalties by government regulators could have substantially diluted customer claims if the Debtors were not able to reach these important agreements with the regulatory authorities to avoid or subordinate any such penalties.  This cooperation with the regulators was a large workstream and required significant work by Kirkland's white collar team to work with the governmental authorities, respond to legal process, and review and provide the requested documents and information from the prepetition period.

15.    The second phase of the case—transaction development—began in early 2023,

after the Examiner's report was released, the Court issued its Earn ruling, and the Debtors reached agreement with the Custody and Withhold groups. Those achievements allowed the Debtors to move forward in earnest with a robust sale process, which culminated in a month-long auction in the spring. This extended sale process was successful, leading to hundreds of millions of dollars of improvements from the "stalking horse bid," all of which inured to creditors. This phase led to the negotiation and development of the Plan, Disclosure Statement, and related documents, and moving the cases forward towards confirmation. There were numerous bespoke legal issues involving a novel transaction such as this one, including how to design a complex Plan and Disclosure Statement that retail investors could read and understand what was being proposed, analyzing securities law issues and cooperating with state and federal regulators, and analyzing the cross-border tax consequences from the Debtors' worldwide operations.

16. The final stage of the case began after the revised Plan and Disclosure Statement were filed for the Fahrenheit transaction in June, and was focused on generating consensus and resolving issues through agreement instead of court proceedings wherever possible. The lessons of the Earn trial were clear—forging consensus to agree on solutions was preferable to a full litigated outcome, and given the emergence of the Earn and Loan ad hoc groups and the success of negotiating resolutions with Custody and Withhold, a consensual solution seemed achievable. The Debtors and their advisors held a three-day mediation with the Earn and Loan groups to build additional consensus for the Plan, and left mediation with two agreements: for each group to support an amended Plan, and for a consensual resolution of the Committee's Class Claim Motion, which would ultimately resolve nearly all of the account holders' claims in the case without the need for further litigation. This mediation was the epitome of the Debtors' goal through these cases—save on otherwise necessary costs through agreement wherever possible. Had the parties

not agreed on the resolution of the Class Claim Motion, the Debtors would have had to proceed with the contested resolution of tens of thousands of account holder claims, which would have been the most expensive process in the entire case and would have required objections to nearly every account holder claim to ensure equality of treatment. The Debtors had attempted through several different mechanisms to come up with an efficient process for resolving claims—from bellwether claims objections to claims procedures. But in an effort to speed distributions and save enormous professional costs, the parties agreed to a streamlined process that has now led the Debtors to the precipice of distributing over $2 billion of cryptocurrency instead of being mired in claims objection litigation.

17.     Confirmation of the Plan was the conclusion of the work done during the Final Fee Period, and the outcome was the culmination of all of the lessons of the case. The Plan was overwhelmingly supported by account holders—with approximately 98% of voting creditors approving the Plan. And there were only a few creditors who were objecting to confirmation. That said, the remaining opposition was fierce, and included the taking of numerous depositions and a multi-week trial in order to ensure that the Plan was confirmed and that the majority of creditors obtained the outcome they voted for.

18.     To be clear, the Final Fee Period includes only the period through the Confirmation Date, and additional efforts were required post-confirmation after the SEC denied the Debtors' requested pre-clearance of the NewCo Transaction. But, pursuant to the Plan, those services are not within the Final Fee Period, and will be paid in the ordinary course of business without further court approval.

19.     For all these reasons, these cases included significant administrative and professional costs. Ending the $20-million-a-month "burn rate" of professional fees in the case

has been the focus of the principals and professionals of both the Debtors and the Committee for many months, especially as these cases neared their conclusion.  But, given the unique challenges posed by these cases and the momentous effort that was required to manage this case to a successful conclusion, the fees and expenses that Kirkland incurred as counsel to the Debtors were for "actual, necessary services" and the compensation is "reasonable," all as required by section 330 of the Bankruptcy Code.   Kirkland respectfully requests interim approval of its fees and expenses incurred during this fourth Interim Fee Period, and final approval of its fees and expenses incurred during the Final Fee Period.

### The Debtors' Retention of K&E

20.    On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 845] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Retention Order authorizes the Debtors to compensate and reimburse K&E in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order. The Retention Order also authorizes the Debtors to compensate K&E at K&E's hourly rates charged for services of this type and to reimburse K&E for K&E's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.  The particular terms of K&E's engagement are detailed in the engagement letter by and between K&E and the Debtors, effective as of July 1, 2022, and attached hereto as **Exhibit C** (the "Engagement Letter").

21.    The Retention Order authorizes K&E to provide the following services consistent with and in furtherance of the services enumerated above:

      a.    advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

b.      preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

c.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

d.      performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

### **Disinterestedness of K&E**

22.     To the best of the Debtors' knowledge and as disclosed in the *Declaration of Patrick J. Nash, Jr. in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 360], the *First Supplemental Declaration of Patrick J. Nash, Jr. in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 629], the *Second Supplemental Declaration of Patrick J. Nash, Jr. in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 1731], the *Third Supplemental Declaration of Patrick J. Nash, Jr. in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 3304], and *Fourth Supplemental Declaration of Patrick J. Nash, Jr. in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP*

*as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket
No. 4103] (collectively, the "<u>K&E Declarations</u>"), (a) K&E is a "disinterested person" within the
meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the
Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and
(b) K&E has no connection to the Debtors, their creditors, or other parties in interest, except as
may be disclosed in the K&E Declaration.

23.     K&E may have in the past represented, may currently represent, and likely in the
future will represent parties in interest in connection with matters unrelated to the Debtors in these
chapter 11 cases.  In the K&E Declarations, K&E disclosed its connections to parties in interest
that it has been able to ascertain using its reasonable efforts.

24.     K&E performed the services for which it is seeking compensation on behalf of the
Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

25.     Except to the extent of the advance payments paid to K&E that K&E previously
disclosed to this Court in the K&E Declaration, K&E has received no payment and no promises
for payment from any source other than the Debtors for services provided or to be provided in any
capacity whatsoever in connection with these chapter 11 cases.

26.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared, nor has K&E agreed to
share (a) any compensation it has received or may receive with another party or person other than
with the partners, counsel, and associates of K&E or (b) any compensation another person or party
has received or may receive.

**<u>Summary of Compliance with the Interim Compensation Orders</u>**

27.     This Fee Application has been prepared in accordance with the Interim
Compensation Orders.

28.     K&E seeks interim compensation for professional services rendered to the Debtors during the Interim Fee Period in the amount of $15,304,883.00 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $656,792.40.  During the Interim Fee Period, K&E attorneys and paraprofessionals expended a total of 10,793.70 hours for which compensation is requested.

29.     In accordance with the Interim Compensation Order, as of the date hereof, K&E has received payments totaling $73,150,633.55 ($71,493,755.63 of which was for services provided and $1,656,877.92 of which was for reimbursement of expenses) for the Fee Period. Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, K&E seeks payment of the remaining $3,060,976.60, which amount represents the entire amount of unpaid fees and expenses incurred between July 1, 2023 and November 9, 2023.[4]

30.     K&E seeks final allowance and approval of compensation for professional services rendered to the Debtors during the Final Fee Period in the aggregate amount of $76,323,621.00 and reimbursement of actual expenses incurred in connection with such services in the aggregate amount of $1,719,338.75, for a total allowance of $78,042,959.75 for fees and expenses incurred. To date, K&E has received total payment of $71,493,755.63 for legal services rendered to the Debtors and $1,656,877.92 for related expenses during the Final Fee Period pursuant to the Interim Compensation Orders.

---

[4]     This amount also reflects the 20% holdback for the Fee Period.

**Fees and Expenses Incurred During Final Fee Period**

A.      **Customary Billing Disclosures**.

31.      K&E's hourly rates are set at a level designed to compensate K&E fairly for the

work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly

rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to

the hourly rates and corresponding rate structure used by K&E for other restructuring matters, as

well as similar complex corporate, securities, and litigation matters whether in court or otherwise,

regardless of whether a fee application is required.  The rates and rate structure reflect that such

restructuring and other complex matters typically are national in scope and typically involve great

complexity, high stakes, and severe time pressures.  For the convenience of the Court and all

parties in interest, attached hereto as **Exhibit D** is K&E's budget and staffing plan for this Fee

Period and attached hereto as **Exhibit E** is a summary of blended hourly rates for timekeepers who

billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the

Debtors during the Fee Period.

B.      **Fees Incurred During Final Fee Period**.

32.      In the ordinary course of K&E's practice, K&E maintains computerized records of

the time expended to render the professional services required by the Debtors and their estates.

For the convenience of the Court and all parties in interest, attached hereto as **Exhibit F** is a

summary of fees incurred and hours expended during the Final Fee Period, setting forth the

following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at K&E's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 360] (the "Retention Application").

**C.    Expenses Incurred During Final Fee Period**.

33.    In the ordinary course of K&E's practice, K&E maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.    K&E currently charges $0.16 per page for standard duplication in its offices in the United States.    Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, K&E charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.    K&E does not charge its clients for incoming facsimile transmissions.

34.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit G** is a summary for the Final Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which K&E is seeking reimbursement.

### Summary of Legal Services Rendered During the Final Fee Period

35.    As discussed above, during the Fee Period, K&E provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.    These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors

in similar cases of this magnitude and complexity.

36.    To provide a meaningful summary of K&E's services provided on behalf of the Debtors and their estates, K&E has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Final Fee Period:[5]

| Matter Number | Matter Category Description | Final Period Hours | | Final Period Total Compensation | |
|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed |
| 2 | Chapter 11 Bankruptcy Filing | 650-700 | 670.00 | $650,000-$700,000 | $672,198.00 |
| 3 | Adversary Proceeding & Contested Matters | 7,000 - 7,500 | 7,012.80 | $7,000,000.00-$7,500,000.00 | $7,277,983.00 |
| 4 | Automatic Stay Matters | 750-1000 | 808.80 | $650,000.00-$800,000.00 | $791,369.50 |
| 5 | Business Operations | 1,000 - 1,250 | 1,179.50 | $1,100,000.00-$1,400,000.00 | $1,383,368.00 |
| 6 | Case Administration | 3,100 - 3,500 | 3,226.30 | $3,100,000-$3,500,000 | $3,174,369.50 |
| 7 | Cash Management and DIP Financing | 500 – 650 | 564.20 | $550,000.00-$650,000.00 | $603,910.50 |
| 8 | Customer and Vendor Communications | 1,250-1,350 | 1,305.50 | $1,200,000.00-$1,300,000.00 | $1,220,143.50 |
| 9 | Claims Administration and Objections | 1,750-1,900 | 1,863.50 | $1,800,000.00-$1,950,000.00 | $1,876,454.00 |
| 10 | Official Committee Matters and Meetings | 1,400 – 1,550 | 1,425.20 | $1,450,000.00-$1,600,000.00 | $1,565,688.50 |
| 11 | Use, Sale, and Disposition of Property | 7,500-8,000 | 7,727.10 | $7,000,000.00-$8,000,000.00 | $7,887,540.50 |

---

[5]    In certain instances, K&E may have billed the same amount of fees, but different number of hours to different Matter Categories.  This difference is the result of different staffing of each such Matter Category.

| Matter Number | Matter Category Description | Final Period Hours | | Final Period Total Compensation | |
|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed |
| 12 | Corp., Governance, & Securities Matters | 1,750-1,850 | 1,794 | $2,400,000-$2,550,000 | $2,472,076.00 |
| 13 | Employee Matters | 1,800-1,950 | 1,885.90 | $2,050,000.00-$2,150,000.00 | $2,111,342.00 |
| 14 | Executory Contracts and Unexpired Leases | 425-475 | 444.20 | $425,000.00-$450,000.00 | $431,020.50 |
| 15 | SOFAs and Schedules | 800-900 | 832.80 | $900,000.00-$1,000,000.00 | $932,890.50 |
| 16 | Hearings | 2,500-2,800 | 2,756.40 | $2,500,000.00-$2,700,000.00 | $2,594,401.00 |
| 17 | Insurance and Surety Matters | 300-350 | 338.90 | $400,000.00-$450,000.00 | $415,949.50 |
| 18 | Disclosure Statement, Plan, Confirmation | 12,000-13,000 | 12,689.70 | $14,000,000.00-$15,000,000.00 | $14,918,073.50 |
| 19 | International Issues | 350-400 | 396.40 | $450,000.00-$550,000.00 | $491,058.50 |
| 20 | K&E Retention Matters | 1,600-1,800 | 1,665.40 | $1,400,000-$1,500,000 | $1,438,083.00 |
| 21 | Non-K&E Retention Matters | 1,200-1,300 | 1,221.00 | $1,150,000-$1,300,000 | $1,205,203.00 |
| 22 | Tax Matters | 730-760 | 743.80 | $900,000-$1,050,000 | $1,002,582.50 |
| 23 | Non-Working Travel | 400-500 | 429.50 | $500,000-$600,000 | $556,225.00 |
| 24 | U.S. Trustee Communications & Reporting | 500-600 | 589.10 | $600,000-$700,000 | $636,171.50 |
| 26 | Special Committee Matters | 4,000-4,300 | 4,149.90 | $4,250,000-$4,800,000 | $4,760,627.50 |
| 27 | Stone Litigation | 20-40 | 25.60 | $20,000-$40,000 | $38,389.00 |
| 28 | Prime Trust Litigation | 10-30 | 12.40 | $10,000-$30,000 | $17,182.50 |
| 29 | Equities First Holdings Litigation | 180-200 | 193.10 | $210,000-$230,000 | $224,968.50 |
| 30 | Stake Hound Litigation | 20-30 | 23.90 | $25,000-$35,000 | $29,023.50 |
| 31 | Badger DAO Litigation | 1-5 | 3.40 | $1,000-$5,000 | $3,519.00 |
| 32 | HDR Global Trading Litigation | 1-5 | 0.40 | $750.00-$1,000.00 | $818.00 |

| Matter Number | Matter Category Description | Final Period Hours | | Final Period Total Compensation | |
|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed |
| 33 | Reliz Limited Litigation | 5-10 | 9.90 | $10,000.00-$15,000.00 | $13,930.00 |
| 38 | Blockchain Access UK Litigation | 1-5 | 0.50 | $500.00-$1,000.00 | $737.50 |
| 39 | Three Arrows Capital Litigation | 1-10 | 4.70 | $4,000.00-$5,000.00 | $4,535.50 |
| 41 | Tether Limited Litigation | 10-40 | 15.70 | $17,900.00-$20,000.00 | $19,277.00 |
| 42 | Core Scientific Litigation | 1,500-1,750 | 1,657.90 | $1,250,000.00-$2,000,000.00 | $1,572,783.50 |
| 43 | Examiner Matters | 2,000-2,250 | 2,167.30 | $2,000,000.00-$2,500,000.00 | $2,346,388.50 |
| 44 | GK8 | 1,500-1,750 | 1,612.10 | $1,250,000.00-$2,000,000.00 | $1,561,794.00 |
| 45 | Frishberg Litigation | 100-150 | 109.40 | $100,000.00-$150,000.00 | $113,055.50 |
| 46 | Core Scientific, Chapter 11 Filing | 625-700 | 652.30 | $750,000.00-$800,000.00 | $793,025.00 |
| 47 | Tiffany Fong Litigation | 50-100 | 77.00 | $25,000.00-$90,000.00 | $72,476.50 |
| 48 | K&E Fee Matters | 1,100-1,200 | 1,154.20 | $1,000,000.00-$1,500,000.00 | $1,193,278.50 |
| 49 | Non-K&E Fee Matters | 150-225 | 222.60 | $200,000.00-$250,000.00 | $223,469.00 |
| 50 | Government and Regulatory Investigations | 6,000-6,500 | 6,383.20 | $6,500,000.00-$8,000,000.00 | $7,479,869.50 |
| 51 | Appeals | 175-225 | 212.40 | $150,000.00-$200,000.00 | $196,371.50 |
| **TOTAL** | | **66,815-73655** | **70,258.30** | **$71,375,000.00-$79,096,000.00** | **$76,323,621.00** |

37.    The following is a summary, by Matter Category, of the most significant professional services provided by K&E during the Final Fee Period.  This summary is organized in accordance with K&E's internal system of matter numbers.   The detailed descriptions demonstrate that K&E was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.  A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by K&E partners, associates and paraprofessionals by matter,

and the aggregate fees associated with each matter is attached hereto as **Exhibit H**.

38.      In addition, K&E's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit I**, and K&E's records of expenses incurred during the Final Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit J**.

    (a)      **Chapter 11 Bankruptcy Filing [Matter No. 2]**

        Total Fees:    $672,198.00
        Total Hours:   670.00

39.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the filing of the Debtors' chapter 11 petitions and various "first day" pleadings and related notices during the initial days of these chapter 11 cases, including, without limitation, (a) reviewing and revising the Debtors' petitions and "first day" motions, proposed orders, affidavits and notices; and (b) preparing for the "first day" hearing, including drafting hearing notices, agendas, talking points, and related materials, and preparing potential witnesses in connection with certain of the first day motions.

40.      Specifically, the Debtors filed several motions seeking orders authorizing the Debtors to pay various prepetition claims. Entry of these orders eased the strain on the Debtors' relationships with employees, vendors, customers, insurance providers and sureties, and taxing authorities as a consequence of the commencement of these chapter 11 cases. Among other things, these orders authorized the Debtors to (a) pay certain critical vendors, suppliers, and lien claimants; (b) pay certain prepetition employee wages and benefits; (c) maintain cash management systems; (d) use prepetition bank accounts, checks and other business forms; (e) make tax payments to federal, local, and state taxing authorities; (f) prohibit utility companies from discontinuing services; and (g) maintain prepetition insurance policies and enter into new insurance policies.

(b)     **Adversary Proceeding & Contested Matters [Matter No. 3]**

Total Fees:     $7,277,983.00
Total Hours:   7,012.80

41.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to litigation, adversary proceedings, or other adversarial matters. Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, analyzing, and preparing litigation strategies for ongoing and potential adversary proceedings and contested matters including, but not limited to:

(1)     ownership of Earn, Custody, and Withhold assets;

(2)     determination of which Debtor entities are subject to contractual customer claims;

(3)     substantive consolidation between Celsius Network Limited and Celsius Network, LLC;

(4)     the estimation of the intercompany claim between Celsius Network Limited and Celsius Network, LLC;

(5)     the Committee's class claim adversary proceeding;

(6)     the Debtors' litigation against Equities First Holdings, LLC and Mawson Infrastructure Group, Inc.;

(ii)    conducting discovery and preparing extensive briefing regarding the foregoing adversary proceedings and contested matters;

(iii)   negotiating, drafting, and reviewing settlement agreements; and

(iv)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing activities.

(c)    **Automatic Stay Matters [Matter No. 4]**

Total Fees:    $791,369.50
Total Hours:   808.80

42.    This Matter Category includes time spent by K&E attorneys and paraprofessionals

providing services related to the imposition of the automatic stay.  Specifically, K&E attorneys

and paraprofessionals spent time:

(i)    responding to formal motions and informal inquiries from certain
parties in interest for relief from the automatic stay;

(ii)   drafting, revising, and researching pleadings and responding to
requests for relief from the automatic stay; and

(iii)  coordinating and communicating with the Debtors, the Debtors'
advisors, and relevant stakeholders regarding the foregoing
activities.

(d)    **Business Operations [Matter No. 5]**

Total Fees:    $1,383,368.00
Total Hours:   1,179.50

43.    It is important that the Debtors and their advisors create and implement an

all-encompassing and cohesive strategy for maintaining business operations with minimal

disruptions during the course of the Debtors' chapter 11 cases.   K&E attorneys and

paraprofessionals spent time developing a strategy with the Debtors to ensure that their business

operations continue without interruption.  Specifically, K&E attorneys and paraprofessionals spent

time strategizing with management and the Debtors' other advisors regarding communications

related to business updates to various stakeholders, processes to stabilize the business, maintaining

the security of digital assets, optimizing the mining business segment, and ensuring uninterrupted

operations while in chapter 11.

(e)  **Case Administration [Matter No. 6]**

Total Fees:  $3,174,369.50
Total Hours:  3,226.30

44.  This Matter Category includes time spent on a variety of tasks that were necessary to ensure the efficient and smooth administration of legal services related to the Debtors' chapter 11 cases.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)  coordinating, managing, and administering these chapter 11 cases on a daily basis, including monitoring critical dates and maintaining a case calendar, task lists, and work-in-progress reports;

(ii)  attending case status conferences with the Debtors' management team and the other retained professionals in these chapter 11 cases;

(iii)  managing procedures for case administration and docket monitoring;

(iv)  ensuring compliance with the service and notice requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including coordinating service of pleadings and other bankruptcy-related notices with Stretto Inc. ("Stretto"),[6] the claims and noticing agent retained in these chapter 11 cases;

(v)  facilitating compliance with all of the other applicable requirements of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and orders or procedures issued by the Bankruptcy Court; and

(vi)  conducting regular conferences internally with restructuring, corporate, and litigation teams, and with the Debtors and their other advisors regarding the overall case status and high-level strategy.

45.  Time billed to this Matter Category also includes work and meetings related to multiple matters such that the time cannot be easily allocated to one of the other matters.

---

[6]  To the extent possible, K&E paraprofessionals attended to these matters.  In addition, K&E paraprofessionals monitored the dockets for these chapter 11 cases to track the filing of pleadings and to remain apprised of critical dates, including those related to such pleadings.  For each pleading filed, K&E paraprofessionals ensured that the appropriate attorneys and personnel of the Debtors and their other advisors remained apprised of the filed documents and relevant objection and response deadlines, hearing dates, and other critical dates.

(f)     **Cash Management and DIP Financing [Matter No. 7]**

Total Fees:      $603,910.50
Total Hours:     564.20

46.     This Matter Category includes time spent by K&E attorneys and paraprofessionals during the Fee Period analyzing banking activities at authorized depositories as well as obtaining the Court's approval for the Debtors' continued use of their cash management system on a final basis. Specifically, K&E attorneys and paraprofessionals spent time:

(i)     filing and obtaining court approval of the I*nterim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 56]; the *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 513]; and the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 699];

(ii)    filing and obtaining court approval of the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152]; and

(iii)   negotiating with the U.S. Trustee and the Committee to resolve formal and informal objections to the foregoing and providing the

U.S. Trustee and Committee with all required reporting under the applicable cash management orders; and

(iv)     managing the Debtors' various bank account openings and closings, including relating to the entry of Signature Bank into a federal receivership.

**(g)     Customer and Vendor Communications [Matter No. 8]**

Total Fees:     $1,220,143.50
Total Hours:   1,305.50

47.     This Matter Category includes time spent by K&E attorneys and paraprofessionals advising the Debtors on creditor communications and vendor issues, including with respect to postpetition business activities and the Custody withdrawal process.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     reviewing and responding to numerous creditor inquiries related to account status and eligibility for Custody withdrawals;

(ii)    coordinating with the Committee and U.S. Trustee concerning critical vendor reporting and approvals;

(iii)   negotiating and executing critical vendor agreements;

(iv)    researching and analyzing issues related to various attempted phishing scams and related security concerns for creditors and filing notices on the docket to keep creditors apprised of the same; and

(v)     corresponding with various vendors and customers with respect to their inquiries.

**(h)     Claims Administration and Objections [Matter No. 9]**

Total Fees:     $1,876,454.00
Total Hours:   1,863.50

48.     This Matter Category includes time K&E attorneys and paraprofessionals spent on matters related to claims administration and claims-related issues.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     drafting and filing the *Debtors' Motion For Entry of an Order (I) Setting Bar Dates For Submitting Proof of Claim, (II) Approving*

*Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1019] (the "Bar Date Motion");

(ii)    responding to the *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend their Schedules* [Docket No. 1183] and analyzed where customers have claims against Debtor entities;

(iii)   drafting, filing, and obtaining Court approval of the *Debtors' Motion for an Order (I) Approving (A) Omnibus Claims Objection Procedures and Form of Notice, (B) Omnibus Substantive Claims Objections, and (C) Satisfaction Procedures and Form of Notice and (II) Modifying Bankruptcy Rule 3007(e)(6)* [Docket No. 1972];

(iv)   drafting, filing, and obtaining the requested relief in the *Debtors' First Omnibus Objection to Certain (A) Amended Claims, (B) Duplicate Claims, (C) Non-Debtor Claims, (D) Unsupported Claims, and (E) Inaccurately Supported Claims* [Docket No. 2103];

(v)    drafting, filing, and obtaining Court approval of the *Joint Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors and the Committee With Respect to the Committee's Class Claim and (II) Granting Related Relief* [Docket No. 3064]

(vi)   drafting, filing, and obtaining Court approval of the *Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors Establishing Account Holder Bar Date* [Docket No. 3066];

(vii)  responding to various inquiries from customers and other parties about filing claims, the Bar Date Motion and related order, and claims resolution;

(viii) coordinating with Stretto and other parties regarding claims reconciliation;

(ix)   coordinating with Alvarez & Marsal North America LLC ("A&M"), the Debtors' financial advisor, and Stretto regarding the claims resolution process; and

(x)    corresponding with former executives concerning the equitable subordination of their claims.

**(i)    Official Committee Matters and Meetings [Matter No. 10]**

Total Fees:    $1,565,688.50
Total Hours:   1,425.20

49.    This Matter Category includes time spent by K&E attorneys providing services related to statutory committees.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)    meeting and corresponding with the Committee's advisors to provide updates as to developments in the cases;

(ii)    coordinating with the Debtors to provide the Committee access to the Debtors' employees for formal and informal interviews;

(iii)    producing over 22,000 documents in response to Committee requests;

(iv)    drafting and filing the Debtors' Objection to Motion For Entry of an Order Directing the Appointment of an Official Preferred Equity Committee [Docket No. 1045];

(v)    attending weekly case status conferences with the Committee; and

(vi)    responding to formal and informal objections to various operational motions from the Committee.

**(j)    Use, Sale, and Disposition of Property [Matter No. 11]**

Total Fees:    $7,887,540.50
Total Hours:    7,727.10

50.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the Debtors' property interests.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)    drafting and filing *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. 929] (the "Bidding Procedures Motion");

(ii)    drafting and filing *Debtors' Motion Seeking Entry of (I) an Order (A) Approving the Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Bid Protections, (E) Approving Assumption and Assignment Procedures, (II) an Order Authorizing the Debtors to Enter into a Definitive Purchase Agreement, and (III) Granting*

26

*Related Relief* [Docket No. 188] (the "GK8 Bidding Procedures Motion");

(iii) drafting and filing *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 187];

(iv) drafting and filing *Debtors' Motion to Approve Procedures for De Minimis Asset Transactions* [Docket No. 189];

(v) reviewing, analyzing, and revising bid proposals, and communicating with potential bidders regarding bid proposals;

(vi) responding to diligence requests regarding the foregoing potential bidders;

(vii) preparing for and conducting an auction for substantially all the Debtors' assets with three qualified bidders;

(viii) drafting and filing motions and objections related to the sale of Stablecoins and the transfer of institutional lending collateral;

(ix) drafting, negotiating, and filing distribution agreements with Paxos, Coinbase, and PayPal;

(x) drafting, negotiating, and filing the Core Scientific Purchase and Sale Agreement [Docket No. 3725];

(xi) preparing for and attending hearings regarding the foregoing matters; and

(xii) analyzing strategies and approaches with the Debtors and their other advisors regarding the withdrawal of Custody and Withhold assets and executing the withdrawal process.

**(k)** **Corp., Governance, & Securities Matters [Matter No. 12]**

Total Fees: $2,472,076.00
Total Hours: 1,794.40

51. This Matter Category includes time spent by K&E attorneys and paraprofessionals

advising the Debtors and the Special Committee of the Board of Directors (the "Special

Committee") regarding corporate matters.   Specifically, K&E attorneys and paraprofessionals spent time:

> (i)     analyzing, discussing, and addressing various corporate governance and structuring issues;
>
> (ii)    complying with corporate governance requirements, including drafting minutes, Board resolutions, certificates, and amendments to corporate documents, as necessary;
>
> (iii)   drafting board and shareholder resolutions; and
>
> (iv)    complying with securities regulations, including research and preparation of materials pertaining to securities-related disclosures and regulatory requirements.

**(l)      Employee Matters [Matter No. 13]**

Total Fees:     $2,111,342.00
Total Hours:    1,885.90

52.     The Debtors and K&E believe that a successful reorganization depends on retaining the workforce, thereby ensuring continuity of the Debtors' business.   As a result, this Matter Category includes time spent by K&E attorneys and paraprofessionals addressing employee issues. Specifically, K&E attorneys spent time:

> (i)     filing and obtaining court approval of the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief [Docket No. 518] and obtaining court approval of the Order Authorizing the Debtors to (I) Pay Non-Insider Severance Benefits and (II) Granting Related Relief* [Docket No. 688] following a contested hearing;
>
> (ii)    drafting and filing *Debtors' Amended Motion for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain Confidential Information Related to the Debtors' Key Employee Retention Plan* [Docket No. 1020];
>
> (iii)   drafting and filing the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1021];

28

(iv)    responding to formal and informal objections to the foregoing, including drafting and filing the *Omnibus Reply in Support of Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief and Motion for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain Confidential Information Related to the Debtors' Key Employee Retention Plan* [Docket No. 1231]

(v)    drafting, filing, and obtaining court approval of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2147];

(vi)    drafting and filing *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Incentive Program and (II) Granting Related Relief* [Docket No. 2336] and responding to objections thereto;

(vii)    preparing for and attending hearings regarding the foregoing matters;

(viii)    reviewing and researching issues related to employee transaction histories, coin wallets, and related issues; and

(ix)    reviewing and analyzing data related to various employee retention and workforce related issues and regulations.

**(m)    Executory Contracts and Unexpired Leases [Matter No. 14]**

Total Fees:    $431,020.50
Total Hours:    444.20

53.    This Matter Category includes time spent by K&E attorneys examining issues related to the Debtors' executory contracts and unexpired leases. K&E attorneys spent time researching, analyzing, renegotiating, or rejecting the Debtors' obligations under their various executory contracts. Specifically, K&E attorneys and paraprofessionals spent time:

(i)    researching, analyzing, and renegotiating the Debtors' obligations under their various executory contracts and unexpired leases;

(ii)     coordinating with the Debtor and the Debtors' other advisors to identify and analyze contracts and leases for potential assumption or rejection;

(iii)    drafting and filing notices of assumed and rejected contracts and leases;

(iv)    drafting and revising pleadings in connection with potential adversary proceedings involving contract counterparties; and

(v)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing activities.

**(n)**      **SOFAs and Schedules [Matter No. 15]**

Total Fees:   $932,890.50
Total Hours:  832.80

54. This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to advising the Debtors, Stretto, and other advisors in connection with the preparation, review, revision, and filing of the Debtors' schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements"). Moreover, K&E attorneys advised the Debtors regarding drafting and amending the Schedules and Statements, attended regular conferences with the Debtors and their advisors regarding the same, and conferred and corresponded with the Debtors and K&E professionals regarding the monthly operating reports. Specifically, K&E attorneys and paraprofessionals spent time:

(i)     drafting and filing the *Debtors' Ex Parte Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information From the Creditor Matrix, Schedules and Statements, and Related Documents and (II) Granting Related Relief* [Docket No. 344];

(ii)    drafting and filing the *Debtors' Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to (A) Redact Individual Names, and (B) Implement an Anonymized Identification Process, and (II) Granting Related Relief* [Docket No. 639] (the "Anonymization Motion");

30

(iii)    drafting and filing the *Debtors' Supplemental Reply in Support of the Debtors' Requests to (A) Redact Certain Personally Identifiable Information of Individuals and United Kingdom and European Union Member Countries' Citizens and (B) Implement an Anonymized Identification Process* [Docket No. 782];

(iv)    preparing unredacted Schedules and Statements pursuant to the Court's *Memorandum Opinion and Order on the Debtors' Sealing Motion* [Docket No. 910];

(v)    advising the Debtors regarding amendments to the Schedules and Statements, attending regular conferences with the Debtors and their advisors regarding the same;

(vi)    drafting and filing notices related to cryptocurrency conversion rates; and

(vii)    negotiating resolutions of pleadings related to the foregoing.

(o)    **Hearings [Matter No. 16]**

Total Fees:    $2,594,401.00
Total Hours:    2,756.40

55.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to preparing for and attending forty-three (43) hearings during the Final Fee Period (each a "Hearing" and, collectively, the "Hearings"), including preparing agendas, orders, and binders related to Hearings, settling orders before and after Hearings, and corresponding with various parties in preparation for, and after, the Hearings. These services also included conferences to discuss multiple matters scheduled for a specific Hearing and coordinating Hearing logistics. During the Final Fee Period, K&E attorneys and paraprofessionals spent considerable time preparing for and attending Hearings including:

(i)    the "first day" hearing on July 18, 2022;

(ii)    the "second day" hearing held on August 16, 2022;

(iii)    the hearing on September 1, 2022;

(iv)    the hearing on September 14, 2022;

(v)      the hearing on October 6, 2022; and

(vi)     the hearing on October 20, 2022.

(vii)    the hearing on November 1, 2022;

(viii)   the hearing on November 15, 2022;

(ix)     the status conference on November 22, 2022;

(x)      the hearing on December 5, 2022;

(xi)     the hearing on December 7, 2022;

(xii)    the hearing on December 8, 2022;

(xiii)   the hearing on December 20, 2022;

(xiv)    the hearing on January 3, 2022;

(xv)     the hearing on January 24, 2022;

(xvi)    the hearing on February 6, 2022;

(xvii)   the hearing on February 15, 2022;

(xviii)  the hearing on March 8, 2023;

(xix)    the hearing on March 21, 2023;

(xx)     the hearing on March 23, 2023;

(xxi)    the hearing on March 30, 2023;

(xxii)   the hearing on April 11, 2023;

(xxiii)  the hearing on April 18, 2023;

(xxiv)   the hearing on May 17, 2023;

(xxv)    the hearing on June 28, 2023;

(xxvi)   the hearing on July 18, 2023;

(xxvii)  the hearing on August 2, 2023;

(xxviii) the hearing on August 14, 2023;

(xxix)   the hearing on September 7, 2023;

(xxx)   the hearing on September 18, 2023;

(xxxi)  the hearing on September 19, 2023;

(xxxii) the hearing on September 20, 2023;

(xxxiii) the hearing on September 21, 2023;

(xxxiv) the hearing on September 28, 2023;

(xxxv) the hearing on September 29, 2023;

(xxxvi) the hearing on October 2, 2023;

(xxxvii)  the hearing on October 3, 2023;

(xxxviii) the hearing on October 4, 2023;

(xxxix) the hearing on October 5, 2023;

(xl)     the hearing on October 16, 2023;

(xli)    the hearing on October 17, 2023;

(xlii)   the hearing on October 24, 2023; and

(xliii)  the hearing on October 30, 2023.

**(p)**     **Insurance and Surety Matters [Matter No. 17]**

Total Fees:     $415,949.50
Total Hours:    338.90

56.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to ensuring that the Debtors' insurance policies continue to be maintained during these chapter 11 cases.   Specifically, K&E attorneys and paraprofessionals spent time:

(i)     reviewing and analyzing insurance contracts and disputes, including research related to D&O insurance coverage;

(ii)    ensuring the Debtors maintained sufficient insurance coverage as required by the chapter 11 operating guidelines; and

(iii) coordinating and communicating with the Debtors, the Debtors' advisors, insurance brokers, and relevant stakeholders regarding the foregoing activities.

**(q)** **Disclosure Statement, Plan, Confirmation [Matter No. 18]**

Total Fees:     $14,918,073.50
Total Hours:   12,689.70

57. This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to developing a plan of reorganization and disclosure statement in connection with these chapter 11 cases and seeking approval of the same. Specifically, K&E attorneys and paraprofessionals spent time:

(i) researching, drafting and filing the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptance Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief [Docket No. 1317], Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptance Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1940], *Debtors' Third Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptance Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief [Docket No. 2805], and Debtors' Fourth Motion for Entry of an Order (I) Extending the Debtors' Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 3357] and negotiating with objecting parties related thereto;

(ii) obtaining Court approval of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1645], the *Bridge Order Pending a Hearing on the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptance Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2088], the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2203], obtaining the *Order*

*(I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief [Docket No. 2935], and the Order (I) Extending the Debtors' Exclusive Period Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 3439];

(iii)   drafting and negotiating the Plan Sponsor Agreement with Fahrenheit, which memorializes the terms of the NewCo Transaction contemplated by Fahrenheit's successful bid;

(iv)   drafting and negotiating the terms of the backup Plan Sponsor Agreement with BRIC, which memorializes the terms of the Backup MiningCo transaction contemplated by BRIC's backup bid;

(v)   drafting and filing Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Fees and Expenses for the Backup Plan Sponsor, and (II) Granting Related Relief [Docket No. 2774];

(vi)   obtaining Court approval of the Order (I) Authorizing and Approving Certain Fees and Expenses for the Backup Plan Sponsor, and (II) Granting Related Relief [Docket No. 3057];

(vii)   drafting, revising, and filing the Plan;

(viii)   drafting, revising, and filing the Disclosure Statement;

(ix)   drafting, revising, and filing the *Plan Supplement* [Docket No. 3115], the *Second Plan Supplement* [Docket No. 3273], the *Third Plan Supplement* [Docket No. 3444], the *Fourth Plan Supplement* [Docket No. 3483], the *Fifth Plan Supplement* [Docket No. 3550], the *Sixth Plan Supplement* [Docket No. 3583], the *Seventh Plan Supplement* [Docket No. 3869], and the *Eighth Plan Supplement* [Docket No. 3935];

(x)   drafting, revising, and filing Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates and Omnibus Reply to Objections Thereto [Docket No. 3609];

(xi)   drafting, revising, and filing *Debtors' Brief in Support of CEL Token Settlement* [Docket No. 3431];

(xii)   drafting, revising, and filing *Debtors' Supplemental Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates*

*and Omnibus Reply to Certain Objections Thereto* [Docket No. 3864];

(xiii)  drafting, revising, and filing the Confirmation Order;

(xiv)  corresponding and coordinating valuation issues with various advisors and experts;

(xv)  coordinating and participating in various discussions with advisors, the Committee, and regulatory agencies related to Plan constructs and potential regulatory issues;

(xvi)  corresponding with parties in interest regarding the terms of a potential restructuring transaction;

(xvii)  corresponding with advisors, researching, and drafting the disclosure statement and disclosure statement motion;

(xviii)  researching, reviewing, and evaluating precedent and case law regarding potential chapter 11 plan terms; and

(xix)  preparing for hearings regarding the foregoing matters, including the confirmation hearing.

**(r)**  **International Issues [Matter No. 19]**

Total Fees:    $491,058.50
Total Hours:    396.40

58.    This Matter Category includes time spent by K&E attorneys and paraprofessionals on a variety of tasks that were necessary to ensure compliance with non-U.S. law.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)  filing recognition proceedings in the United Kingdom for Celsius Network Limited;

(ii)  analyzing transaction structuring issues under non-U.S. law concerning the sale of GK8 and the chapter 11 filing of GK8;

(iii)  researching and corresponding with foreign counsel regarding Lithuanian regulatory and tax issues; and

(iv)  researching and corresponding with foreign counsel regarding chapter 11 issues under non-U.S. law, including analyzing, discussing, and addressing the treatment of loans at U.K. and Israeli

entities, and various foreign corporate governance and structuring issues.

**(s)      K&E Retention and Fee Matters [Matter No. 20]**

Total Fees:      $1,438,083.00
Total Hours:    1,665.40

59.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the retention of K&E as the Debtors' counsel.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)  preparing pleadings and a comprehensive conflict analysis necessary to obtain the order of the Court approving the employment of K&E to represent the Debtors;

(ii)    implementing internally established procedures, which require the continuous analysis of potential new conflicts; and

(iii)    preparing updated professional disclosures for filing with the Court.

(iv)    analyzing objections to K&E's retention and preparing replies and preparing for a hearing regarding the same;

(v)     filing an unredacted version of the retention application following the Court's ruling regarding sealing; and

(vi)    telephone conferences and correspondence with the U.S. Trustee regarding K&E's retention and responding to questions and comments regarding the same.

**(t)      Non-K&E Retention and Fee Matters [Matter No. 21]**

Total Fees:      $1,205,203.00
Total Hours:    1,221.00

60.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to ensuring the retention of the Debtors' other professionals in these chapter 11 cases.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     engaging with the U.S. Trustee and the Debtors' other advisors regarding both informal comments and objections provided by the U.S. Trustee, with respect to the Debtors' advisors retention applications and related retention orders;

37

(ii)     drafting and filing the Debtors' Motion Authorizing the Debtors the Retention and Compensation Professionals Utilized in the Ordinary Course of Business [Docket No. 190];

(iii)    reviewing retention applications filed by the Committee's professionals;

(iv)     commenting on other advisors' engagement letters and retention applications;

(v)      preparing a variety of reports and declarations of disinterestedness related to various ordinary course professionals;

(vi)     assisting the Debtors' other advisors regarding their redacted and unredacted retention applications;

(vii)    coordinating with the Debtors and their other advisors with respect to ordinary course professional retentions and complying with the related disclosure requirements of applicable provisions of the Bankruptcy Code; and

(viii)   reviewing retention applications and supplemental declarations filed by the Committee's professionals, coordinating with the Committee to address the Debtors' concerns regarding these retentions, and reviewing related fee statements.

**(u)     Tax Matters [Matter No. 22]**

Total Fees:     $1,002,582.50
Total Hours:    743.80

61.     This Matter Category includes time spent by K&E attorneys and paraprofessionals conducting legal research, preparing correspondence and pleadings, and generally advising the Debtors on tax issues related to or arising during the chapter 11 cases. During the Fee Period, K&E attorneys were responsible for researching and analyzing certain tax issues arising in connection with the Debtors' business operations, including the following:

(i)      researching and analyzing taxation-related issues related to the Debtors' restructuring and related tax returns;

(ii)     researching and corresponding with foreign counsel regarding UK tax issues;

(iii)    corresponding with the Internal Revenue Service and other taxing authorities regarding Debtors' tax obligations;

(iv)    corresponding with the Committee and Examiner related to various tax diligence requests and analysis of the same; and

(v)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing activities.

**(v)    <u>Non-Working Travel [Matter No. 23]</u>**

Total Fees:    $556,225.00
Total Hours:    429.50

62.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to traveling in connection with their representation of the Debtors.  The amounts presented for review and the request for payment in the Fee Application reflect a reduction of one half the charges for travel time.

**(w)    <u>U.S. Trustee Communications & Reporting [Matter No. 24]</u>**

Total Fees:    $636,171.50
Total Hours:    589.10

63.    This Matter Category includes time spent by K&E attorneys and paraprofessionals corresponding with the U.S. Trustee with respect to the following issues:

(i)    responding to questions and comments regarding relief requested in the Debtors' first and second day motions;

(ii)    engaging in discussions, telephone calls and correspondence with the U.S. Trustee regarding K&E's retention and responding to questions and comments regarding the same;

(iii)    participating in weekly discussions with the U.S. Trustee concerning critical vendor payments;

(iv)    corresponding and conferencing with the U.S. Trustee concerning coin reports and budget reports;

(v)    coordinating efforts among the Debtors and their other professionals to address various questions and issues raised by the U.S. Trustee and the Committee with respect to the retention of the Debtors' other

professionals and ensuring that these professionals were ultimately retained without any objection to assist in the Debtors' chapter 11 cases;

(vi)    responding to questions and comments from the U.S. Trustee regarding the Anonymization Motion;

(vii)    advising and preparing the Debtors for the initial Debtor interview and two meetings with creditors pursuant to section 341 of the Bankruptcy Code;

(viii)    preparing reports in compliance with the U.S. Trustee's chapter 11 operating guidelines;

(ix)    corresponding, preparing for, and conducting the GK8 section 341 meeting of creditors; and

(x)    researching and advising on various customer threats and security issues with the U.S. Trustee.

**(x)**    **Special Committee Matters [Matter No. 26]**

Total Fees:    $4,760,627.50
Total Hours:   4,149.90

64.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the Special Committee.  Specifically, K&E attorneys spent time:

(i)    meeting and corresponding with the Special Committee to provide updates as to developments in the cases;

(ii)    providing relevant information and access to the Debtors and their records as requested, and responding to Special Committee inquiries;

(iii)    preparing materials for and attending board meetings in connection with the chapter 11 process;

(iv)    analyzing, discussing, and addressing various corporate governance and structuring issues;

(v)    interviewing witnesses and reviewing diligence concerning the Special Committee investigation; and

(vi)    coordinating and communicating with the Special Committee regarding its investigation.

**(y)   Stone Litigation [Matter No. 27]**

Total Fees:     $38,389.00
Total Hours:   25.60

65.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Jason Stone and KeyFi, Inc.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(z)   Prime Trust Litigation [Matter No. 28]**

Total Fees:     $17,182.50
Total Hours:   12.40

66.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the adversary proceeding *Celsius Network Limited et al. v. Prime Trust, LLC* [Case No. 22-01140].  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(aa)  Equities First Holdings Litigation [Matter No. 29]**

Total Fees:     $224,968.50
Total Hours:   193.10

67.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Equities First Holdings.  Specifically, K&E attorneys and paraprofessionals spent time researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation.

**(bb)**    **Stake Hound Litigation [Matter No. 30]**

Total Fees:    $29,023.50
Total Hours:    23.90

68.    This Matter Category includes time spent by K&E attorneys providing services related to potential litigation between the Debtors and Stake Hound S.A.  Specifically, K&E attorneys spent time researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation.

**(cc)**    **Badger DAO Litigation [Matter No. 31]**

Total Fees:    $3,519.00
Total Hours:    3.40

69.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to litigation between the Debtors and Badger DAO.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)    researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(dd)**    **HDR Global Trading Litigation [Matter No. 32]**

Total Fees:    $818.00
Total Hours:    0.40

70.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and HDR Global Trading.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)    researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(ee)    Reliz Limited Litigation [Matter No. 33]**

Total Fees:    $13,930.00
Total Hours:   9.90

71.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Reliz Limited. Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(ff)    Blockchain Access UK Litigation [Matter No. 38]**

Total Fees:    $737.50
Total Hours:   0.50

72.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Blockchain Access UK Ltd in the United Kingdom.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(gg)    Three Arrows Capital Litigation [Matter No. 39]**

Total Fees:    $4,535.50
Total Hours:   4.70

73.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Three Arrows Capital. Specifically, K&E attorneys and paraprofessionals spent time:

(i)    researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(hh)**    **Tether Limited Litigation [Matter No. 41]**

Total Fees:    $19,277.00
Total Hours:   15.70

74.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation between the Debtors and Tether Limited. Specifically, K&E attorneys and paraprofessionals spent time:

(i)    researching, analyzing, and preparing litigation strategies regarding the foregoing potential litigation; and

(ii)    coordinating and communicating with the Debtors, the Debtors' advisors, and relevant stakeholders regarding the foregoing potential litigation.

**(ii)**    **Core Scientific Litigation [Matter No. 42]**

Total Fees:    $1,572,783.50
Total Hours:   1,657.90

75.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to litigation in the Core Scientific chapter 11 bankruptcy. Specifically, K&E attorneys spent time:

(i)    reviewing, analyzing, researching and drafting responses to various rejection pleadings filed in the Core Scientific chapter 11 cases related to the Debtors;

(ii)    preparing for and participating in hearings related to the foregoing; and

(iii)   reviewing and analyzing discovery correspondence regarding the foregoing litigation.

**(jj)**    **Examiner Matters [Matter No. 43]**

Total Fees:    $2,346,388.50
Total Hours:    2,167.30

76.    This Matter Category includes time spent by K&E attorneys and paraprofessionals

providing services related to the Examiner.  Specifically, K&E attorneys spent time:

   (i)    meeting and corresponding with the Examiner and her professionals;

   (ii)    providing relevant information and access to the Debtors and their records as requested, and responding to Examiner inquiries;

   (iii)    preparing Debtors' employees for interviews with the Examiner and coordinating the Debtors' counsel regarding these interviews;

   (iv)    analyzing, discussing, and addressing various issues relating to Examiner requests; and

   (v)    reviewing and analyzing the Examiner's Report to communicate with the Debtors' management, the Special Committee, and various advisors related to issues therein.

**(kk)**    **GK8 [Matter No. 44]**

Total Fees:    $1,561,794.00
Total Hours:    1,612.10

77.    This Matter Category includes time spent by K&E attorneys and paraprofessionals

providing services related to the GK8 Debtors.  Specifically, K&E attorneys spent time:

   (i)    corresponding with interested parties relating to remaining issues concerning the GK8 sale; and

   (ii)    reviewing and analyzing documents relating to remaining issues concerning the GK8 sale and transition.

**(ll)**    **Frishberg Litigation [Matter No. 45]**

Total Fees:    $113,055.50
Total Hours:    109.40

78.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the adversary proceeding brought by *pro se* creditor Daniel Frishberg and other litigation involving Mr. Frishberg.  Specifically, K&E attorneys spent time:

    (i)    corresponding with Mr. Frishberg related to various litigation issues;

    (ii)    reviewing, analyzing, and responding to pleadings filed by Mr. Frishberg; and

    (iii)    reviewing and analyzing discovery correspondence regarding the foregoing litigation.

**(mm)  Core Scientific, Chapter 11 Filing [Matter No. 46]**

    Total Fees:    $793,025.00
    Total Hours:    652.30

79.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the Core Scientific chapter 11 bankruptcy filing.  Specifically, K&E attorneys spent time:

    (i)    reviewing, analyzing, researching and drafting responses to various rejection pleadings filed in the Core Scientific chapter 11 cases related to the Debtors;

    (ii)    drafting, revising, and filing the *Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors and Core Scientific, (II) Authorizing Entry into the Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers with Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3474];

    (iii)    obtaining court approval of the *Order (I) Approving the Settlement by and Among the Debtors and Core Scientific, (II) Authorizing Entry into the Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers with Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3725];

    (iv)    preparing for and participating in hearings related to the foregoing; and

    (v)    reviewing and analyzing discovery correspondence regarding the foregoing litigation.

    **(nn)**   **Tiffany Fong Litigation [Matter No. 47]**

        Total Fees:    $72,476.50
        Total Hours:  77.00

80.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to potential litigation against Ms. Tiffany Fong following her leak of certain confidential information. Specifically, K&E attorneys spent time:

        (i)     researching, analyzing, and preparing litigation strategies regarding the foregoing adversary proceeding; and

        (ii)    researching and drafting pleadings related to the foregoing.

    **(oo)**   **K&E Fee Matters [Matter No. 48]**

        Total Fees:    $1,193,278.50
        Total Hours:  1,154.20

81.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to K&E fee matters as the Debtors' counsel.[7] Specifically, K&E attorneys and paraprofessionals spent time:

        (i)     analyzing and responding to objections to K&E's fees;

        (ii)    preparing and distributing K&E's monthly fee statements in accordance with the Amended Interim Compensation Order;

        (iii)   preparing and filing the *Third Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Interim Fee Period from March 1, 2023, Through and Including June 30, 2023* [Docket No. 3306]; and

        (iv)   reviewing all time entries to preserve the privilege pertaining to and confidentiality of the work performed for the Debtors.

    **(pp)**   **Non-K&E Fee Matters [Matter No. 49]**

        Total Fees:    $223,469.00
        Total Hours:  222.60

---

[7]    This Matter Category was opened at the request of the Fee Examiner. Time related to K&E's fees from January 2023 and are included in this Matter Category.

82.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to non-K&E fee matters.[8]     Specifically, K&E attorneys and paraprofessionals spent time assisting the Debtors' other advisors regarding their respective fee statements and applications.

### (qq)    Government and Regulatory Investigations [Matter No. 50]

Total Fees:     $7,479,869.50
Total Hours:    6,383.20

83.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to governmental and regulatory investigations.   Specifically, K&E attorneys and paraprofessionals spent time:

(i)      coordinating with the Debtors and their other advisors with respect to regulatory inquiries and diligence while ensuring minimal duplication of services;

(ii)     coordinating and negotiating with state regulators to ensure distributions under the Plan are compliant with state law;

(iii)    coordinating and negotiating with civil regulators, including the SEC, FTC, and CFTC to ensure that modifications to the Plan maintain compliance with settlement terms;

(iv)     corresponding with and presenting to various state and federal regulators related to investigations and diligence requests related thereto; and

(v)      reviewing diligence materials for privilege and confidentiality ahead of production to state and federal regulators.

### (rr)    Appeals [Matter No. 51]

Total Fees:     $196,371.50
Total Hours:    212.40

84.     This Matter Category includes time spent by K&E attorneys and paraprofessionals

---

[8]    This Matter Category was opened at the request of the Fee Examiner.  Time related to non-K&E related fee matters from January 2023 and are included in this Matter Category.

providing services related to appeals filed by various *pro se* creditors related to the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "<u>Earn Opinion</u>").  Specifically, K&E attorneys and paraprofessionals spent time:

<blockquote>

(i)     monitoring of appeals of opinions issued in the Debtors' chapter 11 cases; and

(ii)    researching, analyzing, and preparing litigation strategies related to the foregoing appeals with the Debtors and other advisors.

</blockquote>

85.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to appeals filed by various *pro se* creditors related to the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "<u>Earn Opinion</u>").  Specifically, K&E attorneys and paraprofessionals spent time:

<blockquote>

(i)     monitoring of appeals of opinions issued in the Debtors' chapter 11 cases; and

(ii)    researching, analyzing, and preparing litigation strategies related to the foregoing appeals with the Debtors and other advisors.

</blockquote>

### Actual and Necessary Expenses Incurred by K&E

86.     As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit G** attached hereto, K&E has incurred a total of $1,719,338.75 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse K&E's direct operating costs, which are not incorporated into the K&E hourly billing rates.  K&E charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

### Reasonable and Necessary Services Provided by K&E

**A.      Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

87.     The foregoing professional services provided by K&E on behalf of the Debtors during the Final Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

88.     Many of the services performed by partners and associates of K&E were provided by K&E's Restructuring Group.  K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with over 175 attorneys focusing on this area of the law.  The attorneys at K&E have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

89.     In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from K&E's litigation, corporate, and tax groups were heavily involved with K&E's representation of the Debtors.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, K&E brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.     Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

90.     The time constraints imposed by the circumstances of these chapter 11 cases required K&E attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, and as further disclosed in the Retention Application, K&E attorneys and other K&E employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  K&E's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to

charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

91.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties in interest in relation to K&E's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in K&E's overhead for the purpose of setting billing rates and K&E has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

92.    Among other things, K&E makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, K&E regularly reviews its bills to ensure that the Debtors are only billed for services that were actual and necessary and, where appropriate, prorates expenses.  In that regard, K&E will waive certain fees and reduce its expenses if necessary.   In the Final Fee Period, K&E voluntarily reduced its fees by $2,205,349.00  and expenses by $161,389.35.  Consequently, K&E does not seek payment of such fees or reimbursement of such expenses in the Fee Application.

**K&E's Requested Compensation and Reimbursement Should be Allowed**

93.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual,

necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award

of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . .
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including—
>
> (a)   the time spent on such services;
>
> (b)   the rates charged for such services;
>
> (c)   whether the services were necessary to the
> administration of, or beneficial at the time at which
> the service was rendered toward the completion of,
> a case under this title;
>
> (d)   whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed;
>
> (e)   with respect to a professional person, whether the
> person is board certified or otherwise has
> demonstrated skill and expertise in the bankruptcy
> field; and
>
> (f)   whether the compensation is reasonable based on
> the customary compensation charged by
> comparably skilled practitioners in cases other than
> cases under this title.

11 U.S.C. § 330(a)(3).

94.     K&E respectfully submits that the services for which it seeks compensation in this

Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their

estates and were rendered to protect and preserve the Debtors' estates.  K&E further believes that

it performed the services for the Debtors economically, effectively, and efficiently, and the results

obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents.

K&E further submits that the compensation requested herein is reasonable in light of the nature,

extent, and value of such services to the Debtors, their estates, and all parties in interest.

95.     During the Interim and Final Fee Periods, K&E's hourly billing rates for attorneys

ranged from $685 to $2,245.  The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  K&E strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

96.     Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

97.     In sum, K&E respectfully submits that the professional services provided by K&E on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by K&E, the nature and extent of K&E's services provided, the value of K&E's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, K&E respectfully submits that approval of the compensation sought herein is warranted and should be approved.

98.     No previous application for the relief sought herein has been made to this or any other Court.

### Reservation of Rights and Notice

99.     It is possible that some professional time expended, or expenses incurred, during

the Final Fee Period are not reflected in the Fee Application.  K&E reserves the right to include

such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee

Application to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Examiner and her

counsel; (d) the Fee Examiner and his counsel; (e) counsel to the Ad Hoc Group of Custodial

Account Holders; (f) counsel to the Ad Hoc Group of Withhold Account Holders; (g) the United

States Attorney's Office for the Southern District of New York; (h) the Internal Revenue Service;

(i) the offices of the attorneys general in the states in which the Debtors operate; (j) the Securities

and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy

Rule 2002 (collectively, the "Notice Parties").  Pursuant to the Interim Compensation Order, any

party, other than the U.S. Trustee and Fee Examiner, that wishes to object to the Fee Application,

such party shall by no later than 12:00 p.m. (prevailing Eastern Time) on the date that is 21 days

following the required notice of the Fee Application, file and serve the objection setting forth the

nature of the objection and the amount of interim fees or expenses at issue.

## No Prior Request

100.    No prior application for the relief requested herein has been made to this or any

other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, K&E respectfully requests that the Court enter an order (a) awarding K&E interim compensation for professional and paraprofessional services provided during (i) the Fourth Interim Fee Period in the amount of $12,418,178.50, and reimbursement of actual, reasonable and necessary expenses incurred in the Fourth Interim Fee Period in the amount of $567,118.56, and (ii) final approval of compensation for professional and paraprofessional services provided during the Final Fee Period in the amount of $76,323,621.00, and reimbursement of actual, reasonable and necessary expenses incurred in the Final Fee Period in the amount of $1,719,338.75; (b) authorizing and directing the Debtors to remit payment to K&E for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

New York, New York
Date: January 18, 2024

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*