**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SUMMARY COVER SHEET TO THE SIXTH**
**MONTHLY INTERIM AND FINAL FEE APPLICATION**
**OF ANDERSEN LLP, AS UK TAX SERVICES PROVIDER**
**FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE**
**(I) INTERIM FEE PERIOD FROM NOVEMBER 1, 2023 THROUGH**
**AND INCLUDING NOVEMBER 9, 2023 AND THE (II) FINAL FEE PERIOD**
**FROM FEBRUARY 13, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

In accordance with the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), Andersen LLP ("Andersen"), as UK Tax advisors for the above--captioned debtors and debtors in possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from November 1 2023 through November 9 2023 (the "Sixth Interim Fee Period") and February 13, 2023 through and including November 9, 2023 (the "Fee Period").

Andersen submits the Fee Application as an interim fee application in accordance with the Court's *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 2779], (the "Interim Compensation Order"), which permits Andersen to file interim fee applications.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| General Information | |
|---|---|
| Name of Applicant: | Andersen LLP |
| Authorized to Provide Services to: | Debtors and Debtors in Possession |
| Petition Date: | February 28, 2023 |
| Date of Order Authorizing the Debtors to Retain Andersen [Docket No. 2779]: | June 8, 2023, effective as of February 13, 2023 |

| Summary of Fees and Expenses Sought in the Fee Application | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | February 13, 2023, through November 9, 2023 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: | Reduced fees by $0 and expenses by $0[3] |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $291,327.34 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $0 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $291,327.34 |

---

[3]    K&E voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

| *Rate Increases Applicable to the Fee Period* | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $291,327.34 |

| *Summary of Past Requests for Compensation and Prior Payments* | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $227,721.15 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $227,721.15 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Allowed Compensation Paid to Date: | $227,721.15 |
| Total Allowed Expenses Paid to Date: | $0 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $63,606.19 |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0 |

Andersen LLP
Date:  January 19, 2024

/s/ *Zoe Wyatt*

Andersen LLP
2 George Yard
London, EC3V 9DH
United Kingdom

*UK Tax Services Provider for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[4] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### SIXTH MONTHLY INTERIM AND FINAL FEE APPLICATION OF ANDERSEN LLP, AS UK TAX SERVICES PROVIDER FOR THE DEBTORS AND DEBTORS IN POSSESSION FOR THE (I) INTERIM FEE PERIOD FROM NOVEMBER 1, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023 AND THE (II) FINAL FEE PERIOD FROM FEBRUARY 13, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023

Andersen LLP (together, "Andersen"), as UK tax advisors for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its sixth interim fee application and final fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $63,606.19 and reimbursement of actual and necessary expenses in the amount of $0 that Andersen incurred for the period from February 13, 2023 through November 9, 2023 (the "Fee Period"). In support of this Fee Application, Andersen submits the declaration of Zoe Wyatt, a partner of Andersen (the "Wyatt Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, Andersen respectfully states as follows.

---

[4]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), and the *Amended Orders (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 1745 and 2779] (collectively, the "Amended Interim Compensation Orders").

**Background**

4.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.   Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.   Headquartered in Hoboken, New Jersey, Celsius

has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

5.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration").[5]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53 & 1648].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 29, 2022, the Court entered an order approving the appointment of Shoba Pillay, as examiner (the "Examiner") [Docket No. 923].  On April 4, 2023, the Court entered an order discharging the Examiner [Docket No. 2364].  On October 20, 2022, the Court entered an order appointing Judge Christopher S. Sontchi as fee examiner (the "Fee Examiner") [Docket No. 1151].

---

[5]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

7.      On December 19, 2022, and June 8, 2023, the Court entered the Amended Interim Compensation Orders, which set forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

## Preliminary Statement

8.      During the Fee Period, Andersen represented the Debtors professionally and diligently, advising them on a variety of complex tax matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties in interest.

## Case Status Summary

9.      Andersen has been engaged to provide tax services for the Debtors.

## The Debtors' Retention of Andersen

10.     On June 6, 2023, the Court entered the *Order (I) Authorizing the Retention and Employment of Andersen LLP as UK Tax Services Provider Effective as of February 28, 2023, and (II) Granting Related Relief* [Docket No. 2755], (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.  The Retention Order authorizes the Debtors to compensate and reimburse Andersen in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order.  The Retention Order also authorizes the Debtors to compensate Andersen at Andersen's hourly rates charged for services of this type and to reimburse Andersen for Andersen's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.  The particular terms of Andersen's engagement are detailed in the engagement letter by and between Andersen and the Debtors, effective as of June 6, 2023 and attached hereto as **Exhibit C** (the "Engagement Letter").

11.     The Retention Order authorizes Andersen to provide the following services consistent with and in furtherance of the services enumerated above:

a.   advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

b.   preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

c.   appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

d.   performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

### Disinterestedness of Andersen

12.   To the best of the Debtors' knowledge and as disclosed in the *Declaration of Andersen in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Andersen as UK Tax Services Provider for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 2755] (the "Wyatt Declaration"), (a) Andersen is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Andersen has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Wyatt Declaration.

13.   Andersen may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  In the Wyatt Declaration, Andersen disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.

14.   Andersen performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

15.   Except to the extent of the advance payments paid to Andersen that Andersen

5

previously disclosed to this Court in the Wyatt Declaration, Andersen has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

16.     Pursuant to Bankruptcy Rule 2016(b), Andersen has not shared, nor has Andersen agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Andersen or (b) any compensation another person or party has received or may receive.

17.     Andersen seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $6,675.90 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $0. During the Fee Period, Andersen professionals expended a total of 5.75 hours for which compensation is requested.

18.     In accordance with the Interim Compensation Order, as of the date hereof, Andersen has received payments totaling $227,721.15 ($227,72115 of which was for services provided and $0 of which was for reimbursement of expenses) for the Fee Period.  Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Andersen seeks payment of the remaining $63,606.19, which amount represents the entire amount of unpaid fees and expenses incurred between February 13, 2023 and November 9, 2023.[6]

19.     Andersen seeks final allowance and approval of compensation for professional services rendered to the Debtors during the Fee Period in the aggregate amount of $291,327.34 and reimbursement of actual expenses incurred in connection with such services in the aggregate

---

[6]    This amount also reflects the 20% holdback for the Fee Period.

amount of $0, for a total allowance of $291,327.34 for fees and expenses incurred.  To date, Andersen has received total payment of $227,721.15 for legal services rendered to the Debtors and $0 for related expenses during the Fee Period pursuant to the Interim Compensation Order.

### Fees and Expenses Incurred During Fee Period

**A.**      **Customary Billing Disclosures**.

20.      Andersen's hourly rates are set at a level designed to compensate Andersen fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Andersen in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Andersen for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructuring and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.

**B.**      **Fees Incurred During Fee Period**.

21.      In the ordinary course of Andersen's practice, Andersen maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each professional for whose work on these chapter 11 cases compensation is sought;

- the aggregate time expended and fees billed by e each professional during the Fee Period;

-  the hourly billing rate for each professional at Andersen's current billing rates;

- the hourly billing rate for each professional as disclosed in the first interim

7

application;

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Andersen LLP as UK Tax Services Provider Effective for the Debtors and Debtors in Possession Effective as of February 28, 2023* [Docket No. 2066] (the "Retention Application").

**C.    Expenses Incurred During Fee Period**.

22.    In the ordinary course of Andersen's practice, Andersen maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  Andersen currently charges $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Andersen charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Andersen does not charge its clients for incoming facsimile transmissions.

23.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which Andersen is seeking reimbursement.

**Summary of Legal Services Rendered During the Fee Period**

24.    As discussed above, during the Fee Period, Andersen provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

25.    To provide a meaningful summary of Andersen's services provided on behalf of the Debtors and their estates, Andersen has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these

chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[7]

| Matter Number | Matter Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 1 | Accounts | 111.17 | 108,462.96 |
| 2 | Ad Hoc | 35.17 | 35,345.58 |
| 3 | Ad Hoc - Odette Settlement | 26.75 | 23,704.25 |
| 4 | Administrative | 11.58 | 10,820.79 |
| 5 | General | 53.07 | 52,166.19 |
| 6 | VAT Return | 47.16 | 49,903.33 |

26.     The following is a summary, by Matter Category, of the most significant professional services provided by Andersen during the Fee Period.  This summary is organized in accordance with Andersen's internal system of matter numbers.   The detailed descriptions demonstrate that Andersen was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.  A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Andersen partners, associates and professionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit D**.

27.     In addition, Andersen's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit E**.

(a)     **Accounts**

Total Fees: $108,462.96
Total Hours 111.17

28.     This Matter Category includes time spent by Andersen professionals providing services related to the preparation and completion of Corporation Tax Returns for 2021 onward.

---

[7]     In certain instances, K&E may have billed the same amount of fees, but different number of hours to different Matter Categories.  This difference is the result of different staffing of each such Matter Category.

Specifically, Andersen's professionals spent time:

      (i)     discussing the accounts with Debtors;

      (ii)    drafting a tax return;

    **(b)**    **Ad Hoc**

      Total Fees:   $35,345.58
      Total Hours:  35.17

29.    This Matter Category includes time spent by Andersen professionals providing services related to completion of additional works not included within the original Statement of Work.

    **(c)**    **Ad Hoc (Odette Settlement)**

      Total Fees:   $23,704.25
      Total Hours:  26.75

30.    This Matter Category includes time spent by Andersen professionals assessing issues related to the completion of additional works not included within the original Statement of Work. Specifically in relation to the Odette settlement.

    **(d)**    **Administrative**

      Total Fees:   $10,820.79
      Total Hours:  11.58

31.    This Matter Category includes time spent by Andersen professionals assessing issues related to the Activities in relation to Chapter 11 including review of court submissions and necessary documents.

    **(e)**    **General**

      Total Fees:   $52,166.19
      Total Hours:  53.07

32.    This Matter Category includes time spent by Andersen professionals assessing issues related to the Debtors' environmental liabilities. Specifically, Andersen attorneys and paraprofessionals spent time related to weekly catch-up calls and other such activity.

**(f)**    **VAT return**

Total Fees:    $49903.33
Total Hours:   47.16

33.    This Matter Category includes time spent by Andersen professionals providing services related to the filing of the VAT return.

### Actual and Necessary Expenses Incurred by Andersen

1.    Andersen has incurred a total of $0 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Andersen's direct operating costs, which are not incorporated into the Andersen hourly billing rates.

### Reasonable and Necessary Services Provided by Andersen

**A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

2.    The foregoing professional services provided by Andersen on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

3.    Many of the services performed by partners and associates of Andersen were provided by Andersen's Tax consultancy.  Andersen has a prominent practice in this area and enjoys a national and international reputation for its expertise in taxation.

4.    In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Andersen's tax groups were heavily involved with Andersen's representation of the Debtors. These practice groups also enjoy a national and international reputation for their expertise. Overall, Andersen brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

5.      The time constraints imposed by the circumstances of these chapter 11 cases required Andersen employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, and as further disclosed in the Retention Application, Andersen employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Andersen's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

6.      In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties in interest in relation to Andersen's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Andersen's overhead for the purpose of setting billing rates and Andersen has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

7.      Among other things, Andersen makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, Andersen regularly reviews its bills to ensure that the Debtors are only billed for

services that were actual and necessary and, where appropriate, prorates expenses.  In that regard, Andersen will waive certain fees and reduce its expenses if necessary.  In the Fee Period, Andersen voluntarily reduced its fees by Andersen and expenses by Andersen.  Consequently, Andersen does not seek payment of such fees or reimbursement of such expenses in the Fee Application.

### **Andersen's Requested Compensation and Reimbursement Should be Allowed**

8.      Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (e)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (f)    whether the compensation is reasonable based on the customary compensation charged by

> comparably skilled practitioners in cases other than
> cases under this title.

11 U.S.C. § 330(a)(3).

9.      Andersen respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  Andersen further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents.  Andersen further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

10.      During the Fee Period, Andersen's hourly billing rates for professional ranged from $863 to $1168.  The hourly rates and corresponding rate structure utilized by Andersen in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Andersen for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  Andersen strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

11.      Moreover, Andersen's hourly rates are set at a level designed to compensate Andersen fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other

conditions and are consistent with the rates charged elsewhere.

12.    In sum, Andersen respectfully submits that the professional services provided by Andersen on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Andersen the nature and extent of Andersen's services provided, the value of Andersen's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, Andersen respectfully submits that approval of the compensation sought herein is warranted and should be approved.

13.    No previous application for the relief sought herein has been made to this or any other Court.

## Reservation of Rights and Notice

14.    It is possible that some professional time expended, or expenses incurred, during the Fee Period are not reflected in the Fee Application.  Andersen reserves the right to include such amounts in future fee applications.   In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002; (c) counsel to the Committee; (collectively, the "Notice Parties").

## No Prior Request

15.    No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, Andersen respectfully requests that the Court enter an order (a) awarding Andersen interim compensation for professional and paraprofessional services provided during (i) the Sixth Interim Fee Period in the amount of $6,675.90, and reimbursement of actual, reasonable and necessary expenses incurred in the Sixth Interim Fee Period in the amount of $0, and (ii) during the Fee Period in the amount of $56,930.29, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $0; (b) authorizing and directing the Debtors to remit payment to $63,606.19 for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Andersen LLP
Date:  January 19, 2024

/s/ *Zoe Wyatt*
Andersen LLP
2 George Yard
London, EC3V 9DH
United Kingdom

UK Tax Services Provider for the Debtors
and Debtors in Possession

## Exhibit A

**Wyatt Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | )    Case No. 22-10964 (MG) |
| | ) |
|            Debtors. | )    (Jointly Administered) |
| | ) |

**DECLARATION OF**
**ANDERSEN LLP IN SUPPORT OF THE**
**INTERIM AND FINAL FEE APPLICATION**
**OF ANDERSEN LLP, AS UK TAX SERVICES**
**PROVIDER FOR THE DEBTORS AND DEBTORS**
**IN POSSESSION FOR THE (I) INTERIM FEE PERIOD**
**FROM FEBURARY 13, 2023 THROUGH AND INCLUDING**
**NOVEMBER 9, 2023, AND THE (II) FINAL FEE PERIOD FROM**
**FEBRUARY 13, 2023 THROUGH AND INCLUDING NOVEMBER 9, 2023**

I, Zoe Wyatt being duly sworn, state the following under penalty of perjury:

1.      I am a partner in the tax firm of Andersen LLP,[2] located at 2 George Yard, London.

2.      I have read the foregoing interim fee application of Andersen as UK Tax Services

Provider for the Debtors, for the Fee Period (the "Fee Application").  To the best of my knowledge,

information and belief, the statements contained in the Fee Application are true and correct.

3.      In connection therewith, I hereby certify that:

      a)      to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Fee Application.

Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b)      except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by Andersen and generally accepted by Andersen's clients.  In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of the Debtors' case;

c)      in providing a reimbursable expense, Andersen does not make a profit on that expense, whether the service is performed by Andersen in-house or through a third party;

d)      in accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 504, no agreement or understanding exists between Andersen and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; and

e)      all services for which compensation is sought were professional services on behalf of the Debtors and not on behalf of any other person.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Andersen LLP
Date:  January 19, 2024

/s/ *Zoe Wyatt*
Andersen LLP
2 George Yard
London, EC3V 9DH
United Kingdom

UK Tax Services Provider for the Debtors
and Debtors in Possession

**Exhibit B**

**Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

## ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF ANDERSEN LLP AS UK TAX SERVICES PROVIDER EFFECTIVE AS OF FEBRUARY 28, 2023, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing Celsius Network Limited (the "UK Debtor") to retain and employ Andersen ("Andersen"), as the UK Debtor's UK tax services provider, effective as of February 28, 2023, in accordance with the terms and conditions set forth in the Engagement Letter and Statement of Work, copies of which are attached as **Exhibit 1** and **Exhibit 2** hereto, respectively, and (b) granting related relief, all as more fully set forth in the Application; and upon the Wyatt Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that Andersen does not hold or represent an adverse interest to the Debtors or their estates and is disinterested under 11 U.S.C. § 101(14); and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014, and Local Rule 2014-1, the UK Debtor is authorized to employ and retain Andersen effective as of February 28, 2023, in accordance with the terms and conditions set forth in the Application, Engagement Letter, and Statement of Work, as modified by this Order.

3.      Andersen shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, this Order, and any other applicable orders of this Court.

4.      The terms of the Engagement Letter and the Statement of Work, including without limitation, the compensation provisions and the Terms of Business, are reasonable terms and conditions of employment and are hereby approved.

5.      Consistent with, and subject to, the terms of the Engagement Letter and Statement of Work and this Order, Andersen is hereby authorized to perform the Services provided for in the Engagement Letter and the Statement of Work.

6.      Andersen is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

7.      Andersen shall file monthly, interim, and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the Engagement Letter and Statement of Work.  Andersen shall keep reasonably detailed time records in one-tenth of an hour increments in accordance with the U.S. Trustee Guidelines and will submit, with any monthly fee statements, and interim and final fee applications, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by Andersen.

8.      Notwithstanding anything to the contrary in the Engagement Letter, the Statement of Work, or the Terms of Business, prior to any increases in Andersen's hourly rates pertaining to the UK Debtor, Andersen shall file a supplemental declaration with this Court, and provide ten business days' notice to the Debtors, the U.S. Trustee, any official committee, and the Fee Examiner.  The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Statement of Work, Andersen will not charge the Debtors' estates for time spent

preparing or reviewing any invoices or time records submitted in support of any fee application or monthly fee statement filed in these chapter 11 cases; *provided* that time spent on privilege analysis related to such fee applications or monthly fee statements may be compensable by the Debtors' estates; *provided*, *further* that Andersen shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of their fee applications in these chapter 11 cases.

10.    To the extent the Debtors and Andersen enter into any additional engagement letters or statements of work, the Debtors will file such engagement letters or statements of work with the Court and serve such engagement letters or statements of work upon the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If any party objects to the additional services to be provided by Andersen within fourteen days of such new engagement letters or statements of work being filed and served, the Debtors will promptly schedule a hearing before the Court.  All additional services will be subject to the provisions of this Order.  To the extent no related timely objections are filed, such additional engagement letters shall be deemed approved pursuant to this Order.

11.    Pursuant to the terms of the Engagement Letter and Statement of Work, Andersen is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter and Statement of Work, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any applicable orders of this Court; *provided* that Andersen may only seek reimbursement for services in connection with retention and fee application preparation.

12.    Notwithstanding anything in this Application, the Engagement Letter, or the Statement of Work to the contrary, (a) to the extent that Andersen uses the services of independent

contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, they shall pass through the cost of the Contractors to the UK Debtor at the same rate that they pay the Contractors and (b) seek reimbursement for actual costs only. Contractors from whom Andersen seeks to pass through fees on an hourly basis to the UK Debtor shall be subject to the same conflict checks as required for Andersen, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

13.     Andersen will review its files periodically during the pendency of these chapter 11 cases to determine whether any disqualifying conflicts or other circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Andersen will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

14.     Notwithstanding anything to the contrary in the Engagement Letter, any applications filed by Andersen for allowance of its compensation and expenses will be denominated in United States dollars.

15.     Andersen shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

16.     Such services other than set forth in the Application that the UK Debtor may request that Andersen provide during the course of these chapter 11 cases, and as agreed to by Andersen, shall be subject to separate application and order of this Court.

17.     The Debtors and Andersen are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

18.     Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order and Andersen's retention.

22.     To the extent that there is any inconsistency between the Engagement Letter, the Statement of Work, the Application, the Wyatt Declaration, and this Order, the provisions of this Order shall apply.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  June 6, 2023
          New York, New York

_____**/s/ Martin Glenn**_____
MARTIN GLENN
Chief United States Bankruptcy Judge

**Exhibit 1**

**Engagement Letter**

DocuSign Envelope ID: 682B2525-93F4-4B22-84D7-764F535432/E5



**STRICTLY PRIVATE AND CONFIDENTIAL**

Lior Koren
Celsius Network Limited
The Harley Building,
77 - 79 New Cavendish Street
London
W1W 6XB
United Kingdom

Tuesday 28 February 2023

Our ref: LOE/CELSI01-INT-0002/ZW/DS

Dear Sirs

**Engagement letter**

Thank you for engaging us to provide Celsius Network Limited with tax services. I will be your main point of contact and will have overall responsibility for this engagement. This letter and the enclosed terms of business set out the basis on which we will act.

**Our services**

We will provide tax advisory and tax compliance services from time to time, as agreed by us in writing (e.g. in a statement of work 'SoW' or email).

We will respond to requests for assistance with your tax affairs made by you in meetings, over the telephone or in writing. Our deliverable may take the form of oral advice, or an email or a longer written communication to be agreed with you at the time.

Although Andersen LLP, within the scope of this engagement, will use its experience to help identify tax issues and opportunities, it will not be responsible for ensuring that all possible claims for tax refunds or other tax savings opportunities are brought to your attention and/or are timely made with the relevant taxing authorities. In addition, Andersen LLP will not be responsible for any tax controversy matters between you and any taxing authority, including identification of potential reportable transactions unless specifically engaged to do so.

**Who we are acting for**

The services are provided for the benefit of Celsius Network Limited.

**Commencement of engagement**

This engagement will start on the date we commence the provision of services, notwithstanding that this may be before the date this engagement letter is signed.

DocuSign Envelope ID: 68252525-93F4-4B22-84D7-7E4F635F422E

**Fees**

Our fees for tax compliance and advisory services will be calculated on a 'time spent' basis unless a fixed fee or alternative arrangements is agreed between us in advance of the work being performed.

We draw your attention to clause 7.7 in the attached terms of business which provides that our fees are subject to periodic review and we reserve the right to adjust our hourly charge out rates from time to time.

Our current hourly rates (excluding VAT, if applicable) are as follows:

| | |
|---|---|
| *Partner* | *£895 - £940* |
| *Technical Director* | *£820* |
| *Director* | *£695* |
| *Senior Manager* | *£610* |
| *Manager* | *£525* |
| *Senior Associate* | *£435* |
| *Associate* | *£290* |

For the work completed in this engagement, as detailed in the Statement of Work, a 15% discount will be applied to our current hourly rates.

We will provide a weekly WIP report on a Monday morning.

**Limitation of liability**

We draw your attention to clause 11 in the attached terms of business which amongst other things limit (i) our total liability for all claims will be £500,000 and (ii) the time limit for bringing any such claim.

By signing this letter, you agree that you have considered this limit and accept that it is reasonable in all the circumstances. If you do not wish to accept it, you should contact us to discuss it before signing the engagement letter.

**Data Protection**

The DPA 2018 and General Data Protection Regulation ('GDPR') set out a number of requirements in relation to the processing of personal data.

We attach our privacy notice setting out our approach to handling your information. By signing this letter, you will be indicating that you have read and agreed the terms under which we operate as set out in this notice.

**Term of services**

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.



DocuSign Envelope ID: 682B2E25-93E4-4B22-84D7-764E635C422F5

**Confirmation of acceptance**

Please confirm your agreement with the terms of this letter and the attached terms of business by signing a copy of this letter and returning it to me.

We look forward to working with you.

Yours sincerely,

**Zoe Wyatt**
*Partner*

For and on behalf of Andersen LLP

DocuSigned by:

*Chris Ferraro*

Chris Ferraro, Interim CEO

**For and on behalf of Celsius Network Limited**

**Exhibit 2**

**Statement of Work**

DocuSign Envelope ID: 68252525-93E4-4D37-B4D7-7E4E535432FE



**STRICTLY PRIVATE AND CONFIDENTIAL**

Lior Koren

Celsius Network Limited

The Harley Building,

77 - 79 New Cavendish Street

London

W1W 6XB

United Kingdom

Tuesday 28 February 2023

Our ref: LOE/CELSI01-INT-0002/ZW/DS

Dear Sirs

**Statement of Work ("SoW") for tax services**

This SoW is entered into pursuant to the Engagement Letter including Terms of Business between you ("Client") and Andersen LLP dated 28 February 2023 (the "Contract"). Unless otherwise indicated in this SoW, all terms of the Contract apply to the Services undertaken pursuant to this SoW.

**Our services**

We will assist with:

1. Handover process with Mazars
2. Review of expenses for the 2021 tax return
3. Completion and filing of Corporation Tax return for the accounting period ending 2021
4. Review and completion of the VAT registration process as commenced by Mazars
5. Ad hoc consultancy.

We will respond to requests for assistance with your tax affairs made by you in meetings, over the telephone or in writing. Our deliverable may take the form of oral advice, or an email or a longer written communication to be agreed with you at the time.

**Term of services**

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.

The tax advice will cover the UK only. Tax consequences in any other jurisdiction are not covered.

**Commencement of engagement**

This engagement will start on the date we commence the provision of services, notwithstanding that this may be before the date this engagement letter is signed.

DocuSign Envelope ID: 682B2E25-93E4-4B22-84D7-7E1F535A32E5

## Fees

Our fees for tax compliance and advisory services will be calculated on a 'time spent' basis unless a fixed fee or alternative arrangements is agreed between us in advance of the work being performed.

We draw your attention to clause 7.7 in the attached terms of business which provides that our fees are subject to periodic review and we reserve the right to adjust our hourly charge out rates from time to time.

Our current hourly rates (excluding VAT, if applicable) are as follows:

| | |
|---|---|
| *Partner* | *£895 - £940* |
| *Technical Director* | *£820* |
| *Director* | *£695* |
| *Senior Manager* | *£610* |
| *Manager* | *£525* |
| *Senior Associate* | *£435* |
| *Associate* | *£290* |

For the work completed in this engagement, as detailed in this Statement of Work, a 15% discount will be applied to our current hourly rates.

We will provide a weekly WIP report on a Monday morning.

## Term of services

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.

The tax advice will cover the UK only. Tax consequences in any other jurisdiction are not covered.

## Excluded services

The following is a nonexclusive list of services that will not be provided pursuant to this SoW:

- External and internal audit services
- Legal services
- Opinions on financial statements or any other attestation services
- Advice on tax matters that are not expressly part of the scope of work
- Implementation.

Although Andersen LLP, within the scope of this engagement, will use its experience to help identify tax issues and opportunities, it will not be responsible for ensuring that all possible claims for tax refunds or other tax savings opportunities are brought to Client's attention and/or are timely made with the relevant taxing authorities.

Andersen LLP will not be responsible for any tax controversy matters between Client and any taxing authority including identification of potential reportable transactions unless specifically engaged to do so.

DocuSign Envelope ID: 682B2E25-93E4-4B22-84D7-7E4F635F422/E5

**Confirmation of acceptance**

Please confirm your agreement with the terms of this SoW by signing a copy of this letter and returning it to me.

We look forward to working with you.

Yours sincerely,

**Zoe Wyatt**
*Partner*

For and on behalf of Andersen LLP

Chris Ferraro, Interim CEO

**For and on behalf of Celsius Network Limited**

**Exhibit C**

**Engagement Letter**

DocuSign Envelope ID: 682B2E25-93E4-4B23-81D7-764F635E422FE



**STRICTLY PRIVATE AND CONFIDENTIAL**

Lior Koren
Celsius Network Limited
The Harley Building,
77 - 79 New Cavendish Street
London
W1W 6XB
United Kingdom

Tuesday 28 February 2023

Our ref: LOE/CELSI01-INT-0002/ZW/DS

Dear Sirs

**Engagement letter**

Thank you for engaging us to provide Celsius Network Limited with tax services. I will be your main point of contact and will have overall responsibility for this engagement. This letter and the enclosed terms of business set out the basis on which we will act.

**Our services**

We will provide tax advisory and tax compliance services from time to time, as agreed by us in writing (e.g. in a statement of work 'SoW' or email).

We will respond to requests for assistance with your tax affairs made by you in meetings, over the telephone or in writing. Our deliverable may take the form of oral advice, or an email or a longer written communication to be agreed with you at the time.

Although Andersen LLP, within the scope of this engagement, will use its experience to help identify tax issues and opportunities, it will not be responsible for ensuring that all possible claims for tax refunds or other tax savings opportunities are brought to your attention and/or are timely made with the relevant taxing authorities. In addition, Andersen LLP will not be responsible for any tax controversy matters between you and any taxing authority, including identification of potential reportable transactions unless specifically engaged to do so.

**Who we are acting for**

The services are provided for the benefit of Celsius Network Limited.

**Commencement of engagement**

This engagement will start on the date we commence the provision of services, notwithstanding that this may be before the date this engagement letter is signed.

DocuSign Envelope ID: 682B2E25-93E4-4B23-B1D7-764E635E432AEE

**Fees**

Our fees for tax compliance and advisory services will be calculated on a 'time spent' basis unless a fixed fee or alternative arrangements is agreed between us in advance of the work being performed.

We draw your attention to clause 7.7 in the attached terms of business which provides that our fees are subject to periodic review and we reserve the right to adjust our hourly charge out rates from time to time.

Our current hourly rates (excluding VAT, if applicable) are as follows:

| | |
|---|---|
| *Partner* | *£895 - £940* |
| *Technical Director* | *£820* |
| *Director* | *£695* |
| *Senior Manager* | *£610* |
| *Manager* | *£525* |
| *Senior Associate* | *£435* |
| *Associate* | *£290* |

For the work completed in this engagement, as detailed in the Statement of Work, a 15% discount will be applied to our current hourly rates.

We will provide a weekly WIP report on a Monday morning.

**Limitation of liability**

We draw your attention to clause 11 in the attached terms of business which amongst other things limit (i) our total liability for all claims will be £500,000 and (ii) the time limit for bringing any such claim.

By signing this letter, you agree that you have considered this limit and accept that it is reasonable in all the circumstances. If you do not wish to accept it, you should contact us to discuss it before signing the engagement letter.

**Data Protection**

The DPA 2018 and General Data Protection Regulation ('GDPR') set out a number of requirements in relation to the processing of personal data.

We attach our privacy notice setting out our approach to handling your information. By signing this letter, you will be indicating that you have read and agreed the terms under which we operate as set out in this notice.

**Term of services**

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.



DocuSign Envelope ID: 682B2E25-93E4-4B23-91D7-764E63E422FE

**Confirmation of acceptance**

Please confirm your agreement with the terms of this letter and the attached terms of business by signing a copy of this letter and returning it to me.

We look forward to working with you.

Yours sincerely,

**Zoe Wyatt**
*Partner*

For and on behalf of Andersen LLP

DocuSigned by:

*Chris Ferraro*

1315E92CCA0F408

Chris Ferraro, Interim CEO

**For and on behalf of Celsius Network Limited**

DocuSign Envelope ID: 682B2E25-93E4-4B23-81D7-764E63E422AE



**STRICTLY PRIVATE AND CONFIDENTIAL**

Lior Koren

Celsius Network Limited

The Harley Building,

77 - 79 New Cavendish Street

London

W1W 6XB

United Kingdom

Tuesday 28 February 2023

Our ref: LOE/CELSI01-INT-0002/ZW/DS

Dear Sirs

**Statement of Work ("SoW") for tax services**

This SoW is entered into pursuant to the Engagement Letter including Terms of Business between you ("Client") and Andersen LLP dated 28 February 2023 (the "Contract"). Unless otherwise indicated in this SoW, all terms of the Contract apply to the Services undertaken pursuant to this SoW.

**Our services**

We will assist with:

1. Handover process with Mazars
2. Review of expenses for the 2021 tax return
3. Completion and filing of Corporation Tax return for the accounting period ending 2021
4. Review and completion of the VAT registration process as commenced by Mazars
5. Ad hoc consultancy.

We will respond to requests for assistance with your tax affairs made by you in meetings, over the telephone or in writing. Our deliverable may take the form of oral advice, or an email or a longer written communication to be agreed with you at the time.

**Term of services**

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.

The tax advice will cover the UK only. Tax consequences in any other jurisdiction are not covered.

**Commencement of engagement**

This engagement will start on the date we commence the provision of services, notwithstanding that this may be before the date this engagement letter is signed.

DocuSign Envelope ID: 682B2525-93E4-4B23-B1D7-764F635F422FE

**Fees**

Our fees for tax compliance and advisory services will be calculated on a 'time spent' basis unless a fixed fee or alternative arrangements is agreed between us in advance of the work being performed.

We draw your attention to clause 7.7 in the attached terms of business which provides that our fees are subject to periodic review and we reserve the right to adjust our hourly charge out rates from time to time.

Our current hourly rates (excluding VAT, if applicable) are as follows:

| | |
|---|---|
| *Partner* | *£895 - £940* |
| *Technical Director* | *£820* |
| *Director* | *£695* |
| *Senior Manager* | *£610* |
| *Manager* | *£525* |
| *Senior Associate* | *£435* |
| *Associate* | *£290* |

For the work completed in this engagement, as detailed in this Statement of Work, a 15% discount will be applied to our current hourly rates.

We will provide a weekly WIP report on a Monday morning.

**Term of services**

This engagement will continue until completion of the Services, unless terminated earlier in accordance with clause 13 of our Terms of Business.

The tax advice will cover the UK only. Tax consequences in any other jurisdiction are not covered.

**Excluded services**

The following is a nonexclusive list of services that will not be provided pursuant to this SoW:

- External and internal audit services
- Legal services
- Opinions on financial statements or any other attestation services
- Advice on tax matters that are not expressly part of the scope of work
- Implementation.

Although Andersen LLP, within the scope of this engagement, will use its experience to help identify tax issues and opportunities, it will not be responsible for ensuring that all possible claims for tax refunds or other tax savings opportunities are brought to Client's attention and/or are timely made with the relevant taxing authorities.

Andersen LLP will not be responsible for any tax controversy matters between Client and any taxing authority including identification of potential reportable transactions unless specifically engaged to do so.



DocuSign Envelope ID: 682B2F25-93F4-4D23-81D7-764F635422FE

**Confirmation of acceptance**

Please confirm your agreement with the terms of this SoW by signing a copy of this letter and returning it to me.

We look forward to working with you.

Yours sincerely,

**Zoe Wyatt**
*Partner*

For and on behalf of Andersen LLP

Chris Ferraro, Interim CEO

**For and on behalf of Celsius Network Limited**

**ANDERSEN LLP - TERMS OF BUSINESS (September 2022)**

Thank you for engaging Andersen LLP in relation to your taxation affairs. In the interests of proceeding on the basis of a clear agreement at the outset, please review these terms carefully, together with the accompanying engagement letter. If you have any questions or disagree with any of the terms, please contact us immediately.

**1.      Andersen LLP**

1.1.    Andersen LLP is a limited liability partnership registered in England and Wales, with registered number OC421079.

1.2.    Andersen LLP is the UK member firm of Andersen Global, a Swiss verein ("AG") comprised of an association of independent member firms located throughout the world providing services and which are listed at andersen.com (each, a "Member Firm").

**2.      Our contract with you**

2.1.    Our relationship with you is governed by these terms of business, our engagement letter and any accompanying schedules. In the event of any conflict between the engagement letter and these terms of business, the provisions of clause 28.3 should apply.

2.2.    Together, these documents constitute our contract, which will apply retrospectively to any previous discussions and correspondence between you and us. This is the case even if you do not sign and return a copy of our engagement letter.

**3.      Tax advisory services**

3.1.    Andersen will provide tax advice from time to time on matters to be agreed between us in writing, for example in a written 'Statement of Work'

3.2.    You will issue us with a separate written instruction in relation to each matter unless we have specifically agreed in writing to provide advice on an ongoing basis under a general retainer.

3.3.    We shall have no obligation to advise on any matter unless we have been instructed to do so and have notified you of our acceptance of the instruction.

3.4.    Our work for you on each matter will be deemed concluded when we have provided you with our written advice and we shall have no obligation to subsequently update the advice.

3.5.    Any changes to our services will be effective only when agreed by both parties in writing.

3.6.    In the event that we have performed no work on your behalf on any matter for 12 consecutive months, you agree that our contract with you will have been terminated.

**4.      Tax compliance services**

4.1.    We will be responsible for preparing tax returns only if we have confirmed our agreement in writing to do so, with specific reference to the tax returns we will be responsible for.

4.2.    You are legally responsible for ensuring that your tax return is complete and correct. It is therefore very important that you understand and agree the content of the tax returns before they are submitted.

4.3.    To enable us to carry out our work you agree that all returns are to be made on the basis of full disclosure of all sources of income, charges, allowances and capital transactions. You will provide all information necessary for dealing with your affairs, including details of any claims or elections you have made in previous years which may impact on returns for the tax years for which we are responsible. We will rely on the information and documents being true, correct and complete, and will not audit the information or those documents. If you are reporting transactions relating to cryptoassets we will not be responsible for inputting the relevant data and we will rely on the information that you provide from software providers or personal calculations that use the correct calculation methods that you have checked to ensure that the reports are correct and reflect the transactions that you have carried out. We have a preferred software partner and we will provide details when required but we do not give any warranty or representation as to their services. If we provide you with a tax questionnaire and you do not complete it, then it is nevertheless important that you review the questionnaire so that you are aware of the information required which may impact your tax return.

4.4.    You will provide us with information within the timeframe requested by us so that your tax return can be completed and submitted by the due date.

4.5.    You will keep us informed of material changes in your circumstances that could affect your tax liability. If you are unsure whether the change is material or not, please let us know so that we can assess its significance.

**5.      Your responsibilities**

5.1.    You agree to fully cooperate with us in the matters we are handling for you and to provide all information that is known or available to you which is relevant to those matters.

5.2.    We rely on the accuracy and completeness of the information provided by you and any third parties acting on your behalf. This means that you need to make us aware of your personal deadlines and expectations, and provide us with documents, information and instructions promptly when we require them.

5.3.    You agree that where we make an assessment for you of the likely level of risk associated with different potential courses of action, it is a matter solely for you whether that risk is acceptable to you and whether that course of action is appropriate for you in all the circumstances and taking account of every factor in that decision.

DocuSign Envelope ID: 682B2F25-93F4-4D23-81D7-76AF635A321E

5.4.    We conduct our business and give our advice in the English language. Where you provide documents information in a foreign language, it is your responsibility to provide translations. It is your responsibility to ensure that you are able to understand our communications and our advice, including where English is not your native language. If we provide or facilitate a translation of our service and any other language, then the English version will prevail in the event of any inconsistency.

5.5.    We will not be liable for any loss arising as a result of you not fulfilling your obligations, for example your failure to provide information requested on a timely basis.

**6.    Reliance on advice**

6.1.    Advice given orally cannot be relied upon unless confirmed in writing.  This is because it is usually the case that we will need to fully review the relevant facts, undertake research and confer with colleagues in order to be sure that the advice is correct. Therefore, if we provide oral advice (for example, during the course of a meeting or a telephone conversation) and you wish to be able to rely on that advice, you must ask for the advice to be confirmed by us in writing.

**7.    Fees and payment terms**

7.1.    Our fees may depend not only upon the time spent on your affairs but also on the level of skill and responsibility, and the importance and value of the advice that we provide, as well as the level of risk.

7.2.    Where our fees are to be charged on a time spent basis, we will keep accurate records of the time spent in dealing with your work, including, but not limited to:- meetings, travelling (where that time cannot be usefully spent on work for others), reading; preparing, negotiating and working on documents; research; dealing with correspondence; making and receiving phone calls; attending court or other formal proceedings, including waiting time; preparing notes of meetings and telephone calls; and complying with professional rules and statutory requirements.

7.3.    If we provide you with an estimate of our fees for any specific work, then the estimate will not be contractually binding unless we explicitly state that that will be the case.

7.4.    We may agree to a fixed fee for a particular assignment.  The occurrence of (i) any event or transaction which materially affects the scope, manner, nature, or quantity of the services, or (ii) any change in the laws, rules, regulations that materially affects the scope, manner, nature, or quantity of the services shall be considered a change in the scope of services which may result in a revision to our fees. If at your request we perform services over and above the agreed scope of services, any additional fees will be charged on a time spent basis. Any fixed fee agreement will apply for no longer than one year.

7.5.    With respect to fixed fees for tax compliance services, some of the circumstances that may result in additional fees include incomplete tax information and/or tax questionnaire; significant or complex investment activity; issues that require significant tax research; sale of business property; and information that we were not made aware of before providing our fixed fee quote.

7.6.    If we provide a fixed or estimated fee for tax compliance work, this will not also include dealing with any subsequent enquiry by the tax authorities.

7.7.    Our fees are subject to periodic review and we reserve the right to adjust our hourly charge out rates from time to time.

7.8.    We bill in advance and/or on a monthly basis and our invoices are due for payment immediately on receipt. We reserve the right to charge interest at the rate of 8% above the Bank of England base rate under the Late Payment of Commercial Debts (Interest) Act 1998 on any bills which remain unpaid after 30 days. You agree to reimburse us for reasonable expenses that we incur in connection with the services.

7.9.    Our fees are exclusive of VAT, which will be added where it is chargeable. If our services are subject to VAT, you indemnify us for any interest, penalties or legal costs which we incur as a result of any incorrect information provided by you in relation to your VAT status.

7.10.   If you do not accept that an invoiced fee is fair and reasonable you must notify us within 21 days of receipt, failing which you will be deemed to have accepted that payment is due.

7.11.   You agree that the fees are exclusive of any withholding tax or other taxes and that, to the extent that any such taxes are applicable, you shall be liable for payment. All payments due shall be made without withholding or deduction on account of any taxes whatsoever.

**8.    Implementation**

8.1.    We will only assist with implementation of our advice if there has been prior written agreement between us.

**9.    Intellectual property rights**

9.1.    We will retain all copyright in any document prepared by us during the course of carrying out the engagement save where the law specifically provides otherwise. You will have a non-exclusive, non-transferable licence to use the deliverables for your own internal purposes.

**10.   Sub-contractors**

10.1.   We may subcontract work to Andersen Global Members and/or Collaborating firms (each of which is a separate and independent legal entity) or other subcontractors. We remain solely responsible for the services.

DocuSign Envelope ID: 6B2B2E25-93E4-4D22-81D7-76AE635432FE

**11.      Limitation of liability**

11.1.      We will provide our services with reasonable care and skill. Our liability to you is limited to losses, damages, costs and expenses directly caused by our negligence, fraud or wilful default. We can only limit our liability for loss or damage to the extent that the law allows. In particular, we cannot limit our liability for death or personal injury caused by our negligence.

*Limitation of third-party rights*

11.2.      You acknowledge that our service may have implications for you and other persons and entities connected with you (for example, affiliates, directors, partners and employees). We shall have no liability to such persons and entities.

11.3.      The advice and information we provide to you as part of our service is for your sole use and not for any third party to whom you may communicate it unless we have expressly agreed in the engagement letter or other document that a specified third party may rely on our work. We accept no responsibility to third parties, including any group company to whom the engagement letter is not addressed, for any advice, information or material produced as part of our work for you that you make available to them. A party to this agreement is the only person who has the right to enforce any of its terms and no rights or benefits are conferred on any third party under the Contracts (Rights of Third Parties) Act 1999.

*Exclusion of liability for loss caused by others*

11.4.      We will not be liable if such any losses, penalties, interest or additional tax liabilities are caused by the acts or omissions of any other person or due to the provision to us of incomplete, misleading or false information, or if they are caused by a failure to act on our advice or a failure to provide us with relevant information.

11.5.      In particular, where we refer you to another firm whom you engage with directly, we accept no responsibility in relation to their work and will not be liable for any loss caused by them.

*Exclusion of liability in relation to circumstances beyond our control*

11.6.      Neither party will be liable to the other for any delay or failure to perform its obligations under this engagement letter if the delay or failure is caused by circumstances outside our/your reasonable control.

*Exclusion of liability relating to non-disclosure or misrepresentation*

11.7.      We will not be responsible or liable for any loss, damage or expense incurred or sustained if information material to the service we are providing is withheld or concealed from us or misrepresented to us.

11.8.      This exclusion shall not apply where such misrepresentation, withholding or concealment is or should (in carrying out the procedures that we have agreed to perform with reasonable care and skill) have been evident to us without further enquiry beyond that which it would have been reasonable for us to have carried out in the circumstances.

*Events, developments or changes in circumstances subsequent to the provision of advice*

11.9.      There may be events, developments or changes in circumstances subsequent to the provision of our advice which may affect the continuing validity of our advice. You agree that we have no obligation to update our advice or to notify you of any such matter of which we have become or may become aware.

11.10.    We will not accept responsibility if you act on advice given by us on an earlier occasion without first confirming with us that the advice is still valid in the light of any change in the law or practice or in public policy or your circumstances.

*Indemnity for unauthorised disclosure*

11.11.    You agree to indemnify us and our agents in respect of any claim (including any claim for negligence) arising out of any unauthorised disclosure by you or by any person for whom you are responsible of our advice and opinions, whether in writing or otherwise. This indemnity will extend to the cost of defending any such claim, including payment at our usual rates for the time that we spend in defending it.

*Specific type of loss*

11.12.    You agree that we will not be liable for (i) loss or corruption of data from your systems, (ii) loss of profit, goodwill, business opportunity, anticipated savings or (iii) indirect or consequential loss.

*Limitation of our liability*

11.13.    You agree that our total liability (including interest) for all claims connected with the services or the agreement (including but not limited to negligence) is limited to £500,000.

11.14.    That sum shall be the maximum aggregate liability of Andersen LLP, its partners, agents and employees to all persons to whom the engagement letter is addressed and also any other person that we have agreed with you may rely on our work.

11.15.    You have agreed that you will not bring any claim of a kind that is included within the subject of the limit against any of our partners or employees on a personal basis.

*Limitation period*

11.16.    Any claims must be brought no later than 2 years after the date the claimant should have been aware of the potential claim and, in any event, no later than 4 years after any alleged breach.

DocuSign Envelope ID: 682B2E25-93E4-4D23-B1D7-76AE635432AE

*Services provided under engagements with other Andersen member firms*

These terms relate only to your contract with Andersen LLP. You agree not to bring any action against Andersen LLP with respect to services provided under a separate contract with other Andersen Global member, collaborating firms or other subcontractors.

**12.        Information, documents and materials**

12.1.        We will not audit any information or documents provided by you, neither will we attempt to detect or accept responsibility for detecting fraud or other wrongdoing.

12.2.        In performing our services, we will not be deemed to have knowledge of any information which has not been made available to us. In addition, we will not be deemed to have knowledge of any information held by other firms within the Andersen Global network.

**13.        Termination**

13.1.        Each of us may terminate this agreement by giving not less than 21 days' notice in writing to the other party, except where you fail to cooperate with us or we have reason to believe that you have provided us or HMRC with misleading information, in which case we may terminate this agreement immediately. Termination will be without prejudice to any rights that may have accrued to either of us prior to termination.

13.2.        In the event of termination of this contract, we will endeavour to agree with you the arrangements for the completion of work in progress at that time, unless we are required for legal or regulatory reasons to cease work immediately. In that event, we shall not be required to carry out further work and shall not be responsible or liable for any consequences arising from termination.

13.3.        If you engage us for a one-off piece of work (for example advice on a one-off transaction or preparation of a tax return for one year only) the engagement ceases as soon as that work is completed. The date of completion of the work is taken to be the termination date and we owe you no duties and we will not undertake further work beyond that date. Should you subsequently request additional services and should we agree to provide them, then those services will be subject to these terms of business.

13.4.        Where recurring work is provided (for example ongoing compliance work such as the completion of annual tax returns) the engagement ceases on the relevant date in relation to the termination as set out above. Unless immediate termination applies, in practice this means that the relevant termination date is 21 days after the date of notice of termination, or a later agreed date.

13.5.        We owe you no duties beyond the date of termination and will not undertake any further work.

13.6.        You agree that you will pay us for all services provided up to the date of termination.

13.7.        Under the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013 you may have the right to cancel this agreement within 14 days of signing our engagement letter without giving any reason. The cancellation period will expire after 14 days from the day of the conclusion of the contract, i.e. when we receive your written agreement to this engagement. To exercise the right to cancel, you must inform us of your decision to cancel this contract by a clear statement before the cancellation period has expired. We will reimburse to you any payments received with a deduction for fees in respect of any services already carried out during this period.

**14.        Client identification and verification**

14.1.        As with other professional services firms, we are required to identify and verify our clients for the purposes of the UK anti-money laundering legislation. We cannot start work until this requirement has been met. We may request from you, and retain, such information and documentation as we require for these purposes and/or make searches of appropriate databases including ID verification software.

**15.        Quality of services and dispute resolution**

15.1.        We are committed to providing you with a high-quality service that is both efficient and effective. However, should there be any cause for complaint in relation to any aspect of our service, please contact the partner responsible for your services or Julian Nelberg. We agree to look into any complaint carefully and promptly and  do  everything reasonable to try and resolve it. If you are still not satisfied you can refer your complaint to our professional body, the CIOT.

15.2.        If a dispute arises then you agree that we will seek to resolve it by discussion, negotiation and mediation before commencing legal proceedings.

**16.        Confidentiality and data protection**

16.1.        We will respect the personal data we hold on you or, where you are a corporate body, the personal data of your principals, officers, employees or agents which you provide to us (with their consent where appropriate). We will keep such data on our systems and databases to enable us to provide taxation services to you, for administration and accounting purposes, and so that we can send relevant information on our services and on events that may be of interest from time to time.

16.2.        Personal data will be processed and kept securely in accordance with relevant data protection laws. We will not disclose personal data to third parties except for the purposes mentioned above at clause 10 above.

16.3.        We will keep any commercially sensitive information about your business and affairs confidential and will not disclose it to any other person except in certain circumstances including but not limited to: (a) with your consent; (b) for the purposes of sharing relevant information with your other professional advisers, which may also be outside the European Union or European Economic Area; (c) where disclosure is required by law or any regulatory authority;  (d)

DocuSign Envelope ID: 682B2525-93F4-4B22-B1D7-76AE635422FE

to the extent that such information enters, or has entered the public domain; or (e) to our auditors or other professional advisers in connection with the performance of their duties. Subject to these exceptions, our use of the information you provide to us is subject to your instructions, the Data Protection Act 2018 and our duty of confidentiality.

16.4.    We will also not use your confidential information for the advantage of our other clients. Likewise, you acknowledge that we will not use confidential information obtained from another client for your advantage, even if it is relevant to a matter. We have put in place adequate policies and procedures to ensure that where we share your information with subcontractors it is protected from disclosure to the same extent.

16.5.    If we are instructed by you and another person or entity to act for you jointly, then you acknowledge that we will be entitled to share confidential information between you and such other clients for the purposes of fulfilling that joint retainer. If the interests of our joint clients later diverge or we are otherwise told that we cannot share certain information in this way, we may have to terminate the joint retainer and consider whether we can continue to act for you or such other clients.

16.6.    Our professional indemnity insurance requires us to notify insurers of (a) claims (meaning a situation where you have brought a claim against us or where you have indicated that you intend to bring a claim against us) and (b) circumstances (meaning a situation where we consider that an error might have occurred on our part, but where you have not yet made a claim). It is in both your and our insurers' interests to be fully advised of such situations, as soon as possible and, to the extent necessary for such purposes, you permit us to disclose any confidential documentation to our insurers and/or insurance brokers.

16.7.    Inevitably, in the course of dealing with any matter on which you instruct us, we may need to provide some of your information to third parties and you agree that we have the authority to do so when reasonable and necessary. For example, if you authorise us to work with other professionals, we will assume that we may disclose any relevant aspect of your affairs to them. If we have any doubt as to whether you might object to the disclosure of any such information we will seek to obtain your consent before doing so.

16.8.    You agree that we may share non-confidential information, such as your name and details of the services provided;

    i.    with member and collaborating firms in the Andersen organisation, for the purposes of conflict and relationship checking.

    ii.    externally for the purposes of marketing our services.

16.9.    During the course of our representation, we may outsource and subcontract work and processes to external service providers such as Andersen Global member firms and other service providers, who may be located outside the European Economic Area. We will always agree confidentiality and data protection agreements with any third parties to which we outsource any activities. Please let us know if you require further information or would rather we did not outsource in relation to any particular information or documents which belong to you.

16.10.    You agree not to disclose our deliverables to anyone else or to make the benefit of our services available to anyone else, except with our prior agreement or where required by law or regulation to do so. Where such information is disclosed to third parties, this may be done only on the basis that you advise the third party that Andersen accepts no liability to them and no onward disclosure may be made.

16.11.    We are obliged to notify the UK tax authorities of certain types of arrangement which might secure a fiscal advantage and proposals to implement such arrangements. Our decision to make such a notification is a matter that we reserve entirely to our sole discretion. Where there are other current or future laws or regulations in any jurisdiction that require disclosure of our advice, we will also comply with those disclosure requirements. We shall not incur any responsibility or liability to you for any loss or damage or other adverse consequences that may result from any notification or disclosure made pursuant to this clause.

**17.    Conflicts of interest**

17.1.    We cannot act for you in relation to a matter if our duty to act in your best interest conflicts, or there is a significant risk that it will conflict, with our obligation to act in the best interests of one or more of our other clients in respect of the same or a related matter, unless we are permitted to do so by our professional rules.

17.2.    If a conflict of interest becomes apparent after we have agreed to act, we will notify you promptly but you acknowledge that there is a chance that we may be required to stop acting for you and may need to withhold information as to our reasons for doing so.

17.3.    You agree that we may act for other clients who operate in the same sector as you and whom you may regard as having interests which are adverse to your own, except where we are not permitted to do so by our professional rules.

**18.    Communication**

18.1.    The parties agree to the use of e-mail, voice mail and other electronic methods to transmit and receive information, including confidential information, between the parties and between Andersen and outside specialists or other entities engaged by either us or you. Andersen shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond our reasonable control

18.2.    Inherent in the nature of email is the possibility of impersonation. If you are in any doubt as to whether an email purporting to come from us is genuine, please contact the person named as the sender by another means.

18.3.    Any communication by us with you sent through the post is deemed to arrive at your postal address two working days after the day that the document was sent.

18.4.    You agree to keep us up to date with accurate contact details at all times.

DocuSign Envelope ID: 682B2E25-93E4-4B23-81D7-76AE635422FE

**19.    Electronic signature**

19.1.    The parties acknowledge and agree that this agreement may be electronically signed and that any electronic signatures appearing in this agreement shall be treated the same as handwritten signatures for all purposes, including validity, enforceability, and admissibility. Either party may copy this completed agreement for electronic storage in a non-editable format, at which time the paper form of this agreement may be destroyed

**20.    Internal disputes within a client**

20.1.    If we become aware of a dispute between the parties who own or are in some way involved in the ownership and management of a business client, it should be noted that where our client is the business, we would not provide information or services to one party without the express knowledge and permission of all parties. Unless otherwise agreed by all parties we will continue to supply information to the normal place of business for the attention of the directors/proprietors. If conflicting advice, information or instructions are received from different directors/principals in the business, we will refer the matter back to the board of directors/the partnership/the LLP and take no further action until the board/partnership/LLP has agreed the action to be taken.

**21.    Investment advice**

21.1.    Investment business is regulated under the Financial Services and Markets Act 2000. If, during the provision of professional services to you, you need advice on investments, including insurances, we may have to refer you to someone who is authorised by the Financial Conduct Authority or licensed by a designated professional body as we are not authorised to give such advice.

**22.    Regulated legal services**

22.1.    Our services are not regulated by the Solicitors Regulation Authority (SRA).

**23.    Legal privilege**

23.1.    You acknowledge that certain documents and other communications involving and/or disclosed to or by Andersen may be subject to one or more claims of privilege by or on your behalf. You are solely responsible for managing the recognition, establishment, maintenance, and/or waiver of these potential protections and for involving legal counsel as you deem necessary. In that regard, Andersen shall cooperate with your reasonable written instructions regarding same, unless prohibited by law. In all events, you agree that Andersen shall have no obligation to assert any claims of privilege on your behalf or to incur any legal expense defending against any demands of any party to produce Client documents or participate in any legal process.

**24.    Professional body rules**

24.1.    Andersen LLP adhere to the Chartered Institute of Taxation (CIOT)'s Professional Rules and Practice Guidelines,and Professional Conduct in Relation to Taxation. You can find a copy of these documents on the CIOT's website. We will observe and act in accordance with the by-laws, regulations and ethical guidelines of the CIOT and will accept instructions to act for you on this basis.

24.2.    You are responsible for bringing to our attention any errors, omissions or inaccuracies in your returns that you become aware of after the returns have been submitted in order that we may assist you to make a voluntary disclosure.

24.3.    In particular, you give us the authority to correct errors made by HMRC where we become aware of them. In addition, we will not undertake tax planning which breaches the CIOT rules on Professional Conduct in Relation to Taxation. We will therefore comply with the HMRC General Anti-Abuse Rule ('GAAR') and targeted anti-avoidance rules. We willnot be liable for any loss, damage or cost arising from our compliance with statutory or regulatory obligations. You can see copies of these requirements at our offices. The requirements are also available online at the CIOTwebsite.

24.4.    The implications of professional body membership as it relates to GDPR are set out in the privacy notice, which should be read alongside these standard terms and conditions of business.

**25.    Document storage and retention**

25.1.    We reserve the right to retain electronic copies of all materials relevant to our services (whether documents provided by you or advice provided by us), subject to applicable data protection laws.

25.2.    We will not release materials which belong to us, such as working papers, unless we have specifically agreed to do so.

25.3.    You have a legal responsibility to retain documents and records relevant to your tax affairs. We will return any original documents to you if requested. We reserve the right to destroy any of your documents that we have not been able to return to you after a period of six months unless other laws or regulations require otherwise.

**26.    Professional indemnity insurance**

26.1.    In accordance with our professional body rules, we are required to hold professional indemnity insurance. Details about the insurer and coverage can be requested from us.

**27.    Anti-money laundering**

27.1.    We are required by anti-money laundering legislation to undertake client due diligence on new clients and to monitor that due diligence on an ongoing basis.

27.2.    Anti-bribery and corruption legislation prohibits us from offering or giving, or from requesting or receiving, any form of financial or other benefit which is intended to induce a person to behave corruptly.

DocuSign Envelope ID: 682B2E25-93E4-4B23-81D7-76AE635432FE

27.3.   In certain circumstances, we may be required by law to disclose to the relevant authorities suspicions of money laundering or our knowledge of activities relating to persons to whom sanctions apply. We may not be permitted to inform you that we have made or are contemplating making such disclosures and, pending consent or permission to proceed from the authorities, we may be unable to take any further action on your behalf or may be required to cease acting for you.

27.4.   We do not accept any liability for any loss flowing directly or indirectly from our compliance with our duties (or our duties as we understand them) in respect of the matters outlined above.

**28.      Applicable law and interpretation**

28.1.   Our relationship with you will be governed by English law and the English courts shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this contract or our retainer on any matter (including a dispute relating to any non-contractual obligations).

28.2.   If any provision of this engagement letter or terms is held to be void, then that provision will be deemed not to form part of this contract and the remainder of this agreement shall be interpreted as if such provision had never been inserted.

28.3.   In the event of any conflict between these standard terms and conditions and the engagement letter or schedules of services, the relevant provision in the engagement letter or schedules will take precedence.

DocuSign Envelope ID: 682B52F25-93F4-4B22-81D7-76AE6F5422FE



**PRIVACY NOTICE**

March 2022

**Introduction**

The Data Protection Act 2018 ("DPA 2018") and the General Data Protection Regulation ("GDPR") impose certain legal obligations in connection with the processing of personal data.

Andersen LLP is a data controller within the meaning of the GDPR and we process personal data. The firm's contact details are as follows:

Andersen LLP
80 Coleman Street, London, EC2R 5BJ
Data protection contact: Jamie Richbell

We may amend this privacy notice from time to time. If we do so, we will supply you with and/or otherwise make available to you a copy of the amended privacy notice.

Where we act as a data processor on behalf of a data controller (for example, when processing payroll), we provide an additional schedule setting out required information as part of that agreement. That additional schedule should be read in conjunction with this privacy notice.

**The purposes for which we intend to process personal data**

We intend to process personal data for the following purposes:

- To enable us to supply professional services to you as our client.
- To fulfil our obligations under relevant laws in force from time to time (e.g. the Money Laundering, Terrorist Financing and Transfer of Funds (Information on the Payer) Regulations 2017 ("MLR 2017")).
- To comply with professional obligations to which we are subject as a members i.e. ICAEW, Chartered Institute of Taxation, Association of Taxation Technicians, etc.
- To use in the investigation and/or defence of potential complaints, disciplinary proceedings and legal proceedings.
- To enable us to invoice you for our services and investigate/address any attendant fee disputes that may have arisen.
- To contact you about other services we provide which may be of interest to you if you have consented to us doing so.

**The legal bases for our intended processing of personal data**

Our intended processing of personal data has the following legal bases:

- At the time you instructed us to act, you gave consent to our processing your personal data for the purposes listed above.
- The processing is necessary for the performance of our contract with you.
- The processing is necessary for compliance with legal obligations to which we are subject (e.g. MLR 2017).
- The processing is necessary for the purposes of legitimate interests which we pursue (e.g. investigating/defending legal claims.

It is a requirement of our contract with you that you provide us with the personal data that we request. If you do not provide the information that we request, we may not be able to provide professional services to you. If this is the case, we will not be able to commence acting or will need to cease to act.

**Persons/organisations to whom we may give personal data**

We may share your personal data with:

- HMRC and/or Internal Revenue Service
- any third parties with whom you require or permit us to correspond
- subcontractors
- an alternate appointed by us in the event of incapacity or death
- tax insurance providers

80 Coleman Street  London EC2R 5BJ  United Kingdom  |  t +44 (0)20 7242 5000  f +44 (0)20 7282 4337
Andersen LLP is a limited liability partnership registered in England with registration number OC421079.
Registered office: 80 Coleman Street, London, England, EC2R 5BJ  |  VAT No: 306 1036 53     **uk.Andersen.com**



DocuSign Envelope ID: 682B2525-93E4-4B22-81D7-76AE6F5422FE

- professional indemnity insurers
- our professional bodies (e.g. ICAEW, Chartered Institute of Taxation, Association of Taxation Technicians) and/or the Office of Professional Body Anti-Money Laundering Supervisors (OPBAS) in relation to practice assurance and/or the requirements of MLR 2017 (or any similar legislation)
- Identity verification partners (to satisfy 'Know Your Client' compliance obligations under MLR 2017 (or any similar legislation)

If the law allows or requires us to do so, we may share your personal data with:

- the police and law enforcement agencies
- courts and tribunals
- the Information Commissioner's Office ("ICO")

We may need to share your personal data with the third parties identified above in order to comply with our legal obligations, including our legal obligations to you.  If you ask us not to share your personal data with such third parties we may need to cease to act.

**Retention of personal data**

When acting as a data controller and in accordance with recognised good practice within the tax and accountancy sector we will retain all of our records relating to you as follows:

- where tax returns have been prepared it is our policy to retain information for 7 years from the end of the tax year to which the information relates.
- where ad hoc advisory work has been undertaken it is our policy to retain information for 5 years from the date the business relationship ceased.
- where we have an ongoing client relationship, data which is needed for more than one year's tax compliance (e.g. capital gains base costs and claims and elections submitted to HMRC) is retained throughout the period of the relationship, but will be deleted 7 years after the end of the business relationship unless you as our client ask us to retain it for a longer period.

Our contractual terms provide for the destruction of documents after 7 years and therefore agreement to the contractual terms is taken as agreement to the retention of records for this period, and to their destruction thereafter.

You are responsible for retaining information that we send to you (including details of capital gains base costs and claims and elections submitted) and this will be supplied in the form agreed between us. Documents and records relevant to your tax affairs are required by law to be retained by you as follows:

*Individuals, trustees and partnerships*

- with trading or rental income: five years and 10 months after the end of the tax year;
- otherwise: 22 months after the end of the tax year.

*Companies, LLPs and other corporate entities*

- six years from the end of the accounting period.

Where there is information relating to overseas income or gains, the time period that HMRC have to raise an assessment has been extended to 12 years. We would therefore recommend that where relevant, documentation relating to overseas income and gains is retained for the later of 12 years after the end of the tax year and the date any HMRC enquiry is finalised.

Where there is an ongoing HMRC enquiry into a relevant tax year, then any information relating to the income or gains under review should be retained until the enquiry is concluded. This would cover relevant information for all tax years that are still open to be assessed at the time the enquiry commences and is not restricted to the relevant tax year under review. We are happy to provide further guidance where appropriate.

Where we act as a data processor as defined in DPA 2018, we will delete or return all personal data to the data controller as agreed with the controller at the termination of the contract.



DocuSign Envelope ID: 682B52F25-93E4-4B22-81D7-76AE67E4221E

**Requesting personal data we hold about you (subject access requests)**

You have a right to request access to your personal data that we hold. Such requests are known as 'subject access requests' ("SARs").Please provide all SARs in writing marked for the attention of Jamie Richbell.

To help us provide the information you want and deal with your request more quickly, you should include enough details to enable us to verify your identity and locate the relevant information. For example, you should tell us:

- your date of birth
- previous or other name(s) you have used
- your previous addresses in the past five years
- personal reference number(s) that we may have given you, for example your national insurance number, your tax reference number or your VAT registration number
- what type of information you want to know

If you do not have a national insurance number, you must send a copy of:

- the photograph identity page of your passport or a copy of your driving licence; and
- a recent (dated within 3 months) utility bill.

DPA 2018 requires that we comply with a SAR promptly and in any event within one month of receipt. There are, however, some circumstances in which the law allows us to refuse to provide access to personal data in response to a SAR (e.g. if you have previously made a similar request and there has been little or no change to the data since we complied with the original request).

We will not charge you for dealing with a SAR.

You can ask someone else to request information on your behalf – for example, a friend, relative or solicitor. We must have your authority to respond to a SAR made on your behalf. You can provide such authority by signing a letter which states that you authorise the person concerned to write to us for information about you, and/or receive our reply.

Where you are a data controller and we act for you as a data processor (e.g. by processing payroll), we will assist you with SARs on the same basis as is set out above.

**Putting things right (the right to rectification)**

You have a right to obtain the rectification of any inaccurate personal data concerning you that we hold. You also have a right to have any incomplete personal data that we hold about you completed. Should you become aware that any personal data that we hold about you is inaccurate and/or incomplete, please inform us immediately so we can correct and/or complete it.

**Deleting your records (the right to erasure)**

In certain circumstances you have a right to have the personal data that we hold about you erased. Further information is available on the ICO website (www.ico.org.uk).  If you would like your personal data to be erased, please inform us immediately and we will consider your request.  In certain circumstances we have the right to refuse to comply with a request for erasure. If applicable, we will supply you with the reasons for refusing your request.

**The right to restrict processing and the right to object**

In certain circumstances you have the right to 'block' or suppress the processing of personal data or to object to the processing of that information.  Further information is available on the ICO website (www.ico.org.uk).  Please inform us immediately if you want us to cease to process your information or you object to processing so that we can consider what action, if any, is appropriate.



DocuSign Envelope ID: 682B52E25-93E4-4B22-81D7-76AE6F5432FE

**Obtaining and reusing personal data (the right to data portability)**

In certain circumstances you have the right to be provided with the personal data that we hold about you in a machine-readable format, e.g. so that the data can easily be provided to a new professional adviser. Further information is available on the ICO website ([www.ico.org.uk](www.ico.org.uk)).

The right to data portability only applies:

- to personal data an individual has provided to a controller;
- where the processing is based on the individual's consent or for the performance of a contract; and
- when processing is carried out by automated means

We will respond to any data portability requests made to us without undue delay and within one month.  We may extend the period by a further two months where the request is complex or a number of requests are received but we will inform you within one month of the receipt of the request and explain why the extension is necessary.

**Withdrawal of consent**

Where you have consented to our processing of your personal data, you have the right to withdraw that consent at any time. Please inform us immediately if you wish to withdraw your consent.

Please note:

- the withdrawal of consent does not affect the lawfulness of earlier processing
- if you withdraw your consent, we may not be able to continue to provide services to you
- even if you withdraw your consent, it may remain lawful for us to process your data on another legal basis (e.g. because we have a legal obligation to continue to process your data.

**Automated decision-making**

We do not intend to use automated decision-making in relation to your personal data.

**Complaints**

If you have requested details of the information we hold about you and you are not happy with our response, or you think we have not complied with the GDPR or DPA 2018 in some other way, you can complain to us. Please send any complaints to Jamie Richbell.

If you are not happy with our response, you have a right to lodge a complaint with the ICO ([www.ico.org.uk](www.ico.org.uk)).

Our ICO registration number is ZA435926



**Exhibit D**

SUMMARY OF TOTAL FEES
BY PROFESSIONAL FOR ANDERSEN LLP
FEBRUARY 13, 2023 THROUGH NOVEMBER 9, 2023

| Professional | Title | Hours | Rate | Total Requested Fees ($) |
|---|---|---|---|---|
| Zoe Wyatt | Engagement Partner and Head of Crypto & Digital Assets | 54.83 | 1168.00 | **63,863.44** |
| Sarah Shears | VAT Partner | 52.49 | 1112.00 | **58,153.88** |
| Dion Seymour | Crypto Technical Director | 116.74 | 863.00 | **100,272.49** |
| Huw Griffiths | Director - Corporate Tax | 56.83 | 863.00 | **48,711.79** |
| James Paull | Head of incentives | 2.25 | 1112.00 | **2,502** |
| Jonathan Nehard | Head of accounting | 5.25 | 758.00 | **3,979.50** |
| Kevin Hindley | Partner | 2.5 | 1168.00 | **2,920** |
| **TOTAL** | | 290.89 | | **280,403.10** |
| *Less 15% Discount* | | | | **(42,060.47)** |
| **SUB TOTAL** | | | | **238,342.64** |
| **VAT** | | | | **52,984.71** |
| **TOTAL** | | | | **291,327.34** |

SUMMARY OF TOTAL FEES
BY TASK CATEGORY FOR ANDERSEN LLP
FEBRUARY 13, 2023 THROUGH NOVEMBER 9, 2023

| Task | Description | Total Hours | Total Requested Fees ($) |
|---|---|---|---|
| Accounts | Preparation and completion of Corporation Tax Returns for 2021 onward | 117.17 | **108,462.96** |
| Ad hoc | Completion of additional works not included within the original Statement of Work | 35.16 | **35,345.58** |
| Ad hoc – Odette settlement | Necessary work in relation to the Odette settlement | **26.75** | **23,704.25** |
| Administrative | Activities in relation to Chapter 11 including review of court submissions and necessary documents | 11.58 | **10,820.79** |
| General | Time related to weekly catch-up calls and other such activity | 53.06 | **52,166.19** |
| VAT Return | Review and completion of VAT registration process and filing of VAT returns | 47.16 | **49,903.33** |
| SUB TOTAL | | 290.89 | **280,403.10** |
| *Less 15% Discount* | | | **(42,060.47)** |
| **SUB TOTAL** | | | **238,342.64** |
| **VAT** | | | **52,984.71** |
| **TOTAL** | | | **291,327.34** |

6

## Exhibit E

**Detailed Description of Services Provided**

SUMMARY OF TOTAL FEES BY PROFESSIONAL AND
BY TASK CATEGORY FOR ANDERSEN LLP
FEBRUARY 13, 2023 THROUGH NOVEMBER 9, 2023

| Professional | Task | Hours | Total Requested Fees ($) |
|---|---|---|---|
| Dion Seymour | Accounts | 49.67 | 42532.71 |
| | Ad Hoc | 12.41 | 10715.58 |
| | Ad Hoc - Odette Settlement | 17.25 | 14886.75 |
| | Administrative | 8.33 | 7177.29 |
| | General | 19.67 | 16905.83 |
| | VAT Return | 9.41 | 8054.33 |
| Huw Griffiths | Accounts | 40.75 | 34901.25 |
| | Ad Hoc | 6 | 5178 |
| | Administrative | 0.5 | 431.5 |
| | General | 9.58 | 8201.04 |
| Sarah Shears | Accounts | 2.25 | 2502 |
| | Ad Hoc | 2 | 2224 |
| | General | 10.49 | 11578.88 |
| | VAT Return | 37.75 | 41849 |
| Jonathan Nehard | Ad Hoc - Odette Settlement | 5.25 | 3979.5 |
| James Paull | Ad Hoc - Odette Settlement | 2.25 | 2502 |
| Kevin Hindley | Accounts | 0.5 | 584 |
| | Ad Hoc | 2 | 2336 |
| Zoe Wyatt | Accounts | 24 | 27943 |
| | Ad Hoc | 12.75 | 14892 |
| | Ad Hoc - Odette Settlement | 2 | 2336 |
| | Administrative | 2.75 | 3212 |
| | General | 13.33 | 15480.44 |
| **SUB TOTAL** | | 290.89 | 280,403.10 |
| *Less 15% Discount* | | | (42,060.47) |
| SUB TOTAL | | | 238,342.64 |
| VAT | | | 52,984.71 |
| **TOTAL** | | | 291,327.34 |

DETAIL OF TOTAL FEES BY PROFESSIONAL AND
BY TASK CATEGORY FOR ANDERSEN LLP
FEBRUARY 13, 2023 THROUGH NOVEMBER 9, 2023

| Date | Name | Task | Description | Hours | Rate ($) | Sum of Fees ($) |
|------|------|------|-------------|-------|----------|-----------------|
| 13/02/23 | Zoe Wyatt | General | Kick off call | 0.5 | 1168 | 584 |
| 14/02/23 | Dion Seymour | General | Celsius weekly tax call with EY, Kirkland and Celsius tax teams | 1 | 863 | 863 |
| 20/02/23 | Zoe Wyatt | General | Call with Lior, Moshe, Aswan, Dion and Huw to go through granular info on 2020 accounts. Plus update on restructure and Bitwave data. | 0.75 | 1168 | 876 |
| 21/02/23 | Dion Seymour | General | Celsius weekly tax call with EY, Kirkland and Celsius tax teams | 1 | 863 | 863 |
| 21/02/23 | Zoe Wyatt | General | Internal call, call with Celsius UK team, read through the Ch 11 restructure | 3 | 1168 | 3504 |
| 23/02/23 | Dion Seymour | General | Meeting with client transition kick off to cover the extant issues including the engagement going forward | 1 | 863 | 863 |
| 23/02/23 | Zoe Wyatt | General | Prep for and call with Mazars and Celsius team | 1.5 | 1168 | 1752 |
| 27/02/23 | Sarah Shears | VAT Return | Pre-meeting prep (review of Mazaar's docs and VAT issues) and mtg with Zoe. Dion and Huw re: VAT. | 1.25 | 1112 | 1390 |
| 28/02/23 | Dion Seymour | General | Celsius weekly tax call with EY, Kirkland and Celsius tax teams | 1 | 863 | 863 |
| 02/03/23 | Huw Griffiths | Accounts | Meeting with Mazars to handover corporation tax role | 1 | 863 | 863 |
| 06/03/23 | Zoe Wyatt | Accounts | Call with Huw and Dion ahead of weekly catch up to discuss progress and next steps | 0.5 | 1168 | 584 |
| 07/03/23 | Huw Griffiths | Accounts | Intro call to understand matter and run through information received | 1.5 | 863 | 1294.5 |
| 07/03/23 | Dion Seymour | Accounts | Meeting at request of client to provide update on progress | 0.5 | 863 | 431.5 |
| 10/03/23 | Dion Seymour | Accounts | Review of progress with Partner. Considered position on 2022 accounts and the previous views from counsel on trade/investment and VAT opinion | 0.5 | 863 | 431.5 |
| 13/03/23 | Zoe Wyatt | Accounts | Brainstorm session with Huw and Dion | 1 | 1168 | 1168 |
| 13/03/23 | Dion Seymour | Accounts | Call with Huw Griffith to consider the information provided to date and prepare email for call with Celsius to gather further information. Further consideration on the filing position for 2020 to be refilled from investment to trade. | 1.5 | 863 | 1294.5 |
| 13/03/23 | Huw Griffiths | Accounts | Celsius - internal discussion with separation re source information and destination in the statutory accounts to determine potential impact on FY20 position | 1 | 863 | 863 |
| 13/03/23 | Sarah Shears | VAT Return | Discussions with Dion re: Celsius and review of file | 0.75 | 1112 | 834 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 14/03/23 | Dion Seymour | VAT Return | Call with VAT partner to provide update on discussions in relation to Celsius and meeting with Mazars | 0.5 | 863 | 431.5 |
| 14/03/23 | Zoe Wyatt | General | Celsius weekly call | 0.5 | 1168 | 584 |
| 14/03/23 | Dion Seymour | General | Celsius weekly tax call with EY, Kirkland and Andersen | 0.5 | 863 | 431.5 |
| 14/03/23 | Sarah Shears | VAT Return | Review docs, meeting with client and post meeting with Dion | 1.75 | 1112 | 1946 |
| 14/03/23 | Huw Griffiths | Accounts | Reworking FY20 position | 1.5 | 863 | 1294.5 |
| 14/03/23 | Huw Griffiths | General | Weekly call | 1 | 863 | 863 |
| 15/03/23 | Dion Seymour | Accounts | Review of previous opinions and update of case | 2 | 863 | 1726 |
| 17/03/23 | Sarah Shears | VAT Return | Review of Counsel notes and e-mail Ola | 1.25 | 1112 | 1390 |
| 20/03/23 | Huw Griffiths | Accounts | Call with client to understand information flow from TB to submitted FY20 tax computation and statutiry accounts | 1 | 863 | 863 |
| 20/03/23 | Dion Seymour | Accounts | Call with Lior and Aswan at Celsius to discuss accounting treatment and records | 1 | 863 | 863 |
| 20/03/23 | Zoe Wyatt | Accounts | Internal call with Dion and Huw for a status update on 1) review of 2020 filing position and conversion to trading position, 2) VAT registration and 3) additional information requested on restructure | 0.5 | 1168 | 584 |
| 20/03/23 | Dion Seymour | Accounts | Internal call with Huw to discuss accounting treatment for the 2020 accounts and furhter update with partner on progress | 1 | 863 | 863 |
| 21/03/23 | Sarah Shears | VAT Return | Ring Ola re: VAT reg | 0.25 | 1112 | 278 |
| 21/03/23 | Zoe Wyatt | General | Weekly call (time rounded down) | 0.5 | 1168 | 584 |
| 21/03/23 | Dion Seymour | General | Weekly tax call with Kirkland, EY and Celsius | 0.5 | 863 | 431.5 |
| 23/03/23 | Dion Seymour | Accounts | Review of information provided during week from email from Eric Sapir on 23 March | 1 | 863 | 863 |
| 23/03/23 | Sarah Shears | VAT Return | Telcon Ola at Mazaars re: VAT | 0.75 | 1112 | 834 |
| 24/03/23 | Dion Seymour | VAT Return | Call with VAT partner to discuss VAT registration issues and liability considerations | 0.5 | 863 | 431.5 |
| 24/03/23 | Sarah Shears | VAT Return | Update Dion re: VAT issues | 0.75 | 1112 | 834 |
| 27/03/23 | Huw Griffiths | Accounts | Call to run through current balance sheets to determine assets to be transferred in settlement of the intercompany liability due from Celsius Network Limited to Celsius US | 1 | 863 | 863 |
| 27/03/23 | Dion Seymour | Accounts | Call with Celsius to discuss UK entity assets and liabilities. Call lasted 45 minutes with call with the partner for 15 minutes. | 1 | 863 | 863 |
| 27/03/23 | Zoe Wyatt | General | Call with Lior, Dion, Huw and Kirkland - 45 mins. Follow-up discussion with Dion - 15 mins. | 1 | 1168 | 1168 |
| 28/03/23 | Dion Seymour | General | Celsius weekly tax call and additional time for next steps | 1.5 | 863 | 1294.5 |
| 28/03/23 | Sarah Shears | VAT Return | E-mails re: VAT reg | 0.25 | 1112 | 278 |
| 28/03/23 | Huw Griffiths | Accounts | Review 2020 accounting information to determine mapping between TB and stat accounts | 0.25 | 863 | 215.75 |
| 28/03/23 | Sarah Shears | General | Update call | 1 | 1112 | 1112 |

| Date | Name | Category | Description | | | |
|------|------|----------|-------------|---|---|---|
| 29/03/23 | Zoe Wyatt | Accounts | 1) Call with Dion re Anthony at Kirkland's emails on base cost and history of inter-co loan and associated UK tax consequences 2) Review Dion's draft emails. 3) Draft email to Anthony re UK tax consequences if there had been no inter-co. [Total time 55 mins, rounded down to 45 mins]. | 0.75 | 1168 | 876 |
| 31/03/23 | Dion Seymour | Accounts | Review of previous position for the tax liability calculations undertaken by Mazar with consideration on the appraoch to be taken for the settlement of intercompany debt | 2.5 | 863 | 2157.5 |
| 03/04/23 | Zoe Wyatt | Ad Hoc | Call with Dion re steps to take before we can determine tax consequence of asset transfer - ahead of call with Celsius & Kirkland on the same. [Actual time 25 mins, rounded down to 15 mins]. | 0.25 | 1168 | 292 |
| 03/04/23 | Zoe Wyatt | Accounts | Call with Kirkland, Lior and Dion re base cost information, wrapper BTC and tax on transfer of assets / matching with movement on inter-company liability | 0.5 | 1168 | 584 |
| 03/04/23 | Dion Seymour | Accounts | Discussion with Lior Koren (CUK) and Anthony Sexton (Kirkland) on the UK tax implications | 0.75 | 863 | 647.25 |
| 03/04/23 | Dion Seymour | Accounts | Discussion with Partner on the progress of work for CEL prior to call | 0.5 | 863 | 431.5 |
| 04/04/23 | Dion Seymour | Accounts | Meeting with Lior Koren to discuss the details for the tax return for the year ending 2021 including any further information required. | 0.5 | 863 | 431.5 |
| 04/04/23 | Sarah Shears | General | Weekly call | 0.25 | 1112 | 278 |
| 04/04/23 | Huw Griffiths | General | Weekly tax call | 0.5 | 863 | 431.5 |
| 05/04/23 | Zoe Wyatt | Administrative | Call with Kirkland re retention letter | 0.5 | 1168 | 584 |
| 05/04/23 | Zoe Wyatt | Administrative | Call with Kirkland re retention letter | 0.5 | 1168 | 584 |
| 05/04/23 | Zoe Wyatt | Administrative | Call with Kirkland re retention letter | 0.5 | 1168 | 584 |
| 05/04/23 | Zoe Wyatt | Administrative | Call with Kirkland re retention letter | 0.5 | 1168 | 584 |
| 05/04/23 | Huw Griffiths | Accounts | Celsius - reviewing FY21 transactions | 1.5 | 863 | 1294.5 |
| 05/04/23 | Zoe Wyatt | Accounts | Further call with Huw and Dion | 0.5 | 1168 | 584 |
| 05/04/23 | Zoe Wyatt | Accounts | Internal call with Huw and Dion | 0.5 | 1168 | 584 |
| 05/04/23 | Dion Seymour | Administrative | meeting with Kirkland to discuss further required information to complete retention process | 0.5 | 863 | 431.5 |
| 05/04/23 | Dion Seymour | Accounts | Meeting with Partner and CT Director to discuss current matters and route forward | 0.5 | 863 | 431.5 |
| 05/04/23 | Zoe Wyatt | Accounts | Third call with Huw and Dion | 0.5 | 1168 | 584 |
| 06/04/23 | Huw Griffiths | Accounts | Re-drafting FY20 and draft FY21 comps | 2 | 863 | 1726 |
| 12/04/23 | Huw Griffiths | Accounts | Discuss Celsius draft tax numbers | 1 | 863 | 863 |
| 12/04/23 | Dion Seymour | Accounts | Review and discussion of CEL draft 2021 tax return | 1 | 863 | 863 |
| 13/04/23 | Huw Griffiths | Accounts | Call with Lior Koren and Aswan Seetharaman to discuss FY21 tax numbers | 1 | 863 | 863 |
| 13/04/23 | Dion Seymour | General | Celsius weekly tax call with Kirkland | 0.5 | 863 | 431.5 |
| 13/04/23 | Huw Griffiths | Accounts | Client call re FY21 numbers | 0.75 | 863 | 647.25 |
| 13/04/23 | Dion Seymour | Accounts | Discussion with Lior to update on progress and clarification of aspects of the 2021 financial statements | 1 | 863 | 863 |
| 13/04/23 | Sarah Shears | General | Weekly call | 0.5 | 1112 | 556 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 18/04/23 | Sarah Shears | VAT Return | Client update call | 0.5 | 1112 | 556 |
| 18/04/23 | Sarah Shears | VAT Return | Review of Counsel's opinion | 1.5 | 1112 | 1668 |
| 18/04/23 | Huw Griffiths | General | Weekly call | 0.5 | 863 | 431.5 |
| 18/04/23 | Dion Seymour | General | Weekly tax call with Celsius and Kirkland | 0.5 | 863 | 431.5 |
| 20/04/23 | Sarah Shears | VAT Return | 1.5 hours - review Counsel's opinion. Discuss way forward with Dion 2.5 hours - finalising review of Counsel's opinion, review of David Rabbi opinion, review of 2 x Mazaars advice and consideration of penalty position. | 4 | 1112 | 4448 |
| 20/04/23 | Dion Seymour | Accounts | Meeting with Partners Kevin and Zoe and CT director to discuss current position on the return | 1 | 863 | 863 |
| 20/04/23 | Dion Seymour | VAT Return | Meeting with VAT partner to consider outstanding VAT matters | 0.5 | 863 | 431.5 |
| 20/04/23 | Dion Seymour | Accounts | Review of tax return prior to meeting with Partners | 0.5 | 863 | 431.5 |
| 21/04/23 | Dion Seymour | VAT Return | Review of counsel opinion and consideration on the tax position for Celsius in light of the advice | 2 | 863 | 1726 |
| 24/04/23 | Sarah Shears | VAT Return | Drafting a note summarising the historic position and providing Andersen high level view re: position and way forward. Including review and internal discussions re: penalty position and recalculating relevant penalties under current penalty regime. | 2.25 | 1112 | 2502 |
| 24/04/23 | Sarah Shears | VAT Return | Preparation of VAT reg forms | 1.25 | 1112 | 1390 |
| 25/04/23 | Dion Seymour | Accounts | Writing of tax memo to Lior Koren to set out the route forward with the YE 2021 tax return | 1 | 863 | 863 |
| 26/04/23 | Sarah Shears | VAT Return | E-mail Lior re: VAT reg info and discuss with Dion | 0.5 | 1112 | 556 |
| 26/04/23 | Huw Griffiths | Accounts | Rerunning FY20-FY21 on alternative basis | 1.5 | 863 | 1294.5 |
| 26/04/23 | Dion Seymour | VAT Return | Review of email from VAT partner and view on next steps | 0.5 | 863 | 431.5 |
| 27/04/23 | Dion Seymour | Ad Hoc - Odette Settlement | Celsius weekly tax call with Kirkland | 0.5 | 863 | 431.5 |
| 27/04/23 | Zoe Wyatt | General | Weekly call | 0.25 | 1168 | 292 |
| 02/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Drafting of formal note for partner review relating to the Odette settlement | 2 | 863 | 1726 |
| 02/05/23 | James Paull | Ad Hoc - Odette Settlement | Question on payroll withholding for settlement payment and review/amend written advice | 0.75 | 1112 | 834 |
| 02/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Review of email from Lior Koren on Odette settlement and consideration of next steps for Celsius to declare payroll liability to HMRC | 1 | 863 | 863 |
| 02/05/23 | Sarah Shears | VAT Return | Review supporting docs for VAT return | 0.25 | 1112 | 278 |
| 03/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Discussions with James Paull on the Odette settlement including admin aspects, finalisation of note. | 4 | 863 | 3452 |
| 03/05/23 | James Paull | Ad Hoc - Odette Settlement | Discussions with Dion Seymour re Odette settlement | 0.75 | 1112 | 834 |
| 03/05/23 | Sarah Shears | VAT Return | VAT reg discussions | 0.25 | 1112 | 278 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 04/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Discussion with Lior on progress for Odette settlement | 0.25 | 863 | 215.75 |
| 05/05/23 | James Paull | Ad Hoc - Odette Settlement | Call with Dion re PAYE withholding | 0.25 | 1112 | 278 |
| 05/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Review of request from Lior at Celsius for Andersen to complete the payroll for Odette Settlement. Time includes discussion with Incentives Partner (James Paull), discussions with private client tax team members (responsible for private client payroll) and Crypto Partner (Zoe Wyatt).  Email sent to Lior to confirm additional information required to process the request | 4 | 863 | 3452 |
| 05/05/23 | Zoe Wyatt | Ad Hoc - Odette Settlement | Calls with Dion re Odette settlement for partner update and oversight | 1 | 1168 | 1168 |
| 09/05/23 | Dion Seymour | Accounts | Email to Lior, email to Zoe Wyatt | 0.5 | 863 | 431.5 |
| 09/05/23 | Zoe Wyatt | Ad Hoc - Odette Settlement | Call with Dion Seymour and Jon Nehard re Odette | 0.5 | 1168 | 584 |
| 09/05/23 | Jonathan Nehard | Ad Hoc - Odette Settlement | Call with Dion and Zoe and then client re settlement payment | 1 | 758 | 758 |
| 09/05/23 | James Paull | Ad Hoc - Odette Settlement | Review Dion e-mail, call to discuss with DS/JH, review appropriate comp basis, consider pension implications in light of the terms of the settlement | 0.5 | 1112 | 556 |
| 09/05/23 | Dion Seymour | Accounts | Review of emails from Celsius and email reply to Lior confirming Andersen can process the payroll payment requesting further information. Consider pension implications. Call with Lior | 2.5 | 863 | 2157.5 |
| 09/05/23 | Dion Seymour | General | Weekly Client / Lawyer Update Call | 0.25 | 863 | 215.75 |
| 09/05/23 | Zoe Wyatt | General | Weekly Client / Lawyer Update Call | 0.25 | 1168 | 292 |
| 09/05/23 | Sarah Shears | VAT Return | Weekly Client / Lawyer Update Call | 0.25 | 1112 | 278 |
| 09/05/23 | Sarah Shears | VAT Return | VAT reg info | 0.25 | 1112 | 278 |
| 10/05/23 | Jonathan Nehard | Ad Hoc - Odette Settlement | Follow up call with Lior | 0.5 | 758 | 379 |
| 10/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Internal discussions with Jon and James on the position of the Odette settlement | 2 | 863 | 1726 |
| 10/05/23 | Jonathan Nehard | Ad Hoc - Odette Settlement | Calls with Dion and James re Odette | 2 | 758 | 1516 |
| 10/05/23 | Dion Seymour | Ad Hoc - Odette Settlement | Redrafting and finalisation of Odette note for Celsius following partner, Zoe Wyatt review | 2 | 863 | 1726 |
| 10/05/23 | Zoe Wyatt | Ad Hoc - Odette Settlement | Review and edit Odette note | 0.5 | 1168 | 584 |
| 11/05/23 | Jonathan Nehard | Ad Hoc - Odette Settlement | Completion of computations | 1 | 758 | 758 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/05/23 | Dion Seymour | General | Email to Lior confirming previous email details | 0.5 | 863 | 431.5 |
| 15/05/23 | Sarah Shears | VAT Return | VAT registration follow ups | 0.25 | 1112 | 278 |
| 23/05/23 | Sarah Shears | General | Weekly Client / Lawyer Update Call | 0.5 | 1112 | 556 |
| 23/05/23 | Dion Seymour | General | Weekly Client / Lawyer Update Call | 0.5 | 863 | 431.5 |
| 23/05/23 | Dion Seymour | General | Call with Zoe Wyatt to provide summary of update call | 0.25 | 863 | 215.75 |
| 23/05/23 | Zoe Wyatt | General | Progress call with Dion Seymour | 0.25 | 1168 | 292 |
| 30/05/23 | Zoe Wyatt | General | Weekly Client / Lawyer Update Call | 0.5 | 1168 | 584 |
| 30/05/23 | Sarah Shears | General | Weekly Client / Lawyer Update Call | 0.5 | 1112 | 556 |
| 30/05/23 | Dion Seymour | General | Weekly Client / Lawyer Update Call | 0.5 | 863 | 431.5 |
| 06/06/23 | Jonathan Nehard | Ad Hoc - Odette Settlement | Celsius payroll meeting and preparation call with Dion | 0.75 | 758 | 568.5 |
| 06/06/23 | Dion Seymour | Ad Hoc - Odette Settlement | Celsius Payroll meeting, call with Jon Nehard | 0.75 | 863 | 647.25 |
| 12/06/23 | Huw Griffiths | Accounts | Revise FY21 provision following receipt of new accounts | 2 | 863 | 1726 |
| 13/06/23 | Huw Griffiths | Accounts | Celsius new version of provisions | 1.5 | 863 | 1294.5 |
| 13/06/23 | Sarah Shears | VAT Return | VAT registration application including various HMRC system issues | 0.75 | 1112 | 834 |
| 14/06/23 | Huw Griffiths | Accounts | Catch up with Dion on Fy21 updated provisions | 0.5 | 863 | 431.5 |
| 14/06/23 | Dion Seymour | Accounts | Call with Huw re FY21 updated provisions followed by email to Celsius to confirm further information required. | 0.75 | 863 | 647.25 |
| 15/06/23 | Dion Seymour | Accounts | Call with Huw and confirmation to Celsius on production of computations | 0.25 | 863 | 215.75 |
| 19/06/23 | Sarah Shears | VAT Return | Redrafting VAT reg forms with UK details - additional HMRC questions re: UTR and dates of payment of PAYE and CT etc | 0.75 | 1112 | 834 |
| 19/06/23 | Dion Seymour | Administrative | Review of forms provided by Kirkland | 1 | 863 | 863 |
| 20/06/23 | Sarah Shears | VAT Return | 1 hour - VAT registration. 30 mins weekly call. Call with Dion. | 2 | 1112 | 2224 |
| 20/06/23 | Dion Seymour | VAT Return | Call with Sarah Shears in relation to VAT registration and completion of process + weekly call | 2 | 863 | 1726 |
| 20/06/23 | Dion Seymour | Administrative | Internal call with Partner and accounts team prior to call with Kirkland | 0.25 | 863 | 215.75 |
| 20/06/23 | Zoe Wyatt | Administrative | Review of docs from Kirkland, internal call ahead of call with Kirkland | 0.75 | 1168 | 876 |
| 21/06/23 | Zoe Wyatt | General | Call with Kirkland, review series B settlement info and email | 1.25 | 1168 | 1460 |
| 21/06/23 | Dion Seymour | Administrative | Invoicing call with Kirkland | 0.5 | 863 | 431.5 |
| 26/06/23 | Dion Seymour | Ad Hoc - Odette Settlement | Draft of email for Odette settlement to provide to HMRC | 0.75 | 863 | 647.25 |
| 26/06/23 | Dion Seymour | Accounts | Following email from Kirkland, a review with Huw Griffiths re the potential impact on the transfer of company assets Followed by a discussion with Zoe Wyatt | 1 | 863 | 863 |
| 26/06/23 | Huw Griffiths | Ad Hoc | Call with Dion re asset transfer | 0.5 | 863 | 431.5 |
| 26/06/23 | Huw Griffiths | Ad Hoc | Call with Huw re asset transfer | 0.5 | 863 | 431.5 |
| 26/06/23 | Zoe Wyatt | Ad Hoc | Series B debt restructure discussion | 0.5 | 1168 | 584 |
| 27/06/23 | Sarah Shears | VAT Return | VAT registration application amendments | 0.5 | 1112 | 556 |
| 28/06/23 | Zoe Wyatt | Accounts | Review letter to HMRC and call with Dion | 0.5 | 1168 | 584 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 28/06/23 | Dion Seymour | Accounts | Review of letter for HMRC from Lior and supplying further detials on process to make payment, call with Zoe Wyatt | 0.75 | 863 | 647.25 |
| 29/06/23 | Sarah Shears | General | Weekly update call | 0.5 | 1112 | 556 |
| 29/06/23 | Dion Seymour | General | Celsius weekly call | 0.5 | 863 | 431.5 |
| 29/06/23 | Huw Griffiths | Ad Hoc | Celsius weekly call and post-call discussion with DS re subcon and potential implications for Celsius Network | 1 | 863 | 863 |
| 29/06/23 | Dion Seymour | Ad Hoc | Discussion between Huw and Dion following weekly Celsius call on potential tax implications for a substantive construction. | 0.5 | 863 | 431.5 |
| 30/06/23 | Kevin Hindley | Ad Hoc | Catch up with ZW and reading through insolvency UNCITRAL provisions | 2 | 1168 | 2336 |
| 30/06/23 | Dion Seymour | Ad Hoc | Review of implications of a substantive consolidation from a cross border basis. Including review of bankrupcy regulations and any interaction with UK legislation several discussions with Zoe | 5 | 863 | 4315 |
| 30/06/23 | Zoe Wyatt | Ad Hoc | Several discussions with Dion and Kevin Hindley. Review cross border insolvency regs and supporting guidance. Review s136 UK tax code to assess whether tax relief available, review HMRC guidance. Write up analysis. Draft email to Anthony. | 7 | 1168 | 8176 |
| 07/07/23 | Zoe Wyatt | Ad Hoc | Call with Dion re Series B settlement, review and draft questions to Kirkland. Respond to Lior's email re fact pattern. | 0.75 | 1168 | 876.00 |
| 07/07/23 | Dion Seymour | Ad Hoc | Review of email from Kirkland regarding tax liability for the settlement fund and replies to Kirkland. Discussion with Zoe Wyatt on follow-up email to Anthony | 1.50 | 863 | 1,294.50 |
| 07/07/23 | Huw Griffiths | Ad Hoc | Series B Preferred settlement | 1.50 | 863 | 1,294.50 |
| 10/07/23 | Dion Seymour | Ad Hoc | Review of settlement agreement with consideration of tax deductibility of the amount being paid to settle the claim | 3.00 | 863 | 2,589.00 |
| 10/07/23 | Dion Seymour | VAT Return | Update with Sarah on progress of VAT matters | 0.50 | 863 | 431.50 |
| 10/07/23 | Sarah Shears | VAT Return | Call with Dion re VAT | 0.50 | 1112 | 556.00 |
| 11/07/23 | Dion Seymour | Accounts | Discussion with Huw following weekly call for next steps | 0.50 | 863 | 431.50 |
| 11/07/23 | Dion Seymour | Ad Hoc | Review of draft advice for Zoe Wyatt to consider, call with Zoe | 1.00 | 863 | 863.00 |
| 11/07/23 | Zoe Wyatt | Ad Hoc | Review settlement agreement, review of draft advice and call with Dion | 2.25 | 1168 | 2,628.00 |
| 11/07/23 | Huw Griffiths | General | Weekly call | 1.00 | 863 | 863.00 |
| 11/07/23 | Dion Seymour | General | Weekly catch-up call | 0.50 | 863 | 431.50 |
| 14/07/23 | Huw Griffiths | Ad Hoc | Case law and HMRC manual research re Series B memo, call with Zoe | 2.50 | 863 | 2,157.50 |
| 17/07/23 | Zoe Wyatt | Ad Hoc | Review Huw's case law note/summary on and discuss settlement agreement | 2.00 | 1168 | 2,336.00 |
| 18/07/23 | Sarah Shears | General | Weekly update call | 1.00 | 1112 | 1,112.00 |

| 18/07/23 | Huw Griffiths | Administrative | Weekly call | 0.50 | 863 | 431.50 |
| 19/07/23 | Dion Seymour | Accounts | Analysis of the WIP reports to export the necessary detail in format required by the Court | 1.00 | 863 | 863.00 |
| 19/07/23 | Huw Griffiths | Accounts | Call with Lior and Moshe re Bitwave, update call with Zoe Wyatt | 2.00 | 863 | 1,726.00 |
| 19/07/23 | Kevin Hindley | Accounts | Discussion on losses and trade loss carry backs with Huw Griffiths | 0.50 | 1168 | 584.00 |
| 19/07/23 | Dion Seymour | Administrative | Final review of the court documents and figures for the submission | 0.75 | 863 | 647.25 |
| 19/07/23 | Zoe Wyatt | Accounts | Review and discuss Bitwave schedule with Huw | 1.00 | 1168 | 1,168.00 |
| 21/07/23 | Dion Seymour | Administrative | Final submission of claim for the court for fees to Kirkland | 0.50 | 863 | 431.50 |
| 24/07/23 | Huw Griffiths | Accounts | Catch up with Dion re Celsius | 1.00 | 863 | 863.00 |
| 24/07/23 | Dion Seymour | Accounts | Discussion with Huw Griffiths on the report from Bitwave and impact on CT returns | 1.00 | 863 | 863.00 |
| 24/07/23 | Huw Griffiths | Accounts | Work through Bitwave information to estimate FY22 liability | 2.00 | 863 | 1,726.00 |
| 25/07/23 | Huw Griffiths | General | Celsius weekly call | 1.00 | 863 | 863.00 |
| 25/07/23 | Dion Seymour | General | Celsius weekly meeting | 0.67 | 863 | 575.33 |
| 25/07/23 | Sarah Shears | General | Weekly update call | 1.00 | 1112 | 1,112.00 |
| 26/07/23 | Huw Griffiths | Accounts | Call with Lior re Bitwave schedule | 1.00 | 863 | 863.00 |
| 26/07/23 | Dion Seymour | Ad Hoc | Discussion with Lior regarding 2022 tax analysis with follow-up call with CT Director. | 1.00 | 863 | 863.00 |
| 31/07/23 | Dion Seymour | Ad Hoc | Email to Celsius regarding penalty determination and how to make payment to HMRC | 0.42 | 863 | 359.58 |
| 31/07/23 | Dion Seymour | Administrative | Review and response to Kirkland regarding first invoice application for the US court following amendments from Kirkland | 0.33 | 863 | 287.67 |
| 01/08/23 | Dion Seymour | Accounts | Call with Lior and CT Director regarding working papers for 2022 | 0.5 | 863 | 431.5 |
| 01/08/23 | Huw Griffiths | Accounts | Catch up with Lior re FY22 numbers | 0.5 | 863 | 431.5 |
| 01/08/23 | Huw Griffiths | General | Celsius weekly call | 1 | 863 | 863 |
| 01/08/23 | Zoe Wyatt | Accounts | Debrief with Huw and Dion on Celsius calls | 0.75 | 1168 | 876 |
| 01/08/23 | Dion Seymour | Administrative | Review of email and gathering additional information following request from Kirkland for additional information for court claim | 0.5 | 863 | 431.5 |
| 01/08/23 | Dion Seymour | General | Review of email sent by Lior and the attached working papers | 0.5 | 863 | 431.5 |
| 01/08/23 | Zoe Wyatt | General | Weekly call | 0.25 | 1168 | 292 |
| 01/08/23 | Huw Griffiths | General | Weekly call | 0.25 | 863 | 215.75 |
| 01/08/23 | Dion Seymour | General | Weekly call | 0.25 | 863 | 215.75 |
| 01/08/23 | Sarah Shears | General | Weekly call | 0.25 | 1112 | 278 |
| 02/08/23 | Sarah Shears | VAT Return | Internal catch up re: VAT | 0.25 | 1112 | 278 |
| 07/08/23 | Dion Seymour | Accounts | Call with Lior and Huw (CT Director) to discuss Bitwave report | 0.5 | 863 | 431.5 |
| 07/08/23 | Huw Griffiths | Accounts | Discussion with Lior re BitWave analysis and treatment of specific items | 1 | 863 | 863 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 07/08/23 | Huw Griffiths | Accounts | Review DS email on outstanding information on FY22 position | 0.25 | 863 | 215.75 |
| 07/08/23 | Dion Seymour | Accounts | Review of 2022 P&L for red line items and follow-up wit Lior following earlier call | 0.25 | 863 | 215.75 |
| 07/08/23 | Dion Seymour | Accounts | Review of email dated 3 August regarding Bitwave report and figures contained within | 0.25 | 863 | 215.75 |
| 08/08/23 | Dion Seymour | Accounts | Call with Zoe Wyatt to go through Bitwave info. Plus court docs. | 0.75 | 863 | 647.25 |
| 08/08/23 | Zoe Wyatt | Accounts | Call with Dion on Bitwave update | 0.5 | 1168 | 584 |
| 08/08/23 | Dion Seymour | General | Weekly update call | 0.67 | 863 | 578.21 |
| 08/08/23 | Sarah Shears | General | Weekly update call | 0.75 | 1112 | 834 |
| 09/08/23 | Huw Griffiths | Accounts | Catch up re Lior re FY22. Discussion with Dion. | 1 | 863 | 863 |
| 09/08/23 | Dion Seymour | Accounts | Discussion with Huw CT Director on Intercompany loan and email to Lior requesting further information. Review of agreements sent | 1.5 | 863 | 1294.5 |
| 09/08/23 | Dion Seymour | Accounts | Initial drafting of intercompany report | 2 | 863 | 1726 |
| 09/08/23 | Dion Seymour | Accounts | Initial review of expenses provided by Lior - preliminary considerations | 0.5 | 863 | 431.5 |
| 10/08/23 | Dion Seymour | Accounts | Call with Zoe (partner) to update position on Celsius activity | 0.5 | 863 | 431.5 |
| 10/08/23 | Zoe Wyatt | Accounts | Call with Dion re various on celsius | 0.5 | 1168 | 584 |
| 15/08/23 | Huw Griffiths | Accounts | Celsius review of note re release and catch up with Dion | 1.5 | 863 | 1294.5 |
| 15/08/23 | Huw Griffiths | General | Celsius weekly call | 1 | 863 | 863 |
| 15/08/23 | Sarah Shears | VAT Return | E-mail re: VAT reg | 0.25 | 1112 | 278 |
| 15/08/23 | Dion Seymour | Accounts | Review of LR and possible options for intercompnay loans with Huw Griffiths, CT director | 1 | 863 | 863 |
| 15/08/23 | Sarah Shears | General | Weekly call | 0.25 | 1112 | 278 |
| 15/08/23 | Dion Seymour | General | Weekly Celsius update | 0.5 | 863 | 431.5 |
| 16/08/23 | Zoe Wyatt | Accounts | Call with Dion re loan relationship / debt write off conclusions | 0.5 | 1168 | 584 |
| 16/08/23 | Sarah Shears | VAT Return | Drafting VAT registration and quantification covering letter | 1.75 | 1112 | 1946 |
| 16/08/23 | Dion Seymour | Accounts | Further consideration and development of LR position , call with Zoe | 2 | 863 | 1726 |
| 17/08/23 | Zoe Wyatt | Accounts | Call with Huw re loan relationship position. Review and amend Dion/Huw's note on loan relationship and debt right off. | 3.5 | 1168 | 4088 |
| 17/08/23 | Huw Griffiths | Accounts | Call with Kirkland re UK write off | 1 | 863 | 863 |
| 17/08/23 | Dion Seymour | VAT Return | Call with Sarah S, VAT partner, to discuss disclosure to HMRC | 0.5 | 863 | 431.5 |
| 17/08/23 | Sarah Shears | VAT Return | Celsius VAT reg and quantification letter, update call to Dion | 4.25 | 1112 | 4726 |
| 17/08/23 | Dion Seymour | Accounts | Discussion with Kirkland UK tax lawyers on intercompany loan | 0.5 | 863 | 431.5 |
| 17/08/23 | Dion Seymour | General | Preparation of court fee application | 1.5 | 863 | 1294.5 |
| 18/08/23 | Sarah Shears | VAT Return | Amendments to VAT reg covering letter, draft 64-8, draft cover e-mail to Lior and e-mail Dion and Zoe | 1 | 1112 | 1112 |
| 18/08/23 | Sarah Shears | VAT Return | Dion re: VAT reg letter | 0.75 | 1112 | 834 |
| 18/08/23 | Dion Seymour | VAT Return | Discussion with Sarah Shears VAT partner on letter for HMRC | 1 | 863 | 863 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 21/08/23 | Sarah Shears | Ad Hoc | Amend 64-8 and send 64-8 and covering letter and e-mail to Lior re: VAT reg and quantification | 0.5 | 1112 | 556 |
| 21/08/23 | Zoe Wyatt | Accounts | Calls with Dion Seymour re Kirkland UK's email on loan relationships. Agree best approach and review draft email to Kirkland. Review Sarah Shears' email / letter to HMRC on VAT. | 1.5 | 1168 | 1752 |
| 21/08/23 | Dion Seymour | Accounts | Discussion with Zoe Wyatt on approach to loan relationship and suggested next steps | 0.25 | 863 | 215.75 |
| 21/08/23 | Dion Seymour | Accounts | Review of email from Kirkland UK in relations to loan relationships and response to Alan Walker | 0.5 | 863 | 431.5 |
| 22/08/23 | Dion Seymour | Accounts | Further research on Loan relationship. Report draft completed and sent to Partner | 1.5 | 863 | 1294.5 |
| 24/08/23 | Zoe Wyatt | Accounts | Review and edit revised Loan relationship note | 3 | 1168 | 3504 |
| 29/08/23 | Sarah Shears | General | Weekly call | 0.75 | 1112 | 834 |
| 29/08/23 | Dion Seymour | General | Weekly update call | 0.75 | 863 | 647.25 |
| 30/08/23 | Sarah Shears | Ad Hoc | Amending VAT cover letter and 64-8 form | 1.5 | 1112 | 1668 |
| 30/08/23 | Zoe Wyatt | Accounts | Call with Dion re loan relationship report. Follow-up call with Dion re EY call. | 1 | 1168 | 1168 |
| 30/08/23 | Dion Seymour | Accounts | Call with EY to discuss point raised from call weekly call, call with Zoe Wyatt to update and agree position | 0.5 | 863 | 431.5 |
| 30/08/23 | Sarah Shears | Accounts | Celsius - call with EY | 0.5 | 1112 | 556 |
| 31/08/23 | Sarah Shears | VAT Return | E-mail Lior re VAT reg covering letter | 0.25 | 1112 | 278 |
| 31/08/23 | Zoe Wyatt | Accounts | Review latest version of loan relationship report, final edits/ comments for Dion to include. | 0.5 | 1168 | 584 |
| 04/09/23 | Huw Griffiths | Accounts | Huw/Dion catch up and review of LR memo | 1.00 | 863 | 863 |
| 05/09/23 | Sarah Shears | VAT Return | Call with Lior and Dion re: VAT registration cover letter, prep for call and follow up e-mail re: penalties etc | 2.00 | 1112 | 2224 |
| 05/09/23 | Zoe Wyatt | General | Celsius weekly call | 0.50 | 1168 | 584 |
| 05/09/23 | Dion Seymour | General | Celsius weekly catch-up | 0.50 | 863 | 431.5 |
| 05/09/23 | Dion Seymour | VAT Return | Discussion with Lior in relation to VAT registration | 0.33 | 863 | 284.79 |
| 05/09/23 | Dion Seymour | VAT Return | Discussion with VAT partner on VAT penalty mitigation | 0.33 | 863 | 284.79 |
| 05/09/23 | Huw Griffiths | Accounts | Meeting with ZW and DS re LR memo and Lithuanian step plan | 0.50 | 863 | 431.5 |
| 05/09/23 | Huw Griffiths | Accounts | Updated LR memo with hybrid commentary | 0.50 | 863 | 431.5 |
| 05/09/23 | Sarah Shears | General | Weekly call | 0.58 | 1112 | 644.96 |
| 06/09/23 | Zoe Wyatt | Accounts | Call with Dion and Huw re Lithuanian debt restructure (transfer of liability back to the UK). Review and agree the steps for UK debt restructure by Kirkland. VAT update from Dion. Debrief on US 1099 position. | 0.75 | 1168 | 876 |
| 06/09/23 | Dion Seymour | Accounts | Discussions with Partner and CT Director on the new intercompany loan documents | 0.50 | 863 | 431.5 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 06/09/23 | Dion Seymour | Accounts | Update to LR note to take into account the rewriting of documentation and if fit for the purpose | 0.50 | 863 | 431.5 |
| 07/09/23 | Sarah Shears | VAT Return | E-mail Lior re: VAT reg cover letter, 64-8 and VAT reclaim queries | 0.50 | 1112 | 556 |
| 08/09/23 | Sarah Shears | VAT Return | Finalise VAT reg cover letter | 0.50 | 1112 | 556 |
| 11/09/23 | Sarah Shears | VAT Return | Finalise VAT reg cover letter and 64-8 and send out to HMRC | 0.25 | 1112 | 278 |
| 11/09/23 | Zoe Wyatt | Accounts | Review final amendments to Celsius loan relationship note | 0.50 | 1168 | 584 |
| 12/09/23 | Sarah Shears | General | Biweekly call | 0.58 | 1112 | 644.96 |
| 12/09/23 | Huw Griffiths | General | Weekly call | 0.50 | 863 | 431.5 |
| 12/09/23 | Zoe Wyatt | General | Weekly call | 0.50 | 1168 | 584 |
| 12/09/23 | Dion Seymour | General | Weekly conference call | 0.50 | 863 | 431.5 |
| 13/09/23 | Zoe Wyatt | Accounts | Call with Lior and team re liquidation process. Call with Dion re follow-up. | 0.50 | 1168 | 584 |
| 13/09/23 | Dion Seymour | Accounts | Call with Lior regarding liquidation of GK8 and pre-discussion | 0.75 | 863 | 647.25 |
| 13/09/23 | Huw Griffiths | Accounts | Discuss with CUK team re elimination of GR8 UK and provide information in follow up email | 0.75 | 863 | 647.25 |
| 13/09/23 | Dion Seymour | Accounts | Email to Celsius and Kirkland regarding LR position note | 0.25 | 863 | 215.75 |
| 15/09/23 | Dion Seymour | VAT Return | Email and call with VAT partner regarding reclaim position for CUK | 0.25 | 863 | 215.75 |
| 15/09/23 | Sarah Shears | VAT Return | Issue re: VAT issues in respect of other party paying legal fees in respect of litigation. Discussion with Dion. Call with Lior. Follow up e-mail regarding the issue. | 2.25 | 1112 | 2502 |
| 18/09/23 | Dion Seymour | Administrative | Reviewing administrate tasks for the project | 1.00 | 863 | 863 |
| 19/09/23 | Dion Seymour | General | Weekly call | 0.50 | 863 | 431.5 |
| 19/09/23 | Sarah Shears | General | Weekly call | 0.25 | 1112 | 278 |
| 19/09/23 | Zoe Wyatt | General | weekly call | 0.50 | 1168 | 584 |
| 26/09/23 | Zoe Wyatt | Accounts | Celsius weekly call re inter-co | 0.50 | 1168 | 584 |
| 26/09/23 | Sarah Shears | General | Celsius weekly catch up | 0.25 | 1112 | 278 |
| 26/09/23 | Huw Griffiths | General | Weekly call | 0.50 | 863 | 431.5 |
| 26/09/23 | Dion Seymour | General | Weekly conference call | 0.50 | 863 | 431.5 |
| 03/10/23 | Huw Griffiths | General | Weekly call | 0.50 | 863 | 431.5 |
| 03/10/23 | Zoe Wyatt | General | Weekly call | 0.50 | 1168 | 584 |
| 03/10/23 | Dion Seymour | General | Weekly update call | 0.50 | 863 | 431.5 |
| 03/10/23 | Sarah Shears | General | Weekly update call | 0.50 | 1112 | 556 |

| Date | Name | Category | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 04/10/23 | Dion Seymour | Accounts | Call regarding IC debt with Lithuania | 1.00 | 863 | 863 |
| 04/10/23 | Zoe Wyatt | Accounts | Call with Celsius and Kirkland re Lithuania and UK IC Agreement | 1.00 | 1168 | 1168 |
| 04/10/23 | Huw Griffiths | Accounts | Celsius query re registered office | 0.25 | 863 | 215.75 |
| 04/10/23 | Huw Griffiths | Accounts | Discuss Lithuanian elimination internally and on Kirkland call | 1.00 | 863 | 863 |
| 05/10/23 | Huw Griffiths | Accounts | Registered office query from Lior | 0.25 | 863 | 215.75 |
| 06/10/23 | Dion Seymour | Accounts | Discussion with CT director on response to Kirkland | 0.25 | 863 | 215.75 |
| 06/10/23 | Huw Griffiths | Accounts | Looking through information on file regarding intercompany balances | 0.50 | 863 | 431.5 |
| 06/10/23 | Dion Seymour | Accounts | Review of email from Kirkland and reply on IC balances, call with Dion. | 0.25 | 863 | 215.75 |
| 09/10/23 | Dion Seymour | Accounts | Call with EY and Kirkland regarding IC debt | 1.00 | 863 | 863 |
| 09/10/23 | Huw Griffiths | Accounts | Discuss intercompany balances and call with Kirkland | 1.00 | 863 | 863 |
| 09/10/23 | Zoe Wyatt | Accounts | Internal call with Dion and Huw re inter-co balances | 0.25 | 1168 | 292 |
| 09/10/23 | Sarah Shears | Accounts | Intercompany Account call w. Kirkland | 0.50 | 1112 | 556 |
| 10/10/23 | Huw Griffiths | Accounts | Call with Aswan re intercompany | 0.75 | 863 | 647.25 |
| 10/10/23 | Sarah Shears | General | Catch up re: weekly call | 0.25 | 1112 | 278 |
| 10/10/23 | Huw Griffiths | General | Weekly call | 0.50 | 863 | 431.5 |
| 10/10/23 | Dion Seymour | General | Weekly catch-up call | 0.50 | 863 | 431.5 |
| 11/10/23 | Dion Seymour | Accounts | Call with A&M, EY and Celsius on i/c debt | 0.67 | 863 | 578.21 |
| 11/10/23 | Sarah Shears | Accounts | Celsius Intercompany call and post follow up with Dion and EY | 1.00 | 1112 | 1112 |
| 11/10/23 | Huw Griffiths | Accounts | Discussion with A&M re intercompany balances | 0.50 | 863 | 431.5 |
| 11/10/23 | Dion Seymour | Accounts | Follow-up call with EY re intercompany debt | 1.00 | 863 | 863 |
| 11/10/23 | Zoe Wyatt | Accounts | Inter-co balance call with all parties | 0.50 | 1168 | 584 |
| 12/10/23 | Dion Seymour | Administrative | Administrative tasks re court billing process | 1.00 | 863 | 863 |
| 12/10/23 | Huw Griffiths | Accounts | Call with Aswan and HW audit team to discuss UK accounting and tax filing requirements for 2022 and beyond | 0.50 | 863 | 431.5 |
| 12/10/23 | Dion Seymour | Accounts | Call with HW audit team, Celsius and EY discussion 2022 tax return requirements | 0.50 | 863 | 431.5 |
| 12/10/23 | Zoe Wyatt | Accounts | Call with Kirkland, Haines Watts (auditors) re filing requirements | 0.50 | 1168 | 584 |
| 17/10/23 | Sarah Shears | Accounts | Celsius Tax Weekly update call | 0.25 | 1112 | 278 |
| 17/10/23 | Dion Seymour | Accounts | Weekly catch-up call + prep | 0.50 | 863 | 431.5 |
| 19/10/23 | Dion Seymour | Administrative | Administrative tasking including check court status | 1.00 | 863 | 863 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 19/10/23 | Sarah Shears | VAT Return | VAT registration follow up | 0.25 | 1112 | 278 |
| 24/10/23 | Huw Griffiths | General | Weekly call | 0.50 | 863 | 431.5 |
| 24/10/23 | Dion Seymour | General | Weekly meeting | 0.50 | 863 | 431.5 |
| 31/10/23 | Huw Griffiths | Accounts | Celsius call with EY re intercompany balances | 1.00 | 863 | 863 |
| 31/10/23 | Huw Griffiths | General | Celsius weekly call | 0.33 | 863 | 284.79 |
| 31/10/23 | Dion Seymour | Administrative | Court administrative tasks | 1.00 | 863 | 863 |
| 31/10/23 | Dion Seymour | Accounts | Call with EY - IC balances | 1.00 | 863 | 863 |
| 31/10/23 | Dion Seymour | General | Weekly catchup | 0.33 | 863 | 284.79 |
| 31/10/23 | Zoe Wyatt | Accounts | Call with EY on inter-co balances | 1.00 | 1168 | 1168 |
| 31/10/23 | Zoe Wyatt | General | Weekly call | 0.33 | 1168 | 385.44 |
| 31/10/23 | Sarah Shears | General | Weekly update catch up | 0.33 | 1112 | 366.96 |
| 03/11/23 | Huw Griffiths | Accounts | Catch up with Dion on FY22/FY21 and intercompany balances | 1 | 730 | 730 |
| 03/11/23 | Dion Seymour | Accounts | Review of schedule and information provided from EY | 1 | 730 | 730 |
| 06/11/23 | Zoe Wyatt | Accounts | Call with EY | 0.5 | 990 | 495 |
| 06/11/23 | Dion Seymour | Accounts | Call with EY to consider possible approach for consolidation of inter company debts | 0.5 | 730 | 365 |
| 06/11/23 | Dion Seymour | Accounts | Discussion with CT director on accounts for accounting period 2022 | 0.5 | 730 | 365 |
| 07/11/23 | Dion Seymour | General | Celsius weekly catch-up | 0.5 | 730 | 365 |
| 07/11/23 | Dion Seymour | Accounts | Discussion on agency with CT director | 0.5 | 730 | 365 |
| 07/11/23 | Huw Griffiths | Accounts | Speak to Chris Evans at HW and catch up with Dion re FY21 statutory accounts process | 1 | 730 | 730 |
| 07/11/23 | Huw Griffiths | General | Weekly call | 0.5 | 730 | 365 |
| 07/11/23 | Sarah Shears | General | Weekly call | 0.5 | 940 | 470 |
| 07/11/23 | Zoe Wyatt | General | Weekly call | 0.5 | 990 | 495 |
| 09/11/23 | Dion Seymour | VAT Return | Discussion with VAT partner on the VAT registration | 0.5 | 730 | 365 |
| 09/11/23 | Sarah Shears | VAT Return | VAT registration issues - response from HMRC, review of forms and discussions re: way forward, call with Dion | 0.75 | 940 | 705 |