**AKIN GUMP STRAUSS HAUER & FELD LLP**
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**NOTICE OF FINAL FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS SPECIAL**
**LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION**
**FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED**
**AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD**
**FROM JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

     **PLEASE TAKE NOTICE** that, on January 22, 2024, the Debtors filed the *Final Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Final Fee Period from July 13, 2022 Through and Including November 9, 2023* (the "Application").

     **PLEASE TAKE FURTHER NOTICE** that, if any party other than the United States Trustee or the Fee Examiner wishes to file a response or objection to the Application, any such responses or objections must be filed on or before **February 12, 2024 at 12:00 p.m. (prevailing Eastern Time)**. At the same time, you must serve a copy of the objection or response on the undersigned attorneys.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that the United States Trustee and the Fee Examiner shall be entitled to review, and potentially object to, the Application until ten days prior to the hearing on the Application pursuant to the fee review schedule set forth in the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 1745].

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Application will be held at a date and time convenient to the Court.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January 22, 2024       **AKIN GUMP STRAUSS HAUER & FELD LLP**
New York, New York

By:  */s/ Mitchell P. Hurley*
     Mitchell P. Hurley
     Dean L. Chapman
     One Bryant Park
     New York, New York 10036
     Telephone: (212) 872-1000
     Facsimile: (212) 872-1002
     mhurley@akingump.com
     dchapman@akingump.com

     *Special Litigation Counsel to the Debtors and Debtors in Possession*

AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**COVER PAGE FOR FINAL FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS SPECIAL**
**LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION**
**FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED**
**AND REIMBURSEMENT OF EXPENSES FOR THE FINAL FEE PERIOD**
**FROM JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

| | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin") |
| Authorized to Provide Professional Services to: | Debtors and Debtors in Possession |
| Date of Retention: | July 13, 2022 |
| Period for which compensation and reimbursement is sought (the "Final Compensation Period"): | July 13, 2022 through November 9, 2023 |
| Amount of final compensation sought as actual, reasonable, and necessary: | $16,386,734.43 (net of Fee Examiner Reductions (defined below)) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | |
|---|---|
| Amount of final expense reimbursement sought as actual, reasonable, and necessary: | $521,732.63 (net of Fee Examiner Reductions) |
| Blended rate in this application for all attorneys:[2] | $1,148.59/ hour |
| Blended rate in this application for all timekeepers: | $1,109.29/ hour |

The total time expended for fee application preparation for the Final Compensation Period is approximately 605.20 hours and the corresponding compensation requested is approximately $648,863.55.  In addition to voluntary reductions before each applicable monthly fee statement was filed, Akin also agreed to certain further reductions in connection with the work performed in this task in connection with the Fee Examiner Reductions.  Those deductions, because they were part of a global agreement with the Fee Examiner, are not specifically referenced herein.

---

[2]    Akin calculated the blended rates for timekeepers who billed during the Final Compensation period by dividing the total dollar amounts billed by such timekeepers by the total number of hours billed by such timekeepers. Accordingly, these blended rate does not reflect the Fee Examiner Reductions.

| SUMMARY OF PRIOR INTERIM FEE APPLICATIONS: | | | | | |
|---|---|---|---|---|---|
| | | Fees and Expenses Approved[3] | | Date and Docket No. of Fee Order | |
| Date Filed [Docket No.] | Interim Fee Period Covered | Fees | Expenses | Date | Docket No. |
| 12/15/23 Docket No. 1707 | *First Interim Fee Application* 7/13/22 to 10/31/22 | $2,263,847.74 | $73,961.22 | 4/24/23 | 2523 |
| 4/14/23 Docket No. 2446 | *Second Interim Fee Application* 11/1/22 to 2/28/23 | $4,812,884.41 | $60,082.39 | 7/19/23 | 3055 |
| 8/14/2023 Docket No. 3291 | *Third Interim Fee Application* 3/1/23 to 6/30/23 | $3,199,861.78 | $86,331.37 | 11/30/23 | 4056 |
| 1/17/24 Docket No. 4251 | *Fourth Interim Fee Application* 7/1/23 to 11/9/23 | NA | NA | NA | NA |
| **Total fees and expenses approved by interim orders to date (net of Fee Examiner Reductions):** | | **$10,276,593.93** | **$220,374.98** | **$10,496,968.91** | |
| **Total fees and expenses not yet approved by interim order to date (Fourth Interim Fee Application):** | | **$6,110,140.50** | **$301,357.65** | **$6,411,498.15** | |

---

[3]    The approved fees and expenses reflect the reductions agreed to with the Fee Examiner in connection with the applicable interim fee applications (such reductions, the "Fee Examiner Reductions"). Specifically:

(i)    pursuant to the First Interim Fee Application, Akin requested interim allowance of fees in the amount of $2,322,174.60 and reimbursement of expenses in the amount of $107,347.68 for the period of July 13, 2022 through and including October 31, 2022. As noted in the *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearing on April 18, 2023* (the "Fee Examiner First Report") [Docket No. 2387] Akin agreed to certain reductions in connection with the fees ($58,326.86) and expenses ($33,386.46) requested in the First Interim Fee Application;

(ii)    pursuant to the Second Interim Fee Application, Akin requested interim allowance of fees in the amount of $4,884,132.60 and reimbursement of expenses in the amount of $61,571.97.68 for the period of November 1, 2022 through and including February 28, 2023. On July 7, 2023, the Fee Examiner filed the *Fee Examiner's Summary Report on Fee Review Process and Second Interim Fee Applications Scheduled for Uncontested Hearing on July 18, 2023* (the "Fee Examiner Second Report") [Docket No. 2975]. As noted in the Fee Examiner Second Report, Akin agreed to certain reductions in connection with the fees ($71,248.19) and expenses ($1,489.58) requested in the Second Interim Fee Application; and

(iii)    pursuant to the Third Interim Fee Application, Akin requested interim allowance of fees in the amount of $3,276,242.10 and reimbursement of expenses in the amount of $91,832.77 for the period of July 1, 2023 through and including October 31, 2023. On November 20, 2023, the *Fee Examiner filed the Fee Examiner's Summary Report on Fee Review Process and Third Interim Fee Applications Scheduled for Uncontested Hearing on November 30, 2023* (the "Fee Examiner Third Report") [Docket No. 4013]. As noted in the Fee Examiner Third Report, Akin agreed to certain reductions in connection with the fees ($76,380.32) and expenses ($5,501.40) requested in the Third Interim Fee Application.

AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**FINAL FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

Akin Gump Strauss Hauer & Feld LLP ("Akin"), special litigation counsel to the debtors

and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"), hereby submits its final fee application (the "Application"), pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), requesting

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

final allowance of compensation for services rendered to the Debtors for the period July 13, 2021 through and including November 9, 2023 (the "<u>Final Compensation Period</u>") and for reimbursement of expenses incurred in connection therewith. In support of this Application, Akin submits the declaration of Mitchell P. Hurley, a partner at Akin, which declaration is attached hereto as **<u>Exhibit A</u>** and incorporated by reference into this Application. In further support of this Application, Akin respectfully represents as follows:

## <u>INTRODUCTION</u>

1.      By this Application, Akin seeks final allowance of (i) compensation for professional services rendered by Akin during the Final Compensation Period in the amount of $16,386,734.43 (net of the Fee Examiner Reductions (defined below)) representing 14,107.30 hours of professional services and 850.90 hours of practice attorney, paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary expenses incurred by Akin during the Final Compensation Period in the amount of $521,732.63 (net of the Fee Examiner Reductions).

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745] (the "<u>Interim Compensation Order</u>"), the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "<u>Local Guidelines</u>") and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "<u>U.S. Trustee Guidelines</u>" and, together with the Local Guidelines, the "<u>Fee Guidelines</u>").

3.      In accordance with Local Rule 2016-1, the Debtors have been given the opportunity to review this Application and have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-1.

## BACKGROUND

### A.      The Debtors' Chapter 11 Cases

7.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in certain declarations the ("Declarations") filed at the outset of these cases, including the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].[2]

8.      On August 17, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (i) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (ii) Granting Related Relief* [Docket No. 521].

9.      On November 9, 2023, the Court entered the *Findings of Fact, Conclusions of Law,*

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Declarations or the Application (defined herein), as applicable.

3

*and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order") confirming the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC & its Debtor Affiliates* [Docket No. 3577] (as amended and supplemented, the "Plan").  The Plan has not yet gone effective.

**B.      Retention of Akin as Special Litigation Counsel**

10.      On August 8, 2022, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 392] (the "Initial Retention Application").  On August 31, 2022, Akin filed the supplemental declaration of Mitchell P. Hurley in further support of the Initial Retention Application [Docket No. 649].

11.      On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 843] (the "Initial Retention Order").

12.      On November 11, 2022, the Debtors filed and served the *Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1330] (the "Notice of Additional Services") in accordance with the Initial Retention Order.  On November 30, 2022, the Court entered an order approving the Notice of Additional Services [Docket No. 1521] (the "Additional Services Order").  On January 10, 2023, at the request of the United States Trustee, the Debtors filed and served the *Supplemental Declaration of Mitchell Hurley Regarding the Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin*

*Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1847] in support of the Notice of Additional Services.

13.     On March 31, 2023, the Debtors filed and served the *Second Notice of Proposed Additional Services, Effective as of March 15, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 2290] (the "Second Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application and the Notice of Additional Services, the "Akin Retention Application").  On April 7, 2023, the Court entered an order approving the Second Notice of Additional Services [Docket No. 2385] (the "Second Additional Services Order").

14.     On June 8, 2023, the Debtors filed and served the *Third Notice of Proposed Additional Services, Effective as of April 24, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 2782] (the "Third Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application, the Notice of Additional Services and the Second Notice of Additional Services, the "Akin Retention Application").  On July 10, 2023, the Court entered an order approving the Third Notice of Additional Services [Docket No. 2987] (together with the Initial Retention Order, the Additional Services Order and the Second Additional Services Order, the "Retention Order").

15.     The Retention Order authorizes the Debtors to retain and employ Akin as its special litigation counsel in the Chapter 11 Cases in accordance with Akin's normal hourly rates – subject to an agreed-upon 10% discount on its standard billing rates for all timekeepers – and disbursement policies, as of the Petition Date, as contemplated by the Akin Retention Application.  Specifically, the Retention Order authorizes Akin to be compensated on an hourly basis and to be reimbursed

for actual and necessary out-of-pocket expenses.  This Application is Akin's final application for compensation and reimbursement of expenses.

## C.    Prior Interim Fee Applications Filed

16.    On December 15, 2022, Akin filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 13, 2022 Through and Including October 31, 2022* [Docket No. 1707] (the "First Interim Fee Application").  Pursuant to the First Interim Fee Application, Akin requested interim allowance of fees in the amount of $2,322,174.60 and reimbursement of expenses in the amount of $107,347.68 for the period of July 13, 2022 through and including October 31, 2022.  On January 4, 2023, *pro se* creditor Daniel A. Frishberg filed an omnibus objection (the "First Objection") [Docket No. 1823] to the interim fee applications of substantially all of the professionals whose fees are paid for by the Debtors' estates, including the Akin First Interim Fee Application, though Mr. Frishberg did not identify any objection specific to Akin's fees.  In addition, on April 7, 2023, the fee examiner appointed in these Chapter 11 Cases (the "Fee Examiner") filed *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearing on April 18, 2023* (the "Fee Examiner First Report") [Docket No. 2387].  As noted in the Fee Examiner First Report, Akin agreed to certain reductions in connection with the fees ($58,326.86) and expenses ($33,386.46) requested in the First Interim Fee Application (the "First Interim Fee Examiner Reductions").  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the First Interim Fee Application was held on April 18, 2023 and, on April 24, 2023, an order entered approving the First Interim Fee Application was entered [Docket No. 2523].

17.    On April 14, 2023, Akin filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors*

in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period November 1, 2022 Through and Including February 28, 2023 [Docket No. 2446] (the "Second Interim Fee Application").    Pursuant to the Second Interim Fee Application, Akin requested interim allowance of fees in the amount of $ 4,884,132.60 and reimbursement of expenses in the amount $61,571.97.68 for the period of November 1, 2022 through and including February 28, 2023.    On July 7, 2023, the Fee Examiner filed the *Fee Examiner's Summary Report on Fee Review Process and Second Interim Fee Applications Scheduled for Uncontested Hearing on July 18, 2023* (the "Fee Examiner Second Report") [Docket No. 2975].    As noted in the Fee Examiner Second Report, Akin agreed to certain reductions in connection with the fees ($71,248.19) and expenses ($1,489.58) requested in the Second Interim Fee Application (the "Second Interim Fee Examiner Reductions").    Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.    A hearing on the Second Interim Fee Application was held on July 18, 2023 and, on July 19, 2023, an order entered approving the Second Interim Fee Application was entered [Docket No. 3055].

18.    On August 14, 2023, Akin filed and served the *Third Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period March 1, 2023 Through and Including June 30, 2023* [Docket No. 3291] (the "Third Interim Fee Application").    Pursuant to the Third Interim Fee Application, Akin requested interim allowance of fees in the amount of $3,276,242.10 and reimbursement of expenses in the amount $91,832.77 for the period of March 1, 2023 through and June 30, 2023.    On November 20, 2023, the Fee Examiner filed the *Fee Examiner's Summary Report on Fee Review Process and Third Interim Fee Applications Scheduled for Uncontested Hearing on November 30, 2023* (the "Fee Examiner Third Report" and, together with the Fee Examiner First Report and Fee Examiner Second Report, the "Fee Examiner Reports") [Docket No. 4013].    As

noted in the Fee Examiner Third Report, Akin agreed to certain reductions in connection with the fees ($76,380.32) and expenses ($5,501.40) requested in the Third Interim Fee Application (the "Third Interim Fee Examiner Reductions" and, together with the First Interim Fee Examiner Reductions and the Second Interim Fee Examiner Reductions, the "Fee Examiner Reductions"). Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the Third Interim Fee Application was held on November 30, 2023 and the Court entered an order granting the Third Interim Fee Application [Docket No. 4054].

19.     On January 17, 2024, Akin filed and served the *Fourth Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 1, 2023 Through and Including November 9, 2023* [Docket No. 4251] (the "Fourth Interim Fee Application" and, together with the First Interim Fee Application, Second Interim Fee Application and Third Interim Fee Application, the "Interim Fee Applications"). Pursuant to the Fourth Interim Fee Application, Akin requested interim allowance of fees in the amount of $6,110,140.50 and reimbursement of expenses in the amount $301,357.65 for the period of July 1, 2023 through and including November 9, 2023.  The objection deadline for the Fourth Interim Fee Application has not yet passed.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

20.     By this Application, Akin requests final allowance of compensation for services rendered to the Debtors during the Final Compensation Period in the amount of $16,386,734.43 (net of the Fee Examiner Reductions) and reimbursement of expenses incurred in connection therewith in the amount of $521,732.63 (net of the Fee Examiner Reductions).[3]  During the Final

---

[3]     In addition to the agreed to Fee Examiner Reductions, Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement.

Compensation Period, Akin attorneys and paraprofessionals expended a total of 14,958.20 hours for which compensation is sought.

21.     The fees charged by Akin in the Chapter 11 Cases are billed in accordance with Akin's existing billing rates and procedures in effect during the Final Compensation Period. The rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters, subject to an agreed-upon 10% discount on its standard rates for all timekeepers. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market. The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

22.     Akin maintains computerized records of the time spent by all Akin professionals and paraprofessionals in connection with the Chapter 11 Cases. A summary of compensation by timekeeper for the Final Compensation Period is attached hereto in **Exhibit C**, and a summary of compensation by task code against budgeted hours and fees for the Final Compensation Period is attached hereto in **Exhibit D**. The itemized time records for Akin professionals and paraprofessionals performing services during the Final Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

23.     Akin also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services. A summary of the categories of expenses and amounts for which reimbursement is requested by this Application for the Final Compensation Period is attached hereto as **Exhibit E**.

24.     Akin's staffing plan for the Final Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN DURING THE FINAL COMPENSATION PERIOD

25.     The services provided by Akin during the Final Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Debtors and commensurate with the complexity and significance of the matters for which Akin has been retained (collectively, the "Litigation Matters").  The variety and complexity of the Litigation Matters and the need to act or respond to such issues on an expedited basis during the Final Compensation Period required the expenditure of significant time by Akin professionals and paraprofessionals from numerous legal disciplines.

26.     The following is a summary of the professional services rendered by Akin during the Final Compensation Period.[4]  This summary is organized in accordance with Akin's internal system of task codes established in connection with Akin's retention based on the Fee Guidelines.  In classifying services into task codes, Akin attempted to place the services performed in the category that most closely related to the services provided.

27.     Moreover, the following summary of services rendered during the Final Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin was required to address during the Final Compensation Period.

### A.    Akin Monthly and Interim Fee Applications (Task Code 2)

| Total Hours | Fees |
|---|---|
| 605.20 | $648,863.55 |

28.     This category includes time spent by Akin attorneys and paraprofessionals in connection with the preparation of Akin's monthly fee statements and the Interim Fee Applications.

---

[4]    The figures provided in these narratives for the total hours and fees do not account for the Fee Examiner Reductions.

Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

29.    In sum, during the Final Compensation Period, Akin attorneys expended significant time reviewing Akin's monthly invoices in order to protect privileged and confidential information and to ensure accuracy and compliance with the Interim Compensation Order, Local Rules and U.S. Trustee Guidelines.  Pursuant to the Interim Compensation Order, each of the monthly fee statements, the Interim Fee Applications and this Application contain a list of individuals who rendered services to the Debtors during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended.  In addition, this category includes time spent by Akin attorneys in connection with responding to, and successfully resolving, the each of the Fee Examiner Reports issues in connection with the application Interim Fee Applications.

**B.    Retention of Professionals (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 283.60 | $298,586.25 |

30.    This category includes time spent by Akin attorneys and paraprofessionals in connection with various retention matters.  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

31.    This category includes time spent coordinating with the Debtors to draft and file Akin's retention application, which the Court approve on September 16, 2022 [Docket No. 842]. In addition, Akin drafted and filed the First Notice of Additional Services, the Second Notice of Additional Service, and the Third Notice of Additional Service, in which Akin requested authority to perform additional work at the request of the Debtors.  The Court entered order approving such notices.  Among other things, this category includes considerable time spent drafting the Retention Application and conducting a robust and thorough conflicts check with respect to hundreds of

potential parties in interest.  This category also included time spent conducting a thorough conflicts check with respect to identified potential parties in interest.

32.     Moreover, although no objections were received to Akin's retention application, the U.S. Trustee provided informal comments with respect thereto.  As such, during the Final Compensation Period, Akin worked with the U.S. Trustee to reach an agreed form of order for the Akin retention application.  In addition, Akin attorneys spent time considering certain expert and retention issues with respect to the Stone/KeyFi matter which resulted in the filing of the *Debtors' Application for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363 (i) Authorizing the Retention and Employment of FTI Consulting Technology LLC for Expert Services Effective as of January 30, 2023 and (ii) Granting Related Relief* [Docket No. 3418], which was granted on September 28 2023 [Docket No. 3613].

### C.     Case Administration (Task Code 4)

| Total Hours | Fees |
|---|---|
| 221.60 | $183,658.95 |

33.     This category includes time spent by Akin attorneys and paraprofessionals in connection with various case administration matters in furtherance of the Chapter 11 Cases. Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.  In sum, during the Final Compensation Period, Akin, among other things, spent time:  (i) monitoring the Court's docket in the Chapter 11 Cases and circulating relevant filings to members of the Akin team; (ii) preparing and updating internal case calendars to keep Akin professionals appraised of relevant case deadlines and deliverables; (iii) considering budget issues with respect to Akin's services; (iii) communicating with the client and Debtors' restructuring professionals with respect to general case issues and updates; (iv) reviewing and analyzing general case materials and pleadings; and (v) performing other administrative tasks that

enabled Akin to represent the Debtors in the Chapter 11 Cases with respect to the Litigation Matters in an efficient and cost effective manner.

34.    Akin's attention to the administrative matters reflected in this category enabled the Akin team to function in a coordinated manner and avoid duplicating efforts with respect to various work streams.

**D.    Stone/KeyFi (Task Code 5)**[5]

| Total Hours | Fees |
|---|---|
| 6,316.00 | $6,674,240.25 |

35.    This category includes time spent by Akin professionals in connection with the adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Jason Stone and KeyFi, Inc.*, Adv. No. 22-01139 (MG), which was filed on August 23, 2022 (the "Stone Adversary Proceeding").  As alleged in the Stone Adversary Proceeding, the Defendants were provided with, but did not return, millions of Celsius coins collectively worth substantially in excess of $100 million and engaged in other conduct giving rise to additional substantial liability. Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

36.    In sum, during the Final Compensation Period, Akin intensely prosecuted the Stone Adversary Proceeding.  Akin prepared a complaint and amended complaint against the Stone Defendants for recovery of misappropriated assets and damages for the Stone Defendants' breaches of duty to Celsius.  Akin successfully fended off the Stone Defendants' motion to dismiss in full and obtained a Temporary Restraining Order barring the Stone Defendants from using, transferring, or otherwise disposing of assets in their possession, custody or control traceable to Celsius without Celsius' consent or permission of the Court.  The Temporary Restraining Order was the result of a hard-fought, two-day evidentiary hearing, as well as substantial fact discovery,

---

[5]    Capitalized terms used in this Stone/KeyFi summary, but not otherwise defined herein, shall have the meanings given to them in the Stone Adversary Proceeding (defined herein).

including the taking and defending of depositions, prior to the evidentiary hearing. Akin professionals have carefully monitored and policed the Stone Defendants' compliance with the Temporary Restraining Order over the last year to make sure that funds that may be recovered in the action remain preserved.

37.    Akin has also devoted considerable efforts to prosecuting the case in chief against the Stone Defendants. The parties exchanged document requests and interrogatories, resulting in the production of substantial numbers of documents. Akin professionals reviewed nearly 20,000 documents for production by Celsius, as well as reviewed nearly 14,000 documents produced by Defendants, which have been incorporated into relevant chronologies and work product. Akin has also served subpoenas, and taken discovery on, eight third parties. Moreover, Akin professionals, working together with FTI, undertook a substantial crypto-asset tracing exercise to determine the ultimate destination of the more than $1 billion worth of assets Celsius entrusted to the Stone Defendants to manage. The tracing exercise has sought to determine the amount of assets not returned; whether the unreturned assets were lost in poor investments or misappropriated by the Stone Defendants; and the potential pool of assets under the possession, custody or control of the Stone Defendants to satisfy a potential judgment in the case. The asset tracing exercise has largely been completed and Akin is discussing the findings with the Committee and its professionals.

**E.    Prime Trust (Task Code 6)**[6]

| Total Hours | Fees |
|:---:|:---:|
| 670.30 | $791,249.40 |

38.    This category includes time spent by Akin professionals in connection with the adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Prime Trust, LLC*, Adversary Proceeding No. 22-01140, which was filed on August 23, 2022 (the "Prime Trust

---

[6]    Capitalized terms used in this Prime Trust summary, but not otherwise defined herein, shall have the meanings given to them in the Prime Trust Adversary Proceeding (defined herein).

Adversary Proceeding"). Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

39.     During the Final Compensation Period, Akin prepared and filed an adversary complaint, and negotiated, obtained final Court approval for, and received full payment on a settlement with Prime Trust, LLC ("Prime Trust"), resulting in Celsius getting substantially all of the relief it sought in connection with the Adversary Proceeding, including, among other things, the return to Celsius of crypto assets worth in excess of $26 million (at recent prices). The settlement further provided that Prime Trust would return any property that may be deposited with Prime Trust by any Celsius users following the initial coin return and that it would provide quarterly reporting regarding any such deposits.

40.     In connection with those efforts, Akin professionals engaged in extensive negotiations with counsel for Prime Trust regarding the allegations in the Prime Trust Adversary Proceeding and related demand letters and other efforts to reach a consensual resolution of Celsius' claims, ultimately resulting in Celsius and Prime Trust agreeing to a *Stipulation to Settle and Discontinue Adversary Proceeding* [Adv. Pro. No. No. 13-2] (the "Stipulation" or the "Prime Trust Settlement"). The Court entered an *Order Granting [Celsius'] Motion to Approve Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. No. 20] on December 6, 2022 (the "9019 Approval Order").

41.     The 9019 Approval Order initially provided that the coins returned to Celsius would be maintained in segregated accounts and that Celsius would not use, access, transfer, pledge, re-hypothecate, distribute, or otherwise interfere with the assets except pursuant to further order of the Bankruptcy Court. On June 28, 2023, Akin successfully moved for an Order allowing Celsius to transfer the assets returned by Prime Trust to Celsius' Network Deposit vaults in the Celsius Network LLC (US) workspace. *See Order Granting Motion to Approve the Transfer of Property Pursuant to Bankruptcy Code Section 105 and Rule 9019 of the Federal Rules of Bankruptcy*

*Procedure* [Docket No. 2926] (the "Transfer Order").  Pursuant to the Transfer Order, Akin obtained for Celsius the ability to access, transfer, pledge and otherwise use the property returned from Prime Trust in the ordinary course and consistent with the sound exercise of Celsius' business judgment, including without limitation, for purposes such as borrowing and other routine corporate finance activities, until distributed or otherwise disposed of in connection with a confirmed plan of reorganization or other disposition as part of the Chapter 11 Cases.

**F.    Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 99.30 | $129,877.20 |

42.    This category includes time spent by Akin attorneys preparing for and attending various hearings and/or status conferences held before the Court during the Final Compensation Period, including omnibus hearings in the Chapter 11 Cases.  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

43.    In sum, during the Final Compensation Period, in light of Akin's role as special litigation counsel in these Chapter 11 Cases, Akin attorneys, among other things:  (i) reviewed upcoming hearing agendas and kept apprised of issues on connection therewith; (ii) analyzed relevant issues, motions and applications filed with the Court with respect to the applicable hearing; (iii) communicated with the Debtors' advisors and other parties in interest, as necessary, with respect to such relief;  and (iv) attended such hearings in order to stay apprised of information that could be relevant with respect to general case matters and the Litigation Matters.

**G.    Rhodium (Task Code 9)**[7]

| Total Hours | Fees |
|:---:|:---:|
| 1,461.90 | $1,751,142.15 |

---

[7]    Capitalized terms used in this Rhodium summary, but not otherwise defined herein, shall have the meanings given to them in the Rhodium Adversary Proceeding (defined herein).

44.     This category includes time spent by Akin professionals in connection with efforts to preserve value for the Debtors' and their creditors related to the Debtors' Simple Agreement for Future Equity ("SAFE") with Rhodium Enterprises, Inc. ("Rhodium").  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

45.     In sum, during the Final Compensation Period, Akin attorneys researched legal and factual issues concerning the Debtors' rights under the SAFE in light of Rhodium's announced plan of merger ("Merger") with SilverSun Technologies, Inc. ("SilverSun"), as described in the SilverSun Form 8-K dated September 29, 2022.  Akin attorneys conducted extensive diligence regarding the Merger and its proposed treatment of SAFE holders, and exchanged correspondence with counsel for Rhodium concerning what Celsius believed was insufficient consideration being provided in respect of the SAFE in connection with the Merger.  In addition, on behalf of the Debtors, Akin engaged with Rhodium on these issues, including through efforts to obtain the documents and information needed in support of the Debtors' review and expressing the Debtors' position with respect to the Merger's proposed treatment of the SAFE.

46.     In particular, during the Final Compensation Period, Akin attorneys conducted extensive negotiations with counsel for Rhodium to ensure Rhodium provided appropriate documents and disclosures in response to the subpoena Akin served on Rhodium  pursuant to the Court's May 23, 2023 order granting Celsius' *Ex Parte Motion for Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of Rhodium Enterprises, Inc.* [Docket No. 2697] (the "Rule 2004 Subpoena").  As a result of these negotiations, Rhodium collected and produced over 5,000 documents retrieved through an ad hoc, manual collection procedure and collected and reviewed an additional approximately 58,000 unique documents returned through searches of electronically stored information.  Akin attorneys reviewed the substantial number of documents produced by

Rhodium and analyzed their implications with respect to Rhodium's proposed treatment of the Celsius SAFE and Celsius' potential claims with respect thereto.

47.     Akin attorneys additionally defended Celsius in the adversary proceeding styled, *Rhodium Enterprises, Inc. v. Celsius Mining LLC*, Adv. No. 23-01101 (MG), (the "Rhodium Adversary Proceeding"), which Rhodium preemptively filed against Celsius seeking a declaratory judgment against Celsius endorsing Rhodium's proposed treatment of the Celsius SAFE in connection with the Merger and requesting expedited treatment of the case due to Rhodium's alleged need to close the Merger by June 30, 2023.  In connection with its work in defending against the Rhodium Adversary Proceeding, Akin professionals conducted a thorough review of Rhodium's complaint, researched various legal issues, and prepared detailed analyses regarding same.  Akin additionally defended on an expedited basis against Rhodium's request for permission to file a pre-discovery motion for summary judgment.  Akin also prepared and served discovery requests on Rhodium, prepared draft initial disclosures pursuant to Federal Rule of Civil Procedure 26, and researched and drafted an answer and counterclaims in response to Rhodium's complaint. Akin's defense of the Rhodium Adversary Proceeding ultimately resulted in Rhodium filing a *Notice of Voluntary Dismissal Without Prejudice* [Adv. Proc. No. 25], dismissing in full the Rhodium Adversary Proceeding.

48.     Throughout all of these efforts, Akin professionals engaged in extensive negotiations with counsel for Rhodium regarding the treatment of the SAFE in connection with the Merger and other efforts to reach a consensual resolution of Celsius' dispute with Rhodium. In connection therewith, Akin attorneys held numerous calls and conferences and exchanged various correspondence with Rhodium's counsel, and Akin was ultimately able to negotiate an agreement in principle to resolve its dispute with Rhodium through a deal that would have improved the consideration to be received by Celsius as a result of the Merger by as much as $30

million or more.[8]

### H.    Voyager Digital (Task Code 10)

| Total Hours | Fees |
| --- | --- |
| 608.30 | $694,499.40 |

49.    On November 5, 2022, the Debtors' bankruptcy counsel asked Akin to act as conflicts counsel in connection with transfers the Debtors' bankruptcy professionals had identified during the 90 days prior to the filing of the Chapter 11 Cases by Voyager Digital Holdings, Inc. and its affiliated debtors (collectively, "Voyager"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York (consolidated as Case No. 22-10943 (MEW), the "Voyager Bankruptcy Cases" and, such court, the "Voyager Bankruptcy Court").  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

50.    In sum, during the Final Compensation Period, Akin professionals investigated the historical business relationship between Celsius and Voyager, determined that Celsius had meritorious preference claims against Voyager, and did everything possible to try and assert those claims on Celsius' behalf.  The major challenge confronting Akin in the matter was the passing of the unsecured claim bar date in the Voyager Bankruptcy Cases before Celsius became aware of its preference claims and before Akin was retained.  As such, in order to assert the preference claims against Voyager, Akin sought leave to file its Late Claim Motion against Voyager.  Prior to and after filing the Late Claim Motion, Akin attempted to engage in conversations with various representatives of Voyager in an effort to resolve the issues consensually, but Voyager by and large failed to engage.  Instead, Voyager and the Voyager Unsecured Creditors Committee filed lengthy objections to the Late Claim Motion which Akin replied to on Celsius' behalf.  Akin then appeared and participated in an evidentiary hearing on the Late Claim Motion, which resulted in

---

[8] SilverSun ultimately filed an 8-K on October 13, 2023, stating that it had terminated the Agreement and Plan of Merger with Rhodium.

the Voyager court denying the Late Claim Motion without prejudice to Celsius renewing the motion supported by additional evidence.  Following entry of the order, Akin professionals performed additional investigatory work and prepared supplemental declarations in the event Celsius opts to renew the motion.  Akin also made a settlement proposal to Voyager, and Voyager made a counter-offer to Celsius, following which the parties agreed to postpone further discussions until such time as a Litigation Administrator is appointed.

## I.    BlockFi (Task Code 12)

| Total Hours | Fees |
|:-:|:-:|
| 43.20 | $36,835.65 |

51.    Akin acts as conflicts counsel to the Debtors in connection with any potential claims that any of the Debtors may have against BlockFi Inc. and its affiliated debtors (collectively, "BlockFi"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of New Jersey (consolidated as Case No. 22-19361, the "BlockFi Bankruptcy Cases").  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

52.    During the Final Compensation Period, Akin professionals performed an analysis of potential claims that the Debtors may possess against BlockFi, including potential avoidance actions against BlockFi as recipient or subsequent transferee of Celsius assets.  Akin filed a protective proof of claim against BlockFi in the BlockFi Bankruptcy Cases on behalf of the Debtors on March 30, 2023 and continued to monitor the BlockFi bankruptcy docket thereafter.

## J.    StakeHound (Task Code 13)[9]

| Total Hours | Fees |
|:-:|:-:|
| 4,630.70 | $5,362,368.75 |

---

[9]    Capitalized terms used in this StakeHound summary, but not otherwise defined herein, shall have the meanings given to them in the StakeHound Adversary Proceeding (defined herein).

53.     This category includes time spent by Akin professionals in connection with the adversary proceeding styled, *Celsius Network Limited v. StakeHound SA*, Adv. No. 22-01138 (MG), which was filed on July 11, 2023 (the "StakeHound Adversary Proceeding").  Incorporated herein by reference are the detailed descriptions of this task code included in the Interim Fee Applications.

54.     During the Final Compensation Period, Akin zealously prosecuted its claims against StakeHound and achieved an outstanding result.  At the outset of the case, Akin attempted to negotiate with StakeHound to avoid litigation, but StakeHound rejected this approach and commenced an arbitration in Switzerland seeking to retain all or nearly all the ETH at issue.  Akin thereafter filed its lawsuit against StakeHound in this Court seeking a declaration that the Swiss arbitration was void in violation of the automatic stay and asserting many causes of action seeking to recover all the tokens it had provided to StakeHound, together with all the rewards accrued thereon, or the value thereof.

55.     Following the commencement of the lawsuit, Akin litigated with StakeHound intensely. As described at greater length in the Interim Fee Statements, Akin professionals appeared at eight different hearings and/or Court conferences; researched, drafted, and filed 10 different briefs supported by 12 different witness declarations, as well as three substantive letters concerning scheduling and other disputes; engaged in extensive document discovery efforts including the review of 15,000 documents, took and defended depositions, and otherwise prepared for trial.  As a result of these efforts, StakeHound eventually agreed to accept service of the complaint (avoiding a time-intensive service process through the Hague Convention); StakeHound agreed to submit to the jurisdiction of the Court and withdrew its motion to dismiss for lack of personal jurisdiction; the Court issued an order finding the Swiss Arbitration in violation of the automatic stay; and the Court issued a Temporary Restraining Order freezing nearly all of StakeHound's assets.

56.     Following these various litigation victories, and with its assets almost entirely

frozen, StakeHound moved the Court to order mediation.  Celsius agreed, and Akin prepared a

mediation statement, participated in a two-day mediation, and engaged in lengthy negotiations

concerning the terms of settlement of the StakeHound Matter.  Ultimately, the case was settled on

highly favorable terms, with StakeHound agreeing to turn over tokens that collectively are worth

more than $105 million at recent prices.  In addition, Celsius acquired valuable rights with respect

to StakeHound's litigation against Fireblocks, Inc. in Israel, which StakeHound values at $190

million or more and could result in Celsius recovering all the coins (or their value) that Celsius

ever provided to StakeHound, and potentially substantially more.

## ACTUAL AND NECESSARY DISBURSEMENTS

57.     Akin seeks allowance of reimbursement of expenses in the amount of $521,732.63

(net of the Fee Examiner Reductions) for expenses incurred during the Final Compensation Period

in the course of providing professional services to the Debtors.  Akin's disbursement policies pass

through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost

is difficult to determine.  For example, as it relates to computerized research, Akin believes that it

does not make a profit on that service as a whole although the cost of any particular search is

difficult to ascertain.  Other reimbursable expenses (whether the service is performed by Akin in-

house or through a third-party vendor) include, but are not limited to, overtime meals, deliveries,

court costs and filing fees, transcript fees, computerized research and overtime travel.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

58.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"  *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

59.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

60.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of

calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[10] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 Collier on Bankruptcy ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

61.    Akin respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

      a.    <u>Time and Labor Required</u>. Akin billed a total of 14,107.30 hours of professional services and 850.90 hours of practice attorney, paraprofessional and other non-legal services during the Final Compensation Period. Akin has taken care to ensure that the time spent by its professionals and paraprofessionals was actually necessary and appropriate to ensure adequate representation of the Debtors. As evidenced by this Application, Akin attorneys and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Final Compensation Period. Akin's representation of the Debtors has required it to balance the need to provide quality services with the need to act quickly and represent the Debtors in the Litigation Matters in an effective, efficient and timely manner. Akin submits that the hours spent were reasonable given the complexity of the Litigation Matters, the significant legal and business issues raised, the pleadings filed in the various adversary proceedings and the obstacles faced by the Debtors with respect thereto.

      b.    <u>Novelty and Difficulty of the Questions</u>. Akin tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex issues with respect to the Litigation Matters. As further described herein, Akin's skilled

---

[10]    The factors articulated by the Fifth Circuit in *First Colonial*, were first articulated by the Fifth Circuit in *Johnson,* with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

teams assisted the Debtors in filing and prosecuting certain adversary proceedings and otherwise assisting with the Litigation Matters.

c. <u>Skill Requisite to Perform the Legal Services Properly</u>. Akin believes that its recognized experience and expertise with respect to, among other things, the Litigation Matters as well as general litigation matters, its ability to draw from highly experienced professionals in Akin's practice and its creative approach to issues has benefited the Debtors and their creditors. Due to the nature and complexity of the legal issues presented with respect to the Litigation Matters, Akin was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy and litigation matters.

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Engagement</u>. Due to the size of Akin's financial restructuring and litigation departments, Akin's representation of the Debtors as special litigation counsel did not preclude its acceptance of new clients, but the demands for immediate and substantive action with respect to the Litigation Matters imposed significant burdens on Akin professionals working concurrently on other matters.

e. <u>Customary Fee</u>. As set forth herein and in the Initial Retention Application, Akin agreed to provide a 10% discount to its standard billing rates for this engagement. With the exception of this 10% discount, the rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin's fee structure also is equivalent to the fee structure used by Akin for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Except with respect to the 10% discount described herein, Akin's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin increased the risk Akin was assuming by representing the Debtors in the Chapter 11 Cases. Despite this risk, Akin has achieved and will continue to strive for excellent and tangible results for the Debtors and the estates.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As further described herein, during the Final Compensation Period, Akin was under time pressure with respect to certain of the Litigation Matters as it was in the best interests of the estates.

h.   <u>Amount Involved and Results Obtained</u>.  Akin attorneys and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  As a result of its efforts during the Final Compensation Period, Akin was able to obtain significant positive results for the Debtors.  Among other things, as more fully described herein, Akin professionals also achieved considerable success in the StakeHound matter, including (i) service of the complaint by alternative service, (ii) the voluntary agreement by StakeHound to withdraw its motion to dismiss for lack of personal jurisdiction, (iii) entry of an order declaring the Swiss Arbitration in violation of the automatic stay, (iv) entry of a temporary restraining order freezing nearly all of StakeHound's assets and (v) a constructive denial of StakeHound's motion to reconsider the terms of the temporary restraining order.  These successes ultimately led to a highly favorable settlement that will return crypto assets to the Debtors' estates worth in excess of $100 million and provides the opportunity for significant additional upside.  Akin submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Debtors as more fully described herein.

i.   <u>Experience, Reputation and Ability of Attorneys</u>.  Akin is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries. Further, Akin has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases.  Akin's experience enabled it to perform the services described herein competently and expeditiously.

j.   <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k.   <u>Nature and Length of Professional Relationship</u>.  This Court entered the Initial Retention Order on September 16, 2022 authorizing the Debtors to employ Akin as special litigation counsel with respect to the Specified Litigation Matters, as of the Petition Date.  In addition, the Court has entered subsequent orders allowing the Debtors to retain Akin with respect to certain additional Litigation Matters.  Lastly, since March 2021, Akin has performed legal work for Celsius Network and certain of its affiliates.

62.   For the reasons set forth above, the services rendered by Akin were necessary and beneficial to the Debtors and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Debtors, Akin's demonstrated skill and expertise in bankruptcy and litigation (as well as other areas of expertise relevant to the Litigation Matters) and the customary compensation charged by comparably skilled

26

practitioners at Akin. Accordingly, Akin respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

63.     No agreement or understanding exists between Akin and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases. No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Final Compensation Period.

**<u>ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES</u>**

64.     The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

<table>
<tr><td><u>**Question**</u>:</td><td>Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.</td></tr>
<tr><td><u>Response</u>:</td><td>Yes, as set forth in the Initial Retention Application and herein, Akin agreed to provide a 10% discount to its standard billing rates for this engagement, which standard rates are consistent with (i) market rates for comparable services and (ii) the rates that Akin charges and will charge other comparable chapter 11 clients, regardless of the location of the chapter 11 case.</td></tr>
<tr><td><u>**Question**</u>:</td><td>If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?</td></tr>
<tr><td><u>Response</u>:</td><td>As further detailed on **<u>Exhibit D</u>** attached hereto, Akin did not exceed the total fees budgeted for the Final Compensation Period.</td></tr>
<tr><td><u>**Question**</u>:</td><td>Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?</td></tr>
<tr><td><u>Response</u>:</td><td>No.</td></tr>
<tr><td><u>**Question**</u>:</td><td>Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.</td></tr>
<tr><td><u>Response</u>:</td><td>Yes. During the Final Compensation Period 605.20 hours and $648,863.55 in fees were billed to Task Code 2 (Akin Gump Monthly and Interim Fee Applications). In addition to voluntary reductions before each applicable monthly fee statement</td></tr>
</table>

was filed, Akin also agreed to certain further reductions in connection with the work performed in this task in connection with the Fee Examiner Reductions. Those deductions, because they were part of a global agreement with the Fee Examiner, are not specifically referenced herein.

**Question**:   Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:   See above.

**Question**:   If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:   There was one rate during the Final Compensation Period. In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year). Pursuant to the Initial Retention Order, on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023. Moreover, although outside the Final Compensation Period, on December 14, 2023, Akin filed a notice of rate increase [Docket No. 4095], disclosing Akin's rate increases that went into effect on January 1, 2024.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Final Compensation Period but were not processed prior to the preparation of the Application, Akin reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## CONCLUSION

WHEREFORE, Akin respectfully requests: (i) final allowance of compensation for professional services rendered to the Committee during the Final Compensation Period in the

28

amount of $16,386,734.43 and (ii) reimbursement of actual and necessary expenses in the amount

of $521,732.63; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: January 22, 2024      **AKIN GUMP STRAUSS HAUER & FELD LLP**
New York, New York

By: *_/s/ Mitchell P. Hurley_*
    Mitchell P. Hurley
    Dean L. Chapman
    One Bryant Park
    New York, New York 10036
    Telephone: (212) 872-1000
    Facsimile: (212) 872-1002
    mhurley@akingump.com
    dchapman@akingump.com

    *Special Litigation Counsel to the Debtors and Debtors
    in Possession*

## **EXHIBIT A**

**CERTIFICATION OF MITCHELL P. HURLEY**

**UNITED STATES DISTRICT BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**CERTIFICATION UNDER THE FEE GUIDELINES IN
RESPECT OF THE FINAL FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD JULY 13, 2022 THROUGH AND INCLUDING NOVEMBER 9, 2023**

I, Mitchell P. Hurley, hereby certify that:

1.      I am a partner with Akin,[2] with responsibility for the Litigation Matters in these Chapter 11 Cases.  Akin is special litigation counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Final Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

    (a)    I have read the Application;
    (b)    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

(c)    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin and generally accepted by Akin's clients, subject to the 10% discount that Akin has agreed to provide to the Debtors in connection with the Litigation Matters; and

(d)    in providing a reimbursable service, Akin does not make a profit on that service, whether the service is performed by Akin in-house or through a third party.

4.    In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin has complied with those provisions requiring it to provide the Debtors with a statement of Akin's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines.

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors and the U.S. Trustee are each being provided with a copy of the Application.

Dated: New York, New York              By:  */s/ Mitchell P. Hurley*
January 22, 2024                        Mitchell P. Hurley

## **EXHIBIT B**

### **CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and Dallas Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,409.74 | $1,504.82 |
| Senior Counsel and Counsel | $1,076.43 | $1,126.24 |
| Associate | $785.58 | $772.13 |
| Paraprofessionals/ Practice Attorneys / EDiscovery | $425.45 | $457.34 |
| **All Timekeepers Aggregated** | **$1,040.36** | **$1,109.27** |

---

[1]     Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin in which timekeepers collectively billed more than 10% of the hours to these cases during the Final Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12-month period ending November 9, 2023. For the blended rate billed in this Application, Akin calculated the blended rates for timekeepers who billed during the Final Compensation period by dividing the total dollar amounts billed by such timekeepers by the total number of hours billed by such timekeepers. Accordingly, these blended rate do not reflect the Fee Examiner Reductions.

**EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partners | Department | Year of Admission | Rate[1] | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Dean L. Chapman | Litigation | 2006 | $1,552.50 | 1,758.50 | $2,560,011.75 |
| Mitchell Hurley | Litigation | 1997 | $1,795.50 | 2,140.40 | $3,697,300.80 |
| Eli Miller | Corporate | 2009 | $1,296.00 | 23.10 | $28,954.80 |
| Arik Preis | Financial Restructuring | 2001 | $1,597.50 | 9.00 | $14,377.50 |
| Elizabeth Scott | Litigation | 2007 | $1,278.00 | 1,388.50 | $1,702,399.50 |
| Rosa A. Testani | Corporate | 1989 | $1,795.50 | 21.90 | $39,321.45 |
| Justin Williams | Litigation | 1993 | $1,507.50 | 25.70 | $38,742.75 |
| Sarah K. Withers[2] | Corporate | 2014 | $1,224.00 | 16.30 | $19,951.20 |
| **Partner Total:** | | | | **5,383.40** | **$8,101,059.75** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **Rate** | **Total Hours** | **Total Compensation** |
| Braden Allman[3] | Litigation | 2018 | $1,008.00 | 57.70 | $58,161.60 |
| Adam A. Bereston | Litigation | 2017 | $1,008.00 | 80.40 | $81,043.20 |
| Nathaniel B. Botwinick | Litigation | 2017 | $949.50 | 68.20 | $64,755.90 |
| Kristen W. Chin | Litigation | 2015 | $981.00 | 57.80 | $56,701.80 |
| Christine Doniak | Litigation | 1999 | $949.50 | 68.40 | $64,945.80 |
| John P. Kane | Litigation | 2016 | $1,017.00 | 113.60 | $115,531.20 |
| Jeffrey A. Latov | Litigation | 2017 | $1,188.00 | 384.40 | $456,667.20 |
| Matthew Lloyd | Litigation | 2012 | $1,098.00 | 31.70 | $34,806.60 |
| Nicholas R. Lombardi | Litigation | 2018 | $1,188.00 | 1,172.00 | $1,392,336.00 |
| Jessica Mannon[4] | Litigation | 2017 | $1,008.00 | 797.90 | $804,283.20 |
| Joanna F. Newdeck | Financial Restructuring | 2005 | $1,350.00 | 467.90 | $603,135.00 |
| Patrick G. O'Brien | Litigation | 2004 | $1,111.50 | 27.30 | $30,343.95 |
| Erin E. Parlar | Litigation | 2015 | $1,071.00 | 5.20 | $5,569.20 |
| Heather L. Peckham | Litigation | 2000 | $1,111.50 | 502.90 | $553,378.95 |
| Tiffanye Threadcraft | Corporate | 2013 | $1,242.00 | 6.30 | $7,824.60 |
| Sarah K. Withers | Corporate | 2014 | $963.00 | 17.20 | $16,563.60 |
| **Senior Counsel & Counsel Total:** | | | | **3,858.90** | **$4,346,047.80** |

---

[1]    On January 1, 2023, Akin increased its hourly rates. The amounts in this column reflect the hourly rates for timekeepers in effect at the time the services were last rendered by such timekeeper.

[2]    Sarah Withers was promoted to the position of Partner, effective as of January 1, 2023. Accordingly, the time Ms. Withers billed as Counsel, prior to her promotion to Partner, is listed separately.

[3]    Braden Allman was promoted to the position of Counsel, effective as of January 1, 2023. Accordingly, the time Mr. Allman billed as Associate, prior to his promotion to Counsel, is listed separately.

[4]    Jessica Mannon was promoted to the position of Counsel, effective as of January 1, 2023. Accordingly, the time Ms. Mannon billed as Associate, prior to her promotion to Counsel, is listed separately.

| Associates | Department | Year of Admission | 2023 Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Jasmine Alexander | Litigation | 2022 | $711.00 | 11.20 | $7,963.20 |
| Braden Allman | Litigation | 2018 | $846.00 | 198.30 | $167,761.80 |
| Fatima M. Bishtawi | Litigation | 2021 | $864.00 | 21.60 | $18,662.40 |
| Alexandra E. Boyd | Litigation | 2019 | $963.00 | 27.70 | $26,675.10 |
| Daniel A. Chasin | Litigation | 2023 | $711.00 | 20.70 | $14,717.70 |
| Michael Chen | Litigation | 2019 | $1,012.50 | 368.30 | $353,409.75 |
| Richard A. Cochrane | Litigation | 2019 | $891.00 | 275.60 | $236,542.50 |
| Maddalena Desimone | Litigation | 2021 | $864.00 | 29.30 | $25,315.20 |
| Evan D. Frohman | Litigation | 2021 | $864.00 | 5.50 | $4,752.00 |
| Victoria Fydrych | Litigation | 2020 | $940.50 | 59.00 | $55,489.50 |
| Tina M. Jeffcoat | Litigation | 2020 | $814.50 | 75.90 | $61,820.55 |
| Patrick Glackin | Litigation | 2019 | $1,012.50 | 232.80 | $210,816.00 |
| Jillian R. Kulikowski | Litigation | 2019 | $1,012.50 | 246.70 | $207,789.75 |
| Jane M. Mahan | Litigation | 2022 | $661.50 | 7.60 | $5,027.40 |
| Christina Makarova | Litigation | 2022 | $661.50 | 32.50 | $21,498.75 |
| Jessica Mannon | Litigation | 2017 | $846.00 | 829.90 | $702,095.40 |
| Kyle P. McGoey | Litigation | 2022 | $787.50 | 138.90 | $109,383.75 |
| Dara Mouhot | Litigation | 2022 | $603.00 | 15.50 | $9,346.50 |
| Matthew Myatt | Litigation | 2019 | $738.00 | 60.80 | $44,870.40 |
| Matthew S. Noxsel | Litigation | 2020 | $891.00 | 35.90 | $31,986.90 |
| Svetlana Pavlovic | Intellectual Property | 2019 | $1,012.50 | 28.40 | $28,755.00 |
| Michaela Pickus | Litigation | 2018 | $904.50 | 27.20 | $24,602.40 |
| Erica N. Reeves | Financial Restructuring | 2021 | $639.00 | 15.20 | $9,712.80 |
| Jessica H. Ro | Litigation | 2019 | $891.00 | 96.30 | $85,803.30 |
| Rachel Sereix | Litigation | 2023 | $711.00 | 15.00 | $10,665.00 |
| Michael Stanley | Litigation | 2022 | $661.50 | 1,707.70 | $1,077,894.45 |
| Kaila Zaharis | Financial Restructuring | 2022 | $787.50 | 281.50 | $203,074.20 |
| **Associate Total:** | | | | **4,865.00** | **$3,756,431.70** |
| **Paraprofessionals/ Staff Attorneys** | **Department** | **Year of Admission** | **2023 Rate** | **Total Hours** | **Total Compensation** |
| Frank Castro | Labor | N/A | $391.50 | 49.90 | $18,354.60 |
| Russell J. Collins | Litigation | 1998 | $522.00 | 117.70 | $61,439.40 |
| Adelle Else | Paralegal, Financial Restructuring | N/A | $243.00 | 5.60 | $1,360.80 |
| Julie Hunter | EDiscovery | N/A | $409.50 | 57.30 | $23,464.35 |
| Brenda R Kemp | Paralegal, Financial Restructuring | N/A | | 22.00 | $8,316.00 |

| | | | | | |
|---|---|---|---|---|---|
| Dagmara K. Krasa | Paralegal, Financial Restructuring | N/A | $459.00 | 5.90 | $2,708.10 |
| Amy Laaraj | Paralegal, Financial Restructuring | N/A | $459.00 | 329.00 | $150,535.35 |
| Jennifer Langmack | Litigation | N/A | $391.50 | 10.00 | $3,915.00 |
| Donna P. Moye | Litigation | 2001 | $571.50 | 64.30 | $36,747.45 |
| Christine Patton | Litigation | N/A | $346.50 | 16.50 | $5,717.25 |
| Frank Racanati | Trial Services | N/A | $310.50 | 9.70 | $3,011.85 |
| Risa J. Slavin | Litigation | N/A | $432.00 | 11.50 | $4,968.00 |
| David A. Smith | EDiscovery | N/A | $436.50 | 40.60 | $17,721.90 |
| Karen C. Woodhouse | Litigation | 2003 | $441.00 | 55.80 | $24,607.80 |
| Melodie Young | Litigation | 2003 | $477.00 | 55.10 | $26,282.70 |
| **Paraprofessional Total:** | | | | **850.90** | **$389,150.55** |
| **Total Hours / Fees Requested:** | | | | **14,958.20** | **$16,592,689.80** |
| **Total Fees Less Fee Examiner Reductions** | | | | | **$16,386,734.43** |

## EXHIBIT D

## SUMMARY OF COMPENSATION BY TASK CODE
## AGAINST BUDGETED HOURS AND FEES

| Task Code | Task Code Category | Hours Budgeted | | Amount Budgeted | | Actual Hours | Actual Amount |
|---|---|---|---|---|---|---|---|
| | | Low | High | Low | High | | |
| 2 | Akin Gump Monthly and Interim Fee Applications | 605.00 | 970.00 | $636,000.00 | $1,009,000.00 | 605.20 | $648,863.55 |
| 3 | Retention of Professionals | 225.00 | 395.00 | $251,000.00 | $457,000.00 | 283.60 | $298,586.25 |
| 4 | Case Administration | 140.00 | 460.00 | $168,000.00 | $503,000.00 | 221.60 | $183,658.95 |
| 5 | Stone/KeyFi | 6,025.00 | 9,775.00 | $6,985,000.00 | $11,045,000.00 | 6,316.00 | $6,674,240.25 |
| 6 | Prime Trust | 691.00 | 1,145.00 | $787,000.00 | $1,299,000.00 | 670.30 | $791,249.40 |
| 8 | Hearings | 85.00 | 235.00 | $107,000.00 | $256,000.00 | 99.30 | $129,877.20 |
| 9 | Rhodium | 1,005.00 | 3,080.00 | $1,159,500.00 | $3,622,500.00 | 1,461.90 | $1,751,142.15 |
| 10 | Voyager | 505.00 | 1,365.00 | $560,000.00 | $1,715,000.00 | 608.30 | $694,499.40 |
| 11 | Travel | N//A | N/A | N/A | N/A | 18.10 | $21,368.25 |
| 12 | BlockFi | 120.00 | 200.00 | $85,000.00 | $151,000.00 | 43.20 | $36,835.65 |
| 13 | StakeHound | 4,000.00 | 5,500.00 | $4,500,000.00 | $5,700,000.00 | 4,630.70 | $5,362,368.75 |
| **TOTAL** | | **13,401.00** | **23,125.00** | **$15,238,500.00** | **$25,757,500.00** | **14,958.20** | **$16,592,689.80** |
| **TOTAL FEES LESS FEE EXAMINER REDUCTIONS** | | | | | | | **$16,386,734.43** |

Akin did not provide a separate task code estimate for travel time. In addition, the budgeted fees and expenses did not include the stub period of November 1, 2023 – November 9, 2023. Notwithstanding the foregoing, as noted herein, the total fees sought for the Final Compensation Period are under the total budgeted amount.

**EXHIBIT E**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $8,517.78 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $269,274.98 |
| Computerized Legal Research - Courtlink - In Contract 50% Discount | $3,004.68 |
| Computerized Legal Research - Westlaw - out of contract | $794.16 |
| Computerized Legal Research - Other | $557.54 |
| Corporate Service Fees | $1,181.57 |
| Courier Service/Messenger Service - Off Site | $3,685.94 |
| Court Cost | $400.00 |
| Color Copy | $2,958.80 |
| Contract Labor - Attorney | $5,850.00 |
| Document Retrieval | $34.00 |
| Duplication - In House | $3,701.80 |
| Duplication - Off Site | $538.60 |
| Filing Fees | $1,450.00 |
| Imaging/Computerized Litigation Support | $962.50 |
| Meals - Business | $687.70 |
| Meals - Overtime | $485.00 |
| Meals - In House Catering | $1,265.61 |
| Postage | $39.25 |
| Professional Fees - Consultant Fees | $41,210.00 |
| Professional Fees - Legal | $83,951.90 |
| Professional Fees - Miscellaneous | $92,435.68 |
| Professional Fees - Process Server | $5,913.78 |
| Professional Fees - Translation Services | $195.00 |
| Research | $903.62 |
| Telephone - Long Distance | $280.00 |
| Deposition | $82.80 |
| Transcripts | $18,626.16 |
| Recruiting - Transcript Fees | $535.95 |
| Local Transportation - Overtime | $3,771.77 |

| | |
|---|---|
| Travel - Airfare | $2,102.35 |
| Travel - Ground Transportation | $2,169.92 |
| Travel - Incidentals - Out-of-Town Travel | $216.00 |
| Travel - Lodging (Hotel, Apt, Other) | $4,317.23 |
| Travel - Telephone & Fax | $8.00 |
| **TOTAL:** | **$562,110.07** |
| **TOTAL EXPENSES LESS FEE EXAMINER REDUCTIONS:** | **$521,732.63** |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Final Compensation Period | 2023 Average Hourly Rate (with 10% discount) |
|---|---|---|
| Partner | 6 | $1,540 |
| Senior Counsel and Counsel | 5 | $1,150 |
| Associate | 14 | $845 |
| Paralegals & Non-Legal Staff | 2 | $425 |