**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## ELEVENTH NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** that on November 9, 2023, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"), pursuant to which the Bankruptcy Court approved and confirmed the *Modified Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket Nos. 3972, Ex. A; 4289] (as amended, supplemented, or modified from time to time, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on July 28, 2023, Celsius Network LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed the *Notice of Filing of Plan Supplement* [Docket No. 3115] (the "First Plan Supplement") to the Plan, as set forth in the Plan and in accordance with the terms and conditions in the Plan Sponsor Agreement.

**PLEASE TAKE FURTHER NOTICE THAT** on August 13, 2023, the Debtors filed the *Second Notice of Filing of Plan Supplement* [Docket No. 3273] (the "Second Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on September 8, 2023, the Debtors filed the *Third Notice of Filing of Plan Supplement* [Docket No. 3444] (the "Third Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on September 15, 2023, the Debtors filed the *Fourth Notice of Filing of Plan Supplement* [Docket No. 3483] (the "Fourth Plan Supplement").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE THAT** on September 15, 2023, the Debtors filed the *Fifth Notice of Filing of Plan Supplement* [Docket No. 3550] (the "Fifth Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on September 27, 2023, the Debtors filed the *Sixth Notice of Filing of Plan Supplement* [Docket No. 3583] (the "Sixth Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on October 20, 2023, the Debtors filed the *Seventh Notice of Filing of Plan Supplement* [Docket No. 3869] (the "Seventh Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on October 30, 2023, the Debtors filed the *Eighth Notice of Filing of Plan Supplement* [Docket No. 3935] (the "Eighth Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on December 20, 2023, the Debtors filed the *Ninth Notice of Filing of Plan Supplement* [Docket No. 4132] (the "Ninth Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on December 25, 2023, the Debtors filed the *Tenth Notice of Filing of Plan Supplement* [Docket No. 4285] (the "Tenth Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file an addendum to the Plan Supplement (the "Eleventh Plan Supplement" and, together with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, the Fifth Plan Supplement, the Sixth Plan Supplement, the Seventh Plan Supplement, Eighth Plan Supplement, the Ninth Plan Supplement, and the Tenth Plan Supplement, the "Plan Supplement")[3], which includes the following documents:

| Exhibit | Document |
|---------|----------|
| A | Plan Administrator Agreement |
| A-1 | (Redline) Plan Administrator Agreement |
| B | M3 Litigation Administrator Agreement |
| B-1 | (Redline) M3 Litigation Administrator Agreement |
| C | Litigation Administrator (ARM) Agreement |
| D | Employee Transition Services Agreement (MiningCo) |
| E | Supplemental Employee Transition Services Agreement (MiningCo) |

---

[3]    **Annex 1** contains a listing of all documents filed in the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, the Fifth Plan Supplement, the Sixth Plan Supplement, the Seventh Plan Supplement, the Eighth Plan Supplement, the Ninth Plan Supplement, and the Tenth Plan Supplement.

F                MiningCo Transaction Steps Memorandum

**PLEASE TAKE FURTHER NOTICE THAT** certain documents or portions thereof contained in the Plan Supplement remain subject to ongoing negotiations among the Debtors and interested parties with respect thereto. The Debtors reserve all rights, subject to the terms and conditions set forth in the Plan, to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for in the Plan or an order of the Bankruptcy Court. Each of the documents contained in the Plan Supplement or its amendments are subject to certain consent and approval rights, including those provided in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT**, if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the Claims, Noticing, and Solicitation Agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Debtors' restructuring hotline at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

*[Rest of page intentionally left blank]*

New York, New York
Dated: January 31, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
        ross.kwasteniet@kirkland.com
        chris.koenig@kirkland.com
        dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Annex 1

I.    ***Notice of Filing of Plan Supplement*** **[Docket No. 3115].**

<u>Exhibit</u>      <u>Document</u>

A        Schedule of Released and Exculpated Parties

B        ADR Procedures

II.   ***Second Notice of Filing of Plan Supplement*** **[Docket No. 3273].**

<u>Exhibit</u>      <u>Document</u>

A        Schedule of Retained Causes of Action

B        Schedule of Equitably Subordinated Claims

C        Schedule of Excluded Parties

III.  ***Third Notice of Filing of Plan Supplement*** **[Docket No. 3444].**

<u>Exhibit</u>      <u>Document</u>

A        New Organizational Documents

B        Identities of the members of the New Board of NewCo

C        Schedule of Rejected Executory Contracts and Unexpired Leases

D        Schedule of Assumed Executory Contracts and Unexpired Leases

E        Litigation Administrator Agreements

F        Identity of Litigation Administrator

G        Identities of Litigation Oversight Committee Members

H        Employee Transition Services Agreement

I         Plan Administrator Budget

J         ADR Procedures (Redline at Exhibit J-1)

K        Schedule of Retained Causes of Action (Redline at Exhibit K-1)

**IV.**    ***Fourth Notice of Filing of Plan Supplement*** **[Docket No. 3483].**

| Exhibit | Document |
| --- | --- |
| A | Fahrenheit Management Agreement |
| B | Transaction Steps Memorandum |
| C | U.S. Bitcoin Agreements |
| D | Proof Group IP License |
| E | Plan Sponsor Contribution Agreement |
| F | Paxos Custodial Agreement |
| G | Coinbase Agreements |
| H | PayPal Agreement |
| I | Plan Administrator Agreement |
| J | Figure Lending, LLC Refinancing Term Sheet |
| K | NewCo Organizational Documents |
| K-1 | (Redline) NewCo Organizational Documents |

**V.**    ***Fifth Notice of Filing of Plan Supplement*** **[Docket No. 3550].**

| Exhibit | Document |
| --- | --- |
| A | Identities of the members of the New Board of NewCo |
| A-1 | (Redline) Identities of the members of the New Board of NewCo |

**VI.** ***Sixth Notice of Filing of Plan Supplement*** [Docket No. 3583].

| <u>Exhibit</u> | <u>Document</u> |
|:---:|:---|
| A | Identities of Litigation Oversight Committee Members |
| A-1 | (Redline) Identities of Litigation Oversight Committee Members |
| B | Coinbase Prime Brokerage Agreement |
| B-1 | (Redline) Coinbase Prime Brokerage Agreement |
| C | Litigation Administrator Agreement |
| C-1 | (Redline) Litigation Administrator Agreement |
| D | Plan Administrator Agreement |
| D-1 | (Redline) Plan Administrator Agreement |
| E | Schedule of Excluded Parties |
| E-1 | (Redline) Schedule of Excluded Parties |
| F | Board Observer Agreement |
| G | Identities of the Board Observers |
| H | NewCo Board Terms |

**VII.** ***Seventh Notice of Filing of Plan Supplement*** [Docket No. 3869].

| <u>Exhibit</u> | <u>Document</u> |
|:---:|:---|
| A | Schedule of Retained Causes of Action |
| A-1 | (Redline) Schedule of Retained Causes of Action |
| B | ADR Procedures |
| B-1 | (Redline) ADR Procedures |
| C | ADR Valuation Form |
| D | Litigation Administrator Agreement |
| D-1 | (Redline) Litigation Administrator Agreement |
| E | Plan Administrator Agreement |

| | |
|---|---|
| E-1 | (Redline) Plan Administrator Agreement |
| F | Paxos Agreement |
| F-1 | (Redline) Paxos Agreement |
| G | Coinbase Agreement |
| G-1 | (Redline) Coinbase Agreement |
| H | Schedule of Released and Exculpated Parties |
| H-1 | (Redline) Schedule of Released and Exculpated Parties |
| I | Registration Rights Agreement |
| J | U.S. Bitcoin Management Agreement |
| J-1 | (Redline) U.S. Bitcoin Management Agreement |
| K | Proof Group IP License |
| K-1 | (Redline) Proof Group IP License |
| L | U.S. Bitcoin Cedarvale Interim Services Agreement |
| L-1 | (Redline) U.S. Bitcoin Cedarvale Interim Services Agreement |
| M | PayPal Distribution Services Agreement |

**VIII.  *Eighth Notice of Filing of Plan Supplement* [Docket No. 3935].**

| __Exhibit__ | __Document__ |
|---|---|
| A | Paxos Agreement |
| A-1 | (Redline) Paxos Agreement |
| B | Litigation Administrator Agreement |
| B-1 | (Redline) Litigation Administrator Agreement |
| C | U.S. Bitcoin Management Agreement |
| C-1 | (Redline) U.S. Bitcoin Management Agreement |
| D | U.S. Bitcoin Cedarvale Interim Services Agreement |
| D-1 | (Redline) U.S. Bitcoin Cedarvale Interim Services Agreement |

**IX.**   ***Ninth Notice of Filing of Plan Supplement*** **[Docket No. 4132].**

| **Exhibit** | **Document** |
|---|---|
| A | MiningCo Management Agreement |
| B | U.S. Bitcoin Cedarvale Interim Services Agreement |
| B-1 | (Redline) U.S. Bitcoin Cedarvale Interim Services Agreement |

**X.**   ***Tenth Notice of Filing of Plan Supplement*** **[Docket No. 4285].**

| **Exhibit** | **Document** |
|---|---|
| A | Registration Rights Agreement |
| A-1 | (Redline) Registration Rights Agreement |
| B | Schedule of Retained Causes of Action |
| B-1 | (Redline) Schedule of Retained Causes of Action |
| C | MiningCo Organizational Documents |
| D | Plan Sponsor Contribution Agreement |
| D-1 | (Redline) Plan Sponsor Contribution Agreement |
| E | Schedule of Released and Exculpated Parties |
| E-1 | (Redline) Schedule of Released and Exculpated Parties |
| F | Equity Incentive Plan |
| G | MiningCo Management Agreement |
| G-1 | (Redline) MiningCo Management Agreement |
| H | Identities of MiningCo Board Members |
| I | Schedule of Excluded Parties |
| I-1 | (Redline) Schedule of Excluded Parties |

## Exhibit A

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This PLAN ADMINISTRATOR AGREEMENT (this "Agreement"), which shall constitute the "Plan Administrator Agreement" under, as defined in, and for all purposes of the Plan, unless and until it is replaced by an agreement with a successor "Plan Administrator" appointed under the Plan pursuant to Section 14 hereof, dated as of [●], by and among (a) Celsius Network LLC, on behalf of itself, its debtor affiliates, and any subsidiaries that agree to be treated as a Post-Effective Date Debtor hereunder (collectively, the "Debtors" or the "Post-Effective Date Debtors," as applicable), (b) Christopher Ferraro, who shall constitute (and is deemed designated) the "Plan Administrator" under, as defined in, and for all purposes of the Plan, unless and until the Plan Administrator ceases to be the "Plan Administrator" hereunder (the "Plan Administrator"), and (c) the Committee (together with the Debtors and the Plan Administrator, the "Parties"), sets forth the Plan Administrator's rights, powers, and obligations in connection with the Plan pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (as may be amended, modified, or supplemented from time to time, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1.    Appointment.    Effective as of the Effective Date (as defined in the Plan), the Plan Administrator will be appointed to act as the Plan Administrator under the Plan for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, the Confirmation Order, and the Wind-Down Procedures, if applicable (collectively, the "Plan Documents"). As set forth in the Plan Documents, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, directors, managers, members, shareholders, and the Debtors' Estates from and following the Effective Date.

2.    Scope of Services.    The Plan Administrator shall provide post-Effective Date administration, wind down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the Plan Documents and to make certain distributions under the Plan. Without limiting the provisions of the Plan applicable to the Plan Administrator, the Plan Administrator shall perform the following services for the Post-Effective Date Debtors' Estates in its role as Plan Administrator for all purposes of the Plan (as such services may be further described in the Plan Documents or additional tasks required to be performed by the Plan Administrator as described in the Plan Documents):

(a)    make (or arrange for a Distribution Agent to make) the distributions contemplated by the Plan, including selection of dates of subsequent distributions as the Plan Administrator deems advisable after consultation with the Litigation Oversight Committee; provided that the Litigation Oversight Committee may petition the Bankruptcy Court, upon notice and hearing, to order the Plan Administrator to distribute any Litigation Proceeds or any other proceeds of assets monetized by any Litigation Administrator, to the extent such proceeds have not been distributed by the Plan Administrator (or scheduled for distribution) within a reasonable amount of time following receipt;

(b)    following the receipt of the proceeds of the monetization of the Convertible Notes and any new equity interests issued on account of such Convertible Notes (as defined in the *Debtors' Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors*

*and Core Scientific, (II) Authorizing Entry Into the Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers With Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3474]) (collectively, the "Core Proceeds") include the Core Proceeds in the next distribution to creditors and, to the extent practicable (including that there is a distribution agent available to make distributions of Liquid Cryptocurrency), convert the Core Proceeds into Liquid Cryptocurrency for such creditors entitled to receive Liquid Cryptocurrency as part of such distribution; *provided*, such Core Proceeds shall not be used for any other purpose by the Plan Administrator or any Litigation Administrators and shall not constitute any portion of the Plan Administrator Budget or Wind-Down Budget or any approved budget for any Litigation Administrators;

(c)    administer the Special Committee D&O Liability Insurance Policies;

(d)    evaluate in his discretion whether each of the EIP Participants have met the applicable metrics under the Emergence Incentive Plan, and authorize and distribute any payments under the Emergence Incentive Plan to the extent earned; *provided* that the Plan Administrator may consult with counsel and other advisors in interpreting the applicable provisions of the Plan and Confirmation Order and determining whether the applicable metrics have been met pursuant to the terms of the Emergence Incentive Plan;

(e)    manage and oversee all Wind Down Estate employment and retention matters;

(f)    cooperate with the Litigation Administrator with respect to its duties, as set forth in the Plan Documents and the Litigation Administrator Agreement;

(g)    cooperate with the Litigation Administrator (ARM) with respect to its duties, as set forth in the Plan Documents and the Litigation Administrator (ARM) Agreement;

(h)    prosecute any Causes of Action that vest in the Post-Effective Date Debtors and are not otherwise delegated to (i) the Litigation Administrator pursuant to the Plan or delegated to the Litigation Administrator in writing by the Plan Administrator; or (ii) the Litigation Administrator (ARM) pursuant to the Litigation Administrator (ARM) Agreement or delegated to the Litigation Administrator (ARM) in writing by the Plan Administrator or the Litigation Oversight Committee, as applicable;

(i)    to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), marshal, market for sale, and wind down the Debtors' assets (other than the Mining Assets);

(j)    to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), recover and compel turnover of the Debtors' property in accordance with the Plan;

(k)    manage the Plan Administrator Budget or Wind-Down Budget, as applicable, and pay the Wind-Down Expenses, if any;

(l)      to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), abandon any Post-Effective Date Debtors' Assets that cannot be sold or otherwise disposed of for value and where a distribution to Holders of Allowed Claims or Interests would not be feasible or cost-effective in the Plan Administrator's reasonable judgment;

(m)      prepare and file post-Effective Date operating reports (including the month in which the Effective Date occurs);

(n)      file appropriate tax returns in the exercise of the Plan Administrator's fiduciary obligations, including, as appropriate, requesting an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws, pursuant to section 505(b) of the Bankruptcy Code;

(o)      to the extent necessary or appropriate under applicable law or regulations, other than with respect to the Litigation Administrator, the Litigation Administrator (ARM), and the Members of the Litigation Oversight Committee, the Plan Administrator may appoint himself or others as officers, managers, or directors of any of the Debtors or Post-Effective Date Debtors;

(p)      at the appropriate time, file a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of the Post-Effective Date Debtors under the applicable laws of their respective states or countries of incorporation or formation (as applicable);

(q)      be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(r)      retain such professionals as are reasonably necessary and appropriate in furtherance of the Plan Administrator's fiduciary obligations;

(s)      cause the Post-Effective Date Debtors to comply with, and abide by, the terms of the MiningCo Transaction and any other documents contemplated thereby;

(t)      to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), take such actions as are necessary and reasonable to carry out the purposes of the Plan, including winding down the Debtors' business affairs; and

(u)      implement the Orderly Wind Down.

3.      Reporting.  The Plan Administrator shall provide monthly status updates to the Litigation Oversight Committee, as well as file quarterly reports on the docket of the Chapter 11 Cases, commencing on the date that is the three-month anniversary of the Effective Date, with respect to the assets of the Post-Effective Date Debtors, the receipts and expenditures of the Post-Effective Date Debtors, and information regarding the remaining tasks to be completed to close the Debtors'

3

estates and the estimated time until completion of the Plan Administrator's duties under the Plan and this Agreement.

4.      <u>Distribution Following Bankruptcy Case Closing</u>.  To the extent that the Post-Effective Date Debtors have any Cash or other property remaining after the Chapter 11 Cases have been closed and all payments have been made under the Plan (including all payments on account of Allowed Claims and the Plan Administrator's compensation and reimbursement) and the conclusion of all litigation being pursued by any Litigation Administrator, the Plan Administrator shall consult with the Litigation Oversight Committee regarding the distribution of such remaining property, Pro Rata to the Holders of Claims entitled to receive Litigation Proceeds, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  If such distributions are, in the Plan Administrator's reasonable judgment, infeasible to distribute Pro Rata or for any other reason such distributions cannot be effectuated, the Plan Administrator may contribute such amounts to MiningCo for the benefit of holders of MiningCo Common Stock in the event the MiningCo Transaction is consummated; <u>provided</u> <u>that</u> the Litigation Oversight Committee or any other interested party may petition the Bankruptcy Court, upon notice and hearing, to order the Plan Administrator to distribute such remaining Cash or assets to Holders of Claims entitled to receive Litigation Proceeds.

5.      <u>Timing and Fees</u>.

        (a)     The Plan Administrator will commence its responsibilities on the Effective Date.

        (b)     The Post-Effective Date Debtors shall pay the Plan Administrator's compensation and reimburse the Plan Administrator's expenses as set forth herein as such amounts come due without the need for Bankruptcy Court approval.

        (c)     The Plan Administrator's compensation shall be based upon an initial term of 5 years, to be paid as follows:  $200,000 per month for the first three months following the Effective Date, $100,000 per month for the fourth through twenty-fourth months following the Effective Date, $58,000 per month for the third year, and $25,000 per month for the fourth and fifth years.

        (d)     The Plan Administrator's compensation shall be payable from the Post-Effective Date Debtors' Assets on a monthly basis in advance not later than the first business day of each month.

        (e)     In addition, once the Plan Administrator makes the redistribution amount of liquid cryptocurrency available to creditors after the 12 month period in the Plan for creditors to claim unclaimed distributions expires, the Plan Administrator shall receive a substantial completion bonus in the amount of $1,000,000, which shall be payable from the Post-Effective Date Debtors' Assets.

        (f)     If, prior to the expiration of the initial 5 year term, all distributions have been made under the Plan and the Chapter 11 Cases have been closed, the Plan Administrator shall receive an early completion bonus equal to 3 months' compensation at the applicable rate.  The Plan Administrator shall have no further duties or compensation after the date the Chapter 11 Cases

have been closed, and the Plan Administrator may designate a successor Plan Administrator (subject to the reasonable consent of the Litigation Oversight Committee) to complete the wind down of the Post-Effective Date Debtors.

(g)    In addition to the foregoing, the Plan Administrator shall be entitled to reimbursement of actual, reasonable, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(h)    The Plan Administrator may retain any professionals reasonably necessary to the Plan Administrator, and any professionals retained by the Plan Administrator pursuant to the terms of this Agreement shall be paid as set forth in the applicable professional's engagement letter, which shall be payable from the Post-Effective Date Debtors' Assets in accordance with the terms of this Agreement and the terms of the applicable professional's engagement letter.

6.    <u>Relationship of the Parties</u>.  The Parties intend that the Plan Administrator will continue as a full-time employee of Celsius Network LLC for fifteen (15) months following the Effective Date. During this time, the Plan Administrator shall be entitled to continue to receive employee benefits from the Debtors or Post-Effective Date Debtors or their Estates, as may be applicable, including vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits available to employees of the Company.  At the conclusion of the fifteen-month period, the Company and the Plan Administrator may evaluate whether an independent contractor relationship would be more appropriate.  Notwithstanding the foregoing, as stated by the Plan, at all times the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan.

7.    <u>Access to Resources</u>.  Any requests for information by the Litigation Administrator (ARM) to the Plan Administrator shall be made through an individual from Alvarez & Marsal to be designated by the Plan Administrator prior to or on the Effective Date (such person, the "<u>Gatekeeper</u>") and subject to the terms of Article V of the Litigation Administrator (ARM) Agreement. The Plan Administrator shall have direct and sole management and oversight of Wind Down Estate employment and retention matters.  Interested parties (including the Litigation Oversight Committee and any Litigation Administrator) shall receive timely notice of any proposed terminations of employees and consultants.  For the avoidance of doubt, any Celsius employee who is employed by the estates post-emergence shall report to the Plan Administrator, provided that the Litigation Oversight Committee shall have the ability to resolve disputes regarding the Litigation Administrator (ARM)'s or other Litigation Administrator's reasonable access to employees.

8.    <u>Non-Disparagement</u>.  Through the later of (i) the date on which this Agreement terminates under section 14, and (ii) five (5) years following the Effective Date, the Debtors, the Committee, the Plan Administrator, the Litigation Administrator (ARM), the Litigation Administrator, and the Litigation Oversight Committee (collectively, the "<u>Non-Disparagement Parties</u>") shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current

directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Non-Disparagement Parties, the professionals or employees of the other Non-Disparagement Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Non-Disparagement Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in clause (i) of this Section 8; *provided* that the foregoing shall not prevent the Non-Disparagement Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information. These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan.

9.    Tax and Regulatory Filings.  The Plan Administrator shall be responsible for all pre-Effective Date tax filings, including, for the avoidance of doubt, all 2023, stub 2024 and prior tax filings.  The Plan Administrator shall be responsible for all regulatory filings and financial reporting for the Estates post-Effective Date; provided, that the Plan Administrator shall first present such filings and reports to the Litigation Oversight Committee and consult with the Litigation Oversight Committee with respect to such filings and reports; provided, that each Litigation Administrator shall make regular reports to the Court as set forth in the applicable agreement governing each Litigation Administrator's services.

10.    D&O Liability Insurance.  The Post-Effective Date Debtors shall purchase director and officer liability insurance ("D&O Insurance") that will cover the Plan Administrator with respect to carrying out the Plan Administrator's duties in an amount and on terms reasonably acceptable to the Plan Administrator.

11.    Confidentiality.  The Plan Administrator shall treat confidentially all information not publicly available that is received by the Plan Administrator in connection with this engagement or that is developed during this engagement, and the Plan Administrator shall not disclose such information except as required by a court order or other legal process.

12.    Indemnity.  The Post-Effective Date Debtors shall indemnify and defend the Plan Administrator and all professionals engaged by the Plan Administrator, to the maximum extent permitted by applicable law, from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) (collectively, "Damages") asserted against it by reason of or arising out of or related to this Agreement or performance under this Agreement or any related transactions that are taken or omitted to be taken as set forth in this Agreement; provided that there shall be no obligation to indemnify or defend the Plan Administrator or its professionals on account of damages that are determined, in a Final Order, to have arisen primarily from the Plan Administrator's or such professional's gross negligence or willful misconduct, or from the Plan Administrator's breach of the terms of this Agreement or the Plan; provided, further, that no indemnification shall be provided for any distribution agent engaged by the Plan Administrator to the extent such indemnification is not provided for under the terms of engagement between the Plan Administrator and such distribution agent.  The indemnification established hereunder shall not be effective unless the Plan Administrator provides notice to any Litigation Administrator and its counsel of any demand for indemnification within 60 days of the Plan Administrator's knowledge of any such indemnifiable claim or expense.

13.   Exculpation.  The Plan Administrator and any professional engaged by the Plan Administrator shall not be liable for any act or omission in connection with the discharge by the Plan Administrator or such professional of the powers and duties conferred upon the Plan Administrator by the Plan, this Agreement, any Final Order, or applicable law, except to the extent that such liability is due to an act or omission that is determined, in a Final Order, to be due to the Plan Administrator's or such professional's gross negligence or willful misconduct; provided, that no exculpation shall be provided for any distribution agent engaged by the Plan Administrator to the extent such exculpation is not provided for under the terms of engagement between the Plan Administrator and such distribution agent.  Nothing contained in this Section 13 shall preclude or impair any Holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Plan Administrator to compel the Plan Administrator to make the distributions contemplated by the Plan on account of such Allowed Claim.  The Plan Administrator shall also be exculpated with respect to any potential liability in connection with actions taken by the Litigation Administrator or by the Litigation Administrator (ARM).  For the avoidance of doubt, any exculpation relating to the period prior to the Effective Date shall be subject to the same limitations as set forth in the Confirmation Order for exculpation under the Plan.  For the avoidance of doubt, it is understood and agreed that Christopher Ferraro shall have no personal liability for any acts, omissions or claims relating to or resulting from his service as the Plan Administrator and any such claims will be paid out of the Wind Down Estate.

14.   Termination; Effect of Termination.

(a)   This Agreement shall terminate automatically after all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the Plan Administrator's compensation and reimbursement).

(b)   The Plan Administrator may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, who shall be selected by the Plan Administrator subject to the reasonable consent of the Litigation Oversight Committee.  If the Plan Administrator's appointed successor is not approved by the Litigation Oversight Committee, the Plan Administrator shall continue to fulfill his obligations pursuant to this agreement for no more than sixty (60) days following resignation. Upon the appointment of a successor Plan Administrator, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor Plan Administrator shall be terminated.

(c)   The Plan Administrator may be terminated by the Bankruptcy Court for cause shown after notice and a hearing.  If the Bankruptcy Court terminates the Plan Administrator, the Bankruptcy Court shall appoint a permanent or interim successor Plan Administrator, who shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator pursuant to this Agreement, the Plan, and the Confirmation Order.

(d)   This Agreement may be terminated for cause shown pursuant to a Final Order entered by the Bankruptcy Court after notice and a hearing; provided that in the event that this Agreement is terminated before its automatic termination as provided in Section 14(a), the

Bankruptcy Court shall appoint a successor Plan Administrator to fill the vacancy left by the termination of this Agreement.

(e)     Upon termination of this Agreement or resignation of the Plan Administrator, the Plan Administrator shall be entitled to all fees and expenses accrued to that date pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to the termination date or resignation date.

15.     <u>Effectiveness</u>.  This Agreement shall be effective upon the Effective Date.

16.     <u>Notice</u>.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail (with hard copy to follow) during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

To the Post-Effective Date Debtors:

c/o Celsius Network LLC
50 Harrison Street, Suite 209F
Hoboken, New Jersey 07030
Attn:   Ron Deutsch
E-mail: legal@celsius.network

with copy to:       Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn:   Patrick J. Nash, P.C.; Ross Kwasteniet, P.C.;
Christopher S. Koenig; Dan Latona
E-mail: patrick.nash@kirkland.com
ross.kwasteniet@kirkland.com
chris.koenig@kirkland.com
dan.latona@kirkland.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:   Joshua Sussberg, P.C.
E-mail: joshua.sussberg@kirkland.com

To the Plan Administrator:    Christopher Ferraro
E-mail: [TO COME]

To the Litigation Oversight Committee:

[TO COME]

17.    <u>Miscellaneous</u>.

(a)    <u>Sections 8</u>, <u>11</u>, <u>12</u>, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

(b)    In the event of an inconsistency between this Agreement and the Plan Documents, the terms of the Plan Documents shall control in all respects.

(c)    If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

(d)    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party.

(e)    This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waive any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.

(f)    This Agreement and the Plan Documents encompass all of the terms and conditions between the Debtors and the Plan Administrator concerning the subject matter hereof.  This Agreement may not be amended or modified in any respect except in a writing signed by each of the Parties.

(g)    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic

9

transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

THE DEBTORS:

CELSIUS NETWORK LLC, ON BEHALF
OF ITSELF AND ITS AFFILIATED
DEBTORS


By:_____
Name: Ron Deutsch
Title: General Counsel

THE PLAN ADMINISTRATOR:

CHRISTOPHER FERRARO


By:_____
Name: Christopher Ferraro

THE COMMITTEE:

___, ON BEHALF OF THE COMMITTEE
OF UNSECURED CREDITORS


By:_____
Name:
Title:

## **Exhibit A-1**

**(Redline) Plan Administrator Agreement**

*[DRAFT]*

## PLAN ADMINISTRATOR AGREEMENT

This PLAN ADMINISTRATOR AGREEMENT (this "Agreement"), which shall constitute the "Plan Administrator Agreement" under, as defined in, and for all purposes of the Plan, unless and until it is replaced by an agreement with a successor "Plan Administrator" appointed under the Plan pursuant to Section 8̶14 hereof, dated as of [●], by and among (a) Celsius Network LLC, on behalf of itself and, its debtor affiliates, and any subsidiaries that agree to be treated as a Post-Effective Date Debtor hereunder (collectively, the "Debtors" or the "Post-Post-Effective Date Debtors," as applicable), (b) Christopher Ferraro, who shall constitute (and is deemed designated) the "Plan Administrator" under, as defined in, and for all purposes of the Plan, unless and until the Plan Administrator ceases to be the "Plan Administrator" hereunder (the "Plan Administrator"), and (c) the Committee (together with the Debtors and the Plan Administrator, the "Parties"), sets forth the Plan Administrator's rights, powers, and obligations in connection with the Plan pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319̶3577] (as may be amended, modified, or supplemented from time to time, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1.      Appointment.  Effective as of the Effective Date (as defined in the Plan), the Plan Administrator will be appointed to act as the Plan Administrator under the Plan for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, the Confirmation Order, and the Wind-Down Procedures, if applicable (collectively, the "Plan Documents").  As set forth in the Plan Documents, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, directors, managers, members, shareholders, and the Debtors' Estates from and following the Effective Date.

2.      Scope of Services.   The Plan Administrator shall provide post-Effective Date administration, wind down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the Plan Documents and to make certain distributions under the Plan.  Without limiting the provisions of the Plan applicable to the Plan Administrator, the Plan Administrator shall perform the following services for the Post-Effective Date Debtors' Estates in its role as Plan Administrator for all purposes of the Plan (as such services may be further described in the Plan Documents or additional tasks required to be performed by the Plan Administrator as described in the Plan Documents):

        (a)     make (or arrange for a Distribution Agent to make) the distributions contemplated by the Plan;, including selection of dates of subsequent distributions as the Plan Administrator deems advisable after consultation with the Litigation Oversight Committee; provided that the Litigation Oversight Committee may petition the Bankruptcy Court, upon notice and hearing, to order the Plan Administrator to distribute any Litigation Proceeds or any other proceeds of assets monetized by any Litigation Administrator, to the extent such proceeds have not been distributed by the Plan Administrator (or scheduled for distribution) within a reasonable amount of time following receipt;

        (b)     following the receipt of the proceeds of the monetization of Convertible Notes and any new equity interests issued on account of such Convertible Notes (as

defined in the *Debtors' Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors and Core Scientific, (II) Authorizing Entry Into the Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers With Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3474]) (collectively, the "Core Proceeds") include the Core Proceeds in the next distribution to creditors and, to the extent practicable (including that there is a distribution agent available to make distributions of Liquid Cryptocurrency), convert the Core Proceeds into Liquid Cryptocurrency for such creditors entitled to receive Liquid Cryptocurrency as part of such distribution; provided, such Core Proceeds shall not be used for any other purpose by the Plan Administrator or any Litigation Administrators and shall not constitute any portion of the Plan Administrator Budget or Wind-Down Budget or any approved budget for any Litigation Administrators;

  (c) ~~(b)~~ administer the Special Committee D&O Liability Insurance Policies;

  (d) ~~(c)~~ evaluate in his discretion whether each of the EIP Participants have met the applicable metrics under the Emergence Incentive Plan, and authorize and distribute any payments under the Emergence Incentive Plan to the extent earned; *provided* that the Plan Administrator may consult with counsel and other advisors in interpreting the applicable provisions of the Plan and Confirmation Order and determining whether the applicable metrics have been met pursuant to the terms of the Emergence Incentive Plan;

  (e) manage and oversee all Wind Down Estate employment and retention matters;

  (f) ~~(d)~~ cooperate with the Litigation Administrator with respect to its duties, as set forth in the Plan Documents and the Litigation Administrator Agreement;

  (g) cooperate with the Litigation Administrator (ARM) with respect to its duties, as set forth in the Plan Documents and the Litigation Administrator (ARM) Agreement;

  (h) ~~(e)~~ prosecute any Causes of Action that vest in the Post-Effective Date Debtors and are not otherwise delegated to (i) the Litigation Administrator pursuant to the Plan or delegated to the Litigation Administrator in writing by the Plan Administrator ~~and~~; or (ii) the Litigation Administrator (ARM) pursuant to the Litigation Administrator (ARM) Agreement or delegated to the Litigation Administrator (ARM) in writing by the Plan Administrator or the Litigation Oversight Committee, as applicable;

  (i) ~~(f)~~ to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), marshal, market for sale, and wind down the Debtors' assets (other than the ~~NewCo~~ Mining Assets ~~in the event the NewCo Transaction is consummated~~);

  (j) ~~(g)~~ to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), recover and compel turnover of the Debtors' property in accordance with the Plan;

(k)    (h) manage the Plan Administrator Budget or Wind-Down Budget, as applicable, and pay the Wind-Down Expenses, if any;

(l)    (i) to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), abandon any Post-Effective Date Debtors' Assets that cannot be sold or otherwise disposed of for value and where a distribution to Holders of Allowed Claims or Interests would not be feasible or cost-effective in the Plan Administrator's reasonable judgment;

(m)    (j) prepare and file post-Effective Date operating reports (including the month in which the Effective Date occurs);

(n)    (k) file appropriate tax returns in the exercise of the Plan Administrator's fiduciary obligations, including, as appropriate, requesting an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws, pursuant to section 505(b) of the Bankruptcy Code;

(o)    to the extent necessary or appropriate under applicable law or regulations, other than with respect to the Litigation Administrator, the Litigation Administrator (ARM), and the Members of the Litigation Oversight Committee, the Plan Administrator may appoint himself or others as officers, managers, or directors of any of the Debtors or Post-Effective Date Debtors;

(p)    (l) at the appropriate time, file a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of the Post-Effective Date Debtors under the applicable laws of their respective states or countries of incorporation or formation (as applicable);

(q)    (m) be responsible for the ongoing administration of the Chapter 11 Cases and all actions related to the closing of the Chapter 11 Cases;

(r)    (n) retain such professionals as are reasonably necessary and appropriate in furtherance of the Plan Administrator's fiduciary obligations;

(s)    (o) cause the Post-Effective Date Debtors to comply with, and abide by, the terms of the NewCo MiningCo Transaction and any other documents contemplated thereby;

(t)    (p) to the extent not duplicative with the responsibilities of any Litigation Administrator (including the Litigation Administrator and Litigation Administrator (ARM)), take such actions as are necessary and reasonable to carry out the purposes of the Plan, including winding down the Debtors' business affairs; and

(u)    (q) implement the Orderly Wind Down, if applicable, and only if the Orderly Wind Down is approved by the Bankruptcy Court.

3.    Reporting.  The Plan Administrator shall provide monthly status updates to the Litigation Oversight Committee, as well as file quarterly reports on the docket of the Chapter 11 Cases, commencing on the date that is the three-month anniversary of the Effective Date, to the Litigation Administrator and the Litigation Oversight Committee with respect to the assets of the Post-Effective Date Debtors, the receipts and expenditures of the Post-Effective Date Debtors, and information regarding the remaining tasks to be completed to close the Debtors' estates and the estimated time until completion of the Plan Administrator's duties under the Plan and this Agreement.

4.    RemainingDistribution Following Bankruptcy Cashe Closing.  To the extent that the Post-Effective Date Debtors have any Cash or other property remaining after the Chapter 11 Cases have been closed and all payments have been made under the Plan (including all payments on account of Allowed Claims and the Plan Administrator's compensation and reimbursement) and the conclusion of all litigation being pursued by theany Litigation Administrator, the Plan Administrator shall coordinateconsult with the Litigation Administrator toOversight Committee regarding the distributeion of such Cash or otherremaining property, Pro Rata to the Holders of Claims entitled to receive Litigation Proceeds, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  If such distributions are, in the Plan Administrator's reasonable judgment, infeasible to distribute Pro Rata or for any other reason such distributions cannot be effectuated, the Plan Administrator may (i) contribute such amounts to NewCoMiningCo for the benefit of holders of NewCoMiningCo Common Stock in the event the NewCoMiningCo Transaction is consummated or (ii) contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of the Judicial Code in the event an Orderly Wind Down is consummated; provided that the Litigation AdministratorOversight Committee or any other interested party may petition the Bankruptcy Court, upon notice and hearing, to order the Plan Administrator to distribute such remaining Cash or assets to Holders of Claims entitled to receive Litigation Proceeds at an earlier date.

5.    Timing and Fees.

(a)    The Plan Administrator will commence its responsibilities on the Effective Date.

(b)    The Post-Effective Date Debtors shall pay the Plan Administrator's compensation and reimburse the Plan Administrator's expenses as set forth herein as such amounts come due without the need for Bankruptcy Court approval.

(c)    [The Plan Administrator's compensation shall be based upon an initial term of up to twelve months5 years, to be paid as follows:  $200,000 per month for the first [three] months following the Effective Date and, $100,000 per month for the fourth through twelfthtwenty-fourth months following the Effective Date.  The [Litigation Administrator] shall have the authority, in consultation with the Plan Administrator, to reduce the initial term to less than 12 months, but at the conclusion of any such shortened term, the $1,000,000 completion fee described below shall become immediately due and payable absent fraud, gross negligence, or willful misconduct by the Plan Administrator., $58,000 per month for the third year, and $25,000 per month for the fourth and fifth years.

(d)    The Plan Administrator's compensation shall be payable from the Post-Effective Date Debtors' Assets on a monthly basis in advance not later than the first business day of each month.

(e)    In addition, ~~so long as the initial revesting of Unclaimed Distributions pursuant to the Plan has occurred, at the one year anniversary of the Effective Date (or such earlier date selected to end the initial term by the Litigation Administrator)~~once the Plan Administrator makes the redistribution amount of liquid cryptocurrency available to creditors after the 12 month period in the Plan for creditors to claim unclaimed distributions expires, the Plan Administrator shall receive a substantial completion bonus in the amount of $1,000,000, which shall be payable from the Post-Effective Date Debtors' Assets. ~~From the period starting six months after the Effective Date to the one-year anniversary of the Effective Date, the Plan Administrator shall consult with the Litigation Administrator and the Litigation Oversight Committee regarding the potential selection of a successor Plan Administrator (whose compensation shall be the subject of agreement between such successor~~ Plan Administrator, the Litigation Administrator, and the Litigation Oversight Committee, or, if no such agreement is reached, by order of the Bankruptcy Court). Alternatively, subject to agreement among the Plan Administrator and the Litigation Administrator, the Plan Administrator may at any time delegate the Plan Administrator's remaining work streams to the Litigation Administrator, subject to the oversight of the Litigation Oversight Committee.][1]

(f)    If, prior to the expiration of the initial 5 year term, all distributions have been made under the Plan and the Chapter 11 Cases have been closed, the Plan Administrator shall receive an early completion bonus equal to 3 months' compensation at the applicable rate. The Plan Administrator shall have no further duties or compensation after the date the Chapter 11 Cases have been closed, and the Plan Administrator may designate a successor Plan Administrator (subject to the reasonable consent of the Litigation Oversight Committee) to complete the wind down of the Post-Effective Date Debtors.

(g)    ~~(f)~~ In addition to the foregoing, the Plan Administrator shall be entitled to reimbursement of actual, reasonable, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(h)    ~~(g)~~ The Plan Administrator may retain any professionals reasonably necessary to the Plan Administrator, and any professionals retained by the Plan Administrator pursuant to the terms of this Agreement shall be paid as set forth in the applicable professional's engagement letter, which shall be payable from the Post-Effective Date Debtors' Assets in accordance with the terms of this Agreement and the terms of the applicable professional's engagement letter.

---

[1]    ~~[**NTD**: The Plan Administrator's compensation, including the conditions to and amounts of the substantial completion bonus and the completion bonus, remain subject to discussion among the proposed Plan Sponsor, the Debtors, and the Committee.]~~

6.      Relationship of the Parties.    The Parties intend that ~~an independent contractor relationship shall be created by this Agreement.   The~~the Plan Administrator will continue to be a full-time employee of Celsius Network LLC for fifteen (15) months following the Effective Date.   During this time, the Plan Administrator shall ~~not~~ be entitled to continue to receive employee benefits from the Debtors or Post-Effective Date Debtors or their Estates ~~any,~~ as may be applicable, including vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits available to employees of the Company.  At the conclusion of the fifteen-month period, the Company and the Plan Administrator may evaluate whether an independent contractor relationship would be more appropriate.   Notwithstanding the foregoing, as stated by the Plan, at all times the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan.

7.      Access to Resources.   Any requests for information by the Litigation Administrator (ARM) to the Plan Administrator shall be made through an individual from Alvarez & Marsal to be designated by the Plan Administrator prior to or on the Effective Date (such person, the "Gatekeeper") and subject to the terms of Article V of the Litigation Administrator (ARM) Agreement.   The Plan Administrator shall have direct and sole management and oversight of Wind Down Estate employment and retention matters.    Interested parties (including the Litigation Oversight Committee and any Litigation Administrator) shall receive timely notice of any proposed terminations of employees and consultants.   For the avoidance of doubt, any Celsius employee who is employed by the estates post-emergence shall report to the Plan Administrator, provided that the Litigation Oversight Committee shall have the ability to resolve disputes regarding the Litigation Administrator (ARM)'s or other Litigation Administrator's reasonable access to employees.

8.      Non-Disparagement.   Through the later of (i) the date on which this Agreement terminates under section 14, and (ii) five (5) years following the Effective Date, the Debtors, the Committee, the Plan Administrator, the Litigation Administrator (ARM), the Litigation Administrator, and the Litigation Oversight Committee (collectively, the "Non-Disparagement Parties") shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Non-Disparagement Parties, the professionals or employees of the other Non-Disparagement Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Non-Disparagement Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in clause (i) of this Section 8; *provided* that the foregoing shall not prevent the Non-Disparagement Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information.   These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan.

9.      Tax and Regulatory Filings.   The Plan Administrator shall be responsible for all pre-Effective Date tax filings, including, for the avoidance of doubt, all 2023, stub 2024 and prior tax filings.   The Plan Administrator shall be responsible for all regulatory filings and

financial reporting for the Estates post-Effective Date; provided, that the Plan Administrator shall first present such filings and reports to the Litigation Oversight Committee and consult with the Litigation Oversight Committee with respect to such filings and reports; provided, that each Litigation Administrator shall make regular reports to the Court as set forth in the applicable agreement governing each Litigation Administrator's services.

10.    7. D&O Liability Insurance.  The Post-Effective Date Debtors shall purchase director and officer liability insurance ("D&O Insurance") that will cover the Plan Administrator with respect to carrying out the Plan Administrator's duties in an amount and on terms reasonably acceptable to the Plan Administrator.

11.    8. Confidentiality.  The Plan Administrator shall treat confidentially all information not publicly available that is received by the Plan Administrator in connection with this engagement or that is developed during this engagement, and the Plan Administrator shall not disclose such information except as required by a court order or other legal process.

12.    9. Indemnity.  The Post-Effective Date Debtors shall indemnify and defend the Plan Administrator and all professionals engaged by the Plan Administrator, to the maximum extent permitted by applicable law, from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) (collectively, "Damages") asserted against it by reason of or arising out of or related to this Agreement or performance under this Agreement or any related transactions that are taken or omitted to be taken as set forth in this Agreement; provided that there shall be no obligation to indemnify or defend the Plan Administrator or its professionals on account of damages that are determined, in a Final Order, to have arisen primarily from the Plan Administrator's or such professional's gross negligence or willful misconduct, or from the Plan Administrator's breach of the terms of this Agreement or the Plan; provided, further, that no indemnification shall be provided for any distribution agent engaged by the Plan Administrator to the extent such indemnification is not provided for under the terms of engagement between the Plan Administrator and such distribution agent.  The indemnification established hereunder shall not be effective unless the Plan Administrator provides notice to the any Litigation Administrator and its counsel of any demand for indemnification within 60 days of the Plan Administrator's knowledge of any such indemnifiable claim or expense.

13.    10. Exculpation.  The Plan Administrator and any professional engaged by the Plan Administrator shall not be liable for any act or omission in connection with the discharge by the Plan Administrator or such professional of the powers and duties conferred upon the Plan Administrator by the Plan, this Agreement, any Final Order, or applicable law, except to the extent that such liability is due to an act or omission that is determined, in a Final Order, to be due to the Plan Administrator's or such professional's gross negligence or willful misconduct; provided, that no exculpation shall be provided for any distribution agent engaged by the Plan Administrator to the extent such exculpation is not provided for under the terms of engagement between the Plan Administrator and such distribution agent.  Nothing contained in this Section 1013 shall preclude or impair any Holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Plan Administrator to compel the Plan Administrator to make the distributions contemplated by the Plan on account of such Allowed Claim.  The Plan Administrator shall also be exculpated with respect to any potential liability in connection with actions taken by the Litigation Administrator or by the Litigation Administrator (ARM).  For the

7

avoidance of doubt, any exculpation relating to the period prior to the Effective Date shall be subject to the same limitations as set forth in the Confirmation Order for exculpation under the Plan.  For the avoidance of doubt, it is understood and agreed that Christopher Ferraro shall have no personal liability for any acts, omissions or claims relating to or resulting from his service as the Plan Administrator and any such claims will be paid out of the Wind Down Estate.

14.    11. Termination; Effect of Termination.

(a)    This Agreement shall terminate automatically after all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the Plan Administrator's compensation and reimbursement).

(b)    The Plan Administrator may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, who shall be selected by the Plan Administrator, and who shall be reasonably acceptable to the Litigation Oversight Committee or who is otherwise approved by the Bankruptcy Court in the absence subject to the reasonable consent of the Litigation Oversight Committee's agreement.  If the Plan Administrator's appointed successor is not approved by the Litigation Oversight Committee, the Plan Administrator shall continue to fulfill his obligations pursuant to this agreement for no more than sixty (60) days following resignation.  Upon the appointment of a successor Plan Administrator, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor Plan Administrator shall be terminated.

(c)    The Plan Administrator may be terminated by the Bankruptcy Court for cause shown after notice and a hearing.  If the Bankruptcy Court terminates the Plan Administrator, the Bankruptcy Court shall appoint a permanent or interim successor Plan Administrator, who shall immediately become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator pursuant to this Agreement, the Plan, and the Confirmation Order.

(d)    This Agreement may be terminated for cause shown pursuant to a Final Order entered by the Bankruptcy Court after notice and a hearing; provided that in the event that this Agreement is terminated before its automatic termination as provided in Section 11(a)14(a), the Bankruptcy Court shall appoint a successor Plan Administrator to fill the vacancy left by the termination of this Agreement.

(e)    Upon termination of this Agreement or resignation of the Plan Administrator, the Plan Administrator shall be entitled to all fees and expenses accrued to that date pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to the termination date or resignation date.

8

15.    ~~12.~~ Effectiveness.  This Agreement shall be effective upon the Effective Date.

16.    ~~13.~~ Notice.    All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail (with hard copy to follow) during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

> To the Post-Effective Date Debtors:
>
> c/o Celsius Network LLC
> 50 Harrison Street, Suite 209F
> Hoboken, New Jersey 07030
> Attn:   Ron Deutsch
> E-mail:       legal@celsius.network
>
> with copy to:        Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attn:   Patrick J. Nash, P.C.; Ross Kwasteniet, P.C.;
> Christopher S. Koenig; Dan Latona
> E-mail:       patrick.nash@kirkland.com
> ross.kwasteniet@kirkland.com
> chris.koenig@kirkland.com
> dan.latona@kirkland.com
>
> - and -
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attn:   Joshua Sussberg, P.C.
> E-mail:       joshua.sussberg@kirkland.com
>
> To the Plan Administrator:    Christopher Ferraro
> E-mail:       [TO COME]
>
> To the Litigation Oversight Committee:
>
> [TO COME]

17.    14. Miscellaneous.

(a)    Sections 8, 911, 12, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

(b)    In the event of an inconsistency between this Agreement and the Plan Documents, the terms of the Plan Documents shall control in all respects.

(c)    If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

(d)    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party.

(e)    This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waive any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.

(f)    This Agreement and the Plan Documents encompass all of the terms and conditions between the Debtors and the Plan Administrator concerning the subject matter hereof. This Agreement may not be amended or modified in any respect except in a writing signed by each of the Parties.

(g)    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

10

THE DEBTORS:

CELSIUS NETWORK LLC, ON BEHALF
OF ITSELF AND ITS AFFILIATED
DEBTORS


By:_____
Name: Ron Deutsch
Title: General Counsel

*Signature Page to Plan Administrator Agreement*

THE PLAN ADMINISTRATOR:

CHRISTOPHER FERRARO

By:_____
Name: Christopher Ferraro

THE COMMITTEE:

___, ON BEHALF OF THE COMMITTEE
OF UNSECURED CREDITORS


By:_____
Name:
Title:

**<u>Exhibit B</u>**

**M3 Litigation Administrator Agreement**

## LITIGATION ADMINISTRATOR AGREEMENT

This Litigation Administrator Agreement is made this [●] day of [●], [●] (this "Agreement"), by and among Celsius Network LLC on behalf of itself and its debtor affiliates (each a "Debtor" and collectively the "Debtors") and Mohsin Y. Meghji, as the Litigation Adminstrator referred to herein (in such capacity, the "Litigation Adminstrator" and collectively with [●], in their capacity as the designee of the Blockchain Recovery Investment Consortium (the "BRIC") as the Litigation Administrator (ARM) of the Debtors, and any other litigation administrator appointed by the Litigation Oversight Committee, the "Litigation Administrators"), in order to facilitate the implementation of the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"), the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3972-1] dated September 27, 2023 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "Plan"), and the *Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4172] (the "MiningCo Order"). Each Debtor and the Litigation Adminstrator are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, each Debtor other than the GK8 Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 13, 2022 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under the Bankruptcy Code on December 7, 2022 (such cases, the "Chapter 11 Cases");

WHEREAS, on October 30, 2023, the Parties filed a form of Litigation Administrator Agreement [Docket No. 3935];

WHEREAS, on November 9, 2023, the Bankruptcy Court entered the Confirmation Order and confirmed the Plan;

WHEREAS, on November 30, 2023, the Debtors and the Committee filed the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "MiningCo Motion"), which sought to implement an Orderly Wind Down on the terms set forth therein;

WHEREAS, on December 16, 2023, the Debtors and the Committee filed the *Supplemental Joint Statement Regarding the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4115] (the "MiningCo Supplement") and the term sheet attached thereto, pursuant to which the Debtors and the Committee informed the Bankruptcy Court that, pursuant to the Plan, a designee of the BRIC would be appointed as the Litigation Administrator (ARM) on the Effective Date, in addition to the Litigation Administrator appointed hereunder;

WHEREAS, on December 27, 2023, the Court granted the MiningCo Motion and entered the MiningCo Order;

WHEREAS, in connection with the entry of the MiningCo Order, and pursuant to the MiningCo Supplement, the Parties have agreed to modify the terms of Mr. Meghji's appointment as Litigation Administrator on the terms set forth herein; and

WHEREAS, the Litigation Administrator shall have all powers necessary to implement and administer the provisions of this Agreement as provided herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION ADMINISTRATOR AND THE LITIGATION OVERSIGHT COMMITTEE

2.1     Establishment and Appointment of the Litigation Administrator and the Litigation Oversight Committee.

(a)     The Debtors and the Litigation Administrator, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish this Agreement on behalf of the Holders of Claims entitled to receive Litigation Proceeds from the Litigation Recovery Account pursuant to the Plan (the "Claim Holders"), on the terms set forth herein.  In connection with the exercise of the Litigation Administrator's powers hereunder, the Litigation Administrator may use the name "Litigation Administrator" or such variation thereof as the Litigation Administrator sees fit.

(b)     The Litigation Administrator is hereby appointed under this Agreement effective as of the Effective Date.

(c)     The initial members of the Litigation Oversight Committee (each such Person and any other Person appointed to be a member of the Litigation Oversight Committee pursuant to this Agreement, a "Member") are identified on **Exhibit A** hereto and were appointed in accordance with the Confirmation Order and Plan.

(d)     The Litigation Administrator shall administer exclusively the Claims and Causes of Action allocated to the Litigation Administrator pursuant to **Exhibit B** attached hereto (collectively, the "Post-Emergence Claims") on behalf of the Debtors for the benefit of the Claim Holders, subject to the provisions of the Plan, the Confirmation Order and this Agreement, and

2

shall serve at the direction of the Litigation Oversight Committee in accordance with the terms of this Agreement; *provided*, the Litigation Administrator shall not administer the Claims and Causes of Action allocated to the Litigation Administrator (ARM) pursuant to **Exhibit B** hereto (collectively, the "ARM Claims"), and the Litigation Administrator (ARM) shall exclusively administer such Claims and Causes of Action subject to the terms of the separate agreement between the Litigation Administrator (ARM) and the Debtors.

(e)    The Litigation Administrator and each successor serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(f)    Subject to the terms of this Agreement, any action by the Litigation Administrator and/or the Litigation Oversight Committee that affects the interests of more than one Claim Holder shall be binding and conclusive on all Claim Holders even if such Claim Holders have different or conflicting interests.

(g)    The Litigation Oversight Committee shall designate three (3) members to serve on a subcommittee, the ("Avoidance Action Oversight Subcommittee"). The Earn Ad Hoc Group and the Retail Borrower Ad Hoc Group shall each have the right to appoint one (1) member of the Avoidance Action Oversight Subcommittee, subject to the consent of the Committee (as defined in the Plan). The Avoidance Action Oversight Subcommittee shall confer with the Litigation Administrator with respect to, and oversee the settlement and prosecution of, Avoidance Actions against non-Insider (or former Insider) individual Account Holders for prepetition transfers of less than $1 million, valued at the date of the applicable transfer and taking into account deposits following the first withdrawal in the ninety (90) days prior to the Petition Date. The Litigation Oversight Committee, the Litigation Administrator, and the Avoidance Action Oversight Subcommittee shall agree on a process for resolving the settlement and prosecution of Avoidance Actions described in this subsection. For the avoidance of doubt, the Avoidance Action Oversight Subcommittee shall be subject to the same fiduciary duties as the Litigation Oversight Committee.

2.2    Removal of Litigation Oversight Committee Members.

(a)    A Member may be removed by a majority vote of the Litigation Oversight Committee, for Cause (as defined in Section 2.2(b) herein), immediately upon notice thereof.

(b)    To the extent there is any dispute regarding the removal of a Member (including any dispute relating to any portion of a Members' fees or a Members' professional fees) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.

For purposes of this Agreement:

(i)    "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Member or, to the extent applicable, the Litigation Administrator, regular attendance at meetings of the Litigation Oversight Committee), which is not remedied within 30 days of written notice specifying such failure in reasonable detail; (ii) a Person's commission of an act of fraud, theft or embezzlement; (iii) a

3

Person's disclosure of information in violation of Section 2.9; (iv) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (v) a Person's gross negligence, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; (vi) a Person's breach of fiduciary duties; or (vii) an unresolved conflict of interest which cannot be obviated by appointment of a substitute with respect to claims that are the subject of a conflict determination made by the Litigation Oversight Committee pursuant to Section 2.8; and

(ii)    "Disability" of the Litigation Administrator or a Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Administrator or the Member, as applicable, and reasonably acceptable to the Litigation Oversight Committee, the Litigation Administrator or the Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

2.3    The Post-Emergence Claims.

(a)    From and after the Effective Date, the Litigation Administrator shall have access to copies of the Debtors', the Estates', the Post-Effective Date Debtors', the Celsius Professionals' (as defined in Section 2.3(d)), and the Plan Administrator's records and information directly or indirectly relating to the Post-Emergence Claims that are in the possession or control of any of such Parties, including copies of electronic records or documents, all in compliance with applicable law. From and after the Effective Date, pursuant to the Plan and the Confirmation Order, the Litigation Administrator shall have access to any relevant documents, information or personnel reasonably related to the Litigation Administrator's responsibilities under the Plan and this Agreement, and the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, and the Plan Administrator agree to preserve records and documents (including electronic records or documents) directly or indirectly related to any Post-Emergence Claims, including without limitation Disputed Claims, the Recovery Causes of Action, and the Contributed Claims, until such time as the Litigation Administrator notifies the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, or the Plan Administrator in writing that such records are no longer required to be preserved.

(b)    The Litigation Administrator and its advisors shall have access to all records, documents, information, and work product in respect of the Post-Emergence Claims (including all electronic records, documents, information and work product) in the possession of the Debtors, the Estates, the Post-Effective Date Debtors, the Contributing Claimants, the Celsius Professionals, and the Plan Administrator; *provided*, for the avoidance of doubt, that such records, documents, information, and work product shall not include (a) any materials relating to the preparation, filing, or prosecution of these chapter 11 cases or (b) any internal communications of any advisors to the Debtors that are Released Parties; *provided*, *further*, that notwithstanding the foregoing proviso, the Litigation Administrator(s) may request, and such advisors shall provide access to, any primary documents or final work product identified (in such advisors' professional

4

judgement) as materially relevant to the prosecution of any claims against Excluded Parties (including the UCC Claims Stipulation Defendants).

(c)     The Debtors, the Estates, the Post-Effective Date Debtors, the Plan Administrator, the Celsius Professionals, and any party under the direct or indirect control of such Parties shall take, or cause to be taken, all such further actions as the Litigation Administrator may reasonably request, including, reasonably cooperating with the Litigation Administrator for requests for telephone conferences, interviews, and appearances of current and former directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing access to the last known address of any such individual, to the extent reflected in the books and records of the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, or the Plan Administrator and to the extent permissible under applicable law, in each case in order to permit the Litigation Administrator to investigate, prosecute, protect and preserve all Post-Emergence Claims; *provided* that the Litigation Administrator shall agree that the Litigation Recovery Account shall reimburse any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity that takes action pursuant to this provision.

(d)     To the extent requested by the Litigation Administrator, the Debtors shall cause the professionals retained by the Debtors during the Chapter 11 Cases (the "Celsius Professionals") to, subject to any applicable professional rules of responsibility, cooperate with the Litigation Administrator in the investigation and prosecution of the Post-Emergence Claims. Without limiting the foregoing, the Celsius Professionals shall provide the Litigation Administrator access to those attorneys, accountants and other professionals with knowledge of matters directly or indirectly relevant to the Disputed Claims, the Recovery Causes of Action, and the Contributed Claims.  Any privilege or immunity attaching to any documents or communications (whether written or oral) including, but not limited to, any attorney-client privilege, work-product privilege, joint interest privilege, or any other evidentiary privileges or immunity, in each case relating to any Post-Emergence Claims held by the Debtors pursuant to applicable federal, state, and other law shall vest in the applicable Litigation Administrator(s) as of the Effective Date. The Debtors and the Litigation Administrator(s) are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses, and the Debtors shall transfer any and all prepetition case files and work product from the Debtors' current and former in-house and outside counsel (or unredacted copies of such files, as appropriate) within thirty (30) days of the Effective Date; provided, for the avoidance of doubt, that such production shall not include (a) any materials relating to the preparation, filing, or prosecution of these chapter 11 cases or (b) any internal communications of any advisors to the Debtors that are Released Parties; provided, further, that notwithstanding the foregoing proviso, the Litigation Administrator(s) may request, and such advisors shall provide, any primary documents or final work product identified (in such advisors' professional judgement) as materially relevant to the prosecution of any claims against Excluded Parties (including the UCC Claims Stipulation Defendants) and, provided further that any failure to transfer such files and work product within 30 days shall not prevent the Litigation Administrator(s) from effectuating the transfer thereof at a later date.  The Celsius Professionals shall be reimbursed from the Litigation Recovery Account for any reasonable and documented fees and out-of-pocket expenses incurred by the Celsius Professionals directly connected with such cooperation by the Celsius Professionals.

(e)     Subject to Section 5.1, hereof, all of the proceeds received by the Litigation Administrator from the pursuit of any Post-Emergence Claims (including any settlements thereof) shall be added to the Litigation Recovery Account and held as a part thereof.

2.4     <u>Privileges</u>.

(a)     The Litigation Administrator shall, on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders, hold all attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "<u>Privileges</u>") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors), the Committee, the Earn Ad Hoc Group, or the Retail Borrower Ad Hoc Group, as applicable (together the "<u>Privilege Parties</u>") related in any way to the Post-Emergence Claims and the purpose of the Agreement (the "<u>Privileged Information</u>").   The Privileged Information shall include documents and information of all manner, whether oral, written, or digital.   For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Parties.

(b)     The foregoing shall vest the Privileges concerning the Privileged Information exclusively in the Litigation Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Administrator and Claim Holders.   The Litigation Administrator shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Privileged Information confidential, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Privileged Information.

(c)     The Privilege Parties agree to take all necessary actions to provide to the Litigation Administrator without the necessity of a subpoena all Privileged Information in their respective possession, custody, or control necessary for the pursuit of Post-Emergence Claims; *provided* that the Litigation Administrator shall agree that the Litigation Recovery Account shall reimburse any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity directly related to action taken pursuant to this provision.   The Litigation Administrator is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Privileged Information, and no such person may object to the production to the Litigation Administrator of such Privileged Information on the basis of a Privilege held by a Privilege Party.   Until and unless the Litigation Administrator makes a determination in its sole discretion to waive any Privilege, Privileged Information shall be produced solely to the Litigation Administrator or as required by law.   For the avoidance of doubt, this Subsection is subject in all respects to Section 2.4(a) of this Agreement.

(d)     Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by granting access to any Privileged Information to the Litigation Administrator or any of its respective employees, professionals or representatives, or by disclosure of such Privileged

Information between the Privilege Parties, on the one hand, and the Litigation Administrator, on the other hand, or any of their respective employees, professionals or representatives.

(e)    If a Privilege Party, the Litigation Administrator, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Administrator of the production and shall demand of all recipients of the inadvertently disclosed Privileged Information that they return or confirm the destruction of such materials.

(f)    Notwithstanding anything to the contrary contained in Section 2.4, for the avoidance of doubt, no Privilege or Privileged Information related to any claims or causes of action that have been released or exculpated under the Plan shall be made accessible to the Litigation Administrator, *provided*, *however*, that the foregoing shall not prevent access to any Privileged Information to the extent that such Privileged Information also directly or indirectly relates to Post-Emergence Claims.

2.5    Payment of Fees and Expenses.  The Litigation Administrator may incur any reasonable and necessary expenses in connection with the performance of its obligations under the Plan, the Confirmation Order and this Agreement, including fees and expenses incurred to monetize the Post-Emergence Claims and pursue the Post-Emergence Claims and in connection with retaining professionals, consultants and advisors as the Litigation Administrator deems necessary to aid it in fulfilling its obligations under this Agreement and the Plan ("Litigation Administrator Professionals").  The Litigation Administrator has the right and authority, without further approval from the Bankruptcy Court or any other party, to engage Litigation Administrator Professionals, including without limitation (x) one or more attorneys, to handle specific litigations or to represent the Litigation Administrator in a general capacity, in furtherance of the Litigation Administrator's duties and (y) one or more financial advisors (including, without limitation, M3 Advisory Partners, LP) to provide administrative or other support to the Litigation Administrator with respect to the proper fulfillment of its duties.  The Litigation Oversight Committee shall exercise oversight and may give direction with respect to the initiation or settlement of litigation to the extent specifically provided in the Plan, including, to the extent not expressly delegated by the Litigation Oversight Committee to the Litigation Administrator, the selection, compensation or supervision of Litigation Administrator Professionals.  All reasonable, documented, out-of-pocket fees, expenses, and costs of the Litigation Administrator shall be paid solely from the Litigation Recovery Account, and solely be the obligation of, the Post-Effective Date Debtors.  For the avoidance of doubt, (i) neither the Plan Administrator nor the Litigation Administrator shall be required to pay any amounts owed to Litigation Administrator Professionals for which the Litigation Recovery Account does not contain adequate funds, and (ii) the Claim Holders shall have no obligation to provide any funding with respect to the Litigation Recovery Account.  For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, or any creditors, or any affiliation or relationship with the Litigation Administrator, shall not preclude the Litigation Administrator's retention of such professionals, consultants, or other persons.

2.6    Nature and Purpose of the Litigation Administrator.

(a)    Purpose.  The Litigation Administrator is empowered, subject to the terms and conditions of this Agreement, to implement the Plan with respect to all Debtors on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders.  The Litigation Administrator shall (i) prosecute all Post-Emergence Claims, resolve all Post-Emergence Claims, monetize the Post-Emergence Claims, and distribute the Litigation Proceeds in accordance with the Plan, the Confirmation Order and this Agreement and (ii) administer the Post-Emergence Claims in accordance with the Plan, Confirmation Order, and this Agreement, without the objective of continuing to engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Agreement.  The Responsibilites of the Litigation Administrator shall include: (a) filing and prosecuting (or settling or otherwise compromising, as appropriate) any Recovery Causes of Action and Contributed Claims that the Litigation Administrator and the Litigation Oversight Committee determine should be filed and prosecuted; (b) filing and prosecuting any objections to Claims or Interests or settling or otherwise compromising such Claims and Interests, if necessary and appropriate, in accordance with the Plan, the ADR Procedures, and any applicable orders of the Bankruptcy Court; (c) exercising the Debtors' rights with respect to (i) the Goldstein Loan, (ii) the Leon Loan, and (iii) the loans (or beneficial interests in such loans) collateralized by CEL Token issued to any other Excluded Party; (d) managing the rights to D&O Liability Insurance Policies provided to the Litigation Administrator(s) under the UCC Claims Stipulation and Article IV.G.3 of the Plan; *provided* that the Litigation Administrator's management of the D&O Liability Insurance Policies shall not affect the rights of (i) Entities covered by the D&O Liability Insurance Policies to pursue coverage under such policies or (ii) Entities eligible to recover from the D&O Liability Insurance Policies to pursue recovery from such policies, and all such Entities' respective rights and priorities are undisturbed by this Agreement; (e) retaining such professionals as are necessary and appropriate in furtherance of such Litigation Administrator's fiduciary obligations; and (f) taking such actions as are necessary and reasonable to carry out the purposes of this Agreement;

(b)    Relationship.  Subject to Section 4.10, the Litigation Administrator is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Administrator, the Litigation Oversight Committee (or any Member thereof) or the Claim Holders for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Claim Holders, on the one hand, to the Litigation Administrator and the Litigation Oversight Committee, on the other hand, shall be as conferred upon them by the Plan, the Confirmation Order and this Agreement.  Pursuant to Article IV.G.6 of the Plan, the Litigation Administrator and Litigation Oversight Committee shall each act in a fiduciary capacity on behalf of the interests of all Holders of Claims entitled to receive Litigation Proceeds from the Litigation Recovery Account.  For the avoidance of doubt, the Litigation Administrator is acting on behalf of the Post-Effective Date Debtors to prosecute claims of the Debtors for the benefit of Claim Holders pursuant to the Plan and, for all purposes, the Litigation Administrator shall be treated as an agent of the Debtors or Post-Effective Date Debtors, as the case may be, rather than a separate entity.

(c)    No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the Litigation Administrator

8

may enforce all rights to commence and pursue, as appropriate, any and all Post-Emergence Claims and objections to and resolution of Disputed Claims or Interests after the Effective Date. No Person or Entity may rely on the absence of a specific reference in the Plan to any Claim against it as any indication that the Litigation Administrator will not pursue any and all Post-Emergence Claims against such Person or Entity; nor may any Person or Entity rely on the absence of a specific reference in the Plan to any Disputed Claim or Interest as any indication that the Litigation Administrator will not pursue any objections thereto. The Litigation Administrator expressly reserves all Post-Emergence Claims for later adjudication, resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Post-Emergence Claims upon, after or as a consequence of the Confirmation Order.

2.7     Appointment as Representative.   Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Administrator shall be the sole and exclusive duly appointed representative of the Estates for certain limited purposes with respect to prosecution, resolution and settlement of the Post-Emergence Claims. Post-Emergence Claims and rights shall be transferred to the Post-Effective Date Debtors in accordance with the Transaction Steps Memorandum, and the Litigation Administrator shall be deemed to have been designated as a representative of the Debtors to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Post-Emergence Claims on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates for the benefit of the Claim Holders or settle or otherwise dispose of Post-Emergence Claims. Notwithstanding the foregoing, all Litigation Proceeds shall be distributed to the Claim Holders consistent with the provisions of the Plan, Confirmation Order, and this Agreement.

2.8     Conflicts of Interest.  Notwithstanding anything to the contrary contained in this Agreement, the Litigation Oversight Committee shall have the exclusive power and right to oversee and determine any actual or potential conflicts of interest with respect to the Litigation Administrator and the Litigation Administrator's performance under this Agreement. Any decision or determination made by the Litigation Oversight Committee, acting in its reasonable discretion, with respect to whether the Litigation Administrator is actually or potentially conflicted shall be binding on the Litigation Administrator. Until such time as the circumstances giving rise to such conflict of interest are remedied, the Litigation Oversight Committee shall have the exclusive power and right, as its sole and exclusive option, to designate a member of the Litigation Oversight Committee, professional natural person, entity or financial institution with experience administering bankruptcy claims to act as the Litigation Administrator with respect to any claims that are the subject of a conflict determination made by the Litigation Oversight Committee. The Litigation Administrator designated by the Litigation Oversight Committee with respect to any conflict determination made by the Litigation Oversight Committee may incur any reasonable and necessary expenses in connection with retaining professionals, consultants and advisors to aid it in fulfilling its obligations under this Agreement and the Plan.

2.9     Confidentiality.  The Litigation Administrator and the Members shall, during the period that the Litigation Administrator and the Members serve as Litigation Administrator or Member, whichever is applicable, under this Agreement and for a period of two (2) years following the termination of this Agreement or following such Litigation Administrator's or Member's removal or resignation hereunder, whichever is applicable, hold strictly confidential and not use

for personal gain or for the gain of any Entity or Person for whom such Litigation Administrator or Member may be employed any non-public information of or pertaining to any Person to which any of the Post-Emergence Claims Materials or Post-Emergence Claims relates or of which the Litigation Administrator or the Members have become aware in the Litigation Administrator's capacity as Litigation Administrator (including information contained or reflected in the Litigation Administrator Materials) or the Members' capacity as Member (the "Confidential Information"), until (a) the Confidential Information is made public other than by disclosure by the Litigation Administrator, any Members, or any Litigation Administrator Professionals in violation of this Agreement; (b) the Litigation Administrator or Member is required by law to disclose the Confidential Information (in which case the Litigation Administrator or Member shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); (c) the Litigation Administrator or Member obtains a waiver of confidentiality from the applicable Person; or (d) the Litigation Administrator is reasonably advised by the Litigation Administrator Professionals to disclose the Confidential Information to the extent that it is done in the performance of the Litigation Administrator's responsibilities under this Agreement.  For the avoidance of doubt, nothing contained herein shall be deemed to prohibit the Litigation Administrator from disclosing Confidential Information under seal or otherwise on a confidential basis in connection with the enforcement by the Litigation Administrator of any rights and remedies available to it under this Agreement, regardless of whether such enforcement is on behalf of the Members or any Claim Holders or in connection with enforcement of rights against the Members.

## ARTICLE III
## INTERESTS

3.1    Interests.  The Claim Holders shall be entitled to distributions from the Litigation Proceeds in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Litigation Administrator will not issue any certificate or certificates to evidence any beneficial interests in the Post-Emergence Claims.

3.2    Interests Beneficial Only.  The entitlement to Claim Holders under the Plan with respect to the Post-Emergence Claims shall not entitle the Claim Holders to any title in or to the Post-Emergence Claims or to any right to call for a partition or division of the Post-Emergence Claims or to require an accounting.

3.3    Registry of Post-Emergence Claims.

(a)    The Litigation Administrator shall appoint a registrar, which may be the Litigation Administrator (the "Registrar"), for the purpose of recording ownership of the Post-Emergence Claims as herein provided.  For its services hereunder, the Registrar, unless it is the Litigation Administrator, shall be entitled to receive reasonable compensation from the Litigation Recovery Account as a cost of administering the Post-Emergence Claims.

(b)    The Litigation Administrator shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Litigation Administrator, a registry of the Claim Holders (the "Claim Holder Register"), which shall be maintained pursuant to such reasonable regulations as the Litigation

Administrator and the Registrar may prescribe.  The Claim Holder Register shall be made available to Claim Holders at the office of the Litigation Administrator or such other location as the Litigation Administrator reasonably shall specify upon three (3) Business Days' written notice to the Litigation Administrator.

3.4    Effect of Death, Incapacity or Bankruptcy.  The death, incapacity or bankruptcy of any Claim Holders during the term of the Agreement shall not (i) operate to terminate the Agreement, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Post-Emergence Claim or Litigation Proceeds or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Claim Holders under this Agreement.

3.5    Change of Address.  Any Claim Holders may, after the Effective Date, select an alternative distribution address by providing written notice to the Litigation Administrator or, as applicable, the Registrar, identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Litigation Administrator or, as applicable, the Registrar. Absent actual receipt of such notice by the Litigation Administrator or, as applicable, the Registrar, the Litigation Administrator shall not recognize any such change of distribution address.

3.6    Standing.   No Claim Holders shall have standing to direct the Litigation Administrator to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Post-Emergence Claims.

**ARTICLE IV**
**RIGHTS, POWERS AND DUTIES OF LITIGATION ADMINISTRATOR**

4.1    Role of the Litigation Administrator.  In furtherance of and consistent with the purpose of the Agreement and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Litigation Administrator shall (i) manage, supervise and protect the Post-Emergence Claims on behalf of the Debtors for the benefit of the Claim Holders; (ii) investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise the Post-Emergence Claims and any objections to the Disputed Claims; (iii) to the extent not duplicative with the Plan Administrator's responsibilities, prepare and file all required tax returns and pay all taxes and all other obligations of the Litigation Administrator; (iv) liquidate and convert the Post-Emergence Claims to Cash and make distributions to the Claim Holders in accordance with Section 4.7 herein; and (v) have all such other responsibilities as may be vested in the Litigation Administrator pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment and maintenance of the Litigation Recovery Account.  All decisions and duties with respect to the Agreement and the Post-Emergence Claims to be made and fulfilled, respectively, by the Litigation Administrator shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement and all other applicable orders of the Bankruptcy Court.  In all circumstances, the Litigation Administrator shall act in good faith in the interests of all Claim Holders and in furtherance of the purpose of the Agreement, and shall use commercially reasonable efforts in its reasonable judgment and discretion to prosecute, settle or otherwise resolve the Post-Emergence Claims and to make timely distributions of any Litigation Proceeds realized therefrom and to

11

otherwise monetize the Post-Emergence Claims and not unreasonably prolong the duration of the Agreement.

4.2     <u>Power to Contract</u>.  In furtherance of the purpose of the Agreement, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Litigation Administrator shall have the right and power on behalf of the Post-Effective Date Debtors, and also may cause the Litigation Recovery Account to enter into any covenants or agreements binding the Litigation Recovery Account, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Litigation Administrator to be consistent with and advisable in furthering the purpose of the Agreement.

4.3     <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>.  Nothing in this Agreement shall be deemed to prevent the Litigation Administrator from taking or refraining to take any action on behalf of the Litigation Recovery Account that, based upon the advice of counsel or other professionals, the Litigation Administrator determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Litigation Administrator may owe the Claim Holders or any other Person pursuant to the Plan, Confirmation Order, or this Agreement.

4.4     <u>Submission to Court</u>.  In the event of any dispute or disagreement between the Litigation Administrator and any third party (including, without limitation, the Litigation Oversight Committee or any Claim Holder) or if the Litigation Administrator shall for any reason be uncertain as to its rights or duties hereunder, the Litigation Administrator shall have the right, without liability, to refuse to take any action and, instead, to submit the dispute, disagreement or uncertainty to any court of competent jurisdiction for determination and shall be fully protected and excluded from liability for relying upon the decision of such court.

4.5     <u>Authority to Prosecute and Settle Post-Emergence Claims.</u>

(a)     Subject to the provisions of this Agreement, the Plan, and the Confirmation Order, the Litigation Administrator shall have sole authority to prosecute, pursue, compromise, settle, or abandon any and all Post-Emergence Claims that have not already been resolved as of the Effective Date.  The Litigation Administrator, upon direction by the Litigation Oversight Committee, shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Post-Emergence Claims (including any counterclaims asserted against the Litigation Administrator ) as it determines in the best interests of the Claim Holders, and consistent with the purposes of the Agreement, and shall have no liability for the outcome of its decision; *provided, however*, that the Litigation Administrator shall have the power and authority to pursue, not pursue, release, abandon and/or settle any and all Post-Emergence Claims with a value of less than an amount determined by the Litigation Oversight Committee without any approval by the Litigation Oversight Committee.  To the extent any Post-Emergence Claims are settled against any Claim Holders, the Litigation Administrator will timely inform the Plan Administrator.

(b)     To the extent that any action has been taken to prosecute or otherwise resolve any Post-Emergence Claims prior to the Effective Date by the Debtors, on the Effective Date, the Litigation Administrator shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the Litigation

12

Administrator by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Administrator: "[Name of Litigation Administrator ], as Representative for the Post-Effective Date Debtors v. [Defendant]" or "Post-Effective Date Debtors v. [Defendant]."  Without limiting the foregoing, the Litigation Administrator shall take any and all actions necessary or prudent, in its reasonable discretion, to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Claim.  For purposes of exercising its powers, the Litigation Administrator shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(c)     Subject to Section 4.5(a) hereof, any determinations by the Litigation Administrator, with regard to the amount or timing of settlement or other disposition of any Post-Emergence Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Claim Holders and all other parties in interest following the entry of an order of a court of competent jurisdiction (including, as relevant, a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

4.6     <u>Liquidation of Post-Emergence Claims.</u>  The Litigation Administrator, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement (including Section 2.3), liquidate and convert to Cash the Post-Emergence Claims, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Agreement.  The Litigation Administrator shall exercise reasonable business judgment and liquidate the Post-Emergence Claims to maximize net recoveries to the Claim Holders, *provided*, *however*, that the Litigation Administrator shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Post-Emergence Claims or otherwise or through the sale or other disposition of the Post-Emergence Claims (in whole or in combination).  Pursuant to an agreed-upon budget in accordance with Section 4.13(b) of this Agreement, if any, the Litigation Administrator may incur any reasonable and necessary expenses in connection with the liquidation of the Post-Emergence Claims and distribution of the Litigation Proceeds.

4.7     <u>Distributions.</u>

(a)     After the Litigation Proceeds are received by the Litigation Administrator, the Litigation Administrator shall make periodic distributions of the Litigation Proceeds (net of the costs of obtaining such Litigation Proceeds) to the Claim Holders only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement as the Litigation Administrator shall determine, in consultation with the Litigation Oversight Committee, after (i) funding any reserves deemed necessary or appropriate by the Litigation Administrator in its reasonable discretion and (ii) maintaining such funding in the Litigation Recovery Account in accordance with the Plan and as deemed necessary or appropriate by the Litigation Administrator in its reasonable discretion.

(b)     In the reasonable discretion of the Litigation Administrator and subject to Section 4.7(a) hereof, the Litigation Administrator shall promptly distribute, to the extent not spent or committed to be spent by the Litigation Administrator or reasonably determined by the Litigation Administrator to be maintained as an expense reserve in the proper performance of its responsibilities hereunder, the funds in the Litigation Recovery Account Pro Rata to the Claim Holders entitled to receive Litigation Proceeds hereunder, without any further notice or action, order, or approval of the Bankruptcy Court or any other Entity; *provided* that if such distributions are, in the Litigation Administrator's reasonable judgment, in consultation with the Litigation Oversight Committee, infeasible to distribute Pro Rata, or such distributions cannot be effectuated for any other reason, the Litigation Administrator may (a) utilize such amounts to fund Wind-Down Expenses or, if no such expenses remain, (b) contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of title 28 of the Judicial Code.

(c)     The Litigation Administrator shall make distributions to Claim Holders at the last-known address for each such Claim Holders as indicated on the Litigation Administrator's or Registrar's records as of the applicable distribution date.  Any distribution of Cash by the Litigation Administrator shall be made by the Litigation Administrator via (i) a check drawn on, or (ii) wire transfer or ACH payment from, a bank account established in the name of the Litigation Administrator on or subsequent to the Confirmation Date at a domestic bank selected by the Litigation Administrator (the "Litigation Administrator Account"), the option of which shall be in the sole discretion of the Litigation Administrator.  If any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Administrator or, as applicable, the Registrar, is notified in writing of the then-current address of such holder, at which time such distribution shall be made as soon as reasonably practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable distribution date.  After such date, all "unclaimed property" or interests in property shall revert to the Litigation Administrator Account (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Agreement, and the claim of any holder to such property or interest in property shall be forever barred.   Nothing contained herein shall require the Litigation Administrator to attempt to locate any Holder of an Allowed Claim.

(d)     The Litigation Administrator shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan and this Agreement.  The Litigation Administrator may pay to the Distribution Agents from the Litigation Recovery Account all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents.

(e)     The Litigation Administrator may withhold (but not, except as set forth below, set off) from the distribution called for on account of any Allowed Claim an amount equal in value to any claim or Cause of Action of any nature (including in respect of any Claim) that a Debtor may hold against the Holder of such Claim.  In the event that the value of a Debtor's claim or Cause of Action against a particular Holder of an Allowed Claim is undisputed, resolved by settlement or has been adjudicated by Final Order of any court, the Litigation Administrator may set off such undisputed, resolved or adjudicated amount against distributions that would otherwise

14

be due to such Holder of an Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Litigation Administrator of any claims or Causes of Action that the Debtors or the Litigation Administrator may possess against any Holder of an Allowed Claim, except to the extent of any waiver, relinquishment, exculpation, release, compromise, or settlement set forth in the Plan or an order of the Bankruptcy Court (including the Confirmation Order).

(f)    The Litigation Administrator may deduct and withhold taxes from any and all amounts otherwise distributable to any Entity determined in the Litigation Administrator's reasonable discretion, required by this Agreement, any law, regulation, rule, ruling, directive, treaty or other governmental requirement in accordance with Section 8.2 hereof.

(g)    The Litigation Administrator shall not be required to make on account of an Allowed Claim (i) partial distributions if any portion of such Claim remains in dispute or payments of fractions of dollars; (ii) a distribution of fractions of Allowed Claims; or (iii) a distribution if the amount of cash to be distributed is less than $250 to any one claimant in a single distribution. Any funds so withheld and not distributed shall be held in reserve and distributed to such claimant in subsequent distributions except if the aggregate distributions (including the final distribution) to be made by the Litigation Administrator to such claimant is less than $250, in which case such amount shall be included in the Wind-Down Process set forth in Section 9.1 of this Agreement.

(h)    Any check issued by the Litigation Administrator on account of an Allowed Claim shall be null and void if not negotiated within 180 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Litigation Administrator by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. If any Holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within 180 days after the date the check was mailed or otherwise delivered to the Holder, the entitlement of the Holder regarding such un-negotiated check and the funds represented thereby shall be released and the Holder thereof shall be forever barred, estopped and enjoined from asserting any claim with respect to such un-negotiated check and the funds represented thereby against any of the Debtors, the Post-Effective Date Debtors, or any agent acting on their behalf, including the Litigation Administrator. In such cases, any Cash held for payment on account of such un-negotiated check shall be property of the Post-Effective Date Debtors and revert to the Litigation Administrator Account, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Litigation Administrator to attempt to locate any Holder of an Allowed Claim. No later than 240 days after the issuance of such checks, the Litigation Administrator shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks; *provided*, *however*, after the closing or dismissal of the Chapter 11 Cases, the Litigation Administrator shall provide the list of the Holders of any un-negotiated checks on a website maintained by the Litigation Administrator. For the avoidance of doubt, such list shall not include the Holders of any checks that have been negotiated within 180 days after the date the check was mailed or otherwise delivered to the Holder.

(i)    Subject to Sections 4.8, 4.10 and 4.11 hereof, and the provisions of this Section 4.7, any non-Cash property made accessible to the Litigation Administrator may be sold, transferred, abandoned or otherwise disposed of by the Litigation Administrator. Notice of such sale, transfer, abandonment or disposition shall be provided to the Claim Holders pursuant to the

reporting obligations provided in Section 4.13 of this Agreement. If, in the Litigation Administrator's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Litigation Administrator believes, in good faith, such property has no value to the Litigation Administrator (after giving effect to the projected cost of sale), the Litigation Administrator shall have the right, subject to the approval of the Litigation Oversight Committee, to abandon or otherwise dispose of such property. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a Cause of Action against the Litigation Administrator, the Litigation Oversight Committee, any Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.7(i).

(j)        Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day, and the 180-day limit described in Section 4.7(h) above shall be similarly extended to the next Business Day if it would otherwise occur on a date that is not a Business Day.

4.8        Management of Post-Emergence Claims.

(a)        Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Administrator may, subject to the direction of the Litigation Oversight Committee to the extent provided in this Agreement, control and exercise authority over the Post-Emergence Claims, over the management and disposition thereof, as necessary or advisable to enable the Litigation Administrator to fulfill the intents and purposes of this Agreement. No Person dealing with the Agreement will be obligated to inquire into the authority of the Litigation Administrator in connection with the acquisition, management or disposition of the Post-Emergence Claims.

(b)        In connection with the management and use of the Post-Emergence Claims and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the Litigation Administrator will have, in addition to any powers conferred upon the Litigation Administrator by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Administrator's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Agreement, subject to any approvals of the Litigation Oversight Committee to the extent expressly required herein, including, without limitation, the power and authority to (i) engage and compensate the Litigation Administrator Professionals to assist the Litigation Administrator and the Litigation Oversight Committee with respect to their respective responsibilities; (ii) object to, compromise, and settle Disputed Claims, subject to Bankruptcy Court approval, if applicable; (iii) commence and/or pursue any and all actions involving the Post-Emergence Claims that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, or this Agreement; and (iv) implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

4.9        Investment of Cash. The right and power of the Litigation Administrator to invest the Post-Emergence Claims, the proceeds thereof, or any income earned by the Litigation Administrator shall be limited to the right and power to invest such Post-Emergence Claims only

in Cash and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act or money market funds containing only such U.S. Government securities; *provided*, *however*, that (a) the Litigation Administrator may retain any Post-Emergence Claims received that are not Cash only for so long as may be reasonable for the prompt and orderly liquidation of such assets, and (b) the Litigation Administrator may expend the Post-Emergence Claims (i) as reasonably necessary to meet contingent liabilities and maintain the value of the Post-Emergence Claims during liquidation, (ii) to pay reasonable and documented administrative expenses, subject in all cases to Section 2.5 of this Agreement, and (iii) to satisfy other liabilities incurred or assumed by the Litigation Administrator (or to which the Post-Emergence Claims are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.5).

4.10   <u>Additional Powers of the Litigation Administrator.</u>  In addition to any and all of the powers specifically enumerated above, and subject to the retained jurisdiction of the Bankruptcy Court, the Litigation Administrator, subject to the direction and approval of the Litigation Oversight Committee, shall be empowered to:

(a)   take any action with respect to the Disputed Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Disputed Claims, except to the extent Disputed Claims have been previously Allowed;

(b)   make distributions to Claim Holders as set forth in the Plan of the Litigation Recovery Assets or any Litigation Proceeds as set forth in the Plan, including determining dates of distributions;

(c)   hold legal title to any and all rights in or arising from the Post-Emergence Claims, including, but not limited to, the right to collect any and all money and other property belonging to the Claim Holders (including any Litigation Proceeds);

(d)   perform the duties, exercise the powers, and assert the rights of a representative of the Estates under section 1123(b) of the Bankruptcy Code with respect to the Post-Emergence Claims, including the right to assert claims, defenses, offsets, and privileges, subject in all cases to Section 2.3 hereof;

(e)   protect and enforce the rights of the Post-Effective Date Debtors in and to the Post-Emergence Claims by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(f)   determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Administrator on behalf of the Post-Effective Date Debtors;

(g)   subject to Section 2.4, assert, enforce, release, or waive any Privilege or defense on behalf of the Debtors or Post-Effective Date Debtors with respect to the Post-Emergence Claims, as applicable;

(h)   make all payments relating to the administration of the Litigation Recovery Account;

(i)    expunge from the Claims Register Disputed Claims that have been paid, satisfied, superseded, or released and adjust on the Claims Register any Disputed Claims that have been amended without having to file an objection to such Disputed Claims and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, that beginning as promptly as is reasonably practicable after the end of the first full calendar quarter that is at least 90 days after the Effective Date, the Litigation Administrator shall file with the Bankruptcy Court (prior to the closing or dismissal of the Chapter 11 Cases) and make available on the Debtors' restructuring website each calendar quarter a list of all Disputed Claims that have been paid, satisfied, superseded, released, or amended during such prior calendar quarter;

(j)    obtain reasonable insurance coverage with respect to the potential liabilities and obligations of the Litigation Administrator, the Litigation Oversight Committee and the Members under this Agreement (in the form of a directors and officers policy, an errors and omissions policy, or otherwise, all at the sole cost and expense of the Litigation Recovery Account);

(k)    (i) receive, manage, invest, supervise, protect, and liquidate the Post-Emergence Claims, withdraw and make distributions from and pay taxes and other obligations owed in respect of Litigation Recovery Account from funds held in the Litigation Recovery Account and (ii) withdraw and make distributions from and pay taxes and other obligations owed in respect of any Disputed Claims in accordance with the Plan and are merely incidental to its liquidation and dissolution;

(l)    request any appropriate tax determination with respect to the Post-Emergence Claims and the Litigation Proceeds, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(m)    investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, the Post-Emergence Claims;

(n)    without expanding the scope of the definition of "Claims" in the Plan, take appropriate actions to recover transfers of any Debtors' property as provided for in the Plan as may be permitted by the Bankruptcy Code or applicable state law; *provided*, *however*, that nothing herein shall give the Litigation Administrator the power to recover any of the MiningCo Assets that were transferred to MiningCo;

(o)    execute offsets or assert counterclaims against Claim Holders (except to the extent of any releases, waivers, settlements, compromises or relinquishments set forth in the Plan or the Confirmation Order) and make distributions of the Litigation Recovery Account and Litigation Proceeds as provided for in the Plan and this Agreement;

(p)    subject to applicable law, seek the examination of any Entity or Person, with respect to the Post-Emergence Claims;

(q)    retain and reasonably compensate for services rendered and expenses incurred by Litigation Administrator Professionals to (i) perform such reviews and/or audits of the

financial books and records of the Debtors or Litigation Administrator as may be appropriate in the Litigation Administrator's reasonable discretion, (ii) prepare and file any tax returns or informational returns for the Litigation Recovery Account as may be required, and (iii) provide such other services as, in the reasonable judgment of the Litigation Administrator and subject to Section 2.5 of this Agreement, are proper to allow the Litigation Administrator to properly perform its duties hereunder;

(r)    take or refrain from taking any and all actions the Litigation Administrator reasonably deems necessary for the continuation, protection, and maximization of the Post-Emergence Claims consistent with the purposes hereof;

(s)    take all steps and execute all instruments and documents the Litigation Administrator reasonably deems necessary to effectuate the Agreement;

(t)    liquidate any remaining Post-Emergence Claims, and provide for the distributions therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement;

(u)    take all actions the Litigation Administrator reasonably deems necessary to comply with the Plan, the Confirmation Order, and this Agreement (including all obligations thereunder);

(v)    (i) take commercially reasonable actions after the Effective Date to assist and cooperate in good faith with the reasonable efforts by the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, as applicable, in accordance with Section 2.1(c) for the purposes of establishing the Litigation Oversight Committee and appointing the Members thereof (it being understood that such efforts are primarily the responsibility of the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, and that the Litigation Administrator by this provision shall only be required to provide reasonable assistance and cooperation to them) and (ii) if agreed by the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, as applicable, in accordance with Section 2.1(c), file a notice thereof disclosing the names and relevant biographical information regarding the Members, the compensation (if any) to be paid to them by the Litigation Recovery Account and such other information deemed appropriate by the Litigation Administrator with the Bankruptcy Court (prior to the closing or dismissal of the Chapter 11 Cases) and post such notice to the website maintained by the Litigation Administrator; and

(w)    exercise such other powers as may be vested in the Litigation Administrator pursuant to the Plan, the Confirmation Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Administrator to be reasonably necessary and proper to carry out the obligations of the Litigation Administrator in relation to the Agreement; *provided* that the Litigation Administrator shall work in good faith with the Plan Administrator to ensure that services are not duplicated and to reconcile any conflicts between the Plan Administrator Agreement and this Agreement.

4.11    <u>Limitations on Power and Authority of the Litigation Administrator.</u>  The Litigation Administrator will not have the authority to do any of the following:

19

(a)    take any action that would reasonably be expected to be in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)    take any action that is reserved for the Plan Administrator under the Plan, the Confirmation Order, or the Plan Administrator Agreement;

(c)    take any action that is reserved for the Litigation Administrator (ARM) under the Plan, the Confirmation Order, or the Litigation Administrator Agreement (ARM);

(d)    take any action that would reasonably be expected to make it impossible to carry on the activities of the Agreement;

(e)    possess property of the Debtors or Claim Holders or assign the Debtors', Post-Effective Date Debtors', or Claim Holders' rights in specific property for any purpose other than as provided herein;

(f)    engage in any trade or business or utilize or dispose of any part of the Post-Emergence Claims or the proceeds, revenue or income therefrom in furtherance of any trade of business;

(g)    without approval of the Litigation Oversight Committee to the extent expressly required by Section 2.5, retain Litigation Administrator Professionals or agree to any compensation arrangements for such Litigation Administrator Professionals;

(h)    dissolve the Agreement;

(i)    receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; or

(j)    issue any Post-Emergence Claims other than as expressly contemplated by the Plan, the Confirmation Order, or this Agreement.

4.12    Books and Records.  The Litigation Administrator shall maintain books and records relating to the Post-Emergence Claims (including income realized therefrom and the Litigation Proceeds) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are to be paid from the Litigation Recovery Account in such detail and for such period of time as may be necessary to enable the Litigation Administrator to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements for the Litigation Recovery Account.  Nothing in this Agreement requires the Litigation Administrator to file any accounting or seek approval of any court with respect to the administration of the Litigation Recovery Account or as a condition for managing any payment or distribution out of the Post-Emergence Claims, except as may otherwise be set forth in the Plan or the Confirmation Order.

4.13    Reports.

(a)    <u>Financial and Status Reports</u>.  The fiscal year of the Litigation Recovery Account shall be the calendar year.  Within 90 days after the end of each calendar year during the existence of the Litigation Recovery Account, within 45 days after the end of each calendar quarter during the existence of the Litigation Recovery Account (other than the fourth quarter), and as soon as practicable upon closure of the Litigation Recovery Account, the Litigation Administrator shall make available to the Claim Holders appearing in the Claim Holder Register as of the end of such period or such date of closure, a written report including: (i) financial statements of the Litigation Recovery Account for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Administrator ) reflecting the result of such procedures relating to the financial accounting administration of the Litigation Recovery Account as may be adopted by the Litigation Administrator; (ii) a summary description of any action taken by the Litigation Administrator which, in the judgment of the Litigation Administrator, materially affects the Litigation Recovery Account and of which notice has not previously been given to the Claim Holders; (iii) a description of the progress of liquidating the Post-Emergence Claims and making distributions to the Claim Holders, which description shall include a written report providing, among other things, a summary of the litigation status of the Post-Emergence Claims, any settlements entered into by the Litigation Administrator with respect to the Post-Emergence Claims, the Litigation Proceeds recovered to date, and the distributions made by the Litigation Administrator to date; (iv) payments made to the Litigation Administrator and the Litigation Administrator Professionals (including fees and expenses paid to contingency fee counsel); and (v) any other material information relating to the Post-Emergence Claims and the administration of the Post-Emergence Claims deemed appropriate by the Litigation Administrator, in its reasonable judgment, to be disclosed by it.  In addition, the Litigation Administrator shall make available unaudited financial statements to each Claim Holder on a quarterly basis (which may be quarterly operating reports filed with the Bankruptcy Court).  The Litigation Administrator may post any such report on a website maintained by the Litigation Administrator or electronically file it with the Bankruptcy Court in lieu of actual notice to each Claim Holder.  The Litigation Administrator shall respond, as soon as reasonably practicable, to reasonable requests for information (to the extent available) described in this clause (a) that is reasonably requested from Claim Holders during reasonable business hours, in each case, to the extent such requests do not (i) request the disclosure of privileged or confidential information, (ii) request the disclosure of information which would not be in the best interest of the Claim Holders (in the reasonable discretion of the Litigation Administrator ), and (iii) interfere with the duties of the Litigation Administrator hereunder.

(b)    <u>Annual Plan and Budget</u>.  If instructed by the Litigation Oversight Committee, the Litigation Administrator shall prepare and submit to the Litigation Oversight Committee for approval an annual plan and budget in such detail as is reasonably requested or, if the Litigation Oversight Committee has not been established, prepare and adopt such annual plan and budget as the Litigation Administrator deems reasonably appropriate.

## ARTICLE V
## LITIGATION RECOVERY ACCOUNT

5.1    <u>Establishment of Litigation Recovery Account</u>.  On the Effective Date, the Debtors shall fund the Litigation Recovery Account, which shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, encumbrances, and charges.  The Litigation Recovery Account

shall be held separately from the other Post-Emergence Claims and shall be used to (a) fund the costs and fees of the Litigation Administrators, (b) satisfy all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims to the extent not paid by the Debtors or the Plan Administrator either before or after the Effective Date, (c) fund Disputed Claims reserves relating to such Claims, and (d) fund the Litigation Administrator Expenses. The Litigation Administrator shall transfer any net Cash proceeds from the Post-Emergence Claims to the Litigation Recovery Account until such time as (i) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, and Litigation Administrator Expenses have been paid in full or otherwise resolved or the Disputed Claims reserves relating to such Claims have been fully funded, and (ii) the Administrative Claims Bar Date and any other applicable Claims Bar Date has expired. Any excess funds in the Litigation Recovery Account remaining after the payment or funding of amounts required under the preceding clauses (a)-(d) shall be deemed to be Litigation Proceeds and shall be available for distribution to Claim Holders in accordance with the Plan and this Agreement. The Litigation Oversight Committee may authorize reserving amounts for obligations and expenses expected to be payable.

5.2    <u>Cash in the Litigation Recovery Account</u>. Cash held in the Litigation Recovery Account (including any earnings that have accrued on such Cash, net of any expenses, including any tax, relating thereto) shall be retained by the Post-Effective Date Debtors for the benefit of Claim Holders as contemplated in Section 5.1, the Plan, the Confirmation Order and this Agreement pending determination of their entitlement thereto under the terms of the Plan. Cash shall be either (x) held in an interest-bearing account or (y) invested in interest-bearing obligations of the type described in Section 4.9, and having (in either case) a maturity date of not more than 30 days. All such Cash or investments shall be held at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Litigation Administrator and bearing the name "Litigation Recovery Account" or words of similar import. Cash held in the Litigation Recovery Account will (i) be held in trust, pending distribution by the Litigation Administrator and (ii) be accounted for separately from the Post-Emergence Claims.

5.3    <u>Distributions After Allowance of Disputed Claims or Disputed Interests</u>. At such time as a Disputed Claim or Interest becomes Allowed, the Litigation Administrator shall distribute to the holder thereof the distributions, if any, to which such Holder is then entitled on account of Litigation Proceeds under the Plan (including, with respect to Cash held in the applicable Litigation Recovery Account, any earnings that have accrued on the amount of Cash so retained, net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as reasonably practicable after the date upon which such Disputed Claim or Interest becomes Allowed, whether by settlement, compromise or Final Order or judgment of the Bankruptcy Court, but in no event more than 90 days thereafter. The balance of any Cash thereafter retained in a Disputed Claims reserve account shall be allocated to and included in future distributions to Holders of the remaining applicable Disputed Claims on a Pro Rata basis at such time as any such Disputed Claim becomes an Allowed Claim or otherwise as provided in the Plan, the Confirmation Order and this Agreement.

5.4    <u>Distributions After Disallowance of Disputed Claims</u>. If a Disputed Claim or Interest is disallowed, in whole or in part, the Litigation Administrator shall cancel the applicable

Allowed Claim, if applicable, and distribute the Cash held in the applicable Disputed Claims reserve account with respect to such Claim or Interest to the holders of the applicable series of Post-Emergence Claims in accordance with the terms of the Plan, the Confirmation Order and this Agreement.

## ARTICLE VI
## THE LITIGATION ADMINISTRATOR GENERALLY

6.1    Independent Litigation Administrator.  The Litigation Administrator, in accordance with the Plan and the Confirmation Order, shall be a professional natural person, entity or financial institution with experience administering bankruptcy claims and may not be a Member of the Litigation Oversight Committee.

6.2    Litigation Administrator's Term of Service, Compensation and Reimbursement.

(a)    Term of Service.  The Litigation Administrator shall serve as of the Effective Date until: (a) the completion of all of the Litigation Administrator's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Agreement in accordance with this Agreement; or (c) the Litigation Administrator's death or dissolution, incapacitation, resignation or removal.

(b)    Compensation.  The Litigation Administrator shall receive compensation from the Litigation Recovery Account as follows: (a) a monthly fee of $50,000 for the first three months following appointment and a monthly fee of $25,000 thereafter for professional services rendered in connection with this Agreement; (b) reimbursement of reasonable and documented out-of-pocket fees, costs, and expenses; and (c) as may be agreed between the Litigation Oversight Committee and the Litigation Administrator, a combination of hourly fees for professional services rendered as well as incentive compensation tied to specific targets (collectively, the "Litigation Administrator Compensation").  The Litigation Administrator Compensation may be modified from time to time by agreement of the Litigation Administrator and the Litigation Oversight Committee or, if the Chapter 11 Cases have not been closed or dismissed, by order of the Bankruptcy Court.  Notice of any modification of the Litigation Administrator's compensation shall be filed promptly with the Bankruptcy Court; *provided*, *however*, that after the closing or dismissal of the Chapter 11 Cases, such notice will be provided on a website maintained by the Litigation Administrator.

(c)    Expenses.  The Litigation Administrator will reimburse itself (after approval by the Litigation Oversight Committee, not to be unreasonably withheld, conditioned or delayed), from the Litigation Recovery Account for all actual, reasonable and documented out-of-pocket expenses incurred by the Litigation Administrator in connection with the performance of the duties of the Litigation Administrator hereunder or under the Confirmation Order or the Plan, including but not limited to, actual, reasonable and documented fees and disbursements of the Litigation Administrator's legal counsel incurred in connection with the review, execution, and delivery of this Agreement and related documents (collectively, the "Litigation Administrator Expenses" and, together with the Litigation Administrator Compensation, the "Litigation Administrator Fees").

(d)      Payment.  The Litigation Administrator Fees shall be paid to the Litigation Administrator from the Litigation Recovery Account without necessity for review or approval by the Bankruptcy Court or any other Person.  The Bankruptcy Court shall retain jurisdiction until the closing or dismissal of the Chapter 11 Cases to adjudicate any dispute regarding the Litigation Administrator Fees.

6.3     Resignation.  The Litigation Administrator may resign by giving not less than 45 days' prior written notice thereof by filing a notice with the Bankruptcy Court (and such notice shall be served on the Claim Holders); *provided, however*, after the closing or dismissal of the Chapter 11 Cases, such notice shall be posted on a website maintained by the Litigation Administrator and served on the Claim Holders.  Such resignation shall become effective on the earlier to occur of: (a) the day specified in such notice, and (b) the appointment of a successor satisfying the requirements set out in Section 6.5 by the Litigation Oversight Committee or the Bankruptcy Court and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 9.1 below), the Litigation Administrator shall be deemed to have resigned, except as otherwise provided for in Section 9.2 herein.  Written notice of the resignation of the Litigation Administrator and the appointment of a successor Litigation Administrator shall be provided promptly to the Claim Holders.

6.4     Removal.

(a)      The Litigation Administrator (or any successor Litigation Administrator ) may be removed (i) by the Litigation Oversight Committee, for Cause (as defined in Section 2.2(b) herein), immediately upon notice thereof, or without Cause, upon not less than 45 days' prior written notice; *provided, however*, that the Litigation Administrator (or any successor Litigation Administrator ) may not be removed without Cause prior to 18 months after the date of this Agreement and then only if a successor Litigation Administrator is simultaneously appointed, or (ii) by order of the Bankruptcy Court for Cause.

(b)      To the extent there is any dispute regarding the removal of a Litigation Administrator (including any dispute relating to any portion of the Litigation Administrator Fees) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.  Notwithstanding the foregoing, the Litigation Administrator will continue to serve as the Litigation Administrator after his, her or its removal other than for Cause until the earlier of (i) the time when appointment of a successor Litigation Administrator will become effective in accordance with Section 6.5 of this Agreement or (ii) 45 days after the date of removal.

6.5     Appointment of Successor Litigation Administrator.

(a)      In the event of the death or Disability (as defined in Section 2.2(b) herein) (in the case of a Litigation Administrator that is a natural person), dissolution (in the case of a Litigation Administrator that is not a natural person), resignation, incompetency or removal of the Litigation Administrator (each, a "Succession Event"), the Litigation Oversight Committee shall promptly designate a successor Litigation Administrator satisfying the requirements set forth in Section 6.1 hereof; *provided*, *however*, the Bankruptcy Court may designate a successor Litigation Administrator to the extent that the Litigation Oversight Committee has not designated a successor

Litigation Administrator within 30 days of a Succession Event resulting from the death, Disability, dissolution, resignation or incompetency of the Litigation Administrator. Such appointment shall specify the date on which such appointment shall be effective. Every successor Litigation Administrator appointed hereunder shall execute, acknowledge and deliver to the Claim Holders an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Administrator hereto and subject to the terms of this Agreement, and thereupon the successor Litigation Administrator, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Administrator and the successor Litigation Administrator shall not be personally liable for any act or omission of the predecessor Litigation Administrator; *provided*, *however*, that a predecessor Litigation Administrator shall, nevertheless, when requested in writing by the successor Litigation Administrator, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Administrator, without recourse to or liability against the predecessor Litigation Administrator, under the Agreement all the estates, properties, rights, powers and trusts of such predecessor Litigation Administrator and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Administrator, in effectuating the assumption by the successor Litigation Administrator of his/her/its obligations and functions hereunder. For notice purposes only and not for approval, the Litigation Oversight Committee shall file with the Bankruptcy Court (or post on a website maintained by the Litigation Administrator if the Chapter 11 Cases have been closed) a notice appointing the successor Litigation Administrator.

(b)  During any period in which there is a vacancy in the position of Litigation Administrator, the Litigation Oversight Committee, in consultation with the Litigation Administrator, shall appoint (or the Bankruptcy Court may appoint) an interim Litigation Administrator (the "Interim Administrator"). The Interim Administrator shall be subject to all the terms and conditions applicable to a Litigation Administrator hereunder; *provided*, *however*, that (x) any such Interim Administrator shall not be entitled to receive the Litigation Administrator Compensation unless approved by the Litigation Oversight Committee, but shall be entitled to receive payment for the Litigation Administrator Expenses and (y) notwithstanding the provisions of Section 6.1, such Interim Administrator may be selected from among the Members of the Litigation Oversight Committee, provided that any such Interim Administrator shall abstain and recuse itself from all votes and other actions taken by the Members of the Litigation Oversight Committee during the term of such Member's service as Interim Administrator. Such Interim Administrator shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Oversight Committee merely by such Person's appointment as Interim Administrator, but shall be limited in the exercise of such rights or powers as a Litigation Administrator to the extent the Litigation Oversight Committee shall, to the extent applicable in this Agreement, fail to approve any such action or undertaking by the Interim Administrator.

(c)  To the extent that the Litigation Oversight Committee is unable to appoint a successor Litigation Administrator or Interim Administrator and the Chapter 11 Cases have been closed or dismissed, the Chapter 11 Cases may be reopened for the limited purpose of seeking an order of the Bankruptcy Court to appoint a successor Litigation Administrator.

6.6  Effect of Resignation or Removal. The death, Disability, dissolution, bankruptcy, resignation, incompetency, incapacity or removal of the Litigation Administrator, as applicable, shall not operate to terminate this Agreement or to revoke any existing agency created pursuant to

25

the terms of this Agreement or invalidate any action theretofore taken by the Litigation Administrator or any prior Litigation Administrator.  In the event of the resignation or removal of the Litigation Administrator, such Litigation Administrator will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court (or any other court of competent jurisdiction) or reasonably requested by the Litigation Oversight Committee or the successor Litigation Administrator to effect the termination of such Litigation Administrator's capacity under this Agreement, (b) deliver to the successor Litigation Administrator all documents, instruments, records and other writings related to the Litigation Administrator as may be in the possession of such Litigation Administrator, including any Post-Emergence Claims Materials, and shall not retain any copies of such materials, even for archival purposes (other than digital copies resulting from the back-up or archiving of the predecessor Litigation Administrator's IT files and systems which cannot be easily deleted without also deleting other files unrelated to service as the Litigation Administrator hereunder), and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Administrator.  Notwithstanding anything to the contrary contained in this Agreement, any Litigation Administrator who is removed or resigns pursuant to this Agreement shall retain its right to coverage under any applicable insurance policies and indemnification in accordance with Article VII for its acts or omissions occurring prior to such removal or resignation.

## ARTICLE VII
## LIABILITY AND INDEMNIFICATION

7.1    No Further Liability.  Each of the Litigation Administrator, the Members and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Recovery Account unless determined by a final judgment of a court of competent jurisdiction to arise out of such Person's own fraud, willful misconduct or gross negligence.  Unless so arising out of such Person's own fraud, willful misconduct or gross negligence, in performing its duties under this Agreement, the Litigation Administrator, the Members and their representatives (as applicable) shall have no liability for any action taken by such Person in good faith, in the reasonable belief that such action was in the best interests of the Holders and/or in accordance with the advice of the Litigation Administrator Professionals retained by the Litigation Oversight Committee or the Litigation Administrator. Without limiting the generality of the foregoing, the Litigation Administrator, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon.  None of the provisions of this Agreement shall require the Litigation Administrator, the Members or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Litigation Administrator, the Members and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order or this Agreement (including in the execution of such Person's duties hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given.  Notwithstanding the foregoing, nothing in this Section 7.1 shall relieve the Litigation Administrator, the Members or their representatives from any liability for any actions or omissions determined by a final judgment of a court of competent jurisdiction to have arisen out of such Person's fraud, willful misconduct or gross negligence.  Any

action taken or omitted to be taken in the case of the Litigation Administrator or the Litigation Oversight Committee with the express approval of the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence. No termination of this Agreement or amendment, modification or repeal of this Section 7.1 shall adversely affect any right or protection of the Litigation Administrator, the Members of the Litigation Oversight Committee or their respective designees, professional agents or representatives that exists at the time of such termination, amendment, modification or repeal. The Litigation Administrator shall have no liability for the acts or omissions of any Litigation Administrator Professional which was reasonably selected by it in good faith. Notwithstanding the foregoing, in no event shall the Litigation Administrator have any liability under any circumstances for any acts or omissions taken by it at the direction of the Litigation Oversight Committee.

7.2    <u>Indemnification of the Litigation Administrator and Litigation Oversight Committee</u>.

(a)    From and after the Effective Date, each of the Litigation Administrator, the Litigation Oversight Committee, the Litigation Administrator Professionals and each of the Litigation Administrator's and Members' representatives (each, a "<u>Litigation Administrator Agreement Indemnified Party</u>," and collectively, the "<u>Litigation Administrator Agreement Indemnified Parties</u>") shall be, and hereby is, indemnified by recourse solely to the Litigation Recovery Account, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Administrator Agreement Indemnified Party's exercise of what such Litigation Administrator Agreement Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Administrator Agreement Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Administrator Agreement Indemnified Party's own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Administrator; or (iv) proceedings by or on behalf of any creditor. Expenses, including attorney's fees and other expenses and disbursements, incurred by a Litigation Administrator Agreement Indemnified Party in defending or investigating a threatened or pending action, suit or proceeding shall be paid or reimbursed by the Litigation Administrator, solely out of the Litigation Recovery Account (including any insurance policy obtained by the for the benefit of Litigation Administrator Agreement Indemnified Parties), in advance of the final disposition of such action, suit or proceeding; *provided*, *however*, that any Litigation Administrator Agreement Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance (without interest) if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Administrator Agreement Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct or gross negligence. Any indemnification claim of a Litigation Administrator Agreement Indemnified Party shall be entitled

27

to a priority distribution from the Litigation Recovery Account, ahead of the Post-Emergence Claims and any other claim to, or interest in, such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Administrator's expense, subject to the foregoing terms and conditions. In addition, the Litigation Oversight Committee shall purchase insurance coverage as set forth in Section 4.10(j) hereof, including fiduciary liability insurance using funds from the Litigation Recovery Account for the benefit of the Litigation Administrator and the Members. The indemnification provided under this Section 7.2 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Administrator, the Litigation Oversight Committee, any Member or any other Litigation Administrator Agreement Indemnified Party and shall inure to the benefit of the Litigation Administrator's, each Member's and each other Litigation Administrator Agreement Indemnified Party's respective heirs, successors and assigns.

(b) The foregoing indemnity in respect of any Litigation Administrator Agreement Indemnified Party shall survive the termination of such Litigation Administrator Agreement Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(c) Any Litigation Administrator Agreement Indemnified Party may waive the benefits of indemnification under this Section 7.2, but only by an instrument in writing executed by such Litigation Administrator Agreement Indemnified Party that expressly waives such benefits.

(d) The rights to indemnification under this Section 7.2 are not exclusive of other rights which any Litigation Administrator Agreement Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. For the avoidance of doubt, each Litigation Administrator Agreement Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Administrator Agreement Indemnified Party may incur in connection with enforcing any of its rights under this Article VII.

7.3   Litigation Administrator Liabilities. All liabilities of the Litigation Administrator, including, without limitation, indemnity obligations under Section 7.2 of this Agreement and applicable law will be paid or satisfied solely from the Litigation Recovery Account and paid on a priority basis, *provided*, *however*, that the Litigation Administrator may obtain liability insurance to satisfy its indemnity obligations under applicable law. No liability of the Litigation Administrator will be payable in whole or in part by any Claim Holders individually or in the Claim Holders' capacity, by the Litigation Administrator individually or in the Litigation Administrator's capacity as Litigation Administrator, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employee, agent, affiliate or advisor of any Claim Holders, any Member, the Litigation Administrator or their respective affiliates. For the avoidance of doubt, it is understood and agreed that Mohsin Y. Meghji shall have no personal liability for any acts, omissions, or claims

28

of any nature relating to, or resulting from, his service as the initial Litigation Administrator, and any such asserted liability shall be the sole obligation of M3 Advisory Partners, LP, which itself shall have no liability except for fraud, willful misconduct, or gross negligence.

7.4    Limitation of Liability.    None of the Litigation Administrator Agreement Indemnified Parties shall be liable for direct, indirect, monetary, punitive, exemplary, consequential, special or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Administrator Agreement Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order.

7.5    Burden of Proof.    In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Administrator Agreement Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE VIII
## TAX MATTERS

8.1    Treatment of Post-Emergence Claims.    For all federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the Post-Emergence Date Debtors, the Litigation Administrator and the Claim Holders) shall treat the Post-Emergence Claims as being retained by the Post-Effective Date Debtors.

(a)    The Litigation Administrator shall be responsible for remitting to the Post-Effective Debtors, out of the Litigation Recovery Account, any taxes imposed on or otherwise required to be paid by, the Post-Effective Debtors by reason of Litigation Recovery Account.

8.2    Withholding of Taxes.    The Litigation Administrator shall deduct and withhold and pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Litigation Recovery Account.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Claim Holders for all purposes of this Agreement.

(a)    The Litigation Administrator shall be authorized to collect such tax information from the Claim Holders (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.  As a condition to receiving distributions under the Plan, all Claim Holders may be required to identify themselves to the Litigation Administrator and provide tax information and the specifics of their holdings, to the extent the Litigation Administrator deems appropriate, including an IRS Form W-9 or, in the case of Claim Holders

that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8.

(b)    The Litigation Administrator may refuse to make a distribution to any Claim Holder that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Claim Holder, the Litigation Administrator shall make such distribution to which the Claim Holders is entitled, without interest; and, *provided*, *further*, that, if the Litigation Administrator fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Administrator is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Administrator for such liability. The identification requirements in Section 8.2 may, in certain cases, extend to holders who hold their securities in street name. If a Claim Holder fails to comply with such a request for tax information within 180 days, the Litigation Administrator may file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website maintained by the Litigation Administrator, that will provide twenty-one days' notice before such distribution may be deemed an unclaimed distribution.

(c)    In the event that the Litigation Administrator elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Claim Holders under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Administrator.

8.3    <u>Valuation</u>. The Litigation Administrator also shall file (or cause to be filed) any statements, returns or disclosures relating to the Litigation Recovery Account that are required by any governmental unit.

## ARTICLE IX
## TERMINATION OF THE AGREEMENT

9.1    <u>Termination</u>. The Litigation Administrator, the Litigation Oversight Committee and the Litigation Recovery Account shall be discharged or dissolved, as the case may be, at such time as (a) the Litigation Administrator has liquidated or (with the approval of the Litigation Oversight Committee) abandoned all Post-Emergence Claims, (b) all objections to the Disputed Claims have been resolved, and (c) all distributions required to be made by the Litigation Administrator under the Agreement have been made; *provided*, *however*, that, notwithstanding the foregoing, the Litigation Recovery Account shall be closed within five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed two years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Litigation Administrator ) is necessary to facilitate or complete the recovery and liquidation of the Post-Emergence Claims; *provided further*, *however*, that if the Chapter 11 Cases have been closed or dismissed before the date that is five years from the Effective Date, then no Bankruptcy Court approval shall be required and the only requirement for an extension is a private letter ruling from the Internal Revenue Service or an opinion of counsel

30

satisfactory to the Litigation Administrator.  If at any time the Litigation Administrator determines, in reliance upon the advice of the Litigation Administrator Professionals (or any one or more of them), that the expense of administering the Post-Emergence Claims as to make a final distribution to the Claim Holders is likely to exceed the value of consideration available for distribution and provided that clause (c) above has been satisfied, the Litigation Administrator may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to close the Litigation Recovery Account, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC and (D) that is unrelated to the Debtors, MiningCo, the Litigation Administrator, the Members, any Litigation Administrator Professionals and any insider of any of the foregoing and (iii) close the Litigation Recovery Account (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Wind-Down Process").  Such date upon which the Litigation Recovery Account shall finally be closed shall be referred to herein as the "Termination Date."

9.2    Continuance of the Litigation Administrator for Winding Up.  During the Wind-Down Process, the Litigation Administrator, solely for the purpose of liquidating and winding up the affairs of the Litigation Recovery Account, shall continue to act as such until its duties have been fully performed.  During the Wind-Down Process, the Litigation Administrator shall continue to be entitled to receive the Litigation Administrator Fees called for by Section 6.2(a) hereof and subject to Section 2.5 hereof.  Upon distribution of all the Litigation Proceeds, the Litigation Administrator shall retain the books, records and files that shall have been delivered or created in connection with the administration of the Post-Emergence Claims to the extent not otherwise required to be handled by the Litigation Administrator in accordance with Section 2.3 hereof.  At the Litigation Administrator's discretion, but subject in all cases to Section 2.3 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Litigation Administrator deems appropriate (unless such records and documents are necessary to fulfill the Litigation Administrator's obligations hereunder).  Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Administrator shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Claim Holders as provided herein, and the Post-Emergence Claims shall be cancelled.

## ARTICLE X
## AMENDMENT AND WAIVER

10.1    No amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the interests, rights or treatment of the Claim Holders, (b) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order or this Agreement, (c) amend Section 6.2(b) hereof, (d) be inconsistent with the Plan or the Confirmation Order, or (e) be inconsistent with the purpose and intention of the Agreement to liquidate in an expeditious but orderly manner the Post-Emergence Claims in accordance with Treasury Regulation section 301.7701-4(d).

10.2    No amendment, supplement or waiver of or to this Agreement shall adversely affect the interests, rights, or treatment of the Litigation Administrator with respect to the Litigation Administrator's compensation or indemnification hereunder without the prior written consent of the Litigation Administrator, or shall adversely affect such interests, rights, or treatment of any

former Litigation Administrator without the prior written consent of such former Litigation Administrator.

10.3    No failure by the Litigation Administrator or the Litigation Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

11.2    <u>Jurisdiction</u>.  Subject to the proviso below and so long as the Chapter 11 Cases have not been closed or dismissed, the Parties agree that the Bankruptcy Court shall have jurisdiction over the interpretation and enforcement of the Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Administrator shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Post-Emergence Claims and pursue any recoveries in respect of any Post-Emergence Claims.  Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the borough of Manhattan in the state of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement).  Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

11.3    <u>Exculpation</u>.  Notwithstanding anything to the contrary herein or in the Plan Administrator Agreement, the Litigation Administrator and the Plan Administrator shall be exculpated with respect to any potential liability in connection with actions taken by the BRIC in the course of its duties as Litigation Administrator (ARM).  For the avoidance of doubt, any exculpation relating to the period prior to the Effective Date shall be subject to the same limitations as set forth in the Confirmation Order for exculpation under the Plan.

11.4    <u>Non-Disparagement</u>.  Through the date on which this Agreement terminates, the Debtors, the Committee, the Plan Administrator, the Litigation Administrator (ARM), the Litigation Administrator, and the Litigation Oversight Committee (collectively, the "<u>Non-Disparagement Parties</u>") shall not, and shall cause their respective directors, officers, employees,

32

agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Non-Disparagement Parties, the professionals or employees of the other Non-Disparagement Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Non-Disparagement Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in clause (i) of this section; *provided* that the foregoing shall not prevent the Non-Disparagement Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information. These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan.

11.5    <u>Severability</u>.  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.6    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery) or (c) the date of the transmission confirmation:

(i)    If to the Litigation Administrator, to:

M3 Advisory Partners, LP
1700 Broadway, 19th Floor
New York, New York 10019
Attn: Celsius Litigation Administrator, Mohsin Y. Meghji
Email: Celsius_Litigation_Admin@m3-partners.com

With a copy to:

Attn:  General Counsel
Email:  cgarner@m3-partners.com

(ii)    If to the Debtors, to:

c/o Celsius Network LLC
50 Harrison Street, Suite 209F
Hoboken, New Jersey 07030
Attn: Ron Deutsch

With a copy to:

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Email: joshua.sussberg@kirkland.com

– and –

Patrick J. Nash, Jr., P.C.
Ross M. Kwasteniet, P.C.
Christopher S. Koenig
Dan Latona
300 North LaSalle Street
Chicago, Illinois 60654
Email: patrick.nash@kirkland.com
        ross.kwasteniet@kirkland.com
        chris.koenig@kirkland.com
        dan.latona@kirkland.com

(iii)    if to any Claim Holders, to the last known address of such Claim Holders, according to the Litigation Administrator's records;

(iv)    if to a Member of the Litigation Oversight Committee, to the applicable address(es) of such person according to the Litigation Administrator's records.

11.7    <u>Headings</u>.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

11.8    <u>Plan and Confirmation Order</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Agreement shall govern and control.  In the event of any direct conflict or inconsistency between any provision in this Agreement, on the one hand, and the provisions of the Confirmation Order, on the other hand, the provisions of the Confirmation Order shall govern and control.

11.9    <u>Entire Agreement</u>.  This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

11.10    Survival. Notwithstanding the termination of this Agreement in accordance with its terms, the agreements and obligations of the Parties in Sections 2.5, 2.9, 6.2, 6.6, 7.1, 7.2, 7.3, 7.4, 7.5, 10.2, and 11.1 through 11.17 shall survive such termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof and thereof.

11.11    Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

11.12    Meanings of Other Terms.   Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.   The term "including" shall mean "including, without limitation."

11.13    Successors in Interest.   This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the Debtors, including, but not limited to, the Post-Effective Date Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof, including, specifically, the terms of Section 2.3 hereto.   The obligations of the Litigation Administrator to any one or more of the Debtors pursuant to this Agreement shall also be obligations of the Post-Effective Date Debtors and Litigation Administrator to any such successor in interest, including, but not limited to, the Post-Effective Date Debtors, including their obligations under Section 2.3 hereto.   For the avoidance of doubt, in the event that any Person (including, as applicable, the Post-Effective Date Debtors) becomes a successor in interest to a Debtor, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements of this Agreement (including Section 2.3) prior to such Person becoming a successor in interest to the applicable Debtor, shall not become subject to the provisions and requirements of this Agreement (including Section 2.3) solely because such Person becomes a successor in interest to the applicable Debtor.

11.14    Limitations.   Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.   The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

11.15    Further Assurances. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions

as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

11.16    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

11.17    <u>Authority</u>.  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement and the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

[*Signature pages follow.*]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

MOHSIN    MEGHJI,    AS    LITIGATION ADMINISTRATOR

By: _____
Name: Mohsin Meghji
Title:   Litigation Administrator

CELSIUS NETWORK LLC, ON BEHALF OF ITSELF AND ITS AFFILIATED DEBTORS

By: _____
Name: Ron Deutsch
Title:   General Counsel

ACKNOWLEDGED AND AGREED
Solely with respect to the provisions of the final sentence of Section 7.3 hereof:

M3 ADVISORY PARTNERS, LP

By:_____
Name: Mohsin Meghji
Title:   Managing Partner

[Signature Page to Litigation Administrator Agreement]

## EXHIBIT A

**Initial Members of the Litigation Oversight Committee**

[*To be filed separately.*]

## **Exhibit B-1**

**(Redline) M3 Litigation Administrator Agreement**

*W&C DRAFT 10.27.23*

## LITIGATION ADMINISTRATOR AGREEMENT

This Litigation Administrator Agreement is made this [●] day of [●], ~~2023~~[●] (this "Agreement"), by and among Celsius Network~~,~~ LLC on behalf of itself and its debtor affiliates (each a "Debtor" and collectively the "Debtors")~~,~~ and [Mohsin Y. Meghji], as the Litigation Administrator referred to herein (in such capacity, the "Litigation Administrator" and collectively with [●], in their capacity as the designee of the Blockchain Recovery Investment Consortium (the "BRIC") as the Litigation Administrator (ARM) of the Debtors, and any other litigation administrator appointed by the Litigation Oversight Committee, the "Litigation Administrators"), in order to facilitate the implementation of the ~~plan of reorganization as set forth in~~*Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"), the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3~~3972-~~19] dated ~~August 15~~September 27, 2023 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "Plan")*, and the Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4172] (the "MiningCo Order"). Each Debtor and the Litigation Administrator are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, each Debtor other than the GK8 Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 13, 2022 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under the Bankruptcy Code on December 7, 2022 (such cases, the "Chapter 11 Cases")~~; and~~

WHEREAS, on October 30, 2023, the Parties filed a form of Litigation Administrator Agreement [Docket No. 3935];

WHEREAS, on ~~[●]~~November 9, 2023, the Bankruptcy Court entered ~~its order confirming the Plan (the "~~the Confirmation Order~~");~~ and confirmed the Plan;

~~WHEREAS, the Plan provides, among other things, for (a) the prosecution of the remaining Disputed Claims, the Recovery Causes of Action, and the Contributed Claims by the Litigation Administrator (together, the "Plan Claims"), (b) the collection of the Goldstein Loan, the Leon Loan, and any CEL Insider Loans by the Litigation Administrator (together, the "Collection Actions", and together with the Plan Claims and any Causes of Action (as defined in the Plan) that the Plan Administrator and Litigation Administrator agree should be prosecuted for the benefit of creditors, the "Post-Emergence Claims"), (c) the oversight role of the Litigation Oversight Committee, (d) the establishment of the Litigation Recovery Account, funded with the Initial Litigation Funding Amount and controlled by the Litigation Administrator, and (e) the governance of the powers, duties, and responsibilities of the Litigation Administrator, in accordance with the Plan, the Confirmation Order, and this Agreement; and~~

*WHEREAS, on November 30, 2023, the Debtors and the Committee filed the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "MiningCo Motion"), which sought to implement an Orderly Wind Down on the terms set forth therein;

*WHEREAS, on December 16, 2023, the Debtors and the Committee filed the Supplemental Joint Statement Regarding the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4115] (the "MiningCo Supplement") and the term sheet attached thereto, pursuant to which the Debtors and the Committee informed the Bankruptcy Court that, pursuant to the Plan, a designee of the BRIC would be appointed as the Litigation Administrator (ARM) on the Effective Date, in addition to the Litigation Administrator appointed hereunder;

*WHEREAS, on December 27, 2023, the Court granted the MiningCo Motion and entered the MiningCo Order;*

*WHEREAS, in connection with the entry of the MiningCo Order, and pursuant to the MiningCo Supplement, the Parties have agreed to modify the terms of Mr. Meghji's appointment as Litigation Administrator on the terms set forth herein; and*

WHEREAS, the Litigation Administrator shall have all powers necessary to implement and administer the provisions of this Agreement as provided herein.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

# ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

# ARTICLE II
## ESTABLISHMENT OF THE LITIGATION ADMINISTRATOR AND THE LITIGATION OVERSIGHT COMMITTEE

2.1    Establishment and Appointment of the Litigation Administrator and the Litigation Oversight Committee.

(a)    The Debtors and the Litigation Administrator, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish this Agreement on behalf of the Holders of Claims entitled to receive Litigation Proceeds from the Litigation Recovery Account pursuant to the Plan (the "Claim Holders"), on the terms set forth herein.  In connection with the exercise of the Litigation Administrator's

powers hereunder, the Litigation Administrator may use the name "Litigation Administrator" or such variation thereof as the Litigation Administrator sees fit.

(b)    The Litigation Administrator is hereby appointed under this Agreement effective as of the Effective Date.

(c)    The initial members of the Litigation Oversight Committee (each such Person and any other Person appointed to be a member of the Litigation Oversight Committee pursuant to this Agreement, a "**Member**") are identified on **Exhibit A** hereto and were appointed ~~by the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group~~ in accordance with the ~~Plan. In the event that the Litigation Oversight Committee has not been established at any time and from time to time, then all references herein to the Litigation Oversight Committee shall be deemed to be omitted and not effective in any respect unless and until the Members thereof are appointed in accordance with the Plan.~~<u>Confirmation Order and Plan.</u>

(d)    The Litigation Administrator ~~agrees to~~<u>shall</u> administer ~~the~~ <u>exclusively the Claims and Causes of Action allocated to the Litigation Administrator pursuant to **Exhibit B** attached hereto (collectively, the "Post-Emergence Claims")</u> on behalf of the Debtors for the benefit of the Claim Holders, subject to the provisions of the Plan, the Confirmation Order and this Agreement, and shall serve at the direction of the Litigation Oversight Committee ~~(if appointed)~~ in accordance with the terms of this Agreement~~.~~<u>; *provided*, the Litigation Administrator shall not administer the Claims and Causes of Action allocated to the Litigation Administrator (ARM) pursuant to **Exhibit B** hereto (collectively, the "ARM Claims"), and the Litigation Administrator (ARM) shall exclusively administer such Claims and Causes of Action subject to the terms of the separate agreement between the Litigation Administrator (ARM) and the Debtors.</u>

(e)    The Litigation Administrator and each successor serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(f)    Subject to the terms of this Agreement, any action by the Litigation Administrator and/or the Litigation Oversight Committee that affects the interests of more than one Claim Holder shall be binding and conclusive on all Claim Holders even if such Claim Holders have different or conflicting interests.

(g)    The Litigation Oversight Committee shall designate three (3) members to serve on a subcommittee, the ("Avoidance Action Oversight Subcommittee"). The Earn Ad Hoc Group and the Retail Borrower Ad Hoc Group shall each have the right to appoint one (1) member of the Avoidance Action Oversight Subcommittee, subject to the consent of the Committee (as defined in the Plan). The Avoidance Action Oversight Subcommittee shall confer with the Litigation Administrator with respect to, and oversee the settlement and prosecution of, Avoidance Actions against non-Insider (or former Insider) individual Account Holders for prepetition transfers of less than $1 million, valued at the date of the applicable transfer and taking into account deposits following the first withdrawal in the ninety (90) days prior to the Petition Date. The Litigation Oversight Committee, the Litigation Administrator, and the Avoidance Action Oversight Subcommittee shall agree on a process for resolving the

settlement and prosecution of Avoidance Actions described in this subsection. For the avoidance of doubt, the Avoidance Action Oversight Subcommittee shall be subject to the same fiduciary duties as the Litigation Oversight Committee.

2.2    Removal of Litigation Oversight Committee Members.

(a)    A Member may be removed by a majority vote of the Litigation Oversight Committee, for Cause (as defined in Section 2.2(b) herein), immediately upon notice thereof.

(b)    To the extent there is any dispute regarding the removal of a Member (including any dispute relating to any portion of a Members' fees or a Members' professional fees) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.

For purposes of this Agreement:

(i)    "Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to a Member or, to the extent applicable, the Litigation Administrator, regular attendance at meetings of the Litigation Oversight Committee), which is not remedied within 30 days of written notice specifying such failure in reasonable detail; (ii) a Person's commission of an act of fraud, theft or embezzlement; (iii) a Person's disclosure of information in violation of Section 2.9; (iv) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (v) a Person's gross negligence, willful misconduct, or knowing violation of law in the performance of his/her/its duties hereunder; (vi) a Person's breach of fiduciary duties; or (vii) an unresolved conflict of interest which cannot be obviated by appointment of a substitute with respect to claims that are the subject of a conflict determination made by the Litigation Oversight Committee pursuant to Section 2.8; and

(ii)    "Disability" of the Litigation Administrator or a Member who is a natural person shall have occurred if, as a result of such Person's incapacity due to physical or mental illness as determined by a physician selected by the Litigation Administrator or the Member, as applicable, and reasonably acceptable to the Litigation Oversight Committee, the Litigation Administrator or the Member shall have been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

2.3    The Post-Emergence Claims.

(a)    From and after the Effective Date, the Litigation Administrator shall have access to copies of the Debtors', the Estates', the Post-Effective Date Debtors', the Celsius Professionals' (as defined in Section 2.3(d)), and the Plan Administrator's records and information directly or indirectly relating to the Post-Emergence Claims that are in the possession or control of any of such Parties, including copies of electronic records or documents, all in compliance with applicable law. From and after the Effective Date, pursuant to the Plan

and the Confirmation Order, the Litigation Administrator shall have access to any relevant documents, information or personnel reasonably related to the Litigation Administrator's responsibilities under the Plan and this Agreement, and the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, and the Plan Administrator agree to preserve records and documents (including electronic records or documents) directly or indirectly related to any Post-Emergence Claims, including without limitation Disputed Claims, the Recovery Causes of Action, and the Contributed Claims, until such time as the Litigation Administrator notifies the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, or the Plan Administrator in writing that such records are no longer required to be preserved.

(b)      The Litigation Administrator and its advisors shall have access to all records, documents, information, and work product in respect of the Post-Emergence Claims (including all electronic records, documents, information and work product) in the possession of the Debtors, the Estates, the Post-Effective Date Debtors, the Contributing Claimants, the Celsius Professionals, and the Plan Administrator; *provided*, for the avoidance of doubt, that such records, documents, information, and work product shall not include (a) any materials relating to the preparation, filing, or prosecution of these chapter 11 cases or (b) any internal communications of any advisors to the Debtors that are Released Parties; *provided*, *further*, that notwithstanding the foregoing proviso, the Litigation Administrator(s) may request, and such advisors shall provide access to, any primary documents or final work product identified (in such advisors' professional judgement) as materially relevant to the prosecution of any claims against Excluded Parties (including the UCC Claims Stipulation Defendants).

(c)      The Debtors, the Estates, the Post-Effective Date Debtors, the Plan Administrator, the Celsius Professionals, and any party under the direct or indirect control of such Parties shall take, or cause to be taken, all such further actions as the Litigation Administrator may reasonably request, including, reasonably cooperating with the Litigation Administrator for requests for telephone conferences, interviews, and appearances of current and former directors, officers, employees, agents and professionals as witnesses (by affidavits, at depositions, and at hearings/trials, as necessary) and by providing access to the last known address of any such individual, to the extent reflected in the books and records of the Debtors, the Estates, the Post-Effective Date Debtors, the Celsius Professionals, or the Plan Administrator and to the extent permissible under applicable law, in each case in order to permit the Litigation Administrator to investigate, prosecute, protect and preserve all Post-Emergence Claims; *provided* that the Litigation Administrator shall agree that the Litigation Recovery Account shall reimburse any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity that takes action pursuant to this provision.

(d)      To the extent requested by the Litigation Administrator, the Debtors shall cause the professionals retained by the Debtors during the Chapter 11 Cases (the "Celsius Professionals") to, subject to any applicable professional rules of responsibility, cooperate with the Litigation Administrator in the investigation and prosecution of the Post-Emergence Claims. Without limiting the foregoing, the Celsius Professionals shall provide the Litigation Administrator access to those attorneys, accountants and other professionals with knowledge of matters directly or indirectly relevant to the Disputed Claims, the Recovery Causes of Action, and the Contributed Claims.   Any privilege or immunity attaching to any documents or

5

communications (whether written or oral) including, but not limited to, any attorney-client privilege, work-product privilege, joint interest privilege, or any other evidentiary privileges or immunity, in each case relating to any Post-Emergence Claims held by the Debtors pursuant to applicable federal, state, and other law shall vest in the applicable Litigation Administrator(s) as of the Effective Date. The Debtors and the Litigation Administrator(s) are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses, and the Debtors shall transfer any and all prepetition case files and work product from the Debtors' current and former in-house and outside counsel (or unredacted copies of such files, as appropriate) within thirty (30) days of the Effective Date; provided, for the avoidance of doubt, that such production shall not include (a) any materials relating to the preparation, filing, or prosecution of these chapter 11 cases or (b) any internal communications of any advisors to the Debtors that are Released Parties; provided, further, that notwithstanding the foregoing proviso, the Litigation Administrator(s) may request, and such advisors shall provide, any primary documents or final work product identified (in such advisors' professional judgement) as materially relevant to the prosecution of any claims against Excluded Parties (including the UCC Claims Stipulation Defendants) and, provided further that any failure to transfer such files and work product within 30 days shall not prevent the Litigation Administrator(s) from effectuating the transfer thereof at a later date. The Celsius Professionals shall be reimbursed from the Litigation Recovery Account for any reasonable and documented fees and out-of-pocket expenses incurred by the Celsius Professionals directly connected with such cooperation by the Celsius Professionals.

(e)    Subject to Section 5.1, hereof, all of the proceeds received by the Litigation Administrator from the pursuit of any Post-Emergence Claims (including any settlements thereof) shall be added to the Litigation Recovery Account and held as a part thereof.

2.4    Privileges.

(a)    The Litigation Administrator shall, on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders, hold all attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "Privileges") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors), the Committee, the Earn Ad Hoc Group, or the Retail Borrower Ad Hoc Group, as applicable (together the "Privilege Parties") related in any way to the Post-Emergence Claims and the purpose of the Agreement (the "Privileged Information"). The Privileged Information shall include documents and information of all manner, whether oral, written, or digital. For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Parties.

(b)    The foregoing shall vest the Privileges concerning the Privileged Information exclusively in the Litigation Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Administrator and Claim Holders. The Litigation Administrator shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Privileged Information confidential, or waive

6

any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Privileged Information.

(c)     The Privilege Parties agree to take all necessary actions to provide to the Litigation Administrator without the necessity of a subpoena all Privileged Information in their respective possession, custody, or control necessary for the pursuit of Post-Emergence Claims; *provided* that the Litigation Administrator shall agree that the Litigation Recovery Account shall reimburse any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity directly related to action taken pursuant to this provision.  The Litigation Administrator is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Privileged Information, and no such person may object to the production to the Litigation Administrator of such Privileged Information on the basis of a Privilege held by a Privilege Party.  Until and unless the Litigation Administrator makes a determination in its sole discretion to waive any Privilege, Privileged Information shall be produced solely to the Litigation Administrator or as required by law.  For the avoidance of doubt, this Subsection is subject in all respects to Section 2.4(a) of this Agreement.

(d)     Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by granting access to any Privileged Information to the Litigation Administrator or any of its respective employees, professionals or representatives, or by disclosure of such Privileged Information between the Privilege Parties, on the one hand, and the Litigation Administrator, on the other hand, or any of their respective employees, professionals or representatives.

(e)     If a Privilege Party, the Litigation Administrator, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Administrator of the production and shall demand of all recipients of the inadvertently disclosed Privileged Information that they return or confirm the destruction of such materials.

(f)     Notwithstanding anything to the contrary contained in Section 2.4, for the avoidance of doubt, no Privilege or Privileged Information related to any claims or causes of action that have been released or exculpated under the Plan shall be made accessible to the Litigation Administrator, *provided*, *however*, that the foregoing shall not prevent access to any Privileged Information to the extent that such Privileged Information also directly or indirectly relates to Post-Emergence Claims.

2.5     Payment of Fees and Expenses.  The Litigation Administrator may incur any reasonable and necessary expenses in connection with the performance of its obligations under the Plan, the Confirmation Order and this Agreement, including fees and expenses incurred to monetize the Post-Emergence Claims and pursue the Post-Emergence Claims and in connection with retaining professionals, consultants and advisors as the Litigation Administrator deems

necessary to aid it in fulfilling its obligations under this Agreement and the Plan ("Litigation Administrator Professionals").  The Litigation Administrator has the right and authority, without further approval from the Bankruptcy Court or any other party, to engage Litigation Administrator Professionals, including without limitation (x) one or more attorneys, to handle specific litigations or to represent the Litigation Administrator in a general capacity, in furtherance of the Litigation Administrator's duties and (y) one or more financial advisors (including, without limitation, M3 Advisory Partners, LP) to provide administrative or other support to the Litigation Administrator with respect to the proper fulfillment of its duties.  The Litigation Oversight Committee shall exercise oversight and may give direction with respect to the initiation or settlement of litigation to the extent specifically provided in the Plan, including, to the extent not expressly delegated by the Litigation Oversight Committee to the Litigation Administrator, the selection, compensation or supervision of Litigation Administrator Professionals.  All reasonable, documented, out-of-pocket fees, expenses, and costs of the Litigation Administrator shall be paid solely from the Litigation Recovery Account, and solely be the obligation of, the Post-Effective Date Debtors.  For the avoidance of doubt, (i) neither the Plan Administrator nor the Litigation Administrator shall be required to pay any amounts owed to Litigation Administrator Professionals for which the Litigation Recovery Account does not contain adequate funds, and (ii) the Claim Holders shall have no obligation to provide any funding with respect to the Litigation Recovery Account.  For the avoidance of doubt, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, or any creditors, or any affiliation or relationship with the Litigation Administrator, shall not preclude the Litigation Administrator's retention of such professionals, consultants, or other persons.

2.6     Nature and Purpose of the Litigation Administrator.

(a)     Purpose.  The Litigation Administrator is empowered, subject to the terms and conditions of this Agreement, to implement the Plan with respect to all Debtors on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders.  The Litigation Administrator shall (i) prosecute all Post-Emergence Claims, resolve all Post-Emergence Claims, monetize the Post-Emergence Claims, and distribute the Litigation Proceeds in accordance with the Plan, the Confirmation Order and this Agreement and (ii) administer the Post-Emergence Claims in accordance with the Plan, Confirmation Order, and this Agreement, without the objective of continuing to engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Agreement. The Responsibilites of the Litigation Administrator shall include: (a) filing and prosecuting (or settling or otherwise compromising, as appropriate) any Recovery Causes of Action and Contributed Claims that the Litigation Administrator and the Litigation Oversight Committee determine should be filed and prosecuted; (b) filing and prosecuting any objections to Claims or Interests or settling or otherwise compromising such Claims and Interests, if necessary and appropriate, in accordance with the Plan, the ADR Procedures, and any applicable orders of the Bankruptcy Court; (c) exercising the Debtors' rights with respect to (i) the Goldstein Loan, (ii) the Leon Loan, and (iii) the loans (or beneficial interests in such loans) collateralized by CEL Token issued to any other Excluded Party; (d) managing the rights to D&O Liability Insurance Policies provided to the Litigation Administrator(s) under the UCC Claims Stipulation and Article IV.G.3 of the Plan; *provided* that the Litigation Administrator's management of the D&O Liability Insurance Policies shall not affect the rights of (i) Entities covered by the D&O Liability

Insurance Policies to pursue coverage under such policies or (ii) Entities eligible to recover from the D&O Liability Insurance Policies to pursue recovery from such policies, and all such Entities' respective rights and priorities are undisturbed by this Agreement; (e) retaining such professionals as are necessary and appropriate in furtherance of such Litigation Administrator's fiduciary obligations; and (f) taking such actions as are necessary and reasonable to carry out the purposes of this Agreement;

(b)      Relationship.  Subject to Section 4.10, the Litigation Administrator is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Administrator, the Litigation Oversight Committee (or any Member thereof) or the Claim Holders for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Claim Holders, on the one hand, to the Litigation Administrator and the Litigation Oversight Committee, on the other hand, shall be as conferred upon them by the Plan, the Confirmation Order and this Agreement.  Pursuant to Article IV.G.6 of the Plan, the Litigation Administrator and Litigation Oversight Committee shall each act in a fiduciary capacity on behalf of the interests of all Holders of Claims entitled to receive Litigation Proceeds from the Litigation Recovery Account.  For the avoidance of doubt, the Litigation Administrator is acting on behalf of the Post-Effective Date Debtors to prosecute claims of the Debtors for the benefit of Claim Holders pursuant to the Plan and, for all purposes, the Litigation Administrator shall be treated as an agent of the Debtors or Post-Effective Date Debtors, as the case may be, rather than a separate entity.

(c)      No Waiver of Claims.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the Litigation Administrator may enforce all rights to commence and pursue, as appropriate, any and all Post-Emergence Claims and objections to and resolution of Disputed Claims or Interests after the Effective Date.  No Person or Entity may rely on the absence of a specific reference in the Plan to any Claim against it as any indication that the Litigation Administrator will not pursue any and all Post-Emergence Claims against such Person or Entity; nor may any Person or Entity rely on the absence of a specific reference in the Plan to any Disputed Claim or Interest as any indication that the Litigation Administrator will not pursue any objections thereto.  The Litigation Administrator expressly reserves all Post-Emergence Claims for later adjudication, resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Post-Emergence Claims upon, after or as a consequence of the Confirmation Order.

2.7      Appointment as Representative.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Administrator shall be the sole and exclusive duly appointed representative of the Estates for certain limited purposes with respect to prosecution, resolution and settlement of the Post-Emergence Claims.  Post-Emergence Claims and rights shall be transferred to the Post-Effective Date Debtors in accordance with the Transaction Steps Memorandum, and the Litigation Administrator shall be deemed to have been designated as a representative of the Debtors to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Post-Emergence Claims on behalf of the

Debtors, the Post-Effective Date Debtors, and the Estates for the benefit of the Claim Holders or settle or otherwise dispose of Post-Emergence Claims.  Notwithstanding the foregoing, all Litigation Proceeds shall be distributed to the Claim Holders consistent with the provisions of the Plan, Confirmation Order, and this Agreement.

2.8    <u>Conflicts of Interest</u>.  Notwithstanding anything to the contrary contained in this Agreement, the Litigation Oversight Committee shall have the exclusive power and right to oversee and determine any actual or potential conflicts of interest with respect to the Litigation Administrator and the Litigation Administrator's performance under this Agreement.  Any decision or determination made by the Litigation Oversight Committee, acting in its reasonable discretion, with respect to whether the Litigation Administrator is actually or potentially conflicted shall be binding on the Litigation Administrator.  Until such time as the circumstances giving rise to such conflict of interest are remedied, the Litigation Oversight Committee shall have the exclusive power and right, as its sole and exclusive option, to designate a member of the Litigation Oversight Committee, professional natural person, entity or financial institution with experience administering bankruptcy claims to act as the Litigation Administrator with respect to any claims that are the subject of a conflict determination made by the Litigation Oversight Committee.  The Litigation Administrator designated by the Litigation Oversight Committee with respect to any conflict determination made by the Litigation Oversight Committee may incur any reasonable and necessary expenses in connection with retaining professionals, consultants and advisors to aid it in fulfilling its obligations under this Agreement and the Plan.

2.9    <u>Confidentiality</u>.  The Litigation Administrator and the Members shall, during the period that the Litigation Administrator and the Members serve as Litigation Administrator or Member, whichever is applicable, under this Agreement and for a period of two (2) years following the termination of this Agreement or following such Litigation Administrator's or Member's removal or resignation hereunder, whichever is applicable, hold strictly confidential and not use for personal gain or for the gain of any Entity or Person for whom such Litigation Administrator or Member may be employed any non-public information of or pertaining to any Person to which any of the Post-Emergence Claims Materials or Post-Emergence Claims relates or of which the Litigation Administrator or the Members have become aware in the Litigation Administrator's capacity as Litigation Administrator (including information contained or reflected in the Litigation Administrator Materials) or the Members' capacity as Member (the "Confidential Information"), until (a) such the Confidential iInformation is made public other than by disclosure by the Litigation Administrator, any Members, or any Litigation Administrator Professionals in violation of this Agreement; (b) the Litigation Administrator or Member is required by law to disclose such the Confidential iInformation (in which case the Litigation Administrator or Member shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); (c) the Litigation Administrator or Member obtains a waiver of confidentiality from the applicable Person; or (d) the Litigation Administrator is reasonably advised by the Litigation Administrator Professionals to disclose the type of Confidential iInformation described in Section 2.9 herein to the extent that it is done in the performance of the Litigation Administrator's responsibilities under this Agreement.  For the avoidance of doubt, nothing contained herein shall be deemed to prohibit the Litigation Administrator from disclosing Confidential Information under seal or otherwise on a confidential basis in connection with the enforcement by the Litigation Administrator of any rights and

remedies available to it under this Agreement, regardless of whether such enforcement is on behalf of the Members or any Claim Holders or in connection with enforcement of rights against the Members.

## ARTICLE III
## INTERESTS

3.1    Interests.  The Claim Holders shall be entitled to distributions from the Litigation Proceeds in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Litigation Administrator will not issue any certificate or certificates to evidence any beneficial interests in the Post-Emergence Claims.

3.2    Interests Beneficial Only.  The entitlement to Claim Holders under the Plan with respect to the Post-Emergence Claims shall not entitle the Claim Holders to any title in or to the Post-Emergence Claims or to any right to call for a partition or division of the Post-Emergence Claims or to require an accounting.

3.3    Registry of Post-Emergence Claims.

(a)    The Litigation Administrator shall appoint a registrar, which may be the Litigation Administrator (the "Registrar"), for the purpose of recording ownership of the Post-Emergence Claims as herein provided.  For its services hereunder, the Registrar, unless it is the Litigation Administrator, shall be entitled to receive reasonable compensation from the Litigation Recovery Account as a cost of administering the Post-Emergence Claims.

(b)    The Litigation Administrator shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time and acceptable to the Litigation Administrator, a registry of the Claim Holders (the "Claim Holder Register"), which shall be maintained pursuant to such reasonable regulations as the Litigation Administrator and the Registrar may prescribe.  The Claim Holder Register shall be made available to Claim Holders at the office of the Litigation Administrator or such other location as the Litigation Administrator reasonably shall specify upon three (3) Business Days' written notice to the Litigation Administrator.

3.4    Effect of Death, Incapacity or Bankruptcy.  The death, incapacity or bankruptcy of any Claim Holders during the term of the Agreement shall not (i) operate to terminate the Agreement, (ii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to an accounting, (iii) entitle the representatives or creditors of the deceased, incapacitated or bankrupt party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Post-Emergence Claim or Litigation Proceeds or for a partition thereof, or (iv) otherwise affect the rights and obligations of any of the Claim Holders under this Agreement.

3.5    Change of Address.  Any Claim Holders may, after the Effective Date, select an alternative distribution address by providing written notice to the Litigation Administrator or, as applicable, the Registrar, identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Litigation Administrator or, as applicable, the Registrar.  Absent actual receipt of such notice by the Litigation Administrator or, as applicable,

the Registrar, the Litigation Administrator shall not recognize any such change of distribution address.

3.6    Standing.    No Claim Holders shall have standing to direct the Litigation Administrator to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Post-Emergence Claims.

## ARTICLE IV
## RIGHTS, POWERS AND DUTIES OF LITIGATION ADMINISTRATOR

4.1    Role of the Litigation Administrator.    In furtherance of and consistent with the purpose of the Agreement and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order and this Agreement, the Litigation Administrator shall (i) manage, supervise and protect the Post-Emergence Claims on behalf of the Debtors for the benefit of the Claim Holders; (ii) investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise the Post-Emergence Claims and any objections to the Disputed Claims; (iii) to the extent not duplicative with the Plan Administrator's responsibilities, prepare and file all required tax returns and pay all taxes and all other obligations of the Litigation Administrator; (iv) liquidate and convert the Post-Emergence Claims to Cash and make distributions to the Claim Holders in accordance with Section 4.7 herein; and (v) have all such other responsibilities as may be vested in the Litigation Administrator pursuant to the Plan, the Confirmation Order, this Agreement, and all other applicable orders of the Bankruptcy Court, including, but not limited to, establishment and maintenance of the Litigation Recovery Account.    All decisions and duties with respect to the Agreement and the Post-Emergence Claims to be made and fulfilled, respectively, by the Litigation Administrator shall be carried out in accordance with the Plan, the Confirmation Order, this Agreement and all other applicable orders of the Bankruptcy Court.    In all circumstances, the Litigation Administrator shall act in good faith in the interests of all Claim Holders and in furtherance of the purpose of the Agreement, and shall use commercially reasonable efforts in its reasonable judgment and discretion to prosecute, settle or otherwise resolve the Post-Emergence Claims and to make timely distributions of any Litigation Proceeds realized therefrom and to otherwise monetize the Post-Emergence Claims and not unreasonably prolong the duration of the Agreement.

4.2    Power to Contract.    In furtherance of the purpose of the Agreement, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Litigation Administrator shall have the right and power on behalf of the Post-Effective Date Debtors, and also may cause the Litigation Recovery Account to enter into any covenants or agreements binding the Litigation Recovery Account, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Litigation Administrator to be consistent with and advisable in furthering the purpose of the Agreement.

4.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals.    Nothing in this Agreement shall be deemed to prevent the Litigation Administrator from taking or refraining to take any action on behalf of the Litigation Recovery Account that, based upon the advice of counsel or other professionals, the Litigation Administrator determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the

Litigation Administrator may owe the Claim Holders or any other Person pursuant to the Plan, Confirmation Order, or this Agreement.

4.4 [RESERVED]

4.4     Submission to Court.  In the event of any dispute or disagreement between the Litigation Administrator and any third party (including, without limitation, the Litigation Oversight Committee or any Claim Holder) or if the Litigation Administrator shall for any reason be uncertain as to its rights or duties hereunder, the Litigation Administrator shall have the right, without liability, to refuse to take any action and, instead, to submit the dispute, disagreement or uncertainty to any court of competent jurisdiction for determination and shall be fully protected and excluded from liability for relying upon the decision of such court.

4.5     Authority to Prosecute and Settle Post-Emergence Claims.

(a)     Subject to the provisions of this Agreement, the Plan, and the Confirmation Order, the Litigation Administrator shall have sole authority to prosecute, pursue, compromise, settle, or abandon any and all Post-Emergence Claims that have not already been resolved as of the Effective Date.  The Litigation Administrator, upon direction by the Litigation Oversight Committee (if appointed), shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Post-Emergence Claims (including any counterclaims asserted against the Litigation Administrator ) as it determines in the best interests of the Claim Holders, and consistent with the purposes of the Agreement, and shall have no liability for the outcome of its decision; *provided*, *however*, that the Litigation Administrator shall have the power and authority to pursue, not pursue, release, abandon and/or settle any and all Post-Emergence Claims with a value of less than an amount determined by the Litigation Oversight Committee without any approval by the Litigation Oversight Committee (if appointed).  To the extent any Post-Emergence Claims are settled against any Claim Holders, the Litigation Administrator will timely inform the Plan Administrator.

(b)     To the extent that any action has been taken to prosecute or otherwise resolve any Post-Emergence Claims prior to the Effective Date by the Debtors, on the Effective Date, the Litigation Administrator shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the Litigation Administrator by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Administrator: "[Name of Litigation Administrator ], as Representative for the Post-Effective Date Debtors v. [Defendant]" or "Post-Effective Date Debtors v. [Defendant]."   Without limiting the foregoing, the Litigation Administrator shall take any and all actions necessary or prudent, in its reasonable discretion, to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Claim.  For purposes of exercising its powers, the Litigation Administrator shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(c)     Subject to Section 4.5(a) hereof, any determinations by the Litigation Administrator, with regard to the amount or timing of settlement or other disposition of any Post-Emergence Claims settled in accordance with the terms of this Agreement shall be

conclusive and binding on the Claim Holders and all other parties in interest following the entry of an order of a court of competent jurisdiction (including, as relevant, a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

4.6    <u>Liquidation of Post-Emergence Claims.</u>    The Litigation Administrator, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement (including Section 2.3), liquidate and convert to Cash the Post-Emergence Claims, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Agreement.    The Litigation Administrator shall exercise reasonable business judgment and liquidate the Post-Emergence Claims to maximize net recoveries to the Claim Holders, *provided*, *however*, that the Litigation Administrator shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.    Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Post-Emergence Claims or otherwise or through the sale or other disposition of the Post-Emergence Claims (in whole or in combination). Pursuant to an agreed-upon budget in accordance with Section 4.13(b) of this Agreement, if any, the Litigation Administrator may incur any reasonable and necessary expenses in connection with the liquidation of the Post-Emergence Claims and distribution of the Litigation Proceeds.

4.7    <u>Distributions.</u>

(a)    After the Litigation Proceeds are received by the Litigation Administrator, the Litigation Administrator shall make periodic distributions of the Litigation Proceeds (net of the costs of obtaining such Litigation Proceeds) to the Claim Holders only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement as the Litigation Administrator shall determine, in consultation with the Litigation Oversight Committee, after (i) funding any reserves deemed necessary or appropriate by the Litigation Administrator <u>in its reasonable discretion</u> and (ii) maintaining such funding in the Litigation Recovery Account in accordance with the Plan and as deemed necessary or appropriate by the Litigation Administrator <u>in its reasonable discretion</u>.

(b)    In the reasonable discretion of the Litigation Administrator and subject to Section 4.7(a) hereof, the Litigation Administrator shall promptly distribute, to the extent not spent or committed to be spent by the Litigation Administrator~~(s)~~ or reasonably determined by the Litigation Administrator to be maintained as an expense reserve in the proper performance of its responsibilities hereunder, the funds in the Litigation Recovery Account Pro Rata to the Claim Holders entitled to receive Litigation Proceeds hereunder, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided* that if such distributions are, in the Litigation Administrator's reasonable judgment, in consultation with the Litigation Oversight Committee, infeasible to distribute Pro Rata, or such distributions cannot be effectuated for any other reason, the Litigation Administrator~~(s)~~ may ~~(i) contribute such amounts to NewCo for the benefit of holders of NewCo Common Stock in the event the NewCo Transaction is consummated or (ii)~~ (a) utilize such amounts to fund Wind-Down Expenses or, if

no such expenses remain, (b) contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of title 28 of the Judicial Code ~~in the event an Orderly Wind Down is consummated~~.

(c)    The Litigation Administrator shall make distributions to Claim Holders at the last-known address for each such Claim Holders as indicated on the Litigation Administrator's or Registrar's records as of the applicable distribution date.  Any distribution of Cash by the Litigation Administrator shall be made by the Litigation Administrator via (i) a check drawn on, or (ii) wire transfer or ACH payment from, a bank account established in the name of the Litigation Administrator on or subsequent to the Confirmation Date at a domestic bank selected by the Litigation Administrator (the "Litigation Administrator Account"), the option of which shall be in the sole discretion of the Litigation Administrator.  If any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Administrator or, as applicable, the Registrar, is notified in writing of the then-current address of such holder, at which time such distribution shall be made as soon as reasonably practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable distribution date.  After such date, all "unclaimed property" or interests in property shall revert to the Litigation Administrator Account (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) for redistribution in accordance with the terms of the Plan and this Agreement, and the claim of any holder to such property or interest in property shall be forever barred.  Nothing contained herein shall require the Litigation Administrator to attempt to locate any Holder of an Allowed Claim.

(d)    The Litigation Administrator shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required under the Plan and this Agreement.  The Litigation Administrator may pay to the Distribution Agents from the Litigation Recovery Account all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions or consents.

(e)    The Litigation Administrator may withhold (but not, except as set forth below, set off) from the distribution called for on account of any Allowed Claim an amount equal in value to any claim or Cause of Action of any nature (including in respect of any Claim) that a Debtor may hold against the Holder of such Claim.  In the event that the value of a Debtor's claim or Cause of Action against a particular Holder of an Allowed Claim is undisputed, resolved by settlement or has been adjudicated by Final Order of any court, the Litigation Administrator may set off such undisputed, resolved or adjudicated amount against distributions that would otherwise be due to such Holder of an Allowed Claim.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Litigation Administrator of any claims or Causes of Action that the Debtors or the Litigation Administrator may possess against any Holder of an Allowed Claim, except to the extent of any waiver, relinquishment, exculpation, release, compromise, or settlement set forth in the Plan or an order of the Bankruptcy Court (including the Confirmation Order).

(f)    The Litigation Administrator may deduct and withhold taxes from any and all amounts otherwise distributable to any Entity determined in the Litigation Administrator's

reasonable discretion, required by this Agreement, any law, regulation, rule, ruling, directive, treaty or other governmental requirement in accordance with Section 8.2 hereof.

(g)    The Litigation Administrator shall not be required to make on account of an Allowed Claim (i) partial distributions if any portion of such Claim remains in dispute or payments of fractions of dollars; (ii) a distribution of fractions of Allowed Claims; or (iii) a distribution if the amount of cash to be distributed is less than $250 to any one claimant in a single distribution.  Any funds so withheld and not distributed shall be held in reserve and distributed to such claimant in subsequent distributions except if the aggregate distributions (including the final distribution) to be made by the Litigation Administrator to such claimant is less than $250, in which case such amount shall be included in the Wind-Down Process set forth in Section 9.1 of this Agreement.

(h)    Any check issued by the Litigation Administrator on account of an Allowed Claim shall be null and void if not negotiated within 180 days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Litigation Administrator by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  If any Holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within 180 days after the date the check was mailed or otherwise delivered to the Holder, the entitlement of the Holder regarding such un-negotiated check and the funds represented thereby shall be released and the Holder thereof shall be forever barred, estopped and enjoined from asserting any claim with respect to such un-negotiated check and the funds represented thereby against any of the Debtors, the Post-Effective Date Debtors, or any agent acting on their behalf, including the Litigation Administrator.  In such cases, any Cash held for payment on account of such un-negotiated check shall be property of the Post-Effective Date Debtors and revert to the Litigation Administrator Account, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Litigation Administrator to attempt to locate any Holder of an Allowed Claim.  No later than 240 days after the issuance of such checks, the Litigation Administrator shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks; *provided*, *however*, after the closing or dismissal of the Chapter 11 Cases, the Litigation Administrator shall provide the list of the Holders of any un-negotiated checks on a website maintained by the Litigation Administrator.  For the avoidance of doubt, such list shall not include the Holders of any checks that have been negotiated within 180 days after the date the check was mailed or otherwise delivered to the Holder.

(i)    Subject to Sections 4.8, 4.10 and 4.11 hereof, and the provisions of this Section 4.7, any non-Cash property made accessible to the Litigation Administrator may be sold, transferred, abandoned or otherwise disposed of by the Litigation Administrator. Notice of such sale, transfer, abandonment or disposition shall be provided to the Claim Holders pursuant to the reporting obligations provided in Section 4.13 of this Agreement.  If, in the Litigation Administrator's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Litigation Administrator believes, in good faith, such property has no value to the Litigation Administrator, (after giving effect to the projected cost of sale), the Litigation Administrator shall have the right, subject to the approval of the Litigation Oversight Committee (if appointed), to abandon or otherwise dispose of such property.  Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a Cause of Action against

16

the Litigation Administrator, the Litigation Oversight Committee, any Member, or any of their directors, officers, employees, consultants, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 4.7(i).

(j)      Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day, and the 180-day limit described in Section 4.7(h) above shall be similarly extended to the next Business Day if it would otherwise occur on a date that is not a Business Day.

4.8    Management of Post-Emergence Claims.

(a)      Except as otherwise provided in the Plan, the Confirmation Order or this Agreement, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Administrator may, subject to the direction of the Litigation Oversight Committee (if appointed) to the extent provided in this Agreement, control and exercise authority over the Post-Emergence Claims, over the management and disposition thereof, as necessary or advisable to enable the Litigation Administrator to fulfill the intents and purposes of this Agreement. No Person dealing with the Agreement will be obligated to inquire into the authority of the Litigation Administrator in connection with the acquisition, management or disposition of the Post-Emergence Claims.

(b)      In connection with the management and use of the Post-Emergence Claims and except as otherwise expressly limited in the Plan, the Confirmation Order or this Agreement, the Litigation Administrator will have, in addition to any powers conferred upon the Litigation Administrator by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Administrator's reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Agreement, subject to any approvals of the Litigation Oversight Committee (if appointed) to the extent expressly required herein, including, without limitation, the power and authority to (i) engage and compensate the Litigation Administrator Professionals to assist the Litigation Administrator and the Litigation Oversight Committee with respect to their respective responsibilities; (ii) object to, compromise, and settle Disputed Claims, subject to Bankruptcy Court approval, if applicable; (iii) commence and/or pursue any and all actions involving the Post-Emergence Claims that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, or this Agreement; and (iv) implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order).

4.9    Investment of Cash. The right and power of the Litigation Administrator to invest the Post-Emergence Claims, the proceeds thereof, or any income earned by the Litigation Administrator shall be limited to the right and power to invest such Post-Emergence Claims only in Cash and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act or money market funds containing only such U.S. Government securities; *provided*, *however*, that (a) the Litigation Administrator may retain any Post-Emergence Claims received that are not Cash only for so long as may be requiredreasonable for the prompt and orderly liquidation of such assets, and (b) the Litigation Administrator may expend the Post-Emergence Claims (i) as reasonably necessary to meet contingent liabilities and maintain the value of the Post-Emergence Claims during liquidation, (ii) to pay reasonable and

documented administrative expenses, subject in all cases to Section 2.5 of this Agreement, and (iii) to satisfy other liabilities incurred or assumed by the Litigation Administrator (or to which the Post-Emergence Claims are otherwise subject) in accordance with the Plan or this Agreement (including, as applicable, Section 2.5).

4.10    Additional Powers of the Litigation Administrator.  In addition to any and all of the powers specifically enumerated above, and subject to the retained jurisdiction of the Bankruptcy Court, the Litigation Administrator, subject to the direction and approval of the Litigation Oversight Committee, shall be empowered to:

(a)    take any action with respect to the Disputed Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Disputed Claims, except to the extent Disputed Claims have been previously Allowed;

(b)    make distributions to Claim Holders as set forth in the Plan of the Litigation Recovery Assets or any Litigation Proceeds as set forth in the Plan, including determining dates of distributions;

(c)    hold legal title to any and all rights in or arising from the Post-Emergence Claims, including, but not limited to, the right to collect any and all money and other property belonging to the Claim Holders (including any Litigation Proceeds);

(d)    perform the duties, exercise the powers, and assert the rights of a representative of the Estates under section 1123(b) of the Bankruptcy Code with respect to the Post-Emergence Claims, including the right to assert claims, defenses, offsets, and privileges, subject in all cases to Section 2.3 hereof;

(e)    protect and enforce the rights of the Post-Effective Date Debtors in and to the Post-Emergence Claims by any method deemed reasonably appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(f)    determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Administrator on behalf of the Post-Effective Date Debtors;

(g)    subject to Section 2.4, assert, enforce, release, or waive any Privilege or defense on behalf of the Debtors or Post-Effective Date Debtors with respect to the Post-Emergence Claims, as applicable;

(h)    make all payments relating to the administration of the Litigation Recovery Account;

(i)    expunge from the Claims Register Disputed Claims that have been paid, satisfied, superseded, or released and adjust on the Claims Register any Disputed Claims that have been amended without having to file an objection to such Disputed Claims and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, that beginning as promptly as is reasonably practicable after the end of the first full calendar quarter that is at least 90 days after the Effective Date, the Litigation Administrator shall file with the

Bankruptcy Court (prior to the closing or dismissal of the Chapter 11 Cases) and make available on the Debtors' restructuring website each calendar quarter a list of all Disputed Claims that have been paid, satisfied, superseded, released, or amended during such prior calendar quarter;

(j)     obtain reasonable insurance coverage with respect to the potential liabilities and obligations of the Litigation Administrator, the Litigation Oversight Committee and the Members under this Agreement (in the form of a directors and officers policy, an errors and omissions policy, or otherwise, all at the sole cost and expense of the Litigation Recovery Account);

(k)     (i) receive, manage, invest, supervise, protect, and liquidate the Post-Emergence Claims, withdraw and make distributions from and pay taxes and other obligations owed in respect of Litigation Recovery Account from funds held in the Litigation Recovery Account and (ii) withdraw and make distributions from and pay taxes and other obligations owed in respect of any Disputed Claims in accordance with the Plan and are merely incidental to its liquidation and dissolution;

(l)     request any appropriate tax determination with respect to the Post-Emergence Claims and the Litigation Proceeds, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(m)     investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, the Post-Emergence Claims;

(n)     without expanding the scope of the definition of "Claims" in the Plan, take appropriate actions to recover transfers of any Debtors' property as provided for in the Plan as may be permitted by the Bankruptcy Code or applicable state law; *provided*, *however*, that nothing herein shall give the Litigation Administrator the power to recover any of the NewCoMiningCo Assets that were transferred to the NewCoMiningCo;

(o)     execute offsets or assert counterclaims against Claim Holders (except to the extent of any releases, waivers, settlements, compromises or relinquishments set forth in the Plan or the Confirmation Order) and make distributions of the Litigation Recovery Account and Litigation Proceeds as provided for in the Plan and this Agreement;

(p)     subject to applicable law, seek the examination of any Entity or Person, with respect to the Post-Emergence Claims;

(q)     retain and reasonably compensate for services rendered and expenses incurred by Litigation Administrator Professionals to (i) perform such reviews and/or audits of the financial books and records of the Debtors or Litigation Administrator as may be appropriate in the Litigation Administrator's reasonable discretion and, (ii) prepare and file any tax returns or informational returns for the Litigation Recovery Account as may be required, and (iii) provide such other services as, in the reasonable judgment of the Litigation Administrator and subject to

19

Section 2.5 of this Agreement, are proper to allow the Litigation Administrator to properly perform its duties hereunder;

(r)       take or refrain from taking any and all actions the Litigation Administrator reasonably deems necessary for the continuation, protection, and maximization of the Post-Emergence Claims consistent with the purposes hereof;

(s)       take all steps and execute all instruments and documents the Litigation Administrator reasonably deems necessary to effectuate the Agreement;

(t)       liquidate any remaining Post-Emergence Claims, and provide for the distributions therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement;

(u)       take all actions the Litigation Administrator reasonably deems necessary to comply with the Plan, the Confirmation Order, and this Agreement (including all obligations thereunder);

(v)       (i) take commercially reasonable actions after the Effective Date to assist and cooperate in good faith with the reasonable efforts by the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, as applicable, in accordance with Section 2.1(c) for the purposes of establishing the Litigation Oversight Committee and appointing the Members thereof (it being understood that such efforts are primarily the responsibility of the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, and that the Litigation Administrator by this provision shall only be required to provide reasonable assistance and cooperation to them) and (ii) if agreed by the Committee, the Earn Ad Hoc Group, and the Retail Borrower Ad Hoc Group, as applicable, in accordance with Section 2.1(c), file a notice thereof disclosing the names and relevant biographical information regarding the Members, the compensation (if any) to be paid to them by the Litigation Recovery Account and such other information deemed appropriate by the Litigation Administrator with the Bankruptcy Court (prior to the closing or dismissal of the Chapter 11 Cases) and post such notice to the website maintained by the Litigation Administrator; and

(w)       exercise such other powers as may be vested in the Litigation Administrator pursuant to the Plan, the Confirmation Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Administrator to be reasonably necessary and proper to carry out the obligations of the Litigation Administrator in relation to the Agreement; *provided* that the Litigation Administrator shall work in good faith with the Plan Administrator to ensure that services are not duplicated and to reconcile any conflicts between the Plan Administrator Agreement and this Agreement.

4.11    Limitations on Power and Authority of the Litigation Administrator.    The Litigation Administrator will not have the authority to do any of the following:

(a)       take any action that would reasonably be expected to be in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)     take any action that is reserved for the Plan Administrator under the Plan, the Confirmation Order, or the Plan Administrator Agreement;

(c)     take any action that is reserved for the Litigation Administrator (ARM) under the Plan, the Confirmation Order, or the Litigation Administrator Agreement (ARM);

(d)     (c) take any action that would reasonably be expected to make it impossible to carry on the activities of the Agreement;

(e)     (d) possess property of the Debtors or Claim Holders or assign the Debtors', Post-Effective Date Debtors', or Claim Holders' rights in specific property for any purpose other than as provided herein;

(f)     (e) cause or permit the Litigation Administrator to engage in any trade or business or utilize or dispose of any part of the Post-Emergence Claims or the proceeds, revenue or income therefrom in furtherance of any trade of business;

(g)     (f) without approval of the Litigation Oversight Committee to the extent provided in expressly required by Section 2.5, retain Litigation Administrator Professionals or agree to any compensation arrangements for such Litigation Administrator Professionals;

(h)     (g) dissolve the Agreement;

(i)     (h) receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; or

(j)     (i) issue any Post-Emergence Claims other than as expressly contemplated by the Plan, the Confirmation Order, or this Agreement.

4.12    Books and Records.  The Litigation Administrator shall maintain books and records relating to the Post-Emergence Claims (including income realized therefrom and the Litigation Proceeds) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are to be paid from the Litigation Recovery Account in such detail and for such period of time as may be necessary to enable the Litigation Administrator to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements for the Litigation Recovery Account.  Nothing in this Agreement requires the Litigation Administrator to file any accounting or seek approval of any court with respect to the administration of the Litigation Recovery Account or as a condition for managing any payment or distribution out of the Post-Emergence Claims, except as may otherwise be set forth in the Plan or the Confirmation Order.

4.13    Reports.

(a)     Financial and Status Reports.  The fiscal year of the Litigation Recovery Account shall be the calendar year.  Within 90 days after the end of each calendar year during the existence of the Litigation Recovery Account, within 45 days after the end of each calendar

quarter during the existence of the Litigation Recovery Account (other than the fourth quarter), and as soon as practicable upon closure of the Litigation Recovery Account, the Litigation Administrator shall make available to the Claim Holders appearing in the Claim Holder Register as of the end of such period or such date of closure, a written report including: (i) financial statements of the Litigation Recovery Account for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Administrator ) reflecting the result of such procedures relating to the financial accounting administration of the Litigation Recovery Account as may be adopted by the Litigation Administrator; (ii) a summary description of any action taken by the Litigation Administrator which, in the judgment of the Litigation Administrator, materially affects the Litigation Recovery Account and of which notice has not previously been given to the Claim Holders; (iii) a description of the progress of liquidating the Post-Emergence Claims and making distributions to the Claim Holders, which description shall include a written report providing, among other things, a summary of the litigation status of the Post-Emergence Claims, any settlements entered into by the Litigation Administrator with respect to the Post-Emergence Claims, the Litigation Proceeds recovered to date, and the distributions made by the Litigation Administrator to date; (iv) payments made to the Litigation Administrator and the Litigation Administrator Professionals (including fees and expenses paid to contingency fee counsel); and (v) any other material information relating to the Post-Emergence Claims and the administration of the Post-Emergence Claims deemed appropriate by the Litigation Administrator, in its reasonable judgment, to be disclosed by it.  In addition, the Litigation Administrator shall make available unaudited financial statements to each Claim Holder on a quarterly basis (which may be quarterly operating reports filed with the Bankruptcy Court).  The Litigation Administrator may post any such report on a website maintained by the Litigation Administrator or electronically file it with the Bankruptcy Court in lieu of actual notice to each Claim Holder. The Litigation Administrator shall respond, as soon as reasonably practicable, to reasonable requests for information (to the extent available) described in this clause (a) that is reasonably requested from Claim Holders during reasonable business hours, in each case, to the extent such requests do not (i) request the disclosure of privileged or confidential information, (ii) request the disclosure of information which would not be in the best interest of the Claim Holders (in the reasonable discretion of the Litigation Administrator ), and (iii) interfere with the duties of the Litigation Administrator hereunder.

(b)      Annual Plan and Budget.  If instructed by the Litigation Oversight Committee, the Litigation Administrator shall prepare and submit to the Litigation Oversight Committee for approval an annual plan and budget in such detail as is reasonably requested or, if the Litigation Oversight Committee has not been established, prepare and adopt such annual plan and budget as the Litigation Administrator deems reasonably appropriate.

## ARTICLE V
## LITIGATION RECOVERY ACCOUNT

5.1     Establishment of Litigation Recovery Account.  On the Effective Date, the Debtors shall fund the Litigation Recovery Account, which shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, encumbrances, and charges.  The Litigation Recovery Account shall be held separately from the other Post-Emergence Claims and shall be used to (a) fund the costs and fees of the Litigation Administrators, (b) satisfy all Allowed

Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims to the extent not paid by the Debtors or the Plan Administrator either before or after the Effective Date, (c) fund Disputed Claims reserves relating to such Claims, and (d) fund the Litigation Administrator Expenses.    The Litigation Administrator shall transfer any net Cash proceeds from the Post-Emergence Claims to the Litigation Recovery Account until such time as (i) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, and Litigation Administrator Expenses have been paid in full or otherwise resolved or the Disputed Claims reserves relating to such Claims have been fully funded, and (ii) the Administrative Claims Bar Date and any other applicable Claims Bar Date has expired.    Any excess funds in the Litigation Recovery Account remaining after the payment or funding of amounts required under the preceding clauses (a)-(d) shall be deemed to be Litigation Proceeds and shall be available for distribution to Claim Holders in accordance with the Plan and this Agreement.    The Litigation Oversight Committee may authorize reserving amounts for obligations and expenses expected to be payable.

5.2    <u>Cash in the Litigation Recovery Account</u>.    Cash held in the Litigation Recovery Account (including any earnings that have accrued on such Cash, net of any expenses, including any tax, relating thereto) shall be retained by the Post-Effective Date Debtors for the benefit of Claim Holders as contemplated in Section 5.1, the Plan, the Confirmation Order and this Agreement pending determination of their entitlement thereto under the terms of the Plan.    Cash shall be either (x) held in an interest-bearing account or (y) invested in interest-bearing obligations of the type described in Section 4.9, and having (in either case) a maturity date of not more than 30 days.    All such Cash or investments shall be held at a nationally recognized bank, financial institution, trust company or investment/brokerage firm chosen by the Litigation Administrator and bearing the name "Litigation Recovery Account" or words of similar import. Cash held in the Litigation Recovery Account will (i) be held in trust, pending distribution by the Litigation Administrator and (ii) be accounted for separately from the Post-Emergence Claims.

5.3    <u>Distributions After Allowance of Disputed Claims or Disputed Interests</u>.    At such time as a Disputed Claim or Interest becomes Allowed, the Litigation Administrator shall distribute to the holder thereof the distributions, if any, to which such Holder is then entitled on account of Litigation Proceeds under the Plan (including, with respect to Cash held in the applicable Litigation Recovery Account, any earnings that have accrued on the amount of Cash so retained, net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim.    Such distribution, if any, shall be made as soon as reasonably practicable after the date upon which such Disputed Claim or Interest becomes Allowed, whether by settlement, compromise or Final Order or judgment of the Bankruptcy Court, but in no event more than 90 days thereafter.    The balance of any Cash thereafter retained in a Disputed Claims reserve account shall be allocated to and included in future distributions to Holders of the remaining applicable Disputed Claims on a Pro Rata basis at such time as any such Disputed Claim becomes an Allowed Claim or otherwise as provided in the Plan, the Confirmation Order and this Agreement.

5.4    <u>Distributions After Disallowance of Disputed Claims</u>.    If a Disputed Claim or Interest is disallowed, in whole or in part, the Litigation Administrator shall cancel the applicable Allowed Claim, if applicable, and distribute the Cash held in the applicable Disputed Claims reserve account with respect to such Claim or Interest to the holders of the applicable series of

Post-Emergence Claims in accordance with the terms of the Plan, the Confirmation Order and this Agreement.

**ARTICLE VI**
**THE LITIGATION ADMINISTRATOR GENERALLY**

6.1    <u>Independent Litigation Administrator.</u>    The Litigation Administrator, in accordance with the Plan and the Confirmation Order, shall be a professional natural person, entity or financial institution with experience administering bankruptcy claims and may not be a Member of the Litigation Oversight Committee.

6.2    <u>Litigation Administrator's Term of Service, Compensation and Reimbursement</u>.

(a)    <u>Term of Service</u>.    The Litigation Administrator shall serve as of the Effective Date until: (a) the completion of all of the Litigation Administrator's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Agreement in accordance with this Agreement; or (c) the Litigation Administrator's death or dissolution, incapacitation, resignation or removal.

(b)    <u>Compensation</u>.    The Litigation Administrator shall receive compensation from the Litigation Recovery Account as ~~provided on Exhibit B hereto (~~<u>follows: (a) a monthly fee of $50,000 for the first three months following appointment and a monthly fee of $25,000 thereafter for professional services rendered in connection with this Agreement; (b) reimbursement of reasonable and documented out-of-pocket fees, costs, and expenses; and (c) as may be agreed between the Litigation Oversight Committee and the Litigation Administrator, a combination of hourly fees for professional services rendered as well as incentive compensation tied to specific targets (collectively,</u> the "<u>Litigation Administrator Compensation</u>").    The ~~compensation of the~~ Litigation Administrator <u>Compensation</u> may be modified from time to time by agreement of the Litigation Administrator and the Litigation Oversight Committee or, if the Chapter 11 Cases have not been closed or dismissed, by order of the Bankruptcy Court.  Notice of any modification of the Litigation Administrator's compensation shall be filed promptly with the Bankruptcy Court; *provided*, *however*, that after the closing or dismissal of the Chapter 11 Cases, such notice will be provided on a website maintained by the Litigation Administrator.

(c)    <u>Expenses</u>.    The Litigation Administrator will reimburse itself (after approval by the Litigation Oversight Committee<u>, not to be unreasonably withheld, conditioned or delayed</u>), from the Litigation Recovery Account for all actual, reasonable and documented out-of-pocket expenses incurred by the Litigation Administrator in connection with the performance of the duties of the Litigation Administrator hereunder or under the Confirmation Order or the Plan, including but not limited to, actual, reasonable and documented fees and disbursements of the Litigation Administrator's legal counsel incurred in connection with the review, execution, and delivery of this Agreement and related documents (collectively, the "<u>Litigation Administrator Expenses</u>" and, together with the Litigation Administrator Compensation, the "<u>Litigation Administrator Fees</u>").

(d)    <u>Payment</u>.  The Litigation Administrator Fees shall be paid to the Litigation Administrator from the Litigation Recovery Account without necessity for review or approval by

the Bankruptcy Court or any other Person.  The Bankruptcy Court shall retain jurisdiction until the closing or dismissal of the Chapter 11 Cases to adjudicate any dispute regarding the Litigation Administrator Fees.

6.3    <u>Resignation</u>.  The Litigation Administrator may resign by giving not less than 45 days' prior written notice thereof by filing a notice with the Bankruptcy Court (and such notice shall be served on the Claim Holders); *provided, however*, after the closing or dismissal of the Chapter 11 Cases, such notice shall be posted on a website maintained by the Litigation Administrator and served on the Claim Holders.  Such resignation shall become effective on the earlier to occur of: (a) the day specified in such notice, and (b) the appointment of a successor satisfying the requirements set out in Section 6.5 by the Litigation Oversight Committee or the Bankruptcy Court and the acceptance by such successor of such appointment.  Notwithstanding the foregoing, upon the Termination Date (as defined in Section 9.1 below), the Litigation Administrator shall be deemed to have resigned, except as otherwise provided for in Section 9.2 herein.  Written notice of the resignation of the Litigation Administrator and the appointment of a successor Litigation Administrator shall be provided promptly to the Claim Holders.

6.4    <u>Removal</u>.

(a)    The Litigation Administrator (or any successor Litigation Administrator ) may be removed (i) by the Litigation Oversight Committee, for Cause (as defined in Section 2.2(b) herein), immediately upon notice thereof, or without Cause, upon not less than 45 days' prior written notice; *provided, however*, that the Litigation Administrator (or any successor Litigation Administrator ) may ~~only~~not be removed without Cause <u>prior to 18 months after the date of this Agreement and then only</u> if a successor Litigation Administrator is simultaneously appointed, or (ii) by order of the Bankruptcy Court for Cause.

(b)    To the extent there is any dispute regarding the removal of a Litigation Administrator (including any dispute relating to any portion of the Litigation Administrator Fees) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.  Notwithstanding the foregoing, the Litigation Administrator will continue to serve as the Litigation Administrator after his, her or its removal other than for Cause until the earlier of (i) the time when appointment of a successor Litigation Administrator will become effective in accordance with Section 6.5 of this Agreement or (ii) 45 days after the date of removal.

6.5    <u>Appointment of Successor Litigation Administrator.</u>

(a)    In the event of the death or Disability (as defined in Section 2.2(b) herein) (in the case of a Litigation Administrator that is a natural person), dissolution (in the case of a Litigation Administrator that is not a natural person), resignation, incompetency or removal of the Litigation Administrator (each, a "Succession Event"), the Litigation Oversight Committee shall promptly designate a successor Litigation Administrator satisfying the requirements set forth in Section 6.1 hereof; *provided*, *however*, the Bankruptcy Court may designate a successor Litigation Administrator to the extent that the Litigation Oversight Committee has not designated a successor Litigation Administrator within 30 days of a Succession Event resulting from the death, Disability, dissolution, resignation or incompetency of the Litigation Administrator.  Such

25

appointment shall specify the date on which such appointment shall be effective. Every successor Litigation Administrator appointed hereunder shall execute, acknowledge and deliver to the Claim Holders an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Administrator hereto and subject to the terms of this Agreement, and thereupon the successor Litigation Administrator, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Administrator and the successor Litigation Administrator shall not be personally liable for any act or omission of the predecessor Litigation Administrator; *provided*, *however*, that a predecessor Litigation Administrator shall, nevertheless, when requested in writing by the successor Litigation Administrator, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Administrator, without recourse to or liability against the predecessor Litigation Administrator, under the Agreement all the estates, properties, rights, powers and trusts of such predecessor Litigation Administrator and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Administrator, in effectuating the assumption by the successor Litigation Administrator of his/her/its obligations and functions hereunder. For notice purposes only and not for approval, the Litigation Oversight Committee shall file with the Bankruptcy Court (or post on a website maintained by the Litigation Administrator if the Chapter 11 Cases have been closed) a notice appointing the successor Litigation Administrator.

(b)    During any period in which there is a vacancy in the position of Litigation Administrator, the Litigation Oversight Committee, in consultation with the Litigation Administrator, shall appoint (or the Bankruptcy Court may appoint) an interim Litigation Administrator (the "Interim Administrator"). The Interim Administrator shall be subject to all the terms and conditions applicable to a Litigation Administrator hereunder; *provided*, *however*, that (x) any such Interim Administrator shall not be entitled to receive the Litigation Administrator Compensation unless approved by the Litigation Oversight Committee, but shall be entitled to receive payment for the Litigation Administrator Expenses and (y) notwithstanding the provisions of Section 6.1, such Interim Administrator may be selected from among the Members of the Litigation Oversight Committee, provided that any such Interim Administrator shall abstain and recuse itself from all votes and other actions taken by the Members of the Litigation Oversight Committee during the term of such Member's service as Interim Administrator. Such Interim Administrator shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Oversight Committee merely by such Person's appointment as Interim Administrator, but shall be limited in the exercise of such rights or powers as a Litigation Administrator to the extent the Litigation Oversight Committee shall, to the extent applicable in this Agreement, fail to approve any such action or undertaking by the Interim Administrator.

(c)    To the extent that the Litigation Oversight Committee is unable to appoint a successor Litigation Administrator or Interim Administrator and the Chapter 11 Cases have been closed or dismissed, the Chapter 11 Cases may be reopened for the limited purpose of seeking an order of the Bankruptcy Court to appoint a successor Litigation Administrator.

6.6    Effect of Resignation or Removal. The death, Disability, dissolution, bankruptcy, resignation, incompetency, incapacity or removal of the Litigation Administrator, as applicable, shall not operate to terminate this Agreement or to revoke any existing agency created pursuant

to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Administrator or any prior Litigation Administrator.  In the event of the resignation or removal of the Litigation Administrator, such Litigation Administrator will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court (or any other court of competent jurisdiction) or reasonably requested by the Litigation Oversight Committee or the successor Litigation Administrator to effect the termination of such Litigation Administrator's capacity under this Agreement, (b) deliver to the successor Litigation Administrator all documents, instruments, records and other writings related to the Litigation Administrator as may be in the possession of such Litigation Administrator, including any Post-Emergence Claims Materials, and shall not retain any copies of such materials, even for archival purposes (other than digital copies resulting from the back-up or archiving of the predecessor Litigation Administrator's IT files and systems which cannot be easily deleted without also deleting other files unrelated to service as the Litigation Administrator hereunder), and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Administrator.  Notwithstanding anything to the contrary contained in this Agreement, any Litigation Administrator who is removed or resigns pursuant to this Agreement shall retain its right to coverage under any applicable insurance policies and indemnification in accordance with Article VII for its acts or omissions occurring prior to such removal or resignation.

### ARTICLE VII
### LIABILITY AND INDEMNIFICATION

7.1    <u>No Further Liability</u>.  Each of the Litigation Administrator, the Members and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Recovery Account unless determined by a final judgment of a court of competent jurisdiction to arise out of such Person's own fraud, willful misconduct or gross negligence.  Unless so arising out of such Person's own fraud, willful misconduct or gross negligence, in performing its duties under this Agreement, the Litigation Administrator, the Members and their representatives (as applicable) shall have no liability for any action taken by such Person in good faith, in the reasonable belief that such action was in the best interests of the Holders and/or in accordance with the advice of the Litigation Administrator Professionals retained by the Litigation Oversight Committee or the Litigation Administrator.  Without limiting the generality of the foregoing, the Litigation Administrator, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon.  None of the provisions of this Agreement shall require the Litigation Administrator, the Members or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Litigation Administrator, the Members and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order or this Agreement (including in the execution of such Person's duties hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given.  Notwithstanding the foregoing, nothing in this Section 7.1 shall relieve the Litigation Administrator, the Members or their representatives from any liability for any actions or omissions determined by a final judgment of a court of competent jurisdiction to have arisen out of such Person's fraud, willful misconduct or gross negligence.

Any action taken or omitted to be taken in the case of the Litigation Administrator or the Litigation Oversight Committee with the express approval of the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence. No termination of this Agreement or amendment, modification or repeal of this Section 7.1 shall adversely affect any right or protection of the Litigation Administrator, the Members of the Litigation Oversight Committee or their respective designees, professional agents or representatives that exists at the time of such termination, amendment, modification or repeal. The Litigation Administrator shall have no liability for the acts or omissions of any Litigation Administrator Professional which was reasonably selected by it in good faith. Notwithstanding the foregoing, in no event shall the Litigation Administrator have any liability under any circumstances for any acts or omissions taken by it at the direction of the Litigation Oversight Committee.

7.2    **Indemnification of the Litigation Administrator and Litigation Oversight Committee**.

(a)    From and after the Effective Date, each of the Litigation Administrator, the Litigation Oversight Committee, the Litigation Administrator Professionals and each of the Litigation Administrator's and Members' representatives (each, a "Litigation Administrator Agreement Indemnified Party," and collectively, the "Litigation Administrator Agreement Indemnified Parties") shall be, and hereby is, indemnified by recourse solely to the Litigation Recovery Account, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Administrator Agreement Indemnified Party's exercise of what such Litigation Administrator Agreement Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Administrator Agreement Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Administrator Agreement Indemnified Party's own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Administrator; or (iv) proceedings by or on behalf of any creditor. Expenses, including attorney's fees and other expenses and disbursements, incurred by a Litigation Administrator Agreement Indemnified Party in defending or investigating a threatened or pending action, suit or proceeding shall be paid or reimbursed by the Litigation Administrator, solely out of the Litigation Recovery Account (including any insurance policy obtained by the for the benefit of Litigation Administrator Agreement Indemnified Parties), in advance of the final disposition of such action, suit or proceeding; *provided*, *however*, that any Litigation Administrator Agreement Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance (without interest) if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Administrator Agreement Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct or gross negligence. Any indemnification claim of a Litigation Administrator

28

Agreement Indemnified Party shall be entitled to a priority distribution from the Litigation Recovery Account, ahead of the Post-Emergence Claims and any other claim to, or interest in, such assets. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Administrator's expense, subject to the foregoing terms and conditions. In addition, the Litigation Oversight Committee shall purchase insurance coverage as set forth in Section 4.10(j) hereof, including fiduciary liability insurance using funds from the Litigation Recovery Account for the benefit of the Litigation Administrator and the Members. The indemnification provided under this Section 7.2 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Litigation Administrator, the Litigation Oversight Committee, any Member or any other Litigation Administrator Agreement Indemnified Party and shall inure to the benefit of the Litigation Administrator's, each Member's and each other Litigation Administrator Agreement Indemnified Party's respective heirs, successors and assigns.

(b)     The foregoing indemnity in respect of any Litigation Administrator Agreement Indemnified Party shall survive the termination of such Litigation Administrator Agreement Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(c)     Any Litigation Administrator Agreement Indemnified Party may waive the benefits of indemnification under this Section 7.2, but only by an instrument in writing executed by such Litigation Administrator Agreement Indemnified Party that expressly waives such benefits.

(d)     The rights to indemnification under this Section 7.2 are not exclusive of other rights which any Litigation Administrator Agreement Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. For the avoidance of doubt, each Litigation Administrator Agreement Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Administrator Agreement Indemnified Party may incur in connection with enforcing any of its rights under this Article VII.

7.3     Litigation Administrator Liabilities. All liabilities of the Litigation Administrator, including, without limitation, indemnity obligations under Section 7.2 of this Agreement and applicable law will be paid or satisfied solely from the Litigation Recovery Account and paid on a priority basis, *provided*, *however*, that the Litigation Administrator may obtain liability insurance to satisfy its indemnity obligations under applicable law. No liability of the Litigation Administrator will be payable in whole or in part by any Claim Holders individually or in the Claim Holders' capacity, by the Litigation Administrator individually or in the Litigation Administrator's capacity as Litigation Administrator, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employee, agent, affiliate or advisor of any Claim Holders, any Member, the Litigation Administrator or their respective affiliates. For the avoidance of doubt, it is

understood and agreed that Mohsin Y. Meghji shall have no personal liability for any acts, omissions, or claims of any nature relating to, or resulting from, his service as the initial Litigation Administrator, and any such asserted liability shall be the sole obligation of M3 Advisory Partners, LP, which itself shall have no liability except for fraud, willful misconduct, or gross negligence.

7.4    <u>Limitation of Liability</u>.    None of the Litigation Administrator Agreement Indemnified Parties shall be liable for direct, indirect, monetary, punitive, exemplary, consequential, special or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Administrator Agreement Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order.

7.5    <u>Burden of Proof</u>.    In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Administrator Agreement Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE VIII
## TAX MATTERS

8.1    <u>Treatment of Post-Emergence Claims</u>.    For all federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the Post-Emergence Date Debtors, the Litigation Administrator and the Claim Holders) shall treat the Post-Emergence Claims as being retained by the Post-Effective Date Debtors.

(a)    The Litigation Administrator shall be responsible for remitting to the Post-Effective Debtors, out of the Litigation Recovery Account, any taxes imposed on or otherwise required to be paid by, the Post-Effective Debtors by reason of Litigation Recovery Account.

8.2    <u>Withholding of Taxes</u>.    The Litigation Administrator shall deduct and withhold and pay to the appropriate Governmental Unit all amounts required to be deducted or withheld pursuant to the IRC or any provision of any state, local or non-U.S. tax law with respect to any payment or distribution to the Litigation Recovery Account.    Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental authority, including income, withholding and other tax obligations, on account of such distribution.    All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as amounts distributed to such Claim Holders for all purposes of this Agreement.

(a)    The Litigation Administrator shall be authorized to collect such tax information from the Claim Holders (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and this Agreement.    As a condition to receiving distributions

under the Plan, all Claim Holders may be required to identify themselves to the Litigation Administrator and provide tax information and the specifics of their holdings, to the extent the Litigation Administrator deems appropriate, including an IRS Form W-9 or, in the case of Claim Holders that are not United States persons for federal income tax purposes, certification of foreign status on an applicable IRS Form W-8.

(b)     The Litigation Administrator may refuse to make a distribution to any Claim Holders that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Claim Holder, the Litigation Administrator shall make such distribution to which the Claim Holders is entitled, without interest; and, *provided*, *further*, that, if the Litigation Administrator fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Administrator is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Administrator for such liability. The identification requirements in Section 8.2 may, in certain cases, extend to holders who hold their securities in street name. If a Claim Holder fails to comply with such a request for tax information within 180 days, the Litigation Administrator may file a document with the Bankruptcy Court, or if the Chapter 11 Cases have been closed or dismissed, post a document on a website maintained by the Litigation Administrator, that will provide twenty-one days' notice before such distribution may be deemed an unclaimed distribution.

(c)     In the event that the Litigation Administrator elects to make distributions through an intermediary, the party who would be the withholding agent with respect to distributions to the Claim Holders under U.S. federal income tax principles shall be responsible for withholding tax compliance with respect to any such distribution, based on instructions on the character of the income from the Litigation Administrator.

8.3     <u>Valuation</u>. The Litigation Administrator also shall file (or cause to be filed) any statements, returns or disclosures relating to the Litigation Recovery Account that are required by any governmental unit.

## ARTICLE IX
## TERMINATION OF THE AGREEMENT

9.1     <u>Termination</u>. The Litigation Administrator, the Litigation Oversight Committee and the Litigation Recovery Account shall be discharged or dissolved, as the case may be, at such time as (a) the Litigation Administrator has liquidated or (with the approval of the Litigation Oversight Committee) abandoned all Post-Emergence Claims, (b) all objections to the Disputed Claims have been resolved, and (c) all distributions required to be made by the Litigation Administrator under the Agreement have been made; *provided*, *however*, that in no event shall, notwithstanding the foregoing, the Litigation Recovery Account shall be closed later than within five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of any extension period), determines that a fixed period extension (not to exceed two years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or a "should" level opinion of counsel satisfactory to the Litigation Administrator ) is necessary to facilitate or complete the recovery and liquidation of the

Post-Emergence Claims; *provided further*, *however*, that if the Chapter 11 Cases have been closed or dismissed before the date that is five years from the Effective Date, then no Bankruptcy Court approval shall be required and the only requirement for an extension is a private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Litigation Administrator.  If at any time the Litigation Administrator determines, in reliance upon the advice of the Litigation Administrator Professionals (or any one or more of them), that the expense of administering the Post-Emergence Claims as to make a final distribution to the Claim Holders is likely to exceed the value of consideration available for distribution and provided that clause (c) above has been satisfied, the Litigation Administrator may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to close the Litigation Recovery Account, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC and (D) that is unrelated to the Debtors, ~~NewCo~~MiningCo, the Litigation Administrator, the Members, any Litigation Administrator Professionals and any insider of any of the foregoing and (iii) close the Litigation Recovery Account (all of the foregoing actions in clauses (i) through (iii) being referred to as the "Wind-Down Process").  Such date upon which the Litigation Recovery Account shall finally be closed shall be referred to herein as the "Termination Date."

9.2    Continuance of the Litigation Administrator for Winding Up.    During the Wind-Down Process, the Litigation Administrator, solely for the purpose of liquidating and winding up the affairs of the Litigation Recovery Account, shall continue to act as such until its duties have been fully performed.  During the Wind-Down Process, the Litigation Administrator shall continue to be entitled to receive the Litigation Administrator Fees called for by Section 6.2(a) hereof and subject to Section 2.5 hereof.  Upon distribution of all the Litigation Proceeds, the Litigation Administrator shall retain the books, records and files that shall have been delivered or created in connection with the administration of the Post-Emergence Claims to the extent not otherwise required to be handled by the Litigation Administrator in accordance with Section 2.3 hereof.  At the Litigation Administrator's discretion, but subject in all cases to Section 2.3 hereof, all of such records and documents may be destroyed no earlier than two (2) years following the Termination Date as the Litigation Administrator deems appropriate (unless such records and documents are necessary to fulfill the Litigation Administrator's obligations hereunder).  Except as otherwise specifically provided herein, upon the Termination Date, the Litigation Administrator shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Claim Holders as provided herein, and the Post-Emergence Claims shall be cancelled.

**ARTICLE X**
**AMENDMENT AND WAIVER**

10.1    No amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the interests, rights or treatment of the Claim Holders, (b) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order or this Agreement, (c) amend Section 6.2(b) hereof, (d) be inconsistent with the Plan or the Confirmation Order, or (e) be inconsistent with the purpose and intention of the Agreement to liquidate in an expeditious

but orderly manner the Post-Emergence Claims in accordance with Treasury Regulation section 301.7701-4(d).

10.2    No amendment, supplement or waiver of or to this Agreement shall adversely affect the interests, rights, or treatment of the Litigation Administrator with respect to the Litigation Administrator's compensation or indemnification hereunder without the prior written consent of the Litigation Administrator, or shall adversely affect such interests, rights, or treatment of any former Litigation Administrator without the prior written consent of such former Litigation Administrator.

10.3    No failure by the Litigation Administrator or the Litigation Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

11.2    <u>Jurisdiction</u>.    Subject to the proviso below and so long as the Chapter 11 Cases have not been closed or dismissed, the Parties agree that the Bankruptcy Court shall have jurisdiction over the interpretation and enforcement of the Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Administrator shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Post-Emergence Claims and pursue any recoveries in respect of any Post-Emergence Claims.    Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.    Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the borough of Manhattan in the state of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement).    Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

11.3    <u>Exculpation</u>.    Notwithstanding anything to the contrary herein or in the Plan Administrator Agreement, the Litigation Administrator and the Plan Administrator shall be exculpated with respect to any potential liability in connection with actions taken by the BRIC in

the course of its duties as Litigation Administrator (ARM).  For the avoidance of doubt, any exculpation relating to the period prior to the Effective Date shall be subject to the same limitations as set forth in the Confirmation Order for exculpation under the Plan.

11.4    Non-Disparagement.  Through the date on which this Agreement terminates, the Debtors, the Committee, the Plan Administrator, the Litigation Administrator (ARM), the Litigation Administrator, and the Litigation Oversight Committee (collectively, the "Non-Disparagement Parties") shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Non-Disparagement Parties, the professionals or employees of the other Non-Disparagement Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Non-Disparagement Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in clause (i) of this section; *provided* that the foregoing shall not prevent the Non-Disparagement Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information.  These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan.

11.5    11.3 Severability.  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.6    11.4 Notices.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), or (c) the date of the transmission confirmation or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

(i)    If to the Litigation Administrator, to:

M3 Advisory Partners, LP
1700 Broadway, 19th Floor
New York, New York 10019
Attn: Celsius Litigation Administrator, Mohsin Y. Meghji
Email: Celsius_Litigation_Admin@m3-partners.com

With a copy to:

~~White & Case LLP~~
~~David M. Turetsky~~
~~Samuel P. Hershey~~
~~1221 Avenue of the Americas~~
~~New York, New York 10020~~
~~Email: david.turetsky@whitecase.com~~
        ~~sam.hershey@whitecase.com~~
Attn:  General Counsel
~~– and –~~
~~Gregory F. Pesce~~
~~111 South Wacker Drive, Suite 5100~~
~~Chicago, Illinois 60606~~
Email: ~~gregory.pesce@whitecase~~ cgarner@m3-partners.com

~~– and –~~
~~Keith H. Wofford~~
~~Southeast Financial Center~~
~~200 South Biscayne Blvd., Suite 4900~~
~~Miami, Florida 33131~~
~~Email: kwofford@whitecase.com~~
~~– and –~~
~~Aaron E. Colodny~~
~~555 South Flower Street, Suite 2700~~
~~Los Angeles, California 90071~~
~~Email: aaron.colodny@whitecase.com~~

   (ii)  If to the Debtors, to:

c/o Celsius Network LLC
50 Harrison Street, Suite 209F
Hoboken, New Jersey 07030
Attn: Ron Deutsch

With a copy to:

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Email: joshua.sussberg@kirkland.com

– and –

Patrick J. Nash, Jr., P.C.
Ross M. Kwasteniet, P.C.
Christopher S. Koenig

Dan Latona
300 North LaSalle Street
Chicago, Illinois 60654
Email: patrick.nash@kirkland.com
ross.kwasteniet@kirkland.com
chris.koenig@kirkland.com
dan.latona@kirkland.com

(iii)    if to any Claim Holders, to the last known address of such Claim Holders, according to the Litigation Administrator's records;

(iv)    if to a Member of the Litigation Oversight Committee, to the applicable address(es) of such person according to the Litigation Administrator's records.

11.7    11.5 Headings.   The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

11.8    11.6 Plan and Confirmation Order.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Agreement shall govern and control.  In the event of any direct conflict or inconsistency between any provision in this Agreement, on the one hand, and the provisions of the Confirmation Order, on the other hand, the provisions of the Confirmation Order shall govern and control.

11.9    11.7 Entire Agreement.   This Agreement and the exhibits attached hereto, together with the Plan and the Confirmation Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

11.10    Survival. Notwithstanding the termination of this Agreement in accordance with its terms, the agreements and obligations of the Parties in Sections 2.5, 2.9, 6.2, 6.6, 7.1, 7.2, 7.3, 7.4, 7.5, 10.2, and 11.1 through 11.17 shall survive such termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof and thereof.

11.11    11.8 Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan and the Confirmation Order.

11.12    11.9 Meanings of Other Terms.   Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the

36

Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

11.13  11.10 Successors in Interest.  This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the Debtors, including, but not limited to, the Post-Effective Date Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof, including, specifically, the terms of Section 2.3 hereto.   The obligations of the Litigation Administrator to any one or more of the Debtors pursuant to this Agreement shall also be obligations of the Post-Effective Date Debtors and Litigation Administrator to any such successor in interest, including, but not limited to, the Post-Effective Date Debtors, including their obligations under Section 2.3 hereto.  For the avoidance of doubt, in the event that any Person (including, as applicable, the Post-Effective Date Debtors) becomes a successor in interest to a Debtor, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements of this Agreement (including Section 2.3) prior to such Person becoming a successor in interest to the applicable Debtor, shall not become subject to the provisions and requirements of this Agreement (including Section 2.3) solely because such Person becomes a successor in interest to the applicable Debtor.

11.14  11.11 Limitations.  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.  The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

11.15  11.12 Further Assurances.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

11.16  11.13 Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

11.17  11.14 Authority.  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement and the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of

such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

[*Signature pages follow.*]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

[MOHSIN MEGHJI], AS LITIGATION ADMINISTRATOR

By: _____
Name: [•]Mohsin Meghji
Title: [•] Litigation Administrator

[•]CELSIUS NETWORK LLC, ON BEHALF OF ITSELF AND ITHES OTHERAFFILIATED DEBTORS

By: _____
Name: [•]Ron Deutsch
Title: [•] General Counsel

ACKNOWLEDGED AND AGREED
Solely with respect to the provisions of
the final sentence of Section 7.3 hereof:

M3 ADVISORY PARTNERS, LP

By: _____
Name: Mohsin Meghji
Title:  Managing Partner

## EXHIBIT A

**Initial Members of the Litigation Oversight Committee**

1. Mark Robinson

2. Gerard Uzzi

3. Vik Jindal

4. Deirdre O'Connor

5. Cameron Crews, designated by the Earn Ad Hoc Group

6. David Adler, designated by the Retail Borrower Ad Hoc Group

7. A Person or Entity selected in accordance with the Confirmation Order.

## EXHIBIT B

## Compensation of Litigation Administrator

The Litigation Administrator shall be entitled to compensation of [a monthly fee of $50,000 for the first three months following appointment and a monthly fee of $25,000 thereafter for professional services rendered in connection with the Litigation Administrator Agreement, plus reimbursement of reasonable and documented out-of-pocket fees, costs, and expenses].

Mr. Meghji intends to retain M3 Partners, subject to the approval of the Litigation Oversight Committee, as financial advisor to support the prosecution, settlement, or resolution of Claims and Causes of Action.  Such compensation may include a combination of hourly fees for professional services rendered as well as incentive compensation tied to specific targets as ultimately agreed between the Litigation Oversight Committee and the Litigation Administrator.

[*To be filed separately.*]

### Exhibit C

**Litigation Administrator (ARM) Agreement**

## LITIGATION ADMINISTRATOR AND
## COMPLEX ASSET RECOVERY MANAGER AGREEMENT

This Litigation Administrator and Complex Asset Recovery Manager Agreement is made this 31st day of January, 2024 (this "Agreement"), by and among Celsius Network LLC on behalf of itself and its debtor affiliates (each a "Debtor" and collectively the "Debtors" or the "Post-Effective Date Debtors", as applicable), Christopher Ferraro, in his capacity as the Plan Administrator and solely to the extent set forth in Section 12.18, the Litigation Administrator (as defined below), solely to the extent set forth in Section 12.18, and the Blockchain Recovery Investment Consortium, LLC (the "BRIC") and shall govern the terms on which the BRIC shall serve as the Litigation Adminstrator (ARM) and complex asset recovery manager referred to herein (in such capacity, the "Litigation Administrator (ARM)"), pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"), the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3972-1] dated September 27, 2023 (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms and provisions thereof and including the Plan Supplement, the "Plan"), and the *Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4172] (the "MiningCo Order"). Each Debtor, the Plan Administrator, the Litigation Administrator, and the Litigation Adminstrator (ARM) are sometimes referred to herein individually as a "Party" and, collectively, as the "Parties."

### RECITALS

WHEREAS, each Debtor other than the GK8 Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 13, 2022 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under the Bankruptcy Code on December 7, 2022 (such cases, the "Chapter 11 Cases");

WHEREAS, on October 30, 2023, the Parties filed a form of Litigation Administrator Agreement [Docket No. 3935];

WHEREAS, on November 9, 2023, the Bankruptcy Court entered the Confirmation Order and confirmed the Plan;

WHEREAS, on November 30, 2023, the Debtors and the Committee filed the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "MiningCo Motion"), which sought to implement an Orderly Wind Down on the terms set forth therein.

WHEREAS, on December 16, 2023, the Debtors and the Committee filed the *Supplemental Joint Statement Regarding the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4115] (the "MiningCo Supplement") and the term sheet attached thereto,

pursuant to which the Debtors and the Committee informed the Bankruptcy Court that, pursuant to the Plan, a designee of the BRIC would be appointed as the Litigation Administrator (ARM) on the Effective Date;

WHEREAS, on December 27, 2023, the Court granted the MiningCo Motion and entered the MiningCo Order;

WHEREAS, on January 31, 2024, the Plan became effective and the Debtors, in consultation with the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee") designated the BRIC as the Litigation Administrator (ARM) with respect to certain complex asset recovery matters and certain litigation matters; and

WHEREAS, the Litigation Administrator (ARM), and each successor serving from time to time hereunder, shall have all the rights, powers, and duties as set forth herein.

NOW, THEREFORE, pursuant to the Plan, the Confirmation Order, and the MiningCo Order, in consideration of the promises, the mutual agreements of the Parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Agreement, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION ADMINISTRATOR (ARM) AND THE LITIGATION OVERSIGHT COMMITTEE

2.1    Establishment and Appointment of the Litigation Administrator (ARM). The Debtors and the Litigation Administrator (ARM), pursuant to the Plan, the Confirmation Order, and the MiningCo Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby enter into this Agreement, pursuant to which the Litigation Adminsitrator (ARM) is appointed, effective as of the Effective Date, to administer the Claims, Causes of Action, and Illiquid Assets allocated to the Litigation Administrator (ARM) identified on **Exhibit B** ("ARM Claims") for the benefit of the Holders of Claims entitled to receive Litigation Proceeds with respect to such ARM Claims (the "Claim Holders"), on the terms set forth herein. In connection with the exercise of the Litigation Administrator (ARM)'s powers hereunder, the Litigation Administrator (ARM) may use the name "Blockchain Recovery Investment Consortium, LLC", "Litigation Administrator (ARM)" or such variation thereof as the Litigation Oversight Committee agrees.

2.2    Oversight of the Litigation Administrator (ARM).

(a)    The Litigation Oversight Committee shall oversee the Litigation Administrator (ARM), and the Litigation Administrator (ARM) shall serve at the direction of the Litigation Oversight Committee as set forth herein. The initial members of the Litigation

Oversight Committee (each such Person and any other Person appointed to be a member of the Litigation Oversight Committee pursuant to this Agreement, a "Member") are identified on **Exhibit A** hereto.

(b)    The Litigation Oversight Committee shall establish a subcommittee to oversee the Litigation Administrator (ARM) and the administration of the ARM Claims by the Litigation Administrator (ARM) pursuant to this Agreement (the "ARM Oversight Subcommittee").  The initial members of the ARM Oversight Subcommittee shall include Gerard Uzzi and two (2) other members of the Litigation Oversight Committee designated to serve on the ARM Oversight Committee by the Litigation Oversight Committee in consultation with the Litigation Administrator (ARM).

(c)    The Litigation Oversight Committee may determine, in its sole discretion, to delegate any responsibilities assigned to it hereunder with respect to the ARM Claims to the ARM Oversight Subcommittee.

(d)    The ARM Oversight Subcommittee shall provide regular reports to the Litigation Oversight Committee.

### ARTICLE III
### THE ARM CLAIMS.

3.1    The ARM Claims Generally. Subject to the oversight of the Litigation Oversight Committee and ARM Oversight Subcommittee, as applicable, the Litigation Administrator (ARM) shall exclusively administer the monetization of all of the ARM Claims (as listed on **Exhibit B** hereto), including the "Illiquid Assets Subject to Incentive Fees" and the "Illiquid Assets Not Subject to Incentive Fees" listed on **Exhibit B** hereto, for the benefit of Claim Holders, subject to the provisions of the Plan, Confirmation Order, and the MiningCo Order.  The Litigation Oversight Committee shall have the sole authority to designate additional assets  as "Illiquid Assets Subject to Incentive Fees" that are not currently designated as "Illiquid Assets Subject to Incentive Fees" on **Exhibit B**.  For the avoidance of any doubt, the Litigation Oversight Committee shall not have the authority to remove assets from the schedule of  "Illiquid Assets Subject to Incentive Fees" identified on **Exhibit B**.  All illiquid assets within the Estates (but not Causes of Action other than the Causes of Action identified on **Exhibit B**) not identified on **Exhibit B** will be discussed in good faith between the Litigation Oversight Committee and the Litigation Administrator (ARM) to determine whether they should be designated as additional "Illiquid Assets Subject to Incentive Fees" or "Illiquid Assets Not Subject to Incentive Fees," all subject to the sole discretion of the Litigation Oversight Committee.  Furthermore, to the extent that an asset designated as "Illiquid Assets Not Subject to Incentive Fees" requires active administration and workout activities more akin to the "Illiquid Assets Subject to Incentive Fees," the Litigation Oversight Committee shall have the authority to change such designation to be subject to Incentive Fees. The Litigation Administrator (ARM) shall be required to consult with the ARM Oversight Subcommittee on a periodic basis regarding whether to monetize "Illiquid Assets Subject to Incentive Fees" that would result in a recovery below the market "pro forma" value set forth with respect to such asset on **Exhibit B**.  Notwithstanding anything to the contrary in this Agreement, the Litigation Administrator (ARM) shall not administer the Claims and Causes of Action allocated to Mohsin Y. Meghji, in his capacity as the Litigation Adminstrator of the Debtors (the "Litigation

Administrator"), pursuant to **Exhibit B** hereto. The Litigation Administrator shall exclusively administer such Claims and Causes of Action subject to the terms of the separate agreement between the Litigation Administrator and the Debtors (the "Litigation Administrator Agreement"). For the avoidance of doubt, the ARM Claims shall not include, and the Litigation Administrator (ARM) shall not administer, any claims or causes of action against any of the Debtors' advisors arising out of any action or inaction relating to the Debtors filing (or failing to timely file) a proof of claim against the debtors in, or otherwise relating to, *Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (Bankr. S.D.N.Y.) (MEW).

3.2    Mawson. The value of the Mawson asset to be allocated to the Litigation Administrator (ARM) hereunder shall include only the Mawson note and not the claims arising under the Mawson Co-Location Agreement (including for return of the deposit), which agreement and deposit rights are property of MiningCo. The litigation with respect to Mawson shall be managed by the Litigation Administrator (ARM). The Litigation Oversight Committee and the MiningCo Board shall have joint authority to direct the litigation and resolution of such litigation. The Litigation Administrator (ARM) shall only earn its incentive fee on the portion of any recovery associated with the Mawson note and not rights asserted under the Co-Location Agreement, and any dispute as to allocation of litigation proceeds shall be resolved by the Bankruptcy Court.

3.3    Core. The Litigation Administrator (ARM) acknowledges that the Debtors and the Committee request that the Litigation Administrator (ARM) monetize the Convertible Notes and any new equity interests issued on account of such Convertible Notes (as defined in the *Debtors' Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors and Core Scientific, (II) Authorizing Entry Into the Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers With Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3474]) as soon as practicable after the Effective Date and in a value-maximizing and reasonable manner (collectively, the "Core Proceeds"). Subsequent to the receipt of the Core Proceeds, unless the Litigation Oversight Committee deems otherwise, the Plan Administrator shall include the Core Proceeds in the next distribution to creditors pursuant to the Plan Administrator Agreement, and, to the extent practicable (including that there is a distribution agent available to make distributions of Liquid Cryptocurrency), the Plan Administrator shall convert the Core Proceeds into Liquid Cryptocurrency for such creditors entitled to receive Liquid Cryptocurrency as part of such distribution. Unless the Litigation Oversight Committee deems otherwise, the Core Proceeds shall not be used for any other purpose by the Plan Administrator, Litigation Administrator (ARM), or any other Litigation Administrator, and shall not constitute any portion of the Plan Administrator Budget or Wind-Down Budget or any approved budget for the Litigation Administrator (ARM). The Litigation Administrator (ARM) shall provide a proposed work plan to the Litigation Oversight Committee within 45 days of the Effective Date regarding the monetization of such Convertible Notes and new equity interests issued on account of such Convertible Notes.

## ARTICLE IV
## RIGHTS, POWERS AND DUTIES OF LITIGATION ADMINISTRATOR (ARM)

4.1    Role of the Litigation Administrator (ARM). In furtherance of and consistent with the purpose of the Agreement and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, the MiningCo Order, and this Agreement, the Litigation

Administrator (ARM) shall (i) manage, supervise and protect the ARM Claims on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders; (ii) investigate, analyze, prosecute and, if necessary and appropriate, settle and compromise the ARM Claims; and (iii) have all such other responsibilities as may be vested in the Litigation Administrator (ARM) with respect to the ARM Claims as the Litigation Oversight Committee may decide in its sole and absolute discretion. All decisions and duties with respect to the Agreement and the ARM Claims to be made and fulfilled, respectively, by the Litigation Administrator (ARM) shall be carried out in accordance with the Plan, the Confirmation Order, the MiningCo Order, this Agreement and all other applicable orders of the Bankruptcy Court. In all circumstances, the Litigation Administrator (ARM) shall act in good faith in the interests of all Claim Holders and in furtherance of the purpose of the Agreement, and shall use commercially reasonable efforts in its reasonable judgment and discretion to prosecute, settle or otherwise resolve the ARM Claims and to otherwise monetize the ARM Claims and not unreasonably prolong the duration of the Agreement.

4.2    Power to Contract. In furtherance of the purpose of the Agreement, and except as otherwise specifically restricted in the Plan, Confirmation Order, the MiningCo Order, or this Agreement, subject to prior written approval by the Litigation Oversight Committee or the ARM Oversight Subcommittee, as applicable, the Litigation Administrator (ARM), solely with respect to the administration of the ARM Claims in accordance with this Agreement, shall have, to the extent authorized and subject to the limitations set forth expressly herein, the right and power on behalf of the Post-Effective Date Debtors to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Litigation Administrator (ARM) to be consistent with and advisable in furthering the purpose of the Agreement.

4.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Litigation Administrator (ARM) from taking or refraining to take any action that, based upon the advice of counsel or other professionals, the Litigation Administrator (ARM) determines in good faith that it is obligated to take or to refrain from taking in the performance of any duty that the Litigation Administrator (ARM) may owe the Claim Holders or any other Person pursuant to the Plan, Confirmation Order, the MiningCo Order, or this Agreement.

4.4    Authority to Prosecute and Settle ARM Claims.

(a)    Subject to the provisions of this Agreement, the Plan, the Confirmation Order, and the MiningCo Order, subject to prior written approval by the Litigation Oversight Committee, the Litigation Administrator (ARM) shall have sole authority to prosecute, pursue, compromise, settle, or abandon any and all ARM Claims that have not already been resolved as of the Effective Date. Subject to prior written approval by the Litigation Oversight Committee, the Litigation Administrator (ARM) shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all ARM Claims (including any counterclaims asserted against the Litigation Administrator (ARM)) with respect to any such ARM Claims.

(b)    To the extent that any action has been taken to prosecute or otherwise resolve any ARM Claims prior to the Effective Date by the Debtors, on the Effective Date, the Litigation Administrator (ARM) shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the Litigation

Administrator (ARM) by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Litigation Administrator (ARM): "[Name of Litigation Administrator (ARM)], as Representative for the Post-Effective Date Debtors v. [Defendant]" or "Post-Effective Date Debtors v. [Defendant]."  Without limiting the foregoing, the Litigation Administrator (ARM) shall take any and all actions necessary or prudent to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Claim.  For purposes of exercising its powers, the Litigation Administrator (ARM) shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(c)    Subject to Section 4.4(a) hereof, any determinations by the Litigation Administrator (ARM) with regard to the amount or timing of settlement or other disposition of any ARM Claims shall be conclusive and binding on the Claim Holders and all other parties in interest following the entry of an order of a court of competent jurisdiction (including, as relevant, a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

4.5    <u>Liquidation of ARM Claims.</u>  Subject to prior written approval by the Litigation Oversight Committee, the Litigation Administrator (ARM) shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, the MiningCo Order, and this Agreement, liquidate and convert to Cash the ARM Claims, and not unduly prolong the existence of the Agreement.  The Litigation Administrator (ARM) shall exercise reasonable business judgment and liquidate the ARM Claims to maximize net recoveries to the Claim Holders, *provided*, *however*, that the Litigation Administrator (ARM) shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the ARM Claims or otherwise or through the sale or other disposition of the ARM Claims (in whole or in combination).  The Litigation Administrator (ARM) may incur any reasonable and necessary expenses in connection with the liquidation of the ARM Claims.  To the extent the Litigation Administrator (ARM) becomes aware of any expenses that materially deviate from the budget approved by the Litigation Oversight Committee under Section 4.10(b), the Litigation Administrator (ARM) shall promptly notify the Litigation Oversight Committee and request approval of a revised budget.

4.6    <u>Administration of ARM Claims.</u>

(a)    Except as otherwise provided in the Plan, the Confirmation Order, the MiningCo Order, or this Agreement, including any applicable oversight and consent rights of the Litigation Oversight Committee or ARM Oversight Subcommittee, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Litigation Administrator (ARM) may, subject in all respects to the prior written approval of the Litigation Oversight Committee to the extent provided in this Agreement, control and exercise authority over the ARM Claims, including the administration and disposition thereof, as necessary or advisable to enable the Litigation Administrator (ARM) to fulfill the intents and purposes of this Agreement.  No Person dealing with the Agreement will be obligated to inquire into the authority of the Litigation Administrator (ARM) in connection with the acquisition, disposition, administration, or monetization of the ARM Claims.

(b)    In connection with the administration and use of the ARM Claims and except as otherwise expressly limited in the Plan, the Confirmation Order, the MiningCo Order, or this Agreement, the Litigation Administrator (ARM) will have, in addition to any powers conferred upon the Litigation Administrator (ARM) by any other provision of this Agreement, the power to take any and all actions as, in the Litigation Administrator (ARM)'s reasonable discretion, are necessary or advisable to effectuate the primary purposes of the Agreement, subject to the prior written approvals of the Litigation Oversight Committee to the extent required herein, including, without limitation, the power and authority to (i) engage and compensate the Litigation Administrator (ARM) Professionals to assist the Litigation Administrator (ARM) and the Litigation Oversight Committee with respect to their respective responsibilities; (ii) commence and/or pursue any and all actions involving the ARM Claims that could arise or be asserted at any time, unless otherwise limited, waived, released, compromised, settled, or relinquished in the Plan, the Confirmation Order, the MiningCo Order, or this Agreement; and (iii) implement the Plan, this Agreement, and applicable orders of the Bankruptcy Court (including, as applicable, the Confirmation Order and the MiningCo Order).

4.7    <u>Additional Powers of the Litigation Administrator (ARM)</u>.  In addition to any and all of the powers specifically enumerated above, and subject to the retained jurisdiction of the Bankruptcy Court, the Litigation Administrator (ARM), subject to the direction and approval of the Litigation Oversight Committee, shall be empowered to:

(a)    perform the duties, exercise the powers, and assert the rights of a representative of the Estates under section 1123(b) of the Bankruptcy Code solely with respect to the ARM Claims, including the right to assert claims, defenses, offsets, and privileges in accordance with each of the terms hereof;

(b)    protect and enforce the rights of the Post-Effective Date Debtors in and to the ARM Claims by any method deemed reasonably appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law (whether foreign or domestic) and general principles of equity;

(c)    subject to Section 4.11, assert, enforce, release, or waive any Privilege or defense on behalf of the Debtors or Post-Effective Date Debtors with respect to the ARM Claims, as applicable;

(d)    receive, administer, supervise, protect, and liquidate the ARM Claims;

(e)    investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, the ARM Claims;

(f)    without expanding the scope of the definition of "Claims" in the Plan, take appropriate actions to recover transfers of any Debtors' property as provided for in the Plan as may be permitted by the Bankruptcy Code or applicable state law; *provided*, *however*, that nothing herein shall give the Litigation Administrator (ARM) the power to recover any of the MiningCo Assets that were transferred to the MiningCo;

(g)     execute offsets or assert counterclaims against Claim Holders (except to the extent of any releases, waivers, settlements, compromises or relinquishments set forth in the Plan, the Confirmation Order, or the MiningCo Order);

(h)     subject to applicable law, seek the examination of any Entity or Person, with respect to the ARM Claims;

(i)     retain and reasonably compensate for services rendered and expenses incurred by Litigation Administrator (ARM) Professionals, including, but not limited to, performing such reviews and/or audits of the financial books and records of the Debtors or Litigation Administrator (ARM) as may be appropriate in the Litigation Administrator (ARM)'s reasonable discretion;

(j)     take or refrain from taking any and all actions the Litigation Administrator (ARM) reasonably deems necessary for the continuation, protection, and maximization of the ARM Claims consistent with the purposes hereof;

(k)     take all steps and execute all instruments and documents the Litigation Administrator (ARM) reasonably deems necessary to effectuate the Agreement;

(l)     liquidate any remaining ARM Claims; and

(m)     exercise such other powers as may be vested in the Litigation Administrator (ARM) pursuant to the Plan, the Confirmation Order, the MiningCo Order, this Agreement, any order of the Bankruptcy Court or as otherwise determined by the Litigation Administrator (ARM) to be reasonably necessary and proper to carry out the obligations of the Litigation Administrator (ARM) in relation to the Agreement; *provided* that the Litigation Administrator (ARM) shall work in good faith with the Plan Administrator, the Litigation Administrator, and the Litigation Oversight Committee to ensure that services are not duplicated and to reconcile any conflicts between the Plan Administrator Agreement, the Litigation Administrator Agreement, and this Agreement.

4.8     <u>Limitations on Power and Authority of the Litigation Administrator (ARM)</u>.  The Litigation Administrator (ARM) will not have the authority to, and shall agree that it shall not directly or indirectly seek to, do any of the following:

(a)     take any action in contravention of the Plan, the Confirmation Order, the MiningCo Order, or this Agreement;

(b)     take any action that is reserved for the Plan Administrator under the Plan, the Confirmation Order, the MiningCo Order, or the Plan Administrator Agreement;

(c)     take any action that is reserved for the Litigation Administrator under the Plan, the Confirmation Order, the MiningCo Order, or the Litigation Administrator Agreement;

(d)     take any action that would reasonably be expected to make it impossible to carry on the activities of the Agreement;

(e)      possess property of the Debtors or Claim Holders or assign the Debtors', Post-Effective Date Debtors', or Claim Holders' rights in specific property for any purpose other than as provided herein;

(f)      cause or permit the Litigation Administrator (ARM) to engage in any trade or business or utilize or dispose of any part of the ARM Claims or the proceeds, revenue or income therefrom in furtherance of any trade of business;

(g)      receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets; or

(h)      without prior written approval of the Litigation Oversight Committee in accordance with Sections 4.10(b) and 4.14, retain Litigation Administrator (ARM) Professionals or agree to any compensation arrangements for such Litigation Administrator (ARM) Professionals.

4.9      <u>Books and Records</u>.  Subject to Section 5.1, the Litigation Administrator (ARM) shall maintain books and records relating to the ARM Claims (including income realized therefrom and the Litigation Proceeds) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are to be paid from the Litigation Recovery Account in such detail and for such period of time as may be necessary to enable the Litigation Administrator (ARM) to make full and proper accounting in respect thereof and in accordance with applicable law, as reasonably necessary to facilitate compliance with the tax reporting requirements for the Litigation Recovery Account.  Nothing in this Agreement requires the Litigation Administrator (ARM) to file any accounting or seek approval of any court with respect to the administration of the Litigation Recovery Account, except as may otherwise be set forth in the Plan, the Confirmation Order, or the MiningCo Order.

4.10    <u>Reports</u>.

(a)      <u>Reporting</u>.  The Litigation Administrator (ARM) shall provide monthly status updates to the Litigation Oversight Committee, as well as file quarterly reports on the docket of the Chapter 11 Cases, commencing on the date that is the three-month anniversary of the Effective Date, with respect to the status of the ARM Claims.

(b)      <u>Annual Plan and Budget</u>.  The Litigation Administrator (ARM) shall prepare and submit to the Litigation Oversight Committee for prior written approval an annual plan and budget in such detail as is reasonably requested. Subject to approval by the Litigation Oversight Committee, such budget is expected to provide the Litigation Administrator (ARM) with reasonable and necessary funds to fulfill its duties under this Agreement using funds from the initial Litigation Trust Funding Amount in the Litigation Recovery Account. Notwithstanding anything to the contrary in the Confirmation Order, the Plan, the MiningCo Order, or herein, and for the avoidance of doubt, any such approved budget shall exclude financial advisors (or other professionals such as investment bankers that are hired by the Litigation Administrator (ARM) specifically to provide financial advisory services) retained for the purpose of assisting in the complex asset recovery process or litigation to be overseen by the Litigation Administrator (ARM)

9

(collectively, the "Financial Advisors"), and no costs, expenses, or fees, including financial advisory and professional fees (or other fees charged by professionals such as investment bankers that are hired by the Litigation Administrator (ARM) specifically to provide financial advisory services), charged or incurred by, or requested to be disbursed to, any such Financial Advisors shall be due and payable under the approved budget.  Further, notwithstanding anything to the contrary in the Confirmation Order, the Plan, the MiningCo Order, or herein, if the Litigation Administrator (ARM) retains any Financial Advisors, any fees, costs, or expenses incurred or charged by, or requested to be disbursed to, such Financial Advisors shall be borne solely by the Litigation Administrator (ARM) and not by the Debtors, the Post-Effective Date Debtors, the Litigation Recovery Account, or any other Person or Entity and shall not be paid from any proceeds of the ARM Claims or any other assets of the Debtors, the Post-Effective Date Debtors, or the Litigation Recovery Account.

4.11   Litigation Proceeds.  Subject to Section 6.1, all of the proceeds received by the Litigation Administrator (ARM) from the pursuit of any ARM Claims (including any settlements thereof) shall be added to the Litigation Recovery Account and held as a part thereof. Notwithstanding anything to the contrary in this Agreement, the Litigation Administrator (ARM) shall not have any obligation, right or power to distribute (or to authorize any distribution of) the proceeds of the Litigation Recovery Account or any other proceeds of any ARM Claims to Claim Holders or otherwise.

4.12   Multiple Interests. Subject to the terms of this Agreement, any action by the Litigation Administrator (ARM), the Litigation Oversight Committee, and/or the ARM Oversight Subcommittee that affects the interests of more than one Claim Holder shall be binding and conclusive on all Claim Holders even if such Claim Holders have different or conflicting interests.

4.13   Privileges.

(a)    The Litigation Administrator (ARM) shall, on behalf of the Post-Effective Date Debtors for the benefit of the Claim Holders, hold all attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "Privileges") held by any one or more of the Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors), the Committee, the Earn Ad Hoc Group, or the Retail Borrower Ad Hoc Group, as applicable (together the "Privilege Parties") relating primarily to any ARM Claims and the purpose of the Agreement (the "Privileged Information").  The Privileged Information shall include documents and information of all manner, whether oral, written, or digital.  For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Parties.

(b)    The Privileges concerning the Privileged Information shall vest in the Litigation Administrator (ARM), consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Litigation Administrator (ARM) and Claim Holders as of the Effective Date.  The Litigation Administrator (ARM) shall have the authority and sole discretion to maintain the Privileges and keep the Privileged Information confidential, or waive

any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Privileged Information.

(c)     The Post-Effective Date Debtors and the Litigation Administrator (ARM) are authorized to take all necessary actions to effectuate the transfer of the Privileges and available defenses to the Litigation Administrator (ARM). The Post-Effective Date Debtors shall transfer any and all prepetition case files and work product from the Debtors' current and former in-house and outside counsel (or unredacted copies of such files, as appropriate) as soon as reasonably practicable following the Effective Date; *provided*, for the avoidance of doubt, that such production shall not include, with respect to any advisors to the Debtors that are Released Parties (i) any materials relating to the preparation, filing, or prosecution of these Chapter 11 Cases by such advisors, or (ii) any internal communications of such advisors (the foregoing proviso, the "Excluded Privileged Matters"); *provided, further*, that notwithstanding the foregoing proviso, the Litigation Administrator (ARM) may request any primary documents or final work product identified (in the Litigation Oversight Committee's judgement) as materially relevant to the prosecution of any ARM Claims.

(d)     The Litigation Administrator (ARM) is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Privileged Information, and no such person may object to the production to the Litigation Administrator (ARM) of such Privileged Information on the basis of a Privilege held by a Privilege Party.  Until and unless the Litigation Administrator (ARM) makes a determination in its sole discretion to waive any Privilege, Privileged Information shall be produced solely to the Litigation Administrator (ARM) or as required by law.  For the avoidance of doubt, this Subsection is subject in all respects to Section 4.13.

(e)     Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by granting access to any Privileged Information to the Litigation Administrator (ARM) or any of its respective employees, professionals or representatives, or by disclosure of such Privileged Information between the Privilege Parties, on the one hand, and the Litigation Administrator (ARM), on the other hand, or any of their respective employees, professionals or representatives.

(f)     If a Privilege Party, the Litigation Administrator (ARM), any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Administrator (ARM) of the production and shall demand of all recipients of the inadvertently disclosed Privileged Information that they return or confirm the destruction of such materials.

(g)     Notwithstanding anything to the contrary contained in Section 4.13, for the avoidance of doubt, no Privilege or Privileged Information related to any claims or causes of action that have been released or exculpated under the Plan shall be made accessible to the Litigation Administrator (ARM), *provided, however*, that the foregoing shall not prevent access to any

Privileged Information to the extent that such Privileged Information also directly or indirectly relates to ARM Claims.

4.14   <u>Outside Advisors</u>.  Subject to prior written approval by the Litigation Oversight Committee (e-mail being sufficient) and subject to Sections 4.10(b) and 7.1(c), the Litigation Administrator (ARM) may retain attorneys, professionals, consultants, experts, expert witnesses, and advisors, as the Litigation Administrator (ARM) deems reasonably necessary to administer the ARM Claims in accordance with this Agreement (collectively, the "<u>Litigation Administrator (ARM) Professionals</u>") without need for any approval from the Bankruptcy Court or any other Party or entity. The Litigation Oversight Committee, in its sole discretion, shall approve or disapprove the retention and compensation of each Litigation Administrator (ARM) Professional. Notwithstanding anything to the contrary in this Agreement, the Plan, the Confirmation Order, or the MiningCo Order, prior employment in any capacity in the Debtors' bankruptcy cases on behalf of the Debtors, their estates, the Committee, the Earn Ad Hoc Group, the Retail Borrower Ad Hoc Group, or any creditors shall not preclude the Litigation Administrator (ARM)'s retention of such professionals, consultants, or other persons.

4.15   <u>Relationship and Fiduciary Obligations</u>.  The Litigation Administrator (ARM) is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association with any of the Litigation Oversight Committee, any Member therof, and the Claim Holders, nor shall the Litigation Administrator (ARM), the Litigation Oversight Committee (or any Member thereof) or the Claim Holders for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Claim Holders, on the one hand, to the Litigation Administrator (ARM) and the Litigation Oversight Committee, on the other hand, shall be as conferred upon them by the Plan, the Confirmation Order, the MiningCo Order, and this Agreement. Pursuant to Article IV.G.6 of the Plan, the Litigation Administrator (ARM) and Litigation Oversight Committee shall each act in a fiduciary capacity on behalf of the interests of all Holders of Claims entitled to receive Litigation Proceeds from the Litigation Recovery Account.  For the avoidance of doubt, the Litigation Administrator (ARM) is acting on behalf of the Post-Effective Date Debtors to prosecute and monetize the ARM Claims of the Debtors for the benefit of Claim Holders pursuant to the Plan and, for all purposes, the Litigation Administrator (ARM) shall be treated as an agent of the Debtors or Post-Effective Date Debtors, as the case may be, rather than a separate entity.

4.16   <u>No Waiver of Claims</u>.  In accordance with section 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions of the Plan, the Litigation Administrator (ARM) may enforce all rights to commence and pursue, as appropriate, any and all ARM Claims.  No Person or Entity may rely on the absence of a specific reference in the Plan to any Claim against it as any indication that the Litigation Administrator (ARM) will not pursue any and all ARM Claims against such Person or Entity.  The Litigation Administrator (ARM) expressly reserves all ARM Claims for later adjudication, resolution, abandonment, settlement, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such ARM Claims upon, after or as a consequence of the Confirmation Order.

4.17   Appointment as Representative.   Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Administrator (ARM) shall be the duly appointed representative of the Estates for certain limited purposes with respect to prosecution, resolution and settlement of the ARM Claims.  The ARM Claims and rights shall be transferred to the Post-Effective Date Debtors in accordance with the Transaction Steps Memorandum, and the Litigation Administrator (ARM) shall be deemed to have been designated as a representative of the Debtors to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such ARM Claims on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates for the benefit of the Claim Holders or settle or otherwise dispose of ARM Claims.

4.18   Conflicts of Interest.   Notwithstanding anything to the contrary contained in this Agreement, the Litigation Oversight Committee shall have the exclusive power and right to oversee and determine any actual or potential conflicts of interest with respect to the Litigation Administrator (ARM) and the Litigation Administrator (ARM)'s performance under this Agreement.  Any decision or determination made by the Litigation Oversight Committee with respect to whether the Litigation Administrator (ARM) is actually or potentially conflicted shall be binding on the Litigation Administrator (ARM).  Notwithstanding anything to the contrary in this Section 4.18, in the event of a dispute as to a potential conflict of interest, the Litigation Administrator (ARM) shall have the right to bring such dispute to the Bankruptcy Court. Until such time as (a) the Litigation Oversight Committee has determined, in its sole and exclusive discretion, that any alleged conflict of interest of the Litigation Administrator (ARM) does not exist or has been remedied or (b) any dispute over any alleged conflict of interest is finally adjudicated by the Bankruptcy Court, the Litigation Oversight Committee shall have the exclusive power and right, as its sole and exclusive option, to designate a member of the Litigation Oversight Committee or professional natural person with experience administering bankruptcy claims to act as the Litigation Administrator (ARM) with respect to any claims that are the subject of a conflict determination made by the Litigation Oversight Committee.  The Litigation Administrator (ARM) designated by the Litigation Oversight Committee with respect to any conflict determination made by the Litigation Oversight Committee may incur any reasonable and necessary expenses in connection with retaining professionals, consultants and advisors to aid it in fulfilling its obligations under this Agreement and the Plan.

4.19   Confidentiality.   The Litigation Administrator (ARM) and its advisors, counsel, employees, and agents (together, the "Litigation Administrator (ARM) Parties") shall, during the period that the Litigation Administrator (ARM) serves as Litigation Administrator (ARM) under this Agreement and, following the termination of this Agreement or following such Litigation Administrator (ARM)'s removal or resignation hereunder, whichever is applicable, through the closing of the Chapter 11 Cases, hold strictly confidential any non-public information of or pertaining to any Person to which any of the ARM Claims Materials or ARM Claims relates or of which the Litigation Administrator (ARM) has become aware in the Litigation Administrator (ARM)'s capacity as Litigation Administrator (ARM) (including information contained or reflected in the Litigation Administrator (ARM) Materials) (the "Confidential Information") until (a) the Confidential Information is made public other than by disclosure by the Litigation Administrator (ARM) Parties or any Litigation Administrator (ARM) Professionals in violation of this Agreement, or otherwise becomes available to the Litigation Administrator (ARM) outside of the Litigation Administrator (ARM)'s role as such; (b) such Litigation Administrator (ARM) Party is required by law to disclose the Confidential Information (in which case the Litigation

Administrator (ARM) Party shall provide the relevant Person reasonable advance notice and an opportunity to protect his, her, or its rights); (c) such Litigation Administrator (ARM) Party obtains a waiver of confidentiality from the applicable Person; (d) the expiration of the confidentiality provision governing such Confidential Information, or (e) such Litigation Administrator (ARM) Party is reasonably advised by the Litigation Administrator (ARM) Professionals to disclose the Confidential Information to the extent that it is done in the performance of the Litigation Administrator (ARM)'s responsibilities under this Agreement. The Litigation Administrator (ARM) Parties shall only use Confidential Information to fulfill their duties under this Agreement and shall not use the Confidential Information for any personal purposes not contemplated by this Agreement.

**ARTICLE V**
**ACCESS TO INFORMATION**

5.1    General Access to Information. To facilitate the administration of the Litigation Administrator (ARM)'s duties and obligations under this Agreement, the Plan Administrator, through the Gatekeeper (as defined in Section 5.5), shall ensure that the Litigation Administrator (ARM) has reasonable and timely access to the books, records, documents, information, work product, accounts, and other resources, directly or indirectly relating to the ARM Claims (including all electronic records, documents, information and work product) in the possession of the Debtors, the Estates, the Post-Effective Date Debtors, the Professionals retained by the Debtors during the Chapter 11 Cases (the "Celsius Professionals"), or the Plan Administrator; *provided*, *however*, for the avoidance of doubt, that the Litigation Administrator (ARM) shall not have, or request, access to any materials or communications relating to the Excluded Privilege Matters; *provided*, *further*, that notwithstanding the foregoing proviso, the Litigation Administrator (ARM) may request materials identified (in the Celsius Professionals' professional judgement) as materially relevant to the prosecution of any claims against the Excluded Parties (including the UCC Claims Stipulation Defendants) to the extent they directly or indirectly implicate the ARM Claims.  The Plan Administrator, through the Gatekeeper, shall provide the Litigation Administrator (ARM) with reasonable access to employees that are knowledgeable about the ARM Claims, as appropriate, to facilitate an efficient complex assets recovery process and litigation recovery process.

5.2    Initial Transition Time.  During the initial transition time (the "Initial Transition Time"), which shall expire 90 days after the Effective Date, information and documents regarding the ARM Claims will be transferred to the Litigation Administrator (ARM) by the Plan Administrator, Debtors, and Celsius Professionals and "reasonable access to employees" during the Initial Transition Time referred to in Section 5.1 will be interpreted accordingly.  During the Initial Transition Time, the salaries of all employees of the Post-Effective Date Debtors or the Plan Administrator, as well as any fees or expenses incurred by such parties in responding to any requests by the Litigation Administrator (ARM), shall be paid solely from the Plan Administrator Budget.

5.3    Access to Celsius Employees.  Following the Initial Transition Time, "reasonable access to employees" referred to in Section 5.1, which shall continue to be paid for by the Post-Effective Date Debtors, will include reasonable questions intended to verify information and similar requests that require a non-material amount of time from employees and Celsius

14

Professionals and will not include substantial efforts by the employees and Celsius Professionals including, but not limited to, the drafting of a document or analysis, or serving as a witness. Notwithstanding the above, after the expiration of the Initial Transition Time, reasonable access as described in Section 5.2 above shall continue to be provided; provided, however, to the extent the Litigation Administrator (ARM) requests substantial effort by an employee that would interfere with the tasks assigned by the Plan Administrator to such employee in the ordinary course of their employment by the Plan Administrator or otherwise require a material amount of the employee's time (for example, serving as a non-expert witness), the Plan Administrator shall have the right to determine the appropriate allocation of time between the applicable employee's primary duties assisting the Plan Administrator and the requests of the Litigation Administrator (ARM) (such determination not to be unreasonable), and the Plan Administrator shall have the right to demand that the Litigation Administrator (ARM) reimburse the Plan Administrator Budget for some or all of such employee's salary as a condition of such cooperation; and provided, further that, subject to prior written approval from the Litigation Oversight Committee, the Litigation Administrator (ARM) and the Plan Administrator shall have the authority to enter into an agreement to share costs relating to any employee that works on Plan Administrator and Litigation Administrator (ARM) matters between the Plan Administrator Budget and the Litigation Recovery Account. Any dispute as to whether the Plan Administrator's determination relating to allocation was unreasonable shall be resolved by a majority vote of the members of the Litigation Oversight Committee. In addition, the Plan Administrator, through the Gatekeeper, shall provide the Litigation Administrator (ARM) timely notice of any proposed terminations of employees and consultants by the Plan Administrator, as well as any resignations of employees and consultants that are knowledgeable about the ARM Claims. The Litigation Administrator (ARM) shall not solicit for employment any current employees of the Post-Effective Date Debtors or Plan Administrator without the consent of the Plan Administrator, prior to initiating contact with such current employee; provided that once the Plan Administrator has provided notice to the Litigation Administrator (ARM) that any employee will resign or be terminated, such employee shall not be considered a current employee for purposes of this sentence.

5.4    <u>Access to Celsius Professionals</u>.    To the extent requested by the Litigation Administrator (ARM), the Plan Administrator, through the Gatekeeper, shall provide reasonable access to the Celsius Professionals for the purpose of cooperating with the Litigation Administrator (ARM) in the investigation and prosecution of the ARM Claims, subject to any applicable professional rules of responsibility and Section 4.13. The Gatekeeper shall provide the Litigation Administrator (ARM) reasonable access to the Celsius Professionals with knowledge of matters directly or indirectly relevant to the ARM Claims, but shall not provide access to materials related to the Excluded Privilege Matters. The Celsius Professionals shall be reimbursed from the Plan Administrator Budget (and, for the avoidance of doubt, not from the Litigation Recovery Account) for any actual and documented fees or expenses charged or incurred by the Celsius Professionals in connection with turning over any books and records to the Litigation Administrator (ARM). If the Litigation Administrator (ARM) requests that the Celsius Professionals draft any documents, analysis, or work product, serve as witnesses, or otherwise devote substantial efforts to providing information to the Litigation Administrator (ARM) in excess of turning over books, records, work product, and other materials that are readily available, the Litigation Oversight Committee, in its sole and absolute discretion, may authorize reimbursement from the Litigation Recovery Account for the actual and documented fees or expenses charged or incurred by the Celsius Professionals in responding to such requests. For the avoidance of doubt, if the Litigation Oversight Committee

15

does not authorize the reimbursement of such fees or expenses described in the foregoing sentence, such fees or expenses shall not be reimbursed from the Litigation Recovery Account and the Celsius Professionals shall not be required to respond to such requests by the Litigation Administrator (ARM).

5.5    Information Request Protocol.  The Litigation Administrator (ARM) shall request information from an individual from Alvarez & Marsal to be designated by the Plan Administrator (such person, the "Gatekeeper").  The Gatekeeper will use reasonable efforts to respond to the information requests of the Litigation Administrator (ARM), including providing reasonable access to employees and the Celsius Professionals.  The Plan Administrator shall select any successor Gatekeeper. Any fees or expenses incurred by the Gatekeeper in responding to requests by the Litigation Administrator (ARM) shall be paid solely from the Plan Administrator Budget.

5.6    Dispute Resolution.  Any dispute regarding access set forth in this Article V shall be resolved by a majority vote of the members of the Litigation Oversight Committee.

## ARTICLE VI
## LITIGATION RECOVERY ACCOUNT

6.1    Establishment of Litigation Recovery Account.  All matters pertaining to the establishment and maintenance of the Litigation Recovery Account shall be subject to that certain Litigation Administrator Agreement, executed by the Debtors and Litigation Administrator.

6.2    Distributions and Interests.  The rights of Claim Holders to receive distributions on account of the proceeds of the ARM Claims and the manner of effectuating any such distributions shall be subject to the terms of the Plan, the Plan Administrator Agreement executed by the Debtors and the Plan Administrator, and the Litigation Administrator Agreement executed by the Debtors and the Litigation Administrator, as applicable.  For the avoidance of doubt, the Litigation Administrator (ARM) shall not have any obligation, right or power to distribute (or to authorize any distribution of) the proceeds of the Litigation Recovery Account or any other proceeds of any ARM Claims to Claim Holders, which obligation, right and power shall be reserved to the Plan Administrator, as directed by the Litigation Oversight Committee. The Litigation Administrator (ARM) shall incur no liability arising from, or related to, the distributions of the proceeds of the ARM Claims by the Plan Administrator, as directed by the Litigation Oversight Committee.

## ARTICLE VII
## TERMS OF SERVICE AND COMPENSATION

7.1    Litigation Administrator (ARM)'s Term of Service, Compensation and Reimbursement.

(a)    Term of Service.  The Litigation Administrator (ARM) shall serve as of the Effective Date until the earlier of: (i) the completion of all of the Litigation Administrator (ARM)'s duties, responsibilities and obligations with respect to the ARM Claims under this Agreement and the Plan; (ii) termination of the Agreement in accordance with this Agreement; and (iii) the Litigation Administrator (ARM)'s dissolution, resignation, or removal.

(b)    <u>Compensation</u>.    The Litigation Administrator (ARM) shall receive compensation from the Litigation Recovery Account as follows (the Fixed Fee, Recovery Incentive Fees, and Litigation Incentive Fees, collectively, the "<u>Litigation Administrator (ARM) Compensation</u>"):

(i)    <u>Fixed Fee</u>: Commencing on the Effective Date, the Litigation Administrator (ARM) shall earn a cash fee of $5,000,000 per year for 3 years (to be paid monthly in equal installments beginning on the Effective Date), subject to any extension that may be approved by the Litigation Oversight Committee on compensation set by the Litigation Oversight Committee at the time of such extension.

(ii)    <u>Recovery Incentive Fees</u>: Commencing on the Effective Date, the Litigation Administrator (ARM) shall earn a cash fee equal to 10% of value realized in respect of each asset designated as among the "Illiquid Assets Subject to Incentive Fees" in excess of the current marked value on the schedule attached to **<u>Exhibit B</u>** in the column labeled "pro forma" value, paid promptly to the Litigation Administrator (ARM) from the Litigation Recovery Account following the receipt of the proceeds of such monetization event by the Litigation Recovery Account and following the Litigation Oversight Committee's written authorization for such payment.

(iii)    <u>Litigation Incentive Fees</u>: Commencing on the Effective Date, the Litigation Administrator (ARM) shall earn a cash fee equal to 5% of value realized (*i.e.* Net Recovered Proceeds)[1] in respect of litigation actions managed by the Litigation Administrator (ARM), paid promptly to the Litigation Administrator (ARM) from the Litigation Recovery Account following the receipt of the proceeds of such monetization event by the Litigation Recovery Account and following the Litigation Oversight Committee's written authorization for such payment, and, for the avoidance of doubt, excluding any Illiquid Assets Subject to Incentive Fees.

(iv)    <u>Progress With Respect to Recovery Fees and Litigation Incentive Fees</u>. At any meeting of the Litigation Oversight Committee, the Litigation Administrator (ARM) may present a progress report and the Litigation Oversight Committee may determine, in its sole and absolute discretion, that substantial efforts have been expended by the Litigation Administrator (ARM) towards the monetization or resolution of any particular asset or cause of action, and authorize the vesting of a partial Recovery Incentive Fee or Litigation Incentive Fee to be paid promptly to the Litigation Administrator (ARM) from the Litigation Recovery Account following the receipt of the proceeds of such monetization event by the Litigation Recovery Account and following the Litigation Oversight Committee's

---

[1] "<u>Net Recovered Proceeds</u>" means recoveries from causes of action overseen by the Litigation Administrator (ARM), net of (1) contingency or similar payments to law firms or other professionals retained by the Litigation Administrator (ARM) on each such cause of action and (2) any other fees and expenses incurred in the prosecution, management, or settlement of each respective cause of action by the Litigation Administrator (ARM).

written authorization for such payment, notwithstanding whether the Litigation Administrator (ARM) is subsequently terminated without cause.

(v)     Funding of Litigation Administrator (ARM) Compensation. All Litigation Administrator (ARM) Compensation due and owing pursuant to this Agreement shall be funded exclusively from the Litigation Recovery Account. On the Effective Date, the Litigation Recovery Account shall be funded with cash in an amount equal to $55,000,000 (including $5,000,000 that shall be reallocated on the Effective Date by the Debtors or Post-Effective Date Debtors, as applicable, from the Plan Administrator Budget to the Litigation Recovery Account). For so long as the BRIC's designee serves as the Litigation Administrator (ARM) under this Agreement, the Litigation Oversight Committee shall not permit the minimum balance of the Litigation Recovery Account to fall below $15,000,000 on account of the total Fixed Fees potentially owed to the Litigation Administrator (ARM) under this Agreement (the "Litigation Recovery Account Minimum Amount"). The Litigation Recovery Account Minimum shall be reduced on a dollar-by-dollar basis to the extent of any Fixed Fees actually paid to the Litigation Administrator (ARM) under this Agreement.  To the extent that this Agreement is terminated as to the Litigation Administrator (ARM), the Litigation Oversight Committee shall be released from any obligation under this Agreement to maintain the Litigation Recovery Account Minimum Amount in the Litigation Recovery Account with respect to the fees payable to the Litigation Administrator (ARM) under this Agreement.

(vi)     Modification of Litigation Administrator (ARM) Compensation. The Litigation Administrator (ARM) Compensation may be modified from time to time solely upon the agreement of the Litigation Administrator (ARM) and the Litigation Oversight Committee.  Notice of any modification of the Litigation Administrator (ARM) Compensation shall be filed promptly with the Bankruptcy Court; *provided*, *however*, that after the closing or dismissal of the Chapter 11 Cases, such notice will be provided on a website maintained by the Plan Administrator.

(c)     Expenses.    Subject to Sections 4.10(b) and 4.14, the Litigation Administrator (ARM) may incur any reasonable and necessary expenses in connection with the performance of its obligations under this Agreement and in amounts consistent with the applicable approved budget, including actual, reasonable, documented, and out-of-pocket fees, expenses, and costs incurred by the Litigation Administrator (ARM) or the Litigation Administrator (ARM) Professionals to prosecute and monetize the ARM Claims (collectively, the "Litigation Administrator (ARM) Expenses" and, together with the Litigation Administrator (ARM) Compensation, the "Litigation Administrator (ARM) Fees").

(d)     Payment.   The Litigation Administrator (ARM) Fees shall be paid to the Litigation Administrator (ARM) from the Litigation Recovery Account following prior written approval (e-mail being sufficient) by the majority of the Members of the Litigation Oversight Committee, without necessity for review or approval by the Bankruptcy Court or any other Person. The Bankruptcy Court shall retain jurisdiction until the closing or dismissal of the Chapter 11

18

Cases to adjudicate any dispute regarding the Litigation Administrator (ARM) Fees. For the avoidance of doubt, (i) no Person or Entity shall be required to pay any amounts owed to Litigation Administrator (ARM) Professionals for which the Litigation Recovery Account does not contain adequate funds, and (ii) the Claim Holders shall have no obligation to provide any funding with respect to the Litigation Recovery Account.

7.2     Resignation.  The Litigation Administrator (ARM) may resign by giving not less than 45 days' prior written notice thereof by filing a notice with the Bankruptcy Court (and such notice shall be served on the Claim Holders); *provided, however*, after the closing or dismissal of the Chapter 11 Cases, such notice shall be posted on a website maintained by the Litigation Administrator (ARM) and served on the Claim Holders.  Such resignation shall become effective on the earlier to occur of: (a) the day specified in such notice, and (b) the appointment of a successor satisfying the requirements set out in Section 7.3 by the Litigation Oversight Committee or the Bankruptcy Court and the acceptance by such successor of such appointment. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 10.3 below), the Litigation Administrator (ARM) shall be deemed to have resigned, except as otherwise provided for in Section 10.4 herein.  Written notice of the resignation of the Litigation Administrator (ARM) and the appointment of a successor Litigation Administrator (ARM) shall be provided promptly on the Bankruptcy Court docket or website of the Litigation Administrator to the extent the Chapter 11 Cases have been closed.

7.3     Appointment of Successor Litigation Administrator (ARM).

(a)     In the event of the dissolution, resignation, or removal of the Litigation Administrator (ARM) (each, a "Succession Event"), the Litigation Administrator (ARM)'s services hereunder shall terminate and all responsibilities, rights, ownership, and powers of the Litigation Administrator (ARM) shall revert to the Litigation Administrator (or any successor thereto, or other Litigation Administrator appointed by the Litigation Oversight Committee).  Such appointment shall specify the date on which such appointment shall be effective.  Every successor Litigation Administrator (ARM) appointed hereunder shall execute, acknowledge and deliver to the Claim Holders an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Administrator (ARM) hereto and subject to the terms of this Agreement, and thereupon the successor Litigation Administrator (ARM), without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Litigation Administrator (ARM) and the successor Litigation Administrator (ARM) shall not be personally liable for any act or omission of the predecessor Litigation Administrator (ARM); *provided*, *however*, that a predecessor Litigation Administrator (ARM) shall, nevertheless, when requested in writing by the successor Litigation Administrator (ARM), execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Administrator (ARM) under the Agreement all the estates, properties, rights, powers and trusts of such predecessor Litigation Administrator (ARM) and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Administrator (ARM), in effectuating the assumption by the successor Litigation Administrator (ARM) of his/her/its obligations and functions hereunder.  For notice purposes only and not for approval, the Litigation Oversight Committee shall file with the Bankruptcy Court (or post on a website maintained by the Litigation Administrator (ARM) if the Chapter 11 Cases have been closed) a notice appointing the successor Litigation Administrator (ARM).

(b)    During any period in which there is a vacancy in the position of Litigation Administrator (ARM), the Litigation Oversight Committee or its designee shall serve as interim Litigation Administrator (ARM) (the "Interim Administrator").  The Interim Administrator shall be subject to all the terms and conditions applicable to a Litigation Administrator (ARM) hereunder; *provided*, *however*, any such Interim Administrator shall not be entitled to receive the Litigation Administrator (ARM) Compensation unless approved by the Litigation Oversight Committee, but shall be entitled to receive payment for the Litigation Administrator (ARM) Expenses as provided herein.  Such Interim Administrator shall not be limited in any manner from exercising any rights or powers as a Member of the Litigation Oversight Committee merely by such Person's appointment as Interim Administrator, but shall be limited in the exercise of such rights or powers as a Litigation Administrator (ARM) to the extent the Litigation Oversight Committee shall, to the extent applicable in this Agreement, fail to approve any such action or undertaking by the Interim Administrator.

(c)    To the extent that the Litigation Oversight Committee is unable to appoint a successor Litigation Administrator (ARM) or Interim Administrator and the Chapter 11 Cases have been closed or dismissed, the Chapter 11 Cases may be reopened for the limited purpose of seeking an order of the Bankruptcy Court to appoint a successor Litigation Administrator (ARM).

7.4    Effect of Resignation or Removal.  The dissolution, bankruptcy, resignation, or removal of the Litigation Administrator (ARM), as applicable, shall not operate to terminate this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Administrator (ARM) or any prior Litigation Administrator (ARM).  In the event of the resignation or removal of the Litigation Administrator (ARM), such Litigation Administrator (ARM) will promptly (a) execute and deliver such documents, instruments and other writings as may be ordered by the Bankruptcy Court (or any other court of competent jurisdiction) or reasonably requested by the Litigation Oversight Committee or the successor Litigation Administrator (ARM) to effect the termination of such Litigation Administrator (ARM)'s capacity under this Agreement, (b) deliver to the successor Litigation Administrator (ARM) all documents, instruments, records and other writings related to the Litigation Administrator (ARM) as may be in the possession of such Litigation Administrator (ARM), including any ARM Claims Materials, and shall not retain any copies of such materials, even for archival purposes, except to the extent required by applicable law; *provided*, however, that the Litigation Oversight Committee shall have access to the Privileged Information of the Litigation Administrator (ARM), and shall determine, in its sole discretion, whether such Privileged Information is appropriate to share with the successor Litigation Administrator (ARM), and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Administrator (ARM).  Notwithstanding anything to the contrary contained in this Agreement, any Litigation Administrator (ARM) who is removed or resigns pursuant to this Agreement shall retain its right to coverage under any applicable insurance policies and indemnification in accordance with Article VIII for its acts or omissions occurring prior to such removal or resignation.

**ARTICLE VIII**
**LIABILITY AND INDEMNIFICATION**

8.1    No Further Liability.  The Litigation Administrator (ARM) shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Recovery Account unless determined by a final judgment of a court of competent jurisdiction to arise out of such Person's own fraud, willful misconduct or gross negligence.  Unless so arising out of such Person's own fraud, willful misconduct or gross negligence, in performing its duties under this Agreement, the Litigation Administrator (ARM) shall have no liability for any action taken by such Person in good faith, in the reasonable belief that such action was in the best interests of the Holders and/or in accordance with the advice of the Litigation Administrator (ARM) Professionals.  Without limiting the generality of the foregoing, the Litigation Administrator (ARM) may rely without independent investigation on documentation provided by, or at the request of, the Litigation Oversight Committee or its professionals or copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine, and shall have no liability for actions taken in reliance thereon.  None of the provisions of this Agreement shall require the Litigation Administrator (ARM) to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  The Litigation Administrator (ARM) may rely without inquiry upon writings delivered to such Person pursuant to the Plan, the Confirmation Order, the MiningCo Order, or this Agreement (including in the execution of such Person's duties hereunder or thereunder) that such Person reasonably believes to be genuine and to have been properly given.  Notwithstanding the foregoing, nothing in this Section 8.1 shall relieve the Litigation Administrator (ARM) from any liability for any actions or omissions determined by a final judgment of a court of competent jurisdiction to have arisen out of such Person's fraud, willful misconduct or gross negligence.  Any action taken or omitted to be taken in the case of the Litigation Administrator (ARM) or the Litigation Oversight Committee with the express approval of the Bankruptcy Court (so long as the Chapter 11 Cases have not been closed or dismissed) will conclusively be deemed not to constitute fraud, willful misconduct or gross negligence.  No termination of this Agreement or amendment, modification or repeal of this Section 8.1 shall adversely affect any right or protection of the Litigation Administrator (ARM) that exists at the time of such termination, amendment, modification or repeal.  Notwithstanding the foregoing, in no event shall the Litigation Administrator (ARM) have any liability under any circumstances for any acts or omissions taken by it at the direction of the Litigation Oversight Committee.

8.2    Indemnification of the Litigation Administrator (ARM) and Litigation Oversight Committee.

(a)    From and after the Effective Date, each of the Litigation Administrator (ARM), the Litigation Oversight Committee, the Litigation Administrator (ARM) Professionals and each of the Litigation Administrator (ARM) Parties (each, a "Litigation Administrator (ARM) Agreement Indemnified Party," and collectively, the "Litigation Administrator (ARM) Agreement Indemnified Parties") shall be, and hereby is, indemnified by recourse solely to the Litigation Recovery Account, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs and other assertions of liability arising out of any such Litigation Administrator (ARM) Agreement Indemnified Party's exercise of what such Litigation

21

Administrator (ARM) Agreement Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Administrator (ARM) Agreement Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order, the MiningCo Order, or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to such Litigation Administrator (ARM) Agreement Indemnified Party's own fraud, willful misconduct or gross negligence on and after the Effective Date). The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement (but notwithstanding the foregoing, such advancement and reimbursement under this Agreement shall not include legal fees for any dispute against the Litigation Oversight Committee unless the Litigation Administrator (ARM) is the prevailing party in such dispute); (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Administrator (ARM); or (iv) proceedings by or on behalf of any creditor. Expenses, including attorney's fees and other expenses and disbursements, incurred by a Litigation Administrator (ARM) Agreement Indemnified Party in defending or investigating a threatened or pending action, suit or proceeding shall be paid or reimbursed solely out of the Litigation Recovery Account (including any insurance policy obtained by the Plan Administrator or the Litigation Administrator the for the benefit of Litigation Administrator (ARM) Agreement Indemnified Parties), in advance of the final disposition of such action, suit or proceeding; *provided*, *however*, that any Litigation Administrator (ARM) Agreement Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Administrator (ARM) Agreement Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, willful misconduct or gross negligence. Any indemnification claim of a Litigation Administrator (ARM) Agreement Indemnified Party shall be entitled to a priority distribution from the Litigation Recovery Account, ahead of the ARM Claims. In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel, at the Litigation Administrator (ARM)'s expense, subject to the foregoing terms and conditions. The indemnification provided under this Section 8.2 shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Litigation Administrator (ARM), the Litigation Oversight Committee, any Member or any other Litigation Administrator (ARM) Agreement Indemnified Party and shall inure to the benefit of the Litigation Administrator (ARM)'s, each Member's and each other Litigation Administrator (ARM) Agreement Indemnified Party's respective heirs, successors and assigns.

(b)      Notwithstanding anything to the contrary in the Confirmation Order, the Plan, the MiningCo Order, or herein, the Litigation Administrator (ARM) Parties shall not be indemnified or reimbursed in any respect, including for the fees and expenses of any Litigation Administrator (ARM) Professionals, on account of any litigation, claim, or cause of action asserted by any Litigation Administrator (ARM) Party against the Litigation Oversight Committee, any Member, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the Committee, or any counsel, advisors, or other professionals of such parties, unless the Litigation Administrator (ARM) is the prevailing party in such dispute.

(c)     The foregoing indemnity in respect of any Litigation Administrator (ARM) Agreement Indemnified Party shall survive the termination of such Litigation Administrator (ARM) Agreement Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not limit or negatively affect any indemnification rights or obligations set forth herein.

(d)     Any Litigation Administrator (ARM) Agreement Indemnified Party may waive the benefits of indemnification under this Section 8.2, but only by an instrument in writing executed by such Litigation Administrator (ARM) Agreement Indemnified Party that expressly waives such benefits.

(e)     The rights to indemnification under this Section 8.2 are not exclusive of other rights which any Litigation Administrator (ARM) Agreement Indemnified Party may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution.  Nothing in this Section 8.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.   For the avoidance of doubt, each Litigation Administrator (ARM) Agreement Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Administrator (ARM) Agreement Indemnified Party may incur in connection with enforcing any of its rights under this Article VIII.

8.3     Limitation of Liability.  None of the Litigation Administrator (ARM) Agreement Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special or other damages for a breach of this Agreement, except to the extent his/her/its actions or omissions to act, as determined by a Final Order, are due to such Litigation Administrator (ARM) Agreement Indemnified Party's own fraud or willful misconduct from and after the Effective Date and any of the foregoing damages are awarded pursuant to any such Final Order. All other liabilities of the Litigation Administrator (ARM) may be paid or satisfied solely from the Litigation Recovery Account. No liability of the Litigation Administrator (ARM) will be payable in whole or in part by any Claim Holders individually or in the Claim Holders' capacity as such.

8.4     Burden of Proof.   In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person or Entity making such determination shall presume that any Litigation Administrator (ARM) Agreement Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

## ARTICLE IX
## TAX MATTERS

9.1     Treatment of ARM Claims.  For all federal, state and local income tax purposes, all parties (including, without limitation, the Debtors, the Post-Effective Date Debtors, the Litigation Administrator (ARM) and the Claim Holders) shall treat the ARM Claims as being retained by the Post-Effective Date Debtors.

## ARTICLE X
## TERMINATION OF THE AGREEMENT

10.1    Termination With Cause.

(a)    The Litigation Administrator (ARM) may be removed by a majority vote of the Litigation Oversight Committee  for Cause (as defined in Section 0), which termination shall be effective immediately upon notice thereof.

(b)    To the extent there is any dispute regarding the removal of the Litigation Administrator (ARM) (including any dispute relating to any portion of the Litigation Administrator (ARM)'s fees or its professional fees and expenses) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.

(c)    For purposes of this Agreement:

"Cause" shall mean (i) a Person's willful failure to perform his/her/its material duties hereunder (including, without limitation, with respect to the Litigation Administrator (ARM), regular attendance at meetings of the Litigation Oversight Committee or ARM Oversight Subcommittee), which is not remedied within 30 days of written notice specifying such failure in reasonable detail or other material breach of this Agreement that is uncured (to the extent curable) within 30 days of notice of such breach from the Litigation Oversight Committee specifying such breach in detail; (ii) a Person's commission of an act of bad faith, fraud, theft or embezzlement; (iii) a Person's disclosure or use of information in violation of Section 4.19; (iv) a Person's conviction of a felony; (v) a Person's gross negligence, willful misconduct (which shall include failure or refusal of such Person to follow any reasonably commercial instruction of the Litigation Oversight Committee or ARM Oversight Subcommittee issued in good faith), or knowing violation of law in the performance of his/her/its duties hereunder; (vi) a Person's breach of fiduciary duties; or (vii) an unresolved material conflict of interest which cannot be obviated by appointment of a substitute with respect to claims that are the subject of a conflict determination made by the Litigation Oversight Committee pursuant to Section 4.18. For purposes of this definition of "Cause", "Person" shall mean any director on the board of directors of the Litigation Administrator (ARM).

10.2    Termination Without Cause.  The Litigation Oversight Committee may terminate this Agreement without cause upon 90 days' notice to the Litigation Administrator (ARM).  The Litigation Oversight Committee shall not be able to terminate this Agreement without cause until the date that is 18 months following the Effective Date; *provided* that notice of such termination without cause may be provided to the Litigation Administrator (ARM) as early as the date that is the 15 month anniversary of the Effective Date.  If the Litigation Oversight Committee terminates this Agreement without cause, on the date of termination (*i.e.*, 90 days after notice of termination without cause is provided), the Litigation Administrator (ARM) shall be entitled to immediate

payment of all unpaid accrued fees through the date of termination, plus a $1,000,000 termination fee. Following any termination of the Litigation Administrator (ARM) without cause, the Litigation Oversight Committee shall provide the Litigation Administrator (ARM) with reasonable access to information regarding the status of the monetization of any asset that would result in payment, in full or in part, of a Recovery Incentive Fee or Litigation Incentive Fee to the Litigation Administrator (ARM). Notwithstanding the foregoing, the Litigation Administrator (ARM) will continue to serve as the Litigation Administrator (ARM) after its removal other than for Cause until the earlier of (i) the time when appointment of a successor Litigation Administrator (ARM) will become effective in accordance with Section 7.3 of this Agreement or (ii) 45 days after the date of removal.

10.3    Termination Generally. The Litigation Administrator (ARM) shall be discharged at such time as (a) the Litigation Administrator (ARM) has liquidated or (with the prior written approval of the Litigation Oversight Committee) abandoned all ARM Claims, and (b) all distributions on account of Litigation Proceeds attributable to the ARM Claims have been made by the Litigation Administrator. Such date upon which the Litigation Administrator (ARM) shall be discharged shall be referred to herein as the "Termination Date."

10.4    Wind Up Matters. Upon distribution of all Litigation Proceeds related to ARM Claims by the Litigation Administrator, the Litigation Administrator (ARM) shall retain the books, records, and files delivered, created, or managed in connection with the administration of the ARM Claims. The Litigation Oversight Committee may authorize the Litigation Administrator (ARM) to destroy such records and documents no earlier than two (2) years following the Termination Date (unless applicable law requires otherwise or such records and documents are necessary to fulfill the Litigation Administrator (ARM)'s obligations hereunder). Upon the Termination Date, the Litigation Administrator (ARM) shall be deemed discharged and have no further duties or obligations hereunder, except as otherwise specifically provided herein, including to account to the Claim Holders as provided herein and to retain books, records, and files pursuant to this Section 10.4, and the ARM Claims shall be cancelled.

10.5    Tail Period. If the Litigation Administrator (ARM) is no longer engaged as Litigation Administrator (ARM) (unless terminated for Cause pursuant to Section 10.1), the Litigation Administrator (ARM) shall be entitled to prompt payment of the Recovery Incentive Fee and Litigation Incentive Fee that would otherwise have been owed to the Litigation Administrator (ARM) from the monetization of an illiquid asset or cause of action previously managed by the Litigation Administrator (ARM) if a Resolution Event with respect to such asset or cause of action occurs prior to the Litigation Administrator (ARM)'s termination, other than a termination for Cause.[2] Any dispute regarding such right to payment will be resolved in the first instance by the Litigation Oversight Committee, and if a dispute remains, it will be resolved by the Bankruptcy Court. Notwithstanding the above, if a Resolution Event with respect to an asset or cause of action has not occurred prior to the Litigation Administrator (ARM)'s termination (other than for Cause pursuant to Section 10.1), but the Litigation Administrator (ARM) has expended substantial efforts towards the monetization or resolution of such asset or cause of action

---

[2] "Resolution Event" means, as applicable, a settlement agreement, an agreement in principle to settle or otherwise resolve a matter, a judgment or similar court resolution, or substantial completion of a litigation or resolution process that has not yet led to a judgment, similar court resolution, or other resolution.

and such asset or cause of action is subsequently monetized or resolved, the Litigation Administrator (ARM) shall be entitled to request that the Litigation Oversight Committee authorize a payment, in full or in part, of a Recovery Incentive Fee or Litigation Incentive Fee to the Litigation Administrator (ARM) in connection with the monetization or resolution of such asset or cause of action that is the result of the Litigation Administrator (ARM)'s substantial efforts. The Litigation Oversight Committee will have sole and absolute discretion regarding the approval of any such request for payment of a Recovery Incentive Fee or Litigation Incentive Fee, including a determination that no such fee is appropriate.

10.6    <u>Dispute Resolution</u>.  To the extent there is any dispute regarding the removal of a Litigation Administrator (ARM) (including any dispute relating to any portion of the Litigation Administrator (ARM) Fees) and so long as the Chapter 11 Cases have not been closed or dismissed, the Bankruptcy Court shall retain jurisdiction to consider and adjudicate any such dispute.

## ARTICLE XI
## AMENDMENT AND WAIVER

11.1    No amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the interests, rights or treatment of the Claim Holders, (b) adversely affect the payments and/or distributions to be made under the Plan, the Confirmation Order, the MiningCo Order, this Agreement, or the Litigation Administrator Agreement between the Debtors and Mr. Meghji, (c) amend Section 7.1(b) hereof, (d) be inconsistent with the Plan, the Confirmation Order, or the MiningCo Order, or (e) be inconsistent with the purpose and intention of the Agreement to liquidate in an expeditious but orderly manner the ARM Claims in accordance with Treasury Regulation section 301.7701-4(d).

11.2    No amendment, supplement or waiver of or to this Agreement shall adversely affect the interests, rights or treatment of the Litigation Administrator (ARM) without the prior written consent of the Litigation Administrator (ARM).

11.3    No failure by the Litigation Administrator (ARM) or the Litigation Oversight Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to principles of conflicts of law that would require or permit application of the law of another jurisdiction).

12.2    <u>Jurisdiction</u>.  Subject to the proviso below and so long as the Chapter 11 Cases have not been closed or dismissed, the Parties agree that the Bankruptcy Court shall have jurisdiction over the interpretation and enforcement of the Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Administrator (ARM) shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the ARM Claims and

pursue any recoveries in respect of any ARM Claims. Each Party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Until the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; *provided*, *however*, that in the event that the Bankruptcy Court does not have jurisdiction pursuant to the foregoing provision, including after the closing or dismissal of the Chapter 11 Cases, any action to enforce, interpret, or construe any provision of this Agreement will be brought in either a state or federal court of competent jurisdiction in the borough of Manhattan in the state of New York (without prejudice to the right of any Party to seek to reopen the Chapter 11 Cases to hear matters with respect to this Agreement). Each Party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

12.3    Exculpation. Notwithstanding anything to the contrary herein or in the Plan Administrator Agreement, the Litigation Administrator (ARM) Parties shall be exculpated with respect to any potential liability in connection with any actions taken, including distributions, by the Litigation Oversight Committee, the Litigation Administrator, Plan Administrator and any other Litigation Administrator appointed. For the avoidance of doubt, any exculpation relating to the period prior to the Effective Date shall be subject to the same limitations as set forth in the Confirmation Order for exculpation under the Plan.

12.4    Non-Disparagement. Through the date on which this Agreement terminates, the Debtors, the Committee, the Plan Administrator, the Litigation Administrator (ARM), the Litigation Administrator, and the Litigation Oversight Committee (collectively, the "Non-Disparagement Parties") shall not, and shall cause their respective directors, officers, employees, agents, representatives, professionals, and controlled affiliates to not, whether directly or indirectly, (i) make any public statement or any statement to any third party, in each case that is negative or disparaging and is related to Celsius or these Chapter 11 Cases regarding the Debtors, the Debtors' professionals, the Debtors' current directors or employees, the Committee, the Committee's members, the Committee's professionals, the other Non-Disparagement Parties, the professionals or employees of the other Non-Disparagement Parties, the Plan, the bidding process, or the wind down (including any actions taken by the Non-Disparagement Parties as part of the wind down); or (ii) knowingly encourage or induce others to make any statement prohibited in clause (i) of this Section 12.4; *provided* that the foregoing shall not prevent the Non-Disparagement Parties from making any truthful statement to the extent required by Law or a Governmental Authority to disclose or make accessible such information. These mutual non-disparagement provisions shall not apply to any Excluded Party under the Plan.

12.5    Severability. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

12.6    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or electronic communication, sent by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party, (b) the date of personal delivery (or refusal upon presentation for delivery), (c) the date of the transmission confirmation or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

(i)    If to the Litigation Administrator (ARM), to:

Blockchain Recovery Investment Consortium, LLC
7301 SW 57th Court
Suite 515
Miami, FL 33143

Attn: Litigation Administrator (ARM)
Email: christian@gxdlabs.io
        david@gxdlabs.io
        jeff@gxdlabs.io
        pkanade@vaneck.com
        mbabinsky@vaneck.com
        legalnotices@vaneck.com

With a copy to:

Willkie Farr & Gallagher LLP
Brian S. Lennon
Yara Kass-Gergi
787 Seventh Avenue
New York, New York 10019
Email: blennon@willkie.com
        ykass-gergi@willkie.com

(ii)    If to the Debtors, to:

c/o Celsius Network LLC
50 Harrison Street, Suite 209F
Hoboken, New Jersey 07030
Attn: Ron Deutsch

With a copy to:

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
Joshua A. Sussberg, P.C.
601 Lexington Avenue

New York, New York 10022
Email: joshua.sussberg@kirkland.com

– and –

Patrick J. Nash, Jr., P.C.
Ross M. Kwasteniet, P.C.
Christopher S. Koenig
Dan Latona
300 North LaSalle Street
Chicago, Illinois 60654
Email: patrick.nash@kirkland.com
        ross.kwasteniet@kirkland.com
        chris.koenig@kirkland.com
        dan.latona@kirkland.com

(iii)      if to any Claim Holders, to the last known address of such Claim Holders, according to the Litigation Administrator (ARM)'s records;

(iv)      if to a Member of the Litigation Oversight Committee, to the applicable address(es) of such person according to the Litigation Administrator (ARM)'s records.

12.7    <u>Headings</u>.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

12.8    <u>Plan, Confirmation Order, and MiningCo Order</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan, the Confirmation Order, and the MiningCo Order.  In the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan or the Confirmation Order, on the other hand, the provisions of this Agreement shall govern and control. In the event of any direct conflict or inconsistency between any provision in this Agreement, on the one hand, and the provisions of the the MiningCo Order, on the other hand, the provisions of the MiningCo Order shall govern and control.

12.9    <u>Entire Agreement</u>.  This Agreement and the exhibits attached hereto, together with the Plan, the Confirmation Order, and the MiningCo Order, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

12.10    <u>Survival</u>.  Notwithstanding the termination of this Agreement in accordance with its terms, the agreements and obligations of the Parties in Sections 4.19, 7.1, 8.1, 8.2, 8.3, 10.5, and 12.3 shall survive such termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof and thereof.

12.11   <u>Cumulative Rights and Remedies</u>.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity, subject to any limitations provided under the Plan, the Confirmation Order, or the MiningCo Order.

12.12   <u>Meanings of Other Terms</u>.   Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement and the words "herein," "hereof" or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.   The term "including" shall mean "including, without limitation."

12.13   <u>Successors in Interest</u>.   This Agreement shall be binding upon and inure to the benefit of any successor in interest to any one or more of the Debtors, including, but not limited to, the Post-Effective Date Debtors (as limited by the Plan and the Confirmation Order), that shall, upon becoming any such successor be subject to and obligated to comply with the terms and conditions hereof.   The obligations of the Litigation Administrator (ARM) to any one or more of the Debtors pursuant to this Agreement shall also be obligations of the Post-Effective Date Debtors and Litigation Administrator (ARM) to any such successor in interest, including, but not limited to, the Post-Effective Date Debtors.   For the avoidance of doubt, in the event that any Person (including, as applicable, the Post-Effective Date Debtors) becomes a successor in interest to a Debtor, the claims, privileges, books and records and directors, officers, employees, agents and professionals of such Person, to the extent not otherwise subject to the provisions and requirements of this Agreement, prior to such Person becoming a successor in interest to the applicable Debtor, shall not become subject to the provisions and requirements of this Agreement solely because such Person becomes a successor in interest to the applicable Debtor.

12.14   <u>Limitations</u>.   Except as otherwise specifically provided in this Agreement, the Plan, the Confirmation Order, or the MiningCo Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.   The parties hereby acknowledge and agree that nothing herein is intended to, does, or shall be construed to prejudice or harm in any way the rights, remedies or treatment (including any releases, exculpation, indemnification, or otherwise) of any Released Party or Exculpated Party, solely in their capacity as a Released Party or Exculpated Party, under the Plan.

12.15   <u>Further Assurances</u>.   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

12.16   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one

and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

12.17   <u>Authority</u>.  Each Party hereby represents and warrants to the other Parties that: (i) such Party has full corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby; (ii) the execution and delivery by such Party of this Agreement and the performance by such Party of its obligations hereunder have been duly authorized by all requisite corporate action on the part of such Party; (iii) this Agreement has been duly executed and delivered by such Party, and (assuming due authorization, execution and delivery by the other Parties hereto) this Agreement constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms.

12.18   <u>Limited Obligations of the Plan Administrator and Litigation Administrator</u>.  The Plan Administrator and Litigation Administrator are parties to this Agreement solely with respect to those provisions that are directly and expressly applicable to the Plan Administrator or Litigation Administrator. Notwithstanding anything to the contrary herein, the Plan Administrator shall have no duties or obligations under this Agreement other than as set forth in Sections 3.3, 5.1, 5.2, 5.3, 5.4, 5.5, 5.6, 12.3, and 12.4 and no other provisions hereof shall bind the Plan Administrator. Further, notwithstanding anything to the contrary herein, the Litigation Administrator shall have no duties or obligations under this Agreement other than as set forth in Sections 3.1, 4.10(b), 4.14, 12.3, and 12.4 and no other provisions hereof shall bind the Litigation Administrator.

*[Signature pages follow]*

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

BLOCKCHAIN RECOVERY INVESTMENT CONSORTIUM, LLC, AS LITIGATION ADMINISTRATOR (ARM)

By: _____

Name: _____

Title: _____


CELSIUS NETWORK LLC, ON BEHALF OF ITSELF AND ITS AFFILIATED DEBTORS

By: _____

Name:  Ron Deutsch

Title:   General Counsel


PLAN ADMINISTRATOR

By: _____

Name: _____

Title: _____


LITIGATION ADMINISTRATOR

By: _____

Name: _____

Title: _____


[Signature Page to Litigation Administrator and Complex Asset Recovery Manager Agreement]

## **EXHIBIT A**

**Initial Members of the Litigation Oversight Committee**

[*To be filed separately*]

## **Exhibit D**

**Employee Transition Services Agreement (MiningCo)**

## EMPLOYEE TRANSITION SERVICES AGREEMENT

THIS EMPLOYEE TRANSITION SERVICES AGREEMENT (this "Agreement") is entered into as of January [●], 2024, by and between Celsius Mining LLC, a Delaware limited liability company ("Celsius Mining"), and Ionic Digital Treasury Inc., a Delaware corporation ("Ionic" or "Mining NewCo").  Celsius Mining and Ionic are each a "Party" and collectively the "Parties" to this Agreement.

## RECITALS

**WHEREAS**, on July 13, 2022, and December 7, 2022, as applicable, Celsius Mining LLC, a Delaware limited liability company and certain of its debtor affiliates (collectively, the "Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

**WHEREAS**, on November 30, 2023, the Debtors filed the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "MiningCo Motion");

**WHEREAS**, on November 9, 2023, the Bankruptcy Court confirmed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"); and on December 27, 2023, the Bankruptcy Court entered an order approving the MiningCo Motion [Docket No. 4171] (the "MiningCo Order");

**WHEREAS**, on January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");

**WHEREAS**, as part of implementing the Restructuring Transactions, on the Effective Date, the Debtors will transfer the Mining Assets to Mining NewCo or its affiliates pursuant to the Plan, and the Plan Administrator shall effectuate a wind down of the Debtors' Estates; and

**WHEREAS**, pursuant to the Plan, the Debtors, Post-Effective Date Debtors, Plan Administrator, each Litigation Administrator (together with the Plan Administrator, the "Estate Officers"), and/or Mining NewCo as applicable, are authorized to implement the Employee Transition Services Agreement to ensure that employees of Mining NewCo or the Debtors or Post-Effective Date Debtors, as applicable, are available to provide transition services to the Debtors, Post-Effective Date Debtors, Plan Administrator, and/or Mining NewCo, to effectuate the MiningCo Transaction and to wind down the Debtors' Estates, as the case may be, including the sharing of data and information related to the foregoing.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, warranties, covenants, and agreements set forth herein, and intending to be legally bound hereby, Celsius Mining and Mining NewCo hereby agree as follows:

1.      <u>Definitions</u>.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2.      <u>Assumption</u>.  Pursuant to the Plan, on the Effective Date, the Debtors will assume this Agreement.

3.      <u>Cooperation</u>.  Any Estate Officer and Mining NewCo, through an officer designated by the Mining NewCo, shall provide the other Party with reasonable access to the employees that are knowledgeable about the business of the Debtors or Mining NewCo, respectively, and any data or information required to facilitate an efficient wind down process or to supplement Mining NewCo's ongoing business operations.  In furtherance of the foregoing, each of Celsius Mining and Mining NewCo shall provide the other with reasonable access to and use of its systems and services (including any third-party services or applications) required to review or process such data or information in connection with the Orderly Wind Down (including filing any tax returns) or Mining NewCo's ongoing business operations.  The provision of data or information shall be subject to any applicable laws, regulations, or restrictions regarding the provision of personally identifiable information.  To the extent Mining NewCo, or any Estate Officer, as applicable, requests substantial effort of employees of the other Party beyond the reasonable access described in the foregoing sentence (for example, if an employee is requested to serve as an expert witness or to devote substantial, continued efforts to any matter that would interfere with the employee's duties in the ordinary course of his/her employment or otherwise require a material amount of the employee's time), a separate agreement must be executed by the Parties, which may include payment by the other Party for such efforts.  The Estate Administrators may execute supplemental Agreements with individual employees.

4.      <u>Governing Law</u>.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court, and solely in connection with claims arising under this Agreement:   (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or do not have jurisdiction over any Party hereto.

5.      <u>Severability</u>.  It is the desire and intent of the Parties that the provisions of this Agreement be enforced to the fullest extent permissible under the Laws and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this Agreement shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.  Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

6.      <u>Modifications</u>.   This Agreement may be amended by the Parties only by an instrument in writing.  No course of dealing between or among the Parties shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of any such party or such holder under or by reason of this Agreement.

7.      <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third-party beneficiaries of this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity without the prior written consent of the other Party.

8.      <u>Execution of Agreement</u>.   This Agreement may be executed in counterparts (including by means of email in .pdf format), each of which shall be deemed an original, and all of which together shall constitute one and the same instrument, and shall become effective when two or more such counterparts have been signed by each of the parties hereto and delivered to the other party (it being understood that all parties need not sign the same counterpart).

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**CELSIUS MINING LLC**


By: _____

Name: Christopher Ferraro

Title:  Authorized Signatory

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**Ionic Digital Services LLC**


By:    _____

Name:  _____

Title: _____

## **Exhibit E**

**Supplemental Employee Transition Services Agreement (MiningCo)**

## SUPPLEMENTAL EMPLOYEE TRANSITION SERVICES AGREEMENT

THIS SUPPLEMENTAL EMPLOYEE TRANSITION SERVICES AGREEMENT (this "Agreement") is entered into as of [●], 2024, by and among Celsius Mining LLC, a Delaware limited liability company ("Celsius Mining"), Celsius Network LLC, a Delaware limited liability company ("Celsius Network"), and Ionic Digital Treasury Inc., a Delaware corporation, or its affiliates (collectively, "Ionic" or "Mining NewCo").  Celsius Mining, Celsius Network and Ionic are each a "Party" and, collectively, the "Parties," to this Agreement.

## RECITALS

**WHEREAS**, on July 13, 2022, and December 7, 2022, as applicable, Celsius Mining LLC, a Delaware limited liability company, Celsius Network LLC, a Delaware limited liability company and certain of their debtor affiliates (collectively, the "Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

**WHEREAS**, on November 30, 2023, the Debtors filed the *Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050] (the "MiningCo Motion");

**WHEREAS**, on November 9, 2023, the Bankruptcy Court confirmed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "Confirmation Order"); and on December 27, 2023, the Bankruptcy Court entered an order approving the MiningCo Motion [Docket No. 4171] (the "MiningCo Order");

**WHEREAS**, on January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[1]

**WHEREAS**, as part of implementing the Restructuring Transactions, on the Effective Date, the Debtors will transfer the Mining Assets to Mining NewCo pursuant to the Plan and MiningCo Order, and the Plan Administrator shall effectuate a wind down of the Debtors' Estates;

**WHEREAS**, pursuant to the Plan, the Debtors, Post-Effective Date Debtors, Plan Administrator, each Litigation Administrator (together with the Plan Administrator, the "Estate Officers"), and/or Mining NewCo, as applicable, are authorized to implement the Employee Transition Services Agreement to ensure that employees of Mining NewCo or the Debtors or Post-Effective Date Debtors, as applicable, are available to provide transition services to the Debtors, Post-Effective Date Debtors, Plan Administrator, and/or Mining NewCo, to effectuate

---

[1]    On the Effective Date, Celsius Mining and Mining NewCo entered into that certain Employee Transition Services Agreement.

the MiningCo Transaction and to wind down the Debtors' Estates, as the case may be, including the sharing of data and information related to the foregoing; and

**WHEREAS**, Mining NewCo may employ employees who previously worked for the Debtors (individually, a "Former Employee" and, collectively, the "Former Employees") and, for purposes of their employment with Mining NewCo, require access to data and information, including, but not limited to, their respective email accounts and the contents thereof.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, warranties, covenants, and agreements set forth herein, and intending to be legally bound hereby, Celsius Mining, Celsius Network and Employee hereby agree as follows:

1.  <u>Definitions</u>.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2.  <u>Access</u>.  Notwithstanding anything to the contrary in the Employee Transition Services Agreement, Celsius Mining and Celsius Network, as applicable, shall provide any Former Employee with reasonable access to data and information, including his or her respective email account and all contents thereof, for a period beginning on such Former Employee's date of employment with Mining NewCo through and including the earlier of (a) such Former Employee's termination of employment from Mining NewCo and (b) April 30, 2024 (the "Termination Date"). Following the Termination Date, Mining NewCo may request data and information from the Estate Professionals pursuant to the terms of the Employee Transition Services Agreement.

3.  <u>Governing Law</u>.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court, and solely in connection with claims arising under this Agreement:  (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or do not have jurisdiction over any Party hereto.

4.  <u>Severability</u>.  It is the desire and intent of the Parties that the provisions of this Agreement be enforced to the fullest extent permissible under the Laws and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this Agreement shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.  Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

5.      <u>Modifications</u>.  This Agreement may be amended by the Parties only by an instrument in writing.  No course of dealing between or among the Parties shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of any such party or such holder under or by reason of this Agreement.

6.      <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third-party beneficiaries of this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity without the prior written consent of the other Party.

7.      <u>Execution of Agreement</u>.  This Agreement may be executed in counterparts (including by means of email in .pdf format), each of which shall be deemed an original, and all of which together shall constitute one and the same instrument, and shall become effective when two or more such counterparts have been signed by each of the parties hereto and delivered to the other party (it being understood that all parties need not sign the same counterpart).

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**CELSIUS MINING LLC**

By:   _____
Name:   Christopher Ferraro
Title:   Authorized Signatory

**CELSIUS NETWORK LLC**

By:   _____
Name:   Christopher Ferraro
Title:   Authorized Signatory

[Signature Page to Employee Transition Services Agreement]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**IONIC DIGITAL TREASURY INC.**

By: _____

Name: _____

## Exhibit F

**MiningCo Transaction Steps Memorandum**

### Transaction Steps Memorandum

In accordance with the Plan,[1] the Debtors intend to implement and effectuate the MiningCo Transaction.

The parties reserve all rights to amend, revise, or supplement the Plan Supplement, subject to any limitations or applicable consent rights under the Plan, at any time prior to the Effective Date or any other such date as may be provided for by the Plan or by order of the Bankruptcy Court.

In furtherance of the Plan, the MiningCo Transaction shall occur at the time and in the sequence as described herein.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

**I.**  **MiningCo Transaction**

**A.**  *On or before the Effective Date,*

1.  The Plan Sponsor formed Ionic Digital Inc. ("**MiningCo**"), a Delaware corporation.

2.  MiningCo formed Ionic Digital Holdings Inc. ("**Intermediate**"), a Delaware corporation.

3.  Intermediate formed Ionic Digital Treasury Inc. ("**Buyer**"), a Delaware corporation.

4.  Buyer formed Ionic Digital Mining LLC ("**IDM**"), a Delaware limited liability company, and certain other subsidiaries, which themselves have or may form one or more other subsidiaries (such direct and indirect subsidiaries of Buyer, collectively, the "**Buyer Subsidiaries**").

5.  In each case to the extent reflected in the books and records of the Debtors, Celsius Network Europe d.o.o. Beograd ("**Celsius Serbia**"), Celsius EU UAB ("**Celsius Lithuania**"), Celsius Services CY Ltd, Celsius (AUS) Pty Ltd., Celsius Network (Gibraltar) Limited, GK8 Ltd, Celsius Networks Lending LLC ("**Networks Lending**"), Celsius Network IL Ltd. (Israel), and Celsius Network Inc. ("**Network Inc.**") transfer (directly or indirectly as determined by the Debtors, potentially including by way of resolution of Intercompany Claims, distributions, contributions, setoffs, or otherwise) (i) any assets they have that are ultimately being distributed to Holders of Claims, transferred to MiningCo or its subsidiaries, or monetized by the Post-Effective Date Debtors,[2] to Celsius Network LLC or Celsius Mining LLC and (ii) in the case of Celsius Lithuania, certain liabilities to Celsius Network Limited.

6.  Celsius Network Limited transfers 100% of its assets that are ultimately being distributed to Holders of Claims, transferred to MiningCo or its subsidiaries, or monetized by the Post-Effective Date Debtors, to Celsius Network LLC in partial satisfaction of the Intercompany Claim between Celsius Network Limited and Celsius Network LLC.

**B.**  *On or after the Effective Date,*

1.  Prior to any other event occurring on the Effective Date, with respect to certain Intercompany Claims owed by Celsius Network Limited to other entities, parties to such Intercompany Claims enter into documentation and/or amendment of loan arrangements, including pursuant to which certain of such Intercompany Claims may be repaid in U.S. Dollars or the relevant fiat currency of the entity that is owed the Intercompany Claim by Celsius Network Limited.

---

[2] The Post-Effective Date Debtors shall include, at a minimum, Celsius US Holding LLC and Celsius Network LLC.

2.      After Step B.1, on the Effective Date, the Mining Manager contributes the Mining Manager Contribution to MiningCo in exchange solely for the applicable amount of MiningCo Common Stock. MiningCo issues and contributes (i) 100% of the MiningCo Common Stock, less any MiningCo Common Stock to which the Mining Manager is entitled pursuant to the Mining Manager Contribution, and (ii) such Mining Manager Contribution to Intermediate, which then contributes such MiningCo Common Stock and Mining Manager Contribution to Buyer.

3.      After Step B.2, on the Effective Date, Buyer acquires specified assets of Celsius Mining LLC in exchange for MiningCo Common Stock and an assumption of specified liabilities, consistent with that certain Master Conveyance Agreement, by and between Celsius Mining LLC, a Delaware limited liability company, Buyer, and the other parties thereto (the "**Master Conveyance Agreement**"), with such assets transferred to Buyer or a Buyer Subsidiary, as the case may be, as set forth in the Master Conveyance Agreement.  Celsius Mining LLC distributes the MiningCo Common Stock to Celsius US Holding LLC, which then contributes such MiningCo Common Stock to Celsius Network LLC.

4.      Intentionally omitted.

5.      After Step B.3 (continuing after the Effective Date, to the extent necessary), Celsius US Holding LLC and its subsidiaries (such entities, collectively, "**Celsius US Entities**"), as applicable, make distributions (including distributions of cash, Liquid Cryptocurrency, MiningCo Common Stock, and Litigation Proceeds) to applicable creditors in satisfaction of their Claims in accordance with the Plan. With respect to any such distributions made on account of Claims against any Debtors other than Celsius US Entities, either

    a.      Distributions are made directly by the Celsius US Entities to Holders of such Claims in exchange for the creation of a new Intercompany Claim (which may be immediately cancelled), partial satisfaction of Intercompany Claims owed to such entities by the Celsius US Entities, or as an actual or deemed direct or indirect distribution to such other entity, as determined by the Debtors, or

    b.      The relevant consideration is transferred by the Celsius US Entities to such other entity in exchange for the creation of a new Intercompany Claim (which may be immediately cancelled), partial satisfaction of Intercompany Claims owed to such entities by the Celsius US Entities, or as an actual or deemed direct or indirect distribution to such other entity, as determined by the Debtors, and such other entity distributes the relevant consideration to Holders of Claims directly.

6.      After Step B.1, the Debtors may (including, for the avoidance of doubt, on the Effective Date) cancel, release or otherwise address some or all Intercompany Claims in their discretion as provided by the Plan.

7.     Following the Effective Date, on the date(s) specified in the books and records of the Debtors, the Celsius US Entities formally adopt a plan of liquidation for U.S. federal income tax (and applicable state and local) tax purposes.

8.     Following the Effective Date, on the date(s) specified in the books and records of the Debtors, the Debtors other than the Post-Effective Date Debtors formally liquidate (including under applicable local law, to the extent such steps remain necessary notwithstanding the self-effectuating nature of the Plan and with respect to Debtors other than the Celsius US Entities).

9.     Following the Effective Date, to the extent additional proceeds (including Litigation Proceeds) are acquired by the Post-Effective Date Debtors, such additional proceeds are distributed to Holders of Claims by the Post-Effective Date Debtors or the applicable Distribution Agent in accordance with the Plan.

10.    Following the completion of all remaining post-emergence matters, including all distributions to creditors, the Post-Effective Date Debtors wind down and formally liquidate (including under applicable local law, to the extent such local law steps remain necessary notwithstanding the self-effectuating nature of the Plan with respect to the Post-Effective Date Debtors).