The Honorable Martin Glenn,

Chief United States Bankruptcy Judge,

in the United States Bankruptcy Court for the Southern District of New York.

One Bowling Green New York, NY 10004-1408

March 2nd, 2024


Dear Judge Glenn,

I am the sole director of the Jones Asset Protection Trust, a corporate account which was established to safeguard my family's assets. My two young sons and I lived in an apartment for years (until we were doxxed by Celsius), while I saved up for a house down payment. However, because I was earning a miniscule return on my traditional savings account, my sons and I along with many others were enticed to move all our cryptocurrency into Celsius. Alex Mashinsky's false promises of an account that he claimed was "Safe as a Bank," offering high interest rates on savings and low interest rates on loans, was very appealing to me given that I am a single mother of two sons, living on a teacher's salary.

With the Court-approved distribution of liquid crypto and MiningCo stock, I am already suffering a realized loss of -$30,743.79, when compared to my original 7/13/22 Petition Date $113,028.63 net claim value (which includes a $20,016.53 loan offset applied against my loan collateral). This is due primarily to the outright fraud and theft by Alex Mashinsky, and secondarily to the exorbitant cost of an unnecessarily lengthy Chapter 11 bankruptcy case.

To add further insult to injury, without ample warning or notification, the Debtors and their distribution agent Coinbase arbitrarily chose to cut me a USD check for my trust's corporate claim instead of distributing my recovery back in liquid crypto form. I put 5.5 BTC into our corporate account. Consequently, we will now be missing out on all the subsequent market appreciation of those coins which I was entitled to receive under the confirmed Chapter 11 Reorganization Plan. In the 1.5 months since the 1/16/24 Effective Date pricing snapshot, the crypto *I should have received* has appreciated ~30% in market value, or ~$26,500 USD. To put this in proper context, this unrealized gain would have almost been enough to completely "fill the hole" and make me 100% whole, relative to the realized loss on my Petition Date USD claim value mentioned above. As a result of this last-minute and post-Confirmation modification to the Plan distribution agreement, I and thousands of other corporate clients are being treated unfairly and inequitably compared to other unsecured creditors within the same classes (Class 2 Retail Borrower and Class 5 Earn) who held personal accounts instead. I am not an attorney and after losing most of my life's savings to the Celsius bankruptcy, I currently cannot afford to be represented by counsel; however, it is my understanding that unequal intra-class treatment is expressly forbidden under US Bankruptcy law.

On pg 4 of Doc 4298 filed on 1/31/24, the Debtors stated that "*on or around January 19, 2024, the Debtors notified the corporate creditors[5] with the largest Claims against the Debtors that, pursuant to the agreement the Debtors have with Coinbase, **the Debtors can only make distributions in Liquid Cryptocurrency to 100 corporate creditors**. Eligible corporate creditors interested in receiving Liquid Cryptocurrency as part of their distribution on account of their Claims were required to affirmatively request to receive a distribution in Liquid Cryptocurrency **by the stated deadline** ... If a corporate creditor is not selected, or did not receive the initial notice, such creditor will also receive a communication confirming that it will receive its distribution in Cash*". In footnote #5, they defined "***Corporate creditor means any entity that is not an individual** (for example, a corporation, **LLC**, partnership, **trust**, or similar entity) as determined pursuant to Coinbase's policies and protocols.*" This docket filing failed to disclose to the Court the actual stated deadline they gave to these affected creditors, which was a very short and hard deadline of 1/23/24. The Debtors did not send me an email informing me that I was an affected party until Saturday 1/20/24, a day afterwards from when they claim to have sent out this email-only notification. This late notice gave me even less time to respond (i.e. only 2 business days) when compared to the 3 business days afforded to other Celsius corporate customers. Sydney Australia is 16 hours ahead of New York, NY, USA. These emails to corporate accounts were sent on or around late Friday afternoon 1/19 and the hard deadline was Tuesday 1/23, New York time. So realistically a businessperson had Monday and Tuesday to read and respond. 2 days.

At that time, I was on a vacation in Italy pre-scheduled long in advance of this surprise notification from the Debtors. As such, I did not check my corporate email account and see their change in distribution policy until 1/24/24, the day after their self-imposed and unnecessarily tight deadline. Here is a timeline of the events that transpired:

1. I received an email from support@celsius.network sent on 1/20/24 (see Exhibit A) stating the following:
    i) 2nd paragraph: "*Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 'corporate' creditors.*"
    ii) 4th paragraph: "***You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase***".
    iii) 5th paragraph: "*Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots. In order to be eligible to receive cryptocurrency, a corporate creditor must ... Affirmatively request to receive a distribution in cryptocurrency ... by no later than January 23, 2024*".
    iv) There was no indication how many corporate customers had received this email or how the 100 limited slots would be allocated (e.g. first-come-first-serve, largest-accts-demanding-crypto-distribution, random lottery, etc). However, there is a reference in the 7th paragraph to "***one of the top 100***

*corporate creditors that will receive a claim distribution in cryptocurrency"*. To me, Celsius' wording set the expectation that the limited slots would be allocated to the biggest corporate claim accounts who wanted crypto first, and that if one of those creditors instead opted for a USD cash distribution, then his/her slot would be extended to the next person in the account-size-based queue (i.e. if a Top 100 creditor wanted USD and gave up his spot, then it would be given to the next creditor #101 and below who wanted crypto).

2. When I heard about this email via Twitter whilst on vacation on 1/24/24 and read that email for the first time, I promptly responded to Kirkland, saying that I had already informed them on numerous prior occasions of my preference to receive liquid crypto distributions instead of USD (see Exhibit B). Therefore, whether I missed their new deadline or not should be a moot point.

3. After my initial 1/24/24 email to Kirkland, I spent the next 2 weeks stuck in customer support limbo. I did not hear anything back from the Debtors or their distribution agents until 2/8/24, when Stretto contacted me and said ***"You are receiving this email because you will be receiving your Celsius Claim Distribution in US Dollars.*** *Claim distributions made in US Dollars will be distributed by issuing and mailing you a check"* despite my previously conveyed wishes (see Exhibit C).

4. I contacted Stretto to inquire about this decision, but only received a vaguely worded 2nd email from them on 2/17/24 which stated, *"Please take this as a notice that a limited number of corporate creditors have been allocated to receive their claim distribution in cryptocurrency and **you are not one of those selected**"* (see Exhibit D). It did not indicate any specific reason why I may not have been chosen. My subsequent efforts to glean more information about my specific case from either the UCC, White & Case, or CEO Chris Ferraro yielded no results.

5. Two weeks later on 3/1/24, Kirkland finally sent me a response acknowledging that *"We recorded that you would prefer a BTC distribution on November 13, 2023 and January 2, 2024 ... Specifically, because your account is considered a corporate account, you still needed to be eligible to receive a distribution as one of the largest 100 creditors. According to our records, **you were contacted as one of the largest 250 corporate accounts. However, ... your account would not have been in the top 100 corporate accounts who responded requesting a distribution in cryptocurrency**"* (see Exhibit E).

6. Based upon both my numerous direct email communications with Kirkland since May 2023 and the Plan Disclosure Statement they put forth, it was never made clear there was a non-trivial chance that I would not receive part of my recovery in the form of liquid cryptocurrency. The Debtors and Kirkland went to great lengths to assure all creditors that except in the very rarest of circumstances, they would return as much of the estate assets to unsecured creditors in the form of cryptocurrency, even if it might not match the original mix that each creditor had in their accounts. Therefore, this undisclosed and sudden change greatly shocked me (as well as similarly situated peers) to the core.

On pg 174 of Doc 3972 paragraph 8 filed on 11/9/23 The Plan Confirmation order f*iling states: "Until the Deactivation Date, all distributions to ... Account Holders to whom no other Distribution Agent is eligible to make distributions* **shall be made by the Debtors or the Post-Effective Date Debtors**, *as applicable."* The way I interpret this in plain English is if they can't find someone to give me my crypto, then I have a small window of opportunity, to pull my coins from the Celsius app. If this was indeed an option, nobody in the chain of communication that I had with Kirkland, Celsius, Stretto, informed me that this was an opportunity for an available exit with my liquid crypto. I am a lay person attempting to understand convoluted and complicated legal documents, so I honestly don't know if I even had an option to remove my coins by myself from the Celsius app. If so and this wasn't clearly communicated to me by the Debtors, then I will have missed my one chance to withdraw from the app without the help of a third-party Distribution Agent intermediary. It all really depends on how one interprets that small section of vague language buried in the 11/9/23 Confirmation Order.

Coinbase International does not impose any limits on its business accounts that need an agreement with them that need to limit creditor transfers to only the Top 100 Corporate creditors. In a subsequent 3/2/24 email from Kirkland, the Debtors claimed that this policy cap of 100 corporate accounts was imposed by Coinbase *due to the complexities of distributing to corporate entities"* (see Exhibit F).  However, nothing on Coinbase's own website suggests that the corporate accounts are special in any way, or that they don't have the capacity to service a large number of businesses worldwide, which would force Celsius to penalize a small group of creditors, including myself.  It would seem that the Debtors are shifting the blame for this limitation onto another party, but there is no way for us to tell if they are telling the truth or upheld their fiduciary duty to creditors when selecting the best Distribution Agent for the job.  Thus, I must ask "Cui bono?" from this covert agreement to dollarize most corporate clients.  Will the market gain from the liquid crypto recovery I was promised by the Ch 11 Reorganization Plan be returned to the estate's coffers, and then later distributed pro-rata to ALL creditors?  Will these unreturned coins fill the treasury of Ionic Digital, the new Mining Co?  Or will this ill-gotten crypto gain be going into someone else's pocket (e.g. the Ch 11 professionals, Litigation Trust, Plan Administrator, Coinbase, etc)? Involuntary VC forced to seed MiningCo company, now forced to seed estate.

Some corporate accounts wired Coinbase US$1K to apply for a Coinbase Prime account in the hope of getting their liquid BTC ETH back. Others had that fee waived. We are observing behaviour like we saw at Celsius: last-minute plans, haphazard, disorganized, irregular and unfair treatment of creditors. That $1000 fee to open a Prime Coinbase account is not disclosed by the debtors. Is this part of the sealed Coinbase agreement, but should have been disclosed to corporate creditors if it was part of the deal? What is going on?

**What Could the Debtor and Kirkland & Ellis Have Done Better?**

- They could have been fully transparent throughout the entire process, starting from the Plan Disclosure Statement up until the final Effective Date. Instead, they filed Doc 3482 with the Court on 9/15/23, which was a motion to redact and seal their confidential Coinbase distribution agreement. This motion intentionally hid key pertinent distribution details, which were not discussed in the Plan Disclosure Statement but materially affected a small subset of the unsecured creditor base (i.e. international corporate accounts). On 10/6/23, your Honor signed Doc 3726, the order authorizing them to do so.
- Because the Debtors had finalized their Coinbase distribution agreement prior to 9/15/23, they had at least 4.5 months prior to the Effective Date during which they should have alerted me and the other affected individual creditors who were adversely impacted by their secret agreement. In typical Kirkland fashion, they procrastinated until the very last second (i.e. < 2 weeks before the 1/31/24 Effective Date) to spring yet another last-minute surprise on unsophisticated Celsius creditor victims. I have a Master's degree. God help those who can't speak, read or write in English!
- When they were in discussions to make Coinbase their international Distribution Agent and it became known that Coinbase would only accept a total of 100 corporate accounts, the Debtors should have negotiated for Coinbase to accept more (if not all) corporate customers. Once it became clear that Coinbase would not service the majority of Celsius corporate accounts, then the Debtors had an obligation to choose an alternate and more capable distribution agent who could meet the needs of that particular subset. There is no good reason why they couldn't have used Coinbase to handle international personal accounts, while finding a different distribution agent who would be willing to deal with international corporate accounts. The Debtors did not make a good faith effort to ensure all unsecured creditors, including myself, were treated fairly and equitably.
- If the Debtors were unable to find ANY alternative Distribution Agent who could meet the needs of the corporate account holders, then they should have offered an off-ramp via the Celsius app/website, just as they did for the small number of Custody account holders. While there were some withdrawal hiccups for Custody early in the bankruptcy process, those issues should have been remedied by the Celsius support team who were paid in the intervening months before the Plan solicitation vote. Although I don't know the exact number of Celsius corporate accounts, I would expect that it is much fewer in number than Custody personal account holders. Therefore, they should have offered liquid crypto withdrawals for corporate accounts as an option through the Celsius app, rather than force corporate creditors to accept USD via a check if they did not qualify for the 100 slots.

5

**What Would I Like the Honorable Judge Glenn To Consider?**

- Request the Debtors provide disclosure and transparency about the process and the basis they used to choose the specific corporate creditors to fill the 100 slots
- Supply the total number of Corporate Creditors affected
- Produce the number of corporate creditors who were contacted, when those emails were sent and what the total number who replied by the 1/23/24 deadline was.
- Was the only communication to corporate creditors via email or did the creditors receive snail mail also?
- How many of the creditors who replied by the 1/23/24 deadline wanted liquid crypto?
- Where did I personally fall in meeting eligibility requirements (e.g. I was #121 in line to get one of the 100 slots)?
- Creditors are typically not legal experts, they do not have the time to be reading multiple iterations of documents. While I did keep up with the case, the ongoing changes were difficult to keep up with, which is unrealistic and unfair to expect the average person to keep up with each change. When communicating information to creditors, provide timely, detailed and concise information in layman's terms.
- If Coinbase isn't able to on-board one of the 100 chosen accounts, is there a process to offer that to the next person in line? The process is opaque.
- The only way we know what's going on is through the connections we've made in the past 2 years. I'm in touch with numerous corporate account holders in Australia and internationally:
  "This is such an arbitrary process without any transparency. I probably just threw away another $1K and still won't get my crypto. Why is that even limited to 100 accounts? Outrageous!" Dr C
  "There shouldn't be winners and losers." Top 100.
  "I just want everyone to be treated fairly."
  "Fully agree that all claims deserve in kind distribution and not USD. It's just inconceivable that this was even a consideration. Why even do this?"
  "Yes absolutely I totally agree."
  "If someone was good enough to solicit BTC deposits from, surely they're good enough to pay out BTC withdrawals to. Seeing Creditors abandoned and at risk of receiving a further haircut through a USD distribution." Cam Crews

I implore your Honor to consider not just my own personal frustration with the miscommunication and further offence after everything that has happened throughout this bankruptcy. I feel like I am being robbed and betrayed all over again. It feels like I have been duped again because of some deceptive phrasing in several legal documents, even though I trusted the process and the advice of the professionals who I had been emailing over the last several months. At the very least, I hope that everyone impacted by this will be given some transparency and explanations to give us some relief.

I appreciate your time and consideration.

Sincerely,

Frances Jones

## Exhibit A

[Celsius Network] Re: IMPORTANT: Celsius – Option for Corporate Creditors to Elect to Potentially Receive Distribution in Cryptocurrency   5      Jo… /Sent

**Celsius Network**    Sat, Jan 20 at 2:14 PM
From: support@celsius.network
To: 

##- Please type your reply above this line -##

Your request (#1396159) has been updated. To add additional comments, reply to this email.

**Customer Care and Loans Expert** (Celsius Network)
Jan 20, 2024, 03:14 UTC

Dear Jones Asset Protection Trust,

*This communication provides information about the distribution of cryptocurrency to you on account of Claims you may hold in the Celsius Chapter 11 proceedings. Please read the below in its entirety and timely provide Celsius with the information requested to complete the distribution of cryptocurrency to you on account of any such Claims.*

You are receiving this communication because you have a claim (a "Claim") in the Chapter 11 proceedings of Celsius Network LLC and its debtor affiliates ("Celsius" or the "Debtors"), and you are one of the largest "corporate" creditors in this case.

Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 "corporate" creditors. A "corporate" creditor is any entity that is not an individual person (for example, a corporation, LLC, partnership, trust or similar entity). Whether a creditor qualifies as a "corporate" or "individual" creditor depends on Coinbase's policies and protocols.

As you may be aware, distributions pursuant to Celsius' modified Chapter 11 Plan of Reorganization [Docket No. 3577] (the "Plan") will commence on or around the Plan effective date (the "Effective Date"). **You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase**.

Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots. In order to be eligible to receive cryptocurrency, a corporate creditor must both:

- Affirmatively request to receive a distribution in cryptocurrency as described below by no later than **January 23, 2024**; AND

- If you have any Withdrawal Preference Exposure, elect to settle such Withdrawal Preference Exposure by no later than January 25, 2024 pursuant to the separate instructions you have received, and complete the payment for the settlement of the Withdrawal Preference Exposure by no later than January 31, 2024.

Shortly after January 31, 2024, if you are selected to be one of the 100 corporate creditors that will receive a claim distribution in cryptocurrency, you will receive a communication with instructions for opening a Coinbase Prime account. If you are not selected, you will receive a communication confirming that you will receive your distribution in US Dollars, and you will receive specific instruction at a later date on how those funds distributed in US Dollars will be made available.

Please note that if you open a Coinbase Prime account **without** receiving notice that you have been selected to be one of the top 100 corporate creditors who will receive cryptocurrency, this will not have any effect on whether you will be allocated one of the 100 slots.

We are asking for your preference to ensure that each corporate creditor who is using up these limited 100 slots for cryptocurrency distributions actually wants to receive cryptocurrency. If you are indifferent between cash or cryptocurrency, please select cash so that corporate creditors who prefer cryptocurrency can use your slot.

Please review this message in its entirety and inform Celsius by email at CelsiusCreditorQuestions@kirkland.com of your preference by **January 23, 2024**, and we will be in touch with further information and instructions. If you do not contact us to indicate your preference to receive your distribution in cryptocurrency via Coinbase, your Claim distribution will be made in US Dollars, and specific instructions regarding your distribution will be provided to you at a later date.

If you have further questions about any of the above, you may contact CelsiusCreditorQuestions@kirkland.com.

Celsius

Best regards!

7

**Exhibit B**

Re: [Celsius Network] Re: IMPORTANT: Celsius – Option for Corporate Creditors to Elect to Potentially Receive Distribution in Cryptocurrency

From frances███████████com.au
To ████████ & 2 more
24 Jan at 8:15 pm

Dear Kirkland
I am distressed because I contacted Kirkland numerous times in the past 18 months to say that it's is extremely important to me that I am given back my claim in Bitcoin only.
I did not receive this email until now as I am on holidays overseas.
I do not want to receive my claim in USD.
I am happy to open a Coinbase Prime account.

I am Australian so I am required to open a Coinbase account for each of my family's accounts.
I have waited 18 months to have my BTC returned.

Please always use my personal email, this one in important communication to me. I am the sole director of my family's trust account which is called the Jones Asset Protection Trust.

Kind regards
Frances Jones

8

## Exhibit C

Action Required: Prepare for your Celsius Claim Distribution in US Dollars  Jo... /Inbox

From: noreply@cases-cr.stretto-services.com
To: 

Thu, Feb 8 at 9:46 AM

Dear Jones Asset Protection Trust,

You are receiving this email because **you will be receiving your Celsius Claim Distribution in US Dollars.** Claim distributions made in US Dollars will be distributed by issuing and mailing you a check.

**Action required: Prepare to receive your claim distribution**

You will receive a notice in the Celsius app to verify your personal information. This information will be used for your claim distribution. **If your name and address are not up to date, please update your information and re-submit your Government ID.** If the information in your account is already up to date and accurate, no further action is required of you at this time. Please take action to ensure your personal information is up to date and accurate in your Celsius Account **no later than Tuesday, February 13, 2024.**

**If you have questions or need further support**

We *strongly* suggest you refer to the Distributions FAQ if you have questions or need assistance with this process before contacting support. We are currently receiving a large number of inquiries, and we appreciate your patience while we work through each creditor support inquiry.

The latest updates on these Chapter 11 cases are available on cases.stretto.com/celsius or through the Celsius X account (formerly Twitter) @CelsiusNetwork.

**Reminder: The Celsius mobile & web apps are shutting down**

As previously communicated and stated in the Plan, the Celsius platform will not be facilitating your distribution. The Celsius mobile and web apps will no longer be available beginning on or around February 28th, 2024.

As such, we strongly encourage you to review and take personal records of information you may find useful in advance of February 28, 2024, as you will not be able to access the Celsius mobile or web apps after this date.

**Stay Alert**

Remain vigilant for phishing attempts. Celsius, the Official Committee of Unsecured Creditors, or their respective advisors will never contact you directly by phone, text message, or social media to request account or personal information absent an order or on-the-record instruction by the Court.
9

## Exhibit D

 no-reply@cases-cr.stretto-services.com
From: no-reply@cases-cr.stretto-services.com
To:

 Sat, Feb 17 at 12:13 PM

Dear JONES ASSET PROTECTION TRUST,

You are receiving this email as a follow up notice to our previous email communication about electing to receive your claim distribution in cryptocurrency. Please take this as a notice that a limited number of corporate creditors have been allocated to receive their claim distribution in cryptocurrency and **you are not one of those selected.**

**You will receive a separate email with instructions to receive your distribution via US dollars.**

Stretto

**Exhibit E**

 CelsiusDistributions

RE: Re: I want my BTC returned not USD 

From CelsiusDistributions@kirkland.com
To Frances Jones & 2 more
1 Mar at 3:06 am

Hello,

We recorded that you would prefer a BTC distribution on November 13, 2023 and January 2, 2024, and noted at the time that such request was not a guarantee that your request could be accommodated. Specifically, because your account is considered a corporate account, you still needed to be eligible to receive a distribution as one of the largest 100 creditors.

According to our records, you were contacted as one of the largest 250 corporate accounts. However, even if you had responded by the January 23, 2024 deadline, your account would not have been in the top 100 corporate accounts who responded requesting a distribution in cryptocurrency. As Aaron previously stated, Coinbase only agreed to make distributions to 100 corporate accounts.

Best,

———————————————

**KIRKLAND & ELLIS LLP**

300 North LaSalle, Chicago, IL 60654

F +1 312 862 2200

11

**Exhibit F**



**CelsiusDistributions**

RE: Re: I want my BTC returned not USD 

From CelsiusDistributions@kirkland.com
To Frances Jones & 1 more
Yesterday at 11:09 am

Hello,

As we have stated repeatedly, your account was not among the top 100 corporate creditors who responded to our email and elected to receive cryptocurrency on account of their claims. As such, you will receive USD on account of your claims. While you may find this outcome to be unfortunate or even upsetting, Coinbase only agreed to make distributions to 100 corporate creditors due to the complexities of making distributions to corporate entities.

Further, we will not divulge information regarding the creditors who were selected to receive their distribution in cryptocurrency, just like we would not divulge information regarding your distribution to other creditors. We hope you can understand this.

Sincerely,

---

**KIRKLAND & ELLIS LLP**

300 North LaSalle, Chicago, IL 60654

F +1 312 862 2200

**Exhibit G, H, I, J, K – Prior Communications**





**From:** Frances Jones
**Sent:** Friday, November 10, 2023 11:19 PM
**To:** CelsiusDistributions <CelsiusDistributions@kirkland.com>;
**Subject:** Celsius Distributions

Hello

I wrote to you 3 months ago.

Please see the email below.

I'd like as much Bitcoin as possible in our family trust account distribution from Celsius, for tax purposes. Our account is valued over $100,000.

I've lost a lot of money which was for my family to buy a place to live in so I'd appreciate a response asap.

Kind regards

Frances Jones

> On Monday, November 13, 2023, 5:15 pm, CelsiusDistributions <CelsiusDistributions@kirkland.com> wrote:
>
> Dear Frances:
>
> Thank you for your email regarding your preferred distribution composition under the plan. Your preference to receive BTC has been noted.
>
> We are in the process of gathering information to determine our ability to accommodate each individual creditor's accommodation requests regarding the composition of their distributions under the plan. Once we have a better understanding of individual creditors' distribution preferences in the aggregate, we will follow up with more information directly or by filing a notice on the docket.
>
> Sincerely,

On Sunday, August 13, 2023, 1:49 pm, ▮▮▮▮▮
<▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮> wrote:

Hello,
I'm the sole director of my family trust, Jones Asset Protection Trust.
We have an account with Celsius called Jones Asset Protection Trust.

I saw that "Holders of Claims who are projected to receive more than
$100,000 in distributions in Liquid Cryptocurrency may contact the Debtors to discuss individualized accommodations."

That is why I'm contacting you, to see what our options are.

Kind regards,
Frances Jones
Sole Director of Jones Asset Protection Trust