The Honorable Martin Glenn

Re:  Celsius Distribution Treatment for Corporate Accounts

Dear Judge Glenn:

I am a creditor of Celsius Network classified as a corporate entity.  To date, I have not received any information regarding my claim since I voted on the plan in September of 2023.

I am writing to further awareness and request action on your part to closely review the treatment of corporate claims.

There seems to be a decision ratified in the 'Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions' dated 1/31 on treatment of corporate accounts.  As events have continued to unfold, I must bring several points to your attention:

1. Creditors unable to receive Liquid Cryptocurrency as part of the distributions on account of their 'Claims will receive a Cash distribution in US dollars'
   *Impact:  Who/how was this decision made?  In order to deposit funds into Celsius, especially as a corporate entity, the coins almost surely had to come from some other exchange.  This means that all creditors already have the means to receive liquid cryptocurrencies and were verified as entities with appropriate KYC.*
2. All distributions by third party distribution agents / No distribution via Celsius Apps
   *Impact:  The fact that existing rails within the Celsius App were bypassed resulting in this current situation is beyond belief.  Creditors had KYC completed and should have been able to just simply withdraw their liquid crypto allocation out.  The resulting mess of claim codes, corporate entity treatment appears to only have made the situation worse and enriched administration fees.*
3. Notice to corporate creditors with the largest claims that 100 slots are available, where corporate creditors were defined based on Coinbase's policies and protocols (footnote 5)
   *Impact: Adverse impact to corporate creditors not in the 100.  Apparent lack of effort by debtors to arrive at a solution for the entire class of corporate creditors.  This results in a dramatic difference in value of distribution for those who are lucky enough for in-kind via 100 slots in Coinbase.  And why would debtors need to rely on how Coinbase defines a corporate entity?*
4. Arbitrary decision to issue outside of 100 'slots' in cash
   *Impact:  Who, how and why were entities determined for the '100 slots'.  Those outside of the 100 allocated to Coinbase are left in the cold.  There doesn't appear to be any effort to identify multiple options, or even work with a relatively small number of corporate entities to arrive at an outcome.  The resulting decision is different treatment from the class of individual creditors and also those within the class of corporate creditors.*
5. 'If you are unable to receive Liquid Cryptocurrency through your assigned Distribution Agent for any reason, your distribution may be delayed.  If it is not possible for Debtors to find and alternate solution to complete your Liquid Cryptocurrency distribution you will receive your

  distribution in Cash (US Dollars).'

  *Impact: What alternatives were pursued? How are distribution agents assigned? Corporate accounts had the most exposure, and as a result of poor solutioning have the most losses – again, unfair treatment compared to individual creditors and '100 corporate creditors'. With any reasonable effort, Stretto could have verified that corporate creditors have distribution options that would satisfy legal KYC requirements. It appears as though, Coinbase was only willing to accept 100 and no effort was made outside of that. What was the rationale of 100 anyway? Is it a cost/resource/effort limitation at Coinbase? Why did debtors not pursue all corporate entities? Based on where we are now, this was a horrible decision to not have full coverage across corporate accounts resulting in a negative impact on those outside the 100.*

6. Harm and unequal treatment among creditors
  *Impact: corporate creditors not in the 100 Coinbase slots that are scheduled to receive USD are significantly negatively impacted compared to both individual creditors and the 100 creditors who receive in-kind distribution via Coinbase. No one has indicated anything other than USD value from effective date, as a result, we are greatly harmed compared to other classes and no options presented. How can this stand?*

7. Transparency
  *Impact: As I mentioned before, I've had zero contact about my claim since the opportunity to vote on the plan. Inquiries are canned responses, no information about corporate accounts is available other than 'some corporate accounts with get USD'. The assumption from myself and most creditors would always have been the debtors would have attempted in-kind distribution. So, when the plan, docket, and FAQ were released, how would we know that we are, or would be part of the lucky 100? Or if not, that the USD would be assigned to us, and we would be so negatively affected.*

I filed similar questions to Kirkland with the following response dated 3/8/24:

  *We understand your frustration and that you have been waiting.*

  *Unfortunately, we are only able to distribute cryptocurrency to the largest 100 corporate creditors; our agreement with Coinbase only provides for limited slots and we do not have the ability to distribute cryptocurrency to every corporate creditor. Distributing cryptocurrency to corporate creditors is different because the onboarding and compliance process for these accounts is more demanding and involves greater regulatory and compliance requirements, and we have to make all cryptocurrency distributions in a regulatorily compliant way. We simply don't have a distribution partner that can make crypto distributions to hundreds of corporate creditors in a regulatorily compliant way, and it is not feasible to negotiate agreements with dozens of distribution partners (nor are there enough such distribution partners).*

  *You were not selected for one of the limited slots available for a cryptocurrency distribution. Accordingly, you will receive cash, and communications about cash distributions to corporate creditors are forthcoming. The Plan provides that if it is not possible to distribute crypto to a creditor, the distribution will be made in cash. The Plan was approved, and it is entirely fair that some creditors are receiving crypto and some are receiving cash.*

  *We understand that recent market developments have left many creditors frustrated. However, we had to draw a line somewhere to prepare for distributions and calculate how much crypto*

*and cash we needed. The Plan provided that calculations had to be made using the date that was fifteen days before the Effective Date (the Effective Date was January 31, so the date used for determining distribution amounts was Jan. 16).*

*It just so happened that the price of BTC and ETH has increased in recent weeks. The price of BTC and ETH could also have decreased. We cannot constantly be adjusting distributions based on market developments. That is neither logistically possible nor fair.*

*We will look into your specific claim to confirm that you will be receiving cash and that the communication to you is forthcoming.*

As a creditor, it is very frustrating that the existing rails of the Celsius app could not be used, as all creditors by default have the ability to withdraw liquid cryptocurrencies. And, at least US corporate entities must have had corporate entities setup at other exchanges with appropriate KYC. It is also beyond belief that a relatively small number of corporate entities by comparison to individual accounts could not be better managed due to the size of claims. The approach to corporate entities appears as an afterthought, as a result, corporate entities are now severely harmed to other creditors who have received distributions in liquid crypto.

Not only have the debtors' engineered distributions in USD to corporate creditors, but they have also managed to hold the distributions during a massive run up in prices. This not only negatively impacts corporate creditors compared to individual creditors, but also immensely benefits debtors. The Kirkland response above indicates forecasting how much USD needs to be reserved for corporate customers without a distribution agent. **How can we be sure that what should have been reserved liquid crypto BTC/ETH for creditors has in fact been sold to USD for these reserves?** If it has been, debtors are holding onto these funds and harming creditors who could have had access to funds much earlier. If they have not sold the liquid crypto reserved for corporate entities, then they are sitting on a massive gain – again harming corporate entities – and benefiting from these gains.

Several concerns emerge:

- How can corporate entities trust debtors?
- What transparency exists around the liquid crypto status that should have been reserved for corporate entities? Were these coins sold for USD on the effective date, or are they holding the coins to sell when they are able to make distribution in USD? Clearly, there is a strong concern among creditors that
    - If they did not sell, corporate creditors are due the 'in-kind' equivalent based on the USD value change
    - If they did sell for USD, they have been holding onto these funds for well over a month causing corporate creditors to sit on the sideline when USD could have been redeployed
- How were 100 corporate accounts selected? I did not receive any option for Coinbase distribution. Who benefited from this and were there any 'favors' in this group? What criteria was used?
- Have debtors gained by not selling liquid crypto? How would you know?

- What alternatives were pursued outside of Coinbase for corporate entities? I have an option under point #5 above that would be considered regulatory compliant with my same corporate entity. My entity has a corporate account at a US exchange with KYC.
- Why is it not possible to handle a small number of corporate accounts manually to determine a mutually beneficial distribution – providing the corporate entity can prove the transfer is going to the same corporate entity and appropriate KYC has occurred?

I request your prompt review and intervention here to advocate for fairness of corporate entities and a specialized approach that results in 'like' treatment compared to individual creditors, even if there is more administration required. Distributions in USD are simply not acceptable, and we need your advocacy to move forward.

Respectfully submitted,

John Wesner