Your Honor,

I write to you not just on my behalf but echoing the voices of many creditors impacted by the Celsius Network bankruptcy proceedings. Our journey through this process has been fraught with challenges and disillusionment, particularly around the timing and execution of the bankruptcy refinance and loan distributions, which we perceive was strategically planned as a way to potentially extract more value from us, loan creditors.

- The 89-day window before initiating bankruptcy proceedings to catch the lows of the market in a bet for clawbacks against creditors.
- Delays in distributing funds to loan creditors , extending far beyond the execution date and without proper distribution of funds to the refinancing companies.

Due to the effective price, this delay occurs while the market prices of BTC and ETH increase, which exacerbates our losses.

Speaking for many, the process has left us deeply jaded with the "justice" system, revealing a harsh truth: financial might equates to protection and preference. It's evident in the way institutional lenders received their dues in full, while retail creditors like us scramble for what feels like the remnants. This disparity has not only eroded our trust in the system but also highlighted the inefficiencies within it. Promises of expedited proceedings from the court have dissipated into a protracted two-year ordeal seemingly benefiting only the new company and those within the court system, with no incentive to expedite the process as cryptocurrency prices rise.

As a creditor whose majority of funds were in loans, I sought to minimize risk, only to find myself inadvertently assuming the greatest risk among the creditor categories. The irony does not escape us that in seeking safety, and not being involved in earn, we found ourselves most vulnerable.

Our plea to the court, to Celsius, and to the newly formed company is straightforward: clarity and transparency regarding the state of our loans.

**Questions**

- Is the price of the loan refi when the new-co sends over the loan information to the refi companies?
- if so, is it because they are incentivized to prolong it to catch the height of the market in the same way Celsius caught the lows of the market when they filed for bankruptcy (89 days and 3x the price currently)?
- If users were to opt out of the refi because of increasing prices, are said users who then defacto setoff their loans obligated to the $42,972 ("Distribution Cryptocurrency Conversion Table") BTC price because of "equal" treatment among creditors?
- Is it possible to have the refi price of ("Distribution Cryptocurrency Conversion Table") $42,972 due to the unexplainable extended timeframe of the distribution of loan information sent to the refi companies?

Each passing day without clear communication serves to further the financial detriment to loan creditors, exacerbating our losses and deepening our disillusionment.

Drawing an analogy to the 2007 Miami Dolphins' late-season victory, who were 0-15 until that point, we, the loan creditors, find ourselves yearning for a semblance of hope—a win amidst a series of overwhelming losses. These losses span from legal ambiguities and preferential treatments to substantial fees and *now* a potential market price discrepancy, painting a dire picture of our current standing.

**Summary of losses**

- Celsius hiring an all-star team of lawyers to "protect" us from our money *with* our money
- Ambiguity of ownership of collateral, for retail
- Undercollateralized institutional loans receiving 100% of their loans, in-kind
- Not receiving the loan collateral in kind, for retail
- Receiving the petition date prices which were at the bottom of the market
- Loans bullied in mediation
- 300m in bankruptcy fees
- And now potentially, because of either incompetence or malevolence, another potential haircut to the present-day cryptocurrency prices, which are presently the all-time-highs. Loan creditors are essentially short the market.

As we approach the final stages of this bankruptcy case, our situation closely mirrors that of an undaunted sports team, winless and facing the last game of the season. With dwindling options, we are left to hope for a miraculous turnaround, akin to a last-second Hail Mary pass—a bid to avoid a fate similar to the 2008 Detroit Lions, remembered for their unprecedented winless season. In this analogy, we, the creditors, cling to a sliver of hope that justice and fairness will

prevail, providing us with a much-needed resolution in what has been a protracted and challenging ordeal. This is a plea for justice not just in name, but in action.

Respectfully,

Christopher Robinson