Dear Esteemed Judge Glenn,

I pen this missive with a profound sense of urgency regarding the post-petition performance of the debtors and the subsequent distribution to creditors in the Celsius Case No. 22-10964. As an active participant throughout the proceedings, I have tirelessly represented the interests of the creditor body post-reorganization. My involvement spans the steering committees for both custody and loans ad hoc groups, and my claims encompass custody, loans, and earn categories. It is with a heavy heart that I implore the court to intervene on behalf of the creditors, as we find ourselves bereft of alternatives.

Regrettably, there has been a disconcerting display of incompetence in the period following emergence. The reorganization plan became operative on January 31st, and creditors anticipated prompt distributions. Despite the debtors' assurances of readiness, it was apparent that their haste was motivated by a desire to secure incentive bonuses for certain highly compensated employees.

Yet, over a month has passed, and I am inundated with messages from distressed creditors who have yet to receive their distributions. The accounts are deeply troubling: creditors receiving incorrect redemption codes from Paypal, Coinbase users facing insurmountable KYC barriers, and numerous individuals locked out of their accounts. Countless complaints have emerged, and despite the debtors' assertions that initial distributions are complete, an ever-growing number of voices are claiming to have received nothing. The court docket overflows with creditors pleading for assistance—how can these disparate realities coexist?

The situation extends beyond these issues. The debtors unilaterally chose to liquidate all corporate accounts, excluding only the major cash holders. Now, five weeks post-emergence, these creditors have yet to see their wire transfers. In a stable market, this might be a minor concern. However, the rise in cryptocurrency prices since the effective date exacerbates the problem. When the plan was implemented, BTC and ETH were priced at $42,973 and $2,577, respectively. As of 3/7/24, BTC hovers around $67,000 and ETH at $3,900, representing a 55%

and 51% increase, respectively. After suffering losses due to Mashinsky's actions and enduring the lengthy bankruptcy process, these creditors are now subjected to additional financial losses. Is such a scenario just and equitable, especially given the arbitrary differentiation between corporate creditors?

Similarly, the plight of the borrowers in this bankruptcy has been one of disproportionate disadvantage. The borrower ad hoc group endured a taxing mediation with Judge Wiles, only to settle for less than anticipated. The subsequent collapse of the Fahrenheit plan rendered all negotiated settlements moot. Nonetheless, borrowers retained the option to refinance their loans, albeit under suboptimal conditions.

Some borrowers, however, remain vulnerable to market fluctuations due to the financial mechanics of a refinanced claim. In such scenarios, a borrower's excess collateral claim is subject to the same reductions as earn claims and fixed at the effective date's pricing. The principal value of the refinance is dynamic, fluctuating with the market prices of BTC or ETH at the time of refinancing. Similar to the corporate accounts, these delays and the surge in asset prices result in additional financial detriments to borrowers seeking to refinance. The principal now returns merely half the BTC or ETH quantity compared to the effective date. This represents the erosion of individuals' life savings, left to the whims of those consistently failing to meet deadlines.

I cannot be certain that this plea will capture the court's attention, but on behalf of all those affected by Celsius' plight, I beseech you to mandate the debtors and the plan administrator to rectify this situation and restore order to this chaos.

I extend my gratitude for your consideration.

Respectfully,

Obey Tse