Hearing Date/Time: April 24, 2024 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: April 17, 2024 at 4:00 p.m. (prevailing Eastern Time)

OFFIT KURMAN, P.A.  
Jason A. Nagi  
590 Madison Avenue, 6th Floor  
New York, NY 10022  
Telephone: (212) 545-1900  
Jason.nagi@offitkurman.com  

OFFIT KURMAN, P.A.  
Joyce A. Kuhns (*pro hac vice*)  
1954 Greenspring Drive, Suite 605  
Timonium, Maryland 21093  
Telephone: (410) 209-6463  
Jkuhns@offitkurman.com  

*Counsel to Ad Hoc Group of Earn Account Holders*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X  
In re:                                                                 :    Chapter 11  
                                                                              :  
**CELSIUS NETWORK LLC, et al.**[1]                     :    Case No. 22-10964 (MG)  
                                                                              :  
                              Debtor                              :    Jointly Administered  
---------------------------------------------------------------X  

**MOTION FOR RECONSIDERATION BY THE AD HOC GROUP OF EARN ACCOUNT HOLDERS PURSUANT TO FED. R. BANKR. PROC. 9023 AND 9024 OF MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART ITS INITIAL SUBSTANTIAL CONTRIBUTION APPLICATION**

The Ad Hoc Group of Earn Account Holders (the "**Ad Hoc Earn Group**"), by and through its counsel, Offit Kurman, P.A., files this Motion for Reconsideration Pursuant to Fed. R. Bankr. Proc. 9023 and 9024 (the "**Motion to Reconsider**") of Memorandum Opinion Granting in Part and Denying in Part its Initial Substantial Contribution Application (the "**Memorandum Opinion**"), and, in support, states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

I.      **PRELIMINARY STATEMENT AND REQUESTED RELIEF**

1.      The Ad Hoc Earn Group fully recognizes that awards for substantial contributions are rare and reserved for exceptional circumstances. It appreciates that in granting the Ad Hoc Earn Group an award of $101,020.94 in its Memorandum Opinion this Court expressly acknowledged that "Bringing order to the prior chaos of the Earn constituency, and resolving the Class Claim with the Debtors is no small feat, and as such, the Earn Group provided a substantial contribution to the cases." Memorandum Opinion, ¶ 37. However, the critical and distinguishing role of the Ad Hoc Earn Group, unlike that of the Custody and Withhold Groups, did not end on October 2, 2023, the date for commencement of the Confirmation Hearing and the deadline for submitting substantial contribution applications. Anticipating that the road to the Effective Date would not be straight or smooth, the Ad Hoc Earn Group specifically requested in its Application that it be permitted to supplement through the Effective Date up to $101,020.94. *See* Application of Ad Hoc Group of Earn Account Holders Pursuant to 11 U.S.C. §§ 503(b)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution (the "**Initial Application**"), ¶ 26. While the Court acknowledged the request to supplement in its Memorandum Opinion at page 35, it did not rule on it. The Ad Hoc Earn Group believes that it played an unusual and necessary continued role in smoothing the administrative path and overcoming key hurdles through the Effective Date, which eventually occurred on January 31, 2024.

2.      Therefore, the Ad Hoc Earn Group reiterates its request to supplement its Initial Application for the period October 2, 2023 through January 31, 2024 in the amount of $62,413.00. A copy of unredacted invoices of Offit Kurman, P.A., counsel to the Ad Hoc Earn

Group, broken out by timekeeper, task, hourly rate for timekeeper and total time per task for this time period is attached hereto as **Exhibit A**.

## II. JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The statutory predicated for the relief requested herein are 11 U.S.C. § 503(b) and Federal Rules of Bankruptcy Procedure 9023 and 9024.

## III. LEGAL ARGUMENT

### A. Standard.

4. Sections 503(b)(3) and (4) of Title 11 of the United States Code (the "**Bankruptcy Code**") permit a debtor to reimburse a party's reasonable professional fees and expenses incurred while making a substantial contribution to a bankruptcy case. *See, e.g., In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).

5. As the Court noted in its Memorandum Opinion:

> Courts in this Circuit have considered the following factors in determining whether the "substantial contribution" test has been satisfied: (i) whether the services in question were provided to benefit all parties in the case (not merely a class or creditors or interest holders), (ii) whether the services conferred a direct, significant and demonstrably positive benefit to the estate, and (iii) whether the services were duplicative of services performed by others (such as estate professionals). *See, e.g. In re Synergy Pharms Inc., 621 B.R. at 609* citing *Trade Creditor Grp. v. L.J. Hooker Corp. (In re Hooker Invs., Inc.)*, 188 B.R. 117, 120–21 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 349 (2d Cir. 1996)). As Judge Garrity explained in *Synergy Pharmaceuticals*, "services that warrant a substantial contribution award 'generally take the form of constructive contributions in key reorganizational aspects, when but for the role of the

3

> creditor, the movement towards final reorganization would have been substantially diminished.'" *In re Synergy Pharms., Inc.*, 621 B.R. at 610 (citing *In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *2 (Bankr. S.D.N.Y. Aug. 5, 2014)).

Memorandum Opinion, pp. 21-22.

6. Thus, "[a] substantial contribution reimbursement, rather, is 'reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate.' *In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 727 (Bankr. E.D.N.Y. 1996) (citing *In re Best Products, Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994))." Memorandum Opinion, pp. 20-21. The Ad Hoc Earn Group's continued, active participation was requested in certain key instances by the Debtor and the Official Committee of Unsecured Creditors (the "**Committee**") as more fully set out below. It therefore believes it is entitled to a substantial contribution award for certain services it provided for the benefit of the estates for the period October 2, 2023 through January 31, 2024 in the amount requested.

### B. The Earn Ad Hoc Group Provided Substantial Contribution for the Benefit of the Estates without Duplicating Efforts of Others through the Effective Date.

7. It is uncontroverted that the Earn creditors consist of approximately 600,000 former account holders, by far the largest creditor constituency in these cases. Nonetheless, a hallmark of the Ad Hoc Earn Group has been a commitment to parity of treatment and building consensus among creditors. This attribute was put to the test, post-confirmation, in betterment of the larger estates when the SEC announced it would not approve the pre-clearance letter for the NewCo transaction, but would not require pre-clearance for the registration of a stand-alone MiningCo entity, creating risk of significant delays in emergence and distributions, with the considerable attendant administrative costs of such delays.

4

1. **Facilitation of Wind Down and StakeHound Settlement.**

8.   After the SEC announcement, the Ad Hoc Earn Group was convened with the Debtors and the Committee to discuss the toggle to wind down contemplated under the Plan and the least disruptive path forward. Because of certain subsequent events that occurred after approval of the Disclosure Statement (*e.g.,* streamlining the claims process through the Class Action Settlement, entering into the Core Scientific settlement and acquisition of the Cedarvale facility, and liquidation of certain illiquid assets), it was apparent further market testing and adjustment of MiningCo fees and its management structure was essential to garner continued creditor support in wind down. The Ad Hoc Earn Group was immutable that the MiningCo Transaction must be cost-neutral to creditors.

9.   The Ad Hoc Earn Group, assisted by counsel, carefully reviewed Exhibit A to the Confirmation Order of the confirmed Plan at pages 47-48, which included a chart setting out the "Plan Changes Between NewCo and Orderly Wind Down Transactions" in the event of a pivot and the Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief [ECF No. 4050] and the supporting Declaration of Robert Campagna ("**Campagna Dec.**") [ECF No. 4051]. After such review and following consultation with the Committee, the Earn Ad Hoc determined that the proposed MiningCo Transaction fit squarely within the four corners of the Orderly Wind Down Changes articulated in the confirmed Plan. It agreed with the Debtors and the Committee that no resolicitation of votes should be required. As noted, to support the MiningCo Transaction, the Ad Hoc Earn Group insisted that the MiningCo Transaction be cost-neutral. This result was in fact achieved. *See* Campagna Dec, Exhibit A - Illustrative Waterfall.

10. The Ad Hoc Earn Group, which had already assisted the Debtors and Committee in garnering 98% support for the Plan, was enlisted to create consensus in support of the MiningCo Transaction to minimize creditor objections and avoid further delay.

11. On December 14, 2023, the Ad Hoc Earn Group filed its Statement of Position and Support Exit and Reservation of Rights regarding the Debtors' and Committee's Joint Motion for Implementation of the MiningCo Transaction [ECF No. 4096]. A review of the Amended Agenda for the December 21, 2023 hearing [ECF No. 4150] shows that the primary objections were narrowed down to those of the United States Trustee and the Ad Hoc Borrower Group reflecting the concerted efforts of the Debtor, the Committee, and the Ad Hoc Earn Group to narrow objectors, if possible. In fact, counsel for the Ad Hoc Earn Group spoke with counsel to the Ad Hoc Borrower Group to ascertain if a reasonable compromise could be reached, to no avail.

12. The Committee also actively sought the Ad Hoc Earn Group's public support of the Debtors' proposed settlement with StakeHound SA. *See* Settlement Motion, at ECF No. 105, Adv. Proc. 23-01138(MG). Through a series of conversations with Committee counsel regarding the *bona fides* of the settlement and after review of related unredacted settlement documents, the Ad Hoc Earn Group determined the agreed settlement was clearly in the best interest of creditors as it would result in a return of approximately $100M in liquid cryptocurrency to the estates for disbursement to creditors and avoid the considerable cost of multi-jurisdictional litigation. Accordingly, the Ad Hoc Earn Group filed a Statement in Support, at ECF No. 4096. Given the Ad Hoc Earn Group's success in corralling support for the MiningCo Transaction, the Committee clearly believed public support of the Ad Hoc Earn Group to this settlement was important to signal its benefits to the overall creditor body.

### 2. Negotiation and Documentation of Final Board Observer Agreements and Litigation Oversight Agreements.

13. Once the MiningCo Transaction was approved by the Court [ECF No. 4151], the Ad Hoc Earn Group's attention shifted back to post-confirmation governance issues so critical to creditor support both in connection with confirmation and emergence. It is not surprising that the board observer roles were held by former Earn creditors as the Earn creditors constituted the largest creditor constituency by far. That said, the importance to the creditor body of representative voices on both the MiningCo board and the Litigation Oversight Committee cannot be overstated in garnering creditor support for the Plan. In the period leading up to the Effective Date, the Ad Hoc Earn Group, through counsel, proceeded to finalize with Committee counsel changes acceptable to creditors to the Board Observer Agreements and the Litigation Oversight Agreements to ensure the smoothest administrative turnover possible and resolution of open oversight issues for the benefit of all creditors who would hold stock in MiningCo and share in litigation recoveries.

### 3. Distribution Clarifications.

14. The Ad Hoc Earn Group has played a unique role from its inception in facilitating communication with the larger creditor body and the Debtors. By way of example, the Ad Hoc Earn Group and its counsel devoted significant time educating the creditor body on the intricacies of the Plan ballot, as the ballot was extremely complex. As the Debtors headed toward the Effective Date, it became apparent through numerous communications from creditors to the Debtors, the Committee and the Ad Hoc Earn Group that additional communications were needed to ensure timely elections on cryptocurrency preferences were communicated by eligible creditors and that all creditors followed required protocols to facilitate commencement of distributions. In cooperation with the Debtors and the Committee, the Earn Ad Hoc collated and

turned over frequently asked questions ("**FAQs**") from the creditor body, so that FAQs could be formulated and disseminated pre-Effective Date. While the Ad Hoc Earn Group continued to facilitate communications between the post-Effective Date Debtors and Plan Administrator representatives and creditors, the Ad Hoc Earn Group is not seeking any additional award post-January 31, 2024, the Effective Date.

## IV. CONCLUSION

WHEREFORE, the Ad Hoc Earn Group requests that the Court enter an order substantially in the form attached hereto as **Exhibit B**: (i) granting its Motion to Reconsider; (ii) awarding as a supplemental substantial contribution to the Ad Hoc Earn Group, through its counsel Offit Kurman, P.A., the amount of $62,413.00 for services for the period October 2, 2023 through January 31, 2024; (iii) authorizing the post-Effective Date Debtors to pay Offit Kurman, P.A. the substantial contribution award of $62,413.00; and (iv) granting such other relief as may be just.

Dated: New York, New York
       March 14, 2023

Respectfully Submitted,

Jason A. Nagi, Esq.
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 545-1900
Jason.nagi@offitkurman.com
         -and-
/s/ Joyce A. Kuhns
Joyce A. Kuhns (*pro hac vice*)
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
Telephone: (410) 209-6463
Jkuhns@offitkurman.com

*Counsel to the Ad Hoc Group
of Earn Account Holders*