March 19, 2024

Group of Loan Creditors (Borrowers)

Honorable Judge Glenn
One Bowling Green
New York, NY 10004-1408

Dear Judge Glenn,

We hope this letter finds you well. We write on behalf of retail creditors with loans in the Celsius bankruptcy proceedings and are writing to raise **significant concerns** regarding the refinancing and distribution process and treatment of these retail accounts / borrowers.

The Borrower Ad hoc attended a grueling mediation with Judge Wiles and left with a settlement in place that was far and away less than what we were all expecting. Then the Fahrenheit plan fell apart and all that was negotiated for was lost. Fortunately, the borrowers maintained the ability to refinance our loans, even if the circumstances were less than ideal.

The borrowers are however subject to market volatility because of the financial aspects behind a refinanced claim. In a refinance scenario, a borrower's excess collateral claim (i.e. amount of collateral minus the principal amount) is given the same haircut as earn and then locked in at effective date pricing.

The second portion of the refinance (the principal value) is dynamic in nature and based on the market price of BTC or ETH at the time of the refinance (i.e. third-party lender pays Celsius the principal portion on behalf of the borrower and then Celsius goes out into the open market to acquire the BTC or ETH). Like the corporate accounts, these delays, and the subsequent run up in asset price is a further haircut to refinancing borrowers.

The principal portion **currently returns close to HALF the amount of BTC or ETH that it would have returned at the effective date**.

1

An example:

- 100.000 USD principal
- 10 BTC as collateral
- Refinancing at effective date prices of 42.973 USD/BTC equals to 2,559 BTC to be returned to the lender for the principal
- Refinancing at market price e.g. 73.734 USD/BTC (last week) equals to 1,491 BTC to be returned to the lender for the principal.
- **That is 41,7% less** equaling to 1,068 BTC or 78.747 USD at last week's high.

Not to mention the fact that our assets at last week's high are 370,87% more worth than the petition date prices we are being paid for them. Who gets to keep the upside?

This is people's life savings evaporating before our very eyes; left at the mercy of those who have yet to find a deadline they did not miss.

The main expectation was that the refinance process would take place at the effective date. The debtors stated that "The Plan further provides that the Debtors will take commercially reasonable efforts to facilitate third-party refinancing or modification of Retail Borrowers' loans (the "Refinancing Election")".

By ways of summary the borrower group is witnessing a major disparity in the criteria for refinancing, distribution, and settlement being applied across this creditor class, also compared to other classes. A breakdown of the disparities:

1. We are requesting equal treatment in same class of creditors, the borrowers class. The borrowers that elected to pay their loans, were able to do it the period of January 21st to January 26th when the average price of BTC was 43000k$. Over 7 weeks from that period and the borrowers that elected to refinance, are still left in the dark

2. Some creditors have received their settlements, some only partially and some not at all with almost no communication options with the debtor.

3. Some are being forced to accept USD and not crypto as the plan laid out, which for some can have severe tax consequences.

4. Some creditors are being processed at effective date prices whilst others will be processed at market prices. Effective date prices were on January 16th. Market prices for the borrowers that elected to pay their loan was in the period of January 21st to January 26th at 12PM in the day of the payment
   a. Debtor, post plan approval, changed refinancing from effective date to market prices under a timeline that they control.
      That decision alone has cost refi loan creditors another almost 50% haircut on their

2

principal.

5. The supposed refinancing date has now been pushed back further without communication on the motives and with no proposal on how to remedy the consequences.
6. The upside of increasing prices in crypto stays with the debtor despite the assets creating the upside belonging to the creditors.

7. The 5% increase for us voting in favor of the plan and opting into the class claim was not added our total claim value. This should be fixed in the future and it should not affect in any way the refinance process timeline.

In essence above means that borrowers with refi have gotten a much lower recovery than earn and borrowers that paid pack themselves in February contributed by more than 7 weeks delay that is 100% the debtor's fault. With each passing day, Celsius is having to give up less and less crypto for the dollarized principal purchase. This refinance process was planned and discussed months in advance since last year during the mediation. There was no reason to be delayed for so long into this process.

A recovery for same creditor class should not be subject to whether choosing a third party or paying back yourselves, or a delay that is the debtor's fault.  This is why effective prices are used, and they already use the effective prices on the excess collateral part. Should be the same on the principal buyback part as well.

Furthermore, are we hearing that the UCC committee has been stalling the process because they are not content with the refinancing terms. This has not been substantiated and we are not kept in the loop by the debtor.

This discrepancy in treatment based on effective or market date has created an unfair disparity among creditors, where some have the option to benefit from cryptocurrency appreciation while others are told we will receive US Dollar checks and wires, and if crypto, substantially less.

Furthermore, are many of us being left over two months past the effective date without access to our funds. During this time, the value of Bitcoin (BTC) and Ethereum (ETH) have nearly doubled, resulting in tremendous additional losses for the creditors. Especially concerning is Kirkland & Ellis' assurance that those with individual accounts who were unable to receive distributions in-kind would be compensated with USD based on the market value of BTC and ETH, but now ending up to receive effective date value (which is significantly lower). Also worth noting, Kirkland & Ellis changed our distribution to USD and said they sold our cryptocurrency, but the recent docket filing states they have to change banking partners, so they currently have no way to make these distributions.

An additional remark. Individual accounts were established with the same intentions as corporate accounts, reflecting our belief in fair treatment and equal opportunity. Just like corporate account holders, we trusted our assets with Celsius. Many of the individual accounts we represent are accounts with retirement funds, aimed at safeguarding our financial futures. It is important to note that these

3

types of individual accounts do not have any type of insurance, meaning losses cannot be claimed via insurance. Hence, we assert that all creditors, regardless of account type, have the right to be treated the same. The current disparity in distribution methods undermines the principles of fairness and equality.

We urge the court to assess and correct this situation promptly. One **easy to implement solution** is to deal with all borrowers at effective day prices or at least the average market prices during the period of January 21st to January 26th at 12PM in the day of the payment applied to the borrowers that elected to pay their loan was in the period and when refi was supposed to take place.
This gives about the same equal treatment / collateral recovery of all borrowers (same creditor group) and means there is no longer a punishment for those that picked refi instead of paying back themselves. It also means we do not loose coins due to a delay that is Celsius fault.
If this cannot be changed for this round of distribution / refinancing then add it to the second round of distribution together with the additional 5%.

We further understand the purpose of Kirkland & Ellis having retained substantial funds for issues exactly such as this: **to ensure equal and fair treatment for all creditors**. The Debtors failed to use reasonable judgment to remedy this issue, especially when they were given $70MM for the wind down process to ensure uneventful distribution to the creditors.

On behalf of all of us, we trust you will rule in favor of equitable distribution.

Thank you for your attention to this matter.


Sincerely,

Christian Funck on behalf of:

A.S.T.
Andrew Oh
Aswath Suresh
Brian Barnes
Brian Green
Darius Gheorghe
Fernando Javier Andres Rutia
Hayden Smith
Hongguang Wu
Housam Jarrar
JC van Niekerk
Jean Goldi Horta Shvarzblat

4

Julius Hudec

Jonathan Cantor

Jordan Siff

Joshua Clark

Marek Vesely

Maria Teresa González (Ibertrade Representaciones SL, ES)

Mathieu Boko

Oliver Pausch

Robert Sieg

Roman Julian Feola

Rory Breen (Bree IT Solutions LTD, UK)

Roy Berg

Ryan Runchey

Simon Dixon

Tan Chye Teck

Timo Latvala

Uri Eran

… and many more we could not get hold of before deadline.