# Electronic ballot Summary

| Debtor | District |
|---|---|
| Celsius Network LLC, et al.<br>22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| EMERSON TORRES USH INC<br>Emerson Torres | Yes | 528 Palisades Dr # 530, 530<br>Pacific Palisades, CA 90272<br>United States | Draft Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

COPY

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.       On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.       On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.       On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.       The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.       The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than $29,203.48, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.       The Administrator has asserted that the Preference Liability of the Settling Party is no less than $248,237.24, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]   On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]   The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of $34,132.62 U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

<u>SETTLEMENT TERMS</u>

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than 5:00 pm Eastern time on the date that is seven (7) days after the date hereof (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of $34,132.62 in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:

Bank Name: Wells Fargo<br>
ABA/Routing Number: 121000248<br>
Swift Number: WFBIUS6S<br>
Account Number: 4122023377<br>
Account Name: Wells Fargo Clearing Services, LLC<br>
Further Credit: Celsius Network LLC 7333-2949<br>
Memo: The name on your Celsius account

3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**


By: _____


**Settling Party**


By: /s/ Emerson Torres


Date Completed: 03/20/2024 4:33:03 PM

8"