**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
         sam.hershey@whitecase.com
         jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to Mohsin Y. Meghji as
Litigation Administrator and Ionic Digital Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**JOINT OBJECTION BY LITIGATION ADMINISTRATOR AND IONIC DIGITAL INC.
TO JASON VOELKER'S MOTION FOR LEAVE TO FILE ADVERSARY COMPLAINT**

---

[1] The "Post-Effective Date Debtors" in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of the Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

AMERICAS 126824084

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| FACTUAL BACKGROUND | 2 |
| ARGUMENT | 7 |
| I. The Plan Enjoins iCapital and Mr. Voelker from Pursuing an Untimely Adversary Proceeding in Connection with Purported Prepetition Claims and iCapital's Proof of Claim Has Been Expunged Pursuant to the Terms of the Plan and Confirmation Order | 7 |
| II. Equitable Tolling Does Not Apply | 10 |
| III. Other Relief Sought in the Motion Should Be Denied | 12 |
|     A. Granting of the Motion Would Prejudice the Post-Effective Date Debtors and Their Estates | 12 |
|     B. The Court Should Deny the Alternative Relief Sought Concerning Dischargeability | 13 |
| RESERVATION OF RIGHTS | 14 |
| CONCLUSION | 15 |

AMERICAS 126824084

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.Q.C. v. United States*,
    656 F.3d 135 (2d Cir. 2011).................................................................................................10

*Aslanidis v. U.S. Lines, Inc.*,
    No. 92 Civ. 0585 (SWK), 1992 WL 315240 (S.D.N.Y. Oct. 19, 1992).................................11

*Blue Angel Realty, Inc. v. United States*,
    645 F. Supp. 3d 303 (S.D.N.Y. 2022)...................................................................................11

*Dillon v. Conway*,
    642 F.3d 358 (2d Cir. 2011).................................................................................................10

*In re Bennett Funding Grp., Inc.*,
    367 B.R. 302 (Bankr. N.D.N.Y. 2007) .................................................................................11

*In re Credit-Based Asset Servicing and Securitization LLC*,
    No. 10-16040, 2014 WL 7177629 (Bankr. S.D.N.Y. Dec. 9, 2014) .......................................7

*In re Enron Corp.*,
    419 F.3d 115 (2d Cir. 2005)...................................................................................................7

*In re Northern New Eng. Tel. Operations LLC*,
    504 B.R. 372 (Bankr. S.D.N.Y. 2014)..................................................................................13

*Menominee Indian Tribe of Wis. v. United States*,
    577 U.S. 250 (2016)..............................................................................................................11

*Panton v. United States*,
    No. 98 Civ. 1881 (LAP), 2010 WL 5422293 (S.D.N.Y. Dec. 23, 2010) ..............................14

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)...............................................................................................14

### STATUTES AND RULES

Fed. R. Bankr. P. 7052................................................................................................................13

Fed. R. Bankr. P. 9006(b)(1).........................................................................................................7

Fed. R. Bankr. P. 9023...............................................................................................................13

Fed. R. Civ. P. 52(b) ............................................................................................................13, 14

AMERICAS 126824084

Fed. R. Civ. P. 59..................................................................................................................13, 14

AMERICAS 126824084

Mohsin Y. Meghji, as Litigation Administrator (the "**Litigation Administrator**") of the above-captioned post-effective date debtors (prior to the Effective Date of the Plan, the "**Debtors**," and, after the Effective Date, the "**Post-Effective Date Debtors**," as applicable), and Ionic Digital Inc. jointly file this objection (the "**Objection**") to Jason Voelker's *Motion for Leave to File Adversary Proceeding* [Docket No. 4825] (the "**Motion**") and respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. Two months after the Effective Date of the Plan, Mr. Voelker, an individual shareholder of iCapital Management Inc. ("**iCapital**"), seeks relief from the confirmed Plan so that he can derivatively litigate purported prepetition claims belonging to iCapital against the Post-Effective Date Debtors, Ionic Digital Inc., and Fahrenheit LLC. The Motion, however, largely ignores the realities of the Plan and Confirmation Order: (i) the Plan effectuated the Class Claim Settlement; (ii) iCapital received proper notice of the Plan, including the Class Claim Settlement embodied in the Solicitation Materials;[3] (iii) iCapital declined to opt out of the Class Claim Settlement; (iv) iCapital became bound by the terms of the Class Claim Settlement, under which it received an Allowed Claim equal to 105% of the scheduled amount of its claim and distributions under the Plan, in exchange for release and full and final satisfaction of claims against the Debtors, including expungement of any claims and/or causes of action set forth in the Proof of Claim held by iCapital; (v) the Injunction Provision of the Plan enjoins iCapital, and those bringing claims derivatively on iCapital's behalf, from commencing actions that were released in connection with the Class Claim Settlement; and (vi) as of the Effective Date, the terms of the Plan and Confirmation Order are binding on iCapital and Mr. Voelker (in his capacity as derivative

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3] *See Affidavit of Service* [Docket No. 3514] (the "**Solicitation Affidavit**") at Ex. A, p. 2490 (showing that iCapital was included in the service list attached thereto as Exhibit A and was served the Solicitation Materials).

shareholder), who are now subject to the settlements and injunctions described in the Plan. Under these facts, the Motion must fail.

2. Following the filing of the Debtors' chapter 11 cases, various stakeholders including the Official Committee of Unsecured Creditors worked to maximize the value of the Debtors' assets and fairly distribute those assets to the Debtors' creditors. The Plan—which received votes in favor from "the high 90 percentile both by count and by dollar" of Celsius' stakeholders[4]—was the culmination of those efforts. Denial of the Motion would not be due to a "procedural technicality," as Mr. Voelker baselessly asserts.[5] Rather, denial of the Motion would uphold the hard-fought compromises reached by and among the Debtors and their stakeholders, as reflected in the Plan. Permitting late-filed adversary proceedings like the one sought in the Motion risks inviting the type of costly litigation that the Plan has already foreclosed and derailing the long-awaited distributions to Celsius' account holders that are already underway. Finally, to the extent the Motion seeks relief in the form of permitting a late-filed proof of claim or requesting that the Court reconsider, alter, or amend its findings in the Confirmation Order, such relief is procedurally deficient, untimely, and wholly unsupported by the Motion. The Motion simply provides no basis for such relief.

3. For the reasons stated in this Objection, the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

4. On July 13, 2022 and December 7, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[4] *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] (the "**Confirmation Order**") ¶ 12 (citation omitted).

[5] *See* Mot. at 7.

5.      The Court set the initial general claims bar date in the chapter 11 cases as February 9, 2023 (the "**Initial Bar Date**").  *See Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Docket No. 1846] ¶ 2. The Court set an additional bar date as August 2, 2023 for any claim affected by the amendment of the Schedules and Statements pursuant to the Court's *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (together with the Initial Bar Date, the "**General Bar Dates**").  *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors Establishing Account Holder Bar Date* [Docket No. 3066] ¶ 1.  iCapital filed a timely proof of claim (Claim No. 9489) on August 15, 2022.  Mr. Voelker did not file a proof of claim in the chapter 11 cases.

6.      On September 27, 2023, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (as amended, supplemented, or modified from time to time, the "**Plan**").  The Plan, among other things, (i) distributes Celsius' liquid cryptocurrency assets to its users and other creditors, (ii) creates a new company (Ionic Digital Inc.) that would reorganize Celsius' Bitcoin mining business and distribute the equity of that company to Celsius' creditors, and (iii) pursues and monetizes litigation claims, Causes of Action, and certain illiquid assets, and distributes the resulting proceeds to Celsius' creditors, all under the direction of litigation administrators and the Litigation Oversight Committee.

7.      The Plan contains a Class Claim Settlement:

> Except as otherwise provided in the Order approving the Class Claim Settlement, under the Class Claim Settlement, if a Holder does not opt-out of the Class Claim Settlement, such Holder's Account Holder Claims, other than Custody Claims, shall receive, in lieu of any scheduled Claim or Filed Proof of Claim, an Allowed Claim in an amount that is 105% of the scheduled amount of such Claim, in each case of the same Class as the originally scheduled Claim.  **Proofs of Claim filed by**

3

*__Class Claim Settlement Participants__* (*i.e.*, Holders of Account Holder Claims (other than Account Holders who only hold Custody Claims) *__that do not opt out of Class Claim Settlement) shall be expunged from the Claims Register and shall be of no further force and effect__*.

Plan, Art. IV.B.8 (emphasis added).

8. In connection with the solicitation process for the Plan, Holders of Account Holder Claims were served the solicitation materials detailed in the Solicitation Affidavit (the "**Solicitation Materials**"),[6] which included a Ballot containing an opportunity to opt out of the Class Claim Settlement and a notice informing Holders of their ability to opt out of the Class Claim Settlement, as well as the risks, benefits, and/or consequences of doing so or for failing to timely do so (the "**Opt-Out Form**"). *See* Solicitation Affidavit at 1-2. The deadline for opting out of the Class Claim Settlement was September 22, 2023 at 4:00 p.m. (ET). *See* Solicitation Order at 4.

9. iCapital was served the Solicitation Materials. *See* Solicitation Affidavit at Ex. A, p. 2490. iCapital did not return a Ballot, which contained in "Item 8" the opportunity to opt out of the Class Claim Settlement. *See* Karpuk Decl. ¶ 2. iCapital became a Class Claim Settlement Participant under the Plan and, accordingly, its Proof of Claim has been expunged pursuant to the terms of the Plan and Confirmation Order in exchange for release and full and final satisfaction of

---

[6] The Solicitation Materials served on iCapital included (i) a copy of the Solicitation and Voting Procedures; (ii) the Ballot for voting to accept or reject the Plan; (iii) Celsius' Cover Letter in support of the Plan; (iv) the Official Committee of Unsecured Creditors' Letter in support of the Plan; (v) the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332]; (vi) the *Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization; (III) Approving the Form of Ballots and Notices in Connections Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorization and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 3337] (the "**Solicitation Order**") (excluding exhibits); (vii) the Notice of Hearing to Consider Confirmation of the Debtor's Chapter 11 Plan and Related Voting and Objection Deadlines; and (viii) the Notice of Claims Settlement and Opportunity to Opt Out of Class Settlement. *See* Solicitation Affidavit at 1-2; *id.* at Ex. A, p. 2490.

4

its claims against the Debtors, including the 5% premium to its scheduled claim as part of the Class Claim Settlement.[7]

10. The Plan also contained an injunction provision (the "**Injunction Provision**") which went into effect as of the Effective Date. The Injunction Provision is applicable to iCapital, as well as to Mr. Voelker, who purports to bring iCapital's claim on a derivative basis:

> Effective as of the Effective Date . . . ***all Entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined***, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests . . . and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan. Further, to the maximum extent permitted under applicable law, ***the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any Causes of Action released pursuant to this Plan***, including the Causes of Action released or exculpated in this Plan.

Plan, Art. VIII.F (emphases added).

11. On November 9, 2023, after a six-day confirmation hearing, the Court determined that the Plan met the requirements for confirmation and confirmed the Plan, including the Class Claim Settlement and the Injunction Provision. The Court found that the Class Claim Settlement constituted "[a] good-faith compromise[]," was in the "best interests of the Debtors, the Estates, and all Holders of Claims and Interests," and was "fair, equitable, and reasonable." Confirmation Order ¶ 23. The Court also found that the process the Debtors used to serve the Opt-Out Form was "reasonably calculated to ensure that each Holder of a Claim or Interest was informed of its

---

[7] Stretto, the claims and noticing agent for the Debtors and Post-Effective Date Debtors, is in the process of updating the claims register to reflect the expungement of Proofs of Claim held by Class Claim Settlement Participants.

5

ability to opt out of . . . the Class Claim Settlement as well as the risks, benefits, and/or consequences of doing so or for failing to timely do so." *Id.* ¶ 18. The Court held that anyone who did not opt out of the Class Claim Settlement would be bound by its terms:

> ***[F]or the avoidance of doubt, any party that did not affirmatively opt out of the Class Claim Settlement*** by (i) the deadline to submit a Ballot or (ii) the supplemental deadline of October 9, 2023 established solely for Holders of Class 4 Convenience Claims to submit Class Claim Settlement Opt-Out Forms, ***shall be bound by the terms of the Class Claim Settlement*** and communicated to each Holder of a Class 4 Convenience Claim by email.

*Id.* ¶ 20 (emphases added). The Court found that the Injunction Provision was "necessary to implement, preserve, and enforce the Debtors' discharge" and was "narrowly tailored to achieve these purposes." *Id.* ¶ 31.

12. The Confirmation Order became final and non-appealable on November 23, 2023. Neither iCapital nor Mr. Voelker objected to entry of the Confirmation Order. And neither sought to appeal the Confirmation Order.

13. The Plan went effective on January 31, 2024 (the "**Effective Date**"). *See* Docket No. 4298. As of the Effective Date, the terms of the Plan and Confirmation Order became binding on "any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan) [and] all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan. . . ." *Id.* at 2.

14. On March 19, 2024, iCapital Management Inc. was sent an initial distribution under the Plan. *See* Karpuk Decl. ¶ 3.

6

# ARGUMENT

## I. The Plan Enjoins iCapital and Mr. Voelker from Pursuing an Untimely Adversary Proceeding in Connection with Purported Prepetition Claims and iCapital's Proof of Claim Has Been Expunged Pursuant to the Terms of the Plan and Confirmation Order

15. The Injunction Provision, which was approved by the Court, bars iCapital and Mr. Voelker from initiating the adversary proceeding sought in the Motion. The causes of action in the Motion's proposed complaint sound in breach of contract, breach of fiduciary duty, fraudulent misrepresentation, conversion, and unjust enrichment. *See* Mot. at Ex. A (listing 8 counts). These claims are purportedly based on prepetition conduct. *Id.* at Ex. A ¶ 18 ("[T]he misconduct outlined herein predates Celsius' bankruptcy filing.").[8] By the Motion, Mr. Voelker, a shareholder of iCapital, asserts derivative standing to bring these claims that otherwise belong to iCapital.[9] This he cannot do.

---

[8] The proposed complaint names as defendants two Post-Effective Date Debtors (Celsius Network LLC and Celsius Lending LLC), Ionic Digital Inc. (NewCo established by the Plan), and Fahrenheit LLC (the successful bidder and sponsor of the NewCo transaction). Other than making conclusory (and baseless) accusations that the creation of Ionic Digital Inc. "appears to be a cynical attempt to evade accountability" and Fahrenheit LLC is somehow "also implicated" (*see* Mot. at Ex. A ¶ 2), the proposed complaint does not articulate how these two entities would be liable for the Debtors' purported prepetition acts. This Objection, which addresses the gating issue of whether the Court should grant Mr. Voelker leave (and it should not), does not attempt to address this or the other myriad substantive deficiencies in the proposed complaint and reserves the right to do so if such occasion arises.

[9] In his *Notice of Errata* [Docket No. 4841], Mr. Voelker seeks to amend the caption of his proposed complaint to designate himself as a "Direct Party" seeking relief against the proposed defendants. Mr. Voelker has not filed a proof of claim in the chapter 11 cases and the General Bar Dates have long passed. In the Motion, Mr. Voelker has neither argued nor made a case for "excusable neglect" such as to allow him to file a late proof of claim—if that is indeed the relief that he seeks—and the Court should decline to grant such relief. *See* Fed. R. Bankr. P. 9006(b)(1) (the Court may in its discretion and "for cause shown" allow a late filing if such late filing was the result of "excusable neglect"); *In re Credit-Based Asset Servicing and Securitization LLC*, No. 10-16040, 2014 WL 7177629, at *2 (Bankr. S.D.N.Y. Dec. 9, 2014) (Gropper, J.) ("[T]he determination whether 'excusable neglect' exists is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission,' such as 'the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'") (quoting *Pioneer Inv. Services Co. v. Brunswick Associated Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005) (cautioning that "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test") (citation omitted).

16.     Mr. Voelker alleges that iCapital had intended to pursue claims it might have against the Debtors. *See* Mot. at 11 ("[M]y understanding is that iCapital would have brought an action if the funds were available to retain counsel."). But iCapital did not opt out of the Class Claim Settlement and thereby released its (and any derivative shareholder's) right to pursue such claims. Had iCapital opted out, Mr. Voelker might not have been enjoined from bringing his instant Motion. But that is not what happened here. Instead, iCapital and all those who seek to bring derivative claims on its behalf, including Mr. Voelker—became bound by the terms of the Class Claim Settlement, including the release and settlement of iCapital's claims against the Debtors. Both iCapital and Mr. Voelker are permanently enjoined from commencing any action or proceeding with prepetition claims that were released or settled pursuant to the Plan. *See* Plan, Art. VIII.F.

17.     In addition to the operation of the Injunction Provision, Mr. Voelker does not have a basis to pursue his Motion because iCapital's Proof of Claim has been expunged pursuant to the terms of the Plan and Confirmation Order. iCapital did not opt out of the Class Claim Settlement despite receiving notice that its claims would be expunged if it did not opt out.[10] For example, the Opt-Out Form, which iCapital received in the Solicitation Materials, stated:

> **PLEASE TAKE FURTHER NOTICE THAT,** upon the expiration of the Class Claim Settlement Opt-Out Deadline (the "Opt-Out Period"), ***any claims and/or causes of action set forth in a scheduled claim, Proof of Claim, and/or the Class Claim held by any Account Holder that does not opt out of the Class Claim Settlement shall be expunged*** and superseded by such Holder's Settlement Claim (other than Custody Claims, which shall not be expunged). For the avoidance of any doubt, (i) Holders of Account Holder Claims that do not opt out of the Class Claim Settlement shall (x) no longer be entitled to the amounts set forth on any

---

[10] Nor was iCapital's decision not to opt out of the Class Claim Settlement irrational. The costs of opting out were made clear in the Solicitation Materials: parties who opted out would not receive the 5% increase in their scheduled Allowed Claim amount and would not receive a distribution until their Proofs of Claim were fully and finally resolved by the Court, which likely would have taken years. *See, e.g.*, Solicitation Order at Ex. 10, p. 3 ("The distribution that any such Holder that elects to opt out of the Class Claim Settlement ultimately may receive shall depend on the outcome of the claims reconciliation process and/or related litigation, which may ultimately take years to conclude.").

8

> filed Proof of Claim, (y) no longer be entitled to prosecute any allegations against the Debtors set forth in any such Proof of Claim or the Class Claim, and (z) be limited to receiving a recovery from the Debtors with respect to a Settlement Claim pursuant to the treatment provided in the Plan, and (ii) Custody Claims shall not be eligible for the Class Claim Settlement and not opting out of the Class Claim Settlement shall have no effect on any Custody Claim.

Solicitation Order at Ex. 10, p. 3 (emphasis added). And the Letter from the Official Committee of Unsecured Creditors, which iCapital also received in the Solicitation Materials, stated:

> Any account holder can opt out of the settlement and elect to pursue their own claim against the Debtors by electing to opt out in Item 8 of their ballot. An account holder that opts out of the settlement (1) will not receive the 5% increase to their scheduled claim amount, (2) will have to prove their claim and damages on account of that claim, and (3) will not receive a distribution from the Debtors until their disputed claim is resolved. ***Any account holder who does not timely opt out of the settlement will not have any right to pursue any filed Proof of Claim against the Debtors, which will be expunged by the settlement***.

*Id.* at Ex. 5, p. 4 (emphasis in original).

18. iCapital's Proof of Claim has been expunged pursuant to the terms of the Plan and Confirmation Order. In exchange, iCapital need not bear the costs of litigation and can instead reap the benefits of its bargain as a Class Claim Settlement Participant. Indeed, as consideration for releasing its claims against the Debtors and having its Proof of Claim expunged, iCapital received an Allowed Claim equal to 105% of the scheduled amount of its claim and has received a distribution under the Plan. The Motion is an inappropriate attempt to take a second bite out of the estates.

19. The terms of the confirmed Plan are clear, and iCapital's claims, now settled and released and expunged, cannot be brought and the Motion should be denied on this independent basis alone.

9

## II. Equitable Tolling Does Not Apply

20. Mr. Voelker contends that equitable tolling should apply because he did not formally "obtain standing" until March 28, 2024, two months after the Effective Date. *See* Mot. at 6, 8. Mr. Voelker's equitable tolling argument misses the mark. The fact that Mr. Voelker—for reasons having nothing to do with the Debtors—did not obtain permission from iCapital in time to bring a claim does not constitute a proper basis for equitable (and highly prejudicial) relief against the Debtors. Further, Mr. Voelker's efforts to obtain derivative standing is irrelevant. iCapital released its claims and causes of action against the Debtors when it chose not to opt out of the Class Claim Settlement. Any purported basis for derivative standing is simply unavailing. Mr. Voelker misunderstands the purpose of the Effective Date. The Effective Date does not serve as an "adversary filing deadline" (*see* Mot. at 6). Rather, the Effective Date marks the point at which the provisions of the Plan became operational and binding on all parties. iCapital had the option to appear and assert its rights throughout the pendency of the chapter 11 cases. It did not. iCapital had the option to opt out of the Class Claim Settlement and reserve its right (or a derivative shareholder's right, as it may be) to pursue whatever claims it had against the Debtors. It did not. Mr. Voelker's claims are not just untimely; they simply do not exist by fact of iCapital's release of its claim and participation in the Class Claim Settlement.

21. Even if Mr. Voelker's request for equitable tolling is apt (and it is not), the request fails on the merits. The equitable tolling doctrine is an extraordinary remedy and is applied sparingly. *See A.Q.C. v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) ("[E]quitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances.") (internal citations and quotations omitted); *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) ("[The Second Circuit] set a high bar to deem circumstances sufficiently 'extraordinary' to warrant

10

equitable tolling."). A party asserting equitable tolling bears the burden of satisfying two distinct elements: (i) diligent pursuit of its rights and (ii) extraordinary circumstances beyond its control preventing timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256–57 (2016). "The diligence element centers on matters within the litigant's control, while the extraordinary-circumstances element focuses on external factors." *Blue Angel Realty, Inc. v. United States*, 645 F. Supp. 3d 303, 307 (S.D.N.Y. 2022) (citing *id.* at 257). Mr. Voelker fails to meet both elements.

22. *First*, nowhere does Mr. Voelker state that the circumstances preventing earlier action were "extraordinary"—nor can he. "[E]quitable tolling may be appropriate when the defendant has actively misled the plaintiff or the plaintiff has in some extraordinary way been prevented from asserting his rights. . . ." *Aslanidis v. U.S. Lines, Inc.*, No. 92 Civ. 0585 (SWK), 1992 WL 315240, at *4 n.6 (S.D.N.Y. Oct. 19, 1992) (citation and quotations omitted); *see In re Bennett Funding Grp., Inc.*, 367 B.R. 302, 327 (Bankr. N.D.N.Y. 2007) (declining to apply equitable tolling where litigant failed to allege that he was prevented from asserting his rights, that he mistakenly asserted his rights in the wrong forum, or that the opposing party actively misled him). Nowhere does Mr. Voelker allege that the Debtors (or the Post-Effective Date Debtors) prevented him from asserting his rights or that they misled him in any way. Instead, Mr. Voelker makes vague and pithy references to "unique procedural hurdles" and "procedural requirements inherent in derivative actions" as the reason for delay outside of his control. *See* Mot. at 6. But he fails to explain how these procedural hurdles are in any way "extraordinary." Mr. Voelker also states that he encouraged the iCapital board to pursue legal action against Celsius as early as May 20, 2022, nearly two years before the Effective Date. *See id.* at 11. Mr. Voelker fails to explain what extraordinary circumstances existed that prevented his obtaining standing during those two

years. Finally, the undersigned counsel has been unable to find a case (and Mr. Voelker cites to none) where delay caused by corporate procedure was found to be an extraordinary circumstance warranting the application of equitable tolling.

23. *Second*, Mr. Voelker maintains that, after the Debtors filed their chapter 11 petitions, he acted with diligence by "request[ing] that iCapital's Board of Directors take immediate legal action against Celsius and sue Celsius" and "diligently await[ing] the Board's decision" until the corporation consented to his standing on March 28, 2024. *Id.* at 11. But these are no more than conclusory allegations, providing zero details or support, about what actions Mr. Voelker took (other than merely making a request of iCapital's board) in connection with his purported efforts to get consent for standing.

24. Mr. Voelker cannot meet his burden of satisfying the application of equitable tolling and the Motion should be denied on this second, independent basis.

### III. Other Relief Sought in the Motion Should Be Denied

#### A. Granting of the Motion Would Prejudice the Post-Effective Date Debtors and Their Estates

25. Mr. Voelker contends that granting the Motion would not cause any prejudice because the Debtors had been "consistently apprised" of iCapital's claims through its proof of claim. *See* Mot. at 8. The adversary proceeding sought by the Motion, which would commence after the Effective Date of the Plan and while distributions are being made, would significantly disrupt the administration of the Plan and invite costly litigation that the Plan has already foreclosed. The Debtors, in planning for distributions under the Plan, reserved an amount for iCapital based on the fact that it did not opt out of the Class Claim Settlement, and iCapital has already received part of that distribution. *See* Karpuk Decl. ¶ 3. Allowing Mr. Voelker to now

12

have a "free option" to litigate against the estate, when iCapital has already received a distribution based on its entitlement pursuant to the Class Claim Settlement, would be particularly prejudicial.

26. Cases denying late-filed claims are instructive. *See, e.g.*, *In re Northern New Eng. Tel. Operations LLC*, 504 B.R. 372, 381 (Bankr. S.D.N.Y. 2014) (concluding that the debtors would be prejudiced by a late allowance of a claim, even where the claim was small in comparison to the debtors' aggregate estates, because there was a confirmed plan under which all timely filed claims were administered, and distributions made and there was a risk of other claimants who would seek similar relief). Here, too, Mr. Voelker should be denied his opportunistic request to assert late claims—which have already been released and has been expunged—at this late juncture.

**B.    The Court Should Deny the Alternative Relief Sought Concerning Dischargeability**

27. Mr. Voelker alternatively seeks an order of nondischargeability or a "limited order of relief" to allow iCapital to pursue the return of its assets. *See* Mot. at 8-9. This Court has already confirmed the Plan, including the provisions relating to discharge. *See* Confirmation Order ¶ 31; Plan, Art. VIII.A. For the avoidance of doubt, iCapital and Mr. Voelker did not object to entry of the Confirmation Order and did not appeal the Confirmation Order. The Confirmation Order became final and non-appealable on November 23, 2023.

28. To the extent that Mr. Voelker is really asking the Court to reconsider or alter or amend the findings in its Confirmation Order, as provided for in the relevant Federal Rules of Bankruptcy Procedure, the time to seek that type of relief has long passed. *See* Fed. R. Bankr. P. 7052 (making applicable Fed. R. Civ. P. 52(b) and stating that any motion under that rule shall be filed "no later than 14 days after entry of judgment"); Fed. R. Bankr. P. 9023 (making applicable Fed. R. Civ. P. 59 and stating that a motion to alter or amend a judgment shall be filed "no later than 14 days after entry of judgment").

13

29.     Even looking past the procedural deficiencies, Mr. Voelker does not (and cannot) articulate a basis by which the Court should reconsider or amend its Confirmation Order relating to the Plan's discharge provisions. Rule 52(b) of the Federal Rules of Civil Procedure "provides a means to dispute underlying facts that resulted in faulty factual findings or conclusions of law based on those facts." *See Panton v. United States*, No. 98 Civ. 1881 (LAP), 2010 WL 5422293, at *2 (S.D.N.Y. Dec. 23, 2010). And Rule 59(e) of the Federal Rules of Civil Procedure permits a court to alter or amend a judgment if there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). The Motion's conclusory statements about "Celsius' pattern of calculated malfeasance" and "serious concerns about attempts to shield assets or evade debts" (*see* Mot. at 8), without more, do not meet the standards governing motions for amendment of findings under either Rule 52(b) or 59(e) of the Federal Rules of Civil Procedure. The alternative relief sought in the Motion should be denied.

### RESERVATION OF RIGHTS

30.     The Litigation Administrator and Ionic Digital Inc. reserve all rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection, to seek discovery from any party, or to raise additional grounds for opposing the Motion during any hearing on the Motion, if one should be held. This Objection shall not be deemed a waiver of any arguments the Litigation Administrator or Ionic Digital Inc. may raise in answering or opposing the proposed complaint attached to the Motion. The Litigation Administrator and Ionic Digital Inc. reserve the right to answer or oppose the allegations in the

proposed complaint should the Court grant the Motion and permit the filing of the adversary proceeding.

## CONCLUSION

For the reasons stated herein, the Motion should be denied in its entirety.

| | |
|---|---|
| Dated:  April 30, 2024<br>        New York, New York | Respectfully submitted,<br><br>*/s/ Samuel P. Hershey*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Samuel P. Hershey<br>Joshua D. Weedman<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>         sam.hershey@whitecase.com<br>         jweedman@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile:  (312) 881-5450<br>Email:  gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Keith H. Wofford<br>Southeast Financial Center<br>200 South Biscayne Blvd., Suite 4900<br>Miami, Florida 33131<br>Telephone: (305) 371-2700<br>Facsimile:  (305) 358-5744<br>Email:  kwofford@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile:  (213) 452-2329<br>Email: aaron.colodny@whitecase.com<br><br>*Counsel to Mohsin Y. Meghji as Litigation Administrator and Ionic Digital Inc.* |

16