Jason Voelker
145 Corte Madera Town Center, #146
Corte Madera, California, 94925

Telephone: 415–609–9967
Email: jason.voelker@ymail.com

THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>CELSIUS NETWORK LLC, et. al,<br>　　　Debtors.<br><br>JASON VOELKER, Derivatively on behalf of iCAPITAL MANAGEMENT INC., a Wyoming Corporation, and as a Direct Party,<br><br>　　　Plaintiffs,<br>　v.<br>CELSIUS NETWORK LLC, CELSIUS LENDING LLC, IONIC DIGITAL INC., and FAHRENHEIT LLC, a Delaware Limited Liability Company, | Case No. _____<br>Related Case: 22-10964<br>Chapter 11<br>**NOMINAL PLAINTIFF'S FINAL BRIEF IN REPLY TO CELSIUS' OBJECTION TO THE MOTION FOR LEAVE TO FILE VERIFIED ADVERSARY COMPLAINT**<br><br>Date: May 7, 2024<br>Time: 2:00 p.m. EST<br>Place: Room 523<br><br>Honorable Martin Glenn, Chief United States Bankruptcy Judge |

**NOMINAL PLAINTIFF'S FINAL BRIEF IN REPLY TO CELSIUS' OBJECTION TO THE MOTION FOR LEAVE TO FILE VERIFIED ADVERSARY COMPLAINT**

1

### Introduction

Jason Voelker, a derivative shareholder of iCapital Management Inc. ("iCapital"), respectfully submits this Reply underscoring the compelling legal and factual basis for granting iCapital's Motion for Leave to File an Adversary Complaint. Celsius Network LLC et al.'s ("Celsius" or "Debtors") opposition rests on a calculated disregard for Wyoming law, the governing jurisdiction for the meticulously crafted Escrow Agreement. Their deliberate silence on Wyoming statutes and contractual obligations highlights a troubling intent to evade responsibility.

### I. Wyoming Law: A Beacon of Clarity in an Evolving Legal Landscape

Wyoming stands at the forefront of digital asset legislation, providing a clear and progressive framework for ownership, contracts, and bailment relationships (W.S. § 34-29-101 et seq.). iCapital's deliberate choice of Wyoming law, meticulously implemented through the Escrow Agreement, comprehensive onboarding documents, and consistent communications with Celsius, demonstrates an unequivocal intent to secure the benefits of this robust legal structure.

The Escrow Agreement establishes a classic bailment structure under Wyoming law, unambiguously vesting ownership of the escrowed digital assets with iCapital. Celsius, as bailee, holds mere possession of the assets but lacks ownership rights. This structure explicitly shields the escrowed assets from inclusion within their bankruptcy estate.

### II. Debtors' Disregard for the Legal Process

Celsius' actions betray a flagrant disregard for contractual obligations and established principles of Wyoming law. Their premature conversion of iCapital's escrowed assets in defiance of the loan maturity date, coupled with their wrongful inclusion of these assets within their bankruptcy estate, constitute egregious breaches of contract.

Furthermore, Celsius' evasive tactics and strategic silence on core issues of ownership, jurisdiction, and bankruptcy law underscore a lack of good faith participation in this process. Their calculated omission of any reference to Wyoming law in their opposition is a transparent attempt to circumvent the very framework iCapital so carefully selected. This behavior undermines iCapital's rights and casts a chilling shadow on the integrity of the bankruptcy system and the legal frameworks established by individual states.

### III. Bankruptcy Law, Case Law, and the Protection of Property Rights

Bankruptcy law is designed to facilitate a fair reorganization for the benefit of debtors and legitimate creditors. It is explicitly not a vehicle for debtors to exploit procedural loopholes, circumvent contractual obligations, or enrich themselves at the expense of others. Section 541(d) of the Bankruptcy Code unequivocally excludes property from the bankruptcy estate where the debtor holds only bare legal title while another party retains equitable ownership. Courts have consistently interpreted this provision:

- In re S.W. Bach & Co., 435 B.R. 866 (Bankr. S.D.N.Y. 2010): Property held in trust, escrow, or as part of a bailment is not within the bankruptcy estate.
- In re MCZ, Inc., 82 B.R. 40 (Bankr. S.D. Tex. 1987): Where a debtor holds bare legal title as an agent or bailee, that title is valueless to the estate.

These principles, coupled with Wyoming's meticulously-crafted bailment statutes, offer robust protection for iCapital's assets.

### IV. The Full Faith and Credit Clause: Honoring State Laws

The Full Faith and Credit Clause of the U.S. Constitution mandates that states honor the laws and legal decisions of other states. iCapital and Celsius are Wyoming-registered entities. iCapital explicitly incorporated Wyoming law within its meticulously crafted Escrow Agreement. Declining to uphold the principles of bailment and property ownership enshrined in Wyoming law could constitute a violation of this fundamental principle and send a deeply negative signal that contractual agreements specifically designed to leverage progressive state laws can be disregarded in bankruptcy. This would erode confidence in interstate transactions and undermine the rule of law itself.

### V. Justice Demands Granting Leave to File

Granting tolling due for the delays caused by complying with rule 23.1 and allowing abiding leave to file the Adversary Complaint is essential for a thorough examination of all facts and the imposition of appropriate equitable remedies. Denying the motion would set a dangerous precedent, undermining investor confidence, discouraging the use of Wyoming's progressive digital asset framework, and signaling that contractual sanctity can be disregarded within the bankruptcy process. Upholding the law reinforces fundamental principles of justice, contractual integrity, and the predictability of the legal system.

**VI. Celsius' Flawed Reliance on the Class Settlement Does Not Bar iCapital's Claim**

Celsius attempts to shield themselves behind a previously approved class settlement. This strategy is flawed, as it fails to consider the fundamental differences between iCapital's claim, which addresses assets held outside of the bankruptcy estate, and the general holdings addressed in the settlement, where proceeds come from the bankruptcy estate:

- **Distinct Assets, Distinct Rights:** The class settlement focused on Celsius' general holdings, which may be considered part of the bankruptcy estate. iCapital's claim, however, concerns specifically **escrowed assets**, demonstrably excluded from the estate under Wyoming's bailment laws and Section 541(d) of the Bankruptcy Code. These are distinct categories of assets with distinct legal ownership rights.

- **Overreach and a Violation of Property Rights:** Any attempt to include iCapital's escrowed assets in the class settlement constitutes a blatant overreach. These assets unequivocally belong to iCapital. Restricting their access or ownership through a settlement focused on Celsius' general holdings violates iCapital's fundamental property rights.

- **The Injunction Should Not Apply to iCapital's Assets:** While the previous injunction may be appropriate for Celsius' general holdings, it should not prevent iCapital from pursuing its rightful claim regarding the **specifically identified** escrowed assets governed by Wyoming law.

Granting leave to file the Adversary Complaint allows for a clear legal determination of ownership. This could lead to equitable remedies such as a constructive trust or involuntary trusteeship, ensuring iCapital's assets remain protected and inaccessible to Celsius.

**Conclusion**

Granting leave to file the Adversary Complaint is imperative to protect iCapital's property rights and ensure a just resolution that upholds the law. This Court has the undeniable responsibility to send a powerful message that it will not allow debtors to exploit bankruptcy proceedings as a means to evade their obligations under carefully crafted, jurisdiction-specific agreements such as the Escrow Agreement.

Wyoming has established itself as a leader in digital asset legislation. Upholding its carefully constructed legal framework reinforces investor confidence and encourages utilization of its innovative statutes, ultimately fostering growth and stability in the digital asset market. Denying iCapital its rightful day in court would have a chilling effect, undermining the very principles that Wyoming's laws were designed to promote.

Should the Court be hesitant to grant leave to file the Adversary Complaint, Section 105 of the Bankruptcy Code empowers it to fashion alternative forms of equitable relief "necessary or appropriate to carry out the provisions of this title." In this case, such relief could take the form of an order compelling Celsius to:

- **Segregate the Escrowed Assets:** Immediately separate and identify the specific digital assets governed by the Wyoming bailment agreement.
- **Appoint an Independent Custodian:** Place the segregated assets under the control of a neutral third-party custodian until ownership is definitively resolved.

These actions would preserve the status quo and prevent further dissipation of iCapital's assets, ensuring a fair and equitable outcome for all parties involved.

May 4, 2024

Thank you for the opportunity,

Jason Voelker