Dimitry Kirsanov
Pro Se Creditor
United States of America
Case No. 22-10964 (MG), Celsius Network, LLC, et al.
May 6th, 2024
Email: dimitry.kirsanov@protonmail.com

                Re: Letter and 1144 request to the Honorable Chief Judge Glenn

      Dear Chief Judge Glenn,

I am writing to you today to express great concern regarding how creditors, including myself, have been mistreated in this proceeding. There have been contradictions that have lead to a great deal of confusion, which I believe has violated the rights afforded to creditors and Citizens under the US Constitution. The Public, the Court, and Creditors have been deceived. As the predominant CEL Token holder in the Custody Class, I, along with everyone else, voted on the plan where Custody Claims are exempt from the CEL Token Settlement. I voted on a plan where deactivation Cryptocurrency prices would be determined by the debtors and the committee, a price that would meet my best interests. I was also one of the 88 creditors that had Pure Custody, but was prevented in withdrawing my funds according to the withdrawal order as a result of an outstanding loan. This was not explained on the balloting, nor the plan prior to voting. Only after the polling, was a provision added to the already voted on plan that partially defined this recovery. The debtors agree, that it would not be fair or equitable to return CEL Token, yet they changed the plan after balloting to adversely affect approximately 3212 creditors that hold CEL Token Deposit claims in the Custody Class. Then, in a further act of fraud, the debtors reclassified these 88 creditors from 6A to 6B after balloting, even though their names were not listed in the 6B withdrawal order. I was one of those creditors, and it was shown on the 6A balloting results. This was never defined on the plan that was voted on, nor were adequate balloting instructions provided to those 88 creditors.

Additionally, I have loans for $250,000, with about 25 Bitcoins as collateral. Instead of the setoff against my Custody Claim of over $600,000, the debtors set off against my Bitcoins, further financially devastating me along with other similar creditors. From my understanding, it is permitted to setoff against the petition day value of my Custody Claim pursuant to Bankruptcy Code.

Your honor, I was not provided adequate notice about this material change. This is not the plan I voted on. I had always interpreted the debtors and committee would choose a price that meets the best interests of the creditors, a price where the CEL Token Settlement excluded Custody claims on the voted plan, I did not have adequate time to prepare to argue and properly object to this adverse change. I hope you saw the fervor of my questioning, including impeachment, to make myself heard on short notice. Some of my topics were never adequately addressed, and it is extremely confusing. For a moment, I ask that you to think of how this situation would of been had I not have the monetary majority to prove that I had actually voted no in the Custody 6A Class ballot that was provided to me, and to be able to prove there was a forgotten voting flowchart for 88 creditors. Think of what would of been if I could not have definitively shown that the debtors had to deposit 500K CEL to their Custody Wallet to satisfy their shortfall. I was in a position to prove this irrefutably.

As a result of the changes noted above, along with contradictory statements on behalf of the debtors, I contend that the confirmation was procured by fraud, to deprive many creditors and US Citizens of their legal rights as provided under the Constitution. I understand that at this point, the egg can not be completely unscrambled, that of which is the confirmation order. However, it is in my understanding the Court can provide adequate relief, rights, and adjustments as deemed necessary, pursuant to US Code 1144, under the evidence presented before you in such a proceeding, which will prove there was fraud not by just a preponderance of evidence, but by the debtor's own filings and statements.

It is my understanding that the Court intends to amend the confirmation order. I ask that the Court provide adequate provisions to address the 88 creditors that were not provided adequate polling information.  I would also ask that the provisions include the Custody Class that was adversely affected by a post balloting change, restoring it to prices that meet the best interests of the creditors involved. I ask the Court to fully preserve the record of everything that has happened.

From my perspective your Honor, not only was I am similar situated creditors robbed by bad faith actors that lead into this Bankruptcy, but now confirmation has been obtained fraudulently that adversely changed the rights and recovery of a class of creditors after balloting and the expectation that I had, that violates the US Constitution provisions. In a comparison used with the Court, my salad ingredients value should always add up to my best interest. That goes with the Currency that  could of been returned to creditors, but was utilized in funding the MiningCo obtaining the stock to be issued to creditors in equal "value", as should my CEL Token that was exempt from the CEL Token Settlement, if chosen to be obtained in CEL, or provided in cash form. If unimpaired, all methods of distribution must meet best interests, no matter the salad composition. No such analysis was conducted on deactivation day pricing in relation to original petition day pricing to any Cryptocurrency. Furthermore, the CEL Token Custody Creditors that did not vote on the plan or voted to reject the plan, or were otherwise forced to accept a plan due to being deemed to accept, should not be impaired by the exempting settlement.

The timeline below represents the filings and statements on behalf of the debtor's and their witnesses. I want to thank the Court for your patience with me as a Pro Se, as I try my best within my understanding of the law to communicate these concerns and exert my rights as afforded by the Constitution. All rights reserved, including to amend and modify this letter and complaint.

Timeline & Related Actions

1. In ECF 670, the Debtor's Motion to authorize 6B withdrawals, (Page 7/31) of the document, the debtor's admit at footnote 5, that the motion excludes 88 Pure Custody users.
> "This second exclusion pertains to approximately (I) 88 users that hold Pure Custody Assets with an aggregate value of approximately $884,570"

2. In the balloting instructions on the Plan (ECF 3332, Page 825/830) , it determines that these 88 Pure Custody holders with a loan, which included myself, were 6A, instead of 6B (Name unlisted on ECF 2491)

3. The Court ordered the balloting approved, with figures shown in petition day values (ECF 3337, Page 10/14). However, in the declaration of Brian Karpuk, including the amended one (ECF 3560, 3574), $0.25 CEL Token figures were utilized, including the Custody-Exempt class. The results went against the Court order, and skewed any figures related to CEL Token.

4. On the voted on Plan Supplement, ECF 3319, (Page 16/188), it indicates the following: "Deactivation Date Cryptocurrency Conversion Table", means the conversion table the distribution Agent shall use to calculate the amount of Cash or Cryptocurrency from the Celsius platform by the Deactivation Date, which table shall contain applicable Cryptocurrency prices as of a date agreed by the Debtors and the Committee, which date is expected to be approximately fifteen (15) days prior to the Deactivation Date"

5. On the voted on Plan, ECF 3332 it indicates: "all CEL Token Deposit claims, other than Custody Claims that are CEL Token Deposit Claims, shall be valued at $0.25/CEL Token". Exempting the Custody Class.

6. After balloting, in ECF 3577, the debtors adversely changed the terms of the original plan that was voted on, that exempted Custody Claims that are CEL Token with the following line:
> "Notwithstanding anything to the contrary herein excepting Custody Claims from the CEL Token Settlement, the Deactivation Date Cryptocurrency Conversion Table shall provide that CEL Token is priced at $0.25 if the Bankruptcy Court approves the CEL Token Settlement, or such other amount as ordered by the Bankruptcy Court. For the avoidance of doubt, following the Deactivation Date, such claims shall be subject to further conversion pursuant to any applicable distribution Cryptocurrency Conversion Table in connection with subsequent distributions."

7. After balloting, the debtors changed the balloting along with voting classes, reassigning the 88 Pure Custody Holders from 6A to 6B (ECF 3577, Page 136/193). I was one of those reassigned.

8. In the Confirmation Hearing Transcript (ECF 3881, Page 671/1289), Mr. Campagna was not aware that $0.25 was assigned to the Custody Class.

9. In the Confirmation Hearing Closing Arguments (ECF 3999), the debtor's counsel indicated there was no 81 cents in the Custody Settlement. However, the shortfall provision, afforded such valuation (ECF 2291), where it was ruled upon dated 3/21/23, the provision would provide value as of that date, contradicting counsel.

10. In the Confirmation Hearing Closing Arguments (ECF 3999), the debtor's counsel indicated you could withdraw 6B, if you had under a set withdrawal preference exposure. My preference exposure was zero, and ECF 670 confirms that impairment by the debtor's own motion highlighting those 88 Pure Custody holders, contradicting counsel.

11. In the Confirmation Hearing Closing Arguments (ECF 3999, Page 152/225), the debtor's counsel indicated they made it clear that it was 25 cents for both custody users and earn users. This was only made clear after the balloting was concluded, and then adversely modified after the balloting in a supplement. This was not the plan I voted on, which explicitly indicated Custody claims were exempt.

12. In the Confirmation Hearing Closing Arguments (ECF 3999, Page 39/225), the debtor's counsel indicated they made it clear in the Custody Settlement. They indicated they made it clear in the disclosure statement. However, the change in the disclosure statement where it was added after balloting, contradicts this, along with the Custody Settlement which afforded rejection rights while still pursuing full recovery to those. The Court later clarified this was limited to those that did not opt into the Custody Settlement. This was only made clear after the balloting was concluded, along with clarification after the plan was confirmed affording those rights. Counsel did not provide adequate information in the voted on plan.

13. In the Confirmation Hearing Closing Arguments (ECF 3999, Page 39/225), the debtor's counsel indicated I was wrong when I claimed I voted no. In the the Memorandum of Law (Doc 3864, Page 6/55), it was indicated I voted in favor of the plan. However, post confirmation, in clarification upon Court order, the debtors admitted I voted no in the Custody Class.

14. In the memorandum opinion approving the settlement (ECF#3974), it is indicated "other than Custody Claims that are CEL Token Deposit Claims, shall be valued at 0.25".

I would ask that the Court for permission and Judgement to consider this request as a party of interest and on behalf of the rest of similarity-situated creditors, to proceed with a timely US 1144 Revocation Proceeding effective today, May 6th . With the court's blessing, I will discuss this at a future hearing. I reserve the right to request a Jury trial.  As I understand, only a party that is affected by this can bring this action forward.

I stay respectfully,
Dimitry Kirsanov, Pro Se Creditor
/s/Dimitry Kirsanov