Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Post-Effective Date Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Case No. 22-10964 |
| | ) |
| | ) |

**POST-EFFECTIVE DATE DEBTORS' RESPONSE TO**
**DMITRY KIRSANOV'S MAY 6, 2024 LETTER TO THE BANKRUPTCY COURT**

The above-captioned post-effective date debtors (prior to the Effective Date of the Plan,

the "Debtors," and, after the Effective Date, the "Post-Effective Date Debtors," as applicable)

submit this response to Dimitry Kirsanov's May 6, 2024 letter to the Bankruptcy Court

[Docket No. 4869] (the "Letter") seeking revocation of the *Findings of Fact, Conclusions of Law,*

---

[1]   The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor*

*Affiliates* (the "Confirmation Order") [Docket No. 3972]:[2]

**Preliminary Statement**

1.     During the Debtors' nearly month-long Confirmation Hearing, Mr. Kirsanov conducted self-described "fervorous" questioning of the Debtors' witnesses and presented argument against confirmation of the Plan.   Mr. Kirsanov's position was that the Debtors impermissibly modified the Plan after solicitation to value CEL Token Custody Claims at $0.25/CEL Token upon the Deactivation Date and that $0.25 was insufficient to meet the requirements of section 1129(a)(7) of the Bankruptcy Code.   Mr. Kirsanov also raised alleged inconsistencies in the Solicitation Agent's tabulation of ballots.   At the Confirmation Hearing, the Debtors explained their position that Mr. Kirsanov's objection stemmed from misunderstandings of the provisions of the Plan and the solicitation process.   After due consideration, the Court overruled Mr. Kirsanov's objections and confirmed the Plan.

2.     Mr. Kirsanov's opposition to these provisions of the Plan and challenges to the solicitation process continued after the Confirmation Hearing.   To date, in addition to the Letter, Mr. Kirsanov has filed *five* motions or letters seeking to relitigate confirmation.[3]   The Bankruptcy Court denied each of these requests and, in its most recent denial, stated that it would "consider imposing sanctions on [Mr.] Kirsanov if he filed further motions addressed to the confirmed Plan."

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Confirmation Order or the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time) (the "Plan"), as applicable.

[3]     *See Motion of [sic] Conversion of Bankruptcy to Chapter 7 Pursuant to U.S. Code § 1112* [Docket No. 3956]; Nov. 7, 2023 Letter to the Court regarding alleged balloting discrepancy [Docket No. 3967]; *Mr. Kirsanov's Motion for Clarification* [Docket No. 3998]; *Mr. Kirsanov's Motion of [sic] Reconsideration* [Docket No. 4031]; *Statement and Motion of [sic] Clarification* [Docket No. 4063].

*Order Denying Dimitry Kirsanov's "Statement and Motion for Clarification"* [Docket No. 4066].

Notwithstanding this warning, Mr. Kirsanov filed the Letter, alleging generally that a series of purported "contradictions" have led to "a great deal of confusion" which he concludes (without any explanation or evidentiary support) amount to procurement of the Confirmation Order by fraud.  Letter at 1–2 ("As a result of the changes noted above, along with contradictory statements on behalf of the debtors, I contend that the confirmation was procured by fraud, to deprive many creditors and US Citizens of their legal rights as provided under the Constitution.").

3.       To be clear, no reclassification of Mr. Kirsanov's claim occurred.  Mr. Kirsanov's Class 6A Claim was deemed to accept the Plan pursuant to the terms of the Custody Settlement that he agreed to, as the Debtors have repeatedly explained to Mr. Kirsanov.[4]  The Letter is a mere continuation of Mr. Kirsanov's repeated baseless attempts to relitigate Confirmation, this time window-dressing his prior arguments by adding the word "fraud" to pursue relief under section 1144 of the Bankruptcy Code.

4.       This "argument" falls far short of the high standard for revocation of a confirmation order under section 1144.  The Court has already rejected Mr. Kirsanov's arguments six times, and it should do so again.  Accordingly, the Court should deny Mr. Kirsanov's Letter request and order such other relief as is just and proper with respect to Mr. Kirsanov's continued draining of estate assets with frivolous filings on the same issue.

---

[4]    *See, e.g.*, *Debtors' Supplemental Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates and Omnibus Reply to Certain Objections Thereto* [Docket No. 3864]; *Debtors' Response to Mr. Kirsanov's Motion for Clarification* [Docket No. 4014]; Oct. 30, 2024 Hr'g Tr. 36:15–37:3 ("That settlement and order specifically provided that any accountholder who accepted the settlement and voted no on the plan or abstained from voting would be deemed to have voted to accept. It was clear in the settlement. It was clear in the disclosure statement.").  In addition to public filings and on-the-record statements, the Debtors' counsel corresponded with Mr. Kirsanov via e-mail and telephone to facilitate Mr. Kirsanov's understanding of the Plan and Custody Settlement.

## Response

**I.      Mr. Kirsanov's Request to Vacate the Confirmation Order Should be Denied as Procedurally Improper.**

5.      As a threshold matter, the Bankruptcy Court should deny Mr. Kirsanov's request as procedurally deficient.  A request to vacate a confirmation order must be brought as an adversary complaint.  *See* Fed. R. Bankr. 7001(5) (an adversary proceeding includes "a proceeding to revoke an order of confirmation of a chapter 11 . . . plan); *see also In re BGI, Inc.*, No. 11-10614 (MG), 2012 WL 5392208, at *4 (Bankr. S.D.N.Y. Nov. 2, 2012) ("Courts analyzing section 1144 have consistently held that parties are barred from attacking a chapter 11 confirmation order by characterizing their action as an independent motion or cause of action, rather than an adversary proceeding to revoke the order."); *In re CTLI, LLC*, 534 B.R. 895, 905 (Bankr. S.D. Tex. 2015) ("When a party seeks revocation of a confirmation order through a contested matter, the bankruptcy court must dismiss the motion unless all parties consent to allowing the procedural error.").  Mr. Kirsanov filed his request to vacate the Confirmation Order as a letter, and the Post-Effective Date Debtors do not consent to allowing Mr. Kirsanov's procedural error. Therefore, the Letter request should be denied on procedural grounds.

**II.     Mr. Kirsanov's Request to Vacate the Confirmation Order Must Be Denied Because He Has Not Shown that the Confirmation Order Was Obtained Through Fraud.**

6.      Further, Mr. Kirsanov does not—and cannot—meet his burden of showing that the Confirmation Order was obtained through fraud.  Section 1144 permits a bankruptcy court to "revoke [a confirmation order] if and only if such order was procured by fraud."  11 U.S.C. § 1144. Fraud must be alleged with particularity and can be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Motors Liquidation Co.*, 462 B.R. 494, 506 (Bankr. S.D.N.Y. 2012) (citing Federal Rule of Civil

4

Procedure 9(b)). In assessing a claim under section 1144, courts apply a heightened standard which requires a creditor to plead facts sufficient to raise a strong inference of fraud. *Id.* at 506. Mere speculation and conclusory allegations are not enough to support a claim based on fraud. *Id.* (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Lastly, the alleged fraud must be directed at the bankruptcy court, not a particular creditor. *Id.* at 505.

### A. Mr. Kirsanov's Claims Were Not Reclassified.

7. Mr. Kirsanov alleges (once again) that his Claims were "reclassified . . . from 6A to 6B after balloting," apparently as a ploy by the Debtors to "defraud" creditors. Letter at 1. Mr. Kirsanov does not explain the Debtors' purported motive, and it is not clear what benefit Mr. Kirsanov believes the Debtors obtained from their alleged fraud or even what he proposes be done to correct it. Letter at 2 ("I understand that at this point, the egg can not [sic] be completely unscrambled.").

8. This argument by Mr. Kirsanov has been recycled, replied to, and rejected *ad nauseum*.[5] But to be clear and briefly explain it one more time: The Plan classifies Custody Claims as either Class 6A (General Custody Claims) or Class 6B (Withdrawable Custody Claims). Class 6B Claims are Custody Claims that (a) were not subject to a cause of action for a preference pursuant to section 547 of the Bankruptcy Code, either because the applicable Cryptocurrency was only ever used in the Debtors' Custody Program (and therefore there was no preferential transfer from the Earn Program or Borrow Program) or because the value of that transferred Cryptocurrency was below the $7,575 threshold required for a preference claim under

---

[5] All such prior explanations are included herein by reference. *Debtors' Supplemental Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates and Omnibus Reply to Certain Objections Thereto* [Docket No. 3864]; *Debtors' Response to Mr. Kirsanov's Motion for Clarification* [Docket No. 4014]; Oct. 30, 2024 Hr'g Tr. 36:15–37:3.

section 547(c)(9), and (b) were otherwise eligible for withdrawal under the Custody Withdrawal

Order (which relevantly excludes users with outstanding loans).  *See* Plan Art. I.A.99, I.A.204,

I.A.268.

9. Class 6A General Custody Claims included all Custody Claims that were not

Class 6B Withdrawable Custody Claims—*i.e.*, Class 6A included those Custody Claims that were

not eligible to be withdrawn under the Custody Withdrawal Order, including claims by account

holders who also had a loan.  *See* Plan Art. I.A.120.  Because Mr. Kirsanov had an outstanding

loan, he had a Class 6A General Custody Claim.  Class 6A General Custody Claims were eligible

to participate in the Custody Settlement, whereby they would settle their preference exposure in

exchange for being allowed to withdraw 72.5% of their applicable Cryptocurrency in-kind, in two

payments.  Customers who accepted the Custody Settlement were deemed to vote for the Plan.

*See* Plan Art. III.B.6A ("[A]ny votes cast by [a Custody Settlement Participant] on account of such

General Custody Claim, whether to accept or reject the Plan, shall be deemed votes to accept the

Plan consistent with the terms of the Custody Settlement Motion[.]"); Custody Settlement ¶ 5

("Any Settling Custody Account Holder wishing to elect in to and become a Party to this

Settlement Agreement must vote all of his or her Allowed Custody Claims to accept the Plan[.]").

This is exactly what Mr. Kirsanov did—he accepted the Custody Settlement and was allowed to

(and did) withdraw 72.5% of his Cryptocurrency.  Part of his end of the bargain was that his

Class 6A General Custody Claim was deemed to accept the Plan.

10. The Post-Effective Date Debtors suspect that Mr. Kirsanov believes that his

Class 6A Claim was reclassified as Class 6B because he had a "pure custody claim" and his vote

was deemed to accept the Plan, and every creditor in Class 6B was deemed to accept the Plan

because that class was fully unimpaired.  But just because he had a "pure custody" claim does not

mean he had a Class 6B Claim—because he had a loan, his claim was a Class 6A Claim. Moreover, Mr. Kirsanov argues that the Plan was improperly modified post-solicitation to reclassify his claim. *See* Letter at 3 (citing a change on PDF 136 of 193 of Docket No. 3577 as "reclassifying" claims). He is misreading that provision as well—all that change did was clarify that a holder of an eligible Custody Claim could withdraw Cryptocurrency even if they had an outstanding loan. *See* Plan Art. III.B.6B [Docket No. 3577 at PDF 136] (reflecting the addition of "For the avoidance of doubt, any Holder of an Allowed Withdrawable Custody Claim that also has an outstanding Retail Advance Obligation is also eligible to withdraw such Holder's Cryptocurrency associated with the applicable Allowed Withdrawable Custody Claim commencing on the Confirmation Date."). Contrary to Mr. Kirsanov's argument, this change did not modify the definition of a Withdrawable Custody Claim (which was defined with reference to the Custody Settlement Order) or change the associated classification for vote tabulation purposes.

**B.      Even If Mr. Kirsanov's Claims Were Reclassified, the Debtors Did Not Procure the Confirmation Order By Fraud.**

11.      Even if Mr. Kirsanov is correct (which he is not) that his claim was mis-classified or reclassified, there would be no effect on the Plan or Confirmation, because creditors in Class 6A voted overwhelmingly to accept the Plan. As a consequence, Mr. Kirsanov cannot show that the Debtors procured the Confirmation Order by fraud.

12.      To begin, Mr. Kirsanov does not even attempt to explain how the Debtors' alleged actions would amount to fraud on the Court. Mr. Kirsanov's baseless allegations are two-fold: (a) the Debtors reclassified certain creditors from Class 6B to Class 6A to secure confirmation of the Plan; and (b) the Debtors "adversely changed the rights and recovery of a class of creditors after balloting." Letter at 2. Mr. Kirsanov's "evidence" is just wild speculation, not evidence of "conscious misbehavior or recklessness" and certainly not evidence of "motive and opportunity to

7

commit fraud" as required to revoke the Confirmation Order under section 1144 of the Bankruptcy Code. *In re Motors Liquidation Co.*, 462 B.R. at 505–06.

13.     Of the 5,898 Holders of Class 6A Claims who voted, 5,869 voted to accept the Plan. *Amended Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3574] at 6.  Further, of the approximately $141.6 million worth of Class 6A Claims, 98.78% voted to accept the Plan.  *Id.*  Even if Mr. Kirsanov and the other eighty-eight similarly situated creditors were somehow allowed to vote against the Plan (or were reclassified as Class 6B), that would not change Class 6A's acceptance of the Plan by two-thirds in dollar amount and one-half in number as required by section 1126(c) of the Bankruptcy Code.  And Class 6B was not entitled to vote because that class was unimpaired.  Accordingly, even if the applicable votes were changed (which they should not be, as described herein), there would be absolutely no effect on Confirmation.  Not only did the Debtors not need the votes of Mr. Kirsanov and the eighty-eight similarly situated creditors to confirm the Plan, but the Bankruptcy Court also found that the Debtors' post-solicitation modifications to the Plan did not "otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan."  *See* Confirmation Order ¶ 21.

14.     The balance of the remaining arguments in the Letter were already litigated as part of the Confirmation Hearing or addressed in responses to Mr. Kirsanov's prior filings and were specifically overruled.  In sum, Mr. Kirsanov makes none of the required showings to revoke the Confirmation Order—he shows, as he has repeatedly through his other filings, that he did not understand the Custody Settlement or the Plan, and nothing more.  Therefore, Mr. Kirsanov's request to vacate the Confirmation Order should be denied.

New York, New York
Dated: May 22, 2024

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*