Dimitry Kirsanov
Pro Se Creditor
United States of America
dimitry.kirsanov@protonmail.com
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, et al., [1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Case No. 22-10964 |
| | ) | |
| | ) | |

_____

## DECLARATION OF DIMITRY KIRSANOV, CREDITOR, IN SUPPORT OF A REVOCATION PROCEEDING UNDER US 1144, ALONG WITH THE NOTIFICATION TO THE BANKRUPTCY COURT OF NON-RECEIPT OF CUSTODY ASSETS, WITH RELIEF REQUESTED AS DEEMED APPROPRIATE BY THE BANKRUPTCY COURT.

I, Dimitry Kirsanov, hereby declare under penalty of perjury, as follows:

1. The Debtors admitted that they had "not enough funds" according to their application, as it relates to my full CEL Token withdrawal in May of 2023.

2. Counsel to the Debtors admitted they had "issues" as it relates to CEL Token, and did not respond to further requests as it relates to satisfaction of the request in an alternative Cryptocurrency pursuant to the Shortfall provision. A request for mediation/arbitration was ignored.

_____

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030

3. On May 24th, 2023, the Debtors made a transfer of 500,000 CEL Token[2] , and less than 90 minutes later, pushed 246,561.2445 CEL Token[3] to my personal wallet.

4.  The Debtors never received permission from the Bankruptcy Court to move the 500,000 CEL Token  to satisfy the shortfall prior to confirmation.

5.  These transactions are visible on the public Blockchain. I invite the Court, members of the public, and fellow creditors to review the ledger for the transactions[4] on May 24th, 2023.

6. The Debtors in response to the original clarification, indicate that I had a 6B Claim (ECF 4014). However, in the 6B order, my name was unlisted for any assets. (ECF 2491)

7. The Debtors now claim that I withdrew all my eligible funds. This is untrue, and an act of fraud. The debtors have in possession (or have failed to safeguard) my remaining Pure Custody assets:

CEL Token: Approximately 477,639 (Admitted Shortfall, as of Effective Date, ECF 3431)

> "As a result, the Debtors cannot return CEL Token in kind and must assign it some (or no) value, even if they ultimately burn all CEL Tokens in their possession on the Effective Date as they intend. As a result, the Debtors cannot return CEL Token in kind and must assign it some (or no) value, even if they ultimately burn all CEL Tokens in their possession on the Effective Date as they intend."

Space Intentionally Left Blank

---

[2] Debtor CEL Transfer 0x1f2097b2f602dc0cf700dac84a89691752b9c3ec5956aa91a4af60ec3b4e5797
 CEL Partial Satisfaction  0xcfa752a0b0e04fff3201f283e3c71e536ddd4d04161ff6dabf92b3fc16a0850f
[4] May 24th, 2023 Transactions https://etherscan.io/advanced-filter?tkn=0xaaaebe6fe48e54f431b0c390cfaf0b017d09d42d&txntype=2&age=2023-05-24%7e2023-05-24&p=2

UST: 134196.994149 (Admitted Shortfall, converted pursuant to the Custody Settlement. ECF 2666)

"For the avoidance of doubt, the value of such digital asset as of the date of entry of the Custody Settlement Order shall be determined using the same methodology set forth in the Notice of Filing of Cryptocurrency Conversion Rates [Docket No. 1420], annexed hereto for reference. For the avoidance of doubt, the value of such digital asset as of the date of entry of the Custody Settlement Order shall be determined using the same methodology set forth in the Notice of Filing of Cryptocurrency Conversion Rates [Docket No. 1420], annexed hereto for reference. "

BTC: 0.0056903

DOGE: 4491.84125

LTC: 2.256082

ZEC: 1.6785

8. 88 Pure Custody Creditors with a loan, including myself, deserve an answer as to why there was not adequate adequate provisions on the voted on plan as called for by the Constitution §1125, and not be discarded. If such claims were not reclassified, the plan amendment, post balloting, would not list such similar-situated claims under 6B, contrary to my personal claims showing 6A.

9. Approximately 3212 Creditors had CEL in Custody, and had the CEL exempt Settlement forced upon them post-balloting, likewise should have a detailed answer as to why the change from a price determined by the Debtors in Possession and the Committee, which act as fiduciaries, to 0.25 cents, pursuant to §1127 and §1129. No such detailed answer was provided as ordered by the Court, and the debtors have admitted to burning all CEL Token in their position.

10. The Debtors violated the protective order by posting my family residence address on the docket (ECF 3871). Subsequently, Stretto serviced hundreds of of times the entire mailing list with such (3946). This was done after I had reported threats, intimidation, and harassment in relation to my involvement in the case. As to those, I have received continued directed anonymous and encrypted communications, including threats of Qui Tam action and litigation for my arguments, and asset freezing for bringing up balloting integrity and shortfall claims, along with a Special Counsel probe and indictment. To the extent there is any merit in any way to such communications, I request

unsealing of all pertinent documents, as the public deserves to know the entire truth.

11. As to my credibility, I have been involved with digital currencies for over two decades, some of which predate the conception of Bitcoin. I have previously received clearance to visit the White House. The Court had previously indicated interest as to where I was as related to my arguments - I am indeed located where my Custody Claim now can not be distributed in-kind aside from a BTC/ETH conversion, or cash, as communicated by Stretto. If it would please the Court, it would be a great honor to visit Your Honor in your Courtroom to provide any further personal details in camera, and share such information with the public if so deemed by the Court. I have not only put my name on the line for the truth and my rights to the best of my abilities, but quite literally, my life, liberty, and pursuit of happiness as afforded by the Constitution, which I interpret to have been grossly violated. I will fight for Justice to the best of my abilities, and I will do that before you in person if it would please the Court. No creditor should ever have to go through this.

12. It is my belief, I have been explicitly targeted and persecuted for my dissenting vote, in the Custody Class. I believe this resulted in the post-balloting change, as I reached out to the Committee and Debtor's Counsel prior to the post-balloting amendment with questions as it relates to the concerns I had, along with questions about balloting valuation when it was initially published. When asking about the provision in the Custody Settlement which permitted those 88 Pure Custody Creditors to reject, my creditor questions were met with silence and no response, until your Honor had ordered a response clarifying this matter. I believe parties in your Courtroom conspired to deprive my rights as afforded by the Constitution. The people deserve to have to have the upmost confidence and trust in the balloting results, and all creditor questions answered, not just convenient ones. I believe many of the parties that have asked you for substantial contributions – many of which had unknown settlement figures, blank checks to support the plan, and unknown fee expenses, have coordinated for their own best interests in many scenarios, instead of all creditors, including the ones most vulnerable and without representation. That was clear when within minutes, most of the parties submitted responses to the Omnibus objection to the Trustee. These coordinated efforts have undermined the fair recovery of a creditor such as myself and similarly situated creditors. I believe that this coordinated effort continues to mount in attempt to make an example out of me.

13. Although section 1144 provides that a chapter 11 confirmation order may only be revoked if it was "procured by fraud," the Bankruptcy Code does not define fraud. See Longardner, 855 F.2d at 461 citing In re Braten Apparel Corp., 21 B.R. 239, 256 (Bankr. S.D.N.Y. 1982) ("Congress provided no dictionary for the word 'fraud' and left it to the development of judicial gloss to guide delineation of types of conduct generally understood to constitute fraud."). Courts have generally interpreted section 1144 to require the requesting party to demonstrate actual fraudulent intent in connection with the procurement of the confirmation order. See, e.g., Tenn-Fla Partners v. First Union Nat'l Bank of Fla. (In re Tenn-Fla Partners), 226 F.3d 746, 750 (6th Cir. 2000); Longardner, 855 F.2d at 461; Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.), 462 B.R. 494, 505 (Bankr. S.D.N.Y. 2012); Ogden v. Ogden Modulars, Inc. (In re Ogden Modulars, Inc.), 180 B.R. 544, 547 (Bankr. E.D. Mo. 1995).

14. Several courts have held that the fraud in question need not be perpetrated upon the party requesting revocation; instead, fraud on the court is sufficient to support the request to revoke a confirmation order pursuant to section 1144. See, e.g., Tenn-Fla Partners, 226 F.3d at 751 (holding that "fraud on the court can justify revocation under [section] 1144"); In re V&M Mgmt., Inc., 215 B.R. 895, 904 (Bankr. D. Mass. 1997) (stating that section 1144 "does not necessarily require proof of pecuniary loss to the plaintiff but instead may be satisfied by *anticipated loss to the estate as a whole, prejudice to the estate, or even, in the case of fraud on the court*, *by harm to the integrity of the judicial process* (without proof of economic harm of any sort"); Ogden Modulars, 180 B.R. at 547 (holding that the failure to disclose material information known by an entity that is obligated to disclose such information may constitute fraud for the purposes of section 1144); In re Kostoglou, 73 B.R. 596, 599 (Bankr. N.D. Ohio 1987) ("[M]isrepresentations made to a bankruptcy court concerning the value of property owned by a debtor is the type of 'fraud' contemplated by Congress in enacting [section] 1144.").

15. Section 1144 varies from the standard for revocation of a chapter 7 discharge in that section 1144 does not require that the fraud in question was committed by the debtor—or the plan proponent—and does not require the party requesting revocation to have been unaware of the fraud at the time of discharge. Compare 11 U.S.C. § 1144 with 11 U.S.C. § 727(d)

5

16. At least one court has interpreted the phrase "procured by fraud" in section 1144, to call for a requesting party to demonstrate "that at least some of the creditors would have voted differently absent the alleged fraud." See Delta Airlines, 386 B.R. at 533–34; see also Motors Liquidation, 462 B.R. at 507 (noting that whether creditors would have voted differently in the absence of an alleged fraud was a consideration that the Delta Airlines court "found significant in addressing a similar request for section 1144 relief to advance a private agenda"). Although evidence of such an effect would not necessarily be indicative of fraud, the Delta Airlines court believed it would be instructive, noting that a court should be cautious in exercising its discretion under section 1144 "where none of the plaintiffs seeking to revoke the plan appear to have had the right to vote on confirmation, and none of the voting creditors who were allegedly defrauded into voting for confirmation have joined in or supported the suit to revoke the plan." Delta Airlines, 386 B.R. at 534.

17. In the above instance, some of the creditors would of certainly voted differently had they known the expectation of the Debtors and Committee would shift from a price that meets the best interests and exempting the Custody Class, to 0.25 cents. I am one of those creditors. The plan I voted on and the current iteration is not the one I voted on.

Please consider the above as an addition to my reservation of rights to supplement the record and complaint. As a matter of Justice, the crucial right of invoking the rights as afforded by the Constitution pertaining to this matter of significance is a substantial right, rather than a mere procedural detail. Such extends to the integrity of this process that should never be questioned. I trust the Court will consider an appropriate action. Thank you very much for the Court's continued patience with me as as Pro Se creditor.

God Bless you Chief Judge Glenn, and God Bless America.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on 5/27/24

/s/ Dimitry Kirsanov

Pro Se Creditor