# Exhibit A

Motion (Docket 4911)

Joseph E. Sarachek (Bar # 2163228)
**SARACHEK LAW FIRM**
670 White Plains Rd. - Penthouse
Scarsdale, New York 10583
Telephone:    (646) 403-9775
Facsimile:    (646) 861-4950

*Counsel to BFaller RD LLC, BFaller
ROTH RD LLC, SFaller TRD RD LLC,
and SFaller RD LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**MOTION SEEKING ENTRY OF AN ORDER
(I) APPROVING FURTHER DISTRIBUTION UNDER PLAN OF REORGANIZATION FOR
THE FALLER CREDITORS AND (II) GRANTING RELATED RELIEF**

BFaller RD LLC, BFaller ROTH RD LLC, SFaller TRD RD LLC, and SFaller RD LLC

(the "Faller Creditors") by and through their attorneys Sarachek Law Firm respectfully submit  this

Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of

Reorganization for the Faller Creditors and (II) Granting Related Relief (the "Motion").  This

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

Motion is supported by the Affidavit of Laura Faller McNeil in Support of the Faller Creditors' Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief (the "McNeil Affidavit"), filed concurrently herewith.  In support, the Faller Creditors state  the  following:

#### Preliminary Statement

1.  On January 31, 2024, the Post-Effective Date Debtors emerged from chapter 11 and commenced distributions under the Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction), dated January 29, 2024 (Docket #4289) (hereinafter referred to as the "Plan"). The language of the Plan provides that distributions were to be made as soon as possible after January 31.  However, for a certain group of corporate creditors, including the Faller Creditors, distributions were not made timely.  In fact, they received their distributions nearly three months later.   The Faller Creditors received the bulk of their distributions on April 22, 2024, eighty-two days after the Debtors' emergence[2]. This delay and distribution of fiat currency led to a significant impairment of the value of the Faller Creditors' positions.  As such, the Plan has not been consummated with respect to these parties, and the Faller Creditors have been severely damaged.  By this Motion, the Faller Creditors seek additional compensation in the sum of $350,595.02 from the bankruptcy estate to be made whole under the Plan.

2.  The Faller Creditors have the following allowed claims in the aggregate sum of $1,097,565.47:

    i.    BFaller RD LLC, claim no. 3.1.067590 in the sum of $716,632.83.

    ii.    BFaller ROTH RD LLC, claim no. 3.1.067591 in the sum of $118,029.08.

---

[2] Additionally, BFaller RD LLC received a wire on February 22, 2024, with a distribution of $414,733.89, but did not have access to the funds until March 8, 2024.

    iii.    SFaller RD LLC, claim no. 3.1.514363 in the sum of $118,124.38.

    iv.    SFaller TRD RD LLC, claim no. 3.1.514364 in the sum of $144,779.18.

3.    The Plan calculated fiat-equivalency distributions as of January 16, but cryptocurrency prices have risen significantly since then.   If the Faller Creditors had been made whole in cryptocurrency, then they would have been made whole (even if those prices had later subsequently dropped instead).   If the fiat currency Plan distributions had been made closer to January 31, the Faller Creditors could have re-purchased cryptocurrency at then-lower market prices and realized much of the gain since then.   But the distributions were made both late and in fiat currency, and these failures combined to unjustly impair the value of the Faller Creditors' investments and limit the value of the Plan distributions owed.

4.    Based on historical cryptocurrency prices, the Faller Creditors were damaged in the following amounts as described in the table below (reproduced from the McNeil Affidavit):

| Claimant | Claim Value | Distribution Received Date | BTC Price on Distribution Received Date | ETH Price on Distribution received Date | Fiat Value of BTC using Distribution Received Date Prices | Fiat Value of Eth using Distribution Received Date Prices | Total | Total With Interest [1] | Distribution Received | Shortfall |
|---|---|---|---|---|---|---|---|---|---|---|
| BFaller RD LLC | $716,632.83 | 2/22/2024 [2] | $ 70,083.05 | $ 3,998.83 | $ 356,462.55 | $ 304,639.15 | $661,101.70 | $ 666,462.96 | $ 414,733.89 | $ 251,729.07 |
| BFaller ROTH RD LLC | $118,029.08 | 4/22/24 | $ 67,233.96 | $ 3,236.66 | $ 56,322.50 | $ 40,610.86 | $ 96,933.36 | $ 98,675.50 | $ 68,042.64 | $ 30,632.86 |
| Sfaller RD LLC | $118,124.38 | 4/22/24 | $ 67,233.96 | $ 3,236.66 | $ 56,367.98 | $ 40,643.65 | $ 97,011.63 | $ 98,755.18 | $ 68,097.58 | $ 30,657.60 |
| Sfaller TRD RD LLC | $144,779.18 | 4/22/24 | $ 67,233.96 | $ 3,236.66 | $ 69,087.43 | $ 49,814.90 | $118,902.33 | $121,039.31 | $ 83,463.82 | $ 37,575.49 |
| **Total** | | | | | | | | | | $ 350,595.02 |

In total, the Faller Creditors have suffered damages in excess of $350,595.02[3].   *See* McNeil Affidavit ¶ 4, 5.

5.    On January 31, 2024, the Effective Date of the Plan occurred, and the Post-Effective Date Debtors and the Distribution Agents commenced distributions in accordance with the Plan.

---

[3] Interest rate is based on http://www.irs.gov/payments/quarterly-interest-rates.  BFaller RD LLC only had access to funds on March 8, 2024, accordingly BTC and ETC prices are calculated as of March 8.

*See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Docket No. 4298].

6.    Article 3, subsection B(5) of the Plan provides that creditors holding General Earn Claims would receive a *pro rata* share of cryptocurrency alongside other consideration.  The Plan states:

> Treatment: Each Holder of an Allowed General Earn Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) the MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights.

7.    Article 4 of the Plan, subsection G, which discusses mechanics of distributions under the Plan provides:

> On the Deactivation Date, the Allowed Custody Claims of Holders that did not retrieve their Plan distributions from the Celsius platform by the Deactivation Date shall be valued in accordance with the Deactivation Date Cryptocurrency Conversion Table and shall receive such distribution in the amount calculated based on the Deactivation Date Cryptocurrency Conversion Table in Liquid Cryptocurrency or fiat.  For the avoidance of any doubt, the Debtors or Post-Effective Date Debtors, as applicable, may elect in their reasonable discretion to make any distribution in fiat if no Distribution Agent is reasonably available to make a Liquid Cryptocurrency distribution to any particular creditor.

8.    Article 4, subsection K of the Plan provides:

> The Debtors (and, following the Effective Date, the Plan Administrator) shall use commercially reasonable efforts to make distributions of Liquid Cryptocurrency as provided for in this Plan to Account Holders in Liquid Cryptocurrency (as opposed to fiat) to the greatest extent possible. . . . . [The Plan Administrator] shall convert the Liquid Cryptocurrency that would otherwise be distributed to the Account Holder to fiat currency as close to the anticipated date of distribution as reasonably practical under the circumstances, and shall distribute such fiat currency to the Account Holder.

9.    In voting their ballots in acceptance of the Plan, the Faller Creditors believed they would be receiving cryptocurrency.  The Faller Creditors and their beneficiaries believed that this

election would provide the best return and protection for their retirement savings. Notwithstanding the fact that they elected to receive cryptocurrency, on or about January 19, 2024, the Faller Creditors were informed that only the top one hundred corporate creditors would be able to receive their distributions in cryptocurrency. *See* McNeil Affidavit ¶ 3. Subsequently, because they were concerned about the uncertainty of receiving cryptocurrency on a timely basis and the delay with opening new accounts, they elected to receive fiat currency. However, once distributions had still not been received on February 13, the Faller Creditors requested their distributions be in cryptocurrency given the delay. They were told that they could not affirmatively select a distribution partner (*i.e.* Coinbase or PayPal) and that only a limited number of corporate accounts would receive their distribution in cryptocurrency, and that all other corporate creditors would receive their distribution in US dollars. *See* McNeil Affidavit ¶ 3. While the Faller Creditors dispute that this mechanism could not be extended beyond one hundred creditors, the alleged limitations nevertheless should not have been the basis for disparate treatment between creditors in the same class.

10. The Debtors' conduct violates the provisions of the Bankruptcy Code and the Plan in two critical ways. First, by arbitrarily selecting which creditors would receive cryptocurrency, the Debtors created a disparity in treatment among similarly situated creditors. Creditors who received cryptocurrency received those distributions timely. As a result, these creditors experienced significant price appreciation and thus greater recoveries, while creditors who received US dollars (and were not timely paid) received significantly less recovery. It is common practice in bankruptcy cases for all distributions to be made at the same time. The Debtors retained a highly experienced claims agent but apparently did not let that agent handle the actual distributions. This is troubling. The failure of the Debtors to make all distributions simultaneously is inexplicable

and extremely prejudicial to an arbitrary subset of corporate creditors including the Faller Creditors.

11. Subsequent to the January 16 date used by the Debtors to calculate cryptocurrency prices, Bitcoin (BTC) and Ethereum (ETH), appreciated significantly in value. BTC increased approximately 60% and ETH increased approximately 40%. Accordingly, creditors who received cryptocurrency distributions, such as the top one hundred corporate accounts and individual creditors, received significantly more value under the Plan than other corporate creditors. Creditors who were forced to receive US dollars, such as the Faller Creditors, received less. Had the Faller Creditors been paid timely in US dollars, they would have purchased cryptocurrency and experienced the same significant appreciation other similarly situated corporate creditors received. By discriminating against the corporate creditors who did not receive cryptocurrency, such as the Faller Creditors, the Debtor violated the provisions of the Plan and the Bankruptcy Code by impairing creditors unequally and in an unapproved manner. The Debtors have not explained to this Court or the creditor body why treating the top one hundred corporate creditors differently was commercially reasonable. Indeed, the Debtors did not use commercially reasonable efforts to make distributions as provided in Article 4, subsection K of the Plan, because they only sought to use Coinbase and PayPal as the cryptocurrency distribution agents when others were available. In other similar large-scale cryptocurrency cases, such as Mt. Gox, the fiduciaries identified at least two other service providers, Bitgo and Kraken, which could handle widespread distribution to a large group of creditors. To the Faller Creditors' knowledge, no explanation or justification has been provided for the Debtors' arbitrary choice.

12. Furthermore, the Debtors represented that the cryptocurrency of the corporate creditors was converted to cash on January 16, 2024 (*see* Docket 4298), but the bulk of cash payments were

not made until April 22, 2024.  The Plan states that the Plan Administrator, when making a fiat distribution in lieu of cryptocurrency, would make the conversion "as close to the anticipated date of distribution as reasonably practical under the circumstances[.]"  Plan at Art. 4 § (K)(1).  The 97 days that passed between sale and distribution is certainly not a reasonable period of time.  While the Debtors stated that they had to change banking partners, there is no evidence in the record that it was not foreseeable prior to the time they liquidated corporate creditors' cryptocurrency.

13. The damages derive from the delay in distributions by the Debtors.  While similarly situated creditors received distribution closer to January 15, 2024, the Faller Creditors did not.  Throughout the period of time that the Faller Creditors were waiting for their distributions, BTC and ETH continued to rise in value.  Accordingly, the Faller Creditors have been shortchanged and damaged by the Debtors.  Therefore, the Faller Creditors seek additional distributions in the sum of $350,595.02

14. A large number of the corporate accounts are single-member limited liability corporations which hold retirement accounts, family trusts, and non-traditional corporate assets which individuals rely on for their sustenance and needs.  These corporate creditors are not financial institutions, but they were classified with the larger corporate creditors and should have been treated equally.   Yet the Debtors' arbitrary distinction treated these smaller corporate creditors differently, to their detriment.  And despite the small corporate creditors primarily being vehicles for an individual's savings, their disparate treatment also disadvantaged them compared to individual creditors.  It is for these reason that the Faller Creditors respectfully request that the Debtors be ordered to make additional distributions and "true up" the Faller Creditors.

15. Section 1129 (b)(1) of the Bankruptcy Code provides that a plan of reorganization shall be confirmed "if the plan does not discriminate unfairly, and is fair and equitable, with respect to

each class of claims or interests that is impaired under, and has not accepted, the plan." Generally, this is understood that similarly situated creditors must be treated equally.  As discussed above, this was not the case under this Plan.

### Jurisdiction

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and  the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. This Court has authority to direct the Debtors to make further distributions to the Faller Creditors.

17. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Basis for Relief

18. This Motion seeks relief pursuant to the Order Approving the Adequacy of the Debtors' Disclosure Statement, (ii) Approving the Solicitation and Voting Procedures with Respect to the Confirmation of the Debtors' Joint Plan of Reorganization, (iii) Approving the Form of Ballots and Notices in Connection Therewith, (iv) Scheduling Certain Dates with Respect Thereto, (v) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (vi) Granting Related Relief (the "Disclosure Statement  Order") (Docket #3337), the Plan, the Findings of Fact, Conclusion of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates (the "Plan Order") (Docket #3972), Sections 105(a), 1129 and 1144 of the Bankruptcy Code and  Bankruptcy  Rule 9024.

### Motion Practice

19. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly,  the  Faller Creditors  submit  that this Motion satisfies Local Rule 9013-1(a).

### Notice

20. The Faller Creditors will provide notice of this Motion to the following parties or their respective counsel: (a) counsel to the Debtors; (b) the U.S. Trustee; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002 after the Effective Date.  In light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

21. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Faller Creditors request that the Court enter an Order, substantially in the form attached herein as **Exhibit A**, granting the relief requested herein.


Scarsdale, New York                    _/s/_ Joseph E. Sarachek
Dated: June 3, 2024                    Joseph E. Sarachek (Bar # 2163228)
                                       **SARACHEK LAW FIRM**
                                       670 White Plains Rd. - Penthouse
                                       Scarsdale, New York 10583
                                       Telephone:      (646) 403-9775
                                       Facsimile:      (646) 861-4950

**<u>Exhibit A</u>**

**Pro  osed Order**

SARACHEK LAW

670 White Plains Rd. Fl. PH, Scarsdale, NY 10583  P: (646) 517-5420

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING FURTHER DISTRIBUTION UNDER THE PLAN OF
REORGANIZATION  AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")  of the  BFaller RD LLC, BFaller ROTH RD LLC,

SFaller TRD RD LLC, and SFaller RD LLC (the "Faller Creditors") for entry of an order (this

"Order"), approving further distributions to be issued under the Debtors Plan of

Reorganization[2] all as more fully set forth in the Motion; and upon and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing

Order of Reference* from the United States District Court for the Southern District of New York,

entered February 1, 2012; and this Court having the power to enter a final order consistent with

Article III of the United States Constitution; and this Court having found that venue of these chapter

11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that the relief requested in the Motion is in the best interests of the Post-Effective Date

Debtors' estates,their creditors, and other parties in interest; and this Court having found that the

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.
[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

SARACHEK LAW

670 White Plains Rd. Fl. PH. Scarsdale, NY 10583  P: (646) 517-5420

Faller Creditors notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (the "Hearing") before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

The Motion is granted as set forth herein.

Notice of the Motion as provided therein shall be deemed good and sufficient noticeof such Motion, and the requirements of Bankruptcy Rules and the Local Rules are satisfied by such notice.

Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

The Post-Effective Date Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

This Court retains exclusive jurisdiction with respect to all matters arising from orrelated to the implementation, interpretation, and enforcement of this Order.


New York, New York
Dated: June            , 2024

                    THE HONORABLE MARTIN GLENN
                    CHIEF UNITED STATES BANKRUPTCY JUDGE