Jason Voelker
145 Corte Madera Town Center #146
Corte Madera, CA 94925

Tel.: (415) 609-9967
Email: Jason.voelker@ymail.com

THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>CELSIUS NETWORK LLC, et al.,<br>    Debtors.<br><br>v.<br><br>JASON VOELKER, et al.,<br><br>    Real Parties in Interest.<br><br>JASON VOELKER, Appellant, et al.<br><br>v.<br><br>Celsius Network LLC, Appellee, et al. | District Court Case No.: 24-CV-04057(LJL)<br><br>Bankruptcy Court Case No.: 22-10964 (MG)<br><br>**OPPOSITION TO CLAIMS ADMINISTRATOR'S MOTION TO STRIKE PORTIONS OF THE BANKRUPTCY RECORD FROM THE DESIGNATED RECORD ON APPEAL AND A REQUEST THAT THE COURT CONSTRUE THIS OBJECTION AS A MOTION TO AUGMENT THE APPELLATE RECORD** |

**OPPOSITION TO MOTION TO STRIKE**

Jason Voelker, a shareholder of iCapital Management, Inc. ("iCapital") and appearing pro se in his capacity as a derivative shareholder on behalf of iCapital, respectfully submits this opposition to the Litigation Administrator's Motion to Strike his previously filed

-1-

Declaration (the "Declaration") (Docket No. 4903). Mr. Voelker earnestly requests that the motion be denied and that this Court construe this Opposition as a motion to augment the appellate record to include the Claims Administrator's Motion to Strike, this Opposition, any Reply brief filed by the Claims Administrator, and the Court's Order on the Motion to Strike.

**Introduction**

The Litigation Administrator's Motion to Strike is a misguided attempt to sanitize the appellate record, perpetuate an injustice against iCapital, and undermine the fundamental principles of fairness and transparency upon which our judicial system aspires. The disputed Declaration, a short but meticulously crafted document submitted in accordance with Federal Rule of Bankruptcy Procedure 8009(b)(1) and duly incorporated into the bankruptcy record, paints a vivid picture of the entire judicial landscape in this matter. It details a series of events and communications that, while, some occurring after the bankruptcy court's dispositive ruling, are inextricably linked to the core issues of this appeal. To strike the Declaration would be to deprive the appellate court of crucial context, leaving it with an incomplete and potentially distorted understanding of the case.

Mr. Voelker respectfully submits that the Motion to Strike is not only procedurally defective but also substantively unsound. The Declaration is a repository of admissible evidence that exposes the Claims Administrator's inconsistent positions, questionable conduct, and the unresolved ambiguity surrounding the valuation of iCapital's claim. Furthermore, the Motion to Strike is strategically disingenuous, as it appears designed to obfuscate the full narrative of this case and sanitize the appellate record in a manner that would unduly benefit Celsius and the Claims Administrator at the expense of iCapital's rightful interests.

**I. Procedural Deficiencies and Questionable Conduct**

**A. Failure to Meet and Confer in Good Faith**

The Litigation Administrator's Motion to Strike is fundamentally flawed from its inception due to a flagrant disregard for the professional courtesy of meeting and conferring

-2-

in good faith before resorting to motion practice. The emails attached to the Declaration unequivocally demonstrate the Claims Administrator's dismissive and evasive responses to Mr. Voelker's repeated attempts to engage in constructive dialogue regarding the claims process. This intransigence not only contravenes the fundamental principles of collegiality, cooperation, and judicial economy that should underpin bankruptcy proceedings, but it also represents a continuation of the Claims Administrator's pattern of refusing to partake in reasonable dialogue concerning iCapital's claim. It reflects a troubling preference for adversarial tactics over collaborative problem-solving, needlessly escalating the dispute, consuming valuable judicial resources, and ultimately hindering a just and efficient resolution. Courts have consistently emphasized the importance of good faith efforts to resolve disputes before resorting to litigation. The Claims Administrator's failure to engage in such efforts is not only a procedural misstep but also a breach of professional decorum and an affront to the spirit of cooperation that should guide these proceedings.

**B. Improper Ex Parte Communication**

The Litigation Administrator's unilateral communication with the Court, excluding Mr. Voelker, while simultaneously referencing their intent to file a motion to strike and raising additional issues via a letter to the Court through the Electronic Case Filing ("ECF") system – a system to which Mr. Voelker has expressly been denied access – constitutes improper ex parte contact. This action violates the bedrock principle of due process, which guarantees all parties the right to be heard. By engaging in this ex parte communication, the Claims Administrator has potentially prejudiced the Court's perception of the issues and denied Mr. Voelker an opportunity to respond to their arguments promptly and effectively.

The prohibition against ex parte communications is not a mere technicality; it is a fundamental safeguard designed to ensure the impartiality and integrity of the judicial process. By circumventing this safeguard, the Claims Administrator has cast a shadow over these proceedings and jeopardized the fairness of the outcome.

### C. A Pattern of Bad Faith Conduct: Obfuscation and Manipulation

The cumulative effect of the Claims Administrator's actions – the refusal to meet and confer, the improper ex parte communication, and the timing of the Motion to Strike – paints a disconcerting picture of bad faith and a deliberate attempt to manipulate the appellate record. This pattern of conduct is particularly egregious given that the Claims Administrator's ex parte letter to the Court contained information that was entirely omitted from the Motion to Strike itself. This selective disclosure raises questions about the Claims Administrator's motives and adherence to the principles of candor and transparency that are essential to the administration of justice.

## II. Substantive Importance of the Voelker Declaration and Attached Email Chain

### A. The Imperative of the Complete Record

The Declaration is not merely informative; it is an indispensable component of the evidentiary record. Federal Rule of Bankruptcy Procedure 8009(b)(1) explicitly allows parties to designate items for inclusion in the record on appeal. The Declaration, containing admissible evidence under FRE 801(d)(2) of the Claims Administrator's inconsistent positions and actions, is directly relevant to the dispute and provides crucial context for understanding the parties' intent, the nature of the bailment relationship, and the ongoing prejudice suffered by iCapital. Moreover, it supports Voelker's impending defense of judicial estoppel (discussed in section B, *infra*).

To strike the Declaration would be akin to removing a vital chapter from a novel, leaving the appellate court with an incomplete and potentially misleading narrative. It would deprive the court of crucial information necessary to understand the full scope of the dispute, the parties' intentions, and the evolving nature of the Claims Administrator's positions.

### B. Exposing Inconsistent Positions: The Sword of Judicial Estoppel

The Declaration exposes a glaring inconsistency in the Claims Administrator's position regarding the Wyoming Assets. Initially, they unequivocally assured iCapital of full compensation, including these assets, inducing justifiable reliance on the part of iCapital.

-4-

The Claims Administrator even acknowledged the inclusion of the Wyoming assets in response to direct inquiries from Mr. Voelker. Now, in a volte-face that strains credulity, the Claims Administrator asserts that these assets were never part of the estate, thereby potentially diminishing iCapital's recovery. This blatant inconsistency triggers the doctrine of judicial estoppel, a legal principle designed to prevent parties from "playing fast and loose" with the courts by taking contradictory positions in litigation. Judicial estoppel requires the following elements:

1. **Clearly Inconsistent Positions:** The party to be estopped must have asserted a position in a prior proceeding that is clearly inconsistent with its later position. Here, the Claims Administrator's current denial that the Wyoming Assets were part of the estate is in direct conflict with their earlier assertion that they were subject to the bankruptcy court's jurisdiction and the plan's injunction.

2. **Adoption by the Court:** The court must have adopted the earlier position in some manner. In this case, the bankruptcy court implicitly adopted the Claims Administrator's position by denying Voelker's motion for leave to file an adversary proceeding, relying on the argument that the Wyoming Assets were part of the estate.

3. **Intentional Deception:** The party must have intentionally misled the court to gain an unfair advantage. The Claims Administrator's deliberate change in position, after successfully preventing Mr. Voelker from pursuing an adversary proceeding, strongly suggests an intent to manipulate the legal process for their own benefit.

The Appellees' contradictory positions regarding the status of the Pledged Digital Assets constitute a blatant abuse of the judicial process. This duplicity not only misled the bankruptcy court but also prejudiced Appellant's rights. Now, Appellees assert that they never argued that the assets were a part of the estate, a contention that flies in the face of reality. Discharge injunctions do not apply towards bailments. If the Wyoming assets were not a part of the estate, as Voelker had argued below, the claims administer had no basis for seeking to have iCapital and Voelker enjoined under the discharge injunction because the

-5-

discharge injunction would not have been applicable to assets held outside of the bankruptcy estate. The Claims Administrator's invocation of the confirmed plan's injunction to bar Appellant's claims constitutes a very clear position that the asserts were a part of the estate.

Injunctions in bankruptcy are potent instruments, but their power is circumscribed by the Bankruptcy Code. Their reach extends only to claims against property of the estate, not to extinguish valid claims against property held in trust for another. The Bankruptcy Code is unambiguous: "property of the estate" encompasses only the debtor's interests in property, not the interests of others. 11 U.S.C. § 541(a)(1). The Supreme Court has affirmed this principle, holding that the Bankruptcy Code does not affect the property rights of others. *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 12 (1924).

The Administrator's current attempt to distance itself from its prior assertions that the Wyoming Assets were estate property are disingenuous and constitute a blatant attempt to evade accountability for their actions. The Declaration and attached emails expose these inconsistencies, and this Court should not strike the Declaration from the record.

**C. Unresolved Ambiguity and Ongoing Prejudice**

The Declaration further exposes the unresolved ambiguity surrounding the valuation of iCapital's claim, which remains deliberately obscured despite the Court's Order. iCapital has consistently and clearly articulated the precise amount of its claim, including the Wyoming Assets, in multiple filings and communications. The Claims Administrator had ample opportunity to contest this valuation during the initial stages of the proceedings but chose not to do so. However, the emails attached to the Declaration reveal a disconcerting shift in the Claims Administrator's position. They now feign ignorance as to the claim's value, asserting that it has been fully resolved. This assertion is demonstrably false. To date, iCapital has received a paltry 50 shares of stock and a little over $3,000 – a mere 0.027% of the total value of iCapital's assets that were converted into this bankruptcy matter.

Despite requests for an accounting and reconciliation of value, iCapital has been met with stonewalling and threats of litigation. This deliberate obfuscation and delay not only prejudice iCapital's rights but also raise serious questions about the Claims Administrator's fiduciary duties and commitment to transparency. Their actions suggest a calculated strategy to deprive iCapital of its rightful recovery, further underscoring the need for the Declaration with the attached emails to be considered by the appellate court.

As reflected in the emails attached to the declaration, the Claims Administrator's valuation of the amount to be paid is still nonexistent, creating a convenient smokescreen to obscure their prior concessions and the unambiguous documentation in the record. This contrived misunderstanding is not only disingenuous but also deeply prejudicial to iCapital. By refusing to acknowledge the previously established valuation, the Claims Administrator is attempting to deprive iCapital of its rightful recovery. This calculated strategy of obfuscation and delay is a blatant attempt to gain an unfair advantage in the appellate process and to frustrate Mr. Voelker's efforts to obtain a just and equitable result for himself and iCapital. The Appellate Court cannot allow such obfuscation and strategic maneuvering to stand. The Claims Administrator should be held to their prior representations and the clear documentation in the record, which unequivocally establishes the value of iCapital's claim.

**III. The Declaration's Relevance Beyond the Court's Dispositive Ruling**

While it is axiomatic that appellate review is typically confined to the trial record, this case presents a unique scenario that necessitates a broader evidentiary lens. The bankruptcy court's denial of leave to file an adversary proceeding was not the final determination of iCapital's rights. Instead, it thrust iCapital into the ongoing claims process, where it should have simply been paid 105% of its valuation of its total assets minus the departure in value due to the confirmed plan schedules. The amount of assets iCapital entrusted to Celsius, including a discrete set of assets held in a segregated escrow account under the exclusive jurisdiction of Wyoming law, comprised of 17.61163 in Bitcoin (BTC), 0.08 Ethereum (ETH), 7,230.88 USD Coin (USDC), and 152.18 Zcash (ZEC)- are collectively valued in the

-7-

amount of $1,101,780.50 as of April 17, 2024. (Order at pp. 10-11; Motion at 4; Proposed Adversary Complaint ¶¶ 4, 5; May 24, 2024 Decl. at p. 1, ¶ 2.) However, as of June 10, 2024, the estimated market value of these assets has appreciated considerably, with Bitcoin alone valued at $1,226,526.39, Ethereum at $167.30/ETH * 0.08 ETH = $13.38, and Zcash at $32.62/ZEC * 152.18 ZEC = $4,962.32. This brings the total estimated current value of the assets to $1,238,762.69. Yet, iCapital has only received a paltry 50 shares of stock and a little over $3,000, representing a minuscule fraction of their rightful claim that has apparently been "resolved." Exhibit A to the Voelker Declaration.

Voelker and iCapital have faced significant obstacles and been subjected to the Claims Administrator's inconsistent and potentially prejudicial actions. The Declaration, documenting events that occurred before and after the dispositive ruling, provides critical evidence of the Claims Administrator's conduct and the ongoing prejudice suffered by iCapital. This evidence is not extraneous; it is inextricably linked to the core issues of this appeal and demonstrates the continuing harm caused by the bankruptcy court's putative error. Appellate courts have the discretion to consider evidence outside the record in exceptional circumstances, particularly when such evidence is relevant to the issues on appeal and necessary for a complete understanding of the case.

Similarly, the Declaration in this case, which is a part of the record, is crucial for understanding the interpretation of the Court's prior orders, the claims process, and the Claims Administrator's evolving positions regarding the Wyoming Assets. This evidence is vital to assess whether the bankruptcy court erred in denying iCapital's motion to file an adversary proceeding and whether iCapital has been prejudiced in the claims process. Moreover, the Declaration is not only relevant to the specific issues raised on appeal but also serves a broader purpose in ensuring a just and equitable resolution for all parties involved. It provides crucial insights into the conduct of the Claims Administrator, their motives, and the potential impact of their actions on iCapital's interests.

By shedding light on these issues, the Declaration helps to ensure that the appellate court has a complete and accurate picture of the case, enabling it to render a decision that is both legally sound and fair to all parties. In the interest of justice, this Court should not only deny the Motion to Strike but also construe it as a motion to augment the record, allowing the appellate court to consider the full scope of the Claims Administrator's arguments, actions, and the evidentiary record, including the Declaration and its accompanying exhibits.

In conclusion, the Litigation Administrator's Motion to Strike the Voelker Declaration is a thinly veiled attempt to obscure a disturbing pattern of inconsistency, obfuscation, and potential abuse of discretion that has plagued this bankruptcy case. The Declaration is not merely a supplemental document, but an essential piece of the puzzle that illuminates the Claims Administrator's questionable conduct and the resulting prejudice suffered by iCapital. To strike the Declaration would be tantamount to sanctioning a deliberate manipulation of the judicial process, thus perpetuating an injustice and undermining the fundamental principles of fairness and transparency upon which our legal system rests.

The Declaration is not only procedurally proper but substantively vital for a comprehensive appellate review. It exposes the Claims Administrator's contradictory positions regarding the status of the Wyoming Assets, their refusal to engage in good faith negotiations, and their potential breach of fiduciary duty. Moreover, it provides crucial evidence of the ongoing harm suffered by iCapital due to the Claims Administrator's actions, refuting any notion of harmless error.

The Court should not allow the Claims Administrator to escape accountability for their conduct. By denying the Motion to Strike and construing it as a motion to augment the record, this Court will ensure that the appellate court has all the necessary information to render a just and equitable decision. The appellate court, with a complete picture of the case before it, will be able to thoroughly assess the Claims Administrator's actions and determine whether they constitute a manifest abuse of the bankruptcy process.

It is imperative that the Court err on the side of transparency and inclusion of evidence, rather than exclusion, to safeguard the integrity of the bankruptcy process and to protect the rights of all parties involved. The Declaration is not merely relevant; it is indispensable for a fair and informed appellate review.

Furthermore, given the unnecessary delays caused by the Litigation Administrator's refusal to engage in a meet-and-confer process, iCapital respectfully requests that the reviewing court toll the time for filing the opening brief pending a decision on this matter. A copy of that request has been lodged contemporaneously with this Opposition.

Dated: June 10, 2024

                                                          Respectfully submitted,

                                                          Jason Voelker

**Certificate of Service**

I, Jason Voelker, certify that on June 10, 2024, a copy of this Opposition as well as a request for Tolling off the Time to File the Opening Brief in the Reviewing Court and was uploaded to the Pro Se Upload Portal within the U.S. Bankruptcy Court's online portal. I understand that the Clerk of Court will examine and docket this Notice, making it available to all parties in the case through the ECF system, in accordance with the Federal Rules of Bankruptcy Procedure.

_____
Jason Voelker