UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
                                                              :
                                                              :
IN RE CELSIUS NETWORK LLC, et al.                             :      23 Civ. 10368 (LGS)
                                                              :
                                                              :   **OPINION AND ORDER**
                                                              :
                                                              :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Appellant Johan Bronge, proceeding pro se, appeals a decision of the United States Bankruptcy Court for the Southern District of New York confirming the Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (the "Plan") filed in the bankruptcy cases of Celsius Network LLC ("Celsius") and its affiliates (collectively, the "Debtors").[1]  Appellees in this action are Celsius and the Official Committee of Unsecured Creditors.  For the reasons below, the appeal is dismissed as equitably moot.

**I.    BACKGROUND**

The following facts appear to be undisputed and are taken from the record on appeal, unless otherwise noted.

On July 13, 2022 (the "Petition Date"), Celsius commenced Chapter 11 bankruptcy proceedings.  Prior to filing for Chapter 11, Celsius operated a cryptocurrency platform with over 600,000 customers.

---

[1] The Debtors in these Chapter 11 cases are Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, Celsius US Holding LLC, GK8 Ltd., GK8 UK Limited and GK8 USA LLC.

Two programs Celsius offered to its customers included the Earn Program and the Borrow Program. Under the Earn Program, customers deposited cryptocurrency with Celsius and earned rewards on those deposited assets. At the time of Celsius' Chapter 11 filing, the cryptocurrency assets deposited into those earn accounts totaled over $4 billion in value. Under the Borrow Program, customers deposited cryptocurrency with Celsius to serve as collateral against loans from Celsius to the loan customer. Appellant maintained four loan accounts with Celsius prior to its Chapter 11 filing, each governed by Terms and Conditions applicable to the specific loan and by General Terms of Service. The collateral that Appellant deposited consisted of Bitcoin ("BTC"), totaling 19.732462692 BTC across the four loans.

A critical issue during the Chapter 11 process was whether Celsius or the account holder owned the legal title to deposits and collateral associated with earn and loan accounts. On January 4, 2023, the Bankruptcy Court issued an opinion holding that cryptocurrency assets deposited into earn accounts prior to the Chapter 11 filing were property of the Debtors' bankruptcy estates. During subsequent briefing regarding the proposed Chapter 11 plan of reorganization, Appellant raised arguments that are the subject of this appeal. On November 9, 2023, the Bankruptcy Court confirmed the Plan in its Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates (the "Confirmation Order"), finding that loan account holders "transferred ownership and control of their Cryptocurrency used to secure loans in the Debtors' Borrow Program to the Debtors." This appeal followed on November 23, 2023. On December 13, 2023, the Bankruptcy Court issued an opinion that specifically addressed Appellant's objection regarding the ownership of collateral for loan accounts. The Bankruptcy Court concluded that the terms applicable to one of Appellant's loans unambiguously gave ownership to the Debtors. No party

requested a stay of the Confirmation Order. The Debtors emerged from Chapter 11 on January 31, 2024, the Effective Date of the Plan.

Appellant makes the following primary arguments on appeal, reiterating his objection to the Plan: (1) the collateral supporting Appellant's loan accounts was his property and not Celsius' on the Petition Date based on his interpretation of the governing term documents; (2) the claims of customers with earn accounts should be subordinated to the claims of customers with loan accounts under 11 U.S.C. § 510(b) and (3) Appellant's claim should be valued based on market rates at the time of claim distribution, and not the U.S. dollar value of his cryptocurrency assets based on the conversion rate on the Petition Date.

## II.    LEGAL STANDARD

District courts have appellate jurisdiction over bankruptcy court rulings under 28 U.S.C. § 158(a)(1). Section 158(a)(1) confers jurisdiction on the "district courts of the United States . . . to hear appeals (1) from final judgments, orders, and decrees" of the Bankruptcy Court. "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012); *accord In re Pecoraro*, No. 22 Civ. 7249, 2024 WL 1988904, at *2 (S.D.N.Y. May 6, 2024). Mixed questions of fact and law are also reviewed de novo. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003); *accord In re Hopkins Fabrication, LLC*, 600 F. Supp. 3d 215, 232 (D. Conn. 2022).

A pro se filing is granted "special solicitude" and is interpreted "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir.

2018);[2] *accord In re 60 91st St. Corp.*, No. 20 Civ. 4032, 2021 WL 860375, at *2 (S.D.N.Y. Mar. 8, 2021).

### III. DISCUSSION

The appeal is dismissed as equitably moot because the Plan has been substantially consummated and granting Appellant relief would require unwinding billions of dollars of distributions made to roughly 184,000 creditors. "Equitable mootness is a prudential doctrine under which a district court may in its discretion dismiss a bankruptcy appeal when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014). "[E]quitable mootness . . . is concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's plan of reorganization." *In re Charter Commc'ns, Inc.*, 691 F.3d at 481. "The doctrine requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *In re BGI, Inc.*, 772 F.3d at 107. "In our Circuit, a bankruptcy appeal is presumed equitably moot when the debtor's reorganization plan has been substantially consummated." *Id.* at 108. "Substantial consummation is defined in the Bankruptcy Code to require that all or substantially all of the proposed transfers in a plan are consummated, that the successor company has assumed the business or management of the property dealt with by the plan, and that the distributions called for by the plan have commenced." *In re Charter Commc'ns, Inc.*, 691 F.3d at 482 (citing 11 U.S.C. § 1101(2)).

The presumption of equitable mootness can be overcome if all five of the below *Chateaugay* factors are met:

(1) the court can still order some effective relief;

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

> (2) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
> (3) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
> (4) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
> (5) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* (quoting *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952-53 (2d Cir. 1993) ("*Chateaugay*")). "Only if all five *Chateaugay* factors are met, and if the appellant prevails on the merits of its legal claims, will relief be granted." *Id.*

Here, the Plan has been substantially consummated. As of March 4, 2024, the Debtors had transferred the main assets, Bitcoin mining assets, to a new company and distributed approximately $2.7 billion of cryptocurrency to 184,045 creditors. The Debtors had also commenced work pursuing litigation and other illiquid assets on behalf of the Debtors' estates, with any future proceeds to be distributed to creditors. *See, e.g.*, *In re BGI, Inc.*, 772 F.3d at 110 (finding substantial consummation when debtor "transferred its relevant property" and "began administering timely filed claims and making distributions to holders of allowed administrative and priority claims"); *In re Frontier Commc'ns Corp.*, No. 7:20 Civ. 6268, 2021 WL 2333627, at *7 (S.D.N.Y. June 8, 2021) (finding substantial consummation when assets were transferred to a new entity and a significant portion of claims had been paid). As the Plan has been substantially consummated, the appeal must meet all five *Chateaugay* factors to overcome the presumption of equitable mootness.

Appellant has not met his burden of showing that at least the third and fifth factors have been met. The fifth factor requires the diligent pursuit of "all available remedies to obtain a stay of execution of the objectionable order." *See In re Charter Commc'ns, Inc.*, 691 F.3d at 482. The

Second Circuit has placed "special emphasis" on the fifth factor in considering equitable mootness. *Matter of MPM Silicones, L.L.C.*, 874 F.3d 787, 805 (2d Cir. 2017). "We insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005). Courts have required a showing as to the fifth factor even if the appellant is proceeding pro se. *See In re Centric Brands Inc.*, No. 22 Civ. 2702, 2023 WL 2139556, at *6 (S.D.N.Y. Feb. 21, 2023); *cf. Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law."). The Bankruptcy Court record reflects, and Appellant does not dispute, that he did not seek a stay of the Confirmation Order.

The appeal also fails to meet the third *Chateaugay* factor. There is no relief the Court could order that would not "unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." *See In re Charter Commc'ns, Inc.*, 691 F.3d at 482. Appellant requests three forms of relief: (1) that Appellant's collateral for his four loans be returned, (2) that his claims be adjusted to account for the subordination of earn account claims to loan account claims and (3) that the valuation of Appellant's claims be governed by a market rate separate from the conversion rate from BTC to U.S. dollars on the Petition Date. Contrary to Appellant's contention, providing even the small relief Appellant seeks just for himself would require completely unraveling the Plan. A determination on the merits that loan account holders were the proper owners of loan collateral under the applicable terms cannot be applied only to Appellant. Such a determination would have to be applied to all similarly situated borrowers and would require clawing back, reallocating and redistributing at least hundreds of

millions of dollars of stock, cryptocurrency and cash that have already been distributed to creditors under the assumption that borrowers such as Appellant were unsecured creditors with general unsecured claims against the estates. The same is true if earn account claims were subordinated to loan account claims because the Bankruptcy Court would need to reevaluate whether confirmation under that plan meets the requirements of 11 U.S.C. § 1129. This reevaluation would require the completion of another liquidation analysis to assess whether the new plan satisfies the best interests of creditors test under § 1129(a)(7). Appellant's third requested relief would lead to the same result because his preferred method of valuation would necessitate the revaluation of a significant majority -- if not all -- of the claims covered by the Plan. Courts have found that relief of less magnitude in less complex cases fails under these factors. *See, e.g.*, *In re Windstream Holdings, Inc.*, 838 F. App'x 634, 637 (2d Cir. 2021) (summary order) (finding appeal equitably moot when granting the requested relief "could cause tens of millions of dollars in previously satisfied claims to spring back to life"); *In re Terrestar Corp.*, No. 16 Civ. 1421, 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) (finding equitable mootness when "revocation would require [debtor] to claw back over $6 million in payments to creditors"). In short, Appellant's requested relief would require the Debtors to unwind consummated transactions, change the priority of distributions and revalue claim amounts. This relief would require the significant "unravel[ing of] intricate transactions" so as to "create an unmanageable, uncontrollable situation for the Bankruptcy Court." *See In re Charter Commc'ns, Inc.*, 691 F.3d at 482.

IV.  **CONCLUSION**

For the reasons stated above, the appeal is **DISMISSED** as equitably moot.

The Clerk of Court is respectfully directed to close this case and to mail a copy of this Opinion and Order to pro se Appellant.

Dated: July 11, 2024
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**