Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Elizabeth D. Scott (admitted *pro hac vice*)
Nicholas R. Lombardi (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>                Reorganized Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>Jointly Administered |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>                Plaintiff,<br><br>                v.<br><br>CASLA REALTY PR LLC,<br><br>                Defendant. | Adversary Proceeding<br>Case No. _____ (MG)<br><br>**<u>ADVERSARY COMPLAINT</u>** |

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Mohsin Y. Meghji, as Litigation Administrator for Celsius Network LLC and its affiliated debtors ("Plaintiff" or "Litigation Administrator"), by and through his undersigned counsel, brings this action against Defendant and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from the transfer of Celsius assets by former Celsius employee Jason Stone to Defendant Casla Realty PR LLC ("Casla").

2. Stone directed four transfers of Celsius property to Casla during December 2020. The Casla Transfers, totaling 195 ETH, were routed to pay for Stone's yearlong rent at a Puerto Rico townhouse (the "Townhouse Property") and the security deposit for the lease.

3. Following the payment of 195 ETH for the yearlong rent and security deposit, Stone and Celsius found out that the Townhouse Property was uninhabitable by any standard, with no access to running water, plumbing issues, and toxic mold in the house growing from pools of standing water on the floor. Nonetheless, when alerted to the uninhabitability of the Property, Casla refused to turn over either the years' worth of rent that Stone had paid in Celsius ETH, the security deposit for the lease, or the value paid in excess of the agreed annual rent. Instead, upon information and belief, Casla quickly sequestered the 195 ETH into Binance accounts to prevent Celsius or Stone from recovering the funds.

4. By this action, Celsius seeks recovery of the estate property (and the proceeds thereof) that Celsius transferred to Casla for less than reasonably equivalent value.

## PARTIES

5. The Litigation Administrator brings this action pursuant to the *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Confirmation Order")

[Docket No. 3972], *the Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "Plan"), the Litigation Administrator Agreement attached as Exhibit B to the *Eleventh Notice of Filing of Plan Supplement* [Docket No. 4297] (the "Litigation Administrator Agreement"), and section 1123 of the Bankruptcy Code. Pursuant to the Plan, Confirmation Order, and the Litigation Administrator Agreement, Plaintiff has the capacity, in his own right and name, to investigate, prosecute, compromise, and settle Recovery Causes of Action, including this Avoidance Action, on behalf of the Debtors and their estates (the "Estates"). The Debtors relevant to this lawsuit are Celsius Network Limited and Celsius KeyFi LLC.

6.      Celsius Network Limited ("CNL") is a private limited company incorporated under the laws of England and Wales with its principal place of business located at 167-169 Great Portland Street, 5th Floor, London W1W 5PF.

7.      Celsius KeyFi LLC ("Celsius KeyFi") is a Delaware limited liability company with its principal place of business located at 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.  Celsius KeyFi's sole member is Celsius US Holding LLC, a Delaware limited liability company whose only member is CNL.

8.      Celsius Network LLC ("Celsius LLC") is a Delaware limited liability company with its principal place of business located at 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.  All customer relationships within the broader Celsius enterprise were transitioned from CNL to Celsius LLC.

9.      CNL, Celsius KeyFi, and Celsius LLC are collectively referred to herein as "Celsius."

10.     Defendant Casla Realty PR LLC is domiciled in Puerto Rico.

**JURISDICTION AND VENUE**

11. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a); (b); and (e) and the *Amended Standing Order of Reference* M10–468 of the United States District Court for the Southern District of New York (the "Southern District of New York") dated February 1, 2012 referring to the Bankruptcy Judges of the Southern District of New York all cases and proceedings arising under, arising in, or related to a case under title 11 of the United States Code (the "Bankruptcy Code"), issued pursuant to 28 U.S.C. § 157. Alternatively, subject matter jurisdiction exists as there is a "close nexus" or "conceivable effect" between this action and the confirmed plan in these Chapter 11 Cases such that this matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan. Further, this Court has jurisdiction over the matter pursuant to article XII of the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended or modified from time to time, the "Plan").

12. This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A); (E); (H); and (O). In the event that this or any other appropriate Court finds any part of this adversary proceeding to be "non-core," Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

13. Casla is domiciled in the United States or organized with its principal place of business or place of organization or administration in the United States and, thus, is subject to the general personal jurisdiction of the Court.

14. Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with cases commenced under the Bankruptcy Code.

**BACKGROUND**

**A.    Casla Received Celsius Assets in Exchange for an Uninhabitable Property**

15.    Non-party Jason Stone served as the CEO of Celsius KeyFi. During and after Stone's tenure as CEO of Celsius KeyFi, Stone transferred Celsius assets from Celsius wallets into two wallets owned or controlled by Casla, as described at greater length herein.

16.    Casla is the owner of a property located at 2 Calle Rampla del Almirante, Unit A, San Juan, Puerto Rico 00911 (the "Property").

17.    Stone formed the LLC "Home of Alpha LLC" ("HOA") in Puerto Rico specifically to conduct his rental transactions in Puerto Rico.

18.    On December 14, 2020, Casla and HOA signed a Rental Agreement through which HOA would rent the Property from Casla (the "Rental Agreement").

19.    Pursuant to the Rental Agreement, HOA agreed to pay Casla a Base Rent of $115,000.00 for the initial term of one year beginning on January 1, 2021, and ending on December 31, 2021, payable no later than January 1, 2021.

20.    The Rental Agreement required HOA to pay a Security Deposit of $11,000.00 prior to the move-in date, which would be refunded upon vacating, returning the keys to the landlord, and the termination of the Rental Agreement.

21.    The Rental Agreement stated that Casla warranted that:

"…all equipment, appliances, air conditioners, and major systems are functional and in good working condition and repair at the time of possession. Light switches, wall plugs, doors, windows, faucets, drains, locks, appliances, air conditioners, toilets, sinks, etc. will either be in working order or will be repaired once the Tenant have completed the inspection."

22.    On December 20, 2020, Casla sent Payment Instructions to HOA in connection with the Rental Agreement, which requested that HOA satisfy the amount of $126,000.00 (Base Rent plus Security Deposit), minus a $5,000.00 credit towards HOA's purchase and installation of

5

a mutually agreeable jacuzzi, for a net payment of $121,000.00.  HOA transferred 195 Ethereum cryptocurrency ("ETH") belonging to Celsius to certain addresses owned or controlled by Casla in connection with this request.

23.    Specifically, Stone caused Celsius to make multiple transfers of Celsius assets (together, the "Casla Transfers") totaling 195 ETH into two wallets owned or controlled by Casla to pay for Stone's rent and security deposit in a Puerto Rico townhouse.  For Stone's security deposit, Stone transferred 15 ETH total from a Celsius account to Casla: 0.1 ETH into wallet 0x8372ecc11cd038cea333181d784f1ade569fc45f on December 22, 2020, and then 14.9 ETH into the same wallet on December 23, 2020.  To pay Stone's rent, Stone transferred 180 ETH total from a Celsius wallet to Casla: 1 ETH on December 22, 2020 into wallet 0x511cb1510FcEcD0D65feAdbc62c7155D3F015146, and then the remainder 179 ETH into the same wallet on December 23, 2020.

24.    However, almost immediately after the commencement of the lease term, Stone discovered that the Property was not served by running water and none of the plumbing worked, making the Property uninhabitable.

25.    In addition, the Property contained toxic mold from pools of standing water on the floor.  Despite several attempts, Casla was unable to fix the plumbing and leak problem.  Thus, at no time was the Property fit for human habitation.

26.    By the end of January, it became clear that Casla would be unable to render the Property fit for human habitation and Stone demanded termination of the Rental Agreement.  Due to the Property's uninhabitability, Stone only was able to stay in the Property for around three weeks out of the year-long lease term.

27. Casla had acquired the Property almost three years prior to the lease term, on February 27, 2018, and managed or occupied it thereafter. Casla thus knew or should have known of these defects at the time of signing the Rental Agreement. Casla's representations regarding the functioning and good conditions of the Property were therefore false and fraudulent.

28. Nonetheless, after being alerted of the inhabitability of the Property, Casla refused to refund either the Base Rent or the Security Deposit, swindling Celsius out of 195 ETH in assets. Moreover, as soon as Casla found out that Stone became aware of the serious problems with the Property, Casla immediately transferred 180 Celsius ETH to a Binance account (wallet 0x3f5CE5FBFe3E9af3971dD833D26bA9b5C936f0bE) to hinder Celsius's recovery of the rent payment, and also transferred 15 Celsius ETH to another Binance account (wallet 0x61189Da79177950A7272c88c6058b96d4bcD6BE2) to hinder Celsius' recovery of the security deposit.

29. Later, Casla refunded $68,375 back to HOA (though, notably, not to Celsius whose assets were used to fund the lease and security deposit payments). However, the money was returned in USD, even though Stone had paid in ETH. At the time of payment, the $68,375 was equivalent to approximately 41 ETH, far less than the 195 ETH paid by Celsius.

**B.    Celsius Was Insolvent at the Time of the Transfers to the Defendant**

30. Each of CNL, Celsius LLC, and Celsius KeyFi were insolvent at the time of the four transfers to Casla set forth above.

31. CNL (along with its successor, Celsius LLC) was insolvent at the time of each transfer made to Defendant because the value of CNL/Celsius LLC's liabilities exceeded the value of its assets at all relevant times.

7

32. As the *Final Report of Shoba Pillay, Examiner, In re Celsius Network LLC,* No. 22-10964 (Bankr. S.D.N.Y. Jan. 31, 2023), Docket No. 1956 (the "Examiner Report") stated: "Celsius's problems did not start in 2022. Rather, serious problems dated back to at least 2020, after Celsius started using customer assets to fund operational expenses and rewards. To fund operations, Celsius posted customer deposits as collateral to take out loans in stablecoin. And to fund CEL buybacks for rewards, Celsius exchanged BTC and ETH for CEL on the secondary market. But prior to the creation of the Freeze Report, Celsius did not adequately track or reconcile customer assets and liabilities on a coin-by-coin basis. Celsius was therefore caught off guard when it recognized a shortfall in BTC and ETH (which it had been using to fund those CEL buybacks)."

33. Celsius' consolidated balance sheet as of September 30, 2020, showed negative equity. On December 31, 2020, Celsius' consolidated balance sheet purported to show positive equity, but the value of CEL tokens on the asset side of Celsius' balance sheet exceeded the amount of positive equity. But CEL tokens were essentially worthless, including because they depended solely on CNL's market-making techniques and were completely correlated to the value of, and totally dependent on the continued operations of, Celsius—just as an airline rewards program is completely dependent on the underlying airline continuing to operate.

34. Additionally, there was never a real market in which to deploy CEL. Instead, CNL, as the only purchaser of CEL tokens, propped up CEL's value by engaging in calculated buying sprees of CEL tokens. While this caused the price of CEL tokens to increase at first, that increase was entirely artificial. CNL eventually ran out of the funds from its crypto asset deployments necessary to fund its own CEL buybacks, and in 2020, CNL began using customer-deposited Bitcoin (BTC) and Ether (ETH) to fund its CEL purchases.

8

35. When BTC and ETH rapidly appreciated in value in early 2021, the shortfall in BTC and ETH, which CNL had been using to fund those CEL buybacks, significantly increased CNL's liabilities.

36. Additionally, Celsius suffered other losses of over $800 million that further decreased the asset side of its balance sheet, including based on activities of the Stone Parties, keys lost by Fireblocks for tens of thousands of ETH tokens that Celsius provided to StakeHound, collateral posted with Equities First Holdings that was not returned, and losses in Grayscale Bitcoin Trust.

37. Celsius was also insolvent based on other mismatches between its liabilities and assets. At any given time between 2020 and 2022, Celsius was susceptible to collapsing at any moment if its customers started to withdraw their assets, which Celsius was relying on to fund its own CEL buybacks to artificially pump up its CEL assets. Indeed, this scenario finally occurred in 2022, when CNL could no longer bridge its deficits and its customers began to withdraw their assets from CNL *en masse*.

38. Throughout the time period during which Stone effected the Fraudulent Transfers, Celsius KeyFi, KeyFi, and Stone were likewise insolvent due to—among other things—staggering liabilities owed to CNL related to the loss, mismanagement, and theft of its coins.

39. Celsius KeyFi was formed for the singular purpose of deploying CNL coins in DeFi and staking investments and had no other business or sources of revenue. While in theory, under the Service Agreement, Celsius KeyFi could have earned a "profit share" based on profits it was able to generate through its investment of CNL's assets, its trading activities never generated any profits, only massive losses. What Celsius KeyFi did have in abundance was liabilities, including not only liabilities related to operating expenses like payments to contractors, but also liabilities to

9

CNL related to the gross mismanagement and/or theft of hundreds of millions of dollars' worth of CNL's coins. As such, Celsius KeyFi was insolvent pursuant to any relevant standard.

40. Stone and KeyFi were likewise insolvent due (at least) to the massive liabilities they owed to Celsius. During the time during which KeyFi was temporarily authorized to deploy CNL's coins between on or around October 1, 2020, and December 31, 2020, it had no material assets. By contrast, KeyFi accrued millions in liabilities to Celsius during that same time period related to the Stone Parties' misappropriation of Celsius' property, including certain of the Fraudulent Transfers at issue here, as well as their gross mismanagement of Celsius' property. Upon information and belief, KeyFi's financial condition only deteriorated from there as it continued to incur massive liabilities related to the Stone Parties' theft and mismanagement of Celsius' assets with no corresponding increase in its assets. So too for Stone, whose liability related to his misappropriation of tens of millions of dollars' worth of Celsius' coins and gross mismanagement undoubtedly dwarfed his assets at all relevant times.

**FIRST CAUSE OF ACTION**
**(Constructive Fraudulent Transfer)**

41. Plaintiff repeats and realleges each and every allegation stated in the entirety of this Complaint as though fully set forth herein.

42. As stated above, Stone made four fraudulent transfers of Celsius' assets from wallets owned by Celsius directly into wallets over which Casla had possession, custody or control. These amounts totaled 195 ETH and were made into two wallets owned or controlled by Casla.

43. The Casla Transfers are constructive fraudulent transfers because each of the Casla Transfers was made for less than reasonably equivalent value at a time when Celsius was insolvent, or else because Celsius became insolvent as a result of such transfer.

10

44. At the time of each of the Casla Transfers, Celsius each engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with them was unreasonably small capital.

45. At the time of each of the Casla Transfers, Celsius intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as those debts matured.

46. Celsius is therefore entitled to a judgment avoiding the Casla Transfers and recovering the fraudulently transferred assets or their value from Casla.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment)**

47. Plaintiff repeats and realleges each and every allegation stated in the entirety of this Complaint as though fully set forth herein.

48. Casla had no contract with Celsius.

49. Casla was enriched by receiving the proceeds of the Casla Transfers.

50. Casla's enrichment was gained at Celsius' expense.

51. This enrichment was unjust because Casla provided nothing of value to Celsius, and its enrichment has come at the expense of Celsius' legitimate creditors and customers.

52. It would be inequitable for Casla to retain the benefit of Celsius' property, including any proceeds of such property, without payment for its value.

53. Because no contractual remedy exists, the Plaintiff has no adequate remedy at law for Casla's unjust enrichment.

54. Plaintiff is entitled to a money judgment in the amount of value by which Casla was unjustly enriched in an amount to be proved at trial.

55. Plaintiff is entitled to recovery of the assets transferred in the Casla Transfers and any and all proceeds thereof.

11

56. Plaintiff is entitled to the remedy of a constructive trust upon the assets transferred in the Casla Transfers and any and all proceeds thereof.

57. Plaintiff is entitled to an equitable lien upon the assets transferred in the Casla Transfers and any and all proceeds thereof.

## THIRD CAUSE OF ACTION
### (Conversion)

58. Plaintiff repeats and realleges each and every allegation stated in the entirety of this Complaint as though fully set forth herein.

59. At all times relevant herein, Celsius had the right to possession, custody or control of the assets transferred in the Casla Transfers.

60. Casla assumed control over the transferred assets, thereby interfering with Celsius' rights in that property in a manner inconsistent with those rights.

61. This interference with Celsius' rights in the transferred assets is tortious conversion.

62. Casla's conversion of Celsius property has resulted in damages to Celsius in an amount to be proven at trial.

63. Plaintiff is also entitled to the remedy of replevin and the proceeds thereof in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION
### (Fraudulent Inducement)

64. Plaintiff repeats and realleges each and every allegation stated in the entirety of this Complaint as though fully set forth herein.

65. Casla made false representations to Celsius, through Stone, about the habitability of the Townhouse Property, including in a provision in the Rental Agreement that warranted that "all equipment, appliances… and major systems are functional and in good working condition and repair at the time of possession."

12

66. Casla knew or should have known that the representations were false, because Casla had owned the property for almost three years before renting to Stone and had managed or occupied it during that period. It is inconceivable that the nature of the problems – including lack of running water, working plumbing, and toxic mold – would have been unknown to Casla.

67. Casla made these false representations with the intent to induce Celsius to enter the contract and use Celsius coins to pay for his yearlong rent and security deposit.

68. These representations were materially false and misleading, and Celsius relied on them. Celsius would not have paid the yearlong rent and security deposit using Celsius coins if it had known that the Townhouse Property was uninhabitable.

69. Relying on Casla's false representations of the habitability of the Townhouse Property, Stone effected the transfer of Celsius coins to cover the base rent for a one-year lease term and security deposit for the Townhouse Property.

70. As a direct and proximate result of Casla's fraudulent inducement, Celsius suffered damages in the amount of 195 ETH.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests as follows:

(a) Judgment in favor of Plaintiff and against Casla on all causes of action;

(b) Avoiding the fraudulent Casla Transfers and awarding recovery of the avoided property or its money equivalent;

(c) Imposing a constructive trust upon all assets transferred in the Casla Transfers or the proceeds thereof in favor of Plaintiff to remedy Casla's otherwise wrongful conduct, resulting in its unjust enrichment;

(d) Requiring Casla to disgorge the assets transferred in the Casla Transfers and any and all proceeds and profits generated therefrom to Celsius;

(e) Awarding Plaintiff actual damages in an amount to be determined at trial;

(f) Awarding Plaintiff pre-and post-judgment interest at the maximum amount permitted by law; and

(g) Awarding such other and further relief as this Court deems just and proper.

Dated:  July 13, 2024
        New York, New York

                            AKIN GUMP STRAUSS HAUER & FELD LLP

                            By:  */s/ Mitchell P. Hurley*
                                 Mitchell P. Hurley
                                 Dean L. Chapman Jr.
                                 One Bryant Park
                                 New York, New York 10036
                                 Telephone: (212) 872-1000
                                 Facsimile: (212) 872-1002
                                 mhurley@akingump.com
                                 dchapman@akingump.com

                                 Elizabeth D. Scott (admitted *pro hac vice*)
                                 Nicholas R. Lombardi (admitted *pro hac vice*)
                                 2300 N. Field Street, Suite 1800
                                 Dallas, TX 75201
                                 Telephone: (214) 969-2800
                                 Facsimile: (214) 969-4343
                                 edscott@akingump.com
                                 nlombardi@akingump.com

                                 *Counsel for Plaintiff*