**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) | Adversary Proceeding No. [●]_(MG) |
| v. | ) ) | |
| INTO THE BLOCK CORP., | ) ) | |
| Defendant. | ) ) | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

**ADVERSARY COMPLAINT**

Plaintiff Mohsin Y. Meghji, in his capacity as Litigation Administrator for Celsius Network LLC (**"Celsius"**), by and through his undersigned counsel, hereby files this adversary complaint (**"Complaint"**) against Defendant Into the Block Corp. (**"ITB"** or **"Contractor"**) and alleges the following facts and claims based upon information and belief based on reasonable due diligence regarding the facts and circumstances of the Debtor's bankruptcy cases, Plaintiff's ongoing investigation, and the documents and information currently available to Plaintiff.

**STATEMENT OF THE CASE**

1. This is an action for breach of contract and negligence. In 2021, Celsius and ITB entered into an agreement, pursuant to which ITB was to manage and invest Celsius' crypto assets. Celsius deposited millions of dollars' worth of crypto assets with ITB, which were to be invested pursuant to certain strategies developed by the parties.

2. On January 13, 2022, one of the positions that ITB was managing for Celsius suffered a loss of approximately 90 Bitcoin (**"BTC"**). The loss occurred when the investment pool in which the BTC were held got out of balance and triggered an automatic disassembly of the position under unfavorable conditions.

3. ITB took responsibility for the loss and initially offered to waive certain fees going forward in order to make Celsius whole. But ITB failed to sufficiently explain the reason that the automatic exit was triggered or to assure Celsius that there would not be another similar incident in the future. Celsius therefore decided to withdraw all of its assets from ITB.

4. ITB refused to compensate Celsius other than through a waiver of future fees. Since that was no longer possible after Celsius withdrew its assets, Celsius remains uncompensated for the losses it incurred as a result of ITB's breach of contract and negligence. At the time of the

2

incident, the approximate value of the 90 BTC that Celsius lost was approximately $3.8 million.

## THE PARTIES

5.      Plaintiff **Mohsin Y. Meghji** is the Liquidation Administrator for Celsius Network LLC. Mr. Meghji was appointed Liquidation Administrator pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3972] and the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289].

6.      Prior to declaring bankruptcy and entering Chapter 11, Celsius and its affiliates constituted one of the largest cryptocurrency-based finance platforms and Bitcoin mining companies in the world and provided financial services to institutional, corporate and retail clients across more than 100 countries.

7.      Celsius was founded in 2017 to be one of the first crypto platforms that would allow users to transfer their digital assets and (a) earn rewards on such assets and/or (b) take out loans using those transferred assets as collateral. The rewards offered by Celsius varied by the type and amount of crypto asset transferred to the Celsius platform.

8.      The Celsius business model was centered on deploying digital assets to generate income for Celsius and its operations and growth. Among other things, Celsius made loans of fiat currency and "stablecoins"—crypto currency pegged to fiat currencies like the U.S. dollar (USD)—to third-party retail borrowers, but only if the borrower posted collateral in the form of cryptocurrency in excess of the amount loaned. In or around late 2019 and early 2020, Celsius began to consider additional revenue generating investment strategies, such as staking and DeFi activities.

9. Staking refers to providing cryptocurrency coins, like ETH, to a third-party platform for the purpose of earning revenue, usually in the form of a coin or other "reward." Staking does not involve trading one form of cryptocurrency for another, or otherwise speculating in cryptocurrency assets. The principal staked coins are not exchanged for other forms of currency. While the staked coins may in some cases be subject to a lockup period, the original staking party has the right to have the ETH or other coins it staked at the platform returned.

10. DeFi generally refers to certain activities on a blockchain designed to provide financial services like borrowing, lending and market-making without an institutional intermediary, often utilizing so-called "smart contracts." Smart contracts essentially are programs stored on a blockchain that run when predetermined conditions are met. Smart contracts can be used to automate the execution of an agreement so that the outcome is certain, without any intermediary's involvement.

11. Defendant **IntotheBlock Corp.** is a corporation organized under the laws of the state of Delaware with its principal place of business in Miami, Florida. ITB describes itself as an intelligence company that uses machine learning and statistical modeling to deliver actionable intelligence for crypto assets and smart financial software solutions. At all relevant times, Jesus Rodriguez (**"Rodriguez"**) was the Chief Executive Officer and Chief Technology Officer of ITB.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.

13. This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (b)(2)(E). In the event this or any other appropriate Court finds any part of this

adversary proceeding to be "non-core," Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

14. Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with a case commenced under the Bankruptcy Code.

**FACTUAL ALLEGATIONS**

I. **THE PARTIES' AGREEMENT**

15. Celsius and ITB entered into that certain Independent Contractor Agreement on October 22, 2020 (the **"Contractor Agreement"**),[2] attached hereto as Exhibit A.

16. Pursuant to the Contractor Agreement, ITB agreed to do the following:

> Services – The Contractor shall engage in trading strategies in the decentralized financial markets, using a variety of cryptoassets conducted on various smart contracts and decentralized platforms as well as any additional trading strategy mutually agreed to by the Parties (collectively, the "Strategy"). The Contractor will provide the Services subject to any and all risk parameters and other criteria established from time to time by the Company.

17. In or about October 2021 the Parties executed that certain Amendment to Independent Contractor Agreement, attached hereto as Exhibit B (the **"Addendum"** and, with the **Contractor Agreement**, the **"Agreement"**).

18. The Addendum, like the Contractor Agreement, based ITB's compensation on a pre-determined Performance Rate, which was calculated separately for each Strategy. In some instances the Company paid the Performance Rate from its own funds to a deposit address provided by ITB, and in other instances the Company permitted ITB to deduct the Performance Rate from the pool of digital assets associated with a Strategy. *See* Exh. B § 2.2.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Contractor Agreement.

19.     ITB employed a range of DeFi strategies for Celsius to generate returns or yield for Celsius' treasury with *mechanisms to facilitate automatic transfer upon passing certain risk thresholds*. ITB advertised that it leveraged its robust infrastructure and blockchain/smart contract expertise to test, build, run, and monitor strategies on trusted DeFi Protocols.

## II.    ITB MANAGES CELSIUS' INVESTMENT IN DEFI STRATEGIES

20.     ITB characterized its strategies for Celsius as passive (i.e., no active trading), high capacity, and *very low risk*.

21.     As stated in the Agreement, ITB's responsibilities related to the strategies were to:

- Analyze viability of quant DeFi strategies;
- Implement quant DeFi strategies agreed to by both parties;
- Provide auditing and traceability interfaces for target trades; and
- Maintain quant DeFi strategies after they are deployed to production.

22.     ITB's investment process with respect to Celsius included the following:

- Celsius allocates capital to execute each Strategy;
- Celsius contributes research and collaborates on ideas relevant to new quant DeFi strategies;
- ITB maintains cold wallets for custody of funds;
- ITB establishes one hot wallet per strategy;
- ITB transfers funds from the cold wallet to the strategy wallet, subject to an agreed upon daily limit;
- ITB limits access to the strategy wallet to the smart contract that executes final orders;
- ITB limits access to the strategy smart contract to a single contract owner; and
- ITB segregates strategy smart contracts from other smart contracts and third party applications.

23.     Celsius was ITB's second largest client. As of February 2022, Celsius had deployed approximately $250 million of coins with ITB across multiple DeFi strategies. These individual strategies consisted of liquidity pools of crypto assets. Notwithstanding that Celsius provided cryptocurrency coins to ITB to earn revenue or other rewards, Celsius expected that the coins it provided to ITB would be returned to it.

6

24. One strategy that ITB employed on behalf of Celsius involved the Curve Polygon, an exchange liquidity pool on the Ethereum blockchain. ITB deposited Wrapped Bitcoin (WBTC) provided by Celsius into certain liquidity pools on the Curve platform. WBTC is an ERC-20 token on the Ethereum blockchain that is pegged 1:1 to Bitcoin.

### III. ITB'S ACTIONS OR INACTION LED TO MASSIVE LOSS FOR CELSIUS AND ITB ATTEMPTED TO COVER UP THE LOSS

25. As of January 13, 2022, ITB managed a sizable position of amWBTC in the Curve Polygon liquidity pool on behalf of Celsius. amWBTC is a token representing WBTC that is interest bearing. On information and belief, as part of ITB's risk management system, ITB's algorithm was set to disassemble an investor's position – i.e., to withdraw the crypto assets from the liquidity pool – if it detected *another* withdrawal that occurred at an exit fee of **1% or greater**.

26. On January 13, 2022, a third party made a series of large withdrawals from the same liquidity pool in which ITB had deposited Celsius' amWBTC. ITB's automated liquidation algorithm disassembled Celsius' position, resulting in a loss of approximately 90 BTC – or roughly $3.8 million at the time.

27. ITB failed to report the loss immediately to Celsius. In fact, a weekly report to the Celsius finance team on January 17, 2022 failed to mention the January 13, 2022 incident. Instead, it reported an unimpaired balance. On information and belief, ITB intentionally excluded any mention of the January 13 incident to mask the loss.

28. Celsius did not learn about the 90 BTC loss until January 19, 2022 during a routine, weekly call with ITB. Following the call, ITB sent Celsius a basic "incident report" with few details about the incident and no explanation of why the algorithm had triggered the withdrawal of Celsius' investment. In particular, the incident report withheld critical facts regarding the withdrawal of 140.5 amWBTC which triggered the exit fee disassembly threshold of 1%.

7

29. Celsius pressed ITB for information and subsequently learned that the Curve Polygon liquidity pool became unbalanced when another investor (LP 1) began to withdraw large amounts of its assets from the pool on January 13, 2022. The investor withdrew 93 amWBTC and 138.8 renBTC[3], which caused Celsius' ownership of the amWBTC side of the pool to increase to 57.6%. The investor then sold 45.8 renBTC into the pool for 45.6 amWBTC[4], which caused Celsius' ownership of the amWBTC side of the pool to increase to 72.7%. Subsequently, another investor (LP 2) withdrew approximately 140.5 amWBTC from the pool at a 1.4% exit fee[5], increasing Celsius' ownership to be 98.3% of the pool. Recognizing LP 2's exit fee was above 1%, ITB automatically disassembled the 122.4 amWBTC[6] position, which caused the exit fee to spike to 75.3%, resulting in Celsius' losses.

30. Rodriguez attempted to explain the January 13, 2022 incident and offered mitigation strategies to salvage the relationship with Celsius. In a January 27, 2022 email, Rodriguez explained to Ron Sabo, Celsius' Head of Research (**"Sabo"**), that ITB was "taking steps towards . . . financial remediation" and that ITB "would like to have the opportunity to fix the situation with Celsius." In the same email, Rodriguez further stated that:

> In addition to hitting the watermark, we would like to commit to not invoice anything to Celsius for all Q2 and the remining weeks of Q1 2022 after we hit the watermark. To put that in perspective, based on historical invoices, this represents a decrease in fees of about $915K per quarter plus a few additional weeks which should push the total to over $1M in addition to return. Essentially, during Q1-Q2, there won't be any fees charged to Celsius by ITB for any type of strategy existing or new.

31. These statements amount to an admission of liability by ITB's CEO, which are

---

[3] https://polygonscan.com/tx/0x3928aa02af1c1e1f5aee55a50657c261c359da8e219e22bc2995468534f2c57d
[4] https://polygonscan.com/tx/0xb32d34bc62fbed843f5885aba36546790e99e27a152499d4ce1bd451327a29af
[5] https://polygonscan.com/tx/0xb361ba8347e7e45085a65ead263cf4a5f11de3196feb9770b735fa1a17fe736e
[6] https://polygonscan.com/tx/0xe7fdadff292a89eb766c649b843a4a5aedcf4ac62973060a0f48b04774fac4bc

binding on the company.

32. Celsius rejected ITB's offer. On February 1, 2022, Sabo instructed ITB to withdraw the following positions that ITB was managing on its behalf:

| Asset | Amount |
|---|---|
| WBTC | 1,054 |
| LINK | 774,654 |
| DAI | 39,573,892 |
| ETH | 39,311 |
| USDC | 36,654,276 |

33. ITB closed the positions as Celsius directed but failed to pay the amounts that Celsius lost during the January 13, 2022 incident despite ITB's admission that it was liable for the loss. It would be unjust and inequitable to permit ITB to avoid liability for its actions.

## FIRST CAUSE OF ACTION
(Turnover Under Section 542 of the Bankruptcy Code)

34. Plaintiff repeats and realleges each and every allegation stated in the entirety of the Complaint as though fully set forth herein.

35. At all times, Celsius had legal ownership and right to possession of the coins that ITB managed for its account, including the coins at issue.

36. Celsius was a debtor in the Chapter 11 proceedings in the Bankruptcy Court for the Southern District of New York.

37. Pursuant to the Agreement, ITB purportedly managed amWBTC for Celsius in a passive *low risk* strategy, and Celsius expected a return of its coins upon termination of the strategy or when the Agreement ended.

9

38. ITB's automated liquidation algorithm malfunctioned and caused Celsius to lose approximately 90 BTC. Celsius withdrew its remaining assets from ITB on February 1, 2022.

39. Rodriguez admitted to liability for the loss. ITB's liability for approximately 90 BTC remained outstanding at the time Celsius filed its Chapter 11 petition on July 13, 2022, and remained outstanding during the pendency of Celsius' Chapter 11 cases.

40. The debt is or was property that the trustee may use, sell, or lease under Section 363 of the Bankruptcy Code.

41. Celsius has not received a payment from ITB for damages it caused Celsius.

42. As a debtor in a Chapter 11 proceedings, Celsius has a right under Section 542 of the Bankruptcy Code to demand turnover of "a debt that is property of the estate and that is matured, payable on demand, or payable on order." 11 U.S.C. § 542(b).

43. Pursuant to Section 542(b), Celsius is entitled to a judgment ordering ITB to turn over 90 BTC, and all proceeds, rents or profits thereof, or recovery of an equivalent judgment for the value of the property of the estate.

## SECOND CAUSE OF ACTION
(Breach of Contract)

44. Plaintiff repeats and realleges each and every allegation stated in the entirety of the Complaint as though fully set forth herein.

45. The Agreement constituted a binding agreement between Celsius and ITB.

46. Celsius performed its obligations under the Agreement.

47. ITB breached the Agreement by failing to return amWBTC to Celsius when Celsius ended the strategy and/or terminated the Agreement.

48. Celsius incurred damages in an amount to be determined at trial but in no event less than the value of 90 BTC for which ITB is liable.

10

## THIRD CAUSE OF ACTION
(Negligence)

49. Plaintiff repeats and realleges each and every allegation stated in the entirety of the Complaint as though fully set forth herein.

50. ITB had a duty to leverage its "robust" infrastructure and blockchain/smart contract expertise to test, build, run, and monitor strategies on trusted DeFi protocols.

51. ITB further had a duty to ensure that it maintained *mechanisms to facilitate automatic transfer upon passing certain risk thresholds*.

52. ITB breached its duty by negligently allowing its algorithm to disassemble Celsius' amWBTC position in the Curve Polygon liquidity pool.

53. ITB's breach of its duty was the proximate cause of Celsius' damage in the approximate amount of 90 BTC.

54. ITB is liable to Celsius in an amount to be determined at trial but in no event less than the value of 90 BTC.

## **PRAYER FOR RELIEF**

WHEREFORE, Celsius seeks an Order:

a. Directing ITB to turn over 90 BTC and any and all proceeds thereof to Celsius;

b. Awarding damages for breach of contract in an amount to be proven at trial but in no event less than 90 BTC;

c. In the alternative, awarding damages for negligence in an amount to be proven at trial but in no event less than 90 BTC;

d. Awarding costs and fees, including but not limited to reasonable attorneys' fees, to the extent appropriate; and

e. Granting such other and further relief that the Court deems just and equitable.

New York, New York
Dated: July 15, 2024

*/s/ Denver G. Edwards*
**BRADFORD EDWARDS LLP**
Denver G. Edwards, Esq.
575 Fifth Avenue, 14th Floor
New York, New York 10017
Tel: (917) 671-9407
Fax: (607) 930-3596
Email: dedwards@bradfordedwards.com

*Counsel to Mohsin Y. Meghji, Litigation Administrator for Celsius Network LLC*