# EXHIBIT A

# INDEPENDENT CONTRACTOR AGREEMENT

This agreement (the "Agreement") is made and entered into as of October 22, 2020 (the "Effective Date") between Celsius Network Limited, a private company organized and existing under the laws of England and Wales (the "Company"), and Into The Block Corp, a Delaware Corporation (the "Contractor", and together with the Company, the "Parties").

WHEREAS, the Company requests the Contractor to perform services for it, as defined below (the "Services") and the Contractor has agreed to perform the Services; and

WHEREAS, the Company and the Contractor desire to enter into an agreement which will define respective rights and duties as to all Services to be performed; and

WHEREAS, the Contractor affirms that it understands all of the provisions contained in this Agreement, and in the case that it requires clarification as to one or more of the provisions contained herein, it has designated Alfredo Terrero as its representative to request clarification or has otherwise sought legal guidance.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the value and sufficiency of which are acknowledged, the Parties hereto agree as follows:

1. **Services.** Beginning on the Effective Date, and remaining in effect for the duration of this Agreement or until either Party notifies the other Party of their intention to terminate the Agreement, the Contractor shall provide the Company with the following Services, without limitation:

*Services – The Contractor shall engage in trading strategies in the decentralized finance markets, using a variety of cryptoassets conducted on various smart contracts and decentralized platforms as well as any additional trading strategy mutually agreed to by the Parties (collectively, the "Strategy"). The Contractor will provide the Services subject to any and all risk parameters and other criteria established from time to time by the Company.*

2. **Contractor Representations and Warranties.** Beginning on the Effective Date, and remaining in effect for the duration of this Agreement, the Contractor makes the following representations and warranties.

    a. That it is fully authorized and empowered to enter into this Agreement.

    b. That it is in full compliance with any and all laws and/or statutes applicable to the Services described hereunder.

    c. That it will in good faith attempt to notify the Company of any change(s) to the Contractor's schedule that could reasonably be expected to adversely affect the availability of the Contractor, whether known or unknown at the time of this Agreement, at least two weeks prior to such change(s). If the Contractor becomes aware of such change(s) within the two week period, the Contractor shall promptly notify the Company of such change(s) within a reasonable amount of time after

learning of them.

3. **Company Representations and Warranties.** Beginning on the Effective Date, and remaining in effect for the duration of this Agreement, the Company makes the following representations and warranties.

   a. That it is fully authorized and empowered to enter into this Agreement.

   b. That it is in full compliance with any and all laws and/or statutes applicable to the Services described hereunder.

4. **Compensation.** The work performed by the Contractor shall be performed at the rate set forth in Appendix A. Contractor is not entitled to any further consideration for the Services provided to the Company.

5. **Independent Contractor Status.** The Contractor is an independent contractor of the Company. Nothing contained in this Agreement shall be construed to create the relationship of employer and employee, principal and agent, partnership or joint venture, or any other fiduciary relationship. The Contractor shall have no authority to act as agent for, or on behalf of, the Company, or to represent the Company, or bind the Company in any manner. The Contractor shall not be entitled to worker's compensation, retirement, insurance or other benefits afforded to employees of the Company.

6. **Confidential Information.**

   a. The Contractor and its agents and employees shall not, during the time of rendering Services to the Company or thereafter, disclose to anyone other than authorized employees of the Contractor (or persons designated by such duly authorized employees of the Contractor) or use for the benefit of the Contractor and its agents or employees or for any entity other than the Company, any information of a confidential nature obtained by the Contractor related to the performance of the Services hereunder, including but not limited to, information relating to: any materials related to the Company that is not publicly available, any intellectual property of the Company; any of projects or programs of the Company; or, any information which the Company has received from a third party, that has been identified as confidential, and that has been communicated as such to the Contractor ("Company Confidential Information").

   b. The Contractor shall, upon request of the Company and/or upon termination of this Agreement, immediately return to the Company such Company Confidential Information and all copies thereof in any form whatsoever under the power or control of the Contractor, and shall delete such Company Confidential Information from all retrieval systems and databases within its possession and control, or destroy same as directed by the Company.

   c. The Company and its agents and employees shall not, during the time of receiving Services from the Contractor or thereafter, disclose to anyone other than authorized employees of the Company and Contractor (or persons designated by such duly authorized employees of the Company and Contractor), any information of a confidential nature obtained by the Company related to the performance of the Services hereunder, including but not limited to, information

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711293

relating to: any materials related to the Contractor that is not publicly available, any intellectual property of the Contractor; any of projects or programs of the Contractor; or, any information which the Contactor has received from a third party, that has been identified as confidential, and that has been communicated as such to the Company ("Contractor Confidential Information").

    d.  **Company** shall, upon request of Contractor and/or upon termination of this Agreement, immediately return to the Contractor such Contractor Confidential Information and all copies thereof in any form whatsoever under the power or control of the Company, and shall delete such Contractor Confidential Information from all retrieval systems and databases within its possession and control, or destroy same as directed by the Contractor.

7. **Intellectual Property.** The Contractor represents that all content provided by the Contractor to the Company, in furtherance of the Services described hereunder, including, without limitation, images, videos and text, including any intellectual property, such as copyrights or trademarks (the "Content"), is owned solely and legally by the Contractor.

    a.  **Assignment of Inventions**. Company agrees that all right, title, and interest in and to any copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries, ideas and trade secrets conceived, discovered, authored, invented, developed or reduced to practice during the term of this Agreement and arising out of, or in connection with, performing the Services under this Agreement, and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing (collectively, "Inventions"), are the sole property of the Contractor.

    b.  **License to Company**. Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable, worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto.

    c.  **Maintenance of Records.** Contractor agrees to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by Contractor during the term of this Agreement, and for a period of three (3) years thereafter. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that is customary in the industry and/or otherwise specified by the Company. Such records are and remain the sole property of the Company at all times and upon Company's request, Contractor shall deliver (or cause to be delivered) the same.

8. **Liability.**

EXCEPT WITH RESPECT TO THE PARTIES' INDEMNIFICATION OBLIGATIONS, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES ARISING FROM OR RELATED TO THIS AGREEMENT, INCLUDING BODILY INJURY, DEATH, LOSS OF REVENUE, OR PROFITS OR OTHER BENEFITS, AND CLAIMS BY ANY THIRD PARTY, EVEN IF THE PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711294

DAMAGES. THE FOREGOING LIMITATION APPLIES TO ALL CAUSES OF ACTION IN THE AGGREGATE, INCLUDING WITHOUT LIMITATION TO BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, AND OTHER TORTS.

9. **Disclaimer of Warranty.**

THE WARRANTIES CONTAINED HEREIN ARE THE ONLY WARRANTIES MADE BY THE PARTIES HEREUNDER. EACH PARTY MAKES NO OTHER WARRANTY, WHETHER EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES AND DISCLAIMS ALL OTHER WARRANTIES AND REPRESENTATIONS OF ANY KIND, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.

10. **Indemnification.** Each Party agrees to indemnify and hold harmless the other Party, its affiliates, and its respective officers, directors, agents and employees from any and all claims, demands, losses, causes of action, damage, lawsuits, judgments, including reasonable attorneys' fees and costs, arising out of, or relating to, any fraud committed by the breaching Party, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to that Party's bad faith, gross negligence or willful misconduct in the performance of its duties under this Agreement.

11. **Duration, Scope and Severability.**

    a. This Agreement shall take effect immediately, and shall remain in full force and effect indefinitely, or until terminated pursuant to Section 11 of this Agreement.

    b. The Company or Contractor may terminate this Agreement for any reason upon 30 days written notice to the Contractor or Company respectively. Either Party may terminate this Agreement for cause immediately upon notice to the breaching party. "Cause" shall mean any action by the Contractor or Company that can reasonably be expected to result in negative pecuniary or reputational consequences to the Company or Contractor respectively.

    c. This Agreement, and any accompanying appendices, duplicates, or copies, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement, and supersedes all prior negotiations, agreements, representations, and understandings of any kind, whether written or oral, between the Parties, preceding the date of this Agreement.

    d. This Agreement may be amended only by written agreement duly executed by an authorized representative of each Party.

    e. If any provision or provisions of this Agreement shall be held unenforceable for any reason, then such provision shall be modified to reflect the Parties' intention. All remaining provisions of this Agreement shall remain in full force and effect for the duration of this Agreement.

    f. No modifications to this Agreement shall be binding upon the either Party without the express, written consent of the other Party.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS                           CELSIUSNETWORK_01711295
SUBJECT TO JANUARY 13, 2023 STIPULATION

g.  This Agreement shall not be assigned by either Party without the express written consent of the other Party.

12. **Governing Law and Jurisdiction.**

a.  This Agreement and the interpretation of its terms shall be governed by and construed in accordance with the laws of England and Wales.

b. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY DOCUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES' ACCEPTANCE OF THIS AGREEMENT.

13. **Waiver of Rights.**

A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

[Signature Page Follows]

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711296

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have each executed this agreement as of the Effective Date.

THE COMPANY:

**Celsius Network Limited**

By: *Harumi Urata-Thompson*
    821A611261A84B2...
Name:
Title:

CONTRACTOR:

**Into The Block Corp.**

By: *Alfredo Terrero*
    168D8ECFEA3E479...
Alfredo Terrero
Chief Operating Officer

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711297

## APPENDIX A: PRICING, TITLE, AND COMPENSATION GUIDELINES

1. **Risk Capital.** The Company will make available to Contractor initial risk capital of at least $1,000,000 that Contractor will use to run the Strategy. The Company may periodically invest additional amounts in, and make withdrawals from the allocation to the Strategy at the Company's sole discretion.

2. **Profit Distribution.** The Services performed by the Contractor under this Agreement shall be performed at a Rate (the "Performance Rate") as stipulated below and according to the following definitions:

   - Performance Rate shall equal to a percentage (the "Percentage") of Net Trading Revenue *(defined below)*, calculated and paid monthly on the full amount or Risk Capital. The percentage shall be determined according to the following:
     o For any calendar month for which the weighted average of Risk Capital for such month is less than or equal to $2,000,000, the Percentage shall be equal to 25%.
     o For any calendar month for which the weighted average of Risk Capital for such month is greater than $2,000,000 but less than or equal to $5,000,000, the Percentage shall be equal to 20%.
     o For any calendar month for which the weighted average of Risk Capital for such month is greater than $5,000,000 but less than or equal to $10,000,000, the Percentage shall be equal to 15%.
     o If the weighted average of Risk Capital during such month exceeds $10,000,000, the Percentage shall be equal to 15%, and the parties will negotiate and execute a new agreement.
   - Net Trading Revenue ("NTR") shall equal Gross Trading Revenue *(defined below)* minus Trading Fees *(defined below)*. Trading Fees ("TF") shall be all fees associated with the trades executed by the Contractor.
   - Gross trading revenue ("GTR") shall be positive revenue from all trades executed by the Contractor on behalf of the Company less any accumulated losses from negative GTR in previous months. For the avoidance of uncertainty, "gross revenues" include the change in value of any trading positions (i.e., "Mark-to-Market"), whether realized or not, based on prices quoted on Uniswap. Where prices are not available on Uniswap, price quotes will come from the decentralized exchange (DEX) with the largest trading volume for each coin. For activities that are not based on DeFi, market prices will come from CoinMarketCap. Any and every strategy to be deployed has to be agreed by Celsius designated staff prior to deployment

3. **Management of Digital Assets:** The Contractor shall comply with all policies, procedures and other safeguards the Company establishes from time to time in connection with the Services. All cryptocurrencies and other digital assets relating to the Services ("Strategy Assets") will initially be allocated to a cold wallet for custody and may, subject to the Company's prior written approval, be allocated to one or more hot wallet(s) for specific trading strategies as needed. The Company shall make available, on request, separate hot wallets for each strategy, to be accessed by the Contractor-developed smart contract executing the orders. The Strategy Assets in hot wallets shall only be traded via the Contractor-developed smart contracts and not via any other smart contracts or third-party

applications. Without limiting the foregoing, the Contractor shall (i) not transfer any Strategy Assets to a blockchain network address of the Contractor or a blockchain network address that is not under the control of the Company; (ii) not use any privacy or anonymity enhancing services or software (e.g., tumblers or mixers) without the Company's prior written consent; (iii) not use a private key to access any blockchain network address in connection with the Services other than wallets for which a password has been provided to Contractor by the Company for an account for which the Company has informed Contractor that it has retained the seed phrase; (iv) not seek to withdraw any Strategy Assets or fiat currency from any cold wallet or exchange without the Company's prior written approval; (v) provide the Company with a daily trades report and profit and loss statement. The Contractor acknowledges that the Company may monitor all of its activities on any application or any exchange.

4. **Termination**.  If at any time the Company terminates this Agreement before the Termination Date, so long as the termination was not for gross negligence or unlawful actions by the Contractor, the Company shall pay to the Contractor the accrued Performance Rate from the latter of the Effective Date or date of immediate previous payment of Performance Rate to the Termination Date of the Contractor.

If at any time the Contractor terminates this Agreement before the Termination Date, the Contractor will be compensated for the accrued Performance Rate until date of termination.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711299



## Certificate Of Completion
Envelope Id: 9C6EADB1B1B946FAAAEB2A12A3E1EEEB
Subject: Please DocuSign: ITB - Celsius DeFi Agreement Final 10.22.2020.docx
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 8 | Signatures: 2 | Status: Completed |
| Certificate Pages: 5 | Initials: 0 | Envelope Originator: |
| AutoNav: Enabled | | Shelisha Steele |
| EnvelopeId Stamping: Enabled | | shelisha.steele@celsius.network |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | IP Address: 174.49.124.7 |

## Record Tracking
| | | |
|---|---|---|
| Status: Original<br>10/22/2020 12:51:59 PM | Holder: Shelisha Steele<br>shelisha.steele@celsius.network | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Alfredo Terrero<br>aterrero@intotheblock.io<br>Into The Block Corp<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Alfredo Terrero<br>168D8ECFEA3E479...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 73.138.159.169 | Sent: 10/22/2020 12:54:29 PM<br>Viewed: 10/22/2020 12:54:49 PM<br>Signed: 10/22/2020 12:54:54 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 10/22/2020 12:38:20 PM<br>    ID: 3871b60e-d93c-4d47-b136-c388b326e081 | | |
| Harumi Urata-Thompson<br>harumi@celsius.network<br>CFO<br>Celsius Network Inc.<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Harumi Urata-Thompson<br>821A611261A84B2...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.90.80.112<br>Signed using mobile | Sent: 10/22/2020 12:54:29 PM<br>Viewed: 10/22/2020 1:11:48 PM<br>Signed: 10/22/2020 1:12:09 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Johannes Treutler<br>johannes.treutler@celsius.network<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 10/22/2020 12:54:29 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711300

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Shelisha Steele<br>shelisha.steele@celsius.network<br>Celsius Network Inc.<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 10/22/2020 12:54:29 PM<br>Resent: 10/22/2020 1:12:13 PM<br>Viewed: 10/22/2020 2:02:15 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/22/2020 12:54:30 PM |
| Certified Delivered | Security Checked | 10/22/2020 1:11:48 PM |
| Signing Complete | Security Checked | 10/22/2020 1:12:09 PM |
| Completed | Security Checked | 10/22/2020 1:12:09 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Celsius Network Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711302

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Celsius Network Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ashley@celsius.network

**To advise Celsius Network Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ashley@celsius.network and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Celsius Network Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ashley@celsius.network and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celsius Network Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711303

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ashley@celsius.network and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Celsius Network Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Celsius Network Inc. during the course of your relationship with Celsius Network Inc..

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS
SUBJECT TO JANUARY 13, 2023 STIPULATION

CELSIUSNETWORK_01711304