**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
John R. Ashmead
Thomas Ross Hooper
Paul B. Koepp

*Counsel to Barber Lake Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 22-10964-mg |
| **CELSIUS NETWORK LLC,** *et al.*, | |
| Post-Effective Date Debtors.[1] | **(Jointly Administered)** |
| | |
| **BARBER LAKE DEVELOPMENT LLC,** | |
| Plaintiff, | Adv. Pro. No. -_____ |
| v. | |
| **PRIORITY POWER MANAGEMENT, LLC,** | |
| Defendant. | |

**COMPLAINT**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Barber Lake Development LLC ("Barber Lake" or "Plaintiff"), by and through its undersigned counsel, as Plaintiff in the above-captioned adversary proceeding, and based upon knowledge, information, belief, and the result of its investigation to date, alleges as follows:

**NATURE OF ACTION**

1. This is an action to recover over $17 million in refundable payments made by Debtor Celsius Mining LLC ("Celsius Mining"), the predecessor-in-interest to Plaintiff regarding the contract at issue, to defendant Priority Power Management, LLC ("PPM") that PPM has wrongfully refused to return.

2. In or about February 2022, Celsius Mining paid to PPM an up-front development fee of $7 million and made other payments to PPM totaling $10,147,242 in connection with a letter of intent (the "Barber Lake LOI") for the proposed development by PPM of a site in Mitchell County, Texas, for the construction of a virtual currency mining facility (the "Barber Lake Project"). To fully earn and retain those amounts, PPM was required to satisfy certain deliverables to allow the Barber Lake Project to move forward to final documentation.

3. PPM never did so. Indeed, PPM never provided evidence to Celsius Mining that it had obtained the necessary regulatory approvals for the Barber Lake Project to develop the site.

4. As a result, under the Barber Lake LOI, the payments made by Celsius Mining were expressly refundable if Celsius Mining elected not to proceed with the Barber Lake Project .

5. Celsius Mining offered PPM ample opportunity to satisfy the deliverables, yet PPM failed to do so. PPM ultimately presented Celsius Mining with a choice: proceed with a binding transaction without the deliverables (and without the necessary regulatory approvals) or PPM would take efforts to sell the Barber Lake Site (as defined below) to a third party.

6. On or about October 25, 2023, Celsius Mining elected not to proceed with the transaction. Given its failure to satisfy the deliverables, PPM was required to refund the development fee and refundable payments to Celsius Mining within seven days of such election.

7. PPM refused, asserting that the development fee and other refundable payments had become non-refundable on March 31, 2022, that PPM was entitled to keep the over $17 million paid by Celsius Mining to PPM with respect to the Barber Lake Project, and, remarkably, that Celsius Mining had "released" its claims under the Barber Lake LOI for no consideration at a time when Celsius Mining was insolvent.

8. Moreover, upon information and belief, PPM used the development fee and other refundable payments made by Celsius Mining to improve the Barber Lake Site and increase its value for a potential sale to a third party and PPM has retained the benefit of such improvements.

9. To date, PPM has refused to return the $17,147,242 in refundable payments, which amounts continue to be due and owing to Plaintiff as the successor to Celsius Mining, or to otherwise convey to Plaintiff the value conferred on PPM by Celsius Mining.

10. By this lawsuit, Plaintiff seeks (1) damages for PPM's breach of the Barber Lake LOI; (2) a declaratory judgment that Celsius Mining's claim to the refund has not been released; (3) to the extent Celsius Mining is determined to have proffered a release of the claim, avoidance of such release as a constructive fraudulent transfer; (4) imposition of a constructive trust or, in the alternative, damages for PPM's unjust enrichment; and (5) an order requiring PPM to turn over Debtor Celsius Mining's equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site.

## JURISDICTION AND VENUE

11. This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Federal subject matter jurisdiction also exists under 28 U.S.C. § 1331 and under 28 U.S.C. § 1332(a), based on complete diversity of citizenship of the parties and because the amount in controversy, exclusive of interests and costs, exceeds $75,000. The Court further retained jurisdiction over the claims asserted in this adversary proceeding in the November 9, 2023 Order confirming the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Dkt. No. 3972] (the "Confirmation Order").

13. This Court has personal jurisdiction over PPM pursuant to Bankruptcy Rule 7004. PPM has maintained minimum contacts with the United States in connection with the claims asserted herein.

14. Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with cases commenced under the Bankruptcy Code. The contract at issue in this action does not contain a forum selection provision.

15. Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court.

## PARTIES

16. Plaintiff Barber Lake is a limited liability company formed under the laws of the State of Delaware and the successor to Celsius Mining under the Barber Lake LOI pursuant to that

certain Master Conveyance Agreement between Celsius Mining and Ionic Digital Treasury Inc. dated as of January 31, 2024 ("Master Conveyance Agreement").[2]

17. Celsius Mining, along with Debtors Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Network, Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd; GK8 UK Limited; and GK8 USA LLC, filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code on July 13, 2022. Debtors GK8 Ltd, GK8 UK Limited, and GK8 USA filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code on December 7, 2022. The Plan became effective on January 31, 2024.

18. Debtor Celsius Mining is the Managing Member of Barber Lake.[3]

19. Defendant Priority Power Management, LLC is a limited liability company formed under the laws of the State of Texas with its principal place of business at 2201 East Lamar Boulevard, Suite 275, Arlington, Texas 76006.

## STATEMENT OF FACTS

20. Celsius Mining engaged in cryptocurrency "mining," which involves the use of sophisticated hardware devices called "mining rigs" to verify new blockchain transactions and allow new cryptocurrency assets to enter the market.

---

[2] Under the Master Conveyance Agreement, Celsius Mining conveyed the outstanding legal claims and ultimate settlements and recoveries related to the Barber Lake Site to Ionic Digital Mining LLC, which in turn has conveyed the outstanding legal claims and ultimate settlements and recoveries related to the Barber Lake Site to Plaintiff.

[3] Moshin Y. Meghji, as Litigation Administrator under the Plan, manages Celsius Mining and has assigned the Chapter 5 Claims asserted herein to Plaintiff.

21. Upon information and belief, defendant PPM is an independent energy management services and consulting firm that, among other things, develops and builds energy infrastructure for its clients.

22. In connection with its energy-intensive mining business, Celsius Mining contracted with Defendant PPM to develop several sites for the construction of virtual currency mining facilities.

Celsius Mining and PPM Enter into the Barber Lake LOI

23. One such site (the "Barber Lake Site") was to be located in Mitchell County, Texas within the Electric Reliability Council of Texas ("ERCOT") West Load Zone in the certificated service area of Oncor Electric Delivery Company (the "Utility").

24. On or about February 17, 2022, Celsius Mining and PPM entered into the Barber Lake LOI regarding the development of a 300-megawatt facility at the Barber Lake Site. A true and correct copy of the Barber Lake LOI is attached hereto as Exhibit A.

25. The Barber Lake LOI contemplated that the parties would negotiate and enter into definitive documentation regarding the Barber Lake Site. With the exception of Sections C, D, E and G, the Barber Lake LOI was non-binding on the parties.

26. Under Section G of the Barber Lake LOI, PPM agreed to negotiate exclusively with Celsius Mining on all matters related to the Barber Like Site until March 31, 2022 (the "Exclusivity Period"), and Celsius Mining agreed to pay a non-refundable $500,000 exclusivity fee to PPM.

27. Celsius Mining also agreed to make certain payments to PPM that were refundable on or before the "Refund Expiration Date."

28. Specifically, Section A(1)(g) of the Barber Lake LOI provided that Celsius Mining would pay a $7 million Development Fee to PPM "subject to PPM's delivery of the

6

Development Fee Deliverables to Celsius [Mining's] reasonable satisfaction and further subject to the payment terms" described in Section C.

29. In Section C of the Barber Lake LOI, Celsius Mining agreed to pay to PPM the $7,000,000 Development Fee (the "Development Fee") within two days after the execution of the Barber Lake LOI. Section C further provided that the payment of the Development Fee was expressly subject to the "Development Fee Deliverables."

30. Celsius Mining acknowledged in Section C of the Barber Lake LOI that the Development Fee would become non-refundable "[o]nce the Development Fee Deliverables are fully satisfied and the Exclusivity Period has expired (such date being the 'Refund Expiration Date')."

31. Section A(2)(c) of the Barber Lake LOI defines the "Development Fee Deliverables" as (i) a fully executed Transmission/Substation Facility Extension Agreement with the Utility (the "TFEA"); (ii) executable (approved by the Utility) assignment and assumption agreements for the TFEA; and (iii) executable (and approved) Site Transfer Documentation made available for signing by Celsius Mining. "Site Transfer Documentation" was defined in Section A(1)(b) of the Barber Lake LOI as "one or more deeds (including a Surface Deed) conveying to Celsius [Mining] all title, land and property rights to the Site."

32. Further, in Section D of the Barber Lake LOI, Celsius Mining agreed to pay to PPM the total amount of $10,147,242 consisting of (a) $2,350,000 towards the land acquisition at the Barber Lake Site and (b) $7,797,242 as reimbursement to PPM of amounts previously paid by PPM to the Utility. These payments were defined collectively as the "Refundable Payments."

33. Section C provided that "PPM will refund the Development Fee, minus any reasonable and documented expenses incurred by PPM, to [Celsius Mining] within seven (7) days"

7

if Celsius Mining elected not to proceed with the Barber Lake Site prior to the Refund Expiration Date. Similarly, Section D provided that if Celsius Mining elected not to proceed with the Barber Lake Site prior to the Refund Expiration Date, "PPM will refund the Refundable Payments, minus any reasonable and documented expenses incurred by PPM, to [Celsius Mining] within seven (7) days."

34. Celsius Mining specifically negotiated and bargained for this language making the Development Fee and Refundable Payments refundable until the later of (i) the full satisfaction of the Development Fee Deliverables and (ii) the expiration of the Exclusivity Period.

## PPM Fails to Satisfy the Development Fee Deliverables

35. After execution of the Barber Lake LOI, Celsius Mining timely paid the $7 million Development Fee and the $10,147,242 Refundable Payments to PPM.

36. Celsius Mining thereafter began its diligence of the Barber Lake Site, and the parties commenced negotiations regarding definitive documentation for the site.

37. PPM at no time, however, satisfied the Development Fee Deliverables.

38. In that regard, PPM did not provide Celsius Mining with a fully executed TFEA, an executable (and approved) assignment and assumption agreements for the TFEA, or executable (and approved) Site Transfer Documentation.

39. Notwithstanding that none of the Development Fee Deliverables had been satisfied, on or about Friday, April 1, 2022, Tyler Randolph, Senior Director of Business Development at PPM, sent an email at approximately 4:36 p.m. Eastern Time to Amir Ayalon, the then-CEO of Celsius Mining, purporting to give notice that "the Exclusivity Period for Barber Lake has expired and as of yesterday March 31, 2022 the Development Fee paid by Celsius has been earned and is

non-refundable." Mr. Randolph further asked Celsius Mining to "confirm receipt of this email and acknowledge that the fees have been earned and are non-refundable at this point."

40. Mr. Randolph's April 1, 2022 email does not accurately reflect the terms of the Barber Lake LOI.

41. Upon information and belief, Mr. Ayalon was in Israel at the time he received the April 1, 2022 email from Mr. Randolph. At 1:27 a.m. local time on April 2, 2022 (6:27 p.m. Eastern Time on April 1, 2022), Mr. Ayalon confirmed receipt of Mr. Randolph's email and simply wrote "we're confirmed."

42. Mr. Ayalon did not acknowledge in his April 1, 2022 email that any fees had been earned and were non-refundable or that Celsius Mining had waived or released any claims, and neither Mr. Randolph nor Mr. Ayalon referred to the Refundable Payments in their correspondence. A copy of the April 2022 correspondence is attached hereto as Exhibit B.

43. At the time the parties entered into the Barber Lake LOI, PPM represented to Celsius Mining that required regulatory approvals to proceed with the development of the site were imminent. In reliance on PPM's representations, Celsius Mining continued to pay certain expenses incurred by PPM after execution of the Barber Lake LOI in connection with the development of the Barber Lake Site in addition to the Development Fee and Refundable Payments until at least June 2023.

44. PPM, however, never presented any evidence that it had obtained final regulatory approvals.

45. Instead, on or about May 11, 2023, PPM forwarded to Celsius Mining April 2023 emails from ERCOT and the Utility indicating that it had received *conditional* approval for a 300-megawatt facility at the Barber Lake Site, subject to certain transmission line upgrades and final

9

approval by ERCOT. At that time, PPM provided drafts of certain agreements (that were not Development Fee Deliverables) even though it had only received conditional approval.

46. The parties thereafter continued to discuss the proposed Barber Lake Project. PPM did not, however, provide any evidence that it had obtained final regulatory approval for the Barber Lake Site or otherwise satisfy the Development Fee Deliverables.

47. On or about October 11, 2023, and notwithstanding its failure to secure final regulatory approval, PPM issued an ultimatum to Celsius Mining: either Celsius Mining would execute definitive agreements for the Barber Lake Site within 48 hours (in the absence of the necessary regulatory approvals) or PPM would revoke its offer to pursue the Barber Lake Project and market the site to third parties for sale.

48. On or about October 13, 2023, Celsius Mining responded that it could not execute the definitive agreements by PPM's deadline but offered to continue discussing the Barber Lake Project. Celsius Mining stated that if it elected not to proceed with the Barber Lake Project, it was entitled to refunds of the Development Fee and the Refundable Payments pursuant to Sections C and D of the Barber Lake LOI.

49. On or about October 17, 2023, PPM responded to Celsius Mining that PPM would no longer negotiate regarding the Barber Lake Project unless Celsius Mining confirmed in writing that Celsius Mining was not entitled to any refund under the Barber Lake LOI. Celsius Mining thereafter elected not to proceed further with the Barber Lake Project at the Barber Lake Site.

50. PPM never satisfied any of the Development Fee Deliverables.

51. By letter dated October 25, 2023, Celsius Mining's counsel informed PPM that "the Development Fee Deliverables have not been fully satisfied," including delivery of the Site Transfer Documentation and the TFEA, and that Celsius Mining elected not to proceed with the

10

Barber Lake Project. Celsius Mining further demanded a refund of the Development Fee and the Refundable Payments by no later than November 1, 2023.

52. Under Sections C and D of the Barber Lake LOI, PPM was therefore required to refund the Development Fee and Refundable Payments, less reasonable and documented expenses incurred by PPM, within seven days of Celsius Mining's election.

53. By letter from its counsel dated November 1, 2023, PPM refused to refund the Development Fee and Refundable Payments, asserting erroneously that they "became nonrefundable no later than March 31, 2022, the date on which the Exclusivity Period lapsed and the Refund Expiration Date occurred" even though the Development Fee Deliverables had not been satisfied.

54. PPM's refusal to refund the Development Fee and Refundable Payments constituted a breach of PPM's binding obligations in Sections C and D of the Barber Lake LOI.

55. As a result, Plaintiff has been damaged by such breach in an amount no less than the $17,147,242 PPM has refused to refund to Celsius Mining.

56. PPM has further asserted that, notwithstanding the plain language of the Barber Lake LOI and PPM's failure to satisfy the Development Fee Deliverables, Mr. Ayalon's April 1, 2022 email purportedly constituted a valid release of all claims for the Development Fee and Refundable Payments under the Barber Lake LOI.

57. Celsius Mining did not clearly and unambiguously release any claims in the April 1, 2022 email, for which PPM did not provide any consideration, and Plaintiff disputes that the April 1, 2022 email constitutes a valid release.

58. A justiciable controversy therefore exists between the parties.

11

59. Further, upon information and belief, Debtor Celsius Mining was insolvent at all times relevant to the Complaint. As a result, even if the April 1, 2022 email constituted a release of Plaintiff's claims under the Barber Lake LOI valued at over $17 million, such release was a constructive fraudulent transfer avoidable by Plaintiff.

**COUNT I**
**(Breach of Contract)**

60. Plaintiff repeats and realleges each and every allegation in all prior paragraphs, which are incorporated by reference as if fully set forth herein.

61. On or about February 17, 2022, Celsius Mining and PPM entered into the Barber Lake LOI, which created certain binding legal obligations between the parties.

62. Section C of the Barber Lake LOI states: "After consultation with PPM, Celsius may elect not to proceed with the Site, in which event, if such election is made prior to the Refund Expiration Date, PPM will refund the Development Fee, minus any reasonable and documented expenses incurred by PPM, to Celsius within seven (7) days."

63. The Refund Expiration Date is defined in Section C as the date upon which "the Development Fee Deliverables are fully satisfied and the Exclusivity Period has expired[.]"

64. The Development Fee Deliverables set out in Section A(2)(c) of the Barber Lake LOI were: (i) a fully executed Transmission/Substation Facility Extension Agreement with the Utility (the "TFEA"); (ii) executable (approved by the Utility) assignment and assumption agreements for the TFEA; and (iii) executable (and approved) Site Transfer Documentation made available for signing by Celsius Mining.

65. Celsius Mining timely paid the Development Fee as provided in Section C of the Barber Lake LOI and timely made the Refundable Payments as provided in Section D, together totaling $17,147,242.

66. PPM did not satisfy its obligation to deliver any of the Development Fee Deliverables to Celsius Mining. As a result, the Refund Expiration Date did not occur and has not occurred.

67. Celsius Mining timely gave notice on October 25, 2023, prior to the Refund Expiration Date, that it elected not to proceed with the Barber Lake Project and demanded a return of the Development Fee and Refundable Payments.

68. Pursuant to Sections C and D of the Barber Lake LOI, PPM was required to refund the Development Fee and Refundable Payments, less reasonable and documented expenses incurred by PPM, within seven days of Celsius Mining's election.

69. PPM did not refund the Development Fee and Refundable Payments within seven days of Celsius Mining's election and, to date, has not refunded any of the amounts owed to Plaintiff under the Barber Lake LOI. PPM's failure to refund the Development Fee and Refundable Payments constitutes a breach of the Barber Lake LOI.

70. As a result of PPM's breach of the Barber Lake LOI, Plaintiff has been damaged in an amount to be proven at trial, but no less than $17,147,242.

## COUNT II
**(Declaratory Judgment – 28 U.S.C. §§ 2201, 2202)**

71. Plaintiff repeats and realleges each and every allegation in all prior paragraphs, which are incorporated by reference as if fully set forth herein.

72. Notwithstanding the plain terms of the Barber Lake LOI entitling Plaintiff to the refund of the Development Fee or Refundable Payments, PPM has taken the position that it is not obligated to return any amounts to Celsius Mining or its successor Barber Lake on the grounds that such claims were released by the April 1, 2022 email sent by Celsius Mining to PPM (the "Purported Release").

73. By email dated April 1, 2022, PPM purported to give notice to Celsius Mining that "the Exclusivity Period for Barber Lake has expired and as of yesterday March 31, 2022 the Development Fee paid by Celsius has been earned and is non-refundable." PPM further requested that Celsius "[k]indly confirm receipt of this email and acknowledge that the fees have been earned and are non-refundable at this point."

74. PPM nowhere addressed the Refundable Payments in its April 1, 2022 email.

75. In the unsigned Purported Release, Mr. Ayalon simply responded "we're confirmed."

76. Mr. Ayalon's confirmation of receipt of Mr. Randolph's email did not constitute a release or waiver of claims assertable by Celsius Mining against PPM.

77. Moreover, PPM did not provide any consideration for the Purported Release.

78. Upon information and belief, rather than developing the site for the construction of virtual currency mining facilities by Celsius Mining as it was required to do, PPM has engaged in discussions with third parties regarding the potential sale of the Barber Lake Site for over $40 million.

79. Plaintiff hereby seeks a declaration that the Purported Release did not constitute a valid release of any claims under the LOI or of Celsius Mining's entitlement to a refund of the Development Fee or Refundable Payments.

80. A justiciable controversy exists between Plaintiff and PPM as to whether the Purported Release constitutes a valid release.

81. It is therefore necessary for the Court to determine the actual rights of the parties under the Barber Lake LOI and the enforceability of the Purported Release.

82. In view of the foregoing, Plaintiff seeks, and is entitled to, a declaratory judgment that the Purported Release did not constitute a release of any claims under the Barber Lake LOI.

### COUNT III
### (Avoidance and Recovery of Constructive Fraudulent Transfer – 11 U.S.C. §§ 544(b)(1); 548(a)(1)(B), 550)

83. Plaintiff repeats and realleges each and every allegation in all prior paragraphs, which are incorporated by reference as if fully set forth herein.

84. In the alternative, Plaintiff brings this claim under sections 544(b)(1), 548(a)(1)(B) and 550 of the Bankruptcy Code.

85. To the extent the Purported Release released Plaintiff's claims against PPM for the refund of the Development Fee and Refundable Payments, PPM is the recipient of the Purported Release.

86. To the extent the Purported Release released Plaintiff's claims against PPM valued at no less than $17 million for the refund of the Development Fee and Refundable Payments, Debtor Celsius Mining received less than reasonably equivalent value or did not receive fair consideration as part of the Purported Release.

87. Debtor Celsius Mining was insolvent at all times relevant to this Complaint, and when the Purported Release was allegedly made. Debtor Celsius Mining also had unreasonably small capital on the date of the Purported Release or intended to incur or believed they would incur debts beyond their ability to pay as such debts matured.

88. By virtue of the foregoing, to the extent the Purported Release released Plaintiff's claims against PPM for the refund of the Development Fee and Refundable Payments, the Purported Release was a constructive fraudulent transfer avoidable under sections 544(b)(1) and 548(a)(1)(B) of the Bankruptcy Code, and applicable law, including, but not limited to, the Uniform Fraudulent Transfer Act as enacted in the states of New Jersey and Delaware.

15

89. Section 550 of the Bankruptcy Code provides that if a transfer is avoided under section 544 or 548 of the Bankruptcy Code, Plaintiff may recover the property or the value of the property transferred from the initial transferee, the entity for whose benefit the transfers were made, or any immediate or mediate transferee of the initial transferee.

90. To the extent the Purported Release released Plaintiff's claims against PPM for the refund of the Development Fee and Refundable Payments, defendant PPM is the initial transferee of the Purported Release.

91. By virtue of the foregoing, to the extent the Purported Release released Plaintiff's claims against PPM for the refund of the Development Fee and Refundable Payments, the obligations created by the Purported Release are avoidable by Plaintiff under section 548 of the Bankruptcy Code. In such event, Plaintiff is further entitled to recover the value of the Purported Release from PPM under section 550 of the Bankruptcy Code.

### COUNT IV
**(Restitution and Unjust Enrichment)**

92. Plaintiff repeats and realleges each and every allegation in all prior paragraphs, which are incorporated by reference as if fully set forth herein.

93. From February 2022 until at least June 2023, Celsius Mining made over $17 million in payments to defendant PPM, including the payment of certain expenses incurred by PPM after the execution of the Barber Lake LOI, that PPM has wrongfully refused to return to Celsius Mining.

94. Upon information and belief, defendant PPM used the funds paid by Celsius Mining to make improvements to the Barber Lake Site.

95. PPM has benefitted from the wrongfully withheld payments as a result of the increase in value of the Barber Lake Site.

96. PPM has been unjustly enriched by retaining the value of the improvements to the Barber Lake Site that were funded with the amounts wrongfully withheld from Celsius Mining.

97. Upon information and belief, PPM has engaged in discussions with third parties regarding the potential sale of the Barber Lake Site for over $40 million.

98. By retaining the value of the improvements to the Barber Lake Site, and by selling or attempting to sell the Barber Lake Site to a third party, PPM has been unjustly enriched by the value of such improvements.

99. PPM's retention of the value of the improvements to the Barber Lake Site constitutes a constructive fraud and a wrongful taking of property.

100. Money damages for PPM's breach of the Barber Lake LOI would be inadequate to fully redress PPM's unjust enrichment from its wrongful retention of the value of the improvements to the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site.

101. The Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site constitute an identifiable *res* in which Celsius Mining holds an equitable interest and which is directly traceable to the property wrongfully retained by PPM.

102. By virtue of the foregoing, Plaintiff is entitled to the imposition of a constructive trust on the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site.

103. In the alternative, Plaintiff is entitled to damages in the amount that PPM has been unjustly enriched by its wrongful retention of the payments made by Celsius Mining and the value of the improvements to the Barber Lake in an amount to be proven at trial, but no less than $17,147,242.

17

## COUNT V
### (Turnover – 11 U.S.C. § 542(a))

104. Plaintiff repeats and realleges each and every allegation in all prior paragraphs, which are incorporated by reference as if fully set forth herein.

105. Upon information and belief, PPM remains in possession of the Barber Lake Site and Debtor Celsius Mining's equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site.

106. PPM is not a custodian of such equitable interest.

107. Debtor Celsius Mining held equitable title to its equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site as of July 13, 2022, and such equitable interest is property of the Debtors' estates pursuant to 11 U.S.C. § 541.

108. Debtor Celsius Mining's equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site are not of inconsequential value or benefit to the Debtors' estates.

109. In view of the foregoing, Plaintiff seeks, and pursuant to 11 U.S.C. § 542(a) is entitled to, the entry of an order requiring PPM to turn over Debtor Celsius Mining's equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against PPM as follows:

(a) Damages in an amount to be proven at trial, but no less than $17,147,242;

(b) A judgment declaring that the Purported Release did not constitute a valid release and did not release Plaintiff's claims for the refund of the Development Fee and Refundable Payments under the Barber Lake LOI;

18

(c) In the alternative, determining that the Purported Release is avoidable as a constructive fraudulent transfer pursuant to the applicable provisions of the Bankruptcy Code and applicable state law, including, without limitation, sections 544, 548, and 550 of the Bankruptcy Code, and ordering that Plaintiff is entitled to recover the value of the Purported Release from defendant PPM;

(d) Imposing a constructive trust on the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site or, in the alternative, awarding Plaintiff damages for PPM's unjust enrichment in an amount to be proven at trial, but no less than $17,147,242;

(e) Ordering defendant PPM to turn over Debtor Celsius Mining's equitable interest in the Barber Lake Site and any proceeds or revenues generated from the Barber Lake Site;

(f) Granting Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action;

(g) Granting Plaintiff pre- and post-judgment interest on the judgment amount to the fullest extent allowed by applicable law; and

(h) Ordering such other and further relief as the Court may deem just and proper.

Dated: July 15, 2024
New York, New York

**SEWARD & KISSEL LLP**

By: *John R. Ashmead*
John R. Ashmead
Thomas Ross Hooper
Paul B. Koepp
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Email: ashmead@sewkis.com
        hooper@sewkis.com
        koepp@sewkis.com

*Counsel to Barber Lake Development LLC*

SK 38846 0001 11412690