Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY   10004

15

16                    June 28, 2024

17                    10:06 AM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  KAREN

1   Hybrid Hearing RE: Application for Final Professional

2   Compensation for Latham & Watkins LLP, Special Counsel,

3   period: 7/13/2022 to 5/31/2023, fee:$12,358,407.2,

4   expenses: $54,459.60. filed by Latham & Watkins LLP. (Doc#

5   4249, 4835, 4970)

6

7   Hybrid Hearing RE: Final Application for Final Professional

8   Compensation of Alvarez & Marsal North America, LLC as

9   Financial Advisors for the Debtors, for Professional

10   Services Rendered and Reimbursement of Actual and Necessary

11   Expenses for the Period from July 13, 2022 Through and

12   Including November 9, 2023 for Alvarez & Marsal North

13   America, LLC, as Financial Advisors, period: 7/13/2022 to

14   11/9/2023, fee:$27,959,834.6, expenses: $69,741.74. (Doc#

15   4250, 4835, 4970)

16

17   Hybrid Hearing RE: Application for Final Professional

18   Compensation for Ernst & Young LLP, Other Professional,

19   period: 7/13/2022 to 11/9/2023, fee:$6,735,295.50, expenses:

20   $36,094.03. (Doc# 4253, 4275, 4291, 4835, 4970)

21

22

23

24

25

Page 3

1    Hybrid Hearing RE: Combined Fourth Interim and Final

2    Application of White & Case LLP for Compensation for

3    Services Rendered and Reimbursement of Expenses as

4    Counsel to The Official Committee of Unsecured Creditors for

5    White & Case LLP. Filed by Gregory F Pesce. (Doc# 4256,

6    4281, 4291, 4835, 3127, 3426, 3709, 3925, 4061, 4970)

7

8    Hybrid Hearing RE: Final Application of Elementus Inc. as

9    Blockchain Forensics Advisor to The Official Committee of

10   Unsecured Creditors of Celsius Network, LLC, et al., for

11   Compensation for Services Rendered and Reimbursement of

12   Expenses for the Period from August 1, 2022 through November

13   9, 2023. (Doc# 4257, 4281, 4291, 4835, 4970)

14

15   Hybrid Hearing RE: Application for Interim Professional

16   Compensation / Combined Fourth Interim and Final Application

17   of Gomitzky & Co. for Compensation for Services

18   Rendered and Reimbursement of Expenses as Israeli Counsel to

19   The Official Committee of Unsecured Creditors. filed by

20   Gomitzky & Co .. (Doc## 4258, 4281, 4291, 4835, 4970)

21

22

23

24

25

Page 4

1    Hybrid Hearing RE: Application for Interim Professional

2    Compensation / Combined Fourth Interim and Final Fee

3    Application of Perella Weinberg Partners LP for

4    Compensation for Services Rendered and Reimbursement of

5    Expenses as Investment Banker for The Official Committee of

6    Unsecured Creditors. filed by Perella Weinberg

7    Partners LP .. (Doc# 4259, 4281, 4291, 4835, 4970)

8

9    Hybrid Hearing RE: Fourth Interim and Final Fee Application

10   for Centerview Partners LLC, Other Professional, period:

11   7/13/2022 to 11/9/2023, fee:$23,791,346.0, expenses:

12   $6,712.06. (Doc# 4260, 4276, 4291, 4835)

13

14   Hybrid Hearing RE: Application for Interim Professional

15   Compensation / Combined Fourth Interim and Final Application

16   of M3 Advisory Partners, LP for Compensation for

17   Services Rendered and Reimbursement of Expenses as Financial

18   Advisor to The Official Committee of Unsecured Creditors.

19   filed by M3 Advisory Partners, LP .. (Doc # 4261,

20   4281,4291,4835,3743,3930,3931,4043,4155,4970)

21

22   Hybrid Hearing RE: Application for Final Professional

23   Compensation for KE Andrews, Other Professional, period:

24   1/1/2023 to 11/9/2023, fee:$525,000.00, expenses: $0.00.

25   (Doc# 4262, 4276, 4291, 4835, 3299, 3791, 3895, 4092, 4970)

Page 5

1   Hybrid Hearing RE: Combined Third Interim and Final

2   Application of Selendy Gay Elsberg PLLC for Services

3   Rendered and Reimbursement of Expenses as Co-Counsel to

4   the Official Committee of Unsecured Creditors for Selendy

5   Gay Els berg PLLC .. (Doc # 4263,4281,4835,3481,

6   3549,4024,4057,4181,4970)

7

8   Hybrid Hearing RE: Second Interim and Final Fee Application

9   for A.M. Saccullo Legal, LLC, Special Counsel, period:

10  12/1/2022 to 11/9/2023, fee:$213, 112.50, expenses: $0.00.

11  (Doc. No. 4254, 4246, 4275, 4291, 4835, 4970).

12

13  Hybrid Hearing RE: Application for Final Professional

14  Compensation for Stout Risius Ross, LLC, Other Professional,

15  period: 2/21/2023 to 11/9/2023, fee:$1,263,415.00, expenses:

16  $0.00. (Doc# 4265, 4276, 4835, 4094, 3411, 3766, 4255, 4970)

17

18  Hybrid Hearing RE: Application for Final Professional

19  Compensation of Stretto Inc. as Administrative Advisor for

20  Stretto, Inc, Other Professional, period: 7/13/2022 t

21  11/9/2023, fee:$69,790.32, expenses: $0.00. (Doc# 4268,

22  4276, 4835, 4970)

23

24

25

Page 6

1    Hybrid Hearing RE: Application for Final Professional

2    Compensation for Kirkland & Ellis LLP and Kirkland & Ellis

3    International LLP, Debtor's Attorney, period: 7/13/2022 to

4    11/9/2023, fee:$76,323,621.0, expenses: $1,719,338.75. (Doc#

5    4266, 4276, 4835, 4105, 4232,4970,3637,3984,4105,4232)

6

7    Hybrid Hearing RE: Final Fee Application of Huron Consulting

8    Services LLC as Financial Advisor to the Examiner for the

9    Period of October 10, 2022 through and including March 31,

10   2023 for Huron Consulting Services LLC, Other Professional,

11   period: 10/10/2022 to 3/31/2023, fee:$3,887,780.83,

12   expenses: $606.07. (Doc# 4270,4302,4835,4970)

13

14   Hybrid Hearing RE: Application for Final Professional

15   Compensation of Andersen LLP, as UK Tax Services Provider

16   for the Debtors and Debtors in Possession, for the (I)

17   Interim Fee Period from November 1, 2023 Through and

18   Including November 9, 2023 and the (II) Final Fee Period

19   from February 13, 2023 Through and Including November 9,

20   2023 for Andersen LLP, as UK Tax Services, period: 2/13/2023

21   to 11/9/2023, fee:$291,327.34, expenses: $.(Doc# 4271, 4302,

22   4835, 3131, 3787, 3905, 3980, 4360, 4970)

23

24

25

1    Hybrid Hearing RE: Application for Final Professional

2    Compensation of Akin Gump Strauss Hauer & Feld LLP as

3    Special Litigation Counsel to the Debtors and Debtors in

4    Possession for Allowance of Compensation for Services

5    Rendered and Reimbursement of Expenses for the Final Fee

6    Period From July 13, 2022 Through and Including November

7    9, 2023. (Doc# 4273, 4296, 4300, 4835, 4970)

8

9    Hybrid Hearing RE: First Interim and Final Fee Application

10   for Willis Towers Watson US LLC, Other Professional, period:

11   7/13/2022 to 11/21/2023, fee:$187,500.00, expenses:

12   $0.00. (Doc# 4663, 4835, 4970)

13

14   Hybrid Hearing RE: Fourth Application for Interim

15   Professional Compensation of Akin Gump Strauss Hauer & Feld

16   LLP as Special Litigation Counsel to the Debtors and

17   Debtors in Possession for Allowance of Compensation for

18   Services Rendered and Reimbursement of Expenses for the

19   Period July 1, 2023 through and Including November

20   9, 2023 for Akin Gump Strauss Hauer & Feld LLP, Special

21   Counsel, period: 7/1/2023 to 11/9/2023, fee:$6,110,140.50,

22   expenses: $301,357.65. (Doc##4251, 4296, 4835, 3861,

23   3842,4021,4055,4224,4970)

24

25

Page 8

1    Hybrid Hearing RE: Fourth Interim Application of Elementus

2    Inc. for Compensation for Services Rendered and

3    Reimbursement of Expenses as Blockchain Forensics Advisor to

4    the Official Committee of Unsecured Creditors of Celsius

5    Network, LLC, et al., for the Period of July 1, 2023 through

6    November 9, 2023 for Elementus Inc., Other Professional,

7    period: 7/1/2023 to 11/9/2023, fee:$1,197,610.00, expenses:

8    $283,414.02. filed by Elementus Inc .. (Doc## 4236, 4835,

9    3397, 3664, 3966, 4023, 4970)

10

11    Hybrid Hearing RE: Fourth Application for Interim

12    Professional Compensation for Ernst & Young LLP, Other

13    Professional, period: 7/1/2023 to 11/9/2023, fee:

14    $5,303,982.00, expenses: $36,094.03 (Doc## 4252, 4835, 3982,

15    4198, 4199, 4970, 3471, 3982, 4198, 4199)

16

17    Hybrid Hearing RE: Fourth Application of Alvarez & Marsal

18    North America, LLC as Financial Advisors for the Debtors,

19    for Interim Allowance of Compensation for Professional

20    Services Rendered and Reimbursement of Actual and Necessary

21    Expenses Incurred from July 1, 2023 Through and Including

22    November 9, 2023 for Alvarez & Marsal North America, LLC, as

23    Financial Advisors, period: 7/1/2023 to 11/9/2023,

24    fee:$7,151,420.00, expenses: $33,370.00. filed by Joshua

25    Sussberg. (Doc## 4242, 4835, 3384,3701,3970,4088,4197,4970)

1   Hybrid Hearing RE: Application for Final Professional

2   Compensation for Fischer & Co., Special Counsel, period:

3   12/7/2022 to 2/28/2023, fee:$121,847, expenses: $8,970. (Doc

4   ## 4829, 4835, 4970)

5

6   Hybrid Hearing RE: Motion to Strike Item from the Record on

7   Appeal (related document(s)Doc## 4926, 4925, 4927, 4904,

8   4903, 4887, 4873, 4948, 4949, 4992)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   KIRKLAND & ELLIS LLP

4        Attorneys for the Debtor

5        601 Lexington Avenue

6        New York, NY 10022

7

8   BY:  CHRISTOPHER S. KOENIG

9        ROSS KWASTENIET (TELEPHONICALLY)

10       VICTORIA GIORGIO

11       GABRIELLA REARDON

12

13  WHITE & CASE LLP

14       Attorneys for Litigation Administrator and the

15       Litigation Oversight Committee

16       1221 Avenue of the Americas

17       New York, NY 10020

18

19  BY:  SAMUEL HERSHEY

20       JADE YOO

21       GREGORY PESCE

22

23

24

25

Page 11

```
 1    GODFREY KAHN S.C.
 2         Attorneys for Fee Examiner, Christopher Sontchi
 3         One East Main Street, Suite 500
 4         Post Office Box 2719
 5         Madison, WI 53701
 6
 7    BY:  KATHERINE STADLER
 8
 9    UNITED STATES DEPARTMENT OF JUSTICE
10         Attorneys for the U.S. Trustee
11         201 Varick Street, Suite 1006
12         New York, NY 10014
13
14    BY:  SHARA CORNELL (TELEPHONICALLY)
15
16    ALSO PRESENT TELEPHONICALLY:
17    JORGE GARCIA
18    RICHARD SOLOW
19    SANTOS CACERES
20    WESLEY CHANG
21    ELISE FREJKA
22
23
24
25
```

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  All right.  Good

3      morning, everyone.  We're here in Celsius 22-10964.

4              Before we begin, I want to apologize to everybody

5      who's here in person and those are appearing by Zoom.  As

6      you know, our hearing was scheduled for yesterday.  I was in

7      Kansas City for a Federal Judicial Center program and

8      returning on Wednesday night was diverted to Detroit.  Spent

9      the night in Detroit; flew back yesterday.  It wasn't

10     possible.

11             And all of the matters -- I consider all matters

12     important -- I'm sure all of you consider the fee apps very

13     important.  It would have been difficult for me to schedule

14     another hearing over the next few weeks, and I really wanted

15     to move forward with the hearing today.

16             I very much appreciate everything that Chris

17     Sontchi, the fee examiner, has done in the case.  It was not

18     possible for him to appear today either in person or by Zoom

19     as counsel is here and wasn't able to appear.  And I

20     concluded that one of the fee apps has been adjourned.  All

21     the others are going forward.  There are no objections as to

22     them.

23             We checked to make sure that Mr. Sontchi had no

24     objection to our going forward today without his being here

25     if he didn't want to be here, and I was perfectly fine with

Page 13

 1    that.  But I just -- again, when I schedule hearings, I

 2    really do try to have them when they're scheduled.  I know

 3    Mr. Koenig, you don't live in New York and it probably

 4    dislocated your schedule and probably did for others too.

 5           So I appreciate all of you who are either here in

 6    person or on Zoom for accommodating the circumstances that

 7    led me not to be able to have the hearing yesterday.

 8           MR. KOENIG:  No worries.  Good morning, Your

 9    Honor.  Chris Koenig, Kirkland & Ellis, for Celsius.  We

10    certainly understand it's important to be here in the

11    courtroom, and it's good to see you.  And we appreciate you

12    being able to reschedule the hearing on short notice --

13           THE COURT:  Yeah.

14           MR. KOENIG:  -- so that we could go forward this

15    morning.

16           THE COURT:  Just so you all know, I had a lovely

17    evening in about fourth rate hotel at the airport in

18    Detroit.  It's a lovely airport, but --

19           MR. KOENIG:  But the hotel, not so much.  Good

20    morning, Your Honor.  As we've done for the last couple of

21    hearings, I'd like to provide Your Honor with an update on

22    distributions.  On the screen is the presentation that we

23    filed yesterday at Docket Number 4993.  This is sort of our

24    internal score card that we've been using to keep track of

25    our progress of distributions under the plan.

Page 14

1           And as in the past, both the numerator, that is

2    the amount of crypto and fiat that has been distributed has

3    gone up, but obviously the denominator has gone up too.  The

4    litigation administrator is working to resolve claims.  And

5    as claims are resolved, they are put in the queue and they

6    can then receive distributions under the plan.

7           So, not only have the distributions gone up but

8    also the denominator has gone up.  And I think that that's

9    important to note, because if you look just at the

10   percentage of value distributed, it might be a little bit

11   misleading.

12          As we spoke -- as I spoke about at the last

13   hearing, the wire transfers and the cash distributions in

14   particular -- that's the third row there, the Stretto USD

15   row -- has been a little bit behind.  It's a little bit more

16   of a manual process.

17          And if you look at the column on the right, we've

18   gone from 46 percent to 55 percent, which is good progress.

19   But it's a little bit misleading because the currently

20   eligible number jumped by almost 50 percent itself and the

21   successfully distributed number jumped by over two thirds.

22   So we've distributed $50 million.  We had only distributed

23   $76 million when I was last before you.  So that's a good

24   increase.  The percentage is a little bit misleading.

25          So we're making very good progress, particularly

Page 15

1    on the crypto front.  There are folks that just for whatever

2    reason can't pass KYC with PayPal or Coinbase.  And so, what

3    we're excited to announce is we've been working on an

4    alternate distribution method with PayPal to distribute fiat

5    currency.  PayPal is obviously one of the leading

6    distributors of fiat currency all over the world.  They can

7    distribute in virtually every country in the world.

8           And we're undergoing final testing this week and

9    next week, but we expect in July to be fully operational.

10   What that will mean is we can readily -- folks that are

11   having trouble with one of our existing partners, we can

12   readily shift them to this new product that should be very

13   simple, a little bit more straightforward.

14          The biggest problem we're having right now, Your

15   Honor, is with the wire transfers.  As I'm sure Your Honor

16   knows, we can't make a wire transfer unless the recipient

17   gives us their wire information.  And we're seeing a failure

18   rate of over 50 percent because the creditors that send us

19   the wire information, despite receiving instructions, are

20   doing it wrong or the bank is giving them the wrong

21   information.  Or they us the give us the right information,

22   we transfer it to the bank, and the bank sends it back for

23   whatever reason.  It's from crypto.  You know, it's from a

24   crypto case, and they don't want to have to touch it with a

25   10-foot pole.

Page 16

1           And so we're very excited to have PayPal expanding

2     their services with us.  And we hope that in the next month

3     or two, these numbers are going to continue to jump as we

4     bring them online.

5           So I don't know if Your Honor has any particular

6     questions.  Some of the highlighted numbers, our overall

7     distributions in the last month have gone from 86 percent to

8     89 percent.  And again, it's even more than that because the

9     denominator increased by over by over $170 million.

10          So I'm here if Your Honor has any questions, and

11    if not, I'm happy to proceed with the agenda.

12          THE COURT:  I do, but I just -- out of an

13    abundance of caution today, we have a court security officer

14    present in the courtroom.  I think everything is fine.  And

15    if you are able to make -- there's been some indication of

16    some possible problems today.  Thank you very much.

17          CLERK:  Sorry, Judge.  Shara Cornell has her hand

18    up.

19          THE COURT:  Okay.  Go ahead, Ms. Cornell.

20          MS. CORNELL:  Good morning, Your Honor.  Shara

21    Cornell, on behalf of the Office of the United States

22    Trustee.  I just wanted to chime in just for a moment.  The

23    United States Trustee is monitoring distribution in this

24    case and has received many inquiries, as I'm sure Your Honor

25    has.

Page 17

1           The United States Trustee has continued to follow

2    up and communicate with the Debtors regarding these

3    inquiries.  And as of today's date, the Debtors have

4    responded to every inquiry we have forwarded.

5           But I would like to state for the record that we

6    understand that not a lot of parties have received

7    distributions, or that some parties have received

8    distributions that they aren't happy with.  However, any

9    threats made to the Debtors, Debtors' counsel, the

10   Committee, the litigation administrator of the United States

11   Trustee, or any other entity or party in this case will be

12   taken very seriously and are taken very seriously by my

13   office.  And I just wanted to get that out on the record and

14   let everyone know.  Thank you.

15           THE COURT:  Thank you very much, Ms. Cornell.  So,

16   I do -- I mean, one of the things that had originally been

17   scheduled for today were the motions of the Faller group of

18   creditors.  There are -- I'll refer to them as the Faller

19   creditors.  There were a number of entities and their motion

20   has been adjourned to a later date.

21           There were many, many joinders in the issues that

22   the Faller group of creditors have raised.  This focuses on

23   whether corporate creditors would/could receive in-kind

24   crypto distributions.  I take the issues that the

25   (indiscernible) creditors and those numerous joinders have

Page 18

1    filed -- I take them very seriously.  And they're not going

2    to be resolved today.

3         But among the issues that have been raised is they

4    want to take -- they now have counsel and they want to take

5    -- they sought to take Rule 2004 discovery.  The reorganized

6    Debtors has in part responded that it's procedurally

7    improper because now it's a contested matter and discovery

8    needs to -- if it's going to take place, needs to take place

9    pursuant to the applicable bankruptcy rules, incorporating

10   the discovery rules, the Federal Rules of Civil Procedure.

11        I'm going to raise a series of questions that I

12   have.  And let me just say that my law clerks and I have

13   spent a very considerable amount of time trying to

14   understand the issues.  And we come away -- and I think at

15   one point we required the Debtors to file a response, and

16   they did.  I still have multiple questions.

17        And, you know, procedurally the Debtor's correct

18   that -- I'm going to refer to the Debtor as the reorganized

19   Debtors -- procedurally correct that that's a contested

20   matter and discovery is not pursuant to Rule 2004.  They've

21   raised issues about whether the proposed discovery is

22   overbroad.  There's going to be discovery.  Okay.  I'm not

23   going to stand on the ceremony of Rule 2004 versus the

24   discovery rules applicable to contested matters.

25        MR. KOENIG:  Right.  And Your Honor, if I may, the

Page 19

1   motion was adjourned to give the parties time to conduct

2   that discovery.

3         THE COURT:  I know, but let me -- I want to put on

4   the record today -- and they may not have a representative

5   present and I understand that -- I'm not ruling on any of

6   it.  What I want to describe are questions that I have based

7   on what I've read so far.  And many of these questions focus

8   not only on the disclosure statement, the plan, the plan

9   supplements, the various reports regarding distribution that

10  we've had.  And this principally focuses on Coinbase.

11        MR. KOENIG:  Okay.

12        THE COURT:  So the Coinbase -- and I could be

13  incorrect on what I'm saying -- I'm going to be enlightened

14  on this at some point, I assume.  But the Coinbase

15  agreements are in the seventh plan supplement, which are ECF

16  Docket Number 3869, Exhibit G, which is 230 pages.  The main

17  agreement is the Coinbase prime agreement.

18        After reviewing that agreement, I don't see

19  anything about a 100 creditor limit in the prime agreement.

20  This focuses on -- at some point, corporate creditors were

21  advised that only 100 corporate creditors could receive

22  crypto distributions --

23        MR. KOENIG:  In-kind, yes.

24        THE COURT:  -- in-kind.  And the rest would have

25  to receive fiat.  And there was -- you sought information

Page 20

1    from the top 250 to wean it down to the 100.  The top 250

2    (indiscernible) by size.  And I don't see anything in the

3    Coinbase prime agreement or related documents, the custodial

4    service agreement, that imposes the 100-page limit.

5             And the question I have is, can you point me to

6    any provision in the Coinbase prime agreement that

7    establishes the 100-account limit?  I don't expect -- if you

8    have answers today, you can give it, but I don't expect --

9    these are questions I have.

10            MR. KOENIG:  Understood.

11            THE COURT:  The Debtor also filed a side letter

12   with Coinbase under seal.  The motion to seal is ECF 3482.

13   Nowhere, even in that sealed agreement, which the Court does

14   have access to, can I find any reference to a 100-creditor

15   limit.

16            The distribution agreement, which is in the

17   seventh plan supplement, Page 262, controls over the

18   custodial services agreement distribution addendum, Section

19   1.  The distribution addendum includes Schedule 1,

20   distribution of services.  It's a one-page document which

21   speaks directly to account creation and it provides that,

22   "All institutional creditors (the 'institutional creditors')

23   shall establish a Coinbase prime institutional account."

24   And then it goes on, "All creditors will be subject to, and

25   must complete the Coinbase AML/KYC (indiscernible) customer

Page 21

1    onboarding requirements prior to Coinbase making any

2    transfer.

3            And you're going to have to point me to where in a

4    plan document says there's a 100-account limit.  We can't

5    find it.  And if such a provision exists, how does that

6    square with the terms of the distribution services, which

7    specifically provide that "all" institutional creditors

8    shall establish an account and complete KYC?

9            We've also been told that the 100-account limit is

10   the reason existing Coinbase prime accounts cannot be used.

11   In the second distribution update, ECF Docket 4623, the

12   Debtors stated, "Some creditors have informed the post-

13   effective date Debtors that they have a Coinbase prime

14   account already and believe that the post-effective date

15   Debtors should just make a distribution to their existing

16   Coinbase account.  However, the post-effective date Debtors

17   cannot accommodate additional cryptocurrency distributions

18   to corporate creditors because their commercial arrangement

19   with Coinbase only provides for a limited number of slots."

20   That's in the second distribution update at Page 9.

21           That limitation is not in any document I've seen.

22   The distribution services provides that, "existing Coinbase

23   retail accounts and existing Coinbase institutional accounts

24   can be used by eligible creditors", directly contrary to the

25   position that either Coinbase or the reorganized Debtors

Page 22

1   have taken.  So, how does the Debtors' position square with

2   the terms of the distribution services, which specifically

3   provides that existing accounts "can be used?"

4         The Debtors rely on the plan provision that

5   provides for fiat distribution, if no distribution agent is

6   available.  And it says, "For the avoidance of doubt, if the

7   Debtors or the plan administrator cannot make a distribution

8   of liquid cryptocurrency to a particular creditor (including

9   because no distribution agent is available to make such

10  distribution), such creditor will receive a distribution of

11  fiat."  See Plan, Article 9(k)(1).  It's Page 55 of ECF

12  4289.

13        So my question is, if the actual binding terms of

14  the Coinbase agreements provides that there is a

15  distribution agent available, why doesn't that apply?

16  Doesn't answer it.

17        MR. KOENIG:  I understand the question.

18        THE COURT:  And it seems to me there is

19  potentially a serious issue whether the reorganized Debtors,

20  for whatever reason, have breached the plan terms and

21  Coinbase may have breached the agreement they signed.  So I

22  take this issue that's being raised by corporate creditors

23  very seriously.

24        If the corporate creditors are all in the same

25  class, how can you justify -- the same class in voting on

Page 23

1    the plan and the same class within the plan -- how can you

2    justify only providing the 100 largest account holders with

3    the option of receiving an in-kind distribution?  We take it

4    very seriously.

5         The January 31 effective date notice, ECF 4298,

6    states that only custody holders can withdraw via the app.

7    Here's the quote for that.  "Except for distributions on

8    account of custody claims, no distributions will be made by

9    the debtors' mobile application or web application,

10   collectively the Celsius apps, which will be shut down, and

11   creditors will no longer have access to the Celsius apps and

12   the records contained therein on or around February 28,

13   2024.  Instead, distributions on account of all claims other

14   than custody claims will be made by third-party distribution

15   agents."  It's the effective date notice at Page 3.

16        How do you square this position with language in

17   the plan and disclosure statement that says corporate

18   creditors can withdraw from the app?  That's what it says.

19   Was this distribution notice the first time the Debtors

20   informed creditors that only custody holders could withdraw

21   from the app?  When did the Debtors know that it would not

22   be feasible for corporate creditors to withdraw via the app?

23        It certainly appears to me, and I could be wrong,

24   that the January 31 effective date notice was the first time

25   the Debtors told creditors that only custody could withdraw

Page 24

1    from the app.

2           In the response that I ordered at the March 20th

3    hearing, see ECF 4786, the Debtors said that it was

4    infeasible because, "it is not regulatorily compliant for

5    Celsius to enable withdrawals from the Celsius app to anyone

6    other than custody account holders (indiscernible) the Court

7    ruled on the cryptocurrency that was transferred to their

8    custody accounts.  Celsius does not have the U.S. money

9    transfer licenses or their equivalent in non-U.S.

10   jurisdictions required to comply with applicable regulations

11   to enable those withdrawals to individuals or corporations."

12   In response, Page 7.

13          Celsius referenced "requisite licenses" in the

14   disclosure statement.  "Ninety days after the effective

15   date, any applicable creditor who has not claimed their

16   distribution of cryptocurrency from the Debtors' platform

17   will receive their distributions, if any, through PayPal or

18   another distribution agent, and may receive fiat currency if

19   a distribution agent does not have the requisite licenses to

20   distribute the cryptocurrency to that creditor."  This is in

21   the disclosure statement, Section II(b)(1) at Page 25, ECF

22   3332.  See also Section III(q), Page 62.  Same language.

23          If Celsius was -- then my question is, if Celsius

24   was aware that many transfer licenses were needed at the

25   time of the disclosure statement, which would preclude

Page 25

1    distribution to any non-custody holders, why did the plan

2    and disclosure statements still provide the distributions to

3    other holders could be made on the app?

4         Whether the Court would have to get to these

5    questions or not, I don't know.  But assuming there's been a

6    breach of the plan because it provided the corporate

7    creditors could withdraw from the app and they could not, or

8    because -- what (indiscernible) said already, I don't see

9    anything in Coinbase agreement that limited -- that they

10   could limit distributions to corporate creditors to the top

11   100.  It would necessarily lead to the questions of what are

12   the damages?  Who pays them?  What role does Coinbase have?

13   Will the Debtors seek to enforce the agreement with Coinbase

14   to service "all" corporate creditors?

15        It would potentially lead to a series of questions

16   as well, whether there's been -- whether the plan violated

17   any sections of the Bankruptcy Court.  I don't want to get

18   into that now.  It seems to me that -- I'm troubled if there

19   was no contract signed with Coinbase.  The fact that it was

20   administratively complicated for them to do the know your

21   customer for each corporate entity, well, so be it.

22        If they signed a contract that they would do it,

23   what is it that excused their performance from the contract?

24   What is it that would permit the Debtor to modify what the

25   plan provided, if the plan provided -- because there was a

Page 26

1    distribution.  Coinbase was able to distribute crypto.  They

2    just -- because of administrative complications or whatever,

3    at some point they said, no, we can only distribute to the

4    top 100, the largest 100.  How do you discriminate from the

5    (indiscernible) -- I don't know how many -- how many

6    corporate creditors were there?

7              MR. KOENIG:  Several thousand, I believe, Your

8    Honor.

9              THE COURT:  Okay.  I understand some were very

10   small.

11             MR. KOENIG:  Yeah, of course.

12             THE COURT:  And some elected cash.  I understand

13   that.  But I -- this is -- these are serious issues.  These

14   are not -- I didn't find the response that was filed

15   particularly helpful in sorting through this.  It's not on

16   for today.  You can order the transcript.  Counsel for the

17   corporate creditors can order the transcript.  There may be

18   answers to the questions that I've asked.  There may be

19   additional questions when I see the final briefing.  But I

20   take these -- these are important distribution issues and I

21   take them quite seriously.

22             MR. KOENIG:  Understood --

23             THE COURT:  I think there were other issues that

24   people raised about delays in receiving distributions.  I

25   think the Debtor and the administrator have shown -- have

Page 27

```
 1    recognized that this has been a top -- to a lot of

 2    creditors, it's complicated.  I don't read the plan as

 3    saying everybody's going to get a distribution on the same

 4    day.  So I'm not going to resolve those issues now.  But I

 5    did -- my chambers and I have spent a considerable amount of

 6    time trying to sort through these issues.  I take them very

 7    seriously.

 8              MR. KOENIG:  Understood.  We appreciate the

 9    preview.  Your Honor.  We've already filed an objection,

10    obviously.  We will file a supplement, obviously, before the

11    hearing on the motion.  Is there a -- would you like us to

12    file a briefing schedule or just file it a week before

13    the...?

14              THE COURT:  Could you work with the...  And again,

15    because there are lots of people who filed joinders and

16    things.  I don't know whether any of them have counsel or

17    not.

18              MR. KOENIG:  Understood.  We will do so.

19              THE COURT:  I think we get this properly organized

20    and scheduled.  Okay?

21              MR. KOENIG:  Sounds good.

22              THE COURT:  I did want to get that out on the

23    record today because I'm -- there may well be answers to

24    these questions.

25              MR. KOENIG:  Yes.  Thank you, Your Honor.
```

Page 28

1          THE COURT:  Okay.

2          MR. KOENIG:  Mr. Hershey, from Wright & Case, for

3   the Litigation Administrator, wanted to provide Your Honor

4   with an update on their work.

5          THE COURT:  Thank you very much, Mr. Koenig.  I

6   appreciate -- again, I know it wasn't particularly

7   convenient for you to have to be here on --

8          MR. KOENIG:  No, no, no.  No problem at all.  Good

9   to see you.

10          THE COURT:  Okay.  Mr. Hershey?

11          MR. HERSHEY:  Good morning, Your Honor.  Sam

12   Hershey, from White & Case, for the Litigation Administrator

13   and the Litigation Oversight Committee.  I'll be very brief.

14   Three months ago, I informed Your Honor that the Litigation

15   Administrator would be launching a settlement program in

16   connection with preference claims against Celsius customers

17   who withdrew over $100,000 during the 90 days before the

18   bankruptcy filing.

19          I am pleased to report that that settlement

20   program has been a tremendous success.  To date, over 1,500

21   individuals have settled more than a half billion dollars of

22   preference exposure, resulting in nearly $90 million of

23   settlement value.  And new settlements continue to come in

24   every day.  The Litigation Oversight Committee intends to

25   make a distribution of these and other proceeds by the end

Page 29

1    of the year, and we will report back to the Court regarding

2    the timing and quantum of that distribution in due course.

3            The Litigation Oversight Committee is now pivoting

4    to the next phase of asset monetization.  As Your Honor

5    knows, Section 546 of the Bankruptcy Code provides a two-

6    year limitations period for preference claims.  The petition

7    date in this case was July 13, 2022, which means the

8    Litigation Administrator must commence preference litigation

9    approximately two weeks from now.  Accordingly, we expect to

10   start filing preference complaints as early as this coming

11   Monday.

12           There are a large number of preference defendants,

13   despite the fact that many have settled, and so there will

14   be a large number of preference complaints.  We've been

15   coordinating with the Clerk's office of this Court to make

16   sure the filing process goes smoothly, and we are also

17   preparing a procedures motion to coordinate the cases after

18   they are filed.

19           I want to note, even though the Litigation

20   Administrator will soon commence litigation against certain

21   non-settling parties, the Litigation Administrator remains

22   committed to settling claims where possible.  To that end,

23   we anticipate that the procedure motion will seek to

24   structure some amount of time after the complaints are filed

25   for parties to continue to negotiate and mediate as

Page 30

1    appropriate before litigation commences in earnest.

2            As fiduciaries for all Celsius customers, the

3    Litigation Administrator cannot neglect to pursue the

4    preference claims, which constitute potentially hundreds of

5    millions of dollars of value for all creditors.  But our

6    goal has never been to litigate with Celsius customers, if

7    it can be avoided.  And we hope that preference defendants

8    will continue to work with us in good faith to resolve the

9    preference claims consensually, where possible.

10           I'm happy to answer any questions Your Honor may

11   have.

12           THE COURT:  Mr. Hershey, the Clerk of the Court

13   has over the last few weeks advised me about the expected

14   filing of a very large number of preference avoidance

15   actions.  And I've heard numbers, 1,500 cases or more than

16   that.  Can you tell me now the number of cases that you

17   anticipate filing?

18           MR. HERSHEY:  So, I can't give an exact number.

19   I can give, you know, approximation of let's say two to

20   three thousand, twenty-five hundred, to put a round number

21   on it.

22           THE COURT:  I became a bankruptcy Judge in

23   November 2006.  And shortly after I became a bankruptcy

24   Judge Lifland, who had handled the Bethlehem Steel case many

25   years before, transferred 1,100 preference avoidance actions

Page 31

1    to me.  But I've had other cases over the years with a large

2    number, never that large, never the 2,000, to use that as a

3    rough approximation.

4         What I have done in most cases and in others and

5    in the large cases with preference actions in the hundreds,

6    if not the thousands, was I generally have entered

7    procedures orders.  I will look with interest at what you

8    propose.  Those procedures orders have often included

9    mediation procedures.

10        In the practice that I have followed, I didn't go

11   back and find any of those.  Maybe I can see if I could find

12   any of the orders.  What I've typically tried to do is have

13   -- whether it's a trust administrator or committee, or

14   whoever is doing it -- no doubt, some of the people with

15   whom you're still trying to see in your settlements are

16   represented by counsel -- I usually wanted three to five

17   individuals identified as mediators with, typically, the

18   defendants trying to select somebody from among those five -

19   - of the three to five.

20        And the theory behind my doing that was there are

21   real benefits to everybody to have mediators who become

22   educated in what the facts and circumstances are and the

23   issues are.  And by having more than one person, by having

24   some number, I think the creditors often have more

25   confidence that they're not seen being forced to get

1    hometown with somebody.

2          So I don't know what it is you're proposing.  I'll

3    just say that that I have in other large cases -- I have --

4    in a couple I was asked -- I'm always reluctant to pick

5    somebody, but if -- and I have to say, it's generally been

6    successful.  The people who've been selected have been very

7    broadly recognized as fair and, you know, they sort of get

8    educated in the background, they would go to what preference

9    defenses there are, and things like that.

10          So, I don't know.  I'm not saying you have to do

11    it that way.  I'm just saying I wanted to raise it because I

12    have done it that way.  And by having a number of possible

13    mediators to choose from, people feel they're not being

14    ramrodded into somebody.

15          At times, with those very large numbers of cases,

16    I've sort of held off.  And I think, as you know, I

17    typically enter a case management scheduling order in every

18    adversary proceeding.  And in some of those very large cases

19    with large numbers of adversaries, I've been persuaded to

20    hold off entering those individual case management orders.

21          At some point, not too far down the road, I do

22    push forward.  And in Bethlehem Steel, for example, I was

23    basically scheduling the cases at a hundred a month.  You're

24    talking about a larger number of cases.  But you know, I try

25    to keep cases on the same track, but it may be hard to take

Page 33

1   discovery on 2,000 cases all at the same time, or to respond

2   to discovery in 2,000 cases at the same time.  But I have --

3   I don't let the cases languish, even at the frightening

4   thought of 2,000 adversary proceedings.

5          And so, I'm open -- I think once you -- I don't

6   know.  How long do you think it would take to file all the

7   ones you anticipate filing?

8          MR. HERSHEY:  We expect to be finished by the end

9   of the week after next.

10         THE COURT:  Okay.  I think after they're all

11  filed, giving the large number, I'll certainly permit all of

12  the defendants who wish to be -- and it'll take -- it may

13  take you a while to get everybody served.  I don't know what

14  --

15         MR. HERSHEY:  That's right, Your Honor.

16         THE COURT:  I don't know what service problems

17  you're going to have.

18         MR. HERSHEY:  Right.

19         THE COURT:  But at some point, once you've got a

20  reasonable number served, we'll schedule a Zoom conference,

21  people can all appear.  I expect you or your colleagues to

22  be present in court to deal with it.

23         MR. HERSHEY:  Absolutely, Your Honor.

24         THE COURT:  Obviously, anybody else who wants to

25  be here is certainly -- it's an open Court.  Encourage

Page 34

1   people.  But give people an opportunity if they want to

2   appear, with or without counsel, by Zoom.

3           But I just -- I'm open to what you're suggesting.

4   I mean, when I sort of very early was faced with this very

5   large number, I talked to some of my colleagues about what

6   they thought was the most effective way of dealing with it,

7   and I may confer with some of them as well.  I'm open to

8   suggestions.

9           The one thing I'd say is I don't let them

10  languish.  And so we need to proceed.  It may be that the

11  ones you want to proceed with are the large value ones.

12  Could deal with those on a relatively expedited basis.

13  We'll see when they come in.  I'm assuming most of the

14  complaints will be pretty standard.  There may be variations

15  among some groups, to the extent that which you can file a

16  status letter that indicates, you know, that sort of lays

17  out for the world, okay, the case has fallen into these

18  categories.

19          A large number of them are very straightforward.

20  Some have other issues.  To the extent you can identify them

21  without me having to read all 2,000 adversary proceedings --

22          MR. HERSHEY:  Of course.

23          THE COURT:  -- it would be very much appreciated.

24          MR. HERSHEY:  We'll be happy to do that, Your

25  Honor.  Of course.

1          THE COURT:  And we don't want it to cover more

2     issues now, but I just -- again, I'm open to -- what I'm

3     looking for are the most fair and reasonable set of

4     procedures for dealing with a very large number of cases.

5     Every defendant is entitled to an opportunity to have its --

6     the issues -- if they don't settle, to have the issues

7     fairly resolved.

8          It may be that there are common issues that should

9     be appropriately scheduled, you know, to deal with en masse.

10    I'm not, you know...  Let's leave it.  I'm open to what you

11    consider.  It all needs to be transparent so that whatever

12    suggestions you're making are made in a public forum in a

13    document that people can look at and respond to.

14          MR. HERSHEY:  Absolutely, Your Honor.

15          THE COURT:  All right.

16          MR. HERSHEY:  Thank you very much for your

17    comments, Your Honor.

18          THE COURT:  Thanks very much, Mr. Hershey.

19          MR. HERSHEY:  We anticipate having the motion,

20    hopefully, up for the July 29 hearing, which is the next

21    omnibus.  So we'll continue to hopefully get guidance from

22    Your Honor.

23          THE COURT:  Okay.  Thanks very much.

24          MR. HERSHEY:  Thank you.

25          THE COURT:  All right.  Is there anything else

1     before we get to the fee apps?  Okay.  Let me ask the

2     examiner's counsel to come up first.  And again, I hope I --

3     you know, when we switched the dates -- and I know you're

4     not from New York, so it creates inconvenience for you.  I

5     understand Mr. Sontchi, who is extremely responsible about

6     all this.  He wanted to be here today.  And rather than

7     adjourning this hearing, I think my chambers inquired, did

8     he have any objections to going forward without him today?

9     He wasn't able to participate by Zoom.  And the answer to

10    all that was, yes, and you are here.  So, go ahead.

11               MS. STADLER:  Yes.  No, I was happy to stay an

12    extra day.  I also what to share --

13               THE COURT:  May be easier to fly home today than--

14               MS. STADLER:  Probably.  I do want to sympathize

15    with the overnight in Detroit.  I have had that --

16               THE COURT:  It's a lovely airport.

17               MS. STADLER:  -- many times.  It's a lovely

18    airport.  The Westin that's attached to the airport is fine.

19               THE COURT:  That's not where they put me up.

20               MS. STADLER:  After that, it drops precipitously.

21               THE COURT:  Delta put me up with something.  I

22    won't -- I don't want to defame --

23               MS. STADLER:  Yes.

24               THE COURT:  -- the place, but --

25               MS. STADLER:  Yes.  My sympathies on that.  And

1    again, thank you on behalf of Judge Sontchi.  I think we've

2    covered the fact that he really, really did want to be here.

3    And I think we reached a resolution that allows us to

4    proceed efficiently.

5            Again, my name is Katherine Stadler, Godfrey &

6    Kahn, on behalf of the Fee Examiner, Christopher Sontchi.

7    Mr. Sontchi did plan to make a few remarks about the fee

8    process, and I will attempt to do so on his behalf.

9            As the Court knows, the process began in earnest

10   with the Fee Examiner's appointment in October 2022.  Since

11   that time, we've completed three interim fee review cycles,

12   filing comprehensive reports on each.  As a result, most of

13   the heavy lifting on fee negotiations took place during the

14   interim process.

15           That process, as you know, began with fee

16   applications filed, submission of electronic data to Fee

17   Examiner's counsel, a comprehensive data review process and

18   reporting process, the issuance of a confidential letter

19   report with detailed exhibits to each applicant outlining

20   issues of concern to the Fee Examiner, and then a period of

21   time for the professionals to respond to the Fee Examiner's

22   concerns and to discuss those and exchange information

23   informally.

24           In almost all instances, that resulted in

25   consensual resolutions during the first three fee periods.

Page 38

1    And that pattern continued with the fourth and last interim

2    fee period, which we present today for Your Honor's

3    approval.

4         Those interim applications recommended for the

5    fourth interim fee period are outlined in detail in the Fee

6    Examiner's report at Docket 4835.  The Fee Examiner reached

7    negotiated resolutions with all fourth interim fee period

8    applicants, such that he now recommends them for Court

9    approval, with appropriate adjustments, as are outlined in

10   the exhibits to that summary report.

11        In addition, the Fee Examiner today recommends 20

12   of the filed final fee applications for Court approval, as

13   laid out in the addendum to the summary report at Docket

14   Number 4970 and Exhibit B attached to that addendum.

15        One final fee application remains.  That is of the

16   Debtors' auditor, RSM US LLP.  RSM has recently retained

17   counsel, who put in appearance and is appearing today by

18   Zoom.  We have had preliminary communications with counsel,

19   but that was a late breaking development.  So we will, of

20   course, work with counsel over the next several weeks to

21   determine whether a stipulated path forward is possible.  If

22   not, we have set forth a proposed objection and briefing

23   schedule in the addendum and revised proposed final fee

24   order that we submitted to the Court.

25        Both the proposed interim and the proposed final

Page 39

1    orders have been submitted to chambers in Word format, and

2    we stand ready to answer any questions the Court may have

3    about the fee review process in general, the fourth interim

4    applications, or the final fee applications recommended.

5              I assume that Ms. Frejka will like to make a

6    comment on behalf of RSM, but for now I will conclude my

7    remarks and stand ready to answer questions that the Court

8    may have about fee matters.

9              THE COURT:  Let me hear from RSM's counsel first.

10   Go ahead.

11             MS. FREJKA:  Good morning, Your Honor.  Elise

12   Frejka.

13             THE COURT:  I'm sorry.

14             MS. FREJKA:  No, you're --

15             THE COURT:  It's fine.  Go ahead.

16             MS. FREJKA:  Good morning, Your Honor.  Elise

17   Frejka, appearing on behalf of RSM in connection with the

18   fee application.  I have recently been returned,  I'm

19   gathering information, and I am hopeful after my preliminary

20   conversation the Fee Examiner (indiscernible) that we will

21   be able to move forward.

22             I do recognize that their fee application is not

23   the best and not entirely guideline compliant, and we will

24   work with the Fee Examiner to remedy that to the extent that

25   we can.

Page 40

1          THE COURT:  All right.  So, what I would suggest

2     is continue the dialogue.  I'm glad they now have counsel

3     right here, somebody who's appeared before me many years and

4     in many matters.  So I'm sure it will be a very professional

5     discussion that you'll have.  You'll see whether you can

6     work things out.  To the extent that you can't agree on a

7     schedule, to get -- you'll get us -- you know, you'll get

8     determined ready to come before me.  Okay?

9          MS. FREJKA:  Yes, Your Honor.

10          THE COURT:  Thank you very much.

11          MS. FREJKA:  Thank you.

12          THE COURT:  All right, go ahead.

13          MS. STADLER:  I just noticed Mr. Pesce popped up.

14     Did you want to comment, Mr. Pesce?

15          MR. PESCE:  No, that's not necessary.  I was just

16     getting off of a fee hearing.

17          MS. STADLER:  Oh.  Oh, okay.  In any event, Your

18     Honor, if you have any questions, I'm happy to answer them.

19     If we need to revise the proposed orders that have been

20     submitted, we can certainly do that.  Otherwise, I think the

21     materials are in the record to proceed with the fee

22     applications that were subject to the Fee Examiner's review.

23     So I'll leave it there for now.

24          THE COURT:  Okay.  So, the Fee Examiner's report

25     included various addenda, Exhibit A, Exhibit B, Exhibit C.

Page 41

1    It all, you know, very clearly set out the compensation

2    period, the interim fees requested, the Fee Examiner's

3    recommended fee adjustment, interim fees requested, Fee

4    Examiner's recommended expense adjustments, et cetera.  So

5    it was extremely clear and thorough.

6         Now, the bottom line is the Court is adopting the

7    Fee Examiner's recommendations in full and approving the

8    applications and the agreed upon fees and expenses for each

9    respective professional, as set forth in Exhibits A and B,

10   the addendum, with -- we've talked about RSM, that's being

11   adjourned for today.  They now have counsel.  You'll

12   continue the discussions; hopefully be able to resolve all

13   of those issues.

14        I think you know the format that orders -- we

15   require that orders approving fees be entered.  And you can

16   provide all those.  I may -- because we're getting toward

17   the end of the process, we're not quite there yet -- but I

18   thought I may file a memorandum that just explains, you

19   know, what the basis for my approving everything, what the

20   legal standards are.  I think I've talked about those from

21   time to time.

22        I take the -- I guess I should ask Ms. Cornell, do

23   you want to be heard with respect to fee applications?  I

24   probably jumped the gun by saying I'm approving the Fee

25   Examiner's recommendations.  But I very much care about the

Page 42

1    work that the U.S. Trustee does.  But, so let me hear

2    anything you have to say, Ms. Cornell.

3            MS. CORNELL:  Thank you, Your Honor.  Again, Shara

4    Cornell, with the U.S. Trustee.  We've previously spoken

5    with the Fee Examiner and the individual (indiscernible)

6    firms and ones we had issues with.  And they're all

7    incorporated, I believe, in the Fee Examiner's report.  So

8    we are happy to agree that everything should go forward.

9            THE COURT:  Okay.  Thanks, Ms. Cornell.  So, if I

10   issue anything, it's going to be quickly.  I'm not going to

11   hold this up.  The reason I really wanted to go forward

12   today, I didn't want to have to push off -- I'm sure all the

13   professionals care about getting this done, and I appreciate

14   their cooperation.  It's been -- it's a huge task.  There's

15   just -- it's an expensive case.  A lot of professionals.  I

16   appreciate that they've worked well and sort of sorted out

17   the format in which things are provided to you and your

18   colleagues.

19           And again, I would very much have liked to have

20   Mr. Sontchi here today, either live or on Zoom, and I fully

21   understand that was not -- you know, that was impossible.

22   So we went forward, rather than having to put this off

23   further.  So please express my thanks to him for all of his

24   work.  We're not quite done.  We're getting there.

25           MS. STADLER:  I certainly will share that with

1    him.  Thank you.

2              THE COURT:  Okay.  Does anybody else have anything

3    they want to ask?  Yes, I am approving the Fee Examiner's

4    recommendations.  And provide us with the orders that it'll

5    be.  And again, I may add to it, but it won't be the order.

6    The order will be in the form that you submit.  Okay?

7              MS. STADLER:  Yes.

8              THE COURT:  Thanks very much.

9              MS. STADLER:  Thank you.

10             THE COURT:  All right.  Does anybody else have

11   anything else that they want to raise for today?

12             MS. YOO:  (indiscernible).

13             THE COURT:  Go ahead.

14             MS. YOO:  Oh, the motion to strike Your Honor,

15   which I believe is last on the agenda.

16             THE COURT:  It's a 29-page agenda that I have

17   here.

18             MS. YOO:  Good morning, Your Honor.  Jade Yoo,

19   from White & Case, on behalf of the Litigation

20   Administrator.  I believe the third item on the agenda is

21   the motion to strike an item on the record of the -- excuse

22   me -- the designation of items to be included on the record

23   on appeal.

24             THE COURT:  Yeah.  Is anybody appearing to argue

25   in opposition to the motion to strike?  Deanna, is anybody

1   raising their hand?

2          CLERK:  No, I don't see any raised hands, Judge.

3          THE COURT:  The motion is going to be granted.

4   We'll enter a written order to that effect addressing it.

5   Okay?  I don't mean to cut you short, but --

6          MS. YOO:  Oh, not at all, Your Honor.  Thank you.

7          THE COURT:  Thank you very much.  All right.  Do

8   we have anything else?

9          MR. KOENIG:  No, Your Honor.

10          THE COURT:  No.  Okay.  All right, let's see, Mr.

11   Koenig, if we can tee up the issue we started with.  Okay?

12          MR. KOENIG:  Understood.  We appreciate the

13   comments.  We'll work with the Faller creditors' counsel.

14          THE COURT:  Keep the Court advised.  Look, let me

15   let me just say, again, it doesn't appear that any of the

16   Faller claimants or any of the others who filed joinders are

17   here today.  And so I don't want to cut them off.  Work out

18   discovery issues.  To the extent you can't, we'll have the

19   usual Zoom conference to resolve.  There's going to be

20   discovery.

21          MR. KOENIG:  Of course.

22          THE COURT:  I mean, I just -- this is...  And I

23   don't want to go through a lot of procedural hurdles to get

24   it.  It's not open-ended discovery, but I have questions.

25          MR. KOENIG:  Understood, Your Honor.  We'll be

Page 45

1    prepared to answer that.

2              THE COURT:  Okay.  Thanks very much.

3              MR. KOENIG:  Thank you.  Have a good holiday next

4    week.

5              THE COURT:  Thank you.  You too.

6              MR. KOENIG:  Thank you.

7              THE COURT:  We're adjourned.

8              CLERK:  Sorry, Judge.

9              THE COURT:  Yes, Deanna?

10             CLERK:  Wesley Chang has his hand up.

11             THE COURT:  All right, go ahead.  I'll hear you

12   now.

13             MR. CHANG:  Thank you, Your Honor.  I just want to

14   make this really quick.  Yeah, I'm representing as well, a

15   lot of people are still on the call from the corporate

16   creditors.  Just want to give a quick appreciation for you

17   taking the time to look at it, making comments.  We didn't

18   expect to receive any comments today, as it was pushed over

19   to next month.  But just want to let you know that social

20   media is big.  This topic is going ongoing, and as we are

21   speaking, we are -- I mean, to those people, creditors.

22             So, just want to let you know a lot of people

23   behind this.  They have a strong interest.  Got some -- a

24   lot of sad stories that you haven't heard.  But they really

25   appreciate the fact that you've listened in and we're

Page 46

1    looking forward to further development on this issue.  Thank

2    you very much.

3              THE COURT:  You're welcome.  All right.  Anybody

4    else?  Deanna, any other hands raised?

5              CLERK:  I do not see any additional hands, Judge.

6              THE COURT:  All right.  We're adjourned.  I hope

7    everybody has a good 4th of July.

8              ALL:  Thank you.

9              (Whereupon these proceedings were concluded at

10   11:00 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 47

1                          **I N D E X**

2

3                              RULINGS

4                                                  Page        Line

5      Faller Motions Adjourned                    17          19

6      Fee Applications Approved                   43          3

7      Motion to Strike Granted                    44          3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *Sonya M. Ledanski Hyde*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 3, 2024

**[& - 3980]**                                                                 Page 1

| & | | | |
|---|---|---|---|
| **&**   2:2,4,8,12,18 3:2,5,17,20 6:2 6:2 7:2,15,20 8:12,17,22 9:2 10:3,13 13:9 28:2,12 37:5 43:19 | **10014**   11:12 **10020**   10:17 **10022**   10:6 **1006**   11:11 **10:06**   1:17 **11/21/2023** 7:11 **11/9/2023**   2:14 2:19 4:11,24 5:10,15,21 6:4 6:21 7:21 8:7 8:13,23 **112.50**   5:10 **11501**   48:23 **11:00**   46:10 **12,358,407.2** 2:3 **12/1/2022**   5:10 **12/7/2022**   9:3 **121,847**   9:3 **12151**   48:6 **1221**   10:16 **13**   2:11 6:19 7:6 29:7 **17**   47:5 **170**   16:9 **187,500.00** 7:11 **19**   47:5 | **2004**   18:5,20 18:23 **2006**   30:23 **201**   11:11 **2022**   2:11 3:12 6:9 7:6 29:7 37:10 **2023**   2:12 3:13 6:10,17,18,19 6:20 7:7,19,20 8:5,6,21,22 **2024**   1:16 23:13 48:25 **20th**   24:2 **213**   5:10 **22-10964**   1:3 12:3 **23,791,346.0** 4:11 **230**   19:16 **25**   24:21 **250**   20:1,1 **262**   20:17 **27,959,834.6** 2:14 **2719**   11:4 **28**   1:16 23:12 **283,414.02.**   8:8 **29**   35:20 43:16 **291,327.34** 6:21 | **3/31/2023**   6:11 **300**   48:22 **301,357.65.** 7:22 **31**   6:9 23:5,24 **3127**   3:6 **3131**   6:22 **3299**   4:25 **33,370.00.**   8:24 **330**   48:21 **3332**   24:22 **3384,3701,3...** 8:25 **3397**   8:9 **3411**   5:16 **3426**   3:6 **3471**   8:15 **3482**   20:12 **3549,4024,4...** 5:6 **36,094.03**   8:14 **36,094.03.**   2:20 **3664**   8:9 **3709**   3:6 **3766**   5:16 **3787**   6:22 **3791**   4:25 **3842,4021,4...** 7:23 **3861**   7:22 **3869**   19:16 **3895**   4:25 **3905**   6:22 **3925**   3:6 **3966**   8:9 **3980**   6:22 |

| 0 | | |
|---|---|---|
| **0.00.**   4:24 5:10 5:16,21 7:12 | | |

| 1 | | |
|---|---|---|
| **1**   3:12 6:17 7:19 8:5,21 20:19,19 22:11 24:21 **1,100**   30:25 **1,197,610.00** 8:7 **1,263,415.00** 5:15 **1,500**   28:20 30:15 **1,719,338.75.** 6:4 **1/1/2023**   4:24 **10**   6:9 15:25 **10/10/2022** 6:11 **100**   19:19,21 20:1,4,7,14 21:4,9 23:2 25:11 26:4,4 **100,000**   28:17 **10004**   1:14 | | |

| 2 | | |
|---|---|---|
| **2,000**   31:2 33:1 33:2,4 34:21 **2/13/2023**   6:20 **2/21/2023**   5:15 **2/28/2023**   9:3 **20**   38:11 | | |

| 3 | | |
|---|---|---|
| **3**   23:15 47:6,7 48:25 **3,887,780.83** 6:11 | | |

| | | | |
|---|---|---|---|
| **3982**  8:14,15 | **4273**  7:7 | **4926**  9:7 | **69,741.74.**  2:14 |
| **4** | **4275**  2:20 5:11 | **4927**  9:7 | **69,790.32**  5:21 |
| **4023**  8:9 | **4276**  4:12,25 | **4948**  9:8 | **7** |
| **4061**  3:6 | 5:16,22 6:5 | **4949**  9:8 | **7**  24:12 |
| **4092**  4:25 | **4281**  3:6,13,20 | **4970**  2:5,15,20 | **7,151,420.00** |
| **4094**  5:16 | 4:7 | 3:6,13,20 4:7 | 8:24 |
| **4105**  6:5 | **4281,4291,4...** | 4:25 5:11,16 | **7/1/2023**  7:21 |
| **4198**  8:15,15 | 4:20 | 5:22 6:22 7:7 | 8:7,13,23 |
| **4199**  8:15,15 | **4289**  22:12 | 7:12 8:9,15 9:4 | **7/13/2022**  2:3 |
| **4232,4970,3...** | **4291**  2:20 3:6 | 38:14 | 2:13,19 4:11 |
| 6:5 | 3:13,20 4:7,12 | **4992**  9:8 | 5:20 6:3 7:11 |
| **4236**  8:8 | 4:25 5:11 | **4993**  13:23 | **76**  14:23 |
| **4242**  8:25 | **4296**  7:7,22 | **4th**  46:7 | **76,323,621.0** |
| **4246**  5:11 | **4298**  23:5 | **5** | 6:4 |
| **4249**  2:5 | **43**  47:6 | **5,303,982.00** | **8** |
| **4250**  2:15 | **4300**  7:7 | 8:14 | **8,970**  9:3 |
| **4251**  7:22 | **4302**  6:21 | **5/31/2023**  2:3 | **86**  16:7 |
| **4252**  8:14 | **4360**  6:22 | **50**  14:20,22 | **89**  16:8 |
| **4253**  2:20 | **44**  47:7 | 15:18 | **9** |
| **4254**  5:11 | **46**  14:18 | **500**  11:3 | **9**  2:12 3:13 |
| **4255**  5:16 | **4623**  21:11 | **525,000.00** | 6:18,19 7:7,20 |
| **4256**  3:5 | **4663**  7:12 | 4:24 | 8:6,22 21:20 |
| **4257**  3:13 | **4786**  24:3 | **53701**  11:5 | 22:11 |
| **4258**  3:20 | **4829**  9:4 | **54,459.60.**  2:4 | **90**  28:17,22 |
| **4259**  4:7 | **4835**  2:5,15,20 | **546**  29:5 | **a** |
| **4260**  4:12 | 3:6,13,20 4:7 | **55**  14:18 22:11 | **a.m.**  5:9 |
| **4261**  4:19 | 4:12,25 5:11 | **6** | **able**  12:19 13:7 |
| **4262**  4:25 | 5:16,22 6:5,22 | **6,110,140.50** | 13:12 16:15 |
| **4263,4281,4...** | 7:7,12,22 8:8 | 7:21 | 26:1 36:9 |
| 5:5 | 8:14,25 9:4 | **6,712.06.**  4:12 | 39:21 41:12 |
| **4265**  5:16 | 38:6 | **6,735,295.50** | **absolutely** |
| **4266**  6:5 | **4873**  9:8 | 2:19 | 33:23 35:14 |
| **4268**  5:21 | **4887**  9:8 | **601**  10:5 | **abundance** |
| **4270,4302,4...** | **4903**  9:8 | **606.07.**  6:12 | 16:13 |
| 6:12 | **4904**  9:7 | **62**  24:22 | **access**  20:14 |
| **4271**  6:21 | **4925**  9:7 | | 23:11 |

| | | | |
|---|---|---|---|
| **accommodate** 21:17 | **administrative** 5:19 26:2 | 20:18 22:21 25:9,13 | **anticipate** 29:23 30:17 33:7 35:19 |
| **accommodat...** 13:6 | **administrativ...** 25:20 | **agreements** 19:15 22:14 | **anybody** 33:24 43:2,10,24,25 46:3 |
| **account** 20:7 20:21,23 21:4 21:8,9,14,16 23:2,8,13 24:6 | **administrator** 10:14 14:4 17:10 22:7 26:25 28:3,12 28:15 29:8,20 29:21 30:3 31:13 43:20 | **ahead** 16:19 36:10 39:10,15 40:12 43:13 45:11 | **apologize** 12:4 **app** 23:6,18,21 23:22 24:1,5 25:3,7 |
| **accounts** 21:10 21:23,23 22:3 24:8 | | **airport** 13:17 13:18 36:16,18 36:18 | **appeal** 9:7 43:23 |
| **accurate** 48:4 | **adopting** 41:6 | **akin** 7:2,15,20 | **appear** 12:18 12:19 33:21 34:2 44:15 |
| **actions** 30:15 30:25 31:5 | **adversaries** 32:19 | **al** 3:10 8:5 | |
| **actual** 2:10 8:20 22:13 | **adversary** 32:18 33:4 34:21 | **allowance** 7:4 7:17 8:19 | **appearance** 38:17 |
| **add** 43:5 | **advised** 19:21 30:13 44:14 | **allows** 37:3 | **appeared** 40:3 |
| **addenda** 40:25 | | **alternate** 15:4 | **appearing** 12:5 38:17 39:17 43:24 |
| **addendum** 20:18,19 38:13 38:14,23 41:10 | **advisor** 3:9 4:18 5:19 6:8 8:3 | **alvarez** 2:8,12 8:17,22 | |
| **addition** 38:11 | **advisors** 2:9,13 8:18,23 | **america** 2:8,13 8:18,22 | **appears** 23:23 |
| **additional** 21:17 26:19 46:5 | **advisory** 4:16 4:19 | **americas** 10:16 | **applicable** 18:9,24 24:10 24:15 |
| **addressing** 44:4 | **agenda** 16:11 43:15,16,20 | **aml** 20:25 | **applicant** 37:19 |
| **adjourned** 12:20 17:20 19:1 41:11 45:7 46:6 47:5 | **agent** 22:5,9,15 24:18,19 | **amount** 14:2 18:13 27:5 29:24 | **applicants** 38:8 |
| | **agents** 23:15 | **andersen** 6:15 6:20 | **application** 2:1 2:7,17 3:2,8,15 3:16 4:1,3,9,14 4:15,22 5:2,8 5:13,18 6:1,7 6:14 7:1,9,14 8:1,11,17 9:1 23:9,9 38:15 |
| **adjourning** 36:7 | **ago** 28:14 | **andrews** 4:23 | |
| **adjustment** 41:3 | **agree** 40:6 42:8 | **announce** 15:3 | |
| | **agreed** 41:8 | **answer** 22:16 30:10 36:9 39:2,7 40:18 45:1 | |
| **adjustments** 38:9 41:4 | **agreement** 19:17,17,18,19 20:3,4,6,13,16 | **answers** 20:8 26:18 27:23 | |

39:18,22
**applications**
  37:16 38:4,12
  39:4,4 40:22
  41:8,23 47:6
**apply**  22:15
**appointment**
  37:10
**appreciate**
  12:16 13:5,11
  27:8 28:6
  42:13,16 44:12
  45:25
**appreciated**
  34:23
**appreciation**
  45:16
**appropriate**
  30:1 38:9
**appropriately**
  35:9
**approval**  38:3
  38:9,12
**approved**  47:6
**approving**
  41:7,15,19,24
  43:3
**approximately**
  29:9
**approximation**
  30:19 31:3
**apps**  12:12,20
  23:10,11 36:1
**argue**  43:24
**arrangement**
  21:18

**article**  22:11
**asked**  26:18
  32:4
**asset**  29:4
**assume**  19:14
  39:5
**assuming**  25:5
  34:13
**attached**  36:18
  38:14
**attempt**  37:8
**attorney**  6:3
**attorneys**  10:4
  10:14 11:2,10
**auditor**  38:16
**august**  3:12
**available**  22:6
  22:9,15
**avenue**  10:5,16
**avoidance**  22:6
  30:14,25
**avoided**  30:7
**aware**  24:24

**b**

**b**  1:21 24:21
  38:14 40:25
  41:9
**back**  12:9
  15:22 29:1
  31:11
**background**
  32:8
**bank**  15:20,22
  15:22
**banker**  4:5
**bankruptcy**
  1:1,12,23 18:9

25:17 28:18
  29:5 30:22,23
**based**  19:6
**basically**  32:23
**basis**  34:12
  41:19
**began**  37:9,15
**behalf**  16:21
  37:1,6,8 39:6
  39:17 43:19
**believe**  21:14
  26:7 42:7
  43:15,20
**benefits**  31:21
**berg**  5:5
**best**  39:23
**bethlehem**
  30:24 32:22
**big**  45:20
**biggest**  15:14
**billion**  28:21
**binding**  22:13
**bit**  14:10,15,15
  14:19,24 15:13
**blockchain**  3:9
  8:3
**bottom**  41:6
**bowling**  1:13
**box**  11:4
**breach**  25:6
**breached**
  22:20,21
**breaking**  38:19
**brief**  28:13
**briefing**  26:19
  27:12 38:22

**bring**  16:4
**broadly**  32:7

**c**

**c**  10:1 12:1
  40:25 48:1,1
**caceres**  11:19
**call**  45:15
**card**  13:24
**care**  41:25
  42:13
**case**  1:3 3:2,5
  10:13 12:17
  15:24 16:24
  17:11 28:2,12
  29:7 30:24
  32:17,20 34:17
  42:15 43:19
**cases**  29:17
  30:15,16 31:1
  31:4,5 32:3,15
  32:18,23,24,25
  33:1,2,3 35:4
**cash**  14:13
  26:12
**categories**
  34:18
**caution**  16:13
**celsius**  1:7 3:10
  8:4 12:3 13:9
  23:10,11 24:5
  24:5,8,13,23
  24:23 28:16
  30:2,6
**center**  12:7
**centerview**
  4:10

| | | | |
|---|---|---|---|
| **ceremony** 18:23 | **clerk's** 29:15 | **committee** 3:4 | **conclude** 39:6 |
| **certain** 29:20 | **clerks** 18:12 | 3:9,19 4:5,18 | **concluded** |
| **certainly** 13:10 | **code** 29:5 | 5:4 8:4 10:15 | 12:20 46:9 |
| 23:23 33:11,25 | **coinbase** 15:2 | 17:10 28:13,24 | **conduct** 19:1 |
| 40:20 42:25 | 19:10,12,14,17 | 29:3 31:13 | **confer** 34:7 |
| **certified** 48:3 | 20:3,6,12,23 | **common** 35:8 | **conference** |
| **cetera** 41:4 | 20:25 21:1,10 | **communicate** | 33:20 44:19 |
| **chambers** 27:5 | 21:13,16,19,22 | 17:2 | **confidence** |
| 36:7 39:1 | 21:23,25 22:14 | **communicati...** | 31:25 |
| **chang** 11:20 | 22:21 25:9,12 | 38:18 | **confidential** |
| 45:10,13 | 25:13,19 26:1 | **compensation** | 37:18 |
| **checked** 12:23 | **colleagues** | 2:2,8,18 3:2,11 | **connection** |
| **chime** 16:22 | 33:21 34:5 | 3:16,17 4:2,4 | 28:16 39:17 |
| **choose** 32:13 | 42:18 | 4:15,16,23 | **consensual** |
| **chris** 12:16 | **collectively** | 5:14,19 6:2,15 | 37:25 |
| 13:9 | 23:10 | 7:2,4,15,17 8:2 | **consensually** |
| **christopher** | **column** 14:17 | 8:12,19 9:2 | 30:9 |
| 10:8 11:2 37:6 | **combined** 3:1 | 41:1 | **consider** 12:11 |
| **circumstances** | 3:16 4:2,15 5:1 | **complaints** | 12:12 35:11 |
| 13:6 31:22 | **come** 18:14 | 29:10,14,24 | **considerable** |
| **city** 12:7 | 28:23 34:13 | 34:14 | 18:13 27:5 |
| **civil** 18:10 | 36:2 40:8 | **complete** 20:25 | **constitute** 30:4 |
| **claimants** | **coming** 29:10 | 21:8 | **consulting** 6:7 |
| 44:16 | **commence** | **completed** | 6:10 |
| **claimed** 24:15 | 29:8,20 | 37:11 | **contained** |
| **claims** 14:4,5 | **commences** | **compliant** 24:4 | 23:12 |
| 23:8,13,14 | 30:1 | 39:23 | **contested** 18:7 |
| 28:16 29:6,22 | **comment** 39:6 | **complicated** | 18:19,24 |
| 30:4,9 | 40:14 | 25:20 27:2 | **continue** 16:3 |
| **class** 22:25,25 | **comments** | **complications** | 28:23 29:25 |
| 23:1 | 35:17 44:13 | 26:2 | 30:8 35:21 |
| **clear** 41:5 | 45:17,18 | **comply** 24:10 | 40:2 41:12 |
| **clearly** 41:1 | **commercial** | **comprehensive** | **continued** 17:1 |
| **clerk** 16:17 | 21:18 | 37:12,17 | 38:1 |
| 30:12 44:2 | **committed** | **concern** 37:20 | **contract** 25:19 |
| 45:8,10 46:5 | 29:22 | **concerns** 37:22 | 25:22,23 |

[contrary - debtors]                                                    Page 6

| | | | |
|---|---|---|---|
| **contrary** 21:24 | **country** 15:7 | **covered** 37:2 | **customers** |
| **controls** 20:17 | 48:21 | **creates** 36:4 | 28:16 30:2,6 |
| **convenient** | **couple** 13:20 | **creation** 20:21 | **cut** 44:5,17 |
| 28:7 | 32:4 | **creditor** 19:19 | **cycles** 37:11 |
| **conversation** | **course** 26:11 | 20:14 22:8,10 | **d** |
| 39:20 | 29:2 34:22,25 | 24:15,20 | |
| **cooperation** | 38:20 44:21 | **creditors** 3:4 | **d** 12:1 47:1 |
| 42:14 | **court** 1:1,12 | 3:10,19 4:6,18 | **damages** 25:12 |
| **coordinate** | 12:2 13:13,16 | 5:4 8:4 15:18 | **data** 37:16,17 |
| 29:17 | 16:12,13,19 | 17:18,19,22,23 | **date** 17:3,20 |
| **coordinating** | 17:15 19:3,12 | 17:25 19:20,21 | 21:13,14,16 |
| 29:15 | 19:24 20:11,13 | 20:22,22,24 | 23:5,15,24 |
| **cornell** 11:14 | 22:18 24:6 | 21:7,12,18,24 | 24:15 28:20 |
| 16:17,19,20,21 | 25:4,17 26:9 | 22:22,24 23:11 | 29:7 48:25 |
| 17:15 41:22 | 26:12,23 27:14 | 23:18,20,22,25 | **dates** 36:3 |
| 42:2,3,4,9 | 27:19,22 28:1 | 25:7,10,14 | **day** 27:4 28:24 |
| **corporate** | 28:5,10 29:1 | 26:6,17 27:2 | 36:12 |
| 17:23 19:20,21 | 29:15 30:12,12 | 30:5 31:24 | **days** 24:14 |
| 21:18 22:22,24 | 30:22 33:10,16 | 44:13 45:16,21 | 28:17 |
| 23:17,22 25:6 | 33:19,22,24,25 | **crypto** 14:2 | **deal** 33:22 |
| 25:10,14,21 | 34:23 35:1,15 | 15:1,23,24 | 34:12 35:9 |
| 26:6,17 45:15 | 35:18,23,25 | 17:24 19:22 | **dealing** 34:6 |
| **corporations** | 36:13,16,19,21 | 26:1 | 35:4 |
| 24:11 | 36:24 37:9 | **cryptocurrency** | **deanna** 43:25 |
| **correct** 18:17 | 38:8,12,24 | 21:17 22:8 | 45:9 46:4 |
| 18:19 | 39:2,7,9,13,15 | 24:7,16,20 | **debtor** 1:9 10:4 |
| **counsel** 2:2 3:4 | 40:1,10,12,24 | **currency** 15:5 | 18:18 20:11 |
| 3:18 5:3,9 7:3 | 41:6 42:9 43:2 | 15:6 24:18 | 25:24 26:25 |
| 7:16,21 9:2 | 43:8,10,13,16 | **currently** | **debtor's** 6:3 |
| 12:19 17:9 | 43:24 44:3,7 | 14:19 | 18:17 |
| 18:4 26:16 | 44:10,14,14,22 | **custodial** 20:3 | **debtors** 2:9 |
| 27:16 31:16 | 45:2,5,7,9,11 | 20:18 | 6:16,16 7:3,3 |
| 34:2 36:2 | 46:3,6 | **custody** 23:6,8 | 7:16,17 8:18 |
| 37:17 38:17,18 | **courtroom** | 23:14,20,25 | 17:2,3,9,9 18:6 |
| 38:20 39:9 | 13:11 16:14 | 24:6,8 25:1 | 18:15,19 21:12 |
| 40:2 41:11 | **cover** 35:1 | **customer** | 21:13,15,16,25 |
| 44:13 | | 20:25 25:21 | 22:1,4,7,19 |
| | | | 23:9,19,21,25 |

24:3,16 25:13
38:16
**defame**  36:22
**defendant**  35:5
**defendants**
29:12 30:7
31:18 33:12
**defenses**  32:9
**delays**  26:24
**delta**  36:21
**denominator**
14:3,8 16:9
**department**
11:9
**describe**  19:6
**designation**
43:22
**despite**  15:19
29:13
**detail**  38:5
**detailed**  37:19
**determine**
38:21
**determined**
40:8
**detroit**  12:8,9
13:18 36:15
**development**
38:19 46:1
**dialogue**  40:2
**difficult**  12:13
**directly**  20:21
21:24
**disclosure**  19:8
23:17 24:14,21
24:25 25:2

**discovery**  18:5
18:7,10,20,21
18:22,24 19:2
33:1,2 44:18
44:20,24
**discriminate**
26:4
**discuss**  37:22
**discussion**  40:5
**discussions**
41:12
**dislocated**  13:4
**distribute**  15:4
15:7 24:20
26:1,3
**distributed**
14:2,10,21,22
14:22
**distribution**
15:4 16:23
19:9 20:16,18
20:19,20 21:6
21:11,15,20,22
22:2,5,5,7,9,10
22:10,15 23:3
23:14,19 24:16
24:18,19 25:1
26:1,20 27:3
28:25 29:2
**distributions**
13:22,25 14:6
14:7,13 16:7
17:7,8,24
19:22 21:17
23:7,8,13
24:17 25:2,10
26:24

**distributors**
15:6
**district**  1:2
**diverted**  12:8
**doc**  2:4,14,20
3:5,13,20 4:7
4:12,19,25 5:5
5:11,16,21 6:4
6:12,21 7:7,12
7:22 8:8,14,25
9:3,7
**docket**  13:23
19:16 21:11
38:6,13
**document**  9:7
20:20 21:4,21
35:13
**documents**
20:3
**doing**  15:20
31:14,20
**dollars**  28:21
30:5
**don't**  36:22
**doubt**  22:6
31:14
**drops**  36:20
**due**  29:2

**e**

**e**  1:21,21 10:1
10:1 12:1,1
47:1 48:1
**early**  29:10
34:4
**earnest**  30:1
37:9

**easier**  36:13
**east**  11:3
**ecf**  19:15 20:12
21:11 22:11
23:5 24:3,21
**ecro**  1:25
**educated**  31:22
32:8
**effect**  44:4
**effective**  21:13
21:14,16 23:5
23:15,24 24:14
34:6
**efficiently**  37:4
**either**  12:18
13:5 21:25
42:20
**elected**  26:12
**electronic**
37:16
**elementus**  3:8
8:1,6,8
**eligible**  14:20
21:24
**elise**  11:21
39:11,16
**ellis**  6:2,2 10:3
13:9
**els**  5:5
**elsberg**  5:2
**en**  35:9
**enable**  24:5,11
**encourage**
33:25
**ended**  44:24
**enforce**  25:13

**enlightened**
19:13
**enter** 32:17
44:4
**entered** 31:6
41:15
**entering** 32:20
**entirely** 39:23
**entities** 17:19
**entitled** 35:5
**entity** 17:11
25:21
**equivalent**
24:9
**ernst** 2:18 8:12
**establish** 20:23
21:8
**establishes**
20:7
**et** 3:10 8:5 41:4
**evening** 13:17
**event** 40:17
**everybody**
12:4 31:21
33:13 46:7
**everybody's**
27:3
**exact** 30:18
**examiner** 6:8
11:2 12:17
37:6,20 38:6
38:11 39:20,24
42:5
**examiner's**
36:2 37:10,17
37:21 38:6
40:22,24 41:2

41:4,7,25 42:7
43:3
**example** 32:22
**except** 23:7
**exchange**
37:22
**excited** 15:3
16:1
**excuse** 43:21
**excused** 25:23
**exhibit** 19:16
38:14 40:25,25
40:25
**exhibits** 37:19
38:10 41:9
**existing** 15:11
21:10,15,22,23
22:3
**exists** 21:5
**expanding**
16:1
**expect** 15:9
20:7,8 29:9
33:8,21 45:18
**expected** 30:13
**expedited**
34:12
**expense** 41:4
**expenses** 2:4
2:11,14,19 3:3
3:12,18 4:5,11
4:17,24 5:3,10
5:15,21 6:4,12
6:21 7:5,11,18
7:22 8:3,7,14
8:21,24 9:3
41:8

**expensive**
42:15
**explains** 41:18
**exposure** 28:22
**express** 42:23
**extent** 34:15,20
39:24 40:6
44:18
**extra** 36:12
**extremely** 36:5
41:5

| **f** |

**f** 1:21 3:5 48:1
**faced** 34:4
**fact** 25:19
29:13 37:2
45:25
**facts** 31:22
**failure** 15:17
**fair** 32:7 35:3
**fairly** 35:7
**faith** 30:8
**fallen** 34:17
**faller** 17:17,18
17:22 44:13,16
47:5
**far** 19:7 32:21
**feasible** 23:22
**february** 6:19
23:12
**federal** 12:7
18:10
**fee** 2:3,14,19
4:2,9,11,24 5:8
5:10,15,21 6:4
6:7,11,17,18
6:21 7:5,9,11

7:21 8:7,13,24
9:3 11:2 12:12
12:17,20 36:1
37:6,7,10,11
37:13,15,16,20
37:21,25 38:2
38:5,5,6,7,11
38:12,15,23
39:3,4,8,18,20
39:22,24 40:16
40:21,22,24
41:2,3,3,7,23
41:24 42:5,7
43:3 47:6
**feel** 32:13
**fees** 41:2,3,8,15
**feld** 7:2,15,20
**fiat** 14:2 15:4,6
19:25 22:5,11
24:18
**fiduciaries**
30:2
**file** 18:15 27:10
27:12,12 33:6
34:15 41:18
**filed** 2:4 3:5,19
4:6,19 8:8,24
13:23 18:1
20:11 26:14
27:9,15 29:18
29:24 33:11
37:16 38:12
44:16
**filing** 28:18
29:10,16 30:14
30:17 33:7
37:12

**final** 2:1,7,7,17
3:1,8,16 4:2,9
4:15,22 5:1,8
5:13,18 6:1,7
6:14,18 7:1,5,9
9:1 15:8 26:19
38:12,15,23,25
39:4
**financial** 2:9
2:13 4:17 6:8
8:18,23
**find** 20:14 21:5
26:14 31:11,11
**fine** 12:25
16:14 36:18
39:15
**finished** 33:8
**firms** 42:6
**first** 7:9 23:19
23:24 36:2
37:25 39:9
**fischer** 9:2
**five** 30:20
31:16,18,19
**flew** 12:9
**fly** 36:13
**focus** 19:7
**focuses** 17:22
19:10,20
**folks** 15:1,10
**follow** 17:1
**followed** 31:10
**foot** 15:25
**forced** 31:25
**foregoing** 48:3
**forensics** 3:9
8:3

**form** 43:6
**format** 39:1
41:14 42:17
**forth** 38:22
41:9
**forum** 35:12
**forward** 12:15
12:21,24 13:14
32:22 36:8
38:21 39:21
42:8,11,22
46:1
**forwarded**
17:4
**fourth** 3:1,16
4:2,9,15 7:14
8:1,11,17
13:17 38:1,5,7
39:3
**frejka** 11:21
39:5,11,12,14
39:16,17 40:9
40:11
**frightening**
33:3
**front** 15:1
**full** 41:7
**fully** 15:9
42:20
**further** 42:23
46:1

**g**

**g** 12:1 19:16
**gabriella** 10:11
**garcia** 11:17
**gathering**
39:19

**gay** 5:2,5
**general** 39:3
**generally** 31:6
32:5
**getting** 40:16
41:16 42:13,24
**giorgio** 10:10
**give** 15:21 19:1
20:8 30:18,19
34:1 45:16
**gives** 15:17
**giving** 15:20
33:11
**glad** 40:2
**glenn** 1:22
**go** 13:14 16:19
31:10 32:8
36:10 39:10,15
40:12 42:8,11
43:13 44:23
45:11
**goal** 30:6
**godfrey** 11:1
37:5
**goes** 20:24
29:16
**going** 12:21,24
16:3 18:1,8,11
18:18,22,23
19:13 21:3
27:3,4 33:17
36:8 42:10,10
44:3,19 45:20
**gomitzky** 3:17
3:20
**good** 12:2 13:8
13:11,19 14:18

14:23,25 16:20
27:21 28:8,11
30:8 39:11,16
43:18 45:3
46:7
**granted** 44:3
47:7
**green** 1:13
**gregory** 3:5
10:21
**group** 17:17,22
**groups** 34:15
**guess** 41:22
**guidance** 35:21
**guideline**
39:23
**gump** 7:2,15
7:20
**gun** 41:24

**h**

**half** 28:21
**hand** 16:17
44:1 45:10
**handled** 30:24
**hands** 44:2
46:4,5
**happy** 16:11
17:8 30:10
34:24 36:11
40:18 42:8
**hard** 32:25
**hauer** 7:2,15
7:20
**hear** 39:9 42:1
45:11
**heard** 30:15
41:23 45:24

**hearing** 2:1,7
2:17 3:1,8,15
4:1,9,14,22 5:1
5:8,13,18 6:1,7
6:14 7:1,9,14
8:1,11,17 9:1,6
12:6,14,15
13:7,12 14:13
24:3 27:11
35:20 36:7
40:16
**hearings** 13:1
13:21
**heavy** 37:13
**held** 32:16
**helpful** 26:15
**hershey** 10:19
28:2,10,11,12
30:12,18 33:8
33:15,18,23
34:22,24 35:14
35:16,18,19,24
**highlighted**
16:6
**hold** 32:20
42:11
**holders** 23:2,6
23:20 24:6
25:1,3
**holiday** 45:3
**home** 36:13
**hometown**
32:1
**hon** 1:22
**honor** 13:9,20
13:21 15:15,15
16:5,10,20,24

18:25 26:8
27:9,25 28:3
28:11,14 29:4
30:10 33:15,23
34:25 35:14,17
35:22 39:11,16
40:9,18 42:3
43:14,18 44:6
44:9,25 45:13
**honor's** 38:2
**hope** 16:2 30:7
36:2 46:6
**hopeful** 39:19
**hopefully**
35:20,21 41:12
**hotel** 13:17,19
**huge** 42:14
**hundred** 30:20
32:23
**hundreds** 30:4
31:5
**hurdles** 44:23
**huron** 6:7,10
**hybrid** 2:1,7
2:17 3:1,8,15
4:1,9,14,22 5:1
5:8,13,18 6:1,7
6:14 7:1,9,14
8:1,11,17 9:1,6
**hyde** 9:25 48:3
48:8

---

**i**

**identified**
31:17
**identify** 34:20
**ii** 6:18 24:21

**iii** 24:22
**important**
12:12,13 13:10
14:9 26:20
**imposes** 20:4
**impossible**
42:21
**improper** 18:7
**included** 31:8
40:25 43:22
**includes** 20:19
**including** 2:12
6:9,18,19 7:6
7:19 8:21 22:8
**inconvenience**
36:4
**incorporated**
42:7
**incorporating**
18:9
**incorrect** 19:13
**increase** 14:24
**increased** 16:9
**incurred** 8:21
**indicates** 34:16
**indication**
16:15
**indiscernible**
17:25 20:2,25
24:6 25:8 26:5
39:20 42:5
43:12
**individual**
32:20 42:5
**individuals**
24:11 28:21
31:17

**infeasible** 24:4
**informally**
37:23
**information**
15:17,19,21,21
19:25 37:22
39:19
**informed**
21:12 23:20
28:14
**inquired** 36:7
**inquiries** 16:24
17:3
**inquiry** 17:4
**instances**
37:24
**institutional**
20:22,22,23
21:7,23
**instructions**
15:19
**intends** 28:24
**interest** 31:7
45:23
**interim** 3:1,15
3:16 4:1,2,9,14
4:15 5:1,8 6:17
7:9,14 8:1,11
8:19 37:11,14
38:1,4,5,7,25
39:3 41:2,3
**internal** 13:24
**international**
6:3
**investment** 4:5
**israeli** 3:18

**issuance** 37:18

**issue** 22:19,22
  42:10 44:11
  46:1

**issues** 17:21,24
  18:3,14,21
  26:13,20,23
  27:4,6 31:23
  34:20 35:2,6,6
  35:8 37:20
  41:13 42:6
  44:18

**it'll** 33:12 43:4

**item** 9:6 43:20
  43:21

**items** 43:22

**j**

**jade** 10:20
  43:18

**january** 23:5
  23:24

**joinders** 17:21
  17:25 27:15
  44:16

**jorge** 11:17

**joshua** 8:24

**judge** 1:23
  16:17 30:22,24
  37:1 44:2 45:8
  46:5

**judicial** 12:7

**july** 2:11 7:6
  7:19 8:5,21
  15:9 29:7
  35:20 46:7
  48:25

**jump** 16:3

**jumped** 14:20
  14:21 41:24

**june** 1:16

**jurisdictions**
  24:10

**justice** 11:9

**justify** 22:25
  23:2

**k**

**k** 22:11

**kahn** 11:1 37:6

**kansas** 12:7

**karen** 1:25

**katherine** 11:7
  37:5

**ke** 4:23

**keep** 13:24
  32:25 44:14

**kind** 17:23
  19:23,24 23:3

**kirkland** 6:2,2
  10:3 13:9

**know** 12:6 13:2
  13:16 15:23
  16:5 17:14
  18:17 19:3
  23:21 25:5,20
  26:5 27:16
  28:6 30:19
  32:2,7,10,16
  32:24 33:6,13
  33:16 34:16
  35:9,10 36:3,3
  37:15 40:7
  41:1,14,19
  42:21 45:19,22

**knows** 15:16
  29:5 37:9

**koenig** 10:8
  13:3,8,9,14,19
  18:25 19:11,23
  20:10 22:17
  26:7,11,22
  27:8,18,21,25
  28:2,5,8 44:9
  44:11,12,21,25
  45:3,6

**kwasteniet**
  10:9

**kyc** 15:2 20:25
  21:8

**l**

**laid** 38:13

**language** 23:16
  24:22

**languish** 33:3
  34:10

**large** 29:12,14
  30:14 31:1,2,5
  32:3,15,18,19
  33:11 34:5,11
  34:19 35:4

**larger** 32:24

**largest** 23:2
  26:4

**late** 38:19

**latham** 2:2,4

**launching**
  28:15

**law** 18:12

**lays** 34:16

**lead** 25:11,15

**leading** 15:5

**leave** 35:10
  40:23

**led** 13:7

**ledanski** 9:25
  48:3,8

**legal** 5:9 41:20
  48:20

**letter** 20:11
  34:16 37:18

**lexington** 10:5

**licenses** 24:9
  24:13,19,24

**lifland** 30:24

**lifting** 37:13

**liked** 42:19

**limit** 19:19
  20:4,7,15 21:4
  21:9 25:10

**limitation**
  21:21

**limitations**
  29:6

**limited** 21:19
  25:9

**line** 41:6 47:4

**liquid** 22:8

**listened** 45:25

**litigate** 30:6

**litigation** 7:3
  7:16 10:14,15
  14:4 17:10
  28:3,12,13,14
  28:24 29:3,8,8
  29:19,20,21
  30:1,3 43:19

little  14:10,15
  14:15,19,24
  15:13
live  13:3 42:20
llc  1:7 2:8,13
  3:10 4:10 5:9
  5:14 6:8,10
  7:10 8:5,18,22
llp  2:2,4,18 3:2
  3:5 6:2,3,15,20
  7:2,16,20 8:12
  10:3,13 38:16
long  33:6
longer  23:11
look  14:9,17
  31:7 35:13
  44:14 45:17
looking  35:3
  46:1
lot  17:6 27:1
  42:15 44:23
  45:15,22,24
lots  27:15
lovely  13:16,18
  36:16,17
lp  4:3,7,16,19

m

m3  4:16,19
made  17:9 23:8
  23:14 25:3
  35:12
madison  11:5
main  11:3
  19:16
make  12:23
  15:16 16:15
  21:15 22:7,9

28:25 29:15
  37:7 39:5
  45:14
making  14:25
  21:1 35:12
  45:17
management
  32:17,20
manual  14:16
march  6:9 24:2
marsal  2:8,12
  8:17,22
martin  1:22
masse  35:9
materials
  40:21
matter  1:5
  18:7,20
matters  12:11
  12:11 18:24
  39:8 40:4
mean  15:10
  17:16 34:4
  44:5,22 45:21
means  29:7
media  45:20
mediate  29:25
mediation  31:9
mediators
  31:17,21 32:13
memorandum
  41:18
method  15:4
mg  1:3
million  14:22
  14:23 16:9
  28:22

millions  30:5
mineola  48:23
misleading
  14:11,19,24
mobile  23:9
modify  25:24
moment  16:22
monday  29:11
monetization
  29:4
money  24:8
monitoring
  16:23
month  16:2,7
  32:23 45:19
months  28:14
morning  12:3
  13:8,15,20
  16:20 28:11
  39:11,16 43:18
motion  9:6
  17:19 19:1
  20:12 27:11
  29:17,23 35:19
  43:14,21,25
  44:3 47:7
motions  17:17
  47:5
move  12:15
  39:21
multiple  18:16

n

n  10:1 12:1
  47:1 48:1
name  37:5
nearly  28:22

necessarily
  25:11
necessary  2:10
  8:20 40:15
need  34:10
  40:19
needed  24:24
needs  18:8,8
  35:11
neglect  30:3
negotiate
  29:25
negotiated
  38:7
negotiations
  37:13
network  1:7
  3:10 8:5
never  30:6
  31:2,2
new  1:2,14
  10:6,17 11:12
  13:3 15:12
  28:23 36:4
night  12:8,9
ninety  24:14
non  24:9 25:1
  29:21
north  2:8,12
  8:18,22
note  14:9 29:19
notice  13:12
  23:5,15,19,24
noticed  40:13
november  2:12
  3:12 6:17,18
  6:19 7:6,19 8:6

8:22 30:23
**number** 13:23
14:20,21 17:19
19:16 21:19
29:12,14 30:14
30:16,18,20
31:2,24 32:12
32:24 33:11,20
34:5,19 35:4
38:14
**numbers** 16:3
16:6 30:15
32:15,19
**numerator**
14:1
**numerous**
17:25
**ny** 1:14 10:6,17
11:12 48:23

**o**

**o** 1:21 12:1
48:1
**objection**
12:24 27:9
38:22
**objections**
12:21 36:8
**obviously** 14:3
15:5 27:10,10
33:24
**october** 6:9
37:10
**office** 11:4
16:21 17:13
29:15
**officer** 16:13

**official** 3:4,9
3:19 4:5,18 5:4
8:4
**oh** 40:17,17
43:14 44:6
**okay** 16:19
18:22 19:11
26:9 27:20
28:1,10 33:10
34:17 35:23
36:1 40:8,17
40:24 42:9
43:2,6 44:5,10
44:11 45:2
**old** 48:21
**omnibus** 35:21
**onboarding**
21:1
**once** 33:5,19
**ones** 33:7
34:11,11 42:6
**ongoing** 45:20
**online** 16:4
**open** 33:5,25
34:3,7 35:2,10
44:24
**operational**
15:9
**opportunity**
34:1 35:5
**opposition**
43:25
**option** 23:3
**order** 26:16,17
32:17 38:24
43:5,6 44:4

**ordered** 24:2
**orders** 31:7,8
31:12 32:20
39:1 40:19
41:14,15 43:4
**organized**
27:19
**originally**
17:16
**outlined** 38:5,9
**outlining** 37:19
**overall** 16:6
**overbroad**
18:22
**overnight**
36:15
**oversight**
10:15 28:13,24
29:3

**p**

**p** 10:1,1 12:1
**page** 20:4,17
20:20 21:20
22:11 23:15
24:12,21,22
43:16 47:4
**pages** 19:16
**part** 18:6
**participate**
36:9
**particular**
14:14 16:5
22:8
**particularly**
14:25 26:15
28:6

**parties** 17:6,7
19:1 29:21,25
**partners** 4:3,7
4:10,16,19
15:11
**party** 17:11
23:14
**pass** 15:2
**past** 14:1
**path** 38:21
**pattern** 38:1
**paypal** 15:2,4
15:5 16:1
24:17
**pays** 25:12
**people** 26:24
27:15 31:14
32:6,13 33:21
34:1,1 35:13
45:15,21,22
**percent** 14:18
14:18,20 15:18
16:7,8
**percentage**
14:10,24
**perella** 4:3,6
**perfectly** 12:25
**performance**
25:23
**period** 2:3,11
2:13,19 3:12
4:10,23 5:9,15
5:20 6:3,9,11
6:17,18,20 7:6
7:10,19,21 8:5
8:7,13,23 9:2
29:6 37:20

[period - pushed] Page 14

38:2,5,7 41:2
**periods** 37:25
**permit** 25:24
33:11
**person** 12:5,18
13:6 31:23
**persuaded**
32:19
**pesce** 3:5 10:21
40:13,14,15
**petition** 29:6
**phase** 29:4
**pick** 32:4
**pivoting** 29:3
**place** 18:8,8
36:24 37:13
**plan** 13:25
14:6 19:8,8,15
20:17 21:4
22:4,7,11,20
23:1,1,17 25:1
25:6,16,25,25
27:2 37:7
**platform** 24:16
**please** 12:2
42:23
**pleased** 28:19
**pllc** 5:2,5
**point** 18:15
19:14,20 20:5
21:3 26:3
32:21 33:19
**pole** 15:25
**popped** 40:13
**position** 21:25
22:1 23:16

**possession**
6:16 7:4,17
**possible** 12:10
12:18 16:16
29:22 30:9
32:12 38:21
**post** 11:4 21:12
21:14,16
**potentially**
22:19 25:15
30:4
**practice** 31:10
**precipitously**
36:20
**preclude** 24:25
**preference**
28:16,22 29:6
29:8,10,12,14
30:4,7,9,14,25
31:5 32:8
**preliminary**
38:18 39:19
**prepared** 45:1
**preparing**
29:17
**present** 11:16
16:14 19:5
33:22 38:2
**presentation**
13:22
**pretty** 34:14
**preview** 27:9
**previously**
42:4
**prime** 19:17,19
20:3,6,23
21:10,13

**principally**
19:10
**prior** 21:1
**probably** 13:3
13:4 36:14
41:24
**problem** 15:14
28:8
**problems**
16:16 33:16
**procedural**
44:23
**procedurally**
18:6,17,19
**procedure**
18:10 29:23
**procedures**
29:17 31:7,8,9
35:4
**proceed** 16:11
34:10,11 37:4
40:21
**proceeding**
32:18
**proceedings**
33:4 34:21
46:9 48:4
**proceeds** 28:25
**process** 14:16
29:16 37:8,9
37:14,15,17,18
39:3 41:17
**product** 15:12
**professional**
2:1,7,9,17,18
3:15 4:1,10,14
4:22,23 5:13

5:14,18,20 6:1
6:10,14 7:1,10
7:15 8:6,12,13
8:19 9:1 40:4
41:9
**professionals**
37:21 42:13,15
**program** 12:7
28:15,20
**progress** 13:25
14:18,25
**properly** 27:19
**propose** 31:8
**proposed**
18:21 38:22,23
38:25,25 40:19
**proposing** 32:2
**provide** 13:21
21:7 25:2 28:3
41:16 43:4
**provided** 25:6
25:25,25 42:17
**provider** 6:15
**provides** 20:21
21:19,22 22:3
22:5,14 29:5
**providing** 23:2
**provision** 20:6
21:5 22:4
**public** 35:12
**pursuant** 18:9
18:20
**pursue** 30:3
**push** 32:22
42:12
**pushed** 45:18

| | | | |
|---|---|---|---|
| **put** 14:5 19:3 30:20 36:19,21 38:17 42:22 | **reached** 37:3 38:6 | 41:4 | 4:17 5:3 7:5,18 8:2,20 |
| **q** | **read** 19:7 27:2 34:21 | **recommends** 38:8,11 | **reorganized** 18:5,18 21:25 22:19 |
| **quantum** 29:2 | **readily** 15:10 15:12 | **record** 9:6 17:5 17:13 19:4 27:23 40:21 43:21,22 48:4 | **report** 28:19 29:1 37:19 38:6,10,13 40:24 42:7 |
| **question** 20:5 22:13,17 24:23 | **ready** 39:2,7 40:8 | **records** 23:12 | **reporting** 37:18 |
| **questions** 16:6 16:10 18:11,16 19:6,7 20:9 25:5,11,15 26:18,19 27:24 30:10 39:2,7 40:18 44:24 | **real** 31:21 | **refer** 17:18 18:18 | **reports** 19:9 37:12 |
| | **really** 12:14 13:2 37:2,2 42:11 45:14,24 | **reference** 20:14 | **representative** 19:4 |
| | **reardon** 10:11 | **referenced** 24:13 | **represented** 31:16 |
| | **reason** 15:2,23 21:10 22:20 42:11 | **regarding** 17:2 19:9 29:1 | **representing** 45:14 |
| **queue** 14:5 | **reasonable** 33:20 35:3 | **regulations** 24:10 | **requested** 41:2 41:3 |
| **quick** 45:14,16 | **receive** 14:6 17:23 19:21,25 22:10 24:17,18 45:18 | **regulatorily** 24:4 | **require** 41:15 |
| **quickly** 42:10 | | **reimbursement** 2:10 3:3,11,18 4:4,17 5:3 7:5 7:18 8:3,20 | **required** 18:15 24:10 |
| **quite** 26:21 41:17 42:24 | | | **requirements** 21:1 |
| **quote** 23:7 | **received** 16:24 17:6,7 | **related** 9:7 20:3 | **requisite** 24:13 24:19 |
| **r** | **receiving** 15:19 23:3 26:24 | **relatively** 34:12 | **reschedule** 13:12 |
| **r** 1:21 10:1 12:1 48:1 | **recently** 38:16 39:18 | **reluctant** 32:4 | **resolution** 37:3 |
| **raise** 18:11 32:11 43:11 | **recipient** 15:16 | **rely** 22:4 | **resolutions** 37:25 38:7 |
| **raised** 17:22 18:3,21 22:22 26:24 44:2 46:4 | **recognize** 39:22 | **remains** 29:21 38:15 | **resolve** 14:4 27:4 30:8 41:12 44:19 |
| | **recognized** 27:1 32:7 | **remarks** 37:7 39:7 | |
| **raising** 44:1 | **recommenda...** 41:7,25 43:4 | **remedy** 39:24 | |
| **ramrodded** 32:14 | **recommended** 38:4 39:4 41:3 | **rendered** 2:10 3:3,11,18 4:4 | |
| **rate** 13:17 15:18 | | | |
| **rather** 36:6 42:22 | | | |

| | | | |
|---|---|---|---|
| **resolved** 14:5 18:2 35:7 | **road** 32:21 48:21 | **scheduling** 32:17,23 | **seriously** 17:12 17:12 18:1 |
| **respect** 41:23 | **role** 25:12 | **score** 13:24 | 22:23 23:4 |
| **respective** 41:9 | **ross** 5:14 10:9 | **screen** 13:22 | 26:21 27:7 |
| **respond** 33:1 35:13 37:21 | **rough** 31:3 | **seal** 20:12,12 | **served** 33:13 33:20 |
| **responded** 17:4 18:6 | **round** 30:20 | **sealed** 20:13 | **service** 20:4 |
| **response** 18:15 24:2,12 26:14 | **row** 14:14,15 | **seated** 12:2 | 25:14 33:16 |
| **responsible** 36:5 | **rsm** 38:16,16 39:6,17 41:10 | **second** 5:8 21:11,20 | **services** 2:10 3:3,11,17 4:4 |
| **rest** 19:24 | **rsm's** 39:9 | **section** 20:18 24:21,22 29:5 | 4:17 5:2 6:8,10 |
| **result** 37:12 | **rule** 18:5,20,23 | **sections** 25:17 | 6:15,20 7:4,18 |
| **resulted** 37:24 | **ruled** 24:7 | **security** 16:13 | 8:2,20 16:2 |
| **resulting** 28:22 | **rules** 18:9,10 18:10,24 | **see** 13:11 19:18 20:2 22:11 | 20:18,20 21:6 21:22 22:2 |
| **retail** 21:23 | **ruling** 19:5 | 24:3,22 25:8 | **set** 35:3 38:22 |
| **retained** 38:16 | **rulings** 47:3 | 26:19 28:9 31:11,15 34:13 | 41:1,9 |
| **returned** 39:18 | **s** | 40:5 44:2,10 | **settle** 35:6 |
| **returning** 12:8 | **s** 9:7 10:1,8 12:1 | 46:5 | **settled** 28:21 29:13 |
| **review** 37:11 37:17 39:3 40:22 | **s.c.** 11:1 | **seeing** 15:17 | **settlement** 28:15,19,23 |
| **reviewing** 19:18 | **saccullo** 5:9 | **seek** 25:13 29:23 | **settlements** 28:23 31:15 |
| **revise** 40:19 | **sad** 45:24 | **seems** 22:18 25:18 | **settling** 29:21 29:22 |
| **revised** 38:23 | **sam** 28:11 | **seen** 21:21 31:25 | **seventh** 19:15 20:17 |
| **richard** 11:18 | **samuel** 10:19 | **select** 31:18 | **several** 26:7 38:20 |
| **right** 12:2 14:17 15:14,21 | **santos** 11:19 | **selected** 32:6 | **shara** 11:14 16:17,20 42:3 |
| 18:25 33:15,18 35:15,25 40:1 | **saying** 19:13 27:3 32:10,11 41:24 | **selendy** 5:2,4 | **share** 36:12 |
| 40:3,12 43:10 44:7,10 45:11 | **says** 21:4 22:6 23:17,18 | **send** 15:18 | 42:25 |
| 46:3,6 | **schedule** 12:13 13:1,4 20:19 | **sends** 15:22 | **shift** 15:12 |
| **risius** 5:14 | 27:12 33:20 38:23 40:7 | **series** 18:11 25:15 | **short** 13:12 44:5 |
| | **scheduled** 12:6 13:2 17:17 27:20 35:9 | **serious** 22:19 26:13 | |

[shortly - telephonically]                                          Page 17

| | | | |
|---|---|---|---|
| **shortly**  30:23 | **speaking**  45:21 | **steel**  30:24 | **suite**  11:3,11 |
| **shown**  26:25 | **speaks**  20:21 | 32:22 | 48:22 |
| **shut**  23:10 | **special**  2:2 5:9 | **stipulated** | **summary** |
| **side**  20:11 | 7:3,16,20 9:2 | 38:21 | 38:10,13 |
| **signature**  48:6 | **specifically** | **stories**  45:24 | **supplement** |
| **signed**  22:21 | 21:7 22:2 | **stout**  5:14 | 19:15 20:17 |
| 25:19,22 | **spent**  12:8 | **straightforw...** | 27:10 |
| **simple**  15:13 | 18:13 27:5 | 15:13 34:19 | **supplements** |
| **size**  20:2 | **spoke**  14:12,12 | **strauss**  7:2,15 | 19:9 |
| **slots**  21:19 | **spoken**  42:4 | 7:20 | **sure**  12:12,23 |
| **small**  26:10 | **square**  21:6 | **street**  11:3,11 | 15:15 16:24 |
| **smoothly** | 22:1 23:16 | **stretto**  5:19,20 | 29:16 40:4 |
| 29:16 | **stadler**  11:7 | 14:14 | 42:12 |
| **social**  45:19 | 36:11,14,17,20 | **strike**  9:6 | **sussberg**  8:25 |
| **solow**  11:18 | 36:23,25 37:5 | 43:14,21,25 | **switched**  36:3 |
| **solutions**  48:20 | 40:13,17 42:25 | 47:7 | **sympathies** |
| **somebody** | 43:7,9 | **strong**  45:23 | 36:25 |
| 31:18 32:1,5 | **stand**  18:23 | **structure** | **sympathize** |
| 32:14 40:3 | 39:2,7 | 29:24 | 36:14 |
| **sontchi**  11:2 | **standard**  34:14 | **subject**  20:24 | |
| 12:17,23 36:5 | **standards** | 40:22 | **t** |
| 37:1,6,7 42:20 | 41:20 | **submission** | |
| **sonya**  9:25 | **start**  29:10 | 37:16 | **t**  5:20 48:1,1 |
| 48:3,8 | **started**  44:11 | **submit**  43:6 | **take**  17:24 18:1 |
| **soon**  29:20 | **state**  17:5 | **submitted** | 18:4,4,5,8,8 |
| **sorry**  16:17 | **stated**  21:12 | 38:24 39:1 | 22:22 23:3 |
| 39:13 45:8 | **statement**  19:8 | 40:20 | 26:20,21 27:6 |
| **sort**  13:23 27:6 | 23:17 24:14,21 | **success**  28:20 | 32:25 33:6,12 |
| 32:7,16 34:4 | 24:25 | **successful**  32:6 | 33:13 41:22 |
| 34:16 42:16 | **statements** | **successfully** | **taken**  17:12,12 |
| **sorted**  42:16 | 25:2 | 14:21 | 22:1 |
| **sorting**  26:15 | **states**  1:1,12 | **suggest**  40:1 | **talked**  34:5 |
| **sought**  18:5 | 11:9 16:21,23 | **suggesting** | 41:10,20 |
| 19:25 | 17:1,10 23:6 | 34:3 | **talking**  32:24 |
| **sounds**  27:21 | **status**  34:16 | **suggestions** | **task**  42:14 |
| **southern**  1:2 | **stay**  36:11 | 34:8 35:12 | **tax**  6:15,20 |
| | | | **tee**  44:11 |
| | | | **telephonically** |
| | | | 10:9 11:14,16 |

**[tell - virtually]**                                                    Page 18

**tell** 30:16
**terms** 21:6
  22:2,13,20
**testing** 15:8
**thank** 16:16
  17:14,15 27:25
  28:5 35:16,24
  37:1 40:10,11
  42:3 43:1,9
  44:6,7 45:3,5,6
  45:13 46:1,8
**thanks** 35:18
  35:23 42:9,23
  43:8 45:2
**theory** 31:20
**thing** 34:9
**things** 17:16
  27:16 32:9
  40:6 42:17
**think** 14:8
  16:14 18:14
  26:23,25 27:19
  31:24 32:16
  33:5,6,10 36:7
  37:1,3 40:20
  41:14,20
**third** 5:1 14:14
  23:14 43:20
**thirds** 14:21
**thorough** 41:5
**thought** 33:4
  34:6 41:18
**thousand** 26:7
  30:20
**thousands** 31:6
**threats** 17:9

**three** 28:14
  30:20 31:16,19
  37:11,25
**time** 18:13
  19:1 23:19,24
  24:25 27:6
  29:24 33:1,2
  37:11,21 41:21
  41:21 45:17
**times** 32:15
  36:17
**timing** 29:2
**today** 12:15,18
  12:24 16:13,16
  17:17 18:2
  19:4 20:8
  26:16 27:23
  36:6,8,13 38:2
  38:11,17 41:11
  42:12,20 43:11
  44:17 45:18
**today's** 17:3
**told** 21:9 23:25
**took** 37:13
**top** 20:1,1
  25:10 26:4
  27:1
**topic** 45:20
**touch** 15:24
**toward** 41:16
**towers** 7:10
**track** 13:24
  32:25
**transcribed**
  9:25
**transcript**
  26:16,17 48:4

**transfer** 15:16
  15:22 21:2
  24:9,24
**transferred**
  24:7 30:25
**transfers** 14:13
  15:15
**transparent**
  35:11
**tremendous**
  28:20
**tried** 31:12
**trouble** 15:11
**troubled** 25:18
**true** 48:4
**trust** 31:13
**trustee** 11:10
  16:22,23 17:1
  17:11 42:1,4
**try** 13:2 32:24
**trying** 18:13
  27:6 31:15,18
**twenty** 30:20
**two** 14:21 16:3
  29:5,9 30:19
**typically** 31:12
  31:17 32:17

**u**

**u.s.** 1:23 11:10
  24:8,9 42:1,4
**uk** 6:15,20
**under** 13:25
  14:6 20:12
**undergoing**
  15:8
**understand**
  13:10 17:6

  18:14 19:5
  22:17 26:9,12
  36:5 42:21
**understood**
  20:10 26:22
  27:8,18 44:12
  44:25
**united** 1:1,12
  11:9 16:21,23
  17:1,10
**unsecured** 3:4
  3:10,19 4:6,18
  5:4 8:4
**update** 13:21
  21:11,20 28:4
**usd** 14:14
**use** 31:2
**used** 21:10,24
  22:3
**using** 13:24
**usual** 44:19
**usually** 31:16

**v**

**value** 14:10
  28:23 30:5
  34:11
**variations**
  34:14
**varick** 11:11
**various** 19:9
  40:25
**veritext** 48:20
**versus** 18:23
**victoria** 10:10
**violated** 25:16
**virtually** 15:7

| | | |
|---|---|---|
| **voting** 22:25 | 38:20 | **written** 44:4 |
| **w** | **weinberg** 4:3,6 | **wrong** 15:20 |
| **want** 12:4,25 | **welcome** 46:3 | 15:20 23:23 |
| 15:24 18:4,4 | **went** 42:22 | **x** |
| 19:3,6 25:17 | **wesley** 11:20 | **x** 1:4,10 47:1 |
| 27:22 29:19 | 45:10 | **y** |
| 34:1,11 35:1 | **westin** 36:18 | **yeah** 13:13 |
| 36:14,22 37:2 | **white** 3:2,5 | 26:11 43:24 |
| 40:14 41:23 | 10:13 28:12 | 45:14 |
| 42:12 43:3,11 | 43:19 | **year** 29:1,6 |
| 44:17,23 45:13 | **who've** 32:6 | **years** 30:25 |
| 45:16,19,22 | **wi** 11:5 | 31:1 40:3 |
| **wanted** 12:14 | **willis** 7:10 | **yesterday** 12:6 |
| 16:22 17:13 | **wire** 14:13 | 12:9 13:7,23 |
| 28:3 31:16 | 15:15,16,17,19 | **yoo** 10:20 |
| 32:11 36:6 | **wish** 33:12 | 43:12,14,18,18 |
| 42:11 | **withdraw** 23:6 | 44:6 |
| **wants** 33:24 | 23:18,20,22,25 | **york** 1:2,14 |
| **watkins** 2:2,4 | 25:7 | 10:6,17 11:12 |
| **watson** 7:10 | **withdrawals** | 13:3 36:4 |
| **way** 32:11,12 | 24:5,11 | **young** 2:18 |
| 34:6 | **withdrew** | 8:12 |
| **we've** 13:20,24 | 28:17 | **z** |
| 14:17,22 15:3 | **word** 39:1 | **zoom** 12:5,18 |
| 19:10 21:9 | **work** 27:14 | 13:6 33:20 |
| 27:9 29:14 | 28:4 30:8 | 34:2 36:9 |
| 37:1,11 41:10 | 38:20 39:24 | 38:18 42:20 |
| 42:4 | 40:6 42:1,24 | 44:19 |
| **wean** 20:1 | 44:13,17 | |
| **web** 23:9 | **worked** 42:16 | |
| **wednesday** | **working** 14:4 | |
| 12:8 | 15:3 | |
| **week** 15:8,9 | **world** 15:6,7 | |
| 27:12 33:9 | 34:17 | |
| 45:4 | **worries** 13:8 | |
| **weeks** 12:14 | **wright** 28:2 | |
| 29:9 30:13 | | |