**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com
       jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Litigation Oversight Committee, Mohsin Y. Meghji as Litigation Administrator, and Blockchain Recovery Investment Consortium, LLC as Complex Asset Recovery Manager*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Reorganized Debtors. | (Jointly Administered) |

**LITIGATION ADMINISTRATORS' QUARTERLY REPORT**

---

[1] The "**Post-Effective Date Debtors**" in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of the Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Mohsin Y. Meghji, as the Litigation Administrator (in such capacity, the "**Litigation Administrator**"), and Blockchain Recovery Investment Consortium, LLC, as the Complex Asset Recovery Manager (in such capacity, the "**ARM**" and together with the Litigation Administrator, collectively, the "**Litigation Administrators**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Dkt. No. 4289] (the "**Plan**")[2] submit this quarterly report pursuant to Section 4.13 of the Litigation Administrator Agreement[3] and Section 4.10 of the Litigation Administrator (ARM) Agreement (this "**Quarterly Report**"):

### Preliminary Statement

1.  On January 31, 2024, the Plan became effective in accordance with its terms [Dkt. No. 4298]. On the Effective Date, the Litigation Administrator was appointed to, among other things, prosecute, settle, or otherwise resolve any remaining Disputed Claims (including any related Causes of Action that are not released, waived, settled, or compromised pursuant to the Plan), the Recovery Causes of Action, and the Contributed Claims for the benefit of holders of Claims entitled to receive Litigation Proceeds under the Plan in accordance with the Litigation Administrator Agreement. The ARM was also appointed on the Effective Date and charged with administering and monetizing the Debtors' illiquid assets identified on the schedule attached to the Litigation Administrator (ARM) Agreement (the "**ARM Claims**").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3] In accordance with the Plan and Confirmation Order, (i) the Debtors and the Litigation Administrator entered into that certain *Litigation Administrator Agreement*, *see* Ex. B [Dkt. No. 4297] (the "**Litigation Administrator Agreement**"), and (ii) the Debtors and the Litigation Administrator (ARM) entered into that certain *Litigation Administrator and Complex Asset Recovery Manager Agreement*, *see* Ex. C [Dkt. No. 4297] (the "**Litigation Administrator (ARM) Agreement**").

2. Since the Effective Date, the Litigation Administrators have worked diligently, under the oversight of the Litigation Oversight Committee (the "**LOC**"), to acquit their fiduciary duties to the Debtors' creditors. Most critically, since the Effective Date, the Litigation Administrators have worked with their advisors to diligently pursue claims and causes of actions and monetize assets for the benefit of creditors, aiming to direct the Plan Administrator to effectuate an initial distribution from the Litigation Recovery Account before the end of 2024. Between April 1 and June 30, 2024, the Litigation Administrators recovered and generated approximately $123 million of net cash, primarily through proceeds from the settlement of avoidance actions and other prepetition causes of action, sales of securities of Core Scientific Operating Company (f/k/a Core Scientific, Inc.) ("**Core Scientific**"), and management and monetization of Institutional Loan (as defined herein) collateral. The balance of the Litigation Recovery Account was approximately $181.4 million as of June 30, 2024.

3. The Litigation Administrators file this Quarterly Report pursuant to and as required by the requirements under the Litigation Administrator Agreements to provide information to the Debtors' creditors and other parties in interest related to:

    (a)    the financial statements of the Litigation Recovery Account;

    (b)    the various actions taken that may affect the Litigation Recovery Account;

    (c)    the progress of liquidating the Post-Emergence Claims and determining the frequency and quantum of any distributions from the Litigation Recovery Account to holders of Claims;

    (d)    payments made to the Litigation Administrator and Litigation Administrator Professionals; and

    (e)    other material information deemed appropriate by the Litigation Administrators.

**Financial Update**

4.      On the Effective Date, the Litigation Recovery Account was funded with cash of $55 million. Of that amount, $15 million was reserved to account for the future fees of the Litigation Administrator (ARM), pursuant to the Litigation Administrator (ARM) Agreement.

5.      Through June 30, 2024, the Litigation Recovery Account received $148.8 million in cash proceeds, with $144.2 million received in the second quarter of 2024. The majority of these proceeds came from (i) settling avoidance action claims against individuals and entities that withdrew funds from the Debtors in the 90 days prior to the Petition Date, (ii) selling the equity and certain debt received from Core Scientific, and (iii) managing and monetizing collateral related to the Institutional Loans (as defined herein).

6.      As of the date of this report, there have not been any distributions to creditors from the Litigation Recovery Account. The Litigation Administrators and the LOC aim to direct the Distribution Agent to make an initial distribution to creditors from the Litigation Recovery Account on or before the first anniversary of the Effective Date and likely in the fourth quarter of 2024.

7.      The financial performance of the Litigation Administrators for the period of February 1, 2024, through June 30, 2024, as well as the disbursements to the Litigation Administrators, the retained professionals, and the members of the LOC, is set forth below:

| ($000s) | | Q1 2024 | Q2 2024 | Inception to Date |
|---|---|---:|---:|---:|
| **Opening Cash Balance** | [A] | $55,000 | $58,334 | $55,000 |
| **Receipts** | | | | |
| Avoidance Actions | [B] | 945 | 70,859 | 71,909 |
| BRIC Portfolio | [C] | 3,572 | 72,052 | 75,518 |
| Interest Income | | 119 | 1,257 | 1,376 |
| **Total Receipts** | | $4,636 | $144,168 | $148,804 |
| **Disbursements** | | | | |
| Litigation Administrators | [D] | (933) | (1,325) | (2,258) |
| Litigation Oversight Committee | [E] | (169) | (339) | (508) |
| Professional Fees | [F] | (200) | (19,462) | (19,662) |
| Other Operating Expenses | [G] | 0 | (2) | (2) |
| **Total Disbursements** | | ($1,302) | ($21,128) | ($22,431) |
| **Net Change in Cash** | | $3,333 | $123,040 | $126,373 |
| **Ending Cash Balance** | | $58,333 | $181,373 | $181,373 |
| **Cash Held for Distributions** | [H] | - | - | - |

Notes to Financial Statements:

(a)     The Litigation Recovery Account was funded with $55 million on January 31, 2024, pursuant to the Plan. Of that amount, $15 million was budgeted to account for the future fees of the Litigation Administrator (ARM), pursuant to the Litigation Administrator (ARM) Agreement.

(b)     Avoidance Action proceeds include settlements with account holders regarding withdrawal preference exposure. Receipts reflect actual cash received into the Litigation Recovery Account via payments from settling parties or amounts settling parties authorized the Litigation Administrator to set off against the cash or Liquid Cryptocurrency recoveries such settling parties would have otherwise been entitled to receive under the Plan. As of June 30, 2024, approximately $15.7 million remains due from settling parties under the settlement agreements and that amount is not included in the amount of proceeds recovered to date on account of the settlement program.

(c)     BRIC portfolio proceeds include the sales of certain equity and debt received through Core Scientific's chapter 11 restructuring, liquidation of loan collateral related to the Institutional Loans, the sale of certain alt coins, and the settlement of the Reliz (as defined herein) claims.

(d)     Monthly fees paid to the Litigation Administrators pursuant to the Litigation Administrator Agreements filed as part of the *Eleventh Notice of Filing of Plan Supplement* [Dkt. No. 4297].

4

(e)     Monthly retainer payments and reimbursement of reasonable and documented out of pocket expenses paid to LOC members in connection with their duties under the Plan.

(f)     Payments to professionals retained by or on behalf of the LOC or the Litigation Administrators on account of services rendered, among other things, preparing post-effective date litigation, investigating claims and causes of action, designing and executing the pre-complaint avoidance action settlement program, monetizing the estate's illiquid assets, hosting fees, and preparing complaints.

(g)     Other operating expenses consist of bank fees and other administrative costs.

(h)     No distributions to creditors from the Litigation Recovery Account have been approved at this time. In future reports, this line item will reflect cash reserved for distribution in future periods.

## Significant Updates

### I. Administrative Updates

8. As of the Effective Date, the LOC comprised six members: (i) David Adler, (ii) Cameron Crews, (iii) Vik Jindal, (iv) Deirdre O'Connor, (v) Mark Robinson, and (vi) Gerard Uzzi [Dkt. No 3935].

9. On April 30, 2024, pursuant to the Confirmation Order and Plan, the LOC announced the appointment of Pamela Corrie as its seventh member [Dkt. No. 4848]. Ms. Corrie was selected as part of a competitive process in which no fewer than eleven candidates were considered and four candidates were interviewed. The biographies of the LOC members are provided in **Exhibit A** attached hereto.

10. Since the Effective Date, the LOC has met regularly to review the actions of the Litigation Administrators and their counsel. These meetings have included quarterly in-person sessions to perform deep-dive reviews on potential actions, complaint preparation, financial forecasts, professional and investment budgets, and other matters.

5

**II.     Avoidance Actions Settlements**

11.     On March 20, 2024, the LOC and the Litigation Administrator commenced efforts to recover transfers subject to avoidance under chapter 5 of the Bankruptcy Code that were not released under the Plan and were preserved for pursuit by the Litigation Administrators for the benefit of all creditors.

12.     The first phase of those efforts was to attempt to reach settlements with individuals before the commencement of litigation. The Litigation Administrators' settlement program (the "**Pre-Litigation Settlement Program**") resulted in approximately 1,600 settlement agreements with individuals totaling approximately $88 million of settlement commitments as of June 30, 2024. Those settlements include individuals who had claims against Celsius, individuals who withdrew everything prior to the chapter 11 filings, and both domestic and foreign individuals and entities. Because of the positive response to the Pre-Litigation Settlement Program, the deadline to accept the offer from the Litigation Administrator was extended multiple times. The Litigation Administrator also negotiated resolutions with several groups of creditors. The efforts of those groups helped reduce overhead and administrative costs for the estate while providing fair and equitable terms for the group members.

13.     Following the conclusion of the Pre-Litigation Settlement Program, the Litigation Administrator began commencing actions against individuals and entities for the avoidance of preferential transfers. As of July 15, 2024, the Litigation Administrator filed nearly 2,500 adversary proceedings against certain non-settling parties seeking the return of cryptocurrency worth in excess of $2 billion as of June 14, 2024. The Litigation Administrator has filed a motion [Dkt. No. 7534] seeking to implement procedures to impose a uniform set of rules and schedule in connection with those litigations, which is scheduled to be heard on August 27, 2024 [Dkt. No. 7548].

6

**III.    Other Litigation Matters**

14.    ***Meghji v. Mashinksy et. al. (Adv. Proc. No. 24-03667 (MG)) and other actions against former Celsius executives.***    On July 10, 2024, the Litigation Administrator filed a complaint against certain former executives and their related parties, seeking the avoidance of nearly $90 million of preferential and fraudulent transfers and billions in damages related to their breaches of duties, deceptive and fraudulent business practices, and fraudulent misrepresentations. *See Meghji v. Mashinsky*, Adv. Proc. No. 24-03667 (MG) (Bankr. S.D.N.Y. July 10, 2024) [Dkt. No. 1]. The defendants include former Celsius executives Alex Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, Harumi Urata-Thompson, Roni Cohen-Pavon, Jeremie Beaudry, and Johannes Treutler. The above-mentioned lawsuit is currently stayed until September 12, 2024.

15.    The Litigation Administrator also filed five complaints asserting claims of constructive and actual fraudulent transfer against former Celsius employees who sold significant amounts of CEL Token to the company through its "Over-the-Counter" trading desk at artificially inflated prices and received significant cash payments when the price of the CEL Token reached certain price thresholds. *See Meghji v. Noy*, Adv. Proc. No. 24-03976 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. Peter*, Adv. Proc. No. 24-03741 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. O'Brien*, Adv. Proc. No. 24-03739 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. Atar*, Adv. Proc. No. 24-03738 (MG) (Bankr. S.D.N.Y. July 11, 2024) [Dkt. No. 1]; *Meghji v. Yarwood*, Adv. Proc. No. 24-03740 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1].

16.    The Litigation Administrator has also entered into a tolling agreement with various other former Celsius executives and employees. A pre-trial conference on all of the above-listed matters is scheduled for August 27, 2024.

17.    *FTX*.  On June 5, 2024, the Litigation Administrator filed an objection to the FTX debtors' disclosure statement and a motion to lift the automatic stay with respect to the FTX debtors (in their chapter 11 and chapter 15 processes) to pursue over $400 million in avoidance action claims against the FTX debtors. The lift stay motions seek to allow Celsius to bring avoidance actions against the FTX debtors as initial and subsequent transferees in the Bankruptcy Court in the Southern District of New York so that the procedures and schedule for the litigation, as well as any rulings, are consistent with the approximately 2,500 other avoidance action complaints that the Litigation Administrators have filed.  On July 7 and 8, 2024, Celsius amended its 95 proofs of claim previously filed against the FTX debtors.  Despite this, the FTX debtors filed an objection to Celsius's original proofs of claim arguing that they failed to preserve avoidance actions.  The FTX debtors revised their disclosure statement in response to Celsius's objection, and a hearing with respect to the lift stay motion and proof of claim objections is scheduled for September 12, 2024.

18.    *KeyFi*.  On August 23, 2022, Celsius Network Limited and Celsius KeyFi LLC initiated an adversary proceeding against KeyFi, Inc. and Jason Stone (the "**KeyFi Defendants**") in connection with the KeyFi Defendants' staking and DeFi activities on behalf of Celsius. *See Celsius Network Ltd. v. Stone*, Adv. Proc. No. 22-01139 (MG) (Bankr. S.D.N.Y. Aug. 23, 2022) [Dkt. No. 1].  The complaint asserted causes of action for turnover, conversion, fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, replevin, and accounting.  On June 28, 2024, the parties finalized a settlement agreement that resolved causes of action against the KeyFi Defendants. *See Celsius Network Ltd. v. Stone*, Adv. Proc. No. 22-01139 (MG) (Bankr. S.D.N.Y. July 11, 2024) [Dkt. No. 145].  Pursuant to the settlement agreement, the KeyFi Defendants transferred to Celsius certain assets traceable to Celsius that were in the KeyFi

Defendants' control. On or around July 11 and July 12, 2024, the Litigation Administrator also filed 12 complaints against 72 parties, as well as John Does, mostly domestic and international transferees to whom the KeyFi Defendants transferred Celsius assets.

19. *Fabric*. On January 17, 2023, Celsius Network Limited initiated an adversary proceeding against Fabric Ventures Group SARL ("**Fabric**") in connection with Fabric's contractual commitment to purchase Series B preferred shares of CNL. *See Celsius Network Ltd. v. Fabric Ventures Grp. SARL*, Adv. Proc. No. 23-01002 (MG) (Bankr. S.D.N.Y. Jan. 17, 2023). Fabric agreed to pay $8,003,379 in three installments: $2,000,000 in May 2022; $2,000,000 in June 2022; and $4,003,379 in July 2022. Fabric made the first scheduled payment but did not make the other two. The complaint sought damages in the amount of the two outstanding payments of $6,003,379, plus interest and fees. Fabric later filed a separate suit against Celsius and Alexander Mashinsky in the United Kingdom. The parties conducted a live mediation in May 2024 to attempt to reach a resolution of the claims and are presently negotiating the terms of a potential settlement agreement.

20. *BadgerDAO*. On July 12, 2024, Celsius initiated an adversary proceeding against Christopher Spadafora and Cloudflare, Inc. *See Meghji v. Spadafora*, Adv. Proc. No. 24-03981 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]. The case arises from a security breach on the BadgerDAO platform, which was founded by Christopher Spadafora, with security systems maintained by Cloudflare. The breach led to a loss of approximately $50 million in Celsius's bitcoin.

21. *Bancor*. On July 12, 2024, Celsius initiated an adversary proceeding against Galia Ben-Artzi, Guy Ben-Artzi, Eyal Hertzog, Yehuda Levi, BProtocol Foundation, LocalCoin Ltd, and BancorDAO, *See Meghji v. Ben-Artzi*, Adv. Proc. No. 24-03978 (MG) (Bankr. S.D.N.Y. July

9

12, 2024) [Dkt. No. 1]. The case arises from losses of over $7 million in Celsius' ETH suffered as a result of Bancor's suspension of impermanent loss protection, which Bancor and its controlling parties represented as a core feature of the platform.

22.     ***Into the Block***. On July 15, 2024, Celsius initiated an adversary proceeding against Into the Block Corp. ("**ITB**"). *See Meghji v. Into the Block Corp.*, Adv. Proc. No. 24-04008 (MG) (Bankr. S.D.N.Y. July 15, 2024) [Dkt. No. 1]. The case arises from over $3 million in losses that Celsius suffered as a result of ITB's deployment of Celsius assets in a DeFi platform that was automatically disassembled.

23.     ***PPM***. On July 15, 2024, the Litigation Administrator caused Barber Lake Development LLC, of which Celsius is the managing member, to initiate an adversary proceeding against Priority Power Management, LLC ("**PPM**"). *See Barber Lake Development LLC v. Priority Power Management, LLC.*, Adv. Proc. No. 24-04010 (MG) (Bankr. S.D.N.Y. July 15, 2024) [Dkt. No. 1]. The case asserts claims and causes of action under chapter 5 of the Bankruptcy Code and a development agreement, seeking the return of payments made by Celsius Mining LLC ("**Celsius Mining**") to PPM related to the Barber Lake site development.

### IV.    Other ARM Litigation and Claims

#### A.     <u>Litigation</u>

24.     ***Mawson Infastructure Group***. On November 21, 2023, Celsius Mining initiated an adversary proceeeding against Mawson Infastructure Group, Inc. and its affiliaites (collectively, "**Mawson**") in connection with Mawson's breaches under (i) that certain co-location agreement it executed with Celsius Mining and (ii) that certain secured promissory note Mawson issued to Celsius Mining. *See Celsius Mining LLC v. Mawson Infastructure Grp. Inc.*, Adv. Proc. No. 23-01202 (MG) (Bankr. S.D.N.Y. Nov. 21, 2023) [Dkt. No. 1]. On April 22, 2024, the District Court for the Southern District of New York granted Mawson's appeal of the Bankruptcy Court's order

10

denying Mawson's motion to compel arbitration. *See Celsius Mining LLC v. Mawson Infastructure Grp. Inc.*, Case No. 24-02063 (CM) (S.D.N.Y. Apr. 22, 2024). Consequently, the parties are engaging in arbitration after filing a joint abritration demand with Ionic. In conjunction with that filing, the ARM amended the adversary complaint to include additional claims. Nevertheless, such action is otherwise stayed pending the resolution of the arbitration. The ARM will continue to prosecute the Post-Effective Date Debtors' claims.

25.     ***Equities First Holdings***. On September 6, 2023, Celsius Network Limited initiated an adversary proceeding (the "**EFH Proceeding**") against Equities First Holdings, LLC ("**EFH**") and its founder and CEO, Alexander Christy, alleging breach of contract, fraudulent transfer, and other claims in connection with EFH's failure to return the Debtors' collateral under a series of loan agreements between the parties. *See Celsius Network Ltd. v. Equities First Holdings, LLC*, Adv. Proc. No. 23-01167 (MG) (Bankr. S.D.N.Y. Sep. 6, 2023). The EFH Proceeding has been stayed since November 14, 2023, pending EFH's motion to compel arbitration and appeal of the Bankruptcy Court's order requiring it to respond to the complaint. *See Celsius Network Ltd. v. Equities First Holdings, LLC*, Adv. Proc. No. 23-01167 (MG) (Bankr. S.D.N.Y. Nov. 14, 2023). To move this matter forward, on July 12, 2024, the ARM served an arbitration demand on EFH and Mr. Christy, alleging the same claims asserted in the EFH Proceeding.

26.     ***Reliz***. The ARM, on behalf of the Post-Effective Date Debtors, negotiated and entered into a settlement agreement with Reliz Group Technology Holdings Inc. and its affiliates (collectively, "**Reliz**") in connection with arbitration awards Celsius Network Ltd. holds against Reliz. The ARM obtained approximately $3.6 million in immediate funds and two secured promissory notes, representing the balance of the arbitration awards. Both secured promissory

11

notes, with maturity dates in September 2024 and March 2026, respectively, are accruing interest 12% per annum, with such interest payable monthly until the notes mature.

27. ***Three Arrows Capital***. On June 27, 2022, Three Arrows Capital ("**3AC**") filed an application in the British Virgin Islands to appoint Russell Crumpler and Christopher Farmer (collectively, the "**Joint Liquidators**") to administer the liquidation of 3AC. The Debtors subsequently asserted a claim against 3AC for over $40 million, representing amounts owed under two loans between Celsisus and 3AC entered into in May 2022. On March 18, 2024, the Joint Liquidators rejected the ARM's claim. The ARM and the Joint Liquidators have been in communication regarding the basis for the Joint Liquidators' decision. On June 14, 2024, the ARM submitted a response to the Joint Liquidators challenging the March 18, 2024 denial. On July 5, 2024 and July 15, 2024, the ARM provided additional information to the Joint Liquidators in response to certain information requests from the Joint Liquidators. The ARM remains in ongoing communications with the Joint Liquidators regarding the ARM's claim.

28. ***TerraForm Labs***. The ARM filed a proof of claim in the bankruptcy case *In re TerraForm Labs Pte. Ltd.*, Case No. 24-10070 (BLS) (Bankr. D. Del.), preserving the rights of the Post-Effective Date Debtors against TerraForm Labs for losses the Post-Effective Date Debtors suffered from use of TerraForm's exchange.

29. ***Other Litigation***. The ARM has initiated or is in the process of initiating litigation and arbitration actions, pursuing claims on behalf of the Post-Effective Date Debtors related to other prepetition professionals and loan and contract counterparties of the Debtors, including preference actions against Institutional Loan counterparties.

### B.   Monetization of Illiquid Assets

30. ***Illiquid Cryptocurrencies***.  In its work to liquidate certain illiquid assets of the Post-Effective Date Debtors, the ARM has monetized a portfolio of illiquid cryptocurrencies, generating $4.2 million in proceeds to date.

31. ***Insitutional Loans***.  The ARM currently holds collateral in the possession of the Post-Effective Date Debtors in connection with certain insitutional loans (the "**Institutional Loans**") and has called or is analyzing whether to call such Insitutional Loans and liquidating loan collateral.  As of June 30, 2024, the ARM has monetized approximately $28.7 million of the Institutional Loans collateral.

32. ***Other Securities***.  The ARM has taken over and is managing the Post-Effective Date Debtors' positions in certain securities and other instruments. To date, the ARM's management and monetization of a certain portion of those securities generated $41.1 million[4] for the benefit of the estate.

### C.   Modification of ARM's Compensation Structure

33. Pursuant to the *Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Dkt. No. 4172], the monetization of certain illiquid assets is subject to incentive fees payable to the ARM based on assigned pro forma values, as more fully set forth in the schedule attached thereto.  The ARM has identified new assets to monetize for the benefit of the estate, to which the LOC approved as subject to incentive fees.  Additionally, the ARM has requested, and upon thorough analysis, review and discussion, the LOC approved a modification of, certain pro forma values to improve alignment.

---

[4] Of this amount, $1.924 million was en route to the bank and is not included in the June 30, 2024 "Ending Cash Balance" set forth in the table on page 4 of this Quarterly Report.

Dated: July 31, 2024  
       New York, New York

Respectfully submitted,

*/s/ Mohsin Y. Meghji*
Mohsin Y. Meghji
Litigation Administrator

*/s/ R. Christian Wyatt*
R. Christian Wyatt
Blockchain Recovery Investment Consortium, LLC
Complex Asset Recovery Manager

**Exhibit A**

**Biographies of LOC Members**

### I.     David Adler

For the past 32 years, Mr. Adler's practice has concentrated in bankruptcy and other insolvency proceedings. He represents a broad range of clients, including debtors, creditors' committees, trustees, secured creditors, indenture trustees, unsecured trade creditors, equipment lessors, landlords and purchasers of assets. Mr. Adler has represented parties in large chapter 11 corporate restructurings including in the chapter 11 proceedings of Eastern Air Lines (indenture trustee), New Valley Corporation (lessor), Dow Corning Corp. (interested third party), PT-1 Communications (official committee), Worldcom (significant creditors), Enron (ad hoc group), Adelphia Communications (significant creditor), Teligent (indenture trustee), Kmart (significant creditor), Lehman Brothers (various contract counterparties), Coudert Brothers (official committee/plan administrator), Tribune (indenture trustee/oversight committee), Sabine Oil (largest unsecured creditor), Samson Resources (chairperson of the official committee), Sun Edison, Inc. (equipment lessors), Ultra Petroleum, Inc. (ad hoc group), Celsius (ad hoc group), Blockfi, Inc. (official committee) and FTX (various creditors). Mr. Adler has also represented trustees appointed under the Securities Investor Protection Act of 1970, involving multimillion dollar liquidations of brokerage firms and issues dealing with the unraveling of major frauds.

### II.    Pamela Corrie

Ms. Corrie is an independent director and business leader with over thirty-five years' experience in complex litigation, restructuring, and service as an independent fiduciary. Her board member experience includes serving as the Independent Manager of BlockFi Wallet LLC, as well as serving on the Boards of Directors at AIG Financial Products, AmSurg HoldCo LLC and

AmSurg LLC, and Fossil Group. Prior to her work as an independent director, Ms. Corrie was a Managing Director at Carl Marks Advisors, Chief Restructuring Officer of ABC Carpet and Home, CEO of Epiq Systems, General Counsel for Risk, Restructuring, Bankruptcy, and Litigation at GE Capital, Americas, and an attorney in the restructuring group at Weil, Gotshal & Manges LLP. Among other affiliations, from 2011-2017, Ms. Corrie was Chair of the International Conflict Prevention & Resolution Banking and Financial Services Committee, where she published thought leadership regarding use of alternative dispute resolution practices. She received a Bachelor of Science in Environmental Science from Stanford University and a Juris Doctorate from the University of California, Los Angeles.

### III. Cameron Crews

Mr. Crews is an independent technical consultant based out of New York. He has over twenty years' experience in technical roles, which include lead software engineer at EHE International, technical co-founder of Greatest Good, web developer for NYU, and software engineer at CAD Sciences. Mr. Crews received a Bachelor of Science in Information Systems from Carnegie Mellon University and a Master's in Business Administration from New York University.

### IV. Vik Jindal

Mr. Jindal is the founder and managing partner of Perpetual Holdings LLC. Mr. Jindal has over twenty-three years' experience as a strategic advisor, investor, restructuring banker and independent director. Prior to founding Perpetual Holdings in 2015, Mr. Jindal was a Managing Director in Restructuring Group at Evercore, and prior to that worked at Rothschild, MFP Investors, and Balyasny Asset Management. Mr. Jindal currently sits on the boards of Scan-Optics LLC and Intrepid USA Inc, and has previously served on a number of boards, including Acrux

2

LLC, PWM Property Management LLC, GT Real Estate Holdings LLC, Swissport International Ltd, Advocate Solutions LLC, and Mesabi Metallics Company LLC.

## V. Deirdre O'Connor

Ms. O'Connor is a managing director for corporate restructuring at Epiq, with over thirty years' restructuring experience in law, government, corporate finance and technology enabled legal solutions. Prior to her role at Epiq, Ms. O'Connor served as a managing director at Wells Fargo Capital Finance where she worked with distressed companies. Ms. O'Connor also served as the United States Trustee for the Southern District of New York and as an Assistant United States Attorney for the District of Connecticut. Among other affiliations, Ms. O'Connor was the inaugural recipient of the IWIRC's Women of the Year in Restructuring Award, is a member of the of the American Bankruptcy Institute where she serves as an Advisory Board Member for its Health Care Program and New York City Bankruptcy Conference, and is an adjunct professor at St. John's University School of Law.

## VI. Mark Robinson

Mr. Robinson is a Major in the United States Army. Mr. Robinson commissioned through Army ROTC and received an educational delay to pursue a career as an Army judge advocate. His duty assignments include: Legal Assistance Attorney, Claims Attorney, Administrative Law Attorney, and Brigade Trial Counsel, 101st Airborne Division, Fort Campbell, KY; Chief of Client Services and Administrative Law Attorney, Northern Law Center, Mons, Belgium; Trial Defense Counsel, Fort Benning, GA and Kuwait; Senor Trial Counsel, Fort Benning, GA; Trial Attorney, Contract Litigation and Intellectual Property Division, USALSA, Fort Belvoir, VA; Branch Chief in the Government Appellate Division of the U.S. Army Legal Services Agency (USALSA) at Fort Belvoir, VA; and Chief, Military Justice, Fort Knox, KY. Mr. Robinson received a B.S. in Financial Economics, summa cum laude, from Carson-Newman University. Mr. Robinson

graduated with an M.B.A. and a J.D. from Samford University where he served as an editor on the Cumberland School of Law, Law Review. Mr. Robinson also graduated with an L.L.M. in Military Law from the U.S. Army Judge Advocate Legal Center and School. Mr. Robinson is a member of the Tennessee Bar and admitted to practice before U.S. Army Court of Criminal Appeals, the U.S. Court of Appeals for the Armed Forces, and the Supreme Court of the United States. Mr. Robinson was a creditor in the Celsius bankruptcy and served as member of the Official Committee of Unsecured Creditors in the chapter 11 cases.

### VII.     Gerard Uzzi

Mr. Uzzi is a Founding Partner and the Chief Legal Officer of Uzzi & Lall, a boutique financial advisory firm. The firm's service areas include restructuring and turnaround, creditor advisory, strategic investment solutions, liquidity creation, project management, and strategic evaluation. Prior to founding Uzzi & Lall, Mr. Uzzi was a partner at White & Case LLP and Milbank LLP. He has extensive experience advising companies, boards of directors, creditors, and investors in chapter 11 cases, and out of court settlements. Mr. Uzzi played a pivotal role in large and complex chapter 11 cases including Lehman Brothers, American Airlines, Adelphia Communications, and Purdue Pharma. Mr. Uzzi has been recognized for his work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.