Trustee of Mind & Body Wellness Trust
*Pro Se*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) ) ) | Case No. 22-10964 |
| Debtors. | ) ) | (Jointly Administered) |

**THE TRUSTEE OF MIND & BODY WELLNESS TRUST JOINS IN SUPPORT OF
THE AUSTRALIAN CORPORATE CREDITOR MOTION AND
FAIR AND EQUITABLE DISTRIBUTION FOR ALL
CORPORATE CREDITORS OF THE SAME CLASS**

TO:   THE HONORABLE MARTIN GLENN,
        CHIEF U.S. BANKRUPTCY JUDGE
        UNITED STATES BANKRUPTCY COURT
        FOR THE SOUTHERN DISTRICT OF NEW YORK
        ALEXANDER HAMILTON U.S. CUSTOM HOUSE
        ONE BOWLING GREEN, NEW YORK, NY 10004

**PLEASE TAKE NOTICE** that on August 13, 2024, The Trustee of Mind & Body Wellness Trust hereby files to join in support of the Australian Corporate Creditor Motion [Docket No. 6892].

**PLEASE TAKE FURTHER NOTICE** that on August 13, 2024, The Trustee of Mind & Body Wellness Trust hereby files to join in support of the motion for Fair and Equitable Distributions for All Corporate Creditors of the Same Class [Docket No. 7575].

### Preliminary Statement

Similar to the Australian corporate creditors, we still have not received any initial distribution as of the date of this filing on August 13, 2024.  Similar to other creditors, we have found the Debtor's and Stretto's responses (or lack thereof) to these difficulties to be grossly inadequate.  Similar to other corporate creditors who have filed motions requesting equitable distributions, we would like to receive liquid cryptocurrency as was promised to us in the Fourth Amended Disclosure Statement [Docket No. 3332] ("Disclosure Statement") that was approved by the court [Docket No. 3337] on August 17, 2023.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

As approved by the "Court Order", the deadline for distributing solicitation packages was August 25, 2023 and the voting deadline for approval of the plan was September 22, 2023 [Docket No. 3337]. Therefore, creditors approved a plan that stated we would be receiving liquid cryptocurrency for our distribution. In fact, we were told that those with loans would receive priority for receiving liquid cryptocurrency back instead of stock [see Docket No. 3332]. Since this corporate account is a single member 401K account that currently only has cryptocurrency exchanges verified and approved for tax deferred retirement purposes, we chose to only receive liquid cryptocurrency back at 100% and did not request any stock. This was reportedly only a 67% distribution of our claim (less than the percentage value for both stock and cryptocurrency), but we strongly felt that we wanted to stay invested in Bitcoin at all times as this was the majority of our holdings.

The plan approved by creditors also stated that distributions would be made "as soon as possible" after January 31, 2024. This was to ensure that creditors received a distribution that is similar to the prevailing price of cryptocurrency at the time of the effective date. Given that we are similarly situated to the Australian Corporate Creditors [Docket No. 6892] and Simba Discretionary Trust [Docket No. 7571 and 7575] in that we have still not received an initial distribution under the plan, the Trustee of Mind & Body Wellness Trust seeks the same treatment as those creditors represented by the motion.

Specifically, we respectfully request that the court:

1. Compel the Debtors to release our initial distribution in Bitcoin obtained at January 16, 2024 prices.
2. Compel the Debtors to release all our future distributions in Bitcoin.
3. If Bitcoin denominated distributions cannot be achieved despite good faith efforts at exhausting other possibilities, then we request for all our distributions to be adjusted based on the prevailing market value of Bitcoin at the time in which each check is mailed.
4. Advise the Debtors to refrain from selling any cryptocurrency marked for distributions in the future without prior contact with affected creditors to allow for properly coordinated and timely distributions.

Respectfully,


Trustee of Mind & Body Wellness Trust

**Liquid Cryptocurrency Distributions are consistent with the Disclosure Statement**

Based on the "Disclosure Statement" that was made available to us while voting on the plan [Docket No. 3332], there was no reason to believe that we would not be receiving liquid cryptocurrency. Page 8 of the "Disclosure Statement" states: *"On or shortly after the Effective Date, the Debtors will distribute Liquid Cryptocurrency (BTC and/or ETH) to creditors entitled to receive Liquid Cryptocurrency under the Plan. The Debtors believe that nearly all of their creditors will be eligible for this form of distribution."* Although they mentioned that they are continuing to explore potential distribution agents, they made it clear that they had a back up plan to distribute liquid cryptocurrency through the Celsius platform if another distribution agent could not be located (including distributions to International Creditors, Corporate Creditors, and Custody and Withhold Creditors).

Page 9 of the "Disclosure Statement" reports: *"If another Distribution Agent cannot be located to make those distributions, the Debtors will keep the Celsius platform open for ninety days after the Effective Date to make distributions to these creditors through the Celsius App (similar to how the Debtors have processed Court-approved withdrawals for certain Custody and Withhold users). The Debtors would prefer to identify a Distribution Agent who can make these distributions to international and corporate creditors because it is expensive to keep the Debtors' platform open to process withdrawals. Ninety days after the Effective Date, any applicable creditor who has not claimed their distribution of Cryptocurrency from the Debtors' platform will receive their distributions, if any, through PayPal or another Distribution Agent, and may receive fiat currency if a Distribution Agent does not have the requisite licenses to distribute Cryptocurrency to that creditor."*

**Greater than 90 days constitutes an unreasonable delay, particularly for fiat distributions**

The "Disclosure Statement" also suggests that they expected a reasonable amount of time for distributions to be 90 days. It was suggested that after 90 days of creditor inaction with regard to claiming their distribution, they might receive fiat currency if a distribution agent did not have the "requisite license" to distribute cryptocurrency to that creditor. Specifically, they chose the deactivation date to be 90 days because of their experience with custody and withhold settlements. Per page 9 of the disclosure statement, *"The Debtors chose a ninety-day period based on their experience enabling withdrawals of Cryptocurrency from the Celsius App for Custody and Withhold Account Holders pursuant to the Custody and Withhold Settlements. Specifically, the vast majority of the value eligible to be withdrawn pursuant to the Custody and Withhold Settlements was withdrawn within ninety days."* **I would like to assert that seven months is an unreasonable amount of time to receive a distribution in fiat currency, as this is not likely to be similar to prevailing market prices when they sold our investments.**

**Change in Distribution Method was a Material Change to the Plan**

The "Court Order" states that the Debtors are authorized to make "non-material" changes to the disclosure statement or plan without further order of the court [Docket No. 3337]. However, it was specifically stated that "requests for modifications to the plan, if any, **must** (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the court on the docket of *In re Celsius Network LLC*, No. 22-10964" (bold emphasis added by the court). It does not appear that the Debtors sought approval from the court or updated the disclosure statement to discuss their intent to treat certain corporate creditors differently.

They certainly did not notify us as creditors that this was even a possibility until it was too late and the damage had already been done in terms of the debtors allegedly having already sold our retirement investments into fiat currency. **The issue of distribution via fiat currency in lieu of liquid cryptocurrency is most certainly a material change to the plan,** as this creates a dichotomy resulting in unequal treatment of similarly situated creditors with implications for significant value discrepancy.

## Unequal Treatment of Creditors

Given that the Debtors describe themselves as "one of the largest Cryptocurrency based finance platforms in the world" per the "Disclosure Statement", they **should have known** that receiving distributions in liquid cryptocurrency constitutes a major advantage over receiving fiat currency. Moreover, given that Celsius was a business specifically servicing the cryptocurrency industry and all creditors deposited cryptocurrency onto the Celsius platform, it is reasonable to assume that all Celsius creditors thereby share a de facto interest in receiving cryptocurrency rather than fiat for their distributions. Creditors were paid in Bitcoin "purchased" based on January 16, 2024 prices of Bitcoin, which was about 42K. Given that they allegedly sold our Bitcoin on January 16, 2024 rather than returning it to us, we cannot ever reinvest at those prices and therefore will receive a significantly lower distribution compared to creditors who were allowed to receive liquid cryptocurrency distributions. In fact, this arbitrary decision on the part of the debtors has essentially priced us out of any hope to reclaim just one whole Bitcoin (whereas we deposited 3 Bitcoin on their platform).

The Debtors unilateral and arbitrary decision to pay 1800 corporate creditors their distribution in fiat currency while 100 of the largest corporate creditors (as well as the individual and international creditors) received liquid cryptocurrency for distributions results in disparate treatment. For avoidance of doubt, I am asserting that those forced to receive fiat distributions were placed at a significant financial disadvantage versus those who were allowed to receive liquid cryptocurrency. While we should have all been treated equally to other "similarly situated customers," they chose to discriminate against smaller corporate accounts. In essence, they prioritized the richest investors at the expense of the poorest investors. **I would argue that the claim value is irrelevant, as the plan administrator has a fiduciary duty to protect interests of all claim holders.**

The smaller corporate accounts are significantly more likely to be unaccredited investors who deserve the advocacy of the court in ensuring equitable treatment. Many of these accounts are small family trusts or individual retirement accounts who were forced to register as corporate accounts due to the fact that they are a tax exempt entity. **Retirement accounts cannot write off losses on taxes despite being robbed of significant retirement savings.** While the smaller accounts may not have as much money as high net worth creditors, they still deserve equal treatment. Those who receive cash are not receiving equitable treatment under the plan since they will not be able to obtain the January 16, 2024 entry prices; instead they have to incur additional transaction fees while also repurchasing Bitcoin at much higher prices (thereby receiving a significantly lower distribution denominated in Bitcoin).

Compounding these losses by forcing some corporate accounts to receive fiat distributions while others benefit from receiving Bitcoin is inexcusable. Losses are further exacerbated by the fact that creditors as a whole likely paid the $1000 Coinbase Prime fee for each of these top 100 corporate creditors (resulting in all our distributions being equally lowered to absorb this $100,000 cost, while only a subset of corporate creditors were able to benefit from this arrangement). However, we are not privy to the details of the Coinbase agreement since it appears to have been sealed on October 6, 2023 [Docket No. 3726]. Regardless, this inequity in distributions was created by the Debtors decision to

close down the platform rather than notify the affected creditors of the urgency to remove funds timely from the platform or their distribution would need to be converted to fiat currency. Since we can't even calculate the financial ramifications of this unequal treatment to ask for damages based on the fact that we still haven't received a distribution, **we humbly request that you compel the debtors to treat us equally to other similarly situated customers by sending our distribution in liquid cryptocurrency based on the effective date prices.** Specifically, Mind & Body Wellness Trust is requesting our distribution to be completely in Bitcoin.

The importance of compelling equal treatment cannot be overstated, as this is only the first of hopefully many distributions that we are eligible to receive. Being forced to receive future distributions in fiat currency will further compound the value discrepancy between our distributions related to other similarly situated creditors. Per the "Supplemental Objection," it appears that the Debtors plan to send additional distributions based on **January 16, 2024 cryptocurrency prices** (emphasis added) to international and corporate creditors [See Docket No. 7535]. This suggests that those who receive cryptocurrency for upcoming distributions would be given the added advantage of locking in a lower entry price for their investments, while those receiving cash will be excluded from receiving the value appreciation of their assets deposited to the Celsius platform many years ago.

### Projected Increase of Bitcoin given Historical Data and Positive Catalysts

The Debtors being a cryptocurrency platform with years of experience throughout multiple Bitcoin halving cycles **should have known** that there was a strong likelihood of rising Bitcoin prices based on historical Bitcoin pricing data in the year following each prior halving. In fact, Celsius creditor Simon Dixon advised the debtor to retain cryptocurrency on their balance sheet so that any appreciation in the value of this crypto could accrue to creditor's recovery [Docket No. 4124]. This was filed in December of 2023, prior to the point in time that the debtors allegedly sold our cryptocurrency into fiat on January 16, 2024. Mr. Dixon asserted *"Creditors lost crypto when Celsius went into bankruptcy—we did not lose dollars—and any appreciation of crypto should accrue to creditors."* He also advised the Debtors that creditors did not want to wait another 6 months for their crypto to be released.

More importantly, Mr. Dixon described *"several very strong drivers of Bitcoin appreciation are driving the entire market, including the highly anticipated approval of spot Bitcoin ETFs expected in Q1 2024 and the Bitcoin halving expected in April 2024."* There were concerns mentioned that the price of Bitcoin could rise higher, and this could also impact recoveries [Docket No. 4124]. A simple search for Bitcoin price history post halving reveals that in each previous halving cycle the USD value of Bitcoin was higher within the year following each halving event.[2] Given that the aforementioned Bitcoin spot ETFs were approved on January 11, 2024, there were even stronger catalysts thought to influence further increase of Bitcoin for this halving cycle year.[3] **Not surprisingly, the price of Bitcoin has risen substantially since January of 2024**, with an opening price of $42,499.34 on January 16, 2024 compared to an opening price of $73,079.38 on March 14, 2024.[4]

---

[2]     https://bitpay.com/blog/analyzing-past-btc-halvings/ (8 December 2023)
[3]     https://www.reuters.com/technology/why-us-bitcoin-etf-is-game-changer-crypto-2024-01-10/
[4]     https://finance.yahoo.com/quote/BTC-USD/history/

**Decision to Sell Creditor Holdings**

This begs the question of why the Debtors would "sell" creditor Bitcoin on January 16, 2024 following recent news of ETF approval several days prior and historical price data suggesting that the prices could go higher. Based on the "Supplemental Objection" the Debtors report they submitted a presentation containing a reference to the 100 corporate creditor limit for the hearing on September 7, 2023. However, **this was not disclosed to us when we were voting on the plan on or around September 20, 2024.** The aforementioned well known Celsius creditor, Simon Dixon, released a series of videos discussing the plan in detail, and these facts all aligned with the "Disclosure Statement." This suggests that he was also not aware of this material change of the plan.

The timing of the alleged selling of cryptocurrency on January 16, 2024 is also questionable based on the fact that the Debtors assert they contacted the top 250 corporate creditors to inquire if they would prefer a cash or liquid cryptocurrency distribution on January 19, 2024 and stipulated a deadline of January 23, 2024 for creditors to indicate their preference. How could they convert cryptocurrency into fiat for distributions prior to choosing which 100 creditors would receive cryptocurrency distributions and which would receive cash? Given that each creditor has different claim amounts, how could they have known how much cryptocurrency to "sell" into fiat currency?

It is interesting to note that the vast majority of crypto distributions have been completed, yet a disproportionate amount of fiat distributions have remain unpaid. This is the opposite of what should have been strived for by the Debtors, as **a timely distribution of fiat is vital for enabling creditors the best chance for reinvesting those dollars "at the prevailing market prices"** as stipulated in the plan. It seems reasonable that the Debtors could have addressed checks to mail out to the 1800 corporate creditors who were relegated to receive cash and mailed these out on or around January 31, 2024. If they sold the assets on January 16, 2024, this would have given them approximately two weeks to prepare these distributions for mailing. Alternatively, they could have begun the preparations for verifying wiring instructions by notifying these creditors in a timely fashion **prior** to actually selling off their assets. Then these creditors could have worked to help quickly coordinate their distributions. Taking the time to explain what was going on in detail and gaining creditor buy in to this change of the plan is essential.

Notifying us via email on February 7, 2024 almost a month after they had allegedly sold our retirement investments into fiat currency was not timely notification of this change to the plan. The fact that the Debtors unilaterally made a decision that negatively impacted our recovery without showing us the respect of prior notification shows a willful disregard for our interests. In fact, **the Debtors significantly discriminated against unaccredited investors with smaller account values while allowing the larger accounts to receive their distributions in a more favorable manner.** According to page 128 of the "Disclosure Statement", *"Pursuant to the Plan and the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan."*

The poor email correspondence (or lack thereof) and seemingly limited motivation to help resolve creditor's distribution issues caused a further degree of stress for corporate creditors. We consistently received generic emails that didn't address any of our issues. This shows a lack of compassion for creditors who were placed in this difficult situation by the Debtors choosing to forego further efforts to secure another distribution partner. Take a moment to imagine the emotional distress for the corporate creditors who were not fortunate enough to be included in the top 100 as they saw their investment thesis succeed after being told their holdings had already been sold into fiat currency.

Significant delays in receiving this cash distribution in order to reinvest it while watching Bitcoin achieve new highs is most notably a significant stressor, particularly when this was your retirement savings.  Some of this stress could be alleviated if we could be assured that we would be getting some of our Bitcoin back.  Even if there were significant delays, this would not matter if our distribution was in Bitcoin as this ensures we benefit equally from the price appreciation of our assets compared to other similarly situated creditors.  **Delays only affect those who were forced to receive cash distributions.**  Case in point is the Mt. Gox distribution that is underway to return Bitcoin to users after a 10 year delay.[5]

I agree with other corporate creditors who have asserted that the Debtors and the Plan Administrator did not use commercially reasonable efforts to make distributions of liquid cryptocurrency as provided for in the plan [Docket No. 7571 and 7562].  I have completed onboarding for two fully verified KYC approved cryptocurrency exchanges for this particular account that was affected by the Celsius bankruptcy (including Kraken).  Neither of these required me to pay any fees, but I understand that there is a fee involved for the Coinbase Prime agreement.  Some have suggested this fee may have been waived, but this is unclear.  Both Kraken and Bitstamp were able to be used as distribution partners in the Mt. Gox reimbursement of Bitcoin, and they have notified users that it will be distributed within 7 to 14 days.[5]  Why couldn't there be more than one distribution partner similar to how they have used both PayPal and Venmo for individual distributions of liquid cryptocurrency?

---

[5]   https://cointelegraph.com/news/kraken-tells-users-mt-gox-reimbursement-funds-received

## **All Creditors were Victims of Fraud**

Celsius CEO Alex Mashinsky stated in an AMA video only 24 hours prior to freezing withdrawals that they had all funds to cover creditor deposits, and he consistently misrepresented the core aspects of Celsius' business and financial condition.[6]  This had important (and unfortunate) implications for determination of asset ownership in these bankruptcy proceedings.  It is important to remember that none of us will be made whole, and we are all suffering as a result of this bankruptcy.  Therefore, it is imperative that all creditors be afforded the same degree of recovery in terms of equitable distribution under the plan.  **Recovery value should be denominated in Bitcoin.**

Throughout this bankruptcy process, we have also been victims of multiple data breaches that have released our private data to criminals seeking to further victimize us through phishing scams.  We were very frustrated with the fact that all corporate account data (including addresses) were made a matter of public record, and no efforts were made to help seal records for individual account holders with retirement accounts (similar to how the individual accounts were handled).  This has disproportionately impacted the small corporate accounts that are seeking equitable treatment under this motion, as the majority of these accounts are single member 401K or SMSF accounts.

---

[6]   https://www.justice.gov/usao-sdny/pr/celsius-founder-and-former-chief-revenue-officer-charged-connection-multibillion

## **Moving Forward to Recovery**

Perhaps the Debtors should take note of the recoveries documented by several other well known cryptocurrency companies.  BlockFi has reported they are returning 100% of eligible claims, though these claims were calculated based on cryptocurrency prices on the date of bankruptcy.[7]  FTX reports

that their customers will receive a 118% recovery (or claim value plus interest).[8]  It is important to note that BlockFi customers are projected to receive final distributions within the next 90 days[7] and FTX creditors are reportedly receiving cash within 60 days of court approval.[8]  **This could potentially put more upward pressure on the price of Bitcoin and widen the disparity for Celsius creditor distributions received in fiat versus cryptocurrency.**  Finally, Gemini has announced that they are returning all customer deposits in kind, meaning that creditors will be made whole in terms of cryptocurrency.[9]  This means that a customer who deposited one Bitcoin into Gemini will receive one Bitcoin back in distribution.  It is also important to note that **the time considered reasonable for distribution based on these other bankruptcy cases are all less than 90 days**.[5789]

---

[7] https://blockonomi.com/blockfi-to-repay-100-of-eligible-client-claims/

[8] https://www.coindesk.com/policy/2024/05/08/nearly-all-ftx-creditors-will-get-118-of-their-funds-back-in-cash-estate-says-in-new-plan/

[9] https://www.coindesk.com/policy/2024/05/29/gemini-announces-full-recovery-of-earn-users-digital-assets/

## Conclusion

**The Debtors decision to change the distribution method for a subset of corporate creditors has caused unfair treatment of similarly situated creditors.**  Specifically, this has placed those creditors who were forced to receive fiat currency at a significant disadvantage compared to those top 100 creditors who were allowed to receive liquid cryptocurrency.  **This has caused a discrepancy in recovery value when denominated in Bitcoin (which is arguably the preference for determining value for users of a cryptocurrency platform).**  Given that all of these corporate creditors deposited cryptocurrency to the platform and expected to receive cryptocurrency back for their distribution based on the available "Disclosure Statement" when voting to support the plan, all corporate creditors deserve equitable treatment under the plan.

For those creditors who have still not received a fiat distribution now that it has been seven months since our assets were converted to cash, **we respectfully request that the court compel the Debtors to release our initial distribution in Bitcoin obtained at January 16, 2024 prices.**  For those who have already received cash distributions that were significantly delayed, we support the request to release further distributions in Bitcoin.

We wish to avoid these difficulties for the next wave of distributions.  Therefore, **we respectfully ask the court to compel the Debtors to release all our future distributions in Bitcoin.** We feel strongly that we would like to retain all Bitcoin possible within this retirement account.  This is why we went through great lengths to obtain single member 401K accounts that were legally allowed to invest in alternative assets for retirement purposes.  We are willing to complete onboarding for additional cryptocurrency exchanges (including Coinbase) if necessary.

Overall, we believe that receiving distributions in Bitcoin is our best chance of attaining even a third of the Bitcoin value of our original account.  **If Bitcoin denominated distributions cannot be achieved, then we request for our distributions to be adjusted based on the prevailing market value of Bitcoin at the time in which the check is mailed.**  We humbly request that the Debtors refrain from selling any cryptocurrency marked for distributions in the future without prior contact with affected creditors to allow for properly coordinated and timely distributions.

The Trustee of Mind & Body Wellness Trust reserves the right to bring forth additional motions regarding other matters related to these proceedings at a later date.