Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |

**PLAN ADMINISTRATOR'S UPDATE ON CASH DISTRIBUTIONS, INCLUDING
NOTICE OF AMENDMENT TO PAYPAL DISTRIBUTION SERVICES AGREEMENT
TO MAKE CASH DISTRIBUTIONS THROUGH HYPERWALLET SERVICE**

At the past several omnibus hearings, counsel to the Post-Effective Date Debtors[2] has provided updates to the Court and parties in interest on the status of distributions under the Plan. Those updates have highlighted some of the challenges in making cash distributions to creditors. First, the Post-Effective Date Debtors had planned on sending checks for most of the Cash distributions under the Plan, but an overwhelming amount of creditors informed the Post-Effective Date Debtors that they were completely unable to cash a U.S. Dollar check in their country. Accordingly, the Post-Effective Date Debtors overhauled their Cash distribution system to provide

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Notice have the meaning ascribed to them in the *Modified Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as amended, supplemented, or modified from time to time, the "<u>Plan</u>").

wire transfers to most creditors scheduled to receive Cash. Unfortunately, the wire transfer process relies on wire instructions provided by creditors who may not be familiar with the wire transfer process. Without accurate wire instructions from creditors, the Post-Effective Date Debtors cannot successfully complete a wire transfer, and the wire transfer process to date has encountered difficulties based on inaccurate or incomplete wire instructions from creditors. International wire distributions are particularly complex because the international banking network has requirements across the SWIFT routing networks, which adds complexities to sending wire transfers globally to the more than 158 countries where the Post-Effective Date Debtors are making fiat distributions. Wire transactions go through a data validation process where additional data is collected, reviewed and when applicable adjusted to try to fix simple errors, before submitting to the Post-Effective Date Debtors' bank to initiate transactions. This manual review process is performed by the Post-Effective Date Debtors with the assistance of their advisors including Stretto, Inc. and Alvarez & Marsal.

The Post-Effective Date Debtors have been working to improve the Cash distribution process so that more creditors can successfully receive their distributions under the Plan. First, the Post-Effective Date Debtors have continued to work to improve their wire transfer instructions and collection process so that creditors can provide more accurate and complete banking information, and that creditors are notified of errors or omissions in their data so that the applicable data can be corrected and the wire can be reattempted. Second, the Post-Effective Date Debtors have begun trying to correct for obvious errors in the data where the risk of an incorrect distribution is very low. These two improvements to the process have been successful—prior to the most recent round of wire attempts, the failure rate of wire transfers was over 65%. But these recent improvements in the wire transfer process have decreased the rate of failure for wire transfers down to under 30%—approximately 70% of wire transfers were successful in this last round of attempts. This improved transfer rate has extended to Australian creditors, too—while certain Australian creditors filed a motion because they had not yet received payment, success rates to Australian creditors have also greatly increased in this last round of wire distributions—with a success rate of approximately 59% to Australian creditors who were scheduled to receive a Cash distribution. The Post-Effective Date Debtors have successfully distributed $5.6 million in USD to Australian creditors, $2.2 million of which has been distributed since July 12, 2024 as the percent of eligible Australian creditors increased by 33.5% in that time period. It is important to note that the Post-Effective Date Debtors continue to face challenges with wires for certain Australian creditors that are rejected due to the intermediary bank that is used to process the transaction and remit funds to the creditor's account at the ultimate beneficiary bank. We are actively working on a resolution to this issue including the rollout of Hyperwallet for these types of cases.

Overall fiat distributions have now been successfully made in 150 countries, via both check by mail and wire transfer. Approximately 70% of the total value for cash distributions currently eligible for distributions has now been successfully distributed.

To be certain, there are still wires that are unsuccessful because the wire instructions that were provided are inaccurate or incomplete, or because the creditor's bank is rejecting or returning the wire transfer. Accordingly, to further improve the process of making Cash distributions, the Post-Effective Date Debtors have been negotiating with PayPal, Inc. ("PayPal"), an existing

Distribution Agent under the Plan, to allow PayPal to make these Cash distributions through PayPal's Hyperwallet Services ("Hyperwallet").

The Post-Effective Date Debtors have expanded PayPal's services to include Hyperwallet to facilitate Cash distributions to creditors under the Plan.[3]  The Post-Effective Date Debtors consulted with the Litigation Administrator, who does not object to expanding PayPal's role to include Hyperwallet to facilitate Cash distributions to creditors.  Hyperwallet's distribution services include a self-service portal where—depending on the creditor's jurisdiction—the creditor can select their preferred payment method (*i.e.*, PayPal or Venmo) and input their payment details directly.  The Post-Effective Date Debtors expect that this will significantly increase the chance of success and reduce the complexities and delays related to collecting correct bank wire information as well as paper check delivery and cashing issues.  That is, the Post-Effective Date Debtors believe that for most creditors, the Hyperwallet service will be quicker and more effective in making Cash distributions under the Plan.[4]

Accordingly, the Post-Effective Date Debtors will work to transition Cash distributions for creditors in eligible jurisdictions to Hyperwallet.  Creditors that will be transitioned to Hyperwallet will receive an email from the Post-Effective Date Debtors notifying them that their distribution has been transitioned to Hyperwallet.  This email will include instructions for creditors on how to activate their Hyperwallet account and collect their Cash distribution.  Creditors will be screened during this process and may be required to provide additional KYC-related documentation and/or a test transaction, in accordance with Hyperwallet's terms of service.

The Post-Effective Date Debtors will also continue to try to complete wire transfers while affected creditors are being transitioned to Hyperwallet.

Hyperwallet is currently expected to be able to facilitate Cash distributions to creditors in 117 jurisdictions, including Albania, Algeria, Andorra, Antigua and Barbuda, Argentina, Australia, Austria, Bahamas, Bahrain, Barbados, Belgium, Belize, Bermuda, Bolivarian Republic of Venezuela, Bosnia and Herzegovina, Botswana, Brazil, Brunei Darussalam, Bulgaria, Canada, Cayman Islands, Chile, Colombia, Costa Rica, Croatia, Cyprus, Czech Republic, Denmark, Dominica, Dominican Republic, Ecuador, Egypt, El Salvador, Estonia, Faroe Islands, Fiji, Finland, France, French Guiana, French Polynesia, Georgia, Germany, Gibraltar, Greece, Greenland, Grenada, Guadeloupe, Guatemala, Honduras, Hong Kong, Hungary, Iceland, India, Indonesia, Ireland, Israel, Italy, Jamaica, Japan, Jordan, Kazakhstan, Kenya, Kuwait, Latvia, Lesotho, Liechtenstein, Lithuania, Luxembourg, Malawi, Malaysia, Malta, Martinique, Mauritius,

---

[3]    More specifically, on or about November 16, 2023, the Debtors and PayPal entered into that certain distribution services agreement (the "PayPal Distribution Services Agreement"), the form of which was attached as Exhibit M to the Seventh Notice of Filing of Plan Supplement [Docket No. 3869].  PayPal was selected as a Distribution Agent under the Plan.  The Post Effective Date Debtors and PayPal have now entered into a supplement to the PayPal Distribution Services Agreement with respect to the terms of PayPal making distributions through Hyperwallet.  A copy of the supplement is attached hereto as **Exhibit A**.

[4]    Of course, individual creditors may ultimately be unsuccessful in redeeming their claims through Hyperwallet for any number of reasons, including that the user is banned by PayPal, unable to complete the required KYC information.

Mayotte, Mexico, Moldova, Morocco, Mozambique, Netherlands, New Caledonia, New Zealand, Nicaragua, Norway, Oman, Palau, Panama, Peru, Philippines, Poland, Portugal, Qatar, Republic of Korea, Reunion, Romania, Saint Kitts and Nevis, Saint Lucia, San Marino, Saudi Arabia, Senegal, Serbia, Seychelles, Singapore, Slovakia, Slovenia, South Africa, Spain, Sweden, Switzerland, Taiwan, Trinidad and Tobago, Turks and Caicos Islands, United Arab Emirates, United Kingdom, United States, Uruguay, and Vietnam.

The Plan Administrator intends to provide a robust report to the Court and all parties in interest regarding the status of distributions, and the Plan Administrator currently expects that this report will be finalized and filed on the Court docket in August. This notice was filed to provide a preliminary update while that report is being reviewed and finalized.

The Post-Effective Date Debtors continue to provide further information regarding distributions to creditors, including regarding distributions through Hyperwallet, through their Knowledgebase site at: https://celsiusdistribution.stretto.com/support/solutions.

### Liquid Cryptocurrency to Cash Conversions

The Post-Effective Date Debtors also expect to transition the distributions of certain creditors who are unable to receive their Liquid Cryptocurrency distribution through a Distribution Agent for a variety of reasons, to Cash. The reasons why a creditor may be unable to receive a Liquid Cryptocurrency distribution include, but are not limited to, because such creditor has been banned by the Distribution Agent, such creditor was rejected by the Distribution Agent at onboarding, the creditor is now in a jurisdiction that cannot receive distributions from a Distribution Agent in Liquid Cryptocurrency, or such creditor cannot otherwise receive a distribution from a Distribution Agent in Liquid Cryptocurrency. Pursuant to the Plan, if a creditor was originally scheduled to receive Liquid Cryptocurrency but there is no Distribution Agent available to make such Liquid Cryptocurrency distribution, the Plan Administrator will convert the Liquid Cryptocurrency that was held for such creditor into Cash as close to the anticipated date of distribution as reasonably practical under the circumstances, and such creditor shall receive the Cash that the Plan Administrator receives from that conversion.[5] For example, if a creditor's distribution was converted from Liquid Cryptocurrency to Cash on August 1, 2024 because the creditor was unable to receive a Liquid Cryptocurrency distribution, the Liquid Cryptocurrency set aside for such creditor would be converted to Cash at approximately $65,249.21/BTC and approximately $3,193.56/ETH (*i.e.*, the prevailing market price of BTC and ETH on August 1, 2024).

The Post-Effective Date Debtors also expect to give creditors eligible to receive distributions in Liquid Cryptocurrency that have not received such distributions or are unable to receive such distributions the option to agree to transition such distributions to Cash under the terms set forth in the prior paragraph. Such creditors include those who have not yet passed KYC with PayPal or Coinbase and other onboarding requirements with a Distribution Agent for Liquid Cryptocurrency. Should those creditors prefer a prompt distribution of Cash rather than continuing to try to onboard with a Distribution Agent, the Post-Effective Date Debtors will soon offer the

---

[5]   *See* Plan, Art. IV.K.1.

option for creditors to agree for their distribution to be transitioned from Liquid Cryptocurrency to Cash at market prices as set forth in the prior paragraph. But any creditor who wishes to continue to try to receive Liquid Cryptocurrency from a Distribution Agent will be able to continue to try to work through the onboarding process with the Distribution Agents.

## **Phishing Attempts**

**PLEASE TAKE FURTHER NOTICE** that the Post-Effective Date Debtors have seen an increase in phishing attempts. Please proceed with caution and review the Post-Effective Date Debtors' Recommendations for Phishing Emails, attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that neither the Post-Effective Date Debtors nor their advisors will **_ever_** contact you by telephone call, social media, or text message to request account information or other personal information absent an (a) order by the Court or (b) on-the-record instruction from the Court. *Please note that in connection with the KYC/AML Compliance process, the Post-Effective Date Debtors, or Stretto will ONLY request an account holder's personally identifiable information and financial information through an email from the domain "@celsius.network" (e.g., complianceteam@celsius.network), or an email from the domain "@stretto.com" (e.g., celsiusdistribution@stretto.com).*

**PLEASE TAKE FURTHER NOTICE** that, if you see any suspicious website domains or receive any uncorroborated email, text message, or telephone call purporting to be from the Post-Effective Date Debtors or their advisors claiming that withdrawals are available or requesting account information, personal information, or payment, we request that you please *immediately* contact the Post-Effective Date Debtors' counsel at CelsiusCreditorQuestions@kirkland.com or the Post-Effective Date Debtors' claims agent at CelsiusInquiries@stretto.com.

**PLEASE TAKE FURTHER NOTICE** that copies of the Phishing Notices, the Disclosure Statement, Plan, the Confirmation Order, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated:  August 19, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

**<u>Exhibit A</u>**

**Amendment to Distribution Services Agreement – Hyperwallet Service Terms Addendum**

## AMENDMENT TO DISTRIBUTION SERVICES AGREEMENT

This Amendment and accompanying Exhibit (this "**Amendment**") to the Distribution Services Agreement dated November 16, 2023, as amended (the "**Agreement**"), is made and entered into as of the last date of execution below (the "**Amendment Effective Date**"), by and among Celsius Network LLC, a Delaware limited liability company, Celsius Network Limited, a company incorporated under the laws of the United Kingdom, Celsius Lending LLC, a Delaware limited liability company, Celsius EU UAB, a company incorporated under the laws of Lithuania, and Celsius Networks Lending LLC, a Delaware limited liability company (together, with each of their successors and assigns as permitted hereunder, "**Celsius**"), Christopher Ferraro, the "**Plan Administrator**," and PayPal, Inc., a Delaware corporation (together with its Affiliates, "**PayPal**"). Celsius, the Plan Administrator, and PayPal are each referred to as a "**Party**" and collectively as the "**Parties**." All capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Agreement (including the Exhibits thereto).

**WHEREAS**, the Parties desire to enter into this Amendment to specify the process for distributing Supported Fiat Currency to certain Claimants; and

**WHEREAS**, the Parties desire to enter into this Amendment to amend certain terms and conditions of the Agreement as set forth below;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth in this Amendment, and intending to be bound, the Parties agree as follows:

1. **Defined Terms**. Section 1.1 is hereby amended to add the following defined term after "Agreement":

"**Applicable Exhibit**" means, with respect to a Distribution of Supported Cryptocurrency, Exhibit A, and with respect to a Distribution of Supported Fiat Cryptocurrency, Exhibit B.

2. **Distributions to Claimants**. Section 2.2 is hereby deleted in its entirety and replaced with the following:

**2.2        Distributions to Claimants**. Pursuant to the processes described in Exhibit A and Exhibit B, Celsius may provide PayPal with instructions to distribute to one or more Claimants a portion or all of the payment owed to such Claimants under the Reorganization Plan in the form of Supported Cryptocurrency or Supported Fiat Currency, as applicable and pursuant to the Applicable Exhibit (each such distribution under this Agreement, a "Distribution"). PayPal shall make Distributions as set forth in the Applicable Exhibit and in accordance with instructions provided by Celsius, *provided* such instructions comply with all requirements under this Agreement (collectively the "Services"). If the instructions from Celsius state that the Claimant's Distribution shall be in the form of Supported Cryptocurrency and the Claimant Resides in a Supported Crypto Jurisdiction, all Distributions to that Claimant shall be in the form of Supported Cryptocurrency. If the instructions from Celsius state that the Claimant's Distribution shall be in the form of Supported Fiat Currency and the Claimant Resides in a Supported Fiat Jurisdiction, such Distribution to that Claimant shall be in the form of Supported Fiat Currency. If the instructions from Celsius state that the Claimant's Distribution shall be in the form of Supported Cryptocurrency and the Claimant Resides in a jurisdiction that is a Supported Fiat Jurisdiction but not a Supported Crypto Jurisdiction, PayPal shall (i) provide prompt notice to Celsius that such instruction cannot be followed and (ii) not act on

such instruction until Celsius, in its sole and absolute discretion, provides revised instructions. No Distributions shall be made to Claimants who Reside in a jurisdiction that is neither a Supported Fiat Jurisdiction nor a Supported Crypto Jurisdiction.

3. **Distribution Portal**. Section 3.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

**3.3**      **Distribution Portal**. PayPal shall develop a dedicated portal (the "**Portal**"), subject to the requirements of <u>Article 6</u>, through which each Claimant initiates the process of receiving certain Services from PayPal, including receiving certain Distributions. Distributions in Supported Fiat Currency may additionally be made outside the Portal through PayPal's Hyperwallet Services.  PayPal shall provide such Services including making such Distributions in accordance with the terms and conditions of this Agreement, including those detailed in the Applicable Exhibit.

4. **Notification of Claimants**. Section 3.4 is hereby deleted in its entirety and replaced with the following:

**3.4**      **Notification of Claimants**. Celsius shall notify Claimants that they may be eligible to receive Distributions in respect of their Celsius claim through PayPal, Venmo, or one of the Payout Methods (as defined in Exhibit B) available via the Hyperwallet Services, as appropriate depending on the Distribution type. This notification shall state that a Claimant must have (i) a PayPal Account to receive Distributions in Supported Fiat Currency in a PayPal Account, (ii) one of the Payout Methods to receive Distributions in Supported Fiat Currency through the Hyperwallet Services,  or (iii) a PayPal Crypto Account to receive distributions in Supported Cryptocurrency in respect of their claim through PayPal or Venmo, as appropriate for the Distribution type, and will provide a web address for the Portal.

5. **Revenue Payments**. Article 4 and Section 4.2 are hereby amended so that each heading is replaced with "Crypto Revenue Payments", and a new Section 4.3 is added after Section 4.2:

**4.3**      **Fiat Revenue Payments**. For the avoidance of doubt, it is understood that Distributions of Supported Fiat Currency shall not result in any obligation of PayPal to make any revenue payments to Celsius.

6. **Fees to Celsius**.  Section 5.1 is hereby deleted in its entirety and replaced with the following:

**5.1**      **Fees to Celsius**. PayPal shall not, directly or indirectly, charge any fees to Celsius for providing any of the Services related to Supported Cryptocurrency described in this Agreement. PayPal shall charge fees to Celsius for providing Services related to Supported Fiat Currency in accordance with the terms of Exhibit B.

7. **Fees to Claimants**.  Section 5.2 is hereby deleted in its entirety and replaced with the following:

**5.2**      **Cryptocurrency Fees to Claimants**.  PayPal shall not, directly or indirectly, charge any fees to Claimants for establishing a New Crypto Account, receiving a Distribution of Supported Cryptocurrency into a PayPal Account, or withdrawing a Distribution from a PayPal Account (including any transfer between accounts, to an external wallet, transfer of fiat currency to an external bank account, or any cash-out from such PayPal Account of fiat currency which was distributed to Claimant), except that (i) PayPal will pass on any applicable

2

cryptocurrency network fees to the Claimant for transfers to an external wallet or address, (ii) if a Claimant elects to convert a Supported Fiat Currency Distribution to another fiat currency, PayPal may convert the allocation at the applicable exchange rate including a spread, (iii) PayPal may charge a premium for expedited or instant withdrawals of fiat currency, and (iv) any subsequent activity by a Claimant, including any conversion of Supported Cryptocurrency or Supported Fiat Currency to any other cryptocurrency or fiat currency, will be subject to PayPal's standard fees, as applicable.

8. **Exculpation**. Section 8.4 is hereby deleted in its entirety and replaced with the following:

**8.4**      The Parties acknowledge that Celsius has obtained approval to include PayPal, its Affiliates, and its and their respective financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals as Exculpated Parties (as defined in the Reorganization Plan) under the Debtors' Reorganization Plan, which exculpation (i) provides for and includes the Services set forth herein and (ii) is effective for the period from the Petition Date through the Effective Date (as each term is defined in the Reorganization Plan) of the Reorganization Plan.

9. **Exhibit A**.   Exhibit A is hereby amended to replace the title with "Supported Cryptocurrency Distribution Process" and remove the last bullet and replace it with the new bullet as follows:

- Distributions in Supported Fiat Currency will be made in accordance with the Hyperwallet Service Terms Addendum ("**Hyperwallet Addendum**"), as set forth in Exhibit B.

10. **Hyperwallet Addendum**.  The Agreement is hereby amended to attach and incorporate the Hyperwallet Addendum as Exhibit B to the Agreement.

11. **Confidentiality**.  The Parties expressly acknowledge that the terms of this Amendment are Confidential Information.

12. **Effect of Amendment**. This Amendment is hereby incorporated into and made a part of the Agreement.  This Amendment comprises the complete and exclusive agreement by and between the Parties with respect to the subject matter hereof, superseding any prior agreements and communications regarding such subject matter.  To the extent that the terms of this Amendment conflict with the terms of the Agreement, this Amendment shall control.  The Parties agree that all terms in the Agreement shall remain in full force and effect to the extent such terms and conditions are not amended hereby.

**[THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first above written.

**PLAN ADMINISTRATOR**

Chris Ferraro

_____
Name:

**CELSIUS NETWORK LLC**

By: _Chris Ferraro_____
Name: Chris Ferraro
Title: Plan Administrator

**CELSIUS NETWORK LIMITED**

By: _Chris Ferraro_____
Name: Chris Ferraro
Title: Plan Administrator

**CELSIUS LENDING LLC**

By: _Chris Ferraro_____
Name: Chris Ferraro
Title: Plan Administrator

**CELSIUS NETWORKS LENDING LLC**

By: _Chris Ferraro_

Name: Chris Ferraro

Title:

      Plan Administrator


**CELSIUS EU UAB**

By: _Chris Ferraro_

Name: Chris Ferraro

Title:

      Plan Administrator


**PAYPAL, INC.**

By: _John Belle_

Name: John Belle

Title:

      VP, NA Enterprise & Global SMB Sales

**EXHIBIT B**
**HYPERWALLET SERVICE TERMS ADDENDUM**

This Exhibit B (Hyperwallet Service Terms Addendum) to the Agreement and the attached schedules hereto provides the terms and conditions under which PayPal will provide the Hyperwallet Services to Celsius.

1. **Scope of Hyperwallet Services**. The "**Hyperwallet Services**" means the payment processing services and related functionality and technology using PayPal's global payout platform and network of financial partners to deliver payout solutions to Celsius who desires to make Distributions of Supported Fiat Currency to Claimants. Hyperwallet Services include Platform Services and Payout Services (each as defined in this Hyperwallet Service Terms Addendum).

    a. **Platform Services**. PayPal shall provide (i) a technology portal which may be accessed through a website, application programming interface/API, embedded in or integrated with Celsius's platform or system, or other method, and may be branded with Celsius's brand or cobranded with the Hyperwallet brand, if applicable, used to perform payment processing to Claimants in Supported Fiat Currency ("**Platform**"), (ii) the development and configuration of a single or multi-level program hierarchy accessible through the Platform and/or iOS/Android mobile apps, as the case may be, (iii) multiple virtual ledgers, such as a ledger which records the funds received by Celsius's bank account to PayPal's FBO account ("**Loading Account**"), and a ledger which records the funds Celsius allocates for distribution to a Claimant ("**Subaccount**").

    b. **Payout Services**. PayPal shall receive funds from Celsius and remit such funds to Claimants in accordance with Celsius's instructions (the "**Payouts**" and each, a "**Payout**"). Payout capabilities are available in multiple currencies and can be implemented using a variety of different methods (depending on country by country availability), such as (but not limited to) a transfer to a Claimant's bank account, load to a prepaid card issued to a Claimant by a third-party issuer ("**Hyperwallet Card**"), load to a closed loop electronic gift card, load to a Claimant's existing debit card, issuance of e-money account (where available), cheque, cash pickup at collection locations provided by third-party money transfer providers (e.g. Western Union), and other payment methods (each a "**Payout Method**" and collectively "**Payout Methods**"), all as supported and made available by PayPal from time to time, and may vary depending on the jurisdiction of the Claimant and where Celsius instructs the Payout to be sent. The Payouts are delivered through PayPal and/or through one of its affiliates, and a network of banks and financial service providers ("**Network Partners**").

2. **PayPal's Obligations and Rights**.

    a. **Scope**. During the Term, PayPal agrees to provide Celsius with the Hyperwallet Services. Celsius is solely responsible for its provision of its products and/or services, and its relationship with and management of the Claimants and their activities. PayPal shall not be responsible for Celsius's products, services or actions of Claimants related thereto. An entity other than Celsius may fund the

Hyperwallet Services provided (i) such entity is an affiliate of Celsius, (ii) Celsius agrees to be responsible for the performance and obligations of such entity under this Hyperwallet Service Terms Addendum, and (iii) such entity is approved by PayPal to fund under this Hyperwallet Service Terms Addendum ("**Funding Entity**").

b.   **Risk and Compliance Practices**. In connection with the Hyperwallet Services, Celsius and Claimants are subject to PayPal's proprietary standard risk and compliance practices which are established to meet PayPal's regulatory, compliance, and risk obligations (as such practices are in place from time to time) ("**Risk and Compliance Practices**"). The Risk and Compliance Practices include PayPal collecting and verifying information (i) of Celsius, including, without limitation, information related to Celsius's ownership and structure, personnel, premises, systems, and any and all information, updates, additions, amendments or adjustments to Celsius's business activities and (ii) in some cases the Claimant's identification details (such as name, address or date of birth). Celsius acknowledges such practices are only a tool to help identify such potential activity and that PayPal does not warrant or represent it will prevent any or all fraud, unlawful or prohibited use of the Hyperwallet Services or ensure against any such losses which may arise therefrom. In the event PayPal is subject to resolving or investigating activity of Celsius that are reasonably suspected to constitute a prohibited use of the Hyperwallet Services which extend beyond PayPal's Risk and Compliance Practices, then Celsius shall reimburse PayPal for reasonable costs incurred by PayPal in resolving or investigating the activity which extends beyond PayPal's Risk and Compliance Practices. In the event PayPal is subject to resolving or investigating activity of Claimants that are reasonably suspected to constitute a prohibited use of the Hyperwallet Services which extend beyond PayPal's Risk and Compliance Practices, then Celsius shall reimburse PayPal for reasonable costs incurred by PayPal provided: (i) such investigation or activity was requested by Celsius, (ii) PayPal acts upon the guidance or instruction of any Network Partner and/or regulator; or (iii) after PayPal's reasonable investigation, PayPal determines use of the Services to be prohibited. In the event such resolving or investigating activity by PayPal extend beyond PayPal's Risk and Compliance Practices, without limiting PayPal's rights under this Agreement, Celsius agrees that PayPal is under no obligation to provide Hyperwallet Services in such instances, including making Distributions to applicable Claimants.

c.   **Suspension or Delay of Services.** PayPal reserves the right to immediately close, suspend, or limit access, with no recourse by, or liability to, Celsius, any portion or all of the Hyperwallet Services where (i) the continuance of such services would violate applicable law or a PayPal policy; (ii) PayPal acts on the instruction of any Network Partner and/or regulator (iii) Celsius has not provided information required under Section 2(b) within the time period prescribed by PayPal, or (iv) Celsius's activities exceed PayPal's risk tolerance.

d.   **Modification of Services**. PayPal may modify the Hyperwallet Services for reasons including, but not limited to, changes in security or regulatory requirements, changes to Network Partners, technological developments, or the introduction of new services by PayPal. In the event the modifications made to the Hyperwallet Services are provided in a manner or on terms other than as expressly envisaged by this Hyperwallet Service Terms Addendum, then such

modifications shall be limited to the purposes of ensuring compliance with the relevant obligation. PayPal will use reasonable best efforts to notify Celsius of any such changes that will materially affect Celsius at least 30 days prior to the implementation date of any such change; however, with respect to changes resulting from or related to security or regulatory requirements, or changes to and required by Network Partners, PayPal will use reasonable efforts to notify Celsius of any such changes that will materially affect Celsius prior to the implementation date of any such change.

## 3. Intellectual Property.

a. **Marks**. Subject to the terms and conditions of this Agreement and solely in connection with the activities contemplated by this Agreement, each Party grants to the other Party a non-exclusive, non-transferable, royalty-free right and license to use, reproduce, distribute and display the other Party's name and Marks (defined below) solely: (a) in the case of PayPal Marks, for purposes of identifying Hyperwallet Services as accepted means of receiving Distributions in Supported Fiat Currency; (b) in the case of Celsius Marks, for the purpose of identifying Celsius as a merchant that uses the Hyperwallet Service as a payout form for Claimants in informational or promotional materials; and (c) for any other purpose in any other publication with the prior written approval of such Party. The appearance of a Party's name and Marks shall be in accordance with such Party's standard Mark guidelines and this Agreement. A Party shall be entitled to demand removal of any use of its Marks if, in its reasonable discretion, the use by the other Party of the Marks tarnishes, blurs, or dilutes the Marks or misappropriates the associated goodwill and such problem is not cured within five (5) business days of the using Party's receipt of notice of the problem. For the purposes of this Agreement, a Party's "**Marks**" means the trademarks of the Party, including registered and common law trademarks, trade names, service marks, logos, buttons, domain names, indicia of origin, and designations owned, licensed or used by the Party in connection with the Hyperwallet Services. The licenses described in this Section shall terminate automatically upon termination of this Agreement.

b. **PayPal Technology and APIs**.

   i. Subject to the terms and conditions of this Agreement, PayPal hereby grants to Celsius a non-exclusive, non-transferable, revocable, non-sublicenseable, limited license to use PayPal Technology (defined below) solely as required and necessary to use the Hyperwallet Services under this Exhibit B (the "**IP License**" and with respect to the APIs, the "**API License**"). As used herein, "**PayPal Technology**" means the following intellectual property or proprietary rights of PayPal (or licensed to PayPal by a third party) used in connection with the Hyperwallet Services: (i) published and unpublished works of authorship, whether copyrightable or not (including without limitation databases and other compilations of information), copyrights therein and thereto, and registrations and applications thereof; (ii) all moral rights in the foregoing (that is, the right to claim authorship of or object to the modification of any work); (iii) all applications, renewals, extensions, restorations and reinstatements of the foregoing, and (iv) all tangible embodiments of the foregoing.

      ii. PayPal shall provide Celsius with tools to access and utilize authorized APIs, which may include a confidential identification code specific to Celsius, a certificate, and/or a user ID ("**API Tools**"). In addition, PayPal shall make available to Celsius its API integration and user guides. Celsius shall comply with PayPal's API integration and user guides in connection with the integration and use of APIs. The API Tools are Confidential Information and property of PayPal, and the API License may be immediately revoked or terminated by PayPal if Celsius shares the API Tools with any third party or otherwise breaches the API License. In connection with Celsius's use of PayPal's APIs, Celsius is prohibited from doing any of the following: (i) selling, transferring, sublicensing, or disclosing Celsius's user ID to any third party (other than third party service providers); (ii) selling, transferring, sublicensing, and/or assigning any interest in the confidential information of PayPal accessed by the APIs; and (iii) collecting any customer's personally identifiable information that is accessed through the APIs without that customer's express permission.

      iii. In the event of degradation or instability of PayPal's system(s) or an emergency, PayPal may, in its sole discretion, change or temporarily suspend Celsius's access to any PayPal Service, including but not limited to the APIs and databases and/or information accessed from the APIs, in order to minimize threats to and protect the operational stability and security of PayPal's systems. Notwithstanding the foregoing, PayPal shall notify Celsius of suspension of the Hyperwallet Services, except that such notice shall not be required where in the reasonable opinion of PayPal such notice would compromise security of the PayPal systems or performance of the Hyperwallet Services.

      iv. As between PayPal and Celsius, PayPal retains all right, title and interest in and to the Hyperwallet Services, PayPal Technology, and all intellectual property rights therein and any modifications, improvements or derivatives thereto or thereof. Except as licensed herein, this Exhibit B does not transfer any intellectual property rights. There are no implied licenses under this Exhibit B, and any rights not expressly granted to Celsius in this Exhibit B are reserved by PayPal or its suppliers. Celsius shall not directly or indirectly reverse engineer, decompile, disassemble or otherwise attempt to derive source code or other trade secrets from the Hyperwallet Services. All rights and licenses granted to Celsius in the Hyperwallet Services and the intellectual property shall terminate automatically and revert to PayPal upon termination of this Agreement or upon termination of any Hyperwallet Service to which the rights and licenses relate.

   c. **Celsius License Grant**. Subject to the terms and conditions of this Agreement, Celsius grants PayPal a limited, non-exclusive, non-transferable, non-sublicensable, royalty-free license, during the Term, to use Celsius's technology, products, and services solely to the extent necessary or required by PayPal to provide the Hyperwallet Services under this Exhibit B.

4. **Celsius Obligations.**

a. **Unauthorized Use**. Celsius shall ensure that Celsius and Claimants do not use the Hyperwallet Services offered therein for compensating employee wages, any unlawful, fraudulent or improper activity or in violation of PayPal's Acceptable Use Policy found on the PayPal Site website[1] ("**PayPal AUP**"), as may be amended from time to time in accordance with its terms.  In the event that changes to the PayPal AUP reduce Celsius's rights or increase Celsius's responsibilities and Celsius does not agree with such changes, Celsius shall notify PayPal ("AUP Notice") promptly following actual awareness of such changes by Celsius and the Parties will attempt to find a mutually-agreeable resolution within a commercially reasonable period.  In the event that such issue cannot be satisfactorily resolved within commercially reasonable period following escalation, Celsius can provide a notice of termination with such termination effective up to ninety (90) days from PayPal's receipt of the AUP Notice.

b. **Security.**

   i. **Unauthorized Access**.  Celsius shall use commercially reasonable best efforts to secure and defend its systems and the Celsius's existing identity assertion provider ("an IdP"), as applicable, against unauthorized access to, or use of, passwords, unique Claimant usernames, the private key(s) used for cryptography, and other authentication data (the "**Authentication Data**").  PayPal is not responsible for damages or losses incurred by Celsius or Claimant arising from unauthorized access or fraudulent use of the Hyperwallet Services; however, the foregoing shall not excuse PayPal from liability under this Agreement for PayPal's own gross negligence, willful misconduct, or fraud.

   ii. **Celsius Policies and Procedures**. Celsius shall adopt and abide by an access control policy, which shall set forth the Celsius rules and procedures governing creation, storage, modification and disposal of all Authentication Data. Should Celsius fail to adopt access control procedures that are reasonably designed to meet with industry standards, PayPal may, in its sole discretion, suspend certain integrations such as a web-based single-sign on functionality until such time that the Parties may mutually agree on suitable policies and procedures.

   iii. Celsius shall restrict access to the Hyperwallet Services to employees or other representatives authorized by Celsius and approved by PayPal. Celsius shall be solely responsible for administering and monitoring the use of its personalized security and authentication protocols for accessing the Hyperwallet Services ("**Security Protocols**") by its administrators. PayPal shall not be responsible for any damages resulting from failure by Celsius to protect the confidentiality of its Security Protocols.

c. **Notice to Claimants**. Celsius is responsible for ensuring (i) PayPal has the necessary rights to contact Claimants via email or text in connection with the performance of the Hyperwallet Services, and (ii) that each Claimant that is to

---

[1] https://www.paypal.com/us/webapps/mpp/ua/acceptableuse-full?locale.x=en_US;

receive a Distribution through the Hyperwallet Services is informed of any Fees, or increase in Fees, that may apply to funds in Subaccounts, Payouts received by a Claimant, and transactions initiated by a Claimant, if applicable and from time to time.

d. **Terms and Conditions.** Claimants are subject to terms and conditions as set forth on the Hyperwallet website[2] ("Terms and Conditions"). In the event a Claimant is not required to sign up through the Hyperwallet Website, Celsius shall present the Hyperwallet Privacy Policy[3] and the Terms and Conditions to the Claimant.

e. **Integration.** Celsius agrees to integrate Hyperwallet Services as instructed by PayPal from time to time, including integration requirements and best practices documentation made available to Celsius. In addition, Celsius agrees to update its integrations of the Hyperwallet Services within sixty (60) days after being notified of any release of an updated version of such integration, or at a later date mutually agreed upon by the Parties.

5. **Transfer and Remittance of Funds**

a. **Authorization**. During the Term, Celsius authorizes PayPal to receive and remit funds in accordance with Celsius's Distribution instructions.

b. **Transfer and Remittance of Funds**. Celsius shall transfer, or arrange to have transferred by a Funding Entity, funds from a bank account that is pre-approved by PayPal and in accordance with PayPal's funding instructions provided to Celsius ("**Funding Account**"), to PayPal with sufficient time for processing in accordance with agreed upon procedures with PayPal. PayPal shall remit and process funds in accordance with the instructions of Celsius or otherwise in accordance with this Hyperwallet Service Terms Addendum. All funds received from Celsius shall be held in pooled accounts designated for the benefit of Celsius and other similar users of the Hyperwallet Services and segregated from PayPal's operating accounts until such funds are transferred as Distributions, returned to Celsius, or otherwise sent to a government authority as required by applicable law. Notwithstanding anything in this Hyperwallet Service Terms Addendum to the contrary, the Parties acknowledge and agree that any and all funds received by PayPal are taken to be held in trust by PayPal until funds are transferred to a Payout Method and Celsius is not entitled to withdraw such funds at any time, except as permitted by PayPal (which permission shall not be unreasonably withheld or delayed). PayPal shall use its best efforts to assist Celsius in stopping, reversing or interrupting any improper transfers or payouts upon request by Celsius.

c. **Interest**. Celsius acknowledges and agrees that it will not receive interest or other earnings on the funds held by PayPal.

d. **Unclaimed Property**. To the extent remaining amounts deposited with PayPal for payment to Claimants satisfy the presumption of abandonment in an

---

[2] Hyperwallet Terms and Conditions
https://pay.hyperwallet.com/hw2web/consumer/page/legalAgreement.xhtml
[3] Hyperwallet Privacy Policy: https://www.hyperwallet.com/privacy-policy/

applicable jurisdiction ("**Unclaimed Property**"), PayPal shall return such amounts to Celsius and, solely to the extent required by law or if unable to return amounts to Celsius, PayPal shall report and remit the Unclaimed Property to the appropriate state or federal government agency appointed to take custody of such property for the benefit of the intended recipient of the funds. PayPal's obligations under this provision are solely related to the tracking, reporting, and remitting of the Unclaimed Property arising from funds deposited with PayPal by Celsius for Claimants. PayPal does not undertake any obligation to track, report, or remit any other types of property that are otherwise attributable to Celsius outside of the Hyperwallet Services. PayPal shall report and remit Unclaimed Property associated with Celsius's programs under PayPal's Federal Employer Identification Number, in PayPal's capacity as constructive holder of the property unclaimed by Claimants. PayPal shall determine abandonment periods associated with unclaimed Distributions in accordance with the dormancy periods applicable to the property types set forth in applicable law. Celsius shall designate the property type applicable to the unclaimed payments prior to establishing a payment program. If Celsius does not elect a property type, Celsius agrees that PayPal may reasonably classify unclaimed Distributions within a property type in its sole discretion. To the extent applicable laws require due diligence procedures to attempt to unite the Unclaimed Property with the property owner, PayPal shall conduct necessary due diligence to notify the intended recipient that they have property owed to them. To the extent funds held in Celsius Subaccounts are determined to be Unclaimed Property, PayPal shall reverse the balances reflected in the Subaccounts constituting Unclaimed Property and remit the aggregate total of the Unclaimed Property directly to the government authority authorized to safeguard it. Following remittance of the Unclaimed Property to the appropriate government authority, PayPal shall close the Subaccounts identified as abandoned.

6. **Financial Terms**. The fees set forth in Schedule 2 to this Exhibit B (Financial Terms) shall apply to the Hyperwallet Services set forth herein and, in any documents, incorporated by reference in this Hyperwallet Service Terms Addendum.

7. **Payment Instructions and Data**

   a. **Payment Instructions**. Celsius acknowledges that PayPal is reliant on Celsius and the Claimants, as the case may be, for direction in making as to the extent a Distribution is processed. Consequently, PayPal shall not be liable if a Claimant makes a claim or complaint with regards to PayPal's actions to the extent that such actions result from instructions received from Celsius or a Claimant.

   b. **Right of Authority to Share**. Celsius shall provide, or shall enable PayPal to collect, Merchant Data (as defined by the Hyperwallet Data Protection Addendum and as described in Section 7.d below) that PayPal deems necessary for PayPal to provide Hyperwallet Services, and in the manner as the Parties agree. With respect to any Merchant Data transferred by Celsius to PayPal, Celsius covenants and agrees it is permitted and authorized to transfer such Merchant Data to PayPal, that Celsius has obtained all necessary consents from the data subjects to transfer such Merchant Data to PayPal, and that PayPal may

process such Merchant Data in accordance with this Hyperwallet Service Terms Addendum.

c. **Errors in Distribution Instructions or Merchant Data**. Celsius shall immediately notify PayPal of any errors, omissions, or inaccuracies in Distribution instructions or Merchant Data of which Celsius or Claimant becomes aware, but in no event later than sixty (60) days from when PayPal initiates the Payout, and Celsius agrees to promptly correct any such errors or omissions, and pay all associated reasonable and documented costs, if any. Celsius hereby assumes all liability for any losses or costs incurred by either Celsius or Claimant as a result of errors or omissions in the Merchant Data or Distribution instructions data provided by Celsius or Claimant, as the case may be.

d. **Data protection**. Notwithstanding the Data Processing Agreement made a part of the Agreement with respect to the distribution of Supported Cryptocurrency, the data protection terms applicable to these Hyperwallet Services Terms are set out on the Hyperwallet website, titled "Data Protection Addendum,"[4] and are hereby incorporated by reference into this Hyperwallet Service Terms Addendum.

8. **Payment Services Directive and Commercial Banking Agreements**.

a. **Disapplication of Certain Payment Services Provisions.** The Parties to the Agreement each agree that, if and to the extent that the provisions of any Services at any time is subject to any other legislation in any jurisdiction ("**PSD Laws**") implemented for purposes of transposing the EU's Payment Services Directive (Directive 2015/2366/EU) ("**PSD2**"):

i. to the extent permitted by applicable law and waivable by the Parties, the following provisions of PSD2, as transposed by any PSD Laws, shall will not apply to this Hyperwallet Service Terms Addendum or to the provision of such Hyperwallet Services: Articles 40 (Charges for information), 41 (Burden of proof on information requirements), 42 (Derogation from information requirements for low-value payment instruments and electronic money), 44 (Prior general information), 45 (Information and conditions), 46 (Information for the payer and payee after the initiation of a payment order), 47 (Information for payer's account servicing payment service provider in the event of a payment initiation service), 48 (Information for the payer after receipt of the payment order), 49 (Information for the payee after execution), 51 (Prior general information), 52 (Information and conditions), 53 (Accessibility of information and conditions of the framework contract), 54 (Changes in conditions of the framework contract), 55 (Termination), 56 (Information before execution of individual payment transactions), 57 (Information for the payer on individual payment transactions), 58 (Information for the payee on individual payment transactions), 59 (Currency and currency conversion), 60 (Information on additional charges or reductions), 62(1) (Charges applicable), 64(3) (Consent and withdrawal of consent), 72 (Evidence on authentication and execution of payment transactions), 74 (Payer's liability for unauthorised payment

---

[4] Data Protection Addendum: https://www.hyperwallet.com/data-protection-addendum/

transactions), 76 (Refunds for payment transactions initiated by or through a payee), 77 (Requests for refunds for payment transactions initiated by or through a payee), 80 (Irrevocability of a payment order), and 89 (Payment service providers' liability for non-execution, defective or late execution of payment transactions); and

ii. where transactions are neither euro nor pound sterling transactions, the requirements regarding execution and time-value dating set out in any PSD Laws relating to Articles 83 to 85 of the Payment Services Directive will not apply to this Hyperwallet Service Terms Addendum or to the provision of such Hyperwallet Services, to the extent permitted by applicable law.

b. **ACH Origination Agreement**. The National Automated Clearing House Association ("**NACHA**") operating rules applicable to ACH payments ("**ACH Rules**") states that the origination of ACH transactions through financial institutions requires the institution to have an ACH origination agreement with the entity that is originating an ACH credit or debit as an "Originator." In connection with the Hyperwallet Services, PayPal serves as Celsius's agent and intermediary in initiating ACH credits and debits to Claimants. The Network Partners have determined that under ACH Rules PayPal acts as a "**Third-Party Sender**." In lieu of Celsius entering into ACH origination agreements directly with each of the Network Partners in their capacity as "Originating Depository Financial Institutions" under ACH Rules, those Network Partners require PayPal to include certain terms in this Hyperwallet Service Terms Addendum to address ACH Rules relative to the origination of ACH entries to be submitted by PayPal on Celsius's behalf. Accordingly, Celsius and PayPal agree that: (a) the origination of ACH entries in connection with the Hyperwallet Services is governed by the ACH Rules; (b) Celsius is the Originator of such entries; (c) PayPal is the Third Party Sender to the extent and so long as Celsius does not otherwise have an ACH origination agreement with the relevant Network Partner; (d) Celsius agrees to be bound by the ACH Rules applicable to its role as Originator of Entries, (e) Celsius authorizes PayPal and its ODFI to originate ACH entries on its behalf to Claimant's account that are submitted to PayPal pursuant to this Hyperwallet Service Terms Addendum; and (f) in its capacity as Third Party Sender and agent of Celsius for the purposes of submitting ACH entries, PayPal and its ODFI may from time to time audit data and/or refuse to register US bank accounts or process ACH transactions for Celsius where the data is insufficient, incorrect or may not comply with the ACH Rules. Further, PayPal and Celsius agree that credit entries using standard entry codes CCD, CTX, and non-consumer IAT that are originated in connection with the Hyperwallet Services are subject to the ACH Rules and, where applicable, UCC 4A.

c. **Commercial Entity Agreement.** Original Credit Transactions ("**OCT**") are processed by the acquiring financial institution providing card processing services to PayPal. OCT's via PayPal are subject to the terms prescribed by the acquirers and if Celsius will be making payments via OCT's, Celsius agrees to be bound by the terms of the applicable Commercial Entity Agreement between Celsius and the financial institution providing the card services to PayPal as set

out on the Hyperwallet website, titled "**Commercial Entity Agreement**,"[5] and referenced on Schedule 1(Sales Channel) under the heading Applicable Bank Terms".

**9. Taxes**

    **a.** **Withholding.** Celsius acknowledges and agrees that Celsius is in the best position to determine the nature of the funds delivered through Celsius's use of the Hyperwallet Services and that such funds are not subject to any information reporting obligations under IRC Section 6050W. If such funds are subject to withholding under IRC Section 3406 or other applicable U.S. or non-U.S. law, Celsius hereby accepts responsibility for such withholding obligations and agrees to furnish to PayPal such documents and certifications related to its withholding obligations upon PayPal's reasonable request.

    **b.** **Tax Reporting Certification.** Celsius represents and warrants it is not a PSE (as defined below) and further that Celsius is not contracting with PayPal to settle payments reportable under Internal Revenue Code (IRC) Section 6050W.

        **i.** Should Celsius's status change and Celsius becomes a Payment Settlement Entity ("**PSE**"), Celsius shall inform PayPal with a reasonable time period of becoming a PSE and represents and warrants that as a PSE it will undertake all reporting obligations under IRC Section 6050W related to Form 1099-K reporting obligations or any other applicable information reporting obligations with respect to the settlement of Payouts facilitated by PayPal as part of Hyperwallet Services under the Agreement, as well as any other tax reporting or withholding obligations of such payments, and provide confirmation to PayPal, upon request, that it has complied with applicable reporting obligations under IRC Section 6050W or any other applicable information reporting obligations and will undertake and comply with all backup withholding obligations under IRC Section 3406. Celsius agrees to furnish to PayPal, upon request, documents and certifications related to its reporting and withholding obligations upon PayPal's reasonable request.

        **ii.** Notwithstanding the above, the Parties agree to cooperate with each other to the extent and in the event of the application of IRC Section 6050W and other tax information reporting obligations under IRC Chapters 3, 4, 61 and IRC Section 3406, including timely providing to the other Party any reasonably requested information that may be in the other Party's possession, including, as applicable, payment transaction details, payee demographics, and payee Tax Identification Numbers, in an electronic format acceptable to such requesting party, in order to assist such Party with the timely fulfilling of its respective reporting or responding to any inquiry from a taxing or regulatory authority with respect to its reporting requirements (if any).  Further, in the event PayPal determines it must undertake the reporting obligations under IRC 6050W or any other applicable information reporting obligations for the Payouts it facilitates on Celsius's behalf, whereupon PayPal will use reasonable efforts to inform and consult with Celsius, Celsius

---

[5] Commercial Entity Agreement: https://www.hyperwallet.com/cea-bancorp/

acknowledges PayPal may file certain forms to tax authorities regarding such Payouts and furnish such forms to Claimants as required under IRC Section 6050W or any other applicable information reporting requirements. In such event, if Celsius does not provide PayPal information necessary to perform such reporting under IRC Section 6050W or any other applicable information reporting obligation with respect to the Payouts pursuant to the preceding tax reporting cooperation provision, PayPal may in its discretion, limit Celsius's account and prevent Celsius from sending any payments to payees. PayPal reserves the right to assess Celsius fees and costs associated with such potential tax reporting and withholding obligations (if any).

c.  **Sales Taxes.** The Parties agree as follows in relation to expenses and taxes:

   i.  Except as otherwise specified herein, or as otherwise mutually agreed upon by the Parties, each Party will bear its own costs of performing under this Hyperwallet Service Terms Addendum.  Each Party will be also responsible for any and all Excluded Taxes that it is liable for under applicable law.

   ii.  Unless otherwise expressly specified in this Hyperwallet Service Terms Addendum, all amounts payable by Celsius to PayPal due under this Hyperwallet Service Terms Addendum are considered exclusive of applicable Taxes.  The amounts payable by Celsius to PayPal under this Hyperwallet Service Terms Addendum will therefore be increased by the amount of the applicable Taxes, such as sales, use, value-added, goods and services, harmonized, export or import taxes or customs duties, unless: (i) otherwise expressly specified herein, or (ii) PayPal has determined that there is a lawful exemption from such Taxes. If PayPal is required to add such Taxes to the amounts due under this Hyperwallet Service Terms Addendum, it will issue a valid tax invoice to Celsius, made out in accordance with applicable legislation.

   iii.  Celsius confirms it will not withhold any Taxes on amounts payable by Celsius to PayPal unless required under applicable law. In the event that Celsius's relevant Tax authorities require that Celsius will withhold tax on amounts payable to PayPal or make any deduction in relation hereto, the amounts payable to PayPal by Celsius will be increased by such additional amount to ensure that PayPal receives the full amount which would have been received had there been no deduction.  Upon request, Celsius will provide to PayPal a copy of the tax receipt documenting payment of the tax to the relevant authorities.  Upon reasonable request, PayPal will provide such forms, certifications or other documents as Celsius may request in order to reduce or exempt withholding taxes.

   iv.  For the purposes of this Clause, ("**Taxes**") means all federal, state, provincial, territorial, county, municipal, local or foreign taxes, including but not limited to sales, use, license, excise, good and services, value added, stamp or transfer taxes, duties, imposts, levies, assessments, tariffs, fees, charges or withholdings of any nature whatsoever levied, imposed, assessed or collected by a taxation authority together with all interest, penalties, fines or other additional amounts imposed in respect thereof, but for greater certainty excludes

any of the foregoing which are (i) based on gross or net income, (ii) franchise taxes, or (iii) property, personal property or rental taxes (collectively "**Excluded Taxes**").

**10. Miscellaneous**

a. **WAIVER.** CELSIUS WAIVES ANY BREACH OF CONTRACT OR OTHER CLAIM IT MAY HAVE AGAINST PAYPAL DIRECTLY OR INDIRECTLY (INCLUDING THROUGH ONE OR MORE CLAIMANTS) IF, ACTING ON THE INSTRUCTION OF ANY NETWORK PARTNER AND/OR REGULATOR, PAYPAL REFUSES TO EXECUTE CERTAIN TRANSACTIONS ON CELSIUS'S BEHALF AND/OR MANDATES THE DISRUPTION OF THE HYPERWALLET SERVICES OR ANY COMPONENT THEREOF IMMEDIATELY AND WITHOUT NOTICE.

b. **Survival.** Sections 3, 4, 5, 7, 8, and 9 of this Hyperwallet Service Terms Addendum shall survive termination of the Hyperwallet Service Terms with respect to activity arising from transactions originated prior to such termination.

c. **Notices**. Unless you're communicating with us about a matter where we've specified another notice address, written notices to PayPal must be sent by postal mail to:

PayPal, Inc., Attention: Legal Department, 2211 North First Street, San Jose, California 95131.

d. **JURY TRIAL WAIVER**. PAYPAL AND CELSIUS IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO OR ARISING UNDER THIS AGREEMENT.

e. **Order of Precedence**. In the event of any conflict between this Hyperwallet Addendum, on the one hand, and the online agreements or policies incorporated thereby (collectively, "Additional Documents"), on the other hand, the terms of this Hyperwallet Addendum shall prevail and take precedence.

## SCHEDULE 1
## SALES CHANNELS

| Sales Channel (URL, application, etc.) | Services | Account Nationality | Responsible Company Entity | Celsius Entity | Launch Date | Governing Law | Jurisdiction | Applicable Terms | Applicable Bank Terms |
|---|---|---|---|---|---|---|---|---|---|
| N/A | Hyperwallet Services | United States | PayPal US | Celsius Network LLC | ASAP | The State of California | Santa Clara County, California (exclusive) | N/A | https://www.hyperwallet.com/cea-bancorp/ |

## SCHEDULE 2
## FINANCIAL TERMS

### 1. FEES

#### 1.1. General.

(a) PayPal may offset any funds otherwise payable to Celsius with respect to the Services by amounts owed by Celsius to PayPal pursuant to this Agreement.

#### 1.2. Hyperwallet Service Fees.

(a) Celsius shall pay PayPal the Fees set forth in the table below as applicable.

(b) To the extent approved by Celsius (such approval withdrawable at any time in Celsius's sole discretion), Celsius hereby authorizes PayPal to collect fees from Subaccounts as set out in the table below. All other fees will be invoiced on a monthly basis. If such approval is withdrawn, PayPal shall invoice Celsius for such Fees and Celsius shall pay PayPal the Fees set forth in the table below as invoiced by PayPal. PayPal may adjust the fees any time by providing at least sixty (60) days' prior written notice to Celsius; provided that any adverse adjustment in fees shall entitle Celsius to terminate this Agreement by providing written notice of termination to PayPal within sixty (60) days following the date of notice to Celsius.

(c) Celsius agrees that PayPal may, upon approval of Celsius, charge for any service/expense not specified in the table below provided at the request, or on behalf, of Celsius, and Celsius agrees to pay for such services and expenses as required by PayPal.

(d) If PayPal converts currency, it will be completed at the transaction exchange rate PayPal sets for the relevant currency exchange. The transaction exchange rate is adjusted regularly and includes a Foreign Exchange Fee (in addition to the interbank rate) applied and retained by PayPal on a base exchange rate to form the rate applicable to your conversion. The base exchange rate is based on rates within the wholesale currency markets on the conversion day or the prior Business Day; or, if required by law or regulation, set at the relevant government reference rate(s).

### SCHEDULE 2.A – FEES

| Description | Fee (USD) | Collection Method |
|---|---|---|
| **Local Bank Transfer Fee**[1]<br>A transfer of funds from a Subaccount to a Claimant account or other Payout Method using a local clearing network. | $0.95 per transfer denominated in USD, CAD, HKD, AUD, EUR, GBP or MXN. $3.95 per transfer in all other currencies. | Invoice |
| **Wire Transfer Fee**[1]<br>A transfer of funds from a Subaccount to a Claimant account using a wire network. | 2% of the transaction amount (minimum of $10/maximum of $30) | Subaccount |
| **PayPal Transfer Fee**[1][2]<br>A transfer of funds from a Subaccount to a Claimant's PayPal Account. | $0.25 per transfer | Invoice |
| **Venmo Transfer Fee**[1][3]<br>A transfer of funds from a Subaccount to a Venmo Account registered by the Payee. | $0.25 per transfer | Invoice |
| **Return Fee**<br>A fee charged in connection with any incorrect Distribution instructions provided by Celsius or a Claimant. | $10.00/return | Invoice |
| **Foreign Exchange Fee**[4]<br>The basis points above the interbank rate charged to PayPal for completing a transaction related to foreign currency exchange.<br><br>**Basic** means the following regions and the corresponding currency of such regions: United States (USD), Canada (CAD), Hong Kong (HKD), Australia (AUD), SEPA countries (EUR), United Kingdom (GBP), and Mexico (MXN).<br><br>**International** means all regions available through the Hyperwallet Service outside the regions in the Basic list and approved upon onboarding of Merchant. | Basic: 2% transaction amount<br>International: 4% transaction amount | Subaccount |

Additional fees may be assessed directly to Claimants for certain Distribution types and/or functionality available through the Platform.

(1)    These services are available in select regions. Please consult your sales representative for further information. Availability may change from time to time based on applicable regulatory requirements and changes in financial network partner offerings.

(2)    Use of this service is subject to the terms and conditions of the PayPal User Agreement between PayPal and the Claimant.

(3)    Use of this service is subject to the terms and conditions of the Venmo User Agreement between Venmo and the Claimant.

      The currencies described in the FX Categories are subject to change at any time.

**<u>Exhibit B</u>**

**Post-Effective Date Debtors' Recommendations for Phishing Emails**

## **<u>Post-Effective Date Debtors' Recommendations for Phishing Emails</u>**

**Be aware of the sender's email address and URLs contained in their messages.** Phishing emails will exploit your trust, expectations, and complacency with interacting with seemingly trusted sources. The first step is always to verify the Email Sender's Identity, and without clicking on the links in the email, confirm where they are directed to.

We recommend users proactively "whitelist" official emails by creating email filters/tags or automation that will only tag Stretto or Celsius emails from legitimate sources.

**Review the below list of official websites and email addresses.** You should disregard anything not coming from these email addresses or proceed with extreme caution.

Legitimate URLs contained in messages, and links contained:

- celsius.network
- stretto.com
- hello@celsius.network
- app@celsius.network
- claims@distributions.celsius.network
- complianceteam@celsius.network
- <u>do-not-reply@updates.celsius.network</u>
- no-reply@cases-cr.stretto-services.com
- celsiusdistribution@stretto.com
- cases.stretto.com
- https://celsiusnetwork.medium.com/
- https://cases.stretto.com/Celsius
- ionicdigital@odysseytrust.com
- do.not.reply@hyperwallet.com
- CelsiusCreditorAnswers@kirkland.com
- CelsiusCreditorQuestions@kirkland.com
- CelsiusLitigationAdmin@m3-partners.com

Note the specific punctuations, and don't be tricked by similar but differently worded or punctuated URLs using dashes instead of periods. Remember some URL and website addresses may seem similar to the above, but you must ensure they are any of the ones shown above.

**Check the sender's email address and where the email links will take you.** Examine the sender's email address carefully. Phishers often use similar-looking addresses to mimic legitimate ones. Look for misspellings, extra characters, or unusual domain names. Verify email content and formatting.

**Be skeptical of emails with poor grammar, spelling errors, or unusual formatting.** Legitimate organizations usually maintain a professional standard in their communication.

**Hover over links.** If on your computer, hover your mouse over any links in the email to preview the destination URL. Ensure it matches the expected website and is not a disguised link pointing to a phishing site.

**Check for generic greetings.**  Phishing emails often use generic greetings like "Dear Customer" instead of addressing you by name.  Legitimate organizations typically use your name in their communications.

**Beware of urgent or threatening language.**  Phishing emails often create a sense of urgency or use threatening language to manipulate recipients into taking immediate action.  Be cautious if an email demands urgent attention.

**Verify unexpected attachments.**  Avoid opening unexpected attachments, especially if they come from unknown or unexpected sources.  Malicious attachments may contain malware or phishing links.

Do not open these links for the first time on a mobile phone, as a mobile phone does not allow you to hover over links and ensure the stated link and the hyperlink match.

**Examine the email signature.**  Legitimate emails from companies usually include a consistent and professional email signature.  Lack of contact information or inconsistencies can be red flags.

**Enable two-factor authentication (2FA) everywhere possible.**  Implementing 2FA adds an extra layer of security, making it more challenging for attackers to gain unauthorized access even if they obtain your credentials through phishing.

**Use email security features.**  Many email providers offer built-in security features.  Enable features like spam filters and phishing detection to enhance your email security.

**Educate yourself and stay informed.**  Stay informed about the latest phishing techniques and trends.  Regularly update yourself on common phishing tactics to recognize new and sophisticated attempts.  Review the Celsius Knowledge Base site, as well as the official docket on Stretto to keep yourself up to date.

**https://celsiusdistribution.stretto.com/support/solutions**
**https://cases.stretto.com/Celsius**
**https://twitter.com/celsiusnetwork**
**https://x.com/celsiusnetwork**

**Verify unexpected requests.**  If an email requests sensitive information or actions that seem unusual, independently verify the request by contacting the organization through official channels before providing any personal information.

**Check for HTTPS.**  Verify that the website you are directed to uses HTTPS.  While this alone does not guarantee legitimacy, it adds an additional layer of security.  When in doubt, verify the SSL certificate used.

**Stay cautious with pop-ups and forms.**  Be cautious if an email or website opens unexpected pop-ups or prompts you to enter sensitive information in forms.  Legitimate organizations typically handle such interactions securely, not over a single-click email.

**Never connect your Crypto Wallet anywhere, even if it looks like a Celsius or Stretto Website.** If you follow the above tips, proceed with caution, and stay up to date with official site updates, you will be more secure in these trying times.