**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*[1]<br><br>Post-Effective Date Debtors. | ) Chapter 11<br>)<br>) Case No. 22-10964 (MG)<br>)<br>) (Jointly Administered)<br>)<br>) |

## STATUS REPORT REGARDING PREFERENCE LITIGATION

Pursuant to the Court's instruction at the July 29, 2024 omnibus hearing,[2] Mohsin Y. Meghji, as Litigation Administrator (the "**Litigation Administrator**") for Celsius Network LLC and its affiliated Post-Effective Date Debtors (the "**Debtors**"), by and through his undersigned counsel, hereby submits this status report regarding the Litigation Administrator's preference litigations.

## UPDATE REGARDING SERVICE

1. On July 1, 2024, the Litigation Administrator commenced litigation against certain customers of the Debtors who withdrew assets during the 90 days before the Debtors' bankruptcy filing (the "**Preference Actions**"). By July 15, 2024, the Litigation Administrator had completed filing 2,463 Preference Actions.[3]

---

[1] The Post-Effective Date Debtors (the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] *See* July 29, 2024 Hr'g Tr. at 21:2-6 ("I would like – I would say in – three weeks from now, an update on the efforts to serve, where you are on service. You could include in that update an identification of what you identify as common issues that run throughout[.]").

[3] The Litigation Administrator also commenced a small number of litigations against certain institutional loan counterparties of the Debtors. Those litigations are not the subject of this status report.

2. The Preference Actions split almost exactly between U.S. defendants and non-U.S. defendants: 1,252 complaints against U.S. defendants, and 1,212 complaints against non-U.S. defendants.

3. On August 1, 2024, the Litigation Administrator completed service on all U.S. defendants.

4. Service on the non-U.S. defendants remains ongoing. Several dozen non-U.S. defendants, including some of the largest individual defendants and certain members of large groups, have accepted service through their counsel. The Litigation Administrator expects to complete service on approximately 1,175 non-U.S. defendants in 87 countries within the next four to eight months.

5. As the Court is aware, all of the defendants in the Preference Actions withdrew assets worth more than $100,000. In fact, over 98% of defendants in the Preference Actions withdrew assets worth more than $200,000.[4]

## COMMON ISSUES AMONG THE PREFERENCE ACTIONS

6. As an initial matter, the Litigation Administrator believes that the parties should be afforded sufficient time to mediate and seek to resolve disputes consensually before litigation commences. Nonetheless, the Litigation Administrator recognizes that mediation will not resolve all disputes, and so litigating common issues is a sensible next step. Accordingly, at the Court's direction, the Litigation Administrator and his advisors have analyzed the shared facts and circumstances of the Preference Actions, as well as applicable case law, and identified certain common issues. The Litigation Administrator believes that these common issues split into two broad categories: (i) common issues that can be decided with no discovery as a matter of law and

---

[4] These thresholds are based on prices as of June 14, 2024.

2

(ii) common issues requiring extensive discovery and evidence, including fact declarations and expert reports.

7. In keeping with the standard timeline for litigation, the Litigation Administrator proposes that the common issues in the first category (which are purely legal in nature) be decided first pursuant to a schedule to be agreed by the parties and approved by the Court. The common issues in the second category (which will require substantial evidentiary development) will be decided thereafter pursuant to a schedule to be agreed at a later date.

**I.    Common Issues Requiring No Discovery (Phase One)**

8. <u>Prima Facie Case</u> – Certain defendants have asserted that the Litigation Administrator has failed to plead all of the elements necessary to state a *prima facie* preference claim under 11 U.S.C. § 547(b). Because these elements are legal issues that would typically be litigated in a motion to dismiss, the Litigation Administrator believes they are appropriate for "phase one" briefing.

9. <u>Extraterritoriality</u> – As noted above, half of all defendants are located outside the United States. Some have accepted service, and many will have been served in the coming months. These defendants will almost certainly raise the defense of extraterritoriality. The Litigation Administrator believes that it would be helpful to have this issue decided early, as many parties outside the United States will refuse to engage seriously in mediation or settlement discussions while the question of extraterritoriality remains pending.

10. <u>Extent of Available Damages</u> – Several defendants have challenged the Litigation Administrator's demand, pursuant to 11 U.S.C. § 550(a), for the return of the transferred assets or their equivalent value. These defendants have asserted that the Litigation Administrator is entitled to receive only the transaction value of the transferred assets rather than the assets themselves or their equivalent value. Other defendants have asserted that the amount the Litigation

3

Administrator can recover in the Preference Action is limited by the terms of the Debtors' confirmed plan of reorganization. The Litigation Administrator believes that, by clarifying the amount in controversy, a decision on this issue could help narrow the gap between parties and move them closer to settlement.

11. <u>New Value Calculation</u> – Numerous defendants, including defendants participating in large group representations, have argued that the amount of damages asserted by the Litigation Administrator is overstated because the Litigation Administrator employed a flawed method for calculating new value. In certain cases, the variance in liability that results from different methods of calculating new value is substantial. Here again, the Litigation Administrator believes that, by clarifying the amount in controversy, a decision on this issue could help narrow the gap between parties and move them closer to settlement.

**II.    Common Issues Requiring Substantial Discovery and Evidence (Phase Two)**

12. <u>Ordinary Course of Business</u> – As the Court is aware, there are two prongs to the ordinary course of business defense: the objective prong, which examines the common practices of the industry at issue, and the subjective prong, which examines the individual defendant's transaction history. The subjective prong will depend on the facts and circumstances of each defendant, including each defendants' prior withdrawal history and/or the timing of specific withdrawals in the Preference Period. Accordingly, a determination of whether any individual defendant can avail themselves of this defense is appropriate after discovery has closed. By contrast, the objective prong is amenable to resolution on a group-wide basis. It is common for parties litigating the objective prong of the ordinary course of business defense to submit expert reports regarding the standards and practices of the relevant industry. Given the dearth of precedent regarding the cryptocurrency industry, such reports will be particularly important here, and will require substantial time and resources to source and develop.

13. <u>Section 546(e) Safe Harbor</u> – The Litigation Administrator anticipates that many defendants will assert that they are immune from liability in the Preference Actions under the safe harbor set forth in 11 U.S.C. § 546(e). Again, given that the applicability of the safe harbor defense to the cryptocurrency industry is largely untested (and may, in fact, be a matter of first impression), the views of experts will be particularly important, and identifying experts and developing reports will require substantial time and resources. Additionally, this may be a fact-intensive, defendant-specific inquiry, requiring discovery on whether there are "qualifying transactions," and "qualifying participants" in each adversary proceeding.

14. For these reasons, the Litigation Administrator proposes deferring these fact-intensive issues until after the "phase one" legal issues have been decided and parties have had a chance to adjust their settlement positions. Afterward, any parties wishing to invest the time and resources necessary to litigate the "phase two" issues can do so.

## CONCLUSION

15. The Litigation Administrator thanks the Court for its attention to these matters and welcomes the Court's thoughts on the items set forth herein.

Dated: August 19, 2024
      New York, New York

*/s/ Samuel P. Hershey*
**WHITE & CASE LLP**
Samuel P. Hershey
Lucas Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
       lucas.curtis@whitecase.com
       nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
       devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
       laura.baccash@whitecase.com

– and –

**ASK LLP**
Marianna Udem
60 East 42nd Street
46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email: mudem@askllp.com

– and –

**ASK LLP**
Brigette McGrath
Kara E. Casteel (admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email: bmcgrath@askllp.com
       kcasteel@askllp.com

*Co-Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*