TROUTMAN PEPPER HAMILTON
SANDERS LLP
Deborah Kovsky-Apap, Esq.
875 Third Avenue
New York, NY 10022
Telephone: (212) 808-2726
Email: deborah.kovsky@troutman.com
*Counsel for Certain Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964-MG |
| Debtors. | Jointly Administered |

**CERTAIN DEFENDANTS' STATEMENT IN RESPONSE TO**
**STATUS REPORT REGARDING PREFERENCE LITIGATION**

The defendants ("Defendants") named in the adversary proceedings listed in Exhibit 1 hereto, through their undersigned counsel, respectfully submit this statement in response to Plaintiff's *Status Report Regarding Preference Litigation* [Docket No. 7618].

1.  At the status conference on July 29, 2024, the Court directed counsel for the Defendants to confer with counsel for Plaintiff regarding common, gating legal issues and to try to find an efficient way to deal with those issues. Since that time, several productive conferences have occurred. While Defendants largely agree with Plaintiff as to which issues are "common," they disagree with the proposed sequencing for a number of reasons.

2.  As an initial matter, Defendants believe that efficiency is better served if common ***dispositive*** issues are dealt with first. It is inefficient and prejudicial to require Defendants to spend time and resources litigating the extent of damages available to Plaintiff before the Court has determined whether Defendants have any preference liability in the first place. Moreover, Plaintiff's suggestion that the extent of available damages can be determined without discovery is

1

mistaken. Defendants may argue that a liquidated debtor may not recover more, under § 550(a), than is needed to pay its creditors in full. This defense that will require discovery and expert testimony on the actual value of the recoveries (including Ionic stock) already received by such creditors. Defendants may also argue that Plaintiff is bound by the terms of the confirmed Plan and its definition of "Withdrawal Preference Exposure." This will likely require discovery as to disclosures made by the Debtors and the Official Committee of Unsecured Creditors regarding "Withdrawal Preference Exposure"; customers' reliance on those disclosures (including in the Plan ballots) when voting in favor of the Plan, granting third-party releases, and contributing claims to the Litigation Administrator; and, possibly, parol evidence regarding the Plan itself.

3. In short, there is likely no gain in efficiency in putting the cart before the horse here, while there is certainly prejudice to the Defendants. Plaintiff should not be able to force Defendants to spend significant time and resources on legal fees and experts to litigate damages when liability is still hotly contested.

4. Similarly, Defendants do not believe that challenges to Plaintiff's prima facie case can be determined without discovery. For example, a challenge asserting that the Debtors were solvent for all or part of the preference period would be highly fact-intensive and would doubtless involve a battle of the experts. A challenge asserting that the assets transferred were not property of the estate because a particular defendant has defenses to contract formation[1] would not only be fact-intensive but defendant-specific. These matters simply cannot "be decided with no discovery as a matter of law," as Plaintiff suggests.

5. Defendants do agree that extraterritoriality (and its corollary issue, whether the Terms of Use created personal jurisdiction over non-US customers) is broadly-applicable,

---

[1] *See Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] at 43 (noting that customers may "have colorable defenses to contract formation as individuals" and emphasizing that such defenses are preserved).

potentially dispositive, and likely amenable to determination as a matter of law. Defendants propose that **Phase One** address these issues.

6. Defendants submit that because the remaining issues as to liability—while requiring discovery—are potentially dispositive, they should be taken up next. Specifically, Defendants propose that **Phase Two** address (i) solvency (to the extent any parties seek to rebut the presumption of Celsius's insolvency), (ii) the objective prong of the ordinary course of business, and (iii) the § 546(e) safe harbor.[2]

7. Defendants further propose that if, and only if, Plaintiff survives all dispositive challenges to liability, the Court take up the measure of damages and appropriate calculation of new value in **Phase Three**.

8. This approach is more logical and efficient than that proposed by Plaintiff. If Defendants prevail on any of the gating issues, the Court will never need to reach the issue of damages. On the other hand, if Plaintiff's approach were adopted, Defendants would be forced to expend time and resources litigating damages even if they are ultimately found to be completely shielded from liability. Defendants—unlike Plaintiff—are largely individual customers who do not have a virtually bottomless litigation war chest. They urge the Court to consider their views on efficiency and thank the Court for its attention.

---

[2] Defendants anticipate filing a motion for withdrawal of the reference of matters relating to the § 546(e) safe harbor.

| | |
|---|---|
| Dated: August 26, 2024 | Respectfully submitted,<br><br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br><br>/s/ *Deborah Kovsky-Apap*<br>Deborah Kovsky-Apap, Esq.<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 808-2726<br>Email: deborah.kovsky@troutman.com<br><br>*Counsel for Certain Defendants* |