**Hearing Date:  September 12, 2024, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 5, 2024, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors. | ) ) ) | (Jointly Administered) |

### NOTICE OF JOINT
### MOTION SEEKING ENTRY OF AN
### ORDER (I) AUTHORIZING SUPPLEMENTAL
### DISTRIBUTION TO ELIGIBLE CORPORATE CREDITORS,
### (II) APPROVING PROCEDURES FOR SUPPLEMENTAL CORPORATE
### CREDITOR DISTRIBUTIONS, AND (III) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Joint Motion Seeking Entry of an Order*

*(I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving*

*Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief*

---

1    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Motion") will be held on **September 12, 2024, at 2:00 p.m., prevailing Eastern Time**
(the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

  **PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted remotely via
Zoom for Government.  All parties in interest, their attorneys, and witnesses must attend the Hearing
by Zoom for Government.  Parties wishing to appear at or listen to the Hearing, whether (a) an
attorney or non-attorney or (b) making a "live" or "listen only" appearance before the Court, need
to make an electronic appearance (an "eCourtAppearance") through the Court's website at
https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic  appearances
(eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day
before the Hearing (*i.e.*, on Wednesday, September 11, 2024)**.

  **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief
requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy
Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General
Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern
District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius
Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and
in accordance with all General Orders applicable to chapter 11 cases in the United States
Bankruptcy Court for the Southern District of New York (which are available on the Court's
website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second
Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative
Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order")
by **September 5, 2024, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master
Service List (as defined in the Case Management Order and available on the case website of

the Post-Effective Date Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity

with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are

timely filed, served, and received will be considered at the Hearing.  Failure to file a timely

objection may result in entry of a final order granting the Motion as requested by the Post-Effective

Date Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of all pleadings filed in these chapter 11

cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/Celsius.  You may also obtain copies of the motions and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated:  August 29, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

**Hearing Date:  September 12, 2024, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 5, 2024, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT MOTION SEEKING ENTRY OF**
**AN ORDER (I) AUTHORIZING SUPPLEMENTAL**
**DISTRIBUTION TO ELIGIBLE CORPORATE CREDITORS,**
**(II) APPROVING PROCEDURES FOR SUPPLEMENTAL CORPORATE**
**CREDITOR DISTRIBUTIONS, AND (III) GRANTING RELATED RELIEF**

The above-captioned post-effective date debtors (the "Post-Effective Date Debtors" and,

prior to the Effective Date, the "Debtors"), the ad hoc committee of corporate creditors

(the "Ad Hoc Committee of Corporate Creditors"), and Coinbase Inc., ("Coinbase," together with

---

1    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective
Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414);
Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited
(8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK
Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's
principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50
Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

the Post-Effective Date Debtors and the Ad Hoc Committee of Corporate Creditors, the "Parties")

respectfully state the following in support of this joint motion (this "Motion"):

## Preliminary Statement[2]

1.      As described in the Plan Administrator's quarterly distribution report,[3] the vast

majority of creditors (68%) have already successfully received their distributions, and creditors

have now claimed approximately 94% of the Liquid Cryptocurrency made available for

distribution—they have claimed nearly $2.5 billion worth of Liquid Cryptocurrency at January 16

prices.  That is not to say that the distribution process has been frictionless, and the work is far

from over.  Many creditors are still working to receive their first distribution, and the Post-

Effective Date Debtors will continue to systematically work to close out issues to ensure that all

creditors who are eligible for and actively pursuing a distribution receive one as expeditiously as

possible.

2.      To date, one of the most challenging distribution issues has been Corporate

Creditors.  The Debtors expected logistical challenges related to the KYC process for Corporate

Creditors (which have materialized), but these challenges were compounded by unanticipated legal

controversies that threatened to disrupt the Post-Effective Date Debtors' entire distribution

process.  The controversies arose from the fact that, despite their extensive efforts, the Debtors

were only able to identify one suitable Distribution Agent that would agree to facilitate Liquid

Cryptocurrency distributions to any Corporate Creditors—Coinbase—and the parties were only

---

2   Terms capitalized but not defined in this Preliminary Statement have the meaning ascribed to such terms
    elsewhere in this Motion.  Terms capitalized but not defined in this Motion have the meaning ascribed to them in
    the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates
    (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, modified, and supplemented
    from time to time, the "Plan") and the Corporate Creditor Pleadings (as defined below) as applicable.

3   *Plan Administrator's First Status Report on Distributions* [Docket No. 7637] (the "Quarterly Report").

able to agree for Coinbase to commit to provide such distributions to 100 Corporate Creditors with

the one-year term of the parties' agreement.  This limitation was understood and agreed among the

parties prior to and as of the execution of the Coinbase Agreement and disclosed in several filings

in the chapter 11 cases, but was never incorporated into the final Coinbase Agreement.  When the

price of bitcoin and ether precipitously climbed following the Effective Date, Corporate Creditors

raised the issue informally, seeking damages for the run-up in prices because they did not receive

Liquid Cryptocurrency, which they contended they were owed under the Plan.  In June 2024, the

Faller Creditors filed the Corporate Creditor Motion, which was later joined by dozens of other

Corporate Creditors, and the Ad Hoc Committee of Corporate Creditors was formed.  There were

two preliminary hearings on the Corporate Creditor Motion, which the Court ultimately adjourned

to the omnibus hearing on August 27, 2024.[4]

3.      Following the Court's adjournment of the Corporate Creditor Motion, the

Post-Effective Debtors, Coinbase, the Ad Hoc Committee of Corporate Creditors, and the

Litigation Administrator agreed to enter mediation overseen by the Honorable Philip Bentley,

Bankruptcy Judge for the Southern District of New York, (the "Mediator" or "Judge Bentley"), in

an attempt to reach a consensual resolution that would avoid value-destructive litigation.

Following two days of mediation with Judge Bentley, as well as hard-fought negotiations that

continued for more than a week following the formal mediation, the Post-Effective Debtors,

Coinbase, and the Ad Hoc Committee of Corporate Creditors negotiated both the terms and process

by which the Post-Effective Date Debtors propose to make a supplemental distribution to Eligible

Corporate Creditors that would provide them with either the Liquid Cryptocurrency they would

---

[4]    The Ad Hoc Committee of Corporate Creditors and the Post-Effective Date Debtors consensually further
adjourned the Corporate Creditor Motion to the September 12, 2024 hearing in anticipation of the filing of this
Motion.

have been entitled to under the Plan if the Debtors had scheduled them for a Liquid Cryptocurrency Distribution (that is, Liquid Cryptocurrency at January 16 prices), or the cash equivalent thereof, as set forth in more detail in the signed Settlement Term Sheet attached to the proposed order as Exhibit 1. At a high level:

- all Eligible Corporate Creditors will receive an additional distribution (the "Supplemental Corporate Creditor Distribution");

- Eligible Corporate Creditors that are not in the Plan's Convenience Class will have the option to elect to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency (the "Supplemental Cryptocurrency Distribution"), subject to successfully completing the onboarding process with Coinbase;

- Eligible Corporate Creditors who do not elect to receive their supplemental distribution in Liquid Cryptocurrency will receive an equivalent amount of Cash (the "Supplemental Cash Distribution"), using market prices for Liquid Cryptocurrency that are close in time to the Cash distribution;

- the Post-Effective Date Debtors have agreed to use best efforts to comply with fixed timetables for Cash distributions for the Supplemental Cash Distribution, including (i) making an initial attempt to distribute within fourteen days of the receipt of the information necessary to complete the distribution following the election deadline and (ii) selling the Liquid Cryptocurrency within 7-14 days of the relevant distribution;

- Coinbase has agreed to (i) use commercially reasonable efforts to begin the onboarding process within fourteen days after the election period and (ii) continue facilitating the onboarding process and making distributions for as long as it takes to ensure that all electing Eligible Corporate Creditors who are able to complete the onboarding process receive a Liquid Cryptocurrency distribution; and

- a Corporate Creditor Representative will be appointed to facilitate communications with the Eligible Corporate Creditors and the Post-Effective Date Debtors regarding the Supplemental Corporate Creditor Distribution process.

4.      This negotiated resolution will be funded from the Disputed and Contingent Claims Reserve established under the Plan, which is [almost entirely] held in BTC and ETH and has therefore tracked (and will continue to track) the price of Liquid Cryptocurrency. With the negotiated mechanics (described in greater detail herein), Eligible Corporate Creditors can receive their preferred form of distribution. For those Eligible Corporate Creditors that opt to receive

Cash, they can specify how they would like to receive their Supplemental Cash Distribution:  by check, wire transfer, or PayPal's Hyperwallet Services ("Hyperwallet").[5]  As discussed in the Quarterly Report, the Post-Effective Date Debtors expect the introduction of Hyperwallet will reduce the complexities and delays related to Cash distributions and significantly increase the number of successful Cash distributions.

5.      The Post-Effective Date Debtors believe that Supplemental Cash Distributions will be much faster than the Supplemental Cryptocurrency Distributions because Coinbase will be manually processing only fifteen Eligible Corporate Creditors at a time through its KYC process. As a consequence, it could take many months for an Eligible Corporate Creditor to receive a Supplemental Cryptocurrency Distribution if a significant number of Eligible Corporate Creditors elect that option.  Regardless, Eligible Corporate Creditors may elect to receive a Supplemental Cryptocurrency Distribution if they so choose.

6.      The proposed Supplemental Corporate Creditor Distributions (and the associated Settlement among the Parties) reflects an outcome that was heavily negotiated in good faith with the guidance of the Mediator.  The requested relief is consistent with the terms of the Plan, and approval of this Motion will fully resolve the Corporate Creditor Motion and the Australian Distribution Motion without requiring further litigation with the Ad Hoc Committee of Corporate Creditors or Coinbase, and should eliminate the need for further litigation with other Corporate Creditors.  For these reasons, and as further set forth below, the Motion should be approved.

---

[5]    The Plan Administrator cannot guarantee that any particular option will be available for any particular individual creditor (for example, and without limitation, a creditor may be banned by PayPal, or unable to cash a $USD check in their jurisdiction).

## Relief Requested

7.      The Parties seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (i) authorizing the Post-Effective Date Debtors to make Supplemental

Corporate Creditor Distributions to Eligible Corporate Creditors, (ii) approving the Supplemental

Distribution Election Procedures for Eligible Corporate Creditors, (iii) approving the settlement of

the Corporate Creditor Motion as between the Parties, and (iv) granting related relief, as set forth

therein.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012.  The Parties confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules").

## Background

11.     Corporate creditors account for approximately 1,900 (or 0.5% by number) of all of

the Debtors' approximately 375,000 creditors expected to receive a distribution under the Plan.

Based on negotiations with Coinbase to provide distributions to Corporate Creditors, the Debtors designed their initial distribution process to provide Liquid Cryptocurrency distributions to the 100 largest Corporate Creditors who affirmatively notified the Debtors they would prefer a Liquid Cryptocurrency distribution. Of those 100 Corporate Creditors who selected to receive a Liquid Cryptocurrency distribution through Coinbase, 87 have received their distribution through Coinbase, 2 have completed all necessary onboarding steps and are pending distribution, 3 have initiated but not yet completed Coinbase's onboarding process, 5 have been rejected by Coinbase, and 3 have not initiated or completed Coinbase's onboarding process.

12.     All Corporate Creditors who were not among the 100 selected to receive a distribution through Coinbase were scheduled to receive a Cash distribution. To date, the Post-Effective Date Debtors have successfully made Cash distributions to approximately 990 Corporate Creditors in an amount totaling approximately $96 million, which represents 85% of the total value currently eligible for distributions to Corporate Creditors originally scheduled to receive a Cash distribution. The Post-Effective Date Debtors have also expanded their distribution agreement with PayPal to allow the use of Hyperwallet to facilitate Cash distributions, which is expected to be quicker and more effective in facilitating Cash distributions than prior distribution methods.

13.     On June 3, 2024, the Faller Creditors filed a *Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 4911] (together with all joinders thereto, the "Corporate Creditor Motion") asserting that the Plan required a Liquid Cryptocurrency distribution for every Corporate Creditor who desired one and seeking damages. The Corporate Creditor Motion was fully briefed ahead of the June omnibus hearing, and the facts and procedural history underlying

the Corporate Creditor Motion will not be repeated at length.[6]  On July 29, 2024, the Court held

an initial hearing on the Corporate Creditor Motion and adjourned it to the next omnibus hearing

to be held on August 27, 2024.  The Court also required the Post-Effective Date Debtors, the

Litigation Administrator, and the Ad Hoc Committee of Corporate Creditors to file a status report

on or before August 12, 2024.  Those parties filed a status report on August 7, 2024

[Docket No. 7585].

14.    Following the July omnibus hearing, the Post-Effective Date Debtors, the Litigation

Administrator, Coinbase, and the Ad Hoc Committee of Corporate Creditors agreed to attempt to

resolve the Corporate Creditor Motion through mediation.  Those parties entered into the *Joint*

---

[6]    The Parties' previously filed pleadings include:  *Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 4911]; *Post-Effective Date Debtors' Omnibus Objection to the Faller Creditors' (I) Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Motion for Discovery to Support Claims Made by the Post-Effective Date Debtors in Regards to Equitable Treatment of Corporate Creditors* [Docket No. 4974]; *Declaration of Jeremy Tilsner in Support of the Post-Effective Date Debtors' Omnibus Objection to the Faller Creditors' (I) Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Motion for Discovery to Support Claims Made by the Post-Effective Date Debtors in Regards to Equitable Treatment of Corporate Creditors* [Docket No. 4976]; *Motion to Direct Celsius to Issue Australian Corporate Creditors with Bitcoin (BTC) and Ether (ETH), not USD Cash, for those who Remain Unpaid their Distributions in the Amounts of Cryptocurrency that they would have Received for their Claims as at the 15 January 2024 prices fixed by Celsius, or in the Alternative, Motion to Compel that Celsius be Directed to Issue Bankruptcy Proceeds to Australian Corporate Creditors Only in USD Wire Transfers Rather than Checks* [Docket No. 6892]; *Post-Effective Date Debtors' Supplemental Objection to the Faller Creditors' Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Objection to the Ad Hoc Group of Australian Corporate Creditors' Motion for a Liquid Cryptocurrency Distribution* [Docket No. 7535]; *Declaration of Christopher Ferraro, Plan Administrator, in Support of the Post-Effective Date Debtors' Supplemental Objection to the Faller Creditors' Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Objection to the Ad Hoc Group of Australian Corporate Creditors' Motion for a Liquid Cryptocurrency Distribution* [Docket No. 7536]; *Declaration of Robert Campagna in Support of the Post-Effective Date Debtors' Supplemental Objection to the Faller Creditors' Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 7537]; and *Declaration of Roger Bartlett in Support of the Post-Effective Date Debtors' Supplemental Objection to the Faller Creditors' Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 7538]; *Reply to Debtors' Supplemental Objection to the Faller Creditors' Motion Seeking Entry of an Order Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 7551]; and *Joint Status Report of the Post-Effective Date Debtors, the Litigation Administrator and Ad Hoc Committee of Corporate Creditors* [Docket No. 7585] (collectively, the "Corporate Creditor Pleadings").

*Stipulation and Agreed Order Between the Post-Effective Date Debtors, Coinbase, the Litigation Administrator, and the Ad Hoc Committee of Corporate Creditors for Appointment of a Mediator* [Docket No. 7588] (the "Stipulation").

15.    The mediation contemplated by the Stipulation took place on August 14 and 15, 2024 (the "Mediation"), facilitated by Judge Bentley.   The parties to the Mediation included the parties to the Stipulation as well as certain other creditors who joined the Stipulation (as contemplated thereby).   At the conclusion of the Mediation, the Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and Coinbase entered into an agreement (the "Settlement") as set forth in the term sheet (the "Settlement Term Sheet") attached to the Order as Exhibit 1.   In addition to settling the issues among the Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and Coinbase, the Settlement provides for a Supplemental Corporate Creditor Distribution to all Eligible Corporate Creditors as contemplated by this Motion.

**Economic Terms of Supplemental Corporate Creditor Distribution**

16.    Put simply, each Eligible Corporate Creditor[7] will receive a Supplemental Corporate Creditor Distribution calculated to provide such Eligible Corporate Creditor with the amount of BTC and ETH that they would have received under the Plan had they been slated for a distribution in Liquid Cryptocurrency on the Effective Date, or the Cash equivalent thereof using then-prevailing market prices.   All Eligible Corporate Creditors other than members of the

---

[7]    "Eligible Corporate Creditor" means (i) a nonindividual (*i.e.*, anyone who is not a natural person, such as a trust, LLC, partnership, corporation, or other non-individual entity) (each a "Corporate Creditor"), (ii) that is organized in a Supported Jurisdiction (as defined in the Supplemental Coinbase Agreement attached to the Order as Exhibit 2) to which Coinbase makes distributions (an "Eligible Country"), and (iii) ***was not*** one of the 100 corporate creditors selected for a distribution from Coinbase already.   A Corporate Creditor who is not in a Supported Jurisdiction is ineligible to participate in the Settlement because Coinbase could not distribute to such Corporate Creditor.   Accordingly, such creditors are outside the scope of this Motion.

Convenience Class will have the option to elect to receive this supplemental distribution in either Liquid Cryptocurrency or Cash. Eligible Corporate Creditors in the Convenience Class will receive a Supplemental Cash Distribution. This is because the Convenience Class Election was designed to be convenient for small claim holders by offering a one-time distribution of Liquid Cryptocurrency or Cash. To avoid a recurrence of the issues that gave rise to the Corporate Creditor Motion (while allowing creditors to opt to receive Cash to streamline the distribution process which may otherwise take years to complete for Corporate Creditors), Supplemental Cash Distributions will be valued at market prices as close in time to the Supplemental Cash Distributions as possible (*i.e.*, the Post-Effective Date Debtors will sell that BTC and ETH as close in time to the Cash distribution as possible to ensure that the creditors receive as close to a current market price as possible, rather than using a fixed record date for all Supplemental Cash Distributions). The below example illustrates how a creditor's Supplemental Cryptocurrency Distribution or Supplemental Cash Distribution will be calculated if such creditor has yet to receive a distribution under the Plan:

| *Illustrative Example for Creditors Who Have Not Already Received a Distribution* | |
|---|---|
| Example Eligible Corporate Creditor is entitled to receive a distribution of 1 BTC and 10 ETH under the Plan. Eligible Corporate Creditor can elect to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency or Cash. | |
| ***Liquid Cryptocurrency*** | ***Cash*** |
| *After the Election Deadline has passed, and once onboarding at Coinbase is successful, the creditor will receive a Liquid Cryptocurrency distribution on account of its Supplemental Cryptocurrency Distribution.* | *After the Election Deadline has passed, the Supplemental Cryptocurrency Distribution Amount will be sold as close in time to the Cash distribution as possible, the proceeds of which will account for such Eligible Corporate Creditor's Supplemental Cash Distribution.* |

| | |
|---|---|
| Here, the Example Eligible Corporate Creditor's distribution amount is 1 BTC and 10 ETH. Because the creditor had not received a Cash distribution previously, the creditor's Supplemental Cryptocurrency Distribution is equal to 1 BTC and 10 ETH (what the creditor was entitled to receive under the Plan). | Here, because the creditor had not yet received a distribution under the Plan, the Example Eligible Corporate Creditor's Supplemental Distribution is 1 BTC and 10 ETH. Assuming the market price of BTC is $60,000 and the market price of ETH is $3,000 on the day the Post-Effective Date Debtors sell the Liquid Cryptocurrency, the Example Eligible Corporate Creditor's Supplemental Cash Distribution is $90,000. |

17.    One complicating factor is that many Eligible Corporate Creditors have already received a Cash distribution using January 16, 2024 prices for BTC and ETH. For those creditors, the Cash they already received will be set off against the Liquid Cryptocurrency earmarked for their Supplemental Corporate Creditor Distribution (or the Cash equivalent) utilizing the average prices for BTC and ETH for the Cash distribution period of February 22, 2024 (the first day any Corporate Creditor received a Cash distribution) to August 12, 2024 ($64,597 for BTC and $3,341 for ETH), and they will receive their Supplemental Corporate Creditor Distribution net of that set off (collectively, the "BTC & ETH Average Values" and individually, the "BTC Average Value" and "ETH Average Value"). The illustration below provides an example of this calculation:

18.    For example, if an Eligible Corporate Creditor was entitled to receive 1 BTC and 10 ETH under the Plan, but received approximately $68,748 in Cash for such Liquid Cryptocurrency at January 16, 2024 prices pursuant to the Plan ($42,972.99 per BTC and $2,577.48 per ETH), that Eligible Corporate Account Holder will have two options:

- *Elect the Supplemental Cryptocurrency Distribution.* The $68,748 in Cash previously received by the Eligible Corporate Account Holder will be valued using the ratio of (i) the cryptocurrency prices as of January 16, 2024 to (ii) the BTC & ETH Average Values. This adjustment would reflect that the Eligible Corporate Account Holder has already received the Cash equivalent of 0.66524753 BTC and 7.714682 ETH (the "Cryptocurrency Setoff Amount"). Therefore, the Eligible

Corporate Account Holder would be entitled to a Supplemental Cryptocurrency Distribution of the difference between their entitlement under the Plan (in this example, 1 BTC and 10 ETH) and the Cryptocurrency Setoff Amount.  In this example, the Supplemental Cryptocurrency Distribution would be 0.33475247 BTC and 2.285318 ETH (resulting from 1 BTC minus 0.66524753 BTC and 10 ETH minus 7.714682 ETH).  This assumes that such Eligible Corporate Creditor will ultimately be successfully onboarded at Coinbase.  If for any reason the Eligible Corporate Creditor is unable to receive the Liquid Cryptocurrency (*e.g.*, the creditor fails to onboard or some other reason), the Post-Effective Date Debtors will sell the Liquid Cryptocurrency allocated to the Eligible Corporate Creditor (less the Cryptocurrency Setoff Amount) at market prices in accordance with the process outlined for creditors receiving a Supplemental Cash Distribution.

- *Elect the Supplemental Cash Distribution (or if the Eligible Corporate Creditor does not timely elect to receive Liquid Cryptocurrency).*  After the Election Deadline, the Post-Effective Date Debtors will sell the cryptocurrency equivalent of their Supplemental Cryptocurrency Distribution amounts (described in the example above) in the market as close in time to the Cash distribution as possible to ensure that the creditors receive as close to a current market price as possible (using the process described below).  Illustratively assuming that the market price received for BTC is $60,000 and ETH is $3,000, the Eligible Corporate Account Holder will receive a Supplemental Cash Distribution of approximately $26,941.10 (the proceeds of the sale of 0.33475247 BTC and 2.285318 ETH, which is the 1 BTC and 10 ETH the creditor was entitled to under the Plan, less the Cryptocurrency Setoff Amount).

| *Illustrative Example for Creditors Who Have Already Received a Distribution* | |
| --- | --- |
| Example Eligible Corporate Creditor is entitled to receive a distribution of 1 BTC and 10 ETH under the Plan, but received approximately $68,748 in Cash for such Liquid Cryptocurrency at January 16, 2024 prices pursuant to the Plan ($42,972.99 per BTC and $2,577.48 per ETH).<br><br>Eligible Corporate Creditor can elect to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency or Cash. | |
| *Liquid Cryptocurrency* | *Cash* |
| Step 1:  *Convert the value of Cash received into cryptocurrency using BTC & ETH average values to determine Cryptocurrency Setoff Amount.*<br><br>Here, $68,748 already received is equivalent to 0.66524753 BTC and 7.714682 ETH using BTC & ETH Average Values.  These cryptocurrency | Step 3:  *After the Election Deadline has passed, the Supplemental Cryptocurrency Distribution Amount will be sold as close in time to the cash distribution as possible, the proceeds of which will account for such Eligible Corporate Creditor's Supplemental Cash Distribution.* |

| | |
|---|---|
| equivalent amounts are the Cryptocurrency Setoff Amount.<br><br>Step 2: *Subtract the Cryptocurrency Setoff Amount from Eligible Corporate Creditor's distribution under the Plan to determine the Eligible Corporate Creditor's Supplemental Cryptocurrency Distribution.*<br><br>Here, the Example Eligible Corporate Creditor's distribution amount is 1 BTC and 10 ETH *minus* the Cryptocurrency Setoff Amount of 0.66524753 BTC and 7.714682 ETH, which *equals* a Supplemental Cryptocurrency Distribution of 0.33475247 BTC and 2.285318 ETH. | Here, the Example Eligible Corporate Creditor's Supplemental Distribution is 0.66524753 BTC and 2.285318 ETH. Assuming the market price of BTC is $60,000 and the market price of ETH is $3,000 on the day the Post-Effective Date Debtors sell the Liquid Cryptocurrency, the Example Eligible Corporate Creditor's Supplemental Cash Distribution is $26,941.10. |

19.     Concurrent with filing this Motion, the Post-Effective Date Debtors have earmarked the amount of Liquid Cryptocurrency from the Disputed and Contingent Claims Reserve equal to the amount of Liquid Cryptocurrency needed if every Eligible Corporate Creditor with the opportunity to elect for the Supplemental Cryptocurrency Distribution so elects. That Liquid Cryptocurrency will be distributed to those Eligible Corporate Creditors that affirmatively elect the Supplemental Cryptocurrency Distribution, successfully onboard with Coinbase, and meet other requirements as set forth more fully in the Settlement Term Sheet and the Supplemental Coinbase Agreement annexed to the Order as Exhibit 1 and Exhibit 2, respectively. The remainder of the Liquid Cryptocurrency will be sold and distributed as the Supplemental Cash Distribution as set forth below.

**Procedures for Supplemental Corporate Creditor Distributions**

20.     Following Court approval of this Motion, the Post-Effective Date Debtors will provide the election form substantially in the form attached to the Order as Exhibit 3 (the "Election Form") to all Eligible Corporate Creditors, who will have thirty (30) days to elect whether to

receive the Supplemental Cryptocurrency Distribution or the Supplemental Cash Distribution. Eligible Corporate Creditors who do not affirmatively make an election by the end of the thirty-day period will receive a Supplemental Cash Distribution.

**A.    Supplemental Cryptocurrency Distribution Procedures.**

21.    Like any corporate creditor seeking a Liquid Cryptocurrency distribution, Eligible Corporate Creditors who timely elect for the Supplemental Cryptocurrency Distribution must successfully complete Coinbase's onboarding process (unless such Eligible Corporate Creditor has an existing eligible Coinbase institutional account, in which case such account shall be used for distribution purposes, but there is no guarantee as to the precise timing of that process or whether a creditor's putative account will ultimately be eligible for distribution, as updated KYC may be required).  At the end of the Election Period, the Post-Effective Date Debtors shall provide to Coinbase the valid email addresses of all creditors who elected to receive a Supplemental Cryptocurrency Distribution.  Coinbase shall use commercially reasonable efforts to deliver an invitation to onboard to Coinbase to electing creditors within fourteen (14) days of the date that Coinbase receives such creditors' information from the Post-Effective Date Debtors.

22.    Electing creditors must initiate the onboarding process within fourteen (14) days of the date such creditors receive an invitation to onboard to Coinbase.  Creditors will then have thirty (30) days to provide all initial onboarding materials to Coinbase following Coinbase's initial request for such materials (it being understood that if Coinbase has supplemental requests after reviewing the initial onboarding materials, those may be requested and provided after this 30-day period expires).  Creditors must respond to any supplemental request(s) from Coinbase within fourteen (14) days of any such supplemental request(s).  Creditors who do not meet these deadlines will be "dropped" from the onboarding process with Coinbase and transitioned to the Supplemental Cash Distribution Process.

23.     The Election Form includes a request for Eligible Corporate Creditor to indicate whether it has an existing eligible Coinbase institutional account and, if it does, to agree to participate in any ordinary course account matching or KYC/AML refreshing process that Coinbase may require as necessary to render the account eligible to receive a distribution.

24.     As part of making the Supplemental Cryptocurrency Distribution Election, an Eligible Corporate Creditor must also agree to release and hold harmless Coinbase, the Plan Administrator and the Post-Effective Date Debtors (and their respective agents and advisors) for (i) any change in market prices between the time of filing this Motion and when the Supplemental Cryptocurrency Distribution is made and (ii) any claim related to such creditor's ability to onboard to or ultimately receive a distribution through Coinbase's platform and/or the timing of such onboarding or distribution, subject to customary exclusions for gross negligence and willful misconduct.  Such a release is included in the Election Form.

25.     Eligible Corporate Creditors that make the Supplemental Cryptocurrency Distribution Election but are either rejected from onboarding by Coinbase or are dropped from the onboarding process for failure to timely participate in any stage of the process of opening a Coinbase Prime Account will be transitioned to the Cash option in accordance with the Supplemental Cash Distribution Procedures.  Such Eligible Corporate Creditors shall provide the Post-Effective Date Debtors with payment instructions for a Cash distribution.  Within fourteen (14) days after receiving such payment instructions, the Post-Effective Date Debtors will use best efforts to initiate the Supplemental Cash Distribution Procedures as described below.

**B.     Supplemental Cash Distribution Procedures.**

26.     Each Eligible Corporate Creditor that elects to receive Cash can elect whether to receive their Supplemental Cash Distribution through (a) check, (b) wire transfer, or (c) Hyperwallet.  In each case, the Plan Administrator will use commercially reasonable efforts to

honor such election; *provided* that the Plan Administrator cannot guarantee that any particular

option will be available for any particular creditor for a several reasons including, without

limitation, that a creditor may be banned by Hyperwallet or unable to cash a $USD check in their

jurisdiction.  For the avoidance of doubt, Eligible Corporate Creditors that elect the Supplemental

Cash Distribution, or that cannot receive the Supplemental Cryptocurrency Distribution, will have

to provide further information depending on the type of Cash distribution elected (for example, an

appropriate mailing address for a check, basic KYC information of a beneficial owner of the

institutional creditor for Hyperwallet, or wire transfer instructions for a wire transfer).  Wire

transfer distributions may be delayed, among other causes, if the provided information is not

accurate and complete or as a result of restrictions enforced by beneficiary or intermediary banks.

27.    The Post-Effective Date Debtors will use best efforts to make an initial attempt of

Supplemental Cash Distributions within fourteen (14) days after the end of the Election Period and

the submission of required information to the Post-Effective Date Debtors, but there is no

guarantee as to the precise timing of when a Cash distribution will actually be successfully

received, given that creditors will have to supply correct payment information in order to get paid,

and the creditor's beneficiary bank, or intermediary bank, may reject or delay these payments.

28.    The Post-Effective Date Debtors will sell at market prices the Liquid

Cryptocurrency allocated to Eligible Corporate Creditors that do not affirmatively elect to receive

the Supplemental Cryptocurrency Distribution (or otherwise are unable to receive the

Supplemental Cryptocurrency Distribution, including those that elect for the Supplemental

Cryptocurrency Distribution but do not successfully onboard at Coinbase or are dropped from the

Supplemental Cryptocurrency Distribution for failure to timely provide information as described

above), and send the proceeds to those creditors in accordance with the Supplemental Cash Distribution Procedures.

29.    More specifically, the Post-Effective Date Debtors will use best efforts to sell the Liquid Cryptocurrency for each applicable Eligible Corporate Creditor receiving a Supplemental Cash Distribution within seven (7) to fourteen (14) days of the anticipated distribution for such Eligible Corporate Creditor.  For those Eligible Corporate Creditors that elect to receive wire transfers or Hyperwallet transfers, a test transaction shall be completed prior to the Post-Effective Date Debtors selling the Liquid Cryptocurrency to ensure that the sale takes place as soon as practicable prior to a successful Supplemental Cash Distribution.  Upon completing each Eligible Corporate Creditor's distribution, the Plan Administrator will provide a notice of successful distribution, which will notify such creditor of the amount of Liquid Cryptocurrency sold and the market price of the sale for such distribution.

30.    For the avoidance of doubt, the process described in this Motion relates to the initial distribution made available for all Eligible Corporate Creditor as of the Effective Date. For subsequent distributions under the Plan, a new distribution record date will be set, and distributions will be made on that basis.  To the extent an Eligible Corporate Creditor successfully onboards with Coinbase, such subsequent distributions will be made in Liquid Cryptocurrency to the extent Coinbase is still an active Distribution Agent at the time of such subsequent distributions.

31.    The Post-Effective Date Debtors have determined, in the exercise of their business judgment, that entry into the proposed Supplemental Corporate Creditor Distributions (and the associated Settlement among the Parties) is in the best interest of their estates and all stakeholders as it avoids the delay and costs of potentially protracted litigation related to the Corporate Creditor

Motion.  The Settlement was negotiated at arm's length and in good faith among the Parties and provides clarity and certainty to Eligible Corporate Creditors with regard to their anticipated distributions under the Plan.

    **C.**    **Agreed Reporting and Communications for the Supplemental Corporate Creditor Distribution.**

32.  As part of the Settlement, the Plan Administrator has agreed to provide additional reporting to Eligible Corporate Creditors and the Bankruptcy Court regarding distributions under the Settlement.  Specifically, the Plan Administrator will use best efforts to provide an Eligible Corporate Creditor with an update on its distribution and any available details regarding a failed distribution attempt within seven days of the Plan Administrator receiving notice that a distribution to such creditor was unsuccessful.  The Plan Administrator will also submit monthly reports (each, a "<u>Monthly Report</u>") to the Bankruptcy Court regarding distributions under the Settlement.

33.  The Settlement also provides for the appointment of Jarred Herzberg as the Corporate Creditor Representative and point of contact for Eligible Corporate Creditors who have questions regarding the implementation of the Settlement.  The Corporate Creditor Representative and counsel to the Plan Administrator shall have regular meetings during which the Corporate Creditor Representative will have the opportunity to ask questions and receive updates on the status of distributions under the Settlement and other key issues.  At these meetings, counsel to the Plan Administrator will provide the Corporate Creditor Representative with weekly metrics on distributions under the Settlement, including how many distributions were attempted, how many of those distributions that were attempted were successful, and any key reasons for recent failed distribution attempts.  Initially following the implementation of the Settlement, these meetings are expected to be weekly but may be more or less frequent as appropriate under the circumstances.

Each Monthly Report will also include any statement that the Corporate Creditor Representative requests the Plan Administrator to include.

34.     The increased reporting by the Plan Administrator and appointment of a Corporate Creditor Representative are intended to address creditors' transparency concerns regarding the implementation of the Settlement.

**Basis for Relief**

**I.    The Plan Authorizes the Distribution of Liquid Cryptocurrency to Corporate Creditors.**

35.     The Corporate Creditor Motion contended that the Plan requires that corporate creditor distributions be made in Liquid Cryptocurrency.  *See* Corporate Creditor Motion, ¶¶ 6–9. While the Post-Effective Date Debtors initially opposed this contention, the Parties reached a resolution through the Mediation.  Accordingly, the Parties now agree that the Plan authorizes the distribution of Liquid Cryptocurrency (or an equivalent amount of Cash as set forth herein) to Eligible Corporate Creditors in accordance therewith.  For the avoidance of doubt, the filing of this Motion does not include any admission by any Party as to what the Plan requires.

**II.   The Settlement Should Be Approved Pursuant to Bankruptcy Rule 9019(a).**

36.     The Settlement represents a favorable resolution of the issues presented in the Corporate Creditor Motion, allows all Eligible Corporate Creditors the option to elect a Supplemental Cryptocurrency Distribution or Supplemental Cash Distribution via check, wire transfer or Hyperwallet, and reflects the Post-Effective Date Debtors' sound business judgment. Bankruptcy Rule 9019(a) provides that "after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

37.     A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for debtors, but must not "fall below the lowest point in the range of reasonableness."

*In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 595 (Bankr. S.D.N.Y. 1991). In determining the range of reasonableness, the bankruptcy court need not decide issues of law and fact raised by the settlement. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) ("The standard does not require that the settlement be the best the debtor could have obtained nor does it require the court to conduct a mini-trial of the questions of law and fact.").

38.     Rather, the court must be "apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012) (Glenn, J.). In conducting this assessment, "a court may rely on the opinions of the debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *Id.* at 641.

39.     Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 505; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a

debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

40.    A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."); *see also In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy court [and such] discretion should be exercised in light of the general public policy favoring settlements.") (citing *Nellis v. Shugrue* 165 B.R. at 121; *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting the paramount public policy for settlements)).[8]  Notably, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re LATAM Airlines Group S.A.*, 2022 WL 272167, at *12 (Bankr. S.D.N.Y. Jan. 28, 2022) (quoting *In re MF Global Inc.*, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (Glenn, J.)).

41.    In determining whether to approve a settlement as fair and equitable and in the best interests of the debtor's estate under Bankruptcy Rule 9019, courts in the Second Circuit consider what is often referred to as the "*Iridium*" factors: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the

---

[8]    Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Parties to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the Bankruptcy Code's predilection for compromise.  Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

42.    The Settlement described in this Motion represents a fair and equitable compromise that is in the best interests of the Post-Effective Date Debtors' estates, and falls well within the range of reasonableness, and satisfies each of the *Iridium* factors.

> **A.    The Settlement Avoids the Costs and Risks Associated with Litigating the Corporate Creditor Motion.**

43.    The Settlement satisfies the ***first*** and ***second*** *Iridium* factors, as the Settlement will resolve the Corporate Creditor Motion without the need for costly and protracted litigation. The Supplemental Corporate Creditor Distribution to Eligible Corporate Creditors, made in accordance with the procedures contemplated by the Settlement, resolves an issue that was scheduled to be litigated. Avoiding such litigation, including the discovery and testimony associated therewith, will save the Post-Effective Date Debtors' estates significant resources.

44.    Avoiding costly, protracted litigation that would consume significant estate resources at this critical juncture is in the best interests of the Post-Effective Date Debtors' estates. The Post-Effective Date Debtors have successfully distributed approximately 94% of the total value of Liquid Cryptocurrency to be distributed. Moreover, by seeking approval of the Settlement, the Post-Effective Date Debtors will save additional costs and further streamline the distribution process for Eligible Corporate Creditors and reduce the risk of further litigation

concerning distributions to Corporate Creditors.  Approval and consummation of the Settlement would avoid these costs for the benefit of all parties in interest including all creditors.

> **B.**    **The Settlement Is in the Best Interests of the Post-Effective Date Debtors' Estates and Is Supported by the Ad Hoc Committee of Corporate Creditors and Coinbase.**

45.    As for the ***third*** and ***fourth*** *Iridium* factors, the resolution of the Corporate Creditor Motion is in the best interests of the Debtors' creditors and is supported by the Parties.

46.    The Settlement resolves one of the most significant issues that has arisen in the distribution process in these chapter 11 cases.  As a result of the Settlement, the Plan Administrator will be able to distribute Liquid Cryptocurrency (or the Cash equivalent thereof) to more Corporate Creditors without the need for litigation.  All of this results in both costs and time saved.  Resolving this key issue at a reasonable cost, and at this critical juncture in these chapter 11 cases, is invaluable.  The Settlement also provides for an equitable distribution of the Post-Effective Date Debtors' estates and is the product of hard-fought negotiations as part of the Mediation overseen by Judge Bentley.

> **C.**    **The Releases in the Settlement Are Customary and a Crucial Part of the Settlement.**

47.    The releases granted pursuant to the Settlement are mutual, narrow in scope, essential to the Settlement, and are similar in nature to other settlements of the same nature in other chapter 11 cases.  The releases are only granted by parties (a) who participated in the Mediation or (b) who affirmatively accept a Supplemental Cryptocurrency Distribution.

> **D.**    **Each Party to the Settlement Is Represented by Competent and Experienced Counsel and the Settlement Is the Result of Extensive Negotiation Between the Parties.**

48.    As for the last two *Iridium* factors listed above, all Parties to the Settlement are represented by competent and experienced counsel and various financial advisors, and the

Settlement is the result of good faith, arm's-length negotiations between the Parties. Throughout settlement discussions and the Mediation, the Parties worked in good faith and without collusion towards a consensual resolution of all disputed issues.

49.      The Settlement reflects the best possible consensual resolution of the issues raised in the Corporate Creditor Motion. The alternative to a consensual resolution is a potentially worse outcome for the Post-Effective Date Debtors than the resolution established by the Settlement. The Post-Effective Date Debtors are confident that the Parties have reached the best possible terms and that negotiations can conclude so that the Post-Effective Date Debtors can focus on continuing to make distributions to all creditors.

50.      In sum, the Post-Effective Date Debtors have determined, in an exercise of their sound business judgment, that the Settlement is fair, equitable, and eminently reasonable. Moreover, the timely resolution of this dispute is in the best interests of the Post-Effective Date Debtors' estates and creditors. The Post-Effective Date Debtors submit that the Settlement falls well above the lowest point in the range of reasonableness. Accordingly, the Post-Effective Date Debtors, jointly with the Parties, request that the Court approve the Settlement, including the Parties' entry into the Settlement Term Sheet pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**III.      The Supplemental Coinbase Agreement Should Be Approved.**

51.      The Supplemental Coinbase Agreement is reasonable and should be approved. The Supplemental Coinbase Agreement contains the terms and conditions upon which Coinbase is willing to facilitate the Supplemental Cryptocurrency Distributions contemplated by the Settlement. Critically, Coinbase has made significant concessions and commitments in the Supplemental Coinbase Agreement to make distributions to applicable creditors under the Settlement that are not present in the existing Coinbase agreement. Most importantly, the existing

Coinbase agreement expires pursuant to its terms in early November 2024. Accordingly, a further agreement with Coinbase is needed for distributions under this Settlement beyond that date.

52.     Following extensive arm's-length, good faith negotiations, the Post-Effective Date Debtors and Coinbase negotiated the form of the Supplemental Coinbase Agreement that is attached to the Order as <u>Exhibit 2</u>.[9] It provides for, among other things, the agreement by Coinbase to work to onboard and make distributions to Eligible Corporate Creditors who elect the Supplemental Cryptocurrency Distribution (and who comply with and pass the onboarding process) regardless of whether the onboarding process is completed prior to or after the expiration of the existing Coinbase agreement. This is a significant concession given the expiration of the existing agreement in November and ensures that Coinbase will work to onboard electing creditors until such time as there are no creditors left in the queue for onboarding.

53.     Specifically, Coinbase has agreed to work on the onboarding of fifteen creditors simultaneously (a dedicated work flow for Celsius creditors not required by the existing Coinbase Agreement), and, as described in the Supplemental Coinbase Agreement, the Post-Effective Date Debtors and Coinbase have agreed on an economic structure that aligns all parties in the goal of diligently and efficiently administering the remaining distributions as quickly as possible.

54.     The parties have agreed to a specific schedule and milestones that ensure that Coinbase is working to onboard creditors and that creditors timely provide Coinbase with the information it needs to complete the onboarding process, including that:

- Coinbase will use commercially reasonable efforts to invite Eligible Corporate Creditors who elect to receive a Supplemental Cryptocurrency Distribution to be onboarded within fourteen (14) days of receiving the instruction to initiate

---

[9] The description of the Supplemental Coinbase Agreement herein is merely a summary of certain of the terms, and to the extent there is any conflict between the description in this Motion and the terms of the Supplemental Coinbase Agreement, the Supplemental Coinbase Agreement shall govern.

an onboarding invitation from Celsius;

- such creditors must then initiate the onboarding process within fourteen (14) days of the date they receive the onboarding invitation from Coinbase;

- such creditors will then have thirty (30) days from the initial request for onboarding materials to provide all initial onboarding materials to Coinbase; and

- such creditors must also respond to any supplemental requests for onboarding materials from Coinbase within fourteen (14) days of such requests.

55.     As noted above, Coinbase will be working through a queue of creditors, and will work on at least fifteen simultaneously.  The queue of creditors will be given from Celsius to Coinbase, and Celsius will order that queue based on the order in which the creditors return their completed Election Form to Celsius.

56.     Of course, Coinbase is the party that ultimately has to sign off on the onboarding of any particular creditor, and it retains the discretion (in accordance with its policies and procedures applicable to all of its potential customers) to approve or deny the onboarding of any particular creditor.

57.     The Post-Effective Date Debtors believe that the terms of the Supplemental Coinbase Agreement are reasonable, and respectfully request that it be approved to facilitate the implementation of the Settlement.

## IV.     Compensation for the Ad Hoc Committee of Corporate Creditors Should be Approved.

58.     The Settlement Term Sheet contemplates compensation to the Ad Hoc Committee of Corporate Creditors and its counsel to recognize their contribution to the Debtors' post-confirmation estate in bringing its motions and collaboratively seeking a solution to the instant dispute through the Mediation.  *See* Settlement Term Sheet § 7.

59.     Under Section 7 of the Settlement Term Sheet, "as a material part of this settlement and as partial consideration for the releases contemplated herein, the Parties agree to compensation of the Ad Hoc Committee of Corporate Creditors and its counsel in the aggregate amount of $1,500,000." *Id.*

60.     Compensation to the Ad Hoc Committee of Corporate Creditors and its professionals is not subject to the requirements of and scrutiny under section 503(b) of the Bankruptcy Code because the Settlement took place post-confirmation, and post-Effective Date. "[A]fter confirmation, unless otherwise specified in the plan of reorganization, the estate ceases to exist; as a result, there can be no section 503(b)(1)(A) administrative expense claims after confirmation because there is no estate to preserve." *In re Dahlgren Int'l, Inc*., 147 B.R. 393, 403 (N.D. Tex. 1992).

61.     Payment of the agreed compensation to the Ad Hoc Committee of Corporate Creditors is a settling of claims that does not require approval by the Bankruptcy Court, nor is it subject to any discharge under the Plan.  The agreed compensation is part of the Settlement Term Sheet, not a separate agreement, and the Plan specifies that:

> Any Claim . . . may be adjusted or expunged on the Claims Register at the direction of the Debtors, the Post-Effective Date Debtors, or the applicable Litigation Administrator(s) without . . . having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.  Plan, Art. VII.D, at pp. 67–68.

62.     The Plan also specified that the Post-Effective Date Debtors do not need Court approval to pay professionals:

> From and after the Confirmation Date, the Debtors, or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Post-Effective Date Debtors, as applicable.  Plan, Art. II.B.4, at pp. 27–28.

63.     Despite this broad authority, out of an abundance of caution, the Post-Effective
Date Debtors seek authority from the Bankruptcy Court to pay such compensation to the Ad Hoc
Committee of Corporate Creditors, as this provision is an inseparable part of the Settlement Term
Sheet.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

64.     The Post-Effective Date Debtors request that the Court enter an order providing
that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that cause exists to
exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

65.     Except as explicitly set forth in this Motion and the Settlement Term Sheet (once
approved by the Court and implemented in accordance with its terms), nothing contained in this
Motion or any actions taken pursuant to any order granting the relief requested by this Motion is
intended or should be construed as (a) an admission as to the validity of any particular claim
against the Post-Effective Date Debtors, (b) a waiver of the Post-Effective Date Debtors' rights to
dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular
claim, (d) an implication or admission that any particular claim is of a type specified or defined in
this Motion or any order granting the relief requested by this Motion, (e) a request or authorization
to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a
waiver or limitation of the Post-Effective Date Debtors' rights under the Bankruptcy Code or any
other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law,
statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly
reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.
Except as explicitly set forth in this Motion and the Settlement Term Sheet (once approved by the

Court and implemented in accordance with its terms), if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Post-Effective Date Debtors' rights to subsequently dispute such claim.

### **Motion Practice**

66.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Post-Effective Date Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### **Notice**

67.    The Post-Effective Date Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Litigation Oversight Committee; (c) counsel to the Litigation Administrator; (d) counsel to the Ad Hoc Committee of Corporate Creditors; (e) all Eligible Corporate Account Holders; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 after the Effective Date.  The Post-Effective Date Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

68.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page left intentionally blank.]*

WHEREFORE, the Parties request that the Court enter the Order granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated:  August 29, 2024

| | |
|---|---|
| */s/ Joshua A. Sussberg* | */s/ Joseph E. Sarachek* |
| **KIRKLAND & ELLIS LLP** | Joseph E. Sarachek (Bar # 2163228) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **SARACHEK LAW FIRM** |
| Joshua A. Sussberg, P.C. | 670 White Pains Road – Penthouse |
| 601 Lexington Avenue | Scarsdale, New York 10583 |
| New York, New York 10022 | Telephone:    (646) 403-9775 |
| Telephone:    (212) 446-4800 | Facsimile:    (646) 861-4950 |
| Facsimile:    (212) 446-4900 | Email:    joe@saracheklawfirm.com |
| Email:    jsussberg@kirkland.com | *Counsel to the Ad Hoc Committee of Corporate Creditors* |

 - and -

| | |
|---|---|
| Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) | */s/ Thomas S. Kessler* |
| Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) | Thomas S. Kessler |
| Christopher S. Koenig | **CLEARY GOTTLIEB STEEN &** |
| Dan Latona (admitted *pro hac vice*) | **HAMILTON LLP** |
| 333 West Wolf Point Plaza | |
| Chicago, Illinois 60654 | One Liberty Plaza |
| Telephone:    (312) 862-2000 | New York, New York 10006 |
| Facsimile:    (312) 862-2200 | Telephone:    (212) 225-2000 |
| Email:    patrick.nash@kirkland.com | Facsimile:    (212) 225-3999 |
|     ross.kwasteniet@kirkland.com | Email:    tkessler@cgsh.com |
|     chris.koenig@kirkland.com | |
|     dan.latona@kirkland.com | *Counsel for Coinbase* |

*Counsel to the Post-Effective Date Debtors*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Post-Effective Date Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER (I) AUTHORIZING SUPPLEMENTAL**
**DISTRIBUTION TO ELIGIBLE CORPORATE CREDITORS,**
**(II) APPROVING PROCEDURES FOR SUPPLEMENTAL CORPORATE**
**CREDITOR DISTRIBUTIONS, AND (III) GRANTING RELATED RELIEF**

Upon the joint motion (the "Motion")[2] of the post-effective date debtors (collectively,

the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors"), the members

of the ad hoc committee of corporate creditors (the "Ad Hoc Committee of Corporate Creditors"),

and Coinbase Inc., ("Coinbase," together with the Post-Effective Date Debtors and the Ad Hoc

Committee of Corporate Creditors, the "Parties") for entry of an order (this "Order"), pursuant to

11 U.S.C. § 105(a) and Bankruptcy Rule 9019 (i) authorizing the Post-Effective Date Debtors to

make Supplemental Corporate Creditor Distributions to Eligible Corporate Creditors (as defined

in the Motion), (ii) approving the Supplemental Distribution Election Procedures for Eligible

Corporate Creditors, (iii) approving the settlement of the Corporate Creditor Motion as between

the Parties, and (iv) granting related relief, all as more fully set forth in the Motion; and this Court

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Post-Effective Date Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Post-Effective Date Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (the "Hearing") before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement is reasonable and was negotiated at arms' length and in good faith, and the Settlement Term Sheet attached hereto as **Exhibit 1** is approved in its entirety. For the avoidance of doubt, the Settlement does not include any admission by any Party, including as to what the Plan requires or of any wrongdoing relating to distributions to Corporate Creditors or any other party under the Plan.

3.      The Supplemental Corporate Creditor Distributions are authorized and approved and shall be funded with Liquid Cryptocurrency (or the proceeds thereof) from the Disputed and Contingent Claims Reserve.

4.      The Post-Effective Date Debtors are authorized to enter into the Supplemental Coinbase Agreement attached hereto as **Exhibit 2**.

5.      In the event of any inconsistency between the Motion or this Order and the Settlement Term Sheet, this Order shall control.

6.      All objections, including without limitation, made by any party to the Settlement, that have not been withdrawn, waived, settled, or specifically addressed in this Order and all reservations of rights included in any such objections, are hereby overruled on the merits and any objections to the Motion, the Settlement, the Supplemental Corporate Creditor Distributions, compensation for the Ad Hoc Committee of Corporate Creditors and the related relief not timely raised are waived.  Accordingly, the entry into the Settlement by the Parties is authorized and ratified, and the Parties are directed to perform all of the terms of the Settlement.  As contemplated by the Settlement Term Sheet, this Order resolves the Corporate Creditor Motion and the Australian Distribution Motion.

7.      The Notice of Supplemental Distribution to Eligible Corporate Creditors attached hereto as **Exhibit 3** is approved, including the releases set forth therein.

8.      Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform the Settlement as embodied in the Settlement Term Sheet, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Term Sheet.

9.      In furtherance of this Order, the Settlement Term Sheet and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties

thereto in a writing signed by such Parties, and in accordance with the terms thereof, without further order of the Court, provided such modification, amendment, or supplement is not material.

10.     The failure to mention any provision of the Settlement in this Order or the Motion shall not impair its efficacy, it being the intent and effect of this Order that the Settlement and the compromises and agreements contained therein are approved in all respects and all relief contemplated by the Settlement is hereby granted.

11.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Post-Effective Date Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Post-Effective Date Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Post-Effective Date Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Post-Effective Date Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Post-Effective Date Debtors' rights to subsequently dispute such claim.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rules and the Local Rules are satisfied by such notice.

13.     Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Post-Effective Date Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2024

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

## **Settlement Term Sheet**

## SETTLEMENT TERM SHEET

### *Celsius Network LLC, et. al.,*
### Case No. 22-10964-MG (Bankr. S.D.N.Y.)

THIS SETTLEMENT TERM SHEET (THE "TERM SHEET") CONTAINS THE TERMS AND CONDITIONS OF A PROPOSED SETTLEMENT OF THE MEDIATION TOPICS (THIS "SETTLEMENT") BY AND BETWEEN POST-EFFECTIVE DATE DEBTORS, COINBASE, AND THE AD HOC COMMITTEE OF CORPORATE CREDITORS, AS SUCH PARTIES ARE DEFINED BELOW (COLLECTIVELY, THE "PARTIES"). TERMS CAPITALIZED BUT NOT DEFINED HEREIN SHALL HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE *JOINT STIPULATION AND AGREED ORDER BETWEEN THE POST-EFFECTIVE DATE DEBTORS, COINBASE, THE LITIGATION ADMINISTRATOR, AND THE AD HOC COMMITTEE OF CORPORATE CREDITORS FOR APPOINTMENT OF A MEDIATOR* [DOCKET NO. 7588] OR THE *MODIFIED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES (CONFORMED FOR MININGCO TRANSACTION)* [DOCKET NO. 4289], AS APPLICABLE.

1. Economic Terms: The Parties acknowledge and agree that this Term Sheet is subject to Coinbase's and the Post-Effective Date Debtors' agreement on economic terms for a supplemental agreement with Coinbase by no later than August 22, 2024 or such later date as Coinbase and the Post-Effective Date Debtors may agree, which agreement the Post-Effective Date Debtors and Coinbase agree to pursue in good faith.

2. Settlement:  The Corporate Creditor Motion shall be resolved as follows:

   (a)    Any Eligible Corporate Account Holder (as defined below) will receive the option to receive either (a) the Liquid Cryptocurrency that they would have received under the Plan on the Effective Date (that is, for creditors who are not in the Convenience Class, an amount that would have provided them with approximately 57.87% recovery on their Claims, and for creditors who are in the Convenience Class, an amount that would have provided them with approximately 70% recovery on their Claims, as applicable, in each case using prices for BTC and ETH as of January 16, 2024 as set forth in the Notice of Effective Date [Docket No. 4298] (the "Supplemental Cryptocurrency Distribution"), or (b) an amount of Cash (the "Supplemental Cash Distribution") that provides such Eligible Corporate Account Holder with total consideration (including any past distribution of Cash received under the Plan) equal to the Corporate Cryptocurrency Price (as defined below). Eligible Corporate Account Holders who are in the Convenience Class will not have an election and will receive the Supplemental Cash Distribution. This distribution will be referred to as the "Supplemental Corporate Creditor Distribution." Any supplemental distributions will be subject to the setoffs discussed *infra*.

   (b)    The "Corporate Cryptocurrency Price" shall be equal to the actual Cash proceeds received when the Post-Effective Date Debtors sell the BTC and ETH allocated to Eligible Corporate Account Holders at market prices following the Election

1

Deadline as set forth herein (less setoffs that are calculated at the BTC Average Price and the ETH Average Price as set forth herein). Solely for those Eligible Corporate Account Holders who settled withdrawal preference exposure and a setoff of their distributions under the Plan was taken, the Corporate Cryptocurrency Price will be calculated using the prices for BTC and ETH in effect at the time such setoff was taken (instead of the BTC Average Price and the ETH Average Price).

(c)     "Eligible Corporate Account Holder" means any Account Holder who is a non-individual (i.e., anyone who is not a natural person such as a trust, LLC, partnership, corporation, or other non-individual entity) that is organized in a Supported Jurisdiction (as defined in the Distribution Addendum) to which Coinbase makes distributions under the existing Distribution Addendum with Coinbase (an "Eligible Country").[1]

(d)     "BTC Average Value" means the average of the closing price for BTC over the period from February 22, 2024 through August 12, 2024, i.e. $64,597;

(e)     "ETH Average Value" means the average of the closing price for ETH over the period from February 22, 2024 through August 12, 2024, i.e. $3,341;

3.   Election/Initial Implementation Process:

(a)     The Parties will file a joint motion to approve a distribution to Eligible Corporate Account Holders (the "Distribution Motion"), which Distribution Motion will fully resolve the Corporate Creditor Motion and the Australian Corporate Creditor Distribution Motion (which will be held in abeyance until the Distribution Motion is approved).

(b)     The Distribution Motion will seek an order approving the Supplemental Corporate Creditor Distribution (such order being in form and substance reasonably acceptable to the Parties) and the following election process:

   i.   Once the Distribution Motion is granted, the Post-Effective Date Debtors will provide an election form (the "Election Form") to all Eligible Corporate Account Holders, who will have 30 days to elect whether to receive the Supplemental Cryptocurrency Distribution or the Supplemental Cash Distribution. Eligible Corporate Account Holders who do not make any election by the end of the 30-day period will default to the Supplemental Cash Distribution. The Post-Effective Date

---

[1]     [A list of Eligible Countries will be attached to the final term sheet prior to filing of approval motion.] Corporate Account Holders that are organized in a country that is not an Eligible Country would never have been able to receive Liquid Cryptocurrency under the Plan through the provisions permitting Cash distributions to creditors in countries without a Distribution Agent, and so these corporate Account Holders will not receive any distribution under the Settlement.

Debtors will make best efforts to send out the form within 5 business days from court approval of the Distribution Motion.

ii. Eligible Corporate Account Holders who timely elect for the Supplemental Cryptocurrency Distribution (the "Coinbase Opt-In") will have to successfully complete Coinbase's onboarding process (unless such Eligible Corporate Account Holder has an existing eligible Coinbase institutional account, in which case such account shall be used for distribution purposes, subject to the terms of section 3(b)(vi)), and there is no guarantee as to the precise timing of that process or whether a creditor will ultimately receive approval from Coinbase.  At the end of the Election Period, the Post-Effective Date Debtors shall provide to Coinbase the valid email addresses of all electing creditors who have made the Coinbase Opt-In (the "Opt-In Emails").  The Post-Effective Date Debtors will provide all Opt-In Emails to Coinbase simultaneously.  Coinbase shall use commercially reasonable efforts to deliver an invitation to electing creditors within 14 days of the date that Coinbase receives the Opt-In Emails from the Post-Effective Date Debtors.  Electing creditors must initiate the onboarding process within 14 days of the date such creditors receive an invitation to onboard to Coinbase.  Creditors will have 30 days to provide all initial onboarding materials to Coinbase following Coinbase's initial request for such materials (it being understood that if Coinbase has supplemental requests after reviewing the initial onboarding materials, those may be requested and provided after this 30 day period expires).  Creditors must respond to any supplemental request(s) from Coinbase within 14 days of any such supplemental request(s).  As part of making the Coinbase Opt-In, creditors will have to agree to release and hold harmless both Coinbase, the Plan Administrator and the Post-Effective Date Debtors (and their respective agents and advisors) for (i) any change in market prices between the time of the Distribution Motion and when the Supplemental Cryptocurrency Distribution is made and (ii) any claim related to such Creditor's ability to onboard to Coinbase's platform and/or the timing of such onboarding, subject to customary exclusions for gross negligence and willful misconduct (it being understood and agreed by the parties to this Term Sheet that the facts and circumstances giving rise to the Corporate Creditor Motion and the Australian Distribution Motion did not give rise to liability for gross negligence or willful misconduct on the part of the released parties).

iii. Eligible Corporate Account Holders who either are rejected from onboarding by Coinbase or are dropped from the onboarding process pursuant to section 4(e) will receive an amount of Cash equal to the Corporate Cryptocurrency Price; *provided, however*, that nothing herein shall alter the Post-Effective Date Debtors' obligation to hold cryptocurrency for customers with withdrawal preference exposure as set forth in Art. IV.K.1 of the Plan.  Each Eligible Corporate Creditor

subject to this subsection shall provide the Post-Effective Date Debtors with their payment instructions for a Fiat distribution. Within fourteen (14) days after receiving such payment instructions, the Post-Effective Date Debtors will use best efforts to initiate the procedures set forth in paragraph (e) below with respect to such Eligible Corporate Creditor.

iv. Each eligible Corporate Account Holder who elects for the Supplemental Cash Distribution will have the option to elect to receive its distribution of Cash through (a) Hyperwallet, (b) check, or (c) wire transfer. In each case, the Plan Administrator will use commercially reasonable efforts to honor such election; *provided* that the Plan Administrator cannot guarantee that any particular option will be available for any particular individual creditor (for example, and without limitation, a creditor may be banned by PayPal, or unable to cash a $USD check in their jurisdiction). Creditors will have to provide further information depending on the type of Cash distribution elected (for example, an appropriate mailing address for a check, basic KYC information for a beneficial owner for Hyperwallet, or wire transfer instructions for a wire transfer). The Plan Administrator shall use best efforts for wire transfer distribution attempts to be made within seven (7) to fourteen (14) days after a creditor provides accurate wire information. Wire transfer distributions may be delayed, among other causes, if the provided information is not accurate or as a result of restrictions enforced by beneficiary or intermediary banks.

v. The Post-Effective Date Debtors will use best efforts to make an initial attempt of the Supplemental Cash Distribution within 14 days of the end of the election period and the submission of required information to the Post-Effective Date Debtors, but there is no guarantee as to the precise timing of that process, given that creditors will have to supply correct payment information in order to get paid, and the creditor's beneficiary bank, or intermediary bank, may reject or delay these payments.

vi. Creditors will have to agree to release and hold harmless the Plan Administrator and the Post-Effective Date Debtors (and their respective agents and advisors) for any change in market prices between the time of the Distribution Motion and when the Supplemental Cash Distribution is made.

vii. The Election Form will include requests for the Eligible Corporate Account Holders to provide, and such holders shall provide, the following information, as applicable:

1. If the Eligible Corporate Account Holder elects the Supplemental Cryptocurrency Distribution, whether the Eligible Corporate Account Holder has an existing eligible Coinbase institutional account, and if so, that Coinbase and the Plan

4

Administrator are authorized and directed to share data between themselves regarding such Eligible Corporate Account Holder for the purpose of effectuating the distribution; provided that such Eligible Corporate Account Holders agree to participate in any ordinary course account matching or KYC/AML refresh that Coinbase may require as necessary to render those accounts eligible to receive distributions.

2.  If the Eligible Corporate Account Holder elects the Supplemental Cash Distribution:

a.  To receive such distribution by check, the address to which the check should be sent;

b.  To receive such distribution by wire, the detailed instructions needed by the Plan Administrator to effectuate the wire transfer; or

c.  To receive such distribution by Hyperwallet, basic KYC information for at least one beneficial owner.

(c)  Upon filing the Distribution Motion, the Post-Effective Date Debtors will earmark an amount of Liquid Cryptocurrency from the disputed claims reserve equal to the amount of Liquid Cryptocurrency needed if every eligible creditor elects for the Supplemental Cryptocurrency Distribution. That Liquid Cryptocurrency will be distributed to those creditors that affirmatively elect the Supplemental Cryptocurrency Distribution, successfully onboard with Coinbase, and meet other requirements.

(d)  The Post-Effective Date Debtors will sell at market prices the Liquid Cryptocurrency allocated to Eligible Corporate Account Holders who do not affirmatively elect for the Supplemental Cryptocurrency Distribution (or otherwise are unable to receive the Supplemental Cryptocurrency Distribution as set forth in this Term Sheet, including those that do not successfully onboard at Coinbase or are "dropped" from the Supplemental Cryptocurrency Distribution as set forth in this Term Sheet), and send the proceeds to those creditors. More specifically, the Post-Effective Date Debtors will use best efforts to sell the Liquid Cryptocurrency for each applicable Eligible Corporate Account Holder within seven (7) to fourteen (14) days of the anticipated first distribution for each Eligible Corporate Account Holder (for wire transfers and Hyperwallet transfers, a test transaction shall be completed prior to the Post-Effective Date Debtors selling the cryptocurrency to ensure that the sale takes place as soon as practicable prior to a successful Cash distribution). Upon completing an Eligible Corporate Account Holder's distribution, the Plan Administrator shall provide a notice of successful distribution, which shall notify such creditor of the amount of cryptocurrency sold and the market price of the sale for such distribution.

(e)     For the avoidance of doubt, this Settlement will settle the dispute related to the initial distribution made available for all eligible creditors as of the Effective Date; for subsequent distributions, a new distribution record date will be set under the Plan and distributions will be made on that basis. To the extent an Eligible Corporate Account Holder successfully onboards with Coinbase, that subsequent distribution will be made in Liquid Cryptocurrency to the extent Coinbase is still an active Distribution Agent.

(f)     <u>Illustration of Supplemental Corporate Creditor Distribution</u>: If an Eligible Corporate Account Holder was entitled to receive 1 BTC and 10 ETH under the Plan, but received approximately $68,748 in Cash for such Liquid Cryptocurrency at January 16, 2024 prices pursuant to the Plan ($42,972.99 per BTC and $2,577.48 per ETH), that Eligible Corporate Account Holder will have two options:

   i.   <u>Elect the Supplemental Cryptocurrency Distribution</u>: The $68,748 in Cash previously received by the Eligible Corporate Account Holder will be valued using the ratio of (i) the cryptocurrency prices as of January 16, 2024 to (ii) the BTC & ETH Average Values. This adjustment would reflect that the Eligible Corporate Account Holder has already received the equivalent of 0.66524753 BTC and 7.714682 ETH (the "<u>Cryptocurrency Setoff Amount</u>"). Therefore, the Eligible Corporate Account Holder would be entitled to a Supplemental Cryptocurrency Distribution of the difference between their entitlement under the Plan (in this example, 1 BTC and 10 ETH) and the Cryptocurrency Setoff Amount. In this example, the Supplemental Cryptocurrency Distribution would be 0.33475247 BTC and 2.285318 ETH (resulting from 1 BTC minus 0.66524753 BTC and 10 ETH minus 7.714682 ETH). This assumes that such Eligible Corporate Creditor will ultimately be successfully onboarded at Coinbase. If for any reason the Eligible Corporate Creditor is unable to receive the Liquid Cryptocurrency (e.g., the creditor fails to onboard or some other reason), the Post Effective Date Debtors will sell the Liquid Cryptocurrency allocated to the Eligible Corporate Creditor (less the Cryptocurrency Setoff Amount) at market prices in accordance with the process outlined for creditors receiving a Supplemental Cash Distribution.

  ii.   <u>Elect the Supplemental Cash Distribution (or if the creditor makes no timely election)</u>: After the Election Deadline, the Post Effective Date Debtors will sell the cryptocurrency equivalent of their Supplemental Cryptocurrency Distribution amounts (described in the example above) in the market as close in time to the Cash distribution as possible to ensure that the creditors receive as close to a current market price as possible (using the process described below). Illustratively assuming that the market price received for BTC is $60,000 and ETH is $3,000, the Eligible Corporate Account Holder will receive a Supplemental Cash Distribution of approximately $26,941.10 (the proceeds of the sale of 0.33475247 BTC and 2.285318 ETH, which is the 1 BTC and

6

10 ETH the creditor was entitled to under the Plan, less the Cryptocurrency Setoff Amount).

4.   <u>Supplemental Agreement with Coinbase</u>.   Coinbase will agree to help implement the Settlement, and as part of doing so, will enter into a supplement to its existing Coinbase Prime Agreement (and the Distribution Addendum thereto) as modified by the Letter Agreement each dated as of October, 20, 2023 with the following key terms (the full supplement will be approved in the Distribution Motion):

(a)   <u>Standing Instruction</u>: Pursuant to the Distribution Addendum, Celsius will instruct Coinbase to distribute Liquid Cryptocurrency to those creditors who: (i) make the Coinbase Opt-In, (ii) complete Coinbase's KYC/AML process, (iii) are in an Eligible Country, and (iv) can be matched to Celsius' records (such an instruction the "Standing Instruction"). The Standing Instruction will survive the end of the term of the existing Distribution Addendum. Coinbase will be authorized to take actions necessary to comply with the Standing Instruction (even after the expiration of the Distribution Addendum), but Coinbase's and the Post-Effective Date Debtors' obligations under the Distribution Addendum after the term thereof expires will otherwise be governed in accordance with the terms of the Distribution Addendum.

(b)   <u>Continued Onboarding</u>: Notwithstanding the expiration of the term of the Distribution Addendum, Coinbase will continue the onboarding process for creditors who make the Coinbase Opt-In until such creditors have (i) successfully onboarded or (ii) Coinbase has reached a final determination that such Eligible Corporate Account Holders cannot satisfy Coinbase's KYC/AML and onboarding requirements (subject to the timing considerations below).

(c)   <u>KYC and Onboarding Process</u>: Creditors will be subject to the same KYC/AML and onboarding requirements, prioritization, process, ordering, and treatment as any similarly-situated ordinary course Coinbase institutional customer, and Coinbase may take all steps consistent with its ordinary course practices to manage the volume of creditors.

(d)   <u>KYC Determination</u>: Coinbase will provide a final determination with respect to the KYC/AML eligibility or ineligibility of all creditors who make the Coinbase Opt-In. However, Coinbase is not obligated to successfully onboard any creditor within any particular period of time. Consistent with its legal obligations, Coinbase is under no circumstance required to tell a creditor why it may have failed its onboarding process.

(e)   <u>Timing</u>: Creditors who do not initiate the process of opening a Coinbase Prime Account or satisfy document or information requests on the timeline described in section 3(b)(ii) will be dropped from Coinbase and provided with a Supplemental Cash Distribution with no appeal or recourse rights. Electing creditors will acknowledge that no assurances can be made as to the precise timing of the

onboarding process, any of the steps that comprise it, or the final determination of any creditor's eligibility.

(f)    <u>Onboarding Fee</u>: Consistent with the treatment of the initial 100 corporate creditors, Coinbase will waive the Prime Account onboarding fee for new accounts.

(g)    <u>Additional Terms</u>

        i.    Creditors can opt out of Coinbase at any time and instead receive a Supplemental Cash Distribution as set forth herein.

        ii.    Electing creditors who do not already have existing Coinbase institutional accounts, will create a Prime Account and must agree to Coinbase's standard Prime Brokerage Agreement governing Prime Accounts without modification.

        iii.    Other terms of the existing Coinbase agreement between the Debtors and Coinbase (the "<u>Coinbase Prime Agreement</u>," and the distribution agreement attached thereto the "<u>Distribution Addendum</u>") will continue to govern except as expressly modified herein or in the supplemental agreement between Coinbase and the Post-Effective Date Debtors, which will be attached to the Distribution Motion and approved by the Court.

5.    <u>Supporting Parties</u>:  The Parties that will support the Distribution Motion will be:

(a)    the post-effective date debtors (collectively, the "<u>Post-Effective Date Debtors</u>," and prior to the Effective Date, the "<u>Debtors</u>");

(b)    Coinbase, Inc. ("<u>Coinbase</u>"); and

(c)    the members of the ad hoc committee of corporate creditors (the "<u>Ad Hoc Committee of Corporate Creditors</u>").

6.    <u>Implementation</u>:  The Plan Administrator shall be empowered to take all actions reasonably necessary to implement the Settlement and make the distributions contemplated hereby.  For the avoidance of doubt, (a) the various release, exculpation and limitation of liability provisions in the Plan and the Plan Administrator Agreement shall apply to the Plan Administrator's good faith actions to implement the Settlement, and (b) neither the Plan Administrator, the Post-Effective Date Debtors, nor Coinbase (nor their respective agents or advisors) shall have any liability on account of fluctuating cryptocurrency market prices in making the transactions underlying the Supplemental Corporate Creditor Distribution.

Appointment of Jarred Herzberg as a "Corporate Creditor Representative," whose reasonable fees and expenses, including counsel fees (if and as reasonably necessary), in connection with this role will be paid from the Disputed Claims Reserve.

The Corporate Creditor Representative shall have meetings (which may be virtual) with representatives of the Plan Administrator on a regular basis to ask questions and receive updates on the status of distributions under the Settlement and key issues (this meeting is expected to be weekly when the Settlement is first being implemented, with meetings being more or less frequent as are appropriate under the circumstances). The Plan Administrator will provide the Corporate Creditor Representative with weekly metrics on distributions (e.g., how many payments were attempted, completed and failed and to the extent possible, providing the key reasons for failures).

The Corporate Creditor Representative shall have standing before the Bankruptcy Court to enforce the terms of this Settlement. In addition, the Plan Administrator will include an update on the status of distributions under this Settlement in monthly reports to the Court, and will share a draft of that section of the monthly report with the Corporate Creditor Representative at least two days before filing it with the Court, and the Plan Administrator will include any statement that the Corporate Creditor Representative requests be included in the monthly report that is filed with the Court.

Eligible Corporate Creditors may route questions regarding implementation of the Settlement to the Corporate Creditor Representative.

In the event of a failed distribution attempt, the Plan Administrator will use best efforts to provide the affected Eligible Corporate Creditor with an update to include the detail regarding the failed distribution attempt within 7 days of the Plan Administrator having notice of the failed attempt.

7. <u>Compensation for the Ad Hoc Committee of Corporate Creditors</u>:  The Parties recognize the contribution of the Ad Hoc Committee of Corporate Creditors and its members to the Debtors' estate and to the bankruptcy process in bringing its motions and in participating in the Mediation. As a material part of this settlement and as partial consideration for the releases contemplated herein, the Parties agree that the Post-Effective Date Debtors will compensate the Ad Hoc Committee of Corporate Creditors and its counsel in the aggregate amount of $1.5 million.

8. <u>Mutual Release of Claims</u>:  Each Party agrees to release (and the Distribution Motion shall approve such release) the other Parties and their respective related parties (including without limitation the Plan Administrator, other employees, and advisors) from any and all claims, demands, losses, rights, and causes of action of any nature whatsoever that have been, could have been, or can be asserted in the Action or that could have been asserted or could in the future be asserted in any forum, whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law that arise out of or are based upon any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in the Corporate Creditor Motion or otherwise relating to distributions under the Plan (including, without limitation, under the Settlement); <u>provided</u> that the foregoing shall not release any Party's obligations under the Settlement in accordance with the terms thereof.

9

9.  Binding Agreement:  This Term Sheet is intended by the Parties to be a binding agreement that sets forth material terms and obligations of the Parties in connection with a settlement, and the Parties shall use their best efforts to consummate the Settlement contemplated herein, except that nothing in this section 9 alters the terms of section 1 above.  The undersigned counsel represents and warrants that they have authority to enter into this binding Term Sheet on behalf of their respective clients, as set forth below, and their representatives, agents, heirs, and any successors and assigns permitted under this Agreement and applicable law.  This Term Sheet, once entered into, shall be irrevocable.  There are no other persons whose joinder in or consent to this Term Sheet is necessary to make fully effective the Term Sheet's provisions.

10. Stay of Proceedings:  Upon execution of this Term Sheet, the Parties agree to cease all litigation activities against each other (except those related to the negotiation and filing of the Distribution Motion) and shall jointly request that the Court hold the Corporate Creditor Motion in abeyance pending a resolution of the Distribution Motion.  The Corporate Creditor Motion shall be withdrawn with prejudice once the Distribution Motion is approved.

11. No Admission:  The Parties agree that the Settlement shall not be construed as an admission or evidence of any violation of any law or admission as to the truth of any allegation.

12. Choice of Law:  The Settlement shall be governed by New York law.

13. Counterparts:  This Settlement Term Sheet may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the Parties to all of the counterparts had signed the same instrument.  Further, a faxed or electronic copy of an executed counterpart shall have the same force and effect as an original.

*[Signature Pages Follow]*

10

IN WITNESS WHEREOF, the Parties execute this Settlement Term Sheet as of the date the last Party delivers an executed counterpart of this Settlement Term Sheet.

**PLAN ADMINISTRATOR**

(on behalf of itself and the Post-Effective Date Debtors)

By:    */s/ Christopher S. Koenig*
Name:  Christopher S. Koenig
Title:   Counsel to the Plan Administrator

*[Signature Page to the Settlement Term Sheet]*

**COINBASE, INC.**

By:     _/s/ Thomas S. Kessler_
Name:  Thomas S. Kessler
Title:   Counsel to Coinbase Inc.

**AD HOC COMMITTEE OF CORPORATE CREDITORS**

By:    */s/ Joseph E. Sarachek*
Name:  Joseph E. Sarachek
Title:   Counsel to the Ad Hoc Committee of Corporate Creditors

*[Signature Page to the Settlement Term Sheet]*

## Exhibit 2

**Supplemental Coinbase Agreement**

*Execution Copy*

August [•], 2024

Celsius Network LLC, Celsius Network LTD, Celsius Networks Lending LLC, Celsius Lending LLC,
Celsius EU UAB
50 Harrison St., Suite 209F
Hoboken, NJ 07030
Attention [•]

Ladies and Gentlemen:

Reference is made to that certain Coinbase Prime Agreement, dated October 20, 2023 (the "Coinbase Prime Agreement"), among Celsius Network LLC, a Delaware limited liability company, Celsius Network Limited, a company incorporated under the laws of the United Kingdom, Celsius Lending LLC, a Delaware limited liability company, Celsius Networks Lending LLC, a Delaware limited liability company, and Celsius EU UAB, a company incorporated under the laws of Lithuania (together, with each of their successors and assigns as permitted hereunder, "Client"), and Coinbase, Inc. ("Coinbase"), on behalf of itself and as agent for Coinbase, Coinbase Custody Trust Company, LLC ("Coinbase Custody") and, as applicable, Coinbase Credit, Inc. ("Coinbase Credit," and collectively with Coinbase and Coinbase Custody, the "Coinbase Entities"), as supplemented by that certain Letter Agreement between Client and the Coinbase Entities dated October 20, 2023 (the "First Letter Agreement"), and as otherwise modified, amended and supplemented from time to time. In connection with the Coinbase Prime Agreement, the Parties agree to the terms of this Second Letter Agreement (the "Second Letter Agreement") as follows:

**1.    Definitions.**  All capitalized terms used in this Letter Agreement and not otherwise defined herein shall have the meanings assigned to such terms in the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), or, if such terms are not defined in the Coinbase Prime Agreement, the meanings ascribed to them in the Settlement Term Sheet (as defined in Section 4 of this Second Letter Agreement).

**2.    Survival.**  Except as otherwise expressly set forth herein (including, for the avoidance of doubt, in the appendices attached hereto) or as otherwise contemplated by the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), nothing in this Second Letter Agreement or the Settlement Term Sheet shall create any obligations that extend beyond the termination of the Coinbase Prime Agreement or the termination or expiration of the Term of the Distribution Addendum (as amended hereby) (the date of the expiration of the Term of the Distribution Addendum, the "Distribution Addendum Expiration Date").

**3.    Account Support Term.**  The second paragraph of Section 5 of the Distribution Addendum titled "Account Support Term" shall be deleted and is hereby replaced as follows: "***Account Support Term****. Notwithstanding the above Term of this Distribution Addendum, with respect to each New Crypto Account, Coinbase shall support Distributions for each New Crypto Account until November 9, 2025 (the "Account Support Term Expiration Date," and the period between the expiration of the Term of this Distribution Addendum and the Account Support Term Expiration Date, the "Account Support Term"); provided, however, that nothing herein or in the Distribution Addendum affects the termination rights Coinbase may have with respect to any retail or institutional Coinbase account during the Account Support Term or after the Account Support Term Expiration Date.*"  Distributions to New Crypto Accounts during the Account Support Term shall be "Account Support Distributions." For the avoidance of doubt, an Electing Creditor that completes the Onboarding Process and receives a Supplemental Cryptocurrency Distribution shall thereafter have a New Crypto Account. The frequency of Account Support Distribution attempts per month for retail Claimants shall be once per month during the Account Support Term. The frequency of Account Support Distribution attempts and Supplemental Cryptocurrency Distribution attempts, as applicable, to

*Execution Copy*

institutional Claimants shall be weekly during the first two months of the Account Support Term and once per month thereafter.

**4.     Settlement Term Sheet.**  The rights of Client, the rights of Coinbase, and the obligations of Client and Coinbase to each other as set forth in the Settlement Term Sheet filed at Docket No. [•] in the case *Celsius Network LLC, et. al.* Case No. 22-10964-MG (Bankr. S.D.N.Y.) (the "Settlement Term Sheet") are incorporated by reference.  Notwithstanding the foregoing, the obligations of the Coinbase Entities arising under this Second Letter Agreement are solely to Client, and the Coinbase Entities shall have no obligations to any Claimant absent a separate agreement established between the Coinbase Entities and such Claimant (for the avoidance of doubt, this does not alter the Coinbase Entities' obligations with respect to the process of Onboarding prospective Claimants set forth in the Settlement Term Sheet, but merely clarifies that such obligations are owed to Client and not to any Claimant).

**5.     Supplemental Distribution Fees.**  The Supplemental Distribution Fee Schedule attached hereto as Appendix A contains the economic terms for purposes of Section 1 of the Settlement Term Sheet.  Client shall work in good faith to request that the Court redact or seal the contents of Appendix A.

**6.     Supplemental Distribution Addendum.**  The Supplemental Distribution Addendum attached hereto as Appendix B contains the supplemental agreement for purposes of Section 4 of the Settlement Term Sheet.

**7.     Conflicts.**  In the event of a conflict between the terms of this Second Letter Agreement and the terms of (i) the Coinbase Prime Agreement (including, for the avoidance of doubt, the Distribution Addendum), or (ii) the Settlement Term Sheet, the terms of this Second Letter Agreement shall control.

**8.     Incorporation.**  This Second Letter Agreement is subject to the terms of the Coinbase Prime Agreement, including, for the avoidance of doubt, and without limitation, the terms of Sections 19, 20, 22, 23, 25, 26, 27, 30, 31, 33, 35 and the Distribution Addendum.

**9.     Effectiveness.**  This Second Letter Agreement shall be made effective upon the entry of an order by the Court approving the Distribution Motion and this Second Letter Agreement (such order being in form and substance reasonably acceptable to the Parties).

***[Signatures on following page]***

2

*Execution Copy*

Sincerely,

**COINBASE, INC. For itself and as agent for the Coinbase Entities**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**ACCEPTED:**

**CELSIUS NETWORK LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**CELSIUS NETWORK LTD:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**CELSIUS LENDING LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

3

*Execution Copy*

**CELSIUS NETWORKS LENDING LLC:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____


**CELSIUS EU UAB:**

**By:** _____

**Name:** _____

**Title:** _____

**Date:** _____

**Appendix A**

**<u>Supplemental Distribution Fee Schedule</u>**

**Filed Under Seal**

## APPENDIX B

## SUPPLEMENTAL DISTRIBUTION ADDENDUM

**1.    Supplemental Cryptocurrency Distributions.**  Pursuant to the terms of the Settlement Term Sheet, the Coinbase Entities shall facilitate Supplemental Cryptocurrency Distributions to Eligible Corporate Account Holders who (i) timely make the Coinbase Opt-In (such Eligible Corporate Account Holders, "Electing Creditors"), (ii) successfully complete the Onboarding Process, and (iii) for whom Client has issued an Instruction (if made before the Distribution Addendum Expiration Date) or the Standing Instruction.  For the avoidance of doubt, Coinbase also agrees to facilitate Account Support Distributions in accordance with the Distribution Addendum (as amended hereby) to Electing Creditors during the Account Support Term.

**2.    Onboarding Process.**  Pursuant to the Settlement Term Sheet, Coinbase shall review the applications of Electing Creditors, conduct its standard AML/KYC process and checks, review and request documents and materials, execute legal agreements, and take all other steps to open or refresh a Coinbase Prime account or other Coinbase institutional account for Electing Creditors consistent with its ordinary course practices (such steps and processes as may be modified by Coinbase from time to time, "Onboarding" or the "Onboarding Process").

**3.    Onboarding Queue.**  At the same time that Client delivers the Opt-In Emails to Coinbase, Client shall deliver to Coinbase a list of all Electing Creditors in the order Client desires Coinbase to proceed with the Onboarding Process (the "Onboarding Queue").  Pursuant to Section 3(b)(ii) of the Settlement Term Sheet, Coinbase shall use commercially reasonable efforts to send an invitation to Electing Creditors to submit an application to begin the Onboarding Process (such an application, the "Onboarding Application") within 14 days of the date that Coinbase receives the Opt-In Emails from Client (such invitation the "Onboarding Invitation," the date Coinbase sends the Onboarding Invitation, the "Onboarding Invitation Date" and the 30-day period after the Onboarding Invitation Date by which time Electing Creditors are required to complete the Onboarding Application, the "Application Period").  Upon the close of the Application Period, and subject to the terms of this Second Letter Agreement and the Settlement Term Sheet, Coinbase shall administer the Onboarding Process according to the order of Electing Creditors set forth in the Onboarding Queue.  For the avoidance of doubt, Client's provision of the Onboarding Queue to Coinbase shall be the Standing Instruction described by Section 4(a) of the Settlement Term Sheet, and for the further avoidance of doubt, Electing Creditors shall not be eligible to receive a Supplemental Cryptocurrency Distribution unless and until all of the requirements described by the definition of Standing Instruction in Section 4(a) of the Settlement Term Sheet have been satisfied in respect of that Electing Creditor (including, without limitation, a match with Client's records).

**4.    Onboarding Queue Management.**  Coinbase shall not be required to be actively Onboarding more than 15 Electing Creditors simultaneously; *however*, Coinbase shall work in good faith to commence the Onboarding of the first 15 Electing Creditors in the Onboarding Queue promptly following the close of the Application Period.  If, following such commencement, an Electing Creditor (i) completes the Onboarding Process, (ii) opts out of the Supplemental Cryptocurrency Distribution pursuant to Section 4(g)(i) of the Settlement Term Sheet or (iii) fails the Onboarding Process or is otherwise dropped from the Onboarding Process pursuant to the procedures set forth in the Settlement Term Sheet, Coinbase shall cease Onboarding such Electing Creditor and shall commence Onboarding of the next Electing Creditor in the Onboarding Queue, which process shall continue until Coinbase has made the final determination described by Sections 4(b) and 4(d) of the Settlement Term Sheet with respect to each Electing Creditor in the Onboarding Queue (other than those dropped pursuant to subsections (ii) or (iii) hereof).  Coinbase shall submit a report to Client describing the Electing Creditors who completed the Onboarding Process within each calendar month (such report, the "Onboarding Report").

*Execution Copy*

5.      **Communications.**  Notwithstanding Section 4 of the Distribution Addendum, Coinbase and Client shall each have the right to review and approve in its discretion (with such approval not to be unreasonably withheld), any and all (i) filings with the Bankruptcy Court, (ii) other publicly available communications, and (iii) communications that are widely distributed to Electing Creditors (including, for the avoidance of doubt, template communications created for use in response to Electing Creditor inquiries), in each case, regarding Supplemental Cryptocurrency Distributions and/or the Onboarding Process before either Party makes those communications public, or makes generally available to or sends such communications to Electing Creditors.  Client and Coinbase will work in good faith to conduct the drafting, review and approval of the communications contemplated by this Section 5 in a timely manner.  Electing Creditors with questions regarding Supplemental Cryptocurrency Distributions shall be directed to contact Client; provided that Coinbase shall communicate with Electing Creditors, according to its ordinary course business practices and consistent with the treatment of any other Coinbase institutional customer, concerning their questions regarding their status in the Onboarding Process, and each Party shall provide such ordinary course information to each other upon request, provided such request is accompanied by evidence of the relevant Electing Creditors' consent to share such information.

## **Exhibit 3**

**Notice of Supplemental Distribution to Eligible Corporate Creditors**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors. | (Jointly Administered) |

**NOTICE OF SUPPLEMENTAL**
**CORPORATE CREDITOR DISTRIBUTION AND ELECTION FORM**

      **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A CORPORATE CREDITOR ELIGIBLE TO RECEIVE A SUPPLEMENTAL DISTRIBUTION AND HAVE THE OPPORTUNITY TO ELECT THE FORM IN WHICH YOU RECEIVE YOUR SUPPLEMENTAL DISTRIBUTION (*I.E.*, CASH OR LIQUID CRYPTOCURRENCY). THE DEADLINE TO SUBMIT THE ELECTION FORM IS [●].[2]  PLEASE READ THIS NOTICE IN ITS ENTIRETY FOR FURTHER INFORMATION.**

      **PLEASE TAKE NOTICE THAT** on August 29, 2024, the post-effective date debtors (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors"), the ad hoc committee of corporate creditors (the "Ad Hoc Committee of Corporate Creditors"),

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    [NTD:  Date to be thirty (30) days after service of the Election Forms.]

and Coinbase, Inc. ("Coinbase," together with the Post-Effective Date Debtors and the Ad Hoc Committee of Corporate Creditors, the "Parties") filed the *Joint Motion Seeing Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. [●]] (the "Motion").[3]  For a more detailed description of the Supplemental Corporate Creditor Distribution, please review the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** on [●], 2024, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. [●]] (the "Supplemental Corporate Creditor Distribution Order") approving the Motion, including the settlement reached by and among the Parties.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this Notice because you have been identified as an Eligible Corporate Creditor with the opportunity to elect to receive your Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency or Cash by submitting the election form attached hereto as **Exhibit A** (the "Election Form").  Eligible Corporate Creditors that choose the Cash option will also have the option to elect whether to receive their Supplement Cash Distribution by check, wire transfer, or Hyperwallet; *provided* that the Plan Administrator cannot guarantee that any particular option will be available for any particular creditor for a several reasons including, without limitation, that a creditor may be banned by PayPal, or unable to cash a $USD check in their jurisdiction.

**PLEASE TAKE FURTHER NOTICE THAT** the Post-Effective Date Debtors expect that Eligible Corporate Creditors who elect to receive their Supplemental Corporate Creditor Distribution in Cash will receive their distribution much faster.  Specifically, Eligible Corporate Creditors that elect to receive a Supplemental Cryptocurrency Distribution must undergo an extensive KYC process with Coinbase in order to open a Coinbase institutional account before they can receive their Supplemental Cryptocurrency Distribution.  Moreover, depending on how many Eligible Corporate Creditors elect to receive a Supplemental Cryptocurrency Distribution, it could take substantially longer to open a Coinbase institutional account, which is required for corporate creditors to receive a Liquid Cryptocurrency distribution, than it would to receive a Cash distribution.  Specifically, the Post-Effective Date Debtors believe that Supplemental Cash Distributions will be much faster than the Supplemental Cryptocurrency Distributions because Coinbase will only be processing fifteen Eligible Corporate Creditors at a time through its KYC process.

**PLEASE TAKE FURTHER NOTICE THAT** for those Eligible Corporate Creditors that elect Cash, the Post-Effective Date Debtors will sell Liquid Cryptocurrency at market prices at a point in time that is as close as reasonably possible to the Supplemental Cash Distribution as further

---

[3]   Capitalized terms used by not defined herein shall have the meaning ascribed to them in the Motion, the Corporate Creditor Supplemental Distribution Order, the Corporate Creditor Settlement Term Sheet, or the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, modified, and supplemented from time to time, the "Plan"), as applicable.

described in the Motion.  The process for selling Liquid Cryptocurrency to make Cash distributions has been approved by the Court pursuant to the Supplemental Corporate Creditor Distribution Order.  For the avoidance of doubt, pursuant to the Plan and accompanying documents, the Plan Administrator will only retain liability for actions that constitute gross negligence, willful misconduct, or fraud.

**PLEASE TAKE FURTHER NOTICE THAT** all Eligible Corporate Creditors that elect to receive their Supplemental Corporate Creditor Distribution in Cash, will also receive all future distributions in Cash.

**PLEASE TAKE FURTHER NOTICE THAT** any Eligible Corporate Creditor that does not submit a completed Election Form by [●] will receive their Supplemental Corporate Creditor Distribution in Cash.

**PLEASE TAKE FURTHER NOTICE** that copies of the pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page left intentionally blank.]*

New York, New York
Dated: [●]

_/s/ Draft_
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted _pro hac vice_)
Ross M. Kwasteniet, P.C. (admitted _pro hac vice_)
Christopher S. Koenig
Dan Latona (admitted _pro hac vice_)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

_Counsel to the Post-Effective Date Debtors_

## Exhibit A

**Election Form**

## ELECTION FORM

### ELIGIBLE CORPORATE CREDITORS

### <u>ELECTION TO RECEIVE A SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION IN CASH OR LIQUID CRYPTOCURRENCY</u>

**PLEASE READ THIS ELECTION FORM AND THE INSTRUCTIONS BELOW CAREFULLY BEFORE COMPLETING THE ELECTION FORM TO SELECT WHETHER TO ELECT TO RECEIVE YOUR SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION IN CASH OR LIQUID CRYPTOCURRENCY. PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE ELECTION FORM.  IF YOU HAVE ANY QUESTIONS ABOUT THIS FORM, PLEASE CONTACT THE CORPORATE CREDITOR REPRESENTATIVE AT:  [●] OR THE POST-EFFECTIVE DATE DEBTORS AT:  <u>celsiuscreditorquestions@kirkland.com</u>.**

**THE DEADLINE TO SUBMIT THE ELECTION FORM IS [●].**

The undersigned Account Holder elects as follows:

<u>Item 1</u>.          **Eligible Corporate Creditor Supplemental Distribution Election.**

☐     **I elect to receive the Supplemental Corporate Creditor Distribution in <u>Liquid Cryptocurrency</u>.**

☐     **I elect to receive the Supplemental Corporate Creditor Distribution in <u>Cash</u>.**

**Item 2.**          **Liquid Cryptocurrency Election for Eligible Corporate Creditors.**

Eligible Corporate Creditors who have elected to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency in Item 1 should make the additional election below, if applicable.  Eligible Corporate Creditors who wish to receive their Supplemental Corporate Creditor Distribution in Cash should not make an election in Item 2.

If you have an existing Coinbase institutional account in the same name as your Celsius corporate account, please check the below box and insert the e-mail associated with your Coinbase institutional account:

☐     **I have an existing Coinbase institutional account in the same name as my Celsius corporate account.  The associated e-mail is: [INSERT HERE].  I hereby authorize Coinbase and Celsius to communicate regarding my Coinbase institutional account to process my Supplemental Cryptocurrency Distribution.**

By checking the box below, you release Coinbase, the Plan Administrator, the Post-Effective Date Debtors (and their respective agents and advisors) for (i) any change in market prices and (ii) any claim related to your ability to onboard with or ultimately receive any distribution through Coinbase and/or the timing of such onboarding or distribution except for actions that constitute gross negligence, willful misconduct, or fraud.  By checking the box below, you also authorize

Coinbase and the Post-Effective Date Debtors (and their respective agents and advisors) to share communications, data, and other information with each other to further facilitate the Supplemental Cryptocurrency Distribution.

***YOU MAY NOT ELECT THE SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION WITHOUT CHECKING THE BOX BELOW. IF YOU DO NOT CHECK THE BOX BELOW, YOU WILL RECEIVE A SUPPLEMENTAL CASH DISTRIBUTION INSTEAD.***

☐      **I have read, understand, and agree to the paragraph above.**

**Item 3**.            **Cash Election for Eligible Corporate Creditors.**

Eligible Corporate Creditors who have elected to receive their Supplemental Corporate Creditor Distribution in Cash in Item 1 should make the additional election below. Eligible Corporate Creditors who wish to receive their Supplemental Corporate Creditor Distribution in Liquid Cryptocurrency should not make an election in Item 3. For the avoidance of doubt, any Eligible Creditor who makes an election in Item 3 will be deemed to have elected to receive a Cash distribution regardless of their election in Item 1.

☐      **I elect to receive my Supplemental Cash Distribution by <u>check</u>. The address to which the check should be mailed is: [INSERT HERE].**

☐      **I elect to receive my Supplemental Cash Distribution by <u>wire transfer</u> and provide the wire transfer instructions needed by the Plan Administrator to effectuate the wire transfer. The filled out wire instruction form is attached hereto. [ATTACHED].**

☐      **I elect to receive my Supplemental Cash Distribution by <u>Hyperwallet</u> and will provide basic KYC information for at least one beneficial owner of the applicable institutional creditor to Hyperwallet to effectuate the distribution.**

**PLEASE COMPLETE AND SUBMIT THIS ELECTION FORM IN ACCORDANCE WITH THE INSTRUCTIONS CONTAINED HEREIN BY [●]. IF YOU DO NOT TIMELY RETURN THIS ELECTION FORM BY [●], YOUR SUPPLEMENTAL CORPORATE CREDITOR DISTRIBUTION WILL BE MADE IN *<u>CASH</u>*.**

<u>**IF YOU HAVE ANY QUESTIONS REGARDING THIS ELECTION FORM OR THESE INSTRUCTIONS, PLEASE EMAIL THE POST-EFFECTIVE DATE DEBTORS AT: celsiuscreditorquestions@kirkland.com OR THE CORPORATE CREDITOR REPRESENTATIVE AT [●].**</u>