**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*[1]<br><br>Post-Effective Date Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

## STATEMENT RELATING TO THE SELECTION OF COINBASE AS DISTRIBUTION AGENT FOR LIQUID CRYPTOCURRENCY TO CORPORATE AND INTERNATIONAL CREDITORS

White & Case LLP ("**W&C**"), the former counsel to the Official Committee of Unsecured Creditors (the "**Committee**"),[2] submits this statement relating to the pending issues regarding distributions to corporate creditors and in light of the questions raised by the Court at the July 29, 2024 omnibus hearing.

1.  W&C was retained as counsel to the Committee effective as of July 29, 2022 [Docket No. 829].

2.  As the Debtors' plan of reorganization and its distribution scheme were being formulated, the Committee understood that some constituents preferred recoveries in cryptocurrency, rather than in fiat currency. The Committee sought to ensure that distributions in cryptocurrency were made to as many unsecured creditors who desired distributions in that form

---

[1] The Post-Effective Date Debtors (and prior to the effective date of the confirmed plan of reorganization, the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Following the Effective Date, the Committee survived solely for the purpose of filing, prosecuting, reviewing and objecting to any application for compensation and reimbursement of expenses filed pursuant to Article II.B of the Plan. *See* Plan, Art. XIII, K. All fee applications, other than the application of RSM US LLP ("**RSM**") have been granted on a final basis. The objection deadline with respect to RSM's application has now passed.

as was possible and practicable.

3. The Plan and Disclosure Statement[3] were drafted and prosecuted by the Debtors. The Committee supported the Plan, commented on the Plan and Disclosure Statement, and provided input into the Plan and Disclosure Statement.

4. On or about May 2023, the Debtors began considering whether and how they would distribute cryptocurrency under a potential plan of reorganization. During that time, there was a months-long process where the Debtors and the Committee participated in an auction to determine the sponsor of the plan, the Debtors drafted (and the Committee commented on) the Plan and Disclosure Statement, and the Debtors and the Committee negotiated the various provisions of the Plan. The Debtors and the Committee discussed who would distribute Liquid Cryptocurrency to creditors.

5. Prior to the submission of the Disclosure Statement, the Debtors advised the Committee that the Debtors believed partnering with PayPal was the best option to make cryptocurrency distributions in the United States. PayPal proposed to pay the Debtors (instead of charging the Debtors) to make those distributions and had the ability to make Bitcoin and Ethereum distributions everywhere in the United States, except Hawaii. PayPal was also capable of making fiat distributions in more than 300 countries. The Debtors, however, advised the Committee that PayPal could not make cryptocurrency distributions to creditors located outside the United States or to corporate creditors.

6. In light of these limitations, in late July and August 2023, the Debtors and the Committee discussed other potential options to make cryptocurrency distributions to corporate

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribe to such terms in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Dkt. No. 4289] (the "**Plan**").

2

creditors and creditors in jurisdictions not supported by PayPal. Those options included having the Debtors make the remaining distributions through their existing platform or partnering with one of three other companies as a third-party distribution agent (one of which was Coinbase).

7. The Committee informed the Debtors that the Committee did not believe that using the Debtors' existing infrastructure to make cryptocurrency distributions would work, including because (1) the Debtors did not have licenses in many (if any) international jurisdictions and would have to engage counsel in each jurisdiction to determine whether they would qualify for an exception, and (2) the Committee questioned the Debtors' ability to execute the distribution of billions of dollars of cryptocurrency, especially with a depleted workforce with a set end date for their employment.

8. The Committee communicated to the Debtors its own diligence into the other three potential distribution partners, including their financial condition, regulatory compliance, execution risk, ability to distribute to international jurisdictions with substantial amounts of creditors, and potential future legal liability. Each of the proposed distribution agents had benefits and weaknesses, and none could make distributions to all of the Debtors' creditors.

9. The Debtors advised the Committee that the Debtors believed Coinbase was the best option for international distributions. In doing so, the Debtors advised that Coinbase had also offered to provide cryptocurrency distributions to 100 corporate creditors.

10. The Committee discussed the 100 corporate creditor limit with the Debtors in August 2024. The Committee made clear that its goal and priority was to provide all corporate creditors a means to receive cryptocurrency distributions. The Committee asked whether Coinbase could increase the 100 corporate creditor limit and whether the limit was simply an issue of cost. The Debtors advised that the 100 corporate creditor limit was a firm limit based on the "know-

3

your-customer" process for corporate creditors and Coinbase's staffing levels. The Debtors also told the Committee that the Debtors had asked for Coinbase to support more corporate creditors and offered to pay more, and Coinbase had said that it could not support any additional corporate creditors.

11. In late August, following the approval of the Disclosure Statement, the four potential distribution agents proposed to distribute to international and corporate creditors were presented to the Committee at one of its regular meetings (this included the potential to use the Debtors themselves as the distribution agent). The Committee considered the benefits and issues of each proposed Distribution Agent and agreed with the Debtors' selection of Coinbase. The Committee communicated that agreement to the Debtors and that one of the primary reasons for agreeing with the Debtors was that, of the potential Distribution Agents, Coinbase could make Liquid Cryptocurrency distributions to the largest amount of creditors.

12. The Debtors negotiated the distribution agreement with Coinbase. On September 12, 2023, the Debtors shared the first draft of the Coinbase agreement with the Committee.

13. On October 20, 2023, Debtors filed a draft version of the Coinbase Agreements as Exhibit G to the *Seventh Notice of Filing of Plan Supplement* [Docket No. 3869].

14. The Debtors communicated to the Committee throughout the Plan process that they could distribute Liquid Cryptocurrency to 100 corporate creditors and did not have a Distribution Agent that was able to distribute to more than 100 corporate creditors. Accordingly, the Committee did not object to the treatment of corporate creditors or assert that the treatment of corporate creditors was different from or inconsistent with the treatment of all other creditors as set out in the Plan.

15. After the confirmation of the Plan, the Debtors continued to consult with the

4

Committee on distributions and communications to creditors. In January 2024, the Debtors discussed with the Committee how the 100 slots available to distribute Liquid Cryptocurrency to corporate creditors would be allocated. The Debtors' conveyed their proposal to choose the 100 largest corporate creditors, which comprised around 80% of the total account balances of corporate creditors. The Debtors and the Committee also discussed alternative methods, including the use of a lottery system. The Committee agreed that providing the largest creditors the available spots would provide the most Liquid Cryptocurrency to affected creditors.

16. In the discussions, the Debtors and the Committee agreed that the Debtors would reach out to the top 100 corporate accounts to see if they wanted to receive Liquid Cryptocurrency and that if they did not, the spot could be given to another corporate creditor. The Committee was not involved in that outreach to those creditors, which was handled by the Debtors.

17. The delays in the Debtors' making cash distributions to creditors after the Effective Date were unfortunate. The Committee discussed these delays with the Debtors and understood such delays were being addressed to get cash to creditors as soon as possible.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: August 30, 2024<br><br>Los Angeles, California | /s/ *Aaron Colodny*<br>**WHITE & CASE LLP**<br>Aaron Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7706<br>Facsimile: (213) 452-2329<br>Email: aaron.colodny@whitecase.com |

AMERICAS 127756798