Sean Xue
*Pro Se*
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                              )
In re:                                        )        Chapter 11
                                              )
CELSIUS NETWORK LLC, *et al.*,[1]             )        Case No. 22-10964 (MG)
                                              )
                        Debtors.              )        (Jointly Administered)
_____   )

**OBJECTION TO MOTION (ECF 7661)**

Honorable Judge Glenn,

The proposed settlement resulting from the Celsius Network corporate creditor mediation is inequitable to creditors not covered by the Corporate Creditor Ad Hoc for several reasons:

1) With the UCC no longer in existence, there was no party that represented all creditors at the mediation. The Debtors' Counsel led the mediation with an express interest to arrive at a solution that elides their own culpability for an error they and their client are responsible for.

   In the court hearing on July 29th, Your Honor stated to the Debtors' Counsel that "there will have to be discovery that you're going to pay for. And that's what's going to happen. You're going to pay for it. When I say you, your firm, your law firm's going to pay for it". Hence, there is a clear motivation for the Debtors' Counsel to have this problem go away by having one group of creditors pay off another group of creditors at no cost to the Debtors' Counsel themselves.

   Furthermore, in the same hearing, Your Honor stated about Coinbase that "there's a very strong argument that Coinbase breached its contract". It is Coinbase's refusal to distribute to more than 100 corporate creditors that created this problem in the first place. Yet the consequences of this potential breach of contract are only borne by creditors. In the proposed settlement, Coinbase is only offering to perform the services that they should have done according to the contract.

   This then begs the question. If there is a liability, why is Coinbase not being pursued, and if there is no liability, why was the settlement agreed to by the Debtors' Counsel?

2) The terms of the settlement will allow many creditors to receive more than the number of BTC/ETH

that they would have been distributed as of the effective date. The choice to use average values for those that already received distribution in fiat, when the current market prices are significantly lower, gives those that already received distribution in fiat more BTC/ETH than they would have received at the effective date.

Distribution breakdown for creditors who already received fiat ($96m USD already distributed):

|  | BTC | ETH | USD |
|---|---|---|---|
| Settlement (average) price | $64,597.00 | $3,341.00 |  |
| Effective date price | $42,973.00 | $2,577.50 |  |
| Current price (as of Sep 3rd) | 57,498.07 | 2,424.05 |  |
| Crypto owed (on effective date) | 1,116.98 | 18,622.70 |  |
|  |  |  |  |
| Distributed (using settlement price) | $743.07 | 14366.956 |  |
| To be distributed (using settlement price) | 373.91 | 4,255.74 | **$31,815,338.19** |
|  |  |  |  |
| Distributed (using current price) | 834.81 | 19,801.57 |  |
| To be distributed (using current price) | 282.17 | -1,178.88 | **$13,366,566.16** |

Just to show the absurdity of the formula, current ETH price is lower than effective date price, yet additional payment of ETH is still due to those that already received distribution.

Furthermore, there is no distinction made between corporate creditors who elected to receive fiat distribution versus those who elected to receive crypto but were refused. The creditors who opted to receive or have already received fiat are effectively given downside protection to the price of BTC/ETH. This downside protection is not free, the cost is borne by creditors not party to the Corporate Creditor Ad Hoc.

3)  Lastly, the requested $1.5M in professional fees are excessive. This far exceeds the fees granted to all other Ad Hocs involved in the case combined, which add to $361,166.64. And these were Ad Hocs who spent many months longer working towards a consensus to have the plan passed.

| Ad Hoc | Requested | Paid |
|---|---|---|
| Custody | $740,448 | $175,622 |
| Earn | $437,867 | $101,021 |
| Withhold | $187,617 | $84,524 |
| Borrowers | $1,020,223 |  |
|  | $2,386,155 | **$361,167** |

The settlement parties may argue that this also pays for the services of having a dedicated point of

contact. However, why is this service not performed by the Plan Administrator, and why does it only cover a small group of creditors, many of whom have already received distribution, when there are multiple times more creditors outside of the corporate creditors group who have yet to receive any distribution? By the debtor's own count, 32% of the creditors have yet to receive a distribution.

I spoke in court at the last hearing about my family's difficulty in getting our distribution when there is no question about what we should receive. I have reached out to the Plan Administrator before and received no response. Why should I not enjoy the same kind of access?

Creditors outside of the Corporate Creditors Ad Hoc have no issues with any compensation that is awarded if it is coming from the Debtors' Counsel and Coinbase. However, the reality here is that non-corporate creditors are being used to pay off the corporate creditors so the Debtors' Counsel and Coinbase can avoid all potential liability. The moral hazard of bankruptcy professionals cutting corners to meet their incentive deadlines and receive their incentive awards should not be ignored.

Thank you
Sean Xue
Pro Se Creditor