WILLIAM K. HARRINGTON
United States Trustee
U.S. Department of Justice
Office of the United States Trustee
One Bowling Green
New York, NY 10004
Tel. (212) 510-0500
By:    Shara Cornell, Esq.
        Mark Bruh, Esq.
        Trial Attorneys

**Hearing Date: September 12, 2024**
**Hearing Time: 2:00 p.m.**
**Objection Date: September 5, 2024**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
                                                          :    Chapter 11
                                                          :
In re                                                     :    Case No. 22-10964 (MG)
                                                          :
CELSIUS NETWORK LLC, *et al.*,[1]                         :
                                                          :    Jointly Administered
                                                          :
                                                          :
                                                          :
                                        Debtors.          :
--------------------------------------------------------- x


## UNITED STATES TRUSTEE'S
## OBJECTION AND REQUEST FOR CLARIFICATION


[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    BACKGROUND ........................................................................................ 4

   *i.*    *Pre-Confirmation* ............................................................................. 4

  *ii.*   *Post-Confirmation* ........................................................................... 9

III.   ARGUMENT .......................................................................................... 15

  A.  A Substantially Consummated Plan Cannot be Modified. ...................... 15

  a.  The Plan was Substantially Consummated. ........................................ 15

  b.  The Plan Cannot be Modified Because it Has Been Substantially Consummated. ... 16

  i.   Legal Standards for Plan Modifications ............................................ 16

  ii.  The Motion Modifies the Plan. ......................................................... 18

  B.  All Attorneys' Fees and Costs Should Paid by Responsible Parties, Not the Debtors' Estate ................................................................................................. 20

IV.   RESERVATION OF RIGHTS ................................................................. 21

V.    CONCLUSION ....................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page (s)**

*Branchburg Plaza Assocs, L.P. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d 1998)
...……………………………………………………………………………          17

*Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*, 982 F.2d 721  (2d Cir.
1992) ……………………………………………………………………          17

*In re Indu Craft, Inc.*, 2011 Bankr. LEXIS 2545, 2011 WL 2619501, Case No. 97-
44958-RDD, (Bankr. S.D.N.Y. Jul. 1, 2011) ………………………………………...          17

*Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*, 2012 U.S. Dist. LEXIS
105219, 2012 WL 3070387, Case Nos. 11-CV-5996, *et al.* (S.D.N.Y. July 27, 2012)
……………………………………………………………………………..          16

*In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302  (11th Cir. 2023) …………………...          16

*In re American Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988) …………..          16

*In re Boylan Int'l, Ltd.*, 452 B.R. 43 (Bankr. S.D.N.Y. 2011) ………………….........          17

*In re Doral Center, Inc. v. Ionosphere Clubs (In re Ionosphere Clubs)*, 208 B.R. 812
(S.D.N.Y. 1997) …………………………………………………………………...          16

*In re Oakhurst Lodge, Inc.*, 582 B.R. 784 (Bankr. E.D. Cal. 2018) …………………          17, 19

*In re Rickel & Assoc., Inc.*, 260 B.R. 673 (Bankr. S.D.N.Y. 2001) …………………          16, 18,
19, 20

*In re Sentinel Management Group, Inc.*, 398 B.R. 281 (Bankr. N.D. Ill. 2008) …….          16

*Law v. Siegel*, 571 U.S. 415 (2014) …………………………………………………….          18

*Matter of Highland Capital Management, L.P.*, 57 F.4th 494 (5th Cir. 2023) ………          17

*SCH Corp. v. CFI Class Action Claimant*s, 597 Fed. Appx. 143 (3d Cir. 2015)
…………………………………………………………………………………...          17, 19

*SC SJ Holdings, LLC v. Pillsbury Winthrop Shaw Pittman LLP (In re SC SJ Holdings,
LLC)*, 2023 U.S. Dist. LEXIS 48320, 2023 WL 2598842, Case No. 21-10549 (JTD)
(Del. March 22, 2023) …………………………………………………………...          17

ii

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013) …………………………………………………………………………………    17

## Statutes

11 U.S.C. § 105(a) ……………………………………………………………………    18

11 U.S.C. § 1127(b) …………………………………………………………………...    *passim*

## Rules

Fed. R. Bankr. P. 2019 ………………………………………………………………    *passim*

Fed. R. Bankr. P. 9019 ………………………………………………………………    *passim*

Fed. R. Bankr. P. 9024 ………………………………………………………………    18

Fed. R. Civ. P. 60 ……………………………………………………………………    18

## Other Authorities

S.Rep. No. 989, 95th Cong, 2d Sess. 124 (1978), U.S. Code Cong. & Admin. News 1978, p. 5910) ……………………………………………………………………    16

TO:    **THE HONORABLE MARTIN GLENN,**
       **CHIEF UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee For Region 2 (The "United States Trustee"), respectfully submits this objection and request for clarification (the "Objection") to the *Notice of Joint Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* (the "Motion") in the bankruptcy case of Celsius Network LLC, *et al.* (the "Debtors").[2] In support thereof, the United States Trustee respectfully submits the following:

## I.    PRELIMINARY STATEMENT

Approximately eight months ago the Confirmed Plan (defined below) was substantially consummated. The Bankruptcy Code provides in no uncertain terms that after a confirmed plan has been substantially consummated, it can no longer be modified. 11 U.S.C. § 1127(b). Pursuant to the Motion, the Debtors now move for approval of a Settlement (defined below), pursuant to Bankruptcy Rule 9019, which would modify the Plan. Although the Debtors allege in the Motion that the Settlement simply facilitates distribution to certain creditors—the corporate creditors ("Corporate Creditors") —the new supplemental distributions come from funds earmarked in the Plan for other purposes and amount to a reallocation of creditor value and distributions under the Plan. Therefore, the Settlement—regardless of the altruistic intent to rectify a significant deficiency in the Plan—***cannot*** be approved because it modifies the substantially consummated Plan in violation of the Code.

---

[2] The Plan confirmed on November 9, 2023. This Objection refers to the post-confirmation Debtors and Debtors interchangeably.

1

The Plan funds at issue in the Settlement, while labeled as "reserves" by the Debtors in the Motion, were specifically earmarked and allocated for distribution to *other* creditors in the confirmed Plan. Votes on the Plan considered all aspects of distribution, including the anticipation of future distributions from the "reserves." Now, those future reserves will be eroded by the relief sought in the Motion. There has been no disclosure as to the impact of the Settlement on such reserves, in fiat or cryptocurrency. Giving significantly less to one group of creditors to pay another group of creditors is inappropriate and a modification of the Plan. Because the Code forbids modification of a Plan post-substantial confirmation, the Debtors should be required to clarify what their requested relief is and explain the statutory basis for that relief.

Moreover, as the Court stated at the July 29, 2024, hearing and as described in the Statement of the United States Trustee [ECF Dkt. No. 7587] (the "UST Statement"),[3] the issues at hand require the utmost transparency and a thorough investigation. This Court specifically directed counsel for the parties to provide answers as to why the intended distribution of cryptocurrency to only 100 Corporate Creditors was not included in any version of a disclosure statement, plan, or plan supplement, why this information was not brought to the Court's attention, and who is responsible for this omission. But, while trying to resolve the significant undisclosed problem associated with the failure of the Plan to have adequate systems in place to make distributions to the Corporate Creditors, the parties have failed to provide the information requested previously by the Court regarding the Plan failure, and the information currently provided is vague and lacks specificity as to how this happened, who was responsible, and why was it not properly disclosed. The parties admit that the Plan and the Plan supplements do not describe any limitation on corporate creditor distributions despite apparently never planning to allow any more than 100

---

[3] The United States Trustee incorporates and adopts the statements made in the UST Statement.

2

corporate creditors to receive corporate distributions post-substantial consummation of the Plan. But no specific explanation as to why this information was not disclosed has been provided by any party. But, while trying to resolve the significant undisclosed problem associated with the failure of the Plan to have adequate systems in place to make distributions to the Corporate Creditors, the parties have failed to provide the information requested previously by the Court regarding the Plan failure, and the information currently provided is vague and lacks specificity as to how this happened, who was responsible, and why was it not properly disclosed. The parties admit that the Plan and the Plan supplements do not describe any limitation on corporate creditor distributions despite apparently never planning to allow any more than 100 Corporate Creditors to receive corporate distributions post-substantial consummation of the Plan. But, no specific explanation as to why this information was not disclosed has been provided by any party.

Additionally, it is unclear how a Settlement negotiated with a very small subset of members of the Corporate Creditor class—those represented by the Ad Hoc Committee—can be effectuated and enforced against all members of the Corporate Creditor class. Further, the Motion was filed on only thirteen days-notice with six days to object (less than four business days) – which included the Labor Day holiday—giving parties, including almost two thousand Corporate Creditors that were not parties to the Mediation or represented at the Meditation as well as other creditors that may be impacted by the reduction in the Disputed Claims Reserve, less than one week to review substantial and material information pertinent to the Motion.

Finally, the Motion seeks to pay counsel to the Ad Hoc Committee — despite its representation of only nine creditors — while avoiding the strict requirements of the Bankruptcy Code. Any reduction in assets of the Debtors' estate, including payments to counsel to an Ad Hoc Committee modifies Plan distributions in violation of the Code.

Accordingly, the Motion must be denied.

## II.    **BACKGROUND**

### i.    *Pre-Confirmation*

1.    On July 13, 2022 ("Petition Date"), certain of the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. ECF Dkt. No. 1. On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By Order, dated July 20, 2023, the estates of Celsius Network Limited and Celsius Network LLC were substantively consolidated. ECF Dkt. No. 3058. Since the Petition Date, the Debtors have continued in possession and operated and managed their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On July 27, 2022, the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). ECF Dkt. No. 241.

3.    On July 29, 2023, the Debtors filed the Revised Disclosure Statement (the "Disclosure Statement"). ECF Dkt. No. 3117. The Disclosure Statement makes no reference to a limited distribution of cryptocurrency to only 100 corporate creditors.  The Disclosure Statement was approved on August 17, 2023. ECF Dkt. No. 3337.

4.    On September 6, 2023, the Debtors filed *Notice of Filing of September 7, 2023 Hearing Presentation* [ECF Dkt. No. 3428] (the "Sept. 7 Presentation"); *see also* July 7 Tr. at 46:13-47:1. The Sept. 7 Presentation refers on page 7 of 11 to "Top 100 Corporate Accounts" as a "User Type." *Id*. at pg. 7. The "User Details" further states that "Largest 100 corporate accounts with balances greater than ~$150K in value (approximately 80% of commercial accounts assets)." *Id*. No additional details are provided in the September 7 Presentation regarding corporate creditors

4

or corporate accounts. In fact, Debtors' counsel presentation at the September 7 Hearing is silent with respect to this salient point. There is no mention of Coinbase or a decision to limit cryptocurrency distributions to only 100 Corporate Creditors. *See, e.g.*, transcript from the September 7, 2023 Hearing (the "Sept. 7 Tr.") at 30:14-17 ("For all distributions that are not made by PayPal, we are very closing to naming a second distribution partner to facilitation the withdrawals for international users and *certain corporate accounts*") (emphasis added). The deadline for filing supplements to the proposed plan were due on September 8, 2023, after the Sept. 7 Presentation.

5.      On September 27, 2023, the Debtors filed their Amended Plan/Revised Joint Chapter 11 Plan of Reorganization (the "Plan"). ECF Dkt. No. 3577. The Plan makes no reference to a limited distribution of cryptocurrency to only 100 Corporate Creditors.

6.      With respect to a reserved funds account, the Plan provides in relevant part:

- "*Disputed and Contingent Claims Reserve*" means any reserve or account or fund for Claims that are Disputed, contingent, or have not yet been Allowed, or where the Holder is or may be subject to an Avoidance Action or pending the receipt and processing of AML/KYC Compliance Information. Plan at Art. 1, ¶ A.88.

- The Debtors (and, following the Effective Date, the Plan Administrator) shall use commercially reasonable efforts to make distributions of Liquid Cryptocurrency as provided for in this Plan to Account Holders in Liquid Cryptocurrency (as opposed to fiat) to the greatest extent possible. For the avoidance of doubt, if the Debtors or the Plan Administrator cannot make a distribution of Liquid Cryptocurrency to a particular creditor (including because no Distribution Agent is available to make such distribution), such creditor will receive a distribution of fiat. If an Account Holder's Claim is not Allowed as of the Effective Date or the associated distributions are otherwise retained on account of such Claim being subject to Withdrawal Preference Exposure, the Liquid Cryptocurrency that would otherwise be distributed on account of such Account Holder's Claim *shall be held in the Disputed and Contingent Claims Reserve in the form of Liquid Cryptocurrency* . . . If the Debtors, Post-Effective Date Debtors or Plan Administrator determine, in the exercise of their fiduciary duties and in their business judgment, that it is no longer commercially reasonable to continue

to hold Liquid Cryptocurrency in the Disputed and Contingent Claims Reserve, the Debtors, Post-Effective Date Debtors, or Plan Administrator, as applicable, shall provide notice, Filed on the docket, of the intent to sell the Liquid Cryptocurrency. Plan at Art. IV, ¶ K.1.

- To the extent the Post-Effective Date Debtors *have any Cash or other property* remaining after the Chapter 11 Cases have been closed and all payments have been made under the Plan (including all payments on account of Allowed Claims and the Plan Administrator's compensation and reimbursement) and the conclusion of all litigation being pursued by the Litigation Administrator(s), such Cash or other property *shall be distributed Pro Rata to the Holders of Claims entitled to receive Litigation Proceeds*, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; provided that if such distributions are, in the Plan Administrator's reasonable judgment, infeasible to distribute Pro Rata or for any other reason such distributions cannot be effectuated, the Plan Administrator may (i) contribute such amounts to NewCo for the benefit of holders of NewCo Common Stock in the event the NewCo Transaction is consummated or (ii) contribute such amounts to the Bankruptcy Court pursuant to chapter 129 of the Judicial Code in the event an Orderly Wind Down is consummated. Plan at Art. IV,  ¶ F.6 (emphasis added).

- On or after the Effective Date, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, any Litigation Administrator, or NewCo, as applicable, *may establish one or more reserves or accounts or funds for Claims that are Disputed, contingent, or have not yet been Allowed, or where the Holder is or may be subject to an Avoidance Action, in an amount or amounts as reasonably determined by the applicable Debtors or Post-Effective Date Debtors, as applicable, in consultation with the Committee, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim and/or the Withdrawal Preference Exposure amount associated with such Claim*. For any such reserve or account or fund, the Debtors, Post-Effective Date Debtors, the Plan Administrator, any Litigation Administrator, or NewCo, as applicable, may take the position that grantor trust treatment applies in whole or in part. To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of the any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations. Accordingly, subject to the immediately foregoing sentence, if such intended U.S. federal income tax treatment applied, then for U.S. federal income tax purposes the beneficiaries of any such account or fund would be treated as if they had received an interest in such account or fund's assets and then contributed such interests (in accordance with the Transaction Steps Memorandum) to such account or fund. Alternatively,

6

any such account or fund may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9. Plan at Art. VII, ¶ G (emphasis added).

7.    The Plan further provided that:

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, *the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.*

*The Plan shall be deemed a motion to approve the good-faith compromise and settlement* of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

Plan at Art. IV, ¶ B (emphasis added).[4]

8.    On November 9, 2023, after a multi-day confirmation trial (the "Confirmation Hearing"), the Court entered the order confirming the Plan (the "Confirmation Order"). ECF Dkt. No. 3972. Again, no mention was made of a limited distribution of cryptocurrency to only 100 corporate creditors. *See, generally*, November 9, 2023 Transcript (available upon request).

9.    The Confirmation Order *inter alia* provided that,

Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable a*nd deemed binding on the Debtors, the Post-Effective Date Debtors,* any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order (including, for the avoidance of

---

[4] *See also* Confirmation Order at ¶ 119.

doubt, NewCo), and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

Confirmation Order at ¶ 293 (emphasis added).

10.     The Confirmation Order further provides that,

Except as otherwise set forth in the Plan or this Confirmation Order, the Debtors or the Plan Administrator (acting directly or through one or more Distribution Agents) on behalf of the Post-Effective Date Debtors, ***shall make all distributions required under the Plan*** and may take such actions as are necessary or appropriate to prepare for such distributions (e.g., testing web interface functions and selling or trading any Cryptocurrency to prepare for distributions as contemplated under the Plan notwithstanding any prior limitations on such transactions); ***provided that such preparations shall not affect any Holder of a Claim or Interest's Claim, Interest, or right to a distribution***. The distributions described in the Plan and this Confirmation Order ***shall be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Plan Administrator Agreement, as applicable***, and for the avoidance of doubt, any Post-Effective Date claims or causes of actions arising from such distributions made in accordance with Article VI of the Plan against any of the Debtors. . .

*Id*. at ¶ 305 (emphasis added).

11.     With respect to the Dispute Claim Reserve, the Confirmation Order states that,

312. Disputed Claim Reserve. On or after the Effective Date, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, any Litigation Administrator, or NewCo, as applicable, may establish one or more reserves or accounts or funds ***for Claims that are Disputed, contingent, have not yet been Allowed, or where the Holder is or may be subject to an Avoidance Action, in an amount or amounts as reasonably determined by the applicable Debtors or Post-Effective Date Debtors***, as applicable, in consultation with the Committee or Litigation Administrator, as applicable, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim and/or the Withdrawal Preference Exposure amount associated with such Claim. The provisions of Article VII.G regarding the same are incorporated herein by reference and approved.

*Id*. at ¶ 312 (emphasis added).

12.     The Confirmation Order stated with respect to substantial consummation the following: "Substantial Consummation [*sic*]. ***On the Effective Date, the Plan shall be deemed to***

***have been substantially consummated*** or shall be anticipated to be substantially consummated concurrent with the occurrence of the Effective Date." *Id*. at ¶ 368 (emphasis added).

13.     The Plan went effective on January 31, 2024 and therefore also was deemed substantially consummated pursuant to the Confirmation Order on January 31, 2024.

*ii.*     ***Post-Confirmation***

14.     On May 6, 2024, BFaller RD LLC, BFaller Roth RD LLC, SFaller TRD RD LLC, SFaller RD LLC (together, the "Faller Creditors") and Jinwes LLC filed the Motion for Discovery to Support Claims made by Post-Effective Date Debtors in regard to Equitable Treatment of Corporate Creditors (the "Discovery Motion"). ECF Dkt. No. 4866.

15.     On June 3, 2024, the Faller Creditors filed their Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief [ECF Dkt. No. 4911] (the "Fallers Creditor Motion").

16.     On June 20, 2024, the Post-Effective Date Debtors filed the Omnibus Objection to the Faller Creditors' Motion (the "Debtors' Objection"). [ECF Dkt. No. 4974].

17.     The Debtors' Objection, with respect to reserves, states in relevant part:

- Finally, the Post-Effective Date Debtors' reserves—established in accordance with the Plan and approved by the Confirmation Order—***are fixed and finite***, and the Debtors simply cannot continuously "true up" creditors for every post-emergence shift in market prices. The Post-Effective Date Debtors have described the Plan's reserves extensively and why they cannot provide all corporate creditors with Liquid Cryptocurrency distributions or the value thereof as of the date of distribution." Debtors' Objection at ¶ 10 (emphasis added).

- Put differently, ***the reserves were established on the basis of the Distribution Valuation Table***. If it is cast aside, the foundation will be ripped from under the reserves, and the issues described above would be back in play. Debtors' Objection at ¶ 18 (emphasis added).

18.     With respect to distributions, the Debtors' Objection states in relevant part:

The Plan distributes all of the Debtors' assets to creditors on a pro-rata basis and is accordingly a zero-sum distribution process. ***Any distributions to fiat creditors will reduce distributions to other creditors***. That is, any additional distributions would need to be made either from the Post-Effective Date Debtors' reserves or by lowering or eliminating future distributions to other creditors on account of Illiquid Recovery Rights and Litigation Proceeds. Debtors' Objection at ¶ 20.

19.    On July 23, 2024, the Post-Effective Date Debtors filed a Supplemental Objection to the Faller Creditors' Motion (the "Reply"). ECF Dkt. No. 7535. In support thereof, the Debtors also filed the Declaration of Christopher Ferraro in Support of the Post-Effective Date Debtors' Objection to the Motion Seeking Entry of an Order (I) Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief (the "Ferraro Declaration") [ECF Dkt. No. 7536] and the Declaration of Robert Campagna in Support of the Post-Effective Date Debtors' Objection to the Motion Seeking Entry of an Order (I) Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief (the "Campagna Declaration") [ECF Dkt. No. 7537].

20.    In the Reply, the Debtors state that:

The Plan permits the Debtors or Post-Effective Date Debtors "to make any distribution in [Cash] if no Distribution Agent is reasonably available to make a Liquid Cryptocurrency distribution to any particular creditor." Plan Art. IV.G; see also Plan Art. IV.K.1 ("For the avoidance of doubt, if the Debtors or the Plan Administrator cannot make a distribution of Liquid Cryptocurrency to a particular creditor (including because no Distribution Agent is available to make such distribution), such creditor will receive a distribution of fiat."). ***Because there was no Distribution Agent "reasonably available"*** to make a Liquid Cryptocurrency distribution to all of the Debtors' corporate creditors, including those corporate creditors located in Australia, the Debtors properly scheduled such creditors to receive a Cash distribution.

Reply at ¶ 9 (emphasis added). The Reply does not state when the Debtors determined there was "no distribution agent 'reasonably available.'" The Disclosure Statement was approved on August 17, 2023. But, on September 6, 2023, the Debtors filed the Sept. 7 Presentation that mentions a 100-creditor limitation. The Plan that was ultimately confirmed was filed on September 27, 2023.

10

21.    The Reply also states that,

[a]t the time of the Disclosure Statement Hearing, the Debtors had reached an agreement with PayPal to facilitate Liquid Cryptocurrency distributions to non-corporate creditors . . . though the Debtors were negotiating with Coinbase to facilitate Liquid Cryptocurrency distributions to international creditors and had asked Coinbase to include corporate creditors, negotiations remained ongoing and Coinbase had not yet responded as to whether it would facilitate distributions to any of the Debtors' corporate creditors.

*Id*. at ¶ 11.

22.    The Reply further states that,

***The Debtors made several additional disclosures*** regarding the 100-creditor limit for Liquid Cryptocurrency distributions to corporate creditors, including on the distribution FAQ (which went live on January 11, 2024) and in the notice of the Effective Date. ***Additionally, on January 19, 2024,*** the Debtors contacted the top 250 corporate creditors, explained the limitation on the number of Liquid Cryptocurrency distributions that could be made, and requested that such creditors notify the Debtors if they would prefer a Cash or Liquid Cryptocurrency distribution.

Reply at ¶ 16 (emphasis added).

23.    On January 29, 2024, ten days after contacting the first 250 creditors, the Debtors filed a Modified Plan (the "Modified Confirmed Plan"), which incorporated the MiningCo Transaction (as defined by the Modified Confirmed Plan).[5] ECF Dkt. No. 4289. The Modified Confirmed Plan makes no reference to limitations on distributions to Corporate Creditors, a selection process that included culling 250 and then 100 of the top Corporate Creditors, or any changes to distribution.

24.    The Reply also states that "[t]he Debtors and Coinbase entered into the Coinbase [, Inc. ("Coinbase")] Agreement ***in October 2023***, and a copy of the Coinbase Agreement was

---

[5] The MiningCo Transaction was proposed by motion of the Debtors on November 30, 2023 [ECF Dkt. No. 4050], and approved by order of the Court on December 27, 2023 [ECF Dkt. No. 4172].

included in the Plan Supplement which was approved by the Bankruptcy Court as part of the Confirmation Order." Reply at ¶ 18 (emphasis added).

25.    The Coinbase Agreement was entered into and supplied to the Bankruptcy Court in advance of the Confirmation Hearing at ECF Dkt. No. 3869, Exhibit G. The Coinbase Agreement provides no reference to any limitation on corporate creditor distributions. *See, generally,* Coinbase Agreement; *see also* Reply at ¶ 18 ("The Coinbase Agreement does not explicitly state that Coinbase will only make distributions to 100 corporate creditors").

26.    Also on July 23, 2024, Coinbase filed the Declaration of Roger Bartlett in Support of the Post-Effective Date Debtors' Objection to the Motion Seeking Entry of an Order (I) Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief (the "Bartlett Declaration"). ECF Dkt. No 7538.

27.    During a hearing before the Court on July 29, 2024 (the "July Hearing"), the Court required the Debtors to file a status update within two weeks. July 29, 2024 Transcript (the "Jul. 29 Tr.") at 59:24-60:10 ("I want a status report within two weeks from today and with respect to this status report, I expect discussions with committee's counsel [] same as the plan administrator's counsel, with the U.S. Trustee, with counsel who represent any of the Creditors who are objection . . . I want this status report in writing. Hopefully it will be a single joint status report. You can indicate whether there are disagreements or not.").

28.    On August 1, 2024, the Ad Hoc Committee of Corporate Creditors (the "Ad Hoc Committee") filed a Rule 2019 Verified Statement (the "2019 Statement"). ECF Dkt. No. 7572. The 2019 Statement lists nine creditor members of the Ad Hoc Committee. As of the date of this Objection, no amendments have been filed to the 2019 Statement.

29.     On August 7, 2024, the United States Trustee filed the UST Statement which *inter alia* requested that any mediation be paused until questions regarding culpability were answered to the Court.

30.     On August 8, 2024, the Debtors filed the Notice of Upcoming Mediation Regarding Corporate Creditor Motion and Instructions to Participate (the "Mediation Notice"). ECF Dkt. No. 7592. No motion requesting a mediation order was filed.

31.     The Mediation Notice requested approval of a mediation between the Debtors, the Litigation Administrator, Coinbase, members of the Ad Hoc Committee, and "and any other party in interest that joins the mediation in accordance with the Court's order" (the "Mediation Parties").[6]

32.     Also on August 8, 2024, the Debtors filed the Joint Stipulation and Agreed Order Between the Post-Effective Date Debtors, Coinbase, the Litigation Administrator, and the Ad Hoc Committee of Corporate Creditors for Appointment of a Mediator (the "Mediation Stipulation"). ECF Dkt. No. 7588. The Mediation Stipulation signatories did not include all of the proposed Mediation Parties.

---

[6]     The Mediation Notice was filed on Thursday, August 8, 2024 at 11:49 p.m. EST, and scheduled the Mediation for August 14, 2024. The location of the Mediation was described as "will commence at a time and place to be agreed upon by the Mediator and the Mediation Participants." Additional parties that wished to participate in the mediation were required to "indicat[e] their desire to participate" by Monday, August 12, 2024. In addition, additional parties were required, during the span of three days, two of which were over a weekend, to sign a "joinder," that upon information and belief included legal provisions regarding disclosure of the protection of information disclosed at the Mediation. Furthermore, an interested party was required to "have at least one representative *attend* the Mediation *in person*." To appear remotely, parties were told to contact counsel to the Ad Hoc Committee for more information, despite the fact that he was not retained as their counsel or their representative in any capacity. *See, generally, In re Celsius Network LLC,* Case No. 22-10964, 2024 Bankr. LEXIS 493, *35 (Bankr. S.D.N.Y. Feb. 29, 2024) ("ordinary ad hoc group who [] really just represent[] their own interests.).
        Accordingly, interested parties, other than the Debtors, the Litigation Administrator, Coinbase, and the 2019 Statement creditors, had less than two business days to express a desire to participate in the Mediation, arrange for transportation to an in-person mediation of an unknown location and unknown time, and review and sign legal documents in order to participate in the Mediation.

33.     On August 29, 2024 at 11:56 p.m. the Debtors filed the Motion. ECF Dkt. No. 7661.

The Motion set a hearing date of September 12, 2024 and an objection deadline of September 5,

2024 at 4:00 p.m.[7]

34.     The Motion *inter alia* provides for the appointment of Jarred Herzberg as a

"Corporate Creditor Representative," whose reasonable fees and expenses, including counsel fees

(if and as reasonably necessary), in connection with this role will be paid from the Disputed Claims

Reserve.

35.     The Motion also provides for compensation for the Ad Hoc Committee:

> The Parties recognize the contribution of the Ad Hoc Committee of Corporate
> Creditors and its members to the Debtors' estate and to the bankruptcy process in
> bringing its motions and in participating in the Mediation. As a material part of this
> settlement and as partial consideration for the releases contemplated herein, the
> Parties agree that the Post-Effective Date Debtors will compensate the Ad Hoc
> Committee of Corporate Creditors and its counsel in the aggregate amount of $1.5
> million.

Settlement Term Sheet attached to Motion (the "Attached Term Sheet"), page 50 of 70.

36.     The Motion provides that: "This negotiated resolution ***will be funded from the***

***Disputed and Contingent Claims Reserve*** established under the Plan, which is [almost entirely]

held in BTC and ETH and has therefore tracked (and will continue to track) the price of Liquid

Cryptocurrency." Motion at ¶ 4 (emphasis added).  The Motion further provides that

> Concurrent with filing this Motion, the Post-Effective Date Debtors have
> earmarked the amount of Liquid Cryptocurrency ***from the Disputed and***
> ***Contingent Claims Reserve*** equal to the amount of Liquid Cryptocurrency needed
> if every Eligible Corporate Creditor with the opportunity to elect for the
> Supplemental Cryptocurrency Distribution so elects.

Motion at ¶ 19 (emphasis added). No information is provided as to what impact the use of these

reserves will have on ***creditors other than Corporate Creditors***, *i.e.*, creditors that would or could

---

[7] The American holiday of Labor Day fell on Monday September 2, 2024.

receive distributions from the claims reserve at a future date. The identity of these potential creditors is notably absent from the Motion or the Attached Term Sheet. Moreover, at no point does the Motion state the authority for the Debtors to fund this purported Settlement from the Disputed and Contingent Claims Reserve. It is also unknown *how much* is in the reserves or how much will remain for the payment of other claims after these impermissible distributions.

37.    Also on August 29, 2024 at 11:19 p.m., the Debtors filed the Statement Relating to Selection of Coinbase and Determination of the 100 Corporate Creditor Limit for Liquid Cryptocurrency Distributions (the "Debtor Statement"). ECF Dkt. No. 7660.

38.    On  August 30, 2024, White & Case LLP, the former counsel to the Committee, submitted their own statement of facts regarding the corporate distribution issues (the "UCC Statement"). ECF Dkt. No. 7662. The UCC Statement admits that "[t] The Committee discussed the 100 corporate creditor limit with the Debtors *in August 2024*." UCC Statement at ¶ 10 (emphasis added).

39.    The UCC Statement further states that, "[t]he Debtors communicated to the Committee *throughout the Plan process* that they could distribute Liquid Cryptocurrency to 100 corporate creditors and did not have a Distribution Agent that was able to distribute to more than 100 corporate creditors." *Id*. at ¶ 14 (emphasis added). The UCC Statement does not state why this information was not provided to all creditors, the Court, or the United States Trustee until after the Plan went effective.

### III.    <u>ARGUMENT</u>

**A.  A Substantially Consummated Plan Cannot be Modified.**

**a.    <u>The Plan was Substantially Consummated.</u>**

The Plan was confirmed on November 9, 2024. *See* Confirmation Order. By the terms of the Plan, the Plan became effective and was therefore substantially consummated on January 31, 2024. The Plan, as confirmed, did not provide any limitation on Corporate Creditor distributions in cryptocurrency to only 100 creditors. The Plan similarly did not provide for a process to determine which Corporate Creditors would receive cryptocurrency or what remedies a Corporate Creditor had if they were not selected to receive cryptocurrency by the Debtors. After Plan confirmation, after the Plan went effective, and after substantial consummation of the Plan, for the first time, the Court, the United States Trustee, and creditors, including Corporate Creditors, learned that there was a limitation on Corporate Creditor distributions.

> **b. <u>The Plan Cannot be Modified Because it Has Been Substantially Consummated.</u>**

> **i. Legal Standards for Plan Modifications**

Section 1127 of the Bankruptcy Code is the sole basis for modifying a chapter 11 plan that already has been ***confirmed but has not been substantially consummated***.[8] 11 U.S.C. § 1127(b); *see, e.g. In re Doral Center, Inc. v. Ionosphere Clubs (In re Ionosphere Clubs)*, 208 B.R. 812, 816 (S.D.N.Y. 1997); *In re Rickel & Assoc., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001); *Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft, Inc.)*, 2012 U.S. Dist. LEXIS 105219, *26, 2012 WL 3070387, Case Nos. 11-CV-5996, *et al.* (S.D.N.Y. July 27, 2012). Section 1127(b) provides in relevant part "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and ***before substantial***

---

[8] Pre-substantial consummation, when a modification materially and adversely effects claimants, they are entitled to a new disclosure statement and another opportunity to vote. *In re Sentinel Management Group, Inc.*, 398 B.R. 281 (Bankr. N.D. Ill. 2008); *In re American Solar King Corp.*, 90 B.R. 808, 825 (Bankr. W.D. Tex. 1988) (citing S.Rep. No. 989, 95th Cong, 2d Sess. 124 (1978), U.S. Code Cong. & Admin. News 1978, p. 5910) (If a "modification materially and adversely affects any of [the voting parties'] interests, they must be afforded an opportunity to change their vote"). *In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302, 1305 (11th Cir. 2023) (holding that debtor must provide a new disclosure statement and call for another round of voting if "after a hearing, the bankruptcy court finds that the modification 'materially and adversely changes the way that claim or interest holder is treated").

*consummation of such plan* ..." 11 U.S.C. § 1127(b). Accordingly, a plan cannot be modified after substantial consummation. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011); *In re Indu Craft, Inc.*, 2011 Bankr. LEXIS 2545, *9, 2011 WL 2619501, Case No. 97-44958-RDD, (Bankr. S.D.N.Y. Jul. 1, 2011); *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 266 (Bankr. S.D.N.Y. 2013); *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*, 982 F.2d 721, 748 (2d Cir. 1992) (stating that statutory limitations on modifying a substantially consummated plan cannot be circumvented by modifying a plan-related document); *SCH Corp. v. CFI Class Action Claimant*s, 597 Fed. Appx. 143 (3d Cir. 2015) (reversing bankruptcy court's approval of a settlement after finding that the agreement was really a proposed modification of a confirmed plan); *In re Oakhurst Lodge, Inc.*, 582 B.R. 784 (Bankr. E.D. Cal. 2018) ("A settlement that 'alters the legal relationships among the debtor and its creditors' under the confirmed plan constitutes a plan modification."); *Matter of Highland Capital Management, L.P.*, 57 F.4th 494, 503 (5th Cir. 2023) (holding that only something that "alters the parties' rights, obligations, and expectations" constitutes a plan modification); *SC SJ Holdings, LLC v. Pillsbury Winthrop Shaw Pittman LLP (In re SC SJ Holdings, LLC)*, 2023 U.S. Dist. LEXIS 48320, *17-18, 2023 WL 2598842, Case No. 21-10549 (JTD) (Del. March 22, 2023) (finding that "the refusal to permit an end run around § 1127(b) serves important interests.").

Allowing a debtor to change the terms of a plan that has already been substantially consummated would "upset[] the legitimate expectations" of the entities and individuals affected by the plan and would ultimately "undermine the integrity" of the bankruptcy process, as necessary players would not be willing to "participate in reorganization if they could not feel that the plan was final." *SC SJ Holdings*, 2023 U.S. Dist. LEXIS 48320, *18 (citing *Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq)*, 153 F.3d 113, 119-120 (3d 1998)).

Furthermore, courts may not modify a plan under another section of the Code, including section 105 of the Bankruptcy Code, because that would produce a result at odds with the specific provisions of section 1127 of the Bankruptcy Code. *See Rickel*, 260 B.R. at 678; *see, generally Law v. Siegel*, 571 U.S. 415 (2014). In *Rickel*, after the plan had been substantially consummated, the debtor determined that it would have more funds for distribution to its equity class. Under the terms of the confirmed plan, equity would neither receive a distribution nor retain interests. The Debtor moved to modify the confirmation order pursuant to Federal Rule of Civil Procedure 60(b), made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure. The Court explicitly found that it did not matter what provision the Debtor moved for relief under, because "[a] debtor cannot circumvent § 1127(b) and change the plan simply by calling its request a motion to modify the confirmation order." *Rickel*, 260 B.R. at 677.

Accordingly, modification of a plan post-substantially consummated plan is not permitted.

### ii. The Motion Modifies the Plan.

The Motion seeks to provide supplemental distributions to Corporate Creditors *vis a vis* approval of the Settlement. In order to effectuate this process, the Motion proposes to use "the amount of Liquid Cryptocurrency from the Disputed and Contingent Claims Reserve equal to the amount of Liquid Cryptocurrency needed if every Eligible Corporate Creditor with the opportunity to elect for the Supplemental Cryptocurrency Distribution so elects." Motion at ¶ 19. Corporate Creditors may also opt to receive a supplemental fiat distribution instead.

In addition to funding the additional distributions to Corporate Creditors, the Motion also proposes to appoint and pay Jarred Herzberg as a "Corporate Creditor Representative." In connection with this role, the Corporate Creditor Representative will be paid from the Disputed Claims Reserve. Additionally, counsel to the Ad Hoc Committee will be authorized to receive

payment. While it is not explicit in the Motion, it is assumed that these payments to counsel to the Ad Hoc Committee will also come from the Debtors' reserves.

As the Debtors admit in the Debtors' Objection and Reply, the Plan reserves are "fixed and finite" and *already* earmarked. Indeed, "the reserves were established on the basis of the Distribution Valuation Table." Debtors' Objection at ¶¶ 10 and 18. The Debtors' Objection further states that:

> The Plan distributes all of the Debtors' assets to creditors on a pro-rata basis and is accordingly a zero-sum distribution process. ***Any distributions to fiat creditors will reduce distributions to other creditors***. That is, any additional distributions would need to be made either from the Post-Effective Date Debtors' reserves or by lowering or eliminating future distributions to other creditors on account of Illiquid Recovery Rights and Litigation Proceeds.

Debtors' Objection at ¶ 20 (emphasis added). Yet, now, the Debtors seek to use those earmarked reserves of the Plan to pay a select group of creditors, which will then erode and reduce the reserves set aside under the Plan for distribution to other creditors. Those reserves are "fixed and finite."

A change of this magnitude is simply not permissible post-substantial consummation of the Plan ***regardless of whether it is a settlement through 9019 or through a plan modification***.[9] *See Rickel*, 260 B.R. at 677. The Debtors and other proponents must be required to provide a statutory basis for the relief sought since neither a plan modification nor a settlement pursuant to 9019 is permissible post-substantial consummation.

---

[9] Notably, a post-confirmation settlement (prior to substantial consummation) that changes the rights and duties of reorganized chapter 11 debtor, creditors, or equity security holders must be reviewed under the standards for plan modification, and not under settlement standards of whether it was negotiated in good faith and is fair and equitable to creditors as required by Bankruptcy Rule. *See In re Oakhurst Lodge, Inc.*, 582 B.R. 784 (also finding that a confirmed chapter 11 plan resembles a consent decree which has the characteristics of both a contract and a judgment); *SCH Corp*, 597 Fed. Appx. 143. Therefore, if this settlement had made prior to substantial consummation, it would have to be considered under the standards for plan modification – not regular settlement standards. But since it was made after substantial consummation, it cannot be considered because it is not possible to modify a plan post-substantial consummation.

Like in *Rickel*, the Debtors cannot "circumvent §1127(b) and change the plan" simply by styling the request as something other than a plan modification. Here, the Debtors have styled the Motion as one for distribution through approval of a 9019 Settlement, but it ***actually seeks to impermissibly modify the Plan***—the same as *Rickel*. The Debtors' proposal will take funds (*i.e.*, crypto and fiat) from finite reserves earmarked by the very terms of the Plan to pay corporate creditors. Neither what the debtors sought in *Rickel* nor what the Debtors seek to do here has any basis in the Bankruptcy Code, Rules, or case law and instead, directly contravenes section 1127(b). This is a post-substantial consummation modification of a plan that directly impacts creditor distributions and is therefore not permissible under any statute. Accordingly, the Motion and the included Settlement, which seeks to modify the specific terms of the confirmed Plan, cannot be approved.

### B.  All Attorneys' Fees and Costs Should Paid by Responsible Parties, Not the Debtors' Estate

The Ad Hoc Committee, which represents only nine creditors, is not a statutory group or statutory committee. The only legal basis by which it may receive fees paid from the estate are sections 503(b)(3)(D) and 503(b)(4), neither of which are applicable, post-substantial consummation.  Accordingly, the Debtors and counsel to the Ad Hoc Committee should be required to submit what statutory basis they are moving for relief to pay such fees from Plan funds.

The United States Trustee requests further clarification regarding what fees are requested and how the amount was calculated.

As this Court stated during the July Hearing, litigation costs, which includes attorneys' fees and costs, should not be paid for by the Debtors: "If you want to get into an expensive litigation, you're going to get expensive litigation. It isn't going to come out of the Debtor's hide. I'm just telling you right now." July 27 Tr. at 57:10-13.

20

## IV.    <u>RESERVATION OF RIGHTS</u>

The United States Trustee reserves his rights to supplement this Objection and object at any hearing in connection with the Settlement or Settlement Motion, and to other deficiencies and/or amendments, including supplemental disclosures, documents, brief, motions, and/or pleadings. The United States Trustee further reserves his right to object to any fee application associated herewith, including, but not limited to a substantial contribution application.

## V.    <u>CONCLUSION</u>

Wherefore, the United States Trustee requests that this Court sustain the Objection and deny the Motion and grant any other relief that is necessary and just.

Dated: New York, New York
       September 5, 2024

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By:    <u>/s/ Shara Cornell</u>
       Shara Cornell
       Mark Bruh
       Trial Attorneys
       Office of the United States Trustee
       Alexander Hamilton Custom House
       One Bowling Green, Rm. 534
       New York, New York 10004
       Tel.: (212) 510-0500