Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Post-Effective Date Debtors. | ) (Jointly Administered) |
| | ) |

**POST-EFFECTIVE DATE**
**DEBTORS' REPLY IN SUPPORT**
**OF THE JOINT MOTION SEEKING ENTRY**
**OF AN ORDER (I) AUTHORIZING SUPPLEMENTAL**
**DISTRIBUTION TO ELIGIBLE CORPORATE CREDITORS,**
**(II) APPROVING PROCEDURES FOR SUPPLEMENTAL CORPORATE**
**CREDITOR DISTRIBUTIONS, AND (III) GRANTING RELATED RELIEF**

The above-captioned post-effective date debtors (the "Post-Effective Date Debtors" and,

prior to the Effective Date, the "Debtors") submit this reply (the "Reply") in support of the *Joint*

*Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate*

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. 7661] (the "Supplemental Corporate Creditor Distribution Motion")[2] and in response to the Objections,[3] and submit as follows:

**Preliminary Statement**

1.     The issues that gave rise to the Corporate Creditor Motion are some of the most complex disputed post-emergence issues in these chapter 11 cases.  Following initial litigation, the Parties had a successful two-day mediation that resulted in the Settlement, which would be implemented pursuant to the Supplemental Corporate Creditor Distribution Motion.  In broad strokes, the Settlement seeks to give Eligible Corporate Creditors the Liquid Cryptocurrency (or its equivalent current value) that they would have received if they were initially scheduled for a Liquid Cryptocurrency distribution.

2.     Despite the fact that the Settlement provides a path forward for resolving these complex issues related to distributions to Corporate Creditors, the U.S. Trustee and Mr. Xue objected to the Supplemental Corporate Creditor Distribution Motion and approval of the Settlement citing, among other things, the potential adverse effect of the Settlement on future distributions to the Debtors' individual (non-corporate) creditors.  These arguments are unavailing. As described further below, the Settlement would treat Corporate Creditors the same as individual creditors, which the Corporate Creditors had argued was required by the Plan.  The Settlement

---

[2]     Terms capitalized but not defined herein have the meaning ascribed to them in the Supplemental Corporate Creditor Distribution Motion, the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, modified, and supplemented from time to time, the "Plan") and the Corporate Creditor Pleadings (as defined in the Supplemental Corporate Creditor Distribution Motion) as applicable.

[3]     As used herein, "Objections" means, collectively, the *Amended Objection of Sean Xue to Motion (ECF 7661)* [Docket No. 7666] (the "Xue Objection") and the *United States Trustee's Objection and Request for Clarification* [Docket No. 7667] (the "U.S. Trustee Objection").

does not modify the Plan and cannot be said to harm or dilute any other creditors' recoveries—it simply gives Eligible Corporate Creditors the distribution they are entitled to under the Plan. Continuing to litigate this issue would have forced the Post-Effective Date Debtors to focus their efforts on defending their distribution process instead of troubleshooting issues to enable them to complete outstanding distributions to all creditors. Accordingly, the Post-Effective Date Debtors agreed to mediation (open to all parties in interest, including the U.S. Trustee) in an attempt to reach a consensual solution to the issue underlying the Corporate Creditor Motion.

3.       Following a successful two-day mediation, the Post-Effective Date Debtors, the Ad Hoc Group of Corporate Creditors, and Coinbase seek to implement the terms of the Plan pursuant to the terms of the Settlement. Doing so permits all parties to move forward and for all Corporate Creditors to have the option to receive their distribution in Liquid Cryptocurrency, as the Corporate Creditors had argued was required by the Plan. Because the process for onboarding Corporate Creditors is time-consuming due to the heightened KYC requirements, the Settlement also provides Corporate Creditors with the option to receive the current market prices of that Liquid Cryptocurrency in Cash based on their preferences and with sufficient time to analyze their options.

4.       The Supplemental Corporate Creditor Distribution Motion received only two Objections, from the U.S. Trustee and Mr. Xue. Both the U.S. Trustee and Mr. Xue argue that the Settlement will adversely impact other creditors by requiring non-Corporate Creditors to bear the cost of the Settlement, and the U.S. Trustee further argues the Settlement is an impermissible post-substantial consummation modification of the Plan. *See* U.S. Trustee Objection at 18–20, Xue Objection ¶ 2. Further, both the U.S. Trustee and Mr. Xue take issue with the Post-Effective

Date Debtors agreeing to pay the fees of the Ad Hoc Group of Corporate Creditors. *See* U.S. Trustee Objection at 20–21; Xue Objection ¶ 3.

5.        Because Eligible Corporate Creditors will simply receive what they were originally entitled to under the Plan (with the option to receive the contemporaneous Cash value thereof), Mr. Xue's and the U.S. Trustee's arguments in the Objections are unavailing and the Settlement should be approved.  ***First***, the Settlement provides Eligible Corporate Creditors with the Liquid Cryptocurrency they would have received under the Plan, or the option to have that Liquid Cryptocurrency converted into Cash.  This is simply implementing the Plan,[4] plus a mechanism to account for Cash distributions that have been made to some Eligible Corporate Creditors already (instead of requiring those Eligible Corporate Creditors to return that Cash to the Post-Effective Date Debtors, which would be impractical and unfair given that those creditors may have already spent or invested that Cash).  ***Second***, because the Settlement is implementing the Plan by ensuring Eligible Corporate Creditors receive the treatment under the Plan as if they had initially been scheduled for a Liquid Cryptocurrency distribution, it is not unfair to individual creditors.  Eligible Corporate Creditors are not receiving a windfall at the expense of individual creditors; to the contrary, Eligible Corporate Creditors received a smaller-valued distribution than they would have under the Plan if they had been scheduled for a Liquid Cryptocurrency distribution initially.  The Settlement simply seeks to put the Eligible Corporate Creditors in the same position as the individual creditors by using the Post-Effective Date Debtors' assets that are earmarked for resolving disputes regarding Claims.  All eligible individual creditors will continue to receive their

---

[4]      The Plan contemplates converting distributions initially scheduled in Liquid Cryptocurrency to Cash or vice versa at market prices if a Distribution Agent changes.  *See* Plan Art. IV.K.1.  The Post-Effective Date Debtors periodically transition creditors among Distribution Agents and distribution types at market prices because (a) a Distribution Agent is not available to make a distribution to a particular creditor or (b) the creditor requests such change because such creditor has been unable to successfully claim its distribution from the initially scheduled Distribution Agent.

Pro Rata share in the Unsecured Claim Distribution Consideration, including any assets left in the Post-Effective Date Debtors' reserves once these chapter 11 cases have been fully administered. **_Third_**, the Post-Effective Date Debtors have authority under the Plan to pay the costs of professionals without further order from the Bankruptcy Court.

6.      Though the U.S. Trustee argues that the Supplemental Corporate Creditor Distribution Motion is an impermissible modification of the Plan, it is in fact an implementation of the Plan.  Given the Corporate Creditor Motion and the Court's initial perspective at the July omnibus hearing, the Parties negotiated the Settlement, which effectively provides for streamlined procedures to implement the terms of the Plan if the Debtors had initially scheduled all Eligible Corporate Creditors for a Liquid Cryptocurrency distribution.  The U.S. Trustee, however, believes that because the procedures contemplated by the Supplemental Corporate Creditor Distribution Motion are not exactly the words of the Plan, the Settlement cannot be approved.  Rather than constructively suggesting a potential solution to resolve the Corporate Creditor Motion, the U.S. Trustee seems set on requiring the Post-Effective Date Debtors to engage in costly, time-consuming, and uncertain litigation that would further delay distributions to Corporate Creditors, who have argued they have not been treated fairly compared to individual creditors.  By contrast, the Settlement is an efficient and consensual resolution of a complex and contentious litigation, which allows Eligible Corporate Creditors to receive the same distributions as individual creditors and should be approved.

7.      For these reasons, and as further set forth below, the Objections should be overruled, and the Supplemental Corporate Creditor Distribution Motion should be approved.

## <u>Reply</u>

### I.    **The Settlement is an Implementation of the Plan.**

8.    The Settlement is an implementation of the Plan as written, not a modification.  The Debtors originally scheduled Corporate Creditors, other than the 100 largest Corporate Creditors who elected to receive Liquid Cryptocurrency, to receive a Cash distribution in accordance with the Debtors' interpretation of the Plan.  Coinbase was the only suitable Distribution Agent who met the Debtors' criteria and also agreed to facilitate distributions to any corporate creditors.  From August 2023, when the Debtors received Coinbase's initial proposal to make distributions to international retail creditors, through January 16, 2024, when the Distribution Cryptocurrency Conversion Table was set, the Debtors engaged in extensive, arm's-length negotiations with Coinbase regarding Coinbase facilitating Liquid Cryptocurrency distributions to more than 100 Corporate Creditors.  Because it became clear from the negotiations with Coinbase that Coinbase could not agree to facilitate Liquid Cryptocurrency distributions to more than 100 Corporate Creditors within the one-year term of the parties' agreement, the Debtors subsequently determined that there was no Distribution Agent (Coinbase or otherwise) available to make Liquid Cryptocurrency distributions to most Corporate Creditors.  As such, the Debtors scheduled the majority of Corporate Creditors to receive a Cash distribution.  *See* Plan Art. IV.G ("For the avoidance of any doubt, the Debtors or Post-Effective Date Debtors, as applicable, may elect in their reasonable discretion to make any distribution in fiat if no Distribution Agent is reasonably available to make a Liquid Cryptocurrency distribution to any particular creditor."); Plan Art. IV.K.1. ("For the avoidance of doubt, if the Debtors or the Plan Administrator cannot make a distribution of Liquid Cryptocurrency to a particular creditor (including because no Distribution Agent is available to make such distribution), such creditor will receive a distribution of fiat.").

9.      Many Corporate Creditors and the Ad Hoc Group of Corporate Creditors disagreed, however, arguing that there was a Distribution Agent available to make Liquid Cryptocurrency distributions to all Corporate Creditors on the Effective Date—Coinbase.  This also appeared to be the Bankruptcy Court's initial view.  *See* July 29, 2024 Hr'g Tr. 41:4-6 ("I'm not ruling on it yet, but it seems to me -- well, what's clear is there is no plan provision for 100 corporate account limit with Coinbase.  There just isn't.").

10.     Rather than modifying the Plan, the Settlement is providing Eligible Corporate Creditors what they would have been entitled to under the Plan had they originally been scheduled for a Liquid Cryptocurrency distribution on the Effective Date.

11.     For Eligible Corporate Creditors who have not received a distribution yet, this is easy—they will receive Liquid Cryptocurrency, with the option to have that Liquid Cryptocurrency converted into Cash at current market prices in order to receive their distribution faster.

12.     Because some Eligible Corporate Creditors have already received a Cash distribution, however, providing all Eligible Corporate Creditors with the value they were entitled to under the Plan is not as simple as it sounds.  Doing so requires the Post-Effective Date Debtors to determine what such creditor's distribution could have been worth had such creditor originally been slated for a Liquid Cryptocurrency distribution, which absent the Settlement would be a moving target.  This is because, even if such creditor had ultimately been unable to receive a Liquid Cryptocurrency distribution, its Liquid Cryptocurrency would have been sold as close as reasonably practicable to the anticipated Cash distribution, meaning the creditor would have obtained the benefit of the increase in cryptocurrency prices.

13.    The U.S. Trustee relies on *In re Rickel & Associates, Inc.* to argue that the Post-Effective Debtors are seeking to modify the Plan.  260 B.R. 673.  *Rickel*, however, is completely inapposite.  There, the debtor was trying to modify the plan to provide certain creditors previously thought to be out of the money with some recovery under the plan.  *Id.* at 675–676 ("[T]he debtor moved on February 13, 2001, to modify the Confirmation Order, proposing only one change: amend the plan to provide that equity would receive a distribution in the event of a surplus treatment of creditors previously not entitled to any recovery.").  Here, Corporate Creditors were not a distinct class and have argued that they were originally entitled to a Liquid Cryptocurrency distribution under the Plan as confirmed.

14.    The Settlement provides the necessary framework for making Corporate Creditors whole under the Plan by setting forth how to determine the difference between what the creditor has already received and what it would have originally been entitled to under the Plan had it been scheduled for a Liquid Cryptocurrency distribution.  Specifically, the Settlement streamlines this process by using the weighted average price, rather than providing creditors with different values based on when they received their Cash distribution (which would be treating similarly situated creditors differently and would be particularly unfair given that the timing of the Cash distribution was not within the control of the Eligible Corporate Creditors).

## II.    If the Settlement Implements the Plan, Then the Settlement Does Not Negatively Affect Other Creditors by Definition.

15.    The Settlement endeavors to provide Eligible Corporate Creditors originally slated to receive a Cash distribution what they argued they were entitled to under the Plan—the value they would have received had they originally been slated to receive a Liquid Cryptocurrency distribution.  Specifically, if an Eligible Corporate Creditor had been scheduled for a Liquid Cryptocurrency distribution, they would have received either a Liquid Cryptocurrency distribution

or the proceeds of the sale of such Liquid Cryptocurrency at market prices "as close to the anticipated date of distribution as reasonably practical under the circumstances." Plan Art. IV.K.1. This Settlement is just the method by which the value will be distributed to such creditors because some Eligible Corporate Creditors have already received a Cash distribution and it is impractical for such creditors to return their Cash distribution to the Post-Effective Date Debtors.

16.    Pursuant to the Plan, the Post-Effective Date Debtors must use their remaining assets to make distributions required to creditors under the Plan. *See* Plan Art. IV. F ("The Debtors and the Post-Effective Date Debtors, as applicable, shall fund distributions under the Plan with: (1) Cash on hand as of the Effective Date and net proceeds from the sale of GK8, (2) Liquid Cryptocurrency (in the Liquid Cryptocurrency Distribution Amount), (3) the MiningCo Common Stock, (4) Litigation Proceeds, and (5) the proceeds of the monetization of the Debtors' illiquid assets other than the Recovery Causes of Action."). The only liquid assets that the Post-Effective Date Debtors have are in their reserves and the amounts needed to wind down the estates and prosecute causes of action as contemplated by the Plan. Accordingly, the Plan requires that the Post-Effective Date Debtors use their assets—here, the Liquid Cryptocurrency held in their reserves—to fund the supplemental distribution payments to Eligible Corporate Creditors. The assets in the Post-Effective Date Debtors' reserves are there precisely to resolve issues that arise in relation to Claims or distributions or otherwise arise after the Effective Date (*i.e.*, exactly those issues resolved by the Settlement). There is no other source for distributions to creditors.

17.    Additionally, this is not the first time the Post-Effective Date Debtors have used their reserves to resolve Claims and distribution-related issues after the Effective Date. The Post-Effective Date Debtors previously obtained approval to use their reserves to fund supplemental distributions to creditors who mistakenly made the Convenience Claim Election.

*See Order (I) Approving Automatic Revocation of Presumed Mistaken Convenience Claim Elections, (II) Approving Optional Revocation Procedure for Eligible Convenience Claim Elections, and (III) Granting Related Relief* [Docket No. 4741]. No party, including the U.S. Trustee, objected to this proposed use of the Post-Effective Date Debtors' reserves, even though this prior settlement was estimated to result in the distribution of approximately $18.3 million worth of additional Liquid Cryptocurrency and $6.1 million in MiningCo Common Stock to creditors who had made the Convenience Claim Election when voting on the Plan. *See Post-Effective Date Debtors' Motion Seeking Entry of an Order (I) Approving Automatic Revocation of Presumed Mistaken Convenience Claim Elections, (II) Approving Optional Revocation Procedure for Eligible Convenience Claim Elections, and (III) Granting Related Relief* [Docket No. 4372] ¶ 10.

18.    By comparison, the Post-Effective Date Debtors currently estimate the cost of the Settlement to be approximately $14 million, using cryptocurrency prices as of September 9, 2024, but the final cost may be more or less than this figure depending on changes in cryptocurrency prices. The dollar value of this supplemental distribution is measured as the incremental value to be sent to Eligible Corporate Creditors via either a Liquid Cryptocurrency distribution or an equivalent Cash distribution following the sale of the Liquid Cryptocurrency set aside for their distribution, which is simply the appreciation of such Liquid Cryptocurrency's value since the Effective Date. Critically, the Debtors' reserves are substantially held in Cryptocurrency (valued at approximately $296 million, using cryptocurrency prices as of September 10, 2024), and so that appreciation has also increased the Cash-equivalent value of the reserves. Distributing a portion of the reserves to satisfy the Settlement (and implement the Plan) is simply passing on this

appreciation to those Corporate Creditors that would have been originally entitled to these assets under the Plan if they had originally been slated for a Liquid Cryptocurrency distribution.

19. Giving Eligible Corporate Creditors what they already should have received does not adversely affect individual creditors' recoveries, as Mr. Xue contends. *See* Xue Objection ¶ 2. Rather, this is simply giving Corporate Creditors the value that individual creditors received under the Plan using the Post-Effective Date Debtors' assets to make the supplemental distribution. The Plan is designed to provide creditors entitled to Unsecured Claim Distribution Consideration (*i.e.*, Holders of Earn, Withhold, Post-Set Off, Unsecured Loan, and General Unsecured Claims) their Pro Rata share of the Debtors' assets, minus certain carve-outs, including the funding of the wind down and assets needed for distributions to creditors on account of Convenience or Custody Claims. *See* Plan Art. I.A. 150; Plan Art. III.B.2, 5, & 7–9. The Settlement is not providing Eligible Corporate Creditors with an additional percentage of the Debtors' assets; to the contrary, such creditors are merely receiving the appreciation of their Liquid Cryptocurrency in value since the Effective Date. Once all distributions are complete under the Plan, all creditors entitled to receive Unsecured Claim Distribution Consideration will have received, in the aggregate, their Pro Rata share of the Debtors' assets eligible for distribution.

20. In its objection, the U.S. Trustee mischaracterizes the Post-Effective Date Debtors' prior statements written in response to the Corporate Creditor Motion. It is true that the Post-Effective Date Debtors' reserves are fixed and finite meaning there are limited sources for any additional distributions under the Plan. These statements, however, were about the perils of requiring the Post-Effective Date Debtors to make "true up" payments to *every* creditor based on shifts in cryptocurrency prices and the speculative actions such creditors could have taken. The Settlement resolves this problem as to Eligible Corporate Creditors specifically. Eligible

Corporate Creditors will have thirty days from the date the Election Form is sent to them to decide whether they would like to receive Cash or Liquid Cryptocurrency. After those thirty days have passed, however, creditors will receive whatever they elected or, if they did not affirmatively make an election, Cash. There is no ability to switch distribution methods to take advantage of shifts in cryptocurrency prices—the Settlement was designed specifically with that in mind.

21. Further, the U.S. Trustee's other arguments are easily resolved. ***First***, the U.S. Trustee argues that the motion was filed on thirteen days' notice, which is incorrect. The Post-Effective Date Debtors filed the Supplemental Corporate Creditor Distribution Motion on August 29, 2024, fourteen days prior to the September 12, 2024 hearing, in accordance with the case management procedures in these cases. *See Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] ("In accordance with Local Rule 9006-1(b), except as set forth in Paragraph 19, in the event that a party files and serves a Request for Relief at least 14 days before the next Omnibus Hearing, the matter shall be set for hearing at such Omnibus Hearing."). ***Second***, the U.S. Trustee argues Corporate Creditors cannot be bound by a settlement negotiated with a small subset of such class of creditors. The Supplemental Corporate Creditor Motion, however, does not attempt to bind Corporate Creditors to the Settlement, but merely seeks authority to make a supplemental distribution to all Eligible Corporate Creditors to ensure they receive the value they were originally entitled to under the Plan. The only Corporate Creditors who will be bound to the Settlement itself is the Ad Hoc Group of Corporate Creditors that negotiated the Settlement in the Mediation.

22. Ultimately, no creditors will receive less, in total, than they would otherwise have been entitled to under the Plan. Rather, every creditor will receive the appropriately sized "piece

of the pie" of the Debtors' assets once all distributions are made under the Plan. Because non-Corporate Creditors will not be harmed by the Settlement, the Supplemental Creditor Distribution Motion should be approved.

### III.    The Settlement Avoids Costly and Uncertain Litigation.

23.    While the Post-Effective Date Debtors still believe, based on their original interpretation of the Plan, that they have complied with the terms of the Plan, litigating this issue would be value-destructive, and the outcome of such litigation is not certain.

24.    The Bankruptcy Court made clear at the July 29, 2024 hearing that, despite the statements it made, it was not ruling on the issue. July 29, 2024 Hr'g Tr. 55:25–56:2 ("So, what I'm – I'm not ruling on these. So, I'm adjourning the hearing on the Faller distribution motion and the Australia distribution motion."). Further, the Bankruptcy Court encouraged the parties to "try and sort this out" and that, "[i]f you want to get into an expensive litigation, you're going to get expensive litigation." July 29, 2024 Hr'g Tr. 56:10–12, 22–23. Rather than pursuing costly and time-consuming litigation which would lead to significantly delayed distributions to Corporate Creditors, the Parties went to mediation and reached the Settlement.

25.    Avoiding protracted litigation between any of the Parties, which would consume significant Estate resources, is in the best interests of the Post-Effective Date Debtors' Estates. Moreover, to the extent Mr. Xue suggests that the Post-Effective Date Debtors should have pursued litigation specifically against Coinbase, the Post-Effective Date Debtors' sole international Liquid Cryptocurrency Distribution Agent, such litigation would itself, in the Post-Effective Date Debtors' view, be costly and may negatively affect distributions to international creditors under the Plan. Notably, the Debtors and the Post-Effective Date Debtors never sent Coinbase instructions to facilitate Liquid Cryptocurrency distributions to more than 100 Corporate Creditors. As such, bringing a claim against Coinbase for allegedly breaching the

Coinbase Agreement by failing to facilitate Liquid Cryptocurrency distributions to more than 100 Corporate Creditors would, in the Post-Effective Date Debtors' view, likely be a challenging litigation.[5]  Importantly, as a component of the Settlement, the Post-Effective Date Debtors negotiated with Coinbase for it to facilitate Liquid Cryptocurrency distributions under the Plan beyond the expiration of the term in November 2024.  This possibility would likely be foreclosed if the Post-Effective Date Debtors sued Coinbase.  Further, Coinbase, as an active participant in the Mediation, made significant and material concessions in the Supplemental Coinbase Agreement that are necessary to implement the Settlement and make Liquid Cryptocurrency Distributions to those Eligible Corporate Creditors who elect to receive a Supplemental Cryptocurrency Distribution.  For these reasons, the Bankruptcy Court should overrule the Objections and grant the Supplemental Corporate Creditor Distribution Motion.

**IV.    The Ad Hoc Group of Corporate Creditors' Fees Should be Paid.**

26.    The U.S. Trustee argues that the Settlement cannot include the payment of $1.5 million to the Ad Hoc Group of Corporate Creditors.  Notably, the U.S. Trustee concedes that the "substantial contribution" standard for paying a creditor's costs no longer applies post-emergence.  *See* U.S. Trustee Objection at 20 ("The only legal basis by which it may receive fees paid from the estate are sections 503(b)(3)(D) and 503(b)(4), neither of which are applicable, post-substantial consummation.").  The U.S. Trustee argues that the Post-Effective Date Debtors must identify another "statutory basis" for paying these fees, but the Plan expressly contemplates that the Post-Effective Date Debtors can enter into settlements with parties post-emergence, and pay the costs of professionals, each without further Bankruptcy Court approval or order.  The

---

[5]    In the event of litigation, the Post-Effective Date Debtors expect that Coinbase would vigorously defend itself and would pursue any and all defenses, rights, and remedies, including the assertion of putative counterclaims and indemnification rights.

restrictions in the Bankruptcy Code no longer apply, and these payments can be made. Nevertheless, in the interest of full transparency, the Post-Effective Date Debtors are seeking Bankruptcy Court approval of the Ad Hoc Group of Corporate Creditors' fees pursuant to the Supplemental Corporate Creditor Motion.

27.     The Plan permits the Post-Effective Date Debtors to pay the Ad Hoc Group of Corporate Creditors' fees either as settling a Claim or payment of a professional.  *See* Plan Art. IV.D. ("Any Claim . . . may be adjusted or expunged on the Claims Register at the direction of the Debtors, the Post-Effective Date Debtors, or the applicable Litigation Administrator(s) without . . . having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court."); Plan Art. II.B.4. ("From and after the Confirmation Date, the Debtors, or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Post-Effective Date Debtors, as applicable.").

## **<u>CONCLUSION</u>**

28.     Accordingly, the Parties request that the Court overrule the Objections and grant the relief requested in the Supplemental Corporate Creditor Distribution Motion.

WHEREFORE, the Bankruptcy Court should overrule the Objections and grant the relief

requested in the Supplemental Corporate Creditor Distribution Motion.

| | |
|---|---|
| New York, New York<br>Dated:  September 11, 2024 | */s/ Joshua A. Sussberg* |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*