**WHITE & CASE LLP**
Samuel P. Hershey
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
      lucas.curtis@whitecase.com
      nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
      devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
      laura.baccash@whitecase.com

– and –

**ASK LLP**
Marianna Udem
60 East 42nd Street
46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email: mudem@askllp.com

– and –

**ASK LLP**
Brigette McGrath
Kara E. Casteel (admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email: bmcgrath@askllp.com
      kcasteel@askllp.com

*Co-Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CELSIUS NETWORK LLC, *et al.*, | § | |
| | § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § | |
| | § | |

---

[1]    The Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor

## DECLARATION OF NIKITA ASH IN
## SUPPORT OF THE LITIGATION ADMINISTRATOR'S
## MOTION TO ENFORCE CUSTOMER PREFERENCE CLAIMS
## SETTLEMENT AGREEMENTS AGAINST CERTAIN BREACHING PARTIES

I, Nikita Ash, declare pursuant to 28 U.S.C. § 1746 as follows:

1.       I am an associate at White & Case LLP and counsel for Mohsin Y. Meghji, the Litigation Administrator for Celsius Network LLC and its affiliated debtors (the "**Litigation Administrator**").   I offer this declaration in support of *Motion for an Order to Enforce the Settlement Agreements Against the Breaching Parties* (the "**Motion**").[2] This declaration is based on my personal knowledge and upon my review of the records of this and related matters.

2.       Attached as **Exhibits 1** through **Exhibits 97** are true and correct copies of the settlement agreements (each, a "**Settlement Agreement**" and collectively, the "**Settlement Agreements**") executed and signed by each individual who is currently in default and has failed to remit payment by the settlement payment deadline (each, a "**Breaching Party**" and collectively, the "**Breaching Parties**").[3]

*[Remainder of page intentionally left blank]*

---

Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used and not defined herein shall have the meaning ascribed to them in the Motion.

[3]    Four of the Breaching Parties have executed two separate Settlement Agreements, both containing identical material terms.   This occurred because the online settlement portal remained open to individuals even after they returned executed agreements.   Copies of both agreements are attached as Exhibits 41, 49, 61, and 93.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    September 24, 2024
New York, New York

By *Nikita Ash*
Nikita Ash, Esq.
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: nikita.ash@whitecase.com

*Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

# **<u>EXHIBIT 1</u>**

## **Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| MOHAMMED AHMED | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Mohammed Ahmed

Date Completed: 04/29/2024 2:31:37 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# <u>EXHIBIT 2</u>

## Redacted

# Electronic ballot Summary

Date Filed: 05/16/2024
Ballot No: 1209

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| JUAN AROSEMENA | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election Response:** Settling Party Signature

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5. <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     _Non-Payment_. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     _Attorney's Fees, Costs and Expenses_. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     Governing Law and Venue. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ JUAN CARLOS AROSEMENA

Date Completed: 05/16/2024 10:01:36 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

---

8"

# EXHIBIT 3

## Intentionally Left Blank

# EXHIBIT 4

## Redacted

# Electronic ballot Summary

Date Filed: 04/18/2024
Ballot No: 746

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ROBERT BLESSING | Yes | ██████████ | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A. On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B. On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C. On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D. The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E. The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F. The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]  On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]  The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ ████████████ (the "**Payment Deadline**"), consideration as follows: (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Robert Blessing

Date Completed: 04/18/2024 4:08:24 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **EXHIBIT 5**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1128

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ANDREAS BOHNSACK | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



    3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Andreas Bohnsack

Date Completed: 05/01/2024 11:44:52 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# **EXHIBIT 6**

## **Redacted**

## Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1108

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| MARINDA BOHNSACK | Yes | W | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



    3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Marinda Bohnsack

Date Completed: 05/01/2024 3:18:16 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 7

## Redacted

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| FABIAN BOLLAERT | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

# RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator ▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Fabian BOLLAERT

Date Completed: 03/31/2024 11:11:27 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# <u>EXHIBIT 8</u>

## Redacted

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount



with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

<u>SETTLEMENT TERMS</u>

1.    <u>Recitals</u>. The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Effectiveness; Payment</u>. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**"). The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███ ██████████████████████████████████████████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[1] or ETH[2] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's claim(s) that is/are entitled to distributions under the Plan, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**"). The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available

---

[1]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[2]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2

during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no

responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[3] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of

---

[3]    "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

4

the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.      Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties in the Bankruptcy Case (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party, (y) to pursue claims or causes of action for fraud or gross negligence against the Settling Party Released Parties, or (z) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein. Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights

and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement

6

Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY

UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE
SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are
executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: _____
    John Bromfield

Date Completed:    June 11, 2024

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please check **YES**, if you accept the above statement or **NO** if you reject it:

☒ **YES**

☐ **NO**

---

# <u>EXHIBIT 9</u>

## Redacted

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1118

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| VOE BRYSON | Yes | | Preference | WPE Settlement |
| Voe Allen Bryson | | | Settlement | Agreement |
| | | | Agreement | |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▉▉▉▉▉, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▉▉▉▉▉, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▓▓▓▓▓▓ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▓▓▓▓▓▓ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    _Settling Party's Release_. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    _Administrator's Release_. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Voe Allen Bryson

Date Completed: 05/01/2024 8:09:03 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **<u>EXHIBIT 10</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/26/2024
Ballot No: 1280

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| STEVEN CALANDRA | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**
Settling Party Signature
**Response:** YES

**Noticing Parties**

# SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

# RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").

F.    The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Effectiveness; Payment. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").   The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████ ████████████████████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").   The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that

3"

is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or

---

[4]      "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

4"

its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.    Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein. Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or

6"

duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ STEVEN CALANDRA

Date Completed: 05/26/2024 2:36:48 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

# EXHIBIT 11

**Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| PAUL CALEB | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ██████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in   immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.  <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.  <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.  <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.  <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.  <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.  <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Paul M Caleb

Date Completed: 04/04/2024 8:01:58 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 12

**Redacted**

# Electronic ballot Summary

Date Filed: 03/27/2024
Ballot No: 206

| **Debtor** | **District** |
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| DUNCAN CAMERON | Yes | | Preference | WPE Settlement |
| Duncan Cameron | | | Settlement | Agreement |
| | | | Agreement | |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than █████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Duncan Cameron

Date Completed: 03/27/2024 2:56:19 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# **EXHIBIT 13**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1144

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| GERARDO DE LA CARIDAD CASAL | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Gerardo Casal

Date Completed: 05/01/2024 2:01:23 PM

> I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.
>
> Please type **YES**, if you accept the above statement or **NO** if you reject it:
>
> | YES |
> | --- |

8"

# EXHIBIT 14

## Redacted

# Electronic ballot Summary

Date Filed: 04/08/2024
Ballot No: 470

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JUSTIN CHACON | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.  <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Justin Chacon

Date Completed: 04/08/2024 7:40:50 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| Yes |
| --- |

8"

# **<u>EXHIBIT 15</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/05/2024
Ballot No: 409

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| KEVIN CHEN | Yes | ████████ | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** yes

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.  Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Kevin Chen

Date Completed: 04/05/2024 3:33:43 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

yes

# EXHIBIT 16

## Redacted

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1020

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| CHRISTI CHENG | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     Recitals.     The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Christi Cheng

Date Completed: 04/29/2024 8:38:29 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

# **<u>EXHIBIT 17</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/17/2024
Ballot No: 255

| Debtor | District |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
| --- | --- | --- | --- | --- |
| MARC CHERRIER | No | - | Preference Settlement Agreement Excluded Parties | Excluded Parties |

**ballot Election**

Please type YES, if you accept the above statement or NO if you reject it:

**Response:**  YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), Class 5 (General Earn), and/or Class 7 (Withhold) Claim/Claim(s) in the aggregate amount of no less than ██████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

G.      The Settling Party has asserted that it has good defenses to the alleged Preference

---

[1] On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

Liability. Solely to avoid the attendant risks of litigation and further costs, and without admission of liability, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals. The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████████████ (the "**Payment Deadline**"), consideration as follows: (a) payment in the amount of ████████ in immediately available U.S. Dollars, BTC,[3] or ETH[4] (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC or ETH ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**"). The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or as promptly as reasonably practicable following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) as promptly as reasonably practicable after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time, but to the extent necessary to cure any deficiency in the Settlement Payment; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's Claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be

---

[3] "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4] "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2

available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs, and shall provide an invoice to the Settling Party of all such fees and costs related to the Liquid Cryptocurrency Setoff Payment within thirty (30) days after the effectuation of the Settlement Payment solely to the extent such fees, charges, or other costs exceed 5% of the Liquid Cryptocurrency Setoff Payment; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object, provided that, to the extent any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party results in receipt by the Administrator of more than the full Settlement Payment Amount, the Administrator shall refund the excess amount that was unnecessarily liquidated in U.S. Dollars; provided, however, notwithstanding anything to the contrary herein and subject to the terms of the Plan, the Settling Party shall retain the right to seek further damages, if any, against the Plan Administrator for errors in connection with the foregoing clause; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall) (the "**Shortfall Amount**"), the Administrator shall, within 30 days of the Administrator becoming aware of such Shortfall, notify the Settling Party in writing of the Shortfall Amount and the Settling Party shall remit to the Administrator such shortfall in immediately available U.S. funds, BTC or ETH, promptly, but in any event, within seven (7) days of the receipt of such notice (the "**Shortfall Payment Deadline**"). Timely payment of the Settlement Payment Amount and, if applicable, the Shortfall Amount, as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline and the Shortfall Amount, if any, shall be paid no later than the Shortfall Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



The Settling Party shall be entitled, but not required, to send an initial test wire in a *de minimis* amount (a "**Test Wire**"). If a Test Wire is sent, the Administrator shall provide the Settlement Party with confirmation of receipt.

If making a transfer of BTC or ETH to satisfy the Settlement Payment Amount, please visit: pay.kado.money/celsius.  The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Litigation Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate settlement payments, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

      4.    <u>Confidentiality</u>. Each Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at such Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

      5.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party, solely in their capacity as such (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued,

including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any claims arising from or out of the legal or economic impact of the order for relief entered in the Debtors' Bankruptcy Case (whether for adequate protection or otherwise), or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to (i) any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 7 of this Agreement, or (ii) the Settling Party's right to distributions on account of the remaining amount, if any, of the Settling Party's Claim following a Liquid Cryptocurrency Setoff Payment (a "**Remaining Claim**"), including without limitation the Settling Party's right to receive Liquid Cryptocurrency (or fiat currency to the extent that Liquid Cryptocurrency is not distributable), MiningCo Common Stock and the proceeds of Illiquid Recovery Rights; provided further, however, notwithstanding anything to the contrary in the foregoing, the Settling Party's Release shall not release any bad faith, actual fraud, willful misconduct, or gross negligence of or related to the Administrator Released Parties as determined by a Final Order.

6.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind, solely in their capacities as such (collectively, the "**Settling Released Parties**"), jointly

and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code and any liability for fraudulent transfers under section 548 of the Bankruptcy Code or similar non-bankruptcy law (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement; provided further, however, notwithstanding anything to the contrary in the foregoing, the Administrator's Release shall not release any bad faith, actual fraud, willful misconduct, or gross negligence of or related to the Settling Released Parties as determined by a Final Order.

7.    Distributions to the Settling Party. To the extent that the Settling Party has a Remaining Claim, then following payment in full of the Settlement Amount (including the Shortfall Amount, if any), the Administrator shall request, the Distribution Agent (i) to, consistent with the ordinary course of estate distributions, distribute to or as directed by the Settling Party all Liquid Cryptocurrency (or fiat currency to the extent that Liquid Cryptocurrency is not distributable) to which the Settling Party is entitled on account of the Remaining Claim, and (ii) at the next succeeding scheduled distribution date, distribute to the Settling Party all MiningCo Stock and proceeds of Illiquid Recovery Rights to which the Settling Party is entitled on account of the Remaining Claim.  The Settling Party agrees that the Administrator shall have no liability with respect to any failure or refusal of the Distribution Agent to comply with these requests.

8.    Non-Payment. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion (either of (i) or (ii), an "**Unpaid Settlement Amount**"), to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment to the extent of the Unpaid Settlement Amount, (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such nonperforming Settling Party; provided, however, that if the Administrator elects to terminate this Settlement Agreement, he shall refund to the Settling Party any portion of the Settlement Payment actually received by the Administrator. Solely if the Administrator elects to terminate this Settlement Agreement and subject to the refund of any portion of the Settlement Agreement actually received, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party,

join such Settling Party in existing avoidance action litigation, or (ii) collect the Unpaid Settlement Amount, as applicable, such non-performing Settling Party hereby waives any and all defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement.

9.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover its reasonable attorney's fees, costs, and expenses, including reasonable out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement.

10.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

11.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement.  The Settling Party hereby further represents and warrants that the Settling Party has reviewed the Schedule of Excluded Parties, attached as an annex to this Settlement Agreement at **Exhibit 1**, and that no person or entity identified on the Schedule of Excluded Parties is a Settling Released Party.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

12.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

13.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without

giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

14.    Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

15.    Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

16.    Amendments in Writing. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

17.    Headings. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

18.    Multiple Counterparts and Facsimile or Electronic Signatures. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail.

19.    Binding on Successors and Assigns. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first written below.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ MARC CHERRIER

Date Completed: 05/17/2024 3:14:42 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

## **Exhibit 1**

**Schedule of Excluded Parties**

## Exhibit C

### Schedule of Excluded Parties

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3222] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions. **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved**.

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court**.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 22. | Beowulf Energy LLC |
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |

| | **SCHEDULE OF EXCLUDED PARTIES** |
|---|---|
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120]. For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in connection |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided*, *further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

# **<u>EXHIBIT 18</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/18/2024
Ballot No: 745

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| MING FENG CHIANG | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ MING FENG CHIANG

Date Completed: 04/18/2024 3:56:57 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
| --- |

---

8"

# **EXHIBIT 19**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/14/2024
Ballot No: 608

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| LAI YUNG CHUNG | Yes | ▮ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5. <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ CHUNG LAI YUNG

Date Completed: 04/14/2024 8:52:53 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **<u>EXHIBIT 20</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1150

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| BRADLEY DAVIS | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Bradley Davis

Date Completed: 05/01/2024 4:13:09 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# <u>EXHIBIT 21</u>

## Redacted

# Electronic ballot Summary

Date Filed: 03/23/2024
Ballot No: 140

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| VIET DOAN | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▬▬▬▬, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▬▬▬▬, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.    To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>.  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6. <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Viet Doan

Date Completed: 03/23/2024 3:30:33 AM

8"

# EXHIBIT 22

## Redacted

# Electronic ballot Summary

Date Filed: 03/20/2024
Ballot No: 9

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| PABLO DOS SANTOS | Yes | ███████ | Draft Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Pablo Gomes dos Santos

Date Completed: 03/20/2024 1:26:58 PM

8"

# EXHIBIT 23

## Redacted

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1027

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| PASCAL JEAN EMMANUEL FAUCON | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]   On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]   The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



    3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ PASCAL JEAN EMMANUEL FAUCON

Date Completed: 04/29/2024 9:02:12 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

YES

---

8"

# EXHIBIT 24

## Redacted

# Electronic ballot Summary

Date Filed: 04/25/2024
Ballot No: 1001

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| CASEY FRIEDER | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



    3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.  <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15.  <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.  <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.  <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Casey Frieder

Date Completed: 04/25/2024 1:54:34 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **EXHIBIT 25**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1034

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| SAM GARZA | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than █████████ (the "**Payment Deadline**"), consideration as follows: (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**"). The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5. <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ sam garza

Date Completed: 04/29/2024 10:23:19 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 26

**Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| DAVID GOODE David Goode | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▬▬▬▬, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▬▬▬▬▬, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6. _Non-Payment_. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. _Attorney's Fees, Costs and Expenses_. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ David Goode

Date Completed: 03/22/2024 2:39:14 AM

8"

Declaration (Redacted)    Pg 264 of 1009

# **EXHIBIT 27**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1023

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| JOSHUA LEE GRABER | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** yes

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ josh graber

Date Completed: 04/29/2024 8:54:55 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

yes

8"

# EXHIBIT 28

**Redacted**

# Electronic ballot Summary

Date Filed: 05/20/2024
Ballot No: 1245

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| YAO LEE HAHN Yao Lee Hahn | Yes | ████████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**
Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      Recitals.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      Payment.  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Litigation Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with

3"

any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.      _Confidentiality_. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      _Settling Party's Release_. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); _provided_, _however_, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); <u>provided</u>, <u>however</u>, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims

against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

8"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Yao Lee Hahn

Date Completed: 05/20/2024 6:54:05 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| **YES** |
| --- |

---

9"

# EXHIBIT 29

## Redacted

# Electronic ballot Summary

Date Filed: 03/21/2024
Ballot No: 90

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| CHARLES HAN Charles Han | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Charles Han

Date Completed: 03/21/2024 6:12:47 AM

8"

# **<u>EXHIBIT 30</u>**

## **Redacted**

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").

F.  The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.  The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.  To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.  The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.  <u>Recitals</u>.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.  <u>Effectiveness; Payment</u>.  This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ the ▮▮▮▮▮▮ of the "**Payment Deadline**"), consideration as follows: (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the

---

[1]  The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]  "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]  "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.

Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      <u>Settling Party's Release</u>. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party

---

[4]   "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.     Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.     <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.   Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or

6

6.     <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.   Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or

6

16.   <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.   <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: _____
James Harte

Date Completed:   1 / 7 / 24
                  1st July 2024

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please check **YES**, if you accept the above statement or **NO** if you reject it:

☑ **YES**

☐ **NO**

---

9

# **<u>EXHIBIT 31</u>**

## **Redacted**

# Electronic ballot Summary

Date Filed: 04/12/2024
Ballot No: 564

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ZACK HEARD | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▉▉▉▉▉, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▉▉▉▉▉, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.   <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.   <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.   <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.   <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.   <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.   <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Zack Heard

Date Completed: 04/12/2024 4:24:59 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| **YES** |
| --- |

8"

# EXHIBIT 32

## Redacted

# Electronic ballot Summary

Date Filed: 04/08/2024
Ballot No: 468

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| CHRISTOPHER HENSLEY | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment.  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Christopher Hensley

Date Completed: 04/08/2024 6:51:54 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 33

**Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ELIAS HERNANDEZ | Yes | ▮▮▮▮▮ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A. On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B. On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C. On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D. The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E. The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F. The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1] On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in   immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Elias Hernandez

Date Completed: 03/21/2024 1:18:06 AM

8"

# EXHIBIT 34

## Redacted

# Electronic ballot Summary

Date Filed: 04/06/2024
Ballot No: 428

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| MICHEL HORNEMAN | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A. On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B. On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C. On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D. The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E. The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F. The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1] On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▉▉▉▉▉ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▉▉▉▉▉▉ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▉▉▉▉ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3. <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ michel horneman

Date Completed: 04/06/2024 1:24:35 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
| --- |

---

8"

# <u>EXHIBIT 35</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/06/2024
Ballot No: 433

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| HAROLD BYRON IRVING | Yes | ██████████ | Preference Settlement Agreement | WPE Settlement Agreement |
| Harold B Irving | | | | |

**ballot Election**

Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of  in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.   <u>Confidentiality</u>.  The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Harold B Irving

Date Completed: 04/06/2024 9:06:35 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| Yes |
|-----|

8"

# <u>EXHIBIT 36</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/13/2024
Ballot No: 589

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JOSIP IVIC PP Crikvenica | Yes | ████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of [REDACTED] U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than [REDACTED] (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of [REDACTED] in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.  <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.  Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.  Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Josip Ivic

Date Completed: 04/13/2024 2:23:12 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# EXHIBIT 37

## Redacted

# Electronic ballot Summary

Date Filed: 04/23/2024
Ballot No: 895

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| PASCAL STEVEN JEAN | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Pascal Jean

Date Completed: 04/23/2024 7:41:01 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# <u>EXHIBIT 38</u>

## Redacted

# Electronic ballot Summary

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| YONG HANG JIANG | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    _Recitals_.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    _Payment_. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     _Settling Party's Release_. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     _Administrator's Release_. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Yong Hang Jiang

Date Completed: 03/28/2024 8:47:05 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 39

## Redacted

# Electronic ballot Summary

Date Filed: 04/24/2024
Ballot No: 973

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| EVIEON SERAPHINA POH HUI KENG (FU HUIQING) | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |
| Evieon Poh | | | | |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Evieon Seraphina Poh Hui Keng (FU HUIQING)

Date Completed: 04/24/2024 4:39:46 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# EXHIBIT 40

## Redacted

# Electronic ballot Summary

Date Filed: 05/16/2024
Ballot No: 1211

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| SAMIR KHOURY | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**
Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▋▋▋▋▋▋ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▋▋▋▋▋▋▋▋▋▋▋ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▋▋▋▋▋ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     Acknowledgement of Mutual Compromise and Valuable Consideration. The
Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement
reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     Representations and Warranties by Parties. Each Party hereby represents and
warrants that such Party:  (i) is not relying upon any statements, understandings, representations,
expectations, inducements or agreements other than those expressly set forth in this Settlement
Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in
connection with this Settlement Agreement and the releases contained herein; (iii) has entered into
the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or
duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its
own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full
right and authority to enter into this Settlement Agreement and to grant the releases contained
herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the
full right and authority to do so, and fully to commit and bind such Party to this Agreement.   Each
law firm signing on behalf of their respective clients hereby represents and warrants that such firm
has the full right and authority to execute this Settlement Agreement on behalf of their respective
client(s) and that this Settlement Agreement (and the obligations imposed upon such clients
herein) is fully binding upon such clients as though such clients had executed this Settlement
Agreement on their own behalf.

10.     Rules of Construction. The Parties agree that this Settlement Agreement shall not
be construed against any Party as the drafter thereof, that all provisions of this Settlement
Agreement have been negotiated by the Parties at arms' length, and that no rule of contract
construction providing that ambiguous contract terms should be interpreted against the drafting
party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     Governing Law and Venue. This Settlement Agreement and all claims arising out
of or relating to it or the rights and duties of the Parties hereunder will be governed by and
construed, enforced and performed in accordance with the law of the state of New York, without
giving effect to principles of conflicts of laws that would require the application of laws of another
jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and
jurisdiction to interpret and enforce this Settlement Agreement.

12.     Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be
executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable
to carry out the provisions of this Settlement Agreement.

13.     Entire Agreement and Integration Clause. This Settlement Agreement integrates
the whole of all agreements and understandings of any sort or character between the Parties
concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations,
discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There
are no unwritten, oral, or verbal understandings, agreements, or representations of any sort
whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by
this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ SAMIR KHOURY

Date Completed: 05/16/2024 10:15:00 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**Yes**

---

8"

# EXHIBIT 41(i)

## Redacted

## Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| KEVIN KIM | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** Yes

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than █████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

<div align="center">

**SETTLEMENT TERMS**

</div>

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than 5:00 pm Eastern time on the date that is ███████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

<div align="center">2"</div>

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Kevin Kim

Date Completed: 04/25/2024 11:16:09 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

Yes

8"

# EXHIBIT 41(ii)

## Redacted

Date Filed: 06/13/2024
Ballot No: 1337

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").



F.    The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>. The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Effectiveness; Payment</u>. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**"). The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows: (a) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the terms of this section (the "**Liquid Cryptocurrency Setoff Payment**") and (b) cash payment in the amount of the shortfall necessary to satisfy the amount of ▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**" and together with the Liquid Cryptocurrency Setoff Payment, the "**Settlement Payment**"). The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder,

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party on, prior to, or following the Payment Deadline; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct

---

[4]    "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.      Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until

the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its

6

Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties.  Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    Governing Law and Venue. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    Amendments in Writing. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    Headings. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    Multiple Counterparts and Facsimile or Electronic Signatures. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding

7

and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____


**Settling Party**

By: _____
      Kevin Kim

Date Completed:    June 13, 2024


| |
|---|
| I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.<br><br>Please check **YES**, if you accept the above statement or **NO** if you reject it:<br><br>☒ **YES**<br><br>☐ **NO** |

## **Exhibit 1**

### **Payment Schedule for Kevin Kim**

The Settlement Payment Amount of $18,528.12 is due as set forth in the following payment schedule:

| Payment Number | Payment Due Date | Payment Amount Due |
|:---:|:---:|:---:|
| 1 | 6/20/2024 | $6,176.04 |
| 2 | 7/22/2024 | $6,176.04 |
| 3 | 8/22/2024 | $6,176.04 |

# **<u>EXHIBIT 42</u>**

## **Redacted**

## Electronic ballot Summary

Date Filed: 04/23/2024
Ballot No: 962

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JOHN KING | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |
| John King | | | | |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than █████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ john king

Date Completed: 04/23/2024 9:22:13 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **EXHIBIT 43**

## **Redacted**

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1157

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| STEPHEN FRANK KOSTERMAN | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3. <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     Governing Law and Venue. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Stephen Kosterman

Date Completed: 05/01/2024 6:00:33 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**Yes**

# EXHIBIT 44

**Redacted**

# Electronic ballot Summary

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| CLEMENT KUHFUSS | Yes | | Draft Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ██████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ CLEMENT KUHFUSS

Date Completed: 03/20/2024 2:37:06 PM

8"

# EXHIBIT 45

## Redacted

# Electronic ballot Summary

Date Filed: 04/12/2024
Ballot No: 653

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| DAMIAN BAO DAI LAMOUR | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** NO

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]   On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]   The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.   To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██ ██████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5. <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ DAMIAN BAO DAI LAMOUR

Date Completed: 04/12/2024 9:35:43 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**NO**

---

8"

# EXHIBIT 46

**Redacted**

# Electronic ballot Summary

Date Filed: 04/30/2024
Ballot No: 1085

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| CHIRAG A LATHIA | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.   <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.   <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Chirag Lathia

Date Completed: 04/30/2024 4:57:31 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 47

## Redacted

# Electronic ballot Summary

Date Filed: 04/25/2024
Ballot No: 994

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| PHILIP LOPORTO | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Philip Loporto

Date Completed: 04/25/2024 5:27:55 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# __EXHIBIT 48__

## Redacted

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.  Capitalized terms used but not defined in this Settlement Agreement shall have the meanings ascribed to such terms in the Plan.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").



F.    The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Effectiveness; Payment. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███ ███████████████████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.

3

Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3. <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party

---

[4]    "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.      Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) except as provided herein, to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein. Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or

6

duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: _____
MICHAEL MACMANUS

Date Completed:   July 8, 2024

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please check **YES**, if you accept the above statement or **NO** if you reject it:

 **YES**

☐ **NO**

---

9

# EXHIBIT 49(i)

## Redacted

# Electronic ballot Summary

Date Filed: 04/24/2024
Ballot No: 977

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JAMES MAY | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.  <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.  <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.  <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.  <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.  <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.  <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ James Peter May

Date Completed: 04/24/2024 6:07:33 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

# EXHIBIT 49(ii)

## Redacted

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JAMES MAY | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**
Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████████ ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6. <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement.   Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    Governing Law and Venue. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ James Peter May

Date Completed: 05/18/2024 8:23:25 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# EXHIBIT 50

## Redacted

# Electronic ballot Summary

Date Filed: 04/14/2024
Ballot No: 610

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| LAURENCE MAYNARD | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Laurence Maynard

Date Completed: 04/14/2024 12:02:43 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 51

## Intentionally Left Blank

# EXHIBIT 52

## Redacted

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules. Capitalized terms used but not defined in this Settlement Agreement shall have the meanings ascribed to such terms in the Plan.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.      On July 12, 2024, the Administrator commenced an adversary proceeding against the Settling Party (Adv. Proc. No. 24-03952 (MG), the "**Avoidance Action**"), asserting that the Settling Party, as an Account Holder with Celsius Network LLC, withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") and under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Settling Party the aggregate value of all assets the Settling Party withdrew from the Debtors' platform during the Preference Period, less offsetting new value provided (the "**Preference Liability**").



F.    The Settling Party has a (i) Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), Class 5 (General Earn), and/or Class 7 (Withhold) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮ and a (ii) Class 6A (General Custody) and Class 6B (Withdrawable Custody) Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮ as of the Petition Date, which is/are entitled to distributions under the Plan (collectively, the "**Settling Party's Claim**").

G.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮,[2] and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.  Upon the Settlement Agreement Effective Date (as defined herein), the Administrator has agreed to dismiss the Avoidance Action, with prejudice, as soon as reasonably practicable.

I.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount and the dismissal of the Avoidance Action, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Effectiveness; Payment</u>. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b)

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    For purposes of this Settlement Agreement, the Administrator has calculated the Settling Party's Preference Liability based on the value of the assets transferred on the relevant transaction dates during the Preference Period.  This calculation is without prejudice to the Administrator to seek the current value of the Settling Party's full preference liability in litigation if the Settlement Agreement Effective Date (as defined herein) does not occur or the Administrator otherwise commences litigation to recover the preferential transfers.

reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall) (the "**Shortfall Amount**"), the Administrator shall, within thirty (30) days of the Administrator becoming aware of such Shortfall, notify the Settling Party in writing of the Shortfall Amount and the Settling Party shall remit to the Administrator such shortfall in immediately available U.S. funds, promptly, but in any event, within seven (7) days of the receipt of such notice (the "**Shortfall Payment Deadline**"). Timely payment of the Settlement Payment Amount and, if applicable, the Shortfall Amount, as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline and the Shortfall Amount, if any, shall be paid no later than the Shortfall Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account, along with the adversary proceeding number in the Avoidance Action, so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy the Settlement Payment, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Settlement Payment, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment

---

[5]    Please ensure that if "Further Credit" is not available, you include "Celsius Network LLC 7333-2949" in the memo field of the wire form. The Administrator will not receive the wire unless Celsius is referenced somewhere on the wire form.

method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement, including the Settlement Payment Amount, or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[6] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability and Avoidance Action, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case, the Avoidance Action, or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**");

---

[6]    "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.    Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Releasing Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties in the Avoidance Action with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) except as provided herein, to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.    Dismissal of Avoidance Action.  Upon the Settlement Agreement Effective Date, the Administrator shall dismiss the Avoidance Action, with prejudice, as soon as reasonably practicable.  To the extent necessary, the Settling Party agrees to reasonably cooperate with the Administrator's efforts to dismiss the Avoidance Action, including by agreeing to dismissal.

7.    Stay of Proceedings.  The Parties hereby agree that all deadlines in the Adversary Proceeding shall be stayed pending the Settlement Agreement Effective Date and dismissal of the Adversary Proceeding by the Administrator.  In the event that the Administrator terminates this Settlement Agreement pursuant to the terms set forth herein, the Parties agree that the Adversary Proceeding shall no longer be stayed, and all deadlines shall be extended by the length of time between (i) the date on which this Settlement Agreement was executed and (ii) the date on which this Settlement Agreement was terminated.

8.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date does not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and

6

any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, (ii) join such Settling Party in existing avoidance action litigation, or (iii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. To the extent the Settling Party receives any distribution under the Plan but the Settlement Agreement Effective Date does not occur after this Settlement Agreement is executed by the Parties, the Settling Party shall immediately forfeit any right to and return such distributions received, and the Administrator reserves the right to take any and all actions, including legal proceedings, to claw back any distributions received by the Settling Party. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

9.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

10.    Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

11.    Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective

clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

12.     Rules of Construction. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

13.     Governing Law and Venue. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

14.     Further Assurances. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

15.     Entire Agreement and Integration Clause. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

16.     Amendments in Writing. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

17.     Headings. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

18.     Multiple Counterparts and Facsimile or Electronic Signatures. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

19.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: _____
Kyle Thomas Meinhold

Date Completed:  8/30/2024

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please check **YES**, if you accept the above statement or **NO** if you reject it.  For the avoidance of doubt, you are checking YES or NO solely with respect to the Liquid Cryptocurrency Setoff Payment option.

☑ **YES**

☐ **NO**

---

10

# **<u>EXHIBIT 53</u>**

## **Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| DANIELLE MELCHERS | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▉▉▉▉▉, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▉▉▉▉▉, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ danielle melchers

Date Completed: 04/07/2024 6:47:46 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# <u>EXHIBIT 54</u>

## Redacted

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| LÉONARD MERMET | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** MERMET

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

6"

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Léonard MERMET

Date Completed: 03/21/2024 2:06:39 PM

8"

# EXHIBIT 55

## Redacted

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| DAVID MILLER | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ David Miller

Date Completed: 04/23/2024 9:15:00 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**Yes**

8"

# EXHIBIT 56

**Redacted**

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1007

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| AMIT MISRA Amit Misra | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** No

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A. On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B. On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C. On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D. The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E. The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F. The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1] On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2] The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Amit Misra

Date Completed: 04/29/2024 9:03:35 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| No |
|----|

---

8"

# **EXHIBIT 57**

## **Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| DAVID MITCHELL Easton Mitchell | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      Recitals.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.　　Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.　　Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ David E Mitchell

Date Completed: 04/22/2024 5:28:01 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
| --- |

---

8"

# <u>EXHIBIT 58</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/05/2024
Ballot No: 408

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ISLAM MOHAMED Islam Mohamed | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** NO

**Noticing Parties**

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4. <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5. <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Islam Mohamed

Date Completed: 04/05/2024 3:31:50 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**NO**

---

8"

# <u>EXHIBIT 59</u>

**Redacted**

Date Filed: 06/05/2024
Ballot No: 1316

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").



1267706062440000000002

F.    The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Effectiveness; Payment. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████ (the "**Payment Deadline**"), consideration as follows:  (a) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the terms of this section (the "**Liquid Cryptocurrency Setoff Payment**") and (b) cash payment in the amount of the shortfall necessary to satisfy the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**" and together with the Liquid Cryptocurrency Setoff Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder,

---

[1]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular: first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party on, prior to, or following the Payment Deadline; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:

3



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  <u>Settling Party's Release</u>. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct

---

[4]   "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

4

or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.    Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until

the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein.  Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    Representations and Warranties by Parties. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its

6

Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding

and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

8

**Litigation Administrator**

By: _____


**Settling Party**

By: _____
       Yehuda Nagar

Date Completed:

9

## Exhibit A

**Payment Schedule for Yehuda Nagar**

The Settlement Payment Amount of ▮▮▮▮▮▮ is due as set forth in the following payment schedule:

| Payment Number | Payment Due Date | Payment Amount Due[5] |
|:---:|:---:|:---:|
| 1 | ▮▮▮▮▮▮ | ▮▮▮▮▮▮ |
| 2 | ▮▮▮ | ▮▮▮ |
| 3 | ▮▮▮ | ▮▮▮ |
| 4 | ▮▮▮ | ▮▮▮ |
| 5 | ▮▮▮ | ▮▮▮ |
| 6 | ▮▮▮ | ▮▮▮ |
| 7 | ▮▮▮ | ▮▮▮ |

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# EXHIBIT 60(i)

## Redacted

# Electronic ballot Summary

Date Filed: 04/24/2024
Ballot No: 993

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ROSITSA NIKOLAEVA NANCHEVA | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** yes

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



     3.   <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.   <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.   <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.   <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.   <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.   <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.   <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Rositsa Nancheva

Date Completed: 04/24/2024 10:48:45 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

yes

---

8"

# EXHIBIT 60(ii)

## Redacted

# Electronic ballot Summary

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| ROSITSA NIKOLAEVA NANCHEVA | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** xxx

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Rositsa Nankev

Date Completed: 05/01/2024 7:23:24 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

<span style="color:red">Please type **YES**, if you accept the above statement or **NO** if you reject it:</span>

xxx

# EXHIBIT 61

## Redacted

# Electronic ballot Summary

Date Filed: 03/27/2024
Ballot No: 224

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| MANIK NARAINSINGHANI | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▓▓▓▓▓, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▓▓▓▓▓▓▓, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▭ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▭ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▭ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ MANIK NARAINSINGHANI

Date Completed: 03/27/2024 5:38:41 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# <u>EXHIBIT 62</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/29/2024
Ballot No: 1050

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| EUGENE ONG | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]  On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]  The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Eugene Ong

Date Completed: 04/29/2024 8:08:17 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

---

# EXHIBIT 63

**Redacted**

# Electronic ballot Summary

Date Filed: 07/10/2024
Ballot No: 1434

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| ANTONIO PANAYIOTOU | No | - | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**
Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Parties as set forth below, by and between Mohsin Y. Meghji in his capacity as the Litigation Administrator (the "**Administrator**") under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules. Capitalized terms used but not defined in this Settlement Agreement shall have the meanings ascribed to such terms in the Plan.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order confirming a chapter 11 plan of reorganization for the Debtors [Docket No. 3972], which, among other things, vested the Administrator with leave, standing and authority, on behalf of the Debtors and their Estates, to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On December 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to amend the terms of the chapter 11 plan of reorganization [Docket No. 4172], and subsequently, the Debtors filed the Plan in accordance with that order.

D.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

E.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**") then, under sections 547 and 550 of the Bankruptcy Code, the Administrator is entitled to recover from the Account Holder the aggregate value of all assets an Account Holder withdrew from the Debtors' platform during the Preference Period less the aggregate deposits such Account Holder made after such Account Holder's first withdrawal in such period (the "**Preference Liability**").

F.     The Settling Party has a Class 2 (Retail Borrower Deposit),[1] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ██████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

G.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

H.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

I.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Effectiveness; Payment</u>. This Settlement Agreement shall become effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement (the "**Settlement Agreement Effective Date**").  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████ ███████████████████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[2] or ETH[3] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the

---

[1]  The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

[2]  "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[3]  "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their Estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so

that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



If making a transfer of BTC or ETH to satisfy any Payment Amount, please visit: pay.kado.money/celsius. The Settling Party's choice of payment and use of the third party payment provider does not alleviate such party's responsibility to ensure that the payment is completed and delivered in accordance with the terms of this Settlement Agreement. The Administrator, along with the Litigation Oversight Committee, the Debtors, and any related parties, shall bear no responsibility or liability for any losses you incur as a result of engaging with any third party payment provider. The Litigation Administrator makes no warranties with respect to the services of any of the third party payment providers utilized to facilitate the Payment Amounts, and the Litigation Administrator is not liable for the actions or inactions of any third parties, including but not limited to Kado. Account holders are solely responsible for selecting their preferred payment method and ensuring that the full settlement amount is timely delivered to the Litigation Administrator, exclusive of any fees and costs associated with such payment method.

3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Settlement Agreement Effective Date, the Settling Party, for himself, herself or itself and each of its Related Parties,[4] including all those who has or purports to have the right to claim by, through, under, or related to the Settling Party

---

[4]   "**Related Parties**" shall mean, with respect to an entity, each of, and in each case solely in its capacity as such, (a) such entity's current and former affiliates and (b) such entity's respective current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

or its Related Parties (collectively, the "**Settling Party Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, whether direct or indirect, any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Party Releasing Parties have or might claim to have against, or with respect to, the Administrator, the Debtors and their estates, the Post-Effective Date Debtors, the Committee, and the Litigation Oversight Committee, and with respect to each of the foregoing Entities, each of its Related Parties (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted in the Bankruptcy Case or anywhere else by the Settling Party Releasing Parties against the Administrator Released Parties, including replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

5.     Administrator's Release. Effective upon the Settlement Agreement Effective Date, the Administrator, on behalf of itself, each Debtor and each Debtor's estate, each Post-Effective Date Debtor, and the Litigation Oversight Committee and, with respect to the Administrator, each Debtor, each Post-Effective Date Debtor, and the Litigation Oversight Committee, each such entity's Related Parties (collectively, the "**Administrator Releasing Parties**"), shall release, acquit, and forever discharge, and shall be deemed to release, acquit, and forever discharge, the Settling Party Released Parties from any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including under any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, from the beginning of time to the Settlement Agreement Effective Date, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to any Preference Liability (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not release, modify, or otherwise affect the right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) (x) to enforce this Settlement Agreement against the Settling Party or (y) except as provided herein, to enforce any right of any Debtor or Post-Effective Date Debtor or representative thereof (including the Administrator, the Plan Administrator, or the Litigation Oversight Committee) under the Plan.

6.     <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, the Settling Party agrees that any unexpired state or federal statute of limitations applicable to any claim or cause of action being settled pursuant to this Settlement Agreement shall be tolled until the later of (i) the date on which the Administrator receives the full Settlement Payment Amount set forth herein or (ii) 30 days after this Settlement Agreement is terminated in accordance with the terms set forth herein. Additionally, notwithstanding anything to the contrary contained herein, in the event that the Settlement Agreement Effective Date did not occur after this Settlement Agreement is executed by the Parties, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or

6"

its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority (a) to enter into this Settlement Agreement, (b) bind his, her, or itself and its Related Parties to the terms and obligations in this Settlement Agreement, and (c) to grant the releases contained herein on behalf of his, her, or itself and its Related Parties. Each Party hereby also represents and warrants that the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party and its Related Parties to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

7"

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

8"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Antonio Panayiotou

Date Completed: 07/10/2024 3:51:11 AM

<div style="border:1px solid black;">

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

</div>

# <u>EXHIBIT 64</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/30/2024
Ballot No: 1061

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| MATTHEW WADE PEETZ | Yes | ██████████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.   On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.   On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.   On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.   The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.   The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ██████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.   The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]   On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]   The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.  Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.  Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Matthew Peetz

Date Completed: 04/30/2024 9:23:07 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

---

8"

# <u>EXHIBIT 65</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/04/2024
Ballot No: 369

| Debtor | District |
|--------|----------|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|----------|----------------|-------------|------|-------|
| DMITRIJUS PETRAUSKAS | No | | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████ , and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     Recitals.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Dmitrijus Petrauskas

Date Completed: 04/04/2024 8:45:21 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 66

**Redacted**

# Electronic ballot Summary

Date Filed: 04/27/2024
Ballot No: 1010

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| SILPA PINGALI | No | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.  The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▓▓▓▓▓▓, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▓▓▓▓▓▓ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    _Recitals_.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    _Payment_. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



   3.  <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ p.silpa

Date Completed: 04/27/2024 5:41:13 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **<u>EXHIBIT 67</u>**

## **Redacted**

## Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. | Southern District of New York |
| 22-10964 | |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| OSCAR RIVERA | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** NO

**Noticing Parties**

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.   <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.   <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.   <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.   <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Oscar Rivera

Date Completed: 04/23/2024 11:48:20 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**NO**

---

8"

# <u>EXHIBIT 68</u>

## Redacted

# Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
FREDERICK
RUDOLPH
Frederick Rudolph

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

**Settling Party Signature
Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▆▆▆▆▆, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▆▆▆▆▆, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     Recitals.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.  Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Frederick Gert Rudolph

Date Completed: 04/28/2024 6:57:36 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this
Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

|  |
|--|

---

8"

# **<u>EXHIBIT 69</u>**

## **Redacted**

# Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
FAROUK SALLEH

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>.   The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████████ (the "**Payment Deadline**"), consideration as follows: (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    _Confidentiality_. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.      <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.      <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.      <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.      <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

6"

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Farouk Salleh

Date Completed: 04/28/2024 2:14:29 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

# **<u>EXHIBIT 70</u>**

## **Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
SAMUEL SELMAR
Samuel Selmar

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      Recitals.  The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      Payment.  The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]      "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]      "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.       Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.       Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Samuel Selmar

Date Completed: 04/15/2024 7:52:42 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

# EXHIBIT 71

**Redacted**

**Electronic ballot Summary**

Ash
Date Filed: 04/24/2024
Ballot No: 970

| **Debtor** | **District** |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| FARSHID SEPASSI | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

**Settling Party Signature Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3. <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Farshid Sepassi

Date Completed: 04/24/2024 4:10:59 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 72

**Redacted**

# Electronic ballot Summary

Date Filed: 03/20/2024
Ballot No: 2

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| HAMISH SEYMOUR | No | | Draft Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.  <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.  <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

6"

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Hamish Seymour

Date Completed: 03/20/2024 3:14:39 PM

8"

# **<u>EXHIBIT 73</u>**

## **Redacted**

# Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| ANTHONY SHADUR<br>Anthony Shadur | Yes | ████████ | Preference<br>Settlement<br>Agreement | WPE Settlement<br>Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Anthony Shadur

Date Completed: 04/05/2024 4:49:18 PM

| |
|---|
| I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount. <br><br> Please type **YES**, if you accept the above statement or **NO** if you reject it: <br><br> **YES** |

8"

# EXHIBIT 74

**Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| PRABAL SINGH | Yes | ▆▆▆▆ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Prabal Singh

Date Completed: 03/25/2024 3:54:47 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

<div style="border:1px solid black; height:40px; width:300px;"></div>

8"

# EXHIBIT 75

**Redacted**

## Electronic ballot Summary

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| SOLIDUM CAPITAL, POSLOVNE STORITVE, D.O.O. | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ GREGOR ZUPANC

Date Completed: 04/19/2024 3:01:47 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

# EXHIBIT 76

## Redacted

## Electronic ballot Summary

| **Debtor** | **District** |
| --- | --- |
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
| --- | --- | --- | --- | --- |
| ROBERT ST LEDGER Robert E St Ledger | Yes | ▇▇▇▇▇ | Preference Settlement Agreement | WPE Settlement Agreement |

### ballot Election

Settling Party Signature
**Response:** no

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▬▬▬▬, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▬▬▬▬, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.    To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Robert E St Ledger

Date Completed: 04/16/2024 8:10:45 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

no

---

8"

# EXHIBIT 77

## Redacted

## Electronic ballot Summary

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

**Creditor**
PATRICK STAGGS
Patrick Staggs

**Address Change**
Yes

**New Address**

**Plan**
Preference Settlement Agreement

**Class**
WPE Settlement Agreement

### ballot Election

Settling Party Signature
**Response:** YES

### Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Patrick Staggs

Date Completed: 04/30/2024 6:01:40 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 78

**Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

**Creditor**
MICHAEL STONE
Michael Stone

**Address Change**
Yes

**New Address**

**Plan**
Preference Settlement Agreement

**Class**
WPE Settlement Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.  Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Michael Stone

Date Completed: 04/04/2024 5:47:31 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
|-----|

8"

# <u>EXHIBIT 79</u>

## Redacted

# Electronic ballot Summary

Date Filed: 04/15/2024
Ballot No: 642

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JULIAN SUASO | No | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Julian Suaso

Date Completed: 04/15/2024 9:16:38 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# <u>EXHIBIT 80</u>

## Redacted

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1127

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| Junfeng Sun | No | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: <u>                                                      </u>

**Settling Party**

By: /s/ Junfeng Sun

Date Completed: 05/01/2024 11:25:15 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

# EXHIBIT 81

## Redacted

**Electronic ballot Summary**

Date Filed: 04/29/2024
Ballot No: 1025

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| HOOI LEONG TEH | Yes |  | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.     On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.     On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.     The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.     The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.     The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]     On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]     The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.   <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.   <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Teh Hooi Leong

Date Completed: 04/29/2024 8:56:08 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# <u>EXHIBIT 82</u>

## Redacted

# Electronic ballot Summary

Date Filed: 03/24/2024
Ballot No: 148

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JOSHUA G B TO | No | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:**

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ JOSHUA TO

Date Completed: 03/24/2024 5:52:44 AM

8"

# **<u>EXHIBIT 83</u>**

## **Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
EMERSON TORRES
USH INC
Emerson Torres

**Address Change**
Yes

**New Address**

**Plan**
Draft Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.     <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.     <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6. <u>Non-Payment</u>. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. <u>Attorney's Fees, Costs and Expenses</u>. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Emerson Torres

Date Completed: 03/20/2024 4:33:03 PM

8"

# __EXHIBIT 84__

## Redacted

# Electronic ballot Summary

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| BERTRAND TORRET bertrand TORRET | Yes | ███████ | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** Y

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     Confidentiality.  The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ BERTRAND TORRET

Date Completed: 05/01/2024 11:51:27 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

Y

---

8"

# EXHIBIT 85

## Redacted

# Electronic ballot Summary

Date Filed: 04/30/2024
Ballot No: 1096

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| WING FUNG TSANG | No | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES, and Due to financial difficulty caused by Celsius, i can only settle this by the \"Liquid Crypto Currency Setoff Payment\" without any further payment in Cash or Cryptocurrency. I reserve my legal right to take further actions

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



      3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6. Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7. Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ WINGFUNGTSANG

Date Completed: 04/30/2024 8:37:10 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES, and Due to financial difficulty caus**

8"

# EXHIBIT 86

**Redacted**

**Electronic ballot Summary**

Date Filed: 05/17/2024
Ballot No: 1226

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
MANEL TSO

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**
Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.     Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.     Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.  <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.  <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement.  Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.  <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.  <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.  <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.  <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Manel tso

Date Completed: 05/17/2024 1:58:04 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **EXHIBIT 87**

## **Redacted**

Date Filed: 04/23/2024
Ballot No: 956

# Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
VICTOR TURNER

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▬▬▬▬ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▬▬▬▬▬, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

2"

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



       3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

5"

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Victor Turner

Date Completed: 04/23/2024 7:46:19 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 88

**Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
CARL TURPIN

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** Yes

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ███████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ███████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Carl Turpin

Date Completed: 04/29/2024 8:41:03 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

Yes

8"

# **<u>EXHIBIT 89</u>**

## **Redacted**

**Electronic ballot Summary**

Date Filed: 04/07/2024
Ballot No: 450

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| MARTEN VAN GILS | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



       3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.  <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.  <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.  <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.  <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Marten van Gils

Date Completed: 04/07/2024 11:10:55 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# **<u>EXHIBIT 90</u>**

## **Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC, et al.
22-10964

**District**
Southern District of New York

**Creditor**
MINH VUONG

**Address Change**
Yes

**New Address**

**Plan**
Preference Settlement Agreement

**Class**
WPE Settlement Agreement

**ballot Election**

**Settling Party Signature Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.    The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than █████ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.    To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    Recitals.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.   This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Minh Vuong

Date Completed: 04/24/2024 4:19:31 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 91

**Redacted**

## Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
CYRIL WITKOWSKI

**Address Change**
Yes

**New Address**



**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ CYRIL WITKOWSKI

Date Completed: 04/08/2024 12:21:53 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

8"

# EXHIBIT 92(i)

## Redacted

## Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JASON WONG | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than █████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than █████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]      On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]      The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     Recitals.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     Payment. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

3     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

4     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**


By: /s/ JASON WONG


Date Completed: 03/25/2024 7:51:02 AM

8"

# EXHIBIT 92(ii)

## Redacted

## Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| JASON WONG | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

**Settling Party Signature Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ▮▮▮▮▮▮ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>.    The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ▮▮▮▮▮▮ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ▮▮▮▮▮ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied.  Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.     Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8. <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9. <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10. <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11. <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12. <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13. <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.     <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.     <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.     <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.     <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Jason Wong

Date Completed: 04/16/2024 9:55:36 AM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 93

## Redacted

# Electronic ballot Summary

Date Filed: 04/06/2024
Ballot No: 440

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| NIEN HSIEN WU | No | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.    On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.    On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.    On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.    The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.    The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.    The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Nien Hsien Wu

Date Completed: 04/06/2024 1:59:34 PM

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

8"

# EXHIBIT 94

## Redacted

# Electronic ballot Summary

Date Filed: 05/01/2024
Ballot No: 1117

| Debtor | District |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| Creditor | Address Change | New Address | Plan | Class |
|---|---|---|---|---|
| KEI MAN YEUNG | No | | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:** YES

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████ which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]      On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]      The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds. Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code. The Settlement Payment Amount shall be paid no later than the Payment Deadline. If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.　　Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.　　Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.     <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.     <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Yeung Kei Man

Date Completed: 05/01/2024 8:05:43 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

**YES**

---

8"

# EXHIBIT 95

**Redacted**

# Electronic ballot Summary

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| FEI YI Yi Fei | Yes |  | Preference Settlement Agreement | WPE Settlement Agreement |

## ballot Election

Settling Party Signature
**Response:**

## Noticing Parties

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A. On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B. On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C. On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D. The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E. The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ███████, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F. The Administrator has asserted that the Preference Liability of the Settling Party is no less than ██████████, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]    On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]    The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.     To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ████████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.     The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.     <u>Recitals</u>.   The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.     <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ████████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (c) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.      Confidentiality. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.      Settling Party's Release. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); provided, however, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.      Administrator's Release. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder,  effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party.  In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law.  Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement.  In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals.  This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ YI FEI

Date Completed: 03/20/2024 8:38:09 PM

8"

# EXHIBIT 96

## Redacted

# Electronic ballot Summary

**Debtor**
Celsius Network LLC,
et al.
22-10964

**District**
Southern District of
New York

**Creditor**
RENNY YIEN

**Address Change**
Yes

**New Address**

**Plan**
Preference
Settlement
Agreement

**Class**
WPE Settlement
Agreement

**ballot Election**

Settling Party Signature
**Response:** YES

**Noticing Parties**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand.   The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.      On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.      On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.      The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.      The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.      The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮, and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]   On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]   The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan.  To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.      To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ███████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.      The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.      <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.      <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ███████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ██████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]     "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]     "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



       3.      <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.    Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.    Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.      <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.      <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.     <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.     <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.     <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.     <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14. <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement. Any notices required or contemplated herein shall also be in writing.

15. <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16. <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17. <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ Renny Yien

Date Completed: 05/03/2024 7:22:58 PM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

| YES |
| --- |

---

8"

# **EXHIBIT 97**

## **Redacted**

**Electronic ballot Summary**

| **Debtor** | **District** |
|---|---|
| Celsius Network LLC, et al. 22-10964 | Southern District of New York |

| **Creditor** | **Address Change** | **New Address** | **Plan** | **Class** |
|---|---|---|---|---|
| RACHEL ZEMSER Rachel Zemser | Yes | | Preference Settlement Agreement | WPE Settlement Agreement |

**ballot Election**

Settling Party Signature
**Response:**

**Noticing Parties**

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Settlement Agreement**") is made and entered into as of the date this Settlement Agreement is executed by the Settling Party as set forth below, by and between the Litigation Administrator (the "**Administrator**") for Celsius Network LLC and its debtor affiliates (collectively, the "**Debtors**"), on the one hand, and the other party identified on the signature page hereto (the "**Settling Party**"), on the other hand. The Administrator and the Settling Party (together, the "**Parties**") acknowledge that this Settlement Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

A.  On July 13, 2022 (the "**Petition Date**"), the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), under Case No. 22-10964 (the "**Bankruptcy Case**").

B.  On November 9, 2023, the Bankruptcy Court entered an order [Docket No. 3972] confirming the modified joint chapter 11 plan of reorganization of the Debtors,[1] which, among other things, vested the Administrator with leave, standing and authority to prosecute certain disputed claims belonging to the Debtors, including claims for preferential transfers.

C.  On January 31, 2024, the Plan became effective in accordance with its terms [Docket No. 4298].

D.  The Administrator has asserted that if an Account Holder with Celsius Network LLC withdrew assets from the Celsius Network LLC's platform in the 90 days prior to the Petition Date (the "**Preference Period**"), the Litigation Administrator is entitled to recover any such withdrawals (the "**Preference Liability**") from such Account Holder.

E.  The Settling Party has a Class 2 (Retail Borrower Deposit),[2] Class 4 (Convenience), and/or Class 5 (General Earn) Claim/Claim(s) in the aggregate amount of no less than ▮▮▮▮▮, which is/are entitled to distributions under the Plan (the "**Settling Party's Claim**").

F.  The Administrator has asserted that the Preference Liability of the Settling Party is no less than ▮▮▮▮▮ and the Administrator has asserted that any associated preferential transfers creating such Preference Liability are subject to avoidance and recovery pursuant to sections 547 and 550 of the Bankruptcy Code.

---

[1]  On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan.

[2]  The calculation of the Retail Borrower Deposit Claim assumes that the Settling Party has either not exercised, or has made but not completed, the Retail Advance Obligation Repayment Election set forth in the Plan. To the extent that such election was made and completed in full, the Litigation Administrator reserves all rights with respect to such Settling Party's distribution if the Settlement Payment is not timely completed.

G.    To avoid the attendant risks of litigation and further costs, the Settling Party has agreed to provide as consideration, and the Administrator has agreed to accept, the agreed amount with a value of ██████ U.S. Dollars (the "**Settlement Payment Amount**"), which shall be satisfied solely as set forth herein.

H.    The Parties desire to compromise and settle all disputes, claims and controversies between the Parties, including those that relate to the Preference Liability, through satisfaction of the Settlement Payment Amount, subject to the terms and conditions set forth in this Settlement Agreement.

## SETTLEMENT TERMS

1.    <u>Recitals</u>.    The above recitals are incorporated into and made a part of this Settlement Agreement and shall be binding on the Parties.

2.    <u>Payment</u>. The Settling Party shall satisfy the Settlement Payment Amount by providing to the Administrator no later than ██████████ (the "**Payment Deadline**"), consideration as follows:  (a) cash payment in the amount of ████████ in immediately available U.S. Dollars (the "**Cash Payment**") and/or (b) reduction of Settling Party's Cash or BTC[3] or ETH[4] ("**Liquid Cryptocurrency**") distribution on account of Settling Party's Claim, with such offset strictly subject to the following terms (the "**Liquid Cryptocurrency Setoff Payment**" and together with the Cash Payment, the "**Settlement Payment**").  The Settling Party hereby irrevocably agrees to the following in connection with its Settlement Payment required hereunder, and in respect of any Liquid Cryptocurrency remitted by Settling Party or the completion by the Administrator of any Liquid Cryptocurrency Setoff Payment, in particular:  first, Settling Party agrees that Liquid Cryptocurrency Setoff Payment may be effected by the Administrator under this Agreement (and this Agreement shall constitute the grant by Settling Party to the Administrator of an irrevocable power of attorney, coupled with an interest, to effectuate any and all sales or transfers of cryptocurrency to which Settling Party would be entitled in consideration of its Claims and/or to direct or instruct the Plan Administrator to do effectuate any and all such sales or transfers), without notice to the Settling Party (x) on, prior to, or following the Payment Deadline, if Settling Party has elected for such payment method pursuant to (b) above, or (y) after the Payment Deadline, if the Administrator has not received full payment of the Settlement Payment in  immediately available U.S. funds by such time; second, the Administrator is hereby given both (A) the right to direct the liquidation of sufficient cryptocurrency relating to Settling Party's distribution to pay the Settlement Payment, and/or (B) the right to direct such cryptocurrency relating to Settling Party's claim to be directed to a wallet designated by Administrator in its sole discretion; third, the Administrator, in calculating the amount of cryptocurrency necessary to satisfy the Settlement Payment, may use any price available during the 24-hour period of each such sale or transfer of cryptocurrency in calculating

---

[3]    "**BTC**" means bitcoin, a form of cryptocurrency introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

[4]    "**ETH**" means ether, the native cryptocurrency of the Ethereum platform, that is not wrapped, staked, or otherwise subject to a trade restriction.

such amounts, regardless of the fact that market prices may be available during such period that may be higher or lower than those actually realized by the Administrator, and Settling Party waives any claim (or right of redemption or any similar right) arising from the calculation of such conversion price or execution price, absent proof of willful misconduct or bad faith by the Administrator; fourth, the Administrator may elect to satisfy the Settlement Payment using any of BTC, ETH, or both, to satisfy the Settlement Payment amount, and Settling Party agrees that it shall have no right whatsoever to determine which cryptocurrency the Administrator shall use to satisfy the Settlement Payment; fifth, the Administrator, in determining the amount required to satisfy the Settlement Payment, may take into account any actual or expected fees (including without limitation, network, transaction, or brokerage fees) or costs of transactions that would result in the net cash Settlement Payment (or value of Settlement Payment, if the Administrator elects to hold cryptocurrency) being equal to the Settlement Payment Amount, after deduction of all such fees, charges, or other costs; sixth, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (e.g., due to market movements or disruptions during the course of effecting such transactions), the Administrator may direct the offset or sale of additional cryptocurrency from the Settling Party's expected distributions to cure any such shortfall, without notice to the Settling Party or opportunity to object; and seventh, the Settling Party agrees that, to the extent that any transaction directed by the Administrator hereunder to obtain or offset against cryptocurrency due to the Settling Party does not result in receipt by the Administrator of the full Settlement Payment Amount (including because other cryptocurrency attributable to Settling Party's distributions is not sufficient to cover the shortfall), Settling Party shall immediately remit to the Administrator such shortfall in immediately available U.S. funds.  Timely payment of the Settlement Payment Amount as set forth herein shall, when completed, be in full and complete satisfaction of the Settling Party's liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code.  The Settlement Payment Amount shall be paid no later than the Payment Deadline.  If making a wire transfer to the Administrator, please include in the Memo the name that is listed on your Celsius account so that payment is properly applied. Payment should be wired for receipt no later than the Payment Deadline to the account given below:



3.    <u>Confidentiality</u>. The Settling Party agrees to keep confidential, to refrain from disclosing, and to use its best efforts to cause its officers, directors, employees, counsel, advisors, representatives, agents and all other parties acting at the Settling Party's control or direction to keep confidential and refrain from disclosing, any of the terms and conditions set forth in this Settlement Agreement or any of the facts and circumstances surrounding the negotiations leading up to the execution of this Settlement Agreement, other than (a) to its auditors, attorneys and

3"

accountants, (b) to any lender that is considering making a loan to the Settling Party of the funds necessary to remit all or part of the Settlement Payment, and (c) as required by law.

4.    <u>Settling Party's Release</u>. Effective upon the Administrator's receipt of (i) the Settlement Payment Amount  and (ii) a fully executed copy of this Settlement Agreement, the Settling Party, for himself, herself or itself and each of his, her or its predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Settling Party (collectively, the "**Settling Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including based upon fraud or any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code and those which the Settling Releasing Parties have or might claim to have against the Administrator, the Debtors, the Debtors' estates, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Administrator Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment Amount, in any way arising out of, relating to, or in connection with the Preference Liability, any of the claims for relief, or any claims that were or could have been asserted by the Settling Party in the Bankruptcy Case that could have been asserted by the Settling Releasing Parties against the Administrator Released Parties, including, but not limited to, replacement claims arising under section 502(h) of the Bankruptcy Code (hereinafter referred to as the "**Settling Party's Release**"); <u>provided</u>, <u>however</u>, that the Settling Party's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement, including any claims with respect to enforcement of foreclosure of the Liquid Cryptocurrency Setoff Payment as set forth in section 5 of this Agreement.

5.    <u>Administrator's Release</u>. Subject to the termination provisions available to the Administrator in the event of non-payment or breach by the Settling Party hereunder, effective upon the Administrator's receipt of (i) the Settlement Payment Amount and (ii) a fully executed copy of this Settlement Agreement, the Administrator, for itself and each of the Debtors, and each of their respective predecessors, successors and assigns and representatives of any kind and for all those who may have the right to claim by, through, or under the Administrator (collectively, the "**Administrator Releasing Parties**"), releases, acquits, and forever discharges any and all claims, disputes, liabilities, suits, demands, liens, actions, administrative proceedings, and causes of action of every kind and nature, including any provision of the Bankruptcy Code, or for any type or form of relief, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, whether asserted or unasserted, whether sounding in tort or in contract, accrued or unaccrued, including but not limited

4"

to those which the Administrator Releasing Parties have or might claim to have against the Settling Party, or anyone else, together with their current and former principals, officers, directors, managers, shareholders, general or limited partners, employees, agents, parent companies, subsidiaries, affiliates, attorneys, trustees, trusts, trustors, settlors, accountants, insurers, reinsurers, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind (collectively, the "**Settling Released Parties**"), jointly and severally, from the beginning of time to the time of the Administrator's receipt of the Settlement Payment, in any way arising out of, relating to, or in connection with, any claims that were or could have been asserted by the Administrator Releasing Parties with respect to the liability owed to the Debtors or their estates for the Preference Liability under sections 547 and 550 of the Bankruptcy Code (hereinafter referred to as the "**Administrator's Release**"); provided, however, that the Administrator's Release shall not apply to any claims seeking to enforce, or for damages for breach of, this Settlement Agreement.

6.      Non-Payment. Notwithstanding anything to the contrary contained herein, in the event that either (i) the Administrator does not receive any portion of the Settlement Payment Amount by the Payment Deadline, or (ii) the Settlement Payment Amount is received but any portion of the funds are uncollectible, the Administrator shall be entitled, in its sole discretion, to (x) immediately foreclose upon the Liquid Cryptocurrency Setoff Payment (y) take action to enforce the terms of this Settlement Agreement, including but not limited to, filing, retaining or initiating any proceeding in the Bankruptcy Court it deems necessary to collect any unreturned portion of the Settlement Payment, or (z) terminate this Settlement Agreement, and treat this Settlement Agreement, and any and all releases contained herein, as void as to such non-performing Settling Party. In either event, the Administrator shall be entitled to reinstitute any and all avoidance actions that were otherwise to have been released pursuant to this Agreement, and further, exercise any and all rights and remedies against the Settling Party that are available under applicable law. Should the Administrator elect to file, retain or initiate any proceeding in the Bankruptcy Court it deems necessary to either (i) institute avoidance actions to recover claims against Settling Party, join such Settling Party in existing avoidance action litigation, or (ii) collect any unreturned portion of the Settlement Payment, as applicable, such non-performing Settling Party hereby waives any and all defenses they may have, including without limitation, those based upon the terms of this Settlement Agreement, and all other defenses relating to delay or estoppel, and/or any statutes of limitations or related defenses, if any. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

7.      Attorney's Fees, Costs and Expenses. The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with this Settlement Agreement. In the event it shall become necessary for any Party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to recover all attorney's fees, costs, and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action, including any negotiations, mediations, arbitrations, litigations, and appeals. This provision shall survive the termination of this Agreement for the benefit of the Administrator regardless of any default in payment or breach by the Settling Party.

8.    <u>Acknowledgement of Mutual Compromise and Valuable Consideration</u>. The Parties hereby acknowledge and agree that the exchanges set forth in this Settlement Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

9.    <u>Representations and Warranties by Parties</u>. Each Party hereby represents and warrants that such Party:  (i) is not relying upon any statements, understandings, representations, expectations, inducements or agreements other than those expressly set forth in this Settlement Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Settlement Agreement and the releases contained herein; (iii) has entered into the Settlement Agreement voluntarily and of his, her or its own choice and not under coercion or duress; (iv) has made his, her or its own investigation of the facts and is relying upon his, her or its own knowledge and the advice of his, her or its own counsel, as applicable; and (v) has the full right and authority to enter into this Settlement Agreement and to grant the releases contained herein, and the person or agent executing this Settlement Agreement on his, her or its behalf has the full right and authority to do so, and fully to commit and bind such Party to this Agreement. Each law firm signing on behalf of their respective clients hereby represents and warrants that such firm has the full right and authority to execute this Settlement Agreement on behalf of their respective client(s) and that this Settlement Agreement (and the obligations imposed upon such clients herein) is fully binding upon such clients as though such clients had executed this Settlement Agreement on their own behalf.

10.    <u>Rules of Construction</u>. The Parties agree that this Settlement Agreement shall not be construed against any Party as the drafter thereof, that all provisions of this Settlement Agreement have been negotiated by the Parties at arms' length, and that no rule of contract construction providing that ambiguous contract terms should be interpreted against the drafting party shall apply or be applied to the interpretation of this Settlement Agreement.

11.    <u>Governing Law and Venue</u>. This Settlement Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the law of the state of New York, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.  The Parties further agree that the Bankruptcy Court shall have exclusive venue and jurisdiction to interpret and enforce this Settlement Agreement.

12.    <u>Further Assurances</u>. The Parties shall execute, acknowledge, deliver, or cause to be executed, acknowledged, or delivered, all documents as shall be reasonably necessary or desirable to carry out the provisions of this Settlement Agreement.

13.    <u>Entire Agreement and Integration Clause</u>. This Settlement Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Settlement Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties hereto shall be governed exclusively by this Settlement Agreement.

14.    <u>Amendments in Writing</u>. This Settlement Agreement may only be amended or modified by a writing signed by all Parties.  No waiver of any breach of this Settlement Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Settlement Agreement.  Any notices required or contemplated herein shall also be in writing.

15.    <u>Headings</u>. Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

16.    <u>Multiple Counterparts and Facsimile or Electronic Signatures</u>. This Settlement Agreement may be signed in multiple counterparts, and when each Party or his, her or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original.  In addition, this Settlement Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or by mail, although it is the Parties' intentions to deliver original signatures after delivery of facsimile or electronic signatures.

17.    <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS NOT REQUIRED, AND SIGN THE SAME AS HIS, HER OR ITS OWN FREE ACT.

**IN WITNESS WHEREOF**, the Parties or their authorized agents or representatives are executing this Settlement Agreement as of the day and year first above written.

7"

**Litigation Administrator**

By: _____

**Settling Party**

By: /s/ ██████████

Date Completed: 04/29/2024 8:50:39 AM

---

I elect the Liquid Cryptocurrency Setoff Payment option set forth in section 2(b) of this Settlement Agreement to satisfy my Settlement Payment Amount.

Please type **YES**, if you accept the above statement or **NO** if you reject it:

---

8"