**WHITE & CASE LLP**
Samuel P. Hershey
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
   lucas.curtis@whitecase.com
   nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
   devin.rivero@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
   laura.baccash@whitecase.com

– and –

**ASK LLP**
Marianna Udem
60 East 42nd Street
46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email: mudem@askllp.com

– and –

**ASK LLP**
Brigette McGrath
Kara E. Casteel (admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email: bmcgrath@askllp.com
   kcasteel@askllp.com

*Co-Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § | |

---

[1] The debtors ("**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding

1

**SUPPLEMENTAL BRIEF OF THE LITIGATION ADMINISTRATOR IN SUPPORT OF (I) THE LITIGATION ADMINISTRATOR'S MOTION TO ENFORCE CUSTOMER PREFERENCE CLAIMS SETTLEMENT AGREEMENTS AGAINST CERTAIN BREACHING PARTIES AND (II) THE LITIGATION ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE LITIGATION ADMINISTRATOR TO REDACT AND FILE UNDER SEAL CERTAIN CONFIDENTIAL TERMS OF CUSTOMER PREFERENCE SETTLEMENT AGREEMENTS AGAINST CERTAIN BREACHING PARTIES**

Pursuant to the Court's request at the October 8, 2024 hearing for supplemental briefing addressing the (1) legal authority of the Litigation Administrator to enter into the Settlement Agreements without Court approval and (2) legal authority supporting the Litigation Administrator's request to seal the material commercial terms of the Settlement Agreements, Mohsin Y. Meghji, as Litigation Administrator for Celsius Network LLC and its affiliated post-effective date debtors (the "**Litigation Administrator**"), by and through his undersigned counsel, submits this *Supplemental Brief of the Litigation Administrator in Support of (I) the Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements against Certain Breaching Parties and (II) the Litigation Administrator's Motion for Entry of an Order Authorizing the Litigation Administrator to Redact and File under Seal Certain Confidential Terms of Customer Preference Claims Settlement Agreements against Certain Breaching Parties* (the "**Supplemental Brief**"). In further support of the Supplemental Brief, the Litigation Administrator respectfully states as follows:[2]

---

LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the *Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7709] (the "**Motion to Enforce**") and *the Litigation Administrator's Motion for Entry of an Order Authorizing the Litigation Administrator to Redact and File Under Seal Certain Confidential Terms of Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7710] (the "**Motion to Seal**"), as applicable.

**PRELIMINARY STATEMENT**

1.  Under Article IV.S of the Plan, the Litigation Administrator has authority to enter into settlements regarding "Causes of Action"—a defined term that includes "claims . . . pursuant to . . . chapter 5 of the Bankruptcy Code" and "any other Avoidance Action"—without seeking the Court's approval. *See* Plan Art. IV.S; *see also* Plan Arts. I.A.31, I.A.17. Pursuant to this authority, the Litigation Administrator used his discretion to enter into the Settlement Agreements. He now asks the Court to enforce those agreements against the 75 Breaching Parties listed on **Exhibit A**.[3]

2.  Because the Settlement Agreements do not require Court approval, public disclosure of the Settlement Agreements is not required. Moreover, public disclosure of the material commercial terms of the Settlement Agreements would compromise future settlement negotiations. The Litigation Administrator therefore seeks to seal those terms to ensure the continued facilitation of settlements in this matter, which have recovered more than one hundred million dollars for Celsius's creditors.

3.  No party has objected to either the Motion to Enforce or the Motion to Seal. Accordingly, for the reasons set forth herein, the Litigation Administrator respectfully requests that the Court grant both motions.

**BACKGROUND**

4.  On September 24, 2024, the Litigation Administrator filed the Motion to Enforce and the Motion to Seal. The Litigation Administrator received no objections to the Motion to

---

[3] Exhibit B to the Motion to Enforce identified 97 Settlement Agreements, representing 93 Breaching Parties (four Breaching Parties signed the Settlement Agreement twice). After filing the Motion to Enforce, the Litigation Administrator entered into good faith negotiations with certain Breaching Parties to resolve the breach, resulting in remaining disputes with only 75 Breaching Parties. Accordingly, the Litigation Administrator attaches a revised list as Exhibit A, identifying the 75 Breaching Parties and removing the parties who have resolved their breach. The Litigation Administrator will submit a new form of order to chambers attaching this list.

3

Enforce or the Motion to Seal by the noticed deadline. Accordingly, the Litigation Administrator filed a certificate of no objection and attached an amended proposed order granting the Motion to Enforce. *See Certificate of No Objection Regarding the Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements against Certain Breaching Parties* [Docket No. 7731] (the "**Certificate of No Objection**"). At the hearing regarding the Motion to Enforce and the Motion to Seal, the Court sought clarification from the Litigation Administrator regarding two issues.

5. ***First***, the Court asked whether the Plan, or any other Court order, provided the Litigation Administrator with authority to settle the customer preference claims without Court approval. *See* Oct. 8, 2024 Hr'g Tr. at 32:21-23 (COURT: "What is it in the plan or in any order entered by the Court that authorizes the [litigation] administrator to settle claims without approval of the Court[?]"); *id.* at 37:6-8 (COURT: "For me to be able to enforce the agreements, I need to understand that, yes, the [litigation] administrator had the authority to enter into these contracts.").

6. ***Second***, the Court asked whether it would be consistent with prevailing law for the Court to grant the Motion to Seal and redact the material commercial terms of the Settlement Agreements. *See id.* at 39:17-20 (COURT: "And I certainly understand as a practical matter that disclosing the terms of settlement in a handful of settlements already been achieved could have an impact on the dynamics, but I need some more [] on that."); *see also id.* at 41:17-18 (COURT: "I am open to considering whether it all should be sealed."). In particular the Court identified *In re Oldco M Corp.*, 466 B.R. 234 (Bankr. S.D.N.Y. 2012) and *Geltzer v. Anderson Worldwide S.C.*, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) as relevant to this analysis. *Id.* at 37:19-39:15; 42:14-19; 60:12-15. The Court stated that "assuming that it's correct that the [litigation] administrator

4

had the authority to settle the claims without seeking approval of the bankruptcy court, it could well affect my 107(b) sealing analysis." *Id.* at 60:4-7; 60:21-22.

7. The Court asked the Litigation Administrator to file a supplemental brief within two weeks addressing these issues. *See id.* at 43:25-44:2. The Litigation Administrator submits this Supplemental Briefing in accordance with the Court's instructions.

## ARGUMENT

I. **The Litigation Administrator Has Authority to Settle the Avoidance Actions without Seeking Court Approval**

8. Article IV.S of the Plan provides as follows:

> [T]he Litigation Administrator(s) . . . shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party **or further notice to or action, order, or approval of the Bankruptcy Court**."

Plan Art. IV.S (emphasis added). "Causes of Action" is a defined term in the Plan that covers a broad array of claims including, among other things, "claims . . . pursuant to . . . chapter 5 of the Bankruptcy Code" and "any other Avoidance Action," which in turn is defined to mean "any and all actual or potential avoidance, recovery, subordination, or other similar Claims, Causes of Action, or remedies[.]" *See* Plan Arts. I.A.31, I.A.17.

9. The customer preference claims that are the subject of the Settlement Agreements plainly fit within the categories set forth in Article IV.S of the Plan. Accordingly, under the terms of the confirmed Plan, the Litigation Administrator does not need to seek Court approval in connection with the Settlement Agreements.

II. **The Settlement Agreements' Material Commercial Terms Should be Sealed**

10. The Court should grant the Motion to Seal, and the Litigation Administrator should be allowed to redact the material commercial terms of the Settlement Agreements. As the Court

5

noted during the October omnibus hearing, whether a settlement agreement requires court approval has significant bearing on the appropriateness of sealing that agreement. Oct. 8, 2024 Hr'g Tr. at 39:6-12 (COURT: "[I]f the litigation administrator had authority to settle claims without approval of the bankruptcy court, if I didn't have to rule on a 9019 motion, I could see the arguments why in that circumstance if there was confidentiality provisions regarding the settlement, that they be kept under seal under Rule 1007, or Code Section 1007(b)."). Given that the Settlement Agreements are not subject to public disclosure, there is no basis for their terms to be required to be disclosed in connection with the Motion to Enforce. Moreover, denying the Litigation Administrator's request to seal the material commercial terms of the Settlement Agreements would force the Litigation Administrator to pick between enforcing the Settlement Agreements against the Breaching Parties and protecting his ability to enter into future settlement agreements—an impossible choice.

11. Although *Geltzer* and *Oldco* resulted in the denial of sealing motions, those cases were distinct from this case in ways that both courts recognized support sealing here. *Geltzer* involved a chapter 7 trustee's application to seal the amount of a proposed Rule 9019 settlement. The court denied the trustee's application because "the amount of the settlement is the critical factor in the Court's ability to assess whether the settlement should be approved [and] [i]t therefore follows that it is also the critical factor in the ability of the public to monitor the appropriateness of the Court's decision." *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007). No such argument applies here, where the Settlement Agreements do not require court approval. Indeed, the *Geltzer* court noted that "[o]rdinarily, settlements of civil lawsuits are private arrangements between the parties" where "the court 'normally plays no role whatever,

6

standing 'indifferent' to the terms the parties have agreed to.'" *Id.* at *1 (quoting *Janus Films, Inc. v. Miller,* 801 F.2d 578, 582 (2d Cir. 1986)). Such is the case here.

12.   *In re Oldco* supports the same conclusion. In that case, this Court similarly denied a trustee's application to seal a Rule 9019 settlement. Citing *Geltzer*, this Court identified the same determinative distinction: "Ordinarily, settlements of civil lawsuits are private arrangements between the parties, and the court plays no role whatever . . . But when a trustee seeks to settle a claim on behalf of a bankruptcy estate, the public policy of open access to court records comes fully into play, and a searching judicial inquiry is required before approving the settlement." *In re Oldco M Corp.*, 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012) (Glenn, J.) (internal quotation marks omitted); *see also* Oct. 8, 2024 Hr'g Tr. at 42:11-14 (COURT: "So I think the first thing that strikes me, if the [litigation] administrator has the authority to settle without the authority of the bankruptcy court, I could certainly see -- look, private settlements don't have to be disclosed."). Here, a "searching judicial inquiry" of the private Settlement Agreements is not called for, and so the public policy that would require disclosure does not come into play. *Brown v. Caldwell*, 2023 WL 8064283, at *4 (D.N.J. Nov. 21, 2023) (granting motion to seal settlement agreement where "the Parties did not seek the Court's assistance in interpreting the terms of the agreement" but rather in enforcing the agreement).

13.   Indeed, public policy in these circumstances supports sealing. Where, as here, parties to a settlement have expressed the desire to keep the terms confidential, "courts are bound to encourage" such agreement. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004); *see also United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998) (affirming decision sealing settlement documents because of the court's responsibility to encourage and facilitate settlements). Here, the Settlement Agreements contain a confidentiality

7

provision. *See Declaration of Nikita Ash in Support of the Litigation Administrator's Motion to Enforce Customer Preference Claims Settlement Agreements Against Certain Breaching Parties* [Docket No. 7709-3] Exs. 1-97 § 3. The Court should therefore enforce the parties' agreement and keep the commercial terms under seal. *See Medley v. American Cancer Soc.*, 2010 WL 3000028, at *1 n.1 (S.D.N.Y. July 23, 2010) ("Because the terms of the settlement agreement are confidential, it will be filed under seal."); *Mendell v. Am. Med. Response, Inc.*, 2021 WL 398486, at *2 (S.D. Cal. Feb. 3, 2021) ("Courts have found good cause to allow confidential settlement agreements or documents that discuss or disclose the terms of the agreements to be filed under seal.").[4]

## CONCLUSION

14.     For the foregoing reasons, the Litigation Administrator respectfully requests that the Court grant the Motion to Enforce and the Motion to Seal.

[*Remainder of This Page Intentionally Left Blank*]

---

[4] The Litigation Administrator has sought to heed the Court's guidance provided in the *Memorandum Opinion and Order Granting in Part Litigation Administrators Motion to Seal* [Docket No. 7574]. Accordingly, the Litigation Administrator has sealed only commercially sensitive information while keeping the bulk of the Settlement Agreements unredacted. *See id.* at 21 ("[A]s this Court has recognized, 'rather than wholesale sealing of documents containing some confidential information, redacting the document to remove only confidential information is the preferred form of protection.'") (citing *In re Oldco M Corp.*, 466 B.R at 237 n.2).

8

Dated: October 22, 2024
      New York, New York

By: *Samuel P. Hershey*

**WHITE & CASE LLP**
Samuel P. Hershey
Lucas G. Curtis
Nikita Ash
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
        lucas.curtis@whitecase.com
        nikita.ash@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
        laura.baccash@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Devin Rivero (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com
        devin.rivero@whitecase.com

**ASK LLP**
Marianna Udem, Esq.
60 East 42nd Street
46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email: mudem@askllp.com

– and –

**ASK LLP**
Brigette McGrath, Esq.
Kara E. Casteel, Esq. (admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email: bmcgrath@askllp.com
        kcasteel@askllp.com

*Co-Counsel to Mohsin Y. Meghji, Litigation Administrator, as Representative for the Post-Effective Date Debtors*

## EXHIBIT A

| Exhibit No. | Counterparty | Date of Agreement |
|---|---|---|
| 1. | AHMED, MOHAMMED | 04/29/24 |
| 2. | AROSEMENA, JUAN | 05/16/24 |
| 3. | INTENTIONALLY LEFT BLANK | N/A |
| 4. | BLESSING, ROBERT | 04/18/24 |
| 5. | BOHNSACK, ANDREAS | 05/01/24 |
| 6. | BOHNSACK, MARINDA | 05/01/24 |
| 7. | BOLLAERT, FABIAN | 03/31/24 |
| 8. | RESOLVED | N/A |
| 9. | BRYSON, VOE | 05/01/24 |
| 10. | CALANDRA, STEVEN | 05/26/24 |
| 11. | CALEB, PAUL | 04/04/24 |
| 12. | CAMERON, DUNCAN | 03/27/24 |
| 13. | CASAL, GERARDO | 05/01/24 |
| 14. | RESOLVED | N/A |
| 15. | CHEN, KEVIN | 04/05/24 |
| 16. | CHENG, CHRISTI | 04/29/24 |
| 17. | RESOLVED | N/A |
| 18. | CHIANG, MING | 04/18/24 |
| 19. | CHUNG, LAI | 04/14/24 |
| 20. | RESOLVED | N/A |
| 21. | DOAN, VIET | 03/23/24 |
| 22. | DOS SANTOS, PABLO | 03/20/24 |

| Exhibit No. | Counterparty | Date of Agreement |
|---|---|---|
| 23. | FAUCON, PASCAL | 04/29/24 |
| 24. | FRIEDER, CASEY | 04/25/24 |
| 25. | GARZA, SAM | 04/29/24 |
| 26. | GOODE, DAVID | 03/22/24 |
| 27. | GRABER, JOSHUA | 04/29/24 |
| 28. | HAHN, YAO | 05/20/24 |
| 29. | HAN, CHARLES | 03/21/24 |
| 30. | HARTE, JAMES | 07/01/24 |
| 31. | HEARD, ZACK | 04/12/24 |
| 32. | HENSLEY, CHRISTOPHER | 04/08/24 |
| 33. | HERNANDEZ, ELIAS | 03/21/24 |
| 34. | RESOLVED | N/A |
| 35. | IRVING, HAROLD | 04/06/24 |
| 36. | IVIC, JOSIP | 04/13/24 |
| 37. | JEAN, PASCAL | 04/23/24 |
| 38. | JIANG, YONG | 03/28/24 |
| 39. | KENG, EVIEON | 04/24/24 |
| 40. | KHOURY, SAMIR | 05/16/24 |
| 41(i). | RESOLVED | N/A |
| 41(ii). | RESOLVED | N/A |
| 42. | KING, JOHN | 04/23/24 |
| 43. | RESOLVED | N/A |
| 44. | KUHFUSS, CLEMENT | 03/20/24 |

| **Exhibit No.** | **Counterparty** | **Date of Agreement** |
|---|---|---|
| **45.** | LAMOUR, DAMIAN | 04/12/24 |
| **46.** | RESOLVED | N/A |
| **47.** | LOPORTO, PHILIP | 04/25/24 |
| **48.** | MACMANUS, MICHAEL | 07/08/24 |
| **49(i).** | MAY, JAMES | 04/24/24 |
| **49(ii).** | MAY, JAMES | 05/18/24 |
| **50.** | RESOLVED | N/A |
| **51.** | INTENTIONALLY LEFT BLANK | N/A |
| **52.** | MEINHOLD, KYLE | 08/30/24 |
| **53.** | RESOLVED | N/A |
| **54.** | MERMET, LEONARD | 03/21/24 |
| **55.** | MILLER, DAVID | 04/23/24 |
| **56.** | MISRA, AMIT | 04/29/24 |
| **57.** | MITCHELL, DAVID | 04/22/24 |
| **58.** | MOHAMED, ISLAM | 04/05/24 |
| **59.** | RESOLVED | N/A |
| **60(i).** | NANCHEVA, ROSITSA | 04/24/24 |
| **60(ii).** | NANCHEVA, ROSITSA | 05/01/24 |
| **61.** | NARAINSINGHANI, MANIK | 03/27/24 |
| **62.** | ONG, EUGENE | 04/29/24 |
| **63.** | PANAYIOTOU, ANTONIO | 07/10/24 |
| **64.** | PEETZ, MATTHEW | 04/30/24 |
| **65.** | RESOLVED | N/A |

| Exhibit No. | Counterparty | Date of Agreement |
|---|---|---|
| **66.** | RESOLVED | N/A |
| **67.** | RIVERA, OSCAR | 04/23/24 |
| **68.** | RUDOLPH, FREDERICK | 04/28/24 |
| **69.** | SALLEH, FAROUK | 04/28/24 |
| **70.** | SELMAR, SAMUEL | 04/15/24 |
| **71.** | RESOLVED | N/A |
| **72.** | SEYMOUR, HAMISH | 03/20/24 |
| **73.** | SHADUR, ANTHONY | 04/05/24 |
| **74.** | RESOLVED | N/A |
| **75.** | SOLIDUM CAPITAL, POSLOVNE STORITVE, D.O.O. | 04/19/24 |
| **76.** | ST. LEDGER, ROBERT | 04/16/24 |
| **77.** | STAGGS, PATRICK | 04/30/24 |
| **78.** | RESOLVED | N/A |
| **79.** | SUASO, JULIAN | 04/15/24 |
| **80.** | SUN, JUNFENG | 05/01/24 |
| **81.** | TEH, HOOI | 04/29/24 |
| **82.** | RESOLVED | N/A |
| **83.** | TORRES, EMERSON | 03/20/24 |
| **84.** | TORRET, BERTRAND | 05/01/24 |
| **85.** | TSANG, WING | 04/30/24 |
| **86.** | TSO, MANEL | 05/17/24 |
| **87.** | TURNER, VICTOR | 04/23/24 |
| **88.** | TURPIN, CARL | 04/29/24 |

| **Exhibit No.** | **Counterparty** | **Date of Agreement** |
|---|---|---|
| **89.** | RESOLVED | N/A |
| **90.** | VOUNG, MINH | 04/24/24 |
| **91.** | WITKOWSKI, CYRIL | 04/08/24 |
| **92(i).** | RESOLVED | N/A |
| **92(ii).** | RESOLVED | N/A |
| **93.** | WU, NIEN | 04/06/24 |
| **94.** | YEUNG, KEI | 05/01/24 |
| **95.** | YI, FEI | 03/20/24 |
| **96.** | YIEN, RENNY | 05/03/24 |
| **97.** | RESOLVED | N/A |