**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
         sam.hershey@whitecase.com
         jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Litigation Oversight Committee,
Mohsin Y. Meghji as Litigation Administrator, and
Blockchain Recovery Investment Consortium, LLC
as Complex Asset Recovery Manager*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |

## LITIGATION ADMINISTRATORS' QUARTERLY REPORT

---

[1]    The "**Post-Effective Date Debtors**" in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of the Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Mohsin Y. Meghji, as the Litigation Administrator (in such capacity, the "**Litigation Administrator**"), and Blockchain Recovery Investment Consortium, LLC, as the Complex Asset Recovery Manager (in such capacity, the "**ARM**" and together with the Litigation Administrator, collectively, the "**Litigation Administrators**") appointed under the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Dkt. No. 4289] (the "**Plan**")[2] submit this quarterly report pursuant to Section 4.13 of the Litigation Administrator Agreement[3] and Section 4.10 of the Litigation Administrator (ARM) Agreement (this "**Quarterly Report**"):

## **Preliminary Statement**

1.      On January 31, 2024, the Plan became effective in accordance with its terms [Dkt. No. 4298].  On the Effective Date, the Litigation Administrator was appointed to, among other things, prosecute, settle, or otherwise resolve any remaining Disputed Claims (including any related Causes of Action that are not released, waived, settled, or compromised pursuant to the Plan), the Recovery Causes of Action, and the Contributed Claims for the benefit of holders of Claims entitled to receive Litigation Proceeds under the Plan in accordance with the Litigation Administrator Agreement.  The ARM was also appointed on the Effective Date and charged with administering and monetizing the Post-Effective Date Debtors' illiquid assets identified on the schedule attached to the Litigation Administrator (ARM) Agreement (the "**ARM Claims**").

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3]     In accordance with the Plan and Confirmation Order, (i) the Debtors and the Litigation Administrator entered into that certain *Litigation Administrator Agreement*, *see* Ex. B [Dkt. No. 4297] (the "**Litigation Administrator Agreement**"), and (ii) the Debtors and the Litigation Administrator (ARM) entered into that certain *Litigation Administrator and Complex Asset Recovery Manager Agreement*, *see* Ex. C [Dkt. No. 4297] (the "**Litigation Administrator (ARM) Agreement**").

2.      Since the Effective Date, the Litigation Administrators have worked diligently, under the oversight of the Litigation Oversight Committee, to fulfill their fiduciary duties to the Post-Effective Date Debtors' creditors and pursue claims and causes of actions and monetize assets for the benefit of creditors.  Between July 1 and September 30, 2024, the Litigation Administrators recovered and generated approximately $92 million of net cash, bringing the balance of the Litigation Recovery Account to approximately $248 million as of September 30, 2024.  The Litigation Oversight Committee and Litigation Administrators are working with the Plan Administrator to make an initial distribution of the proceeds resulting from those efforts to creditors entitled to receive Litigation Proceeds under the Plan in the fourth quarter of 2024.

3.      The Litigation Administrators file this Quarterly Report pursuant to the Litigation Administrator Agreements to provide information to the Post-Effective Date Debtors' creditors and other parties in interest related to:

(a)      the financial statements of the Litigation Recovery Account;

(b)      the various actions taken that may affect the Litigation Recovery Account;

(c)      the progress of liquidating the Post-Emergence Claims (as defined in section 2.1(d) of the Litigation Administrator Agreement) and determining the frequency and quantum of any distributions from the Litigation Recovery Account to holders of Claims;

(d)      payments made to the Litigation Administrator and Litigation Administrator Professionals (as defined in section 2.5 of the Litigation Administrator Agreement); and

(e)      other material information deemed appropriate by the Litigation Administrators.

### Financial Update

4.      On the Effective Date, the Litigation Recovery Account was funded with cash of $55 million.  Of that amount, $15 million was reserved to account for the future fixed fees of the Litigation Administrator (ARM) owed under the Litigation Administrator (ARM) Agreement.

5.      As of September 30, 2024, due to the Litigation Administrators' efforts, the Litigation Recovery Account has grown to approximately $248 million in cash, including approximately $92 million in cash received during the third quarter of 2024 (i.e., July 1, 2024 to September 30, 2024).  The majority of these cash proceeds came from (i) settling avoidance action claims against individuals and entities that received transfers from Celsius during the 90 days prior to the Petition Date, (ii) selling certain equity and certain debt received through Core Scientific Operating Company's (f/k/a Core Scientific, Inc.) ("**Core Scientific**") chapter 11 restructuring, and (iii) managing and monetizing collateral related to the Institutional Loans (as defined herein).

6.      As of the date of this report, there have not been any distributions to creditors from the Litigation Recovery Account, but the Litigation Administrators are working with the Plan Administrator to make an initial distribution to creditors from the Litigation Recovery Account in the fourth quarter of 2024.

7.      The changes to the Litigation Recovery Account for the February 1, 2024 through September 30, 2024 period are set forth below:

| ($000s) | | Q3 2024 | Inception to Date |
|---|---|---:|---:|
| **Opening Cash Balance** | [A] | $181,460 | $55,000 |
| **Receipts** | | | |
| Litigation Proceeds | [B] | 26,235 | 98,038 |
| Asset Sales | [C] | 63,537 | 139,161 |
| Interest Income | | 2,435 | 3,899 |
| **Total Receipts** | | **$92,207** | **$241,097** |
| **Disbursements** | | | |
| Litigation Administrators | [D] | (1,350) | (3,608) |
| Litigation Oversight Committee | [E] | (305) | (814) |
| Professional Fees | [F] | (24,489) | (44,151) |
| Other Operating Expenses | [G] | (4) | (6) |
| **Total Disbursements** | | **($26,148)** | **($48,579)** |
| **Net Change in Cash** | | **$66,059** | **$192,519** |
| **Ending Cash Balance** | | **$247,519** | **$247,519** |

Notes to Financial Statements:

(a)    The Litigation Recovery Account was funded with $55 million on January 31, 2024.  Of that amount, $15 million was budgeted to account for the future fixed fees of the Litigation Administrator (ARM) owed under the Litigation Administrator (ARM) Agreement.

(b)    Receipts reflect actual cash received into the Litigation Recovery Account via payments from parties that have settled Avoidance Actions or amounts such settling parties authorized the Litigation Administrator to set off against the cash or Liquid Cryptocurrency recoveries such settling parties would have otherwise been entitled to receive under the Plan.  As of September 30, 2024, approximately $6 million remains due from settling parties under the settlement agreements.  That amount is not included in the amount of proceeds recovered to date on account of the settlement program.  On September 24, 2024, the Litigation Administrator filed a motion seeking to enforce the terms of the preference settlement agreements against certain settling parties who had defaulted and failed to remit payment to the Litigation Administrator by the settlement payment deadline [Dkt. No. 7709].

(c)    Asset sales proceeds include the sales of and interest from certain equity and debt received through Core Scientific's chapter 11 restructuring, liquidation of loan collateral related to the Institutional Loans, the sale of certain alt coins, and the settlement of the Reliz (as defined herein) claims.

(d)    The expenses in this line item consist of fees paid to the Litigation Administrators pursuant to the Litigation Administrator Agreements filed as part of the *Eleventh Notice of Filing of Plan Supplement* [Dkt. No. 4297].

(e)    The expenses in this line item consist of compensation and reimbursement of reasonable and documented out of pocket expenses paid to Litigation Oversight Committee members.

(f)    The expenses in this line item consist of payments to professionals retained by or on behalf of the Litigation Oversight Committee or the Litigation Administrators on account of services rendered for, among other things, investigating claims and causes of action, preparing and prosecuting post-effective date litigation, and performing duties under the Plan.  This also includes direct pass-through expenses such as court filing fees, data hosting, and other operational expenses required to administer the estate.

(g)    Other operating expenses consist of bank fees and other administrative costs.

## <u>Significant Updates</u>

## I.    Administrative Updates

8.    Since the Effective Date, the Litigation Oversight Committee has met regularly to review the actions of the Litigation Administrators and their counsel.  These meetings have

included quarterly in-person sessions to perform deep-dive reviews on potential and pending actions, financial forecasts, and other matters.  On September 10, 2024, the Litigation Oversight Committee convened an in-person meeting in New York City to discuss, among other things, making an initial distribution to eligible creditors from the Litigation Recovery Account in the fourth quarter of 2024.

## II.    Avoidance Actions

9.      Since March 2024, the Litigation Oversight Committee and the Litigation Administrator have engaged in efforts to recover transfers subject to avoidance under chapter 5 of the Bankruptcy Code that were not released under the Plan and were preserved for the benefit of creditors.

10.      The initial phase of the Litigation Administrator's efforts focused on reaching settlements with account holders before the commencement of litigation.  To that end, the Litigation Administrator launched a settlement program (the "**Preference Litigation Settlement Program**") in March 2024.  The Litigation Administrator's pre-litigation settlement deadline was extended multiple times to provide parties with additional time to respond, accommodating additional settlements.  For parties that failed to settle under the Preference Litigation Settlement Program, the Litigation Administrator commenced actions to recover preferential transfers. Specifically, by July 15, 2024, the Litigation Administrator filed nearly 2,500 complaints against non-settling individuals and entities, seeking the return of assets worth more than $2 billion (valued as of June 14, 2024).

11.      On August 27, 2024, the Bankruptcy Court instructed the Litigation Administrator to extend the Preference Litigation Settlement Program and establish a final deadline, ensuring that all defendants had an opportunity to accept this offer prior to ramping up litigation against

such parties.[4]  *See* Aug. 27, 2024 Hr'g Tr. at 94:7-17 [Dkt. No. 7652]; *Notice of Deadline to Accept Settlement Offer in Connection with Celsius Customer Preference Actions* [Dkt. No. 7689].  The Preference Litigation Settlement Program expired on October 29, 2024.

12.  As of September 30, 2024, the Litigation Administrator entered into more than 1,800 settlement agreements with account holders to resolve their preference claims, including several groups of preference defendants represented by common counsel.  Those settlement efforts have resulted in approximately $103.5 million of settlement commitments as of September 30, 2024, while also contributing to a reduction in the estate's overhead and administrative expenses.

13.  During the June 28, 2024 and July 29, 2024 omnibus hearings, the Bankruptcy Court instructed the Litigation Administrator to file a motion proposing procedures to establish a uniform schedule and set of rules to govern those litigations, and to identify common issues likely to be determinative of most of the actions.  *See* June 28, 2024 Hr'g Tr. at 31:4-9 [Dkt. No. 7552]; July 29, 2024 Hr'g Tr. at 21:10-12 [Dkt. No. 7565].  Following the Bankruptcy Court's directive, the Litigation Administrator filed proposed procedures, which were heard at the Bankruptcy Court hearing on August 27, 2024.  *See* [Dkt. Nos. 7534, 7548].  On September 6, 2024, the Bankruptcy Court created a consolidated docket for filings impacting the Litigation Administrator's avoidance actions.  *See In re Celsius Customer Preference Actions*, Adv. Proc. No. 24-04024 (MG) (Bankr. S.D.N.Y.) (the "**Preference Dkt.**").  On September 10, 2024, the Litigation Administrator filed revised proposed procedures on the consolidated docket, incorporating rulings and direction from the Bankruptcy Court [Preference Dkt. No. 3].

---

[4]  The Litigation Administrator set October 15, 2024 as the deadline to accept the settlement offer under the Preference Litigation Settlement Program, which was later extended to October 29, 2024 at noon (prevailing Eastern time).  *See Amended Notice of Deadline to Accept Settlement Offer in Connection with Celsius Customer Preference Actions* [Dkt. No. 7745].

14.     On September 24, 2024, the Litigation Administrator filed a motion seeking to enforce the terms of settlement agreements against parties who had defaulted and failed to remit payment to the Litigation Administrator by the settlement payment deadline [Dkt. No. 7709].  At the time of such filing, of the 1,800 parties who had signed settlement agreements, only approximately 100 parties had failed to pay the settlement amounts due.

15.     ***Power Block Coin***.  On July 13, 2024, the Litigation Administrators commenced two separate adversary proceedings in the bankruptcy of Power Block Coin, LLC ("**Power Block Coin**") for causes of action arising from transfers Power Block Coin made during the Celsius preference period related to Earn Accounts and certain loan agreements.  *See Celsius Network LLC v. Power Block Coin, LLC*, Adv. Proc. No. 24-02094 (JTM) (Bankr. D. Utah July 13, 2024) [Dkt. No. 1]; *Meghji v. Power Block Coin, LLC*, Adv. Proc. No. 24-02093 (JTM) (Bankr. D. Utah July 12, 2024) [Dkt. No. 1].  The adversary proceedings seek damages of $79,032,563.75 and $54,256,669.86, respectively, not including potential defenses.  On August 9, 2024, the Litigation Administrators filed separate motions to lift the automatic stay and transfer venue in both adversary proceedings to Celsius's Bankruptcy Court in the Southern District of New York.  *See Celsius Network LLC v. Power Block Coin, LLC*, Adv. Proc. No. 24-02094 (JTM) (Bankr. D. Utah Aug. 9, 2024) [Dkt. No. 8]; *Meghji v. Power Block Coin, LLC*, Adv. Proc. No. 24-02093 (JTM) (Bankr. D. Utah Aug. 9, 2024) [Dkt. No. 3].  The venue transfer motions seek to allow Celsius to prosecute the avoidance actions against Power Block Coin in its Bankruptcy Court in the Southern District of New York so that the procedures and schedule for the preference litigation, as well as any rulings, are consistent with the approximately 2,500 other avoidance actions that the Litigation Administrators have filed.  On August 23, 2024, the Litigation Administrators filed proofs of claim

in Power Block Coin's bankruptcy proceeding consistent with the as-filed complaints. *See In re Power Block Coin, LLC*, No. 24-23041 (JTM) (Bankr. D. Utah Jun 20, 2024) [Claim Nos. 1-2].

16.  The debtor and transferee, Power Block Coin, originally filed for chapter 11 under subchapter V, a special provision for small businesses which would have allowed it to avoid many of the protections afforded to creditors in a traditional chapter 11 case. *In re Power Block Coin, LLC*, No. 24-23041 (JTM) (Bankr. D. Utah June 20, 2024) [Dkt. No. 1].  The Litigation Administrator objected to Power Block Coin's election under subchapter V.  On October 9, 2024, the bankruptcy court sustained Celsius's objection and converted Power Block Coin's sub-chapter V case to a chapter 11 case. *Id.* at [Dkt. No. 190].  The lift stay and venue transfer motions have been stayed while the subchapter V issues were being pursued.

## III.    Other Litigation Matters

17.  ***Claim Objections***.  The Litigation Administrator is tasked with resolving and administering claims against the Debtors.  On August 26, 2024, the Litigation Administrator filed two omnibus objections to claims that were not supported with appropriate or sufficient documentation [Dkt. Nos. 7639, 7641].  After a hearing on October 8, 2024, the Bankruptcy Court entered orders sustaining the two omnibus objections on October 9, 2024 [Dkt. Nos. 7743, 7744], disallowing and expunging a total of 244 claims due to insufficient documentation.  The Litigation Administrator filed four additional omnibus objections to certain claims that are inconsistent with the Post-Effective Date Debtors' books and records and fail to provide sufficient documentation to support any additional amounts [Dkt. Nos. 7701, 7711, 7712, 7730].  Each omnibus objection includes 250 claims and is scheduled for hearing on November 13, 2024 at 10:00 a.m. (prevailing Eastern time).

18.     ***Claims Against Insiders.***   On July 10, 2024, the Litigation Administrator filed a complaint against certain former executives and their related parties, seeking the avoidance of nearly $90 million of preferential and fraudulent transfers and billions in damages related to the defendants' breaches of duties, deceptive and fraudulent business practices, and fraudulent misrepresentations.  *See Meghji v. Mashinsky*, Adv. Proc. No. 24-03667 (MG) (Bankr. S.D.N.Y. July 10, 2024) [Dkt. No. 1] (the "**Former Executives Action**").  The defendants include former Celsius executives Alex Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, Harumi Urata-Thompson, Roni Cohen-Pavon, Jeremie Beaudry, Aliza Landes, and Johannes Treutler and certain of their relatives and affiliated entities.

19.     The Former Executives Action, along with any other civil suit that concerned the subject matter of Mr. Mashinsky's indictment, was subject to a stay that had been agreed to by the Debtors, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases, and the United States Attorney's Office for the Southern District of New York ("**SDNY**").  *See* [Dkt. No. 3450].

20.     The Litigation Administrator and the SDNY agreed to a further stay until the earlier of (i) the conclusion of the jury trial in the criminal proceedings pending against Mr. Mashinsky, currently scheduled to begin on January 28, 2025, and (ii) March 31, 2025.  The Bankruptcy Court entered an order approving the stay following an August 27, 2024 pre-trial conference in the Former Executive Action.  *See* [Adv. Proc. Dkt. No. 21].

21.     ***Other Actions Against Former Celsius Executives***.  The Litigation Administrator also filed five complaints asserting claims of constructive and actual fraudulent transfer against five former Celsius employees who sold significant amounts of CEL Token to the company through its "Over-the-Counter" trading desk (the "**OTC Sales**") at artificially inflated prices and

received significant cash payments when the price of the CEL Token reached certain price thresholds. *See Meghji v. Noy*, Adv. Proc. No. 24-03976 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. Peter*, Adv. Proc. No. 24-03741 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. O'Brien*, Adv. Proc. No. 24-03739 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]; *Meghji v. Atar*, Adv. Proc. No. 24-03738 (MG) (Bankr. S.D.N.Y. July 11, 2024) [Dkt. No. 1]; *Meghji v. Yarwood*, Adv. Proc. No. 24-03740 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]. A pre-trial conference on all of the above-listed matters was held on August 27, 2024.

22.     The Litigation Administrator has also entered into tolling agreements with various other former Celsius executives and employees with respect to OTC Sales and other claims asserted against those executives. The Litigation Administrator is engaged in constructive negotiations with certain of the subjects of those potential actions. Among other things, the Litigation Administrator engaged in a one-day mediation regarding claims against one former executive [Dkt. No. 7647].

23.     *FTX*. On June 5, 2024, the Litigation Administrator filed an objection to the disclosure statement filed by the debtors (the "**FTX Debtors**") in the bankruptcy case of *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.) ("**FTX Dkt.**") [FTX Dkt. No. 16820] in the United States Bankruptcy Court for the District of Delaware (the "**FTX Court**"). The FTX Debtors revised their disclosure statement in response to the objection to provide additional disclosure concerning the disputes between the parties. *See* [FTX Dkt. No. 18537]. On June 5, 2024, the Litigation Administrator filed motions to lift the automatic stay with respect to the FTX Debtors (in their chapter 11 and chapter 15 proceedings) to pursue over $400 million in avoidance action claims against the FTX Debtors. *See* [FTX Dkt. No. 16815]; *In re FTX Digital Markets*

*Ltd.,* Case No. 22-11217 (JTD) (Bankr. D. Del.) [Dkt. No. 155]. The lift stay motions seek to allow Celsius to bring avoidance actions against the FTX Debtors as initial and subsequent transferees in the Bankruptcy Court in the Southern District of New York so that the procedures and schedule for the litigation, as well as any rulings, are consistent with the approximately 2,500 other avoidance action complaints that the Litigation Administrators have filed. On October 7, 2024, the FTX Court heard arguments in connection with the chapter 11 and chapter 15 lift stay motions. The FTX Court reserved decision on the chapter 15 lift stay motion and adjourned the hearing for the chapter 11 lift stay motion until after the FTX Court rules on the FTX Debtors' claim objection (see below).

24.     On July 7 and 8, 2024, the Litigation Administrator amended Celsius's 95 proofs of claim previously filed against the FTX Debtors. On July 8, 2024, the FTX Debtors filed an objection to Celsius's original proofs of claim arguing that they failed to preserve avoidance actions [FTX Dkt. No. 19795]. A hearing with respect to the claim objection was held on September 12, 2024. To date, the FTX Court has not issued a decision. On August 16, 2024, the Litigation Administrator filed an objection to the FTX plan of reorganization (the "**FTX Plan**"). *See* [FTX Dkt. No. 23147]. At the confirmation hearing on October 7, 2024, the FTX Court overruled the Litigation Administrator's objection and confirmed the FTX Plan [FTX Dkt. No. 26404].

25.     ***KeyFi***. On August 23, 2022, Celsius Network Limited and Celsius KeyFi LLC initiated an adversary proceeding against KeyFi, Inc. and Jason Stone (collectively, the "**KeyFi Defendants**") in connection with the KeyFi Defendants' staking and DeFi activities on behalf of Celsius. Compl., *Celsius Network Limited v. Stone*, Adv. Proc. No. 22-01139 (MG) (Bankr. S.D.N.Y. Aug. 23, 2022) [Dkt. No. 1]. The amended complaint asserted causes of action for

turnover, conversion, fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, replevin, and accounting. *See* Am. Compl., *Celsius Network Limited v. Stone*, Adv. Proc. No. 22-01139 (MG) (Bankr. S.D.N.Y. Aug. 23, 2022) [Dkt. No. 10] (the "**KeyFi Complaint**"). On June 28, 2024, the parties finalized a settlement agreement that resolved the causes of action alleged in the KeyFi Complaint against the KeyFi Defendants. *See* Stipulated Settlement Agreement and Order, *Celsius Network Limited v. Stone*, Adv. Proc. No. 22-01139 (MG) (Bankr. S.D.N.Y. July 11, 2024) [Dkt. No. 145]. Pursuant to the settlement agreement, the KeyFi Defendants transferred to Celsius certain assets traceable to Celsius that were in the KeyFi Defendants' control, including a portfolio of non-fungible tokens (NFTs) and other cryptocurrency.

26.    On or around July 11 and July 12, 2024, the Litigation Administrator filed 12 additional complaints against 72 parties, as well as John Does, to whom the KeyFi Defendants transferred Celsius assets and/or by whom Celsius was otherwise injured, including Compound Labs, Inc. ("**Compound**"). *See, e.g.*, Compl., *Meghji v. Castel*, Adv. Proc. No. 24-04004 (MG) (Bankr. S.D.N.Y.) [Dkt. No. 1]; Compl., *Meghji v. Wallet Owner 0X10F546A6F4D20D91E5A8506124384759C9F4BC79*, Adv. Proc. No. 24-03994 (MG) (Bankr. S.D.N.Y.) [Dkt. No. 1]; Compl., *Meghji v. Wallet Owner 0xdbc13e67f678cc00591920cece4dca6322a79ac7*, Adv. Proc. No. 24-04005 (MG) (Bankr. S.D.N.Y.) [Dkt. No. 1]; Compl., *Meghji v. John Does 1-100 et. al.*, Adv. Proc. No. 24-04009 (MG) (Bankr. S.D.N.Y.) [Dkt. No. 1]; Compl., *Meghji v. Compound Labs Inc.*, Adv. Proc. No. 24-03989 (MG) (Bankr. S.D.N.Y.) [Dkt. No. 1]. The Litigation Administrator has effectuated service for all known, domestic defendants and has also effected service on two defendants located abroad who have missed their deadline to answer or otherwise respond. *See* Order Prescribing Answer Deadline Pursuant to Federal Rule of Bankruptcy Procedure 7012, *Meghji v. Falba*, Adv. Proc.

No. 24-04006 (MG) (Bankr. S.D.N.Y. Jul. 13, 2024) [Dkt. No. 9]. Service through the Hague Convention is underway for two additional defendants located abroad. To facilitate service on other defendants, the Litigation Administrator has served Rule 45 subpoenas on nine cryptocurrency exchanges pursuant to a court order authorizing early discovery to obtain identifying information for certain defendants. *See* Order, *Meghji v. Falba*, Adv. Proc. No. 24-04006 (MG) (Bankr. S.D.N.Y. Jul. 13, 2024) [Dkt. No. 11]. Further, the Litigation Administrator successfully brought a motion for alternative service that will allow the Litigation Administrator to effect service on certain unknown defendants via NFT and website posting. *See* Mem. Op. and Order, *Meghji v. Castel*, Adv. Proc. No. 24-04004 (MG) (Bankr. S.D.N.Y. Jul. 13, 2024) [Dkt. No. 35]. The Litigation Administrator's efforts have already produced at least one resolution under which the full amount of the challenged transfer was recovered. The Litigation Administrator anticipates additional resolutions to follow. Two of the defendants, Compound and Curated, have filed motions to dismiss, to which the Litigation Administrator is currently preparing a response. *See* Mot. to Dismiss, *Meghji v. Castel*, Adv. Proc. No. 24-04004 (MG) (Bankr. S.D.N.Y. Jul. 13, 2024) [Dkt. No. 26]; Mot. to Dismiss, *Meghji v. Compound Labs Inc.*, Adv. Proc. No. 24-03989 (MG) (Bankr. S.D.N.Y. Jul. 12, 2024) [Dkt. No. 15].

27. ***Fabric***. On January 17, 2023, Celsius Network Limited initiated an adversary proceeding against Fabric Ventures Group SARL ("**Fabric**") in connection with Fabric's contractual commitment to purchase Series B preferred shares of CNL. *See Celsius Network Limited v. Fabric Ventures Group SARL*, Adv. Proc. No. 2301002 (MG) (Bankr. S.D.N.Y. Jan. 17, 2023). Fabric had agreed to pay $8,003,379 in three installments in exchange for its Series B preferred shares: $2,000,000 in May 2022; $2,000,000 in June 2022; and $4,003,379 in July 2022. Fabric made the first scheduled payment but did not make the other two. The complaint

sought damages in the amount of the two outstanding payments of $6,003,379, plus interest and fees. Fabric later filed a separate suit against Celsius and Alexander Mashinsky in the United Kingdom. The parties conducted an in-person mediation in May 2024 to attempt to reach a resolution of the claims. Settlement discussions remain ongoing.

28. ***BadgerDAO***. On July 12, 2024, Celsius initiated an adversary proceeding against Christopher Spadafora and Cloudflare, Inc. *See Celsius Network LLC v. Spadafora*, Adv. Proc. No. 24-03981 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]. The case arises from a security breach on the BadgerDAO platform, which was founded by Christopher Spadafora and used security systems maintained by Cloudflare. The breach led to a loss of approximately $50 million in Celsius's bitcoin that was invested on BadgerDao. Both defendants have filed motions to dismiss, to which Celsius has yet to respond.

29. ***Bancor***. On July 12, 2024, Celsius initiated an adversary proceeding against Galia Ben-Artzi, Guy Ben-Artzi, Eyal Hertzog, Yehuda Levi, BProtocol Foundation, LocalCoin Ltd, and BancorDAO, *See Celsius Network LLC v. Ben-Artzi*, Adv. Proc. No. 24-03978 (MG) (Bankr. S.D.N.Y. July 12, 2024) [Dkt. No. 1]. The case arises from losses of more than $7 million in Celsius' ETH suffered as a result of Bancor's suspension of impermanent loss protection, a core feature of the platform that was supposed to protect participants from incurring losses that resulted from the movement of asset price on the platform. The feature, also known as impermanent loss protection, was marketed by Bancor and its controlling parties as an important component of the platform. The defendants are located outside of the United States, and the Litigation Administrator is currently effectuating service of process.

30. ***Into the Block***. On July 15, 2024, Celsius initiated an adversary proceeding against Into the Block Corp. ("**ITB**"), *See Celsius Network LLC v. Into the Block Corp.*, Adv. Proc. No.

24-04008 (MG) (Bankr. S.D.N.Y. July 15, 2024) [Dkt. No. 1]. The case arises from more than $3 million in losses that Celsius suffered as a result from ITB's deployment of Celsius assets in a DeFi platform. ITB filed a motion to dismiss, and Celsius's response to the motion is due on November 12, 2024.

31.    ***PPM***.    On July 15, 2024, the Litigation Administrator caused Barber Lake Development LLC ("**Barber Lake**"), of which Celsius Network Limited is the managing member, to initiate an adversary proceeding against Priority Power Management, LLC ("**PPM**").    *See Barber Lake Development LLC v. Priority Power Management, LLC.*, Adv. Proc. No. 24-04010 (MG) (Bankr. S.D.N.Y. July 15, 2024) [Dkt. No. 1]. The complaint asserts claims and causes of action for the avoidance of transfers under chapter 5 of the Bankruptcy Code and a development agreement, seeking the return of payments made by Celsius Mining LLC ("**Celsius Mining**") to PPM related to the Barber Lake site development. Barber Lake asserted various equitable claims as part of the lawsuit as well, including an equitable interest in the subject property, which led Barber Lake also to file a *lis pendens* in Mitchell County Texas. PPM moved to dismiss the equitable claims only, which motion was granted by the Bankruptcy Court. Barber Lake has filed a motion with the Southern District of New York for leave to appeal that decision.

## IV.    ARM Litigation and Claims

### A.    Litigation

32.    ***Mawson Infrastructure Group***.    On November 21, 2023, Celsius Mining LLC ("**Celsius Mining**") initiated an adversary proceeeding against Mawson Infrastructure Group, Inc. and its affiliates (collectively, "**Mawson**") in connection with Mawson's breaches under (i) that certain co-location agreement (the "**Co-Location Agreement**") Mawson executed with Celsius Mining and (ii) that certain secured promissory note Mawson issued to Celsius Mining. *See Celsius Mining LLC v. Mawson Infrastructure Grp. Inc.*, Adv. Proc. No. 23-01202 (MG) (Bankr.

S.D.N.Y. Nov. 21, 2023) [Dkt. No. 1].  On April 22, 2024, the District Court for the Southern District of New York vacated the Bankruptcy Court's order denying Mawson's motion to compel arbitration of the disputes in the adversary proceeding.  *See* [Dkt. No. 4827].  Consequently, the parties are engaging in arbitration after Celsius Mining and Celsius Network Limited filed a joint abritration demand with Ionic on July 12, 2024.[5]  Nevertheless, such action is otherwise stayed pending the resolution of the arbitration.  Mawson filed an answer and counterclaims to the arbitration demand on August 12, 2024, and Celsius, the ARM, and Ionic filed a response to the counterclaims on August 28, 2024.[6]  An arbitrator has been appointed in the matter.  The ARM will continue to prosecute the claims of Celsius Network Limited under the loan and associated guarantee and security documents in the arbitration.

33.    ***Equities First Holdings***.  On September 6, 2023, Celsius Network Limited ("**CNL**") initiated an adversary proceeding (the "**EFH Proceeding**") against Equities First Holdings, LLC ("**EFH**") and its founder and CEO, Alexander Christy, alleging breach of contract, fraudulent transfer, and other claims in connection with EFH's failure to return the Post-Effective Date Debtors' collateral under a series of loan agreements between the parties.  *See Celsius Network Limited v. Equities First Holdings, LLC*, Adv. Proc. No. 23-01167 (MG) (Bankr. S.D.N.Y. Sep. 6, 2023).  The EFH Proceeding has been stayed since November 14, 2023, pending EFH's motion to compel arbitration on all claims brought by CNL and appeal of the Bankruptcy Court's October 24, 2023 order requiring it to respond to the complaint.  *See id.* at [Dkt. No. 38]. To move this matter forward, on July 12, 2024, the ARM served an arbitration demand on EFH and Mr. Christy, alleging the same claims asserted in the EFH Proceeding.  Before the District

---

[5]    In conjunction with that filing, the ARM amended the adversary complaint to include additional claims.

[6]    Ionic Digital Mining LLC ("**Ionic**") is a separate party to the arbitration as it is the assignee of Celsius's mining-related assets, including claims against Mawson for breach of the Co-Location Agreement.

Court, and while the appeal remained pending, CNL, the ARM, EFH, and Mr. Christy stipulated and agreed that the motion to compel arbitration would be granted, that all claims brought by CNL against the defendants in the EFH Proceeding and the arbitration shall be arbitrated in the arbitration, and that the EFH Proceeding shall be stayed pending completion the arbitration, pursuant to 9 U.S.C. § 3. *See Equities First Holdings, LLC v. Celsius Network Ltd.*, No. 23-10036 (S.D.N.Y.) [Dkt. No. 59] ¶ 8. On October 1, 2024, the District Court entered an order pursuant to the parties' stipulation, ordering that the EFH Proceeding be stayed pending completion of the arbitration. *See id.* at [Dkt. No. 61]. An arbitrator has been appointed in the matter. The ARM will continue to prosecute the Post-Effective Date Debtors' claims in arbitration.

34.     ***Tether Limited.*** On August 9, 2024, Celsius Network Limited and Celsius Network LLC commenced a litigation against Tether Limited and affiliated entities ("**Tether**") alleging preference, fraudulent transfer, breach-of-contract, and related claims in connection with pre-petition transfers of collateral to Tether and Tether's liquidation of that collateral. *See Celsius Network Ltd. v. Tether Ltd.*, Adv. Proc. No. 24-04018 (MG) (Bankr. S.D.N.Y. Aug. 9, 2024). The Bankruptcy Court set a schedule for Tether's forthcoming motion to dismiss (the "**Tether MTD**") but rejected Tether's request to stay discovery pending resolution of that motion. Pursuant to the schedule, Tether will file the Tether MTD by November 14, 2024, and the motion will be fully briefed by February 20, 2025. In the meantime, the parties have commenced discovery.

35.     ***Compliance Risk Concepts***. On July 12, 2024, Celsius Network LLC commenced an arbitration against Compliance Risk Concepts, LLC ("**CRC**"), and certain of its senior employees alleging negligence, fraud, breach-of-contract, and related claims in connection with CRC's provision of compliance-consulting services to Celsius. The parties are waiting to hear from the arbitration administrators on next steps.

36.     *Reliz*.   The ARM, on behalf of the Post-Effective Date Debtors, negotiated and entered into a settlement agreement with Reliz Group Technology Holdings Inc. and its affiliates (collectively, "**Reliz**") in connection with arbitration awards Celsius Network Ltd. holds against Reliz.  The ARM obtained approximately $3.6 million in immediate funds and two secured promissory notes, representing the balance of the settlement reached by the parties.  Both secured promissory notes, with maturity dates in September 2024 and March 2026, respectively, are accruing interest 12% per annum, with such interest payable monthly until the notes mature. Through September 30, 2024, payments from Reliz totalled $8.4 million, which includes a complete repayment of the secured note that matured September 2024.

37.     *Three Arrows Capital*.   On June 27, 2022, Three Arrows Capital ("**3AC**") filed an application in the British Virgin Islands to appoint Russell Crumpler and Christopher Farmer (collectively, the "**Joint Liquidators**") to administer the liquidation of 3AC.  The Post-Effective Date Debtors subsequently asserted a claim against 3AC based on amounts owed under two loans between Celsisus and 3AC entered into in May 2022.  On March 18, 2024, the Joint Liquidators objected to the ARM's claim. The ARM and the Joint Liquidators have been in communication regarding the basis for the Joint Liquidators' decision.  On June 14, 2024, the ARM submitted a response to the Joint Liquidators challenging the March 18, 2024 denial.  On July 5, 2024 and July 15, 2024, the ARM provided additional information to the Joint Liquidators in response to certain information requests from the Joint Liquidators.  On September 10, 2024, the Joint Liquidators again objected to the ARM's claim.  The ARM responded to the September 10, 2024 rejection on October 18, 2024 and remains in ongoing communications with the Joint Liquidators regarding the claim.

38.    ***TerraForm Labs***. The ARM filed a proof of claim in the bankruptcy case *In re TerraForm Labs Pte. Ltd.*, Case No. 24-10070 (BLS) (Bankr. D. Del. Jan. 21, 2024), preserving the rights of the Post-Effective Date Debtors against TerraForm Labs for losses suffered from the use of TerraForm's exchange. The BRIC, on behalf of the Debtors' estate, was also a member of the Official Committee of Unsecured Creditors of TerraForm Labs, and now serves as a member of the TerraForm Advisory Board for the post-confirmation wind-down trust. On September 20, 2024, the court confirmed TerraForm Labs's plan. *See* [Dkt. No. 734]. On October 18, 2024, the ARM submitted additional materials in support of its claim to the Joint Liquidators, who are tasked with handling the allowance or disallowance of such proofs of claim. The ARM will continue to pursue recovery of such claim.

39.    ***FTX Trading Ltd.*** The ARM filed a proof of claim in the bankruptcy case *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. 2022), preserving the rights of Post-Effective Date Debtors against debtor Alameda Research, Ltd. for losses the Post-Effective Date Debtors suffered in connection with a series of loans (the "**Celsius Loan Proof of Claim**"). The FTX Debtors filed an objection to the Celsius Loan Proof of Claim on July 10, 2024, to which the ARM filed a response to rebut the FTX Debtors' challenges to the Celsius Loan Proof of Claim. In recent weeks, the ARM and the FTX Debtors have been negotiating a settlement to resolve the Celsius Loan Proof of Claim. On October 31, 2024, the FTX Court entered the agreed-upon stipulation between the ARM and the FTX Debtors which resolved the FTX Debtors' objection and stipulated that the Celsius Loan Proof of Claim is allowed in the amount of $12,285,478.28, plus applicable postpetition interest accruing from November 11, 2022 through the date the Celsius Loan Proof of Claim is paid. The FTX Court confirmed the FTX Plan on October 7, 2024.

40. ***Other Litigation***.  The ARM has initiated or is in the process of initiating litigation and arbitration on behalf of the Post-Effective Date Debtors with respect to the ARM Claims, including preference actions against Institutional Loan counterparties.

### B.    Monetization of Illiquid and Stranded Assets

41. ***Illiquid Cryptocurrencies***.  In its work to liquidate certain illiquid assets of the Post-Effective Date Debtors, the ARM has monetized a portfolio of illiquid cryptocurrencies, generating $4.2 million in proceeds to date.  The ARM is also in the process of analyzing hundreds of thousands of stranded wallets and to date has uncovered and monetized certain cryptocurrencies which generated approximately $6.1 million in proceeds to date.

42. ***Institutional Loans***.  The ARM manages digital assets held by the Post-Effective Date Debtors in connection with certain loans to institutional counterparties (the "**Institutional Loans**").  The ARM has called, or is analyzing whether to call, certain Institutional Loans, is analyzing litigation to pursue certain deficiencies owed to the estate, and is engaged in settlement discussions with certain counterparties to Institutional Loans.  The ARM has also been engaged in liquidating certain loan collateral held in connection with the Institutional Loans.  As of September 30, 2024, the ARM has monetized approximately $33 million of the Institutional Loans collateral.

43. ***Other Securities***.  The ARM has taken over and is managing the Post-Effective Date Debtors' positions in certain securities and other instruments. To date, the ARM's management and monetization of a certain portion of those securities generated $86.5 million for the benefit of the estate.

Dated:   October 31, 2024          Respectfully submitted,
         New York, New York

*/s/ Mohsin Y. Meghji*
Mohsin Y. Meghji
Litigation Administrator

*/s/ R Christian Wyatt*
R Christian Wyatt
Blockchain Recovery Investment Consortium, LLC
Complex Asset Recovery Manager