<table>
<tr><td>

Joshua A. Sussberg, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:     (212) 446-4900  

</td><td>

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
333 West Wolf Point Plaza  
Chicago, Illinois 60654  
Telephone:     (312) 862-2000  
Facsimile:     (312) 862-2200  

</td></tr>
</table>

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**POST-EFFECTIVE DATE DEBTORS' OBJECTION TO**
**LAURA FALLER MCNEIL'S APPLICATION FOR ALLOWANCE OF**
**CLAIM FOR SUBSTANTIAL CONTRIBUTION TO THE DEBTORS' ESTATES**

The above-captioned post-effective date debtors (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors") file this objection (the "Objection") to Laura Faller McNeil's *Application for Allowance of Claim for Substantial Contribution Pursuant to 11 U.S.C. § 503(b)(3)(D)* (the "Application").[2]  In support of this Objection, the Post-Effective Date Debtors state the following.

---

[1]   The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   For the avoidance of doubt, the Post-Effective Date Debtors do not object to the *Application for Final Professional Compensation/Final Fee Application for Sarachek Law Firm* [Docket No. 7754] filed by the Sarachek Law Firm.

**Preliminary Statement**

1. Through the Application, Ms. McNeil seeks compensation for "substantial contributions" to these Chapter 11 Cases that essentially amount to advocacy for her own self-interests. In a case where creditors are not being paid in full, each creditor has an interest in ensuring they receive the largest distribution possible. While Ms. McNeil couches her Application as seeking compensation for her work as a member of the Ad Hoc Group of Corporate Creditors[3] and her individual work in support of the Corporate Creditor Motion, Ms. McNeil has failed to satisfy her burden in showing how such efforts were more than advocacy for the interests of herself and similarly situated creditors, much less that she meets the high bar for a substantial contribution claim.

2. Ms. McNeil argues that, as chairperson of the Ad Hoc Group of Corporate Creditors, "[p]ersonal interests were set aside as [she] advocated for what was fair and equitable for all corporate creditors," but her actions throughout were intended to increase the size of her distribution. She argues that she put her personal interests aside because of the fact that the BTC Average Value and ETH Average Value are lower than what the Faller Creditors would have received if cryptocurrency prices had been set at the date each corporate creditor received its distribution. *See* Application ¶ 7. Using cryptocurrency prices as of the date each corporate creditor received its distribution, however, was never an option due to the extreme administrative burden and the inequality among corporate creditors that such proposal would create. The Faller

---

[3] Terms capitalized but not defined in this Preliminary Statement have the meaning ascribed to such terms elsewhere in this Motion. Terms capitalized but not defined in this Motion have the meaning ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be amended, modified, and supplemented from time to time, the "Plan") and the *Motion Seeking Entry of an Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditors Distributions, and (III) Granting Related Relief* [Docket No. 7661] (the "Supplemental Corporate Creditor Distribution Motion"), as applicable.

Creditors materially benefit from the settlement described in the Supplemental Corporate Creditor Distribution Motion (the "Corporate Creditor Settlement") in a unique way—the Faller Creditors, who were among the handful of eligible corporate creditors who *affirmatively elected to receive Cash*, received a supplemental distribution and the opportunity to elect to receive Liquid Cryptocurrency under the Corporate Creditor Settlement.

3. This is not the first time that a *pro se* creditor has sought compensation for their time and involvement in settlement negotiations in these Chapter 11 Cases under the guise of a substantial contribution application. Like Ms. McNeil, who seeks approximately $206,000 as compensation for her time spent advocating for the Corporate Creditor Settlement, Rebecca Gallagher previously sought, and the Bankruptcy Court denied, compensation for her "time, effort and energy in preparing for the Committee Class Claim, and [her] role in serving as a Lead Plaintiff in the Committee Class Action Claim." *Substantial Contribution Claim of Rebecca Gallagher, Lead Plaintiff in Committee Class Claim Action* [Docket No. 3662]; *see also Memorandum Opinion Granting in Part and Denying in Part Substantial Contribution Applications* [Docket No. 4395] (the "Substantial Contribution Order") at 47–48 (denying Ms. Gallagher's substantial contribution application). In denying Ms. Gallagher's request, the Bankruptcy Court recognized, "[s]ubstantial contribution payments are meant to reimburse a party for the professional fees and expenses incurred in making [a substantial] contribution. The purpose of substantial contribution awards is not to provide additional disbursements or payments." Substantial Contribution Order [Docket No. 4395] at 47. As with Ms. Gallagher's request, the Bankruptcy Court must deny the Application, because Ms. McNeil essentially seeks an additional distribution as compensation for her time and effort, not because she incurred any specific professional fees or expenses.

4.      For these reasons, and as more fully set forth herein, the Application should be denied.

**Objection**

**II.     Ms. McNeil Is Not Entitled to Payment Under Section 503(b) of the Bankruptcy Code.**

5.      Ms. McNeil asserts that she is entitled to compensation under section 503(b)(3)(D) of the Bankruptcy Code. Section 503(b)(3)(D) of the Bankruptcy Code provides, in relevant part, for the administrative expense treatment of:

> the actual, necessary expenses, . . . incurred by a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . in making a *substantial contribution* in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D) (emphasis added). To the extent Ms. McNeil also alleges she is entitled to payment under section 503(b)(4) of the Bankruptcy Code, the Bankruptcy Court must deny the Application because a claim under section 503(b)(4) is predicated on Ms. McNeil's expenses being allowable under section 503(b)(3)(D). *See* 11 U.S.C. § 503(b)(4) (providing for the payment of "reasonable compensation for professional services rendered by an attorney or an accountant of any entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection[.]"). Moreover, she did not provide legal or accounting services to the Estates.

6.      To be entitled to a payment as a substantial contribution, the applicant must "demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case." *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008). The term "substantial contribution" is not defined in the Bankruptcy Code. When analyzing a request for substantial contribution, courts in the Second Circuit consider various factors, including "(i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services

4

resulted in an actual significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case." *In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014) (citing *Trade Creditor Grp. v. L.J. Hooker Corp., Inc.* (*In re Hooker Invs., Inc.*), 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd*, 109 F.3d 349 (2d. Cir. 1996); *In re Best Prods. Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994)).

7.  Analyzing these factors demonstrates that Ms. McNeil's actions were self-interested and that the respective acts Ms. McNeil allege benefitted the administration of these Chapter 11 Cases were incidental at best.

### A. Ms. McNeil Acted Primarily in Her Own Self Interest, and Any Benefit to the Administration of These Chapter 11 Cases Is Incidental.

8.  Ms. McNeil has failed to demonstrate that her actions were not primarily for the benefit of the Faller Creditors. For a creditor's services to be considered a substantial contribution, "the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Dana Corp.*, 390 B.R. at 108. "Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily for their own interests." *Id.* A creditor's self-interested act does not justify a substantial contribution award even if it indirectly benefitted the debtor's estate. *Id.*; *see also In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW), 2019 WL 4555990, at *12 (Bankr. S.D.N.Y. Sept. 19, 2019) ("A creditor does not need to be completely altruistic, but where a creditor's actions have been performed primarily to protect the creditor's own interests no 'substantial contribution' claim is appropriate."); *Granite Partners*, 213 B.R. at 446 ("[S]ervices calculated primarily to benefit the client do not justify an award even if they also conferred an indirect benefit on the estate.").

5

9. Here, Ms. McNeil does not introduce any evidence demonstrating that her participation in these Chapter 11 Cases was anything more than an act of self-interest to ensure a greater recovery for the Faller Creditors. The Faller Creditors, which are legal entities that Ms. McNeil's family members own, were among the top 100 corporate creditors initially provided the opportunity to elect to receive their distributions in Liquid Cryptocurrency or Cash. Each of the Faller Creditors elected to receive their distributions in Cash.

10. On February 28, 2024, twenty-eight days following the Effective Date and after the largest of the Faller Creditors, BFaller RD LLC, received its Cash distribution, Ms. McNeil filed her first letter with the Bankruptcy Court arguing that receiving Cash rather than Liquid Cryptocurrency was unfair and inequitable due to the material increase in bitcoin and ether prices since the Effective Date. *See* Feb. 28, 2024 Letter from L. McNeil to Bankruptcy Court [Docket No. 4365] (the "February Letter") ("We also feel it's unfair and not equitable that only 100 corporate accounts were selected to receive crypto distribution without any transparency on how those 100 accounts would be chosen, with the rest receiving USD checks and wires."). Through the February Letter, Ms. McNeil initially sought relief solely for the Faller Creditors, voluntarily interjecting herself into the Post-Effective Date Debtors' implementation of the Plan to further her family members' interests. Neither her subsequent actions assisting other corporate creditors in filing joinders to motions, contacting the media regarding treatment of corporate creditors, nor participating in the negotiation of the Corporate Creditor Settlement as part of the Ad Hoc Group of Corporate Creditors demonstrates that her actions were not primarily to protect the Faller Creditors' own interests. Rather, these efforts raised awareness of the exact issue she had originally raised, thereby aiding in Ms. McNeil's efforts to protect the Faller Creditors' interests.

6

11. Ms. McNeil's allegations that she could have negotiated for more beneficial terms for the Faller Creditors is not evidence that her efforts were not performed primarily for their benefit. Specifically, though the Faller Creditors may have been able to receive a larger distribution if a different pricing mechanism was included in the Corporate Creditor Settlement, the Faller Creditors still significantly benefitted from the supplemental distribution and the option to elect to receive a distribution in Liquid Cryptocurrency despite affirmatively requesting a distribution in Cash. At the July 29, 2024 hearing, the Bankruptcy Court had expressed that it may view those corporate creditors who affirmatively elected a Cash distribution differently from those who never elected a Cash distribution. July 29 Hr'g Tr. 50:16–22 ("You know, it's one thing – I separate out, may not agree that the Faller Creditors -- they elected Fiat. They only had a couple of days, which was unreasonably short but they did. They elected Fiat and I do consider that to be different than those that never elected Fiat, who elected crypto, who Coinbase was legally authorized to distribute Fiat in those jurisdictions."). Thus, participation in the mediation permitted Ms. McNeil to ensure that those corporate creditors who elected to receive a Cash distribution, like the Faller Creditors, would be able to participate in the Corporate Creditor Settlement as if they had not made such election.

12. Because Ms. McNeil has failed to rebut the presumption that her actions were primarily to further her own self-interests, the Application must be denied.

**B.     Ms. McNeil Failed to Demonstrate Actual, Significant Benefits to the Administration of These Chapter 11 Cases.**

13. Substantial contribution awards under section 503 of the Bankruptcy Code are "reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *Dana Corp.*, 390 B.R. at 108. Services that substantially contribute to a chapter 11 case are those which foster and enhance, rather than retard

7

or interrupt the progress of reorganization." *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981.

14. While Ms. McNeil was the chairperson of the Ad Hoc Group of Corporate Creditors, this role does not constitute a substantial contribution to the administration of these Chapter 11 Cases. The Ad Hoc Group of Corporate Creditors, as a whole and through their counsel, negotiated the Corporate Creditor Settlement with the Post-Effective Date Debtors and Coinbase. Ms. McNeil's participation in the mediation and assistance in coordinating communications among the members of the Ad Hoc Group of Corporate Creditors and with corporate creditors, while laudable, did not directly benefit the administration of these Chapter 11 Cases. Further, Ms. McNeil has failed to provide any estimation of the number of individuals she was communicating with such that it cannot be determined whether such individuals are representative of the broader corporate creditor constituency or only a small subset thereof. As such, Ms. McNeil has not met her burden demonstrating anything more than an incidental benefit to the administration of these Chapter 11 Cases.

### C. The Movants Have Not Demonstrated that the Services Rendered Are Reasonable.

15. In order to be compensated for her time under section 503(b)(4) of the Bankruptcy Code, Ms. McNeil must also show such compensation is reasonable—and it is not. Ms. McNeil, who is an investment professional, alleges her fees are reasonable because they are similar to those charged by senior financial and investment consultants in San Jose, California. *See* Application ¶ 14. However, Ms. McNeil was not retained by the Ad Hoc Group of Corporate Creditors as a financial professional nor did she allege to have done the work of a financial professional. Ms. McNeil's time entries also demonstrate that her efforts in these Chapter 11 Cases related to communications or coordination, not any form of financial analysis. *See* Application, Ex. A

8

("Started dialogue with corporate creditors (on Telegram & X) in order to bind us together and discuss how to draw attention to this," "Emails & discussions with corporate creditors on next steps and to educate on where things were at," "Correspondence with corporate creditors (emails, calls, Telegram) and helping corporate creditors to file joinders to get visibility of this issue"). Many other time entries pertain to her work with the Sarachek Law Firm as a client in preparing the motion the Sarachek Law Firm filed on her behalf in these Chapter 11 Cases.

16.    Based on the foregoing, Ms. McNeil has not met her burden to establish that the requested compensation is reasonable as required under section 503(b)(4) of the Bankruptcy Code. Therefore, the Application must be denied.

## Conclusion

17.    For the reasons set forth herein, the Post-Effective Date Debtors request that the Bankruptcy Court deny the Application.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Post-Effective Date Debtors request that the Bankruptcy Court enter an order denying the Application.

| | |
|---|---|
| New York, New York<br>Dated: November 6, 2024 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:　(212) 446-4800<br>Facsimile:　(212) 446-4900<br>Email:　　joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Telephone:　(312) 862-2000<br>Facsimile:　(312) 862-2200<br>Email:　　patrick.nash@kirkland.com<br>　　　　　ross.kwasteniet@kirkland.com<br>　　　　　chris.koenig@kirkland.com<br>　　　　　dan.latona@kirkland.com<br><br>*Counsel to the Post-Effective Date Debtors* |