Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**POST-EFFECTIVE DATE DEBTORS' OBJECTION TO**
**CERTAIN RETAIL BORROWERS' MOTION FOR HEARING AND OTHER RELIEF**

The above-captioned post-effective date debtors (collectively, the "Post-Effective Date Debtors," and prior to the Effective Date, the "Debtors") hereby file this objection (the "Objection") to the *Motion for Hearing and Other Relief* [Docket No. 7771] (the "Retail Borrower Motion") of Christian Funck, Darius Gheorghe, David Heiliger, and Thomas Chernaik

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(collectively, the "Movants").[2]  In support of this Objection, the Post-Effective Date Debtors state as follows.

## Preliminary Statement

1.      The Retail Borrower Motion is a 40-page motion that is full of inaccuracies, internal inconsistencies, and completely irrelevant information, many of which are based on the Movants' misconceptions of the Plan and distribution process.  The actual dispute between the parties, however, is a fairly simple one:  the Movants are challenging the pricing used under the Plan and asking the Bankruptcy Court to retroactively change the terms of their new loans.  They believe that the pricing for the repayment of their Retail Advance Obligations should be Effective Date pricing (even though the repayment happened months later at much higher prices), but they are wrong.  As detailed further below, the Plan is clear that the pricing for the repayment of Retail Advance Obligations is as of the day of the repayment, and the Movants received what they were entitled to under the Plan.[3]

2.      The Movants seek to receive more than the value of their loan repayment, which would result in them receiving additional value that other Retail Borrowers did not receive (*i.e.*, those who set off or directly repaid their outstanding loan).  In doing so, the Movants baselessly allege that the Post-Effective Date Debtors have violated the Plan by valuing the amount of Liquid Cryptocurrency to be sent to their lenders on account of the repayment of their Retail Advance

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time) (the "Plan"), as applicable.

[3]     The Retail Borrower Movants allege a variety of issues that are completely unrelated to the relief they seek regarding this discrete pricing dispute.  Certain of those issues are addressed further below, but they are wholly irrelevant to the dispute.  For the avoidance of doubt, the Post-Effective Date Debtors expressly reserve their rights to object or otherwise respond to such allegations.  If requested by the Bankruptcy Court, the Post-Effective Date Debtors will provide supplemental briefing on such issues.

Obligations as of the date the repayment was made.  Not only would the treatment the Movants seek be unfair to all other Retail Borrowers in Class 2 and all other unsecured creditors, but the plain language of the Plan also forecloses the relief the Movants seek.

3.      Specifically, under the Plan, there were two components to Retail Borrowers' Claim:  (a) Retail Borrowers had Claims against Celsius for the return of the assets they had pledged as collateral for their loans (the "Retail Borrower Deposit Claim");[4] and (b) Celsius had claims against Retail Borrowers for the repayment of the amount of the outstanding loan (the "Retail Advance Obligations").[5]  The default treatment under the Plan for Retail Borrowers was a setoff of these claims (the "Set Off Treatment"):[6]  the Retail Advance Obligation would be forgiven, the Retail Borrower's Claim against Celsius would be reduced dollar-for-dollar in the amount of the setoff (based on the value of the Retail Borrower Deposit Claim as of the Petition Date), and any excess Claim remaining after the setoff (the "Retail Borrower Post-Set Off Claim")[7] would receive the same treatment that other unsecured creditors received under the Plan, including an initial Liquid Cryptocurrency distribution calculated to be approximately 57.65% of creditors' claims.

4.      To avoid a potential taxable event due to the Set Off Treatment,[8] the Debtors made two accommodations for Retail Borrowers in the Plan.  First, there was a repayment option (the "Retail Advance Obligation Repayment Election") allowing Retail Borrowers to repay their

---

[4]      *See* Plan, I.A.219, pg. 29 of 195.

[5]      *See* Plan, I.A.213, pg. 28 of 195.

[6]      *See* Plan, I.A.245, pg. 31 of 195.

[7]      *See* Plan, I.A.220, pg. 29 of 195.

[8]      For the avoidance of doubt, the Post-Effective Date Debtors are not providing any tax advice to any person. Creditors should consult their own tax advisors regarding their tax situation.

Retail Advance Obligation and receive an equivalent amount of cryptocurrency back. This option would provide for an additional distribution of bitcoin or ether to be made to Retail Borrowers (above and beyond the Post-Set Off Claim amount) in the amount of the Retail Advance Obligation repaid. Then there was a refinance option for those that did not have the cash to repay their Retail Advance Obligations directly. This is the Retail Advance Obligation Repayment Election but with the third-party lender making the payment instead of the Retail Borrower. Crucially, the Debtors were willing to agree to provide these options for Retail Borrowers only if the estate was neutral, meaning that the repayment or refinancing was an equivalent exchange of value—the Retail Borrower or a third-party repays the Retail Advance Obligation and receives an equivalent amount of cryptocurrency, valued at the time of repayment, in return. This would provide a tax benefit for the Retail Borrower without creating any additional cost (or risk) to the Debtors' estates (which would be borne by all unsecured creditors). Because the Debtors had not yet identified a source of third-party financing, the Debtors did not—and could not—include the detailed terms of the refinancing process in the Plan.

5.      Because of the volatility of cryptocurrency prices, valuing the cryptocurrency to be returned in connection with a repayment is central to minimizing any potential costs or risks to the estates. If the value of the repayment was set at a particular day and the repayment happened afterwards, Retail Borrowers would have a "free option"—if cryptocurrency prices rose, the Retail Borrower should make the repayment and receive more than 100% back on account of their repayment, and if cryptocurrency prices fell, the Retail Borrower should fail to make the repayment and simply receive the Set Off Treatment instead. Any windfall to Retail Borrowers from such free option would necessarily be paid out of the assets of the Debtors' estates, reducing distributions to other creditors. For that reason, the Retail Advance Obligation Repayment

4

Election was crystal clear that the Retail Advance Obligation Repayment Amount would be valued as of 12:00 p.m. on the day of the repayment, using market prices.  Accordingly, the Retail Advance Repayment Obligation was valued using contemporaneous market prices, not prices as of the Effective Date.[9]  This gave the best chance of ensuring that the exchange was value neutral to the estates and fair to all creditors.  Notably, the Plan was clear that any repayment would be valued at contemporaneous market prices, not as of the Effective Date, and the only other option under the Plan was a pure setoff of mutual obligations.  That alone ends the inquiry and forecloses the relief sought by the Movants.

6.      Despite the Movants' assertions that they were unaware of the pricing terms or believed the pricing would be different and that refinancing is distinct from the Retail Advance Obligation Repayment Election, their actions evidence their understanding of the refinancing option.  All three of the Movants who refinanced their Retail Advance Obligations filed letters with the Bankruptcy Court *prior to closing on their loans*.  These letters demonstrate that the Movants understood that the Debtors were refinancing Retail Advance Obligations at current market prices instead of Effective Date prices, and argued that Effective Date prices should be used instead.  Each of these Movants (and all Retail Borrowers who refinanced) also executed a direction letter (each, a "Direction Letter"), the form of which is attached as **Exhibit A**, that explicitly stated the Movants were "borrowing United States dollars ("USD") from the Lender, collateralized with cryptocurrency, in an amount equal to the outstanding Celsius Loan (the "New Loan") *for the purposes of repaying the Celsius Loan in accordance with the Repayment Option under the Plan*."  *See* Direction Letter.  Indeed, the Movants were specifically aware of the terms

---

[9]     *See* Plan I.A.214, definition of "Retail Advance Obligation Repayment Amount," pg. 28-9 of 195.

of the loans and the methodology that would be used to determine the amount of Liquid Cryptocurrency to be transferred to their lenders, and they decided to close on these loans anyways.

7.      Separately, the Refinancing Movants allege that they are entitled to and have not received the 5% increase in the value of their Retail Borrower Deposit Claims for not opting out of Class Claim Settlement—and recalculated correct distribution amounts prior to closing any loan refinancings with third-party lenders.   To be clear, the Post-Effective Date Debtors already identified and resolved this issue months ago.   Specifically, on or around May 24, 2024, Mr. Heiliger received distributions for these amounts on account of his individual and corporate accounts.   As to the remaining Movants, they assigned or transferred their rights to distributions on account of their Retail Borrower Deposit Claims to their lender as part of the refinancing process.   This was clearly stated not only in the direction letter they executed, but in the notice sent to creditors in January 2024 regarding the refinancing option.   Accordingly, this amount was distributed to the Movants' selected third-party lender.   The Movants' selected third-party lender received the correct distribution of Liquid Cryptocurrency which included the 5% increase.

8.      Finally, despite the various allegations contained in the Retail Borrower Motion, the Movants only seek discovery, and as set forth in more detail below, the Post-Effective Date Debtors have provided counsel to the Movants with certain documents relating to the Movants' loans and refinancing.   The remainder of the discovery is a fishing expedition that is wholly unrelated to the discrete legal issue regarding the pricing of the loans.   For example, the Movants seek discovery related to the Debtors' use of cryptocurrency throughout these Chapter 11 Cases and information on any sales, transfers, or purchases of cryptocurrency made by the Debtors or Post-Effective Date Debtors.   The Movants fail to make any showing as to how these records are relevant to pricing of the refinancing of their loans.   The Post-Effective Date Debtors will try to

narrow the scope of discovery ahead of the hearing on November 13, but believe that no additional

discovery is needed to resolve this Plan interpretation question.

9.    For these reasons, and as more fully set forth herein, the Movants are not entitled

to the relief requested and the Bankruptcy Court should deny the Retail Borrower Motion.

## Argument[10]

### I.    The Plan Does Not Provide the Relief the Movants Seek.

10.    The Retail Borrower Motion argues that the Plan requires that, in connection with

the refinancing of their Retail Advance Obligation, the Debtors value the amount of Liquid

Cryptocurrency to be transferred upon the repayment of the Retail Advance Obligation as of the

Effective Date.  *See* Retail Borrower Motion ¶ 27(d).  They further argue that the option to

refinance their loans was separate and distinct from the Retail Advance Obligation Repayment

Election.  *See id.* ¶ 36.  But the Movants do not—because they cannot—cite a specific provision

of the Plan providing for the relief they request.  To the contrary, the Plan is clear that for Retail

Borrowers who repaid their Retail Advance Obligation, the repayment would be valued as of

12:00 p.m., prevailing Eastern Time, on the date such payment was made.  *See* Plan Art.I.A.214.

This is because doing so ensured the transaction would be an arm's-length transaction (and

value/risk neutral).

11.    Further, the Debtors were only required to take commercially reasonable efforts to

facilitate a creditor's request to refinance its Retail Advance Obligation "with the consideration

provided to Retail Borrowers under the Plan"—and they did.  *See* Plan Art. IV.B.7.    In

---

[10]    The Retail Borrower Movants allege a variety of unrelated issues related to, among other things, the Plan
Administrator's facilitation of distributions under the Plan.  For the avoidance of doubt, the Post-Effective Date
Debtors expressly reserve their rights to object or otherwise respond to such allegations.  If requested by the
Bankruptcy Court, the Post-Effective Date Debtors will provide supplemental briefing on such issues.

January 2024, the Debtors solicited all eligible Retail Borrowers to determine who was interested in potentially refinancing their loans and indicated that additional details would be provided to interested borrowers after the Effective Date.  On February 14, 2024, the Post-Effective Date Debtors sent additional information to the Retail Borrowers who had indicated they were interested in refinancing, and initially gave Retail Borrowers until March 15, 2024, to come to terms with their lenders.  But the Post-Effective Date Debtors continued to extend that deadline as Retail Borrowers continued to negotiate with lenders, and refinancings continued through and including August 2024.  Of the 470 Retail Borrowers who indicated an interest in refinancing their Retail Advance Obligations, approximately 355, or approximately 76%, successfully refinanced such obligations through this process.

12.    The Plan provides two treatment options for Holders of Retail Borrower Deposit Claims:  (i) make the Retail Advance Obligation Repayment Election; or (ii) receive the Set Off Treatment.  *See* Plan Art.III.B.2; *see also Notice to Holders of Retail Borrower Deposit Claims, Regarding Forthcoming Notice and Election Form for Repayment or Refinancing of Retail Borrower Deposit Claims* [Docket No. 4206] (the "Retail Borrower Notice"), attached hereto as **Exhibit B** at 5–6.  Pursuant to the Retail Advance Obligation Repayment Election, a Retail Borrower would repay, in whole or in part, those amounts owed by such Retail Borrower to the Debtors on account of loans made by the Debtors through the Borrow Program.[11]  *See* Plan Art. III.B.2.b.i; *see also* Retail Borrower Notice at 7–8.  If a Retail Borrower made the Retail Advance Obligation Repayment Election and paid off its Retail Advance Obligation by the

---

[11]    The Debtors informed creditors that partial repayments of less than $25,000 would not be accepted "due to administrative reasons" but that "[t]he Debtors will accept all repayments of the entire principal amount of the Retail Advance Obligation."  Retail Borrower Notice at 8.  The Retail Borrower Movants argue this modified the Plan but have made no indication that they would have made such repayment if the threshold had been lower.

applicable deadline, such Retail Borrower would receive a distribution of bitcoin or ether equal to

such repayment (in addition to their Retail Borrower Post-Set Off Claim distribution amount),

valued "as of the day that such repayment [was] made as of 12:00 p.m., prevailing Eastern Time."

*See* Plan Art. I.A.214; *see also* Retail Borrower Notice at 8.

13.     Pursuant to the Plan, if a Retail Borrower did not make the Retail Advance

Obligation Repayment Election, then they would receive the Set Off Treatment.  *See* Plan

Art. III.B.2.b.i.  Pursuant to the Set Off Treatment, a Retail Borrower's Retail Borrower Deposit

Claim was reduced by the amount of such borrower's outstanding Retail Advance Obligation,

meaning such borrower received no distribution on account of its Retail Advance Obligation and

did not have to pay the Debtors anything on account of their Retail Advance Obligation.  *See* Plan

Art. I.A.245.

14.     Certain Retail Borrowers, who could not repay their Retail Advance Obligations,

requested another way to make such repayment by refinancing their Retail Advance Obligation to

avoid potential tax and other consequences.  As such, the Debtors permitted such borrowers to

enter into a refinancing agreement with a third-party who would repay such borrowers' Retail

Advance Obligation.  For those Retail Borrowers who wished to refinance their Retail Advance

Loan Obligations with a third-party, the Plan provided solely that:

> To the extent the Retail Borrower Ad Hoc Group, the Debtors, or the Committee
> identify a source of third-party financing reasonably acceptable to the Debtors, the
> Debtors shall ***take commercially reasonable efforts to facilitate*** such party in
> refinancing applicable Retail Advance Obligations with the consideration provided
> to Retail Borrowers under the Plan.

Plan Art. IV.B.7 (emphasis added).  Notably, the above provision of the Plan does not specify the

terms of any refinancing, including what pricing would be used for, or even what third-party

lenders may be available to provide, the requested refinancing.  This is because there were no

agreements between the third-party lenders and the Debtors to provide such refinancing

opportunity.  To the extent such an agreement was later reached, the Debtors would work in good faith to try to accommodate those refinancings.

15.    Because the refinancing process was a Retail Borrower making the Retail Advance Obligation Repayment Election through a third-party, the Plan provided that those Retail Borrowers who elected to refinance their Retail Advance Obligations would be treated similarly to those Retail Borrowers who repaid their Retail Advance Obligations.  Specifically, Retail Borrowers who repaid their Retail Advance Obligations, either themselves or through a third-party, would receive an amount of bitcoin or ether equal to the value of their repayment as of 12:00 p.m., prevailing Eastern Time, on the date the Retail Borrower or third-party made such repayment.  Doing so is not only what the Plan required, but as illustrated below, is the only way to guarantee that similarly situated creditors receive similar treatment and the Debtors' estates, and thereby all creditors, do not bear any costs (or risks) related to a Retail Borrower's refinancing of their Retail Advance Obligations.

16.    Each Retail Borrower received two components to its treatment under the Plan— (a) treatment of the difference between the value of their Retail Borrower Deposit Claim and their Retail Advance Obligation (the "Post-Set Off Claim") and (b) treatment of their Retail Advance Obligation.  A Retail Borrowers' Post-Set Off Claim was calculated by setting off the Retail Advance Obligation against their Retail Borrower Deposit Claim (which would be valued at 100% because the setoff was dollar-for-dollar at Petition Date pricing even though Celsius was insolvent and not paying 100% on unsecured claims).  All Retail Borrowers with a Retail Borrower Post-Set Off Claim received Unsecured Claim Distribution Consideration on account of such Retail Borrower Post-Set Off Claim (the Liquid Cryptocurrency portion of this distribution being valued at 57.65%).

10

17.     Regarding their Retail Advance Obligation, Retail Borrowers had two options: (a) do nothing, receive only the Set Off Treatment, and receive a distribution on account of their Post-Set Off Claim; or (b) repay their Retail Advance Obligation either themselves or through a third-party and receive an additional distribution in Liquid Cryptocurrency in the amount repaid (which would result in a 100% recovery on the amount repaid, because if they repaid $100,000, they would receive $100,000 in Liquid Cryptocurrency valued on the date of the repayment).[12] Notably, as illustrated below using an example of a Retail Borrower with a $100,000 Retail Advance Obligation and a $150,000 Retail Borrower Deposit Claim, Retail Borrowers receive the same recovery regardless of their elections:  (i) a 100% recovery on account of their Retail Advance Obligation; and (ii) Unsecured Claim Distribution Consideration on account of any Retail Borrower Post-Set Off Claim.

| Retail Advance Obligations (Amount of Loan) *$100,000 Retail Advance Obligation* | Retail Borrower Post-Set Off Claim *$50,000 Post Set Off Claim* |
|---|---|
| *Set Off Option* | |
| The Debtors set off the Retail Advance Obligation amount of $100,000 against $100,000 of the Retail Borrower Deposit Claim, leaving a $50,000 Retail Borrower Post-Set Off Claim.  **Recovery**: 100% | The Retail Borrower had a $50,000 Post-Set Off Claim remaining. The Retail Borrower's Post-Set Off Claim received the Unsecured Claim Distribution Consideration.  **Recovery**: Unsecured Claim Distribution Consideration, the Liquid Cryptocurrency portion of which was 57.65%. |

---

[12]     *See infra* ¶¶4–6; Plan Arts. I.A.213, 219, 220 & 245, III.B.2, IV.B.7.

| Retail Advance Obligation Repayment Election ||
|---|---|
| The Retail Borrower paid the Debtors $100,000 on January 26, 2024, to fulfill its Retail Advance Obligation, and elected to receive its Retail Advance Obligation Repayment Amount in bitcoin. The Debtors purchased 2.3842 bitcoin at $ 41,943 (the market price of bitcoin as of 12:00 p.m., prevailing Eastern Time, on January 26, 2024), which was then distributed to the Retail Borrower as part of its distribution.<br><br>**Recovery**: 100% (paid $100,000 for Liquid Cryptocurrency that was worth $100,000 on the date of the repayment) | The Retail Borrower had a $50,000 Post-Set Off Claim remaining. The Retail Borrower's Post-Set Off Claim received the Unsecured Claim Distribution Consideration.<br><br>**Recovery**: Unsecured Claim Distribution Consideration, the Liquid Cryptocurrency portion of which was 57.65%. |
| Refinance Option with Repayment Occurring on April 4 at Market Prices ||
| The Retail Borrower entered into an agreement with a third-party lender to refinance its Retail Advance Obligation in bitcoin. The third-party lender selected by the Retail Borrower paid the Debtors $100,000 on April 4, 2024, to fulfill the Retail Borrower's Retail Advance Obligation. The Debtors went into the market and purchased 1.4637 bitcoin at $ 68,320, which was then distributed to the third-party lender as collateral for the Retail Borrower's new loan with such lender.<br><br>**Recovery**: 100% (lender paid $100,000 for Liquid Cryptocurrency worth $100,000 on the day of the refinancing) | The Retail Borrower had a $50,000 Post-Set Off Claim remaining. The Retail Borrower's Post-Set Off Claim received the Unsecured Claim Distribution Consideration.<br><br>**Recovery**: Unsecured Claim Distribution Consideration, the Liquid Cryptocurrency portion of which was 57.65%. |

18.    By contrast, the Movants want the right for the lender to pay $100,000 and receive approximately $158,000 in Liquid Cryptocurrency in market prices at the time of the repayment (by buying bitcoin at approximately $43,000 per coin instead of approximately $68,000 per coin), which is not an equivalent exchange (it would increase their recovery to 158% instead of the 100% that other Retail Borrowers received, whether they received the Set Off Treatment or made the Retail Advance Obligation Repayment Election themselves). The relief the Movants seek is not

only inconsistent with the Plan, but would provide them with a windfall over other Retail Borrowers and other unsecured creditors. If this had really been what was contemplated by the Plan, then every Retail Borrower would have elected to refinance their Retail Advance Obligation to get a "free option" allowing them to hedge their position against shifts in cryptocurrency prices.

19.     Though the Movants state that they "are not requesting modification of the Plan but, rather, are seeking the correct implementation of the Plan as it was presented and Confirmed," they fail to identify any provision of the Plan requiring the treatment they are requesting. Retail Borrower Motion ¶ 19(x). This is because the Plan only provides that the Debtors will take commercially reasonable efforts to facilitate such refinancings, and the Debtors did. The Movants' misinterpretation ignores that the Plan does not provide any material terms of the refinancing process and the plain language of the Plan providing for the pricing of the Retail Advance Obligation Repayment Election as contemporaneous market prices.

## II.     The Debtors and Post-Effective Date Debtors Complied with the Terms of the Plan.

20.     In accordance with the Plan, the Debtors and Post-Effective Date Debtors have taken commercially reasonable efforts to facilitate Retail Borrowers' requests (including Mr. Chernaik's, Mr. Funck's, and Mr. Gheorghe's requests) to refinance their loans. Once the Confirmation Order was entered, the Debtors turned to finalizing preparations for the Effective Date. One such effort was finalizing the treatment of Retail Borrower Deposit Claims.

21.     On January 9, 2024, twenty-two days prior to the Effective Date, the Debtors filed the Retail Borrower Notice, which was also contemporaneously sent to Retail Borrowers. As of this date, three lenders had indicated serious interest in refinancing Retail Advance Obligations. The Retail Borrower Notice identified these three potential lenders and asked Retail Borrowers to make one of three decisions by January 17, 2024 by submitting an election form (the "Election Form"): (a) repay their Retail Advance Obligation by 11:59 p.m., prevailing Eastern Time, on

January 26, 2024 by making the Retail Advance Obligation Repayment Election; (b) express an intent to have a third-party lender repay their Retail Advance Obligation and to enter into a new loan agreement with such third-party lender (the "Refinancing Indication of Interest"); or (c) receive the Set Off Treatment.  *See generally* Retail Borrower Notice.  The Retail Borrower Notice was clear that the refinancing was "as an alternative to repaying the Debtors directly"— *i.e.*, the Retail Borrower was making the Retail Advance Obligation Repayment Election under the Plan, but the source of funds was a third-party lender.  *See* Retail Borrower Notice at 10. Further, the Retail Borrower Notice informed creditors that any Holder of a Retail Borrower Claim who failed to respond to the Retail Borrower Notice by January 17, 2024, received the Set Off Treatment.  Further, the Retail Borrower Notice was clear:

> any Election Forms that do not properly comply with the instructions provided [in such notice] will be deemed not to have been received or accepted until any defects and irregularities have been cured or waived in writing by the Debtors. . . . if a Retail Borrower submits an incomplete, untimely, inaccurate, or otherwise defective Election Form, the Retail Borrower will receive the Set Off Treatment on account of its Retail Borrower Deposit Claim by default.

Retail Borrower Notice at 7.

22.     The Movants argue that Debtors violated the Plan because the Retail Borrower Notice was not sent 30 days prior to the Effective Date.  *See* Retail Borrower Motion ¶ 19(h).  The Plan, however, required the Debtors to send the Retail Advance Obligation Repayment Instructions "to all Retail Borrowers at least thirty (30) calendar days prior to the *anticipated* Effective Date and which instructions shall specify the Retail Advance Obligation Repayment Deadline."  Plan Art. I.A.217.  It also did not require the creditors to provide Retail Borrowers thirty days to consider whether to refinance or repay their Retail Advance Obligations.  The Debtors were able to go effective earlier on January 31, 2024, which was not certain as of the date

the notice was sent.  Thus, providing only eight days less than the anticipated thirty-day notice was not a violation of the Plan.

23.    Further, Retail Borrowers who desired to make a Refinancing Indication of Interest only had to submit a form "indicating [such borrower's] interest in the Refinancing Election" and resolve their Withdrawal Preference Exposure above $100,000 prior to completing the refinancing process.  *See* Retail Borrower Notice at 10.  The Retail Borrower Notice further informed creditors that the refinancing process would be completed on or after the Effective Date.  *See* Retail Borrower Notice at 10 ("[T]he Plan Administrator will take commercially reasonable efforts to work with you and the third-party lender of your choice to refinance your Retail Advance Obligation on or after the Effective Date."); *id.* at 16 ("Making this election is only an indication of interest in refinancing; the process to refinance will commence after the Effective Date and will be led by the Plan Administrator.").  Making the Refinancing Indication of Interest did not obligate a Retail Borrower to complete a refinancing of their Retail Advance Obligation.  In fact, approximately 50 Retail Borrowers elected to switch to the Set Off Treatment after submitting a Refinancing Indication of Interest.

24.    On or around February 14, 2024, the Post-Effective Date Debtors sent further instructions regarding the refinancing process to Retail Borrowers who had made the Refinancing Indication of Interest.  *See Further Instructions for Refinancing of Retail Borrower Loans* (the "Refinancing Instructions"), attached hereto as **Exhibit C**.  The Refinancing Instructions required Retail Borrowers to complete a Data Sharing Authorization (as defined in the Refinancing Instructions), which permitted the Post-Effective Date Debtors to share information necessary for the refinancing of such borrower's Retail Advance Obligation with third-party lenders selected by such borrower.  *See* Refinancing Instructions at 2.  Retail Borrowers had nine days to complete

and return the Data Sharing Authorization, after which they would be required to "review and negotiate acceptable terms with [their] chosen lender." *Id.*

25.     As part of finalizing the refinancing of their Retail Advance Obligation, Retail Borrowers were also required to execute a Direction Letter.  The Direction Letter, which only became binding upon the closing of the refinancing, directed (i) the applicable third-party lender to "pay the principal balance of the Celsius Loan" and (ii) Celsius to "transfer the Released Assets to the Lender in accordance with the Plan."  *See* Direction Letter.  Further, the Direction Letter provided that a creditor was "borrowing United States dollars ("USD") from the Lender, collateralized with cryptocurrency, in an amount equal to the outstanding Celsius Loan (the "New Loan") *for the purposes of repaying the Celsius Loan in accordance with the Repayment Option under the Plan*."  *Id.* (emphasis added).  Thus, through a successful refinancing, the third-party lender would "repay the amount of [a creditor's] Retail Advance Obligation to the Debtors" and a creditor would "assign, or transfer, the Liquid Cryptocurrency to be distributed on account of [such creditor's] Retail Borrower Deposit Claim to the third-party lender."  *Id.*  Two Retail Borrowers who submitted a Direction Letter ultimately elected to receive the Set Off Treatment instead, and twenty-one Retail Borrowers who submitted a Direction Letter received the Set Off Treatment because they did not complete a refinancing by the August 2024 deadline.

26.     Mr. Funck and Mr. Gheorghe submitted the Direction Letter in mid-February, and Mr. Chernaik submitted the Direction Letter on March 31, 2024.  Pursuant to the Direction Letter, Mr. Chernaik, Mr. Funck, and Mr. Gheorghe (collectively, the "Refinancing Movants") have effectively waived claims related to the refinancing of their Retail Advance Obligations.  The Direction Letter provides that:

> The Borrower hereby irrevocably directs Celsius, upon receipt of the Loan Payoff,
> to transfer the Released Assets to the Lender in accordance with the Plan, and for

so doing this shall be Celsius' good, sufficient, and irrevocable authority, and Celsius may rely on this irrevocable direction letter in distributing the Released Assets to the Lender instead of the Borrower, ***and the Borrower agrees to waive any claim against Celsius as to the Released Assets***.

Direction Letter (emphasis added).

27.    In total, approximately 470 Retail Borrowers, holding approximately 1,650 Retail Advance Obligations worth approximately $82.6 million, in the aggregate, submitted a Refinancing Indication of Interest.  Of these Retail Borrowers, approximately 355, or approximately 76%, successfully refinanced their Retail Advance Obligations.  This includes the Refinancing Movants, who refinanced their Retail Advance Obligations in April and May 2024. Approximately 50, or approximately 11%, of these Retail Borrowers voluntarily switched to the Set Off Treatment.  The remaining 13% of Retail Borrowers who made the Refinancing Indication of Interest did not complete their refinancing transactions by the deadline in August 2024 and received the Set Off Treatment.

### A.    Mr. Heiliger Did Not Submit an Election Form.

28.    Despite the fact Mr. Heiliger alleges he submitted an Election Form, the Debtors have no record that he submitted such form or otherwise submitted a request in January 2024 to refinance or repay his Retail Advance Obligation.  It was not until May 23, 2024 that Mr. Heiliger contacted the Post-Effective Date Debtors expressing an intention to refinance his Retail Advance Obligations.[13]  Under the Plan, the fact that he did not timely make an election would require the Debtors to apply the Set Off Treatment to his Retail Borrower Deposit Claims.  If, as he alleges, he had submitted the Election Form and elected both the Retail Advance Obligation Repayment Election and the Refinancing Indication of Interest, as set forth on the Election Form, such Election

---

[13]    Mr. Heiliger received his distribution on account of his individual Claims, including the additional 5% for not opting out of the Class Claim Settlement, on or around May 24, 2024.

Form would be deemed "inaccurate[] or otherwise defective" and he would receive the Set Off Treatment on account of his Retail Borrower Deposit Claims. *See* Retail Borrower Notice at 17. By contrast, on or around January 12, 2024, Mr. Heiliger did submit a form notifying the Debtors he intended to settle the Withdrawal Preference Exposure for his corporate account, Heiliger Holdings LLC, prior to the January 31, 2024 deadline (which he did not). The Post-Effective Date Debtors suspect that Mr. Heiliger is confusing the two forms.

B.    **The Refinancing Movants Were Aware of the Terms When They Refinanced Their Retail Advance Obligation.**

29.    Despite their alleged confusion regarding the terms of the Refinancing Indication of Interest, the Refinancing Movants made an informed decision to refinance their Retail Advance Obligations. The Refinancing Movants submitted letters to the Bankruptcy Court where they admit that they were aware of the terms of the refinancing transactions and requested the Bankruptcy Court to intervene. In response to questions asked by Mr. Funck at the March 20, 2024 hearing, counsel to the Post-Effective Date Debtors explained the process again. Finally, the Post-Effective Date Debtors filed a further explanation at the request of the Bankruptcy Court. Whatever their confusion may have been in January 2024, the Refinancing Movants entered into the respective refinancing transactions with their eyes wide open, aware of the terms they were agreeing to and the fact that they could always request to switch to the Set Off Treatment.

30.    On March 19, 2024, Mr. Funck submitted a letter on behalf of himself and certain other Holders of Retail Borrower Deposit Claims, including Mr. Gheorghe [Docket No. 4716] (the "March 19 Letter"). Far from showing any confusion on behalf of Mr. Funck or Mr. Gheorghe, the March 19 Letter shows they understood that their Retail Advance Obligations would be refinanced based on market prices at the time of such transaction. *See* March 19 Letter at 1 ("The second portion of the refinance (the principal value) is dynamic in nature and based on

18

the market price of BTC or ETH at the time of the refinance (i.e. third-party lender pays Celsius the principal portion on behalf of the borrower and then Celsius goes out into the open market to acquire the BTC or ETH).").   In an admission that what they are currently requesting is a modification of the Plan, the March 19 Letter requests that the Bankruptcy Court implement a solution by requiring the Post-Effective Date Debtors to use Effective Date pricing for the refinancing transactions.  *See id.* at 4.

31.    At the March 20, 2024 hearing, which Mr. Funck and Mr. Gheorghe attended, Mr. Funck further demonstrated his understanding of the refinancing process when he opined that using the cryptocurrency prices on the date the refinancing transaction closed amounted to "unfair discrimination."  *See* Mar. 20, 2024 Hr'g Tr. at 55:20–56:18.   In response, counsel to the Post-Effective Date Debtors explained the repayment process, including that it was designed to be "neutral to the estate."  *See* Mar. 20, 2024 Hr'g Tr. at 58:4–12.  Counsel for the Post-Effective-Date Debtors further explained that, in a refinancing transaction, the third-party lender repays the Retail Borrower's loans and receives the Retail Advance Obligation Repayment Amount and the Retail Borrowers' other distributions on account of its Retail Borrower Deposit Claims.  *See* Mar. 20, 2024 Hr'g Tr. at 59:4–10.  In response to Mr. Funck's argument, counsel for the Post-Effective Date Debtors stated that "[a]llowing Mr. Funck to buy bitcoin now at $43,000 when the market price of Bitcoin is $65,000 I would argue is inequitable, and anybody should make that choice." *See id.* 59:22–24.

32.    On March 31, 2024, following the hearing, Mr. Chernaik, on behalf of himself and certain other Holders of Retail Borrower Deposit Claims, including Mr. Funck and Mr. Gheorghe, filed another letter with the Bankruptcy Court [Docket No. 4766] (the "March 31 Letter").  This letter largely reiterates the issues raised in the March 19 Letter and, again, demonstrates an

understanding of how the refinancing process worked.  *See* March 31 Letter ("The second portion

of the Refinance (the Principal value) is dynamic in nature and based on the market price of BTC

or ETH at the time of the Refinance.").

33.     At each step, the Refinancing Movants demonstrated knowledge of the terms of the

refinancing process.  Further, prior to refinancing transaction closing, the Refinancing Movants

would have received specific terms from their selected third-party lender, presumably including

information on the valuation of their Retail Advance Obligation repayment.  With the knowledge

of exactly how these refinancing transactions worked, each of the Refinancing Movants

successfully completed the refinancing process, facilitated by the Post-Effective Date Debtors, in

April and May 2024.

### III.    The Movants Have Not Met Their Burden Establishing Good Causes for Discovery.

34.     Despite all the accusations contained in the Retail Borrower Motion, the Retail

Borrower Motion is essentially a request for discovery under rule 2004 of the Federal Rules of

Bankruptcy Procedure ("Rule 2004"), and the Movants fail to meet their burden of establishing

"good cause" for such discovery.  *See* Retail Borrower Motion ¶ 70(a)–(k).  When a court

considers a request for discovery under Rule 2004, it must first determine whether the discovery

sought is for a proper purpose.  *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002).

Assuming a movant can identify a proper purpose for its inquiry, courts apply a two-pronged test

to determine whether to grant Rule 2004 discovery.

35.     First, the moving party must show good cause for the requested discovery by

establishing that denial of its request would cause it "undue hardship or injustice."

*See In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004).  Second, the Court must also "balance

the competing interests of the parties, weighing the relevance of and necessity of the information

sought by examination."  *In re Drexel  Burnham  Lambert  Grp.,  Inc.*,  123 B.R.  702, 712

(Bankr. S.D.N.Y. 1991); *accord In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991). Only after the moving party satisfies each prong will a court order Rule 2004 discovery. Where a moving party fails to meet this test, the court has the broad discretion to limit or deny a Rule 2004 request. *See* Fed. R. Bankr. P. 2004 ("On motion of any party in interest, the court *may* order the examination of any entity.") (emphasis added); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("[Rule 2004] giv[es] the Court significant discretion."); *Coffee Cupboard Inc.*, 128 B.R. at 516 (limiting scope of discovery based upon the "tenuous legal basis upon which the trustee might commence actions").

36.     Further, to the extent the Movants seek relief beyond discovery, their discovery requests would be improper under the "pending proceeding rule," which provides an exception to the broad scope of discovery under Rule 2004. Fed. R. Bankr. P. 2004(a). Pursuant to the pending proceeding rule, if an adversary proceeding or a contested matter is pending in the bankruptcy case, parties to that proceeding or matter must seek discovery under Bankruptcy Rules 7026 through 7037 (with certain exceptions and additions specified in Rule 9014) rather than the liberal provisions of Rule 2004. *See In re National Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016); *In re Bennett Funding*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). Permitting a party to seek discovery pursuant to Rule 2004 when it is related to a pending proceedings is inappropriate because it may circumvent the safeguards and protections of the Federal Rules of Civil Procedure. *See In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure.").

37.     Through the Retail Borrower Motion, the Movants seek broad categories of discovery related to all classes of creditors or on topics that have little (if any) bearing on their

accusations. *See*, *e.g.*, Retail Borrower Motion ¶ 70(a) (seeking discovery on the Debtors' use of cryptocurrency during the Chapter 11 cases), (b) (seeking discovery on the process of calculating and implementing distributions to all classes of creditors), and (c) (seeking discovery on any sales, transfers, or purchases of cryptocurrency). Nonetheless, the Post-Effective Date Debtors engaged with the Movants prior to filing this Objection to discuss their discovery requests. In an attempt to resolve such discovery requests, the Post-Effective Date Debtors have sent the Movants a spreadsheet with detailed calculations of the amounts transferred to the Movants' third-party lender on account of their Claims, copies of the Direction Letters that each of the Refinancing Movants signed, and each ticket and other correspondence from the Movants with Celsius. The Post-Effective Date Debtors believe the documents produced sufficiently address the Retail Borrower Movant's legitimate discovery requests, and that the Movant's remaining discovery requests are overbroad and largely irrelevant to the issues raised in the Retail Borrower Motion.

### IV. The Movants' Remaining Allegations are Baseless, Irrelevant, or Knowingly False.

38.    The remainder of the Movants' allegations are baseless, irrelevant, or knowingly false, as addressed further below:[14]

- The Movants make multiple references to a "Retail Borrowers Settlement Agreement," alleging the Debtors and Post-Effective Date Debtors violated such agreement by not valuing refinancings as of the Effective Date. *See generally* Retail Borrower Motion.

  - The Debtors and the Retail Borrower Ad Hoc Group entered into a term sheet— not a settlement agreement—which required certain modifications to the Plan. Because the Retail Borrower Ad Hoc Group failed to uphold its obligations under that settlement, certain aspects of the term sheet were not incorporated into the Plan. A version of the Plan reflecting those aspects of the settlement that were incorporated was filed prior to solicitation of the Plan [Docket No. 3319]. This is the Plan that was confirmed. In any event, the Movants' citations to the term sheets do not support the relief they seek.

---

[14]    To the extent the Bankruptcy Court desires a response to a specific allegation made by the Movants, the Post-Effective Date Debtors will file a supplemental brief.

- The Movants argue that the Post-Effective Date Debtors were not ready to initiate the refinancing process and should have delayed the Effective Date. *See* Retail Borrower Motion ¶ 14.

  - The Debtors were not going to hold up consummation of a Plan that would commence distributions to all of their creditors so that a handful of Retail Borrowers could complete deals with third-party lenders. Moreover, this would have resulted in all distributions being valued at prices after January 31, 2024, after which cryptocurrency prices materially increased, which is inconsistent with the relief the Movants now seek.

- The Movants erroneously assert that the Debtors or the Post-Effective Date Debtors sold the cryptocurrency they deposited as collateral for their Retail Advance Obligations. *See* Retail Borrower Motion ¶ 40.

  - The Movants misinterpret the Post-Effective Date Debtors response to concerns raised by Corporate Creditors wherein the Post-Effective Date Debtors explained that they sold cryptocurrency to set aside sufficient cash for distributions to *Corporate Creditors*. *See Post-Effective Date Debtors' Response to Distribution Issues Raised by Corporate Creditors and Retail Borrowers* [Docket No. 4786] at 5, 8.

- The Movants allege there is no way to dispute or ask questions regarding the calculation of their distributions. *See* Retail Borrower Motion ¶ 66.

  - The Post-Effective Date Debtors have maintained a ticketing system where creditors can submit tickets regarding their distributions. In addition, many creditors have contacted the Post-Effective Date Debtors' counsel regarding issues related to their distributions. Further, the Movants could have asked their applicable lenders for additional information regarding the terms of their refinancing.

- The Movants allege the Debtors and Post-Effective Date Debtors relied on "lesser known and smaller sized banks to manage [their] funds." *See* Retail Borrower Motion ¶ 63.

  - The Debtors and Post-Effective Date Debtors, as debtors-in-possession, are required to comply with section 345(b) of the Bankruptcy Code and maintained bank accounts at banks identified as authorized depositories by the U.S. Trustee. Further, many larger banks have internal policies prohibiting them to accept cryptocurrency companies as clients. Even then, within a single month of their original banking partner's bonds being downgraded to "junk," the Post-Effective Date Debtors had opened an account with a new banking partner that was able to offer them a full suite of cash management operations.

- The Movants allege they submitted "countless communications and customer service tickets that went unaddressed and unanswered, outside of stock and uninformed auto-responses." Retail Borrower Motion ¶ 19(q).

  - The Post-Effective Date Debtors have reviewed their records and received no communications or tickets from the Movants regarding their Retail Advance Obligations or Retail Borrower Deposit Claims until May 2024, when Mr. Heiliger asked to refinance his Retail Advance Obligation.

39.    For the reasons set forth herein, the Bankruptcy Court should deny the Retail Borrower Motion.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated:  November 6, 2024

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                     ross.kwasteniet@kirkland.com
                     chris.koenig@kirkland.com
                     dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

**<u>Exhibit A</u>**

**Form of Direction Letter**

## IRREVOCABLE DIRECTION LETTER

**FROM:**        **BORROWER (as defined in the Loan Agreement)**

**TO:**          **LENDER (as defined in the Loan Agreement)**

**AND TO:**      **CELSIUS NETWORK LLC AND ITS AFFILIATES ("Celsius")**

---

**WHEREAS** the Borrower had previously obtained a loan from Celsius collateralized with cryptocurrency (the "**Celsius Loan**"), and upon the Chapter 11 bankruptcy of Celsius, the Borrower became an unsecured creditor to Celsius;

**AND WHEREAS** in connection with Celsius' confirmed chapter 11 plan of reorganization [Docket No. 4289] (the "**Plan**"), the Borrower may repay its Celsius Loan in exchange for the release by Celsius to the Borrower of a like amount of cryptocurrency (the "**Released Assets**") in accordance with the terms of the Plan (the "**Repayment Option**");

**AND WHEREAS** the Borrower has entered into a USD, or USDC loan agreement with the Lender (the "**Loan Agreement**"), pursuant to which the Borrower will borrow United States dollars ("**USD**") from the Lender, collateralized with cryptocurrency, in an amount equal to the outstanding Celsius Loan (the "**New Loan**") for the purposes of repaying the Celsius Loan in accordance with the Repayment Option under the Plan;

**AND WHEREAS** pursuant to the Loan Agreement, the Borrower has agreed to provide this irrevocable direction to the Lender and to Celsius contemporaneously with the entering into of the Loan Agreement.

**NOW THEREFORE**:

The Borrower hereby irrevocably directs the Lender to pay the principal balance of the Celsius Loan, upon the closing of the New Loan in accordance with the Loan Agreement, to Celsius (the "**Loan Payoff**"), and for so doing this shall be the Lender's good, sufficient and irrevocable authority.

The Borrower hereby irrevocably directs Celsius, upon receipt of the Loan Payoff, to transfer the Released Assets to the Lender in accordance with the Plan, and for so doing this shall be Celsius' good, sufficient and irrevocable authority, and Celsius may rely on this irrevocable direction letter in distributing the Released Assets to the Lender instead of Borrower, and Borrower agrees to waive any claim against Celsius as to the Released Assets.

This irrevocable direction shall be effective as of the date of the SALT Blockchain's Loan Agreement.

**<u>BORROWER</u>**

Name (printed): _____

Email associated with Celsius loan: _____

Email associated with SALT refinance: _____

Title (if not an individual): _____

Date: _____

Signature: _____

### Exhibit B

**Retail Borrower Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE TO HOLDERS OF
## RETAIL BORROWER DEPOSIT CLAIMS
## REGARDING FORTHCOMING NOTICE AND ELECTION FORM FOR
## REPAYMENT OR REFINANCING OF RETAIL BORROWER DEPOSIT CLAIMS

**PLEASE TAKE NOTICE** that in the coming days, Holders of Class 2 Retail Borrower

Deposit Claims ("Retail Borrowers") will receive an email from the Debtors' claims, noticing, and

solicitation agent, Stretto, with instructions for selecting a treatment option for their Retail

Borrower Deposit Claim.  The *Modified Joint Chapter 11 Plan of Reorganization of Celsius

Network LLC and Its Debtor Affiliates* [Docket No. 3577] (the "Plan") provides that Retail

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8
USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors'
service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Borrowers can elect the Retail Advance Obligation Repayment Election **or** the Set Off Treatment with respect to their Retail Borrower Deposit Claims.  *See* Plan, Art.III.B.2.  The Plan further provides that the Debtors will take commercially reasonable efforts to facilitate third-party refinancing or modification of Retail Borrowers' loans (the "Refinancing Election").  *See id.*, Art.IV.B.7.

**PLEASE TAKE FURTHER NOTICE** that detailed information about the Retail Advance Obligation Repayment Election, the Set Off Treatment, the Refinancing Election, and a form for making a selection for the treatment of their Claims is provided in the *Notice and Election Form for Repayment or Refinancing of Retail Borrower Deposit Claims* (the "Notice and Election Form"), a copy of which is attached hereto as **Exhibit A**.  Stretto will be sending each Retail Borrower an email with an individualized link to the Notice and Election Form on Stretto's website.  ***Retail Borrowers must submit the Election Form to indicate their preferred Claim treatment by 11:59 p.m., prevailing Eastern Time, on January 17, 2024***.  More information about applicable deadlines can be found in the Notice and Election Form.

**PLEASE TAKE FURTHER NOTICE** that submitting a Retail Advance Obligation Repayment Election or a Refinancing Election is ***optional***.  If you take no action, your Retail Borrower Deposit Claim will receive the Set Off Treatment.

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Statement, Plan, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Celsius.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  January 8, 2024

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

Notice and Election Form for Repayment
or Refinancing of Retail Borrower Deposit Claims

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE AND ELECTION FORM FOR**
**REPAYMENT OR REFINANCING OF RETAIL BORROWER DEPOSIT CLAIMS**

**PLEASE READ THIS NOTICE AND THE INSTRUCTIONS CONTAINED HEREIN CAREFULLY *BEFORE* COMPLETING THE ELECTION FORM.**

**THE DEADLINE TO SUBMIT THE ELECTION FORM IF YOU WOULD LIKE TO MAKE THE RETAIL ADVANCE OBLIGATION REPAYMENT ELECTION OR THE REFINANCING ELECTION IS 11:59 P.M., PREVAILING EASTERN TIME, ON JANUARY 17, 2024.   PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ THIS NOTICE AND COMPLETE THE ELECTION FORM.**

     **PLEASE TAKE NOTICE** that the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (the "Plan")[2] provides that

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not immediately defined have the meaning ascribed to them in the Plan, the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), or the *Order (I) Approving the Adequacy of the Debtors'*

Class 2 Retail Borrower Deposit Claims[3] (or "<u>Retail Borrowers</u>") will receive treatment based on one of two options which may be selected by the Retail Borrower: (1) the Retail Advance Obligation Repayment Election **or** (2) the Set Off Treatment. *See* Plan, Art.III.B.2. The Plan further provides that the Debtors will take commercially reasonable efforts to facilitate third-party refinancing or modification of Retail Borrowers' loans whereby the third party will repay the principal amount of the loan owed under the Retail Advance Obligation Repayment Election, receive the liquid cryptocurrency distribution owed to the applicable Retail Borrower under the Plan, and enter into a new loan agreement with the Retail Borrower. This transaction is referred to in this Notice as the "<u>Refinancing Election</u>." *See id.*, Art.IV.B.7.

 **PLEASE TAKE FURTHER NOTICE** that if a Retail Borrower elects to make the Retail Advance Obligation Repayment Election and directly repays all or a portion of its loan, subject to the requirements set forth below, it will receive an amount of BTC or ETH equal to the amount of the Retail Advance Obligation repaid. The Debtors are only providing an amount of BTC or ETH equal to the applicable Retail Advance Obligation in exchange for direct repayment of the Retail Advance Obligation. For the avoidance of any doubt, making the Retail Advance Obligation Repayment Election will not entitle you to receive the full amount of the collateral supporting the applicable loan.

 **PLEASE TAKE FURTHER NOTICE** that to choose the Retail Advance Obligation Repayment Election or the Refinancing Election, you must complete the election form attached to this Notice as **Exhibit A** (the "<u>Election Form</u>"). Any Retail Borrower who does not timely return the Election Form or returns an Election Form that is incomplete or otherwise inadequate will receive the Set Off Treatment. Under the Set Off Treatment, the principal amount of the loan owed to the Debtors will be set off or recouped against the applicable Retail Borrower Deposit Claim. The Retail Borrower will then retain the proceeds of its loan and have the associated Retail Borrower Deposit Claim reduced by the amount of the Retail Advance Obligation outstanding on the Petition Date. The remaining amount of the Retail Borrower Deposit Claim (*i.e.*, the "Retail Borrower Post-Set Off Claim") will receive the Unsecured Claim Distribution Consideration (*i.e.*, its pro rata portion of (1) Liquid Cryptocurrency, (2) MiningCo Common Stock, (3) Illiquid Recovery Rights, and (4) Litigation Proceeds) or Convenience Class Distribution, as applicable. For the avoidance of any doubt, if a Holder's Retail Borrower Deposit Claim receives the Set Off Treatment, such Holder will not owe additional amounts to the Debtors.

 **PLEASE TAKE FURTHER NOTICE** that also provided herein are the instructions for repaying the Retail Advance Obligation (the "<u>Retail Advance Obligation Repayment</u>

---

*Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 3337] (the "<u>Disclosure Statement Order</u>").

[3] "<u>Retail Borrower Deposit Claim</u>" means the Retail Borrower's Claim against the Debtors on account of the cryptocurrency such Retail Borrower transferred in connection with its Retail Advance Obligation(s). *See* Plan, Art.I.A.214. "<u>Retail Advance Obligations</u>" means any Claim of the Debtors against a Retail Borrower with respect to advances made by the Debtors in connection with the Debtors' Borrow Program as of the Petition Date (*i.e.*, as of July 13, 2022). *See id.* at Art.I.A.208.

Instructions") and instructions regarding the Refinancing Election (the "Refinancing Election Instructions").

**PLEASE TAKE FURTHER NOTICE** that the deadline to submit your Election Form indicating your choice of the Retail Advance Obligation Repayment Election or the Refinancing Election is 11:59 p.m., prevailing Eastern Time, on January 17, 2024, via the online portal of the Debtors' claims, noticing, and solicitation agent, Stretto. ***If you do not timely and adequately complete and submit the Election Form, your Retail Borrower Deposit Claim will automatically receive the Set Off Treatment***. If you submit the Election Form without making any elections (*i.e.*, you submit a form but no elections are recorded), your Retail Borrower Deposit Claim will receive the Set Off Treatment.

**PLEASE TAKE FURTHER NOTICE** that if you previously opted into the Convenience Class, your Convenience Claim Election will remain valid and in effect, unless your Claim was greater than $25,000 in value and you received an email from the Debtors asking you to confirm whether you intended to elect the Convenience Claim Treatment.

**PLEASE TAKE FURTHER NOTICE** that the tax consequences of the transactions contemplated hereby are complicated and subject to significant uncertainty. Retail Borrowers are urged to consult Art.XII of the Disclosure Statement for a general discussion of certain tax issues related to the transactions contemplated by this Notice and Election Form. The Disclosure Statement can be accessed for free at https://cases.stretto.com/Celsius. Each Retail Borrower is urged to consult its own tax and other applicable counsel or advisor regarding the tax consequences of any action pursuant to this Notice and Election Form. The Debtors cannot and are not offering any tax advice.

**PLEASE TAKE FURTHER NOTICE** that any Election Forms that do not properly comply with the instructions provided herein will be deemed not to have been received or accepted until any defects and irregularities have been cured or waived in writing by the Debtors. For the avoidance of doubt, if a Retail Borrower submits an incomplete, untimely, inaccurate, or otherwise defective Election Form, the Retail Borrower will receive the Set Off Treatment on account of its Retail Borrower Deposit Claim by default. The Debtors have the sole discretion to determine whether an Election Form is properly completed.

**TO HAVE YOUR ELECTION APPLIED TO YOUR RETAIL BORROWER DEPOSIT CLAIM, YOU MUST COMPLETE AND SUBMIT THE ELECTION FORM VIA THE CLAIMS AGENT'S (STRETTO'S) ONLINE PORTAL SO THAT IT MAY BE RECEIVED ON OR BEFORE 11:59 P.M., PREVAILING EASTERN TIME, ON JANUARY 17, 2024.**

**IF YOU DO NOTHING, YOUR RETAIL BORROWER DEPOSIT CLAIM WILL RECEIVE THE SET OFF TREATMENT.**

**The Retail Advance Obligation Repayment Election and the Retail Advance Obligation Repayment Instructions:**

**PLEASE TAKE FURTHER NOTICE** that Retail Borrowers may choose to repay all or a portion of their Retail Advance Obligation(s), provided that the Debtors will not accept partial

repayments that are less than $25,000. In return, the Debtors will provide the applicable Retail Borrower with an amount of BTC or ETH (at the Retail Borrower's election) equal to the amount repaid to the Debtors. *See* Plan, Art.III.B.2(b). ***Due to administrative reasons, the Debtors will only accept partial repayments of not less than $25,000.*** The Debtors will accept all repayments of the entire principal amount of the Retail Advance Obligation. In other words, if you (i) make the Retail Advance Obligation Repayment Election and (ii) repay all or part of the principal amount of loan you took out under the Debtors' Borrow Program (if the partial repayment amount is at least $25,000) by the Retail Advance Obligation Repayment Deadline by making a direct payment to the Debtors as provided within the Retail Advance Obligation Repayment Instructions, you will receive an amount of BTC or ETH equal to the amount that you repaid (*i.e.*, you can choose whether you will receive BTC or ETH) and a distribution of Liquid Cryptocurrency, equity in the reorganized Bitcoin mining company ("MiningCo"), and rights to receive the proceeds of the monetization of the Debtors illiquid assets and litigation to be brought after the Effective Date of the Plan on account of your Retail Borrower Post-Set Off Claim. For example, if you took out a loan with a principal amount of $15,000, you make the Retail Advance Obligation Repayment Election, and you repay the loan by making a Cash payment of $15,000, you will receive $15,000 worth of BTC or ETH (depending on which you elect) in return and your pro rata amount of the Unsecured Claim Distribution Consideration listed in the immediately preceding sentence on account of your Retail Borrower Post-Set Off Claim. The amount of BTC or ETH that you will receive will be determined as of noon prevailing Eastern Time on your date of repayment based on prices reported by CoinPaprika.com. Your preference for BTC or ETH as selected on the Election Form will be deemed final upon submission and cannot be revised. If you do not express a preference, the Debtors will make distributions in BTC or ETH in their discretion.

**PLEASE TAKE FURTHER NOTICE** that Account Holders with Withdrawal Preference Exposure[4] above $100,000 who do not resolve such exposure by making a settlement payment by 11:59 p.m., prevailing Eastern Time, on January 31, 2024 are ineligible to receive the treatment provided by making the Retail Advance Obligation Repayment Election.[5] Any Account Holder with Withdrawal Preference Exposure greater than $100,000 who does not resolve its Withdrawal Preference Exposure by January 31, 2024, ***will*** receive the Set Off Treatment, even if such account Holder makes the Retail Advance Obligation Repayment Election in accordance with these instructions. Any amount repaid by such Account Holders will be promptly returned.

**PLEASE TAKE FURTHER NOTICE** that there may be a delay between the date you repay the principal amount of your loan and the date you receive the equal amount of BTC or ETH in return while the Debtors review and reconcile payments and Claims. Distributions of BTC and

---

[4]   "Withdrawal Preference Exposure" means (i) the aggregate value of all assets an Account Holder withdrew from the Debtors' platform in the 90 days prior to the Petition Date (*i.e.*, on or after April 14, 2022), valued as of the time of such withdrawals *less* (ii) the aggregate value of any deposits such Account Holder made after such Account Holder's first withdrawal in such period, valued as of the time of such deposits. The details of how Withdrawal Preference Exposure is calculated are included in Article.III.PP of the Disclosure Statement. For the avoidance of doubt, the Debtors' calculation of Withdrawal Preference Exposure shall not be binding on any defendant in an Avoidance Action. *See* Plan, Art.I.A.274.

[5]   Account Holders with Withdrawal Preference Exposure greater than $100,000 (and who otherwise meet the eligibility requirements of participating in the Account Holder Avoidance Action Settlement) will be receiving information about making settlement payments to resolve their Withdrawal Preference Exposure.

ETH will be made through PayPal for Account Holders located in the United States and Coinbase for international account holders. ***Account Holders should be sure that they are able to access PayPal or Coinbase, as applicable, prior to making the Retail Advance Obligation Repayment Election.***

      **PLEASE TAKE FURTHER NOTICE** that if the Debtors determine in their sole discretion that regulatory restrictions prohibit the distribution of cryptocurrency to you or your location, you will not be eligible for the Retail Advance Obligation Repayment Election and ***will*** receive the Set Off Treatment, even if you make a Retail Advance Obligation Repayment Election in accordance with these instructions. Any amount repaid by such Account Holders will be promptly returned.

      **PLEASE TAKE FURTHER NOTICE** that you may make your Retail Advance Obligation Repayment beginning at 12:01 a.m., prevailing Eastern Time, on January 21, 2024, and up to and including the Retail Advance Obligation Repayment Deadline at 11:59 p.m., prevailing Eastern Time, on January 26, 2024, which is five (5) calendar days before January 31, 2024, the anticipated Effective Date (such period, the "Repayment Period"). ***For the avoidance of doubt, your Retail Advance Obligation Repayment will not be accepted prior to 12:01 a.m., prevailing Eastern Time, on January 21, 2024, and must be received between 12:01 a.m., prevailing Eastern Time, on January 21, 2024 and 11:59 p.m., prevailing Eastern Time, on January 26, 2024.*** If the payment is not received during the Repayment Period, your Retail Borrower Deposit Claim will be treated in accordance with the Set Off Treatment. Any payment received after the Retail Advance Obligation Repayment Deadline will be refunded to the Retail Borrower in US Dollars. If you elect to repay only a portion of the entire principal amount of your loan and such repayment is less than $25,000, your repayment will be refunded to you and you will receive the Set Off Treatment, described further below.

      **PLEASE TAKE FURTHER NOTICE** that if you would like to make the Retail Advance Obligation Repayment Election, you must make your election and submit the Election Form by 11:59 p.m., prevailing Eastern Time, on January 17, 2024, via the online portal of the Debtors' claims, noticing, and solicitation agent, Stretto. If you do not timely complete and submit the Election Form, you will receive the Set Off Treatment. If you do not timely complete and submit the Election Form, you may not make a Retail Advance Obligation Repayment, and any amount you attempt to repay will be promptly returned.

      **PLEASE TAKE FURTHER NOTICE** that the Retail Advance Obligation Repayment ***can be made in Cash (US Dollars) only***. No repayments in any cryptocurrency or any other fiat currency will be allowed or accepted. If you attempt to make a repayment in cryptocurrency to a Celsius-controlled wallet, there is no assurance that the Debtors will be able to return your cryptocurrency to you, and you will not be eligible to receive a return of the equivalent amount of BTC or ETH that you repaid. Your Cash repayment must be remitted in accordance with the bank account information provided once you submit the Election Form. You must submit this Election Form to receive the wire instructions.

**The Refinancing Election and the Refinancing Election Instructions:**

        **PLEASE TAKE FURTHER NOTICE** that, as an alternative to repaying the Debtors directly, Holders of Retail Borrower Deposit Claims may refinance their Retail Advance Obligation(s) with a third-party lender. ***The Debtors do not specifically endorse any lender or lending program for this purpose.*** While the Debtors do not attest to the creditworthiness or reliability of any specific lender, the following three lenders have provided the Debtors with indicative lending terms designed specifically to help Retail Borrowers refinance their Retail Advance Obligation(s): (1) Figure Lending, (2) Ledn, and (3) SALT Lending. Further information about these lenders will be provided after your submission of the Election Form indicating your interest in the Refinancing Election.

        **PLEASE TAKE FURTHER NOTICE** that if you choose to refinance all or a portion of your Retail Advance Obligation(s), ***you will not*** receive any distribution of Liquid Cryptocurrency on the Effective Date. Instead, the Plan Administrator will take commercially reasonable efforts to work with you and the third-party lender of your choice to refinance your Retail Advance Obligation on or after the Effective Date. You will be required to assign, or transfer, the Liquid Cryptocurrency to be distributed on account of your Retail Borrower Deposit Claim to the third-party lender, that third-party lender will be required to repay the amount of your Retail Advance Obligation to the Debtors, and you will be required to enter into a new loan agreement with that third-party lender on the terms you agree to with the third-party lender. If the Debtors and/or the Plan Administrator do not ultimately reach an acceptable agreement with you and your chosen lender, you will receive the Set Off Treatment by default.

        **PLEASE TAKE FURTHER NOTICE** that Account Holders with Withdrawal Preference Exposure above $100,000 who make the Refinancing Election must resolve their Withdrawal Preference Exposure by making a settlement payment or otherwise resolving their Withdrawal Preference Exposure with the Litigation Administrator before the refinancing process can be completed. Because the refinancing process will begin after the Effective Date, Account Holders with Withdrawal Preference Exposure greater than $100,000 can make their settlement payments after the Effective Date. The Plan Administrator and Litigation Administrator will have the discretion to set a deadline by which Withdrawal Preference Exposure must be settled to participate in any refinancing with a third-party lender and such settlement payments must be made. The Plan Administrator will communicate any such deadline to applicable Account Holders with at least two weeks' notice of such deadline. Any Account Holder with Withdrawal Preference Exposure greater than $100,000 who does not resolve its Withdrawal Preference Exposure by this deadline but made the Refinancing Election will receive the Set Off Treatment.

        **PLEASE TAKE FURTHER NOTICE** that Retail Borrowers who elect to refinance their Retail Advance Obligation(s) will still receive their pro rata portion of MiningCo Common Stock, Litigation Proceeds, and Illiquid Recovery Rights under the Plan.

        **PLEASE TAKE FURTHER NOTICE** that if you would like to make the Refinancing Election, you must make your election and submit the Election Form by 11:59 p.m., prevailing Eastern Time, on January 17, 2024, via the online portal of the Debtors' claims, noticing, and solicitation agent, Stretto. If you do not timely complete and submit the Election Form, you will receive the Set Off Treatment. Once you have submitted the Election Form with your Refinancing

6

Election, you will receive instructions about the next steps of the refinancing process after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that refinancing your loan with a third-party lender entails risk that could include loss of the cryptocurrency supporting your loan due to the financial conditions or internal operations/security protocols of the lender that you select. Retail Borrowers interested in working with a third-party lender to refinance their outstanding loan obligations are encouraged to thoroughly explore the offerings of the lenders listed above (as well as any other offerings that may be available via other lenders) to make an informed decision that accounts for all risks associated with transferring your cryptocurrency to a new lender. The Debtors and the Committee are not endorsing, sponsoring, or recommending that any Retail Borrower enter into an agreement with any specific lender or refinance their Retail Advance Obligation. Other than the transactions described in the Plan, neither the Debtors nor the Committee have any agreement with any of the lenders mentioned in this Notice. Other than the repayment of the Retail Advance Obligation to the Debtors under the Plan, neither the Debtors nor the Committee will receive any consideration from these lenders or any other party on account of any agreement between a Retail Borrower and any refinancing lender.

**The Set Off Treatment:**

**PLEASE TAKE FURTHER NOTICE** that the default treatment of Retail Borrower Deposit Claims under the Plan is the Set Off Treatment. If you do not make the Refinancing Election or the Retail Advance Obligation Repayment Election, you will receive the Set Off Treatment on account of your Retail Borrower Deposit Claim. If you make the Retail Advance Obligation Repayment Election but ultimately do not repay all of your Retail Advance Obligations or the portion indicated in your Election Form in accordance with the Retail Advance Obligation Repayment Instructions or by the Retail Advance Obligation Repayment Deadline, or if you make the Refinancing Election, but the Debtors do not ultimately reach an acceptable agreement with you and your chosen lender, you will also receive the Set Off Treatment.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Plan, under the Set Off Treatment, a Retail Borrower Deposit Claim will be set off or recouped against the applicable Retail Advance Obligations (*i.e.*, the amount of your loan/the amount you owe the Debtors) outstanding on the Petition Date. *See* Plan, Art.I.A.241; *see also* Disclosure Statement, Art.II.C. The remaining amount of the Retail Borrower Deposit Claim after set off is known as the "Retail Borrower Post-Set Off Claim"[6] and will receive the Unsecured Claim Distribution Consideration **or** Convenience Class Distribution, as applicable. *See id.* ***For the avoidance of doubt, if your Retail Borrower Deposit Claim receives Set Off Treatment, you will not have to repay your loan or owe additional amounts to the Debtors or the Post-Effective Date Debtors on account of your Retail Borrower Deposit Claim****. See id.*

---

[6]  "Retail Borrower Post-Set Off Claim" means a Retail Borrower's remaining Claim after application of any Retail Advance Obligation Repayment Amounts transferred by such Retail Borrower by the Retail Advance Obligation Repayment Deadline and/or the application of the Set Off Treatment to their Retail Borrower Deposit Claim. *See* Plan, Art.I.A.215.

**PLEASE TAKE FURTHER NOTICE** that for the avoidance of doubt, because the Debtors have pivoted to the Orderly Wind Down, all prior Unsecured Claim Distribution Mix Elections (which allowed Account Holders who voted for the Plan to elect to receive more Liquid Cryptocurrency or more NewCo Common Stock for a 30% discount or premium) previously solicited are null and void. *See Joint Motion of the Debtors and the Committee for Entry of an Order (I) Approving the Implementation of the MiningCo Transaction and (II) Granting Related Relief* [Docket No. 4050].

**<u>Other Information:</u>**

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Statement, Plan, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at <u>http://www.cases.stretto.com/Celsius</u>. You may also obtain copies of any pleadings by visiting the Court's website at <u>http://www.nysb.uscourts.gov</u> in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  January 8, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Election Form**

## ELECTION FORM

### HOLDERS OF CLASS 2 RETAIL BORROWER DEPOSIT CLAIMS

**ELECTIONS FOR THE TREATMENT OF YOUR CLASS 2 RETAIL BORROWER DEPOSIT CLAIM**

**PLEASE READ THIS ELECTION FORM AND THE INSTRUCTIONS BELOW CAREFULLY BEFORE COMPLETING THE ELECTION FORM TO DETERMINE YOUR ELECTIONS WITH RESPECT TO THE TREATMENT OF YOUR CLASS 2 RETAIL BORROWER DEPOSIT CLAIM. PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS ELECTION FORM.**

**PLEASE NOTE THAT THE BELOW DESCRIPTIONS ARE ONLY SUMMARIES OF THE ELECTIONS AVAILABLE TO HOLDERS OF CLASS 2 RETAIL BORROWER DEPOSIT CLAIMS. HOLDERS OF RETAIL BORROWER DEPOSIT CLAIMS SHOULD CAREFULLY REVIEW THE PLAN, DISCLOSURE STATEMENT, AND THE NOTICE FOR COMPREHENSIVE INFORMATION REGARDING THE TREATMENT OPTIONS DESCRIBED BELOW.**

**THE FOLLOWING ELECTIONS ARE AVAILABLE FOR THE TREATMENT OF YOUR CLASS 2 RETAIL BORROWER DEPOSIT CLAIM:**

**Retail Advance Obligation Repayment Election:** The election of a Retail Borrower to repay all or a portion of the Retail Borrower's loan, also known as the Retail Advance Obligation, made by the Debtors to the Retail Borrower as part of the Borrow Program. The Retail Borrower will make a payment in Cash (US Dollars) to the Debtors directly during the Repayment Period beginning at 12:01 a.m., prevailing Eastern Time, on January 21, 2024 and ending at 11:59 p.m., prevailing Eastern Time, on January 26, 2024. The Debtors will only accept partial repayments of no less than $25,000. In return, the Retail Borrower will receive an amount of BTC or ETH (at the Retail Borrower's election) equal to the amount of the loan the Retail Borrower has repaid, also referred to in the Plan as the Retail Advance Obligation Repayment Amount. The amount of BTC or ETH that the Retail Borrower will receive will be determined as of noon prevailing Eastern Time on the date of repayment based on prices reported by CoinPaprika.com. There may be a delay between the date the Retail Advance Obligation Repayment Amount is remitted by the Retail Borrower and the date the Retail Borrower receives the BTC or ETH in return. Distributions of BTC and ETH will be made through PayPal for Account Holders located in the United States and Coinbase for international Account Holders. Account Holders should be sure that they are able to access to PayPal or Coinbase, as applicable, prior to making the Retail Advance Obligation Repayment Election.

Account Holders with Withdrawal Preference Exposure above $100,000 who do not resolve such exposure by making a settlement payment by 11:59 p.m., prevailing Eastern Time, on January 31, 2024 are ineligible to receive the treatment provided by making the Retail Advance Obligation Repayment Election. Any Account Holder with Withdrawal Preference Exposure greater than $100,000 who does not resolve its Withdrawal Preference Exposure by this deadline but makes

the Retail Advance Obligation Repayment Election and submits the Election Form will receive the Set Off Treatment.

**Refinancing Election:**  The election of a Retail Borrower to refinance the Retail Borrower's existing loan made by the Debtors to the Retail Borrower as part of the Borrow Program with a third-party lender.  Any and all third-party lenders are unaffiliated with the Debtors and the Debtors and the Committee do not specifically endorse any lender or lending program for this purpose.  Making this election is only an indication of interest in refinancing; the process to refinance will commence after the Effective Date and will be led by the Plan Administrator.  The Retail Borrower will be required to assign, or transfer, the Liquid Cryptocurrency distributed on account of its Retail Borrower Deposit Claim to the third-party lender, the third-party lender will be required to repay the Debtors the principal amount of the applicable loan, and the Retail Borrower will be required to repay the third-party lender on the terms the Retail Borrower agrees to with the third-party lender.  Under this treatment, the Retail Borrower will not receive a distribution of Liquid Cryptocurrency from the Debtors on the Effective Date because that cryptocurrency will be transferred to the third-party lender as part of the refinancing transaction.  The Plan Administrator will take commercially reasonable efforts following the Effective Date to complete the refinancing of the Retail Borrower's loan.  If the Debtors and/or the Plan Administrator do not ultimately reach an acceptable agreement with you and your chosen lender, you will receive the Set Off Treatment by default.

Account Holders with Withdrawal Preference Exposure above $100,000 who make the Refinancing Election must resolve their Withdrawal Preference Exposure by making a settlement payment or otherwise resolving their Withdrawal Preference Exposure with the Litigation Administrator before the refinancing process can be completed.  Because the refinancing process will begin after the Effective Date, Account Holders with Withdrawal Preference Exposure greater than $100,000 can make their settlement payments after the Effective Date.  The Plan Administrator and Litigation Administrator will have the discretion to set a deadline by which such settlement payments must be made and will communicate any such deadline to applicable Account Holders with at least two weeks' notice of such deadline.  Any Account Holder with Withdrawal Preference Exposure greater than $100,000 who does not resolve its Withdrawal Preference Exposure by this deadline but made the Refinancing Election will receive the Set Off Treatment.

**Set Off Treatment:**  The Set Off Treatment is the default treatment of Retail Borrower Deposit Claims under the Plan.  Under the Set Off Treatment, the Retail Borrower Deposit Claim will be set off or recouped against the applicable Retail Advance Obligations outstanding on the Petition Date.  The remaining amount of the Retail Borrower Deposit Claim after set off is known as the "Retail Borrower Post Set Off Claim" and will receive the applicable portion of the Unsecured Claim Distribution Consideration or Convenience Class Distribution, as applicable.  ***For the avoidance of doubt, if your Retail Borrower Deposit Claim receives Set Off Treatment, you will not have to repay your loan or owe additional amounts to the Debtors or the Post-Effective Date Debtors on account of your Retail Borrower Deposit Claim***.  You do not have to submit this Election Form to receive the Set Off Treatment on account of your Retail Borrower Deposit Claim because the Set Off Treatment is the default treatment of Retail Borrower Deposit Claims under the Plan.  If you do nothing, you will receive the Set Off Treatment on account of your Retail Borrower Deposit Claim.  If you submit this Election Form but the Election Form is blank, you will receive the Set Off Treatment on account of your Retail Borrower Deposit Claim.

**TO HAVE YOUR ELECTION APPLIED TO YOUR CLAIM, YOU MUST COMPLETE AND SUBMIT THIS ACCOUNT HOLDER ELECTION FORM VIA THE ONLINE PORTAL OF THE DEBTORS' CLAIMS, NOTICING, AND SOLICITATION AGENT, STRETTO, SO THAT STRETTO ACTUALLY RECEIVES IT ON OR BEFORE THE DEADLINE VIA THE ONLINE PORTAL AT HTTPS://BALLOTING.STRETTO.COM.**

To make an election, you <u>MUST</u>: (a) fully complete this Election Form; (b) clearly indicate your decision to make an election in **Item 2** of this Election Form; and (c) sign, date, and submit this Election Form via the Claims, Noticing, and Solicitation Agent's, Stretto's, online portal.

If you did not do so prior to voting on the Plan during the Solicitation Period, you should review the Disclosure Statement and the Plan, and the Election Form Instructions contained herein, before you make an election. You may obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

This Election Form may not be used for any purpose other than for making an election to express a preference for the Retail Advance Obligation Repayment Election or the Refinancing Election. If you would like to receive the Set Off Treatment on account of your Class 2 Retail Borrower Deposit Claim, you do not have to complete this Election Form. If you believe you have received this Election Form in error, please contact the Claims, Noticing, and Solicitation Agent *immediately*.

To have your election apply to your Retail Borrower Deposit Claim, you must complete and return this Election Form so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the deadline.

**THE DEADLINE TO SUBMIT THE ELECTION FORM IS 11:59 P.M., PREVAILING EASTERN TIME, ON JANUARY 17, 2024.**

**IF YOU DO NOTHING, YOUR RETAIL BORROWER DEPOSIT CLAIM WILL RECEIVE THE <u>SET OFF TREATMENT</u>.**

Any Election Forms that do not properly comply with the instructions provided herein will be deemed not to have been received or accepted until any defects and irregularities have been cured or waived in writing by the Debtors. For the avoidance of doubt, if a Retail Borrower submits an incomplete, untimely, inaccurate, or otherwise defective Election Form, the Retail Borrower will receive the Set Off Treatment on account of its Retail Borrower Deposit Claim by default. The Debtors have the sole discretion to determine whether an Election Form is properly completed.

**Item 1**.          **Amount of Allowed Account Holder Claims.**

**For purposes of making the election herein, Allowed Retail Borrower Deposit Claims will be valued and tabulated using the amounts set forth in the Debtors' Schedules**.  For the avoidance of any doubt, the amount of your Account Holder Claims as listed in this **Item 1** reflects the Scheduled amount of your Retail Borrower Deposit Claims in U.S. Dollars based on the price of the relevant Cryptocurrency as of the Petition Date as set forth on the Cryptocurrency Conversion Table (attached as Exhibit L to the Disclosure Statement).

| Electing Class | Description | Claim Amount[7] |
|---|---|---|
| Class 2 | Retail Borrower Deposit Claims | Retail Borrower Deposit Claim Based On Balance of Cryptocurrency Supporting Loan: ____[PREPRINTED RETAIL BORROWER DEPOSIT CLAIM BASED ON BALANCE OF YOUR CRYPTOCURRENCY SUPPORTING LOAN IN DOLLARS]_____  Retail Advance Obligation (*i.e.*, your outstanding loan amount): ____[PREPRINTED RETAIL ADVANCE OBLIGATION IN DOLLARS]____  Retail Borrower Post-Set Off Claim: ____[PREPRINTED RETAIL BORROWER POST-SETOFF CLAIM IN DOLLARS]____[8] |

**For additional discussion of the treatment and rights for Account Holder Claims under the Plan, please read the Disclosure Statement and the Plan.**

---

[7]   Calculated in U.S. Dollars as of the Petition Date utilizing the conversion rates provided in the Cryptocurrency Conversion Table; *provided*, *however*, CEL Token shall be valued as provided in Article IV.B.2 of the Plan.  The Account Holder Claims listed within this table do not account for the 5% increase in Account Holder Claims that will be applied pursuant to the Class Claim Settlement.  For a detailed discussion of the Class Claim Settlement, please read the *Order (I) Approving the Settlement by and Among the Debtors and the Committee with Respect to the Committee Class Claim and (II) Granting Related Relief* [Docket No. 3288].

[8]   This amount is the remaining Claim after your Retail Advance Obligation is subtracted from your Retail Borrower Deposit Claim.

**Item 2.**        **Optional Election for Holders of Class 2 Retail Borrower Deposit Claims Regarding the Treatment of Their Claim.**

Holders of Class 2 Retail Borrower Deposit Claims should check the applicable box below.

Please note that if you prefer to receive the Set Off Treatment, you do not need to check any box in this **Item 2** and you do not need to submit this form.  If you submit this form and do not check any box in this **Item 2**, you will receive the Set Off Treatment.  If you do not submit this form, you will receive the Set Off Treatment.

The undersigned, a Holder of a Class 2 Retail Borrower Deposit Claim against the Debtors as set forth in the chart in **Item 1**, elects as follows:

☐ **The Retail Advance Obligation Repayment Election - Full repayment of loan.**  I elect to repay the entire principal amount of my loan.

- **OR** -

☐ **The Retail Advance Obligation Repayment Election - Partial repayment of loan.**  I elect to repay only a portion of the entire principal amount of my loan, such portion not to be less than $25,000.  I understand that if I make a partial repayment of my loan and such repayment is less than $25,000, my repayment will not be honored and I will receive the Set Off Treatment by default.

- **OR** -

☐ **The Refinancing Election.**  I would like to refinance my loan.  I understand that the refinancing process will begin on or after the anticipated Effective Date of the Plan and by making this election, if the refinance transaction is consummated, I will not receive the Liquid Cryptocurrency distribution I otherwise would be entitled to receive under the Plan.

**Item 3.**        **BTC/ETH Preference Election:  Optional Election for Holders of Class 2 Retail Borrower Deposit Claims Who Made the Retail Advance Obligation Repayment Election in Item 1.**

The undersigned, a Holder of a Class 2 Retail Borrower Deposit Claim against the Debtors who elected the Retail Advance Obligation Repayment Election in **Item 2** above, elects to receive an amount of cryptocurrency equal to the amount of the loan the Retail Borrower has repaid, in the following cryptocurrency:

☐ **BTC**

- **OR** -

☐ **ETH**

For the avoidance of doubt, if you did not make the Retail Advance Obligation Repayment Election in **Item 1** above, this election does not apply to you and any election for BTC or ETH you make here will be void.

**Item 4.        Certifications.**

1. The undersigned is (a) the Holder of a Class 2 Retail Borrower Deposit Claim on account of which an election is being made or (b) the authorized signatory for an entity that is a Holder of such a Claim entitled to choose the Retail Advance Obligation Repayment Election, the Refinancing Election, or the Set Off Treatment, as applicable;

2. the undersigned previously received a copy of the pleadings explaining the proposed treatment of Retail Borrower Deposit Claims, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's election as set forth on this form is subject to the terms and conditions set forth therein and herein;

3. the undersigned acknowledges that any vote to accept or reject the Plan on account of the undersigned's Retail Borrower Deposit Claim previously submitted if the undersigned completed a Ballot and cast a vote on the Plan during the Solicitation Period will remain valid and in effect;

4. the undersigned acknowledges that any Convenience Claim Election previously submitted when the undersigned completed a Ballot and cast a vote on the Plan during the Solicitation Period will remain valid and in effect, unless such Claim was greater than $25,000 in value and the undersigned received an email from the Debtors asking the undersigned to confirm whether the undersigned intended to elect the Convenience Class Treatment;

5. the undersigned acknowledges that any election to opt out of the Class Claim Settlement previously submitted when the undersigned completed a Ballot and cast a vote on the Plan during the Solicitation Period remains in effect and is unchanged by the election herein;

6. the undersigned acknowledges that if the undersigned elects the Refinancing Election, the refinancing process will commence after the Effective Date and any refinancing of the undersigned's loan will be made with a third-party lender wholly unaffiliated with the Debtors, the Debtors do not endorse any lender or lending program for this purpose, and the Debtors do not guarantee that the undersigned's loan will be successfully refinanced;

7. the undersigned acknowledges that if the undersigned elects the Refinancing Election, but does not subsequently provide the Debtors documentation of loan approval secured from the third-party lender, the Refinancing Election will be null and void and the undersigned will receive the Set Off Treatment on account of its Retail Borrower Deposit Claim;

6

8. the undersigned acknowledges that if the undersigned elects the Retail Advance Obligation Repayment Election, the undersigned can only repay its loan during the Repayment Period beginning at 12:01 a.m., prevailing Eastern Time, on January 21, 2024 and ending at 11:59 p.m., prevailing Eastern Time, on January 26, 2024; that if the undersigned elects to make a partial repayment of its loan, such partial repayment must be no less than $25,000; that any payment received after January 26, 2024 will be refunded to the undersigned and the undersigned's Retail Borrower Deposit Claim will receive the Set Off Treatment; that any repayment of the undersigned's loan can only be made in Cash; that there may be a delay between the date the undersigned repays the loan and the date the undersigned receives the equal amount in BTC or ETH in return; and

9. the undersigned acknowledges that if the undersigned submits this Election Form but makes no election and the Election Form is blank, the undersigned will receive the Set Off Treatment on account of the undersigned's Retail Borrower Deposit Claim.

**<u>Item 5</u>.**         **Account Holder Election Form Completion Information.**

If your contact information has changed since you opened a Celsius Account, please fill out this **<u>Item 5</u>** with your current contact information.

Name of Holder:  _____

_____

Signature:  _____

Signatory Name (if other than the Holder):  _____

Title (if other than the Holder):  _____

Address:  _____

Email Address:  _____

Telephone Number:  _____

Date Completed:  _____

**PLEASE COMPLETE, SIGN, AND DATE THIS ACCOUNT HOLDER ELECTION FORM AND SUBMIT IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN.  THIS ELECTION FORM MUST BE COMPLETED, EXECUTED, AND SUBMITTED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE DEADLINE VIA THE ONLINE PORTAL AT <u>HTTPS://BALLOTING.STRETTO.COM</u>.**

**PLEASE SUBMIT YOUR ELECTION FORM PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS ELECTION FORM, THESE ELECTION INSTRUCTIONS, OR THE PROCEDURES FOR MAKING YOUR ELECTION, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT: (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS – RETAIL BORROWER ELECTION FORM" IN THE SUBJECT LINE.**

Item 6.        **Payment Instructions.**

Retail Advance Obligation Repayments can be made in Cash (US Dollars) by wire to Stretto in accordance with the information below such that they are received by Stretto during the Repayment Period beginning at 12:01 a.m., prevailing Eastern Time, on January 21, 2024 and ending at 11:59 p.m., prevailing Eastern Time, on January 26, 2024:

|                  |                                                     |
|------------------|-----------------------------------------------------|
| **Bank:**        | FLAGSTAR BANK                                        |
|                  | 1400 Broadway, 26TH FL                              |
|                  | New York, NY 10018                                  |
| **ABA Routing #:** | 026013576                                         |
| **SWIFT Code:**  | SIGNUS33                                             |
| **Account Name:** | Celsius Retail Advance Obligation Repayment Account |
| **Account #:**   | 1505274772                                           |
| **Reference:**   | [Name of Celsius Account Holder]                     |

Verbal confirmation of the wire instructions may be received by calling Stretto at the follow number:

Toll-Free: 855.423.1530

International: 949.669.5873

8

**<u>Exhibit C</u>**

**Refinancing Retail Borrower Communication**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FURTHER INSTRUCTIONS FOR REFINANCING OF RETAIL BORROWER LOANS**

The *Notice and Election Form for Repayment or Refinancing of Retail Borrower Deposit Claims* [Docket No. 4206] (the "Retail Borrower Notice") provided detailed information about the treatment of Class 2 Retail Borrower Deposit Claims, including the Refinancing Election, the Set Off Treatment, and the Retail Advance Obligation Repayment Election. As explained in the Retail Borrower Notice, Holders of Class 2 Retail Borrower Deposit Claims ("Retail Borrowers") had the opportunity to determine which treatment they wanted to receive and were required to submit an election form if they wanted to receive the Refinancing Election or the Retail Advance Obligation Repayment Election on account of their Class 2 Retail Borrower Deposit Claims (the "Election Form").[2]

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms not immediately defined have the meaning ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "Plan"), the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), or the *Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter*

You are receiving this Notice because you timely and properly submitted an Election Form indicating your interest in the Refinancing Election.  In order to refinance your loan (also known as the "Retail Advance Obligation" under the Plan) and complete the Refinancing Election, you must complete the following steps.

**First**, you must provide your consent to the Debtors to share information related to your loan/Retail Advance Obligation with the potential refinancing lender(s) of your choosing (the "Data Sharing Authorization").  To do so, you must complete and submit the Data Sharing Authorization section at the end of this Notice.

This information is necessary for the lender(s) to confirm your eligibility for their loan program and may include information about your Retail Advance Obligation, your contact information and other identifying information about you, your Claim, and your expected distribution under the Plan.  You must also select with which lender(s) we may share this information; for the avoidance of doubt, you may select more than one lender.  **You must indicate which lender(s) we can share your information with and submit the signed Data Sharing Authorization by 11:59 p.m., prevailing Eastern Time, on February 23, 2024**.  Retail Borrowers may work with any one of the following three lenders who have provided the Post-Effective Date Debtors with indicative lending terms for the refinancing of Retail Advance Obligation(s): Figure Lending, Ledn, and SALT Lending.  The Post-Effective Date Debtors understand that these lenders will reach out to any Retail Borrower who elects to share their information with such a lender.  The Post-Effective Date Debtors do not specifically endorse any one of these lenders or lending programs for this purpose, and do not attest to the reliability of any specific lender.

If you wish to work with a lender that is **not** one of the three lenders named above, the Post-Effective Date Debtors will not be able to facilitate the refinancing transaction associated with your loan.  Instead, you may arrange the refinancing of your loan without the assistance of the Post-Effective Date Debtors after you receive your distribution on behalf of your Retail Borrower Post-Set Off Claim.

**Second**, you must review and negotiate acceptable terms with your chosen lender.  Once you have entered into a new loan agreement with your chosen lender, the Post-Effective Date Debtors will work to facilitate the transaction associated with your loan.

**Third,** you will be required to review, sign, and submit the irrevocable direction letter (the "Irrevocable Direction Letter") that will be provided to you by your chosen lender.  The Irrevocable Direction Letter provides that you agree to assign, or transfer, the Liquid Cryptocurrency distributed on account of your Retail Borrower Post-Set Off Claim to the third-party lender, that the third-party lender will be required to repay the Post-Effective Date Debtors the principal amount of the applicable loan, and that you (the Retail Borrower) will be required to repay the third-party lender on the terms you agree to with the third-party lender.  If the collateral that originally supported your Retail Borrower loan was composed of BTC or ETH,

---

11 *Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 3337] (the "Disclosure Statement Order").

the Liquid Cryptocurrency that will be transferred to the third-party lender will be of the same type and composition of cryptocurrency as the collateral that originally supported your Retail Borrower loan. If the collateral that originally supported your Retail Borrower loan was composed of coins other than BTC/ETH, the collateral that will be transferred to the third-party lender will be in ETH. While the type and composition of the collateral will be transferred as described herein, the quantities of the underlying cryptocurrencies will be reduced based upon the treatment set forth in the Plan. **You must reach a final agreement with your chosen lender and email a signed Irrevocable Direction Letter to Stretto at CelsiusRefinancing@stretto.com by 11:59 p.m., prevailing Eastern Time, on March 15, 2024. Please return the signed Irrevocable Direction Letter using the email address to which this Notice was sent. This will help to confirm your identity with Stretto and ensure your transaction is processed safely and efficiently.**

For the avoidance of doubt, if you do not reach a final agreement with your chosen lender and email a signed Irrevocable Direction Letter to CelsiusRefinancing@stretto.com by 11:59 p.m., prevailing Eastern Time, on March 15, 2024, *your Refinancing Election will be considered incomplete, and your Retail Borrower Deposit Claim will be treated in accordance with the Set Off Treatment.*[3]

*Finally*, if you made the Refinancing Election *and* have a Withdrawal Preference Exposure above $100,000, you must make a settlement payment or otherwise resolve your Withdrawal Preference Exposure with the Litigation Administrator. (If you have a Withdrawal Preference Exposure of $100,000 or less, you may disregard this step.) Further information and instructions for resolving your Withdrawal Preference Exposure, including wire instructions for making a settlement payment, were previously emailed to Account Holders and provided in the *Notice to Account Holders Regarding Forthcoming Communications About Settlements of Withdrawal Preference Exposure Pursuant to the Account Holder Avoidance Action Settlement* [Docket No. 4207]. **The deadline by which you must resolve your Withdrawal Preference Exposure is 11:59 p.m., prevailing Eastern Time, on March 15, 2024.** For the avoidance of doubt, if you are an Account Holder who made the Refinancing Election and have Withdrawal Preference Exposure greater than $100,000 and you do not resolve your Withdrawal Preference Exposure by this deadline, you will receive the Set Off Treatment on account of your Class 2 Retail Borrower Deposit Claim. The Litigation Administrator may be contacted at celsiuslitigationadmin@m3-partners.com. Please keep in mind that the Litigation Administrator is expecting to receive a significant number of inquiries and will respond as soon as reasonably practicable.

The deadlines for completing the refinancing process are outlined below:

---

[3]   Under the Set Off Treatment, the principal amount of the loan owed to the Debtors will be set off or recouped against the applicable Retail Borrower Deposit Claim. The Retail Borrower will then retain the proceeds of its loan and have the associated Retail Borrower Deposit Claim reduced by the amount of the Retail Advance Obligation outstanding on the Petition Date. The remaining amount of the Retail Borrower Deposit Claim (*i.e.*, the "Retail Borrower Post-Set Off Claim") will receive the Unsecured Claim Distribution Consideration (*i.e.*, its pro rata portion of (1) Liquid Cryptocurrency, (2) MiningCo Common Stock, (3) Illiquid Recovery Rights, and (4) Litigation Proceeds) or Convenience Class Distribution, as applicable. For the avoidance of any doubt, if a Holder's Retail Borrower Deposit Claim receives the Set Off Treatment, such Holder will not owe additional amounts to the Debtors on account of its Retail Advance Obligation.

| Action Required | Deadline |
|---|---|
| Submit a signed Data Sharing Authorization and select lender(s) to whom information can be provided. | 11:59 p.m., prevailing Eastern Time, February 23, 2024 |
| Reach a final agreement with your chosen lender and email a signed Irrevocable Direction Letter to Stretto at CelsiusRefinancing@stretto.com. | 11:59 p.m., prevailing Eastern Time, March 15, 2024 |
| If applicable, resolve Withdrawal Preference Exposure by making a settlement payment or otherwise resolving Withdrawal Preference Exposure with the Litigation Administrator. | 11:59 p.m., prevailing Eastern Time, March 15, 2024 |

If the Post-Effective Date Debtors and/or the Plan Administrator do not ultimately reach an acceptable agreement with you and your chosen lender, you will receive the Set Off Treatment by default.

The Post-Effective Date Debtors and/or the Plan Administrator will implement refinancing transactions on a rolling basis for Retail Borrowers who successfully complete the steps outlined above.

If you no longer wish to make the Refinancing Election and opt to instead receive the Set Off Treatment, please inform the Post-Effective Date Debtors at CelsiusCreditorQuestions@kirkland.com.

Refinancing your loan with a third-party lender entails risk that could include loss of the cryptocurrency supporting your loan due to the financial conditions or internal operations/security protocols of the lender that you select. Retail Borrowers interested in working with a third-party lender to refinance their outstanding loan obligations are encouraged to thoroughly explore the offerings of the lenders listed above (as well as any other offerings that may be available via other lenders) to make an informed decision that accounts for all risks associated with transferring your cryptocurrency to a new lender. The Post-Effective Date Debtors are not endorsing, sponsoring, or recommending that any Retail Borrower enter into an agreement with any specific lender or refinance their Retail Advance Obligation. Other than the transactions described in the Plan, the Post-Effective Date Debtors do not have any agreement with any of the lenders mentioned in this Notice. Other than the repayment of the Retail Advance Obligation to the Debtors under the Plan, the Post-Effective Date Debtors do not receive any consideration from these lenders or any other party on account of any agreement between a Retail Borrower and any refinancing lender.

The tax consequences of the Refinancing Election are complicated and subject to significant uncertainty. Retail Borrowers are urged to consult Art.XII of the Disclosure Statement for a general discussion of certain tax issues related to the Refinancing Election. The Disclosure Statement can be accessed for free at https://cases.stretto.com/Celsius. Each Retail Borrower is urged to consult its own tax and other applicable counsel or advisor regarding the tax consequences of the Refinancing Election. The Post-Effective Date Debtors cannot and are not offering any tax advice.

The Disclosure Statement, Plan, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

### **Data Sharing Authorization**

[Stretto to add checkbox in form]

I hereby authorize the Debtors to share information related to my Claim with the lender(s) I identify below, and I authorize the lender(s) selected below to contact me directly. I acknowledge that this information includes my contact information, information about my loan ("Retail Advance Obligation"), my expected distribution under the Plan, and other information related to my identity.

Lenders:   [Stretto to add checkboxes for each of these in form]

- o Figure Lending, LLC and Figure Markets Credit LLC
- o Ledn Cayman SEZC Inc
- o SALT Blockchain Inc

If your contact information has changed since you opened a Celsius Account, please fill out this section with your current contact information.

Name of Holder: _____

_____

Signature: _____

Signatory Name (if other than the Holder): _____

Title (if other than the Holder): _____

Address: _____

Email Address: _____

Telephone Number: _____

Date Completed: _____

New York, New York
Dated:  February 14, 2024

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*