**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al*,<br><br>    Post-Effective Date Debtors. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 22-10964 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING THE APPLICATION
OF *PRO SE* CREDITOR LAURA FALLER MCNEIL
<u>FOR ALLOWANCE OF CLAIM FOR SUBSTANTIAL CONTRIBUTION</u>**

*A P P E A R A N C E S:*

KIRKLAND & ELLIS LLP
*Counsel to the Post-Effective Date Debtors*
601 Lexington Avenue
New York, New York 10022
By:   Joshua A. Sussberg, Esq.

333 West Wolf Point Plaza
Chicago, Illinois 60654
By:   Patrick J. Nash, Jr., Esq.
      Ross M. Kwasteniet, Esq.
      Christopher S. Koenig, Esq.
      Dan Latona, Esq.

Laura Faller McNeil
*Pro se Creditor*

Wesley Chang
*Pro se Creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the contested application (the "Application," ECF Doc. # 7755) of *pro se* creditor Laura Faller McNeil in the above-captioned chapter 11 cases of the post-effective date debtors (the "Post-Effective Date Debtors" and, prior to the Effective Date, the

"Debtors").[1]  The Application seeks entry of order (i) allowing her administrative expense claim in the amount of $206,300.00 for her asserted substantial contributions and (ii) directing the payment of such amount from the Post-Effective Date Debtors' estates.[2]  (Application ¶ 15.) Annexed to the Application are detailed time records supporting the amount sought as Exhibit A.

On November 6, 2024, the Post-Effective Date Debtors filed an objection to the Application, opposing Ms. McNeil's requested relief (the "Objection," ECF Doc. # 7785).

For the reasons discussed below, the Court **DENIES** the Application.

## I.    BACKGROUND

### A.  Relevant Case History

Less than two years after the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code before this Court on July 13, 2022 (the "Petition Date"), the Debtors' confirmed Plan went effective on January 31, 2024 (the "Effective Date").  (*See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions*, ECF Doc. # 4298.)  Following the passage of the Effective Date, however, a dispute arose over the Debtors' initial distribution process that contemplated providing certain Liquid Cryptocurrency distributions to the 100 largest corporate creditors (each, a "Corporate Creditor") who affirmatively notified the Debtors they would prefer a Liquid Cryptocurrency distribution.  The nature of and events surrounding the dispute are set forth in greater detail in the Court's *Memorandum Opinion Granting in Part and Denying in Part Joint Motion of Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and*

---

[1]  Defined terms used but not defined herein shall have the meanings ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* (the "Plan," ECF Doc. # 4289).

[2]  *Pro se* creditor Wesley Chang filed a letter (the "Chang Letter," ECF Doc. # 7761) on October 20, 2024 in support of the Application, including, among other things, requesting that the Court "review her claim in the [same] manner . . . [as] other professionals being awarded compensation fees."  (Chang Letter at 1.)

2

*Coinbase Inc. and (I) Authorizing Supplemental Distribution to Eligible Corporate Creditor Distributions, (III) Denying Request for $1.5 Million Payment to Ad Hoc Committee of Corporate Creditors, and (IV) Approving Related Relief* (the "Supplemental Distribution Opinion," ECF Doc. # 7726).

The dispute was ultimately resolved following a two-day mediation with the resolution embodied in a settlement term sheet (the "Settlement Term Sheet" and the settlement it reflects, the "Settlement") among the Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and Coinbase Inc. ("Coinbase"). Under the terms of the Settlement, eligible Corporate Creditors would receive a "supplemental" distribution calculated to provide such creditor with the amount of BTC and ETH that they would have received under the Plan had they been slated for a distribution in Liquid Cryptocurrency on the Effective Date, or the Cash equivalent thereof using then-prevailing market prices. (Supplemental Distribution Opinion at 8.) On October 3, 2024, the Court approved the Settlement in part. (*See id.*)

B. **The Application**

Ms. McNeil seeks allowance of an administrative expense claim in the amount of $206,300.00, a request predicated on her involvement in the ad hoc committee of corporate creditors (the "Ad Hoc Committee of Corporate Creditors") and her assistance with the filing of the *Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* (together with all joinders thereto, the "Corporate Creditor Motion," ECF Doc. # 4911). (*See* Application ¶¶ 3, 15 & Ex. A.) She asserts that her contributions spanning March through September 2024 were "instrumental" in bringing to light what she deems the "inequitable treatment of [C]orporate [C]reditors." (*Id.* at 1; *see also id.* ¶¶ 1–4, 7, 11–12.)

3

In general, Ms. McNeil characterizes her efforts as being both "substantial and necessary to . . . the successful resolution we have today of equitable distributions," which include the mobilization of other Corporate Creditors. (*Id.* ¶ 6.) She notes that her efforts are not duplicative of work the Sarachek Law Firm performed as counsel to the Ad Hoc Committee of Corporate Creditors and highlights the "large role" she played in mediation preparations and the negotiation of the Settlement Term Sheet. (*Id.* ¶ 7.)

In her Application, Ms. McNeil argues that she is entitled to a claim for substantial contribution as she is an experienced "financial and investment professional" whose expertise "other creditors . . . relied on." (*Id.* ¶ 11.) In accordance with this, Ms. McNeil believes she is entitled to payment for her time at a rate of $400 per hour, which she deems "reasonable." (*Id.* ¶ 14.) She includes, as part of the Application, detailed time records to support the $206,300.00 she seeks. (*See id.*, Ex. A.)

### C. The Post-Effective Date Debtors' Objection

The Post-Effective Date Debtors argue that the Application should be denied as Ms. McNeil, acting out of her own self-interests, has failed to satisfy her burden of showing that she is entitled to compensation under section 503(b) of the Bankruptcy Code. (Objection ¶¶ 1, 5.) Any benefit she conferred on the administration of these chapter 11 cases was merely "incidental," and she has otherwise failed to demonstrate any actual or significant benefit that resulted from her actions. (*Id.* ¶¶ 8–11, 14.) Lastly, the Post-Effective Date Debtors argue that Ms. McNeil has also failed to establish that her requested compensation is "reasonable" as she was not retained by the Ad Hoc Committee of Corporate Creditors as a financial professional and her invoices do not reflect that she performed such work. (*Id.* ¶ 15.)

## II.     LEGAL STANDARD

Sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code permit, in certain circumstances, the payment of fees for professional services rendered by an attorney or an accountant to entities that have made a "substantial contribution to a case." *In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 294 (S.D.N.Y. 2014). These provisions provide, in relevant part, that:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including — . . .
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . .
> >
> > > (D) a creditor . . . or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; . . .
> >
> > (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. §§ 503(b)(3)(D)–(b)(4).

While the term "substantial contribution" is not defined in the Bankruptcy Code, courts have recognized that a substantial contribution occurs "when efforts have led to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders." *In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014) (citing *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008)). Ultimately, the inquiry is a factual matter, and the movant bears the burden to demonstrate it has

5

made a substantial contirbution in a case by a preponderance of the evidence. *In re Bayou Grp., LLC*, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010); *Dana Corp.*, 390 B.R. at 108.

In determining whether an applicant satisifes the substantial contribution test, courts in the Second Circuit consider a number of factors, including: (i) whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; (ii) whether the services conferred a direct, significant and demonstrably positive benefit; and (iii) whether the services were duplicative of services performed by others. *Id.* (citing *In re Best Prods. Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994)); *AMR Corp.*, 2014 WL 3855320, at *1 (same); *see also In re Synergy Pharms. Inc.*, 621 B.R. 588, 609 (Bankr. S.D.N.Y. 2020) ("To qualify for administrative priority status under section 503, the contribution must be (i) substantial, (ii) directly benefit the estate—and not merely a class of creditors or interest holders—and (iii) not duplicative of services performed by others.").

On the whole, a successful showing of substantial contribution is difficult to attain, and any benefit received by an estate must be "more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Id.* (quoting *Dana Corp.*, 390 B.R. at 108). Therefore, compensation on account of substantial contribution is only typically "reserved for those rare and extraordinary circumstances when [a] creditor's involvement [has] truly enhance[d] the administration of the estate." *In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 727 (Bankr. E.D.N.Y. 1996) (citing *Best Prods.*, 173 B.R. at 865); *Synergy Pharms.*, 621 B.R. at 621 ("A substantial contribution award is made only for extraordinary creditor actions, on those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate." (citation omitted)). Consistent with this, "services that warrant a substantial contribution award 'generally take the form of constructive contributions in key

6

reorganizational aspects, when **but for** the role of the creditor, the movement towards final reorganization would have been substantially diminished.'" *AMR Corp.*, 2014 WL 3855320, at *2 (emphasis in original) (quoting *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989)).

### III.    DISCUSSION

In claiming a substantial contribution to these chapter 11 cases, Ms. McNeil relies upon her "instrumental" contributions to resolving the dispute concerning the treatment of Corporate Creditors, including, *inter alia*, bringing the issue to light in the first instance, working in "partnership" with the Sarachek Law Firm, and serving as the chairperson of the Ad Hoc Committee of Corporate Creditors. (Application at 1; *id.* ¶ 7.) However, Ms. McNeil has not persuaded the Court that her actions were driven and motivated by interests extending beyond her own. She also fails to establish that her actions conferred an actual and substantial benefit and were not duplicative of the efforts of others.

**A. Ms. McNeil Acted Primarily Out of Her Own Self-Interest**

At the outset, Ms. McNeil indicates in the Application that she "represents Sheri and Bernard Jacob Faller . . . and their four retirement accounts" that are comprised of BFaller RD LLC, BFaller ROTH RD LLC, SFaller TRD LLC, and SFaller RD LLC (collectively, the "Faller Creditors"). (Application at 1.) The Faller Creditors are legal entities that Ms. McNeil's family members own and were initially among the 100 Corporate Creditors afforded an opportunity to elect to receive distributions in Liquid Cryptocurrency or Cash. (Objection ¶ 9.) Each of the Faller Creditors elected to receive their distributions in Cash. (*Id.*)

The value of BTC and ETH, however, materially increased after the Effective Date and after BFaller RD LLC's receipt of its Cash distribution, and it was under these circumstances that

7

Ms. McNeil filed her first letter on behalf of the Faller Creditors (the "February Letter," ECF Doc. # 4365) that brought this issue to light. (*See generally* February Letter.) The February Letter argued that distributions in Cash were "unfair" and inequitable given the notable increase in cryptocurrency prices. (*Id.* at 1.) Her subsequent actions, which she characterizes as efforts on behalf of all Corporate Creditors, remained consistent with the sentiments expressed in the February Letter on behalf of the Faller Creditors—namely, to ensure that the Faller Creditors did not lose out on value as a result of their Cash distribution election. *See, e.g.*, *AMR Corp.*, 2014 WL 3855320, at *2 (finding that the first factor of the substantial contribution test was not satisfied since the applicant's actions were consistent with the protection of the applicant's own economic interests, which, if successful, would have benefitted his position as a shareholder); *In re KiOR, Inc.*, 567 B.R. 451, 459 (D. Del. 2017) (finding that "activities that **primarily further the movant's self-interest** do not suffice . . . and expected or routine activities in a chapter 11 case—such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents—generally do not constitute a substantial contribution." (emphasis added) (citations omitted)). Ms. McNeil's efforts were consistently aimed at protecting the Faller Creditors' economic interests.

Indeed, the Faller Creditors, having elected to receive distributions in Cash, materially benefitted from the Settlement and the supplemental distribution and option to elect to receive a distribution in Liquid Cryptocurrency contemplated thereunder. In other words, Ms. McNeil's actions served her own self-interests and she stood to personally benefit if the dispute over distributions to Corporate Creditors was successfully resolved.

### B. No Actual and Significant Benefit to the Post-Effective Date Debtors' Estates

Ms. McNeil has also failed to establish an actual and significant benefit to the administration of these chapter 11 cases. "Mere conclusory statements regarding the causation or provision of a substantial contribution are insufficient to establish that a substantial contribution has been made." *AMR Corp.*, 2014 WL 3855320, at *3 (quoting *In re Asarco*, No. 05-21207, 2010 WL 3812642, at *8 (Bankr. S.D. Tex. Sept. 28, 2010)). While the Court acknowledges Ms. McNeil's service as chairperson of the Ad Hoc Committee of Corporate Creditors, the negotiation of the Settlement was a product of the efforts of the Ad Hoc Committee of Corporate Creditors as a whole with the Post-Effective Date Debtors and Coinbase as opposed to the sole individual efforts of Ms McNeil alone. (*See* Supplemental Distribution Opinion at 5 (recognizing the Settlement as the "culmination" of the efforts of the Post-Effective Date Debtors, the Ad Hoc Committee of Corporate Creditors, and Coinbase).)

Indeed, "[e]xtensive participation alone is insufficient to justify an award." *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997). Rather, compensation is limited solely to "extraordinary actions" that result in "actual and demonstrable benefit" to the estate, creditors, and where relevant, stockholders. *Id.* at 445–46. Here, Ms. McNeil's efforts, which the Post-Effective Date Debtors acknowledge are "laudable," do not rise to the "extraordinary" level necessary for a finding of substantial contribution. Ms. McNeil has done nothing more than show an incidental benefit to the administration of these chapter 11 cases, which alone is insufficient to establish that a substantial contribution has been made. *See Synergy Pharms.*, 621 B.R. at 609 (noting that any benefit received by the estate must be more than incidental to an applicant's pursuit of its own interests). Ms. McNeil has not "demonstrate[d] a 'credible

9

connection' between [her] efforts and the reorganization process." *Granite Partners*, 213 B.R. at 447.

### C. Duplicative Efforts

Ms. McNeil also fails to satisfy the third and final factor for a substantial contribution claim, which considers whether an applicant's actions are duplicative of the efforts of others in the case. She indicates only that her "time and service . . . [were] not done in duplication to [the Sarachek Law Firm]." (Application ¶ 7.) However, Ms. McNeil does not address how her actions were not duplicative of the efforts of other members of the Ad Hoc Committee of Corporate Creditors as well as the parties to the Settlement, including counsel to the Post-Effective Date Debtors and Coinbase, who also participated in the mediation and collectively worked towards a consensual resolution. The "proper administration of [a] case as a whole rarely contemplates individual creditors or even unofficial committees contributing to the case." *Bayou Grp.*, 431 B.R. at 561. Thus, third parties who generally only represent their clients' interests and indirectly contribute to a case's administration, as with Ms. McNeil, "normally would not be compensated by the estate on an administrative priority basis." *Id.*

### D. Reasonableness of Requested Fees Does Not Need to be Reached

Once a substantial contribution has been demonstrated, the applicant must then establish that the requested fees are "reasonable . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title," and that the expenses are "actual [and] necessary." 11 U.S.C. § 503(b)(4); *see also Bayou Grp.*, 431 B.R. at 566. As the Court has found that Ms. McNeil has not established a substantial contribution, the Court need not address the reasonableness of her requested compensation.

10

## IV.  CONCLUSION

For the reasons discussed, the Application is **DENIED**.

**IT IS SO ORDERED.**

Dated:   November 12, 2024
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge