UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al*,<br><br>          Post-Effective Date Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG) |

### ORDER DENYING MOTION OF CERTAIN
### RETAIL BORROWERS FOR HEARING AND OTHER RELIEF

Pending before the Court is the *Motion for Hearing and Other Relief* (the "Motion," ECF Doc. # 7771) of Christian Funck, Darius Gheorghe, David Heiliger, and Thomas Chernaik (collectively, the "Movants") in the above-captioned chapter 11 cases of the post-effective date debtors (the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors").[1] Each of Andrew Woodhouse, Oliver Pausch, Chye Teck Tan, Miguel Ángel Osuna Cifuentes, Jonathan Ramirez, Brian Barnes, Joshua Scott Clark, and Robert Cunnion join in the Motion (collectively, the "Joinders").[2] (*See* ECF Doc. ## 7791, 7792, 7793, 7794, 7795, 7798, 7799, and 7800.) On November 6, 2024, the Post-Effective Date Debtors filed an objection to the Motion (the "Objection," ECF Doc. # 7789), requesting that the Court deny it. On November 11, 2024, the Movants filed a reply to the Objection (ECF Doc. # 7805).

The Motion is an extensive 38-page document containing a series of allegations against the Post-Effective Date Debtors and Plan Administrator that, at their core, center around a singular issue: whether the pricing for the repayment of Retail Advance Obligations should be

---

[1]  Defined terms used but not defined herein shall have the meanings ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* (the "Plan," ECF Doc. # 4289).

[2]  The Joinders appear to be identical and rearticulate the allegations set forth in the Motion.

priced as of January 31, 2024 (the "Effective Date") or the day of the repayment. (*See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions*, ECF Doc. # 4298.) As a result, the Movants allege, among other things, that the Post-Effective Date Debtors have not implemented the Plan in accordance with its terms and submit that the Plan Administrator is in breach of its fiduciary duties under the Plan. (*See* Motion ¶¶ 4, 6, 9, 12, 19(x).) The only relief the Motion seeks, however, is authorization to pursue discovery on (i) the Debtors' use of cryptocurrency it held during these chapter 11 cases, and (ii) the Debtors, Post-Effective Date Debtors, and Plan Administrator's (A) management of cryptocurrency held and the process of calculating and implementing distributions to all classes of creditors; (B) sales, transfers, or purchases of cryptocurrency and process for calculating and distributing the proceeds to "various classes"; (C) management of the repayment and refinancing of Retail Advance Obligations, including receipts for conversion of such repayments into cryptocurrency; (D) communications relating to the "refinance treatment under the Plan"; (E) review and approval process surrounding the election form for Retail Borrowers (the "Election Form"), including how many were denied and set-off; (F) communications relating to the Election Form, treatment of Retail Borrower Claims, any calculations or formulas used to determine Retail Borrower Claim values and initial distributions, and the 5% "incentive" offered; and (G) alleged "unexplained delays" and failure to properly reserve amounts to address all Retail Borrower Claims at "Effective Date pricing." (Motion ¶ 70(a)–(k).) Finally, the Movants request that the Court schedule a hearing to address the Plan Administrator's "creation and implementation of the formula" used in connection with the refinancing of Retail Advance Obligations. (*Id.* ¶¶ 9, 70(l).)

The Motion is, in essence, a request for discovery under rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), which provides that "[o]n motion of any party in interest, the court may order the examination of any entity." FED. R. BANKR. P. 2004(a). Such an examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . ." FED. R. BANKR. P. 2004(b). The rule's permissive language provides courts with "significant discretion" to grant requests for examinations. *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001).

In granting a Rule 2004 examination request, the Court is required to make a finding of good cause for the examination. *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004). Good cause is shown if the examination sought is "necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *Id.* (citations omitted); *see also In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (stating the same). In addition, the court must weigh the relevance of the discovery against the burden it will impose on the producing party. *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("Rule 2004 requires that we balance the compelling interests of the parties, weighing the relevance of and necessity of the information sought by examination." (citation omitted)); *see also In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party]."). Rule 2004 cannot be used for "purposes of abuse or harassment," and it "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

Here, the Movants seek broad categories of discovery relating to all classes of creditors and on topics, including the Debtors' use of cryptocurrency throughout their chapter 11 cases, that are overly expansive and not tailored to the allegations set forth in the Motion. While the Court need not address the merits of the Movants' allegations at this time as the Motion only seeks authorization to pursue discovery, the Court notes that resolution here likely requires nothing more than a close examination of the language of the Plan and related documents without the need to resort to discovery practice. Indeed, the Objection makes a persuasive case that the Post-Effective Date Debtors and the Plan Administrator are in compliance with the terms of the Plan by its plain language.

Moreover, the Post-Effective Date Debtors indicate that they have also engaged with Movants prior to filing of the Objection to discuss the Movants' discovery requests, providing them with documents relating to their individual loans and refinancing. (Objection ¶¶ 8, 37.) Specifically, the Post-Effective Date Debtors have given Movants a spreadsheet with detailed calculations of the amounts transferred to the Movant's third-party lender on account of their Claims, copies of the Direction Letters that each of the Movants signed, and each ticket and other correspondence from the Movants with Celsius. (*Id.* ¶ 37.) In light of the foregoing, permitting the Movants to proceed with their requested discovery is unnecessary and, if anything, would impose an undue burden on the Post-Effective Date Debtors and the Plan Administrator.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. The Motion is **DENIED**.

2. The Post-Effective Date Debtors and Movants shall provide a status report by January 7, 2024, one week prior to the next scheduled omnibus hearing, to update the Court on

4

whether the parties have reached resolution of the issues highlighted in the Motion. The Court will determine at that time whether a hearing will be necessary.

**IT IS SO ORDERED.**

Dated: November 12, 2024
      New York, New York

                                                      **/s/ Martin Glenn**
                                                      MARTIN GLENN
                                        Chief United States Bankruptcy Judge