**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11 Case No. 22-10964 (MG)(Jointly Administered) |

**JOINDER OF ROHIT KAMBLE IN SUPPORT OF**
**MOTION FOR HEARING AND OTHER RELIEF**

TO:    THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE

Rohit Kamble hereby joins the Motion Seeking Entry of An Order for hearing and other relief [ECF No. 7771] (the "Motion"). In support of their Joinder, which states as follows:

**STATEMENT**

1. On January 31, 2024, the Post-Effective Date Debtors emerged from chapter 11 and commenced distributions under the Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction), dated January 29, 2024 (Docket #4289) (hereinafter referred to as the "Plan").

2. I borrowed money from Debtor CELSIUS NETWORKS LLC using cryptocurrency as collateral for loans and as a result I am a Creditor in the Borrower class of this proceeding. I wish to support and join the Motion Seeking Entry of An Order for hearing and other relief [ECF No. 7771].

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

3. Under the Retail Borrower Settlement Agreement, Distributions were to receive Treatment on the Effective Date, as outlined in the Settlement Agreement. That Treatment called for distributions to be made at the mutually agreed Effective Date Pricing set on January 16, 2024 and to be made as soon as possible after the "Effective Date" of January 31. However, distributions were not made timely, were significantly delayed by the actions of the Post-Effective Date Debtors, and those distributions were not made at Effective Date Pricing, as called for under The Plan and its supporting documents.

4. The Plan Administrator seems to have miscalculated and underestimated sufficient reserves to settle outstanding Creditor claims, in particular with respect to Borrower claims where Retail Advance Obligations were not included in the full claim value calculations and sufficient reserves of cryptocurrency were not withheld to settle those portions of Borrower Claims, causing Borrowers who refinanced or repaid to essentially receive the Set-Off Treatment. Furthermore, no statements or accountings have ever been provided to Creditors to be able to verify how distributions were calculated or that their claim values were properly accounted for.

5. The Plan Administrator appears to have miscalculated Retail Borrower Deposit Claim Values under the Class Claim Settlement Agreement, representing an underpayment of Distribution claims where Borrowers were not given their additional 5% of total claim value allocation with initial distributions, as called for under the Plan and as agreed upon in the Class Claim Settlement Agreement, representing a total value of approximately $38.275 Million that was withheld from initial distributions without any explanation; and

6. Retail Advance Obligations were not honored based on the Effective Date prices, as called for under the Plan and as agreed upon by the Debtors and the Ad Hoc Group of Borrowers; and

7. Notice was sent on January 9th, and was not sent at least 30 days prior to the Effective Date; and

8. Statements or accountings of individual claims, treatments, distributions and/or sales of cryptocurrency that were held as Creditor Assets have never been provided; and

9. The Administrator did not use commercially reasonable efforts to structure the transaction in a tax efficient manner; and

10. Furthermore, due to the Plan Administrator's maladministration of the plan and mishandling of creditor assets, the Corporate Creditors Settlement has resulted in an approximately $82 Million redistribution to Corporate Creditors from the contingency fund. This distribution was to address both Plan Administrator's errors in omitting the 1,700 Corporate Creditors who were not in the Top 100 and to address the difference in value between the Effective Date pricing of cryptocurrency that Plan Administrator wrongfully chose to sell the Creditor cryptocurrency assets at and the amounts that needed to be provided to Corporate Creditors under their Settlement. This ultimately further reduces the potential claim recoveries for all Borrow and Earn Creditors in future distributions, all due to a breach of Fiduciary Duties resulting from Plan Administrators miscalculations and unreasonable sale of cryptocurrency assets in a rapidly appreciating market ahead of the Effective Date.

10.11.2024

Respectfully submitted,

Rohit Kamble