Laura Faller McNeil
*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |
|---|
| **In re** |
| **CELSIUS NETWORKS LLC, *et al.*,** |
| **Debtors.** |

Chapter 11

**Case No. 22-10964 (MG)**

### REPLY TO POST-EFFECTIVE DATE DEBTORS' OBJECTION TO LAURA FALLER MCNEIL'S APPLICATION FOR ALLOWANCE OF CLAIM FOR SUBSTANTIAL CONTRIBUTION TO THE DEBTORS' ESTATES

Laura Faller McNeil respectfully submits this reply to the *Post-Effective Date Debtors' Objection to her Application for Allowance of Claim for Substantial Contribution to the Debtors' Estates (Docket No. 7785).*

#### Preliminary Statement

1.      Your Honor, the counsel to the Post-Effective Date Debtors will be able to bill their time associated with trying to block the issue of inequitable distributions and defend their position on why they treated corporate creditors unfairly. Additionally, counsel will be able to bill for their time spent drawing this matter out, and ultimately their time spent mediating and coming to an equitable solution. This will likely result in hundreds of billable hours to the estate, including the time they spent to file their ten page objection to my *Application for Allowance of Claim for Substantial Contribution* (Docket No. 7755). It should be noted that the matter of

inequitable treatment of corporate creditors became an issue because of failures on the part of the

Post-Effective Date Debtors. If it hadn't been for those failures, this issue would not have risen

and I would not have submitted an application for allowance of claim. It was the Post-Effective

Date Debtors who originally created unequal treatment by dividing up corporate creditors. It's

ironic that the Post-Effective Date Debtors' counsel will be compensated for all the time spent on

this matter, when it is their actions and failures that caused this issue in the first place.  It is also

ironic that they now object to my application seeking compensation for my persistent and

substantial efforts to remedy the injustice that they caused. Their objection feels like an attempt

on their part to deflect from the problem they caused.

2.      My significant contributions and services are what brought this issue to the

attention of the court, and it was my substantial efforts that were instrumental in pushing this

issue forward to its eventual resolution. My efforts were vital, valuable, and necessary for

corporate creditors to receive equitable treatment, and those things should be kept in mind when

considering the reasons why my application should be treated in the same manner as other

professionals receiving compensation.

### Response to Post-Effective Date Debtors' Objection

**A.      My efforts were intentional and consistently done for the benefit of <u>all</u>
corporate creditors.**

3.      The Post-Effective Date Debtors' stated, "Ms. McNeil Acted Primarily in Her Own

Self Interest, and Any Benefit to the Administration of These Chapter 11 Cases Is Incidental."

Your Honor, the benefit to the Administration of this Chapter 11 case was deliberate and

intentional — not incidental. My efforts were not done purely out of self interest as evidenced by how I continually looked out for all corporate creditors, advocated for all corporate creditors, and tried to educate and involve all corporate creditors. When I initially wrote to the court in March of 2024 (Docket No. 4719), I spent many hours reaching out to corporate creditors and educating them about the inequities that had been placed upon them. Those hours of explaining, communicating, and education resulted in over 80 corporate creditors signing their names to that letter.

4.      After that letter was submitted to the court, I spoke in court on behalf of all those creditors, and stressed the inequity of the matter to all corporate creditors. If those corporate creditors had had legal representation at that point in time, it would have been their legal counsel drafting that letter, communicating the inequities, submitting the letter to the court, and then speaking in court. Most of those corporate creditors were individual investors, who would have been hard pressed to be able to pay for legal counsel at that point in the proceedings. Those creditors relied on me to perform these functions that legal counsel would have provided to them, if they had had legal counsel at that time.

5.      When I filed a Motion for Discovery (*Pro Se*) in May of 2024 (Docket No. 4866) the intent was to uncover evidence to support how all corporate creditors had been treated unjustly. After that Motion for Discovery was filed, I started working on a motion for further distribution with Sarachek Law Firm ("SLF") (Docket No. 4911, filed in June of 2024). SLF and I always had the goal of making this equitable for all. **To highlight one example of this, there was an opportunity where the Faller Creditors could have negotiated a settlement, but SLF and I felt it was imperative that we make this right and equitable for ALL corporate creditors.**

We were never solely focused on the Faller Creditors or the accounts we managed. I spent a great deal of time working to help 43 others file joinders alongside our motion. I also spent a lot of time communicating with many corporate creditors in an effort to educate them, advocate for them, and keep us all united so we could all get the visibility to get this situation rectified.

6.      The creation of the Ad Hoc Committee of Corporate Creditors was an effort to include others directly in the mediation and to be representative of the entire class of creditors, and not simply look at this from the perspective of the Faller Creditors. I spent a great deal of time reaching out to creditors to form this committee, and as the Chairperson, I also spent many hours as the liaison between corporate creditors, the committee members, and SLF. As SLF and the committee will tell you, we advocated for what was fair and equitable for all, and none of this was incidental. The benefits sought for all corporate creditors were evident from as early as March 2024, and were always intentional.

7.      In response to the Post-Effective Date Debtors comments on the Faller Creditors affirmatively electing to receive Cash, it should be pointed out that corporate creditors should have never been put in this position and should have not been treated differently. Therefore, whether corporate creditors elected cash or cryptocurrency is a moot point. However, for the purpose of responding to the Post-Effective Date Debtors, I will explain why the Faller Creditors felt they had to make that decision. In January of 2024, the Post-Effective Date Debtors sent emails to corporate creditors with only vague information that they "may" have an opportunity to receive cryptocurrency through Coinbase, and gave corporate creditors only three days to respond. Additionally, there was no feasible way for corporate creditors to ask questions and receive responses within the very limited timeframe that the creditors were given. Corporate

creditors had no way of knowing if they were in the top 100 when having to make this decision.

Furthermore, corporate creditors were initially not told that the $1,000 Coinbase Prime setup fee

would be waived. Based on all of those limitations and constrictions, as the fiduciary

representative to the Faller Creditors, I advised them to select cash because of the uncertainties

associated with attempting to open new accounts with Coinbase. It should be noted, that prior to

that time the Faller Creditors had experienced significant difficulties when trying to set up

corporate accounts with Coinbase. The Faller Creditors assumed receiving cash would be faster,

easier, and cheaper than opening new accounts with Coinbase. The Faller Creditors also assumed

that cash would be distributed immediately or shortly after being sold, and that creditors would

then have the ability to repurchase cryptocurrency using those funds with existing accounts. Cash

should have been the equivalent option, and if issued right after the cryptocurrency holdings were

sold, it would have been. However, the delays made this option inequitable. Again though, it is

important to note that creditors should have never been treated unequally and put in that situation

by the Post-Effective Date Debtors.

### B.    My Contributions were Significant, Substantial, and Necessary

8.    The Post-Effective Date Debtors state, "Ms. McNeil Failed to Demonstrate Actual,

Significant Benefits to the Administration of These Chapter 11 Cases." As I outline above, my

efforts <u>did</u> directly benefit the administration of this Chapter 11 case. To quote Wesley Chang's

Letter of Support for my application (Docket No. 7761) where he said I was the leader amongst

corporate creditors and wrote, "**<u>If not for her involvement and efforts, I have no doubt that</u>**

**<u>this issue of unjust treatment to corporate creditors would have not been resolved.</u>**" He

concluded by writing, "Ms. McNeil acted as a professional and representative for so many of us and should be compensated as such." Another corporate creditor said, "Her application should be reviewed in the same manner as other professionals asking to be compensated."

9.      The Post-Effective Date Debtors compare my application to that of the Substantial Contribution Claim of Rebecca Gallagher, Lead Plaintiff in Committee Class Claim Action (Docket No. 3662). Ms. Gallagher was one of three Lead Plaintiffs appointed to represent Celsius creditors in the Committee Class Claim. While her efforts were valuable, I believe my contributions to this case were unique and necessary as I performed the functions and services of a professional. As a professional, I was working to resolve this matter not just for the Faller Creditors, but for all corporate creditors. My efforts and services showed initiative and persistence, as I was the one who originally brought this matter to the court's attention and consistently pushed it forward. I played a critical, active, necessary, and vital role in driving this issue forward until there was a successful resolution.

## C.    My Professional Services are Reasonable and Allowable under § 503

10.      The Post-Effective Date Debtors state, "The Movants Have Not Demonstrated that the Services Rendered Are Reasonable." While I was a fiduciary representative to the Faller Creditors, other creditors also relied on me for my expertise and knowledge about this issue. I performed services for other corporate creditors that they would only have received if they had hired legal counsel. These services were often separate and distinct from the services provided by SLF,  and some of these services were also done in conjunction with SLF, as a representative of corporate creditors. In this capacity, I acted as a liaison between creditors, SLF, and the

committee. I listened to creditors, summarized concerns, communicated issues, and kept the group unified so they would not get pushed to the side. Keeping corporate creditors bound as a group was necessary so they, as a group, could apply pressure, stay visible, and stay relevant before the court. All of this was vital to corporate creditors ultimately receiving equitable distributions.

11.     My contributions during this case provided actual, demonstrable, and valuable benefits to all corporate creditors and were instrumental and critical in getting a successful resolution. The Post-Effective Date Debtors comment that not all my time pertained to financial analysis. However, my expertise as a financial professional and as a fiduciary was helpful in many ways above and beyond just doing financial analysis. Just as lawyers don't only bill their hours based on time spent specifically on the law, my efforts and my services were not limited to just work done on financial analysis. I helped to guide, educate, and unite corporate creditors in an effort to move this issue forward. My work and efforts on behalf of all corporate creditors were the same as the functions and actions that an attorney or other professional would have performed for those creditors. Although I was not able to perform all the functions that an attorney would perform, I fulfilled and performed many functions that an attorney would have performed for the creditors in this unique situation.

12.     As mentioned in my application, courts have allowed professionals with specialized expertise, such as financial professionals, to be reimbursed, especially if they perform services traditionally handled by attorneys or accountants and make a significant contribution to the case. In re *ITC Deltacom, Inc.*, No. 02-11848(MFW), 2006 WL 839395, at *1 (D. Del. Mar. 29, 2006), the court agreed with the court below that § 503 encompasses expenses for financial

advisors, saying that subsection (b)(3)(D) establishes that "actual" and "necessary" expenses

"making a substantial contribution" in a Chapter 11 case, are recoverable in general, including

expenses incurred in the employment of a financial advisor. And, although subsection (b)(4)

clearly imposes a limitation on recovery "for professional services rendered by an attorney or an

accountant of an entity whose expense is allowable under [subsection (b)(3)(D)]," nowhere does it

purport to limit other recoverable expenses. Therefore, that court held that the plain meaning of §

503 allows for recovery of the expenses of financial advisors, such as myself.

13.    The Post-Effective Date Debtors mention that some of my time reported pertains

to my work with SLF as a client. However, that is incorrect, because I was not a client. The Faller

Creditors were the client, and I was an advisor to the Faller Creditors. As a professional, I was

working to resolve this matter not just for the Faller Creditors, but for all corporate creditors. My

efforts on behalf of all corporate creditors started before my partnership with SLF, and then

continued in conjunction with SLF. SLF and I worked together, as professionals, with the goal of

making this right for all corporate creditors.

14.    In these bankruptcy proceedings, I acted as a professional and as a fiduciary for the

Faller Creditors and other corporate creditors. I did not personally benefit from the order

authorizing supplemental distribution to eligible corporate creditors, so this application is not

asking for an additional disbursement or payment, as the Post-Effective Debtors indicate in their

objection. As a professional, I submitted this application for the substantial contributions I made

that ultimately led to a fair and equitable resolution of this matter.

**<u>Conclusion</u>**

For the reasons I have laid out, I kindly ask that the court review my application in the same manner that other professionals' contributions are reviewed and that the court approve my *Proposed Order Granting Application for Allowance of Claim for Substantial Contribution pursuant to 11 U.S.C. § 503(b)(3)(D)*. Thank you for your consideration in the review of my application.

Dated: November 8th, 2024

Respectfully,

/s/ *Laura Faller McNeil*

_____

Laura Faller McNeil *(Pro Se)*

Representative for "Faller Creditors", Sheri and Bernard Jacob Faller, and their retirement accounts:

*BFaller RD LLC*

*BFaller ROTH RD LLC*

*SFaller TRD RD LLC*

*SFaller RD LLC*

laurafaller@gmail.com