**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | NOT FOR PUBLICATION |
| CELSIUS NETWORK LLC, *et al.*, | Chapter 11 |
| Post-Effective Date Debtors. | Case No. 22-10964 (MG) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE
LITIGATION ADMINISTRATOR'S THIRTEENTH
OMNIBUS OBJECTION TO CERTAIN PROOFS OF CLAIM**

*A P P E A R A N C E S:*

PRYOR CASHMAN LLP
*Co-Counsel to Mohsin Y. Meghji as Litigation Administrator*
7 Times Square
New York, New York 10036
By:   Seth H. Lieberman, Esq.
      Matthew W. Silverman, Esq.
      Andrew S. Richmond, Esq.

WHITE & CASE LLP
*Co-Counsel to Mohsin Y. Meghji as Litigation Administrator*
1221 Avenue of the Americas
New York, New York 10020
By:   Samuel P. Hershey, Esq.

555 South Flower Street
Suite 2700
Los Angeles, California 90071
By:   Ronald Gorsich, Esq.

111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
By:   Gregory F. Pesce, Esq.
      Laura Baccash, Esq.

Parish Pearson
*Pro se Creditor*

David Alexander Perez Rodriguez
*Pro se Creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested objection (the "Claims Objection," ECF Doc. # 7904) of Mohsin Y. Meghji, in his capacity as Litigation Administrator (the "Litigation Administrator") of the above-captioned post-effective date debtors (prior to the Effective Date of the Plan, the "Debtors," and after the Effective Date, the "Post-Effective Date Debtors," as applicable).[1]  The Claims Objection seeks entry of an order modifying the claims (collectively, the "Inaccurately Supported Claims") identified on Schedule 1 to the proposed order (the "Proposed Order," ECF Doc. # 7904-1), which is annexed to the Claims Objection as Exhibit A, to match the amounts and/or classifications set forth in the Debtors' schedules and books and records as reflected under the heading "Modified."  Also annexed to the Claims Objection, as Exhibit B, is the supporting declaration of Kenneth Ehrler, a managing director at M3 Advisory Partners, LP (the "Ehrler Decl.," ECF Doc. # 7904-2).

Two responses were filed to the Claims Objection: (i) the response of claimant Parish Pearson ("Pearson" and the response, the "Pearson Response," ECF Doc. # 7916), which was filed on January 18, 2025 in connection with proof of claim no. 29963 filed in the amount of $14,320,519.41 against "All Debtors" (the "Pearson Claim"), and (ii) the response of claimant David Alexander Perez Rodriguez ("Perez" and the response, the "Perez Response," ECF Doc. # 7957) in connection with proof of claim no. 27294 that was filed in the amount of $4,381.78 (the "Perez Claim").  In connection with the Pearson Response, Pearson also separately submitted

---

[1]     Defined terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* (the "Plan," ECF Doc. # 4289).

2

documentation in support of her opposition (the "Pearson Supporting Documentation," ECF Doc. # 7967), which includes (i) various emails she received from Celsius regarding her account and withdrawal attempts, and (ii) links to news coverage of former Celsius Chief Executive Officer Alex Mashinsky's criminal proceedings.

On February 7, 2025, the Litigation Administrator filed a reply (the "Reply," ECF Doc. # 7960) to the Pearson Response. Annexed to the Reply is the declaration of Kenneth Ehrler as Exhibit A (the "Ehrler Reply Decl.," ECF Doc. # 7960-1).

For the reasons discussed, the Court **SUSTAINS** the Claims Objection as to the Inaccurately Supported Claims and **OVERRULES** the Pearson and Perez Responses.

## I.   BACKGROUND

### A.   Relevant Case History

On November 16, 2022, the Court entered an order (the "Bar Date Order," ECF Doc. # 1368) that established certain deadlines to holders of claims to file proofs of claim: (i) January 3, 2023, at 5:00 p.m. (ET) (the "Bar Date") for most retail account holders to file proofs of claims against any Debtor other than the GK8 Debtors, and (ii) January 10, 2023, at 5:00 p.m. (ET) (the "Governmental Bar Date") for each governmental unit to file proofs of claim against any Debtor other than the GK8 Debtors. (Claims Objection ¶ 6.) The Bar Date and Governmental Bar Date were subsequently extended to February 9, 2023, at 5:00 p.m. (ET). (*See id.*.) To date, no bar date has been set as to claims against the GK8 Debtors. (*Id.*)

Following entry of the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* (the "Customer Claims Opinion," ECF Doc. # 2205) on March 9, 2023, a supplemental bar date of April 28, 2023 was set for holders of

3

22-10964-mg    Doc 7976    Filed 02/12/25    Entered 02/12/25 09:40:38    Main Document
Pg 4 of 14

claims affected by the amendment of the Debtors' schedules and statements pursuant to the Customer Claims Opinion (the "Affected Account Holder Claims"). (*Id.* ¶ 7.)

On April 18, 2023, the Court entered an order authorizing the official committee of unsecured creditors (the "Committee") to file the Class Claim (defined below) and to seek certification of the class of all account holders under Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "Class Claim Order," ECF Doc. # 2496). (*Id.*) The Class Claim Order provided that "the bar date for claims set forth in the *Notice of Amended Bar Date for Submission of Proofs of Claim* is tolled pending an order of the Court with respect to the certification of the putative class under Bankruptcy Rule 7023." (*Id.* (quoting the Class Claim Order).) On July 21, 2023, the Court entered an order (ECF Doc. # 3066) establishing August 2, 2023 at 5:00 p.m. (ET), as the final bar date for Affected Account Holder Claims. (*Id.*)

As of the filing of the Claims Objection, approximately 33,923 proofs of claim have been filed against the Debtors, totaling approximately $216,348,684,122,865,607,761.31. (*Id.* ¶ 9.) To assist the Debtors' claims reconciliation efforts, the Court entered an order (the "Objection Procedures Order," ECF Doc. # 2090) that established certain omnibus claims objection procedures. (*Id.*)

On August 14, 2023, the Court entered an order approving the settlement reached between the Debtors and the Committee (the "Class Claim Settlement," ECF Doc. # 3288) with respect to proof of claim no. 29046 filed by the Committee (the "Class Claim"). The Class Claim Settlement provided a comprehensive resolution of the Class Claim that asserted various non-contract claims against certain Debtor entities. (*Id.* ¶ 11.) Specifically, the Class Claim Settlement resolved non-contractual claims for account holders who did not opt out of the Class Claim Settlement. (*Id.*)

4

On March 21, 2023, the Court entered the *Order (I) Approving (A) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* (the "Custody Settlement," ECF Doc. # 2291), which resolved outstanding claims related to Custody accounts for account holders who did not opt out of the Custody Settlement.  (*Id.* ¶ 12.)

On November 9, 2023, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Confirmation Order," ECF Doc. # 3972), confirming the Plan.  (*Id.* ¶ 13.)  The Confirmation Order provides, in relevant part, that the Litigation Administrator "shall have the authority to prosecute, settle, or otherwise resolve, without limitation, all Disputed Claims remaining as of the Effective Date (including any related Causes of Action that are not released, waived, settled, or compromised pursuant to the Plan)."  (*Id.* (quoting Confirmation Order ¶ 298).)  Moreover, the Litigation Administrator shall also serve as the representative of the Debtors' estates pursuant to section 1123(b) of the Bankruptcy Code "for the purpose of collecting Recovery Causes of Action and enforcing Causes of Action belonging to the Estates related to Disputed Claims or Disputed Interests that are not released, waived, settled, compromised, or transferred pursuant to the Plan."  (*Id.* (same).)

The Plan and the Confirmation Order make clear that, among other things, (i) the responsibilities of the Litigation Administrator include, without limitation, the filing and prosecuting any objections to Claims or Interests or settling or otherwise compromising Claims and Interests in accordance with the Plan and any applicable orders of the Court; and (ii) the Litigation Administrator, on behalf of the Post-Effective Date Debtors, specifically retains and reserves the right to assert any and all Causes of Action and related rights.  (*Id.* ¶ 14.)

**B. The Claims Objection**

The Litigation Administrator seeks entry of an order modifying the Inaccurately Supported Claims in the manner set forth on Schedule 1 to Exhibit A. Based its review of the Debtors' schedules and books and records, the Litigation Administrator believes that the Inaccurately Supported Claims were filed in inaccurate amounts and/or were filed under the incorrect prepetition program (*e.g.*, filed as a Custody Claim rather than an Earn Claim). (*Id.* ¶ 20.) In other words, each Inaccurately Supported Claim was filed in a manner inconsistent with the Debtors' actual liability, and the Litigation Administrator has determined that the proofs of claim "provide no basis or [contain] insufficient supporting documentation" to support the amount and/or classification asserted. (*Id.*)

In support of the relief sought, the Litigation Administrator argues that failure to modify the Inaccurately Supported Claims in the manner set forth under the heading labeled "Modified" in Schedule 1 will result in improper or excessive recovery against the Post-Effective Date Debtors' estates to the detriment of other creditors. (*Id.* ¶ 21.) Rather, modification of these Inaccurately Supported Claims will provide for a claims register that accurately reflects the Debtors' actual liability. (*Id.*) It further maintains that the Claims Objection and notice and service of the same are in "full compliance with the Bankruptcy Rules and the Objection Procedures Order," as applicable. (*Id.* ¶¶ 22–23.)

**C. The Pearson Response and the Pearson Supporting Documentation**

On January 18, 2025, Pearson filed the Pearson Response in opposition to the Claims Objection, stating that (i) the Litigation Administrator's proposed modification of the Pearson Claim "does not accurately reflect the total value of [her] deposits and earnings," and (ii) neither the Litigation Administrator nor Celsius has provided any evidence to "substantiate [the]

proposed adjustment to [her] claim." (Pearson Response at 2.) The Pearson Response also suggests that her "inability to provide exact records is a direct consequence of Celsius's actions—blocking access to accounts without warning and misrepresenting the nature of the platform's operational issues during the lead-up to bankruptcy." (*Id.*)

Pearson requests that the Court and Litigation Administrator (i) investigate her account records to "determine the full extent of [her] holdings and staking rewards," and (ii) adjust the proposed claim amount to "reflect the accurate value of [her] deposits and earnings." (*Id.* at 3.) While the Pearson Response indicates she is providing additional evidence to support her claim—including (i) email notifications from Celsius confirming rewards for staked USDC in June 2022; (ii) emails concerning her difficulties accessing her account in July 2023; and (iii) Celsius's bankruptcy announcement, which coincided with its restriction of platform access—no such information was included with the Pearson Response. (*Id.*) However, Pearson subsequently submitted the Pearson Supporting Documentation that, as discussed, contains various correspondence between her and Celsius regarding her account and "withdrawal issues" as well as links to certain news coverage regarding Alex Mashinsky's criminal proceedings. (*See generally* Pearson Supporting Documentation.)

### D. The Perez Response

Meanwhile, the Perez Response, filed on February 6, 2025, states that the Claims Objection addresses a proof of claim that he never submitted nor received any information about. (Perez Response at 1 (stating that the claim listed on the schedules to the Proposed Order has a "different claim number (27294) and an amount of $4,381.78, which [he] . . . never submitted").) Rather, he filed a proof of claim in the amount of $2,190.89 and has, to date, received $1,772.28 in distributions on account of his claim. (*Id.* at 2.) The distribution he received corresponds to

7

(i) 0.29529999 ETH, which amounted to $783.23, and (ii) 0.0197608 BTC which amounted to $989.05. (*Id.* at 1–2.) Accordingly, he requests that the claims register's "erroneous entry be removed or corrected to prevent any further confusion." (*Id.* at 2.)

Attached to the Perez Response are copies of correspondence he received concerning the following: (i) email confirmation of a USD 2,000 deposit; (ii) the Debtors' Bar Date Notice; (iii) email confirmation receipt of his filed proof of claim that contains a reference number "CEL-27429";[2] (iv) email notification that his claim distribution for ETH held is available for collection; and (v) email notification that his claim distribution for BTC held is available for collection. (*Id.* at 3–15.)

## II. LEGAL STANDARD

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Bankruptcy Rule 3007(c) and 3007(d) provide that, under certain circumstances, or with Court approval, more than one claim may be joined in a single objection. FED. R. BANKR. P. 3007(c)–(d).

As set forth in Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with Bankruptcy Rule 3001 shall constitute *prima facie* evidence of the validity and amount of claim. *See In re Residential Cap.*, 501 B.R. 531, 538 (Bankr. S.D.N.Y. 2013); *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citing Bankruptcy Rule 3001(f) and holding that the evidence submitted by the debtor was insufficient to overcome the validity and amount of bank's proof of claim); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13, 553 (Bankr. S.D.N.Y. 2000) (citing Bankruptcy Rule 3001(f) in analysis of debtors' objection to

---

[2] As noted below, this reference number corresponds to his assigned proof of claim number.

8

former tenant's proof of claim and granting partial summary judgment with respect to the objection where there were no material facts in dispute).

To receive the benefit of *prima facie* validity, however, "the proof of claim must set forth the facts necessary to support the claim." *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988) (citations and internal quotation marks omitted) (holding that claimant's proof of claim was not entitled to the presumption of *prima facie* validity because it did not set forth the necessary facts); *see also* FED. R. BANKR. P. 3001(c)(1) (requiring claimant to provide documentation where claim is based on a writing). "Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (citations omitted).

On the whole, "[a]n objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." *In re Lehman Bros. Holdings, Inc.*, 519 B.R. 47, 53–54 (Bankr. S.D.N.Y. 2014) (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014)). A party objecting to the proof of claim must only provide evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See In re Waterman S.S. Corp.*, 200 B.R. 770, 774–75, 777 (Bankr. S. D.N.Y. 1996) (reopening discovery into asbestos claims due to insufficient information upon which to determine validity of claims); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229(DC), 2010 WL 234827, at *3 (S.D.N.Y. Jan. 22, 2010) (same); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *Rockefeller*, 272 B.R. at 539 (same).

9

Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832065, at *4, *9 (Bankr. S.D.N.Y. 2005) (citing Bankruptcy Rule 3001(f) and holding that claimant did not meet its burden to prove validity of anticipatory breach and unjust enrichment claims, but that further evidence was needed to assess the merits of lack of good faith claim) (quoting *Allegheny*, 954 F.2d at 173–74); *see also In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323, 328 (Bankr. S.D.N.Y. 1997) (citing Bankruptcy Rule 3001(f) and allowing claim where debtor failed to refute any of the material facts in proof of claim).

Generally, the claimant must prove the claim and not sit back while the objector attempts to disprove it. *See In re Bennett,* 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988) (holding that debtor presented sufficient evidence to rebut the *prima facie* validity of claimant's claim and that claimant failed to prove claim by a preponderance of credible evidence).

### III.    DISCUSSION

Here, the Litigation Administrator has satisfied its burden to show that the Inaccurately Supported Claims should be modified in the manner set forth in Schedule 1 to the Proposed Order. The Litigation Administrator submits that, based on its review and analysis of the Inaccurately Supported Claims against the Debtors' schedules and books and records, such claims were filed in incorrect amounts and/or were filed under the incorrect prepetition program. (Claims Objection ¶ 20; *see also* Ehrler Decl. ¶ 9 (stating the same).) Additionally, the Litigation Administrator makes clear that the supporting documentation provided with the corresponding proofs of claim "fail to validate any deviation from the Debtors' Schedules and Books and Records." (*Id.*) Therefore, modification of the Inaccurately Supported Claims is appropriate to prevent improper or excessive recovery at the expense of other creditors.

Granting the relief sought would also provide the Post-Effective Date Debtors the added benefit of having a claims register that accurately reflects the Debtors' liabilities. Moreover, other than Pearson and Perez, no other creditors have filed responses to the Claims Objection.

With respect to the Pearson Claim, the Claims Objection seeks to modify the claim and reduce it from $14,320,519.41 to $1,986.98 as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 168 | PEARSON, PARISH [ADDRESS ON FILE] | All Debtors | 29963 | $14,320,519.41 | $1,986.98 | |

Earn
0.00

Custody
BTC 720
LINK 18
DOT 14
USDC 2000

Withheld
0.00

Collateral
0.00

Earn
BTC 0.0253113595276098
DOT 18.9953268356412
LINK 25.6842992667171
USDC 1206.84616057478

Custody
0.00

Withheld
0.00

Collateral
0.00

(Proposed Order, Schedule 1.) The basis for the Litigation Administrator's objection is that the Pearson Claim "fails to provide sufficient supporting documentation to constitute prima facie evidence of the validity, type, and amount of the claim." (*Id.*) In the Reply, the Litigation Administrator indicates that the Pearson Claim was filed under the incorrect prepetition program and in an amount that differs from the amount reflected in the Debtors' schedules and books and records. (Reply ¶ 4.) The Litigation Administrator further asserts that the Pearson Claim lacks supporting documentation. (*Id.*)

Pearson has not offered any documentation that would support her position that the Litigation Administrator's proposed modification is inaccurate. As an initial matter, the Pearson Claim was filed without any supporting documentation. *See In re Marino*, 90 B.R. at 28 (indicating that, in order for a claim to be *prima facie* valid, such claim must "set forth the facts necessary to support the claim"). Indeed, failure to attach supporting documentation to a claim

11

"will result in the loss of the *prima facie* validity of the claim." *See Minbatiwalla*, 424 B.R. at 112. Counsel to the Litigation Administrator indicates that the sole information available with respect to the Pearson Claim is a text file, which appears to be the underlying code for the Stretto claim submission form, that indicates only the amounts for each cryptocurrency she believes she is entitled to. Therefore, the Litigation Administrator has sufficiently demonstrated that the Pearson Claim lacks *prima facie* validity.

Pearson also fails to carry her burden to prove the validity of the Pearson Claim by a "preponderance of the evidence." *WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832065, at *4, *9. None of the documentation included in the Pearson Supporting Documentation supports what she is seeking. Pearson indicates that the documentation she provides shows reflects that she was "actively earning rewards but was never given a fair opportunity to withdraw [her] funds" after all withdrawals were blocked when Celsius entered chapter 11. (Pearson Supporting Documentation at 11.) She asserts, among other things, that her "claim amount should reflect [her] full balance that was locked before [she] could withdraw." (*Id.* at 12; *see also id.* at 14 (stating the same).) Pearson, however, fails to include documentation that reflects what this balance was or what was in her account, and what she has provided is otherwise insufficient to support what she is seeking.

In addition to the foregoing, Pearson also failed to opt out of the Class Claim Settlement. (*See* Ehrler Reply Decl. ¶ 10.) Article IV.B.8 of the Plan provides that such claims shall be expunged from the claims register and shall be of "no further force and effect." (Plan, Art. IV.B.8.) Specifically, the provision provides:

> [I]f a Holder does not opt-out of the Class Claim Settlement, such Holder's Account Holder Claims, other than Custody Claims, shall receive, in lieu of any scheduled Claim or Filed Proof of Claim, an Allowed Claim in an amount that is 105% of the scheduled amount of such Claim, in each case

12

> of the same Class as the originally scheduled Claim.  ***Proofs of Claim filed by Class Claim Settlement Participants (i.e., Holders of Account Holder Claims (other than Account Holders who only hold Custody Claims) that do not opt out of Class Claim Settlement) shall be expunged from the Claims Register and shall be of no further force and effect***.

(*Id.* (emphasis added).)  Accordingly, the Court **OVERRULES** the Pearson Response.

As for the Perez Claim, the Claims Objection seeks to modify the claim and reduce it from $4,381.78 to $2,190.90 as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 171 | PEREZ, DAVID [ADDRESS ON FILE] | Celsius Network LLC | 27294 | $4,381.78 | Earn USDC 190.89<br>Custody USDC 2000<br>Withheld 0.00<br>Collateral 0.00 | $2,190.90 | Earn USDC 2190.89706442137<br>Custody 0.00<br>Withheld 0.00<br>Collateral 0.00 |

(Proposed Order, Schedule 1.)  The Perez Response, however, appears to generally agree with the Litigation Administrator's proposed modification, stating that the Perez Claim should be in the amount of $2,190.89.[3]  (*See* Perez Response at 2 (noting that his "original claim for $2,190.89 remains valid" and the "claim listed under Claim No. 27294 and amounting to $4,381.78 is entirely incorrect").)  Accordingly, the Court similarly **OVERRULES** the Perez Response.[4]

---

[3] While there appears to be a one cent discrepancy between what Perez and the Litigation Administrator believe the Perez Claim should be, such discrepancy can likely be attributed to rounding.  The schedule to the Proposed Order reflects the Litigation Administrator's belief that Perez holds USDC 2,190.89706 in an Earn Account, which would round up to $2,190.90, the amount set forth in <u>Schedule 1</u> to the Proposed Order.

[4] Perez also asserts that he never filed the Perez Claim because the email confirming the submission of his proof of claim specified an assigned reference number of "CEL-27429."  (*See* Perez Response at 6.)  The Court's understanding, however, is that this reference number corresponds to the Perez Claim.

## IV. CONCLUSION

For the reasons discussed, the Court **SUSTAINS** the Claims Objection as to the Inaccurately Supported Claims and **OVERRULES** the Pearson and Perez Responses.

**IT IS SO ORDERED.**

Dated:   February 12, 2025
         New York, New York

                                              *Martin Glenn*
                                         MARTIN GLENN
                                   Chief United States Bankruptcy Judge