Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PLAN ADMINISTRATOR'S**
**LIMITED RESPONSE TO JASON VOELKER'S EMERGENCY MOTION**

The Plan Administrator[2] for the above-captioned post-effective date debtors (collectively,

the "Post-Effective Date Debtors," and prior to the Effective Date, the "Debtors") hereby files this

limited response (the "Response") to the *Emergency Motion for (I) Enforcement of the Court's*

*May 8, 2024 Order Requiring 105% Payout to iCapital Management Inc., (II) Alternative Relief:*

---

[1]   The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time, the "Plan").

*Exemption Yof [sic] iCapital Management Inc.'s Pledged Digital Assets From Forfeiture Order,*

*(III) Placement of Assets in Escrow Pending Appeal, (IV) Stay of Forfeiture Order as to iCapital's*

*Assets, and (V) Further Alternative Relief Based on Judicial Estoppel* [Docket No. 8015]

(the "Emergency Motion") filed by Jason Voelker and states as follows:

**Response**

1.      The Emergency Motion seeks to relitigate matters previously ruled on by the

Bankruptcy Court in May 2024 as well as raises issues related to iCapital Management Inc.'s

("iCapital") Claim under the Plan, including as to its distribution and potential forfeiture.[3]  Despite

Mr. Voelker's repeated attempts to litigate issues on behalf of iCapital or communicate with the

Post-Effective Date Debtors regarding iCapital's Claim, Mr. Voelker has not provided evidence

of his authority to act unilaterally on behalf of iCapital nor to act as its legal representative.

Mr. Voelker's position as a shareholder and director of iCapital is not sufficient to act for iCapital

absent some evidence he has authority to act on iCapital's behalf.  That said, the Plan Administrator

files this response to clarify the record.

2.      iCapital is a corporate creditor who had participated in the Debtors' Borrow, Earn,

and Custody Programs.  The Debtors scheduled a Claim for iCapital based on their books and

records (such Claim, the "Scheduled Claim").  The Scheduled Claim was valued at approximately

$6,398.67 as of the Petition Date.  iCapital also timely filed proof of claim no. 9489 (such Claim,

the "Filed Claim").  When voting on the Plan, iCapital failed to opt out of the Class Claim

---

[3]     Mr. Voelker's attempt to relitigate matters already decided through the Emergency Motion will be addressed by
the Litigation Administrator in its objection, filed contemporaneously herewith.

Settlement, which resulted in the Filed Claim being expunged and iCapital receiving an Allowed non-Custody Claim for $7,568.60.[4]

3.      On April 22, 2024, Mr. Voelker filed his motion seeking leave to file a late adversary proceeding regarding iCapital's Claims. *See Motion for Leave to File Adversary Proceeding and Request for Permission to Utilize the Electronic Court Filing System (ECF)* [Docket No. 4825] (the "Original Motion"). In the Original Motion, Mr. Voelker sought to assert a Claim for iCapital in excess of not only the Scheduled Claim but also the Filed Claim.

4.      On May 8, 2024, the Bankruptcy Court entered an order (the "May 8 Order") denying the Original Motion. As the Bankruptcy Court previously held, iCapital was on notice of the terms of the Class Claim Settlement and "the opportunity to opt out as well as any attendant consequences for electing to do so (or failing to timely do so)." May 8 Order at 22. Because iCapital failed to affirmatively opt out of the Class Claim Settlement, the Bankruptcy Court held that the Filed Claim was expunged and the Scheduled Claim, which is significantly less than Mr. Voelker alleges in the Emergency Motion, would be treated in accordance with the Class Claim Settlement. *Id.* at 22–23.

5.      On October 4, 2024, the Bankruptcy Court approved a settlement with corporate creditors regarding their distributions under the Plan. *Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. 7728] (such settlement, the "Corporate Creditor Settlement"). Pursuant to the Corporate Creditor Settlement,

---

[4]   The amount of iCapital's Allowed Claim is more than 105% of its Scheduled Claim because the 5% premium for failing to opt out of the Class Claim Settlement was applied to its Earn Claim and its Retail Borrower Deposit Claim (or approximately $23,382.37), which was than reduced by the amount of iCapital's $17,000 Retail Advance Obligation. The Class Claim Settlement did not apply to Custody Claims.

iCapital and other eligible corporate creditors were offered the opportunity to receive their distributions under the Plan in Liquid Cryptocurrency or Cash. iCapital submitted an election form requesting to receive its distribution in Liquid Cryptocurrency through Coinbase. On December 2, 2024, Coinbase emailed iCapital an invitation to initiate the onboarding process. The Corporate Creditor Settlement required eligible corporate creditors who elected to receive a Liquid Cryptocurrency distribution to (i) initiate the onboarding process at Coinbase within fourteen days of receiving such email and (ii) provide all initial onboarding materials to Coinbase within thirty days of receiving such email. Coinbase informed the Post-Effective Date Debtors that iCapital never initiated the onboarding process after receiving its onboarding invitation. As such, pursuant to the Corporate Creditor Settlement, iCapital was transitioned to a Cash distribution method.[5]

6.      Mr. Voelker complains that iCapital has not been sent its distribution under the Plan and files the Emergency Motion to compel payment under the Plan. But the Plan Administrator has already attempted a distribution for iCapital, and the only reason the distribution has not already been successful is because iCapital has not taken action. More specifically, in March 2024, the Plan Administrator sent iCapital its initial distribution to iCapital's address on record via check. The check, which was never cashed, expired on June 8, 2024 (ninety days after it was sent) and was voided in September 2024. On February 19, 2025, the Post-Effective Date Debtors informed iCapital via email that its distribution had been transitioned to Cash and would be attempted through Hyperwallet. The Post-Effective Date Debtors also requested iCapital provide AML/KYC Compliance Information necessary to attempt such distribution (specifically, a phone number).

---

[5]    For the avoidance of doubt, the Plan Administrator continues to hold Liquid Cryptocurrency for iCapital's distribution and will convert it to Cash for distribution in accordance with the terms of the Corporate Creditor Settlement.

These emails were opened by iCapital on February 19 (the day the emails were sent) and March 15, 2025 (two days prior to when the Emergency Motion was filed).  That same day, iCapital provided two phone numbers.  On March 17, 2025, Mr. Voelker provided a third phone number.  The Post-Effective Date Debtors' compliance team must verify the phone numbers provided, a process it must complete for all creditors, including those who have recently been transitioned from one Distribution Agent to another.  In particular, if an individual submits information on behalf of a corporate creditor, Celsius requires the individual to provide additional documentation to verify the individual is authorized to act on behalf of such creditor.  To date, iCapital has not provided the requested documentation nor had Mr. Voelker provided evidence that he has unilateral authority to act on behalf of iCapital.  Thus, the Plan Administrator has been unable to verify the phone numbers provided and, as such, cannot attempt iCapital's distribution at this time.

7.      Finally, Mr. Voelker's remaining concern—that iCapital's Claims may be forfeit under the forfeiture procedures approved by the Bankruptcy Court—is misplaced and the relief he seeks on iCapital's behalf is unnecessary.  The Plan Administrator has confirmed that iCapital's Claims are not currently subject to any forfeiture procedure because iCapital has opened a Celsius Distributions Support ticket.  Even if its Claims were subject to potential forfeiture, all iCapital would have to do to avoid forfeiture of its Claims is open a Celsius Distributions Support ticket at https://celsiusdistribution.stretto.com/support/tickets/new by selecting the drop-down selection "I need to claim my potentially Unclaimed Property."

8.      For the reasons set forth herein and in the Litigation Administrator's objection, filed contemporaneously herewith, the Emergency Motion should be denied.

New York, New York
Dated:  March 25, 2025

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com

*Counsel to the Plan Administrator*