**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| CELSIUS NETWORK LLC, *et al.,* | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors. | Chapter 11 |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors, | |
| Plaintiff, | Adv. Pro. No. 24-04004 (MG) |
| v. | |
| ANTOINE CASTEL. *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION IN PART TO ENFORCE SUBPOENA AND DENYING MOTION TO QUASH SUBPOENA**

*A P P E A R A N C E S:*

ZUBER LAWLER LLP
*Attorneys for Zuber Lawler LLP*
260 Madison Avenue, Suite 8021
New York, New York, 10016
By:    Mark H. Bloomberg, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Mohsin Y. Meghji,*
*as Representative for the Post-Effective Date Debtors*
One Bryant Park
New York, New York 10036
By:    Mitchell P. Hurley, Esq.
       Dean L. Chapman Jr., Esq.

2300 North Field Street, Suite 1800
Dallas, Texas 75201
By:    Elizabeth D. Scott, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are the following motions (the "Motions"): (1) Zuber Lawler LLP's ("Zuber Lawler") Motion to Quash and for Sanctions (the "Motion to Quash," filed in the Main Case, Case No. 22-10964 (MG), ECF Doc. # 8073); and (2) Mohsin Y. Meghji's (the "Plaintiff" or "Litigation Administrator") Cross-Motion to Compel and for Sanctions against Zuber Lawler (the "Motion to Enforce," filed in the Adversary Proceeding, Adv. Pro. No. 24-04004 (MG), ECF Doc. # 77). The Motions relate to a subpoena (the "Subpoena," Exhibit 2 to the Declaration of Mitchell P. Hurley ("Hurley Declr." or the "Hurley Declaration"), Adversary Proceeding ECF Doc. # 78) which was served by the Litigation Administrator upon Zuber Lawler on March 25, 2025, pursuant to this Court's March 12, 2025 Order Permitting Expedited Discovery under Federal Rule of Bankruptcy Procedure 7026 (the "Order," ECF Doc. # 69).

For the reasons discussed below, the Court **GRANTS IN PART** the Motion to Enforce and **DENIES** the Motion to Quash. The Court **DENIES** both parties' requests for sanctions.

## I. BACKGROUND

The following factual background is drawn from the briefing filed by the parties, as well as the Court's prior decision in this Adversary Proceeding dated April 8, 2025 (the "Castel Decision," *Meghji v. Castel (In re Celsius Network LLC)*, No. 22-10964 (MG), 2025 WL 1040356 (Bankr. S.D.N.Y. Apr. 8, 2025)).[1]

**A. General Background**

Debtor Celsius Network Limited ("CNL") is a private limited company incorporated under the laws of England and Wales. CNL's business model focused on the deployment of digital assets to generate income, including offering loans of fiat currency and "stablecoins"

---

[1] Capitalized terms not otherwise defined shall be given the meanings set forth in the Castel Decision.

2

(cryptocurrencies pegged to fiat currencies) to third-party retail borrowers in exchange for the posting of cryptocurrency in excess of the amount loaned by the borrower. (Castel Decision, 2025 WL 1040356 at *1.) In late 2019 or early 2020, Celsius began to consider additional investment strategies designed to generate revenue growth, including "staking" and activities involving decentralized finance ("DeFi"). (*Id.*)

Ultimately, CNL entered into an agreement in principle with Jason Stone ("Stone"), a self-described entrepreneur in the staking space, to serve as the CEO of a new CNL subsidiary formed to operate Celsius' staking and DeFi activities. (*Id.* at *2.) Celsius executives became concerned with Stone and his affiliates' handling of CNL's coins and other assets, and ultimately terminated Stone's authority to continue staking in March 2021. (*Id.*) However, the Litigation Administrator claims that Stone and his affiliates continued to transfer away Celsius assets following this revocation of authority.

### B. The Chapter 11 Cases

The Debtors filed the Chapter 11 Cases in this Court on July 13, 2022. (*Id.*) On August 23, 2022, Celsius commenced an adversary proceeding against Stone his affiliates, raising causes of action related to the defendants' purported misappropriation of the CNL coins. (*Id.*) After a two-day trial, the Court concluded that Celsius had "shown a substantial likelihood of prevailing on the merits," and granted a "temporary restraining order restraining the defendants from transferring any other assets away." (*Id.*) The parties ultimately settled the adversary proceeding in June 2024. (*Id.*)

### C. The Adversary Proceeding

The Litigation Administrator commenced the instant adversary proceeding on July 13, 2024. (*Id.* at *3.) The Complaint centers on various CNL coins and other assets that Stone and

3

his affiliates are alleged to have misappropriated. (*Id.*) The subject assets include 129,605.26 USDT purportedly received by defendant Benjamin Thor Rameau ("Rameau" or the "Defendant") on or around May 13, 2021. (Complaint ¶ 65(e).)

### D. Procedural History Relevant to the Motions

The Litigation Administrator states that it attempted to effectuate service of process upon Rameau through contact information obtained through the adversary proceeding against Stone and his affiliates. (Motion to Enforce at 7.) On January 31, 2025, Zuber Lawler contacted counsel to the Plaintiff by e-mail, noting that Rameau had "not been served" with the Complaint and requesting that counsel to the Plaintiff substantiate the claims against Rameau, which it contended had "no factual or legal basis," within 14 days. (Exhibit 1 to Hurley Declaration at 10.) Over the next few months, counsel to the Litigation Administrator and Zuber Lawler exchanged correspondence regarding the Plaintiff's efforts to effectuate service upon Rameau. Zuber Lawler disclosed that Rameau did not reside at the Hong Kong address to which the Plaintiff had sent the Complaint, but refused to provide counsel to the Litigation Administrator with any alternative contact information. (Exhibit 1 to Hurley Declaration at 7.)

Counsel to the Plaintiff subsequently sought, and received, this Court's authority to immediately serve a Rule 45 subpoena for the "limited purpose of identifying contact information for Defendant Rameau." (Order at 2.) Thereafter, counsel to the Plaintiff served the Subpoena upon Zuber Lawler; the Motions followed.

### E.    The Motions

Zuber Lawler filed the Motion to Quash on April 9, 2025. Zuber Lawler contends that the Subpoena: (1) seeks information protected by the attorney-client privilege, (2) improperly seeks to use the discovery process to obtain privileged information for the purposes of

4

effectuating service; and (3) imposes an undue burden on the firm. (Motion to Quash at 8, 12–13.) Zuber Lawler also seeks an award of reasonable expenses incurred in connection with filing the Motion. (*Id.* at 9–10.)

Counsel to the Litigation Administrator filed the Motion to Enforce, which simultaneously responds to the Motion to Quash, on April 16, 2025. The Litigation Administrator contends that the Motion to Quash should be denied, and the Motion to Enforce should be granted, because: (1) Rameau's address and other contact information is not entitled to attorney-client privilege or the work product protection; and (2) the Subpoena does not pose an undue burden on Zuber Lawler, is a valid use of the discovery process, and comports with the Court's prior Order. (Motion to Enforce at 6, 11.) The Plaintiff alternatively argues that, even if Rameau's address and other contact information is subject to the attorney-client privilege, that privilege was waived by Zuber Lawler by virtue of their voluntary provision of partial information regarding Rameau's residence. (*Id.* at 10–11.) Finally, the Litigation Administrator asserts a competing demand for costs and attorneys' fees in connection with the efforts expended responding to the Motion to Quash and prosecuting the Motion to Enforce. (*Id.* at 12–13.)

Zuber Lawler filed a reply in support of its Motion to Quash (the "Reply," Main Case ECF Doc. # 8084) on April 18, 2025. In the Reply, Zuber Lawler asserts that, while client contact information is not always privileged, in this case it is, as the Defendant specifically provided his contact information to Zuber Lawler "in confidence, in connection with seeking legal advice regarding this litigation." (Reply at 2.) Zuber Lawler also contends that the Subpoena exceeds the scope of the Order given the breadth of "contacts or identifying information" requested as relevant to the Defendant (including names, e-mail addresses, and accounts for "platforms, applications, or other means of any kind or description for electronic or

5

digital communication"). (*Id.* at 3–4.) The Reply rejects the Plaintiff's contention that any existing privilege was waived by the communications regarding Rameau's residence, arguing that the e-mails amounted at most to disclosure of "related information," not "the privileged information itself." (*Id.* at 4–5.) Finally, Zuber Lawler reiterates that the Subpoena is unduly burdensome insofar as it requests both document production and deposition testimony. (*Id.* at 4.)

## II.   LEGAL STANDARD

### A. Motion to Quash and Related Sanctions

Federal Rule of Civil Procedure 45(d) requires a court to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." FED R. CIV. PROC. 45(d)(3)(A)(iii)–(iv). The movant bears the burden of persuasive on a motion to quash a subpoena. *Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y. 2003). Similarly, the party invoking the privilege has the burden of showing that it applies. *See, e.g.*, *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.") (internal citation omitted). A party withholding information sought by a subpoena "under a claim that it is privileged" must "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED R. CIV. PROC. 45(e)(2)(A).

Rule 45(d) also provides that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and requires the court to "enforce this duty and impose an

appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." FED R. CIV. PROC. 45(d)(1).

### B. Motion to Compel and Related Sanctions

Rule 45 also permits a party serving a subpoena to move for "an order compelling production or inspection" following receipt of a written objection by the subpoenaed party. FED R. CIV. PROC. 45(d)(2)(B)(i). The movant for an order compelling compliance under Rule 45 ordinarily may not recover its motion-related costs and fees. *See, e.g., Brentlor, Ltd. v. Schoenbach*, No. 13CV6697JGKBCM, 2018 WL 5619951, at *2 (S.D.N.Y. Jan. 9, 2018) (citing *SEC v. Kimmes*, 1996 WL 734892, at *5–*11 (S.D.N.Y. Dec. 24, 1996)).

However, when the recipient of a validly issued subpoena refuses to comply, Federal Rule of Civil Procedure 45(g) allows the party seeking discovery to move for an order compelling the production of responsive documents and information and holding the subpoena recipient in contempt. FED. R. CIV. P. 45(g). Courts rarely issue contempt sanctions without first ordering the recipient to comply with the subpoena, and the court's order "might not require all the compliance sought by the subpoena." *See* Advisory Committee Note to 2013 Amendment, FED. R. CIV. P. 45(g). Once the movant prevails on a motion for contempt sanctions, the court may then award costs and fees to the prevailing party. *See, e.g., Bulkmatic Transp. Co. v. Pappas*, No. 99CIV.12070 (RMB), 2001 WL 504839, at * 3 (S.D.N.Y. May 11, 2001) (citing *Diamond v. Simon,* No. 89 Civ. 7061, 1994 WL 10622, at *1 (S.D.N.Y. Jan. 10, 1994); *Kohler Co. v. Weiss,* No. 90 Civ. 3188, 1993 WL 307775, at *2 (S.D.N.Y. Aug. 9, 1993); *Patterson, Belknap, Webb & Tyler LLP v. Regia Management Corp.,* No. 97 Civ. 2624, 1998 WL 788798, at *1 (S.D .N.Y. Nov. 10, 1998)).

### III. DISCUSSION

**A. The Defendant's Address and Contact Information Are Not Privileged**

Zuber Lawler relies on two fifty-year-old opinions, published by the same court, in support of its contention that its client's address is protected by the attorney-client privilege. (Motion to Quash at 3–7 (citing *Matter of Grand Jury Subpoenas Served Upon Field*, 408 F. Supp. 1169 (S.D.N.Y. 1976); *In re Stolar*, 397 F. Supp. 520, 524 (S.D.N.Y. 1975))). Neither of these cases, however, are persuasive authority for Zuber Lawler's contention that the Defendant's contact information in this case is protected by the attorney-client privilege. To the contrary, courts considering the issue more recently have acknowledged that, as a general rule, "[a] client's contact information is . . . not subject to the attorney-client privilege." *Oak-Jin Oh v. Sim & Park, LLP*, No. 12 MC 66, 2012 WL 1193755, at *2 (S.D.N.Y. Apr. 10, 2012) (citing *Echostar Satellite L.L.C. v. Viewtech, Inc.*, 2010 WL 3394191, at *1 (E.D.N.Y. July 14, 2010)). In fact, at least one court in this District has reached a similar conclusion after specifically examining one of the cases cited by Zuber Lawler. *See In re Subpoena Duces Tecum Served on Clarick Gueron Reisbaum, LLP*, 2010 WL 4967441, at *2, n.1 (S.D.NY. Nov. 30, 2010) (explaining that the court was "not convinced" that the contact information in *Field* had been protected from disclosure).

Even if the Court were to rely exclusively on *Field* and *Stolar*, Zuber Lawler has still not satisfied its burden to show that this is one of those unique scenarios wherein the client's contact information is protected by the attorney-client privilege. In *Field*, the client had specifically sought the advice of counsel in connection with a desired change in residence; the client then relied on the attorney's advice in connection with the relocation and requested that the attorney keep the client's new address confidential. The court determined that, under this "rare"

8

circumstance wherein "a client's address [was] communicated for the specific purpose of receiving legal advice and the address itself [was] at the heart of the advice sought," the information is protected by the attorney-client privilege. 408 F. Supp. at 1173.

Similarly, in *Stolar*, a court quashed a subpoena demanding that an attorney provide the address and telephone number of a client sought by the FBI for questioning. 397 F. Supp. at 524–25. The court concluded that, "[u]nder the peculiar circumstanc[es]" of the case, the contact information had been communicated to the attorney "confidentially and solely for the purpose of receiving legal advice," and moreover the FBI's demand for an interview could be resolved without disclosing the client's address. *Id.* As one court examining the *Stolar* and *Field* decisions later observed, both opinions relied on "a specific showing of the facts . . . [in which] the client's whereabouts were communicated to the lawyer in confidence for the very purpose of obtaining legal advice **with regard to the client's location**." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 130 F.R.D. 25, 26 (S.D.N.Y. 1990) (internal citations omitted) (emphasis added). By contrast, a client "is not entitled to shield information which the client has provided to the attorney not in confidence, as the factual basis for the request for legal advice, but only as incidental to the establishment of the relationship." *Id.* at 25.

Confronted with this burden, Zuber Lawler repeatedly claims that the Defendant provided his contact information to the firm for the express purpose of receiving legal advice. (Motion to Quash at 5 ("In this case, Mr. Rameau's contact information was provided to Zuber Lawler solely in the context of seeking and obtaining legal representation, with a clear expectation of confidentiality."), 6 ("Mr. Rameau sought legal advice regarding potential litigation against him and provided his contact information in confidence as part of that consultation. The very nature of the information sought by the Subpoena—contact information and identifying details for Mr.

9

Rameau—was shared with Zuber Lawler in confidence as part of the attorney-client relationship."), 7 ("Mr. Rameau specifically sought **legal advice regarding service of process** and proper notification in connection with this adversary proceeding, and provided his contact information to Zuber Lawler in confidence for precisely this purpose.") (emphasis added)). These statements, however, amount to the kinds of "conclusory" claims of privilege submitted via attorney affidavit which the court in *Litton Industries* rejected as insufficient to "take [the] case out of the general rule that information which identifies a client is unprotected by the attorney-client privilege." 130 F.R.D. at 26. Here, as in that case, there is simply "no evidence that the client's address was provided in confidence or that treating the information as confidential is justified because it was related to the legal advice requested." *Id.*; *see also AWGI, LLC v. Duncan & Elbaz, Inc.*, No. C10-01529 HRL, 2010 WL 4595158, at *3 (N.D. Cal. Nov. 3, 2010) (rejecting privilege claim on the basis of "cryptic" attorney declarations that client sought legal advice about the underlying action, and specifically about "the **law relating to service of process**," along with declarations that the client's address was "central to their attorney-client communications and that [counsel] was 'specifically instructed' to keep [the client's] location confidential.") (emphasis added).

In fact, the only relevant evidence offered by the parties—the e-mail correspondence appended by the Litigation Administrator to the Hurley Declaration—undermines Zuber Lawler's claims. As the Litigation Administrator points out, those exchanges make clear that "Rameau consulted Zuber Lawler to assess the merits of the lawsuit and to have Zuber Lawler reach out to Plaintiff's counsel to discuss the factual basis of Plaintiff's claims." (Motion to Enforce; *see* Exhibit 1 to Hurley Declaration at 10–11, stating, *inter alia*: "We have reviewed the claims and find no factual or legal basis for them. . . . We request that you provide the factual

10

basis for these claims within the next 14 days. If you are unable to do so, we ask that you voluntarily dismiss the claims against Mr. Rameau.") These circumstances bear strong similarities to those assessed by the court in *AWGI*.[2] In that case, the defendant's attorney reached out to counsel to the serving party, informing the latter of their retention as counsel, and initiated a discussion regarding an ultimate resolution of the claims against the defendant. *AWGI*, 2010 WL 4595158, at *4. Similarly, here, Zuber Lawler initiated contact with counsel to the Litigation Administrator, informed counsel that Zuber Lawler "represent[s] Benjamin Rameau in connection with the adversary proceeding filed against him by [Plaintiff's counsel's] client," and demanded that the Litigation Administrator either substantiate the merits of or outright dismiss the Subpoena. (Exhibit 1 to Hurley Declaration at 10–11.)

Given this correspondence, the Court concludes that Rameau contacted Zuber Lawler, "first and foremost, to discuss the merits of this lawsuit and to have [Zuber Lawler] reach out to Plaintiff['s] counsel to broach the topic" of possible dismissal. *AWGI*, 2010 WL 4595158, at *4. Zuber Lawler's outreach to the Plaintiff's counsel, confirmation of their view that there is "no factual or legal basis" for the Litigation Administrator's claims, and demand for factual substantiation or dismissal of the claims within 14 days (Exhibit 1 to Hurley Declaration at 10–11), indicates that Rameau's "location was not the 'factual basis for the request for legal advice'" from the firm. *Id.* (citing *Litton Industries,* 130 F.R.D. at 25). Accordingly, the Court finds that Rameau's address and the other contact information sought by the Subpoena is not protected by the attorney-client privilege.

---

[2] While *AWGI* was published by a District Court in the Northern District of California, it offers a thorough and persuasive analysis of the relevant precedent issued in this Circuit and District cited by the parties, including *Field*, *Stolar*, *Litton Industries*, and *Integrity Ins. Co. v. American Centennial Ins. Co.*, 885 F. Supp. 69 (S.D.N.Y.1995), *abrogated on other grounds by Life Receivables Trust v. Syndicate 102 at Lloyd's of London,* 549 F.3d 210 (2d Cir.2008). 2010 WL 4595158, at *3.

11

Because the information Zuber Lawler seeks to quash is not protected by the attorney-client privilege, the Court need not consider whether any claimed privilege was waived by Zuber Lawler, as argued in the alternative by the Litigation Administrator. (*See* Motion to Enforce at 10–11.).[3]

### B. The Subpoena Is Overbroad

While the bulk of the briefing submitted by the parties focuses on the Plaintiff's request for "current or last known mailing address(es), including any post office boxes," the Subpoena also seeks a number of other requests for information related to Rameau, including: "account name(s), number(s), owner(s), representative(s); . . . . email address(es); phone number(s); accounts or addresses for all platforms, applications, or other means of any kind or description for electronic or digital communication, including but not limited to Telegram, WhatsApp, Discord, and Slack; social media accounts, including but not limited to Facebook, Instagram, LinkedIn, and X (formerly Twitter)." (Subpoena at 3.) The Court's Order authorizing service of expedited discovery granted the Litigation Administrator authority to serve a Rule 45 subpoena "for the limited purpose of identifying contact information for Defendant Rameau"; it did not expressly permit the Litigation Administrator to request all the information sought in the Subpoena. (Order at 2.) As such, Zuber Lawler argues that the Subpoena exceeds the limited scope of the Order given its request for a broad swath of information and for deposition testimony. (Reply at 3.)

---

[3] Zuber Lawler relatedly argues that the Subpoena improperly seeks to use the discovery process to obtain the requested information for service purposes. The Court previously considered this argument before entry of the Order, as the issue was addressed by the Litigation Administrator in related submissions to the Court at that time. *See* Letter to the Court re: Discovery in *Meghji v. Castel*, AP. No. 24-04004 (MG) (Bankr. S.D.N.Y.) (ECF Doc. # 61) at 2 (collecting decisions by courts in this District granting motions for leave to serve early discovery identifying defendants' names and addresses). The Court declines to reconsider this issue, which was fully resolved by the Order, at this time.

12

While the Subpoena facially comports with the Court's Order in its current form, a number of the items requested therein are unnecessary to accomplish the purposes contemplated by the Order, as is the Litigation Administrator's request for deposition testimony. Accordingly, the Court **COMPELS** Zuber Lawler to provide information responsive to the following items enumerated in the Subpoena: (1) Rameau's "current or last known mailing address(es);" (2) Rameau's known "email address(es);" and (3) Rameau's known "phone numbers." The Court at the present time **QUASHES** the remainder of the Subpoena, including the Litigation Administrator's request for deposition testimony.

### C. Neither Party is Entitled to Costs and Fees

Both parties seek costs and fees incurred in connection with prosecuting and/or responding to the Motion to Quash and the Motion to Enforce, as applicable. Zuber Lawler contends that it is entitled to costs and fees because "[g]iven the clear legal and ethical bars to compliance with the Subpoena, Plaintiff's counsel should have known that serving it was improper." (Motion to Quash at 10.) However, for the reasons discussed above, its contention that the information sought by the Subpoena is privileged is incorrect. Furthermore, the Litigation Administrator took comprehensive steps to minimize the burden imposed on Zuber Lawler, obtaining a court order authorizing service of discovery seeking the Defendant's contact information prior to serving the Subpoena. The firm offers no authority in support of its request for sanctions in connection with a discovery request made *after* the serving party has received express authorization by the Court. Accordingly, Zuber Lawler's request for costs and fees is **DENIED**.

The Litigation Administrator, in turn, seeks an award of attorneys' fees under 28 U.S.C. §1927, which applies when a party has acted in bad faith, vexatiously, or engaged in dilatory

13

tactics. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143, 147 (2d Cir. 2012); *see also In re Saint Vincent's Cath. Med. Centers of New York*, No. 10-11963 CGM, 2014 WL 3545581, at *6 (S.D.N.Y. July 16, 2014). In support of that argument, the Plaintiff contends that Zuber Lawler "refused to comply" with "Court-ordered discovery," instead "asserting colorless arguments that the information is privileged." (Motion to Enforce at 13.) While the Court agrees with the Plaintiff that the information sought by the Subpoena is not protected by the attorney-client privilege, Zuber Lawler appears to have made its privilege claim in good faith, as the Motion to Quash relies on precedent from this District at least superficially supportive of Zuber Lawler's position. Similarly, while the Court entered an Order authorizing discovery with respect to the subject matter underlying the Subpoena, Zuber Lawler was entitled to, and did, make non-frivolous arguments related to undue burden and the scope of the Subpoena. The Court therefore declines to impose costs and fees in favor of the Plaintiff pursuant to section 1927.

While the Litigation Administrator does not appear to be moving for sanctions under Rule 45, it bears observing that movants for an order compelling compliance under that Rule ordinarily may not recover costs and fees incurred due to related motion practice. *Brentlor*, 2018 WL 5619951, at *2. The Litigation Administrator has also not explicitly moved for contempt sanctions, and the Court refrains from issuing related sanctions at this time. *See, e.g.*, *Bulkmatic Transp.*, 2001 WL 504839 at * 3 (collecting cases suggesting that a court may award costs and fees to the prevailing party on a motion for Rule 45 contempt sanctions). As such, the Litigation Administrator's request for fees and costs is **DENIED**. To the extent that Zuber Lawler fails to comply with this order within 7 days from the date of this Opinion, the Litigation Administrator may renew its request for sanctions at that time.

14

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Motion to Enforce, **DENIES** the Motion to Quash, and **DENIES** both parties' requests for sanctions.

**IT IS SO ORDERED.**

Dated:  May 9, 2025
       New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge