**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                                                    **FOR PUBLICATION**

       CELSIUS NETWORK, LLC                                    Chapter 11

                 Reorganized Debtors                         Case No. 22-10964-MG

------------------------------------------------------------------------x

In re:

       CELSIUS CUSTOMER PREFERENCE                         Adv. Pro 24-04024-MG
       ACTIONS.

------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER ON DAMAGES**
**IN CONNECTION WITH AVOIDANCE ACTIONS**

*A P P E A R A N C E S:*

WHITE & CASE LLP
*Attorneys to Moshin Y. Meghji, Litigation Administrator,*
*as Representative for the Post-Effective Date Debtors*
1221 Avenue of the Americas
New York, New York 10020
By:    Samuel P. Hershey, Esq.

      -and-

WHITE & CASE LLP
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
By:    Jason Zakia, Esq.
       Laura Baccash, Esq.

      -and-

WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, California 90071
By:    Aaron Colodny, Esq.
       Ronald Gorsich, Esq.

1

-and-

ASK LLP
60 East 42nd Street 46th Floor
New York, New York 10165
By:    Marianna Udem, Esq.


-and-

ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
By:    Brigette McGrath, Esq.
       Kara E. Casteel, Esq.

TROUTMAN PEPPER LOCKE LLP
*Attorneys for the Troutman Defendants*
875 Third Ave
New York, New York 10022
By:    Deborah Kovsky-Apap, Esq.
       Robert S. Hertzberg, Esq.

LOWENSTEIN SANDLER LLP
*Attorneys for the Lowenstein Defendants*
1251 Avenue of the Americas
New York, New York 10020
By:    Daniel B. Besikof, Esq.
       Brittany M. Clark, Esq.

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for the WilmerHale Defendants*
7 World Trade Center
250 Greenwich Street
New York, New York 10007
By:    Philip D. Anker, Esq.
       Allyson Pierce, Esq.

BRESSLER, AMERY & ROSS P.C.
*Attorneys for The Bressler Defendants*
17 State Steet 34th Floor
New York, New York 10004
By:    Christopher M. Vaughan, Esq.

2

MINTZ & GOLD
*Attorneys for Profluent Trading, Inc.*
600 Third Avenue, 25th Floor
New York, New York 10016
By:    Andrew Smith, Esq.
        Victoria Muth, Esq.

PROSKAUER ROSE LLP
*Attorneys for Coinhouse SAS*
Eleven Times Square
New York, NY 10036-8299
By:    Brian Rosen, Esq.

FALCON RAPPAPORT & BERKMAN LLP
*Attorneys for the Falcon Defendants*
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
By:    Michael Jaspan, Esq.

AIDALA, BERTUNA & KAMINS, P.C.
*Attorneys for Defendant Joshua John Bingham*
546 Fifth Avenue, Sixth Floor
New York, New York 10036
By:    Imran H. Ansari, Esq.


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are the *Litigation Administrator's Opening Brief Regarding Damages in Connection with Avoidance Actions* (the "Opening Brief," ECF Doc. # 114), filed by Mohsin Y. Meghji, as Litigation Administrator (the "Plaintiff" or the "Litigation Administrator") for Celsius Network LLC and its affiliated post-effective date debtors (the "Post-Effective Date Debtors," and, together with their non-debtor affiliates, "Celsius"), and the *Certain Customer Defendants' Response to Litigation Administrator's Opening Brief Regarding Damages in Connection with Avoidance Actions* (the "Response," ECF Doc. # 124), filed by customer defendants identified on <u>Exhibit A</u> to the Response (the "Customer Defendants") and the *Litigation Administrator's Reply Brief Regarding Damages in Connection with Avoidance*

3

*Actions* (the "Reply," ECF Doc. # 126) filed by the Plaintiff.  The Plaintiff filed the Opening

Brief requesting that the Court determine, as a matter of law, the damages to which he is entitled

under 11 U.S.C. § 550.

In the joint Scheduling Order,[1] the Court ordered the parties to address two questions:

> 1. Is the Litigation Administrator entitled to recover (a) the allegedly transferred digital assets if they remain in the applicable Defendant's possession, custody or control or, alternatively, (b) their value?

> 2. If the Litigation Administrator is entitled to recover the value of any allegedly transferred digital assets, what value is the Litigation Administrator entitled to recover if the allegedly transferred digital assets:

>> i. Have appreciated since they were transferred from Celsius?

>> ii. Have depreciated since they were transferred from Celsius?

For the reasons explained below, the Court finds that the Plaintiff is entitled to recover

the following:

- For depreciating assets, whether or not a Defendant is still in possession of the asset, the Litigation Administrator may recover the transfer-date value.

- For appreciating assets that are in the possession of a Defendant, the Litigation Administrator may recover the asset itself.

- For appreciating assets that have been sold by the Defendant, the Litigation Administrator may recover the sale price of the asset.  The Defendants bear the burden of demonstrating (i) that the asset was sold and (ii) the price at which it was sold.  If a Defendant cannot meet this burden, the Litigation Administrator may recover the judgment-date value of the asset.

---

[1]    Adv. Pro. 24-04024, ECF Doc. # 113 Ex. 1.

4

# I.   **BACKGROUND**

## A.  General Background

On July 13, 2022 (the "Petition Date"), the Debtors each filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  On November 9, 2023, the Court entered its *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates* (the "Confirmation Order," Case No. 22-10964, ECF Doc. # 3972). On January 29, 2024, the Debtors filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtors Affiliates (Conformed for MiningCo Transaction)* (the "Plan," Case No. 22-10964, ECF Doc. # 4289). On January 31, 2024, the Plan went effective (the "Effective Date").  *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* (Case No. 22-10964, ECF Doc. # 4298).

## B.  The Avoidance Actions Brought by the Litigation Administrator

On July 10, 2024, the Litigation Administrator filed a complaint (the "Complaint," Adv. Proc. No. 24-03667, ECF Doc. # 1) against Alexander Mashinsky and other former directors and executives of the Debtors, asserting claims for, *inter alia*, (i) breach of fiduciary duty, (ii) avoidance and recovery of preferential transfers, (iii) avoidance and recovery of fraudulent transfers, (iv) fraudulent misrepresentation and violation of state consumer protection laws, and (v) equitable subordination.  (Opening Brief ¶ 5; *see Meghji v. Mashinsky*, Adv. Proc. No. 24-03667 (MG) (Bankr. S.D.N.Y.) (the "Insider Proceeding" and the defendants, the "Insider Defendants").)

Following service of the Complaint on the Insider Defendants, and three entities, defendants Koala1 LLC, Koala3 LLC, and AM Ventures Holding, Inc., failed to answer or otherwise respond to the Complaint.  (Opening Brief ¶ 6.)  Accordingly, on April 18, 2024, the Litigation Administrator filed motions for default judgment (the "Default Judgment Motions," Adv. Proc. No. 24-03667, ECF Doc. ## 99, 101, 103) against Koala1 LLC, Koala3 LLC, and AM Ventures Holding, Inc. (collectively, the "Defaulting Insider Defendants" and each a "Defendant").  (*Id.*)  The Litigation Administrator seeks to recover the current market price of non-CEL cryptocurrency and the market price as of the transfer date for CEL Token.  (*See, e.g.*, *Application for Default Judgment Against Defendant Koala1 LLC*, Adv. Proc. No. 24-03667, ECF Doc. # 100 ¶ 9.)

In July 2024, the Litigation Administrator then filed thousands of avoidance actions against former Celsius customers seeking to avoid transfers the customers received in the 90-day period preceding the Petition Date (the "Customer Avoidance Actions").  (Opening Brief ¶ 7.) In order to coordinate the Customer Avoidance Actions, this Court entered the *Order Granting Revised Motion for an Order Establishing Streamlined Procedures Governing Avoidance Actions Pursuant to Sections 502, 547, and 550 of the Bankruptcy Code* (the "Procedures Order," ECF Doc. # 36.)

### C.  The Litigation Administrator's Opening Brief

    1.  The Litigation Administrator is Entitled to Recover Transferred Property or the Value of the Transferred Property

The Litigation Administrator in the Opening Brief first argues that section 550 of the Bankruptcy Code permits him to recover the Transferred Assets or their value.  (Opening Brief ¶¶ 11-17.)  The Litigation Administrator also notes that the precedent from the Second Circuit

6

offers this Court discretion to order the return of transferred property pursuant to section 550.

(*Id.* ¶ 12.)  The Litigation Administrator claims that the value of the digital assets at the date of

judgment is easily ascertainable, as the assets are traded on large, international platforms and

would not be subject to dispute.  (*Id.* ¶ 13.)  The Litigation Administrator believes that the

appropriate measure of damages is either (i) the return of the digital asset or (ii) the market price

of the asset.  (*Id.*)  In the event the transferred asset has depreciated, the Plaintiff requests that the

Court award the market price of the digital asset on the date of the transfer.  (*Id.*)

> 2.   The Litigation Administrator Believes He is Entitled to Recover the Current
>       <u>Value of Appreciating Assets</u>

Next, the Plaintiff cites to case precedent noting that other courts have held that a

debtor's estate is entitled to recover either (i) the transferred property or (ii) the current value of

the property at the date of judgment.  (*Id.* ¶ 14.)  Plaintiff then points to how one court held that a

plaintiff was able to recover the present-day value of its interest in real property.  (*Id.* ¶ 15.)

The Plaintiff discusses the broader implications of permitting him to recover the current

market value of the digital assets and claims that to hold otherwise would deprive the estate and

its stakeholders of value it would have otherwise received.  (*Id.* ¶ 16.)  The Plaintiff further

argues that the legislative intent of section 550(a) further reflects his understanding of the

liability of a transferee of an avoided transfer.  (*Id.* ¶ 17.)  Plaintiff argues that Congress

explicitly contemplated the appreciation of transferred property and sought to discourage a "wait

and see" approach for property that may be subject to significant changes in market price.  (*Id.*)

3.   The Litigation Administrator is Entitled to the Transfer Date Value of Assets that have Depreciated Since Transfer

The Plaintiff's final argument is that he is entitled to the value of the transferred property as of the transfer date, even if that property has depreciated since the transfer was made.  (*Id.* ¶ 18.)  The Plaintiff contends that the Court should award a judgment equal to the value of the property at the date of transfer to make the estate whole.  (*Id.*)  He then points to several instances where courts have found that a post-transfer decline in value of property warranted the entry of a money judgment for the value as of the transfer date.  (*Id.*)

Plaintiff notes that some of the digital assets, such as CEL Tokens, have little to no value now, and merely returning the assets or their current market value would not restore the estate to its position before the transfer was made, and instead would force the Post-Effective Debtors to bear the loss.  (*Id.* ¶ 19.)  Instead, the Litigation Administrator requests the entry of a money judgment as of the date of transfer for the depreciated assets.  (*Id.*)

**D.  The Customer Defendants' Response**

1.   A Determination of Damages Would Constitute an Advisory Opinion

The Customer Defendants begin their argument by claiming that a ruling by the Court on its interpretation of section 550 of the Code would constitute an advisory opinion because it will not have a binding effect on Customer Preference Actions, which will be decided based on the facts and circumstances of each individual case.  (Response at 9.)  The Defendants focus on the hypothetical nature of the question presented to the Court, noting that the Court is asked to decide what the Plaintiff may recover if the digital assets remain in the applicable Defendant's possession, custody or control.  (*Id.*)

8

2. Determination of Damages is Premature and Unnecessary at this Time

The Customer Defendants then argue that deciding the damages that the Plaintiff may recover under section 550 places the proverbial "cart before the horse," because the Plaintiff must first avoid a transfer before he may recover either property or its value under section 550. (*Id.* at 10.)

The Defendants note that the verbiage of the Code indicates that the concepts of avoidance and recovery are distinct. (*Id.*) It is a two-step process by which a trustee must first avoid a transfer and then may use 550 to recover the value of that transfer from the transferee. (*Id.* (citing *In re Petland Discounts, Inc.*, 2021 WL 1535793, at *4 (Bankr. E.D.N.Y. Jan. 26, 2021)).) The Defendants further note that they did not locate a case where a court had ruled on a defendant's damages under section 550 prior to finding initial liability and instead some courts have explicitly declined to rule on a defendant's damages prior to a finding of liability. (Response at 10-11.)

The Customer Defendants contend that the Court may determine the extent of damages owed by the Defaulting Insider Defendants, without any impact on the Customer Defendants. (*Id.* at 11.) The Defendants claim that a default judgment against the Defaulting Insider Defendants cannot be used to collaterally estop them from litigating damages issues in their respective adversary proceedings and cite to Second Circuit precedent stating that the general rule is that default judgments lack issue-preclusive effect. (*Id.*)

The Defendants further claim that even if a default judgment did have issue-preclusive effect, the Plaintiff would not be able to use a judgment against the Defendants because they are neither parities to, nor in privity with any party to, the proceedings against the Insider Defendants. (*Id.*) Therefore, the Customer Defendants contend that the Court may enter default

9

judgments against the Defaulting Insider Defendants and still permit the Customer Defendants to litigate damages issues in their respective adversary proceedings to the extent they are found liable. (*Id.* at 11-12.)

### 3. Section 550 Damages Require a Fact-Intensive Inquiry that is Absent in the Record Before the Court

The Customer Defendants argue that the Plaintiff has overstated his case, claiming that courts have awarded the digital assets themselves or their current value if they have appreciated, or their transfer date if they depreciated. (*Id.* at 12.) Instead, the Defendants claim that although courts have awarded such damages, they have not done so in every case, and not without consideration of a defendant's particular facts and circumstances. (*Id.*)

The Defendants then note that the Code does not provide guidance as to whether the Court should order payment of the value of the property or the return of the property itself. (*Id.*) However, at least one court in this Circuit has found that the market value of the property at the time of transfer, less the consideration received, is the proper measurement of recovery. (*Id.* (citing *Hirsh v. Steinberg (In re Colonial Realty Co.)*, 226 B.R. 513, 525 (Bankr. D. Conn. 1998)).) On the other hand, other courts have held that there is no bright-line rule regarding the time at which the property should be valued. (Response at 12.) Rather, courts have noted the importance of the discretion of the trial court in order to prevent either a plaintiff or a defendant from receiving a windfall. (*Id.*)

With respect to how the Court may exercise its discretion, the Defendants argue that it cannot be exercised in a vacuum and requires consideration of the facts and circumstances of each applicable case. (*Id.* at 13.) The Defendants then point to the *Seitz*[2] decision, where the

---

[2]     *In re Seitz*, 400 B.R. 707 (Bankr. E.D. Mo. 2008).

Bankruptcy Court for the Eastern District of Missouri considered the damages for a transferred asset that was more valuable in the hands of the transferee than would have been in the hands of the debtor. (*Id.*) The court concluded that the proper measure of damages "include[d] an inflation of the value of the Remaining Interest that the Court is not willing to pass along to the Trustee in the form of a windfall." (*Id.* at 14 (quoting *In re Seitz*, 400 B.R. at 723) (alteration in original).)

Like the court in *Seitz*, the Customer Defendants request that this Court consider the real-world facts and circumstances surrounding the digital assets that were withdrawn by the Customer Defendants. (Response at 14.) Additionally, it is ambiguous as to what Celsius would have done with the digital assets had they remained in Celsius's possession. (*Id.*) The Defendants argue that it's not clear if Celsius would have rebalanced, hedged, or diversified its holdings, spent the coins buying CEL tokens that are now worthless, or used them to fulfill other customers' withdrawal requests. (*Id.*) The Defendants note that the finder of fact will also need to consider what Celsius's trading and coin deployment policies and risk limitations were during the relevant period, in addition to what governance approvals and operational constraints would have applied. (*Id.*)

Defendants further claim that a variety of different digital assets were withdrawn during the preference period, and there is no reason to assume that the Debtors would have immediately sold any coin that declined in value, while keeping the coins that increased in value until the time of judgment. (*Id.*) Instead, what Celsius lost may be different than the value of the coins as of the judgment date. (*Id.*) Therefore, the Court should focus on what the bankruptcy estate lost, rather than what the transferee gained as a result of the transfer. (*Id.*)

11

Next, the Defendants question whether the avoidance actions will benefit the estate, noting specifically that the plain language of section 550 permits recovery "for the benefit of the estate." (*Id.* at 15 (quoting 11 U.S.C. § 550).) The Defendants cite to a series of cases that support the proposition that Congress did not intend to create the avoiding powers to generate a windfall to the debtor. (Response at 15.) Additionally, the Defendants note that the District Court for the Southern District of New York dismissed a claim brought by a plaintiff for lack of standing because the creditors had been paid in full and would not receive a benefit from the recovery. (*Id.* (citing *Adelphia Recovery Trust v. Bank of Am.*, 390 B.R. 80, 97 (S.D.N.Y. 2008), *aff'd,* 379 Fed. App'x 10 (2d Cir. 2010)).) Accordingly, the Defendants claim that if a plaintiff lacked standing to assert an avoidance action where the creditors were paid in full, then the Court should not award damages pursuant to section 550. (Response at 15.)

Defendants claim that creditors have received or will receive payment in full and that additional recovery would provide no benefit to the estate. (*Id.* at 15-16.) Customer Defendants believe that creditors have already recovered approximately 80% of their Allowed Claims and $900 million in additional value remains to be distributed, which included the Tether settlement, disputed claims reserve, and net assets held by the Post-Effective Date Debtors. (*Id.* at 16.) Therefore, the Customer Defendants posit that creditors may be paid in full with only a partial recovery, or even without any recovery at all, against the Customer Defendants and any excess damages recovered would have no stakeholders to whom the surplus could be distributed. (*Id.*)

Next, the Customer Defendants argue that a finder of fact would need to establish whether each Defendant still holds the coins that were withdrawn, and if not, what is the proper remedy. (*Id.*) When considering how to assess damages, the Customer Defendants believe the finder of fact will need to determine whether the value of the digital assets at the time of their

12

withdrawal or the value at the time at the time they were divested would constitute a proper measure of damages. (*Id.* at 16-17.) The Defendants note that the issue whether any specific Customer Defendant holds or does not hold withdrawn digital assets and its impact on the section 550 analysis is not expressly before this Court and will only be determined if and when a judgment is rendered against a Customer Defendant on liability. (*Id.* at 17.)

4. Customer Defendants Contend this Court is Not the Proper Forum to Develop <u>a Factual Record</u>

The Customer Defendants argue that they have the right to have factual findings made by a jury and not by this Court. (*Id.*) The Customer Defendants point to Second Circuit precedent which stands for the proposition that the measure of damages is calculated by a jury. (*Id.*) Therefore, if this Court were to make factual findings concerning damages owed by the Customer Defendants, it would "usurp the role of the jury" and violate the Customer Defendants' Seventh Amendment rights. (*Id.* at 17-18.) The Customer Defendants then contend that this Court lacks the constitutional authority to render a final judgment on this issue. (*Id.* at 18.) In light of the Supreme Court's decision in *Stern* the Customer Defendants claim they have not filed a proof of claim in the bankruptcy proceeding, the preferential transfer claims are a private right, and the parties have not consented to have this Court enter a final judgment. (*Id.*) Therefore, they believe this Court may not enter a final judgment.

## E. The Litigation Administrator's Reply

1. The Litigation Administrator Requests Either the Transferred Property or its <u>Value</u>

The Plaintiff begins his argument by claiming that the Defendants' argument that a ruling on the issues outlined in the Scheduling Order would be an advisory opinion is without merit. (Reply ¶ 12.) The Plaintiff believes that a decision by this Court on the measure of damages for

the Defaulting Insider Defendants would be applied to the Customer Defendants' cases, which would not constitute an advisory opinion. (*Id.* ¶ 13.) Additionally, the Plaintiff claims that a decision on these issues does not "put the cart before the horse," as there has already been a finding of liability against the Defaulting Insider Defendants. (*Id.* ¶ 14.) A ruling by this Court does not determine the specific damages for any non-defaulting Defendant but instead would create a legal framework to apply to non-defaulting Defendants if and when a determination of liability has been made. (*Id.*)

Furthermore, Customer Defendants will still have the opportunity to litigate the particular facts and circumstances of their cases regarding the calculation of damages. (*Id.* ¶ 15.) The Plaintiff notes that this Court developed the "phase one" and "phase two" issues to handle group-wide defenses. (*Id.*) Importantly, the "phase one" and "phase two" issues do not prevent individual defendants from raising facts and circumstances related to their individual proceeding. (*Id.*) Plaintiff believes that this decision operates in a similar manner and will preserve an individual defendant's right to raise particularized facts and circumstances, while also creating a legal framework for the Avoidance Actions. (*Id.*)

Next, the Plaintiff claims that the Customer Defendants' argument that a default judgment against the Defaulting Insider Defendants cannot be used to collaterally estop the Customer Defendants is misplaced. (*Id.* ¶ 16.) Instead, the Plaintiff claims that only legal principles are being decided, and that no defendant will be estopped from making a particularized, fact-based argument pertaining to an individual damages decision. (*Id.*) The Plaintiff also disputes the argument that a jury trial is required for these issues because only the legal principles are being considered by the Court and that this decision would not decide the

14

specific damages owed by a non-defaulting Defendant, and a jury would not decide the legal

principles that would apply to the case.  (*Id.* ¶ 17.)

        2.   The Litigation Administrator Requests the Current Value of Appreciating
            Property, or the Transfer-Date Value of Depreciating Property, and the
            <u>Defendants' Authority Does Not Hold Otherwise</u>

The Plaintiff argues that the overwhelming precedent of this Circuit supports the

proposition that he is permitted to recover the current value of appreciating assets or the transfer

date of depreciating assets.  (*Id.* ¶ 19.)  The Litigation Administrator notes that he agrees with the

Customer Defendants that the finder of fact must consider individual facts and circumstances

when applying legal principles, but the Defendants' case affirms the legal principles asserted by

the Litigation Administrator.  (*Id.*)  One such example is that the Defendants rely on *In re*

*Weinman v. Fid. Cap. Appreciation Fund (Integra Realty Res. Inc.)*, 354 F.3d 1246 (10th Cir.

2004) as standing for the proposition that a court required the plaintiff to accept less than the full

appreciation of the transferred assets.  (*Id.* ¶ 20.)  However, the Plaintiff claims that the opposite

is true and the Tenth Circuit rejected the argument that it was unfair to require the defendants to

pay as much as $7 per share of stock, when the maximum amount the trustee could have

recovered in litigation would have been $5.50 per share.  (*Id.*)  The Tenth Circuit, instead, held

that if the shares were fraudulently transferred then defendants may be ordered to return their

stock or ordered to pay as much as the highest price the stock ever achieved.  (*Id.*)  Therefore, the

Plaintiff believes that *Integra* supports the proposition that the estate may recover the current

value of an appreciated asset.

The Plaintiff also believes that the Customer Defendants' reliance on *In re Colonial*

*Realty,* 226 B.R. 513, is similarly misplaced.  Plaintiff claims that the "rule" announced in

*Colonial Realty* does not exist, which is exemplified by the *Integra* decision.  (*Id.* ¶ 21.)  Rather,

the Tenth Circuit notes that the cases identified in *Colonial Realty* all pertain to instances where the property had decreased in value following the transfer. (*Id.*) The rationale behind these cases was animated by the desire to avoid inequity to the bankruptcy estate if the property at issue had not been returned. (*Id.*) The Plaintiff continues to address additional cases cited by the Customer Defendants, which he claims also support his position, noting that several cases stand for the proposition of using the transfer-date value of depreciated assets or that the bankruptcy court should enter a money judgment in order to make the estate whole. (*Id.* ¶ 22.)

Plaintiff also rejects the Defendants' argument that permitting him to recover the transferred assets or their current value would result in a "windfall" to the estate. (*Id.* ¶ 23.) Plaintiff distinguishes the case cited by the Defendants, noting that *Vieira v. Think Tank Logistics, LLC (In re Levesque)*, 661 B.R. 731 (Bankr. D.S.C. 2024), involved the sale of a debtor's minority ownership interests in a corporation, which was later challenged as a fraudulent transfer. (*Id.*) The bankruptcy court determined that requiring the return of the transferred ownership interest would create an unjust windfall because the corporation was "a completely different company than it was [at the time of transfer] and its financial soundness appears attributable to [defendant's] post-transfer efforts as well as events that unraveled post-transfer which were unforeseen." (*Id.* (quoting *Levesque*, 661 B.R. at 777) (alterations in original).) The Litigation Administrator distinguishes *Levesque* by arguing that the increase in value of the digital assets is not a result of the Defendants' efforts or improvements, rather it is the result of market forces. (*Id.*)

Turning to *Seitz*, the Plaintiff notes that this case involved a fraudulent transfer claim regarding closely held equity interests that fluctuated in price after they were transferred. (*Id.* ¶ 24.) The district court determined that the transferred equity was worth more than it otherwise

16

would have been in the hands of the defendant. (*Id.*) In fact, both parties agreed that the value of the transferred equity "must have included discounts for its lessened marketability potential and as a merely minority interest." (*Id.* (quoting *In re Seitz*, 400 B.R. at 723).) The Plaintiff does not believe these facts are applicable to cryptocurrency because it is widely traded on an open market and its value is not dependent on who holds the item. (*Id.*)

### 3. Defendants' Other Arguments are Untimely and Irrelevant

Plaintiff further contends that the Defendants' argument that the issues outlined in the Scheduling Order are not before the Court is irrelevant to the current proceeding. (*Id.* ¶ 25.) The Plaintiff notes he reserves the right to reserve these issues at an appropriate time. (*Id.*) Plaintiff lastly claims that the contention that Litigation Administrator may not recover any damages because creditors have been or will be paid in whole is without evidence. (*Id.* ¶ 26.) Plaintiff claims the Defendants have not provided evidence to support their position and that this issue is not before the Court. (*Id.*) The Litigation Administrator again reserves all rights to address this issue if and when it is appropriate. (*Id.*)

## II. LEGAL STANDARD

Section 550 of the Bankruptcy Code provides in relevant part "to the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property. . . ." 11 U.S.C. § 550(a). The purpose of section 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re Andrew Velez Const., Inc.*, 373 B.R. 262, 274 (Bankr. S.D.N.Y. 2007); *see also Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 812 (9th Cir. 1995); *Morris v. Kansas Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan. 1991).

The Bankruptcy Code, however, does not provide guidance on when the Court should order the return of property or elect to award the value of the property instead. *Andrew Velez Const., Inc.*, 373 B.R. at 274. Instead, it is at the discretion of the Court to make that determination. *Id.*; *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176-77 (Bankr. S.D.N.Y. 1998), *corrected by* 220 B.R. 177 (Bankr. S.D.N.Y. 1998); *In re Classic Drywall, Inc.*, 127 B.R. at 876; *Gennrich v. Montana Sport U.S.A., Ltd. (In re Int'l Ski Serv., Inc.)*, 119 B.R. 654, 656 (Bankr. W.D. Wis. 1990). When considering whether to order turnover of property instead of value, the Court will consider three factors: whether the value of the property (1) is contested; (2) is not readily determinable; or (3) is not diminished by conversion or depreciation. *In re Centennial Textiles, Inc.*, 220 B.R. at 177.

## III. DISCUSSION

### A. Ruling on the Damages Issues is Neither an Advisory Opinion Nor Premature

An advisory opinion is a "legal declaration that could not affect anyone's rights." *Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 716 (7th Cir. 2017). The Supreme Court has made clear that federal courts lack the power to issue advisory opinions. *Preiser v. Newkirk*, 422 U.S. 395, 401, (1975). Rather, a court's judgment "must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Unlike a ruling under a hypothetical state of facts that the Supreme Court sought to avoid, the instant case involves a concrete issue—the damages the Litigation Administrator may recover from the Defaulting Insider Defendants. Following the finding of liability against the

18

Defaulting Insider Defendants through the entries of default, there is a dispute as to what the Plaintiff may recover under section 550 of the Bankruptcy Code.  The Customer Defendants are correct that the Court may not rule with respect to what the Litigation Administrator may recover against the Customer Defendants, as a determination of liability has not yet been rendered in their cases.  Nonetheless, the issue is ripe for decision because there has been a finding of liability for the Defaulting Insider Defendants.  Rendering a decision on the damages issue does not prevent the Defaulting Insider Defendants from raising any individualized defenses involving the facts and circumstances of their cases.  However, it is plainly within the purview of the Court to decide what the Plaintiff may recover under section 550 of the Code, and this Opinion, accordingly, addresses that issue with respect to the Defaulting Insider Defendants.

Moreover, with respect to collateral estoppel, this Opinion does not foreclose the Customer Defendants' ability to litigate damages issues in their respective proceedings in the event there is a finding of liability.

### B.  The Litigation Administrator is Entitled to Recover the Transferred Property or Value of the Transferred Property

Section 550 makes clear that the Plaintiff is entitled to recover either "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  11 U.S.C. § 550(a).  The purpose of section 550(a) is to restore the estate to the financial condition it would have enjoyed had the transfer not occurred.  *Andrew Velez Const., Inc.*, 373 B.R. at 274.  Again, the Bankruptcy Code does not provide guidance on when the Court should order the return of property or elect to award the value of the property instead.  *Id.*  At least one court facing a similar issue pertaining to Bitcoin noted that the proper measure of damages is either the return of the digital asset, or its value, at a date to be determined by the court.  Order on Motion

19

for Partial Summary Judgment, *Hashfast Technologies LLC v. Marc Lowe (In re Hashfast Technologies LLC)*, Case No. 15-3011 (DM) (Bankr. N.D. Cal. Feb. 22, 2016) (ECF Doc. # 49) at 1-2.[3]

This Court finds that to the extent the Transferred Assets remain in the possession of a defendant, and the Transferred Assets have appreciated or not changed in value, the Plaintiff may recover the asset itself. If the Transferred Assets have depreciated in value since the transfer date, the Plaintiff may recover the transfer-date value of the Transferred Assets. If a defendant has sold an asset, and the price at which the Transferred Asset was sold is greater than the transfer-date value, the Plaintiff is entitled to recover the sale price of the Transferred Asset, which is discussed further below. If a defendant is no longer in possession of a Transferred Asset for any other reason, the Litigation Administrator may recover the judgment-date value of the asset.

Moreover, although an entry of default has been entered with respect to liability, the entry of default does not preclude the Defaulting Insider Defendants from litigating the extent of their liability in a subsequent damages inquest. "[A] default is not an admission of damages, which must be established in a separate evidentiary proceeding." *Finkel v. Romanowicz*, 577 F.3d 79, 83 n. 6 (2d Cir. 2009). A party may still contest the amount of damages awarded to a plaintiff, even when it has defaulted. *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 275 (S.D.N.Y. 2015) (citing *Finkel*, 577 F.3d at 83 n. 6); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

---

[3]   Judge Montali did not render a final decision on the proper measure of damages under section 550 as this adversary proceeding was settled and voluntarily dismissed. *See* Order Approving Stipulation to Dismiss Adversary Proceeding with Prejudice, *Hashfast Technologies LLC v. Marc Lowe (In re Hashfast Technologies LLC)*, Case No. 15-33011 (DM) (Bankr. N.D. Cal. Jun. 17, 2016) (ECF Doc. # 52).

Accordingly, the Defaulting Insider Defendants retain the right to litigate the extent of their liability in a subsequent damages inquest.

1.  The Litigation Administrator is Entitled to Recover the Transfer-Date Value of <u>Depreciated Assets</u>

The restorative principles underpinning section 550 permit the Plaintiff to recover the transfer-date value of the Transferred Assets.  Courts have routinely noted that the purpose of section 550 is to restore the financial condition of the debtor that it would have enjoyed if the transfer had never occurred.  *Seaver v. Mortg. Elec. Registration Sys. (In re Schwartz)*, 383 B.R. 119, 125 (B.A.P. 8th Cir. 2008); *Dobin v. Presidential Fin. Corp. (In re Cybridge Corp.)*, 312 B.R. 262, 268 (D. N.J. 2004); *Centennial Textiles, Inc.*, 220 B.R. at 176; *Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.)*, 177 B.R. 120, 139 (Bankr. D. Mass. 1994). Therefore, the transfer-date value of the assets restores the estate to the position it would have occupied had the transfer never occurred.

The Bankruptcy Code does not specify at what point value is to be determined.  *Integra Realty*, 354 F.3d at 1266-67.  When considering depreciating assets, a "post-transfer decline in value [] normally lead[s] one to require payment of transfer-date value instead of turnover." *Tulis v. Gordos N. Rest. Corp. (In re Gordos Rest. Corp.)*, 643 B.R. 1, 36 (Bankr. S.D.N.Y. 2022) (citing *Centennial Textiles, Inc.*, 220 B.R. at 177).  Collier, the leading treatise on bankruptcy, notes that

> if conversion of the property results in a diminution in value of the property, the court should permit the trustee to recover the value of the property rather than the depleted property.  Depreciation in the value of the property due to market fluctuations may support the bankruptcy court in ordering restitution of the property's value at the time of the transfer.

5 COLLIER ON BANKRUPTCY ¶ 550.02 (16th 2026).

21

This claim enjoys broad support in case law.  In *Pritchard v. Brown (In re Brown)*, 118 B.R. 57 (Bankr. N.D. Tex. 1990), the court determined that the value as of the transfer date represented the proper measure of value when the value of the transferred asset, in this case an oil and gas lease, had depreciated in value.  *Id.* at 60-61; *see also In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 573 (Bankr. S.D.N.Y.), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016) (noting that case law supports the concept that a debtor may recover the decline in value of collateral subject to avoidable liens, valued at the time of the avoided transfer, when the property has been transferred beyond the debtor's control (*dicta*)); *Feltman v. Warmus (In re Am. Way Serv. Corp.)*, 229 B.R. 496, 532 (Bankr. S.D. Fla. 1999) ("[I]f the court limits the Trustees to recovery of the property itself, and if the property has declined in value, the estate will have lost the opportunity to dispose of the property prior to its depreciation.").  Other courts have awarded the transfer-date value of fraudulently transferred property when that property was subsequently damaged, destroyed, or worthless as of the judgment date.  *See Reiber v. Baker (In re Baker)*, 17 B.R. 392, 395 (Bankr. W.D.N.Y. 1982) (awarding the transfer-date value of a yacht that was destroyed by fire); *see also First Software Corp. v. Comput. Assocs. Int'l, Inc. (In re First Software Corp.)*, 107 B.R. 417, 423-24 (D. Mass. 1989) (affirming the bankruptcy court's award of the transfer-date value of software that had become worthless by the judgment date).

In order to effectuate the purpose of section 550, the Litigation Administrator is entitled to recover the transfer-date value of depreciating assets.  *See Gordos Rest. Corp.*, 643 B.R. at 36. Ordering the return of a depreciating asset or its judgment-date value would be inappropriate as the return of a depreciating asset or its current value would not restore the Debtor to the financial condition of that it would have enjoyed if the transfer had never occurred.  Rather, the return of

depreciating Transferred Assets would thrust the loss incurred entirely onto Celsius's bankruptcy estate.

In light of the foregoing, the Court finds that the Litigation Administrator is entitled to recover the transfer-date value of depreciating assets.

2.    The Litigation Administrator is Entitled to Recover the Transfer-Date Value of Appreciating Assets

How to handle appreciating assets is a more complicated issue. This Court is not aware of another court that has ruled on the valuation of appreciating digital assets in the context of avoidance actions. Again, many courts have found that the transfer date is the proper focus for determination of a transferee's liability. *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, 879 F.3d 808, 823-824 (7th Cir. 2018) (affirming the bankruptcy court's award of the value of transferred property as of the date of the transfer); *In re Colonial Realty Co.*, 226 B.R. at 525-27; *Shape, Inc. v. Midwest Eng'g, Inc. (In re Shape, Inc.)*, 176 B.R. 1, 3 (Bankr. D. Maine 1994); *In re Int'l Ski Serv., Inc.*, 119 B.R. at 659; *James B. Downing & Co. v. Agri Dairy Prods., Inc. (In re James B. Downing & Co.)*, 74 B.R. 906, 911 (Bankr. N.D. Ill. 1987).

Some courts have disagreed with this approach and found that there is no generally applicable rule, and that the relevant time to determine valuation is a fact-intensive inquiry into the circumstances of each case. *Integra Realty*, 354 F.3d at 1267 ("Rather than *In re Colonial*'s rule, we believe the only generally applicable rule in regard to § 550(a) valuation is that 'the time at which the value is measured depends upon the circumstances of each individual case.'" (quoting *In re Brown*, 118 B.R. at 60)); *Tidwell v. Chrysler Credit Corp. (Matter of Blackburn)*, 90 B.R. 569, 573 (Bankr. M.D. Ga. 1987) ("[T]he time at which the value is measured depends upon the circumstances of each individual case."). Additionally, courts noted that "it is

23

important for trial courts to have broad discretion in valuing property or ordering recovery since the avoidance of transfers can range from conveyances to the innocent to conspiracies intended to defraud creditors and thus, the timing of the valuation can be important." *Levesque*, 661 B.R. at 778 (quoting *Hanckel v. Campbell (In re Hanckel)*, No. 12-04936-DD, 2015 WL 8607388, at *13 (Bankr. D. S.C. Dec. 11, 2015)) (internal quotation marks omitted); *see also In re Belmonte*, 931 F.3d 147, 152 (2d Cir. 2019) (noting that in the context of actions brought under section 549 of the Code, "[t]he bankruptcy court has broad discretion in applying § 549[] . . . as well as in ordering the return of transferred property or its value pursuant to § 550").

Moreover, in drafting section 550, Congress sought to avoid a "wait and see" approach from creditors who seek to profit from holding property that may be subject to wide swings in value due to volatile markets. Congress specifically noted that

> [t]here will be situations in which the transferee may not be aware of the vulnerability of the transaction, and the court should be able to take this factor into consideration in calculating damages. In other cases, the transferee may knowingly solicit the transaction, and the estate should then be given the benefit of the most favorable recovery. Under the proposal of the Commission, a transferee has an opportunity to benefit by delay, and there are possibilities for abuse where the transferred property is appreciating substantially in value.

5 COLLIER ON BANKRUPTCY ¶ 550.02 (16th 2026) (quoting *Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, House of Representatives*, 94th Cong., 2d Sess., ser. no. 27, pt. 3, at 1844 and 1850 (1976)) (hereinafter "House Hearings") (internal quotation marks omitted).

The Litigation Administrator encourages this Court to adopt the view that appreciation of the Transferred Assets inures to his benefit. Pointing to cases such as *Joseph v. Madray (In re Brun)*, 360 B.R. 669 (Bankr. C.D. Cal. 2007), he argues that permitting him to recover the appreciation "makes sense" because the trustee "trustee typically has the ability to recover the

property transferred, which would allow the estate to benefit from any appreciation." (Opening Brief ¶ 15 (quoting *Brun*, 360 B.R. at 675) (internal quotation marks omitted).) However, analogizing the transfer of real property, as was the case in *Brun*, to the transfer of digital assets poses significant problems. Unlike the claim in *Brun*, the Litigation Administrator may not "typically have the ability to recover the property transferred" as many Defendants are no longer in possession of the Transferred Assets. *Brun*, 360 B.R. at 675. The market for real property also differs dramatically from that of digital assets. Digital assets are volatile, and highly liquid, enabling individuals to instantaneously purchase, sell, or otherwise transfer large sums of digital assets. Real property on the other hand is traceable, illiquid, non-speculative, and as the court in *Brun* notes, often recoverable. Real property thus appears to be a poor analogue to the damages issues posed by the Avoidance Actions.

The Litigation Administrator also points to precedent from this district, *Gordos Rest. Corp.*, 643 B.R. 1, to contend that this Court should permit him to recover the full amount of appreciation as of the judgment date. Yet, the court in *Gordos* notes, in dicta, that a post-transfer appreciation "might" lead a court to require payment as of the judgment date; however, Judge Drain reaches no such conclusion. 643 B.R. at 36-37. Rather, the court found that there was no evidence whether the asset, in this case intellectual property, had either appreciated or depreciated in the three-year period after the transfer. *Id.*

Additionally, this Court must consider the equities of the case to ensure that no party receives a windfall. *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, No. 13-11272-JLG, 2024 WL 1693626, at *34 (Bankr. S.D.N.Y. Apr. 18, 2024). To award the Litigation Administrator the judgment date of the Transferred Assets would be inequitable. It is not clear that even if the

25

Transferred Assets had remained in Celsius's possession, that Celsius realized their judgement-date value, and the Plaintiff has not put forth any evidence on this point.

Additionally, requiring Defendants to pay the current value for Transferred Assets that were sold, potentially years prior, could expose Defendants to disproportionate withdrawal preference exposure.  Accepting the Litigation Administrator's argument that the Defendants are on the hook for any future increase in the price of a digital asset even long after they dispose of the asset, could expose preference defendants to what is essentially limitless liability.

Therefore, to balance the equities between the estate, the Defendants, and Congress's intent in drafting section 550, in the event Defendant has sold the Transferred Assets and the assets had appreciated since the transfer date, the Litigation Administrator is entitled to recover any profit the Defendants received through the sale.  The Defendants shall bear the burden of demonstrating that they sold the Transferred Assets.  In the event the Defendants sold the Transferred Assets for a loss, then the Litigation Administrator will be entitled to recover the transfer-date value of the Transferred Assets.  If the Defendants are no longer in possession of the Transferred Assets for a reason other than a sale of the Assets, the Litigation Administrator is entitled to recover the judgment-date value of the Assets.

This approach will mitigate the "wait and see" approach that Congress sought to prevent. *See* House Hearings at 1844.  Defendants will not receive the benefit of any speculation they engage in through the receipt of the Transferred Assets.  Furthermore, this approach enables the Litigation Administrator to make a meaningful recovery to Celsius's bankruptcy estate that reflects the value of the Transferred Assets as of the date they were disposed of.  It also insulates the Defendants from liability resulting from the whims of the crypto market long after they have disposed of the Transferred Assets.

For clarity, the Litigation Administrator is permitted to recover either the Transferred Assets or their value, pursuant to the aforementioned framework, but he is not entitled to recover both from a Defendant. *See In re Am. Way Serv. Corp.*, 229 B.R. at 531 ("[T]he Code permits the court, in its discretion, to award *both* a money judgment *and* recovery of the property in kind, provided that the Trustees are limited to a single satisfaction.") (emphasis in original); 11 U.S.C. § 550(d) ("The trustee is entitled to only a single satisfaction under subsection (a) of this section.").

## IV.   CONCLUSION

For the reasons discussed above, the Court finds that the Litigation Administrator may recover the following.

- For depreciating assets, whether or not a Defendant is still in possession of the asset, the Litigation Administrator may recover the transfer-date value.

- For appreciating assets that are in the possession of a Defendant, the Litigation Administrator may recover the asset itself.

- For appreciating assets that have been sold by the Defendant, the Litigation Administrator may recover the sale price of the asset.  The Defendants bear the burden of demonstrating (i) that the asset was sold and (ii) the price at which it was sold.  If a Defendant cannot meet this burden, the Litigation Administrator may recover the judgment-date value of the asset.

**IT IS SO ORDERED.**

Dated:   July 10, 2026
New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

27