Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MEW) |
| Post-Effective Date Debtors. | (Jointly Administered) |

# PLAN ADMINISTRATOR'S NINTH STATUS REPORT ON DISTRIBUTIONS

The Plan Administrator[2] for the above-captioned post-effective date debtors (collectively, the "Post-Effective Date Debtors," and prior to the Effective Date, the "Debtors") hereby files this ninth distribution report (the "Report") and respectfully states as follows:

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is The Corporation Trust Company, Registered Office of Celsius Network, LLC, 1209 Orange Street, Wilmington, Delaware 19801.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time, the "Plan") or the *Joint Order (I) Authorizing Supplemental Distribution to Eligible Corporate Creditors, (II) Approving Procedures for Supplemental Corporate Creditor Distributions, and (III) Granting Related Relief* [Docket No. 7747], as applicable.

## Introduction

1. The Plan Administrator files quarterly reports on the status of distributions under the Plan.[3] From May 1, 2026, through July 31, 2026 (the "Reporting Period"), the Plan Administrator—with the assistance of the Post-Effective Date Debtors' employees and advisors—has continued working tirelessly to make distributions to creditors, answer creditor questions, resolve issues experienced by creditors so that distributions can be successfully received by creditors, and implement the Bankruptcy Court-approved forfeiture procedures.

2. As of July 31, 2026, approximately $3.51 billion is currently eligible to be distributed under the Plan, approximately $3.47 billion (or 99.03%) of which has been successfully distributed to creditors.[4] During this Reporting Period, the Plan Administrator distributed Cash and Liquid Cryptocurrency worth an aggregate value of approximately $30 million[5] to approximately 5,000 recipients.[6]

---

[3] The Plan Administrator has filed eight prior status reports on distributions (collectively, the "Prior Reports") covering the periods from the Effective Date through April 30, 2026. For the avoidance of doubt, certain figures contained in the Prior Reports are amended herein to account for transitioning of creditors between Distribution Agents and other updates described herein.

[4] These values are based on total aggregate amounts eligible and redeemed for the initial distribution (with Liquid Cryptocurrency pricing as of January 16, 2024), second distribution (with BTC pricing of $95,836.23), third distribution (with BTC pricing of $118,019.7455), fourth distribution (with BTC pricing of $88,603.09), corporate supplemental distributions (with pricing as set forth in the corporate creditor settlement), Custody assets remaining on the Celsius platform as of February 29, 2024 (the "Deactivation Date"), and any Claims confirmed as settled by the Litigation Administrators.

[5] This value is based on redemptions (during the Reporting Period) for the initial distribution (with Liquid Cryptocurrency pricing as of January 16, 2024), second distribution (with BTC pricing of $95,836.23), third distribution (with BTC pricing of $118,019.7455), fourth distribution (with BTC pricing of $88,603.09), corporate supplemental distributions (with pricing as set forth in the corporate creditor settlement), Custody assets remaining on the Celsius platform as the Deactivation Date, and any Claims confirmed as settled by the Litigation Administrators.

[6] As noted in the *Plan Administrator's Fifth Status Report on Distributions* [Docket No. 8198], the *Plan Administrator's Sixth Status Report on Distributions* [Docket No. 8277] and the *Plan Administrator's Eighth Status Report on Distributions* [Docket No. 8432], the Plan Administrator considers the initial, second and third distributions to be substantially completed. Creditors can reference the Prior Reports for further information on the status of the initial, second, and third distributions. For the avoidance of doubt, to the extent that a creditor's

3. The fourth distribution (the "Fourth Distribution") began on or around February 3, 2026. *See Notice Regarding Fourth Plan Distribution* [Docket No. 8314]. Approximately 73,500 creditors in total have received approximately $303 million in value of Liquid Cryptocurrency[7] and Cash on account of the Fourth Distribution.

| Distribution Agent | Amount (in USD) Currently Eligible for Distribution on Account of Allowed Claims | Amount (in USD) Successfully Distributed | Percent of Value Successfully Distributed | Percent of Eligible Creditors Who Successfully Received a Distribution |
|---|---|---|---|---|
| ***First, Second, Third and Corporate Supplemental Distributions*** | | | | |
| Cash (Check / Wires / Hyperwallet) | $484 million | $438 million | 98.2% | 98.2% |
| Liquid Cryptocurrency (PayPal / Venmo / Coinbase) | $2,664 million | $2,488 million | 99.7% | |
| **TOTAL:** | **$3,149 million** | **$3,133 million** | **99.5%** | **98.2%** |

| | | | | |
|---|---|---|---|---|
| ***Fourth Distribution*** | | | | |
| Cash (Check / Wires / Hyperwallet) | $45 million | $43 million | 95.5% | 91.1% |
| Liquid Cryptocurrency (PayPal / Venmo / Coinbase) | $273 million | $260 million | 95.2% | |
| **TOTAL:** | **$318 million** | **$303 million** | **95.3%** | **91.1%** |

claims become Allowed, the Plan Administrator will attempt distributions, including the initial, second, and/or third distributions, as applicable, to such creditors as provided under the Plan.

7 This value is based on a BTC pricing of $88,603.09.

4. Certain creditors are not currently able to receive a distribution for a variety of reasons, including because their Claim is being held back pursuant to the Plan. Pursuant to the Plan, the Post-Effective Date Debtors have withheld, pending resolution and Allowance by the Litigation Administrators, distributions to creditors who (a) have outstanding litigation or owe amounts to the Estates, (b) opted out of the Class Claim Settlement, (c) are Holders of Equitably Subordinated Claims, or (d) are Holders of Claims that have not yet been Allowed. As the Litigation Administrators resolve some of these contingencies, the Litigation Administrators periodically notify the Plan Administrator that a Claim that was previously held back is now Allowed and can receive a distribution.

5. This Report is intended to provide a robust update to the Bankruptcy Court and all parties in interest regarding the status of distributions, and future reports will continue to be filed quarterly. This update is not intended to be a comprehensive update on every single distribution-related matter; rather, this Report will describe the most common outstanding issues and provide updates regarding distributions under the Plan.

**Liquid Cryptocurrency Distributions**

6. Consistent with the Plan, after the Effective Date, the Post-Effective Date Debtors commenced Liquid Cryptocurrency distributions to eligible creditors through their Liquid Cryptocurrency Distribution Agents: PayPal/Venmo and Coinbase. As of the end of this Reporting Period, approximately $2,966 billion in Liquid Cryptocurrency was eligible to be distributed under the Plan, approximately $2,942 billion (or 99.2%) of which has been successfully distributed to creditors.

7. Some creditors have reported issues claiming their Liquid Cryptocurrency distribution through Coinbase, PayPal, or Venmo. If any creditor is still having trouble redeeming its Liquid Cryptocurrency distribution, please create a Celsius Distributions Support ticket at

https://celsiusdistribution.stretto.com/support/tickets/new, select the most relevant items from each drop-down menu, and we will work with you to help you resolve your issue. Please refrain from opening multiple support tickets on the same topic, as this will only further delay our ability to identify and help resolve creditor issues.

8. If for any reason neither Coinbase, PayPal, nor Venmo can service a creditor's Claim distribution, such creditor can complete a cryptocurrency-to-fiat conversion request form. Instructions are included in the reminder emails that creditors with unredeemed Liquid Cryptocurrency distributions receive on a regular basis. Please review our FAQ or contact Celsius Distribution Support if you have further questions about the cryptocurrency-to-fiat conversion request form.

(a) PayPal/Venmo Distributions

9. Creditors currently eligible to receive their distribution through PayPal and Venmo should have received claim codes via email that can be used to claim their distribution on PayPal or Venmo and can also view their claim codes in the Celsius Claims Portal. The Post-Effective Date Debtors also periodically send email reminders to creditors with unredeemed claim codes at PayPal or Venmo. These reminders also inform creditors how to open a Celsius Distributions Support ticket if they are experiencing issues in claiming their distribution through PayPal or Venmo. As additional creditors become eligible to receive a distribution through PayPal and Venmo, the Post-Effective Date Debtors will issue new claim codes via email to such creditors, typically once per quarter.

(b) Coinbase Distributions

10. Some creditors have not been able to receive the second, Third, or Fourth Distributions because their account was closed after the prior distributions, their AML/KYC Compliance Information required reverification at the time those distributions were first attempted,

or Coinbase instructed Celsius that it was no longer able to make distributions in a given jurisdiction. As soon as possible, creditors should take action to either re-open their Coinbase account, reverify their AML/KYC Compliance Information, or submit a cryptocurrency-to-fiat conversion request form in the Celsius Claims Portal.

**Cash Distributions**

11. The Post-Effective Date Debtors have three methods for making Cash distributions—check, wire transfer, and Hyperwallet. As of the end of this Reporting Period, approximately $542 million in Cash was eligible to be distributed under the Plan, approximately $531 million (or 98%) of which has been successfully distributed to creditors.

**Deceased Creditor Distributions**

12. On May 8, 2024, the Bankruptcy Court entered an order approving the Post-Effective Date Debtors' proposed procedures for making distributions to the authorized representatives of deceased creditors. [Docket No. 4874]. As part of this process, authorized representatives of deceased creditors are required to open a Celsius Distributions Support ticket and submit certain information to confirm that the creditor is deceased and the individual submitting the Celsius Distributions Support ticket has authority from the deceased creditor's estate to receive the deceased creditor's distribution. Once an authorized representative of a deceased creditor submits the required documentation, it is reviewed by the Post-Effective Date Debtors. If no further documentation is needed, the Post-Effective Date Debtors send an email to the deceased creditor's email address on file. If no response is received within fourteen days of sending this email, the Post-Effective Date Debtors or Distribution Agent are authorized to distribute the assets to the authorized representative of the deceased creditor.

13. Since the Effective Date, the Post-Effective Date Debtors have released for distributions those amounts held on account of 229 deceased creditors, including releasing for distribution those amounts held on account of 2 deceased creditors during this Reporting Period.

**MiningCo Common Stock Distributions**

14. Certain creditors, depending on the types of Claims a creditor held, are eligible for MiningCo Common Stock under the Plan. These distributions are being handled by the Stock Transfer Agent, Odyssey Transfer and Trust Company ("Odyssey"). Both Odyssey and MiningCo have provided answers to frequently asked questions related to the MiningCo Common Stock distribution (collectively, the "MiningCo Common Stock FAQ"). These answers are available through Odyssey at ionicdigital.odysseytrust.com and through MiningCo at https://www.ionicdigital.com/faq. Odyssey and MiningCo will continue to update the MiningCo Common Stock FAQ with the latest information. Creditors should contact Odyssey or MiningCo regarding any questions related to their MiningCo Common Stock.

15. On July 28, 2026, Ionic Digital, Inc. began trading on the Nasdaq Stock Market following its direct listing. This development does not change the Plan Administrator's responsibilities or the procedures established under the Plan for making MiningCo Common Stock available to creditors eligible to receive such distributions. The Plan Administrator will continue to administer distributions in accordance with the Plan and applicable procedures. Creditors who become eligible to receive MiningCo Common Stock will continue to be contacted by Odyssey and receive their MiningCo Common Stock through the existing distribution procedures. Additional information, if any, will be provided if such distribution procedures change. Further, the commencement of trading does not change the existing process for creditor inquiries. Creditors should continue to refer to the above FAQ for answers to questions regarding Ionic Digital, Inc. and should continue to direct share transfer inquiries to Odyssey.

**Creditors Not Currently Eligible to Receive a Distribution**

16. The majority of this Report deals with creditors whose claims are currently eligible for distributions under the Plan. But there are various creditors who, for one reason or another, are not yet eligible for distributions. The most common reason is that there is litigation that one of the Litigation Administrators has or could bring against the eligible claimant. The Plan Administrator cannot make these distributions to such claimants until such time as one of the Litigation Administrators (a) resolves the contingency and (b) informs the Plan Administrator that distributions may be made to this creditor. Because the Post-Effective Date Debtors are currently processing distributions on a quarterly cadence, there may be some delay between when a Claim is Allowed and when a distribution is attempted.

(a) Creditors Who Opted Out of the Class Claim Settlement and Filed a Proof of Claim

17. On August 14, 2023, the Bankruptcy Court approved the Class Claim Settlement, pursuant to which participating creditors received a Claim against each Debtor equal to 105% of the scheduled amount of such Claim. Creditors were provided the opportunity to opt-out of the Class Claim Settlement through their ballots when voting on the Plan. If a creditor elected to opt-out of the Class Claim Settlement and filed a Proof of Claim, their Claim was treated as a Disputed Claim under the Plan. Accordingly, such creditors' distributions have been held back to be resolved through the claims reconciliation process by the Litigation Administrators.

(b) Creditors with Unresolved Preference Exposure

18. Pursuant to the Plan, Distribution Agents are not permitted to make distributions to creditors with unresolved Withdrawal Preference Exposure above $100,000 until directed to do so by one of the Litigation Administrators. *See* Plan Art. IV.B.3.

(c) Equitably Subordinated Claims

19. The Plan contemplated the equitable subordination of those Claims included on the Schedule of Equitable Subordinated Claims, which includes Claims against certain Insiders. On July 10, 2024, the Litigation Administrators filed an adversary complaint initiating an adversary proceeding (the "Former Executives Action") against certain former executives and their related parties. Among other things, the Former Executives Action seeks the equitable subordination of those Claims included on the Schedule of Equitable Subordinated Claims. The Litigation Administrators are pursuing the Former Executives Action and provide reporting regarding such action and other litigation being pursued by the Litigation Administrators in their own quarterly reporting.[8]

**Creditors Unable to Receive a Distribution**

20. Additionally, there are a few categories of distributions that, while technically legally eligible to receive a distribution under the Plan, are not able to be made at this time. For example, approximately 1,500 creditors, representing approximately $1.6 million in distributable value, are located in jurisdictions (the "Unserviceable Jurisdictions") that cannot be serviced by any of the Post-Effective Date Debtors' Distribution Agents for a number of reasons. One such reason is that the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") removed certain designated Russian banks from its system, affecting the ability of non-Russian banks, including the Post-Effective Date Debtors' bank, to process transactions with Russian banks. Unserviceable Jurisdictions include Cuba, Iran, North Korea, Syria, Venezuela, Russia, and Belarus, as well as the Crimea, Donetsk, and Luhansk regions of Ukraine and Abkhazia and South Ossetia in Georgia. If a creditor previously resided in an Unserviceable Jurisdiction but has

---

[8] *See Litigation Administrators' Quarterly Report for the April 1, 2026 to June 30, 2026 Period* [Docket No. 8472].

since moved, they should update their information on file in the Celsius Claims Portal. Other creditors have opened tickets with Celsius Distributions Support to notify the Post-Effective Date Debtors that no Distribution Agent can service their distribution and as such are treated similarly to creditors in Unserviceable Jurisdictions. For the avoidance of doubt, these claims will not be forfeited at this time pursuant to the Bankruptcy Court-approved forfeiture procedures.

**Forfeiture Procedures**

21. On February 12, 2025, the Bankruptcy Court entered an order approving the Post-Effective Date Debtors' proposed procedures for notifying affected creditors of the potential forfeiture of their Claim and the steps that they need to take to avoid forfeiting their Claim. During this Reporting Period, the Post-Effective Date Debtors finalized the forfeitures for a group of creditors which included both those whose initial distributions were attempted and those whose distributions could not be attempted because such creditors had failed to provide information necessary to attempt a distribution. If the Post-Effective Date Debtors had previously attempted a distribution, creditors were asked to either redeem such distribution or open a ticket so that the Post-Effective Date Debtors could assist the creditor in claiming its distribution. Otherwise, creditors were asked to provide the information necessary to attempt a distribution.

**Celsius Distribution Support Response Efforts**

22. During this Reporting Period, the Plan Administrator also resolved a number of distribution-related issues raised by creditors through the Post-Effective Date Debtors' customer support system. In total, more than 227,000 Celsius Distributions Support tickets have been resolved since the Effective Date. At this stage of the distribution process, the Celsius Distributions Support tickets that require review from the Celsius Distributions Support team are more complex, and these creditor-specific distribution issues often take longer to resolve. This is because the Post-Effective Date Debtors must work with the creditor to identify and resolve the

cause of the issue, requiring active engagement from creditors. Sometimes, resolving these issues requires the Post-Effective Date Debtors to develop new processes or solutions, which must be tested before they are implemented to ensure that distributions are still being made in a safe and fully regulatorily-compliant manner.

23. The Celsius Distributions Support team continued to review and address Celsius Distributions Support tickets from Monday through Friday, and also log, research, and respond to letters submitted to the Bankruptcy Court by creditors. Creditors are encouraged to review the automated responses made in response to specific creditor inquiries and review the resources provided, such as the Knowledge Base and Celsius Claims Portal for answers to frequently asked questions. The Post-Effective Date Debtors have, and will continue to, prioritize identifying and resolving issues for creditors with outstanding distributions.

24. Creditors can also self-service many of their distribution questions through the Celsius Claims Portal, which provides a way for creditors to view and update important information regarding their distributions without needing to open a Celsius Distributions Support ticket. For example, through the Celsius Claims Portal, creditors can view their claim distribution history and, if they are assigned to PayPal as a Distribution Agent, also view their claim code information. If a creditor believes it should have access to the Celsius Claims Portal but is having trouble accessing the same, such creditor should create a Celsius Distributions Support ticket at https://celsiusdistribution.stretto.com/support/tickets/new and select the most relevant items from each drop-down menu.

25. Kirkland & Ellis LLP ("Kirkland"), one of the Post-Effective Date Debtors' advisors, also responds to creditor inquiries sent to CelsiusCreditorQuestions@kirkland.com ("CelsiusCreditorQuestions"). Questions received through CelsiusCreditorQuestions are either

resolved based on information then available to Kirkland or routed to the appropriate team for further investigation, which may require a creditor to open a Celsius Distributions Support ticket if they have not already. Kirkland will endeavor to investigate the creditor's issue and provide a response. To the extent Kirkland needs additional information from the Post-Effective Date Debtors or their other advisors regarding a creditor's specific issue, it may still take some time to fully resolve such creditor's inquiry.

**Communication Delivery Issues**

26. The Post Effective Date Debtors has identified that certain creditors have been placed on its email suppression lists because prior email communications resulted in permanent delivery failures including hard bounce errors, or because the recipient marked Plan-related emails as spam. As a result, the Plan Administrator is unable to deliver email communications to those creditors, including communications that may be necessary to facilitate distributions. Creditors remain responsible for maintaining accurate, current, and functional contact information with the Post Effective Date Debtors, and the suppression of an email address shall not extend, waive or otherwise modify any deadline, distribution requirement, forfeiture provision, or other obligation applicable under the Plan or any order of the Court. Creditors who believe their email address may be subject to email suppression and wish to restore email communications should create a Celsius Distributions Support ticket at https://celsiusdistribution.stretto.com/support/tickets/new using the email address currently on record and associated with their creditor claim. If the creditor wishes to update the email address associated with the claim, the requested new email address should be included in the body of the support ticket. For security purposes, any request to change the email address associated with a creditor's account will require completion of a video identity verification process with Celsius Distributions Support before the request can be processed.

## Receipts and Distributions

27. **Exhibit A** to this Report contains the receipts received and the expenditures made by the Post-Effective Date Debtors during the Reporting Period. The Plan Administrator is pleased to report that the Post-Effective Date Debtors' actual expenditures incurred through this Reporting Period were less than the revised budgeted amounts.[9] Further, the Post-Effective Date Debtors' expenditures have continued to decline as a result of the Plan Administrator's efforts to effectively reduce costs where possible.

28. The Plan Administrator has, and continues to, evaluate the costs of administering the wind-down estate including distribution frequency, simplifying the process by only distributing BTC and cash and further reductions to vendor expenses and staffing. For example, the Plan Administrator brought in-house all email communications with creditors which were previously serviced by Stretto, distributed only BTC and cash for the second, third, and fourth distributions, moved to a quarterly distribution cadence, and migrated the sending of bank wire transfers from an external advisor to in-house, in addition to many other cost saving measures.

29. As part of these efforts, the Plan Administrator has been steadily reducing employee headcount as appropriate, ~~with further reductions expected in the coming months as the distribution process has stabilized and is working as expected~~. At the end of July 2026, the workforce headcount had been reduced to 20, with 11 of the 20 being part-time. As previously reported, beginning in 2026, the remaining nine full-time members of the workforce are direct employees of an employer of record and are no longer employed directly by Celsius, which further

9 As explained in the *Plan Administrator's Third Status Report on Distributions* [Docket No. 8005], the Plan Administrator evaluated the costs of administering the wind-down estate and revised the budget to reflect the increased costs of administering the wind-down estate, including reallocating approximately $40 million from other accounts in the Plan Administrator's control.

reduces costs to the Estates and streamlines the workforce with a sole focus on asset distribution to creditors.[10] While these staffing reductions ~~will~~ reduce employee-related costs, such reductions mean the Plan Administrator will have less resources to address potential distribution issues, including responding to Celsius Distributions Support tickets.

**Phishing Attempts and Cybersecurity**

30. With regard to cybersecurity, there are an increased number of threats, particularly those driven by artificial intelligence, which seek to find new vulnerabilities in technology infrastructure. As the Plan Administrator maintains a security-first approach in all operations to protect creditor data and estate assets, these new threats may necessitate previously unforeseen expenditures to mitigate future risk and maintain the highest level of security.

31. Further, creditors continue to report that they are receiving emails and other communications purporting to be from the Post-Effective Date Debtors but which are actually phishing scams or similar illegitimate communications. Neither the Post-Effective Date Debtors nor their advisors will ever contact you by telephone call, social media, or text message to request account information or other personal information absent an (a) order by the Bankruptcy Court or (b) on-the-record instruction from the Bankruptcy Court. In addition, the Post-Effective Date Debtors will not ask you to connect your wallet through a third-party to receive your distribution. Specifically, many phishing attempts request creditors to link an ERC-20 compatible non-custodial wallet to complete such creditor's distribution.

32. The Post-Effective Date Debtors encourage creditors to review the Post-Effective Date Debtors' Recommendations for Phishing Emails, attached hereto as **Exhibit B**, and confirm that any email they receive is legitimate by reviewing the sender's email address. Prior to

---

10 Headcount data excludes certain contractors, advisors, and the Plan Administrator from the total number.

responding to or engaging with (including clicking links contained within) any email, text message, or other means of communication purporting to be from the Post-Effective Date Debtors, their Distribution Agents, or advisors, creditors should confirm that the email domain and website appear on the list of authorized emails and websites (see **Exhibit B**). If a creditor has a question as to the authenticity of a specific email, such creditor should create a Customer Care Ticket at https://stretto-celsius.freshdesk.com/support/tickets/new and select "I have a security concern." ***Creditors should not click on any links contained in such email until the Post-Effective Date Debtors confirm it is a legitimate email regarding these Chapter 11 Cases***.

[*Remainder of page intentionally left blank.*]

New York, New York
Dated: August 31, 2026

*/s/ Joshua A. Sussberg*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
333 Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
ross.kwasteniet@kirkland.com
chris.koenig@kirkland.com

*Counsel to the Plan Administrator*

# Exhibit A

## Receipts and Expenditures During Current Reporting Period

# Post-Effective Date Debtors' Assets (Jul 31, 2026)

| | Crypto (1) | Fiat | Lit Admin Assets (2) | Total |
|---|---|---|---|---|
| **Post-Effective Date Debtors' Assets** | $277 M | $95 M | $206 M | $ 578 M |
| **Remaining Amount Owed in Current Distributions (3)** | $262 M | $ 16 M | N/A | $278 M |
| **Net Assets** | **$15 M** | **$79 M** | **$206 M** | **$300 M** |

**Net Assets(4)** will be distributed to creditors over time, and all remaining Net Assets will be fully distributed to creditors once all claims are resolved and all other distributions have been completed

(1) Crypto Net Assets of $15 million include Forfeitures of $5 million and Crypto Reserve of $10 million. Crypto value based on BTC and ETH prices as of July 31, 2026.
(2) Lit Admin Assets of $206 million in proceeds from asset sales and litigation recoveries managed by the Litigation Administrators. This amount excludes value of remaining illiquid assets.
(3) Remaining Amount Owed in Current Distributions include Initial, Second, Third, Fourth and Corporate Supplemental Distributions. For the avoidance of doubt, these amounts were included in the calculation of the recovery rate for the applicable distribution.
(4) Net Assets as presented include cash for budgeted expenditures related to the Plan Administrator, Litigation Administrators and the general administration / wind down of the estate.

# Plan Administrator Expenses and Cash Balances (Jul 31, 2026)

| ($000s ) | | Quarter Ending Jul 31, 2026 | Inception to Date |
|---|---|---|---|
| **Opening Cash Balances** | [A] | 35,899 | 110,000 |
| **Receipts** | | | |
| Interest Income | | 877 | 5,165 |
| Rebates / Other Adjustments | [B] | 277 | 1,353 |
| **Total Receipts** | | **1,154** | **6,518** |
| **Disbursements** | | | |
| Plan Administration Fees | | (175) | (4,050) |
| Distribution Costs and Expenses | [C] | (139) | (13,341) |
| Professional Fees | [D] | (1,305) | (20,743) |
| Employee Payroll | | (1,887) | (30,509) |
| Other Operating Expenses | [E] | (760) | (15,087) |
| **Total Disbursements** | | **(4,265)** | **(83,730)** |
| **Net Change** | | **(3,111)** | **(77,211)** |
| **Ending Cash Balance** | | **32,788** | **32,788** |

[A] Opening Cash Balance includes $40 million reallocation of funds from other accounts within the Plan Administrator's control, to the initial wind-down budget. As explained in the Plan Administrator's Third Report, the Plan Administrator evaluated the costs of administering the wind-down estate and revised the budget to reflect the increased costs of administering the wind-down estate.

{B} Rebates received from distribution partner, Paypal.

[C] Distribution Costs and Expenses driven by distribution fees paid to Stretto and Coinbase

[D] Professional Fees driven by costs on account of Financial Advisors $0.8 million and Legal Counsel $0.5 million

[E] Other Operating Expenses mainly driven by Financial Audit $0.2 million and Technology vendor expenses $0.5 million

# **Exhibit B**

**Post-Effective Date Debtors' Recommendations for Phishing Emails**

**Post-Effective Date Debtors' Recommendations for Phishing Emails**

**A list of the Phishing & Approved Domains is kept current in the Celsius Distributions Knowledge Base, publicly accessible to creditors for their reference at any time: https://stretto-celsius.freshdesk.com/support/solutions/articles/153000220105-phishing-approved-domains.**

**Be aware of the sender's email address and URLs contained in their messages.** Phishing emails will exploit your trust, expectations, and complacency with interacting with seemingly trusted sources. The first step is always to verify the Email Sender's Identity, and without clicking on the links in the email, confirm where they are directed to.

We recommend users proactively "whitelist" official emails by creating email filters/tags or automation that will only tag Stretto or Celsius emails from legitimate sources.

**Review the below list of official websites and email addresses.** You should disregard anything not coming from these email addresses or proceed with extreme caution.

**Please refer to the below for a list of official email addresses**:

claims@distributions.celsius.network
do-not-reply@updates.celsius.network
do-not-reply@claimsportal.celsius.network
celsiusdistribution@stretto.com
complianceteam@celsius.network
no-reply@cases-cr.stretto-services.com
do.not.reply@hyperwallet.com
do-not-reply@onfido.com
CelsiusCreditorAnswers@kirkland.com
CelsiusCreditorQuestions@kirkland.com
CelsiusLitigationAdmin@m3-partners.com
ionicdigital@odysseytrust.com
ionicdigitalinc@proxypush.com
hello@celsius.network
app@celsius.network

**Please refer to the below for a list of official websites**:

https://celsius.network/
https://claimsportal.celsius.network/
https://celsiusdistribution.stretto.com/support/solutions
https://cases.stretto.com/celsius
https://celsius.hyperwallet.com/

Note the specific punctuations, and don't be tricked by similar but differently worded or punctuated URLs using dashes instead of periods. Remember some URL and website addresses may seem similar to the above, but you must ensure they are any of the ones shown above.

**Check the sender's email address and where the email links will take you.** Examine the sender's email address carefully. Phishers often use similar-looking addresses to mimic legitimate ones. Look for misspellings, extra characters, or unusual domain names. Verify email content and formatting.

**Be skeptical of emails with poor grammar, spelling errors, or unusual formatting.** Legitimate organizations usually maintain a professional standard in their communication.

**Hover over links.** If on your computer, hover your mouse over any links in the email to preview the destination URL. Ensure it matches the expected website and is not a disguised link pointing to a phishing site.

**Check for generic greetings.** Phishing emails often use generic greetings like "Dear Customer" instead of addressing you by name. Legitimate organizations typically use your name in their communications.

**Beware of urgent or threatening language.** Phishing emails often create a sense of urgency or use threatening language to manipulate recipients into taking immediate action. Be cautious if an email demands urgent attention.

**Verify unexpected attachments.** Avoid opening unexpected attachments, especially if they come from unknown or unexpected sources. Malicious attachments may contain malware or phishing links.

Do not open these links for the first time on a mobile phone, as a mobile phone does not allow you to hover over links and ensure the stated link and the hyperlink match.

**Examine the email signature.** Legitimate emails from companies usually include a consistent and professional email signature. Lack of contact information or inconsistencies can be red flags.

**Enable two-factor authentication (2FA) everywhere possible.** Implementing 2FA adds an extra layer of security, making it more challenging for attackers to gain unauthorized access even if they obtain your credentials through phishing.

**Use email security features.** Many email providers offer built-in security features. Enable features like spam filters and phishing detection to enhance your email security.

**Educate yourself and stay informed.** Stay informed about the latest phishing techniques and trends. Regularly update yourself on common phishing tactics to recognize new and sophisticated attempts. Review the Celsius Knowledge Base site, as well as the official docket on Stretto to keep yourself up to date.

**https://celsiusdistribution.stretto.com/support/solutions**
**https://cases.stretto.com/Celsius**
**https://twitter.com/celsiusnetwork**
**https://x.com/celsiusnetwork**

**Verify unexpected requests.** If an email requests sensitive information or actions that seem unusual, independently verify the request by contacting the organization through official channels before providing any personal information.

**Check for HTTPS.** Verify that the website you are directed to uses HTTPS. While this alone does not guarantee legitimacy, it adds an additional layer of security. When in doubt, verify the SSL certificate used.

**Stay cautious with pop-ups and forms.** Be cautious if an email or website opens unexpected pop-ups or prompts you to enter sensitive information in forms. Legitimate organizations typically handle such interactions securely, not over a single-click email.

**Never connect your Crypto Wallet anywhere, even if it looks like a Celsius or Stretto Website.** If you follow the above tips, proceed with caution, and stay up to date with official site updates, you will be more secure in these trying times.